**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:19-cv-81160-RS**

APPLE INC.,

                       Plaintiff,

     v.

CORELLIUM, LLC,

                   Defendant.

**PLAINTIFF APPLE INC.'S MOTION TO DISMISS DEFENDANT CORELLIUM, LLC'S**
**COUNTERCLAIMS AND SUPPORTING MEMORANDUM OF LAW**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................4

      A.    Procedural History .....................................................................4

      B.    Apple Security Bounty Program ..............................................5

      C.    Corellium's Claims Against Apple ...........................................7

ARGUMENT .........................................................................................................8

   I.    CORELLIUM'S QUANTUM MERUIT CLAIM MUST BE DISMISSED...........8

      A.    Corellium's Quantum Meruit Claim Fails Because The Parties
            Have An Express Agreement...................................................8

      B.    Corellium Has Not, And Cannot, Plead An Express Breach Claim. .........13

   II.    CORELLIUM FAILS TO STATE A CLAIM UNDER CALIFORNIA'S
        UNFAIR COMPETITION LAW. .........................................................14

      A.    Corellium's Claim Fails Because Its Quantum Meruit Claim Fails. .........14

      B.    Corellium's Claim Fails Because It Has Not Alleged An Unlawful
            Business Practice Covered By The UCL. ..................................15

      C.    Corellium's Claim Fails Because It Does Not Allege A
            Restitutionary Injury. .............................................................16

CONCLUSION.....................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Bank of the West v. Super. Ct.*,
  833 P.2d 545 (Cal. 1992) ........................................................................................16

*Baron v. Acasta Capital*,
  No. 16-CV-25118, 2017 WL 3084416 (S.D. Fla. July 19, 2017)...........................11

*Berryman v. Merit Prop. Mgmt., Inc.*,
  62 Cal. Rptr. 3d 177 (Cal. App. 2007)...................................................................15

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
  114 Cal. Rptr. 2d 109 (Cal. App. 2001)...............................................................9, 12

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  973 P.2d 527 (Cal. 1999) ........................................................................................14

*City of Oakland v. Oakland Raiders*,
  No. 18-CV-07444-JCS, 2019 WL 3344624 (N.D. Cal. July 25, 2019)...................3

*Clark v. Superior Court*,
  235 P.3d 171 (Cal. 2010) ........................................................................................17

*In re ConocoPhillips Co. Serv. Station Rent Contract Litig.*,
  No. M:09-CV-02040 RMW, 2011 WL 1399783 (N.D. Cal. Apr. 13, 2011) .....................3, 16

*Cortez v. Purolator Air Filtration Prods. Co.*,
  999 P.3d 706 (Cal. 2000) ........................................................................................17

*Day v. Taylor*,
  400 F.3d 1272 (11th Cir. 2005) ............................................................................6, 10

*In re De Laurentiis Entm't Grp. Inc.*,
  963 F.2d 1269 (9th Cir. 1992) ..................................................................................9

*Durell v. Sharp Healthcare*,
  108 Cal. Rptr. 3d 682 (Cal. App. 2010)...............................................................9, 12

*Fulton v. Brancato*,
  189 So. 3d 967 (Fla. Dist. Ct. App. 2016) ..............................................................13

*Graham v. Bank of Am., N.A.*,
  172 Cal. Rptr. 3d 218 (Cal. App. 2014)..................................................................15

*Graphic Pallet & Transport, Inc. v. Balboa Capital Corp.*,
    No. 11-C-9101, 2012 WL 1952745 (N.D. Ill. May 30, 2012)................................................16

*Gross v. White*,
    340 F. App'x 527 (11th Cir. 2009) ....................................................................................10

*Hedging Concepts, Inc. v. First All. Mortg. Co.*,
    49 Cal. Rptr. 2d 191 (Cal. App. 1996), *as modified on denial of reh'g* (Feb.
    22, 1996) ....................................................................................................................3, 8, 9, 12

*Herrejon v. Ocwen Loan Servicing, LLC*,
    980 F. Supp. 2d 1186 (E.D. Cal. 2013)................................................................................15

*Klein v. Chevron U.S.A., Inc.*,
    137 Cal. Rptr. 3d 293 (Cal. App. 2012), *as modified on denial of reh'g* (Feb.
    24, 2012) ..............................................................................................................................9

*Korea Supply Co. v. Lockheed Martin Corp.*,
    63 P.3d 937 (Cal. 2003) ...........................................................................................3, 15, 17

*Kwikset Corp. v. Superior Court*,
    246 P.3d 877 (Cal. 2011) ...................................................................................................17

*Linear Tech. Corp. v. Applied Materials, Inc.*,
    61 Cal. Rptr. 3d 221 (Cal. App. 2007)............................................................................3, 16

*Lazar v. Hertz Corp.*,
    82 Cal. Rptr. 2d 368 (Cal. App. 1999) ...............................................................................15

*Marshall v. Standard Ins. Co.*,
    214 F. Supp. 2d 1062 (C.D. Cal. 2000) .............................................................................17

*McBride v. Boughton*,
    20 Cal. Rptr. 3d 115 (Cal. App. 2004)................................................................................8

*MH Pillars Ltd. v. Realini*,
    No. 15-CV-1383, 2017 WL 916414 (N.D. Cal. Mar. 8, 2017)............................................15

*Miles v. Deutsche Bank Nat'l Tr. Co.*,
    186 Cal. Rptr. 3d 625 (Cal. App. 2015)..............................................................................13

*Miller v. Chase Home Fin., LLC*,
    677 F.3d 1113 (11th Cir. 2012) ..........................................................................................8

*Najafifard v. Travelers Commercial Ins. Co.*,
    No. 15-CV-04422, 2015 WL 12656283 (C.D. Cal. Oct. 15, 2015)........................................16

*Ocean Commc'ns, Inc. v. Bubeck*,
    956 So. 2d 1222 (Fla. Dist. Ct. App. 2007) ...........................................................13

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
    167 Cal. Rptr. 3d 832 (Cal. App. 2014), *as modified on denial of reh'g* (Feb.
    27, 2014) ..............................................................................................................14

*Rubenstein v. The Gap, Inc.*,
    222 Cal. Rptr. 3d 397 (Cal. App. 2017), *review denied* (Nov. 29, 2017)...............15

*SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*,
    600 F.3d 1334 (11th Cir. 2010) ...........................................................................11

*Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    295 F.R.D. 540 (S.D. Fla. 2013) ..........................................................................11

*Virgilio v. Ryland Grp., Inc.*,
    680 F.3d 1329 (11th Cir. 2012) .............................................................................8

*W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*,
    728 So. 2d 297 (Fla. Dist. Ct. App. 1999) ...........................................................13

*Zhang v. Superior Court*,
    304 P.3d 163 (Cal. 2013) ................................................................................4, 17

## STATUTES

Cal. Bus. & Prof. Code
    § 17200 *et. seq.* ................................................................................................3, 7
    § 17203.......................................................................................................4, 16, 17

## RULES

Fed. R. Civ. P. 12(b)(6)...................................................................................... *passim*

## OTHER AUTHORITIES

Lorenzo Franceschi-Bicchierai, *iPhone Emulation Company Sued by Apple Says
    It's Making iPhones Safer*, Motherboard, Tech by Vice (Oct. 29, 2019),
    https://www.vice.com/en_us/article/8xw7gx/iphone-emulation-company-
    sued-by-apple-says-its-making-iphones-safer ........................................................2

Tom Warren, *Apple extends its bug bounty program to cover macOS with $1
    million in rewards*, The Verge (Aug. 8, 2019),
    https://www.theverge.com/2019/8/8/20756638/apple-macos-security-bug-
    bounty-rewards-program.......................................................................................7

Plaintiff Apple Inc. ("Apple") respectfully moves, pursuant to Federal Rule of Civil Procedure 12(b)(6) and for the reasons set forth in the memorandum of law below, to dismiss the counterclaims in Defendant Corellium, LLC's Answer, Affirmative Defenses, and Counterclaims (ECF No. 42).

## INTRODUCTION

This is a simple case of blatant and widespread copyright infringement by defendant Corellium, LLC ("Corellium").  As detailed in Apple's complaint, Corellium has built a business out of copying and selling access to unauthorized, lightly modified versions of Apple's proprietary operating system ("iOS"), along with related software and images, for its own financial profit. Compl. (ECF No. 1) ¶¶ 23-41.  Incredibly enough, Corellium does not deny any of the dispositive facts.  *See, e.g.*, Answer, ECF No. 42 at 5 (asserting that Corellium does not "*merely* replicate iOS") (emphasis added).  And how could it?  The very purpose of Corellium's product is the creation of exact digital replicas of Apple's iOS, iTunes, and graphical user interface elements ("GUI Elements"), which Corellium makes available through both a web-based platform and private on-premises installations for its own wealthy customers.  Compl. ¶ 23.  To be clear, Corellium's business is *copying and selling unauthorized access to Apple's copyrighted works*.  It does so indiscriminately, to anyone who can pony up whatever Corellium charges, without regard to whether its customers are well-intentioned or maliciously motivated.  *Id.*  That is why at least a number of Corellium's customers demonstrably have no interest in using "its" product (really Apple's) for good-faith security research.  Indeed, Corellium's largest customer, Azimuth Security, is publicly reported to have stated that it *never once* used Corellium's infringing version of Apple's

products to help Apple identify a security glitch.[1]  So while Corellium tries to trumpet itself as having created a resource that provides "significant societal benefits," ECF No. 42 at 5, the reality is that Corellium has built a business designed to make money off of the flagrant infringement of Apple's copyrighted works.

With no meaningful defense to the merits of Apple's claims against it, Corellium has countered by accusing Apple of failing to pay it certain money it contends Apple owes.  In an evident effort to mislead this Court into believing that Corellium's product is nothing more than a beneficent tool for helping Apple identify and patch security holes, Corellium contends that it submitted seven "bugs" to Apple, pursuant to the Apple Security Bounty Program, a program under which Apple pays "bounties" to security researchers who report software bugs.  To be clear, even if what Corellium has said here was true (which it is not), these facts would have no bearing on Apple's claims against Corellium.  For one thing, it is entirely possible to participate in Apple's Security Bounty Program, and many people do so, without selling access to Apple's copyrighted works for profit, as Corellium does.  For another, Corellium does not allege that even a *single* Corellium customer participates in Apple's Security Bounty Program at all.  Rather, the gravamen of Corellium's counterclaims is simply that Apple owes $300,000 or so under the terms of that program.  *See* ECF No. 42 at 22-24 (Counterclaims ¶¶ 5-14).

Those counterclaims fail as a matter of black-letter law.  The core, glaring problem with Corellium's first claim is that, while Corellium styles the claim as "Unjust Enrichment/Quantum

_____

[1] *See* Lorenzo Franceschi-Bicchierai, *iPhone Emulation Company Sued by Apple Says It's Making iPhones Safer*, Motherboard, Tech by Vice (Oct. 29, 2019), https://www.vice.com/en_us/article/8xw7gx/iphone-emulation-company-sued-by-apple-says-its-making-iphones-safer.

Meruit," it in fact specifically pleads that the parties had an agreement governing Corellium's submission of bugs to Apple, which Apple allegedly breached. *See* ECF No. 42 at 1, 22-25 (Counterclaims ¶¶ 5, 6, 10, 13, 23).[2]   As a matter of law, quantum meruit is unavailable where, as here, the terms of performance are governed by contract. Because the subject of Corellium's claim for quantum meruit is governed by an express agreement, the terms of which Corellium specifically relies on and incorporates into its counterclaims, the quantum meruit claim must be dismissed without leave to replead. *See Hedging Concepts, Inc. v. First All. Mortg. Co.*, 49 Cal. Rptr. 2d 191, 197 (Cal. App. 1996), *as modified on denial of reh'g* (Feb. 22, 1996); *see also, e.g.*, *City of Oakland v. Oakland Raiders*, No. 18-CV-07444-JCS, 2019 WL 3344624, at *17 (N.D. Cal. July 25, 2019).

Corellium's second counterclaim, under California's Unfair Competition Law ("UCL"), is likewise legally deficient. *See* Cal. Bus. & Prof. Code § 17200 *et. seq.* First, the type of UCL claim Corellium asserts requires a predicate unlawful act, which Corellium alleges is established by its claim for unjust enrichment/quantum meruit. *See* ECF No. 42 at 27 (Counterclaims ¶ 31). Because that claim fails, Corellium has not alleged a cognizable predicate act for its UCL claim and so the UCL claim must fail as well. Second, Corellium's UCL claim also independently fails because a UCL claim that alleges no more than "a dispute between commercial parties over their economic relationship" cannot stand. *In re ConocoPhillips Co. Serv. Station Rent Contract Litig.*, No. M:09-CV-02040 RMW, 2011 WL 1399783, at *3 (N.D. Cal. Apr. 13, 2011) (relying on *Linear Tech. Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 237 (Cal. App. 2007)); *Korea Supply*

---

[2] As required by Federal Rule of Civil Procedure 12(b)(6), Apple assumes the truth of Corellium's allegations for purposes of this motion.

*Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 948 (Cal. 2003) ("[A]n action under the UCL is not an all-purpose substitute for a tort or contract action . . . .").

And third, Corellium lacks the type of injury that is capable of being remedied by the UCL. Damages are not available under the UCL: the law provides only for injunctive relief and restitution. Corellium does not seek injunctive relief and, under black-letter law, it lacks a claim for restitution as that term is defined by the UCL. "Restitution under . . . section 17203 is confined to restoration of any interest in 'money or property, real or personal, which may have been acquired by means of such unfair competition.'" *Zhang v. Superior Court*, 304 P.3d 163, 167-68 (Cal. 2013) (emphasis omitted). A "restitution order against a defendant thus requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other." *Id.* Corellium, however, does not allege it provided any money or property to Apple. As Corellium does not seek relief capable of being granted under the UCL, its claim must be dismissed on that basis as well.

## BACKGROUND

### A.    Procedural History

Apple filed this lawsuit against Corellium on August 15, 2019. In its complaint, Apple alleges that Corellium's entire business is based on infringing copyrights central to Apple's most important products—the iOS operating system and GUI Elements that power Apple's iPhone and related mobile devices. Compl., ECF No. 1. Corellium answered the complaint on October 28, 2019, and brought two counterclaims based on Apple's alleged failure to pay monies owed under Apple's Security Bounty Program. ECF No. 41.[3] While Corellium denies infringing Apple's

---

[3] Corellium initially filed portions of its answer and counterclaims under seal, and did not serve

works (in boilerplate fashion, *see* ECF No. 42 at 13), its answer acknowledges that its product, which it sells for profit, "utilizes . . . Apple's technology," *id.* at 5, and permits users to "execut[e] iOS on different [non-Apple] hardware," *id.* at 5-6.  Corellium also acknowledges that its product competes directly with Apple's own security products.  *Id.* at 8-9.  Its principal defense appears to be its assertion that its admittedly derivative product, which allows purchasers to copy, display, modify, and use *literally identical* versions of Apple's product without permission or license from Apple, is somehow so "transformative" that it does not infringe Apple's copyrights.  *Id.* at 5-6.

As noted above, separate and unrelated to its infringement defenses, Corellium brings two counterclaims based on Apple's alleged failure to pay monies owed under its Security Bounty Program, in which Corellium alleges it is a participant.  *Id.* at 22-27 (Counterclaims ¶¶ 5-30).

### B.      Apple Security Bounty Program

The Apple Security Bounty Program is a "security bounty program to reward the contributions of external researchers who help to identify ways that Apple can further strengthen the security" of Apple's products.  Apple Security Bounty Policy Program, Ex. B at 1.  Apple created this program to incentivize security researchers to tell Apple about bugs in iOS that they have found so that Apple can fix them.  This program is just one of the many things Apple does to encourage good-faith security research and protect its customers.

The Apple Security Bounty Program is a contractual arrangement.   As Corellium acknowledges, participants in the program must create an Apple developer account (ECF No. 42

---

Apple with the unredacted portions until October 29, 2019, after Apple requested them.  After being informed that Apple did not intend to urge the Court to keep the sealed portions sealed, Corellium filed an unredacted version of the same on November 8, 2019.  ECF No. 42.

at 23-24 (Counterclaims ¶¶ 10, 17)) and, in so doing, agree to the Apple Developer Agreement. Participants in the Apple Security Bounty Program must also agree to the Apple Security Bounty Program Policy, which is incorporated by reference into the Developer Agreement. *See* Ex. A ¶ 9;[4] Ex. B; *see also* ECF No. 42 at 22 (Counterclaims ¶¶ 6-7) (restating portions of the Apple Security Bounty Program Policy). Because Corellium's counterclaims rely on and incorporate by reference Corellium's express agreement with Apple related to the Apple Security Bounty Program, as explained further herein, consideration of that express agreement as part of Apple's Rule 12(b)(6) motion is appropriate. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

The Apple Security Bounty Program Policy sets forth the program's parameters, including what makes a bug eligible for a reward, *see* Ex. B at 1 ("Program Eligibility"); ECF No. 42 at 22 (Counterclaims ¶ 6) (listing a number of the same factors), and the maximum potential value for reporting particular types of bugs, *see* Ex. B at 1 ("Payments"); ECF No. 42 at 24, 25 (Counterclaims ¶¶ 13, 23) (incorporating the Policy's valuation measure by reference). The Policy also explains Apple's role in adjudicating whether and when reward payments for bug submissions will be made, and explains that the program is limited to bugs related to iOS and iCloud only; as a result, bugs related to other Apple operating systems, including macOS (Apple's computer operating system), are ineligible.[5] *See* Ex. B at 1 ("Program Eligibility"); ECF No. 42 at 22

---

[4] The Apple Developer Agreement states the following regarding additional terms, such as the Apple Security Bounty Program Policy: "You will be responsible for reviewing and becoming familiar with any such modifications (including new terms, updates, revisions, supplements, modifications, and additional rules, policies, terms and conditions) ("Additional Terms") communicated to you by Apple. All Additional Terms are hereby incorporated into this Agreement by this reference and your continued use of the Site will indicate your acceptance of any Additional Terms." (emphasis omitted).

[5] The foregoing refers to the Apple Security Bounty Program in place at the times relevant to this

(Counterclaims ¶ 6) (acknowledging that the bug must be "present in the most recent version of iOS" to be eligible).

### C.      Corellium's Claims Against Apple

Corellium has asserted two counterclaims against Apple.  Count I is styled as "Unjust Enrichment/Quantum Meruit," while Count II alleges a violation of California Business and Profession Code § 17200 *et seq.*  Both claims allege Corellium submitted bugs to Apple that were eligible for compensation under the Apple Security Bounty Program Policy, but for which Apple has not paid any compensation.  ECF No. 42 at 22-27 (Counterclaims ¶¶ 5-33).  Corellium does not allege, however, that it complied with any of the program's submission requirements, including those identified in its counterclaims.  *See, e.g.*, *id.* at 22 (Counterclaims ¶ 6).  Corellium acknowledges its claims are subject to California law.  *See, e.g.*, *id.* at 26 (claim brought under California statute), 27 ¶ 31 (relying on California unjust enrichment law); *cf.* Ex. A ¶ 17 (agreeing that California law will govern the parties' agreement).

While the Court must accept Corellium's allegations as true for the purpose of evaluating a motion under Rule 12(b)(6), it bears mention that in reality, the claims are factually false.  Each of the five bugs submitted prior to the filing of Apple's complaint was ineligible for compensation under the plain terms of the Apple Security Bounty Program.  As for the remaining two bugs, Corellium's principal, Chris Wade, submitted them *less than a month* prior to Corellium filing its counterclaims; those bugs are still undergoing review and consideration for eligibility.  *Cf.* Ex. B

---

dispute.  On August 8, 2019, Apple announced that it will be expanding its Apple Security Bounty Program to cover additional Apple operating systems, including macOS, in the future.  *See* Tom Warren, *Apple extends its bug bounty program to cover macOS with $1 million in rewards*, The Verge (Aug. 8, 2019), https://www.theverge.com/2019/8/8/20756638/apple-macos-security-bug-bounty-rewards-program.

at 2 (Apple will "make every effort" to complete its analysis and fix of a submitted bug "within 90 days").

## ARGUMENT

Under Federal Rule of Civil Procedure 12(b)(6), if "the facts as pled" in a party's claims "do not state a claim for relief that is plausible on its face, the count must be dismissed." *Virgilio v. Ryland Grp., Inc*., 680 F.3d 1329, 1334 (11th Cir. 2012).[6] And when the facts as pled do not establish an entitlement to relief as a matter of law, then an entitlement to relief is not plausible on the face of the pleading and dismissal is required. *See e.g.*, *Miller v. Chase Home Fin., LLC*, 677 F.3d 1113, 1117 (11th Cir. 2012) (affirming dismissal where claim "fail[ed] a matter of law").

## I. CORELLIUM'S QUANTUM MERUIT CLAIM MUST BE DISMISSED.

Although Corellium's claim for quantum meruit[7] is riddled with both legal and factual infirmities, the most obvious one—and the one on which Apple now moves for dismissal—is that the claim is based on a subject governed by an express agreement between Corellium and Apple. That alone is fatal to Corellium's claim.

### A. Corellium's Quantum Meruit Claim Fails Because The Parties Have An Express Agreement.

"Quantum meruit is an equitable theory which supplies, by implication and in furtherance of equity, implicitly missing contractual terms." *Hedging Concepts, Inc. v. First All. Mortg. Co.*,

---

[6] Internal quotation marks and citations omitted throughout unless otherwise stated.

[7] Although Corellium titles its claim as one for "Unjust Enrichment/Quantum Meruit," California courts refer to such a claim as one for quantum meruit or quasi-contract, in which "the law will imply a contract (or rather, a quasi-contract), without regard to the parties' intent, in order to avoid unjust enrichment." *McBride v. Boughton*, 20 Cal. Rptr. 3d 115, 122 (Cal. App. 2004); *see id.* at 121 ("Unjust enrichment is not a cause of action, however, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies."); *see also id.* at 122 n.6 (describing a claim for quasi-contract, also known as quantum meruit).

49 Cal. Rptr. 2d at 197.  As a result, a claim for quantum meruit does not, "as a matter of law, . . . lie where . . . express binding agreements exist and define the parties' rights."  *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 114 Cal. Rptr. 2d 109, 125 (Cal. App. 2001).  California courts have thus repeatedly recognized that, "[w]hen parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract."  *Hedging Concepts, Inc.*, 49 Cal. Rptr. 2d at 198; *see also Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 330 (Cal. App. 2012), *as modified on denial of reh'g* (Feb. 24, 2012) ("A plaintiff may not, however, pursue or recover on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter."); *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (Cal. App. 2010) (imposition of quasi-contract to avoid unjust enrichment "does not lie where the parties have an enforceable express contract"); *California Med.*, 114 Cal. Rptr. 2d at 126 (the plaintiff "may not proceed on its quasi-contract claim because the subject matter of such claim . . . was governed by express contracts").  That is because "[t]he whole point of quantum meruit recovery is to compensate plaintiffs who have provided a benefit to defendants but who do *not* have a contract—express or implied—with those defendants."  *In re De Laurentiis Entm't Grp. Inc.*, 963 F.2d 1269, 1273 (9th Cir. 1992) (interpreting California law).

Corellium's quantum meruit claim is based on its theory that Apple agreed to pay Corellium over $300,000 for its submission of seven bugs through Apple's Security Bounty Program.  ECF No. 42 at 24-25 (Counterclaims ¶¶ 15-25).  The problem for Corellium is that the agreement it alleges—that is, the very agreement on which Corellium's claim is based, and which is incorporated by reference throughout the counterclaims—is an express agreement that is memorialized in the Apple Developer Agreement (Ex. A), and the Apple Security Bounty Program

9

Policy (Ex. B), which is incorporated into the Apple Developer Agreement, *see* Ex. A ¶ 9.  And while courts considering a Rule 12(b)(6) motion ordinarily do not consider documents beyond the pleadings, courts do consider such documents when they are "incorporated by reference" such that they are "central" to a party's claim, and are undisputed, meaning their authenticity is not in question.  *See Day*, 400 F.3d at 1276; *see, e.g.*, *Gross v. White*, 340 F. App'x 527, 534 (11th Cir. 2009) ("Even though the documents were not physically attached to the second amended complaint, they were incorporated by reference into it, and the district court did not err in considering them.").

Here, Corellium's agreement with Apple is not only referenced throughout Corellium's answer and counterclaims; it forms the very basis of those claims.  Corellium's quantum meruit claim (as well as its UCL claim) is premised on the alleged "promise" Apple made to Corellium to pay for bug submissions to the Apple Security Bounty Program.  That is why, at the outset of its answer, Corellium alleges "Apple approved of Corellium participating in its invitation-only Security Bounty Program ('bug bounty program') with a *promise* to pay for software bugs identified by Corellium."  ECF No. 42 at 1 (emphasis added).  Corellium then goes on to explain that it created a "new developer account"—the creation of which required Corellium to agree to the Apple Developer Agreement (Ex. A)—"so that the company could be paid directly for its submissions" to the Apple Security Bounty Program.  ECF No. 42 at 24, 26 (Counterclaims ¶¶ 17, 28).  The promise that Apple is alleged to have made to Corellium, and that Corellium now relies on, is the agreement codified in the Apple Developer Agreement (Ex. A) and the terms incorporated therein (Ex. B).

Lest there be any doubt about the centrality of the parties' express agreement to Corellium's claims, Corellium specifically relies on, and quotes from, that agreement throughout

its counterclaims.  For example, Corellium states "[i]n order for a security researcher to receive payment for a submitted bug, the bug must be: (1) present in the most recent version of iOS; (2) accompanied by a proof of concept; and (3) the first external report of the bug."  ECF No. 42 at 22 (Counterclaims ¶ 6).  Those requirements are taken directly from the Apple Security Bounty Policy, which states that, for bugs to be eligible for a reward, they must meet a number of requirements, including being (1) "[p]resent in the most recent shipping version of iOS," (2) "[a]ccompanied by a proof of concept," and (3) the "[f]irst external report of a particular issue." Ex. B at 1 ("Program Eligibility").  In paragraphs 13 and 23 of its counterclaims, Corellium again relies on this agreement, stating that, "[u]nder the guidelines of Apple's bug bounty program, the total value of the[] bugs" Corellium submitted and thus the amount Apple purportedly promised to pay "exceeds $300,000."  ECF No. 42 at 24, 25 (Counterclaims ¶¶ 13, 23).  Those valuation "guidelines" are likewise contained in the Apple Security Bounty Program Policy.  *See* Ex. B at 1. Thus, Corellium's *sole* basis for its claimed entitlement to payment is the express agreement contained in the Apple Developer Agreement and the Apple Security Bounty Program Policy.  *See* ECF No. 42 at 22-25.

Because Corellium relies throughout its counterclaims on its express agreement with Apple, and repeatedly references and relies on the terms of that agreement, consideration of the parties' agreement, appended hereto in Exhibits A and B, is proper.  *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337-38 (11th Cir. 2010); *see, e.g.*, *Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 295 F.R.D. 540, 546 n.4 (S.D. Fla. 2013) ("In resolving Defendants' Motions [to dismiss], the Court may consider the documents incorporated by reference into Space Coast's Complaint (even though they are not physically attached to the Complaint) and the documents attached to the Motions."); *Baron v. Acasta Capital*,

No. 16-CV-25118, 2017 WL 3084416, at *1 n.2 (S.D. Fla. July 19, 2017) ("In addressing a Rule 12(b)(6) motion, the Court considers the allegations of the complaint, exhibits attached or incorporated by reference, and exhibits attached to the motion to dismiss if they are central to plaintiff's claim and undisputed.").  And consideration of the parties' express agreement makes clear that Corellium's quantum meruit claim is governed by that express agreement and thus cannot stand.  *See Durell*, 108 Cal. Rptr. 3d at 699.

Even without reference to the documents embodying the parties' express agreement, however, Corellium's allegations alone establish that its quantum meruit claim is, in fact, based on an actual agreement between the parties, and is a contract claim rather than a quasi-contract claim.  *See, e.g.*, ECF No. 42 at 22 (Counterclaims ¶ 6) (detailing the requirements for bug rewards); *id.* at 24 (Counterclaims ¶ 13) (discussing the valuation of various bugs in the Apple Security Bounty "guidelines").  The written agreement in Exhibits A and B simply confirms that.  And it is well settled that a claim for quantum meruit cannot "lie where, as here, express binding agreements exist and define the parties' rights" with respect to the "subject matter" of the claim.  *Cal. Med. Ass'n*, 114 Cal. Rptr. 2d at 125-26.  This is because the very purpose of such a claim is to supply *missing* terms to govern an arrangement between two parties.  Where there are express terms governing that same arrangement, a court supplying purportedly missing terms risks a ruling that will conflict with the terms that the parties have "freely, fairly and voluntarily bargained for."  *Hedging Concepts*, 49 Cal. Rptr. 2d at 197.  Because Corellium has alleged, and the incorporated

documents show, that the parties have an express agreement covering the subject matter, its unjust enrichment/quantum meruit claim must be dismissed without leave to amend.  *Id*.[8]

      **B.**      **Corellium Has Not, And Cannot, Plead An Express Breach Claim.**

      Corellium may argue that the Court should simply construe its quantum meruit claim as a claim for breach of contract.  But Corellium has failed to plead a valid breach of contract claim. Elements of a breach of contract claim require Corellium to plead: (1) existence of a contract; (2) its own performance or excuse for non-performance; (3) Apple's breach; and (4) resulting damages.  *Miles v. Deutsche Bank Nat'l Tr. Co*., 186 Cal. Rptr. 3d 625, 631 (Cal. App. 2015). Here, Corellium pleads the first element: it had an agreement with Apple.  ECF No. 42 at 23, 24 (Counterclaims ¶¶ 9-10, 13).  And it pleads the last element: it was damaged.  ECF No. 42 at 25 (Counterclaims ¶¶ 22, 25).  But it fails to allege that it performed according to the terms and conditions to which it agreed, namely, that its submissions met all the requirements it lays out in Paragraph 6—that the submitted bugs be "(1) present in the most recent version of iOS; (2) accompanied by a proof of concept; and (3) the first external report of the bug," *id*. at 22 (Counterclaims ¶ 6)—as well as the additional requirements in the Apple Security Bounty Program Policy, *see* Ex. B.  And it fails to allege that Apple did not honor the agreement's terms and

---

[8] Corellium's quantum meruit counterclaim would fare no better under Florida law, which applies materially the same standard for unjust enrichment/quantum meruit claims.  *See, e.g.*, *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 305-06 (Fla. Dist. Ct. App. 1999).  Moreover, Florida, like California, disallows quantum meruit claims where an express contract governs the  subject matter at issue.  See *Fulton v. Brancato*, 189 So. 3d 967, 969 (Fla. Dist. Ct. App. 2016) ("[A] plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists."); *Ocean Commc'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. Dist. Ct. App. 2007).

conditions.[9]  Nor does Corellium acknowledge the restrictions and limitations on liability it agreed to in the agreement itself.  *See* Ex. A ¶ 14; Ex. B at 1, 2.  Corellium thus could not state a claim under an express breach theory either.

## II. CORELLIUM FAILS TO STATE A CLAIM UNDER CALIFORNIA'S UNFAIR COMPETITION LAW.

Corellium's second claim—that Apple's failure to pay Corellium the amount it believes it deserved under the Security Bounty Program constitutes "unfair competition" under California's Unfair Competition Law ("UCL")—likewise fails because it is derivative of, and thus relies solely on, the quantum meruit claim.  But even if the quantum meruit claim survives (and it cannot), the UCL claim still must be dismissed because (a) Corellium's dispute with Apple is not one that is resolvable in a UCL action, and (b) Corellium has not alleged an injury remediable by the UCL.

### A. Corellium's Claim Fails Because Its Quantum Meruit Claim Fails.

The UCL "is written in the disjunctive [and] establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent."  *Prakashpalan v. Engstrom, Lipscomb & Lack*, 167 Cal. Rptr. 3d 832, 855 (Cal. App. 2014), *as modified on denial of reh'g* (Feb. 27, 2014).  By proscribing "any unlawful" business act or practice, the UCL "borrows" rules set out in other laws and makes violations of those rules independently actionable. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 973 P.2d 527, 539-40 (Cal. 1999).  The California legislature's "overarching" concern in enacting the UCL was "to provide a streamlined

---

[9] Indeed, it cannot do so.  Corellium is well aware that the five bugs submitted prior to the filing of this lawsuit by its principal, Chris Wade, did not meet the requirements of the Apple Security Bounty Program, as laid out in Paragraph 6 of the counter-complaint and Exhibit A.  And the two new bugs submitted on September 30, 2019 have not yet been adjudicated by Apple; thus, any claim as to them is unripe.

procedure for the prevention of ongoing or threatened acts of unfair competition." *Korea Supply*, 63 P.3d at 948. "The UCL is not an all-purpose substitute for a tort or contract action." *Id.*

Corellium asserts, as the sole basis for its UCL claim, that Apple engaged in unlawful conduct by failing to pay it under a quantum meruit theory. ECF No. 42 at 27 (Counterclaim ¶ 31). As detailed below, Corellium's claim fails under well-established law applying the UCL. But its claim also fails for the even more basic reason that it is wholly derivative of Corellium's failed quantum meruit claim. When, as here, the predicate offense for a UCL claim fails, so too must the UCL claim itself. *See Graham v. Bank of Am., N.A.*, 172 Cal. Rptr. 3d 218, 231-32 (Cal. App. 2014); *see, e.g.*, *Rubenstein v. The Gap, Inc.*, 222 Cal. Rptr. 3d 397, 406 (Cal. App. 2017), *review denied* (Nov. 29, 2017) (UCL claim failed because statutory predicate claims failed); *Berryman v. Merit Prop. Mgmt., Inc.*, 62 Cal. Rptr. 3d 177, 185-86 (Cal. App. 2007) (dismissed on pleadings for failure to sufficiently plead predicate); *Lazar v. Hertz Corp.*, 82 Cal. Rptr. 2d 368, 375-76 (Cal. App. 1999); *Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1205-07 (E.D. Cal. 2013).

### B.     Corellium's Claim Fails Because It Has Not Alleged An Unlawful Business Practice Covered By The UCL.

Corellium's UCL claim further fails because it has not alleged "unlawful" activity within the meaning of the UCL. Where no violation of an underlying law is shown, a UCL claim brought under the "unlawful" prong fails as a matter of law. *Graham*, 172 Cal. Rptr. at 231. And because the UCL was not "enacted to protect commercial parties who have a dispute that revolves around a contractual business relationship," a plaintiff may not seek relief under the UCL where the dispute that gives rise to the purportedly unlawful business activity "lacks any connection to the protection of fair competition or the general public." *MH Pillars Ltd. v. Realini*, No. 15-CV-1383, 2017 WL 916414, at *10 (N.D. Cal. Mar. 8, 2017).

Corellium does not allege that Apple engaged in any unlawful business practices. It does not cite any statute Apple allegedly violated, or even a common law duty of care. *C.f. Najafifard v. Travelers Commercial Ins. Co.*, No. 15-CV-04422, 2015 WL 12656283, at * 4 (C.D. Cal. Oct. 15, 2015) (dismissing UCL complaint because plaintiff failed to allege "conduct that violates . . . obligations imposed by [] statutes or the common law"). Nor does it allege some widespread and systemic practice directed at consumers. Rather, it describes a plain-vanilla contract dispute: Corellium alleges Apple agreed to pay it, then failed to do so. A failure of one corporate entity to pay another entity monies allegedly due is not an "unlawful business practice" that threatens fair competition or the general public. Such a dispute between two business entities, regardless of whether it is classified as a contract claim or a quasi-contract claim, is simply not within the purview of the UCL. A "dispute between commercial parties over their economic relationship" does not constitute unfair competition. *In re ConocoPhillips Co.*, 2011 WL 1399783, at *3. Thus, where, as here, "a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks." *Linear Tech. Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 237 (Cal. App. 2007); *see also Graphic Pallet & Transport, Inc. v. Balboa Capital Corp.*, No. 11-CV-9101, 2012 WL 1952745 (N.D. Ill. May 30, 2012) ("California courts have refused to allow commercial parties to use §17200 to resolve disputes over their economic relationships.").

**C.    Corellium's Claim Fails Because It Does Not Allege A Restitutionary Injury.**

Finally, and independent of the foregoing failings, Corellium fails to allege an injury compensable under the UCL. *See* Cal. Bus. & Prof. Code § 17203. The UCL provides for only two forms of relief: injunctive relief and restitution. *Id.* Corellium does not seek injunctive relief. ECF No. 42 at 27 (Counterclaims ¶ 33). And—despite using the word "restitution"—it does not

in fact seek restitution as that term is used in the UCL.  *See id.*  To the contrary, Corellium's "restitution" demand is simply a demand for the money damages it contends are due as a result of Apple's alleged failure to pay.  Damages, however, are not available under the UCL.  *See Clark v. Superior Court*, 235 P.3d 171, 174 (Cal. 2010) (UCL prohibits recovery of damages); *Bank of the West v. Super. Ct.*, 833 P.2d 545, 545-46 (Cal. 1992) (actual and compensatory damages not available under section 17203); *see also Korea Supply*, 63 P.3d at 945 ("[R]estitution is the only monetary remedy expressly authorized by § 17203.").  Moreover, a "court cannot, under the equitable powers of section 17203, award whatever form of monetary relief it believes might deter unfair practices."  *Korea Supply*, 63 P.3d at 946.[10]

Restitution is an equitable remedy available to return money or property *wrongfully taken* from a plaintiff, or in which plaintiff *has an ownership interest*.  *Id*. at 946-47.  While the word "restitution" generally can have a broad meaning depending on context, "[r]estitution under section 17203 is confined to restoration of any interest in 'money or property, real or personal, which may have been acquired by means of such unfair competition.'"  *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 895 (Cal. 2011).  "A restitution order against a defendant thus requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other."  *Zhang*, 304 P.3d at 168.  "Compensatory damages are not recoverable as

_____

[10] Of note, Corellium also asserts a claim to "disgorgement," *see* ECF No. 42 at 27 (Counterclaims ¶ 33), but disgorgement of profits is also not a remedy under the UCL.  *See Korea Supply*, 63 P.3d at 941.  This ruling has been affirmed many times.  *See, e.g.*, *id.* at 944 ("[W]e held in *Kraus* [*v. Trinity Mgmt. Servs., Inc.,* 999 P.2d 718, 32 (Cal. 2000)] that although restitution was an available remedy in UCL actions, a plaintiff in a representative action under the UCL could not recover disgorgement[.]"); *see also Marshall v. Standard Ins. Co.*, 214 F. Supp. 2d 1062, 1073-74 (C.D. Cal. 2000) (granting motion to strike from complaint request for disgorgement of profits pursuant to the UCL); *Cortez v. Purolator Air Filtration Prods. Co*., 999 P.3d 706, 712 (Cal. 2000) (noting that court may not order disgorgement of benefits received by defendants in UCL action).

restitution." *Id*. Corellium, however, does not allege that it gave Apple any money or property that Apple has wrongfully retained. ECF No. 42 at 21-27 (Counterclaims ¶¶ 1-33). Rather, it alleges that it provided information pursuant to a promise of payment. *Id.* at 23-26 (Counterclaims ¶¶ 10-13, 17-23, 28-30). That is a claim for *damages*, not restitution, and is not recoverable under the UCL.

Because Corellium does not allege any claim for relief that is compensable under the UCL, its claim must be dismissed on this basis as well.

## CONCLUSION

For the foregoing reasons, Apple respectfully requests that this Court dismiss Corellium's counterclaims for failing to state a claim upon which relief can be granted.

Dated: November 18, 2019

Respectfully Submitted,

Kathryn Ruemmler*
*kathryn.ruemmler@lw.com*
Sarang Vijay Damle*
*sy.damle@lw.com*
Elana Nightingale Dawson*
*elana.nightingaledawson@lw.com*
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200 / (202) 637-2201 Fax

Andrew M. Gass*
*andrew.gass@lw.com*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 / (415) 395-8095 Fax

Jessica Stebbins Bina*
*jessica.stebbinsbina@lw.com*
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500 / (424) 653-5501 Fax

*Admitted pro hac vice*

_s/ Martin B. Goldberg_

Martin B. Goldberg
Florida Bar No. 0827029
*mgoldberg@lashgoldberg.com*
*rdiaz@lashgoldberg.com*
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL  33131
(305) 347-4040 / (305) 347-4050 Fax

*Attorneys for Plaintiff* APPLE INC.