UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-cv-81160-RS

APPLE INC.,

                         Plaintiff,

    v.

CORELLIUM, LLC,

                         Defendant.

**PLAINTIFF APPLE INC.'S REPLY REGARDING ITS
MOTION TO COMPEL DEFENDANT CORELLIUM, LLC
TO PROVIDE COMPLETE RESPONSES TO INTERROGATORIES**

Corellium does not dispute there is a broad swath of information Apple has requested that Corellium outright refuses to provide. And while Corellium amended its responses to Apple's Interrogatories just last week (nearly four months after Apple first served the Requests), the problems with its responses remain and, in fact, worsened.[1]

At the heart of Corellium's response to both this Motion and the Motion addressing its responses to Apple's Requests for Production is a fundamental (and seemingly deliberate) misunderstanding about what is at issue in this case. Corellium has built a product—the Corellium Apple Product—that is comprised of hardware and software, including unauthorized, lightly modified versions of Apple's proprietary operating system ("iOS"), and related software and images (known as "graphical user interface elements," or "GUI Elements"). Corellium admits its product modifies iOS so that it can be incorporated into the Corellium Apple Product. Corellium admits that the Corellium Apple Product displays Apple's copyrighted GUI Elements. And Corellium admits it sells its derivative work for profit to third parties.

Based on Corellium's open and unabashed infringement, Apple has brought claims against Corellium for both direct *and* contributory infringement based on the Corellium Apple Product, which means that not only is the Corellium Apple Product directly at issue in this case but so too are the users of that product—that is, Corellium's customers—and what they do with the product. Apple has also brought a claim under the Digital Millennium Copyright Act ("DMCA"), alleging that Corellium traffics a product that is specifically designed to, and does, circumvent Apple's access and copy controls. ECF No. 56 ¶¶ 71–77. The Corellium Apple Product—what it does exactly, to whom it is sold, and what Corellium and its customers do with the product—is thus at the heart of this case.

Corellium asks this Court to dramatically narrow Apple's claims, permitting discovery only of "iOS," while blocking discovery into "Corellium's core product and business operations," which—according to Corellium—"have no impact on Apple's efforts to establish its claims." ECF No. 76 ("Resp.") at 3. This is wrong as a matter of fact: as explained above, the subject of this lawsuit *is* the operation of the Corellium Apple Product, including how it creates, saves, and displays iOS, implicating both software and hardware. *See* ECF No. 56 ¶¶ 45–77; *Apple Inc. v.*

---

[1] Corellium has incorporated by reference arguments advanced in its response to Apple's Motion to Compel Defendant Corellium, LLC to Produce Responsive Documents and Provide Complete Discovery Responses. ECF No. 77 at 2. Apple does the same.

1

*Psystar Corp.*, 658 F.3d 1150, 1153 (9th Cir. 2011) (addressing the defendant's hardware and the infringed Apple operating system). And it is wrong as a matter of law: Corellium cannot artificially limit its responses to what *it* wants to address; what matters is what the pleadings in this case put at issue.

Corellium's business operations are not only relevant to Apple's infringement, contributory infringement, and DMCA claims; they are also relevant to Corellium's fair use defense, which Corellium itself chose to put at issue. *See, e.g.*, *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 353 (S.D.N.Y. 2017) (rejecting fair use defense given, *inter alia*, the defendant's "business model"). In addition, Corellium's business operations, including the reasons why its principals have done what they have done, and how much Corellium has made and continues to make, are relevant to Apple's claim for damages, which encompass "actual damages and any additional profits of the infringer," or alternatively for statutory damages. 17 U.S.C. § 504(a)–(c). Corellium's business operations, including how much money it is earning, goes directly to the issue of profits. And the factors to be considered in determining the amount of statutory damages include "the infringer's state of mind," "the expenses saved, and profits earned, by the infringer," and "the deterrent effect on the infringer and third parties." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010); *accord Walt Disney Co. v. Video 47, Inc.*, 972 F. Supp. 595, 603 (S.D. Fla. 1996). Corellium's business model, and the actions of its principals, go directly to Corellium's "state of mind," its expenses saved, its profits earned, and the need for deterrence, in addition to its fair use defense.

**Interrogatory No. 7.** This interrogatory asks Corellium to identify software flaws in iOS about which Corellium or its employees are aware, or have ever been aware, and whether Corellium has reported any such bugs, exploits, vulnerabilities, or flaws to Apple. As an initial matter, Corellium has waived its objection based on overbreadth with respect to time and scope, since it does not advance those objections in its response to Apple's motion to compel. *See Zamperla, Inc. v. I.E. Park SrL,* No. 6:13-cv-1807, 2014 WL 12614505, at *2 (M.D. Fla. Nov. 3, 2014) ("Objections asserted that are not addressed in a response to a motion to compel are deemed to have been abandoned."). With respect to the objections Corellium does continue to advance, Corellium first complains that, because Apple would have to pay for certain software flaws Corellium knows about if submitted through Apple's Security Bounty Program, it should not have to provide such information during discovery, even under an Attorneys' Eyes Only designation

2

under the Protective Order the parties agreed upon. As explained above, however, Corellium's fair use and its statutory DMCA defenses are based in substantial part on Corellium's claim that its customers use its program for good-faith security research. *See, e.g.*, ECF No. 64 at 26–28. Apple is entitled to—and must—test that contention. The very premise of Corellium's fair use defense is that its infringement is excusable because its product facilitates good-faith security research. *Id.* at 6–7. Apple vigorously disputes that contention, and evidence showing that Corellium capitalizes on the bugs it finds—for profit—rather than turning them over so they can be addressed, directly undercuts its claim that it is nothing more than a good-faith actor. Corellium does not cite a single case for the proposition that a party can refuse to disclose information of critical importance to the parties' claims and defenses merely because that information has monetary value. And that is because there is no such rule. Rather, concerns about disclosure of sensitive information are properly addressed by a protective order, such as the one that governs this case (ECF No. 50). *OKO Int'l Co. v. Haurex Italy, S.r.l*, No. 12-60405-CIV, 2012 WL 12899041, at *1 (S.D. Fla. Dec. 11, 2012).

Corellium next asserts, wrongly, that this interrogatory requests information about individuals, including Corellium founder Chris Wade, in their individual capacities. Not so. The interrogatory specifically asks about Corellium and "its employees," and Corellium recognized as much because nowhere in its amended responses does it raise its newfound "individual capacity" objection. This objection is thus both inapposite and waived. *See Sream, Inc. v. Hassan Hakim & Sarwar, Inc.*, No. 16-CV-81600, 2017 WL 878704, at *2 (S.D. Fla. Mar. 6, 2017).

Finally, Corellium states that this information is not relevant to identifying its profits due to infringement because it has already provided information about Corellium's "revenue, costs of goods sold, R&D costs and net income to Apple." Resp. at 4–5. But as Corellium itself argues just a few paragraphs earlier, and as Corellium's founder has touted to anyone who will listen, bugs can be sold for profit—potentially to nefarious actors. Thus, any unreported bugs Corellium has obtained through use of its infringing product and then sold are directly relevant to Apple's claim for damages. *See* 17 U.S.C. § 504(b).

*Interrogatory No. 8.* Corellium's decisions regarding pricing and the circumstances surrounding its customers' purchases are directly relevant to, *inter alia*, Apple's claim for contributory infringement and actual and statutory damages, as well as Corellium's fair use defense. Whether Corellium "stood to profit, intended to profit, and did profit substantially" from

3

its infringement of Apple's copyrighted works is directly relevant to a fair-use analysis. *Roberts v. Gordy*, No. 13-24700-CIV, 2015 WL 11202356, at *12 (S.D. Fla. Sept. 17, 2015).

Corellium does not even argue otherwise. Instead, it asserts that this interrogatory is overbroad and burdensome. Both contentions lack merit. As to breadth, the Request is limited by the instruction that "the time period for the request shall be from the formation of Corellium to the present and continuing into the future," just over two years. ECF No. 70-1 at 7 (Apple's First Set of Interrogs.). As for burden, it was Corellium's burden to "show specifically how the requested discovery is burdensome, overbroad, or oppressive by submitting detailed affidavits or other evidence establishing the undue burden." *Zamperla*, 2014 WL 12614505, at *2 (internal quotation omitted). Corellium submitted no evidence at all, instead choosing to rest solely on the arguments in its brief. *See* Resp. at 5 (claiming the interrogatory "places a tremendous burden on Corellium"). Such arguments "are not evidence." *Abromats v. Abromats*, No. 16-CV-60653, 2016 WL 4366480, at *5 (S.D. Fla. Aug. 16, 2016) (citation omitted). Corellium's failure to offer any actual evidence of the purported burden of this interrogatory is fatal to its objection.

***Interrogatory No. 14.*** This interrogatory asks Corellium to "[i]dentify all actions Corellium has taken with regard to or in response to Apple's copyrights or in the anticipation of any copyright litigation with Apple, including, but not limited to, any steps taken by Corellium to inform its customers about Apple's copyrights or to obscure information about Apple's copyrights from Corellium's users or customers." In its amended responses to Apple's interrogatories, Corellium has asserted a new objection to interrogatory number 14, refusing to respond because, according to Corellium, "any actions taken by Corellium in responses [*sic*] thereto stemmed from communications with counsel and/or in direct connection with this instant litigation and thus, are protected by" the "work-product doctrine" and "attorney-client privilege." ECF No. 76-1 at 35.

Corellium's wildly broad conception of privilege is patently frivolous. The protection of attorney-client privilege "applies only if the primary or predominant purpose of the attorney-client consultations is to seek legal advice or assistance." *In re Denture Cream Prods. Liab. Litig.*, No. 09-2051, 2012 WL 5057844, at *6 (S.D. Fla. Oct. 18, 2012). And the "work product doctrine protects documents prepared in anticipation of litigation or for trial from discovery." *Id.* at *7. Apple is not asking for and does not expect information about Corellium's communications with counsel for the purpose of seeking legal advice or assistance, nor is it seeking documents prepared in anticipation of litigation for trial. Apple is asking for Corellium's *actions* that are not protected

4

by any privilege, including but not limited to interactions with its customers regarding Apple's copyrights and efforts to obscure information from its customers about Apple's copyrights. Apple is also seeking any non-privileged information reflecting Corellium's knowledge that its creation and marketing of the Corellium Apple Product was a legally perilous decision—something Chris Wade previously publicly recognized with respect to a precursor of the Corellium Apple Product.[2] Corellium cannot claim work-product protection for information that reflects its awareness that it *could* be subject to litigation simply because it now has been sued when such information does not involve the request for legal advice or action taken at the direction of legal counsel to aid in anticipated or pending litigation. *In re Denture Cream*, 2012 WL 5057844, at *13. Nor can communications to customers or other third parties possibly be considered privileged.

      *Interrogatory Nos. 15–17*. Finally, Corellium refuses to respond to interrogatories 15 through 17, which request information about entities Corellium has refused to sell, license, or give access to the Corellium Apple Product; foreign persons and entities that have shown interest in the Corellium Apple Product; and all persons who have offered to purchase or acquire part or all of Corellium's business. Here, too, Corellium offers a familiar refrain for why its objections should be upheld. And here, too, its arguments are just as meritless.

      First, Corellium argues that this information should be protected from disclosure because it is "proprietary, confidential, and trade secret information." Resp. at 6. As explained in Apple's response regarding its motion addressing its requests for production, Corellium has not carried its burden to establish that withholding such information is proper. Second, Corellium argues that the requests are "overbroad in both time and scope" and would "constitute a tremendous burden on Corellium." Yet again, Corellium has failed to offer any evidence to substantiate its say so, and thus its objection should be rejected.[3] Third, Corellium argues that the information Apple is requesting "has nothing to do with copyright infringement." But whether and the extent to which Corellium is limiting use of its product to only good-faith actors is directly relevant to Corellium's fair use defense. Evidence that Corellium has never refused a license to anyone, for example, will directly undercut Corellium's claim of fair use.

---

[2] Gian, *Hacker virtualizes iPhone 6, changes iOS Hacking Forever*, Yalu Jailbreak (Aug. 31, 2017), https://yalujailbreak.net/iphone-virtualization/ (slide by Chris Wade titled "History of iOS Virtualization/Emulation," noting "Kickstarter shutdown due to Apple lawsuit concerns").

[3] Corellium also ignores again that this Interrogatory is likewise limited in time to when Corellium has existed, which necessarily limits the interrogatory to just over two years' worth of time.

| | |
|---|---|
| Dated: January 24, 2020 | Respectfully Submitted, |
| | |
| | *s/ Martin B. Goldberg* |
| Kathryn Ruemmler* | |
| *kathryn.ruemmler@lw.com* | Martin B. Goldberg |
| Sarang Vijay Damle* | Florida Bar No. 0827029 |
| *sy.damle@lw.com* | *mgoldberg@lashgoldberg.com* |
| Elana Nightingale Dawson* | *rdiaz@lashgoldberg.com* |
| *elana.nightingaledawson@lw.com* | Emily L. Pincow |
| LATHAM & WATKINS LLP | Florida Bar No. 1010370 |
| 555 Eleventh Street NW, Suite 1000 | *epincow@lashgoldberg.com* |
| Washington, DC 20004 | LASH & GOLDBERG LLP |
| (202) 637-2200 / (202) 637-2201 Fax | 100 Southeast Second Street |
| | Miami, FL  33131 |
| Andrew M. Gass* | (305) 347-4040 / (305) 347-4050 Fax |
| *andrew.gass@lw.com* | |
| LATHAM & WATKINS LLP | |
| 505 Montgomery Street, Suite 2000 | |
| San Francisco, CA 94111 | |
| (415) 391-0600 / (415) 395-8095 Fax | |
| | |
| Jessica Stebbins Bina* | |
| *jessica.stebbinsbina@lw.com* | |
| LATHAM & WATKINS LLP | |
| 10250 Constellation Blvd., Suite 1100 | |
| Los Angeles, CA 90067 | |
| (424) 653-5500 / (424) 653-5501 Fax | |
| | |
| *Admitted pro hac vice | |

*Attorneys for Plaintiff* APPLE INC.

6

## **CERTIFICATE OF SERVICE**

I, Emily L. Pincow, do hereby certify that on January 24, 2020, I caused a copy of the foregoing Plaintiff Apple Inc.'s Reply Regarding Its Motion To Compel Defendant Corellium, LLC to Provide Complete Responses to Interrogatories to be served via email upon:

Brett Govett
Robert Greeson
Jackie Baker
NORTON FULBRIGHT US LLP
2200 Ross Ave., Suite 3600
Dallas, Texas 75201
brett.govett@nortonrosefulbright.com
robert.greeson@nortonrosefulbright.com
jackie.baker@nortonrosefulbright.com

Jonathan Vine
Justin Levine
Lizza Constantine
COLE, SCOTT & KISSANE, P.A.
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
jonathan.vine@csklegal.com
justin.levine@csklegal.com
lizza.constantine@csklegal.com

*s/ Emily L. Pincow*
Emily Pincow

7