UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-cv-81160-RS

APPLE INC.,

                        Plaintiff,

    v.

CORELLIUM, LLC,

                        Defendant.

**PLAINTIFF APPLE INC.'S REPLY IN SUPPORT OF MOTION TO
DISMISS DEFENDANT CORELLIUM, LLC'S COUNTERCLAIMS**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................1

    I.    CORELLIUM LACKS STANDING TO PURSUE DECLARATORY OR INJUNCTIVE RELIEF..................................................................................................1

        A.    Corellium's Claims For Declaratory Relief (Counts I, II, V, VI, VII, X) Must Be Dismissed. ........................................................................1

        B.    Corellium's Claims For Injunctive Relief (Counts V, VI, VII, X) Must Be Dismissed. ..............................................................................................3

    II.    CORELLIUM FAILS TO STATE A CLAIM UNDER THE FDUTPA OR UCL................................................................................................................................3

        A.    Corellium Fails To State A Claim Under the FDUTPA (Count VII)..................................................................................................................4

        B.    Corellium Fails To State A Claim Under The UCL (Counts V, VI, X). ................................................................................................................5

    III.    CORELLIUM FAILS TO STATE A CLAIM FOR CONSTRUCTIVE FRAUD (COUNTS III, IV). ............................................................................................8

    IV.    CORELLIUM FAILS TO STATE A CLAIM FOR QUANTUM MERUIT (COUNTS VIII, IX)..............................................................................................9

CONCLUSION..............................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*550 Seabreeze Dev., LLC v. Ill. Union Ins. Co.*,
   No. 19-24611-CIV, 2020 WL 473610 (S.D. Fla. Jan. 29, 2020) ................................................ 2

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*,
   390 F. Supp. 2d 1170 (M.D. Fla. 2005) ............................................................................. 8, 9, 10

*ARSC, Inc. v. Covington Specialty Ins. Co.*,
   No. 17-61605-CIV, 2017 WL 10742774 (S.D. Fla. Dec. 20, 2017) ........................................... 2

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*,
   169 So. 3d 164 (Fla. Dist. Ct. App. 2015) ................................................................................ 4

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   973 P.2d 527 (Cal. 1999) ....................................................................................................... 6, 7

*In re ConocoPhillips Co. Serv. Station Rent Contract Litig.*,
   No. M:09-CV-02040 RMW, 2011 WL 1399783 (N.D. Cal. April 13, 2011) ........................ 7, 8

*Dakin v. BMW of N. Am., LLC*,
   No. 3:19-CV-00818-GPC-BGS, 2019 WL 5788324 (S.D. Cal. Nov. 6, 2019) ......................... 5

*Daugherty v. Am. Honda Motor Co., Inc.*,
   51 Cal. Rptr. 3d 118 (Cal. App. 2006) ...................................................................................... 7

*Davies v. Krasna*,
   535 P.2d 1161 (Cal. 1975) ......................................................................................................... 8

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ........................................................................................ 5, 7, 10

*Day v. Taylor*,
   400 F.3d 1272 (11th Cir. 2005) ............................................................................................... 10

*Economakis v. Hosch, P.A.*,
   2:13-CV-832-FtM-38DNF, 2014 WL 820623 (M.D. Fla. Mar. 3, 2014) ................................. 5

*In re Ford Tailgate Litig.*,
   No. 11-CV-2953-RS, 2014 WL 1007066 (N.D. Cal. Mar. 12, 2014), *order
   corrected on denial of reconsideration*, No. 11-CV-2953-RS, 2014 WL
   12649204 (N.D. Cal. Apr. 15, 2014) ...................................................................................... 10

*Fraley v. Facebook, Inc.*,
   830 F. Supp. 2d 785 (N.D. Cal. 2011) ...................................................................................... 6

*Graham v. Bank of Am., N.A.*,
    172 Cal. Rptr. 3d 218 (Cal. App. 2014) ................................................................................ 7

*Korea Supply Co. v. Lockheed Martin Corp.*,
    63 P.3d 937 (Cal. 2003) ..................................................................................................... 5, 6

*Lanz v. Resolution Tr. Corp.*,
    764 F. Supp. 176 (S.D. Fla. 1991) ......................................................................................... 8

*Leon v. Tapas & Tintos, Inc.*,
    51 F. Supp. 3d 1290 (S.D. Fla. 2014) .................................................................................... 4

*Lezhava v. American Home Mortgage Servicing, Inc.*,
    No. 1:08-CV-3605-BBM, 2009 WL 10666352 (N.D. Ga. May 15, 2009) ............................ 3

*Linville v. Ginn Real Estate Co., LLC*,
    697 F. Supp. 2d 1302 (M.D. Fla. 2010) ................................................................................. 8

*Martinez v. Weyerhaeuser Mortg. Co.*,
    959 F. Supp. 1511 (S.D. Fla. 1996) ..................................................................................... 10

*Mayor's Jewelry, Inc. v. Barry N. Meyrowitz & Meyrowitz, Inc.*,
    No. 12-80055-CIV, 2012 WL 2344609 (S.D. Fla. June 20, 2012) ........................................ 9

*Moynihan v. W. Coast Life Ins., Co.*,
    607 F. Supp. 2d 1336 (S.D. Fla. 2009) .................................................................................. 2

*Nat'l Alcoholism Programs/Cooper City, Fla., Inc. v. Palm Springs Hosp. Emp.
    Benefit Plan*,
    825 F. Supp. 299 (S.D. Fla. 1993) ......................................................................................... 4

*Patriot Sci. Corp. v. Korodi*,
    504 F. Supp. 2d 952 (S.D. Cal. 2007) .................................................................................... 8

*PEO Experts CA, Inc. v. Engstrom*,
    No. 2:17-CV-00318-KJM-CKD, 2018 WL 3817561 (E.D. Cal. Aug. 10, 2018) .................. 9

*Perez v. Scottsdale Ins. Co.*,
    No. 19-CV-22346, 2020 WL 607145 (S.D. Fla. Feb. 7, 2020) .............................................. 3

*Rave Wonderland, Inc. v. City Lingerie, Inc.*,
    No. 19-CV-4546-RSWL-MRW, 2019 WL 6792808 (C.D. Cal. Sept. 11, 2019) .................. 6

*Rodriguez v. Recovery Performance & Marine, LLC*,
    38 So. 3d 178 (Fla. Dist. Ct. App. 2010) ............................................................................... 5

*Scripps Clinic v. Superior Court*,
    134 Cal. Rptr. 2d 101 (Cal. App. 2003) ................................................................................. 7

*Servicios De Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Int'l, Inc.*,
    264 F. App'x 878 (11th Cir. 2008) ...................................................................................9

*Shaeffer v. Califia Farms, LLC*,
    No. B291085, 2020 WL 581452 (Cal. App. Feb. 6, 2020) .........................................5

*Stewart Agency, Inc. v. Arrigo Enters., Inc.*,
    266 So. 3d 207 (Fla. Dist. Ct. App. 2019) ...................................................................4

*Taxinet, Corp. v. Leon*,
    No. 16-24266-CV-MORENO, 2018 WL 3405243 (S.D. Fla. Jul. 12, 2018) ............5

*Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*,
    850 So. 2d 536 (Fla. Dist. Ct. App. 2003) ...................................................................8

*Tiller v. State Farm Mut. Auto. Ins. Co.*,
    549 F. App'x 849 (11th Cir. 2013) ............................................................................2, 3

*Triumph Furniture Processing-Exp. Joint Stock Co. v. Everest Furniture Co.*,
    No. 13-CV-01729 NC, 2013 WL 9600372 (N.D. Cal. Aug. 29, 2013), *report
    and recommendation adopted*, 2014 WL 4211076 (N.D. Cal. Aug. 25, 2014) .........8

*Tyler v. Children's Home Society*,
    35 Cal. Rptr. 2d 291 (Cal. App. 1994) .........................................................................8

*Wells Pharmacy Network, LLC v. Regulatory Compliance Assocs. Inc.*,
    No. 5:16-CV-319-OC-37-PRL, 2016 WL 6106746 (M.D. Fla. Sept. 28, 2016),
    *report and recommendation adopted*, No. 5:16-CV-319-OC-37-PRL, 2016
    WL 6083858 (M.D. Fla. Oct. 18, 2016) .......................................................................3

*Worldvision Enters., Inc. v. ABC, Inc.*,
    191 Cal. Rptr. 148 (Cal. App. 1983) ............................................................................9

*XP Glob., Inc. v. AVM, L.P.*,
    No. 16-CV-80905-BLOOM/Valle, 2016 WL 4987618 (S.D. Fla. Sept. 19,
    2016) ..............................................................................................................................8

*Younan v. Equifax Inc.*,
    169 Cal. Rptr. 478 (Cal. App. 1980) ............................................................................8

*Zhang v. Superior Court*,
    304 P.3d 163 (Cal. 2013) ...............................................................................................6

## STATUTES

Cal. Civ. Code
    § 1573..............................................................................................................................8
    § 1798.100 *et seq.* .........................................................................................................7
    § 1798.150........................................................................................................................7

Fla. Stat.
    § 501.203(7).....................................................................................................................4
    § 501.203(8).....................................................................................................................4

## OTHER AUTHORITIES

"California Consumer Privacy Act (CCPA)," 3 E-Commerce and Internet Law
    26.13A (2020 update) ......................................................................................................7

VESTED, Black's Law Dictionary (11th ed. 2019)............................................................................6

Plaintiff Apple Inc. ("Apple") submits the following reply in support of its motion to dismiss Defendant Corellium, LLC's first through tenth counterclaims in its Answer, Affirmative Defenses, and Counterclaims to Apple's First Amended Complaint (ECF No. 64).

## INTRODUCTION

Corellium argues that its factual allegations are sufficient for it to proceed through discovery and summary judgment on twelve different legal theories seeking the same $300,000 in damages. This is wrong as a matter of fact and law.

To survive a motion to dismiss, Corellium must allege facts, and not merely legal conclusions, sufficient to bring its claim within the realm of the plausible. For at least eight of its claims, it wholly fails to do so. And for another two, while superficially closer calls, the Court can and should acknowledge the express contract between the parties, expressly pleaded by Corellium in its original counterclaims, and subject to judicial notice here.

## ARGUMENT

**I. CORELLIUM LACKS STANDING TO PURSUE DECLARATORY OR INJUNCTIVE RELIEF.**

**A. Corellium's Claims For Declaratory Relief (Counts I, II, V, VI, VII, X) Must Be Dismissed.**

Corellium asserts that it has standing to pursue declaratory and injunctive relief because it has an "ongoing relationship with Apple under the Bounty Program." ECF No. 135 at 2; *see id.* at 5, 6, 7. But those allegations appear nowhere in Corellium's counterclaims; the references to Corellium's bug submissions are in the past tense. *See generally* ECF No. 64. Corellium is not asking the Court to declare its future obligations to Apple, or Apple's future obligations to it. Rather, Corellium seeks relief based on Apple's alleged failure to pay it for *past* bug bounty submissions. *See* ECF No. 64 at 33, 34 (Counterclaims ¶¶ 27, 29 ("Apple has not paid Corellium for bugs it submitted")); *id.* at 40, 42, 44, 46, 49, 51, 53, 54, 56, 57 (Counterclaims ¶¶ 55, 67, 79, 95, 114, 131, 144, 158, 165, 173) (claims seeking monetary relief for unpaid bug submissions). This backward-looking relief can be readily seen by the potential outcomes of Corellium's declaratory judgment claims. Were Corellium to prevail on those claims, and successfully have the Court declare the Security Bounty Program unenforceable as to Corellium (ECF No. 64 at 38 (Counterclaims ¶¶ 44, 47)), nothing would happen going forward. The relative positions of the parties would not change. Corellium would still not be obligated to submit bugs in the future, and Apple would not be obligated to treat any bugs submitted by Corellium differently than it treats

them today.

Corellium claims its relationship with Apple is ongoing because it submitted two bugs on September 30, 2019 (*see* ECF No. 64 at 33 (Counterclaims ¶ 27(f)–(g))), and both parties acknowledge those bugs are still undergoing ordinary business review. *See* ECF No. 99 at 6 (Apple); ECF No. 135 at 2, 4, 6, 7 (Corellium). But Apple's ongoing adjudication of Corellium's previously submitted bugs is not the sort of conduct that declaratory judgments address. *See, e.g.*, *Moynihan v. W. Coast Life Ins., Co.*, 607 F. Supp. 2d 1336, 1339 (S.D. Fla. 2009) (dismissing case as not ripe where life insurer was still conducting standard eligibility review). As the court there explained, "ameliorating a [Claimant's] angst and uncertainty does not give rise to an Article III claim." *Id.* Either Apple will pay Corellium bounties for its two September 2019 submissions, which will moot any dispute as to those bugs, or Apple will decline to pay bounties for those submissions, which will mean those two bugs are analogous to the other five prior submissions Corellium alleges it made. *See* ECF No. 64 at 33 (Counterclaims ¶ 27). In either case, Corellium seeks no forward-looking relief from this Court, and thus lacks standing to pursue claims under the Declaratory Judgment Act or any form of declaratory relief. *Tiller v. State Farm Mut. Auto. Ins. Co.*, 549 F. App'x 849, 855 (11th Cir. 2013), cited in Apple's opening brief, is apt here. There, the Eleventh Circuit held that an allegation that plaintiffs should have gotten more money out of *past* insurance payments was insufficient to create standing to challenge the insurance policy's application to speculative *future* claims. *Id.* at 855 ("The [claimants] can show neither a continuing uncertainty in their legal relations with State Farm nor an imminent threat of future harm."). The same is true here: Corellium's disagreements with Apple's evaluations of past bug submissions is insufficient to create a judiciable controversy over hypothetical future submissions.

Corellium's declaratory judgment claims should also be dismissed because they are wholly duplicative of Corellium's breach-of-contract claims, which Apple has not moved to dismiss. ECF No. 64 at 55–57 (Counts XI & XII). Because "claims for declaratory judgment must look forward, rather than backward," they will be dismissed where the "same factual dispute" undergirds both the declaratory judgment claims and breach-of-contact claims. *550 Seabreeze Dev., LLC v. Ill. Union Ins. Co.*, No. 19-24611-CIV, 2020 WL 473610, at *2–3 (S.D. Fla. Jan. 29, 2020). Corellium's breach-of-contract claims render Corellium's declaratory judgment claims duplicative and improper. *See, e.g.*, *ARSC, Inc. v. Covington Specialty Ins. Co.*, No. 17-61605-CIV, 2017 WL 10742774, at *1 (S.D. Fla. Dec. 20, 2017) (dismissing declaratory judgment claim as "entirely

duplicative of [the] breach-of-contract claim"). Breach-of-contract claims themselves operate to clarify the rights and responsibilities of the parties to a relationship. *E.g. Perez v. Scottsdale Ins. Co.*, No. 19-CV-22346, 2020 WL 607145, at *2 (S.D. Fla. Feb. 7, 2020). "Ruling on the declaratory judgment request would amount to an advisory opinion as to the enforceability of a provision in the contract." *Id.* (internal quotation marks omitted).

Corellium cites two cases in support of its assertion that past disputes over a contract constitute a sufficient basis to pursue declaratory relief claims, but neither supports Corellium's position because both involved *future* obligations. In *Lezhava v. American Home Mortgage Servicing, Inc.*, the plaintiff sought relief based on *future* mortgage payments that it was contractually obligated to pay in the absence of a declaratory judgment. No. 1:08-CV-3605-BBM, 2009 WL 10666352, at *10 (N.D. Ga. May 15, 2009). And in *Wells Pharmacy Network, LLC v. Regulatory Compliance Assocs. Inc.*, the plaintiff would, absent a declaration of the parties' rights and obligations, have owed more than $100,000 to the defendant. No. 5:16-CV-319-OC-37-PRL, 2016 WL 6106746, at *6 (M.D. Fla. Sept. 28, 2016), *report and recommendation adopted*, No. 5:16-CV-319-OC-37-PRL, 2016 WL 6083858 (M.D. Fla. Oct. 18, 2016).

Finally, although Corellium purports to be seeking clarification of the terms of the Security Bounty Program for all participants, it is not pursuing claims on behalf of a class, and even if it were, Corellium's request for relief is still backward-looking and thus cannot support a claim for declaratory relief. *See Tiller*, 549 F. App'x at 855.

Here, the sum total of Corellium's claim is that Apple should have paid it for bugs it purportedly submitted between 2018 and 2019. This is insufficient as a matter of law to create standing under the Declaratory Judgment Act or for the pursuit of declaratory relief.

**B. Corellium's Claims For Injunctive Relief (Counts V, VI, VII, X) Must Be Dismissed.**

For the same reasons, Corellium fails to plead entitlement to injunctive relief under the FDUTPA or California's UCL. Corellium does not allege any concrete threat of future harm from Apple's alleged violations of these statutes, other than in conclusory terms that cannot survive scrutiny under the *Iqbal/Twombly* standard, *see* ECF No. 64 at 44, 47, 49 (Counterclaims ¶¶ 82, 102, 120) ("Corellium has sustained and will continue to sustain irreparable injury for which no adequate remedy at law exists"). Once again, Corellium seeks damages for past harms only and thus lacks standing to seek injunctive relief as well.

**II.     CORELLIUM FAILS TO STATE A CLAIM UNDER THE FDUTPA OR UCL.**

3

In addition to lacking standing to seek declaratory and injunctive relief under the FDUTPA or UCL, Corellium's claims must be dismissed for failure to allege facts sufficient to show a violation of either statute and for failure to seek relief cognizable under the UCL.

### A.  Corellium Fails To State A Claim Under the FDUTPA (Count VII).

Corellium alleges that it is a competitor of Apple. ECF No. 64 at 1, 11, 12, 46, 49. Yet, in its opposition to Apple's motion to dismiss, Corellium asserts that it is somehow a "consumer" under the FDUTPA. *See* ECF No. 135 at 13. Corellium's opposition seems to be based on the undisputed truism that companies, and not merely individuals, can be consumers. Fla. Stat. § 501.203(7). But those companies must still meet the definition of consumer imposed by the Courts—*i.e.*, they must have "engaged in the purchase of goods or services." *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1297 (S.D. Fla. 2014). The Court in *Leon* carefully analyzed the history of the FDUTPA, including the amendments thereto, to determine that, while the amendments to the FDUTPA permitted businesses as well as individuals to be consumers, the statute still "has no application" unless there is a *consumer transaction*. *Id.*; *see also Nat'l Alcoholism Programs/Cooper City, Fla., Inc. v. Palm Springs Hosp. Emp. Benefit Plan*, 825 F. Supp. 299, 302–03 (S.D. Fla. 1993). Indeed, the Florida Courts of Appeal, in cases decided well after the authorities relied upon by Corellium, stated the issue clearly: a claimant need not be a consumer to *bring* an FDUTPA claim, but it "would have to prove that *there was an injury or detriment to consumers* in order to satisfy all the elements of an FDUTPA claim." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 2015); *accord Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 212 (Fla. Dist. Ct. App. 2019) (whether an action is brought by a first-party customer or a third-party competitor, the FDUTPA still requires injury to a consumer). Corellium does not allege it purchased any goods or services from Apple or that Apple harmed anyone to whom it sold goods or services. Rather, Corellium alleges it reported bugs to Apple with the expectation that Apple would pay Corellium per the terms of the Security Bounty Program. *See* ECF No. 64 at 30, 32, 33 (Counterclaims ¶¶ 13–15, 22, 27). Corellium thus fails to allege any harm to consumers and fails to state a claim.

Moreover, Corellium is wrong that it has alleged the requisite relationship to trade or commerce. This requires "advertising, soliciting, providing, offering, or distributing, whether by sale, rental or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8).

Here, Corellium's allegations do not arise out of a good or service offered by Apple. Rather, they relate to a business dispute between Corellium and Apple over a voluntary agreement between two businesses relating to information, which is outside the FDUTPA. *Taxinet, Corp. v. Leon*, No. 16-24266-CV-MORENO, 2018 WL 3405243, at *5–6 (S.D. Fla. Jul. 12, 2018) (dismissing FDUPTA claim based on allegations of fraud and misappropriation of trade secrets in a business venture, despite allegations of deceptive conduct, because no connection to goods or services); *Economakis v. Hosch, P.A.*, 2:13-CV-832-FtM-38DNF, 2014 WL 820623, at *3 (M.D. Fla. Mar. 3, 2014) (collecting examples of commercial disputes that fall outside the FDUTPA).

Furthermore, Corellium does not allege "actual damages" within the meaning of the FDUTPA. "Actual damages" under the Act are "the difference in the market value of the product or service in the condition in which it was delivered, and its market value in the condition in which it should have been delivered according to the contract of the parties." *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. Dist. Ct. App. 2010). Corellium cites an exception—if the product is so defective as to be valueless, a consumer can recover the purchase price paid (essentially a form of restitution). ECF No. 135 at 14. But this exception has no application here because there is no "product" at issue: Corellium purchased nothing from Apple and paid nothing to Apple. It thus has no "actual damages" to recover. Corellium's FDUTPA claim must be dismissed.

> **B. Corellium Fails To State A Claim Under The UCL (Counts V, VI, X).**

Corellium likewise misstates the law with respect to California's UCL. In particular, and contrary to Corellium's assertion, courts regularly evaluate and dismiss UCL claims on the basis that a party has not adequately alleged a deceptive, fraudulent, or unfair business practice. *See, e.g., Shaeffer v. Califia Farms, LLC*, No. B291085, 2020 WL 581452, at *10 (Cal. App. Feb. 6, 2020) (affirming dismissal of UCL claims about "No Sugar Added" fruit juice); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168–71 (9th Cir. 2012) (affirming dismissal of UCL claims about credit card fees); *Dakin v. BMW of N. Am., LLC*, No. 3:19-CV-00818-GPC-BGS, 2019 WL 5788324, at *5–6 (S.D. Cal. Nov. 6, 2019) (dismissing UCL claim about car engine failure after express warranty expired).

In addition, as a threshold matter, Corellium continues to fail to state a claim under the UCL because it has not alleged a claim for restitution as that term is defined under *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937 (Cal. 2003), and its progeny. *See* ECF No. 99 at 18–

19. Corellium "is not seeking the return of money that was once in its possession," and its UCL claims must be dismissed. *Rave Wonderland, Inc. v. City Lingerie, Inc.*, No. 19-CV-4546-RSWL-MRW, 2019 WL 6792808, at *4–5 (C.D. Cal. Sept. 11, 2019) (dismissing restitutionary claims in case between competitive clothing stores).

Corellium relies on *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 812 (N.D. Cal. 2011) for the proposition that recovery of the value of certain "vested interests" is restitutionary. ECF No. 135 at 18. But Corellium does not plead a "vested interest." A vested interest is "unconditional" and "absolute." VESTED, Black's Law Dictionary (11th ed. 2019). Corellium's counterclaims acknowledge that Apple imposes eligibility conditions on bug bounties, and only submissions that Apple determines meet the program's eligibility requirements will be awarded and paid. ECF No. 64 at 30, 31, 32 (Counterclaims ¶¶ 11–15, 19, 22). Thus, the success of Corellium's theory requires conditional steps: first, that Apple should have deemed Corellium's submissions qualifying, and second, that Apple should then have paid Corellium for the bugs. This required analysis makes Corellium's interest in payment conditional on either Apple's internal determinations or a finding of liability in this litigation. That is an expectation interest, not a vested interest. *Korea Supply*, 63 P.3d at 947–48. Moreover, Corellium does not request return or destruction of the bug reports it claims to have made. ECF No. 64 at 58–59. Rather, Corellium seeks $300,000—the amount it contends Apple was obligated to pay for the bugs under the parties' agreement. Corellium requests an expectation damages remedy, not a restitutionary remedy available under the UCL. *See Zhang v. Superior Court*, 304 P.3d 163, 168 (Cal. 2013) ("Compensatory damages are not recoverable as restitution.")

Corellium fails to state a claim with respect to the "unlawful" prong of the UCL because it fails to allege a violation of law. *See* ECF No. 99 at 15–16; *see also infra* at 7–10. In addition, Corellium misstates the applicable law regarding the "unfair" prong of UCL claims. ECF No. 135 at 15–17. Corellium alleges it is a competitor of Apple. ECF No. 64 at 1, 11, 12, 46, 49. Apple thus correctly relied on the "tethering" test applicable to competitors in UCL cases, a test Corellium fails. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999); *see* ECF No. 99 at 16.[1] Corellium's opposition advances a half-hearted attempt to satisfy this

---

[1] Corellium advocates for application of an easier "balancing" test over the more stringent "tethering" test. ECF No. 135 at 16–17. Corellium cites *Graham* for the proposition that both

6

"tethering" test by asserting that Apple's control over security research inhibits the policy goals undergirding the new California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.100 *et. seq*. *See* ECF No. 135 at 17.  This theory is nowhere advanced in Corellium's counterclaims and is facially absurd.  *See* Cal. Civ. Code § 1798.150 (consumer cause of action for CCPA security breaches cannot "serve as the basis for a private right of action under any other law"); "California Consumer Privacy Act (CCPA)," 3 E-Commerce & Internet Law 26.13A (2020 update) ("What this means is that a violation of the statute could *not* form the basis for a claim under California's notorious section 17200, which typically affords a cause of action for violation of other statutes, laws or regulations.").

Even if Corellium might be considered a "consumer" of products or services offered by Apple (and it is not, for the reasons outlined above with respect to the FDUTPA), Corellium misstates the law that would apply.  For consumer cases, there are two primary tests: one is the same as the competitor "tethering" test—*i.e.*, that the harm is tethered to a particular constitutional, statutory, or regulatory decision.  *Scripps Clinic v. Superior Court*, 134 Cal. Rptr. 2d 101, 116 (Cal. App. 2003).  The other borrows from the three-pronged test set forth in the Federal Trade Commission Improvement Act: "the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided."  *Daugherty v. Am. Honda Motor Co., Inc.*, 51 Cal. Rptr. 3d 118, 129  (Cal. App. 2006).  Corellium cites to the older "balancing" test, which though not yet formally rejected with respect to consumer cases, has been called into doubt by California courts in recent years.  *Davis*, 691 F.3d at 1152 (summarizing history of test); *Graham*, 172 Cal. Rptr. 3d at 233–34 (same).  Under either of the modern tests (the "tethering" test or the FTC test), Corellium fails to state a claim:  it does not tether its claims to a constitutional, statutory, or regulatory decision, and it does not allege a substantial injury to consumers that the consumers could not reasonably have avoided.

Ultimately, Corellium alleges nothing more than a "dispute between commercial parties over their economic relationship."  *In re ConocoPhillips Co. Serv. Station Rent Contract Litig.*,

---

tests are accepted under California law; however, *Graham* only explains the "balancing" test as background for rejecting it.  *Graham v. Bank of Am., N.A.*, 172 Cal. Rptr. 3d 218, 233–34 (Cal. App. 2014) (declining to apply balancing over tethering test); and the California expressly rejected the "balancing" test with respect to competitors in 1999, *see Cel-Tech*, 973 P.2d at 544.

No. M:09-CV-02040 RMW, 2011 WL 1399783, at *3 (N.D. Cal. April 13, 2011). That is not a claim cognizable under the UCL. *Id.*

### III. CORELLIUM FAILS TO STATE A CLAIM FOR CONSTRUCTIVE FRAUD (COUNTS III, IV).

Under both California and Florida law, constructive fraud claims require a relationship between the parties akin to a fiduciary relationship, in which there is a degree of dependency by one party that gives rise to a duty of care to advise on the other party's part. *XP Glob., Inc. v. AVM, L.P.*, No. 16-CV-80905, 2016 WL 4987618, at *8 (S.D. Fla. Sept. 19, 2016); *Patriot Sci. Corp. v. Korodi*, 504 F. Supp. 2d 952, 966 (S.D. Cal. 2007) (applying Cal. Civ. Code § 1573); *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 540 (Fla. Dist. Ct. App. 2003); *see also Tyler v. Children's Home Society*, 35 Cal. Rptr. 2d 291, 312–13 (Cal. App. 1994).

Corellium does not dispute this body of law, but argues that by participating in a voluntary program where it, an alleged competitor of Apple (ECF No. 64 at 1, 11, 12, 46, 49), submitted bugs to Apple for payment (ECF No. 64 at 33 (Counterclaims ¶ 27)), it somehow made itself vulnerable such that it was relying on Apple's advice and guidance. But "[b]usiness relationships are not ordinarily confidential relationships." *Linville v. Ginn Real Estate Co., LLC*, 697 F. Supp. 2d 1302, 1309 (M.D. Fla. 2010). Arms-length business transactions cannot form a basis for constructive fraud. *Triumph Furniture Processing-Exp. Joint Stock Co. v. Everest Furniture Co.*, No. 13-CV-01729 NC, 2013 WL 9600372, at *4 (N.D. Cal. Aug. 29, 2013), *report and recommendation adopted*, 2014 WL 4211076 (N.D. Cal. Aug. 25, 2014).

The facts pleaded by Corellium do not come close to establishing the kind of relationship required for these claims to survive dismissal. "The fact that one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party." *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005); *see also Davies v. Krasna*, 535 P.2d 1161, 1166 (Cal. 1975) ("A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind."). There is no allegation that Apple engaged in an affirmative undertaking to "advise, counsel, and protect" Corellium. *Lanz v. Resolution Tr. Corp.*, 764 F. Supp. 176, 179 (S.D. Fla. 1991); *accord Younan v. Equifax Inc.*, 169 Cal. Rptr. 478, 489 n.15 (Cal. App. 1980).

Corellium alleges that, by voluntarily participating in Apple's Bug Bounty Program, it placed its trust in Apple that Apple would abide by published program policies. ECF No. 64 at

8

39, 41, 43 (Counterclaims ¶¶ 51, 63, 75). This is insufficient as a matter of law to allege a confidential or fiduciary relationship. As the Eleventh Circuit aptly summarized in affirming dismissal of a count of constructive fraud: "the mere fact that [one corporation] 'stands in a position of greater bargaining power by virtue of its global economic status is . . . not sufficient by itself to impose a fiduciary obligation.'" *Servicios De Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Int'l, Inc.*, 264 F. App'x 878, 881–82 (11th Cir. 2008) (quoting *Am. Honda Motor Co.*, 390 F. Supp. 2d at 1180). The two cases cited by Corellium, which represent the outer limits of this doctrine, demonstrate that Corellium is far outside it. In *Mayor's Jewelry, Inc. v. Barry N. Meyrowitz & Meyrowitz, Inc.*, the parties had a contractual relationship that lasted "many years" and required the plaintiff to place particular confidence in the defendant's selection of gemstones to fulfill specific requests of plaintiff's customers. No. 12-80055-CIV, 2012 WL 2344609, at *8 (S.D. Fla. June 20, 2012). In *PEO Experts CA, Inc. v. Engstrom*, the parties were long-term *business partners* in a long-term relationship. No. 2:17-CV-00318-KJM-CKD, 2018 WL 3817561, at *6 (E.D. Cal. Aug. 10, 2018). Corellium alleges no such long-standing or close relationship with Apple. "The mere fact that in the course of their business relationships the parties reposed trust and confidence in each other does not impose any corresponding fiduciary duty in the absence of an act creating or establishing a fiduciary relationship known to law." *Worldvision Enters., Inc. v. ABC, Inc.*, 191 Cal. Rptr. 148, 152 (Cal. App. 1983). Corellium's constructive fraud claims must be dismissed.

## IV. CORELLIUM FAILS TO STATE A CLAIM FOR QUANTUM MERUIT (COUNTS VIII, IX).

Finally, Corellium fails to state a claim for quantum meruit.[2] Superficially, this is a closer question than Corellium's other counterclaims: it is, after all, not uncommon for parties to plead breach of contract and quantum meruit in the alternative when it is not known whether the defendant will affirm or reject the parties' agreement. But here, Corellium knows a contract between it and Apple governs the Security Bounty Program *and acknowledged as much in its initial Answer*. It then crafted its current Answer and Counterclaims in an attempt to avoid this reality. Corellium's original Answer expressly acknowledged that participants in the Security Bounty Program must create an Apple Developer Account (ECF No. 42 at 23, 24 (Counterclaims

---

[2] For ease of reference, and for the reasons explained in Apple's Motion to Dismiss (ECF No. 99 at 11 n.7), this Reply refers to Corellium's claims for "Unjust Enrichment/Quantum Meruit" as quantum meruit claims.

¶¶ 10, 17)) and, in so doing, agree to the Apple Developer Agreement. Consideration of those two express agreements (ECF No. 99-1, 99-2) as part of Apple's Rule 12(b)(6) motion is therefore appropriate. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Davis*, 691 F.3d at 1160–61. Indeed, Corellium's argument that the Security Bounty Program guidelines, standing alone, are illusory, is itself precluded by the fact that the Security Bounty Program guidelines do not stand alone; rather, they are an addendum to the comprehensive Apple Developer Agreement that governs the parties' relationship. Although Corellium now artfully pleads breach of contract "in the alternative" to its quantum meruit claims (*see* ECF No. 64 at 55–57 (Counts XI–XII)), the existence of a contract precludes Corellium's quantum meruit claims. *See* ECF No. 99 at 11–15.

The reason contract claims preclude quantum meruit claims is because the existence of adequate legal remedies precludes equitable ones, and because quantum meruit is needed only to supply contract terms when no express terms exist. As stated throughout this Reply, Corellium has pleaded no entitlement to any form of equitable relief, including an injunction or restitution. *See supra* Parts I.B, II.B. Corellium's dozen claims all rest on the same underlying facts, and several sound in law and damages. ECF No. 64 at 40 ¶ 59 (Count III); *id.* at 42 ¶ 71 (Count IV); *id.* at 50 ¶ 122 (Count VII); *id.* at 56 ¶ 167 (Count XI); *id.* at 57 ¶ 175 (Count XII). These all bar Corellium's pursuit of quantum meruit claims. *See, e.g. Am. Honda Motor Co.*, 390 F. Supp. 2d at 1178 ("[B]ecause an adequate remedy exists at law, the Defendants have not stated a claim upon which relief may be granted."); *accord Martinez v. Weyerhaeuser Mortg. Co.*, 959 F. Supp. 1511, 1518–19 (S.D. Fla. 1996). The fact that Apple simultaneously seeks to dismiss all but the contract claims does not change the calculus. Should Corellium "ultimately be unable to recover under either a contract or tort theory, it does not mean a legal remedy was unavailable (thereby justifying an equitable remedy of unjust enrichment), but only that their claim lacks merit." *In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014), *order corrected on denial of reconsideration*, No. 11-CV-2953-RS, 2014 WL 12649204 (N.D. Cal. Apr. 15, 2014). In short, Corellium's multiple claims for legal relief, all of which establish the availability of a legal remedy, alone bar Corellium's claims for quantum meruit.

## CONCLUSION

For the foregoing reasons, Apple respectfully requests that this Court dismiss Counts I–X of Corellium's counterclaims for failing to state a claim upon which relief can be granted.

| | |
|---|---|
| Dated: February 18, 2020 | Respectfully Submitted, |
| | |
| | s/ Martin B. Goldberg |
| Kathryn Ruemmler* | |
| *kathryn.ruemmler@lw.com* | Martin B. Goldberg |
| Sarang Vijay Damle* | Florida Bar No. 0827029 |
| *sy.damle@lw.com* | *mgoldberg@lashgoldberg.com* |
| Elana Nightingale Dawson* | *rdiaz@lashgoldberg.com* |
| *elana.nightingaledawson@lw.com* | LASH & GOLDBERG LLP |
| LATHAM & WATKINS LLP | 100 Southeast Second Street |
| 555 Eleventh Street NW, Suite 1000 | Miami, FL  33131 |
| Washington, DC 20004 | (305) 347-4040 / (305) 347-4050 Fax |
| (202) 637-2200 / (202) 637-2201 Fax | |
| | |
| Andrew M. Gass* | |
| *andrew.gass@lw.com* | |
| LATHAM & WATKINS LLP | |
| 505 Montgomery Street, Suite 2000 | |
| San Francisco, CA 94111 | |
| (415) 391-0600 / (415) 395-8095 Fax | |
| | |
| Jessica Stebbins Bina* | |
| *jessica.stebbinsbina@lw.com* | |
| LATHAM & WATKINS LLP | |
| 10250 Constellation Blvd., Suite 1100 | |
| Los Angeles, CA 90067 | |
| (424) 653-5500 / (424) 653-5501 Fax | |
| | |
| *Admitted pro hac vice | |

*Attorneys for Plaintiff* APPLE INC.