# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-cv-81160-RS

APPLE INC.,

                    Plaintiff,

   v.

CORELLIUM, LLC,

                    Defendant.

**DECLARATION OF CRAIG FEDERIGHI IN SUPPORT OF
PLAINTIFF APPLE INC.'S MOTION FOR PROTECTIVE ORDER**

1. My name is Craig Federighi. I am over the age of 21. I have personal knowledge of the facts contained herein, which are true and correct. If called as a witness, I could competently testify to these statements.

2. I am the Senior Vice President of Software Engineering at Apple Inc. ("Apple"). In this role, I report directly to Apple's CEO, Tim Cook. I am one of a small number of Apple employees of this seniority.

3. Apple is a company that manufactures and markets smartphones, personal computers, tablets, wearables, and accessories, and sells a variety of related services. As of Fall 2019, Apple employed approximately 137,000 full-time equivalent employees.

4. As the Senior Vice President of Software Engineering, I oversee software development for the operating systems in all Apple products and supervise multiple engineering teams responsible for developing Apple's software and applications. As a senior officer of Apple, I must carefully manage my schedule so that I can fulfill my duties to the Company and its shareholders.

5. I currently lead approximately 5,800 full-time equivalent employees.

6. Because of my role in the company, I am generally not involved in the day-to-day

1

activities of the engineers and other employees that I lead.  However, I endeavor to stay updated on the development of the various projects in the Software Engineering group by staying in close communications with the senior directors and managers guiding all ongoing work in the group.

7. I also participate on a limited basis in various engineering decisions, if necessary, to provide guidance and leadership for important determinations or to protect the company and its investors.  Similarly, I am involved at a limited and high-level basis in decisions to acquire new technology (and related "acqui-hires" of associated employees) relevant to my oversight areas.

8. I am aware of Apple's investigation into a potential acquisition of Corellium, LLC, and its technology around the spring and summer of 2018.  I did not actively participate in any aspect of the investigation of and due diligence regarding a potential Corellium acquisition.  My involvement was limited to the following three components.  First, I approved of the effort initially proposed to me by Ivan Krstić to investigate the possibility of acquiring Corellium and hiring some of its employees, including Chris Wade.  Second, I received periodic updates from senior employees, including Jon Andrews and Mr. Krstić, directly involved with the acquisition evaluation.  Third, I met with Chris Wade on two occasions relating to Corellium, though my recollection of those occasions is limited, as well as possibly a third meeting several years earlier and unrelated to Corellium.

9. Specifically, my calendar reflects a meeting with Chris Wade on March 1, 2018, during which Mr. Wade demonstrated Corellium's technology to some of our employees.  At least two other Apple employees who report to me, Mr. Krstić and Sebastien Marineau-Mes, attended the same demonstration.  My recollection of the meeting is limited to Chris Wade demonstrating booting a hacked version of iOS via a web browser user interface.

10. My calendar also reflects a one-hour meeting between me and Mr. Wade on July 24, 2018, well into the acquisition process and after technical and other diligence had been completed by others at Apple.  The purpose of that meeting was to determine whether Chris Wade would be a good "fit" for our organization.  My recollection of that meeting is very limited, but I do recall discussing with Mr. Wade our personal backgrounds and interests, Apple's culture, and how Mr. Wade might contribute to Apple as a potential hire.  I have no recollection of discussing any aspects of Corellium's technology during that meeting, or any other details regarding Apple's potential acquisition of Corellium.

11. My calendar entries also reflect that I, together with Mr. Marineau-Mes, may have

met with Mr. Wade several years earlier, in 2014, relating to his then being potentially hired by Apple. I have no recollection of this meeting, and my understanding is that Apple did not hire Mr. Wade at any time.

12. Consideration of other companies for acquisition is a very small part of my responsibilities as Senior Vice President for Software Engineering for Apple, and the potential acquisition of Corellium was just one of many potential acquisitions that my teams consider on a regular basis.

13. Even if I was able to refresh my memory regarding the details of the potential acquisitions of Corellium, any knowledge I have is far more limited than, and inferior to, the knowledge of other Apple employees including, but not limited to, Mr. Andrews and Mr. Krstić, who were actively involved in the evaluation of Corellium, its personnel, and its technology in spring and summer 2018.

14. On Saturday, February 8, 2020 a process server was outside of my home. He came to my front door and attempted to serve a subpoena to me, but my wife turned him away.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 18, 2020
in Cupertino, CA.

Craig Federighi
Senior Vice President, Software Engineering
Apple Inc.