UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:19-cv-81160-RS

APPLE INC.,

 Plaintiff,
v.

CORELLIUM, LLC,

 Defendant.

_____/

**CORELLIUM'S RESPONSE IN OPPOSITION TO PLAINTIFF APPLE INC.'S
MOTION FOR PROTECTIVE ORDER BARRING DEPOSITION OF PLAINTIFF'S
<u>APEX EMPLOYEE AND INCORPORATED MEMORANDUM OF LAW</u>**

Defendant, Corellium, LLC ("Corellium") pursuant to Local Rules 7.1 and 26.1 and by and through the undersigned counsel, files this Response in Opposition to Plaintiff Apple Inc.'s ("Apple") Motion for Protective Order Barring Deposition of Plaintiff's Apex Employee and Incorporated Memorandum of Law [D.E. 158] ("Motion"), and in support thereof, states as follows:

# LEGAL MEMORANDUM

## I.    The Apex Doctrine is Not Applicable to Craig Federighi

<u>Via text message</u>:

    *Chris Wade:*[1] "Why haven't you [Apple] bought me yet!"

    *Ivan Krstic:*[2] "Hahah that's the question to ask Craig [Federighi]"[3]

<u>Via text message</u>:

    *Ivan Krstic*: "Craig [Federighi] is the guy to convince when it comes to remote work"[4]

<u>Via text message</u>:

    *Chris Wade*: "They [Apple] said they [Apple] would have to talk to Craig [Federighi]"

    *Ivan Krstic*: "Talk to Craig [Federighi] about what?"

    *Chris Wade*: "About the deal I guess."[5]

```
>>>>>> On Jun 4, 2014, at 11:00 PM, Sebastien Marineau-Mes <smarineaumes@apple.com> wrote:
>>>>>>
>>>>>> Hi Chris,
>>>>>>
>>>>>> I hope you're enjoying the show!
>>>>>>
>>>>>> Wanted to follow-up after the meeting with Craig. We debriefed and believe there are a number of avenues
for your technology within Apple. Steve and I would like to have a call or meeting with you before you leave the
valley - when do you leave and/or are you available for a call tomorrow?
>>>>>>
>>>>>> Thanks,
>>>>>>
>>>>>> Sebastien
```

Ex. 17. The Apex witness doctrine is a safeguard against the use of depositions for the purposes of harassment. It is not a tool to protect all high-ranking corporate executives from the apparent inconvenience of sitting for a deposition. Where a deposition is sought to investigate pertinent first-hand knowledge, that doctrine does not apply. Mr. Federighi was the Apple executive in charge of negotiating the acquisition of defendant Corellium. He is the sole source of direct first-hand knowledge relevant to Corellium's affirmative defenses, is a witness that Corellium intends to call at trial and must be deposed.

---

[1] Chris Wade ("Mr. Wade") is Corellium Chief Technology Officer.
[2] Ivan Krstic is an Apple employee.
[3] Ex. 7
[4] Ex. 14
[5] Ex. 15

The "apex" doctrine does not exist to protect high ranking executives with first-hand knowledge from deposition in the ordinary course of litigation. No case better illustrates this than Apple's motion to compel the deposition of ten Samsung executives, including Samsung's CEO, in 2012. *See Apple Inc. v. Samsung Elecs. Co.*, Ltd, 282 F.R.D. 259, 263-265 (N.D. Cal. 2012). "When a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition." *Id*. at 262–63. "'[A] party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied.' Thus, it is very unusual 'for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances.'" *Id*. at 259, 263 (internal citations omitted). Mr. Federighi has extensive, firsthand knowledge of key facts relevant to this lawsuit. As such, Mr. Federighi is subject to deposition. While Mr. Federighi may be a relatively high-ranking corporate official, "[t]he purpose of the apex doctrine is to prevent the potential harassment and abuse of high-level corporate executives where he or she has little or no knowledge." *Reilly v. Chipotle Mexican Grill, Inc.*, No. 15-CV-23425, 2016 WL 10644064, at *6 (S.D. Fla. Sept. 26, 2016); *Brown v. Branch Banking & Tr. Co.*, 2014 WL 235455, at *2 (S.D. Fla. Jan. 22, 2014). Apple has not and cannot meet the heavy burden of showing that such harassment and abuse is the goal of the deposition of Mr. Federighi.

Corellium is seeking to depose Mr. Federighi, and to call Mr. Federighi at trial, to testify about his unique, relevant, personal knowledge and his decision-making process that resulted in the failed acquisition of Corellium by Apple.[6] The balancing test under the "apex" doctrine is a "sliding scale" wherein the closer that a proposed witness is to the apex of some particular peak in the corporate mountain range, and the less directly relevant that person is to the evidence proffered in support of his deposition, the more appropriate the protections of the apex doctrine become. *Apple*, 282 F.R.D. at 263 (N.D. Cal. 2012).  This balancing test breaks in favor of denying such protections where, as here, the proposed witness was the sole decision maker on behalf of the Plaintiff related to events that are central to defendants' affirmative defenses.  *See* Ex. 1, 5, 7, 9–18. Corellium rightfully seeks the deposition of Mr. Federighi to obtain unique, firsthand

---

[6] Corellium has maintained this position throughout the lawsuit, as evidenced by Corellium's Rule 26(a)(1) Initial Disclosures, served on September 11, 2019, in which Corellium identifies Mr. Federighi as having discoverable information related to "Apple's consent, authorization, encouragement, and acknowledgment of Corellium's business purpose, software, uses and potential uses . . . .". Ex. 2 at 4–5

information critical to Corellium's defense,[7] which Corellium has the legal right to perpetuate. *S.E.C. v. Tucker*, 130 F.R.D. 461, 463 (S.D. Fla. 1990) ("the Defendants have a right to defend.").

## II. Mr. Federighi's Deposition does not Qualify for "Apex" Protection

"Although no *per se* rule prohibits depositions of top corporate executives, 'courts frequently restrict efforts to depose senior executives where the party seeking the deposition can obtain the same information through a less intrusive means, or where the party has not established that the executive has some unique knowledge pertinent to the issues in the case.'" *Brown v. Branch Banking & Tr. Co.*, 2014 WL 235455, at *2 (S.D. Fla. Jan. 22, 2014); *Simon v. Pronational Ins. Co.*, 2007 WL 60757, at *1 (S.D. Fla. Dec. 13, 2007). Importantly, however, "exhaustion of other discovery methods is an important, but not dispositive, consideration for a court to take into account in deciding how to exercise its discretion.'" *Reilly v. Chipotle Mexican Grill, Inc.,* 2016 WL 10644064, at *7 (S.D. Fla. Sept. 26, 2016); *see also In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2014 WL 939287, at *1 (N.D. Cal. Mar. 6, 2014) (noting that exhaustion of other discovery routes is an "important consideration" but not a necessary precondition to the taking of an apex deposition). "The party seeking the deposition of the high-ranking official has the burden to show that the deposition is necessary." *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015). However, "it is very unusual 'for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances.'" *Apple Inc*, 282 F.R.D. at 262–63. "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." Apple, 282 F.R.D. at 263 (N.D. Cal. 2012).

### a. Mr. Federighi Has Unique, Firsthand Knowledge

Mr. Federighi has direct knowledge of and was personally involved in numerous key events central to this lawsuit and is the *only* Apple employee with direct knowledge of certain facts relevant to those events. Not only was Mr. Federighi the only Apple employee present for a crucial one-on-one meeting with a member of the Corellium executive team, but he also met with the Corellium team on multiple occasions; he was the decision-maker on behalf of Apple both in

---

[7] Mr. Federighi's unique, firsthand knowledge is directly relevant to several of Corellium's affirmative defenses including fair use, particularly transformativeness, laches, and acquiescence.

acquisition negotiations and, when those negotiations failed, in bringing this lawsuit. *See* Ex. 1, 5, 7, 9–18. On July 24, 2018, Corellium's Chief Technology Officer, Chris Wade ("Mr. Wade"), flew to Cupertino, California, specifically to have a one-on-one meeting with Mr. Federighi. *See* Ex. 1 at ¶ 12. This was one of four on-site meetings between Apple and Corellium, and only Mr. Wade and Mr. Federighi were present at this meeting. Importantly, this was the last meeting between Corellium and Apple prior to Corellium's decision not to accept Apple's offer to purchase Corellium, and it was the last meeting before the instigation of the instant lawsuit. Accordingly, this meeting was a critical turning point of events that relates directly to Corellium's affirmative defenses, including acquiescence and laches. Mr. Federighi's decision-making process on behalf of Apple is relevant to the intrinsic value ascribed by Apple to the Corellium product relevant to Corellium's defenses including fair use.

In his Declaration, Mr. Federighi states that the purpose of this meeting was to "determine whether Chris Wade would be a good 'fit' for our organization . . . ." *See* Motion at Ex. A ¶ 10. He thus admits to personal knowledge but misrepresents its extent. In context, Mr. Federighi's stated reason for this meeting makes little sense and must be tested at deposition. At this time, Apple had already made an offer to Corellium, which included an offer for Mr. Wade to join Apple as part of the acquisition. *See generally* Ex. 20. Mr. Wade and Mr. Federighi had also met on at least two previous occasions; Mr. Wade had been offered a position at Apple as part of the prior acquisition discussions of Virtual in 2014; and Mr. Wade had been interviewed by other Apple employees on multiple occasions since at least as far back as 2011. *See* Ex. 1. The seriousness and importance of this meeting is further evidenced by the fact that directly after the July 24th one-one-one meeting, Corellium and its executive team members had an "apple debrief / strategy call." *See* Ex. 19. According to Mr. Wade's recollection of the meeting, it was a negotiation related to the acquisition price and the valuation of Corellium.[8] *Id.*; *see also* Ex. 5, 9, 11, 18. Mr. Federighi's incredulous contention that it was merely an interview is thus subject to dispute and investigation here.

In order to demonstrate Corellium's value above and beyond what had previously been displayed, Mr. Wade prepared a new presentation for Mr. Federighi, with material that had not

---

[8] In preparation for the July 24th meeting, notes were prepared for Mr. Wade that outline the topics discussed. *See* Ex. 5. Inherent in these topics is information regarding the transformativeness of Corellium's product, which goes directly to fair use and was only shared with Mr. Federighi.

been shown to anyone at Apple, including slides depicting the novel concept "Swift in the Cloud." *See* Ex. 1 at ¶ 14, Ex. 3, Ex. 20. Mr. Wade's notes demonstrate in detail the pitch that he prepared for this meeting. *See* Ex. 5. Further, during this meeting, Mr. Wade played a video of Mr. Federighi's WWDC keynote on a virtual device, demonstrating that the team had successfully added video and audio capability to the platform. *See* Ex 21 at ¶ 8. Then, directly after the one-on-one meeting, Ivan Krstic, an Apple employee, exchanged text messages with Mr. Wade in which Mr. Wade stated, "I told him [Mr. Federighi] that we would be happy to give [Apple] a bunch of servers and set up at Apple hq as a POC so he could see the results of the tests for himself (as in bugs and stuff they find) maybe then he would reconsider the value." *See* Ex. 9. Both the technical advancements and the strategic ideas that Mr. Wade presented to Mr. Federighi in this meeting and Mr. Federighi's knowledge, responses, and directives to his subordinate are relevant to Corellium's defenses of fair use, including the transformative nature of the product, as well as to its defenses of estoppel, laches, and acquiescence.

Similarly, Apple's contention that Mr. Federighi's "knowledge about matters at issue in this lawsuit . . . is based entirely on either meetings at which other Apple employees were also present or information provided to him by other Apple employees," is irrelevant. *See* Motion, pg. 1, 4. Mr. Federighi is the only individual who can attest to Mr. Federighi's mental impressions of what occurred at the critical July 24, 2018 meeting with Mr. Wade as he was the *only* Apple employee in attendance.

To illustrate this point, consider Corellium's Request for Admission Nos. 184 and 185. *See* Ex. 4 at 111–112. These requests ask Apple to admit that it is aware that Facebook and Microsoft utilize jailbroken iOS devices for security testing. *Id.* Apple denied these Requests. *Id.* This notwithstanding, Mr. Wade and Mr. Federighi specifically discussed this information during their July 24, 2018 meeting. *See* Ex. 1 at ¶ 14. By not allowing Corellium to depose Mr. Federighi, Corellium will wrongfully be denied its right to disprove Apple's incorrect responses. But, more importantly, Apple's incorrect answers are indicative that only Mr. Federighi possesses the correct information.

In another example as to why Mr. Federighi is necessary for deposition, Apple takes the position in its Motion that Mr. Federighi "was involved in no correspondence with Mr. Wade. *See* Motion at 1. Again, this is simply incorrect. Indeed, on November 4, 2019, Mr. Wade sent a lengthy email to Mr. Federighi. *See* Ex. 6. This email again illustrates the need for Mr. Federighi's

deposition to address extremely concerning statements such as Mr. Federighi "was involved in no correspondence with Mr. Wade." *See* Motion at 1.

Beyond the July 24, 2018 meeting between Mr. Wade and Mr. Federighi, it is important to highlight that Mr. Federighi previously met with Mr. Wade, Stanislaw Skowronek, and David Wang, all of which are Corellium team members, for a technical due diligence meeting where the features and capabilities of Corellium's product were discussed. This notwithstanding, Mr. Federighi takes the position that "[he] did not actively participate in any aspect of the investigation of and due diligence regarding the potential Corellium acquisition." *See* Motion at Ex. A ¶ 8.

Moreover, Mr. Federighi and Mr. Wade's relationship predates the formation of Corellium. *See generally* Ex. 8, 15, 16, 17. Indeed, the two individuals met in 2014 as a result of Apple's interest in acquiring Virtual, a virtualization company that Mr. Wade was associated with that offered similar technology to that of Corellium. *See* Ex. 1 at ¶ 3–5; *see generally* Ex. 18. Mr. Federighi's knowledge of Virtual and ongoing relationship with Mr. Wade is critical to, *inter alia*, Corellium's affirmative defenses, including laches and acquiescence, as well as Corellium's fair use defense. Accordingly, while other Apple employees were present at some of the meetings involving Mr. Federighi and Corellium, Mr. Federighi is the only constant that was present at all the major events and had the decision-making power to effectuate an acquisition.

Finally, and arguably most importantly, Mr. Federighi was, and still is, the decision-maker surrounding acquisition negotiations with Corellium. *See* Ex. 5, 7, 9–18. Indeed, Other Apple representatives have made clear that the final decision-making power regarding the acquisition of Corellium laid with Mr. Federighi. *See* Ex. 7, 9–18. For example, in a text message exchange the day after the one-on-one meeting between Mr. Wade and Mr. Federighi, Ivan Krstic ("Mr. Krstic"), an Apple employee, asks Mr. Wade, "where did you and craig leave it in terms of next steps?" *See* Ex. 10. Mr. Wade responded with a screenshot conversation he had with Jon Andrews in which Mr. Wade stated, "Let me know if you talk to Craig. I would love to report back to the team that it went well." *Id.* Jon Andrews responded, "Yes. I think it went well from [Mr. Federighi's] point of view" "I only got a quick summary." *Id.* A few days later, Mr. Wade and Mr. Krstic again shared a text message conversation in which Mr. Wade stated, "Jon [Andrews] said meeting went well but he doubts it will change Craig's mind on value." *See* Ex. 11. Further, in yet another text message conversation with Mr. Krstic, Mr. Wade proclaimed, "Why haven't you [Apple] bought me yet!" to which Mr. Krstic responded, "[h]ahah that's the question to ask Craig" *See* Ex. 7. The

list of such conversations continues. Mr. Federighi is in charge when it comes to Apple's decisions to acquire Corellium—he is the decision-maker. Therefore, as no one other than Mr. Federighi can attest to the reasoning behind Mr. Federighi's decisions relating to Corellium, Mr. Federighi possesses unique, firsthand knowledge unattainable from any other source. *Reilly*, No. 15-CV-23425, 2016 WL 10644064, at *7 (holding that Plaintiff satisfied the first Apex factor because, *inter alia*, the executive Plaintiff sought to depose had "direct involvement with the approval of Chipotle's marketing decisions"). As such, the deposition of Mr. Federighi—the decision-maker—is essential for Corellium's affirmative defenses, especially as it relates to the notice requirements of both acquiescence and laches.

In summary, despite Apple's contention that Mr. Federighi merely has a "managerial level of knowledge" and is "generally not involved in the day-to-day activities," that does not Apply to the acquisition of Corellium. *See* Motion at 4, Ex. A ¶ 6. Mr. Federighi was very much involved in the meetings with Corellium, including a one-on-one meeting with Corellium's CTO, Mr. Wade, Mr. Federighi was the final decision-maker as to the acquisition of Corellium. Therefore, Mr. Federighi is a material fact witness possessing unique, firsthand knowledge and is subject to deposition. *See Hickey v. N. Broward Hosp. Dist.*, No. 14-CV-60542-BLOOM, 2014 WL 7495780, at *3 (S.D. Fla. Dec. 17, 2014).

### b. Corellium Has Exhausted Less Intrusive Discovery Means

Initially, Corellium satisfies the second Apex factor relating to exhaustion of less intrusive discovery means to obtain the information sought from Mr. Federighi. Indeed, Corellium has served extensive discovery requests that broadly seek information relative to Corellium and Mr. Wade, which inherently includes all documents and information related to Mr. Federighi and this lawsuit. In fact, Corellium's discovery efforts have been so much that the Court during the February 12–13 discovery hearing ordered that Corellium limit its requests and be more focused in its efforts. Accordingly, Corellium seeks to comply with the direct order of the Court.

Furthermore, even with the service of extensive discovery requests, the information sought from Mr. Federighi has proven to not be contained in documents or interrogatories, as evidenced by Apple's proclamation that "[o]f over 3,420 documents Apple has produced . . . Mr. Federighi is a custodian of just 15 that mention Mr. Wade or Corellium" *See* Motion at 1. Instead, the information Corellium seeks, as discussed above, exists only inside Mr. Federighi's own mind. Accordingly, while Corellium can continue to propound discovery in a further attempt to uncover

the information that only Mr. Federighi possesses, its efforts would most certainty be in vain. Nor should Corellium be required to endure the expense of deposing every single Apple employee that Mr. Federighi may have shared his thinking with when a deposition of Mr. Federighi alone would yield the relevant information.

Additionally, as discussed in greater detail above, the information that Apple has provided regarding Mr. Federighi has proven to be misleading and incorrect. This point can quickly be demonstrated by Apple's Response to Corellium's Request for Admission Nos. 184 and 185 in which Apple incorrectly denied information Corellium knows to have been discussed directly with Mr. Federighi. *See* Ex. 1 at ¶ 14. Or by Mr. Federighi's denial of any correspondence with Mr. Wade, notwithstanding the November 4, 2019 email from Mr. Wade addressed to Mr. Federighi. *See* Motion at 1; Ex. 6. Corellium has the right to build its defense by investigating the veracity of these statements as they relate to what information Apple had about Corellium and when.

Lastly, if Corellium defers Mr. Federighi's deposition until after all the other Apple individuals have been deposed to ensure the uniqueness of Mr. Federighi information, Corellium will be faced with the extreme prejudice of not being able to complete Mr. Federighi's deposition in the allotted discovery window, which the Court has been clear will not change. Therefore, Apple's Motion must be denied.

## CONCLUSION

The Apex Doctrine does not exist as an absolute bar against deposing any high-ranking official. *Apple Inc.*, 282 F.R.D. at 262–63 ("[w]hen a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition."). Apple brought this lawsuit. Apple cannot now be heard to complain that its executives are being inconvenienced by the conduct of litigation. Instead, it exists only as safeguard. *Id.*; *see also Reilly*, No. 15-CV-23425, 2016 WL 10644064, at *6; *Brown*, No. 13-81192-CIV, 2014 WL 235455, at *2. In this case, it is clear that Mr. Federighi must be deposed because he will be a witness with exclusive, first-hand knowledge of relevant facts at trial and Corellium gets to decide which deposition goes first. Accordingly, this Court should deny Apple's Motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of February, 2020, a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

Dated: February 20, 2020                    Respectfully submitted,

                              COLE, SCOTT & KISSANE, P.A.
                              *Counsel for Defendant CORELLIUM, LLC*
                              Esperante Building
                              222 Lakeview Avenue, Suite 120
                              West Palm Beach, Florida 33401
                              Telephone (561) 612-3459
                              Facsimile (561) 683-8977
                              Primary e-mail: justin.levine@csklegal.com
                              Secondary e-mail: lizza.constantine@csklegal.com

By:  *s/ Justin B. Levine*
       JONATHAN VINE
       Florida Bar. No.: 10966
       JUSTIN B. LEVINE
       Florida Bar No.:  106463
       LIZZA C. CONSTANTINE
       Florida Bar No.:  1002945
       MICHAEL A. BOEHRINGER
       Florida Bar No.: 1018486

*and*

NORTON ROSE FULBRIGHT
*Counsel for Defendant*
2200 Ross Ave.
Dallas, Texas 75201
Telephone (214) 855-8000
Facsimile (214) 855-8200
Brett Govett, *Pro hac vice*
E-mail: brett.govett@nortonrosefulbright.com
Robert Greeson, *Pro hac vice*
E-mail: robert.greeson@ nortonrosefulbright.com
Jackie Baker, *Pro hac vice*
E-mail: jackie.baker@nortonrosefulbright.com