EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:19-CV-81160-RS

APPLE INC.,

      Plaintiff,

v.

CORELLIUM, LLC,

      Defendant.

_____/

**DECLARATION OF CHRISTOPHER WADE IN SUPPORT OF CORELLIUM'S RESPONSE TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

1. My name is Christopher Wade and I am over the age of 18, and otherwise *sui juris* in all respects. I make this declaration based upon my personal knowledge.

2. I am a principal and the Chief Technology Officer of Corellium, LLC ("Corellium"), which has been named as a Defendant in the above-captioned case ("Lawsuit") as alleged in Plaintiff, Apple Inc.'s ("Apple") operative Complaint.

3. Over the last decade, Apple has attempted to recruit me for employment on multiple occasions, and it has made offers to acquire at least two companies of which I am or was a principal, including Corellium.

4. In the course of these business dealings, I have met with Apple's Senior Vice President of Software Engineering, Craig Federighi ("Mr. Federighi"), on at least three separate occasions.

5. I first recall meeting with Mr. Federighi when Apple was interested in acquiring my previous company, Virtual. Virtual offered virtualization services similar to that of Corellium.

Apple, with approval by Mr. Federighi, made an offer to acquire Virtual, but Virtual was ultimately acquired by Citrix.

6. Between January and August of 2018, Apple pursued an acquisition of Corellium. During this period, Corellium visited Apple's Cupertino headquarters on four separate occasions for on-site meetings. I was present for each of these meetings.

7. On March 1, 2018, two of Corellium's co-founders, Stanislaw Skowronek and David Wang, accompanied me to Apple's headquarters for a day of technical due diligence meetings. Mr. Federighi was present for the first meeting that day. During this hour-long meeting, we presented a technical demonstration of Corellium's virtualization product.

8. On June 7, 2018, we had another day of due diligence meetings with another development group within Apple.

9. Shortly thereafter, Apple presented an acquisition offer for Corellium. According to multiple Apple employees, this offer had been approved by Mr. Federighi, and further negotiations could only proceed with his direct approval. However, negotiations stalled, as the parties could not meet on terms. Still, both parties were eager to close a deal.

10. In order to break the impasse, a one-on-one meeting was arranged between me and Mr. Federighi, so that he and I could try to convince one another of the value inherent in working with our respective companies, and thereby convince the other to agree to our respective acquisition terms.

11. It was agreed that I would meet with Mr. Federighi because, in part, Mr. Federighi and I were already acquainted. Notably, Apple had already made an offer to acquire Corellium, with an offer for me to join Apple as part of that process. What remained to be determined was whether an agreement could be reached on the terms of the acquisition.

12. On July 24, 2018, I attended a one-on-one meeting with Mr. Federighi at Apple's headquarters. This meeting was a turning point in the acquisition process, and it was the last meeting that transpired between Apple and Corellium during the lengthy acquisition discussions. It was also the last meeting prior to the instigation of this Lawsuit.

13. In preparation for this meeting, Corellium created a slide deck presentation targeted directly to Mr. Federighi and designed to justify Corellium's valuation to Mr. Federighi. Previously, we had demonstrated how Corellium could benefit Apple by providing better solutions for mobile security testing and for automated testing of Apple's iOS software. For my one-on-one meeting with Mr. Federighi, we crafted a presentation to show how Corellium could benefit Apple above and beyond these applications. As Senior Vice President of Software Engineering, Mr. Federighi was uniquely positioned to grasp the broad range of applications for our technology across numerous groups within Apple.

14. As part of this presentation, I presented Mr. Federighi with new material that had not been shown to anyone else at Apple, including several slides on a concept called "Swift in the Cloud." Further, I proposed to Mr. Federighi that Corellium could provide a free trial license for our product, and free server hardware to run it on, so that Apple could verify the value of the technology firsthand before acquiring it. During this meeting, Mr. Federighi and I also discussed other matters salient to this case, such as the use of jailbroken iOS devices by companies like Facebook for mobile security testing.

15. Mr. Federighi's statements, mental impressions, and opinions from the entire acquisition process of Corellium, including the July 24, 2018 meeting, are highly unique as Mr. Federighi, *inter alia*, was 1) the only Apple employee at that meeting (but also in attendance at other meetings), 2) the decision maker relative to the acquisition, 3) involved in the

Virtual/Corellium acquisition discussions from the beginning, 4) the "keeper" as to what value Apple attributed to Corellium, which directly reflects how different, or transformative, Apple believed Corellium's technology was from Apple's and 5) the only Apple employee with a "top down" perspective as to how Corellium was to be implemented across development groups within Apple. This information cannot be obtained from anyone other than Mr. Federighi.

16. Other Apple employees repeatedly represented to me that Mr. Federighi had the ultimate decision-making power regarding the acquisition of Corellium, including the specific details of the terms of the acquisition.

17. Mr. Federighi possesses unique, firsthand knowledge relevant to this Lawsuit.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 24 day of February, 2020.

Christopher Wade
Chief Technical Officer & Co-Founder
Corellium, LLC