# EXHIBIT 1

1

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                      WEST PALM BEACH DIVISION
                   CASE NO. 19-81160-CIVIL-SMITH


APPLE, INC.,                              West Palm Beach, Florida

              Plaintiff,                  February 12, 2020
                                                -and-
         vs.                              February 13, 2020

CORELLIUM, LLC,

              Defendant.                  Pages 1 to 368
_____


                           MOTION HEARING
            BEFORE THE HONORABLE WILLIAM MATTHEWMAN,
                 UNITED STATES MAGISTRATE JUDGE
           (TRANSCRIBED FROM THE DIGITAL AUDIO RECORDING)

APPEARANCES:


FOR THE PLAINTIFF:        JESSICA STEBBINS BINA, ESQ.
                          LATHAM & WATKINS, LLP
                          10250 Constellation Boulevard
                          Suite 1100
                          Los Angeles, California 90067


                          ELANA NIGHTINGALE DAWSON, ESQ.
                          LATHAM & WATKINS, LLP
                          555 Eleventh Street, Northwest
                          Suite 100
                          Washington, DC 20004


                          EMILY PINCOW, ESQ.
                          LASH & GOLDBERG, LLP
                          100 Southeast Second Street
                          Suite 1200
                          Miami, Florida 33131
```

```
 1   of whether or not they've been successful in acquiring the
 2   product.
 3             THE COURT:  So I understand why you might need some
 4   part of 15.
 5             But why is 16 -- if somebody from Czechoslovakia
 6   inquired about the product, why do you need that?
 7             MS. STEBBINS BINA:  Your Honor, this goes directly to
 8   the questions of fair use as well as to the good-faith security
 9   research defense under the DMCA.
10             So one of the things that Corellium has claimed and
11   they claim in their answer as well as in their counterclaims is
12   that they are engaging in good-faith research; that they are
13   helping -- they are helping the security community; their
14   customers are doing good things with the product.
15             And one of the factors in a fair use analysis as well
16   as in the contributory infringement analysis is:  What are the
17   customers doing with the product?
18             So the question --
19             THE COURT:  But you're not asking about customers;
20   you're asking about people -- I mean, it could be a 12-year-old
21   kid who's sitting in Czechoslovakia who sends an email to
22   Corellium.
23             MS. STEBBINS BINA:  And, your Honor, I'm trying to --
24   I'm trying to connect it up.
25             The question is:  We've alleged in our complaint that
```

```
 1   they sell indiscriminately to anyone who is willing to pay and
 2   that that is -- that is actually the opposite of good-faith
 3   security research.  That's extremely dangerous.
 4           For instance, they could be selling to, you know,
 5   adverse governments for the purpose of hacking the iPhones of
 6   American citizens.  They could be selling to criminal hackers
 7   who are looking to evade Apple's good-faith security
 8   parameters.
 9           So one question we have is:  Is there any -- any policy
10   in place at Corellium?  Is there any restriction on who they're
11   selling to?
12           And they've told us:  Yes.  We're careful about our
13   customers.  But they won't answer the question of who they
14   haven't sold to.
15           And so that's what this interrogatory is directed at.
16   It's trying to understand:  Are there people who you're not
17   selling to or do you really sell to anyone who's willing to
18   pay?
19           THE COURT:  All right.  And then finally is 17:  All
20   persons who have offered formally or informally to purchase or
21   acquire part or all of Corellium's business, and describe the
22   circumstances of each offer.
23           Why would that be relevant?
24           MS. STEBBINS BINA:  I think again, your Honor -- and I
25   would note that this one is somewhat more tangential.  But in
```

```
 1    that Corellium has taken with its clients in anticipation of
 2    copyright litigation with Apple is directly descending from
 3    attorney-client privilege and is work product.
 4           THE COURT:  So then you say then you'd have to go into
 5    the analysis of whether there's no other way they can get it
 6    and whether it's so important that they have a right to access
 7    it under work product law.
 8           MR. LEVINE:  Yes, your Honor.  I candidly don't think
 9    it's relevant because it doesn't fall under any necessary
10    elements or factors.
11           But yes.  There would be an analysis thereafter.
12           THE COURT:  All right.  Got it.
13           What about 15 and 16?  15 deals with:  Identify all
14    persons who have requested purchase of license to or any other
15    access to the Corellium Apple product to whom Corellium has
16    refused to sell license or give access.
17           MR. LEVINE:  I can -- I think I can address 15 and 16
18    very quickly.
19           THE COURT:  Sure.
20           MR. LEVINE:  What's being discussed with your Honor is
21    that it's Corellium's position that it only sells to, you know,
22    in short form good clients that are doing good things.
23           Apple has every single one of Corellium's clients.  In
24    fact, in between the time that Corellium provided its initial
25    response -- or answers to interrogatories and when a lot of the
```

1  conferring went on, two additional clients were brought on.
2  And Corellium amended that answer in light of that.
3         So as to Ms. Bina's primary point that they need this
4  information to determine that Corellium is actually selling
5  just to good clients, you only need the client list to
6  determine -- to make that determination.
7         Corellium can't control if a terrible entity emails
8  Corellium and says, Hey, I'm interested in your product and we
9  ignore the email or Corellium ignores the email.  That is what
10 it is.
11        THE COURT:  Let me just ask you this:  Would it be
12 relevant if Corellium has never refused to sell it to anybody?
13        MR. LEVINE:  I -- no.  I don't think it would be.
14        But I can also represent to your Honor that my
15 understanding is that there have been tens of thousands of
16 requests.  And there is only a current list of 20 clients or
17 so.
18        So I mean, we would be happy to put into an affidavit
19 that there has been a refusal.  I don't think that's disputed,
20 though.  So we can certainly deal with that.  But no.  I don't
21 think it's relevant either.
22        But again, Ms. Bina's point is that they need the
23 people who have inquired, the entities who have inquired and/or
24 have been rejected to determine that the entities that
25 Corellium has accepted are good entities.

```
 1              Obviously, if there's a huge number of people, we're
 2   willing to meet and confer.  But that's a very belated
 3   objection.
 4              THE COURT:  You're talking as to which interrogatory?
 5              MS. STEBBINS BINA:  As to Interrogatory 15.
 6              But, your Honor, we continue to believe that it's
 7   relevant whether they've refused requests from paying -- from
 8   potentially paying customers.  This is the technology that a
 9   lot of nefarious actors are interested in.  Corellium publicly
10   markets it as:  This is good for finding exploits with Apple
11   that could be used to harm Apple.
12              I think we're entitled to know who they're turning
13   away.
14              THE COURT:  Well, let me just ask you.  Their position
15   is:  Well, you know who we've sold to.  So you know who our
16   clients are.  Why do you need to know who we're turning away?
17              MS. STEBBINS BINA:  Because we don't know that they
18   sell to everyone.  So, for instance, let's say they get an
19   email tomorrow from -- I don't know -- the president of the
20   PRC's, you know, hacking division to go -- you know, to be able
21   to hack into all iPhones in the United States.  You know,
22   there's been a lot of things in the news lately about Chinese
23   hackers.
24              We don't know whether they're going to accept that or
25   not.
```

```
 1            And part of their argument is:  We're taking
 2   precautions.
 3            We need to see some evidence of the precautions they're
 4   taking.
 5            Relatedly, on Interrogatory 7 -- so I want to clarify a
 6   few things about the personal versus professional.  Corellium
 7   has a counterclaim saying:  We, Corellium, an entity, submitted
 8   these bugs to you, Apple, and you failed to pay.
 9            So whether they're using their software or not, they
10   are clearly in the business not only of selling their
11   hypervisor, as they call it, but of selling bugs; in this
12   instance, to Apple.
13            And we're entitled to full discovery on the issue of
14   what bugs they have and what they've sold and who they've sold
15   it to, because maybe they just -- maybe they haven't just sold
16   it back to Apple.  Maybe they've sold them to other parties.
17            THE COURT:  What about their position that if they know
18   of bugs that they haven't disclosed to you, you're basically
19   getting free information without having to pay them under the
20   bug reporting system?
21            MS. STEBBINS BINA:  So I have multiple responses to
22   that.
23            The most obvious is they can designate it AEO under the
24   protective order.  My client's never going to know about any of
25   the details and they're not going to have -- they can still go
```

1          MS. STEBBINS BINA:  And that's what we're interested
2     in, is the sale of this product.
3          THE COURT:  All right.  So let me go to 14.
4          And as far as 14, again, I'm going to grant Apple's
5     motion to compel as to Interrogatory 14 in part.
6          And the way that it is going to read, Interrogatory 14,
7     it is going to state:  "Identify any steps taken by Corellium
8     to inform its customers about Apple's copyrights or to obscure
9     information about Apple's copyrights from Corellium's users or
10    customers."
11         So I'm striking the first part of that, which is:
12    "Identify all actions Corellium has taken with regards to or in
13    response to Apple's copyrights or in the anticipation of any
14    copyright litigation with Apple, including, but not limited
15    to."  That's all stricken.
16         The response would be -- or the interrogatory would
17    state:  "Identify any steps taken by Corellium to inform its
18    customers about Apple's copyrights or to obscure information
19    about Apple's copyrights from Corellium's users or customers."
20         Now, as far as 15 -- all right.  I am going to grant
21    the motion to compel as to 15.  I do not believe Corellium has
22    established sufficiently undue burdensomeness.
23         If -- I am going to grant the motion to compel as to
24    15.  I do think it's relevant.
25         As to 16, I'm going to deny the motion to compel.  I

```
 1   think that's largely irrelevant at this stage and I think it's
 2   probably covered by other discovery.
 3           I'm also very concerned -- it says:  "Identify all
 4   foreign persons who have approached Corellium" -- and just
 5   right there, I mean, Corellium could have been at a conference
 6   somewhere and somebody could have come up from Czechoslovakia
 7   or Ireland and said, "Hey, what about this product?"  I mean,
 8   it just -- it's just so broad that I'm not going to require 16
 9   to be answered at all.
10           Finally, as to 17, again, I'm not -- I'm going to deny
11   the motion to compel as to 16 and as to 17.
12           As to 17, I just don't find at this juncture that
13   offers to purchase are relevant or proportionate.  If
14   information comes to light at a future date, Apple can seek
15   limited and targeted information on the issue if the Court
16   deems it proper under 26(b)(1) and if it's timely done.
17           For example, if as discovery goes on something comes up
18   that makes 17 in a targeted way relevant, then I'll consider
19   it.
20           But as far as whether or not Corellium has to identify
21   all the persons who have offered formally or informally to
22   purchase or acquire, et cetera, I'm not going to grant the
23   motion to compel on that.
24           So I'm denying the motion to compel on 16 and 17.  I'm
25   granting the motion to compel on 7, 8, 14 and 15, as limited on
```

```
 1    the record just a few moments ago.
 2             MR. LEVINE:  Your Honor --
 3             THE COURT:  Yes.
 4             MR. LEVINE:  -- may I ask a question?
 5             THE COURT:  Sure.
 6             MR. LEVINE:  As far as Interrogatory 15, can Corellium
 7    request that it's granted without prejudice and in that regard,
 8    if Corellium can provide an affidavit or some form of record as
 9    to frankly how burdensome this may be --
10             THE COURT:  Well, I mean, first of all, Corellium
11    should have already done this if it was burdensome, because
12    under -- as you know, under the rule, if something is
13    burdensomeness, it's not just enough to say, "It's
14    burdensomeness"; you have to do an affidavit.
15             What I would suggest you do in that regard:  I will
16    always reconsider any ruling that I make.  I suggest you confer
17    with opposing counsel.  I want both sides to be reasonable.  I
18    don't know what the result would be.
19             And if another motion has to be filed, you can do that.
20    I'm not saying I would grant it or not.  I would consider it if
21    there was proper conferral and if the Court felt that it was
22    fair and appropriate to do.
23             But at this point, I'm not really inclined to find
24    burdensomeness when I really have no facts supporting that --
25             MR. LEVINE:  Okay.
```