UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-cv-81160-RS

APPLE INC.,

                   Plaintiff,

v.

CORELLIUM, LLC,

                   Defendant.

**PLAINTIFF APPLE INC.'S REPLY IN SUPPORT OF
ITS MOTION FOR PROTECTIVE ORDER BARRING
DEPOSITION OF PLAINTIFF'S APEX EMPLOYEE**

Plaintiff Apple Inc. ("Apple") submits this reply to Defendant Corellium, LLC's untimely response[1] regarding Apple's Motion for Protective Order Barring Deposition of Plaintiff's Apex Employee (ECF No. 158).

## INTRODUCTION

Corellium, LLC does not dispute the pertinent facts of Apple's motion; namely, that Craig Federighi, Apple's Senior Vice President of Software Engineering, had very limited interactions with the defendant in this case. Indeed, Corellium concedes that Mr. Federighi met with Corellium employees only twice, in one instance with several other Apple employees present, and each time for only about an hour. ECF No. 175-1 ¶¶ 7, 12. Corellium concedes that other than those interactions, Mr. Federighi's only interaction with anyone associated with the defendant was a single meeting with Chris Wade *in 2014*, again with another Apple employee present. ECF No. 175-1 ¶¶ 4–5; ECF No. 175 at 6. And it concedes that Mr. Federighi does not possess responsive materials in this action, was not involved on a day-to-day basis with Corellium at any time, and was not involved in any correspondence with Mr. Wade prior to this lawsuit's filing. *See generally* ECF No. 175-1; *see also* ECF No. 175 at 4–8 (admitting that the only significant interaction between Corellium and Mr. Federighi was their July 2018 meeting, and acknowledging that the sole correspondence between Mr. Wade and Mr. Federighi was an unsolicited—and un-responded to—*post*-lawsuit email from Mr. Wade to Mr. Federighi). Moreover, Corellium acknowledges that it has not yet taken depositions of any other witness, including the scheduled depositions of the other employees involved in these same meetings—namely, Jon Andrews, Sebastien Marineau-Mes, Steve Smith, and Ivan Krstić—nor has it taken a deposition of Apple pursuant to Rule 30(b)(6). ECF No. 175 at 7, 9.

Corellium nonetheless asserts that Mr. Federighi's deposition must be taken—and taken before *any* other Apple employee's deposition—because Mr. Federighi's "mental impressions" of his July 2018 meeting with Mr. Wade are somehow of critical importance to this copyright lawsuit. ECF No. 175 at 6. They are not. This lawsuit is about Corellium's infringement of Apple's copyrighted operating system—iOS—and its trafficking of a product that circumvents the security

---

[1] This Court set the deadline for Corellium's response to Apple's Motion for Protective Order as 12:00pm ET on Monday, February 24, 2020. *See* ECF No. 160. Corellium filed its response to Apple's Motion for Protective Order at 3:37pm ET on Monday, February 24, 2020. *See* ECF No. 175).

protections for iOS. Mr. Federighi has no unique, relevant knowledge about those matters, or about Corellium's affirmative defenses, including the (largely inapplicable under *Petrella*) defense of laches or the defense of estoppel. Moreover, the facts that Corellium asserts Mr. Federighi has all relate to topics this Court has *already ruled* irrelevant—namely, "what value Apple attributed to Corellium," *see* ECF No. 175-1 ¶ 15, and the "use of jailbroken iOS devices by companies like Facebook," *see id.* ¶ 14; *see also* Ex. A, 2/12/20 Tr. at 299–302 (denying Corellium's motion to compel as to RFPs 87-92). Corellium does not cite a *single* case supporting its claim that wanting to quiz an apex employee on his "mental impressions" of the defendant generally is sufficient to warrant a deposition. That is because there are no such cases, and the Court should grant the motion for protective order and preclude Mr. Federighi's deposition.

## ARGUMENT

**I. CORELLIUM HAS NOT COME CLOSE TO MEETING ITS BURDEN TO JUSTIFY THE DEPOSITION OF AN APEX EMPLOYEE.**

Although Corellium attempts to shift the burden to Apple, asserting that Apple has a "heavy burden," ECF No. 175 at 3, it is Corellium that bears the burden of showing that Mr. Federighi's "deposition is necessary." *Noveshen v. Bridgewater Assocs.*, LP, No. 13-cv-61535, 2016 WL 536579, at *1 (S.D. Fla. Feb. 3, 2016) (hereafter "*Noveshen I*"). Corellium has entirely failed to carry this burden.

**A. The Facts Corellium Claims It Needs Have Already Been Ruled Irrelevant.**

Corellium wholly fails to demonstrate *any* unique facts that could be learned from Mr. Federighi relevant to the claims or defenses in this case. Rather, everything Corellium seeks to learn is something this Court has *already* ruled irrelevant. For example, Corellium says it needs to learn the "intrinsic value ascribed by Apple to the Corellium product." ECF No. 175 at 5. But this Court has already ruled that "Apple's opinion of the value of Corellium and Corellium's products and services" is "not relevant and it is highly confidential and proprietary information," as well as "unnecessary." Ex. A 2/12/20 Tr. at 186:21–23, 189:6–11; ECF No. 148 at 2 (denying Corellium's Motion to Compel on Interrogatory No. 6 regarding valuation). Corellium also says that it needs to depose Mr. Federighi to show his "knowledge of Virtual," ECF No. 175 at 7—a prior company owned by Chris Wade. But this Court likewise ruled that many of Corellium's requests related to Virtual were overly burdensome because of their minimal relevance to this case. Ex. A, 2/12/20 Tr. at 270:14–21; ECF No. 152 at 2 (denying Motion to Compel on RFP 15 regarding Virtual). Moreover, Corellium is already set to depose other Apple witnesses who are

2

knowledgeable regarding Virtual, including Mr. Marineau-Mes, who attended the same meeting Mr. Federighi attended in 2014. *See* ECF No. 158-1 ¶ 11. Finally, Corellium asserts that the deposition will show Apple's knowledge regarding whether non-parties to this action sometimes "jailbreak" their iPhones for security purposes. ECF No. 175 at 6. But this Court already ruled that actions taken by non-parties with respect to iOS are not relevant. ECF No. 152 at 2 (denying Motion to Compel on RFP 89 regarding jailbroken devices); Ex. A, 2/12/20 Tr. at 299–302. Corellium's opposition points to no actual relevant information, let alone unique information, that it can possibly gain from Mr. Federighi.

### B. The Single, One-Hour Meeting Between Mr. Wade And Mr. Federighi Is Insufficient To Overcome The Apex Doctrine's Protections.

Given Mr. Federighi's acknowledged minimal involvement with respect to Corellium generally, Corellium focuses its opposition on the single, one-hour meeting between Mr. Wade and Mr. Federighi. ECF No. 175 at 1, 4-7. But the fact remains that Corellium has not provided this Court with any reason to conclude that, as a result of that meeting, Mr. Federighi somehow has knowledge that is both unique *and* relevant to this lawsuit.

Corellium posits a few possibilities. First, Corellium states that Mr. Wade developed a unique pitch slide deck purposely for this meeting. *See* ECF No. 175 at 5-6; ECF No. 175-3. Even if true, that would likely be irrelevant, given that multiple other Apple employees observed full demonstrations of Corellium's product and conducted an in-depth technical review, and thus, Mr. Federighi's review of this slide deck would not somehow endow him with unique relevant knowledge of Corellium's product. *See* ECF No. 175-1 ¶ 7–8; *see also* Exs. B–C; ECF No. 158-1 ¶¶ 8, 9, 13. More to the point, however, Corellium fails to mention that it provided to *other* Apple employees—and Apple has produced back to Corellium in this litigation—two substantially similar slide decks (one nearly identical). Ex. B (July slide deck); Ex. C (April slide deck). Both were in the custody of Jon Andrews, who is scheduled to be deposed in mid-March and who Apple has designated as its Rule 30(b)(6) witness on "Apple's knowledge of Corellium and Corellium's products and services." There is nothing in the slide deck purportedly *shown* to Mr. Federighi, relevant to Apple's claims or Corellium's defenses, that is not also in the decks *given* to Mr. Andrews. For instance, Mr. Andrews' decks, like Mr. Federighi's, discuss Corellium's customers, potential customers, sales plan, business model, and product in depth. *Compare* ECF No. 175-3, *with* Exs. B–C.

Indeed, Corellium does not even *claim* that Mr. Federighi has unique, relevant knowledge

3

about Corellium's infringing technology or its business. Nor could it. As Corellium itself admits, Corellium gave presentations to multiple Apple employees on multiple occasions. ECF No. 175-1 ¶ 7–8; *see also* Exs. B–C; ECF No. 158-1 ¶¶ 8, 9, 13. Corellium already has confirmed depositions for three employees who were present at such presentations—Jon Andrews, Ivan Krstić, and Sebastien Marineau-Mes. *See* ECF No. 158-1 ¶¶ 8, 9, 13. And Corellium itself contends that each of those witnesses have the same knowledge as Mr. Federighi—that is, according to Corellium, knowledge about "Corellium's defenses to Apple's claims, including Apple's consent, authorization, encouragement, and acknowledgment of Corellium's business purpose, software, uses and potential uses, bugs submitted by Christopher Wade and/or Corellium, and Apple's potential acquisition of Corellium." ECF No. 175-2 at 4–5. Moreover, as noted above, Apple has designated a Rule 30(b)(6) witness on the topic of Apple's knowledge of Corellium and its products and services, so Corellium will have the opportunity to explore Apple's knowledge of anything shown to Mr. Federighi.

### C. Mr. Federighi Does Not Have Unique Knowledge Relevant To Corellium's Affirmative Defenses.

Finally, nothing in Corellium's opposition remotely establishes its principal argument that Mr. Federighi's deposition is "essential for Corellium's affirmative defenses" of fair use, laches, acquiescence, and estoppel. ECF No. 175 at 8; *see also id.* at 4 n.7.

The elements of fair use are the purpose and character of Corellium's use of Apple's copyrighted works, the nature of those copyrighted works, the amount and substantiality of the portion Corellium took of Apple's copyrighted works, and the effect of Corellium's use on the potential market for Apple's copyrighted works and their derivatives. 17. U.S.C. § 107. As for laches, this doctrine does not generally apply in a copyright damages case, *see Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678-688 (2014). Equitable estoppel and acquiescence *may* apply in appropriate cases, but both are highly circumscribed. For estoppel, the alleged infringer must demonstrate that a copyright owner intentionally misled the infringer regarding whether the owner would sue, and that the alleged infringer detrimentally relied by changing its conduct as a result of the copyright owner's deception. *Id.* at 684–85. For acquiescence, the infringer must demonstrate "an active representation that the proprietor would not assert a right or claim." *See Pk Studios, Inc. v. R.L.R. Investments, LLC*, 2:15-cv-389, 2016 WL 4529323 at *6 (M.D. Fla. Aug. 30, 2016) (internal citation omitted).

Corellium points to no facts, let alone any unique facts, that could be obtained from Mr.

4

Federighi regarding these defenses.  As explained above, Apple's familiarity with Corellium's basic technology is not disputed, and indeed will be testified to by Apple's corporate representative on this topic, Jon Andrews, as well as by Ivan Krstić, Steve Smith, and Sebastien Marineau-Mes—all of whom, as Corellium is well aware, were far more involved in the acquisition talks than Mr. Federighi.  *See* ECF No. 158-1 ¶¶ 8, 13.  Indeed, to support its arguments that Mr. Federighi's deposition should be compelled, Corellium attaches *seven* pieces of correspondence with Mr. Krstić, *three* with Mr. Smith, and *two* with Mr. Marineau-Mes.  ECF. Nos. 175-7 to 175-12, 175-15 to 175-18.  It attaches *nothing* from Mr. Federighi.  And Corellium does not allege that Mr. Federighi made any unique promises or statements to Mr. Wade that would support its estoppel defense.  Rather, its opposition and Mr. Wade's declaration focus entirely on statements Mr. Wade allegedly made *to* Mr. Federighi.  *See* ECF. No. 175-1, ¶¶ 12–15, ECF. No. 175 at 4–7.

Mr. Federighi has no unique knowledge on relating to Corellium's affirmative defenses, ECF No. 158-1 ¶¶ 11–13, and Corellium does not come close to establishing otherwise.

### D. Corellium's Other Arguments Are Meritless.

Corellium asserts myriad other arguments for why this Court should jettison the apex doctrine in this case.  None have merit.

The entire thrust of Corellium's opposition is that Mr. Federighi was the ultimate decision-maker as to whether Apple should acquire Corellium, and at what price.  ECF No. 175 at 4-8.  But this is not a case about Apple and Corellium's failure to come to terms on acquisition.  It is a case about copyright infringement and violation of the Digital Millennium Copyright Act.  While Corellium asserts that Mr. Federighi is the only person with a "'top down' perspective as to how Corellium was to be implemented across development groups within Apple," ECF No. 175-1 ¶ 15, the possible integration of Corellium's technology in the event of an acquisition that never occurred is wholly irrelevant to the claims in this case.  Moreover, if a "top down" perspective were enough to overcome the apex doctrine, the doctrine would be dead letter.  The doctrine is specifically designed to protect against a party's attempt to depose a high-level official—that is, an official with a "top down" perspective—simply because that official is at the top of a decision-making tree.  *See Brown v. Branch Banking & Tr. Co.*, No. 13-cv-81192, 2014 WL 235455, at *2 (S.D. Fla. Jan. 22, 2014) (the doctrine generally "restrict[s] parties from deposing high-ranking officials because (*by virtue of their position*) they are vulnerable to numerous, repetitive, harassing, and abusive depositions") (emphasis added, internal citation omitted); *see also Noveshen v.*

5

*Bridgewater Assocs., LP*, No. 13-cv-61535, 2016 WL 824640, at *4 (S.D. Fla. Feb. 26, 2016). If every meeting Mr. Federighi participated in, however tangential to the issues presented in a litigation, were sufficient to overcome the doctrine's protections, the apex doctrine would provide no limits at all.

## II. CORELLIUM HAS NOT COME CLOSE TO EXHAUSTING OTHER DISCOVERY.

Finally, and perhaps most importantly, Corellium's argument that it has exhausted other, less intrusive discovery—a factor that even Corellium acknowledges is "important," ECF No. 175 at 4—is patently meritless. **Corellium has not taken a single deposition**. Corellium nevertheless relies on *Reilly v. Chipotle Mexican Grill, Inc.*, to argue that "exhaustion of other discovery methods," while important, is not dispositive. ECF No. 175 at 4 (citing *Reilly*, No. 15-cv-23425, 2016 WL 10644064, at *7 (S.D. Fla. Sept. 26, 2016)). What Corellium fails to mention is that, even in *Reilly*, the party seeking to depose a high-level official had already deposed the one other lower-level official who might have had knowledge of the facts at issue. 2016 WL 10644064, at *7. It was after that lower-level official "failed to remember" the facts at issue that the Court permitted the deposition of the high-level employee the plaintiff sought to depose. *Id.* at *6. The other cases Corellium relies on are of a piece. In *Brown*, for example, which Corellium cites repeatedly as well, the Court granted a motion for a protective order to prevent the deposition of a major bank's president because, among other things, the plaintiffs had "yet to take any discovery." 2014 WL 235455, at *3. Finally, it makes no difference that Apple "brought this lawsuit." ECF No. 175 at 9; *see also Little League Baseball, Inc. v. Kaplan*, No. 08-cv-60554, 2009 WL 426277, at *2 (S.D. Fla. Feb. 20, 2009) (finding that "[d]efendant [had] failed to satisfy his burden of showing that it [was] necessary to compel the deposition of [the plaintiff's] chairman"). What matters is whether Corellium satisfied *its* burden to show that Mr. Federighi's deposition is necessary. *Noveshen I*, 2016 WL 536579, at *1. It has not.

## CONCLUSION

For the foregoing reasons, Apple respectfully requests that this Court grant Apple's Motion for Protective Order (ECF No. 158).

| | |
|---|---|
| Dated: February 26, 2020 | Respectfully Submitted, |
| | |
| | *s/ Martin B. Goldberg* |
| Kathryn Ruemmler* | |
| *kathryn.ruemmler@lw.com* | Martin B. Goldberg |
| Sarang Vijay Damle* | Florida Bar No. 0827029 |
| *sy.damle@lw.com* | *mgoldberg@lashgoldberg.com* |
| Elana Nightingale Dawson* | *rdiaz@lashgoldberg.com* |
| *elana.nightingaledawson@lw.com* | LASH & GOLDBERG LLP |
| LATHAM & WATKINS LLP | 100 Southeast Second Street |
| 555 Eleventh Street NW, Suite 1000 | Miami, FL 33131 |
| Washington, DC 20004 | (305) 347-4040 / (305) 347-4050 Fax |
| (202) 637-2200 / (202) 637-2201 Fax | |

Andrew M. Gass*
*andrew.gass@lw.com*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 / (415) 395-8095 Fax

Jessica Stebbins Bina*
*jessica.stebbinsbina@lw.com*
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500 / (424) 653-5501 Fax

*Admitted pro hac vice

*Attorneys for Plaintiff* APPLE INC.