# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                      WEST PALM BEACH DIVISION
                    CASE NO. 19-81160-CIVIL-SMITH


   APPLE, INC.,                          West Palm Beach, Florida

              Plaintiff,                 February 12, 2020
                                              -and-
         vs.                             February 13, 2020

   CORELLIUM, LLC,

              Defendant.                 Pages 1 to 368
   _____


                           MOTION HEARING
            BEFORE THE HONORABLE WILLIAM MATTHEWMAN,
                UNITED STATES MAGISTRATE JUDGE
           (TRANSCRIBED FROM THE DIGITAL AUDIO RECORDING)

   APPEARANCES:


   FOR THE PLAINTIFF:       JESSICA STEBBINS BINA, ESQ.
                            LATHAM & WATKINS, LLP
                            10250 Constellation Boulevard
                            Suite 1100
                            Los Angeles, California 90067


                            ELANA NIGHTINGALE DAWSON, ESQ.
                            LATHAM & WATKINS, LLP
                            555 Eleventh Street, Northwest
                            Suite 100
                            Washington, DC 20004


                            EMILY PINCOW, ESQ.
                            LASH & GOLDBERG, LLP
                            100 Southeast Second Street
                            Suite 1200
                            Miami, Florida 33131
```

```
 1   response?  In other words, what is it you're arguing about on
 2   5?  Because I see an answer in their -- in their No. 5.
 3            MS. CONSTANTINE:  Going back to their objections, we
 4   just -- we're just not sure.  We're confused as to whether
 5   that's the full and complete answer or if there's any other
 6   information that's being withheld.
 7            THE COURT:  All right.  So is No. 5 the full and
 8   complete answer, the underlying portion of No. 5?
 9            MS. STEBBINS BINA:  Yes, your Honor.
10            THE COURT:  All right.  So why don't you just revise
11   number -- I'm going to -- as far as Interrogatory No. 5, all
12   I'm going to require is to -- is for Apple to simply state that
13   its answer is whatever that underlying portion is.  I don't
14   think the rest of it needs to be in there.  And then that way,
15   you have an answer from them.  If you want to discuss it with
16   their corporate rep at a deposition or whatever else, you have
17   an answer.  Okay?
18            MS. CONSTANTINE:  Thank you, your Honor.
19            THE COURT:  So I'll grant 5 to that extent.  But
20   nothing further.
21            Now, 6 deals with identifying Apple's opinion of the
22   value of Corellium and Corellium's products and services.  All
23   right.  So why would -- what are we talking about here?
24            MS. CONSTANTINE:  The value that Apple may have placed
25   in Corellium's product goes directly to the issue of
```

```
 1   strategize as to whether there's actual competition.  We
 2   believe that there's no competition.  We believe that there --
 3   they don't have this product and that's why they created such a
 4   high valuation for the Corellium product, your Honor.
 5             THE COURT:  All right.  Thank you.
 6             So as to 6, I'm going to deny the motion to compel on
 7   Interrogatory No. 6.  I really find that it's not relevant and
 8   it is highly confidential and proprietary information.
 9             And I think it's unnecessary also, especially in light
10   of all the other discovery and information that the parties
11   have about this attempted acquisition.
12             So that brings us to No. 7:  Identify all the bugs,
13   exploits, software flaws in the iOS operating system that
14   Corellium or any of Corellium employees have reported to Apple,
15   including the date and content of each report.
16             Now, Ms. Constantine, is it your argument that that's
17   relevant to your counterclaim and other issues or what?
18             MS. CONSTANTINE:  Your Honor, the only concern we have
19   with number -- No. 7 is the same concern that we had for No. 3.
20   They raise an objection of confidentiality --
21             THE COURT:  Oh, right. Right. Right.
22             MS. CONSTANTINE:  -- and trade secret.  So we just --
23             THE COURT:  All right.  So I'm going to rule.
24   Ms. Bina, I'm going to rule the same way I ruled as to 3 as to
25   No. 7.
```

```
 1   the name is what it is initially is not a problem.  But the --
 2   our client should not be prejudiced in their defense merely
 3   because Apple's asserting a burdensome objection.
 4          I get that the word "virtual" -- I recognize the
 5   practicality of that.
 6          But my client's prejudice and not being able to
 7   establish or further establish its affirmative defenses should
 8   not be prejudiced merely because Apple has a burdensome
 9   objection, notwithstanding its wide resources.
10          THE COURT:  All right.  Thank you.
11          MR. LEVINE:  Thank you, your Honor.
12          THE COURT:  All right.  So I'm going to deny the motion
13   to compel.
14          First of all, I find that all documents and
15   communications relating to Virtual or Virtual's products and
16   services is overbroad, disproportionate and not relevant,
17   especially in light of the other discovery produced about
18   Mr. Wade, the requests for admissions responded to, the fact
19   that depositions will be taken.  I just think this is going
20   down a rabbit hole that will just lead to a total waste of
21   resources.
22          The Defendant is getting what they need in the other
23   discovery.
24          After you get the discovery, after you take the
25   depositions, if you believe there are certain documents that
```

```
 1              THE COURT:  Okay.  So, Ms. Constantine, where else do
 2   we need to go?
 3              MS. CONSTANTINE:  87, your Honor.
 4              THE COURT:  87.
 5              MS. STEBBINS BINA:  I thought you wanted 87 only as it
 6   related to virtualization.
 7              MS. CONSTANTINE:  Let me just -- just one second to
 8   check my notes, your Honor.
 9              THE COURT:  Sure.  Take a look at it.
10              MS. CONSTANTINE:  87 and 92 are actually not related to
11   20 and 23.
12              THE COURT:  Okay.
13              MS. CONSTANTINE:  87 to 92 are related to the other
14   product that Apple believes actually competes with Corellium,
15   which are the actual iPhones that they're using.
16              THE COURT:  Okay.  So let me just look at 87:
17   Documents sufficient to show the locations of all dev-fused
18   iPhones in Apple's possession, custody or control.
19              What does that mean?  What are you looking for?
20              MS. CONSTANTINE:  Apple has said that they use a
21   separate product that competes in the same market as Corellium.
22   That product is the cell phones that they -- that they utilize
23   for security research.
24              We just need to know where they are located as to 87.
25              As to --
```

```
 1              THE COURT:  What is a dev-fused iPhone?
 2              MS. CONSTANTINE:  It's an iPhone that is -- that is in
 3   the terms like jailbroken to be able to provide the ability to
 4   access the code of the iOS.
 5              THE COURT:  So what are they?  Phones that Apple has
 6   that they use to --
 7              MR. LEVINE:  I can explain.
 8              MS. CONSTANTINE:  For security reasons.
 9              I think you have a better --
10              MR. LEVINE:  I can explain quickly.
11              THE COURT:  Go ahead.
12              MR. LEVINE:  So the phone that you buy at the iPhone
13   store is a commercial phone.  A dev phone, or a development
14   phone --
15              THE COURT:  Oh, okay.
16              MR. LEVINE:  -- has certain unlocked features that --
17   where the phone is more directed at researchers and developers
18   than a normal consumer.
19              THE COURT:  So these are development phones?
20              MR. LEVINE:  They're development phones.  Yes, sir.
21              And the -- so while it's not stated in the complaint
22   inherently, what Apple is claiming is that Corellium has
23   developed a virtual dev phone because this phone doesn't have
24   commercial uses, but it has more -- it's more geared towards
25   development uses.
```

1          THE COURT: And why would in the context of this
2    lawsuit -- why would Corellium need documents to show the
3    locations of all development phones in Apple's possession,
4    custody or control?
5          MR. LEVINE: So I think we narrowed this on the brief
6    recess, where we're only interested in the phones that relate
7    to -- if any -- relate to Apple's internal virtualization
8    efforts.
9          But now that they've conceded that I guess they're
10   either not virtualizing or there's no competing product, so I
11   guess they can now answer "none."
12         MS. STEBBINS BINA: Your Honor, dev-fused phones are
13   primarily an internal Apple development tool when they're
14   developing and testing their own product prior to releasing it
15   on the market.
16         They're not available for commercial use, which is why
17   they're not alleged to be a competing product of Corellium.
18   Corellium is selling a commercial product.
19         Mr. Wade, as I understand it, has attempted in the past
20   or at least is reported to have tried to get his hands on a
21   dev-fused phone, which is a highly confidential, extremely
22   zealously guarded, very important trade secret.
23         So an RFP that says, Give us the location of all of
24   your incredibly confidential, super-secure dev-fused phones is
25   just wildly inappropriate and irrelevant.

```
 1              THE COURT:  All right.  Counsel?
 2              MR. LEVINE:  That's why we narrowed it down to only the
 3   stuff that relates to the virtualization, which is directly
 4   what they're claiming that we copied.
 5              MS. STEBBINS BINA:  Well, that's the issue we just
 6   dealt with, your Honor.
 7              And I think --
 8              THE COURT:  All right.  I'm going to deny the motion to
 9   compel as to 87.
10              What's the next one?
11              MS. STEBBINS BINA:  And that covers 87 to 92, your
12   Honor.
13              THE COURT:  All right.  Where are we next,
14   Ms. Constantine?
15              MS. CONSTANTINE:  The last one is No. 36, your Honor.
16              THE COURT:  Okay.  And when I deny it, it's because
17   it's -- I believe it's not relevant, I believe it's
18   disproportionate and I also believe that it is just way
19   overbroad.
20              All right.  36:  All cease-and-desist letters sent by
21   Apple to FireEye, VMware, Appetize.io or Oracle regarding the
22   Apple visualization products and services offered and produced
23   by those entities.
24              They object and will not produce.
25              All right.  So let me hear, Ms. Constantine.  What's
```