```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                   WEST PALM BEACH DIVISION
                    CASE NO. 19-81160-CIVIL-SMITH
 3

 4    APPLE, INC.,                        West Palm Beach, Florida

 5                 Plaintiff,             February 27, 2020

 6          vs.                           10:03 a.m.

 7    CORELLIUM, LLC,

 8                 Defendant.             Pages 1 to 199
      _____
 9

10                      DISCOVERY HEARING
            BEFORE THE HONORABLE WILLIAM MATTHEWMAN,
11               UNITED STATES MAGISTRATE JUDGE
            (TRANSCRIBED FROM THE DIGITAL AUDIO RECORDING)
12
      APPEARANCES:
13

14    FOR THE PLAINTIFF:       JESSICA STEBBINS BINA, ESQ.
                               LATHAM & WATKINS, LLP
15                             10250 Constellation Boulevard
                               Suite 1100
16                             Los Angeles, California 90067

17                             EMILY PINCOW, ESQ.
                               LASH & GOLDBERG, LLP
18                             100 Southeast Second Street
                               Suite 1200
19                             Miami, Florida 33131

20
      FOR THE DEFENDANT:       JUSTIN B. LEVINE, ESQ.
21                             LIZZA CAROLA CONSTANTINE, ESQ.
                               COLE, SCOTT & KISSANE
22                             222 Lakeview Avenue
                               Suite 120
23                             West Palm Beach, Florida 33401

24

25
```

```
 1   APPEARANCES, CONT'D:

 2                              GAVIN GAUKROGER, ESQ.
                               BERGER SINGERMAN, LLP
 3                              350 East Las Olas Boulevard
                               Suite 1000
 4                              Fort Lauderdale, Florida 33301

 5
     TRANSCRIBED BY:           LISA EDWARDS, RDR, CRR
 6                              (305) 439-7168
                               Reporterlisaedwards@gmail.com
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE COURTROOM DEPUTY:  Calling Case No. 19-81160-CV-

 2   Smith/Matthewman, Apple, Incorporated, against Corellium, LLC.

 3              THE COURT:  All right.  Let's get appearances, starting

 4   with Plaintiff.

 5              MS. STEBBINS BINA:  Good morning, your Honor.  Jessica

 6   Stebbins Bina of Latham & Watkins with Emily Pincow of Lash &

 7   Goldberg on behalf of Apple.

 8              THE COURT:  Good morning.

 9              And who do we have here for the Defendant?

10              MR. LEVINE:  Good morning, your Honor.  Justin Levine

11   and Lizza Constantine and Gavin Gaukroger from Cole, Scott &

12   Kissane and Berger Singerman on behalf of Corellium, your

13   Honor.

14              THE COURT:  All right.  Good morning.

15              So we're here today on a number of motions.  And the

16   Court had hoped that the parties would cooperate in the

17   discovery process in a highly technology-driven case.  But

18   that's not the case, and the parties continue to bicker and

19   fight over virtually every aspect of discovery in this case.

20              So since the parties cannot cooperate and resolve any

21   issues, the Court will resolve them all here today.

22              We're also -- I'm also setting a further discovery

23   hearing for March 16th, 2020, at 10:00 a.m.  I'm also going to

24   set down the third-party motion to quash on that date as well.

25   So the next hearing in this case will be March 16th, 2020, at
```

```
 1   10:00 a.m. for all discovery disputes along with the third

 2   party's motion to quash.  And I'll enter a briefing schedule on

 3   the motion to quash.

 4          All right.  So the first motion we're going to deal

 5   with today is Apple's motion to compel Corellium to provide

 6   complete interrogatory responses.

 7          From what I can gather, Interrogatories 7, 8 and 15

 8   seem to be at issue.  And that is based on the parties' joint

 9   notice, Docket Entry 188, Page 10.  And then there was an

10   amended interrogatory response or responses filed to 7, 8 and

11   15.  Let me find Interrogatory 7.  All right.

12          Interrogatory No. 7 states:  "Describe in detail any

13   unpatched bugs, exploits, vulnerabilities or other software

14   flaws in iOS of which Corellium or its employees currently are

15   or have ever been aware and whether Corellium has reported any

16   such bugs, exploits, vulnerabilities or flaws to Apple."

17          The amended response by Corellium states:  "This

18   information provided below is confidential and trade secret.

19   Since August 2017, Corellium has developed the following

20   vulnerabilities in iOS which would qualify under the parameters

21   of the Apple bug bounty."  And then it lists 1 through 11.

22          Let me hear from Apple's counsel on this.

23          MS. STEBBINS BINA:  Good morning, your Honor.

24          So your Honor had narrowed this interrogatory at the

25   last hearing to simply require them to describe -- or to
```

```
1    identify the bugs, whether there were bugs and what they did

2    with them.

3         Your Honor, Corellium has further narrowed your Honor's

4    already substantial narrowing, and they are now only listing

5    bugs that they believe would be eligible for the Apple bug

6    bounty program.

7         Your Honor had ordered the parties to meet and confer

8    regarding whether there should be any scopes on limitations

9    because they said there were a number of different kinds of

10   bugs.

11        I emailed Mr. Levine on the 20th.  I said, you know:

12   I'm available to meet and confer.  We should talk about

13   narrowing the scope.

14        I didn't get any response to that, your Honor.  And

15   then they served this Monday night having essentially

16   self-helped and narrowed it further.

17        I would ask that they be required to answer as your

18   Honor originally ordered.

19        THE COURT:  All right.  Let me hear from the other side

20   on No. 7.  Isn't the response more narrow than what my order

21   stated?

22        MS. CONSTANTINE:  Good morning, your Honor.

23        No.  The response is actually appropriate to what this

24   Court ruled.  So this Court explained that it has to be -- "I'm

25   not going to require at this juncture for Corellium to state
```

1    specifically what those flaws are."

2            So in this case, we listed all of the vulnerabilities

3    that we are aware of and also the three of them that we are

4    aware but were not submitting without providing any specificity

5    as to what they are.

6            The reason why Corellium used the parameters of the

7    Apple bug bounty program is because Ms. Bina during the hearing

8    last time -- she explained that she was only seeking those that

9    were related to the Apple bug bounty program.

10           And there's -- she's actually cited on the transcript,

11   explaining that she's only seeking those that will be related

12   to that program.

13           THE COURT:  Did you read my order?

14           MS. CONSTANTINE:  Yes, your Honor.

15           THE COURT:  Look at Paragraph 4-A, Docket Entry 144, of

16   my order:  "For Interrogatory 7, Corellium shall state whether

17   Corellium and/or its employees are aware of or have been aware

18   of since the founding of Corellium in 2017 any unpatched bugs,

19   exploits, vulnerabilities or other software flaws in iOS found

20   by Corellium or its principals and whether Corellium has

21   reported any such bugs, exploits, vulnerabilities or flaws to

22   Apple.

23           "If Corellium's response to the question is 'yes,'

24   Corellium shall state how many unpatched bugs, exploits,

25   vulnerabilities or other software flaws in iOS by Corellium

```
 1    and/or its employees have been found.  Corellium is not,

 2    however, required to provide the specific nature of the

 3    software flaws or bugs."

 4            And then I ordered the parties to confer; and, of

 5    course, nothing got accomplished from conferral.

 6            So your response is inadequate.  It's more narrow than

 7    my order.

 8            My court ruling on No. 7 is as follows:  Corellium

 9    shall revise again its response to Interrogatory 7 and shall

10    include all bugs, not just those under the parameters of the

11    Apple bug bounty program, per my order at Docket Entry 144,

12    Paragraph 4-A.

13            All right.  Let's go to the next interrogatory --

14            MS. CONSTANTINE:  Your Honor --

15            THE COURT:  -- No. 8.

16            MS. CONSTANTINE:  Your Honor --

17            THE COURT:  No.  I'm done.  I've ruled.

18            Next interrogatory, No. 8.  The next interrogatory from

19    what I could gather dealt with Bates stamping.  Is that the

20    issue we're talking about?

21            MS. STEBBINS BINA:  Yes, your Honor.  And I believe

22    this matter will be resolved.  They've agreed to provide

23    responsive numbers.  So as soon as they provide those numbers,

24    it should be resolved.

25            THE COURT:  All right.  Let me hear from the other
```

1  side.  Is this a Bates-stamping issue?  And, if so, has it been

2  resolved?  And when will it be resolved?

3      MS. CONSTANTINE:  Yes, your Honor.  We will be

4  providing those Bates numbers by the end of the day.

5      THE COURT:  By the end of the day.  Okay.  So as to

6  Interrogatory No. 8, that's granted and Bates stamp numbers

7  will be provided by the end of the day.

8      The last one was Interrogatory No. 15.  Interrogatory

9  15 states:  "Identify all persons who have requested purchase

10 of, license to or any other access to the Corellium Apple

11 product to whom Corellium has refused to sell, license or give

12 access."

13     This is the issue of the motion for reconsideration

14 that is before the Court.

15     So since the motion for reconsideration informs that

16 issue, we're going to turn to the motion for reconsideration

17 now.  And I've read the motion for reconsideration and the

18 response and other papers in regards to the motion for

19 reconsideration.

20     Corellium is moving under Rule 59(e), Federal Rule of

21 Civil Procedure 59(e), and local Rule 7.1 for the Court to

22 enter an order reconsidering Docket Entries 144 and 149.

23 Specifically, Corellium does not want to provide better

24 responses to certain interrogatory -- or rather to

25 Interrogatory 15, which we just were discussing, or apparently

```
 1    Requests to Produce 14, 34, 35, 37, 62, 70 and 71.

 2            Each of these discovery requests pertain to potential

 3    or denied customers of Corellium.

 4            Apple's argument at the last hearing was that this

 5    information is relevant to Corellium's fair-use defense.  I

 6    ruled at the last hearing that information regarding denied

 7    customers would be produced.

 8            Corellium wanted to argue burden.

 9            I told Corellium that if they wished to submit an

10    affidavit, I would consider it.  And now they have apparently

11    submitted an affidavit, which I have reviewed, and they have

12    filed a motion for reconsideration.

13            So let me hear, since that is Corellium's motion for

14    reconsideration, let me go to Corellium's counsel on the motion

15    for reconsideration.

16            MR. LEVINE:  Good morning, your Honor.

17            THE COURT:  Good morning.

18            MR. LEVINE:  This comes down to two grounds, really:

19    primarily, burdensome.

20            As it's reflected in the declaration of Amanda Gorton,

21    who is the --

22            THE COURT:  Is Amanda Gorton a lawyer?

23            MR. LEVINE:  No, sir.

24            THE COURT:  Okay.  Then why is she telling me what's

25    relevant and proportional?  Let me just look at this affidavit.
```

1    I have never seen an affidavit quite like this.  This was

2    drafted by an attorney.

3         I wanted facts.  What I wanted, if you wish to have a

4    burdensome argument, I wanted to know how many hours, how many

5    days, how much money, how burdensome it would be to produce the

6    information.

7         This is what I get --

8         MR. LEVINE:  I think I can --

9         THE COURT:  Hold on.  Let me finish.

10        MR. LEVINE:  Yes, sir.

11        THE COURT:  It says in Paragraph 9:  "It would be a

12   tremendous undertaking and completely disproportional to the

13   case."

14        It's not her role to tell me what's disproportional to

15   the case.  So the fact in that affidavit is it would be a,

16   quote-unquote, tremendous undertaking.

17        "Indeed, there are likely" -- not that there are --

18   "more than 10,000 inquiries relative to these discovery

19   requests."  And apparently, she is saying that in response to

20   rejected customers of Corellium.

21        She then goes on and she states that due to the fact

22   that more than 10,000 inquiries are likely to exist that are

23   relative to these discovery requests, Corellium's potential

24   obligation to identify such responsive documents and to answer

25   the corresponding interrogatory will be, quote-unquote,

```
1    extremely time-consuming, with little, if any, benefit provided
2    to Apple.
3          Now, "extremely time-consuming," "tremendous
4    undertaking," tells me absolutely nothing.  Telling me that
5    this is disproportionate and not relevant is really not her
6    place whatsoever.
7          So it looks to me like this affidavit provides nothing
8    to support your argument.  But I will hear from you.
9          MR. LEVINE:  Thank you, your Honor.
10          At the very end of this aspect of the hearing, I
11    absolutely can get that affidavit, possibly by the end of the
12    day.
13          THE COURT:  This is it.  I gave you one chance before.
14    No burdensome was established at the last hearing.
15          You then said:  Well, would you reconsider?
16          And I -- trying to be fair to both sides, I said I
17    would consider if you submit an affidavit.
18          I get this affidavit which in my view is wholly
19    insufficient.  And it seems to me that your argument is that:
20    Well, they have the customer list.  That's enough.
21          But when you talk about the issues at play in this
22    case, I think the customer list and rejected customers sort of
23    go hand in hand and really do provide a full area of discovery
24    for the parties to inquire -- to inquire into.
25          But I'll hear from you further on that.
```

```
 1              MR. LEVINE:  Thank you, your Honor.

 2              Initially, the company -- it's not disputed -- and

 3    maybe this should have been included in the affidavit:  It's

 4    not in dispute that this company is a small startup out of

 5    Boynton Beach that has nine employees.  Nine.

 6              This company is already being overwhelmed by this case.

 7    The company is having significant impacts in the ability to

 8    keep itself going just because of the involvement in this case.

 9    And my apologies for including those aspects of Ms. Gorton's

10    statements in that declaration.  The clients are very, very

11    involved in this and very emotional.

12              THE COURT:  And I understand --

13              MR. LEVINE:  So as it relates --

14              THE COURT:  And I understand they're involved and

15    emotional.  But they're not here to tell me what's relevant and

16    proportional.

17              MR. LEVINE:  That's a fair point, your Honor.  And my

18    apologies on that.

19              So as it relates to the numbers, there's no dispute

20    that Corellium has nine employees.  Some of them are working

21    around the clock to assist in this case.

22              To do this particular isolated job it would take, for

23    example, an additional three people of the company, which is

24    already another third that's taken out of actually doing the

25    company -- if they reviewed 500 emails a day over a course of
```

```
 1   eight hours every single day, it would take all three of those
 2   people working eight hours a day 13 days.
 3             THE COURT:  This technology company, software company,
 4   doesn't have the ability to do a search --
 5             MR. LEVINE:  See, that's --
 6             THE COURT:  -- and they don't have the ability to use a
 7   software provider or an e-discovery company to look through
 8   those emails or correspondences which are merely 10,000
 9   emails -- that's really not that many -- and find out which
10   ones deal with rejection of a customer?  I mean, it seems to me
11   that that seems to be pretty easy, especially if you're a
12   software company.
13             MR. LEVINE:  It's actually not, your Honor.  I'll
14   explain why.
15             Initially, that 10,000 number is very conservative.  I
16   would be willing to put on the record that we believe that the
17   number is closer to 15,000 to 20,000.
18             THE COURT:  But there's no facts for that.
19             MR. LEVINE:  Right.  Because we haven't -- because we
20   can't search for it because these are inquiries from potential
21   people.  They've gone to numerous different emails.
22             THE COURT:  But didn't I say that I only wanted you to
23   produce rejected customers?
24             MR. LEVINE:  They're --
25             THE COURT:  Not all potential customers; I thought I
```

```
 1      had ruled rejected customers.  In other words, they have the

 2      customer list; and if they juxtaposed the customer list with

 3      those customers that Corellium rejected, then that should

 4      provide enough discovery.

 5              MR. LEVINE:  Okay.  So let me ask a question for

 6      clarity:  If an email comes in from entity XYZ and says,

 7      "Corellium, I'm really interested in your product" and

 8      Corellium ignores that, does that constitute a rejected entity

 9      in the Court's mind?

10              THE COURT:  No.  If it's an ignored email, it's not a

11      rejected entity.  It would be an affirmative rejection.

12              MR. LEVINE:  Okay.  So in light of that, I do not

13      believe, although I'm not sure, but I do not believe there are

14      10,000 emails.  What I would proffer to the Court is that the

15      burden would still be significantly high, and I'd like to

16      remind the Court that we asked for the bugs that Apple had been

17      submitted and we determined at the end of that day's hearing

18      that it ended up being 200.  It was about 209, if my

19      recollection serves.

20              And the Court stated that that was overly burdensome

21      for Apple.

22              Now, that being said --

23              THE COURT:  That was a whole different issue.

24              MR. LEVINE:  Fair enough.

25              So the reason why there's no search terms here that
```

1    cannot be done properly is that these were dealt over a number

2    of different people's emails in the -- in the system.  And

3    there's no unifying -- there's no unifying term or trait that

4    unifies rejected or potential customers.  There just is no

5    search term that would capture that, because there's no uniform

6    trait.

7          So I would still proffer that this thing is still

8    burdensome with -- there just is no -- there's just no

9    application here to people that have been rejected.

10          But candidly, your Honor, in light of the overwhelming

11    involvement and necessity that this company's already taken to

12    continue just staying in this case, having something like this

13    with -- and from the lawyers' perspective, with so little

14    relevance and impact, they can determine whether we are

15    accepting nefarious offers by the client list.

16          It really is over my head, your Honor, in how a

17    rejected entity has any bearing on any legal analysis in this

18    case.

19          THE COURT:  It goes right along with the customer list.

20          MR. LEVINE:  I don't understand how, your Honor.

21          THE COURT:  This is the customer list; this is the

22    ones -- these are the ones we rejected.

23          Don't you in your own pleadings say that Corellium only

24    deals with legitimate, good-faith customers?

25          MR. LEVINE:  And that can be established by the

1    customers that are accepted.

2         THE COURT:  Why can't it be established by the ones

3    that you rejected?  If you haven't rejected anybody, that says

4    one thing.  If you've rejected ten people, that says another

5    thing.  I mean, it goes right to the issue, counsel.

6         MR. LEVINE:  So what I -- can I propose that we provide

7    a sampling of people rather than dragging more Corellium

8    employees to have to take time away from the company?  Can we

9    provide a sampling of rejected people, maybe, you know, ten, if

10   you will, your Honor?  That'll show.  And then that along with

11   the client list should be able to provide Apple whatever they

12   might glean from a rejected entity.

13        THE COURT:  The problem is I don't know how many are on

14   the -- how many rejected customers there are.  That's the

15   problem.  Because there's no inquiry that's been made.

16        MR. LEVINE:  Well, I can make that inquiry and have it

17   to you probably by the end of the day.

18        THE COURT:  Well, let me hear from counsel from Apple

19   on this issue.

20        MR. LEVINE:  Thank you, your Honor.

21        MS. STEBBINS BINA:  Your Honor, this is the second time

22   that we've been here.  And counsel just testified to a number

23   of facts that aren't actually presented anywhere in the papers.

24        I don't know if they've even attempted to look for any

25   of this.  I do know that when we tried to confer with them last

```
 1   Friday, we said, you know:  Are you proposing a narrower
 2   version?  Is there a way -- you know, can you tell us more
 3   about how these problems -- what the burden is?
 4          They said:  We're just seeking reconsideration.  They
 5   weren't interested in a promise.
 6          So, your Honor, I would say -- I would ask that you
 7   order them to comply with the order.  I mean, we're already
 8   well behind in the document production of the documents they
 9   produced so far in this case.  70 percent of them were produced
10   Monday night.  And I'm worried that if we do a sampling, it's
11   going to just further delay things.
12          And I think this is -- you know, they have four law
13   firms, your Honor.  They may have a small company, but they
14   could simply take all these email accounts and turn them over
15   to their e-discovery vendor.
16          I'm not trying to be unreasonable.  But I just don't
17   see a basis for denying this.
18          THE COURT:  All right.  Since it's your motion,
19   counsel, I'll let you respond to Apple.
20          MR. LEVINE:  Your Honor, I'm checking as to
21   affirmatively rejected and how many that may be.  Again, this
22   may have just been some unclarity that was present during the
23   initial aspect.
24          However, I would say that during the meet and confer,
25   Apple's not limiting this and they wanted the whole gamut of
```

1    more than 10,000 just potential -- just whatever -- and I

2    specifically met and conferred on this specific issue with

3    Alana, who's another counsel on behalf of Apple.  Long story

4    short, your Honor, I'm checking on the actual affirmative

5    rejected.

6         But I would proffer here that a sampling of such would

7    be a good middle ground in light of what I would believe to be

8    a red-herring issue and little relevance in light of the fact

9    that they actually have the actual client list.

10        THE COURT:  Thank you.

11        I'm going to deny the motion for reconsideration.  I'm

12   going to require Corellium to produce the rejected customers,

13   the affirmatively rejected customers, along with the customer

14   list, which I understand has already been produced.

15        I do find the affidavit to be insufficient and

16   conclusory.  And it's too late in the process now to try and

17   get another affidavit.  Discovery has got to move forward.  For

18   some reason, it's not.  But it has absolutely got to.

19        Now, going back to the first motion, which was

20   Interrogatory by Apple to Corellium No. 15, again, Corellium

21   will have to answer as to persons who were rejected.  Persons

22   who sought to purchase the Corellium Apple product but which

23   were affirmatively rejected by Corellium.  They'll need to

24   answer Interrogatory No. 15.

25        MR. LEVINE:  Thank you, your Honor.

```
1          THE COURT:  That takes care of that issue.  And that
2    takes care of the first two motions.
3          MS. CONSTANTINE:  Your Honor, if I may.
4          THE COURT:  Yes.
5          MS. CONSTANTINE:  This motion also resolves the
6    request -- Apple's Requests For Production 14, 34, 35, 37, 62,
7    70 and 71 as it relates to this same issue.
8          THE COURT:  Well, yes.  My ruling will be the same,
9    that to whatever extent -- I'm not going to go through and
10   nitpick each interrogatory.  I'm expecting counsel to act like
11   professionals on both sides.
12         But what I want Corellium to produce is their -- all
13   their customers; and I want them to produce customers they have
14   affirmatively rejected.  I think that's more than reasonable.
15   I think it is highly relevant.  I think it's proportional, and
16   especially based on the claims of Apple and the claims of
17   Corellium in this case.
18         So my ruling applies to those as well.  But I want
19   those responded to under the letter and spirit of the Court's
20   order.
21         MR. LEVINE:  Your Honor --
22         MS. CONSTANTINE:  Your Honor --
23         MR. LEVINE:  -- the motion to seal Exhibit 1, I think
24   that's -- that would be deemed moot now.  There was a motion to
25   seal Exhibit 1 to the motion for reconsideration.  That was at
```

```
1     issue here today.  I think that's just moot now.

2             THE COURT:  Is that still pending?

3             THE LAW CLERK:  You granted that one.

4             THE COURT:  Okay.

5             MR. LEVINE:  Well --

6             THE COURT:  The motion to seal Exhibit 1 I believe I

7     have already --

8             MR. LEVINE:  Granted.  Okay.

9             THE COURT:  -- decided to grant, haven't I?

10            MR. LEVINE:  Disregard my statement.  Thank you.

11            MS. STEBBINS BINA:  Your Honor, may I briefly raise one

12    more point on the customer issue?

13            THE COURT:  Yes.

14            MS. STEBBINS BINA:  So Corellium's interrogatory

15    responses state that it doesn't -- they don't track trial

16    accounts and they don't have any information on that.

17            The exhibit submitted -- the slide deck submitted in

18    support of their motion to compel -- or their opposition to the

19    motion regarding Mr. Federighi actually identifies a number of

20    trial customers.

21            I understand they may not track it perfectly or

22    completely; but to the extent that they had customers using

23    trial accounts who had access to their product who they're

24    aware of, I would ask that we be provided information about

25    those customers as well.
```

```
 1            THE COURT:  Is that requested in RFP or in an
 2   interrogatory?
 3            MS. STEBBINS BINA:  It is, your Honor.
 4            Their interrogatory says they don't track it so they
 5   can't provide it.  But they have -- they do actually track it,
 6   at least --
 7            THE COURT:  But I mean, I don't see that as being in
 8   the joint notice.  What interrogatory is that?
 9            MS. STEBBINS BINA:  It's in the RFP responses, your
10   Honor.
11            THE COURT:  In the RFP responses that counsel
12   mentioned?
13            MS. STEBBINS BINA:  Yes, your Honor.  All of those
14   relate to actual and potential customers.  The actual customers
15   we defined as included trial accounts.  So I would ask that
16   they would be included.
17            THE COURT:  Well, actual customers would include trial
18   accounts.
19            MS. STEBBINS BINA:  Yes, your Honor.
20            THE COURT:  And then I want rejected customers.  But
21   I'm not ordering them to produce all potential customers.  If
22   somebody emailed them and said, "Hey, I'm interested in this
23   product" and that was it, they don't have to produce that.  I
24   think that's --
25            MS. STEBBINS BINA:  I understand.
```

```
 1              THE COURT:  -- that's going down a rabbit hole.

 2              MS. STEBBINS BINA:  Yes.

 3              THE COURT:  But it's actual customers.  And if it was a

 4    trial product, then they were at least on a trial basis a

 5    customer.  So that would have to be produced.

 6              MS. STEBBINS BINA:  Thank you, your Honor.

 7              THE COURT:  And that's in response to the request for

 8    production.

 9              MS. CONSTANTINE:  Your Honor, if I may, just to

10    clarify.

11              THE COURT:  Yes.

12              MS. CONSTANTINE:  Some of the potential customers were

13    placed on a trial period of maybe four days at most.  Does this

14    Court believe that those items are responsive?

15              THE COURT:  If it's four days or four months or four

16    years, it doesn't matter.  It still has to be produced.

17              All right.  So the next motion to deal with is Apple's

18    motion to compel Corellium to produce RFP documents.  There's

19    Apple's motion at DE 68; Corellium's response at Docket Entry

20    77; Apple's reply at Docket Entry 88 and 105; the Court's order

21    at Docket Entry 149; the joint notice at 188.

22              And it seems to me that one of the primary issues

23    driving this dispute is the definition of the Corellium Apple

24    product.  Would that -- would the parties agree with that?

25              MS. STEBBINS BINA:  That's only part of the issue, your
```

1    Honor.

2         I thought we had an agreed definition of the Corellium

3    Apple product that we were working with at the moment.  Our

4    side does have some concerns with how that's played out.

5         But I -- my understanding from our hearing last time

6    was, subject to that definition, they would be fully producing

7    everything.

8         They've now come back refusing to produce a number of

9    things even with that narrow definition and maintaining trade

10   secret objections even with that narrowed definition.

11        So part of our concern is that they're still not

12   producing and we don't know what they're withholding.  So it's

13   a bit broader than the definition.

14        THE COURT:  Is the definition that was tentatively

15   agreed to at the last hearing -- I know that the way it worked

16   out was that the parties tentatively agreed to that definition

17   and then -- that was the definition Corellium wanted and then

18   Apple would use that definition and determine whether it was

19   sufficient once it got its production.

20        So where are we on that?  Does the Court need to decide

21   a definition of the Corellium Apple product?  Because if I do,

22   I'm prepared to do that.  If not, then what's at dispute --

23   what's in dispute on the request for production?

24        MS. STEBBINS BINA:  Can I be heard again?

25        THE COURT:  Ms. Bina.

```
 1            MS. STEBBINS BINA:  So there's two -- there's two kinds
 2     of issues.  One is the definition of the Corellium Apple
 3     product.
 4            And when we left last time, your Honor said that they
 5     would give access to the product to our expert so he could use
 6     it and play around with it and try it out, and they would also
 7     provide everything responsive under their definition of the
 8     Corellium Apple product.
 9            So the first issue with respect to the expert,
10     apparently sometime in the last couple of weeks after we
11     designated our expert, they changed how the cloud-based version
12     of the product works.
13            So up until sometime less than a month ago, if you used
14     the cloud-based version of the Corellium Apple product, it
15     would load and populate and you would have a choice of iPhones
16     to choose from and you could click "I want an iPhone 10,
17     jailbroken," and it would load that all for you.
18            THE COURT:  This cloud-based version of the Corellium
19     Apple product, what's it called in your view?
20            MS. STEBBINS BINA:  I would call it the cloud-based
21     version of the Corellium Apple product.
22            THE COURT:  Okay.
23            MS. STEBBINS BINA:  They have a house install version
24     where they actually put, like, equipment in your house and then
25     they have a cloud version that you can access on the cloud.  So
```

```
 1    they've changed how that works, your Honor.

 2          And now, instead of preloading all of those Apple

 3    iPhone iOS devices, it's just a blank and you're supposed to

 4    upload your own iOS device.  And they served amended

 5    interrogatory responses this morning that don't say when that

 6    change was made and they're still using the other version on

 7    their -- on their home-based product, their on-premises

 8    installation.

 9          So essentially, they've just taken away from our expert

10    his ability to actually find out how the system worked for the

11    entire time it's been on the market until maybe two, three

12    weeks ago.

13          THE COURT:  So if I understand what your position is --

14    and I'll hear from Corellium -- but your position is that the

15    cloud-based version of the Corellium Apple product was one

16    version up until after the last hearing when your expert was

17    going to be provided access to the cloud-based version, and

18    then after that it was modified so that it's a different type

19    of cloud-based version that your expert cannot determine

20    what -- how it was operating prior to the change?

21          MS. STEBBINS BINA:  Your Honor, I don't know exactly

22    what date it was modified.  But within last month is my

23    understanding.  It may have been after the hearing.  But it

24    was -- it may have been before the hearing, but it was after we

25    gave our expert designation.
```

1          MR. LEVINE:  Your Honor, I can cut this short.  We're

2    happy to produce it.  This thing is a very recent day.  I can

3    be very clear on all these issues.  Everything other than this

4    little bit of code that was just changed and brought to our

5    attention in the couple of last days has been produced.

6          Everything objected to, the retention of the objection

7    on trade secret, is everything relating to the rest of the

8    company outside of the Corellium product, the Android stuff,

9    the hypervisor, the stuff outside the Corellium product.

10         Everything relating to inside the Corellium definition

11   has been -- Apple product definition has been produced other

12   than this a little bit of code, which is a brand-new issue,

13   which we will produce.

14         MS. STEBBINS BINA:  Your Honor, that's not true.

15         The protective order provides a particular method for

16   producing source code.  The source code is supposed to be made

17   available along with tools that are sufficient for viewing and

18   searching the code produced on the platform produced if such

19   tools exist and are presently used in the ordinary course of

20   the producing party's business.  That's ECF 50 at 13.

21         They gave us .pdfs of the source code, your Honor, with

22   no organizing setup, no explanation of what the .pdfs were for,

23   no way for our expert to match up one thing to another or find

24   out how the system is organized as a whole.  And that may be

25   because they're trying to hide their hypervisor product.

```
 1          But essentially, what they gave our expert is
 2   completely useless.  He can't look through it and determine
 3   what they've done, how their product works.  Between the change
 4   they made to the cloud-based version of the product and the
 5   .pdf source code, we don't have what we need to understand how
 6   this product works.
 7          THE COURT:  So what is it that you say you need?
 8          MS. STEBBINS BINA:  Well, so, your Honor, I think at a
 9   minimum we would need the source code in a useable form.  I
10   think we would need access to an on-premises version of a
11   Corellium Apple product, since that is the only version that's
12   now functioning in a way that it did historically.
13          I also think, you know, what Mr. Levine just said is
14   that they're only objecting on trade secrets based on the
15   hypervisor.  But there are a number of RFPs -- and let me check
16   on my laptop -- where they've just refused to produce
17   altogether.
18          So, for instance, RFP No. 9:  They've produced to --
19   produced functionality, but not design.
20          Your Honor ruled last time that for the design of the
21   Corellium Apple product as defined by the Court, they had to
22   produce design materials.
23          They're still refusing to produce that and calling that
24   a trade secret.
25          For No. 12, you know, we talked -- that's testing.  We
```

1  talked about last time, that we needed to confirm that there

2  was no Apple product used in testing and development.

3       They're refusing to produce anything in response to No.

4  12.  They're refusing to produce anything at all in response to

5  No. 13.

6       THE COURT:  All right.  But let's stick with one issue

7  at a time.

8       The first issue is, as I recall at the last hearing,

9  Corellium was going to be providing some sort of sample of the

10 Corellium Apple product so that your expert could test it.  Let

11 me find which portion of my order that was.

12      MS. STEBBINS BINA:  Yes, your Honor.

13      THE COURT:  So it's Paragraph 2 at Docket Entry 149,

14 Page 2.  It says:  "On or before February 24th, 2020, Corellium

15 has also agreed to provide Apple's expert with the necessary

16 credentials so that Apple's expert can interact with the

17 Corellium Apple product as if the expert were a customer of

18 Corellium."

19      Now, you're saying because of the change in the

20 Corellium Apple product, your expert cannot interact with the

21 product as if it were a customer of Corellium?  Is that what

22 you're saying?

23      MS. STEBBINS BINA:  Your Honor, it may be that he can

24 interact as though he were a customer post- whatever change

25 they did.  But what he can't do is figure out what it looked

```
1    like prior to last week.  There's no way to do that from the
2    product that he's been given.
3              THE COURT:  All right.  So let me turn to Corellium's
4    counsel.
5              What about that?  I understood that the expert,
6    according to the agreement the parties arrived at at the last
7    hearing, that he would be able to interact with the Corellium
8    Apple product as if the expert were a customer of Corellium.
9              And now I'm hearing that he can only interact with the
10   new version and not the old version.
11             MR. LEVINE:  So I'm going to briefly discuss the
12   technical aspect to inform the Court, your Honor, and then I'll
13   let Lizza take the actual discovery aspect of it.
14             As I've learned in the last couple days, a week or two
15   ago or very recently, there became some instability in the
16   files that are used in the Apple Corellium product.
17             There was -- there were a bunch of complaints by the
18   customers to Corellium saying:  Your product is messing up and
19   not working correctly.
20             And so they ran some tests, and it turned out that the
21   product was working fine, that it was some instability.
22             And so they looked at this ipsw.me website and they did
23   some research on Twitter and it appeared that people not even
24   related to this case or Corellium were downloading these files
25   that are available were experiencing the same but very random
```

1    instability.  And they were causing systems all over the place

2    to go down and not work properly.

3          So that being said, somewhere in the midst of all of

4    this, we were provided with the credentials which we forwarded

5    on to Apple's counsel and their expert; and because of the

6    inoperability and the bugs that were occurring in Corellium's

7    Apple product, they did an update to fix it and they changed

8    the system just a little bit so that you could deal with the

9    instability of these files that were bringing in.  And I can

10   explain very, very simply what it is.

11         The Corellium Apple product works exactly the same as

12   it has.  The one difference, the one isolated difference, is

13   that it used to -- what would happen is that when you as a

14   client would log onto the Corellium Apple product and you would

15   be building your iPhone or whatever and then you would -- there

16   would be a drop-down menu that says, "Which iOS would you like

17   to -- would you like to load into your device, your virtual

18   device?"  And then you would go down and you would select the

19   iOS.

20         Once you would select it, a request -- and that's

21   actually really important -- a request would go out to the

22   Apple website, would go out to the ipsw.me website, and that

23   request candidly would be about simultaneously granted for the

24   download of the ipsw.

25         That would then download into the Corellium Apple

1    product, and off you go.

2          With the instability of the IPSW accounts, that

3    automated request and download system was hanging up the

4    product.

5          So what they did was they simply removed that drop-down

6    bar or menu and they simply put a "drag here" box.  And so now

7    the customer has to go into and get the ipsw file on its own

8    and then simply drag it onto the Corellium.  That's the only

9    change.

10          And it was simply done in the course of business only

11    because of the instability that the product was experiencing

12    due to these downloads of files.  That is not related -- or not

13    isolated to Corellium.

14          THE COURT:  Let me just stop you for a second.  I

15    understand your argument.  I'm sure Apple is suspicious of your

16    argument.

17          How is it possible to get the expert who at the last

18    hearing was agreed that he can interact or she can interact

19    with the Corellium Apple product as if the expert were a

20    customer of Corellium -- how can that expert gain access to

21    interact with the new version and the version that was at issue

22    during most of this lawsuit?

23          MR. LEVINE:  Two ways:  One, we're happy to produce the

24    code.  We have the code stored from the prior version.  Happy

25    to produce the code as it relates to that.

```
 1              THE COURT:  Okay.

 2              MR. LEVINE:  Second way:  The reason Apple found this

 3     is because there's a ton of videos on YouTube about how the

 4     Corellium product works.  And so their expert was comparing the

 5     current version with -- on YouTube, and apparently that's how

 6     they found it.

 7              So the old version, which again is merely the omission

 8     of a drop-down and it's just simply an addition of a box that

 9     says "drag here" -- the old version is all on YouTube.  And

10     that's how the expert found it.  And so that one little

11     isolated incident, he can watch a two-second clip on YouTube.

12     The rest of the product is identical.  And again, we're happy

13     to provide the code.

14              THE COURT:  So will Corellium provide the code and the

15     old and new version of the Corellium Apple product to Apple so

16     that their expert can access it?

17              MR. LEVINE:  Yes, your Honor.

18              THE COURT:  All right.  When will that get done?

19              MR. LEVINE:  I think -- can you give me until tomorrow?

20     I think today.  But if we can have until tomorrow.

21              THE COURT:  Until tomorrow's fine.

22              Ms. Bina, did you have anything to add to that?

23              MS. STEBBINS BINA:  Your Honor, I mean, it needs to be

24     provided in a useable format consistent with the protective

25     order, not in .pdf.  It needs to be on a source code machine
```

```
 1    viewable so that the expert can actually interact with it.

 2         MR. LEVINE:  If I can comment, actually, because

 3    counsel -- co-counsel just brought up an important point:  The

 4    old code, the expert can review it and read it.  But it's not

 5    something that can be implemented.  The system -- the action

 6    was forced to make a change.  It's not something like we used.

 7    But they're happy to look at it.  And again, it's all

 8    memorialized on YouTube.

 9         THE COURT:  Well, is it going to be produced in a

10    useable format?

11         MR. LEVINE:  They can look at it.  But there's not

12    going to be anything they can plug it into.

13         THE COURT:  Isn't there an old version somewhere that

14    they can roll out and produce?

15         MR. LEVINE:  They would have to -- and I don't know

16    this for sure.  But my understanding is that they would have to

17    stop the actual product and revert it back to the broken

18    version, which then I can't even say that it's going to work

19    properly for the expert.

20         But they'll have to --

21         THE COURT:  Well, but is the old version at issue in

22    this case?

23         MR. LEVINE:  It --

24         THE COURT:  I mean, if the old version is at issue in

25    this case, and if Corellium has done something to make the old
```

```
1    version now unobtainable, is that not spoliation of evidence?

2           MR. LEVINE:  No.  It's -- they can revert it back, but

3    they would have to shut down their business just so --

4           THE COURT:  I mean, can't they just put their old

5    version onto some simulator or something and provide it to the

6    expert aside from shutting down their whole business?  Because

7    what I'm concerned with, I understand your argument and your

8    position it was done in the course of business.  I'm sure if I

9    asked Apple, they're going to be suspicious that this occurred

10   at this moment.

11          You may be perfectly correct.  But I think both sides

12   have the right to at least inquire into it.

13          And the concern I have is if the whole litigation has

14   been about the Corellium Apple product as it was and it's been

15   recently modified, how does the other side, how does Apple find

16   out if the older version violated their copyrights and the

17   newer version doesn't or the older version violated -- was

18   digital piracy and this version isn't?  I don't know.

19          I just know what's at issue in this case and I'm trying

20   to make sure that we don't have an issue where a prior version

21   that, you know, I say was changed in the course of business and

22   they say may not have been changed in the course of business --

23   I want to make sure that the parties have the right to look at

24   both versions and test both versions to make sure that we're

25   talking about the same thing here.
```

1          I don't want there to be unfounded suspicions by Apple

2     that, you know, this has been done to frustrate discovery.  But

3     I don't also want it to go untested.  Do you understand?  So

4     I'm trying to figure out a way that the current version can be

5     made access to for Apple's expert and that Apple's expert can

6     satisfy him or herself that the prior version operated in

7     whatever manner it operated.

8          Do you understand what I'm saying?

9          MR. LEVINE:  So the operation of the Corellium Apple

10    product has not been changed.

11         What is at issue in this case is the reproduction, as

12    Apple alleges, the copying, which doesn't occur, but as Apple

13    alleges, the copying, the reproduction display of iOS.

14         None of that has changed.  It is merely the way that

15    the file is simply loaded into -- it's uploaded now versus

16    downloaded.  And for some tech reason, that has fixed this bug

17    problem.

18         There's got to be a burden analysis done here.  So we

19    are willing to provide the actual code that their expert can

20    review.

21         THE COURT:  What format?  In a useable format or in

22    .pdf?

23         MR. LEVINE:  So I don't know if I know the distinction.

24    We will provide it in native format.  But I don't know if the

25    expert has a -- I don't know.  But again, I mean, this is akin

```
1    to, you know, a huge construction building at issue and someone

2    changing a hinge on a door and then claiming that now there's

3    huge foundational issues and they've got to rebuild the

4    building just to see if this hinge changed something.

5           THE COURT:  Right.  And you know what?  You may be

6    right.  And if that's the case, then it's not going to amount

7    to much.  But during the discovery process, I just want to be

8    certain that the parties, both sides, have the right to argue

9    what this change did.  It may be a change that is of no moment

10   according to you.

11          MR. LEVINE:  They can see that.  They've got the --

12   they've got full access to the product.

13          THE COURT:  All right.  Well, I'm going to want -- I

14   want -- as far as the agreement that was reached the last time

15   so that Apple's expert can interact with the Corellium Apple

16   product as if the expert were a customer of Corellium --

17          MR. LEVINE:  Which he can.

18          THE COURT:  As of today.  But I'd also want him to be

19   able to do that as of the time the lawsuit was filed.

20          MS. STEBBINS BINA:  Your Honor, if I may, their

21   interrogatory responses served this morning state that for the

22   on-premises version, the prior loading system is still

23   available for -- on a subscription plan.

24          So maybe we could get an on-premises installation copy

25   or something.  I don't know.
```

```
1              THE COURT:  I'm going to leave that up to the parties.

2         All I can say is this:  I want pursuant to the prior

3    order at Docket Entry 149, Paragraph 2, and the parties'

4    agreement, I want Apple's expert to have the necessary

5    credentials so that they can interact with the Corellium Apple

6    product as if the expert were a customer at this time and also

7    at the time prior to the change.  I mean, because that was the

8    version that was at issue while this lawsuit has been going on;

9    and I don't want there to be some issue hanging out in the air.

10             Whatever way you decide to do that among yourselves is

11   fine with me.  I'm not going to get involved in the technology

12   nuts and bolts of it.  But, you know, if the code is produced

13   in native format or in useable format or in whatever other

14   format, then that should solve the problem.  But I can't get

15   into the specifics of a highly technological issue.

16             MR. LEVINE:  I struggle with it, too, your Honor.

17             So a couple brief issues:  One, again, we are happy to

18   provide the code.  If that resolves the issue -- and we are

19   happy to provide it in native format, so -- which is as useable

20   and as native as it comes.

21             So if that resolves the issue, we can get that done,

22   like I said --

23             THE COURT:  Why don't we do that and let's see what

24   Apple's expert has to say about that --

25             MR. LEVINE:  Okay.
```

```
1            THE COURT:  -- when Apple's expert looks at it.

2            MR. LEVINE:  So it was just brought to my attention,

3   Apple's expert may be precluded entirely from using this as it

4   was because the system -- this is a report, apparently, that's

5   run -- and that the system is failing on the basis of the

6   files, not the Corellium Apple product.

7            So I don't know if any customer could ever again use it

8   as it was because the system no longer works in that manner.

9            And if I can approach the Court, I just got --

10           THE COURT:  No.  That's okay.  I will accept your

11  representation.  And that may be the case.  But I want the

12  other side to be able to verify that.

13           MR. LEVINE:  I'm happy to provide the code in useable

14  format, your Honor.

15           THE COURT:  And if they verify that and they raise

16  other issues, they'll raise other issues.

17           But let me hear from Ms. Bina.

18           MS. STEBBINS BINA:  Yes, your Honor.

19           I'd also ask that they reproduce the code they've

20  already produced in a useable format and they do that

21  forthwith.

22           And I'd like to --

23           THE COURT:  They're agreeing to do that.

24           MR. LEVINE:  Yeah.  I was under the impression that it

25  was.  So if it was not, I'm happy to do that.
```

```
1              MS. STEBBINS BINA:  And I'd like to reserve all rights
2      to come back on the hypervisor issue.  We still haven't been
3      able to see what they promised to provide last time.
4              THE COURT:  And the hypervisor issue goes back to the
5      definition.  Right?
6              MS. STEBBINS BINA:  Yes, your Honor.
7              THE COURT:  So why don't we talk about the definition
8      for a few minutes?  Maybe that would help.
9              And let me ask the parties, from what I can gather, the
10     Corellium Apple product virtualizes physical devices, including
11     Apple mobile devices, and enables users to execute the various
12     device operating systems in a simple unified environment.
13             Would everybody agree that that's correct?
14             MS. STEBBINS BINA:  I think so, generally, your Honor.
15     I don't know how simple it is, personally.
16             But --
17             THE COURT:  Okay.  Now, the Corellium Apple product
18     technology certainly utilizes portions of Apple's technology.
19     Would everybody agree on that?
20             MS. STEBBINS BINA:  Yes, your Honor.
21             MR. LEVINE:  No, your Honor.
22             THE COURT:  You would not?
23             MR. LEVINE:  No.
24             THE COURT:  Do you have your answer there?  Could you
25     locate your answer, Docket Entry 64?
```

```
1            MR. LEVINE:  The --

2            THE COURT:  Yes.  Corellium's answer to the --

3            MR. LEVINE:  I do not have that with me.  And I don't

4   have that -- I can't get online on my computer.

5            THE COURT:  Let's see.

6            MR. LEVINE:  If you can read it into the record, I can

7   respond, your Honor.

8            THE COURT:  Hold on a second.

9            All right.  So Corellium's answer, affirmative defenses

10  and counterclaims to Apple's first amended complaint are found

11  at Docket Entry 64.  And in going through it, at Page 6, it

12  says:  "Instead, Corellium's technology utilizes portions of

13  Apple's technology for entirely distinct purposes, which

14  provides significant societal benefits."

15           So my question was:  Doesn't the Corellium Apple

16  product utilize portions of Apple's technology?

17           MR. LEVINE:  So I guess maybe I wasn't clear on the

18  definition of "use."

19           So I would still say no.  However, the Corellium Apple

20  product again, as I explained in the last hearing, it's

21  simply -- it's a file that's loaded on.  It doesn't use any

22  aspect of Apple's technology; it's merely a file.  Just like if

23  you -- if you purchased a computer and the computer came

24  without the Adobe program and you loaded the Adobe program onto

25  it --
```

```
1            THE COURT:  Well, then why --

2            MR. LEVINE:  -- there's no operation in that computer.

3            THE COURT:  Then why, counsel, does your answer say:

4    "Instead, Corellium's technology utilizes portions of Apple's

5    technology"?

6            Now, it goes on and it says "for entirely distinct

7    purposes, which provide significant societal benefits."

8            But I think -- isn't that the crux of the issue in this

9    case?  In other words, while Corellium says that its technology

10   utilizes Apple's technology for entirely distinct purposes and

11   to provide societal benefits, Apple seems to claim that

12   Corellium's technology influences -- or infringes on Apple's

13   copyrights and violates the DMCA, the Digital Millennium

14   Copyright Act.  And Apple alleges in effect digital piracy.

15   And this seems to be the crux of the dispute, where -- and this

16   is the problem I'm having:  I mean, I ask you a question about

17   whether Corellium's technology utilizes portions of Apple's

18   technology, and you say no.

19           And then I look at your answer and it says that it

20   does, but for different reasons.

21           And I just -- I don't understand what's going on here.

22   And we have to have a clear definition of what we're talking

23   about.

24           So it just seems to me -- and I'm going to ask both

25   sides to correct me if I'm wrong -- it seems to me that
```

```
 1   Corellium is utilizing Apple's technology.  Corellium says it's
 2   utilizing it for really good purposes, for beneficial purposes
 3   to society; Apple says:  No; it's using it for bad purposes to
 4   engage in digital piracy and copyright violations.
 5           I mean, is that the crux of this case?
 6           MS. STEBBINS BINA:  Yes, in our view, your Honor.  I
 7   mean, they have this hypervisor, whatever they want to call it.
 8   But it's sold as a single product.  And that product that their
 9   customers buy or buy access to gives them the ability to open
10   up a copy of iOS, explore it, display it on a computer in
11   violation of our license agreements.
12           And I don't know --
13           THE COURT:  And that's your position.  Their position
14   is they're doing it to -- for security reasons and to help
15   society.  And that's really what's going to have to be decided
16   in this case, isn't it?
17           MS. STEBBINS BINA:  Yes.  And they're saying this is
18   completely transformative because they're doing it in a totally
19   different way; and that transformativeness, they're claiming,
20   is due to the hypervisor, which is what they claim is this
21   incredible technological achievement that enables something
22   that didn't happen, you know, previously, and that's why
23   they're claiming it's fair use and transformative and all of
24   those things.
25           So to me, it's a single product and we're disputing its
```

1    purpose and nature.

2           THE COURT:  All right.  Let me hear from Mr. Levine on

3    that.

4           MR. LEVINE:  Okay.  I was being very careful with the

5    word "use."  And maybe it could have been articulated a little

6    bit better in the answer.

7           The definition that came up during the last -- and it

8    was resolved at the last hearing --

9           THE COURT:  Well, it was tentatively resolved.

10          MR. LEVINE:  -- tentatively resolved at the last

11   hearing, I think, was more well put by discussion with the --

12   with the client.  That definition uses the word "handle."

13          THE COURT:  Right.  I have it right here.  It says:

14   "It includes only those components of the Corellium platform

15   that are responsible for handling iOS."

16          MR. LEVINE:  Precisely.

17          THE COURT:  That's your proposed definition.

18          MR. LEVINE:  Correct.

19          So maybe we could have been -- the lawyers could have

20   been more articulate in the answer.  I was being careful around

21   the word "use" because Apple has been accusing that we've been

22   copying and that we've stolen things from Apple.  And that's

23   not the case.

24          So do we use it in that you can upload a file and then

25   it is displayed, as Ms. Bina actually just put?  I would agree

```
 1     with that.  That is exactly how the product works.
 2            Is it used in the code of the hypervisor?  Absolutely
 3     not.
 4            Is there any aspect of the hypervisor that is dedicated
 5     at all to the iOS?  There are those patch portions, and that
 6     has been provided.  And if we haven't provided the native, we
 7     can get that done immediately.
 8            That's why the definition works.
 9            Now, I'm not surprised that they're receding.  I would
10     make the same argument that the hypervisor is not related to
11     the iOS -- the hypervisor can do many other things -- and that
12     it's only as the person uses it as a customer, which is the
13     relevant portion.
14            So we have provided everything that relates to and
15     handles iOS.  That is what this case relates to.  There's
16     nothing in the complaint about any other aspects of the
17     company.  It is highly, highly sensitive information and very
18     proprietary.
19            And --
20            THE COURT:  Well, let me ask you, I understand that.
21     Let me ask you this, because I want to get this definitional
22     issue resolved because the discovery closes April 20th.  And
23     the parties need to get this issue resolved.  We have a lot of
24     other issues to resolve today.
25            But it seems to me that the Corellium Apple product
```

1    very well would include this definition:  All products

2    developed, offered for sale or sold by Corellium that create

3    virtual versions of iOS-operated devices.  This does not

4    include Corellium products that are based on other mobile

5    operating systems.

6         Now, can both sides live with that definition?  And

7    I'll read it again if you need me to.

8         MR. LEVINE:  With some further clarity, possibly.

9         THE COURT:  The definition possibly -- and I'm going

10   to -- since the parties can't agree on a definition, I'm

11   imposing one today, just so everybody knows.  Whether you like

12   it or not, that's going to be the definition.  These are

13   technological issues.

14        I've asked the parties to confer.  I've asked the

15   parties to work it out.  It doesn't happen.  So I'm imposing a

16   definition today, and the parties are going to have to live

17   with it whether they like it or not.

18        So the first proposal that I'm going to suggest is:

19   All products developed, offered for sale or sold by Corellium

20   that create virtual versions of iOS-operated devices.  This

21   does not include Corellium products that are based on other

22   mobile operating systems.

23        And then the question then becomes whether this

24   definition does or does not include the hypervisor.

25        MR. LEVINE:  That's the question.

```
1              THE COURT:  All right.  So why would that not include

2    the hypervisor?  Isn't the hypervisor part of all products

3    developed, offered for sale or sold by Corellium that create

4    virtual versions of iOS-operated devices?  Or is it not?

5              MR. LEVINE:  I would say no, your Honor.  You know,

6    it's not -- again, this is -- so the Corellium Apple product is

7    just this:  It is the -- now it is the upload versus the

8    download of Apple files, the ipsw files.

9              The Corellium Apple product relates to only so far as

10   the patches that make that file compatible and useable on the

11   hypervisor.

12             That stuff has already been produced.

13             Providing the hypervisor, which is in no way isolated

14   to the iOS and related to really anything on any of the --

15   whether it's iOS or Android or Google or any, it's not

16   connected; it's merely the -- the iOS aspect has to be made

17   compatible to be used by the hypervisor.  But the Corellium

18   Apple product is specifically limited to the iOS aspect of it.

19             THE COURT:  Right.  And so can't your production be

20   limited to that part of the hypervisor that only deals with

21   iOS-operated devices?

22             MR. LEVINE:  It already -- that is.  That is the case.

23   And that's what the definition -- the prior definition did, was

24   only the aspects of the Corellium platform, the platform being

25   the hypervisor, that handle iOS.  And that stuff has been
```

```
1   produced.
2           THE COURT:  So then if the definition were:  "All
3   products developed, offered for sale or sold by Corellium that
4   create virtual versions of iOS-operated devices.  This
5   definition does not include Corellium products that are based
6   on other mobile operating systems.  This definition does
7   include the hypervisor to the extent that it creates -- it
8   assists in creating virtual versions of iOS-operated devices"?
9           MR. LEVINE:  So the way I'm hearing that, the second
10  aspect of that definition is it does include any aspects of the
11  hypervisor that relate to iOS.
12          The way I interpret that is that in my understanding of
13  the technology, which is generally pretty good for a layperson,
14  is that is the patches.  That is the portion that makes the
15  ipsw files able to work with the generic hypervisor.  And those
16  aspects have already been produced.
17          And we -- if the native format has not, we agree to do
18  it here on the record.
19          THE COURT:  All right.  Let me hear from Ms. Bina on
20  this.
21          MS. STEBBINS BINA:  Your Honor, they don't sell an
22  Apple patch "Bring your own hypervisor; you can use it."
23          They sell a product as a whole, and that product
24  enables their users to look at our technology and display it
25  without a license.
```

1          When you talk about products that are offered for sale

2    that display iOS devices, I don't understand how you can

3    separate the one from the other.

4          You know, I tried to give them some wiggle room last

5    time, saying maybe we can live with what they give us; let's

6    look at it.  But if you're asking me, Does their product

7    include the hypervisor, I think it does, because they don't

8    sell the Apple patch if you happen to have a hypervisor.  They

9    sell the Corellium Apple product.  They give cloud access to

10   it; they install home premises of it.  And they sell the whole

11   product.

12         And it's the whole product that is what is enabling the

13   infringement here, in our view.

14         THE COURT:  So then in your view, the definition that

15   the Court has proposed, which is:  "All products developed,

16   offered for sale or sold by Corellium that create virtual

17   versions of iOS-operated devices.  This definition does not

18   include Corellium products that are based on other mobile

19   operating systems.  This definition does include the hypervisor

20   included in the package that Corellium sells"?

21         MS. STEBBINS BINA:  Yes, your Honor.  I don't know if

22   they have one hypervisor or two hypervisors.  In other words, I

23   don't know if they have a different hypervisor for Android

24   devices.  Obviously, if they do, we don't have any interest in

25   that.

```
 1          But if it's one hypervisor and it can run both things,
 2    but they're selling it and they're -- and people are accessing
 3    iOS devices through it, then I think it is -- falls within that
 4    definition.  Yes.
 5          THE COURT:  All right.  Mr. Levine?  So that was the
 6    definition I was proposing.  And I'm trying to -- I'm trying to
 7    get to the heart of this issue because I understand the
 8    parties' positions pretty well now.  And I think we have to
 9    have a firm definition that production and everything else is
10    based upon.
11          So let me hear from you further on that.
12          MR. LEVINE:  Corellium sells the platform.  If the
13    current definition that your Honor is proposing is used, Apple
14    gets everything.  They get the entire company.  The whole
15    thing.
16          Apple sells the platform.  On that platform, you can do
17    certain things.  Some things are not related to iOS by any
18    stretch.  One thing is:  the iOS aspect of it.  Everything
19    related to iOS has been produced.
20          If we provide all products that are sold -- and I don't
21    even know if it's deemed a product, you know.  And I think that
22    might come down the road later on, so I want to reserve on
23    whether it's a service or product.
24          But providing all products, that's it.  They get the
25    entire thing.
```

1          Now, one -- it's just that simple.  You know, there's

2   some grave concerns.  Apple is, as your Honor is aware -- has

3   been after this technology for years now.  They don't have it.

4   They do not have the ability to get it at this point in time.

5          By providing this -- once again, there's just no

6   relevance.  It's -- the prior -- I hate to say it, because I

7   don't want to come off as biased and an advocate.  But truly,

8   the definition that was provided at the last hearing genuinely

9   gives everything there is that relates to and is associated

10  with the iOS.

11         Corellium sells the platform.  That's their bread and

12  butter.  That's everything.  And you can do certain things on

13  that.

14         To give up everything, it's just -- you know, Apple is

15  just prying into every little thing.

16         For example, you know, the subpoenas -- you know, the

17  trial periods and the potential customers, Apple's now going to

18  go on this rampage of serving subpoenas to people that have

19  already been subpoenaed, you know.  They are just digging and

20  digging and digging and digging and digging and digging.  To

21  give up the whole kitchen sink when the majority of it and the

22  entire platform is just not related and it has no bearing on

23  the reproduction, the display, the alleged copying of the iOS

24  when all of that stuff is already in their expert's hands, it's

25  just -- it's way too overbroad.

```
 1          THE COURT:  So let me ask you, if the Corellium Apple
 2  product includes the platform, how does the other side test
 3  whether that platform is being used to engage in copyright or
 4  digital piracy as opposed to what you allege, which is a
 5  good-faith security investigation to help society and to help
 6  make the product better?  How does Apple investigate that
 7  without having access to the platform?
 8          MR. LEVINE:  So they -- let me split up two separate
 9  things:  They do have access to the platform.  That's what we
10  discussed earlier today, you know, relating to this minor
11  change.  They have access.
12          What it's used for, they're now going to get our even
13  potential.  They're going to get people who aren't even
14  customers.
15          That is how they -- the code, the source code, has
16  nothing to do with what it's being used for.  The source code
17  is just the skeleton.  It's what they can't -- their engineers
18  can't get.
19          So they now have client lists.  They now have "people
20  who are not even clients" lists.  They're going to get people
21  who are on trial basis; they're going to subpoena those people,
22  which they've already started doing.  They can determine and
23  depose our clients to determine what they're being used for.
24  They've got access to the actual product.  Their expert's on
25  there, playing around.  They've got YouTube.  They know what
```

```
 1    it's being used for.

 2            To have to produce the code -- and they already have

 3    the code that encompasses and encapsulates everything iOS.  So

 4    to give them code that relates in no way specifically to iOS,

 5    that's merely the platform, again, would simply -- to just give

 6    up the ship, when it just -- there's nothing there.  They --

 7    there's no copying of Apple's code because Apple doesn't have

 8    this technology.  That's why they wanted to buy it for millions

 9    of dollars.

10            THE COURT:  Is the hypervisor a platform?

11            MR. LEVINE:  That's -- that's Corellium.  It's what is

12    sold.  It's the --

13            THE COURT:  I mean, is hypervisor designated as some

14    sort of platform?

15            MR. LEVINE:  The hypervisor is, I think, what maybe

16    Corellium would call its platform.  Yes.

17            And as I mentioned, the aspects -- let me be clear:

18    Every aspect that relates specifically to iOS has been

19    provided.  To give up the entire ship, it just -- it's giving

20    everything up to an aggressor, candidly, with all due respect,

21    who cannot get this technology and has offered millions of

22    dollars to buy it.

23            We're already providing them the bugs that we've found

24    that they're supposed to be paying us for.

25            THE COURT:  No, no.  I don't --
```

1          MR. LEVINE:  Well, I just --

2          THE COURT:  -- think you are.  You're advising the

3     numbers of the bugs.

4          You know, you keep making these arguments, trying to

5     make it seem like my decisions are one-sided when they're not.

6     I didn't say you had to provide those bugs; I said you had to

7     provide the number.

8          MR. LEVINE:  The problem --

9          THE COURT:  And when I asked you earlier about whether

10    Corellium's technology utilizes portions of Apple's technology,

11    you tell me no, even though it's in your answers.  So, you

12    know, I'm getting conflicting arguments from you.  And all I'm

13    trying to do is get this discovery under control.

14         I've never seen a case where the parties can't agree on

15    a definition to the extent of this case.  I'm trying to be

16    sensitive to Corellium's claims that its hypervisor is so

17    sensitive and so trade secret and so important -- I'm trying to

18    be sensitive to that.  But I am getting absolutely no

19    cooperation from counsel.  I'm not getting any assistance from

20    the parties.

21         And I am not -- you know, I'm going to make a

22    definition and the parties are going to have to live with it,

23    whether they like it or not.  So I'm trying to be fair to both

24    sides.  But you're making it -- the parties in this case,

25    counsel, all in this case, are making it extremely difficult

1    for me to do that.  It's not my problem; it's your problem.

2            MR. LEVINE:  Fair enough, your Honor.  And my

3    apologies.  Again, maybe I'm not being as articulate as I

4    could.  I was being very careful earlier with the word "use"

5    because it's Apple's allegations that -- you know -- I'm being

6    careful.

7            I would again agree that the ipsw files are displayed

8    on the -- you know, on the Corellium Apple product displayed --

9    it's played on it.  The display is a product of its own file.

10   It's not copied or anything.

11           So if that's the definition of "use," then I would

12   concede to that, your Honor.  I was just trying to be careful.

13           That being said, I don't know how to be -- I'm really

14   not trying to be difficult, your Honor.  I don't know how to be

15   more clear that every aspect that relates to iOS as it relates

16   to Corellium in my knowledge has been provided.

17           THE COURT:  Okay.  So let me just go through, because

18   this is my perception:  Corellium's definition, what you want

19   to use as the definition of the Apple Corellium product from

20   the last hearing, is that the Corellium Apple product includes

21   only those components of the Corellium platform that are

22   responsible for handling iOS.

23           Apple's definition from its discovery requests is "All

24   products developed, produced or sold by Corellium that can

25   enable creation of at least one virtual device.  Unless

1   otherwise specified, this term includes any and all versions of

2   such products separately or inclusively."

3          My concern is that Corellium's definition is too narrow

4   and that Apple's definition is too broad, because it almost

5   seems like Apple's definition would get into --

6          MS. STEBBINS BINA:  Your Honor, we carefully defined

7   virtual device to be only iOS devices.

8          THE COURT:  Okay.  I'm just concerned that it would get

9   into non-iOS devices.

10          So what I'm trying to do is to come up with a

11   definition that is consistent with the allegations in the case

12   by you, by Apple, the answers, the claims, the counterclaims,

13   everything.

14          MR. LEVINE:  I think -- here's the issue, your Honor --

15          THE COURT:  Well, let me just see.  Let me read this

16   definition:  "All products developed, offered for sale or sold

17   by Corellium that create virtual versions of iOS-operated

18   devices.  This definition does not include Corellium products

19   that are based on other mobile operating systems.  This

20   definition does include the hypervisor platform included in the

21   Corellium Apple product sold by Corellium to the extent it

22   relates to iOS."

23          That's the definition that seems to me to make sense.

24   And I'll hear from either side if it doesn't make sense.  But

25   that's the definition that seems to make sense.  And then you

```
 1    all can -- you know, will have to produce or not produce
 2    whatever is within that definition.
 3              MS. STEBBINS BINA:  Your Honor --
 4              MR. LEVINE:  Let me -- so I think --
 5              THE COURT:  I'll hear from Mr. Levine first; then I'll
 6    hear from Ms. Bina.
 7              MR. LEVINE:  I think the issue here is the word
 8    "product."
 9              Corellium sells a platform.  It sells one thing.  So
10    all products that do X, Y and Z, Corellium sells one thing.
11              THE COURT:  Well, then, you could answer that.  In
12    other words, the definition says "all products developed,
13    offered for sale or sold by Corellium that create virtual
14    versions of iOS-operating devices."
15              If your answer is the only one we have is that
16    Corellium product, that's it, there are no others, then there
17    are no others.
18              MR. LEVINE:  The --
19              THE COURT:  But anything that creates virtual versions
20    of iOS operating devices seems to me to be fair game in this
21    case.  I mean, is that the gravamen of the allegation here?
22              MR. LEVINE:  No.  The -- well, yeah.  The gravamen is
23    the iOS.  And all that has been produced.
24              Again, Corellium sells one thing.  There is -- you can
25    upload and play iOS files on that.  Every aspect of that has
```

1    been produced.

2          To do -- to come into this definition would literally

3    give up everything of Corellium.  Everything.

4          THE COURT:  Limit it to iOS.

5          MR. LEVINE:  It -- all products developed -- there's

6    one product.  We sell the access to a platform.  If a client

7    wants to test an iOS product, it goes on and it gets iOS files

8    and it does that.  If it wants to test an Android product, it

9    goes on and gets those files and it does that.  If it wants to

10   test a Google product or a Sony product, whatever product, it

11   goes on and does that.

12         We sell access to the platform.  So by saying "all

13   products developed," that is the entire Corellium.

14         THE COURT:  Well, the problem is this:  There's

15   allegations that Corellium has violated Apple's copyrights and

16   engaged in what's commonly referred to as digital piracy.

17         Your position is:  We didn't, and this Corellium Apple

18   product doesn't do that.  But you can't look at it.

19         MR. LEVINE:  No.  You can.

20         THE COURT:  But what you're saying is, it's so

21   sensitive and it's such a trade secret, it's almost like saying

22   that, well, even if we did steal it, which we say we don't, but

23   even if we did, and even if we are copyrighting it and even if

24   we are engaging in digital piracy, you can't look at it because

25   it's so sensitive and it's so protected and it's such a trade

```
 1   secret.
 2        It seems to be -- I'm trying to understand your
 3   argument and why it would be that if -- you know, if the claim
 4   is that this product is violating Apple's copyrights and is
 5   engaging somehow in digital piracy and your claim is that it's
 6   not, it's just finding bugs for the good of society, et cetera,
 7   why Apple can't look at that to make a determination from their
 8   expert just like your expert will look at it and make their own
 9   opinion.
10        MR. LEVINE:  They can.  Let me explain.
11        Apple sells access to a platform.
12        THE COURT:  Right.
13        MR. LEVINE:  That's what they sell:  access to the
14   platform.
15        THE COURT:  You mean Corellium.
16        MR. LEVINE:  Yeah.  The Corellium hypervisor --
17        THE COURT:  I think you said "Apple" sells.
18        MR. LEVINE:  Oh, excuse me.  I'm sorry.
19        Corellium sells access to a platform.  It sells it to a
20   client who's doing security app testing.
21        If that client wants to test iOS -- Corellium doesn't
22   dictate what they're testing.  They merely give them access to
23   this platform which can do five or six different things.  If
24   that client at that point in time wants to test an Android app,
25   then the client loads up the Android app onto the platform and
```

1    the platform engages its Android stuff, which I would call the

2    patches that allow the Android to -- the Android file to be

3    compatible on Corellium's single platform.

4           If the client says, I don't want to do Android; I want

5    to do Apple, iOS stuff, they upload the iOS file and the iOS

6    aspect of the Corellium hypervisor lights up and engages that

7    product.

8           If they want to the next day do a different product,

9    then the Corellium hypervisor engages those aspects of it.

10          THE COURT:  So what I'd want produced to Apple would be

11   the product that somebody buys that can then test an iOS

12   device, because you're saying it's merely testing to find bugs

13   and they're saying it's being copyrighted, et cetera.

14          So that's what needs to be produced.  Whatever that

15   product is that a customer purchases and then uses that portion

16   of the platform to test or copy or whatever it is they're

17   doing, an iOS device.

18          MR. LEVINE:  Very respectfully, your Honor, I still

19   question whether you're understanding exactly how this works.

20   And I'm really -- in the interest of my client, I need to be

21   very, very clear.

22          THE COURT:  All right.  So what you told me is

23   Corellium sells access to a platform.

24          MR. LEVINE:  One product.

25          THE COURT:  All right.

1            MR. LEVINE:  They sell one product.

2            THE COURT:  But do you agree?  Corellium sells access

3    to a platform?

4            MR. LEVINE:  That is the product.

5            THE COURT:  Okay.  One product.  Okay.

6            Now, I as the customer can decide what to do as far as

7    testing on that one product.

8            MR. LEVINE:  Yes.

9            THE COURT:  I can test an Android app or I can test an

10   iOS device, according to you.

11           MR. LEVINE:  Yes.

12           THE COURT:  If I want to test or copy or whatever it is

13   that's being done to an iOS device, Apple has the right to look

14   at that customer's testing of the iOS device, copying of the

15   iOS device, et cetera, via the platform.

16           What else is complicated about that?  Explain that to

17   me.

18           MR. LEVINE:  That's the issue.  So we've produced every

19   aspect of that product that relates to iOS.

20           The problem with this definition is "all products."  We

21   only sell one product.  There's certain aspects of that product

22   that only relate to iOS.  There's other aspects of the product

23   that relate to other things.  But we only sell one thing.

24   We --

25           THE COURT:  But I'm saying "all products that relate to

1    iOS-operated devices."  Doesn't that limit it?

2         MR. LEVINE:  We only sell one product, though.  That's

3    the thing.  The customer only buys -- there isn't -- I can't --

4    as Corellium, I can't go to the product [sic] and say:  Hi.

5    You're interested in our service?

6         Yes, we are.

7         Okay.  Fine.  Are you interested in Android or are you

8    interested in iOS or are you interested in anything else?

9         Well, I'm interested in iOS.  I'd like to buy the Apple

10   product.

11        That's not the way it works.  It's not isolated.

12        There is one product that is sold and then there's

13   certain aspects of that that relate to the iOS.  And that's

14   what's already been produced.

15        So this definition that says "all products," again, we

16   only sell -- or Corellium sells one thing.  So by producing all

17   product, we only sell one product.  That would literally be

18   giving up the entire shop.

19        Everything that relates to this case can be limited by

20   the definition that's already there, "all aspects of the

21   Corellium platform."  And I think for purposes of this

22   discussion, "platform" and "product" can be interchanged.

23        So it's all aspects of the one thing that we sell that

24   relate to iOS.  And that, the code has been produced; the

25   access so that the expert can use it, so they can see how it's

```
 1    used, has been done.  To get code that -- again, we only sell
 2    one thing.
 3              THE COURT:  I understand.
 4              MR. LEVINE:  But to get code that doesn't relate to
 5    iOS, it's --
 6              THE COURT:  Well, I don't know how many more times I
 7    can be more clear, counsel.  I have said it only relates to
 8    iOS.  I don't know how more clear I can -- I even put in my
 9    definition that it doesn't relate to any product of Corellium,
10    any portions of any product of Corellium, that are based on
11    other mobile operating systems.
12              Now, if Corellium chose to make a product that
13    allegedly infringes on a lot of different types of devices,
14    well, they may have to live with that.  They may have to
15    produce it.  I don't know.
16              MR. LEVINE:  Well --
17              THE COURT:  Maybe they didn't infringe; maybe it's just
18    testing.  I don't know.  I'm not deciding the ultimate issue
19    here.
20              But it seems to me that Corellium has developed this
21    product; and to the extent it allows copying or allegedly
22    violating a copyright of an iOS system, Apple has a right to
23    look at it.
24              MR. LEVINE:  So this product -- merely because there's
25    an allegation, that's not at issue in this complaint.  So
```

1    initially, the Android side of things is all open source.  So

2    it's impossible to have copying and copyright protection.  This

3    is not some criminal enterprise.

4            THE COURT:  But the Android is not at issue in this

5    case.

6            MR. LEVINE:  I agree.  So this aspect should not be

7    produced.

8            THE COURT:  I don't want you to produce anything about

9    the Android.  I only want you to produce iOS.  Are you not

10   understanding my English?

11           MR. LEVINE:  I am.  The problem is, "all products"

12   means everything goes.

13           So let me ask this question:  Under this definition,

14   would the hypervisor have to be produced?

15           THE COURT:  To the extent -- to the extent that it

16   allows copying of the iOS-operated devices, yes.

17           MR. LEVINE:  Under that definition, I think we would

18   concede and we've already complied with that definition.

19           THE COURT:  Okay.  Let me hear from Ms. Bina on this

20   issue.

21           MS. STEBBINS BINA:  Yes, your Honor.  A couple of

22   things:

23           One, you know, I think they're right.  They offer one

24   product.  And that's where we keep getting stuck.  Right?

25           THE COURT:  Okay.

```
 1              MS. STEBBINS BINA:  Because they have a hypervisor and

 2    the hypervisor has a couple of different patches and they have

 3    an Apple patch and they have an Android patch.

 4              THE COURT:  All right.

 5              MS. STEBBINS BINA:  We don't need the Android patch.

 6    They've given us the Apple patch.  They say -- they say they

 7    have.  We can't read it, but we'll fix that.

 8              The question is:  Is the hypervisor part of what they

 9    have to give when you need the hypervisor to run the Apple

10    patch?

11              And I don't know of any way -- and part of my problem

12    here is their fair-use defense.  Right?  If it was a

13    straightforward, "Does their product display our product," you

14    know, maybe we could answer that.

15              But every time we turn, they're saying, "This is

16    transformative.  We have this breakthrough technology that no

17    one else had and it's transforming the industry and it's

18    incredibly important and that is why our product qualifies as a

19    fair use," because if they just had -- if their only product

20    was something that turned off Apple's security, which is what

21    their Apple patch does, I don't think there would be any

22    question that that was a straight-up DMCA violation.

23              So their whole transformative argument turns on their

24    hypervisor.

25              THE COURT:  So let me just ask you, the Apple patch
```

1      that was provided:  Can you or your experts utilize or operate

2      that patch without the hypervisor?

3                MS. STEBBINS BINA:  No, your Honor.  I mean, they can

4      look at the .pdfs.  They're trying to figure out -- hopefully,

5      we'll get it in native format.  But they don't have the

6      directories; they don't have any ability to see how it

7      interacts.  It's literally just .pdfs of code, and they can't

8      place them in context.

9                THE COURT:  But now has your expert finished looking at

10     the Apple patch?

11               MS. STEBBINS BINA:  No.  And he got it Monday night

12     near midnight, is when they delivered it to us.  He's been, you

13     know, working around the clock trying to make sense of it.

14               But what they've given us thus far is not -- does not

15     make -- sensible, because it's random .pdfs.  They're not

16     organized; there's no directory; there's no framing; and

17     there's no actual source code that he can play around with.

18     It's just .pdfs of printed-out code.

19               THE COURT:  All right.  So I think both sides agree

20     that Corellium provides one product; that Corellium has

21     produced the Apple patches in this case, but not in what you

22     believe is a useable format.

23               MS. STEBBINS BINA:  They say they have.  We haven't

24     been able to test that.

25               THE COURT:  All right.  So they've produced something

```
 1     that Corellium represents are the Apple patches --

 2               MS. STEBBINS BINA:  Yes.

 3               THE COURT:  -- or Apple patch.  You're still testing to

 4     make sure that's correct.

 5               Your position is that the Apple patch can't be used

 6     without access to the hypervisor or it can't be tested or

 7     examined by your expert without access to the hypervisor.

 8               Their position is:  You have everything you need.

 9               MS. STEBBINS BINA:  Right.  Well, I think that's

10     probably right, your Honor.

11               I want to make a couple of additional points on the

12     hypervisor idea:  You know, if the -- their product didn't

13     start off as Apple, Android, et cetera.  It started off selling

14     the Apple product only.  And the reason that it's gotten so

15     much attention is, as they say, Android is open source.  The

16     fact that they are virtualizing iOS is what is flashy about

17     their product.  It's what they're arguing is transformative and

18     we're arguing is infringement.

19               I'm sensitive to their sensitivities about code.  You

20     know, they say Apple has their whole customer list.  Apple

21     doesn't have their whole customer list; I have their customer

22     list.  They haven't even allowed me to share it with a single

23     in-house counsel person at Apple.  It's under lock and key.

24               And so obviously, if we have access to any of their

25     code, we will keep it under similar lock and key.  We're not
```

1      trying through litigation to steal their property.

2             But it is a case where we're trying to assert our legal

3      rights.  And it's really hard because they say, "Well, just the

4      patch is at issue," but then they turn around and say, "But

5      this is fair use; it's transformative."

6             And the patch is clearly not transformative in and of

7      itself.  So they're relying on the hypervisor, but they won't

8      show it to us.  And that's where I keep getting stuck.

9             THE COURT:  Okay.  All right.  Mr. Levine?

10            MR. LEVINE:  Your Honor, the definition "produce

11     anything related to iOS," if they're alleging that we display,

12     reproduce, copy, pirate, steal, all the worst things in the

13     world, the definition "anything that handles or related to iOS"

14     would encapsulate that.  They can look to see if the code is

15     stolen; they can look to see -- I mean, that's the question of

16     the code.  Then look to see if it's stolen.

17            As it relates to use, even if we give them the code,

18     that's not -- they would have to then make the product.

19            For example, you know, co-counsel here just gave me

20     this analogy, and I think it's a very good one:  If there's an

21     engine that can run on ethanol, gas, diesel, to produce all

22     products related to diesel would inherently give up the entire

23     thing.

24            If they're concerned that we're stealing parts of that

25     engine that permit the running of diesel, and we say:  Fine.

1    We will give you every aspect of that engine that relates to

2    diesel.  Here are all the parts.  See if they're stolen; see if

3    they look like your parts; use it.

4          Then -- so that's the aspect of the stealing.

5          Then there's the use, the fair use.  The code doesn't

6    have anything to do with use, the production of the code.  Even

7    if we gave them the code, they would have -- that would be

8    giving them all the parts individually of this engine.  The

9    expert would then have to go build it and use it himself.

10          That's not it.  We've already given him a simulated --

11   it's not even simulated; we've given him access to the product.

12   So he can see how it's used.

13          The code doesn't relate to the use.  The only thing the

14   code is used for is so that their expert can see if it's

15   stolen.

16          And the definition "anything that relates to iOS,

17   anything at all that relates solely to iOS," he would have

18   everything that he needs to check to see if it's stolen.

19          THE COURT:  How does he test the patch?  You say that

20   the Apple patch has been provided.  They say it's in .pdf.  How

21   does he in any way --

22          MR. LEVINE:  We've given the expert --

23          THE COURT:  How does the expert testified the patch?

24          MR. LEVINE:  By his use of the actual product.  Again,

25   there's the code to see if it's stolen and then there's the

1    use.  Testing, he doesn't test on the code.  That's not what it

2    is.  They test by the use of the product on the actual platform

3    itself, which has been provided.

4         The code is merely to put Apple's code up on the wall

5    and then just to the right of it put Corellium's code up on the

6    wall and see if there's any identical parts.  And if there are,

7    you've stolen it; that's infringement; done.

8         They have all of that already.  And if we need to

9    provide it in native, they are right; we are wrong; we should

10   have done that and we'll get that done immediately.

11        Providing --

12        THE COURT:  Here's the situation:  We have another

13   hearing coming up here, as I've already established, on March

14   16th.  From what I understand, there's going to be more access

15   provided to Apple's expert to the product, the Corellium Apple

16   product, as we discussed earlier.  You're going to be providing

17   the Apple patch in native or the other material that you

18   provided in native or useable format.

19        What I would be inclined to do is to at this point

20   define the Corellium Apple product as "All products developed,

21   offered for sale or sold by Corellium that create virtual

22   versions of iOS-operated devices.  This does not include

23   Corellium products that are based on other mobile operating

24   systems."

25        As far as whether that does or does not include the

```
 1    hypervisor platform --

 2           MR. LEVINE:  That's the question.

 3           THE COURT:  -- then I would want Apple's expert to get

 4    this native information, look at the patch, look at the access

 5    that's provided to test the Corellium Apple product, and then

 6    before the hearing on March 16th, get an affidavit from your

 7    expert as to whether that's sufficient or not and an affidavit

 8    from your expert as to whether it's sufficient or not.  And

 9    then I can decide on March 16th whether hypervisor is --

10    whether there needs to be a more expansive definition to

11    include hypervisor.

12           But the Court needs some technological expert to tell

13    me why it is that Apple says they absolutely have to have this

14    and why it is that you say if you give this, you're giving up

15    the farm.  Okay?

16           MS. STEBBINS BINA:  Your Honor?

17           THE COURT:  Yes, Ms. Bina.

18           MS. STEBBINS BINA:  Can I ask an important clarifying

19    question?

20           THE COURT:  Sure.

21           MS. STEBBINS BINA:  Because there's two issues here.

22    One is the source code for their hypervisor.  I understand the

23    sensitivities on that.  I think it does make sense to have

24    expert testimony on that issue.

25           But the Corellium Apple product definition is in dozens
```

```
1    of requests.  And they've refused to produce anything relating

2    to -- anything beyond the patches.  So communications with

3    their customers.  You know, as they said, they only sell one

4    product.

5          So they're saying:  Oh, we're not going to produce

6    anything that's relating to the hypervisor.  We're not going to

7    submit invoices or customer inquiries.

8          THE COURT:  Well, that's not going to be allowed.

9          MS. STEBBINS BINA:  Okay.  That's just --

10         THE COURT:  We're going to have to -- if we have to go

11   through these requests for production today one by one, then

12   that's what we're going to do.

13         MR. LEVINE:  Your Honor, customers that relate to

14   Android -- communications that --

15         MS. STEBBINS BINA:  Not Android customers.

16         THE COURT:  You don't have to produce that.

17         MR. LEVINE:  That's what we're not -- everything that

18   relates to iOS from Corellium has been produced.  Everything.

19         THE COURT:  I'm hearing from the other side that you

20   haven't produced -- that you've objected to communications

21   involving iOS.

22         MR. LEVINE:  No.  No.  She said hypervisor.

23         THE COURT:  No.  You said -- no.  There are objections

24   to iOS communications in here.

25         MR. LEVINE:  We'll address -- I can tell you, your
```

1    Honor, everything that I know that I'm aware of that is under

2    the Corellium roof that relates to iOS has been produced or has

3    at least intended to be produced.

4              THE COURT:  All right.  Well, as far as the requests

5    for production, I'm hearing that there are requests for

6    production in which either -- they haven't been produced or

7    they've been objected to.

8              So what we'll do is -- I think the best way to proceed

9    is what I've just said:  The definition of the Corellium Apple

10   product will be "All products developed, offered for sale or

11   sold by Corellium that create virtual versions of iOS-operated

12   devices.  This definition does not include Corellium products

13   that are based on other mobile operating systems."

14             As to whether or not I will amend the definition to

15   state that it includes the hypervisor platform to the extent it

16   relates to iOS, I'm going to wait on that until Apple's expert

17   has a chance to get the information, the new information you're

18   producing in a useable format, in native format, whatever it

19   is, their expert has a chance to look at the Corellium Apple

20   product to see if the Apple patches that you've provided are in

21   effect what they need.  And then I will hear from -- by

22   affidavit from Apple's expert, by affidavit from Corellium's

23   expert, and then I'll decide if a further modification is

24   needed or not.

25             MR. LEVINE:  Thank you, your Honor.

```
1              MS. STEBBINS BINA:  Thank you, your Honor.

2              THE COURT:  So let's do it that way.

3              Now, as far as the rest of the RFPs, how many,

4    Ms. Bina, do you believe are at issue in light of the rulings

5    that I've issued so far today?

6              MS. STEBBINS BINA:  There's probably still a

7    substantial number, your Honor.  I believe that there are at

8    least -- I'll just check.

9              MS. CONSTANTINE:  Your Honor --

10             THE COURT:  Yes.

11             MS. STEBBINS BINA:  I'm trying to count from my --

12             THE COURT:  Ms. Constantine?

13             MS. CONSTANTINE:  If I may, I can make things easier.

14   So we --

15             THE COURT:  That would be great.

16             MS. CONSTANTINE:  We have provided all of the documents

17   and communications relating to the actual clients of Corellium

18   and we have also provided all of those invoices reflecting the

19   same.

20             We did not provide potential customers because that --

21   that was not ruled by this Court.

22             THE COURT:  Potential customers do not have to be

23   produced.

24             MS. CONSTANTINE:  And based --

25             THE COURT:  But affirmatively rejected customers do.
```

```
 1              MR. LEVINE:  That is correct.
 2              MS. CONSTANTINE:  And based upon today's rulings, just
 3      to clarify, are we also producing communications between people
 4      that tried the Corellium product?
 5              THE COURT:  Yes.
 6              MS. CONSTANTINE:  Okay.  So based on today's rulings,
 7      we will provide those documents as well.
 8              THE COURT:  So why don't we do this:  I'm going to take
 9      a break.  Counsel can take a short break.  Can you two or three
10      or four, whoever wishes to go through those requests for
11      production, see if they've been resolved?  And if there are any
12      that you just can't resolve, I'll come back in and rule on
13      that.
14              Would that work, Ms. Bina?
15              MS. STEBBINS BINA:  Yes, your Honor, although I do
16      think it would be helpful to get whatever agreement we enter
17      memorialized on the record --
18              THE COURT:  Oh, yes.
19              MS. STEBBINS BINA:  -- because part of the concern is
20      that things weren't on the record last time and we had
21      different understandings.
22              THE COURT:  No.  That's why I will do that.
23              Does that work for you, Ms. Constantine?
24              MS. CONSTANTINE:  Yes, your Honor.
25              THE COURT:  All right.  So how long do you think you
```

```
 1    folks would need?  Fifteen minutes?  Twenty minutes?

 2              MS. CONSTANTINE:  Fifteen minutes should be enough.

 3              MS. STEBBINS BINA:  Fifteen would be good, your Honor.

 4              THE COURT:  It's 11:37 now.  Why don't we take about 20

 5    minutes.  That way, you can step out of the courtroom for a few

 6    minutes if you want to.  Come back.  See if you can go through

 7    those RFPs.  And then we still have several more motions that

 8    we still have to -- that we still have to deal with.

 9              But let's deal with this.  And then after that, we'll

10    go to the next motions.

11              MR. LEVINE:  Thank you, your Honor.

12              THE COURT:  And we're going to have to take a lunch

13    break at some point.

14              MS. STEBBINS BINA:  Thank you, your Honor.

15              MR. LEVINE:  Thank you, your Honor.

16              THE COURT:  Thank you.

17              THE COURTROOM DEPUTY:  All rise.

18              (Pause in the digital audio recording.)

19              THE COURT:  All right.  Welcome back.  Everybody is

20    here.  Yes.  Everybody is back.  Okay.

21              So we were dealing with the third motion of the day on

22    the request for production, which was -- the parties were given

23    some time to discuss it.

24              So where are we at?

25              MS. STEBBINS BINA:  Your Honor, we've been able to
```

1    resolve many of our differences.  I'd like to read into the

2    record what the resolutions of those are and then tee up the

3    few that need to be heard.

4         THE COURT:  Okay.  Go ahead.

5         MS. STEBBINS BINA:  The good news is we got from about

6    47 to I think about three.

7         THE COURT:  Oh, good.  That's much better.  I

8    appreciate that.

9         MS. STEBBINS BINA:  So hopefully it'll be a more

10   manageable amount.  Sorry.  I'm trying to look at two things at

11   once and that's not working well.

12        So with a number of requests, we're going to confirm

13   that "Corellium Apple product" will be as defined by the Court.

14   And Plaintiffs will -- Defendants will amend their response

15   from "won't produce" to "will produce."  And there are a number

16   of other requests where the Defendants have just confirmed that

17   they're not actually withholding any documents.

18        So I'll go through those with those sort of general

19   categories.

20        So Request 1:  Defendants have confirmed based on the

21   definition of the Corellium Apple product by the Court they're

22   not withholding any documents other than privilege, which will

23   be properly logged.

24        The same as to -- for Request No. 3 and 4 and 7, 8 and

25   9.

```
1              For 9, there is -- there is probably still an open

2    issue with respect to the hypervisor.  But I think we can defer

3    that to the next hearing.

4              The same -- for Nos. 12 and 13, the Defendants will

5    produce any documents or testing that related to iOS, which is

6    in connection with the Corellium Apple product.

7              For Request 14, it was ordered --

8              THE COURT:  Hold on a second.

9              As far as 12 and 13, the Defendant shall produce any

10   documents or testing relating to --

11             MS. STEBBINS BINA:  To iOS.

12             THE COURT:  All right.

13             MS. STEBBINS BINA:  So they called for a testing or

14   analysis of the Corellium Apple product or any associated

15   hardware.  We've clarified that at this point they will produce

16   related to iOS.

17             THE COURT:  Okay.

18             MS. STEBBINS BINA:  All of these with reservation on if

19   the Court makes a different ruling on the hypervisor, then we

20   can reopen as necessary.

21             THE COURT:  I understand.

22             MS. STEBBINS BINA:  14, your Honor ruled on earlier.

23             15 is already answered.  They've confirmed that they're

24   not withholding anything based on the Court's definition of the

25   Corellium Apple product and they're changing "will not" to
```

```
 1    "will."

 2           For 18, I believe the case is the same.

 3           THE COURT:  What's that now?

 4           MS. STEBBINS BINA:  18 and 19 I believe are the same.

 5    They've confirmed that they are producing -- they've produced

 6    all materials as to the Court's definition of the Corellium

 7    Apple product.

 8           THE COURT:  Okay.

 9           MS. STEBBINS BINA:  For Request 20, we've agreed that

10    the request rather than calling for all documentation and

11    communication -- documents and communications relating to

12    Corellium's obtaining any of Apple's products, it will instead

13    relate only to iPhones used for product testing purposes,

14    ispw.me [sic] files, anything else that's used in the Corellium

15    Apple product as defined by the Court or in testing the

16    Corellium Apple product as defined by the Court that is an

17    Apple product --

18           THE COURT:  All right.  Hold on a second.

19           As far as 20, it relates only to iPhones used for

20    testing products?

21           MS. STEBBINS BINA:  Right.

22           THE COURT:  What else?

23           MS. STEBBINS BINA:  Ispw.me files.

24           THE COURT:  Ipsw.me files.

25           MS. STEBBINS BINA:  Thank you.  "Ipsw."  I said it
```

```
1    backwards.
2            THE COURT:  Say it again.
3            MS. STEBBINS BINA:  Ipsw.me.
4            And any other Apple product used in the creation or
5    testing or implementation of the Corellium Apple product as
6    defined by the Court, including dev-fused iPhones.
7            THE COURT:  All right.  So any other Apple product
8    used -- what?
9            MS. STEBBINS BINA:  In the creation, development or
10   testing of the Corellium Apple product.
11           THE COURT:  In the creation, development or testing of
12   the Corellium Apple product.
13           MS. STEBBINS BINA:  As defined by the Court.
14           THE COURT:  Okay.
15           MR. LEVINE:  With the exclusion of personal devices.
16           MS. STEBBINS BINA:  That's why I said iPhones --
17           MR. LEVINE:  Oh, you did.
18           MS. STEBBINS BINA:  -- used for testing.
19           MR. LEVINE:  Okay.
20           MS. STEBBINS BINA:  Yeah.
21           MR. LEVINE:  Specifically -- we discussed this.  It
22   specifically excludes personal devices.
23           MS. STEBBINS BINA:  Yes.  It's only the things that are
24   used for testing.  It's not if someone has an iPhone that they
25   use, you know, for business purposes.
```

80

1            And the same is true for Request 21.

2            THE COURT:  Same as 20?

3            MS. STEBBINS BINA:  Actually, no.  21, they've just

4    confirmed that they've already produced -- no.  21 is the same

5    as 20.  Yes.  Sorry.

6            THE COURT:  Okay.

7            MS. STEBBINS BINA:  I had to review my own notes there.

8            25, they've confirmed that they will produce subject to

9    a right to meet and confer if there are any issues with

10   responsiveness.  And again, all of these are using the Court's

11   definition of Corellium Apple product.  That should be read

12   into every responses.

13           27 is the same as it relates to the Corellium Apple

14   product only.

15           Same with 30.

16           THE COURT:  Okay.

17           MS. STEBBINS BINA:  31, Corellium has requested -- no.

18   31 is the same.  They've agreed.  But they've -- let me

19   double-check my notes here.  Sorry.

20           I think 31 we need to be heard on.  But I believe we're

21   close to an agreement.

22           THE COURT:  All right.  So 31 may be in dispute?

23           MS. STEBBINS BINA:  Yes, your Honor.

24           THE COURT:  All right.

25           MS. STEBBINS BINA:  Or at least we want to kind of lay

```
 1    out our respective positions.  It may be something that we

 2    resolve on the 16th.

 3              THE COURT:  All right.

 4              MS. STEBBINS BINA:  32 will be limited to the Corellium

 5    Apple product and they will produce.

 6              34 was resolved by the Court's earlier ruling.

 7              The same with 35.

 8              36, they've confirmed they've already produced

 9    responsive documents.

10              37 was resolved by the Court's earlier ruling.

11              38 and 39 --

12              THE COURT:  Hold on just a second.

13              All right.  So 36, the Defendant confirmed they

14    produced responsive documents.

15              And what was after 36?

16              MS. STEBBINS BINA:  For 37, they've confirmed they'll

17    produce.

18              The same with -- I mean, for 38 and 39, based on your

19    Honor's previous rulings on the interrogatory, we'll be

20    withdrawing those.

21              THE COURT:  All right.  Apple withdraws that.  All

22    right.

23              MS. STEBBINS BINA:  40 and 41, we'll need to be heard.

24              THE COURT:  Okay.

25              MS. STEBBINS BINA:  42, they confirm they've produced,
```

```
 1   based on the current understanding.

 2         For 45 through 49, they have confirmed that they have

 3   produced everything responsive to these requests and that

 4   they're not relying solely on interrogatory responses --

 5         THE COURT:  Okay.

 6         MS. STEBBINS BINA:  -- which was our question there.

 7         Same with 50:  They will produce, or they have.

 8   They're going to double-check that everything has been produced

 9   there.  But they believe it has been produced.

10         For 52, I think I want to just lay our position on the

11   record because there's a small remaining dispute.  As limited

12   to the Corellium Apple product, we're seeking business plans,

13   strategic plans, development and sales plans and forecasts to

14   the extent they relate to that product or references to that

15   product need to be understood.

16         There may be a dispute over the scope of that,

17   depending on what the Court rules with respect to the

18   hypervisor.  But that they will produce, subject on that

19   definition.

20         Sorry.  I'm just catching up here.

21         55 I believe is already agreed to as well.

22         Justin, can you confirm that you're producing in

23   response to 55 --

24         MS. CONSTANTINE:  55 was not discussed.

25         MS. STEBBINS BINA:  Okay.  I just want to make sure.
```

```
 1   So that's still an issue.  Okay.

 2          THE COURT:  It is or is not at issue?

 3          MS. CONSTANTINE:  Well, you didn't bring it up, so I

 4   just want to make sure.  It wasn't addressed during our

 5   meeting, 55.

 6          MS. STEBBINS BINA:  Okay.  So my mistake.

 7          MR. LEVINE:  Can we have ten seconds to confirm it real

 8   quick, just on the record?

 9          MS. STEBBINS BINA:  Sure.

10          THE COURT:  What is it?

11          MS. STEBBINS BINA:  It's all documents concerning

12   efforts by Corellium or those acting on its behalf to sell,

13   license, promote, market, distribute or otherwise exploit

14   commercially or otherwise the Corellium Apple product or iOS

15   virtualization technology.

16          I understand that with respect to the Corellium Apple

17   product you've already produced everything; and with respect to

18   iOS virtualization technology you're reserving on the issue

19   pending the next hearing?

20          MR. LEVINE:  Yeah.  And I certainly think we would deny

21   any exploitation of anything.

22          MS. CONSTANTINE:  Right.

23          MR. LEVINE:  But yeah.  I think that falls -- anything

24   related to the Corellium Apple product has been produced at

25   this point.
```

1          MS. CONSTANTINE:  Produced.

2          MS. STEBBINS BINA:  And "exploit" in that instance just

3   means, like, commercially use and develop, like the common-law

4   meaning of exploit, not something negative.

5          MR. LEVINE:  Oh, okay.  So are you limiting the request

6   to anything relating to the Corellium Apple product as

7   currently defined?

8          MS. STEBBINS BINA:  Yeah.

9          MR. LEVINE:  Okay.

10         MS. STEBBINS BINA:  So I think the agreement is that

11   the Corellium Apple product as currently defined, reserving

12   rights on iOS virtualization technology.

13         MR. LEVINE:  Okay.  So I think we can represent that

14   it's been -- everything's been produced.

15         MS. STEBBINS BINA:  For 61, Corellium has agreed to

16   produce based on the definition of the Corellium Apple product.

17         I believe that for 63, you've also agreed that to the

18   extent the documents relate to the Corellium Apple product, you

19   will produce?

20         MS. CONSTANTINE:  That's correct.

21         MR. LEVINE:  And to be clear on the record, while we'll

22   say we will produce, there may not be production because,

23   again, I'm under the impression that everything relating to the

24   Corellium Apple product has already been produced.

25         MS. STEBBINS BINA:  And to be clear, when I say "will

1    produce," I don't mean that they necessarily have something

2    that hasn't been produced.  I just -- it is considered

3    responsive and will be produced in one form or another.

4         THE COURT:  Either they have produced or, if they

5    haven't fully produced, they will produce.

6         MS. STEBBINS BINA:  Exactly, your Honor.

7         64, was that the one you wanted to confer, just -- we

8    agreed that you'll produce on 64?

9         MS. CONSTANTINE:  We are producing.  We have.

10        MS. STEBBINS BINA:  So they'll produce on 64 based on

11   the definition of Corellium Apple product.

12        I don't know if we discussed 69, but that would seem to

13   fall into customer communications.

14        MS. CONSTANTINE:  We didn't, but we can review it.

15        MR. LEVINE:  If it's customer communications, in light

16   of the Court's ruling today, we'll abide by anything that's

17   been affirmatively rejected or current customers.  And anything

18   other than that --

19        MS. CONSTANTINE:  So if we can just narrow 69 to the

20   Corellium Apple product, we believe that we have produced all

21   of those documents.

22        MS. STEBBINS BINA:  And I think it probably is

23   impliedly narrowed because it's talking about replicating an

24   Apple product.  But we can narrow it to the Corellium Apple

25   product.

```
1              THE COURT:  So after 64 was 69?

2              MS. STEBBINS BINA:  Yes, your Honor.

3              THE COURT:  And 69 is resolved pursuant to the

4   definition of Corellium Apple product.

5              And anything else?

6              MS. STEBBINS BINA:  Yes, your Honor.  We're limiting it

7   to communications with customers relating to -- who are

8   Corellium Apple product customers, including trial customers.

9              THE COURT:  All right.  So it'll be limited to

10  communications with customers, trial customers.  Does it also

11  include rejected -- affirmatively rejected customers?

12             MS. STEBBINS BINA:  Yes, your Honor.

13             THE COURT:  All right.

14             MS. STEBBINS BINA:  Request 70, I think -- I don't

15  think we [inaudible] on that, too.

16             THE COURT:  I didn't hear you.

17             MS. STEBBINS BINA:  I said I don't think we discussed

18  70.  I meant to.

19             MS. CONSTANTINE:  No.  We didn't.

20             MS. STEBBINS BINA:  So I apologize.  It was on my list,

21  and I inadvertently skipped over it.  So we may need further

22  conference on 70.

23             THE COURT:  All right.

24             MS. STEBBINS BINA:  It's all documents relating to or

25  comprising communications between Corellium and any investor or
```

1    potential investor, customer or potential customer which

2    subject to your Court's -- your Honor's ruling will be cut, or

3    third party regarding Apple, iOS, this action or the

4    anticipation of any copyright litigation.

5           I think we would agree to narrow that to -- regarding

6    Apple in the context of the Corellium Apple product or this

7    action.  And obviously, we don't want anything privileged.

8           MS. CONSTANTINE:  We agreed to provide documents

9    relating to customers, trial customers or rejected customers,

10   but we don't agree to any communications relating to investors

11   or potential investors.  We don't believe those are relevant to

12   this case or any potential customers, as this Court has already

13   ruled on that information.

14          THE COURT:  I would agree with the Defendant.

15          MS. STEBBINS BINA:  Well, we had -- they have agreed to

16   produce investor materials that related to the Corellium Apple

17   product.  So that would seem to fall within that category.

18   So --

19          THE COURT:  Well, this is dealing with communications,

20   though.

21          MS. STEBBINS BINA:  Understood.  Okay.  So we can leave

22   that.  I understand the Court's ruling.

23          For Request 71, they've agreed to produce based on the

24   definition of the Corellium Apple product.

25          For Request 73, they want to meet and confer.  I

1    explained to them that we're not looking for anything

2    privileged but we're looking for communications with customers

3    or potentially non-privileged internal analyses relating to the

4    copyright issues at issue in this case.

5           My position is that it's either -- it should be

6    produced or, if it's privileged, whether by a common-interest

7    privilege or by attorney-client privilege, it should be logged.

8    Defendant's counsel said they weren't sure they disagreed, but

9    they wanted to meet and confer on that issue.  So that's where

10   that one landed.

11          THE COURT:  All right.

12          MS. STEBBINS BINA:  75, they believe there are no

13   documents.  They will confirm that with me.

14          78, we probably need to be heard.

15          THE COURT:  Okay.

16          MS. STEBBINS BINA:  82, documents sufficient to show

17   the forms of any confidentiality agreement signed by Corellium

18   or users.  They've requested that we meet and confer earlier --

19   further.

20          Apple's position is that, you know, to the extent that

21   these are users of the Corellium Apple product, which we would

22   agree it's limited to, a confidentiality agreement is directly

23   relevant to the use and scope of the product, whether it can be

24   used by other persons; for instance, if a customer can share it

25   or not.  All of that goes directly to the heart of the

1  contributory infringement and the fair-use aspects of this

2  case.

3          THE COURT:  All right.

4          MS. STEBBINS BINA:  83, they will agree to limit it to

5  Corellium Apple product rather than business information more

6  broadly --

7          THE COURT:  Okay.

8          MS. STEBBINS BINA:  -- and will produce.

9          And I believe that takes us to the end of the list,

10  your Honor.

11          THE COURT:  All right.

12          MS. STEBBINS BINA:  Would you like me to go ahead and

13  turn to the ones I've asked to be heard on?

14          THE COURT:  Well, let me just -- before I go on,

15  Ms. Constantine or Mr. Levine, is that all accurate on those?

16          MS. CONSTANTINE:  That is accurate, your Honor.

17          THE COURT:  Great.

18          So it looks to me like as far as 73 and 82, the parties

19  want to meet and confer further.

20          MS. STEBBINS BINA:  Yes, your Honor.

21          THE COURT:  That's fine.  So the parties can meet and

22  confer further on 73 and 82.

23          MS. CONSTANTINE:  And 31 also has a meet-and-confer

24  portion.

25          THE COURT:  Further meet and confer on 31?

```
 1              MS. CONSTANTINE:  Yes, your Honor.
 2              THE COURT:  All right.  So the parties will further
 3      meet and confer on 31, 73 and 82, which according to my notes
 4      only leaves resolution for 40, 41, 52 and 78.  Would that be
 5      right?
 6              MS. STEBBINS BINA:  40 to 41 and you said 52 and 78?
 7              THE COURT:  Yes.  40, 41, 52 and 78 would be the only
 8      disputes I wrote down.
 9              MS. CONSTANTINE:  And I believe, Jessica, you mentioned
10      31.
11              MS. STEBBINS BINA:  Well, 31 you just said you're going
12      to meet and confer.
13              MS. CONSTANTINE:  Oh.  That's right.
14              THE COURT:  Right?
15              MS. CONSTANTINE:  That's correct.
16              MS. STEBBINS BINA:  And I have a note that you wanted
17      to meet and confer with respect to 52.  Do you want to reserve
18      that one or argue it today?
19              MS. CONSTANTINE:  We just -- we can argue it today.
20              MS. STEBBINS BINA:  Okay.
21              MS. CONSTANTINE:  So it would be 40, 41, 52 and 78.
22              THE COURT:  Right.  Those are the ones I have.
23              MS. STEBBINS BINA:  Right.
24              So if I can begin with 40 and 41.
25              THE COURT:  Now, just so I'm clear, the amended
```

```
 1   responses are at Docket Entry 188-1.  Is that what we're

 2   looking at?

 3        MS. STEBBINS BINA:  Yes, your Honor.

 4        THE COURT:  Okay.  So let me go to No. 40 and 188-1.

 5        MS. STEBBINS BINA:  It's on Page 18, your Honor.

 6        THE COURT:  All right.  Actually -- wait a minute.

 7        MS. STEBBINS BINA:  19 of 34.

 8        THE COURT:  Page 19.  I've got it.  Okay.

 9        MS. STEBBINS BINA:  So Requests 40 and 41 relate to

10   agreements between Corellium and its largest customer, Azimuth

11   Security, as well as communications between Corellium and

12   Azimuth Security regarding the Corellium Apple product or iOS

13   virtualization technology.  We'd be willing to defer the

14   portion relating to iOS virtualization technology.

15        Azimuth is not only Corellium's largest customer, but

16   it's also a significant reseller of Corellium to the tune of

17   several hundred thousand dollars per year.  They are selling

18   Corellium's product to third parties.

19        We believe that the agreements governing that

20   relationship, the reseller agreement and the communications

21   with them, are of obvious central importance to the complaint

22   and the issues herein, including --

23        THE COURT:  41 talks about basically agreements between

24   Corellium and Azimuth regarding -- well, it doesn't limit it.

25   It just says "all documents constituting, containing or
```

1    relating to agreements between Corellium and Azimuth."

2         MS. STEBBINS BINA:  And we'd be willing to limit that

3    to the Corellium Apple product in a way, your Honor.  And this

4    goes back to the issue we were talking about this morning,

5    which is customer communications can't -- you can't slice off

6    the Apple portion.  If something solely relates to Android or

7    some other platform, we're not interested in that.

8         But to the extent they are talking about the product

9    that they gave them and that it doesn't contain confidential

10   source code relating to the hypervisor -- in other words, it's

11   not detailed hypervisor specific -- we would expect to see a

12   copy of those agreements because those are the agreements about

13   reselling the product that's at core issue in this case, as

14   well as the use of that product.

15        THE COURT:  All right.  So 40 is "all communications

16   between Corellium and Azimuth or any agent thereof regarding

17   the Corellium Apple product."

18        And then 40 would be "all documents constituting,

19   containing or relating to agreements between Corellium and

20   Azimuth regarding the Corellium Apple product."

21        MS. STEBBINS BINA:  That's correct, your Honor.

22        THE COURT:  And --

23        MS. STEBBINS BINA:  I don't think that Defendants

24   dispute that these are relevant.  Their argument is that

25   Azimuth -- Azimuth's parent filed a motion to quash the

1   subpoena to Azimuth yesterday.  And therefore, Corellium

2   shouldn't have to produce the documents.

3          THE COURT:  Right.  And that's the motion that I said

4   is going to be heard at the next hearing?

5          MS. STEBBINS BINA:  Right.

6          But my argument, your Honor, would be we're very short

7   on time in discovery.  These are of paramount relevance to the

8   case.  I don't see how a third-party motion to quash the

9   subpoena served on it makes these undiscoverable from the

10  Defendants in this action.  And I would ask that they be

11  produced.

12         THE COURT:  All right.  So let me hear from Corellium.

13  Mr. Levine?

14         MR. LEVINE:  Briefly, your Honor.

15         So the documents that are -- so the documents that are

16  important to the time-sensitive nature that Ms. Bina just

17  referenced have already been produced.  Those are any of the --

18  you know, the financials as they relate to sales and all the

19  damages stuff.  I believe they were.  But if they're not, we'll

20  produce the agreement as it relates to the purchase of the

21  product.  So that stuff.

22         As it relates to some of the more sensitive

23  documents -- and that's exactly what these are -- Azimuth is --

24         THE COURT:  Like correspondence?

25         MR. LEVINE:  Yes, sir.  Azimuth is a very large

1    government defense contractor, or L3Harris is, which is

2    effectively Azimuth.

3          And we would simply proffer that for these other

4    minutiae documents that don't directly -- they're really just

5    broad requests that don't really go to damages or the use of

6    the product or, you know, some of the other copyright aspects,

7    that we would ask to defer arguments as to those, like the

8    correspondence, until March 16th, when L3's counsel is here.

9    And we can discuss those at that point in time.

10         THE COURT:  What I'm inclined to do is to grant on 41;

11   in other words, produce the agreements, and reserve on

12   communications --

13         MR. LEVINE:  I think we'd be okay with that, your

14   Honor.

15         THE COURT:  -- which is 40.  So that's what I'm going

16   to do.  I'm going to grant the motion on 41, produce the

17   agreements and those items.

18         On 40, I'm going to reserve and I'm going to consider

19   40 along with the whole ball of wax involving the protective

20   order motion that was just filed that's not briefed yet.

21         MR. LEVINE:  Perfect.

22         Your Honor, if I can bring up one other minor issue as

23   it relates to some of these discovery issues.  Well, maybe not

24   minor.

25         As it relates to the trial -- the entities who have had

```
1    trials, I've had some conversations with the client, and they
2    said that producing these things are impossible because they
3    don't keep a log of who actually had trials.
4           So they said they'd be willing -- I mean, not willing;
5    it's whatever your Honor wants -- they said that we can put
6    search terms in and that they're happy to produce as much as
7    they can, but they're just -- they don't know that they'll
8    inclusively grab every one.
9           THE COURT:  Well, they have to do a good-faith search.
10          MR. LEVINE:  That we can abide by.
11          THE COURT:  They have to do a good-faith search.  And
12   that's what's required.  But I don't -- I don't want them
13   playing games.  I'm not saying they would.  I don't want any
14   side playing games.  But they have to do a good-faith search
15   and produce what they locate.
16          MR. LEVINE:  We're being very diligent in getting as
17   much as possible in light of all the sensitivities.
18          One more clarification on that issue:  Is it all
19   documents relating to the trials or just an identification of
20   the people or the entities who had the trials?
21          THE COURT:  I believe the issue was the identities, the
22   customer list and then the rejected customers and then the
23   trial customers.
24          MR. LEVINE:  That we can provide.  Thank you, your
25   Honor.
```

1          MS. STEBBINS BINA:  Your Honor, on that point, there

2     were a number of interrogatories we just went through that

3     dealt with communications with customers.

4          I believe that your Honor's ruling earlier included

5     trial customers in that category.  If they identify someone and

6     they had communications with that person as a customer, we

7     should get those as well.

8          THE COURT:  To the extent they're relevant, I would

9     agree.  I don't know if we're arguing over something that

10    really isn't that voluminous or not.

11         MR. LEVINE:  Probably not, if there's something

12    isolated to the Corellium Apple product.  I think we can

13    provide those, your Honor.

14         THE COURT:  All right.  The relevant communications.  I

15    mean, if it's just something that is an innocuous

16    correspondence, I don't need that produced.  But what -- the

17    relevant correspondence.

18         MS. STEBBINS BINA:  Exactly, your Honor.  And that's

19    all we're looking for.  We just wanted -- we want to stay in

20    the scope of this business.

21         THE COURT:  All right.  So 40 and 41 are resolved.  40,

22    I'm --

23         MS. CONSTANTINE:  And just --

24         THE COURT:  -- reserving until the next hearing on the

25    motion for protective order.  And 41 is granted to produce.

```
 1              That would only leave us with 52 and 78.  Right?

 2              MS. CONSTANTINE:  Your Honor, if I may.

 3              THE COURT:  Yes.  Ms. Constantine.

 4              MS. CONSTANTINE:  Just to clarify on 41, it's limited

 5    to the definition of the Corellium Apple product.  Correct?

 6              THE COURT:  Yes.

 7              MS. CONSTANTINE:  Thank you, your Honor.

 8              MS. STEBBINS BINA:  Again, your Honor, just to clarify

 9    on what Corellium Apple product here means:  We've already

10    talked about they don't sell separately the Apple patches.

11              THE COURT:  Right.

12              MS. STEBBINS BINA:  So it will be the agreements that

13    relate to their purchase of the product and their resale of the

14    product that includes the Corellium Apple product.  Correct?

15              THE COURT:  Well, I know we spent a lot of time on this

16    today as far as the definition of the Corellium Apple product.

17              Now, here's what I understand, because this is -- I can

18    see what's driving a lot of the dispute here.  We spent a lot

19    of time discussing the definition of the Corellium Apple

20    product.  And I think that was necessary because the parties

21    have been fighting over the proper definition of the Corellium

22    Apple product for months and months and months in this case.

23              What it seems to me to boil down to is that Corellium

24    does not want to produce the source code for the Corellium

25    hypervisor.  That's what it seems to boil down to.
```

```
1              Would counsel agree that that's the issue?

2              MS. CONSTANTINE:  That --

3              MR. LEVINE:  To -- not the source code, nor if there's

4    something -- if there's correspondence relating to iOS or just

5    if there's a question about the hypervisor that doesn't relate

6    to iOS correspondence, things related to --

7              THE COURT:  But the main thing as far as the trade

8    secret, it's really the source code for the hypervisor?

9              MS. STEBBINS BINA:  I think what --

10             MR. LEVINE:  Yeah.  I think -- so that's the most

11   sensitive, yes.  But I don't want to come out and say there are

12   not.

13             I mean, certainly there are things where we are

14   consulting maybe -- and I don't know if this is true, but maybe

15   if we're consulting with someone just as it relates to the

16   hypervisor; it has no connection to iOS, but it's the

17   communication, technical communication, about something

18   hypervisor, I would think that --

19             THE COURT:  Right.  But I understood that your

20   fundamental objection was that you didn't want to have to

21   produce the source code for the hypervisor.  I thought that was

22   your fundamental proprietary objection.

23             MR. LEVINE:  Yes.

24             THE COURT:  And it would seem to me in effect that what

25   I wanted Corellium to produce would be pretty much everything
```

```
 1    else regarding iOS in useable or native format, including

 2    giving access to the Corellium Apple product, except the source

 3    code for the hypervisor.  And then the Court will later hear

 4    from the experts as to whether anything else has to be

 5    produced.

 6            I think that is explaining it in a nutshell.  Would you

 7    agree?

 8            MR. LEVINE:  I agree.

 9            MS. CONSTANTINE:  Yes.

10            MS. STEBBINS BINA:  And in terms of the business side

11    of Corellium, I think that may be a slight additional thing

12    where it -- I understand the Court's position.

13            Our position is that because they sell the unified

14    product, to the extent that there's invoices or contracts that

15    cover that product, like these Azimuth contracts, cover that

16    product as a whole, and it includes the Corellium Apple

17    product, those should be produced unless of course they have

18    for some reason the source code of the hypervisor in them,

19    which would seem unlikely.

20            But because they don't parcel off and sell just a part,

21    I think we need the full contracts to understand.  And I

22    believe they've done that for every other customer but Azimuth

23    or they've represented that they have.

24            THE COURT:  Well, they just said they're going to

25    produce the Azimuth contract.
```

```
 1            MR. LEVINE:  No, no.  So the sale contract, I agree.
 2   And --
 3            MS. STEBBINS BINA:  Reseller contracts as well.
 4            MR. LEVINE:  I'm pretty sure -- I don't know if we have
 5   that.  But no.  I cannot agree to that.  And that's going to be
 6   a big issue on March 16th.
 7            THE COURT:  What is that?
 8            MR. LEVINE:  The reseller contracts.
 9            So Azimuth has its customers, and I think that's going
10   to be a big issue on March 16th.
11            THE COURT:  I'm sure that's part of their motion for
12   protective order.
13            MS. STEBBINS BINA:  I'm asking for your contract with
14   them, not their contract with their customers.
15            MR. LEVINE:  Right.
16            THE COURT:  Right.
17            MR. LEVINE:  I just said that.
18            THE COURT:  I've already heard that Corellium is going
19   to produce Corellium's contracts with Azimuth.
20            MR. LEVINE:  That's agreed.
21            MS. STEBBINS BINA:  So let me just clarify, then.
22            You said Corellium's sales contract with Azimuth.
23            MR. LEVINE:  Right.
24            THE COURT:  My understanding is that Corellium also has
25   a reseller contract with Azimuth that authorizes Azimuth to
```

```
 1    resell Corellium's product to third parties.
 2            MR. LEVINE:  Oh, I don't know.  But if that exists,
 3    that absolutely cannot be.  And that is subject to some of the
 4    governmental stuff, and I think the -- those arguments will be
 5    heard on March 16th.
 6            THE COURT:  What I want to do is defer on that until I
 7    hear from Azimuth --
 8            MS. STEBBINS BINA:  Okay.
 9            THE COURT:  -- so they can properly preserve any
10    objections they might have.  And I can hear from you, hear from
11    Azimuth, hear from Corellium and then decide how to go about
12    that.
13            MS. STEBBINS BINA:  I understand that, your Honor.  And
14    my concern is just the timing if we don't have that resolved.
15            THE COURT:  Well, you know --
16            MS. STEBBINS BINA:  It's a major part of their
17    business.  It's -- probably 70 percent of their sales are
18    through that agreement.
19            THE COURT:  I know.
20            But all I can say is that, you know, these matters are
21    being brought to me now, today, and I'm dealing with them as
22    promptly as I can.  That's why I've set down another hearing.
23    This is our -- you know, we had a hearing two weeks ago; we
24    have a hearing today; we'll have another hearing on March 16th.
25    If we need another hearing after that, I will do what I can to
```

 1    help the parties resolve their disputes so that the discovery

 2    can be completed by April 20th, which is the discovery cutoff

 3    date.

 4         So --

 5         MS. STEBBINS BINA:  I will also just -- sorry.  I

 6    didn't mean to interrupt you.

 7         THE COURT:  So I want to keep my definition of

 8    Corellium Apple product.  Everybody understands what it is.

 9         And I'm not requiring production of Corellium's source

10    code for the hypervisor at this time.  I think that's what the

11    real fight is about.  I just want to have Apple get what they

12    need to be able to evaluate the Corellium Apple product and

13    determine whether in their view it violates a copyright or

14    violates something else that is at issue in this case.

15         MS. STEBBINS BINA:  Your Honor, just briefly on the

16    reseller agreement:  If there's an agreement that is only

17    between Corellium and Azimuth and it doesn't name Azimuth's

18    downstream customers or if they can redact Azimuth's downstream

19    customers, it will be extraordinarily helpful for us to have

20    the terms and understandings of that business arrangement

21    between Azimuth and Corellium.  I don't see how that could

22    possibly implicate national security or anything of that

23    nature.

24         THE COURT:  I don't know.  But I want to give Azimuth

25    the chance to argue it.  So I can't decide that today when

1    there's a pending motion to quash.

2        MS. STEBBINS BINA:  Well, the other thing to note, your

3    Honor, is that we also served Azimuth with a subpoena.  They

4    haven't moved to quash.  It's L3, the parent of Azimuth, that

5    has filed a motion to quash.  I don't know that that moves the

6    needle, but --

7        THE COURT:  I don't know.  I frankly have not had a

8    chance to carefully review the motion.  I know it's still not

9    ripe.  It hasn't been responded to.

10       MS. STEBBINS BINA:  Right.

11       THE COURT:  And I'm going to have to schedule -- set a

12   briefing schedule that gets it all briefed well in advance of

13   the March 16th hearing so I can have a chance to read

14   everything and be prepared for the March 16th hearing.

15       So that briefing schedule we can either discuss later

16   today or I'll just issue it in a written order.  But that's

17   going to have to be addressed as well.

18       MS. STEBBINS BINA:  There was a question I had, your

19   Honor, on the briefing schedule.  I think it would be helpful

20   if you issued a schedule by which any response from us, for

21   instance, is due.

22       THE COURT:  Okay.

23       MS. STEBBINS BINA:  I wasn't sure if it was the usual

24   five business days or something else.

25       THE COURT:  Well, if it's just been filed and we have a

```
 1    March 16th hearing -- let me just take a look --

 2              MS. STEBBINS BINA:  It was filed yesterday, but the

 3    supporting declaration was only just filed today under seal.

 4              THE COURT:  All right.  So what I would say is there

 5    should be a response by the 5th of March and a reply by the 9th

 6    of March and then conferral and a joint notice by the 11th of

 7    March.

 8              MS. STEBBINS BINA:  And is that a conferral with L3 or

 9    just --

10              THE COURT:  L3; and if Corellium wishes to join in,

11    they can.  But it's L3's motion, so --

12              MR. LEVINE:  Just for full disclosure, we intend on

13    joining it, your Honor.

14              THE COURT:  Okay.  So it would be conferral with --

15              MS. STEBBINS BINA:  Whoever is --

16              THE COURT:  -- L3, Corellium and a joint notice by the

17    11th at 5:00 p.m., March 11th at 5:00 p.m.

18              MS. STEBBINS BINA:  Great, your Honor.

19              THE COURT:  And that'll give me time to take a look at

20    it on the 12th and then the hearing will be -- and on the 13th,

21    and then the hearing is on the 16th.

22              MS. STEBBINS BINA:  And will you issue a formal order

23    to Azimuth as notice of that or --

24              THE COURT:  We will.

25              MS. STEBBINS BINA:  -- would you like us to give
```

```
 1    notice?

 2           THE COURT:  Well, why don't you give them notice.  But

 3    I will also issue -- we'll issue a written order as well.

 4           MS. STEBBINS BINA:  Great.  Thank you, your Honor.

 5           THE COURT:  Thank you.

 6           So I think that almost took care of all the RFPs.  The

 7    only two I see outstanding were 52 and 78.  Is that right?

 8           MS. STEBBINS BINA:  Yes, your Honor.

 9           MS. CONSTANTINE:  Correct.

10           THE COURT:  So let me just go to 52.  And that's at

11    Docket Entry 188-1, Page 22.

12           MS. CONSTANTINE:  Yes.

13           THE COURT:  "All documents comprising or relating to

14    the Corellium's business plans, strategic plans, development

15    and sales plans and forecasts from the formation of Corellium

16    to the present."

17           All right.  So what's the issue?

18           MS. STEBBINS BINA:  Your Honor, I think based on your

19    rulings on the interrogatories last time, we would be willing

20    to remove "strategically" on them.  We would be willing to

21    limit this to the Corellium Apple product.

22           But obviously, sales forecasts, development forecasts,

23    sales plans and business plans for the marketing and sales of

24    the Corellium Apple product are clearly relevant to our damages

25    case, the fair-use defense, the scope and nature of the
```

```
1    infringement and all of that.  It's very standard discovery for
2    a copyright infringement action.  So we'd ask that it be
3    produced.
4         THE COURT:  So you're suggesting that it say "all
5    documents comprising or relating to Corellium's business
6    plans" -- strike "strategic plans"? --
7         MS. STEBBINS BINA:  Yes, your Honor.
8         THE COURT:  -- "development and sales plans and
9    forecasts from the formation of Corellium to the present
10   regarding the Corellium Apple product"?
11        MS. STEBBINS BINA:  And to the extent related to -- you
12   know, regarding or relating to the Corellium Apple product.
13        THE COURT:  All right.  Let me hear from the Defendant
14   on that.  Ms. Constantine?
15        MS. CONSTANTINE:  Your Honor, we don't have any
16   objections as to the sales development or forecasts.
17        Our only objection relates to the business plan, that
18   we don't believe it's related to the Corellium Apple product.
19   We think it's overbroad for a request.  And even if we're able
20   to redact it, we just don't believe it's necessary or
21   proportional to this case to have to give the entire business
22   plan for the business.
23        THE COURT:  All right.  Thank you.
24        So on 52, what I'm going to require is that Corellium
25   produce all documents comprising or relating to Corellium's
```

```
 1   development and sales plans and forecasts from the formation of

 2   Corellium to the present regarding the Corellium Apple product.

 3   So I'm striking "business plans" and "strategic plans."

 4        MR. LEVINE:  May I ask you to read that one more time,

 5   your Honor?

 6        THE COURT:  Sure.  I'd be glad to.

 7        "All documents comprising or relating to Corellium's

 8   development and sales plans and forecasts from the formation of

 9   Corellium to the present regarding the Corellium Apple

10   product."

11        MS. CONSTANTINE:  Thank you, your Honor.

12        THE COURT:  All right.  The last one would be 78.  And

13   let me just take a quick look at that one.

14        MS. STEBBINS BINA:  That's on Page 31.

15        THE COURT:  Right.  Got it.  Okay.  78:  "Documents

16   sufficient to show the forms of any confidentiality agreements

17   signed by Corellium employees."

18        What's this about?

19        MS. STEBBINS BINA:  Just so I can explain, your Honor,

20   what we're looking for here, because it -- you know, I debated

21   whether to push on this one.  And I want to explain why we

22   think it's relevant and what we think might be in there.

23        One of the issues here is Corellium potentially trying

24   to conceal from Apple or others the extent to which it's

25   infringing material and denying publicly that it's infringing,
```

1    potentially telling people that the product doesn't infringe.

2          We believe that there may be -- and we don't know,

3    because we haven't seen them -- language in the form

4    confidentiality agreement for Corellium employees that bears on

5    that issue.

6          That's why we didn't ask for specific executed

7    agreements.  We just want to see if there is a form of

8    Corellium confidentiality agreement that all employees are

9    required to execute.  And we wanted to see a copy of that form

10   to see whether it bears on those issues.

11         THE COURT:  Because of the issues of what again?

12         MS. STEBBINS BINA:  Whether Corellium is attempting to

13   conceal the extent of its infringement from Apple to the extent

14   there's anything in there that would preclude talking to Apple

15   specifically.

16         THE COURT:  So really, you're looking to see if the

17   confidentiality agreements have any reference to Apple?

18         MS. STEBBINS BINA:  Yes, your Honor.  Principally that

19   or reference to infringement or copyrights or anything other

20   that would be atypical that could support our case.

21         THE COURT:  All right.  Let me hear from the defense.

22         MR. LEVINE:  The issue we had with this was that

23   inherently an NDA would preclude people.  And as your Honor is

24   aware, Corellium is a startup with highly sensitive source code

25   and a highly sensitive product.

```
 1              So anybody that comes in who are either potential

 2    hires, you know, people that they discuss this stuff with, I

 3    believe, does sign an NDA.

 4              THE COURT:  Is it all the same?

 5              MR. LEVINE:  I'm under the impression there's no Apple

 6    stuff.  It's just a generic NDA that they can't disclose to

 7    anybody.

 8              THE COURT:  I'll tell you what I think I'm going to do:

 9    Can you submit it to me in camera and I'll review it and then

10    make a decision whether it's relevant, proportional or not?

11              MR. LEVINE:  Presuming there's a form.  I believe there

12    is.  But yes.

13              THE COURT:  There must be.  I mean, every --

14              MR. LEVINE:  I believe so.

15              THE COURT:  -- employee is probably given an NDA.

16              MR. LEVINE:  Yes, your Honor.

17              THE COURT:  So why don't you do that.  Why don't you

18    submit the NDA to me and I'll -- in camera.  Can you get that

19    to me by, say, Monday or Tuesday of next week?

20              MR. LEVINE:  I believe so, your Honor.

21              THE COURT:  All right.  Why don't we say Tuesday of

22    next week.  Just submit that to me.  You can email that or drop

23    it off by courier.  And just make a copy of the letter or the

24    email to opposing counsel; but, of course, don't include the

25    NDA to opposing counsel.
```

```
 1              Once I get that, I'll look at it and I'll make a
 2    determination whether it's relevant or not.
 3              MR. LEVINE:  Perfect.
 4              MS. STEBBINS BINA:  Thank you, your Honor.
 5              MS. CONSTANTINE:  Thank you, your Honor.
 6              MS. STEBBINS BINA:  That works well.
 7              THE COURT:  All right.  So that takes care of all of
 8    the issues regarding Apple's motion to compel Corellium to
 9    produce RFPs.
10              MS. STEBBINS BINA:  Your Honor, to the extent it's
11    helpful, we were able to meet and confer and narrow our
12    disputes regarding Corellium's motion to compel further
13    responses from Apple's RFPs.  And I think we're down to three
14    or four in that instance as well.
15              THE COURT:  Right.  And that's the next one I was going
16    to get to:  Corellium's motion to compel Apple's RFPs.
17              And is that Ms. Constantine?
18              MS. CONSTANTINE:  Yes, your Honor.
19              MR. LEVINE:  Your Honor, while she gets started, may I
20    run to the rest room?
21              THE COURT:  Sure.
22              MS. CONSTANTINE:  So --
23              THE COURT:  What's at issue here, Ms. Constantine?
24              MS. CONSTANTINE:  There's only one item at issue.
25              THE COURT:  Oh, okay.
```

```
 1            MS. CONSTANTINE:  It would be No. 88, your Honor.  We
 2   were able to resolve through 20 of these requests.
 3            THE COURT:  Oh, good.  All right.  So Request For
 4   Production 88?
 5            MS. CONSTANTINE:  Yes, your Honor.
 6            THE COURT:  Give me a minute.  Let me get there.
 7            And for the record, that should be -- and tell me if
 8   I'm correct -- I'm looking at DE 188-3, Page 68, Request For
 9   Production 88?
10            MS. CONSTANTINE:  That's correct, your Honor.
11            THE COURT:  Okay.  So let me just look at it.  It says
12   "all documents describing, evidencing, showing or referring to
13   the actions performed by Corellium, Corellium's users or
14   customers, the Corellium products, Apple and Apple's users or
15   customers that allegedly bypass or enable the bypassing of any
16   security measures in iOS and any other Apple product."
17            So this is Corellium asking Apple to produce this
18   information.
19            MS. CONSTANTINE:  Correct.
20            THE COURT:  Explain what it is you're looking for.
21            MS. CONSTANTINE:  Your Honor, Apple has made a claim
22   that Corellium is bypassing its security safeguards to be able
23   to get access to the iOS.  We need to know what those
24   guidelines are.
25            But besides knowing those guidelines, we need to know
```

1    what actions have they performed as to any other entities or

2    persons or any other individuals that are bypassing its

3    product.

4           So we need to know what are the steps that Apple has

5    taken to describe or show or provide any evidence that they are

6    actually safeguarding when customers or users actually bypass

7    those guidelines or procedures.

8           THE COURT:  All right.  Give me just a second.

9           All right.  I think I understand the request.

10          Let me hear from opposing counsel, Ms. Bina.

11          MS. STEBBINS BINA:  Thank you, your Honor.

12          So our position is just that this is overbroad.  If you

13   look at our answer on Page 70 of the document, we've agreed to

14   produce documents relating to the actions performed by

15   Corellium or Corellium's users and customers to the extent

16   we're aware of who they are that bypass or enable the bypassing

17   of any security measures in iOS or any other Apple product.

18          And we have an agreement that I'll strike "to the

19   extent such documents exist" at the end of that.

20          THE COURT:  I couldn't hear you.

21          MS. STEBBINS BINA:  We are in agreement that I would

22   strike that "to the extent" part at the end.

23          But the issue here, your Honor, is that the request

24   calls for all documents describing, evidencing, showing or

25   referring to the actions performed by Apple and Apple's users

1    or customers that allegedly bypass or enable the bypassing of

2    any security measures in iOS.

3          So on its face, it calls for internal Apple tools that

4    can bypass Apple's own security, which of course are used daily

5    and constantly because Apple is tinkering with its own product

6    in the system.

7          It also calls for any document about any Apple user

8    that was able to jailbreak their iPhone or anything along those

9    lines.

10         So, for instance, you have a right under the law to

11   jailbreak your personal phone.  That happens all the time.

12   Millions of users jailbreak their personal phones.

13         And in the meet-and-confer efforts, I explained that,

14   you know, I'm happy to produce everything related to Corellium,

15   but I don't think it's relevant in this case that Apple knows

16   that individual users jailbreak their iPhones sometimes.  And

17   it would be tremendously burdensome to go try to find every

18   scrap of paper relating to every individual who's ever

19   circumvented a security measure.  It just seems -- it just

20   seems grossly overbroad for the needs of this case.

21         THE COURT:  Does Apple have any guidelines for

22   companies like Corellium regarding the bypassing of security

23   devices?

24         MS. STEBBINS BINA:  If they have anything, it's been

25   produced, your Honor.  They have certain safe hardwares in

1    their security bounty program, and that documentation either

2    has or is in the process of being produced, things of that

3    nature.  We're going to produce all of that.

4           But there's not some -- I only know what's in there.

5    They have an end user license agreement that has certain

6    requirements and certain safe hardwares.  They have their

7    bounty program protocols.  All of that we're happy to produce,

8    which is the policies.  Any other policies that specifically

9    relate on these issues we'd be happy to produce as well.  It's

10   just this sort of broad ground cover that we're concerned

11   about.

12          THE COURT:  All right.  So in breaking it down, the

13   first part says "all documents describing, evidencing, showing

14   or referring to the actions performed by Corellium, Corellium's

15   users or customers, the Corellium Apple product." You don't

16   have any objection to that?

17          MS. STEBBINS BINA:  No.  We're producing all of that,

18   your Honor.

19          THE COURT:  All right.  As far as Apple, you have an

20   objection:  It's internal.

21          MS. STEBBINS BINA:  Yes.

22          THE COURT:  And as far as Apple's users or customers --

23          MS. STEBBINS BINA:  Irrelevant and wildly burdensome.

24          THE COURT:  Now, do you have any guidelines for Apple's

25   users or customers?

```
 1              MS. STEBBINS BINA:  Yes, your Honor.  That's what I was
 2    just referring to.  Anything that we have would be contained in
 3    the developer agreement, the end user license agreement -- I
 4    forget what it's actually called -- the standard license
 5    agreement, and the bug bounty program guidelines, all of which
 6    we either have produced or are in the process of preparing for
 7    production.
 8              THE COURT:  All right.  I understand your position.
 9              Ms. Constantine?  So the first part they're agreeing to
10    produce, which is all documents describing, evidencing, showing
11    or referring to the actions performed by Corellium, Corellium's
12    users or customers, the Corellium Apple products that allegedly
13    bypass or enable the bypassing of any security measures in iOS
14    and any other Apple product.
15              As far as Apple, their internal documents, I must say,
16    I tend to agree with them that if they're finding a way to
17    bypass their own security measures, that's an internal function
18    that they're doing.
19              As far as Apple's users or customers, obviously,
20    there's so many of those.  But I think they should provide any
21    guidelines, the developer agreement, the end user agreement,
22    the licensing agreement, those types of agreements regarding
23    Apple's users' or customers' attempts to bypass or bypassing.
24              Does that answer your issues on 88?
25              MS. CONSTANTINE:  Partly, your Honor.
```

```
1              So I agree that anything that Apple in house does to

2    bypass its own product, it's an internal issue.  But not as it

3    relates to Apple's users.

4              THE COURT:  Right.  And that's -- but the problem is,

5    it says "all documents referring to."  I mean, there could be

6    so many millions of documents regarding Apple's users or

7    customers.  So I'm trying to get what you need, which seems to

8    me to be guidelines, developer agreement and user agreement,

9    licensing agreement.  I'm not sure what else there would be.

10   But those would be some of the documents.

11             MS. CONSTANTINE:  Just anything sufficient to show what

12   their actions are once they find out about the bypassing of

13   security, your Honor.

14             THE COURT:  All right.  So there must be some

15   guidelines Apple has about that.

16             MS. STEBBINS BINA:  I think that's all -- to the extent

17   it exists, it's contained in what we've produced.  I'm happy to

18   go back and look, your Honor.

19             THE COURT:  All right.  Go back and look, because I'm

20   going to strike from that "Apple," because I do think those are

21   internal documents.  And as far as Apple's users or

22   customers --

23             MR. LEVINE:  Your Honor, before you rule, if I can have

24   some clarity:

25             If we can change this to "documents as it relates to
```

```
1    Apple's users, documents sufficient to show," that would make a
2    difference, because if Apple -- basically, the argument is that
3    if Apple knows about third parties, customers, users that are
4    actively bypassing its protective measures and it does nothing
5    about that, then that goes to show waiver, acquiescence and
6    knowledge.  And, you know, if they can give us a sample of 25
7    or, you know, whatever, that would cut the burden down, but it
8    would also go to establish our affirmative defenses.
9           MS. STEBBINS BINA:  Again, your Honor, that's not
10   actually true at all.  All of those defenses are specific to
11   Corellium.  Legally, as my understanding, Apple cannot
12   interfere with an individual who chooses to jailbreak their own
13   iPhone.  You're allowed to do that.  So of course we don't
14   legally interfere with that because that would be violating the
15   law.
16          You know, I don't see the relevance, you know.  There's
17   no one -- and we've already put ad nauseam in interrogatory
18   responses and RFAs in our view who is similar to Corellium and
19   is operating a business similar to Corellium's.
20          They're trying to go back at all the issues you denied
21   two weeks ago and, you know, argue that other businesses are
22   similar to theirs.
23          And I just -- I think it's a fishing expedition and
24   it's not -- it's not relevant to this case.
25          One thing I do want to just clarify:  I didn't mean to
```

1    suggest that Apple is hacking its own security measures.  I

2    just know that not everything in Apple -- internally in Apple

3    is secure and some things may be less secure.  That's all I was

4    trying to say.

5           MS. CONSTANTINE:  Your Honor, if I may:  I think it

6    will help to limit maybe not to individuals hacking their own

7    iPhones per se, but any entities or individuals that are doing

8    similar actions as Corellium such as the virtualization

9    products or emulators or anything relating to security

10   research.

11          Apple has stated in the past that they do security

12   research through other means, maybe not through virtualization.

13   So maybe we can limit Apple's users to those.

14          MR. LEVINE:  Let me actually walk that back, your

15   Honor.  I don't want to limit it.

16          THE COURT:  I understand that in pro wrestling they

17   have tag teams.  But we really don't have that in federal

18   court.  And so why don't you two talk to each other and get

19   your position clear.

20          MS. STEBBINS BINA:  Just for clarity, your Honor, all

21   of the stuff they're talking about there was the subject of

22   other RFPs --

23          THE COURT:  I understand.

24          MS. STEBBINS BINA:  -- that we've dealt with.

25          THE COURT:  All right.  Ms. Constantine?

1          MS. CONSTANTINE:  Your Honor, relating to the issue of

2     DMCA, it requires --

3          THE COURT:  I'm sorry?

4          MS. CONSTANTINE:  Relating to the issue of DMCA.

5          THE COURT:  DMCA?

6          MS. CONSTANTINE:  DMCA, the claims of DMCA.

7          THE COURT:  Oh, okay.

8          MS. CONSTANTINE:  It actually requires that they

9     actually follow security guidelines.  So we need to know if any

10    other entities or individuals are taking these actions that

11    Apple is actually following through and following through with

12    its guidelines.  We need to know who they are and what they're

13    doing to stop these other individuals.

14         The DMCA requires effective measures.  That's what we

15    need to prove to be able to properly defend this case.  If we

16    don't have that information, then we are kind of handicapped as

17    to what -- how we're going to be able to move forward relating

18    to that claim, your Honor.

19         THE COURT:  All right.  Ms. Bina?

20         MS. STEBBINS BINA:  Your Honor --

21         THE COURT:  They're arguing the DMCA requires certain

22    security measures or guidelines.

23         MS. STEBBINS BINA:  Yeah.  That's rather a red herring,

24    your Honor.

25         There's a certain provision that talks about the

```
 1   controls being effective.  And to my understanding, the law

 2   interpreting that just means effective for the purpose.

 3          So, for instance, what we're talking about here is if

 4   you load your iPhone up, you click on the license, the license

 5   pops up.  If you try to load it on something else, it doesn't

 6   load.  The software, you know, crashes.

 7          My understanding is that's a technical argument.  Is

 8   that technical control sufficient?

 9          I don't think there's any legal requirement that we

10   hunt down anyone who might have figured out how to get around

11   it and, you know, call them out and sue them in order to pursue

12   somebody who's conducting a business based on infringement.

13          So I really think this is -- and that's frankly not

14   what this RFP calls for, anyway.  This RFP on its face, you

15   know, is literally every scrap of paper about everyone.  If

16   they want to serve a targeted interrogatory about the

17   effectiveness of our controls, that's something we can deal

18   with and meet and confer on.  But this is just overbroad.

19          THE COURT:  All right.  I'll give you the last word,

20   Ms. Constantine, on 88.  And then I'm going to rule.

21          MS. CONSTANTINE:  Your Honor, we can agree to narrow it

22   to "documents sufficient to show," so Apple only has to provide

23   those documents if they know of any of these issues.  They

24   don't need to go hunting down anybody or go through a list of

25   emails or whatever their effective measures are, if any.  So we
```

1    can limit the request to "documents sufficient to show."

2         THE COURT:  All right.  So in the first part, you want

3    it to be "all documents sufficient to show the actions

4    performed by Corellium, Corellium's users and customers and the

5    Corellium products to bypass"?

6         MS. CONSTANTINE:  So the first part can stay as it is,

7    "all documents describing, evidencing" --

8         THE COURT:  You want to keep that?

9         MS. CONSTANTINE:  Yes.

10        For the portion --

11        THE COURT:  You want to modify what?

12        MS. CONSTANTINE:  "Relating to Apple's users," your

13   Honor.

14        THE COURT:  All right.  You know, I think this might be

15   more appropriate for a deposition issue at a 30(b)(6).  What I

16   think, and for a request for production what I want produced,

17   would be in the first part "all documents describing,

18   evidencing, showing or referring to the actions performed by

19   Corellium, Corellium's users or customers that allegedly bypass

20   or enable the bypassing of any security measures in iOS and any

21   other Apple product."

22        Now, I'm not going to require any of the internal Apple

23   documents.  I struck "Apple" from that.

24        As far as Apple's users and customers, what I want to

25   have produced would be security guidelines, guidelines

```
1   regarding that, developer agreement and user agreement,

2   licensor agreement, guidelines for bypassing.  And I think the

3   rest of that can be addressed by Corellium either sending a

4   targeted interrogatory or RFP or just include it in your

5   30(b)(6) deposition and ask what the 30(b)(6) representative

6   knows about that issue.

7           I think that's probably a more coherent way to handle

8   it.

9           MS. STEBBINS BINA:  Thank you, your Honor.

10          MS. CONSTANTINE:  Thank you, your Honor.

11          THE COURT:  All right.  I think that takes care of --

12  were there any other Corellium issues on their motion to compel

13  or has everything else got resolved?

14          MS. CONSTANTINE:  Everything else is resolved, your

15  Honor.

16          THE COURT:  Thank you, Ms. Constantine.

17          That would take us to the apex motion regarding the

18  deposition of Mr. Craig Federighi.  And it's an interesting

19  issue.  And I've read all of the parties' papers in this

20  regard.

21          I know that Apple filed their motion for protective

22  order barring the deposition of Plaintiff's apex employee at

23  Docket Entry 158, with attachments.

24          And then Corellium filed a response in opposition to

25  that motion with also numerous attachments.
```

```
 1              And then late yesterday, Apple filed a reply.

 2              Now, I've read all that.  I'm very familiar with the

 3      apex doctrine.

 4              In this case, it seems like Corellium is seeking to

 5      depose Apple's senior vice president of software engineering

 6      Craig Federighi.  And he is allegedly one of Apple's most

 7      senior employees, oversees the software development for all

 8      Apple products, supervises multiple engineering teams,

 9      responsible for developing Apple's software and applications

10      and he reports directly to Apple's CEO, Tim Cook.

11              According to Apple, the apex doctrine completely

12      precludes Corellium from deposing Mr. Federighi for a number of

13      reasons.  I know that Mr. Federighi filed a declaration, which

14      I have reviewed.

15              In response, Corellium argues that Mr. Federighi was

16      the Apple executive in charge of negotiating the acquisition of

17      Defendant Corellium.  He's allegedly the sole source of direct

18      firsthand knowledge relevant to Corellium's affirmative

19      defenses, is a witness that Corellium intends to call at trial,

20      and he will be called to testify according to Corellium at

21      trial about his unique relevant personal knowledge and his

22      decision-making process that resulted in the failed acquisition

23      of Corellium by Apple.

24              Corellium alleges he was the decision-maker and he had

25      a personal meeting with Mr. Wade on July 24th, 2018, for one
```

1   hour.  The parties have different characterizations of that

2   meeting.  And then there were a couple other meetings that he

3   had with Mr. Wade where other people were present.

4         So I understand the dispute here.  And before I hear

5   the argument, what depositions are scheduled in this case

6   currently?

7         MS. STEBBINS BINA:  On the Apple side only or on both

8   sides, your Honor?

9         THE COURT:  Well, for purposes of this motion, what

10  depositions are set by Corellium of Apple 30(b)(6), Apple

11  employees or what?

12        MS. STEBBINS BINA:  Yes, your Honor.  So --

13        MR. LEVINE:  I'll do ours.

14  Jon Andrews is set for March 20th.

15        THE COURT:  Hold on just a second.  And who is he?

16        MR. LEVINE:  He is the vice president of Core OS

17  Software Engineer -- yeah.  Vice president of Core OS Software

18  Engineering.

19        THE COURT:  That's March 20th?

20        MR. LEVINE:  March 20th.

21        THE COURT:  Okay.

22        MR. LEVINE:  Jason Shirk, who is the manager for

23  security and privacy concerns.

24        THE COURT:  Is that S-H-I-R-K?

25        MR. LEVINE:  Yes, sir.

```
 1              THE COURT:  And when is that?

 2              MR. LEVINE:  March 23rd.

 3              THE COURT:  Okay.

 4              MR. LEVINE:  Ivan, I-V-A-N, Krstic, K-R-S-T-I-C.

 5              THE COURT:  Okay.

 6              MR. LEVINE:  He is the head of security engineering and

 7  architecture set for March 19th.

 8              THE COURT:  Okay.

 9              MR. LEVINE:  Steve Smith.  I just have here "director."

10              THE COURT:  Okay.

11              MR. LEVINE:  March 17th.

12              And Sebastien, S-E-B-A-S-T-I-E-N, Marineau,

13  M-A-R-I-N-E-A-U, vice president, Core OS, April 3rd.

14              THE COURT:  April 3rd.

15              What about the 30(b)6 deposition?  Has that been set

16  yet?

17              MR. LEVINE:  Of Apple.

18              MS. STEBBINS BINA:  Yes, your Honor.  The Defendants

19  had agreed to -- so our 30(b)(6) designees are their witnesses

20  listed above that they've just gone through.  So I believe

21  we're going to try to double-team the 30(b)(6) topics on the

22  same day.  But they have served and we have served responses to

23  30(b)(6) designation.

24              THE COURT:  All right.  So it looks like the Apple

25  witnesses, aside from Mr. Federighi, are all being set in March
```

```
 1    and one on April 3rd.
 2           MS. STEBBINS BINA:  Yes, your Honor.  There's also a
 3    former Apple employee who I believe was set for deposition.
 4           MR. LEVINE:  You're right.  My apologies, your Honor.
 5    Chris Betz, B-E-T-Z, former Apple security engineer, March 6th.
 6           THE COURT:  Okay.  All right.  I think that gives me
 7    some context in regards to the motions.
 8           So again, it seems like there's two extremes here.
 9    Corellium wants to take Mr. Federighi's deposition on
10    everything and Apple is saying they can't take it on anything.
11           MS. STEBBINS BINA:  Well --
12           THE COURT:  So let's hear -- it's Apple's motion for
13    protective order to bar the deposition of him.  So let me hear
14    from Ms. Bina.
15           MS. STEBBINS BINA:  Thank you, your Honor.
16           And just so we can clear a little on the background
17    here, when Defendants noticed Mr. Federighi's deposition, I
18    offered that we would hold it in abeyance, get a confirmed date
19    in April, meet and confer whether there was any deposition that
20    was needed after we took everyone else, and then raised the
21    issue with the Court if and when it became ripe and necessary.
22           Corellium's counsel refused that offer.  They said they
23    wanted to stick with their notice date of March 3rd and if I
24    didn't want that to happen I needed to file a motion for
25    protective order, which is what I did.
```

1          In the interim, your Honor, they attempted personal

2    service of a subpoena on Mr. Federighi at his home on a

3    weekend, despite him being clearly a witness that falls within

4    Rule 30, and I became more concerned about potential

5    harassment.

6          If your Honor believes, obviously, under the apex

7    doctrine that discovery of Mr. Federighi might be necessary, I

8    don't mind reserving that issue.  But I think it would be

9    better to try to resolve.  They're literally deposing everyone

10   else who had contact, all of whom had exponentially more

11   knowledge than Mr. Federighi did on this one-hour meeting.

12         The declaration they say they -- the pitch deck they

13   say they showed to him is merely identical to one they gave to

14   Jon Andrews at the same time.  There isn't any unique knowledge

15   here.  And the witnesses that -- they're already deposing two

16   vice-presidents of Apple.  They're already going very, very

17   senior.  And I don't think they're going to need anything

18   further.

19         THE COURT:  All right.  Thank you.

20         Who wants to argue that for Corellium?

21         MR. LEVINE:  I will, your Honor.

22         THE COURT:  All right, Mr. Levine.

23         MR. LEVINE:  To respond to Ms. Bina's prefatory

24   context, Apple delayed for months giving us dates.  We provided

25   notices that for courtesy did not have dates filled out, but

1   there were notices for everybody that we intended to serve.

2          Mr. Federighi was one of them.  He's always been

3   someone who's been on the list.  He's in our initial Rule 26

4   disclosures served back in September.

5          So Apple delayed for months giving us dates really on

6   anyone.  And then there was a date or two that would trickle

7   out.  And the reason we ended up moving forward because -- was

8   because we started getting indications from Judge Smith that

9   was saying -- you know, he was saying, I'm not going to give a

10  lot more leniency on these extensions anymore.  So we needed to

11  move forward.

12         And these trickling of dates just wasn't enough.  So we

13  did that.  And that's kind of the background of why this

14  happened.

15         Now, she mentioned that we're already deposing two

16  vice-presidents.  Corellium wasn't the one who got to pick who

17  Apple had deal with the Corellium acquisition and the product

18  and everything.  The people that Apple put forward, including

19  Mr. Federighi -- in fact, primarily Mr. Federighi, and I'll get

20  into that -- just are who they are.

21         And that's kind of one of the overarching arguments for

22  today in this particular motion.  If we stripped Mr. Federighi

23  of his senior vice president role or title, our lineup of

24  depositions would not change one bit.  He is a material fact

25  witness.  In fact, he's got a considerable amount of

```
 1    information.
 2            Now, I would like to provide my own context as it
 3    relates to this motion.
 4            Apple's saying:  Oh, he was just in one meeting and
 5    just in another meeting and just had, you know, minimal
 6    communications and X, Y and Z.
 7            Jason Shirk, Jon Andrews, whoever the other people are,
 8    they all had -- candidly, I would say what may be considered
 9    minimal -- there wasn't a ton of -- you know, there was a
10    couple of meetings.  There was only four meetings in total.
11    Mr. Shirk -- or Mr. Federighi was in two of them, so he was 50
12    percent involved of the meetings.  There was some
13    communications back and forth.
14            We would concede that Corellium did not speak every
15    single day with Mr. Federighi and that, you know, they were
16    dealing a lot more with their friends at Apple who were
17    supposedly that at the time.
18            But there wasn't a lot of exchange anyway.  So to say
19    that he was only at two meetings, you need to put that in
20    context of, well, that was actually about 50 percent of what
21    was happening.
22            So there wasn't a lot of exchange between any of these
23    witnesses.  You know, just because they sent a slide deck to
24    somebody -- I'll clarify what Ms. Bina was getting at in a
25    minute -- but just because they sent a slide deck to someone
```

1    doesn't mean that that person now has this -- you know,

2    floodgates of information.  They now know about a slide deck,

3    and that is what it is.  And that -- so there isn't a ton of

4    information for us to sit here and list, you know, a whole --

5    several pages of dates and times and conversations.  It just

6    doesn't exist between any of the witnesses.

7           So your Honor's familiar with the -- with the apex

8    option.  I know that your Honor has an opinion out on it.

9    You've reviewed it.  You know, I --

10          THE COURT:  More than one.  I mean, I've dealt with

11   this many times.

12          MR. LEVINE:  So I will spare -- I would like to quote

13   for the record that -- you know, it's even in Apple's own

14   briefings that "when a witness has personal knowledge of facts

15   relevant to the lawsuit, even a corporate president or CEO is

16   subject to deposition."

17          And that's our position.  That's exactly our position,

18   is that it has no bearing what his title is.  That has nothing

19   to do with it.

20          There is an abundance of evidence to show -- and I will

21   get into that in a moment -- to show in the context that there

22   isn't generally a lot of evidence to begin with for anybody

23   that a lot of it relates directly to Mr. Federighi.

24          THE COURT:  Well, let me just ask you a few things and

25   tell you a few things as far as my perception:

1          My perception tentatively is that I probably won't

2    entirely preclude the deposition and I probably won't allow you

3    to get into everything you want to get into.  I'll probably put

4    parameters upon the scope and the timing and the extensiveness

5    of the deposition.

6          And I have to apply a balancing test, obviously.  And I

7    will tell you, I'm concerned about a few things:  I'm concerned

8    that Corellium saw fit to send a process server out to this

9    man's home and bother his wife when in a case like this you

10   well know that all you have to do is do a notice of taking

11   deposition to the other side.

12         So I'd like to have an explanation as to why you felt

13   it was important, or Corellium did, to send a prosecutor --

14   send a process server out to -- I think it's Cupertino,

15   California, or somewhere in California to knock on this man's

16   door, sit outside his house, bother his wife to serve a

17   subpoena when subpoenas are not necessary in a case where you

18   have an officer or director or vice president of a party.  I

19   mean, that's the first thing.

20         And the second issue that I want you to address is why

21   you were rushing to take him before taking the underlings and

22   the other people who might be able to fill in a lot of that

23   information and not make such a high-ranking witness like

24   Mr. Federighi subject to all the little nuances and all the

25   work that his underlings and associates do for him, I would

1    imagine.

2          So if you could just address those two issues.

3          MR. LEVINE:  Absolutely.

4          So as it relates to the subpoena, we felt extremely

5    constrained and we started to become very, very concerned that

6    these depositions were going to get pushed right up to the back

7    end of the -- of the discovery.  And candidly, it's our

8    position that we were getting no assistance from counsel from

9    Apple in getting these dates.  We were upfront in November.

10   And it took -- we didn't send it out until -- I think it was

11   late January.  And we just got almost -- I feel like we got --

12   we were feeling very, very constrained and restricted and

13   getting nothing back.

14         The subpoenas, we did have staff, you know, send these

15   subpoenas out because we felt we needed to move unilaterally to

16   get these things done in light of some of the pressure that was

17   coming down on the Court as far as timing.  Notably, the

18   statement in the order that said "No more extensions."

19         THE COURT:  Right.

20         But I mean, why couldn't you just file a motion to

21   compel a date for the deposition of Mr. Federighi or do a

22   notice of taking deposition and let them come in and move for a

23   protective order?  I mean, I just don't understand why when you

24   have a party, Apple, and he worked -- and it's not like he's a

25   former employee.  If he was a former employee, I'd say:  Go for

```
 1    it.  Subpoena him.
 2          But, you know, he's working there now.  And you don't
 3    even send it to the office.  You send it to his house and his
 4    wife from what I read answers the door.  I mean, that's going a
 5    little bit beyond what we need to do in a civil litigation
 6    manner, isn't it?  I mean, does that in any way show Corellium
 7    as acting in bad faith in trying to take Mr. Federighi's
 8    deposition?
 9          MR. LEVINE:  I very respectfully disagree, your Honor.
10    I don't -- candidly, Corellium -- Chris Wade, who's kind of the
11    principal here, his wife was similarly served with this
12    complaint at her house.
13          THE COURT:  Well, but a complaint's different than a
14    deposition.
15          MR. LEVINE:  It was --
16          THE COURT:  I mean, a complaint has to be served.
17          MR. LEVINE:  I can tell you -- well, we felt that -- we
18    felt that this had to be served as well.  And so --
19          THE COURT:  But why?  I mean, why would you say that
20    when they're a party and under the rules all you have to do is
21    send a notice of taking depo?  I don't understand why you think
22    it had to be served.
23          MR. LEVINE:  So Ms. Constantine has been leading this
24    up.  She just sent me a note that said we did a notice -- send
25    a notice of deposition.  Latham & Watkins never responded.  We
```

1    then canceled the subpoena.  That is true.  We then canceled

2    the subpoena, and it was served because I think it was in the

3    process.  So we felt that our backs were up against the wall.

4         I can tell you on the record and look you in the eye:

5    There was no bad faith.  We felt constrained and up against the

6    wall.  We did all -- we started in November with the process,

7    your Honor.  And that -- and I remember the conversation

8    between Ms. Constantine and the Latham lawyers when they said:

9    Hey, what happened with the subpoena?

10        And we said:  No.  We did already put in the

11   cancellation order for the subpoena.  And it was -- I guess it

12   was already in process.

13        THE COURT:  I just don't like seeing, you know, a

14   process server going out to some vice president's house,

15   knocking on the door, sitting outside the house, you know, in

16   this day and age when all that had to be done was a notice of

17   taking deposition.

18        And if they don't respond or they don't appear, then

19   you file a motion to compel.  You file a motion for sanctions.

20   If they're not giving you dates, you file a motion before the

21   Court.  I get that all the time, where one side or the other

22   isn't cooperating on dates and a party files a motion that

23   says, you know, "They're not agreeing to give us dates; we're

24   going to run out of time," and I immediately set it down and

25   I -- if the parties can't agree on the dates, I just set the

 1   dates.

 2          MR. LEVINE:  Your Honor --

 3          THE COURT:  And I'm just telling you that it's not the

 4   deciding factor.  But in the balancing test the Court has to

 5   look at, I have to look at the motivation behind your taking --

 6   Corellium's taking the deposition of Mr. Federighi.

 7          And when I look at the motivation, I look at, well, you

 8   haven't taken a single other Apple underling deposition and you

 9   try to serve him at his house in California when it's

10   unnecessary.  And those are just -- I'm just saying, those are

11   some factors.  I'm not saying they're the deciding factors, but

12   those are just factors that I think, you know, Corellium needs

13   to address in this, along with the other factors as to -- you

14   know, I think in your favor there was some meetings that he

15   personally attended, at least two meetings, from your

16   recitation, with your Corellium employee --

17          MR. LEVINE:  One directly with Mr. Wade and one with

18   Mr. Wade and two other people.  And then there was another one

19   as it relates to Virtual and --

20          THE COURT:  Well before.

21          MR. LEVINE:  It's relevant for a very narrow reason.

22          THE COURT:  Right.

23          And so what I'm saying is I think to the extent that he

24   may have personal knowledge about something in this case like a

25   meeting with Mr. Wade, that may be fair game for you to get

1    into.  But I would expect that a lot of those other Apple

2    employees that are set in March and then April 3rd are going to

3    provide a lot of answers to a lot of these issues that you're

4    not even going to have to get into with such a high-ranking

5    Apple employee.

6         So that's why I started this out by saying:  I think I

7    disagree with both your positions.  I disagree with your

8    position that he should be taken first and about every single

9    thing in this case.

10        And I think I disagree with Apple's position that you

11   can't take his deposition at all.

12        I think there's some area in between there that the

13   Court is considering; and I'm saying this without having fully

14   decided the issue.

15        But I'm telling you that in my view, I think the true

16   apex witness, the doctrine, goes to a CEO or a high-level vice

17   president who really had no involvement at all other than

18   happened to be the CEO or the vice president or he just

19   supervised underlings who dealt with the issue.

20        This one is not necessarily that, because he did have a

21   personal meeting with Mr. Wade.  And he had a second meeting

22   with Mr. Wade with other employees.  And so those certainly are

23   probably fair game.

24        But I don't think that the scope of the deposition that

25   you want, which is asking him about every single thing in this

```
 1   case, when you haven't even asked the other Apple employees

 2   these questions, I think that's going too far.

 3        So I'm just telling you, I disagree with both sides in

 4   this case.

 5        MR. LEVINE:  Initially I'd like to just put a cap on

 6   the subpoena:  The subpoena and the way that happened was my

 7   offices -- at my office's direction.  My client had no real

 8   involvement or knowledge about the process of the subpoena.

 9   That was simply myself and Ms. Constantine and our office and

10   our staff working through the procedure, again, feeling up

11   against a corner, to try and get that done.

12        So I would simply ask that while I completely

13   recognize -- and we'll make sure that in future cases we

14   instead move to compel and follow some of that, and I will

15   again look you in the eye and tell you there was no bad faith;

16   we were just trying to get this thing forward -- I would ask

17   that you not prejudice the client because as it relates to

18   simply serving the subpoena was on the lawyers.

19        As it relates to the other issues that your Honor

20   discussed, the reason why -- the reason why a more broad

21   deposition rather than just limiting it to the meetings or just

22   limiting it to -- obviously, the deposition would relate to his

23   personal knowledge.  We can -- that we can limit.

24        The problem with a very limited deposition is that by

25   the mere filing of the declaration that he submitted in support
```

1    of their motion for protective order, he has now put himself in

2    his positions at a direct discrepancy of all of the people who

3    work under him and the evidence that we've attached to our

4    response as well as the affidavits and the statements of Chris

5    Wade and Mr. Wade's recollection of the meetings and the other

6    people who attended the meetings.

7            So, you know -- and I'll go through some of the

8    evidence here that was attached to the response.  But the

9    evidence directly reflects that Mr. Federighi was directly

10   involved in the decisions, that it was his mind we had to make

11   up and that it was him involved in the valuation, that it was

12   him involved as to whether having -- you know, being able to

13   apply Corellium to all different groups within Apple, you know,

14   that he is directly involved in the meetings, all of that.

15           And then when you speak to Chris Wade and you look at

16   his declaration, he's saying that at that personal meeting, we

17   absolutely talked about value.  We talked about customers.

18           There was something that Chris had to fill me in on:

19   This Swift in the Cloud was only presented to Mr. Federighi.

20   And it's a brilliant idea.  What Swift in the Cloud is is

21   that -- and Corellium came up with this idea, and Chris on

22   behalf of Corellium presented this only to Mr. Federighi as

23   part of these acquisition discussions.

24           Swift in the Cloud -- and it's a dead idea at this

25   point -- is where when you turn on your iPhone, the first

1    screen you get is that black -- the black screen with an Apple,

2    and there's a bar that loads from left to right.  That's like

3    the activation and the initial processing of the phone before

4    it gets to the actual user interface.

5         You can move now -- you can move information to the

6    cloud, but you can't move processes to the cloud.  So when the

7    phone is thinking, "I'm going to move from the text message app

8    to the email app," that's a process.  And the processor or the

9    computer or iPhone is working, and that's taking up battery;

10   it's taking up data, which you're paying for through Verizon,

11   AT&T.

12        Swift in the Cloud -- so Swift is Apple's coding

13   language that it made up for itself.  Corellium developed a way

14   to move the process to the cloud.  So you're now relieving

15   yourself of incurring data costs; you're relieving memory on

16   your hard device.  They pitched this idea to Mr. Federighi as

17   all part of the acquisition process for Corellium.

18        Mr. Federighi under oath is claiming that there was no

19   substantive information exchanged.  Not only was Swift in the

20   Cloud; the fact that jailbreak, there was a lengthy discussion

21   about jailbreaking, and explain why that's important.  And that

22   gets to this Facebook and Microsoft issue.

23        So Corellium, as has been discussed today --

24   Corellium's virtualization process provides both a virtual

25   store-bought iPhone or a jailbroken iPhone.  There's a reason

```
 1    for that.
 2            Entities that are testing apps, because an individual
 3    has a right to have a jailbroken phone and do their
 4    jailbreaking on their own phone, there is millions of them out
 5    there on the -- in the -- you know, on the economy.
 6            So Facebook or Uber or whoever comes out with a new
 7    app, they recognize that a large portion of their customers
 8    that are going to be using this app are going to be doing it on
 9    jailbroken phones.  And because Congress has already approved
10    jailbreaking, in order to test their apps before they go out to
11    market, they have to test them on store-bought phones, but also
12    simulated jailbroken phones, because it's a huge target market.
13            So Corellium had to provide -- in order to have a
14    practical and realistic test, had to have both commercial
15    store-bought as well as jailbroken phones for their customers
16    to test their apps on.
17            This was discussed with Mr. Federighi in that -- in
18    that meeting.  It goes to show that even though there's a
19    jailbroken feature on the Corellium virtue hardware, that it's
20    actually in good faith, that they're not doing it to do pirated
21    phones, they're not doing it to do stolen phones or
22    jailbroken -- I know the word sounds bad -- they're doing it to
23    replicate what's actually currently going on in the market now
24    to make it an actual useable product.
25            All of this was discussed during that meeting.  And all
```

1    of this was included in those slide decks, or at least the

2    mention of Facebook and the discussion.

3          So let me get into also -- so she mentioned that also a

4    virtually identical slide deck was provided to Jon Andrews.

5    Here's the issue with that:  That slide deck -- so Mr. Wade and

6    the people from Corellium were speaking with, as your Honor

7    called it, the underlings, Mr. Andrews, Mr. Shirk, Mr. Krstic,

8    about how to best prepare Corellium for this meeting with

9    Mr. Federighi.

10          Mr. Wade sent a draft of the slides and he said:  This

11   is what I plan to present.  What are your thoughts on that?  It

12   was close, but it wasn't an identical replication.

13          And what was missing was this:  If you look at those

14   slides, for example, in the Facebook conversation I just had,

15   there was some bullet points about Facebook.  But the whole

16   discussion I just gave you about jailbreaking, none of that's

17   in there.  But that was discussed at the meeting.

18          Mr. Federighi apparently has no recollection of that.

19          You know, your Honor just ruled on the EULA, on the end

20   user license agreement, with Request For Production No. 88.

21   That was another substantive topic that was discussed between

22   Mr. Wade and Mr. Federighi.

23          Why am I telling you all of this?  I'm telling you this

24   to support that while I recognize maybe not a full-blown

25   deposition is going to happen, by the very nature of his

1    declaration that he provided in support of his motion for

2    protective order, Mr. Federighi has put his position at odds

3    with both Mr. -- with both the people at Corellium as well as

4    his own employees, because if you look at the evidence that

5    we've attached, all the text messages from Mr. Krstic, all of

6    them say, "That's a question you have to ask Craig."  Clearly,

7    Craig is involved.

8              THE COURT:  And you're going to depose that individual,

9    right, about that text message?

10             MR. LEVINE:  Right.  But all that individual's going to

11   be able to say is, That's something you have to ask.

12             But more importantly -- and why this is important for

13   Mr. Federighi is -- well, you know what?  I'll answer that

14   question.  Let me go through a couple of these to provide

15   context.

16             THE COURT:  I mean, I did look through them.  But go

17   ahead.

18             MR. LEVINE:  To provide context, I think it'll help the

19   argument, if I can just go through them very quickly.

20             THE COURT:  All right.

21             MR. LEVINE:  So, you know, he said:  That's a question

22   you have to ask Craig.

23             This next person -- Chris Wade said:  I told him that

24   we would be happy to give Apple a bunch of servers to set up --

25   so that was a conversation that was discussed -- so he could

```
1    see the results of the test, referring to Mr. Federighi.

2           Mr. Andrews said:  Let me know if you talk to Craig.  I

3    would love to report back to the team that it went well.

4    Smiley face.

5           Let's see.  Did Craig elaborate as to what that might

6    be?

7           And by saying that, he's clearly indicating that -- so

8    this is Mr. Andrews asking Mr. Wade:  What did Craig say?

9           So clearly, Mr. Andrews isn't aware.  But clearly,

10   Mr. Federighi is very involved in some of the decision-making

11   or at least having a personal opinion.  I know this sounds

12   repetitive; but again, I think this is important for context

13   for the argument I'm going to make.

14          There was another one, Exhibit 11, that says, I doubt

15   it will change Craig's mind on value of Corellium.

16          Exhibit No. 12 said:  Hey, just wanted you to let you

17   know that we continue to work on Craig.

18          So this is Steve Smith, who's set for deposition.  He

19   said:  Chris, I just want to let you know that we're continuing

20   to work on Craig as it relates to trying to bring Corellium

21   into Apple.

22          Exhibit 14 is Mr. Krstic saying:  Craig is the guy to

23   convince when it comes to remote work.

24          Exhibit 15:  They said that we would have -- or they

25   said that they would have to talk to Craig about a deal.
```

1          Exhibit 16 talks about providing Mr. Federighi with

2    assets and revenue.  And they're talking about going up to

3    brief Mr. Federighi before meeting.

4          The point is, is that clearly from the people who work

5    for Craig, they also thought he was very involved.  They also

6    thought that it was Craig's mind you had to change on value,

7    that it was Craig you had to prep for for the meetings, that it

8    was Craig who held the reins for everything.

9          So not only is Mr. Wade's position on the meetings and

10   what happened there different than Mr. Federighi's, but

11   Mr. Federighi's own people in how involved Craig was was

12   different.

13         And so how does that relate to the deposition?  Well,

14   we need to square this up now.  If Mr. Federighi's own

15   under-oath position is different from pretty much everybody

16   else in this case, he needs to be deposed on all of those

17   positions.

18         I'll take it a step further.

19         THE COURT:  You won't know that until you take the

20   other witnesses' depositions.

21         MR. LEVINE:  I mean, so that -- that's a fair point,

22   your Honor.  But I would caution the Court that that is a

23   facial reading of the apex doctrine.

24         As I mentioned, the very first thing I said here was

25   that if we strip Mr. Federighi of his title, our depo lineup

```
 1    would not change.  It is a happenstance that Mr. Federighi
 2    happens to have "senior vice president" behind him.
 3          But this is not a presidential immunity doctrine.  He
 4    was very involved with this.  And just like every other
 5    material fact witness, we should have a deposition that permits
 6    us to get into the items that we're permitted to get into.
 7          Now, I itemized --
 8          THE COURT:  That are not redundant.
 9          MR. LEVINE:  I'm sorry, your Honor?
10          THE COURT:  That are not redundant to what you've
11    already established through other Apple witnesses.
12          MR. LEVINE:  Well, so -- but I would ask the Court --
13    so why -- if that's the case, if redundancy is the issue and
14    not what this person's knowledge is, why hasn't there been a
15    motion for protective order on redundancy for Mr. Krstic and
16    Mr. Andrews and Mr. Shirk?
17          THE COURT:  What I'm saying is, when you're talking
18    about such a high-level employee, you don't start with that
19    employee first and ask every single thing that you want to ask
20    of Apple of that employee.
21          You would start with the underlings, the people who did
22    the work, the people who assisted him.  You try and answer as
23    many of your questions about the process and what occurred and
24    what Apple knows through that, through their 30(b)(6)
25    witnesses, and then, if appropriate, if he had some personal
```

1    involvement.  If there's some issue like his affidavit that he

2    needs to be questioned on, then that's probably going to be

3    proper.

4         But to just say:  We're starting out with Mr. Federighi

5    and we want to ask him everything, I think that's where you run

6    into your problem.

7         MR. LEVINE:  So my apologies.  I didn't know that the

8    Court's issue was with the order.  I don't think we have any --

9    I don't think we want to put him to April 17th, you know, a day

10   and a half before close of discovery.

11        But if the Court is -- the Court's issue is taking him

12   first, I don't know if I -- candidly, I haven't been following

13   as close as Ms. Constantine the depo schedule.  If the Court's

14   contention is the order, I'm happy to move him.

15        THE COURT:  Well, one of them is the order.  The other

16   is the scope.

17        MR. LEVINE:  Okay.  So the order I think -- that we can

18   move to whatever the Court pleases.  That I've no problem with.

19   I didn't know that was an issue.  So that we can move on.

20        THE COURT:  And I think the scope is informed by what

21   you learn from Andrews and Shirk and Krstic and Smith and

22   Marineau and Chris Betz and how far you need to get into his

23   personal knowledge, the declaration or affidavit that he signed

24   and any other issues that might be material to him, because

25   like I've said before, I want both sides to have a fair

1    discovery process in this case.

2         And so my tentative inclination is that Apple's

3    position that you can never take his deposition is not going to

4    be accepted by me.

5         And your position that you should be able to take his

6    deposition first on every single thing in this case is not

7    going to be accepted by me.

8         MR. LEVINE:  We'll recede from that.

9         THE COURT:  And I want to hear from Ms. Bina a little

10   bit further.  But, you know, I have some ideas on how to handle

11   this.  But I understand that you feel that Mr. Federighi is a

12   material witness in your case and you intend to call him at

13   trial, you know.  I'm sure there'll be a motion in limine and

14   that issue will be decided and you'll either prevail or not.

15        But from what I've read and from what you've

16   established, it does seem like Mr. Federighi had some

17   involvement.  He did have involvement with your client.  He had

18   at least two meetings.  And there may be other issues that are

19   relevant and you need to go into after you've taken the other

20   depositions.

21        So I'm not rejecting your position entirely.  But I am

22   going to more than likely impose limitations on the subject

23   matter, the scope of the deposition, the length of the

24   deposition, the location of the deposition and things of that

25   nature.

1        MR. LEVINE:  So your Honor seems very informed on this,

2    so I won't belabor it.  I would like to just touch two brief

3    issues:  One is the scope and the other is the procedural issue

4    about trial that your Honor just raised.

5        Mr. Federighi will be called at trial by Corellium.  As

6    I mentioned, he was one of the first people that was listed on

7    the initial disclosures.  In light of the proximity and where

8    the venue is, it's more than likely, if not probably

9    guaranteed, that we are not going to be able to force him to

10   attend.

11       So I would plead to the Court to take that into

12   consideration, as we may need to rely upon his deposition at

13   trial.  And I just want that to be at the forefront of the

14   Court's mind because I think that really does impact the

15   breadth and the scope.

16       THE COURT:  Okay.

17       MR. LEVINE:  One other thing that I think impacts the

18   breadth and the scope, and then I'll sit down, is that while I

19   agree that the Court is looking at the -- you know, a few of

20   the depositions that come before Mr. Federighi to define the

21   scope of his deposition, I think the reason that I just went

22   through the discussion that I did was to show that

23   Mr. Federighi's already -- his claims are very, very different

24   than what we're going to be getting from other people,

25   including our own client.

```
 1              And so it may be difficult to define the scope, because
 2      if Apple employee X says Mr. Federighi was involved in this
 3      aspect, then I would presume the Court's going to say:  Okay.
 4      That aspect falls within the scope of Mr. Federighi's depo.
 5              But then if Apple employee X then says Mr. Federighi
 6      was not involved in this aspect, well, we already have
 7      testimony under oath from him that says things that are very,
 8      very different from other people.
 9              And I was going to mention -- I was going to take it a
10      step further:  We mentioned the RFAs in our response.  Apple
11      has already admitted that they had no knowledge about Facebook
12      and the jailbreaking and Microsoft.  And Mr. Federighi said
13      that under oath as well.  But that was absolutely discussed,
14      both in the slide deck as well as discussed by Mr. Wade.
15              So I struggle with how -- the things that the prior
16      depositions are going to say he was involved with, clearly,
17      that's going to fall within the scope.  But then we also have
18      to test the things that they say that we believe are incorrect
19      because there's already a pattern that's been established that
20      he is either misremembering things or just not being
21      forthcoming.
22              And so the ability to test his statements or what we
23      presume his statements may be under testimony against what
24      would be an opposing statement from his own employees or
25      Mr. Wade's I think would also need to fall within the scope.
```

```
 1              THE COURT:  All right.  And I'd take that argument

 2     under consideration when I decide the scope.

 3              MR. LEVINE:  Thank you, your Honor.

 4              THE COURT:  All right.  Ms. Bina?

 5              MS. STEBBINS BINA:  Your Honor, I want to respond to

 6     some things that Mr. Levine said.  And I also would like to

 7     make my best shot at why the deposition shouldn't happen.

 8              THE COURT:  Go ahead.

 9              MS. STEBBINS BINA:  Though I do understand your Honor's

10     concerns.

11              And I will point out that the reason I originally

12     proposed what I proposed was, like, "Let's do everybody else.

13     Let's get a firm date on calendar and then we'll come argue

14     whether it's needed or not" I think would have been a sensible

15     way to proceed.

16              But that's not where we are.

17              So just briefly on the history with the subpoenas:  I

18     don't want to belabor that point.  Mr. Levine did send me blank

19     depo notices in November.  However, he told me in December that

20     he wanted documents to be produced first and he anticipated

21     taking Apple witnesses in March.

22              At that point, I had already begun -- I had dates for

23     several witnesses I was getting ready to email him.  I said:

24     Oh, well, if we're not going till March, I'll tell them to

25     stand down.  Give me dates two months from now.  And that's
```

1    what I did.

2          At the time of the [inaudible] subpoenas, we already

3    confirmed dates for three witnesses.  So it's not -- it's not a

4    correct history.

5          And I just want to note that point, because I do think

6    there was some witness harass -- they served another witness

7    with a subpoena who already had a confirmed depo date.  So I

8    just -- I wanted to note that point, because our opinion of the

9    history is different.

10          So with respect to the point that Mr. Levine just made,

11    which is that Mr. Federighi's declaration is somehow in

12    conflict with everyone else's testimony, that's simply not the

13    case.  Mr. Levine testified to -- and as -- he testified to a

14    number of things just now that aren't actually in his client's

15    declaration.

16          So if you look at Mr. Wade's declaration, which is

17    175-1, on Page 3, he says he attended this July 24th meeting.

18    In preparation, he created a slide deck about this concept

19    Swift in the Cloud that he thought was a good concept for Apple

20    iPhones.  Nothing to do with Corellium.

21          He also proposed that they could give Corellium a free

22    trial with license for the product and some server hardware.

23    And they talked about the use of jailbroken iOS devices by

24    companies like Facebook.

25          That's all he says happened in the meeting.

1          And if you look in Mr. Federighi's declaration, which

2     is 158-1, what he says is:  "My calendar reflects a one-hour

3     meeting.  The purpose was to determine whether Wade would be a

4     good fit for our organization.  My recollection of that meeting

5     is very limited.  I do recall discussing personal background

6     interests, Apple's culture and how Wade might contribute,"

7     which, by the way, this Swift in the Cloud and jailbroken falls

8     right into the definition of how Wade might contribute.  "I

9     have no recollection of discussing any aspects of Corellium's

10    technology during that meeting."

11         Mr. Wade also does not -- did not testify that they

12    discussed Corellium's technology during that meeting.

13         And the fact that Mr. Federighi had ultimate approval

14    over the acquisition isn't really relevant here.  And that's

15    where I want to kind of transition to the second point, which

16    is in order to take a deposition from an apex executive, they

17    must not only have unique knowledge, but that unique knowledge

18    must be relevant to the claims and defenses in this case.

19         It is not -- this is not a case about a failed

20    acquisition and whether or not Apple should have acquired

21    Corellium or what price it should have paid for Corellium.  The

22    question is whether Corellium's product infringes Apple's

23    technology and, if so -- and circumvents its security measures

24    and, if so, does Corellium have any defenses to that?

25         And the defenses that they've said are relevant here

1   are laches, which we talked about last time, isn't really

2   relevant after *Petrella*, but also acquiescence and estoppel.

3          And for estoppel and acquiescence, there has to be

4   affirmative conduct by Apple that Corellium relies upon that

5   they are then prejudiced by as a result of Apple's behavior.

6          There's been no testimony by any witness that anything

7   that happened at that July 24th, 2018, meeting was something in

8   the nature of conduct by Apple that -- you know, Mr. Wade talks

9   about what he told Apple.  Mr. Federighi also talks about

10  generally what Mr. Wade told him.

11         So there isn't actually a relevant portion to the

12  claims and defenses in this case.  Instead, we're talking

13  about:  Why did the acquisition fall apart?  Maybe

14  Mr. Federighi thought the price was too high.  Maybe he didn't

15  think the technology was that valuable.

16         All of that's sort of interesting, and it is a prior

17  interaction between the parties, but it doesn't go to the heart

18  of the claims or the defenses in this case.

19         And that's why, your Honor, even though we concede

20  there was some interaction, there was approximately two hours,

21  one hour of which was shared with multiple other people.

22         By the way, when they say "three out of four meetings,"

23  that's pretty misleading.  There were four in-person meetings.

24  I believe that the one Mr. Federighi attended went on for

25  several more hours.  And he was only there for an hour of it.

 1  There were also, though, a number of telephonic meetings, text

 2  messages.

 3       They mention Mr. Krstic.  We've produced hundreds of

 4  text messages between Mr. Wade and Mr. Krstic.  So there was a

 5  very substantial interaction with all of the other Apple

 6  witnesses to greater and lesser degrees.  And we're already

 7  producing four deposition, two vice-presidents, who have -- you

 8  know, to get vice president availability dates for my client

 9  was a challenge.  But I made that argument with them.

10       I said:  Look, they've got relevant knowledge.  They're

11  responsive.  They were involved.  You have to produce them.

12       And they said:  We understand.  We will.

13       But here it's a different scenario.  Mr. Federighi was

14  really, you know, a traditional apex witness here.  He had

15  ultimate decision-making authority whether or not to acquire

16  Corellium.  And if this were a lawsuit about why didn't Apple

17  acquire Corellium, I would argue that might have some

18  relevance.  It would still want to be limited in time and

19  scope.

20       But I don't think, given the actual issues at issue in

21  this case, there's been any showing that Mr. Federighi has

22  knowledge on those points.

23       And I would ask that if your Honor is inclined to allow

24  the deposition with a limited scope that it do that subject to

25  a right to -- for us to come back in here after the other

1    witnesses have been deposed and say:  It's really not

2    necessary, your Honor, because we are talking here about two

3    hours two years ago.  It's very, very minimal time.

4         And this is a very, very senior employee.  He

5    supervises 5,000 people.  He's one of the top twelve employees

6    of a company that employs over 100,000 individuals.  And while

7    he has some tangential, peripheral knowledge, his overall

8    impression of Corellium is not a fact at issue in this case.

9    It's not a dispute.  And the fact that they want to quiz him

10   about it doesn't make it part of the claims or defenses in this

11   action.

12        THE COURT:  All right.  I'll tell you what I think I'm

13   going to do here:  What I want to do is I want the parties to

14   agree on a date between April 6th and April 20th of 2020 for a

15   possible deposition of Mr. Federighi.  And when I say that,

16   what I don't want to have happen is that I end up saying:

17   Well, there is a right to a deposition on these topic areas or

18   these limited areas, and then find out that Mr. Federighi's in

19   Europe for three weeks.

20        So I want the parties first of all to address the

21   logistics, which would be a date between April 6th and April

22   20th, a time, a location.

23        And what I want to do is we will discuss this further

24   after these other depositions have been taken.  All of these

25   other depositions should be taken by April 3rd, according to

1    the schedule I just received.

2            And so what we will do is there'll be a date that will

3    be established.  I would suggest it probably be sometime -- I

4    said between the 6th and the 20th.  It would probably be better

5    off somewhere in the middle of that time period.

6            And then I will give the parties the chance to either

7    in writing or in person to argue as to Apple's position that no

8    deposition should be taken or Corellium's position that a

9    deposition should be taken.  And if I decide there should be a

10   deposition, then I can have the parties discuss and address

11   what subject areas might be appropriate.

12           So what I'm doing, really, is reserving on the motion.

13   I want from a procedural-logistical point of view -- I want

14   there to be a date selected by the parties that is set in stone

15   that Mr. Federighi could attend if the Court rules that.  And

16   then the Court will hear more after these other depositions

17   have been taken.

18           And I'll hear more from Corellium as to why after those

19   depositions have been taken you still need to take

20   Mr. Federighi's deposition, as to what issues.

21           And I'll hear from Apple as to why you believe

22   no deposition should be taken.

23           And then I'll make a ruling.  At least that way, we

24   will have a date set so that if I do rule that a deposition has

25   to occur under the following scope and terms that that can go

1    forward without delaying the case.

2         MS. STEBBINS BINA:  Thank you, your Honor.

3         For logistics purposes, would it be sufficient to try

4    to obtain a half day on Mr. Federighi's schedule or do I need

5    to look for a full seven-hour day?  He's just extremely busy.

6         THE COURT:  Right.  I think in light of all the other

7    Apple employees, what I would just suggest is you start one day

8    at, say, 9:00 and go till, say, 3:00 p.m.  That would give the

9    parties approximately six hours to go.  If the parties want to

10   discuss that.  I know that the local rules say seven hours.  I

11   don't know if that much is going to be needed.  It's going to

12   depend on what I end up ruling, if a deposition occurs.

13        So I would at least set aside probably 9:00 a.m. to

14   3:00 or 4:00 p.m. that day, and I will perhaps shorten it

15   because it depends.  If I'm only going to allow certain areas,

16   then it's not going to be as long as if I allow more areas.

17   But again, I understand Apple's position, but I do think that

18   an argument can be made that I'm hearing that he has personal

19   knowledge and that he's relevant to certain issues in this

20   case.

21        On the other hand, I understand Apple's position that

22   you believe he's an apex employee and he shouldn't be subject

23   to a deposition at all or if it is a deposition it should be

24   limited in scope.  But I want to be a little bit more informed

25   on what has transpired in all these other depositions before I

1    make that decision.

2              MR. LEVINE:  May I be heard, your Honor?

3              THE COURT:  Yes.

4              MR. LEVINE:  I'd like to just get a couple minor things

5    on the record.

6              I just wanted to address just a few points.  I've got

7    eleven here.  I'm only going to address about two.

8              THE COURT:  Okay.

9              MR. LEVINE:  I do want to say that, you know, Ms. Bina

10   mentioned that, you know, this is not an acquisition case; this

11   is a copyright case.

12             Under that argument, one, that argument is entirely

13   dismissive of all of I believe the nine affirmative defenses

14   that relate to this particular individual.  I'm happy to

15   itemize them on the record.

16             THE COURT:  But I'm just asking, why do we need to

17   address that now when I'm not deciding the scope of his

18   deposition until a later date?

19             MR. LEVINE:  Because I just want to get them on the

20   record so that when we review for the following hearing,

21   that -- I want to put them in the Court's radar.  And that's

22   why I'm being very, very brief and concise.

23             Under that argument, none of Apple's depositions would

24   be relevant.

25             The reason that it's relevant or the number of reasons,

```
 1   which I can say very, very concisely, is that Apple had
 2   knowledge and was fully briefed about the technology at the
 3   highest level.  We can confidently say Apple itself, the
 4   corporation, knew about the technology and encouraged its
 5   further development.
 6           And if Mr. Federighi is so busy and has so many people
 7   under him and, you know, runs his life in six-minute
 8   increments, as we all do, then why was he meeting all these
 9   times if he, as he mentioned in his transcript, that he doesn't
10   relate to acquisitions and X, Y and Z?
11           So none of that really applies and it doesn't come into
12   play here.
13           One logistical issue:  I think maybe because we weren't
14   treating him as a Rule 30 individual, all of these depositions
15   we had scheduled despite -- if they are going to be considered
16   the Plaintiff, Corellium was going to fly its team out to
17   California at great expense.  And we think that was a huge
18   burden off of all of these people, Mr. Andrews, California;
19   Mr. Krstic, California; Mr. Federighi, California; Mr. Smith,
20   California; Mr. Marineau, California, at great expense to
21   Corellium.
22           What I will offer or what I would ask is that -- not to
23   set Mr. Federighi's depo so far back, but take these people's
24   first, while we're going to be out in California for about four
25   days.  Take Mr. Andrews first; take Mr. Shirk -- Mr. Krstic
```

```
 1    first; take Mr. Smith first and take Mr. Marineau first when

 2    we're going to be out in California.  And then -- so

 3    Mr. Marineau is April 3rd.  So I would say take at the very

 4    least the other three people first.  And then if Mr. Federighi

 5    has time between -- you know, just before April 3rd or just

 6    after, so that we're already out there, just for logistical

 7    purposes so we're not going to do trips of lawyers across the

 8    country.

 9         THE COURT:  Right.  But I mean, the way it stands now,

10    you've got depos set March 20th, March 23rd, March 19th, March

11    17th and April 3rd.  So are you saying you're going to be out

12    there from March 17th to April 3rd?

13         MR. LEVINE:  I mean, I would say that that trip -- I

14    would put him in that trip.  Let's take those other four first.

15         THE COURT:  Is Corellium's counsel going to be out

16    there between March 19th and April 3rd and not be coming back

17    between those depos?

18         MS. STEBBINS BINA:  We have --

19         THE COURT:  Are you going to be out there for that

20    length of time?

21         MS. STEBBINS BINA:  We have several depositions

22    scheduled in Florida the next week, your Honor.

23         THE COURT:  All right.

24         MR. LEVINE:  When you say --

25         THE COURT:  I don't know that one more trip -- I mean,
```

1    if you're going out to California all these times, I don't know

2    that one more trip to California for Mr. Federighi is going to

3    be --

4              MR. LEVINE:  No.  This is going to be one trip.

5              THE COURT:  Well, how is it going to be one trip if you

6    have depositions set March 19th, March 20th, March 17th, March

7    23rd, April 3rd, all in California, and you also have

8    depositions during that period of time in Florida?

9              MR. LEVINE:  No.  The -- this would be one -- my

10   understanding -- so Apple's -- these dates, my understanding,

11   these are not set yet.

12             THE COURT:  I was just told earlier when the hearing

13   started that those were the dates of their depos.

14             MS. STEBBINS BINA:  But those dates are confirmed.

15             MR. GAUKROGER:  For [inaudible].

16             MS. STEBBINS BINA:  There are depositions for

17   [inaudible] confirmed.

18             MR. LEVINE:  My understanding is that for Mr. Andrews,

19   Mr. Krstic and Mr. Smith, they are going to be one trip.

20             THE COURT:  All right.  But still, you're going to have

21   to be making multiple trips out to California.  So I understand

22   your argument that it's expensive to fly out to California and

23   all, but that just may be the cost of litigation.

24             So --

25             MR. LEVINE:  I mean, fair.  I guess my question is

```
1    that -- you know, can we take four people first or three people

2    first and not have him be pinned back at April 15th?

3          THE COURT:  No.  I think it'll have to be between the

4    6th of April and the 20th of April.  I would suggest the

5    parties work out -- some sort of midpoint of that date would

6    probably make sense to everybody.  And who knows?  Maybe

7    Mr. Federighi will come to trial in this case live.  You never

8    know.

9          MS. STEBBINS BINA:  Also, maybe your Honor will find

10   there's absolutely no relevance and we'll have reserved the

11   date for nothing.

12         THE COURT:  It's very possible that I could also say

13   that it doesn't occur at all or it's also possible that I could

14   say:  You know what?  I'm going to allow the deposition.  And

15   then when the case goes to trial, Judge Smith says:  Well, you

16   know, I've reviewed the deposition.  I don't think any of this

17   is relevant to the issues at trial after I've resolved summary

18   judgment.

19         So that's possible, too.  I don't know.  If I had a

20   crystal ball --

21         MR. LEVINE:  It would certainly make things easier,

22   huh?

23         THE COURT:  It would make things an awful lot easier.

24         But I am going to reserve on that.  I do want --

25         Ms. Bina, I want to make sure counsel gets ahold of
```

 1   Mr. Federighi and let him know that we need a specific date for

 2   his deposition in the event it goes forward.

 3         MS. STEBBINS BINA:  I'll contact him this afternoon,

 4   your Honor.

 5         THE COURT:  And set that with opposing counsel between

 6   those dates.  Make sure it works for everybody.  And that way,

 7   we've got the date set and all that requires after that is me

 8   to rule.

 9         MS. STEBBINS BINA:  Yes, your Honor.

10         THE COURT:  All right?  So that takes care of the apex

11   depo issue.

12         MR. LEVINE:  Your Honor, can we ask for a deadline as

13   to when this conferral and the date is set?

14         THE COURT:  Sure.  Let's see.  Today is Thursday.  Why

15   don't you confer on Monday.  I'm sure that'll give you time to

16   speak to Mr. Federighi between, I guess, tomorrow and Monday.

17   Why don't you confer on Tuesday about this.  All right?

18   That'll give you Friday, Saturday, Sunday, Monday to try and

19   speak to him.

20         MR. LEVINE:  Perfect.

21         MS. STEBBINS BINA:  And I think that will work, your

22   Honor, as long as he's in town right now.

23         THE COURT:  Right.

24         MS. STEBBINS BINA:  I just don't know whether he is or

25   isn't.

```
 1            THE COURT:  Well, if you can't get a response --
 2            MR. LEVINE:  We'll work.
 3            MS. STEBBINS BINA:  We'll work together.
 4            THE COURT:  If you can't get a response by Tuesday,
 5   talk to them.  And if it becomes a problem, just file a motion
 6   with the Court or whatever asking for a little bit more time.
 7   But I just -- it should be pretty easy to say, Listen, we need
 8   a tentative date for your deposition --
 9            MS. STEBBINS BINA:  Yes, your Honor.
10            THE COURT:  -- and you need to clear the day.
11            And if the deposition goes forward, it's going to
12   happen in California.  You may want it to save time and say
13   it'll happen in a conference room at Apple or whatever.  I
14   don't know what the logistics will be.  I don't know if you're
15   going to be doing a videotaped deposition or not.  I don't know
16   the procedure.
17            But you may want to agree on that, too, to make it as
18   expeditious as possible, because if I do allow the deposition,
19   you know, you want to get it taken and be as effective as
20   possible.  And in the event he doesn't come live at trial, then
21   you may need to use it in the event it's admissible at trial.
22            MR. LEVINE:  I was going to say, I think we intend
23   video just because of the trial issue.
24            THE COURT:  Okay.  All right.
25            MS. STEBBINS BINA:  And we have offices in that area,
```

```
 1   so we can talk about that.

 2           THE COURT:  Now I think I'm going to take a short

 3   break.  It's 3:15.

 4           The last motion which is on for today was just Apple's

 5   motion to sustain objection to disclosure of designated

 6   material pursuant to protective order.  And I really -- I guess

 7   we can come back and address that.

 8           I think Corellium wants to show confidential material

 9   produced by Apple to Chris Wade, Corellium's founder and chief

10   technology officer.

11           And Apple argues that while it has permitted other

12   employees of Corellium to view the confidential material, it

13   will not agree to allow Mr. Wade to view it because Corellium

14   has not complied with the protective order regarding Mr. Wade.

15   And there's other arguments made.

16           So I'm going to take a short break.  Is that motion

17   still at issue?

18           MS. STEBBINS BINA:  I think so, your Honor.  They

19   didn't file an opposition, but I asked Mr. Levine, and he said

20   he wanted to argue it.

21           THE COURT:  Right.  I didn't see a response.

22           MR. LEVINE:  There's no response, your Honor.

23           THE COURT:  All right.

24           MS. STEBBINS BINA:  I'm not --

25           THE COURT:  That was filed back on -- let's see --
```

1          MS. STEBBINS BINA:  It was on Monday, I believe, your

2     Honor.

3          THE COURT:  -- the 24th.  Okay.  That was filed on

4     February 24th.  And then the notice of filing under seal was --

5     so the motion, Apple's motion to sustain objection, was at

6     Docket Entry 177.  And then the filing under seal was at Docket

7     Entry 185.

8          MS. STEBBINS BINA:  That sounds likely.  I think it was

9     177.

10          THE COURT:  And I know there's an agreed protective

11     order at Docket Entry 50.

12          So let me take a short break and we'll come back in

13     about five minutes and we'll address that motion.

14          MR. LEVINE:  Thank you, your Honor.

15          THE COURT:  I think that takes care of everything after

16     that one.

17          THE COURTROOM DEPUTY:  All rise.

18          (Pause in the digital audio recording.)

19          THE COURT:  All right.  Everybody is back.

20          Before we go to that last motion, back on February

21     14th, 2020, I entered an order at Docket Entry 154 which was an

22     order granting in part and denying in part Corellium's motions

23     to seal and requiring the parties to review the sealed

24     materials, et cetera.

25          In Paragraph 6 of that order, I stated:  "Finally,

1    Corellium's motion to compel Plaintiff to provide proper

2    responses to Defendant's first request for admissions, DE 100,

3    was filed entirely under seal.

4            "Corellium is directed to file a redacted public

5    version of the motion on or before February 21st, 2020, so the

6    docket is complete.

7            "The Court will review the redacted version to

8    determine if the redactions are appropriate."

9            But I have not seen a redacted motion filed on the

10   public record by February 21st.

11           MR. LEVINE:  Okay.  So I think maybe we missed that

12   filing.  What I do have with me is I actually have everything

13   related to that motion with proposed redactions done.

14           THE COURT:  All right.  Why don't you go ahead and file

15   that, then.

16           MR. LEVINE:  Got it.

17           THE COURT:  And get that in by -- can you get that in

18   by tomorrow?

19           MR. LEVINE:  Tomorrow.  End of day tomorrow.  Yes, sir.

20           THE COURT:  All right.  I mean, if that's going to be a

21   problem, I can give you until Monday.

22           MR. LEVINE:  No.  No.  Tomorrow should be more than

23   fine.

24           THE COURT:  So why don't you go ahead and get that in

25   by tomorrow.

```
 1              MR. LEVINE:  Absolutely.  Thank you.

 2              THE COURT:  All right.  The last -- this last motion is

 3     Apple's motion to sustain objections to disclosure of

 4     designated material pursuant to protective order, Docket Entry

 5     177, the sealed version at Docket Entry 185.

 6              There's no response at this point.

 7              And it looks like Apple is arguing that Corellium

 8     hasn't complied with the protective order.

 9              MS. STEBBINS BINA:  Yes, your Honor.

10              MR. LEVINE:  Well, actually, let me touch on -- do you

11     want the --

12              THE COURT:  Well, this is Apple's motion.  Let me start

13     with Ms. Bina.

14              MR. LEVINE:  As it relates to the protective order that

15     we just talked about, do you want that filed with a notice

16     under seal?  How do you want that filed?

17              THE COURT:  No.  No.  It would be a redacted motion

18     filed publicly.

19              MR. LEVINE:  Oh, okay.  Got it.  I'm clear.  Okay.

20     Thank you.

21              THE COURT:  All right.  Ms. Bina?

22              MS. STEBBINS BINA:  Yes, your Honor.  So this is pretty

23     straightforward, although I recognize there are some tangential

24     issues that if we need to go off the record or off -- not off

25     the record, but under seal to talk about it, I can.  But from
```

1    Apple's perspective, this is straightforward.

2          The protective order at place in the case has a process

3    by which you disclose your consulting relationships.  You have

4    to say the entity; you have to say whether it's current.  And

5    Mr. Wade hasn't done that.

6          So they've given us information from two other people.

7    We approved them right away.  But Apple relied on that

8    protective order to produce their confidential information in

9    the case.  It has a number of complicated relationships in the

10   world and it doesn't allow its confidential information to be

11   released without knowing the ties that whoever they're going to

12   has.

13         And they didn't -- they didn't want to provide that

14   information.  That's fine.  We're not seeking it.

15         But we are seeking an order sustaining our objection on

16   the basis that they didn't provide the information and

17   therefore they shouldn't -- Mr. Wade specifically shouldn't be

18   allowed to see designated confidential information.

19         THE COURT:  All right.  Does Apple do this when

20   Corellium is providing confidential information to Apple?

21         MS. STEBBINS BINA:  Yes.  And they actually have been

22   very stringent about enforcing their own rights, you know.  And

23   we've honored that.

24         And there's one Apple witness currently -- a similar

25   Apple employee who has access to Corellium's confidential

1    information.  No Apple employees who have access to AEO

2    information.  So it's very much mutual.

3            THE COURT:  All right.  So who wants to argue this for

4    the Defendant?

5            MR. LEVINE:  I will.

6            THE COURT:  Why shouldn't Mr. Wade have to comply with

7    the protective order like everybody else?

8            MR. LEVINE:  So he is complying.  And at this juncture,

9    I would ask, as I learned from last time, if it's -- I can

10   either -- can I dance around the subject or if we can stop the

11   recording?

12           THE COURT:  Well, I guess what your argument is is that

13   he has a certain relationship you don't want to publicly

14   disclose?

15           MR. LEVINE:  Well, no.  So he has complied.  I think

16   there's some dispute as to what it requires.

17           THE COURT:  Okay.  All right.  And you believe that

18   needs to be in a sealed portion of the transcript?

19           MR. LEVINE:  No.  He can provide it.

20           THE COURT:  No, no.  Your argument needs to be under

21   seal?

22           MR. LEVINE:  Oh, yes.  Yes, your Honor.

23           THE COURT:  All right.  Is there any dispute that it

24   needs to be under seal from Apple?

25           MS. STEBBINS BINA:  Your Honor, I don't know whether we

1    would ultimately agree to it, but I have no problem

2    provisionally sealing it; and then we can look at what's said

3    and whether it needs to be sealed.

4            THE COURT:  All right.  So, Ken, why don't we go off

5    the public recording; and when you're ready, we'll go back on

6    to a brief unsealed portion.

7            (Whereupon, certain sealed proceedings were had.)

8            THE COURT:  All right.  So we're back on the public

9    record.

10           And as to the motion we were discussing, which is

11   Docket Entry 177, Apple's motion to sustain objection to

12   disclosure of designated material, the Court's going to grant

13   that motion without prejudice to Corellium to further pursue or

14   address the matter as they deem appropriate.

15           All right.  I think that takes care of that.

16           Any other issues that we need to address today?

17           MS. STEBBINS BINA:  One very brief question, your

18   Honor.

19           I cannot personally attend on March 16th.  I'm

20   obviously going to have a colleague lined up.  But if there's

21   not a large number of motions on dispute, would it be possible

22   for me to appear by phone at that hearing?

23           THE COURT:  I mean, I allow appearance by phone, but I

24   require whoever's here to do the main argument.  And this

25   applies to both sides.

1              So in other words, I always want, especially in cases

2    like this that are so voluminous and involve requests for

3    production and interrogatories, you can appear by phone.  But I

4    would expect that whoever is in court is fully prepared to

5    argue all of Apple's positions.  If you need to join in briefly

6    to a position here and there, I will certainly allow that.  And

7    I would do the same thing for Corellium.

8              MS. STEBBINS BINA:  Thank you, your Honor.

9              THE COURT:  All right?  Anything else from the defense

10   side?

11             MR. LEVINE:  I don't believe so, your Honor.

12             THE COURT:  All right.

13             MR. LEVINE:  Thank you for your time.

14             THE COURT:  Thank you.  I will see you all back on

15   March 16th.  And we'll get a written order out on these matters

16   as soon as we can.

17             MS. STEBBINS BINA:  Thank you, your Honor.

18             THE COURT:  Thank you.

19             (Proceedings concluded.)

20

21

22

23

24

25

1

2

                    C E R T I F I C A T E

3          I hereby certify that the foregoing is an

4    accurate transcription of the proceedings in the

5    above-entitled matter.

6

7

     _____        /s/Lisa Edwards

8        DATE              LISA EDWARDS, RDR, CRR
                           (305) 439-7168

9                          Reporterlisaedwards@gmail.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**'** [1]

**'yes** [1] - 6:23

**/**

**/s/Lisa** [1] - 173:7

**1**

**1** [6] - 1:8, 4:21, 19:23, 19:25, 20:6, 76:20
**10** [2] - 4:9, 24:16
**10,000** [6] - 10:18, 10:22, 13:8, 13:15, 14:14, 18:1
**100** [2] - 1:18, 167:2
**100,000** [1] - 155:6
**1000** [1] - 2:3
**10250** [1] - 1:15
**105** [1] - 22:20
**10:00** [2] - 3:23, 4:1
**10:03** [1] - 1:6
**11** [2] - 4:21, 143:14
**1100** [1] - 1:15
**11:37** [1] - 75:4
**11th** [3] - 104:6, 104:17
**12** [5] - 27:25, 28:4, 77:4, 77:9, 143:16
**120** [1] - 1:22
**1200** [1] - 1:18
**12th** [1] - 104:20
**13** [5] - 13:2, 26:20, 28:5, 77:4, 77:9
**13th** [1] - 104:20
**14** [5] - 9:1, 19:6, 77:7, 77:22, 143:22
**144** [3] - 6:15, 7:11, 8:22
**149** [4] - 8:22, 22:21, 28:13, 37:3
**14th** [1] - 166:21
**15** [9] - 4:7, 4:11, 8:8, 8:9, 8:25, 18:20, 18:24, 77:23, 143:24
**15,000** [1] - 13:17
**154** [1] - 166:21
**158** [1] - 122:23
**158-1** [1] - 152:2
**15th** [1] - 162:2
**16** [1] - 144:1
**16th** [17] - 3:23, 3:25, 69:14, 70:6, 70:9, 81:2, 94:8, 100:6, 100:10, 101:5, 101:24, 103:13,

**103:14, 104:1,** 104:21, 171:19, 172:15
**175-1** [1] - 151:17
**177** [4] - 166:6, 166:9, 168:5, 171:11
**17th** [5] - 125:11, 146:9, 160:11, 160:12, 161:6
**18** [3] - 78:2, 78:4, 91:5
**185** [2] - 166:7, 168:5
**188** [2] - 4:9, 22:21
**188-1** [3] - 91:1, 91:4, 105:11
**188-3** [1] - 111:8
**19** [3] - 78:4, 91:7, 91:8
**19-81160-CIVIL-SMITH** [1] - 1:2
**19-81160-CV** [1] - 3:1
**19th** [2] - 125:7, 160:10, 160:16, 161:6

**2**

**2** [3] - 28:13, 28:14, 37:3
**20** [6] - 75:4, 78:9, 78:19, 80:2, 80:5, 111:2
**20,000** [1] - 13:17
**200** [1] - 14:18
**2017** [2] - 4:19, 6:18
**2018** [2] - 123:25, 153:7
**2020** [7] - 1:5, 3:23, 3:25, 28:14, 155:14, 166:21, 167:5
**209** [1] - 14:18
**20th** [12] - 5:11, 44:22, 102:2, 124:14, 124:20, 155:14, 155:22, 156:4, 160:10, 161:6, 162:4
**21** [3] - 80:1, 80:3, 80:4
**21st** [2] - 167:5, 167:10
**22** [1] - 105:11
**222** [1] - 1:22
**23rd** [3] - 125:2, 160:10, 161:7
**24th** [6] - 28:14, 123:25, 151:17, 153:7, 166:3, 166:4
**25** [2] - 80:8, 117:6

**26** [1] - 128:3
**27** [2] - 1:5, 80:13

**3**

**3** [2] - 76:24, 151:17
**30** [3] - 80:15, 127:4, 159:14
**30(b)6** [7] - 122:5, 124:10, 125:19, 125:21, 125:23, 145:24
**30(b)(6)** [1] - 121:15
**30(b)6** [1] - 125:15
**305** [2] - 2:6, 173:8
**31** [10] - 80:17, 80:18, 80:20, 80:22, 89:23, 89:25, 90:3, 90:10, 90:11, 107:14
**32** [1] - 81:4
**33131** [1] - 1:19
**33301** [1] - 2:4
**33401** [1] - 1:23
**34** [4] - 9:1, 19:6, 81:6, 91:7
**35** [3] - 9:1, 19:6, 81:7
**350** [1] - 2:3
**36** [3] - 81:8, 81:13, 81:15
**37** [4] - 9:1, 19:6, 81:10, 81:16
**38** [2] - 81:11, 81:18
**39** [2] - 81:11, 81:18
**3:00** [2] - 157:8, 157:14
**3:15** [1] - 165:3
**3rd** [12] - 125:13, 125:14, 126:1, 126:23, 136:2, 155:25, 160:3, 160:5, 160:11, 160:12, 160:16, 161:7

**4**

**4** [1] - 76:24
**4-A** [2] - 6:15, 7:12
**40** [15] - 81:23, 90:4, 90:6, 90:7, 90:21, 90:24, 91:4, 91:9, 92:15, 92:18, 94:15, 94:18, 94:19, 96:21
**41** [13] - 81:23, 90:4, 90:6, 90:7, 90:21, 90:24, 91:9, 91:23, 94:10, 94:16, 96:21, 96:25, 97:4
**42** [1] - 81:25

**439-7168** [2] - 2:6, 173:8
**45** [1] - 82:2
**47** [1] - 76:6
**49** [1] - 82:2
**4:00** [1] - 157:14

**5**

**5,000** [1] - 155:5
**50** [5] - 26:20, 82:7, 129:11, 129:20, 166:11
**500** [1] - 12:25
**52** [10] - 82:10, 90:4, 90:6, 90:7, 90:17, 90:21, 97:1, 105:7, 105:10, 106:24
**55** [4] - 82:21, 82:23, 82:24, 83:5
**59(e** [2] - 8:20, 8:21
**5:00** [2] - 104:17
**5th** [1] - 104:5

**6**

**6** [2] - 40:11, 166:25
**61** [1] - 84:15
**62** [2] - 9:1, 19:6
**63** [1] - 84:17
**64** [6] - 39:25, 40:11, 85:7, 85:8, 85:10, 86:1
**68** [2] - 22:19, 111:8
**69** [4] - 85:12, 85:19, 86:1, 86:3
**6th** [5] - 126:5, 155:14, 155:21, 156:4, 162:4

**7**

**7** [9] - 4:7, 4:10, 4:11, 4:12, 5:20, 6:16, 7:8, 7:9, 76:24
**7.1** [1] - 8:21
**70** [8] - 9:1, 17:9, 19:7, 86:14, 86:18, 86:22, 101:17, 112:13
**71** [3] - 9:1, 19:7, 87:23
**73** [4] - 87:25, 89:18, 89:22, 90:3
**75** [1] - 88:12
**77** [1] - 22:20
**78** [9] - 88:14, 90:4, 90:6, 90:7, 90:21, 97:1, 105:7, 107:12,

**107:15**

**8**

**8** [6] - 4:7, 4:10, 7:15, 7:18, 8:6, 76:24
**82** [4] - 88:16, 89:18, 89:22, 90:3
**83** [1] - 89:4
**88** [7] - 22:20, 111:1, 111:4, 111:9, 115:24, 120:20, 141:20

**9**

**9** [4] - 10:11, 27:18, 76:25, 77:1
**90067** [1] - 1:16
**9:00** [2] - 157:8, 157:13
**9th** [1] - 104:5

**A**

**a.m** [4] - 1:6, 3:23, 4:1, 157:13
**abeyance** [1] - 126:18
**abide** [2] - 85:16, 95:10
**ability** [8] - 12:7, 13:4, 13:6, 25:10, 42:9, 50:4, 65:6, 149:22
**able** [21] - 16:11, 29:7, 36:19, 38:12, 39:3, 47:15, 65:24, 75:25, 102:12, 106:19, 110:11, 111:2, 111:22, 113:8, 119:15, 119:17, 131:22, 138:12, 142:11, 147:5, 148:9
**above-entitled** [1] - 173:5
**absolutely** [12] - 11:4, 11:11, 18:18, 44:2, 53:18, 70:13, 101:3, 132:3, 138:17, 149:13, 162:10, 168:1
**abundance** [1] - 130:20
**accept** [1] - 38:10
**accepted** [3] - 16:1, 147:4, 147:7
**accepting** [1] - 15:15
**access** [36] - 8:10, 8:12, 20:23, 24:5,

2

24:25, 25:17, 27:10,
31:20, 32:16, 35:5,
36:12, 42:9, 48:9,
51:7, 51:9, 51:11,
51:24, 57:6, 57:12,
58:11, 58:13, 58:19,
58:22, 59:23, 60:2,
61:25, 66:6, 66:7,
66:24, 68:11, 69:14,
70:4, 99:2, 111:23,
169:25, 170:1
  **accessing** [1] - 49:2
  **accomplished** [1] -
7:5
  **according** [7] - 29:6,
36:10, 60:10, 90:3,
123:11, 123:20,
155:25
  **accounts** [6] - 17:14,
20:16, 20:23, 21:15,
21:18, 31:2
  **accurate** [3] - 89:15,
89:16, 173:4
  **accusing** [1] - 43:21
  **achievement** [1] -
42:21
  **acquiescence** [3] -
117:5, 153:2, 153:3
  **acquire** [2] - 154:15,
154:17
  **acquired** [1] - 152:20
  **acquisition** [9] -
123:16, 123:22,
128:17, 138:23,
139:17, 152:14,
152:20, 153:13,
158:10
  **acquisitions** [1] -
159:10
  **act** [1] - 19:10
  **Act** [1] - 41:14
  **acting** [2] - 83:12,
133:7
  **action** [6] - 33:5,
87:3, 87:7, 93:10,
106:2, 155:11
  **actions** [11] - 111:13,
112:1, 112:14,
112:25, 114:14,
115:11, 116:12,
118:8, 119:10, 121:3,
121:18
  **activation** [1] - 139:3
  **actively** [1] - 117:4
  **actual** [17] - 18:4,
18:9, 21:14, 21:17,
22:3, 29:13, 33:17,
35:19, 51:24, 65:17,
68:24, 69:2, 73:17,
139:4, 140:24, 154:20

  **ad** - 117:17
  **add** [1] - 32:22
  **addition** [1] - 32:8
  **additional** [3] -
12:23, 66:11, 99:11
  **address** [13] - 71:25,
131:20, 132:2,
135:13, 155:20,
156:10, 158:6, 158:7,
158:17, 165:7,
163:13, 171:14,
171:16
  **addressed** [2] - 83:4,
103:17, 122:3
  **admissible** [1] -
164:21
  **admissions** [1] -
167:2
  **admitted** [1] - 149:11
  **Adobe** [2] - 40:24
  **advance** [1] - 103:12
  **advising** [1] - 53:2
  **advocate** [1] - 50:7
  **AEO** [1] - 170:1
  **affidavit** [18] - 9:10,
9:11, 9:25, 10:1,
10:15, 11:7, 11:11,
11:17, 11:18, 12:3,
18:15, 18:17, 70:6,
70:7, 72:22, 146:1,
146:23
  **affidavits** [1] - 138:4
  **affirmatively** [7] -
17:21, 18:13, 18:23,
19:14, 73:25, 85:17,
86:11
  **afternoon** [1] - 163:3
  **age** [1] - 134:16
  **agent** [1] - 92:16
  **aggressor** [1] -
52:20
  **ago** [6] - 24:13,
25:12, 29:15, 101:23,
117:21, 155:3
  **agree** [31] - 22:24,
39:13, 39:19, 43:25,
45:10, 47:17, 53:14,
54:7, 60:2, 63:6,
65:19, 87:5, 87:10,
87:14, 88:22, 89:4,
96:9, 98:1, 99:7, 99:8,
100:1, 100:5, 115:16,
116:1, 120:21,
134:25, 148:19,
155:14, 164:17,
165:13, 171:1
  **agreed** [19] - 7:22,
23:2, 23:15, 23:16,
28:15, 31:18, 78:9,
80:18, 82:21, 84:15,

84:17, 85:8, 87:8,
87:15, 87:23, 100:20,
112:13, 125:19,
166:10
  **agreeing** [3] - 38:23,
115:9, 134:23
  **agreement** [31] -
29:6, 36:14, 37:4,
74:16, 80:21, 84:10,
88:17, 88:22, 91:20,
93:20, 101:18,
102:16, 108:4, 108:8,
112:18, 112:21,
114:5, 115:3, 115:5,
115:21, 115:22,
116:8, 116:9, 122:1,
122:2, 141:20
  **agreements** [15] -
42:11, 91:10, 91:19,
91:23, 92:1, 92:12,
92:19, 94:11, 94:17,
97:12, 107:16, 108:7,
108:17, 115:22
  **ahead** [6] - 76:4,
89:12, 142:17, 150:8,
167:14, 167:24
  **ahold** [1] - 162:25
  **air** [1] - 37:9
  **akin** [1] - 35:25
  **Alana** [1] - 18:3
  **allegation** [2] -
56:21, 62:25
  **allegations** [3] -
54:5, 55:11, 57:15
  **allege** [1] - 51:4
  **alleged** [1] - 50:23
  **allegedly** [8] - 62:13,
62:21, 111:15, 113:1,
115:12, 121:19,
123:6, 123:17
  **alleges** [4] - 35:12,
35:13, 41:14, 123:24
  **alleging** [1] - 67:11
  **allow** [11] - 59:2,
131:2, 154:23,
157:15, 157:16,
162:14, 164:18,
165:13, 169:10,
171:23, 172:6
  **allowed** [4] - 66:22,
71:8, 117:13, 169:18
  **allows** [2] - 62:21,
63:16
  **almost** [4] - 55:4,
57:21, 105:6, 132:11
  **altogether** [1] -
27:17
  **Amanda** [2] - 9:20,
9:22
  **amend** [2] - 72:14,

76:14
  **amended** [5] - 4:10,
4:17, 25:4, 40:10,
90:25
  **amount** [3] - 36:6,
76:10, 128:25
  **analogy** [1] - 67:20
  **analyses** [1] - 88:3
  **analysis** [3] - 15:17,
35:18, 77:14
  **Andrews** [1] -
124:14, 127:14,
129:7, 141:4, 141:7,
143:2, 143:8, 143:9,
145:16, 146:21,
159:18, 159:25,
161:18
  **Android** [22] - 26:8,
46:15, 48:23, 57:8,
58:24, 58:25, 59:1,
59:2, 59:4, 60:9, 61:7,
63:1, 63:4, 63:9, 64:3,
64:5, 66:13, 66:15,
71:14, 71:15, 92:6
  **Angeles** [1] - 1:16
  **answer** [19] - 5:17,
10:24, 18:21, 18:24,
39:24, 39:25, 40:2,
40:9, 41:3, 41:19,
43:6, 43:20, 56:11,
56:15, 64:14, 112:13,
115:24, 142:13,
145:22
  **answered** [1] - 77:23
  **answers** [4] - 53:11,
55:12, 133:4, 136:3
  **anticipated** [1] -
150:20
  **anticipation** [1] -
87:4
  **anyway** [2] - 120:14,
129:18
  **apart** [1] - 153:13
  **apex** [12] - 122:17,
122:22, 123:3,
123:11, 127:6, 130:7,
136:16, 144:23,
152:16, 154:14,
157:22, 163:10
  **apologies** [5] - 12:9,
12:18, 54:3, 126:4,
146:7
  **apologize** [1] - 86:20
  **app** [8] - 58:20,
58:24, 58:25, 60:9,
139:7, 139:8, 140:7,
140:8
  **appear** [3] - 134:18,
171:22, 172:3
  **appearance** [1] -

171:23
  **APPEARANCES** [2] -
1:12, 2:1
  **appearances** [1] -
3:3
  **appeared** [1] - 29:23
  **Apple** [285] - 3:2, 3:7,
4:16, 4:21, 5:5, 6:7,
6:9, 6:22, 7:11, 8:10,
11:2, 14:16, 14:21,
16:11, 16:18, 17:19,
18:3, 18:20, 18:22,
19:16, 22:23, 23:3,
23:18, 23:21, 24:2,
24:8, 24:14, 24:19,
24:21, 25:2, 25:15,
26:11, 27:11, 27:21,
28:2, 28:10, 28:17,
28:20, 29:8, 29:16,
30:7, 30:11, 30:14,
30:22, 30:25, 31:15,
31:19, 32:2, 32:15,
34:9, 34:14, 34:15,
35:1, 35:9, 35:12,
36:15, 37:5, 38:6,
39:10, 39:11, 39:17,
40:15, 40:19, 41:11,
41:14, 42:3, 43:21,
43:22, 44:25, 46:6,
46:8, 46:9, 46:18,
47:22, 48:8, 48:9,
49:13, 49:16, 50:2,
50:14, 51:1, 51:6,
52:7, 54:8, 54:19,
54:20, 55:12, 55:21,
57:17, 58:7, 58:11,
58:17, 59:5, 59:10,
60:13, 61:9, 62:22,
64:3, 64:6, 64:9,
64:21, 64:25, 65:10,
65:21, 66:1, 66:3,
66:5, 66:13, 66:14,
66:20, 66:23, 68:20,
69:15, 69:17, 69:20,
70:5, 70:13, 70:25,
72:9, 72:19, 72:20,
76:13, 76:21, 77:6,
77:14, 77:25, 78:7,
78:15, 78:16, 78:17,
79:4, 79:5, 79:7,
79:10, 79:12, 80:11,
80:13, 81:5, 81:21,
82:12, 83:14, 83:16,
83:24, 84:6, 84:11,
84:16, 84:18, 84:24,
85:11, 85:20, 85:24,
86:4, 86:8, 87:3, 87:6,
87:16, 87:24, 88:21,
89:5, 91:12, 92:3,
92:6, 92:17, 92:20,
96:12, 97:5, 97:9,

97:10, 97:14, 97:16, 97:19, 97:22, 99:2, 99:16, 102:8, 102:11, 102:12, 105:21, 105:24, 106:10, 106:12, 106:18, 107:2, 107:9, 107:24, 108:13, 108:14, 108:17, 109:5, 111:14, 111:16, 111:17, 111:21, 112:4, 112:17, 112:25, 113:3, 113:5, 113:7, 113:15, 113:21, 114:15, 114:19, 115:12, 115:14, 115:15, 116:1, 116:15, 116:20, 117:2, 117:3, 117:11, 118:1, 118:2, 118:11, 119:11, 120:22, 121:21, 121:22, 121:23, 122:21, 123:1, 123:8, 123:11, 123:16, 123:23, 124:7, 124:10, 125:17, 125:24, 126:3, 126:5, 126:10, 127:16, 127:24, 128:5, 128:17, 128:18, 129:16, 132:9, 132:24, 135:8, 136:1, 136:5, 137:1, 138:13, 139:1, 142:24, 143:21, 145:11, 145:20, 145:24, 149:2, 149:5, 149:10, 150:21, 151:19, 152:20, 153:4, 153:8, 153:9, 154:5, 154:16, 156:21, 157:7, 159:1, 159:3, 164:13, 165:9, 165:11, 168:7, 169:7, 169:19, 169:20, 169:24, 169:25, 170:1, 170:24

**APPLE** [1] - 1:4
**Apple's** [87] - 4:5, 4:22, 9:4, 17:25, 19:6, 22:17, 22:19, 22:20, 28:15, 28:16, 30:5, 35:5, 36:15, 37:4, 37:24, 38:1, 38:3, 39:18, 40:10, 40:13, 40:16, 40:22, 41:4, 41:10, 41:12, 41:17, 42:1, 50:17, 52:7, 53:10, 54:5, 54:23, 55:4, 55:5, 57:15, 58:4, 64:20, 69:4,

69:15, 70:3, 72:16, 72:22, 78:12, 88:20, 110:8, 110:13, 110:16, 111:14, 112:25, 113:4, 114:22, 114:24, 115:19, 115:23, 116:3, 116:6, 116:21, 117:1, 118:13, 121:12, 121:24, 123:5, 123:6, 123:9, 123:10, 126:12, 133:13, 136:10, 139:12, 147:2, 152:6, 152:22, 153:5, 156:7, 157:17, 157:21, 158:23, 161:10, 165:4, 166:5, 168:3, 168:12, 169:1, 171:11, 172:5
**application** [1] - 15:9
**applications** [1] - 123:9
**applies** [3] - 19:18, 159:11, 171:25
**apply** [2] - 131:6, 138:13
**appreciate** [1] - 76:8
**approach** [1] - 38:9
**appropriate** [6] - 5:23, 121:15, 145:25, 156:11, 167:8, 171:14
**approval** [1] - 152:13
**approved** [2] - 140:9, 169:7
**apps** [3] - 140:2, 140:10, 140:16
**April** [22] - 44:22, 102:2, 125:13, 125:14, 126:1, 126:19, 136:2, 146:9, 155:14, 155:21, 155:25, 160:3, 160:5, 160:11, 160:12, 160:16, 161:7, 162:2, 162:4
**architecture** [1] - 125:7
**area** [3] - 11:23, 136:12, 164:25
**areas** [5] - 155:17, 155:18, 156:11, 157:15, 157:16
**argue** [13] - 9:8, 36:8, 90:18, 90:19, 102:25, 117:21, 127:20, 150:13, 154:17, 156:7, 165:20, 170:3, 172:5
**argues** [2] - 123:15,

165:11
**arguing** [5] - 66:17, 66:18, 96:9, 119:21, 168:7
**argument** [27] - 9:4, 10:4, 11:8, 11:19, 31:15, 31:16, 34:7, 44:10, 58:3, 64:23, 92:24, 93:6, 117:2, 120:7, 124:5, 142:19, 143:13, 150:1, 154:9, 157:18, 158:12, 158:23, 161:22, 170:12, 170:20, 171:24
**arguments** [6] - 53:4, 53:12, 94:7, 101:4, 128:21, 165:15
**arrangement** [1] - 102:20
**arrived** [1] - 29:6
**articulate** [2] - 43:20, 54:3
**articulated** [1] - 43:5
**aside** [3] - 34:6, 125:25, 157:13
**aspect** [22] - 3:19, 11:10, 17:23, 29:12, 29:13, 40:22, 44:4, 46:16, 46:18, 47:10, 49:18, 52:18, 54:15, 56:25, 59:6, 60:19, 63:6, 68:1, 68:4, 149:3, 149:4, 149:6
**aspects** [15] - 12:9, 44:16, 46:24, 47:10, 47:16, 52:17, 59:9, 60:21, 60:22, 61:13, 61:20, 61:23, 89:1, 94:6, 152:9
**assert** [1] - 67:2
**assets** [1] - 144:2
**assist** [1] - 12:21
**assistance** [2] - 53:19, 132:8
**assisted** [1] - 145:22
**assists** [1] - 47:8
**associated** [2] - 50:9, 77:14
**associates** [1] - 131:25
**AT&T** [1] - 139:11
**attached** [3] - 138:3, 138:8, 142:5
**attachments** [2] - 122:23, 122:25
**attempted** [2] - 16:24, 127:1
**attempting** [1] - 108:12

**attempts** [1] - 115:23
**attend** [3] - 148:10, 156:15, 171:19
**attended** [4] - 135:15, 138:6, 151:17, 153:24
**attention** [3] - 26:5, 38:2, 66:15
**attorney** [2] - 10:2, 88:7
**attorney-client** [1] - 88:7
**atypical** [1] - 108:20
**AUDIO** [1] - 1:11
**audio** [2] - 75:18, 166:18
**August** [1] - 4:19
**authority** [1] - 154:15
**authorizes** [1] - 100:25
**automated** [1] - 31:3
**availability** [1] - 154:8
**available** [4] - 5:12, 26:17, 29:25, 36:23
**Avenue** [1] - 1:22
**aware** [4] - 4:15, 6:3, 6:4, 6:17, 20:24, 50:2, 72:1, 108:24, 112:16, 143:9
**awful** [1] - 162:23
**Azimuth** [27] - 91:10, 91:12, 91:24, 92:1, 92:16, 92:20, 92:25, 93:1, 93:23, 93:25, 94:2, 99:15, 99:22, 99:25, 100:9, 100:19, 100:22, 100:25, 101:7, 101:11, 102:17, 102:21, 102:24, 103:3, 103:4, 104:23
**azimuth** [1] - 91:15
**Azimuth's** [3] - 92:25, 102:17, 102:18

**B**

**background** [3] - 126:16, 128:13, 152:5
**backs** [1] - 134:3
**backwards** [1] - 79:1
**bad** [5] - 42:3, 133:7, 134:5, 137:15, 140:22
**balancing** [2] - 131:6, 135:4
**ball** [2] - 94:19, 162:20

**bar** [3] - 31:6, 126:13, 139:2
**barring** [1] - 122:22
**based** [33] - 4:8, 19:16, 24:11, 24:14, 24:18, 24:20, 25:7, 25:15, 25:17, 25:19, 27:4, 27:14, 45:4, 45:21, 47:5, 48:18, 49:10, 55:19, 62:10, 69:23, 72:13, 73:24, 74:2, 74:6, 76:20, 77:24, 81:18, 82:1, 84:16, 85:10, 87:23, 105:18, 120:12
**basis** [5] - 17:17, 22:4, 38:5, 51:21, 169:16
**Bates** [4] - 7:19, 8:1, 8:4, 8:6
**Bates-stamping** [1] - 8:1
**battery** [1] - 139:9
**BEACH** [1] - 1:2
**Beach** [3] - 1:4, 1:23, 12:5
**bearing** [3] - 15:17, 50:22, 130:18
**bears** [2] - 108:4, 108:10
**became** [3] - 29:15, 126:21, 127:4
**become** [1] - 132:5
**becomes** [2] - 45:23, 164:5
**BEFORE** [1] - 1:10
**begin** [2] - 90:24, 130:22
**begun** [1] - 150:22
**behalf** [5] - 3:7, 3:12, 18:3, 83:12, 138:22
**behavior** [1] - 153:5
**behind** [3] - 17:8, 135:5, 145:2
**belabor** [2] - 148:2, 150:18
**believes** [1] - 127:6
**below** [1] - 4:18
**beneficial** [1] - 42:2
**benefit** [1] - 11:1
**benefits** [3] - 40:14, 41:7, 41:11
**Berger** [1] - 3:12
**BERGER** [1] - 2:2
**best** [3] - 72:8, 141:8, 150:7
**better** [6] - 8:23, 43:6, 51:6, 76:7, 127:9, 156:4
**between** [27] - 27:3,

74:3, 86:25, 91:10, 91:11, 91:23, 92:1, 92:16, 92:19, 102:17, 102:21, 129:22, 130:6, 134:8, 136:12, 141:21, 153:17, 154:4, 155:14, 155:21, 156:4, 160:5, 160:16, 160:17, 162:3, 163:5, 163:16
**Betz** [2] - 126:5, 146:22
**BETZ** [1] - 126:5
**beyond** [2] - 71:2, 133:5
**biased** [1] - 50:7
**bicker** [1] - 3:18
**big** [2] - 100:6, 100:10
**BINA** [208] - 1:14, 3:5, 4:23, 7:21, 16:21, 20:11, 20:14, 21:3, 21:9, 21:13, 21:19, 21:25, 22:2, 22:6, 22:25, 23:24, 24:1, 24:20, 24:23, 25:21, 26:14, 27:8, 28:12, 28:23, 32:23, 36:20, 38:18, 39:1, 39:6, 39:14, 39:20, 42:6, 42:17, 47:21, 48:21, 55:6, 56:3, 63:21, 64:1, 64:5, 65:3, 65:11, 65:23, 66:2, 66:9, 70:16, 70:18, 70:21, 71:9, 71:15, 73:1, 73:6, 73:11, 74:15, 74:19, 75:3, 75:14, 75:25, 76:5, 76:9, 77:11, 77:13, 77:18, 77:22, 78:4, 78:9, 78:21, 78:23, 78:25, 79:3, 79:9, 79:13, 79:16, 79:18, 79:20, 79:23, 80:3, 80:7, 80:17, 80:23, 80:25, 81:4, 81:16, 81:23, 81:25, 82:6, 82:25, 83:6, 83:9, 83:11, 84:2, 84:8, 84:10, 84:15, 84:25, 85:6, 85:10, 85:22, 86:2, 86:6, 86:12, 86:14, 86:17, 86:20, 86:24, 87:15, 87:21, 88:12, 88:16, 89:4, 89:8, 89:12, 89:20, 90:6, 90:11, 90:16, 90:20, 90:23, 91:3, 91:5, 91:7, 91:9, 92:2,

92:21, 92:23, 93:5, 96:1, 96:18, 97:8, 97:12, 98:9, 99:10, 100:3, 100:13, 100:21, 101:8, 101:13, 101:16, 102:5, 102:15, 103:2, 103:10, 103:18, 103:23, 104:2, 104:8, 104:15, 104:18, 104:22, 104:25, 105:4, 105:8, 105:18, 106:7, 106:11, 107:14, 107:19, 108:12, 108:18, 110:4, 110:6, 110:10, 112:11, 112:21, 113:24, 114:17, 114:21, 114:23, 115:1, 116:16, 117:9, 118:20, 118:24, 119:20, 119:23, 122:9, 124:7, 124:12, 125:18, 126:2, 126:11, 126:15, 150:5, 150:9, 157:2, 160:18, 160:21, 161:14, 161:16, 162:9, 163:3, 163:9, 163:21, 163:24, 164:3, 164:9, 164:25, 165:18, 165:24, 166:1, 166:8, 168:9, 168:22, 169:21, 170:25, 171:17, 172:8, 172:17
**Bina** [23] - 3:6, 6:7, 23:25, 32:22, 38:17, 43:25, 47:19, 56:6, 63:19, 70:17, 73:4, 74:14, 93:16, 112:10, 119:19, 126:14, 129:24, 147:9, 150:4, 158:9, 162:25, 168:13, 168:21
**Bina's** [1] - 127:23
**bit** [10] - 23:13, 26:4, 26:12, 30:8, 43:6, 128:24, 133:5, 147:10, 157:24, 164:6
**black** [2] - 139:1
**blank** [2] - 25:3, 150:18
**blown** [1] - 141:24
**boil** [2] - 97:23, 97:25
**bolts** [1] - 37:12
**bother** [2] - 131:9, 131:16
**bought** [3] - 139:25,

140:11, 140:15
**Boulevard** [2] - 1:15, 2:3
**bounty** [8] - 4:21, 5:6, 6:7, 6:9, 7:11, 114:1, 114:7, 115:5
**box** [2] - 31:6, 32:8
**Boynton** [1] - 12:5
**brand** [1] - 26:12
**brand-new** [1] - 26:12
**bread** [1] - 50:11
**breadth** [2] - 148:15, 148:18
**break** [6] - 74:9, 75:13, 165:3, 165:16, 166:12
**breaking** [1] - 114:12
**breakthrough** [1] - 64:16
**brief** [6] - 37:17, 144:3, 148:2, 158:22, 171:6, 171:17
**briefed** [3] - 94:20, 103:12, 159:2
**briefing** [4] - 4:2, 103:12, 103:15, 103:19
**briefings** [1] - 130:14
**briefly** [6] - 20:11, 29:11, 93:14, 102:15, 150:17, 172:5
**brilliant** [1] - 138:20
**bring** [4] - 47:22, 83:3, 94:22, 143:20
**bringing** [1] - 30:9
**broad** [4] - 55:4, 94:5, 114:10, 137:20
**broader** [2] - 23:13
**broadly** [1] - 89:6
**broken** [1] - 33:17
**brought** [4] - 26:4, 33:3, 38:2, 101:21
**bug** [7] - 4:21, 5:5, 6:7, 6:9, 7:11, 35:16, 115:5
**bugs** [18] - 4:13, 4:16, 5:1, 5:5, 5:10, 6:18, 6:21, 6:24, 7:3, 7:10, 14:16, 30:6, 52:23, 53:3, 53:6, 58:6, 59:12
**build** [1] - 68:9
**building** [3] - 30:15, 36:1, 36:4
**bullet** [1] - 141:15
**bunch** [2] - 29:17, 142:24
**burden** [6] - 9:8, 14:15, 17:3, 35:18,

117:7, 159:18
**burdensome** [8] - 9:19, 10:4, 10:5, 11:14, 14:20, 15:8, 113:17, 114:23
**business** [24] - 26:20, 31:10, 34:3, 34:6, 34:8, 34:21, 34:22, 79:25, 82:12, 89:5, 96:20, 99:10, 101:17, 102:20, 103:24, 105:14, 105:23, 106:5, 106:17, 106:21, 106:22, 107:3, 117:19, 120:12
**businesses** [1] - 117:21
**busy** [2] - 157:5, 159:6
**butter** [1] - 50:12
**buy** [5] - 42:9, 52:8, 52:22, 61:9
**buys** [2] - 59:11, 61:3
**BY** [1] - 2:5
**bypass** [11] - 111:15, 112:6, 112:16, 113:1, 113:4, 115:13, 115:17, 115:23, 116:2, 121:5, 121:19
**bypassing** [12] - 111:15, 111:22, 112:2, 112:16, 113:1, 113:22, 115:13, 115:23, 116:12, 117:4, 121:20, 122:2

# C

**calendar** [2] - 150:13, 152:2
**California** [18] - 1:16, 131:15, 135:9, 159:17, 159:18, 159:19, 159:20, 159:24, 160:2, 161:1, 161:2, 161:7, 161:21, 161:22, 164:12
**camera** [2] - 109:9, 109:18
**canceled** [2] - 134:1
**cancellation** [1] - 134:11
**candidly** [7] - 15:10, 30:23, 52:20, 129:8, 132:7, 133:10, 146:12
**cannot** [9] - 3:20, 15:1, 25:19, 28:20,

52:21, 100:5, 101:3, 117:11, 171:19
**cap** [1] - 137:5
**capture** [1] - 15:5
**care** [8] - 19:1, 19:2, 105:6, 110:7, 122:11, 163:10, 166:15, 171:15
**careful** [5] - 43:4, 43:20, 54:4, 54:6, 54:12
**carefully** [2] - 55:6, 103:8
**CAROLA** [1] - 1:21
**case** [81] - 3:17, 3:18, 3:19, 3:25, 6:2, 10:13, 10:15, 11:22, 12:6, 12:8, 12:21, 15:12, 15:18, 17:9, 19:17, 29:24, 33:22, 33:25, 34:19, 35:11, 36:6, 38:11, 41:9, 42:5, 42:16, 43:23, 44:15, 46:22, 53:14, 53:15, 53:24, 53:25, 55:11, 56:21, 61:19, 63:5, 65:21, 67:2, 78:2, 87:12, 88:4, 89:2, 92:13, 93:8, 97:22, 102:14, 105:25, 106:21, 108:20, 113:15, 113:20, 117:24, 119:15, 123:4, 124:5, 131:9, 131:17, 135:24, 136:9, 137:1, 137:4, 144:16, 145:13, 147:1, 147:6, 147:12, 151:13, 152:18, 152:19, 153:12, 153:18, 154:21, 155:8, 157:1, 157:20, 158:10, 158:11, 162:7, 162:15, 169:2, 169:9
**Case** [1] - 3:1
**CASE** [1] - 1:2
**cases** [2] - 137:13, 172:1
**catching** [1] - 82:20
**categories** [1] - 76:19
**category** [2] - 87:17, 96:5
**causing** [1] - 30:1
**caution** [1] - 144:22
**central** [1] - 91:21
**CEO** [4] - 123:10, 130:15, 136:16, 136:18

**certain** [15] - 8:24, 36:8, 49:17, 50:12, 60:21, 61:13, 113:25, 114:5, 114:6, 119:21, 119:25, 157:15, 157:19, 170:13, 171:7
**certainly** [6] - 39:18, 83:20, 98:13, 136:22, 162:21, 172:6
**certify** [1] - 173:3
**cetera** [5] - 58:6, 59:13, 60:15, 66:13, 166:24
**challenge** [1] - 154:9
**chance** [7] - 11:13, 72:17, 72:19, 102:25, 103:8, 103:13, 156:6
**change** [16] - 25:6, 25:20, 27:3, 28:19, 28:24, 31:9, 33:6, 36:9, 37:7, 51:11, 116:25, 128:24, 143:15, 144:6, 145:1
**changed** [9] - 24:11, 25:1, 26:4, 30:7, 34:21, 34:22, 35:10, 35:14, 36:4
**changing** [2] - 36:2, 77:25
**characterizations** [1] - 124:1
**charge** [1] - 123:16
**check** [5] - 27:15, 68:18, 73:8, 80:19, 82:8
**checking** [2] - 17:20, 18:4
**chief** [1] - 165:9
**choice** [1] - 24:15
**choose** [1] - 24:16
**chooses** [1] - 117:12
**chose** [1] - 62:12
**Chris** [10] - 126:5, 133:10, 138:4, 138:15, 138:18, 138:21, 142:23, 143:19, 146:22, 165:9
**circumvented** [1] - 113:19
**circumvents** [1] - 152:23
**cited** [1] - 6:10
**civil** [1] - 133:5
**Civil** [1] - 8:21
**claim** [6] - 41:11, 42:20, 58:3, 58:5, 111:21, 119:18
**claiming** [4] - 36:2, 42:19, 42:23, 139:18
**claims** [10] - 19:16,

53:16, 55:12, 119:6, 148:23, 152:18, 153:12, 153:18, 155:10
**clarification** [1] - 95:18
**clarified** [1] - 77:15
**clarify** [7] - 22:10, 74:3, 97:4, 97:8, 100:21, 117:25, 129:24
**clarifying** [1] - 70:18
**clarity** [4] - 14:6, 45:8, 116:24, 118:20
**clear** [15] - 26:3, 40:17, 41:22, 52:17, 54:15, 59:21, 62:7, 62:8, 84:21, 84:25, 90:25, 118:19, 126:16, 164:10, 168:19
**clearly** [9] - 67:6, 105:24, 127:3, 142:6, 143:7, 143:9, 144:4, 149:16
**CLERK** [1] - 20:3
**click** [2] - 24:16, 120:4
**client** [20] - 15:15, 16:11, 18:9, 30:14, 43:12, 51:19, 57:6, 58:20, 58:21, 58:24, 58:25, 59:4, 59:20, 88:7, 95:1, 137:7, 137:17, 147:17, 148:25, 154:8
**client's** [1] - 151:14
**clients** [1] - 12:10, 51:20, 51:23, 73:17
**clip** [1] - 32:11
**clock** [2] - 12:21, 65:13
**close** [4] - 80:21, 141:12, 146:10, 146:13
**closer** [1] - 13:17
**closes** [1] - 44:22
**cloud** [14] - 24:11, 24:14, 24:18, 24:20, 24:25, 25:15, 25:17, 25:19, 27:4, 48:9, 139:6, 139:14
**Cloud** [7] - 138:19, 138:20, 138:24, 139:12, 139:20, 151:19, 152:7
**cloud-based** [8] - 24:11, 24:14, 24:18, 24:20, 25:15, 25:17, 25:19, 27:4

**co** [2] - 33:3, 67:19
**co-counsel** [2] - 33:3, 67:19
**code** [59] - 26:4, 26:12, 26:16, 26:18, 26:21, 27:5, 27:9, 31:24, 31:25, 32:13, 32:14, 32:25, 33:4, 35:19, 37:12, 37:18, 38:13, 38:19, 44:2, 51:15, 51:16, 52:2, 52:3, 52:4, 52:7, 61:24, 62:1, 62:4, 65:7, 65:17, 65:18, 66:19, 66:25, 67:14, 67:16, 67:17, 68:5, 68:6, 68:7, 68:13, 68:14, 68:25, 69:1, 69:4, 69:5, 70:22, 92:10, 97:24, 98:3, 98:8, 98:21, 99:3, 99:18, 102:10, 108:24
**coding** [1] - 139:12
**coherent** [1] - 122:7
**Cole** [1] - 3:11
**COLE** [1] - 1:21
**colleague** [1] - 171:20
**coming** [3] - 69:13, 132:17, 160:16
**comment** [1] - 33:2
**commercial** [1] - 140:14
**commercially** [2] - 83:14, 84:3
**common** [2] - 84:3, 88:6
**common-interest** [1] - 88:6
**common-law** [1] - 84:3
**commonly** [1] - 57:16
**communication** [3] - 78:11, 98:17
**communications** [25] - 71:2, 71:14, 71:20, 71:24, 73:17, 74:3, 78:11, 85:13, 85:15, 86:7, 86:10, 86:25, 87:10, 87:19, 88:2, 91:11, 91:20, 92:5, 92:15, 94:12, 96:3, 96:6, 96:14, 129:6, 129:13
**companies** [2] - 113:22, 151:24
**company** [16] - 12:2, 12:4, 12:6, 12:7, 12:23, 12:25, 13:3,

13:7, 13:12, 16:8, 17:13, 26:8, 44:17, 49:14, 155:6
**company's** [1] - 15:11
**comparing** [1] - 32:4
**compatible** [3] - 46:10, 46:17, 59:3
**compel** [11] - 4:5, 20:18, 22:18, 110:8, 110:12, 110:16, 122:12, 132:21, 134:19, 137:14, 167:1
**complaint** [6] - 40:10, 44:16, 62:25, 91:21, 133:12, 133:16
**complaint's** [1] - 133:13
**complaints** [1] - 29:17
**complete** [2] - 4:6, 167:6
**completed** [1] - 102:2
**completely** [6] - 10:12, 20:22, 27:2, 42:18, 123:11, 137:12
**complicated** [2] - 60:16, 169:9
**complied** [4] - 63:18, 165:14, 168:8, 170:15
**comply** [2] - 17:7, 170:6
**complying** [1] - 170:8
**components** [2] - 43:14, 54:21
**comprising** [5] - 86:25, 105:13, 106:5, 106:25, 107:7
**computer** [6] - 40:4, 40:23, 41:2, 42:10, 139:9
**conceal** [2] - 107:24, 108:13
**concede** [4] - 54:12, 63:18, 129:14, 153:19
**concept** [2] - 151:18, 151:19
**concern** [5] - 23:11, 34:13, 55:3, 74:19, 101:14
**concerned** [8] - 34:7, 55:8, 67:24, 114:10, 127:4, 131:7, 132:5
**concerning** [1] - 83:11
**concerns** [4] - 23:4, 50:2, 124:23, 150:10
**concise** [1] - 158:22

**concisely** [1] - 159:1
**concluded** [1] - 172:19
**conclusory** [1] - 18:16
**conduct** [2] - 153:4, 153:8
**conducting** [1] - 120:12
**confer** [24] - 5:7, 5:12, 7:4, 16:25, 17:24, 45:14, 80:9, 85:7, 87:25, 88:9, 88:18, 89:19, 89:22, 89:23, 89:25, 90:3, 90:12, 90:17, 110:11, 113:13, 120:18, 126:19, 163:15, 163:17
**conference** [2] - 86:22, 164:13
**conferral** [5] - 7:5, 104:6, 104:8, 104:14, 163:13
**conferred** [1] - 18:2
**confidential** [9] - 4:18, 92:9, 165:8, 165:12, 169:8, 169:10, 169:18, 169:20, 169:25
**confidentiality** [6] - 88:17, 88:22, 107:16, 108:4, 108:8, 108:17
**confidently** [1] - 159:3
**confirm** [6] - 28:1, 76:12, 81:25, 82:22, 83:7, 88:13
**confirmed** [15] - 76:16, 76:20, 77:23, 78:5, 80:4, 80:8, 81:8, 81:13, 81:16, 82:2, 126:18, 151:3, 151:7, 161:14, 161:17
**conflict** [1] - 151:12
**conflicting** [1] - 53:12
**Congress** [1] - 140:9
**connected** [1] - 46:16
**connection** [2] - 77:6, 98:16
**conservative** [1] - 13:15
**consider** [3] - 9:10, 11:17, 94:18
**considerable** [1] - 128:25
**consideration** [2] - 148:12, 150:2

**considered** [3] - 85:2, 129:8, 159:15
**considering** [1] - 136:13
**consistent** [2] - 32:24, 55:11
**Constantine** [16] - 3:11, 73:12, 74:23, 89:15, 97:3, 106:14, 110:17, 110:23, 115:9, 118:25, 120:20, 122:16, 133:23, 134:8, 137:9, 146:13
**CONSTANTINE** [69] - 1:21, 5:22, 6:14, 7:14, 7:16, 8:3, 19:3, 19:5, 19:22, 22:9, 22:12, 73:9, 73:13, 73:16, 73:24, 74:2, 74:6, 74:24, 75:2, 82:24, 83:3, 83:22, 84:1, 84:20, 85:9, 85:14, 85:19, 86:19, 87:8, 89:16, 89:23, 90:1, 90:9, 90:13, 90:15, 90:19, 90:21, 96:23, 97:2, 97:4, 97:7, 98:2, 99:9, 105:9, 105:12, 106:15, 107:11, 110:5, 110:18, 110:22, 110:24, 111:1, 111:5, 111:10, 111:19, 111:21, 115:25, 116:11, 118:5, 119:1, 119:4, 119:6, 119:8, 120:21, 121:6, 121:9, 121:12, 122:10, 122:14
**constantly** [1] - 113:5
**Constellation** [1] - 1:15
**constitute** [1] - 14:8
**constituting** [2] - 91:25, 92:18
**constrained** [3] - 132:5, 132:12, 134:5
**construction** [1] - 36:1
**consulting** [3] - 98:14, 98:15, 169:3
**consuming** [2] - 11:1, 11:3
**CONT'D** [1] - 2:1
**contact** [2] - 127:10, 163:3
**contain** [1] - 92:9
**contained** [2] -

115:2, 116:17
**containing** [2] - 91:25, 92:19
**contention** [1] - 146:14
**context** [10] - 65:8, 87:6, 126:7, 127:24, 129:2, 129:20, 130:21, 142:15, 142:18, 143:12
**continue** [3] - 3:18, 15:12, 143:17
**continuing** [1] - 143:19
**contract** [6] - 99:25, 100:1, 100:13, 100:14, 100:22, 100:25
**contractor** [1] - 94:1
**contracts** [6] - 99:14, 99:15, 99:21, 100:3, 100:8, 100:19
**contribute** [2] - 152:6, 152:8
**contributory** [1] - 89:1
**control** [2] - 53:13, 120:8
**controls** [2] - 120:1, 120:17
**conversation** [3] - 134:7, 141:14, 142:25
**conversations** [2] - 95:1, 130:5
**convince** [1] - 143:23
**Cook** [1] - 123:10
**cooperate** [2] - 3:16, 3:20
**cooperating** [1] - 134:22
**cooperation** [1] - 53:19
**copied** [1] - 54:10
**copy** [8] - 36:24, 42:10, 59:16, 60:12, 67:12, 92:12, 108:9, 109:23
**copying** [9] - 35:12, 35:13, 43:22, 50:23, 52:7, 60:14, 62:21, 63:2, 63:16
**Copyright** [1] - 41:14
**copyright** [10] - 42:4, 51:3, 62:22, 63:2, 87:4, 88:4, 94:6, 102:13, 106:2, 158:11
**copyrighted** [1] - 59:13
**copyrighting** [1] -

57:23
**copyrights** [5] - 34:16, 41:13, 57:15, 58:4, 108:19
**core** [1] - 92:13
**Core** [3] - 124:16, 124:17, 125:13
**CORELLIUM** [1] - 1:7
**Corellium** [332] - 3:2, 3:12, 4:5, 4:14, 4:15, 4:17, 4:19, 5:3, 5:25, 6:6, 6:16, 6:17, 6:18, 6:20, 6:24, 6:25, 7:1, 7:8, 8:10, 8:11, 8:20, 8:23, 9:3, 9:8, 9:9, 10:20, 12:20, 14:3, 14:7, 14:8, 15:23, 16:7, 18:12, 18:20, 18:22, 18:23, 19:12, 19:17, 22:18, 22:23, 23:2, 23:17, 23:21, 24:2, 24:8, 24:14, 24:18, 24:21, 25:14, 25:15, 26:8, 26:9, 26:10, 27:11, 27:21, 28:9, 28:10, 28:14, 28:17, 28:18, 28:20, 28:21, 29:7, 29:8, 29:16, 29:18, 29:24, 30:11, 30:14, 30:25, 31:8, 31:13, 31:19, 31:20, 32:4, 32:14, 32:15, 33:25, 34:14, 35:9, 36:15, 36:16, 37:5, 38:6, 39:10, 39:17, 40:15, 40:19, 41:9, 42:1, 43:14, 44:25, 45:2, 45:4, 45:19, 45:21, 46:3, 46:6, 46:9, 46:17, 46:24, 47:3, 47:5, 48:9, 48:16, 48:18, 48:20, 49:12, 50:11, 51:1, 52:11, 52:16, 54:8, 54:16, 54:19, 54:20, 54:21, 54:24, 55:17, 55:18, 55:21, 56:9, 56:10, 56:13, 56:16, 56:24, 57:3, 57:13, 57:15, 57:17, 58:15, 58:16, 58:19, 58:21, 59:6, 59:9, 59:23, 60:2, 61:4, 61:16, 61:21, 62:9, 62:10, 62:12, 62:20, 65:20, 66:1, 69:15, 69:20, 69:21, 69:23, 70:5, 70:25, 71:18, 72:2, 72:9, 72:11,

72:12, 72:19, 73:17, 74:4, 76:13, 76:21, 77:6, 77:14, 77:25, 78:6, 78:14, 78:16, 79:5, 79:10, 79:12, 80:11, 80:13, 80:17, 81:4, 82:12, 83:12, 83:14, 83:16, 83:24, 84:6, 84:11, 84:15, 84:16, 84:18, 84:24, 85:11, 85:20, 85:24, 86:4, 86:8, 86:25, 87:6, 87:16, 87:24, 88:17, 88:21, 89:5, 91:10, 91:11, 91:12, 91:16, 91:24, 92:1, 92:3, 92:16, 92:17, 92:19, 92:20, 93:1, 93:12, 96:12, 97:5, 97:9, 97:14, 97:16, 97:19, 97:21, 97:23, 97:24, 98:25, 99:2, 99:11, 99:16, 100:18, 100:24, 101:11, 102:8, 102:12, 102:17, 102:21, 104:10, 104:16, 105:15, 105:21, 105:24, 106:9, 106:10, 106:12, 106:18, 106:24, 107:2, 107:9, 107:17, 107:23, 108:4, 108:8, 108:12, 108:24, 110:8, 111:13, 111:14, 111:17, 111:22, 112:15, 113:14, 113:22, 114:14, 114:15, 115:11, 115:12, 117:11, 117:18, 118:8, 121:4, 121:5, 121:19, 122:3, 122:12, 122:24, 123:4, 123:12, 123:15, 123:17, 123:19, 123:20, 123:23, 123:24, 124:10, 126:9, 127:20, 128:16, 128:17, 129:14, 131:8, 131:13, 133:6, 133:10, 135:12, 135:16, 138:13, 138:21, 138:22, 139:13, 139:17, 139:23, 140:13, 140:19, 141:6, 141:8, 142:3, 143:15, 143:20, 148:5, 151:20, 151:21,

152:21, 152:24, 153:4, 154:16, 154:17, 155:8, 156:18, 159:16, 159:21, 165:8, 165:12, 165:13, 167:4, 168:7, 169:20, 171:13, 172:7
**Corellium's** [55] - 6:23, 9:5, 9:13, 9:14, 10:23, 20:14, 22:19, 29:3, 30:6, 40:2, 40:9, 40:12, 41:4, 41:12, 41:17, 53:10, 53:16, 54:18, 55:3, 59:3, 69:5, 72:22, 78:12, 91:15, 91:18, 100:19, 100:22, 101:1, 102:9, 105:14, 106:5, 106:25, 107:7, 110:12, 110:16, 111:13, 112:15, 114:14, 115:11, 117:19, 121:4, 121:19, 123:18, 126:22, 135:6, 139:24, 152:9, 152:12, 152:22, 156:8, 160:15, 165:9, 166:22, 167:1, 169:25
**corner** [1] - 137:11
**corporate** [1] - 130:15
**corporation** [1] - 159:4
**correct** [16] - 34:11, 39:13, 41:25, 43:18, 66:4, 74:1, 84:20, 90:15, 92:21, 97:5, 97:14, 105:9, 111:8, 111:10, 111:19, 151:4
**correctly** [1] - 29:19
**correspondence** [6] - 93:24, 94:8, 96:16, 96:17, 98:4, 98:6
**correspondences** [1] - 13:8
**corresponding** [1] - 10:25
**cost** [1] - 161:23
**costs** [1] - 139:15
**counsel** [31] - 4:22, 9:14, 16:5, 16:18, 16:22, 17:19, 18:3, 19:10, 21:11, 29:4, 30:5, 33:3, 41:3, 53:19, 53:25, 62:7, 66:23, 67:19, 74:9, 88:8, 94:8, 98:1, 109:24, 109:25,

112:10, 126:22,
132:8, 160:15,
162:25, 163:5
**count** [1] - 73:11
**counterclaims** [2] -
40:10, 55:12
**country** [1] - 160:8
**couple** [11] - 24:10,
26:5, 29:14, 37:17,
63:21, 64:2, 66:11,
124:2, 129:10,
142:14, 158:4
**courier** [1] - 109:23
**course** [11] - 7:5,
12:25, 26:19, 31:10,
34:8, 34:21, 34:22,
99:17, 109:24, 113:4,
117:13
**Court** [42] - 3:16,
3:21, 5:24, 8:14, 8:21,
14:14, 14:16, 14:20,
22:14, 23:20, 27:21,
29:12, 38:9, 48:15,
70:12, 73:21, 76:13,
76:21, 77:19, 78:15,
78:16, 79:6, 79:13,
82:17, 87:12, 99:3,
126:21, 132:17,
134:21, 135:4,
136:13, 144:22,
145:12, 146:11,
146:18, 148:11,
148:19, 156:15,
156:16, 164:6, 167:7
**court** [3] - 7:8,
118:18, 172:4
**COURT** [417] - 1:1,
3:3, 3:8, 3:14, 5:19,
6:13, 6:15, 7:15, 7:17,
7:25, 8:5, 9:17, 9:22,
9:24, 10:9, 10:11,
11:13, 12:12, 12:14,
13:3, 13:6, 13:18,
13:22, 13:25, 14:10,
14:23, 15:19, 15:21,
16:2, 16:13, 16:18,
17:18, 18:10, 19:1,
19:4, 19:8, 20:2, 20:4,
20:6, 20:9, 20:13,
21:1, 21:7, 21:11,
21:17, 21:20, 22:1,
22:3, 22:7, 22:11,
22:15, 23:14, 23:25,
24:18, 24:22, 25:13,
27:7, 28:6, 28:13,
29:3, 31:14, 32:1,
32:14, 32:18, 32:21,
33:9, 33:13, 33:21,
33:24, 34:4, 35:21,
36:5, 36:13, 36:18,

37:1, 37:23, 38:1,
38:10, 38:15, 38:23,
39:4, 39:7, 39:17,
39:22, 39:24, 40:2,
40:5, 40:8, 41:1, 41:3,
42:13, 43:2, 43:9,
43:13, 43:17, 44:20,
45:9, 46:1, 46:19,
47:2, 47:19, 48:14,
49:5, 51:1, 52:10,
52:13, 52:25, 53:2,
53:9, 54:17, 55:8,
55:15, 56:5, 56:11,
56:19, 57:4, 57:14,
57:20, 58:12, 58:15,
58:17, 59:10, 59:22,
59:25, 60:2, 60:5,
60:9, 60:12, 60:25,
62:3, 62:6, 62:17,
63:4, 63:8, 63:15,
63:19, 63:25, 64:4,
64:25, 65:9, 65:19,
65:25, 66:3, 67:9,
68:19, 68:23, 69:12,
70:3, 70:17, 70:20,
71:8, 71:10, 71:16,
71:19, 71:23, 72:4,
73:2, 73:10, 73:12,
73:15, 73:22, 73:25,
74:5, 74:8, 74:18,
74:22, 74:25, 75:4,
75:12, 75:16, 75:19,
76:4, 76:7, 77:8,
77:12, 77:17, 77:21,
78:3, 78:8, 78:18,
78:22, 78:24, 79:2,
79:7, 79:11, 79:14,
80:2, 80:6, 80:16,
80:22, 80:24, 81:3,
81:12, 81:21, 81:24,
82:5, 83:2, 83:10,
85:4, 86:1, 86:3, 86:9,
86:13, 86:16, 86:23,
87:14, 87:19, 88:11,
88:15, 89:3, 89:7,
89:11, 89:14, 89:17,
89:21, 89:25, 90:2,
90:7, 90:14, 90:22,
90:25, 91:4, 91:6,
91:8, 91:23, 92:15,
92:22, 93:3, 93:12,
93:24, 94:10, 94:15,
95:9, 95:11, 95:21,
96:8, 96:14, 96:21,
96:24, 97:3, 97:6,
97:11, 97:15, 98:7,
98:19, 98:24, 99:24,
100:7, 100:11,
100:16, 100:18,
100:24, 101:6, 101:9,
101:15, 101:19,

102:7, 102:24, 103:7,
103:11, 103:22,
103:25, 104:4,
104:10, 104:14,
104:16, 104:19,
104:24, 105:2, 105:5,
105:10, 105:13,
106:4, 106:8, 106:13,
106:23, 107:6,
107:12, 107:15,
108:11, 108:16,
108:21, 109:4, 109:8,
109:13, 109:15,
109:17, 109:21,
110:7, 110:15,
110:21, 110:23,
110:25, 111:3, 111:6,
111:11, 111:20,
112:8, 112:20,
113:21, 114:12,
114:19, 114:22,
114:24, 115:8, 116:4,
116:14, 116:19,
118:16, 118:23,
118:25, 119:3, 119:5,
119:7, 119:19,
119:21, 120:19,
121:2, 121:8, 121:11,
121:14, 122:11,
122:16, 124:9,
124:15, 124:19,
124:21, 124:24,
125:1, 125:3, 125:5,
125:8, 125:10,
125:14, 125:24,
126:6, 126:12,
127:19, 127:22,
130:10, 130:24,
132:19, 133:13,
133:16, 133:19,
134:13, 135:3,
135:20, 135:22,
142:8, 142:16,
142:20, 144:19,
145:8, 145:10,
145:17, 146:15,
146:20, 147:9,
148:16, 150:1, 150:4,
150:8, 155:12, 157:6,
158:3, 158:8, 158:16,
160:9, 160:15,
160:19, 160:23,
160:25, 161:5,
161:12, 161:20,
162:3, 162:12,
162:23, 163:5,
163:10, 163:14,
163:23, 164:1, 164:4,
164:10, 164:24,
165:2, 165:21,
165:23, 165:25,

166:3, 166:10,
166:15, 166:19,
167:14, 167:17,
167:20, 167:24,
168:2, 168:12,
168:17, 168:21,
169:19, 170:3, 170:6,
170:12, 170:17,
170:20, 170:23,
171:4, 171:8, 171:23,
172:9, 172:12,
172:14, 172:18
**Court's** [19] - 14:9,
19:19, 22:20, 77:24,
78:6, 80:10, 81:6,
81:10, 85:16, 87:2,
87:22, 99:12, 146:8,
146:11, 146:13,
148:14, 149:3,
158:21, 171:12
**courtesy** [1] - 127:25
**courtroom** [1] - 75:5
**COURTROOM** [3] -
3:1, 75:17, 166:17
**cover** [3] - 99:15,
114:10
**Craig** [16] - 122:18,
123:6, 142:6, 142:7,
142:22, 143:2, 143:5,
143:8, 143:17,
143:20, 143:22,
143:25, 144:5, 144:7,
144:8, 144:11
**Craig's** [2] - 143:15,
144:6
**crashes** [1] - 120:6
**create** [9] - 45:2,
45:20, 46:3, 47:4,
48:16, 55:17, 56:13,
69:21, 72:11
**created** [1] - 151:18
**creates** [2] - 47:7,
56:19
**creating** [1] - 47:8
**creation** [4] - 54:25,
79:4, 79:9, 79:11
**credentials** [3] -
28:16, 30:4, 37:5
**criminal** [1] - 63:3
**CRR** [2] - 2:5, 173:8
**crux** [3] - 41:8,
41:15, 42:5
**crystal** [1] - 162:20
**culture** [1] - 152:6
**Cupertino** [1] -
131:14
**current** [6] - 32:5,
35:4, 49:13, 82:1,
85:17, 169:4
**customer** [38] -

11:20, 11:22, 13:10,
14:2, 15:19, 15:21,
18:13, 20:12, 22:5,
28:17, 28:21, 28:24,
29:8, 31:7, 31:20,
36:16, 37:6, 38:7,
44:12, 59:15, 60:6,
61:3, 66:20, 66:21,
71:7, 85:13, 85:15,
87:1, 88:24, 91:10,
91:15, 92:5, 95:22,
96:6, 99:22
**customer's** [1] -
60:14
**customers** [75] - 9:3,
9:7, 10:20, 11:22,
13:23, 13:25, 14:1,
14:3, 15:4, 15:24,
16:1, 16:14, 18:12,
18:13, 19:13, 20:20,
20:22, 20:25, 21:14,
21:17, 21:20, 21:21,
22:3, 22:12, 29:18,
42:9, 50:17, 51:14,
71:3, 71:13, 71:15,
73:20, 73:22, 73:25,
85:17, 86:7, 86:8,
86:10, 86:11, 87:9,
87:12, 88:2, 95:22,
95:23, 96:3, 96:5,
100:9, 100:14,
102:18, 102:19,
111:14, 111:15,
112:6, 112:15, 113:1,
114:15, 114:22,
114:25, 115:12,
115:19, 116:7,
116:22, 117:3, 121:4,
121:19, 121:24,
138:17, 140:7, 140:15
**customers'** [1] -
115:23
**cut** [3] - 26:1, 87:2,
117:7
**cutoff** [1] - 102:2

# D

**daily** [1] - 113:4
**damages** [3] - 93:19,
94:5, 105:24
**dance** [1] - 170:10
**data** [2] - 139:10,
139:15
**date** [21] - 3:24,
25:22, 102:3, 126:18,
126:23, 128:6,
132:21, 150:13,
151:7, 155:14,
155:21, 156:2,

156:14, 156:24,
158:18, 162:5,
162:11, 163:1, 163:7,
163:13, 164:8
  **DATE** [1] - 173:8
  **dates** [19] - 127:24,
127:25, 128:5,
128:12, 130:5, 132:9,
134:20, 134:22,
134:23, 134:25,
135:1, 150:22,
150:25, 151:3, 154:8,
161:10, 161:13,
161:14, 163:6
  **day's** [1] - 14:17
  **days** [8] - 10:5, 13:2,
22:13, 22:15, 26:5,
29:14, 103:24, 159:25
  **DE** [3] - 22:19, 111:8,
167:2
  **dead** [1] - 138:24
  **deadline** [1] - 163:12
  **deal** [9] - 4:4, 13:10,
22:17, 30:8, 75:8,
75:9, 120:17, 128:17,
143:25
  **dealing** [4] - 75:21,
87:19, 101:21, 129:16
  **deals** [2] - 15:24,
46:20
  **dealt** [6] - 7:19, 15:1,
96:3, 118:24, 130:10,
136:19
  **debated** [1] - 107:20
  **December** [1] -
150:19
  **decide** [9] - 23:20,
37:10, 60:6, 70:9,
72:23, 101:11,
102:25, 150:2, 156:9
  **decided** [4] - 20:9,
42:15, 136:14, 147:14
  **deciding** [4] - 62:18,
135:4, 135:11, 158:17
  **decision** [6] -
109:10, 123:22,
123:24, 143:10,
154:15, 158:1
  **decision-maker** [1] -
123:24
  **decision-making** [3]
- 123:22, 143:10,
154:15
  **decisions** [2] - 53:5,
138:10
  **deck** [9] - 20:17,
127:12, 129:23,
129:25, 130:2, 141:4,
141:5, 149:14, 151:18
  **decks** [1] - 141:1

  **declaration** [13] -
9:20, 12:10, 104:3,
123:13, 127:12,
137:25, 138:16,
142:1, 146:23,
151:11, 151:15,
151:16, 152:1
  **dedicated** [1] - 44:4
  **deem** [1] - 171:14
  **deemed** [2] - 19:24,
49:21
  **defend** [1] - 119:15
  **DEFENDANT** [1] -
1:20
  **defendant** [1] - 1:8
  **Defendant** [7] - 3:9,
77:9, 81:13, 87:14,
106:13, 123:17, 170:4
  **Defendant's** [2] -
88:8, 167:2
  **Defendants** [8] -
76:14, 76:16, 76:20,
77:4, 92:23, 93:10,
125:18, 126:17
  **defense** [6] - 9:5,
64:12, 94:1, 105:25,
108:21, 172:9
  **defenses** [11] - 40:9,
117:8, 117:10,
123:19, 152:18,
152:24, 152:25,
153:12, 153:18,
155:10, 158:13
  **defer** [4] - 77:2,
91:13, 94:7, 101:6
  **define** [3] - 69:20,
148:20, 149:1
  **defined** [10] - 21:15,
27:21, 55:6, 76:13,
78:15, 78:16, 79:6,
79:13, 84:7, 84:11
  **definition** [92] -
22:23, 23:2, 23:6,
23:9, 23:10, 23:13,
23:14, 23:16, 23:17,
23:18, 23:21, 24:2,
24:7, 26:10, 26:11,
39:5, 39:7, 40:18,
41:22, 43:7, 43:12,
43:17, 44:8, 45:1,
45:6, 45:9, 45:10,
45:12, 45:16, 45:24,
46:23, 47:2, 47:5,
47:6, 47:10, 48:14,
48:17, 48:19, 49:4,
49:6, 49:9, 49:13,
50:8, 53:15, 53:22,
54:11, 54:18, 54:19,
54:23, 55:3, 55:4,
55:5, 55:11, 55:16,

55:18, 55:20, 55:23,
55:25, 56:2, 56:12,
57:2, 60:20, 61:15,
61:20, 62:9, 63:13,
63:17, 63:18, 67:10,
67:13, 68:16, 70:10,
70:25, 72:9, 72:12,
72:14, 76:21, 77:24,
78:6, 80:11, 82:19,
84:16, 85:11, 86:4,
87:24, 97:5, 97:16,
97:19, 97:21, 102:7,
152:8
  **definitional** [1] -
44:21
  **degrees** [1] - 154:6
  **delay** [1] - 17:11
  **delayed** [2] - 127:24,
128:5
  **delaying** [1] - 157:1
  **delivered** [1] - 65:12
  **denied** [3] - 9:3, 9:6,
117:20
  **deny** [2] - 18:11,
83:20
  **denying** [3] - 17:17,
107:25, 166:22
  **depo** [8] - 133:21,
144:25, 146:13,
149:4, 150:19, 151:7,
159:23, 163:11
  **depos** [3] - 160:10,
160:17, 161:13
  **depose** [3] - 51:23,
123:5, 142:8
  **deposed** [2] -
144:16, 155:1
  **deposing** [4] -
123:12, 127:9,
127:15, 128:15
  **deposition** [61] -
121:15, 122:5,
122:18, 122:22,
125:15, 126:3, 126:9,
126:13, 126:17,
126:19, 130:16,
131:2, 131:5, 131:11,
132:21, 132:22,
133:8, 133:14,
133:25, 134:17,
135:6, 135:8, 136:11,
136:24, 137:21,
137:22, 137:24,
141:25, 143:18,
144:13, 145:5, 147:3,
147:6, 147:23,
147:24, 148:12,
148:21, 150:7,
152:16, 154:7,
154:24, 155:15,

155:17, 156:8, 156:9,
156:10, 156:20,
156:22, 156:24,
157:12, 157:23,
158:18, 162:14,
162:16, 163:2, 164:8,
164:11, 164:15,
164:18
  **depositions** [19] -
124:5, 124:10,
128:24, 132:6,
144:20, 147:20,
148:20, 149:16,
155:24, 155:25,
156:16, 156:19,
157:25, 158:23,
159:14, 160:21,
161:6, 161:8, 161:16
  **DEPUTY** [3] - 3:1,
75:17, 166:17
  **describe** [3] - 4:12,
4:25, 112:5
  **describing** [6] -
111:12, 112:24,
114:13, 115:10,
121:7, 121:17
  **design** [3] - 27:19,
27:20, 27:22
  **designated** [6] -
24:11, 52:13, 165:5,
168:4, 169:18, 171:12
  **designation** [2] -
25:25, 125:23
  **designees** [1] -
125:19
  **despite** [2] - 127:3,
159:15
  **detail** [1] - 4:12
  **detailed** [1] - 92:11
  **determination** [2] -
58:7, 110:2
  **determine** [9] -
15:14, 23:18, 25:19,
27:2, 51:22, 51:23,
102:13, 152:3, 167:8
  **determined** [1] -
14:17
  **dev** [1] - 79:6
  **dev-fused** [1] - 79:6
  **develop** [1] - 84:3
  **developed** [15] -
4:19, 45:2, 45:19,
46:3, 47:3, 48:15,
54:24, 55:16, 56:12,
57:5, 57:13, 62:20,
69:20, 72:10, 139:13
  **developer** [4] -
115:3, 115:21, 116:8,
122:1
  **developing** [1] -

123:9
  **development** [12] -
28:2, 79:9, 79:11,
82:13, 105:14,
105:22, 106:8,
106:16, 107:1, 107:8,
123:7, 159:5
  **device** [13] - 25:4,
30:17, 30:18, 39:12,
54:25, 55:7, 59:12,
59:17, 60:10, 60:13,
60:14, 60:15, 139:16
  **devices** [27] - 25:3,
39:10, 39:11, 45:3,
45:20, 46:4, 46:21,
47:4, 47:8, 48:2,
48:17, 48:24, 49:3,
55:7, 55:9, 55:18,
56:14, 56:20, 61:1,
62:13, 63:16, 69:22,
72:12, 79:15, 79:22,
113:23, 151:23
  **dictate** [1] - 58:22
  **diesel** [4] - 67:21,
67:22, 67:25, 68:2
  **difference** [3] -
30:12, 117:2
  **differences** [1] - 76:1
  **different** [24] - 5:9,
13:21, 14:23, 15:2,
25:18, 41:20, 42:19,
48:23, 58:23, 59:8,
62:13, 64:2, 74:21,
77:19, 124:1, 133:13,
138:13, 144:10,
144:12, 144:15,
148:23, 149:8, 151:9,
154:13
  **difficult** [3] - 53:25,
54:14, 149:17
  **digging** [6] - 50:19,
50:20
  **digital** [9] - 34:18,
41:14, 42:4, 51:4,
57:16, 57:24, 58:5,
75:18, 166:18
  **DIGITAL** [1] - 1:11
  **Digital** [1] - 41:13
  **diligent** [1] - 95:16
  **direct** [2] - 123:17,
138:2
  **directed** [1] - 167:4
  **direction** [1] - 137:7
  **directly** [9] - 88:22,
88:25, 94:4, 123:10,
130:23, 135:17,
138:9, 138:14
  **director** [2] - 125:9,
131:18
  **directories** [1] - 65:6

**directory** [1] - 65:16
**disagree** [5] - 133:9, 136:7, 136:10, 137:3
**disagreed** [1] - 88:8
**disclose** [3] - 109:6, 169:3, 170:14
**disclosure** [4] - 104:12, 165:5, 168:3, 171:12
**disclosures** [2] - 128:4, 148:7
**discovery** [27] - 3:17, 3:19, 3:22, 4:1, 9:2, 10:18, 10:23, 11:23, 13:7, 14:4, 17:15, 18:17, 29:13, 35:2, 36:7, 44:22, 53:13, 54:23, 93:7, 94:23, 102:1, 102:2, 106:1, 127:7, 132:7, 146:10, 147:1
**discrepancy** [1] - 138:2
**discuss** [8] - 29:11, 75:23, 94:9, 103:15, 109:2, 155:23, 156:10, 157:10
**discussed** [16] - 51:10, 69:16, 79:21, 82:24, 85:12, 86:17, 137:20, 139:23, 140:17, 140:25, 141:17, 141:21, 142:25, 149:13, 149:14, 152:12
**discussing** [5] - 8:25, 97:19, 152:5, 152:9, 171:10
**discussion** [6] - 43:11, 61:22, 139:20, 141:2, 141:16, 148:22
**discussions** [1] - 138:23
**dismissive** [1] - 158:13
**display** [8] - 35:13, 42:10, 47:24, 48:2, 50:23, 54:9, 64:13, 67:11
**displayed** [3] - 43:25, 54:7, 54:8
**disproportional** [2] - 10:12, 10:14
**disproportionate** [1] - 11:5
**dispute** [16] - 12:4, 12:19, 22:23, 23:22, 23:23, 41:15, 80:22, 82:11, 82:16, 92:24, 97:18, 124:4, 155:9,

170:16, 170:23, 171:21
**disputed** [1] - 12:2
**disputes** [4] - 4:1, 90:8, 102:1, 110:12
**disputing** [1] - 42:25
**disregard** [1] - 20:10
**distinct** [3] - 40:13, 41:6, 41:10
**distinction** [1] - 35:23
**distribute** [1] - 83:13
**DISTRICT** [2] - 1:1, 1:1
**DIVISION** [1] - 1:2
**DMCA** [9] - 41:13, 64:22, 119:2, 119:4, 119:5, 119:6, 119:14, 119:21
**Docket** [21] - 4:9, 6:15, 7:11, 8:22, 22:19, 22:20, 22:21, 28:13, 37:3, 39:25, 40:11, 91:1, 105:11, 122:23, 166:6, 166:11, 166:21, 168:4, 168:5, 171:11
**docket** [1] - 167:6
**doctrine** [6] - 123:3, 123:11, 127:7, 136:16, 144:23, 145:3
**document** [3] - 17:8, 112:13, 113:7
**documentation** [2] - 78:10, 114:1
**documents** [53] - 10:24, 17:8, 22:18, 73:16, 74:7, 76:17, 76:22, 77:5, 77:10, 78:11, 81:9, 81:14, 83:11, 84:18, 85:21, 86:24, 87:8, 88:13, 88:16, 91:25, 92:18, 93:2, 93:15, 93:23, 94:4, 95:19, 105:13, 106:5, 106:25, 107:7, 107:15, 111:12, 112:14, 112:19, 112:24, 114:13, 115:10, 115:15, 116:5, 116:6, 116:10, 116:21, 116:25, 117:1, 120:22, 120:23, 121:1, 121:3, 121:7, 121:17, 121:23, 150:20
**dollars** [3] - 52:9, 52:22, 91:17
**done** [22] - 7:17, 15:1, 27:3, 31:10,

32:18, 33:25, 34:8, 35:2, 35:18, 37:21, 44:7, 60:13, 62:1, 69:7, 69:10, 99:22, 132:16, 134:16, 137:11, 167:13, 169:5
**door** [4] - 36:2, 131:16, 133:4, 134:15
**double** [3] - 80:19, 82:8, 125:21
**double-check** [2] - 80:19, 82:8
**double-team** [1] - 125:21
**doubt** [1] - 143:14
**down** [24] - 3:24, 9:18, 22:1, 30:2, 30:16, 30:18, 31:5, 32:8, 34:3, 34:6, 49:22, 90:8, 97:23, 97:25, 101:22, 110:13, 114:12, 117:7, 120:10, 120:24, 132:17, 134:24, 148:18, 150:25
**download** [4] - 30:24, 30:25, 31:3, 46:8
**downloaded** [1] - 35:16
**downloading** [1] - 29:24
**downloads** [1] - 31:12
**downstream** [2] - 102:18
**dozens** [1] - 70:25
**draft** [1] - 141:10
**drafted** [1] - 10:2
**drag** [3] - 31:6, 31:8, 32:9
**dragging** [1] - 16:7
**driven** [1] - 3:17
**driving** [2] - 22:23, 97:18
**drop** [4] - 30:16, 31:5, 32:8, 109:22
**drop-down** [3] - 30:16, 31:5, 32:8
**due** [5] - 10:21, 31:12, 42:20, 52:20, 103:21
**during** [11] - 6:7, 17:22, 17:24, 31:22, 36:7, 43:7, 83:4, 140:25, 152:10, 152:12, 161:8

# E

**e-discovery** [2] - 13:7, 17:15
**easier** [3] - 73:13, 162:21, 162:23
**East** [1] - 2:3
**easy** [2] - 13:11, 164:7
**ECF** [1] - 26:20
**economy** [1] - 140:5
**EDWARDS** [2] - 2:5, 173:8
**Edwards** [1] - 173:7
**effect** [3] - 41:14, 72:21, 98:24
**effective** [5] - 119:14, 120:1, 120:2, 120:25, 164:19
**effectively** [1] - 94:2
**effectiveness** [1] - 120:17
**efforts** [2] - 83:12, 113:13
**eight** [2] - 13:1, 13:2
**either** [13] - 55:24, 72:6, 85:4, 88:5, 103:15, 109:1, 114:1, 115:6, 122:3, 147:14, 149:20, 156:6, 170:10
**elaborate** [1] - 143:5
**eleven** [1] - 158:7
**eligible** [1] - 5:5
**email** [7] - 14:6, 14:10, 17:14, 109:22, 109:24, 139:8, 150:23
**emailed** [2] - 5:11, 21:22
**emails** [7] - 12:25, 13:8, 13:9, 13:21, 14:14, 15:2, 120:25
**Emily** [1] - 3:6
**EMILY** [1] - 1:17
**emotional** [2] - 12:11, 12:15
**employee** [15] - 109:15, 122:22, 126:3, 132:25, 135:16, 136:5, 145:18, 145:19, 145:20, 149:2, 149:5, 155:4, 157:22, 169:25
**employees** [20] - 4:14, 6:17, 7:1, 12:5, 12:20, 16:8, 107:17, 108:4, 108:8, 123:7, 124:11, 136:2, 136:22, 137:1, 142:4, 149:24, 155:5, 157:7,

165:12, 170:1
**employs** [1] - 155:6
**emulators** [1] - 118:9
**enable** [6] - 54:25, 111:15, 112:16, 113:1, 115:13, 121:20
**enables** [3] - 39:11, 42:21, 47:24
**enabling** [1] - 48:12
**encapsulate** [1] - 67:14
**encapsulates** [1] - 52:3
**encompasses** [1] - 52:3
**encouraged** [1] - 159:4
**end** [18] - 8:4, 8:5, 8:7, 11:10, 11:11, 14:17, 16:17, 89:9, 112:19, 112:22, 114:5, 115:3, 115:21, 132:7, 141:19, 155:16, 157:12, 167:19
**ended** [2] - 14:18, 128:7
**enforcing** [1] - 169:22
**engage** [2] - 42:4, 51:3
**engaged** [1] - 57:16
**engages** [3] - 59:1, 59:6, 59:9
**engaging** [2] - 57:24, 58:5
**engine** [4] - 67:21, 67:25, 68:1, 68:8
**Engineer** [1] - 124:17
**engineer** [1] - 126:5
**engineering** [3] - 123:5, 123:8, 125:6
**Engineering** [1] - 124:18
**engineers** [1] - 51:17
**English** [1] - 63:10
**enter** [3] - 4:2, 8:22, 74:16
**entered** [1] - 166:21
**enterprise** [1] - 63:3
**entire** [9] - 25:11, 49:14, 49:25, 50:22, 52:19, 57:13, 61:18, 67:22, 106:21
**entirely** [8] - 38:3, 40:13, 41:6, 41:10, 131:2, 147:21, 158:12, 167:3
**entities** [6] - 94:25,

95:20, 112:1, 118:7, 119:10, 140:2
**entitled** [1] - 173:5
**entity** [6] - 14:6, 14:8, 14:11, 15:17, 16:12, 169:4
**Entries** [1] - 8:22
**Entry** [20] - 4:9, 6:15, 7:11, 22:19, 22:20, 22:21, 28:13, 37:3, 39:25, 40:11, 91:1, 105:11, 122:23, 166:6, 166:7, 166:11, 166:21, 168:4, 168:5, 171:11
**environment** [1] - 39:12
**equipment** [1] - 24:24
**especially** [3] - 13:11, 19:16, 172:1
**ESQ** [5] - 1:14, 1:17, 1:20, 1:21, 2:2
**essentially** [3] - 5:15, 25:9, 27:1
**establish** [1] - 117:8
**established** [8] - 11:14, 15:25, 16:2, 69:13, 145:11, 147:16, 149:19, 156:3
**estoppel** [2] - 153:2, 153:3
**et** [5] - 58:6, 59:13, 60:15, 66:13, 166:24
**ethanol** [1] - 67:21
**EULA** [1] - 141:19
**Europe** [1] - 155:19
**evaluate** [1] - 102:12
**event** [3] - 163:2, 164:20, 164:21
**evidence** [8] - 34:1, 112:5, 130:20, 130:22, 138:3, 138:8, 138:9, 142:4
**evidencing** [6] - 111:12, 112:24, 114:13, 115:10, 121:7, 121:18
**exactly** [8] - 25:21, 30:11, 44:1, 59:19, 85:6, 93:23, 96:18, 130:17
**examined** [1] - 66:7
**example** [4] - 12:23, 50:16, 67:19, 141:14
**except** [1] - 99:2
**exchange** [2] - 129:18, 129:22
**exchanged** [1] - 139:19

**excludes** [1] - 79:22
**exclusion** [1] - 79:15
**excuse** [1] - 58:18
**execute** [2] - 39:11, 108:9
**executed** [1] - 108:6
**executive** [2] - 123:16, 152:16
**Exhibit** [8] - 19:23, 19:25, 20:6, 143:14, 143:16, 143:22, 143:24, 144:1
**exhibit** [1] - 20:17
**exist** [4] - 10:22, 26:19, 112:19, 130:6
**exists** [2] - 101:2, 116:17
**expansive** [1] - 70:10
**expect** [3] - 92:11, 136:1, 172:4
**expecting** [1] - 19:10
**expedition** [1] - 117:23
**expeditious** [1] - 164:18
**expense** [2] - 159:17, 159:20
**expensive** [1] - 161:22
**experiencing** [2] - 29:25, 31:11
**expert** [57] - 24:5, 24:9, 24:11, 25:9, 25:16, 25:19, 25:25, 26:23, 27:1, 28:10, 28:15, 28:16, 28:17, 28:20, 29:5, 29:8, 30:5, 31:17, 31:19, 31:20, 32:4, 32:10, 32:16, 33:1, 33:4, 33:19, 34:6, 35:5, 35:19, 35:25, 36:15, 36:16, 37:4, 37:6, 37:24, 38:1, 38:3, 58:8, 61:25, 65:9, 66:7, 68:9, 68:14, 68:22, 68:23, 69:15, 70:3, 70:7, 70:8, 70:12, 70:24, 72:16, 72:19, 72:22, 72:23
**expert's** [2] - 50:24, 51:24
**experts** [2] - 65:1, 99:4
**explain** [8] - 13:14, 30:10, 58:10, 60:16, 107:19, 107:21, 111:20, 139:21
**explained** [5] - 5:24,

6:8, 40:20, 88:1, 113:13
**explaining** [2] - 6:11, 99:6
**explanation** [2] - 26:22, 131:12
**exploit** [3] - 83:13, 84:2, 84:4
**exploitation** [1] - 83:21
**exploits** [5] - 4:13, 4:16, 6:19, 6:21, 6:24
**explore** [1] - 42:10
**exponentially** [1] - 127:10
**extensions** [2] - 128:10, 132:18
**extensiveness** [1] - 131:4
**extent** [25] - 19:9, 20:22, 47:7, 53:15, 55:21, 62:21, 63:15, 72:15, 82:14, 84:18, 88:20, 92:8, 96:8, 99:14, 106:11, 107:24, 108:13, 110:10, 112:15, 112:19, 112:22, 116:16, 135:23
**extraordinarily** [1] - 102:19
**extremely** [5] - 11:1, 11:3, 53:25, 132:4, 157:5
**extremes** [1] - 126:8
**eye** [2] - 134:4, 137:15

# F

**face** [3] - 113:3, 120:14, 143:4
**Facebook** [7] - 139:22, 140:6, 141:2, 141:14, 141:15, 149:11, 151:24
**facial** [1] - 144:23
**fact** [12] - 10:15, 10:21, 18:8, 66:16, 128:19, 128:24, 128:25, 139:20, 145:5, 152:13, 155:8, 155:9
**factor** [1] - 135:4
**factors** [4] - 135:11, 135:12, 135:13
**facts** [4] - 10:3, 13:18, 16:23, 130:14
**failed** [2] - 123:22,

152:19
**failing** [1] - 38:5
**fair** [19] - 9:5, 11:16, 12:17, 14:24, 42:23, 53:23, 54:2, 56:20, 64:12, 64:19, 67:5, 68:5, 89:1, 105:25, 135:25, 136:23, 144:21, 146:25, 161:25
**fair-use** [4] - 9:5, 64:12, 89:1, 105:25
**faith** [9] - 15:24, 51:5, 95:9, 95:11, 95:14, 133:7, 134:5, 137:15, 140:20
**fall** [5] - 85:13, 87:17, 149:17, 149:25, 153:13
**falls** [5] - 49:3, 83:23, 127:3, 149:4, 152:7
**familiar** [2] - 123:2, 130:7
**far** [25] - 17:9, 36:14, 46:9, 60:6, 65:14, 69:25, 72:4, 73:3, 73:5, 77:9, 78:19, 89:18, 97:16, 98:7, 114:19, 114:22, 115:15, 115:19, 116:21, 121:24, 130:25, 132:17, 137:2, 146:22, 159:23
**farm** [1] - 70:15
**favor** [1] - 135:14
**feature** [1] - 140:19
**February** [6] - 1:5, 28:14, 166:4, 166:20, 167:5, 167:10
**Federal** [1] - 8:20
**federal** [1] - 118:17
**Federighi** [60] - 20:19, 122:18, 123:6, 123:12, 123:13, 123:15, 125:25, 127:2, 127:7, 127:11, 128:2, 128:19, 128:22, 129:11, 129:15, 130:23, 131:24, 132:21, 135:6, 138:9, 138:19, 138:22, 139:16, 139:18, 140:17, 141:9, 141:18, 141:22, 142:2, 142:13, 143:1, 143:10, 144:1, 144:3, 144:25, 145:1, 146:4, 147:11, 147:16, 148:5, 148:20, 149:2,

149:5, 149:12, 152:13, 153:9, 153:14, 153:24, 154:13, 154:21, 155:15, 156:15, 159:6, 159:19, 160:4, 161:2, 162:7, 163:1, 163:16
**Federighi's** [14] - 126:9, 126:17, 133:7, 144:10, 144:11, 144:14, 148:23, 149:4, 151:11, 152:1, 155:18, 156:20, 157:4, 159:23
**felt** [7] - 131:12, 132:4, 132:15, 133:17, 133:18, 134:3, 134:5
**few** [8] - 39:8, 75:5, 76:3, 130:24, 130:25, 131:7, 148:19, 158:6
**fifteen** [1] - 75:1, 75:2, 75:3
**fight** [2] - 3:19, 102:11
**fighting** [1] - 97:21
**figure** [3] - 28:25, 35:4, 65:4
**figured** [1] - 120:10
**file** [18] - 31:7, 35:15, 40:21, 40:22, 43:24, 46:10, 54:9, 59:2, 59:5, 126:24, 132:20, 134:19, 134:20, 164:5, 165:19, 167:4, 167:14
**filed** [20] - 4:10, 9:12, 36:19, 92:25, 94:20, 103:5, 103:25, 104:2, 104:3, 122:21, 123:13, 165:25, 166:3, 167:3, 167:9, 168:15, 168:16, 168:18
**files** [16] - 29:16, 29:24, 30:9, 31:12, 38:6, 46:8, 47:15, 54:7, 56:25, 57:7, 57:9, 78:14, 78:23, 78:24, 134:22
**filing** [4] - 137:25, 166:4, 166:6, 167:12
**fill** [2] - 131:22, 138:18
**filled** [1] - 127:25
**finally** [1] - 166:25
**financials** [1] - 93:18
**fine** [8] - 29:21,

32:21, 37:11, 61:7, 67:25, 89:21, 167:23, 169:14

**finish** [1] - 10:9
**finished** [1] - 65:9
**firm** [2] - 49:9, 150:13
**firms** [1] - 17:13
**first** [33] - 4:4, 18:19, 19:2, 24:9, 28:8, 40:10, 45:18, 56:5, 114:13, 115:9, 121:2, 121:6, 121:17, 131:19, 136:8, 138:25, 144:24, 145:19, 146:12, 147:6, 148:6, 150:20, 155:20, 159:24, 159:25, 160:1, 160:4, 160:14, 162:1, 162:2, 167:2
**firsthand** [1] - 123:18
**fishing** [1] - 117:23
**fit** [2] - 131:8, 152:4
**five** [3] - 58:23, 103:24, 166:13
**fix** [2] - 30:7, 64:7
**fixed** [1] - 35:16
**flashy** [1] - 66:16
**flaws** [7] - 4:14, 4:16, 6:1, 6:19, 6:21, 6:25, 7:3
**floodgates** [1] - 130:2
**FLORIDA** [1] - 1:1
**Florida** [6] - 1:4, 1:19, 1:23, 2:4, 160:22, 161:8
**fly** [2] - 159:16, 161:22
**folks** [1] - 75:1
**follow** [2] - 119:9, 137:14
**following** [6] - 4:19, 119:11, 146:12, 156:25, 158:20
**follows** [1] - 7:8
**FOR** [2] - 1:14, 1:20
**force** [1] - 148:9
**forced** [1] - 33:6
**forecasts** [8] - 82:13, 105:15, 105:22, 106:9, 106:16, 107:1, 107:8
**forefront** [1] - 148:13
**foregoing** [1] - 173:3
**forget** [1] - 115:4
**form** [6] - 27:9, 85:3, 108:3, 108:7, 108:9,

109:11
**formal** [1] - 104:22
**format** [18] - 32:24, 33:10, 35:21, 35:24, 37:13, 37:14, 37:19, 38:14, 38:20, 47:17, 65:5, 65:22, 69:18, 72:18, 99:1
**formation** [4] - 105:15, 106:9, 107:1, 107:8
**former** [4] - 126:3, 126:5, 132:25
**forms** [2] - 88:17, 107:16
**fort** [1] - 2:4
**forth** [1] - 129:13
**forthcoming** [1] - 149:21
**forthwith** [1] - 38:21
**forward** [9] - 18:17, 119:17, 128:7, 128:11, 128:18, 137:16, 157:1, 163:2, 164:11
**forwarded** [1] - 30:4
**foundational** [1] - 36:3
**founder** [1] - 165:9
**founding** [1] - 6:18
**four** [14] - 17:12, 22:13, 22:15, 74:10, 110:14, 129:10, 153:22, 153:23, 154:7, 159:24, 160:14, 162:1
**framing** [1] - 65:16
**frankly** [2] - 103:7, 120:13
**free** [1] - 151:21
**Friday** [2] - 17:1, 163:18
**friends** [1] - 129:16
**FROM** [1] - 1:11
**frustrate** [1] - 35:2
**full** [6] - 11:23, 36:12, 99:21, 104:12, 141:24, 157:5
**full-blown** [1] - 141:24
**fully** [5] - 23:6, 85:5, 136:13, 159:2, 172:4
**function** [1] - 115:17
**functionality** [1] - 27:19
**functioning** [1] - 27:12
**fundamental** [2] - 98:20, 98:22
**fused** [1] - 79:6

**future** [1] - 137:13

# G

**gain** [1] - 31:20
**game** [3] - 56:20, 135:25, 136:23
**games** [2] - 95:13, 95:14
**gamut** [1] - 17:25
**gas** [1] - 67:21
**gather** [3] - 4:7, 7:19, 39:9
**Gaukroger** [1] - 3:11
**GAUKROGER** [2] - 2:2, 161:15
**Gavin** [1] - 3:11
**GAVIN** [1] - 2:2
**general** [1] - 76:18
**generally** [4] - 39:14, 47:13, 130:22, 153:10
**generic** [2] - 47:15, 109:6
**genuinely** [1] - 50:8
**given** [10] - 29:2, 64:6, 65:14, 68:10, 68:11, 68:22, 75:22, 109:15, 154:20, 169:6
**glad** [1] - 107:6
**glean** [1] - 16:12
**GOLDBERG** [1] - 1:17
**Goldberg** [1] - 3:7
**good-faith** [5] - 15:24, 51:5, 95:9, 95:11, 95:14
**Google** [2] - 46:15, 57:10
**Gorton** [2] - 9:20, 9:22
**Gorton's** [1] - 12:9
**governing** [1] - 91:19
**government** [1] - 94:1
**governmental** [1] - 101:4
**grab** [1] - 95:8
**grant** [4] - 20:9, 94:10, 94:16, 171:12
**granted** [5] - 8:6, 20:3, 20:8, 30:23, 96:25
**granting** [1] - 166:22
**gravamen** [2] - 56:21, 56:22
**grave** [1] - 50:2
**great** [6] - 73:15, 89:17, 104:18, 105:4,

159:17, 159:20
**greater** [1] - 154:6
**grossly** [1] - 113:20
**ground** [2] - 18:7, 114:10
**grounds** [1] - 9:18
**groups** [1] - 138:13
**guaranteed** [1] - 148:9
**guess** [6] - 40:17, 134:11, 161:25, 163:16, 165:6, 170:12
**guidelines** [15] - 111:24, 111:25, 112:7, 113:21, 114:24, 115:5, 115:21, 116:8, 116:15, 119:9, 119:12, 119:22, 121:25, 122:2
**guy** [1] - 143:22

# H

**hacking** [2] - 118:1, 118:6
**half** [2] - 146:10, 157:4
**hand** [3] - 11:23, 157:21
**handicapped** [1] - 119:16
**handle** [4] - 43:12, 46:25, 122:7, 147:10
**handles** [2] - 44:15, 67:13
**handling** [2] - 43:15, 54:22
**hands** [1] - 50:24
**hanging** [2] - 31:3, 37:9
**happenstance** [1] - 145:1
**happy** [17] - 26:2, 31:23, 31:24, 32:12, 33:7, 37:17, 37:19, 38:13, 38:25, 95:6, 113:14, 114:7, 114:9, 116:17, 142:24, 146:14, 158:14
**harass** [1] - 151:6
**harassment** [1] - 127:5
**hard** [2] - 67:3, 139:16
**hardware** [3] - 77:15, 140:19, 151:22
**hardwares** [2] - 113:25, 114:6

**hate** [1] - 50:6
**head** [2] - 15:16, 125:6
**hear** [35] - 4:22, 5:19, 7:25, 9:13, 11:8, 11:25, 16:18, 25:14, 38:17, 43:2, 47:19, 49:11, 55:24, 56:5, 56:6, 63:19, 72:21, 86:16, 93:12, 99:3, 101:7, 101:10, 101:11, 106:13, 108:21, 112:10, 112:20, 124:4, 126:12, 126:13, 147:9, 156:16, 156:18, 156:21
**heard** [10] - 23:24, 76:3, 80:20, 81:23, 88:14, 89:13, 93:4, 100:18, 101:5, 158:2
**HEARING** [1] - 1:10
**hearing** [46] - 3:23, 3:25, 4:25, 6:7, 9:4, 9:6, 11:10, 11:14, 14:17, 23:5, 23:15, 25:16, 25:23, 25:24, 28:8, 29:7, 29:9, 31:18, 40:20, 43:8, 43:11, 47:9, 50:8, 54:20, 69:13, 70:6, 71:19, 72:5, 77:3, 83:19, 93:4, 96:24, 101:22, 101:23, 101:24, 101:25, 103:13, 103:14, 104:1, 104:20, 104:21, 157:18, 158:20, 161:12, 171:22
**heart** [3] - 49:7, 88:25, 153:17
**held** [1] - 144:8
**help** [7] - 39:8, 42:14, 51:5, 102:1, 118:6, 142:18
**helped** [1] - 5:16
**helpful** [4] - 74:16, 102:19, 103:19, 110:11
**hereby** [1] - 173:3
**herein** [1] - 91:22
**herring** [2] - 18:8, 119:23
**herself** [1] - 35:6
**Hi** [1] - 61:4
**hide** [1] - 26:25
**high** [6] - 14:15, 131:23, 136:4, 136:16, 145:18,

153:14
**high-level** [2] - 136:16, 145:18
**high-ranking** [2] - 131:23, 136:4
**highest** [1] - 159:3
**highly** [7] - 3:17, 19:15, 37:15, 44:17, 108:24, 108:25
**himself** [2] - 68:9, 138:1
**hinge** [2] - 36:2, 36:4
**hires** [1] - 109:2
**historically** [1] - 27:12
**history** [3] - 150:17, 151:4, 151:9
**hold** [7] - 10:9, 40:8, 77:8, 78:18, 81:12, 124:15, 126:18
**hole** [1] - 22:1
**home** [4] - 25:7, 48:10, 127:2, 131:9
**home-based** [1] - 25:7
**Honor** [216] - 3:5, 3:10, 3:13, 4:23, 4:24, 5:3, 5:7, 5:14, 5:18, 5:22, 6:14, 7:14, 7:16, 7:21, 8:3, 9:16, 11:9, 12:1, 12:17, 13:13, 15:10, 15:16, 15:20, 16:10, 16:20, 16:21, 17:6, 17:13, 17:20, 18:4, 18:25, 19:3, 19:21, 19:22, 20:11, 21:3, 21:10, 21:13, 21:19, 22:6, 22:9, 23:1, 24:4, 25:1, 25:21, 26:1, 26:14, 26:21, 27:8, 27:20, 28:12, 28:23, 29:12, 32:17, 32:23, 36:20, 37:16, 38:14, 38:18, 39:6, 39:14, 39:20, 39:21, 40:7, 42:6, 46:5, 47:21, 48:21, 49:13, 50:2, 54:2, 54:12, 54:14, 55:6, 55:14, 56:3, 59:18, 63:21, 65:3, 66:10, 67:10, 70:16, 71:13, 72:1, 72:25, 73:1, 73:7, 73:9, 74:15, 74:24, 75:3, 75:11, 75:14, 75:15, 75:25, 77:22, 80:23, 85:6, 86:2, 86:6, 86:12, 89:10, 89:16, 89:20, 90:1, 91:3, 91:5, 92:3,

92:21, 93:6, 93:14, 94:14, 94:22, 95:5, 95:25, 96:1, 96:13, 96:18, 97:2, 97:7, 97:8, 101:13, 102:15, 103:3, 103:19, 104:13, 104:18, 105:4, 105:8, 105:18, 106:7, 106:15, 107:5, 107:11, 107:19, 108:18, 108:23, 109:16, 109:20, 110:4, 110:5, 110:10, 110:18, 110:19, 111:1, 111:5, 111:10, 111:21, 112:11, 112:23, 113:25, 114:18, 115:1, 115:25, 116:13, 116:18, 116:23, 117:9, 118:5, 118:15, 118:20, 119:1, 119:18, 119:20, 119:24, 120:21, 121:13, 122:9, 122:10, 122:15, 124:8, 124:12, 125:18, 126:2, 126:4, 126:15, 127:1, 127:6, 127:21, 130:8, 133:9, 134:7, 135:2, 137:19, 141:6, 141:19, 144:22, 145:9, 148:1, 148:4, 150:3, 150:5, 153:19, 154:23, 155:2, 157:2, 158:2, 160:22, 162:9, 163:4, 163:9, 163:12, 163:22, 164:9, 165:18, 165:22, 166:2, 166:14, 168:9, 168:22, 170:22, 170:25, 171:18, 172:8, 172:11, 172:17
**Honor's** [6] - 5:3, 81:19, 87:2, 96:4, 130:7, 150:9
**HONORABLE** [1] - 1:10
**honored** [1] - 169:23
**hoped** [1] - 3:16
**hopefully** [2] - 65:4, 76:9
**hour** [6] - 124:1, 127:11, 152:2, 153:21, 153:25, 157:5
**hours** [8] - 10:4, 13:1, 13:2, 153:20, 153:25, 155:3, 157:9, 157:10

**house** [10] - 24:23, 24:24, 66:23, 116:1, 131:16, 133:3, 133:12, 134:14, 134:15, 135:9
**huge** [4] - 36:1, 36:3, 140:12, 159:17
**hundred** [1] - 91:17
**hundreds** [1] - 154:3
**hunt** [1] - 120:10
**hunting** [1] - 120:24
**hypervisor** [69] - 26:9, 26:25, 27:15, 39:2, 39:4, 42:7, 42:20, 44:2, 44:4, 44:10, 44:11, 45:24, 46:2, 46:11, 46:13, 46:17, 46:20, 46:25, 47:7, 47:11, 47:15, 47:22, 48:7, 48:8, 48:19, 48:22, 48:23, 49:1, 52:10, 52:13, 52:15, 53:16, 55:20, 58:16, 59:6, 59:9, 63:14, 64:1, 64:2, 64:8, 64:9, 64:24, 65:2, 66:6, 66:7, 66:12, 67:7, 70:1, 70:9, 70:11, 70:22, 71:6, 71:22, 72:15, 77:2, 77:19, 82:18, 92:10, 92:11, 97:25, 98:5, 98:8, 98:16, 98:18, 98:21, 99:3, 99:18, 102:10
**hypervisors** [1] - 48:22

# I

**idea** [5] - 66:12, 138:20, 138:21, 138:24, 139:16
**ideas** [1] - 147:10
**identical** [5] - 32:12, 69:6, 127:13, 141:4, 141:12
**identification** [1] - 95:19
**identifies** [1] - 20:19
**identify** [4] - 5:1, 8:9, 10:24, 96:5
**identities** [1] - 95:21
**ignored** [1] - 14:10
**ignores** [1] - 14:8
**imagine** [1] - 132:1
**immediately** [3] - 44:7, 69:10, 134:24
**immunity** [1] - 145:3

**impact** [2] - 15:14, 148:14
**impacts** [2] - 12:7, 148:17
**implementation** [1] - 79:5
**implemented** [1] - 33:5
**implicate** [1] - 102:22
**impliedly** [1] - 85:23
**importance** [1] - 91:21
**important** [10] - 30:21, 33:3, 53:17, 64:18, 70:18, 93:16, 131:13, 139:21, 142:12, 143:12
**importantly** [1] - 142:12
**impose** [1] - 147:22
**imposing** [2] - 45:11, 45:15
**impossible** [2] - 63:2, 95:2
**impression** [4] - 38:24, 84:23, 109:5, 155:8
**in-house** [1] - 66:23
**in-person** [1] - 153:23
**inadequate** [1] - 7:6
**inadvertently** [1] - 86:21
**inaudible** [3] - 86:15, 151:2, 161:17
**inaudible]** [1] - 161:15
**INC** [1] - 1:4
**incident** [1] - 32:11
**inclination** [1] - 147:2
**inclined** [3] - 69:19, 94:10, 154:23
**include** [22] - 7:10, 21:17, 45:1, 45:4, 45:21, 45:24, 46:1, 47:5, 47:7, 47:10, 48:7, 48:18, 48:19, 55:18, 55:20, 69:22, 69:25, 70:11, 72:12, 86:11, 109:24, 122:4
**included** [7] - 12:3, 21:15, 21:16, 48:20, 55:20, 96:4, 141:1
**includes** [7] - 43:14, 51:2, 54:20, 55:1, 72:15, 97:14, 99:16
**including** [8] - 12:9, 39:10, 79:6, 86:8,

91:22, 99:1, 128:18, 148:25
**inclusively** [2] - 55:2, 95:8
**Incorporated** [1] - 3:2
**incorrect** [1] - 149:18
**incredible** [1] - 42:21
**incredibly** [1] - 64:18
**increments** [1] - 159:8
**incurring** [1] - 139:15
**indeed** [1] - 10:17
**indicating** [1] - 143:7
**indications** [1] - 128:8
**individual** [7] - 113:16, 113:18, 117:12, 140:2, 142:8, 158:14, 159:14
**individual's** [1] - 142:10
**individually** [1] - 68:8
**individuals** [6] - 112:2, 118:6, 118:7, 119:10, 119:13, 155:6
**industry** [1] - 64:17
**influences** [1] - 41:12
**inform** [1] - 29:12
**information** [29] - 4:18, 9:5, 9:6, 10:6, 20:16, 20:24, 44:17, 70:4, 72:17, 87:13, 89:5, 111:18, 119:16, 129:1, 130:2, 130:4, 131:23, 139:5, 139:19, 169:6, 169:8, 169:10, 169:14, 169:16, 169:18, 169:20, 170:1, 170:2
**informed** [3] - 146:20, 148:1, 157:24
**informs** [1] - 8:15
**infringe** [2] - 62:17, 108:1
**infringement** [9] - 48:13, 66:18, 69:7, 89:1, 106:1, 106:2, 108:13, 108:19, 120:12
**infringes** [3] - 41:12, 62:13, 152:22
**infringing** [2] - 107:25
**inherently** [2] - 67:22, 108:23

**initial** [4] - 17:23, 128:3, 139:3, 148:7
**innocuous** [1] - 96:15
**inoperability** [1] - 30:6
**inquire** [3] - 11:24, 34:12
**inquiries** [4] - 10:18, 10:22, 13:20, 71:7
**inquiry** [2] - 16:15, 16:16
**inside** [1] - 26:10
**instability** [6] - 29:15, 29:21, 30:1, 30:9, 31:2, 31:11
**install** [2] - 24:23, 48:10
**installation** [2] - 25:8, 36:24
**instance** [7] - 27:18, 84:2, 88:24, 103:21, 110:14, 113:10, 120:3
**instead** [6] - 25:2, 40:12, 41:4, 78:12, 137:14, 153:12
**insufficient** [2] - 11:19, 18:15
**intend** [3] - 104:12, 147:12, 164:22
**intended** [2] - 72:3, 128:1
**intends** [1] - 123:19
**interact** [11] - 28:16, 28:20, 28:24, 29:7, 29:9, 31:18, 31:21, 33:1, 36:15, 37:5
**interaction** [3] - 153:17, 153:20, 154:5
**interacts** [1] - 65:7
**interchanged** [1] - 61:22
**interest** [3] - 48:24, 59:20, 88:6
**interested** [9] - 14:7, 17:5, 21:22, 61:5, 61:7, 61:8, 61:9, 92:7
**interesting** [2] - 122:18, 153:16
**interests** [1] - 152:6
**interface** [1] - 139:4
**interfere** [2] - 117:12, 117:14
**interim** [1] - 127:1
**internal** [8] - 88:3, 113:3, 114:20, 115:15, 115:17, 116:2, 116:21, 121:22
**internally** [1] - 118:2
**interpret** [1] - 47:12

**interpreting** [1] - 120:2
**interrogatories** [3] - 96:2, 105:19, 172:3
**Interrogatories** [1] - 4:7
**interrogatory** [20] - 4:6, 4:10, 4:24, 7:13, 7:18, 8:24, 10:25, 19:10, 20:14, 21:2, 21:4, 21:8, 25:5, 36:21, 81:19, 82:4, 117:17, 120:16, 122:4
**Interrogatory** [10] - 4:11, 4:12, 6:16, 7:9, 8:6, 8:8, 8:25, 18:20, 18:24
**interrupt** [1] - 102:6
**investigate** [1] - 51:6
**investigation** [1] - 51:5
**investor** [3] - 86:25, 87:1, 87:16
**investors** [2] - 87:10, 87:11
**invoices** [3] - 71:7, 73:18, 99:14
**involve** [1] - 172:2
**involved** [17] - 12:11, 12:14, 37:11, 129:12, 138:10, 138:11, 138:12, 138:14, 142:7, 143:10, 144:5, 144:11, 145:4, 149:2, 149:6, 149:16, 154:11
**involvement** [7] - 12:8, 15:11, 136:17, 137:8, 146:1, 147:17
**involving** [2] - 71:21, 94:19
**iOS** [104] - 4:14, 4:20, 6:19, 6:25, 25:3, 25:4, 30:16, 30:19, 35:13, 42:10, 43:15, 44:5, 44:11, 44:15, 45:3, 45:20, 46:4, 46:14, 46:15, 46:16, 46:18, 46:21, 46:25, 47:4, 47:8, 47:11, 48:2, 48:17, 49:3, 49:17, 49:18, 49:19, 50:10, 50:23, 52:3, 52:4, 52:18, 54:15, 54:22, 55:7, 55:9, 55:17, 55:22, 56:14, 56:20, 56:23, 56:25, 57:4, 57:7, 58:21, 59:5, 59:11, 59:17, 60:10, 60:13, 60:14, 60:15, 60:19, 60:22, 61:1,

61:8, 61:9, 61:13, 61:24, 62:5, 62:8, 62:22, 63:9, 63:16, 66:16, 67:11, 67:13, 68:16, 68:17, 69:22, 71:18, 71:21, 71:24, 72:2, 72:11, 72:16, 77:5, 77:11, 77:16, 83:14, 83:18, 84:12, 87:3, 91:12, 91:14, 98:4, 98:6, 98:16, 99:1, 111:16, 111:23, 112:17, 113:2, 115:13, 121:20, 151:23
**iOS-operated** [12] - 45:3, 45:20, 46:4, 46:21, 47:4, 47:8, 48:17, 55:17, 61:1, 63:16, 69:22, 72:11
**iOS-operating** [1] - 56:14
**iPhone** [11] - 24:16, 25:3, 30:15, 79:24, 113:8, 117:13, 120:4, 138:25, 139:9, 139:25
**iPhones** [8] - 24:15, 78:13, 78:19, 79:6, 79:16, 113:16, 118:7, 151:20
**ipsw** [6] - 30:24, 31:7, 46:8, 47:15, 54:7, 78:25
**IPSW** [1] - 31:2
**ipsw.me** [4] - 29:22, 30:22, 78:24, 79:3
**irrelevant** [1] - 114:23
**isolated** [7] - 12:22, 30:12, 31:13, 32:11, 46:13, 61:11, 96:12
**ispw.me** [2] - 78:14, 78:23
**issue** [98] - 4:8, 7:20, 8:1, 8:13, 8:16, 14:23, 16:5, 16:19, 18:2, 18:8, 19:1, 19:7, 20:1, 20:12, 22:25, 24:9, 26:12, 28:6, 28:8, 31:21, 33:21, 33:24, 34:19, 34:20, 35:11, 36:1, 37:8, 37:9, 37:15, 37:18, 37:21, 39:2, 39:4, 41:8, 44:22, 44:23, 49:7, 55:14, 56:7, 60:18, 62:18, 62:25, 63:4, 63:20, 67:4, 70:24, 73:4, 77:2, 83:1, 83:2, 83:18, 88:4, 88:9,

92:4, 92:13, 94:22, 95:18, 95:21, 98:1, 100:6, 100:10, 102:14, 103:16, 104:22, 105:3, 105:17, 108:5, 108:22, 110:23, 110:24, 112:23, 116:2, 119:1, 119:4, 121:15, 122:6, 122:19, 126:21, 127:8, 131:20, 136:14, 136:19, 139:22, 141:5, 145:13, 146:1, 146:8, 146:11, 146:19, 147:14, 148:3, 154:20, 155:8, 159:13, 163:11, 164:23, 165:17
**issued** [2] - 73:5, 103:20
**issues** [37] - 3:21, 11:21, 22:22, 24:2, 26:3, 36:3, 37:17, 38:16, 44:24, 45:13, 70:21, 80:9, 88:4, 91:22, 94:23, 107:23, 108:10, 108:11, 110:8, 114:9, 115:24, 117:20, 120:23, 122:12, 132:2, 136:3, 137:19, 146:24, 147:18, 148:3, 154:20, 156:20, 157:19, 162:17, 168:24, 171:16
**it'll** [5] - 76:9, 86:9, 142:18, 162:3, 164:13
**item** [1] - 110:24
**itemize** [1] - 158:15
**itemized** [1] - 145:7
**items** [3] - 22:14, 94:17, 145:6
**itself** [5] - 12:8, 67:7, 69:3, 139:13, 159:3
**Ivan** [1] - 125:4
**IVAN** [1] - 125:4

**J**

**jailbreak** [6] - 113:8, 113:11, 113:12, 113:16, 117:12, 139:20
**jailbreaking** [5] - 139:21, 140:4, 140:10, 141:16, 149:12
**jailbroken** [10] -

24:17, 139:25, 140:3, 140:9, 140:12, 140:15, 140:19, 140:22, 151:23, 152:7
**January** [1] - 132:11
**Jason** [2] - 124:22, 129:7
**Jessica** [2] - 3:5, 90:9
**JESSICA** [1] - 1:14
**job** [1] - 12:22
**join** [2] - 104:10, 172:5
**joining** [1] - 104:13
**joint** [5] - 4:8, 21:8, 22:21, 104:6, 104:16
**Jon** [4] - 124:14, 127:14, 129:7, 141:4
**Judge** [2] - 128:8, 162:15
**JUDGE** [1] - 1:11
**judgment** [1] - 162:18
**July** [3] - 123:25, 151:17, 153:7
**juncture** [2] - 5:25, 170:8
**Justin** [2] - 3:10, 82:22
**JUSTIN** [1] - 1:20
**juxtaposed** [1] - 14:2

**K**

**K-R-S-T-I-C** [1] - 125:4
**keep** [8] - 12:8, 53:4, 63:24, 66:25, 67:8, 95:3, 102:7, 121:8
**Ken** [1] - 171:4
**key** [2] - 66:23, 66:25
**kind** [6] - 80:25, 119:16, 128:13, 128:21, 133:10, 152:15
**kinds** [2] - 5:9, 24:1
**Kissane** [1] - 3:12
**KISSANE** [1] - 1:21
**kitchen** [1] - 50:21
**knock** [1] - 131:15
**knocking** [1] - 134:15
**knowing** [2] - 111:25, 169:11
**knowledge** [20] - 54:16, 117:6, 123:18, 123:21, 127:11, 127:14, 130:14, 135:24, 137:8,

137:23, 145:14, 146:23, 149:11, 152:17, 154:10, 154:22, 155:7, 157:19, 159:2
**knows** [6] - 45:11, 113:15, 117:3, 122:6, 145:24, 162:6
**Krstic** [11] - 125:4, 141:7, 142:5, 143:22, 145:15, 146:21, 154:3, 154:4, 159:19, 159:25, 161:19

## L

**L3** [4] - 103:4, 104:8, 104:10, 104:16
**L3's** [2] - 94:8, 104:11
**L3Harris** [1] - 94:1
**laches** [1] - 153:1
**Lakeview** [1] - 1:22
**landed** [1] - 88:10
**language** [2] - 108:3, 139:13
**laptop** [1] - 27:16
**large** [3] - 93:25, 140:7, 171:21
**largest** [2] - 91:10, 91:15
**Las** [1] - 2:3
**Lash** [1] - 3:6
**LASH** [1] - 1:17
**last** [40] - 4:25, 6:8, 8:8, 9:4, 9:6, 11:14, 16:25, 23:5, 23:15, 24:4, 24:10, 25:16, 25:22, 26:5, 27:20, 28:1, 28:8, 29:1, 29:6, 29:14, 31:17, 36:14, 39:3, 40:20, 43:7, 43:8, 43:10, 48:4, 50:8, 54:20, 74:20, 105:19, 107:12, 120:19, 153:1, 165:4, 166:20, 168:2, 170:9
**late** [3] - 18:16, 123:1, 132:11
**LATHAM** [1] - 1:14
**Latham** [3] - 3:6, 133:25, 134:8
**Lauderdale** [1] - 2:4
**LAW** [1] - 20:3
**law** [5] - 17:12, 84:3, 113:10, 117:15, 120:1
**lawsuit** [5] - 31:22, 36:19, 37:8, 130:15, 154:16

**lawyer** [1] - 9:22
**lawyers** [4] - 43:19, 134:8, 137:18, 160:7
**lawyers'** [1] - 15:13
**lay** [2] - 80:25, 82:10
**layperson** [1] - 47:13
**leading** [1] - 133:23
**learn** [1] - 146:21
**learned** [2] - 29:14, 170:9
**least** [14] - 21:6, 22:4, 34:12, 54:25, 72:3, 73:8, 80:25, 135:15, 141:1, 143:11, 147:18, 156:23, 157:13, 160:4
**leave** [3] - 37:1, 87:21, 97:1
**leaves** [1] - 90:4
**left** [2] - 24:4, 139:2
**legal** [3] - 15:17, 67:2, 120:9
**legally** [2] - 117:11, 117:14
**legitimate** [1] - 15:24
**length** [2] - 147:23, 160:20
**lengthy** [1] - 139:20
**leniency** [1] - 128:10
**less** [2] - 24:13, 118:3
**lesser** [1] - 154:6
**letter** [2] - 19:19, 109:23
**level** [3] - 136:16, 145:18, 159:3
**LEVINE** [222] - 1:20, 3:10, 9:16, 9:18, 9:23, 10:8, 10:10, 11:9, 12:1, 12:13, 12:17, 13:5, 13:13, 13:19, 13:24, 14:5, 14:12, 14:24, 15:20, 15:25, 16:6, 16:16, 16:20, 17:20, 18:25, 19:21, 19:23, 20:5, 20:8, 20:10, 26:1, 29:11, 31:23, 32:2, 32:17, 32:19, 33:2, 33:11, 33:15, 33:23, 34:2, 35:9, 35:23, 36:11, 36:17, 37:16, 37:25, 38:2, 38:13, 38:24, 39:21, 39:23, 40:1, 40:3, 40:6, 40:17, 41:2, 43:4, 43:10, 43:16, 43:18, 45:8, 45:25, 46:5, 46:22, 47:9, 49:12, 51:8, 52:11, 52:15, 53:1,

53:8, 54:2, 55:14, 56:4, 56:7, 56:18, 56:22, 57:5, 57:19, 58:10, 58:13, 58:16, 58:18, 59:18, 59:24, 60:1, 60:4, 60:8, 60:11, 60:18, 61:2, 62:4, 62:16, 62:24, 63:6, 63:11, 63:17, 67:10, 68:22, 68:24, 70:2, 71:13, 71:17, 71:22, 71:25, 72:25, 74:1, 75:11, 75:15, 79:15, 79:17, 79:19, 79:21, 83:7, 83:20, 84:3, 84:5, 84:9, 84:13, 84:21, 85:15, 93:14, 93:25, 94:13, 94:21, 95:10, 95:16, 95:24, 96:11, 98:3, 98:10, 98:23, 99:8, 100:1, 100:4, 100:8, 100:15, 100:17, 100:20, 100:23, 101:2, 104:12, 107:4, 108:22, 109:5, 109:11, 109:14, 109:16, 109:20, 110:3, 110:19, 116:23, 118:14, 124:13, 124:16, 124:20, 124:22, 124:25, 125:2, 125:4, 125:6, 125:9, 125:11, 125:17, 126:4, 127:21, 127:23, 130:12, 132:3, 133:9, 133:15, 133:17, 133:23, 135:2, 135:17, 135:21, 137:5, 142:10, 142:18, 142:21, 144:21, 145:9, 145:12, 146:7, 146:17, 147:8, 148:1, 148:17, 150:3, 158:2, 158:4, 158:9, 158:19, 160:13, 160:24, 161:4, 161:9, 161:18, 161:25, 162:21, 163:12, 163:20, 164:2, 164:22, 165:22, 166:14, 167:11, 167:16, 167:19, 167:22, 168:1, 168:10, 168:14, 168:19, 170:5, 170:8, 170:15, 170:19, 170:22, 172:11, 172:13
**Levine** [15] - 3:10,

5:11, 27:13, 43:2, 49:5, 56:5, 67:9, 89:15, 93:13, 127:22, 150:6, 150:18, 151:10, 151:13, 165:19
**license** [12] - 8:10, 8:11, 42:11, 47:25, 83:13, 114:5, 115:3, 115:4, 120:4, 141:20, 151:22
**licensing** [2] - 115:22, 116:9
**licensor** [1] - 122:2
**life** [1] - 159:7
**light** [10] - 14:12, 15:10, 18:7, 18:8, 73:4, 85:15, 95:17, 132:16, 148:7, 157:6
**lights** [1] - 59:6
**likely** [5] - 10:17, 10:22, 147:22, 148:8, 166:8
**limine** [1] - 147:13
**limit** [11] - 57:4, 61:1, 89:4, 91:24, 92:2, 105:21, 118:6, 118:13, 118:15, 121:1, 137:23
**limitations** [2] - 5:8, 147:22
**limited** [14] - 46:18, 46:20, 61:19, 81:4, 82:11, 86:9, 88:22, 97:4, 137:24, 152:5, 154:18, 154:24, 155:18, 157:24
**limiting** [5] - 17:25, 84:5, 86:6, 137:21, 137:22
**lined** [1] - 171:20
**lines** [1] - 113:9
**lineup** [2] - 128:23, 144:25
**LISA** [2] - 2:5, 173:8
**list** [19] - 11:20, 11:22, 14:2, 15:15, 15:19, 15:21, 16:11, 18:9, 18:14, 66:20, 66:21, 66:22, 86:20, 89:9, 95:22, 120:24, 128:3, 130:4
**listed** [3] - 6:2, 125:20, 148:6
**Listen** [1] - 164:7
**listing** [1] - 5:4
**lists** [3] - 4:21, 51:19, 51:20
**literally** [5] - 57:2, 61:17, 65:7, 120:15,

127:9
**litigation** [5] - 34:13, 67:1, 87:4, 133:5, 161:23
**live** [7] - 45:6, 45:16, 48:5, 53:22, 62:14, 162:7, 164:20
**LIZZA** [1] - 1:21
**Lizza** [2] - 3:11, 29:13
**LLC** [2] - 1:7, 3:2
**LLP** [3] - 1:14, 1:17, 2:2
**load** [6] - 24:15, 24:17, 30:17, 120:4, 120:5, 120:6
**loaded** [3] - 35:15, 40:21, 40:24
**loading** [1] - 36:22
**loads** [2] - 58:25, 139:2
**local** [2] - 8:21, 157:10
**locate** [1] - 39:25, 95:15
**location** [2] - 147:24, 155:22
**lock** [2] - 66:23, 66:25
**log** [2] - 30:14, 95:3
**logged** [2] - 76:23, 88:7
**logistical** [3] - 156:13, 159:13, 160:6
**logistics** [3] - 155:21, 157:3, 164:14
**look** [49] - 6:15, 9:25, 13:7, 16:24, 27:2, 33:7, 33:11, 34:23, 41:19, 47:24, 48:6, 57:18, 57:24, 58:7, 58:8, 60:13, 62:23, 65:4, 67:14, 67:15, 67:16, 68:3, 70:4, 72:19, 76:10, 104:1, 104:19, 107:13, 110:1, 111:11, 112:13, 116:18, 116:19, 134:4, 135:5, 135:7, 137:15, 138:15, 141:13, 142:4, 142:16, 151:16, 152:1, 154:10, 157:5, 171:2
**looked** [2] - 28:25, 29:22
**looking** [10] - 65:9, 88:1, 88:2, 91:2, 96:19, 107:20, 108:16, 111:8,

111:20, 148:19
 **looks** [5] - 11:7,
38:1, 89:18, 125:24,
168:7
 **Los** [1] - 1:16
 **love** [1] - 143:3
 **lunch** [1] - 75:12

# M

 **machine** [1] - 32:25
 **MAGISTRATE** [1] -
1:11
 **main** [2] - 98:7,
171:24
 **maintaining** [1] -
23:9
 **major** [1] - 101:16
 **majority** [1] - 50:21
 **maker** [1] - 123:24
 **man's** [2] - 131:9,
131:15
 **manageable** [1] -
76:10
 **manager** [1] - 124:22
 **manner** [3] - 35:7,
38:8, 133:6
 **March** [41] - 3:23,
3:25, 69:13, 70:6,
70:9, 94:8, 100:6,
100:10, 101:5,
101:24, 103:13,
103:14, 104:1, 104:5,
104:6, 104:7, 104:17,
124:14, 124:19,
124:20, 125:2, 125:7,
125:11, 125:25,
126:5, 126:23, 136:2,
150:21, 150:24,
160:10, 160:12,
160:16, 161:6,
171:19, 172:15
 **Marineau** [5] -
125:12, 146:22,
159:20, 160:1, 160:3
 **MARINEAU** [1] -
125:13
 **market** [5] - 25:11,
83:13, 140:11,
140:12, 140:23
 **marketing** [1] -
105:23
 **match** [1] - 26:23
 **material** [11] - 69:17,
107:25, 128:24,
145:5, 146:24,
147:12, 165:6, 165:8,
165:12, 168:4, 171:12
 **materials** [4] - 27:22,

78:6, 87:16, 166:24
 **matter** [5] - 7:22,
22:16, 147:23,
171:14, 173:5
 **matters** [2] - 101:20,
172:15
 **MATTHEWMAN** [1] -
1:10
 **mean** [43] - 13:10,
16:5, 17:7, 21:7,
32:23, 33:24, 34:4,
35:25, 37:7, 41:16,
42:5, 42:7, 52:13,
56:21, 58:15, 65:3,
67:15, 81:18, 85:1,
95:4, 96:15, 98:13,
102:6, 109:13, 116:5,
117:25, 130:1,
130:10, 131:19,
132:20, 132:23,
133:4, 133:6, 133:16,
133:19, 142:16,
144:21, 160:9,
160:13, 160:25,
161:25, 167:20,
171:23
 **meaning** [1] - 84:4
 **means** [5] - 63:12,
84:3, 97:9, 118:12,
120:2
 **meant** [1] - 86:18
 **measure** [1] - 113:19
 **measures** [12] -
111:16, 112:17,
113:2, 115:13,
115:17, 117:4, 118:1,
119:14, 119:22,
120:25, 121:20,
152:23
 **meet** [18] - 5:7, 5:12,
17:24, 80:9, 87:25,
88:9, 88:18, 89:19,
89:21, 89:23, 89:25,
90:3, 90:12, 90:17,
110:11, 113:13,
120:18, 126:19
 **meet-and-confer** [2]
- 89:23, 113:13
 **meeting** [23] - 83:5,
123:25, 124:2,
127:11, 129:4, 129:5,
135:25, 136:21,
138:16, 140:18,
140:25, 141:8,
141:17, 144:3,
151:17, 151:25,
152:3, 152:4, 152:10,
152:12, 153:7, 159:8
 **meetings** [17] -
124:2, 129:10,

129:12, 129:19,
135:14, 135:15,
137:21, 138:5, 138:6,
138:14, 144:7, 144:9,
147:18, 153:22,
153:23, 154:1
 **memorialized** [2] -
33:8, 74:17
 **memory** [1] - 139:15
 **mention** [3] - 141:2,
149:9, 154:3
 **mentioned** [10] -
21:12, 52:17, 90:9,
128:15, 141:3,
144:24, 148:6,
149:10, 158:10, 159:9
 **menu** [2] - 30:16,
31:6
 **mere** [1] - 137:25
 **merely** [11] - 13:8,
32:7, 35:14, 40:22,
46:16, 52:5, 58:22,
59:12, 62:24, 69:4,
127:13
 **message** [2] - 139:7,
142:9
 **messages** [3] -
142:5, 154:2, 154:4
 **messing** [1] - 29:18
 **met** [1] - 18:2
 **method** [1] - 26:15
 **Miami** [1] - 1:19
 **Microsoft** [2] -
139:22, 149:12
 **middle** [2] - 18:7,
156:5
 **midnight** [1] - 65:12
 **midpoint** [1] - 162:5
 **midst** [1] - 30:3
 **might** [14] - 16:12,
49:22, 101:10,
107:22, 120:10,
121:14, 127:7,
131:22, 143:5,
146:24, 152:6, 152:8,
154:17, 156:11
 **Millennium** [1] -
41:13
 **millions** [1] - 52:8,
52:21, 113:12, 116:6,
140:4
 **mind** [6] - 14:9,
127:8, 130:10,
143:15, 144:6, 148:14
 **minimal** [3] - 129:5,
129:9, 155:3
 **minimum** [1] - 27:9
 **minor** [4] - 51:10,
94:22, 94:24, 158:4
 **minute** [4] - 91:6,

111:6, 129:25, 159:7
 **minutes** [7] - 39:8,
75:1, 75:2, 75:5, 75:6,
166:13
 **minutiae** [1] - 94:4
 **misleading** [1] -
153:23
 **misremembering** [1]
- 149:20
 **missed** [1] - 167:11
 **missing** [1] - 141:13
 **mistake** [1] - 83:6
 **mobile** [9] - 39:11,
45:4, 45:22, 47:6,
48:18, 55:19, 62:11,
69:23, 72:13
 **modification** [1] -
72:23
 **modified** [3] - 25:18,
25:22, 34:15
 **modify** [1] - 121:11
 **moment** [4] - 23:3,
34:10, 36:9, 130:21
 **Monday** [9] - 5:15,
17:10, 65:11, 109:19,
163:15, 163:16,
163:18, 166:1, 167:21
 **money** [1] - 10:5
 **month** [2] - 24:13,
25:22
 **months** [7] - 22:15,
97:22, 127:24, 128:5,
150:25
 **moot** [2] - 19:24,
20:1
 **morning** [11] - 3:5,
3:8, 3:10, 3:14, 4:23,
5:22, 9:16, 9:17, 25:5,
36:21, 92:4
 **most** [4] - 22:13,
31:22, 98:10, 123:6
 **MOTION** [1] - 1:10
 **motion** [79] - 3:24,
4:2, 4:3, 4:4, 4:5,
8:13, 8:15, 8:16, 8:17,
8:18, 9:12, 9:13, 9:14,
17:18, 18:11, 18:19,
19:5, 19:23, 19:24,
19:25, 20:6, 20:18,
20:19, 22:17, 22:18,
22:19, 75:21, 92:25,
93:3, 93:8, 94:16,
94:20, 96:25, 100:11,
103:1, 103:5, 103:8,
104:11, 110:8,
110:12, 110:16,
122:12, 122:17,
122:21, 122:25,
124:9, 126:12,
126:24, 128:22,

129:3, 132:20,
134:19, 134:20,
134:22, 138:1, 142:1,
145:15, 147:13,
156:12, 164:5, 165:4,
165:5, 165:16, 166:5,
166:13, 166:20,
167:1, 167:5, 167:9,
167:13, 168:2, 168:3,
168:12, 168:17,
171:10, 171:11,
171:13
 **motions** [2] - 3:15,
19:2, 75:7, 75:10,
126:7, 166:22, 171:21
 **motivation** [2] -
135:5, 135:7
 **move** [14] - 18:17,
119:17, 128:11,
132:15, 132:22,
137:14, 139:5, 139:6,
139:7, 139:14,
146:14, 146:18,
146:19
 **moved** [1] - 103:4
 **moves** [1] - 103:5
 **moving** [2] - 8:20,
128:7
 **MR** [222] - 3:10, 9:16,
9:18, 9:23, 10:8,
10:10, 11:9, 12:1,
12:13, 12:17, 13:5,
13:13, 13:19, 13:24,
14:5, 14:12, 14:24,
15:20, 15:25, 16:6,
16:16, 16:20, 17:20,
18:25, 19:21, 19:23,
20:5, 20:8, 20:10,
26:1, 29:11, 31:23,
32:2, 32:17, 32:19,
33:2, 33:11, 33:15,
33:23, 34:2, 35:9,
35:23, 36:11, 36:17,
37:16, 37:25, 38:2,
38:13, 38:24, 39:21,
39:23, 40:1, 40:3,
40:6, 40:17, 41:2,
43:4, 43:10, 43:16,
43:18, 45:8, 45:25,
46:5, 46:22, 47:9,
49:12, 51:8, 52:11,
52:15, 53:1, 53:8,
54:2, 55:14, 56:4,
56:7, 56:18, 56:22,
57:5, 57:19, 58:10,
58:13, 58:16, 58:18,
59:18, 59:24, 60:1,
60:4, 60:8, 60:11,
60:18, 61:2, 62:4,
62:16, 62:24, 63:6,

63:11, 63:17, 67:10, 68:22, 68:24, 70:2, 71:13, 71:17, 71:22, 71:25, 72:25, 74:1, 75:11, 75:15, 79:15, 79:17, 79:19, 79:21, 83:7, 83:20, 83:23, 84:5, 84:9, 84:13, 84:21, 85:15, 93:14, 93:25, 94:13, 94:21, 95:10, 95:16, 95:24, 96:11, 98:3, 98:10, 98:23, 99:8, 100:1, 100:4, 100:8, 100:15, 100:17, 100:20, 100:23, 101:2, 104:12, 107:4, 108:22, 109:5, 109:11, 109:14, 109:16, 109:20, 110:3, 110:19, 116:23, 118:14, 124:13, 124:16, 124:20, 124:22, 124:25, 125:2, 125:4, 125:6, 125:9, 125:11, 125:17, 126:4, 127:21, 127:23, 130:12, 132:3, 133:9, 133:15, 133:17, 133:23, 135:2, 135:17, 135:21, 137:5, 142:10, 142:18, 142:21, 144:21, 145:9, 145:12, 146:7, 146:17, 147:8, 148:1, 148:17, 150:3, 158:2, 158:4, 158:9, 158:19, 160:13, 160:24, 161:4, 161:9, 161:15, 161:18, 161:25, 162:21, 163:12, 163:20, 164:2, 164:22, 165:22, 166:14, 167:11, 167:16, 167:19, 167:22, 168:1, 168:10, 168:14, 168:19, 170:5, 170:8, 170:15, 170:19, 170:22, 172:11, 172:13

**MS** [275] - 3:5, 4:23, 5:22, 6:14, 7:14, 7:16, 7:21, 8:3, 16:21, 19:3, 19:5, 19:22, 20:11, 20:14, 21:3, 21:9, 21:13, 21:19, 21:25, 22:2, 22:6, 22:9, 22:12, 22:25, 23:24,

24:1, 24:20, 24:23, 25:21, 26:14, 27:8, 28:12, 28:23, 32:23, 36:20, 38:18, 39:1, 39:6, 39:14, 39:20, 42:6, 42:17, 47:21, 48:21, 55:6, 56:3, 63:21, 64:1, 64:5, 65:3, 65:11, 65:23, 66:2, 66:9, 70:16, 70:18, 70:21, 71:9, 71:15, 73:1, 73:6, 73:9, 73:11, 73:13, 73:16, 73:24, 74:2, 74:6, 74:15, 74:19, 74:24, 75:2, 75:3, 75:14, 75:25, 76:5, 76:9, 77:11, 77:13, 77:18, 77:22, 78:4, 78:9, 78:21, 78:23, 78:25, 79:3, 79:9, 79:13, 79:16, 79:18, 79:20, 79:23, 80:3, 80:7, 80:17, 80:23, 80:25, 81:4, 81:16, 81:23, 81:25, 82:6, 82:24, 82:25, 83:3, 83:6, 83:9, 83:11, 83:22, 84:1, 84:2, 84:8, 84:10, 84:15, 84:20, 84:25, 85:6, 85:9, 85:10, 85:14, 85:19, 85:22, 86:2, 86:6, 86:12, 86:14, 86:17, 86:19, 86:20, 86:24, 87:8, 87:15, 87:21, 88:12, 88:16, 89:4, 89:8, 89:12, 89:16, 89:20, 89:23, 90:1, 90:6, 90:9, 90:11, 90:13, 90:15, 90:16, 90:19, 90:20, 90:21, 90:23, 91:3, 91:5, 91:7, 91:9, 92:2, 92:21, 92:23, 93:5, 96:1, 96:18, 96:23, 97:2, 97:4, 97:7, 97:8, 97:12, 98:2, 98:9, 99:9, 99:10, 100:3, 100:13, 100:21, 101:8, 101:13, 101:16, 102:5, 102:15, 103:2, 103:10, 103:18, 103:23, 104:2, 104:8, 104:15, 104:18, 104:22, 104:25, 105:4, 105:8, 105:9, 105:12, 105:18, 106:7, 106:11, 106:15, 107:11,

107:14, 107:19, 108:12, 108:18, 110:4, 110:5, 110:6, 110:10, 110:18, 110:22, 110:24, 111:1, 111:5, 111:10, 111:19, 111:21, 112:11, 112:21, 113:24, 114:17, 114:21, 114:23, 115:1, 115:25, 116:11, 116:16, 117:9, 118:5, 118:20, 118:24, 119:1, 119:4, 119:6, 119:8, 119:20, 119:23, 120:21, 121:6, 121:9, 121:12, 122:9, 122:10, 122:14, 124:7, 124:12, 125:18, 126:2, 126:11, 126:15, 150:5, 150:9, 157:2, 160:18, 160:21, 161:14, 161:16, 162:9, 163:3, 163:9, 163:21, 163:24, 164:3, 164:9, 164:25, 165:18, 165:24, 166:1, 166:8, 168:9, 168:22, 169:21, 170:25, 171:17, 172:8, 172:17

**multiple** [3] - 123:8, 153:21, 161:21

**must** [5] - 109:13, 115:15, 116:14, 152:17, 152:18

**mutual** [1] - 170:2

# N

**name** [1] - 102:17
**narrow** [10] - 5:20, 7:6, 23:9, 55:3, 85:19, 85:24, 87:5, 110:11, 120:21, 135:21
**narrowed** [5] - 4:24, 5:3, 5:16, 23:10, 85:23
**narrower** [1] - 17:1
**narrowing** [2] - 5:4, 5:13
**national** [1] - 102:22
**native** [13] - 35:24, 37:13, 37:19, 37:20, 44:6, 47:17, 65:5, 69:9, 69:17, 69:18, 70:4, 72:18, 99:1
**nature** [9] - 7:2, 43:1, 93:16, 102:23,

105:25, 114:3, 141:25, 147:25, 153:8
**nauseam** [1] - 117:17
**NDA** [6] - 108:23, 109:3, 109:6, 109:15, 109:18, 109:25
**near** [1] - 65:12
**necessarily** [2] - 85:1, 136:20
**necessary** [9] - 28:15, 37:4, 77:20, 97:20, 106:20, 126:21, 127:7, 131:17, 155:2
**necessity** [1] - 15:11
**need** [51] - 18:23, 23:20, 27:5, 27:7, 27:9, 27:10, 44:23, 45:7, 59:20, 64:5, 64:9, 66:8, 69:8, 72:21, 75:1, 76:3, 80:20, 81:23, 82:15, 86:21, 88:14, 96:16, 99:21, 101:25, 102:12, 111:23, 111:25, 112:4, 116:7, 119:9, 119:12, 119:15, 120:24, 127:17, 129:19, 133:5, 144:14, 146:22, 147:19, 148:12, 149:25, 156:19, 157:4, 158:16, 163:1, 164:7, 164:10, 164:21, 168:24, 171:16, 172:5
**needed** [8] - 28:1, 72:24, 126:20, 126:24, 128:10, 132:15, 150:14, 157:11
**needle** [1] - 103:6
**needs** [14] - 32:23, 32:25, 59:14, 68:18, 70:10, 70:12, 113:20, 135:12, 144:16, 146:2, 170:18, 170:20, 170:24, 171:3
**nefarious** [1] - 15:15
**negative** [1] - 84:4
**negotiating** [1] - 123:16
**never** [5] - 10:1, 53:14, 133:25, 147:3, 162:7
**new** [6] - 26:12, 29:10, 31:21, 32:15, 72:17, 140:6
**newer** [1] - 34:17

**news** [1] - 76:5
**next** [16] - 3:25, 7:13, 7:18, 22:17, 59:8, 75:10, 77:3, 83:19, 93:4, 96:24, 109:19, 109:22, 110:15, 142:23, 160:22
**night** [3] - 5:15, 17:10, 65:11
**nine** [4] - 12:5, 12:20, 158:13
**nitpick** [1] - 19:10
**NO** [1] - 1:2
**non** [2] - 55:9, 88:3
**non-iOS** [1] - 55:9
**non-privileged** [1] - 88:3
**none** [4] - 35:14, 141:16, 158:23, 159:11
**Nos** [1] - 77:4
**notably** [1] - 132:17
**note** [5] - 90:16, 103:2, 133:24, 151:5, 151:8
**notes** [3] - 80:7, 80:19, 90:3
**nothing** [11] - 7:5, 11:4, 11:7, 44:16, 51:16, 52:6, 117:4, 130:18, 132:13, 151:20, 162:11
**notice** [17] - 4:9, 21:8, 22:21, 104:6, 104:16, 104:23, 105:1, 105:2, 126:23, 131:10, 132:22, 133:21, 133:24, 133:25, 134:16, 166:4, 168:15
**noticed** [1] - 126:17
**notices** [3] - 127:25, 128:1, 150:19
**November** [3] - 132:9, 134:6, 150:19
**nuances** [1] - 131:24
**number** [20] - 3:15, 5:9, 13:15, 13:17, 15:1, 16:22, 20:19, 23:8, 27:15, 53:7, 73:7, 76:12, 76:15, 96:2, 123:12, 151:14, 154:1, 158:25, 169:9, 171:21
**numbers** [6] - 7:23, 8:4, 8:6, 12:19, 53:3
**numerous** [2] - 13:21, 122:25
**nuts** [1] - 37:12
**nutshell** [1] - 99:6

**O**

**oath** [4] - 139:18, 144:15, 149:7, 149:13
**objected** [3] - 26:6, 71:20, 72:7
**objecting** [1] - 27:14
**objection** [10] - 26:6, 98:20, 98:22, 106:17, 114:16, 114:20, 165:5, 166:5, 169:15, 171:11
**objections** [5] - 23:10, 71:23, 101:10, 106:16, 168:3
**obligation** [1] - 10:24
**obtain** [1] - 157:4
**obtaining** [1] - 78:12
**obvious** [1] - 91:21
**obviously** [9] - 48:24, 66:24, 87:7, 105:22, 115:19, 127:6, 131:6, 137:22, 171:20
**occur** [3] - 35:12, 156:25, 162:13
**occurred** [2] - 34:9, 145:23
**occurring** [1] - 30:6
**occurs** [1] - 157:12
**odds** [1] - 142:2
**OF** [1] - 1:1
**offer** [3] - 63:23, 126:22, 159:22
**offered** [12] - 45:2, 45:19, 46:3, 47:3, 48:1, 48:16, 52:21, 55:16, 56:13, 69:21, 72:10, 126:18
**offers** [1] - 15:15
**office** [1] - 133:3, 137:9
**office's** [1] - 137:7
**officer** [1] - 131:18, 165:10
**offices** [2] - 137:7, 164:25
**Olas** [1] - 2:3
**old** [10] - 29:10, 32:7, 32:9, 32:15, 33:4, 33:13, 33:21, 33:24, 33:25, 34:4
**older** [2] - 34:16, 34:17
**omission** [1] - 32:7
**on-premises** [4] - 25:7, 27:10, 36:22, 36:24
**once** [6] - 23:19,

30:20, 50:5, 76:11, 110:1, 116:12
**one** [102] - 8:8, 11:13, 16:4, 20:3, 20:11, 22:22, 24:2, 25:15, 26:23, 28:6, 30:12, 31:23, 32:10, 37:17, 45:11, 48:3, 48:22, 49:1, 49:18, 50:1, 53:5, 54:25, 56:9, 56:10, 56:15, 56:24, 57:6, 59:24, 60:1, 60:5, 60:7, 60:21, 60:23, 61:2, 61:12, 61:16, 61:17, 61:23, 62:2, 63:23, 64:17, 65:20, 67:20, 70:22, 71:3, 71:11, 85:3, 85:7, 88:10, 90:18, 94:22, 95:8, 95:18, 107:4, 107:12, 107:13, 107:21, 107:23, 110:15, 110:24, 117:17, 117:25, 123:6, 123:25, 126:1, 127:11, 127:13, 128:2, 128:16, 128:21, 128:24, 129:4, 130:10, 134:21, 135:17, 135:18, 136:20, 143:14, 146:15, 148:3, 148:6, 148:17, 152:2, 153:21, 153:24, 155:5, 157:7, 158:12, 159:13, 160:25, 161:2, 161:4, 161:5, 161:9, 161:19, 166:16, 169:24, 171:17
**one-hour** [2] - 127:11, 152:2
**one-sided** [1] - 53:5
**ones** [6] - 13:10, 15:22, 16:2, 89:13, 90:22
**online** [1] - 40:4
**open** [4] - 42:9, 63:1, 66:15, 77:1
**operate** [1] - 65:1
**operated** [14] - 35:6, 35:7, 45:3, 45:20, 46:4, 46:21, 47:4, 47:8, 48:17, 55:17, 61:1, 63:16, 69:22, 72:11
**operating** [13] - 25:20, 39:12, 45:5, 45:22, 47:6, 48:19,

55:19, 56:14, 56:20, 62:11, 69:23, 72:13, 117:19
**operation** [2] - 35:9, 41:2
**opinion** [4] - 58:9, 130:8, 143:11, 151:8
**opposed** [1] - 51:4
**opposing** [5] - 109:24, 109:25, 112:10, 149:24, 163:5
**opposition** [3] - 20:18, 122:24, 165:19
**option** [1] - 130:8
**order** [51] - 5:20, 6:13, 6:16, 7:7, 7:11, 8:22, 17:7, 19:20, 22:20, 26:15, 28:11, 32:25, 37:3, 94:20, 96:25, 100:12, 103:16, 104:22, 105:3, 120:11, 122:22, 126:13, 126:25, 132:18, 132:23, 134:11, 138:1, 140:10, 140:13, 142:2, 145:15, 146:8, 146:14, 146:15, 146:17, 152:16, 165:6, 165:14, 166:11, 166:21, 166:22, 166:25, 168:4, 168:8, 168:14, 169:2, 169:8, 169:15, 170:7, 172:15
**ordered** [4] - 5:7, 5:18, 7:4, 77:7
**ordering** [1] - 21:21
**ordinary** [1] - 26:19
**organization** [1] - 152:4
**organized** [2] - 26:24, 65:16
**organizing** [1] - 26:22
**originally** [2] - 5:18, 150:11
**OS** [3] - 124:16, 124:17, 125:13
**otherwise** [3] - 55:1, 83:13, 83:14
**outside** [4] - 26:8, 26:9, 131:16, 134:15
**outstanding** [1] - 105:7
**overall** [1] - 155:7
**overarching** [1] - 128:21
**overbroad** [5] -

50:25, 106:19, 112:12, 113:20, 120:18
**overly** [1] - 14:20
**oversees** [1] - 123:7
**overwhelmed** [1] - 12:6
**overwhelming** [1] - 15:10
**own** [23] - 15:23, 25:4, 31:7, 47:22, 54:9, 58:8, 80:7, 113:4, 113:5, 115:17, 116:2, 117:12, 118:1, 118:6, 129:2, 130:13, 140:4, 142:4, 144:11, 144:14, 148:25, 149:24, 169:22

**P**

**p.m** [4] - 104:17, 157:8, 157:14
**package** [1] - 48:20
**Page** [10] - 4:9, 28:14, 40:11, 91:5, 91:8, 105:11, 107:14, 111:8, 112:13, 151:17
**Pages** [1] - 1:8
**pages** [1] - 130:5
**paid** [1] - 152:21
**PALM** [1] - 1:2
**Palm** [2] - 1:4, 1:23
**paper** [2] - 113:18, 120:15
**papers** [3] - 8:18, 16:23, 122:19
**Paragraph** [6] - 6:15, 7:12, 10:11, 28:13, 37:3, 166:25
**parameters** [4] - 4:20, 6:6, 7:10, 131:4
**paramount** [1] - 93:7
**parcel** [1] - 99:20
**parent** [2] - 92:25, 103:4
**part** [21] - 22:25, 23:11, 46:2, 46:20, 64:8, 64:11, 74:19, 99:20, 100:11, 101:16, 112:22, 114:13, 115:9, 121:2, 121:6, 121:17, 138:23, 139:17, 155:10, 166:22
**particular** [4] - 12:22, 26:15, 128:22, 158:14
**parties** [43] - 3:16,

3:18, 3:20, 5:7, 7:4, 11:24, 22:24, 23:16, 29:6, 34:23, 36:8, 37:1, 39:9, 44:23, 45:10, 45:14, 45:15, 45:16, 53:14, 53:20, 53:22, 53:24, 75:22, 89:18, 89:21, 90:2, 91:18, 97:20, 101:1, 102:1, 117:3, 124:1, 134:25, 153:17, 155:13, 155:20, 156:6, 156:10, 156:14, 157:9, 162:5, 166:23
**parties'** [4] - 4:8, 37:3, 49:8, 122:19
**partly** [1] - 115:25
**parts** [5] - 67:24, 68:2, 68:3, 68:8, 69:6
**party** [7] - 3:24, 87:3, 93:8, 131:18, 132:24, 133:20, 134:22
**party's** [2] - 4:2, 26:20
**past** [1] - 118:11
**patch** [21] - 44:5, 47:22, 48:8, 64:3, 64:5, 64:6, 64:10, 64:21, 64:25, 65:2, 65:10, 66:3, 66:5, 67:4, 67:6, 68:19, 68:20, 68:23, 69:17, 70:4
**patches** [9] - 46:10, 47:14, 59:2, 64:2, 65:21, 66:1, 71:2, 72:20, 97:10
**pattern** [1] - 149:19
**pause** [2] - 75:18, 166:18
**paying** [1] - 52:24, 139:10
**pdf** [4] - 27:5, 32:25, 35:22, 68:20
**pdfs** [6] - 26:21, 26:22, 65:4, 65:7, 65:15, 65:18
**pending** [3] - 20:2, 83:19, 103:1
**people** [43] - 12:23, 13:2, 13:21, 15:9, 16:4, 16:7, 16:9, 29:23, 49:2, 50:18, 51:13, 51:19, 51:20, 51:21, 74:3, 95:20, 108:1, 108:23, 109:2, 124:3, 128:18, 129:7, 131:22, 135:18, 138:2, 138:6, 141:6,

142:3, 144:4, 144:11, 145:21, 145:22, 148:6, 148:24, 149:8, 153:21, 155:5, 159:6, 159:18, 160:4, 162:1, 169:6
**people's** [2] - 15:2, 159:23
**per** [3] - 7:11, 91:17, 118:7
**percent** [4] - 17:9, 101:17, 129:12, 129:20
**perception** [3] - 54:18, 130:25, 131:1
**perfect** [3] - 94:21, 110:3, 163:20
**perfectly** [2] - 20:21, 34:11
**performed** [8] - 111:13, 112:1, 112:14, 112:25, 114:14, 115:11, 121:4, 121:18
**perhaps** [1] - 157:14
**period** [3] - 22:13, 156:5, 161:8
**periods** [1] - 50:17
**peripheral** [1] - 155:7
**permit** [1] - 67:25
**permits** [1] - 145:5
**permitted** [2] - 145:6, 165:11
**person** [7] - 44:12, 66:23, 96:6, 130:1, 142:23, 153:23, 156:7
**person's** [1] - 145:14
**personal** [17] - 79:15, 79:22, 113:11, 113:12, 123:21, 123:25, 127:1, 130:14, 135:24, 136:21, 137:23, 138:16, 143:11, 145:25, 146:23, 152:5, 157:18
**personally** [3] - 39:15, 135:15, 171:19
**persons** [5] - 8:9, 18:21, 88:24, 112:2
**perspective** [2] - 15:13, 169:1
**pertain** [1] - 9:2
**Petrella** [1] - 153:2
**phone** [8] - 113:11, 139:3, 139:7, 140:3, 140:4, 171:22, 171:23, 172:3
**phones** [7] - 113:12,

140:9, 140:11, 140:12, 140:15, 140:21
**physical** [1] - 39:10
**pick** [1] - 128:16
**Pincow** [1] - 3:6
**PINCOW** [1] - 1:17
**pinned** [1] - 162:2
**piracy** [7] - 34:18, 41:14, 42:4, 51:4, 57:16, 57:24, 58:5
**pirate** [1] - 67:12
**pirated** [1] - 140:20
**pitch** [1] - 127:12
**pitched** [1] - 139:16
**place** [4] - 11:6, 30:1, 65:8, 169:2
**placed** [1] - 22:13
**Plaintiff** [4] - 1:5, 3:4, 159:16, 167:1
**PLAINTIFF** [1] - 1:14
**Plaintiff's** [1] - 122:22
**Plaintiffs** [1] - 76:14
**plan** [4] - 36:23, 106:17, 106:22, 141:11
**plans** [15] - 82:12, 82:13, 105:14, 105:15, 105:23, 106:6, 106:8, 107:1, 107:3, 107:8
**platform** [39] - 26:18, 43:14, 46:24, 49:12, 49:16, 50:11, 50:22, 51:2, 51:3, 51:7, 51:9, 52:5, 52:10, 52:14, 52:16, 54:21, 55:20, 56:9, 57:6, 57:12, 58:11, 58:14, 58:19, 58:23, 58:25, 59:1, 59:3, 59:16, 59:23, 60:3, 60:15, 61:21, 61:22, 69:2, 70:1, 72:15, 92:7
**play** [5] - 11:21, 24:6, 56:25, 65:17, 159:12
**played** [2] - 23:4, 54:9
**playing** [3] - 51:25, 95:13, 95:14
**plead** [1] - 148:11
**pleadings** [1] - 15:23
**pleases** [1] - 146:18
**plug** [1] - 33:12
**point** [23] - 12:17, 20:12, 33:3, 50:4, 58:24, 69:19, 75:13, 77:15, 83:25, 94:9, 96:1, 138:25, 144:4,

144:21, 150:11, 150:18, 150:22, 151:5, 151:8, 151:10, 152:15, 156:13, 168:6
**points** [4] - 66:11, 141:15, 154:22, 158:6
**policies** [2] - 114:8
**pops** [1] - 120:5
**populate** [1] - 24:15
**portion** [12] - 28:11, 44:13, 47:14, 59:15, 89:24, 91:14, 92:6, 121:10, 140:7, 153:11, 170:18, 171:6
**portions** [8] - 39:18, 40:12, 40:16, 41:4, 41:17, 44:5, 53:10, 62:10
**position** [32] - 25:13, 25:14, 34:8, 42:13, 57:17, 66:5, 66:8, 82:10, 88:5, 88:20, 99:12, 99:13, 112:12, 115:8, 118:19, 130:17, 132:8, 136:8, 136:10, 142:2, 144:9, 144:15, 147:3, 147:5, 147:21, 156:7, 156:8, 157:17, 157:21, 172:6
**positions** [6] - 49:8, 81:1, 136:7, 138:2, 144:17, 172:5
**possible** [9] - 31:17, 95:17, 155:15, 162:12, 162:13, 162:19, 164:18, 164:20, 171:21
**possibly** [4] - 11:11, 45:8, 45:9, 102:22
**post** [1] - 28:24
**potential** [19] - 9:2, 10:23, 13:20, 13:25, 15:4, 18:1, 21:14, 21:21, 22:12, 50:17, 51:13, 73:20, 73:22, 87:1, 87:11, 87:12, 109:1, 127:4
**potentially** [3] - 88:3, 107:23, 108:1
**practical** [1] - 140:14
**precisely** [1] - 43:16
**preclude** [3] - 108:14, 108:23, 131:2
**precluded** [1] - 38:3
**precludes** [1] - 123:12
**prefatory** [1] - 127:23
**prejudice** [2] - 137:17, 171:13

**prejudiced** [1] - 153:5
**preloading** [1] - 25:2
**premises** [5] - 25:7, 27:10, 36:22, 36:24, 48:10
**prep** [1] - 144:7
**preparation** [1] - 151:18
**prepare** [1] - 141:8
**prepared** [2] - 23:22, 103:14, 172:4
**preparing** [1] - 115:6
**present** [7] - 17:22, 105:16, 106:9, 107:2, 107:9, 124:3, 141:11
**presented** [3] - 16:23, 138:19, 138:22
**presently** [1] - 26:19
**preserve** [1] - 101:9
**president** [11] - 123:5, 124:16, 124:17, 125:13, 128:23, 130:15, 131:18, 136:17, 136:18, 145:2, 154:8
**president's** [1] - 134:14
**presidential** [1] - 145:3
**presidents** [3] - 127:16, 128:16, 154:7
**pressure** [1] - 132:16
**presume** [2] - 149:3, 149:23
**presuming** [1] - 109:11
**pretty** [9] - 13:11, 47:13, 49:8, 98:25, 100:4, 144:15, 153:23, 164:7, 168:22
**prevail** [1] - 147:14
**previous** [1] - 81:19
**previously** [1] - 42:22
**price** [2] - 152:21, 153:14
**primarily** [2] - 9:19, 128:19
**primary** [1] - 22:22
**principal** [1] - 133:11
**principally** [1] - 108:18
**principals** [1] - 6:20
**printed** [1] - 65:18
**printed-out** [1] - 65:18
**privacy** [1] - 124:23
**privilege** [3] - 76:22, 88:7

**privileged** [4] - 87:7, 88:2, 88:3, 88:6
**pro** [1] - 118:16
**problem** [19] - 16:13, 16:15, 35:17, 37:14, 41:16, 53:8, 54:1, 57:14, 60:20, 63:11, 64:11, 116:4, 137:24, 146:6, 146:18, 164:5, 167:21, 171:1
**problems** [1] - 17:3
**procedural** [2] - 148:3, 156:13
**procedural-logistical** [1] - 156:13
**procedure** [2] - 137:10, 164:16
**Procedure** [1] - 8:21
**procedures** [1] - 112:7
**proceed** [2] - 72:8, 150:15
**proceedings** [3] - 171:7, 172:19, 173:4
**process** [20] - 3:17, 18:16, 36:7, 114:2, 115:6, 123:22, 131:8, 131:14, 134:3, 134:6, 134:12, 134:14, 137:8, 139:8, 139:14, 139:17, 139:24, 145:23, 147:1, 169:2
**processes** [1] - 139:6
**processing** [1] - 139:3
**processor** [1] - 139:8
**produce** [73] - 10:5, 13:23, 18:12, 19:12, 19:13, 21:21, 21:23, 22:18, 23:8, 26:2, 26:13, 27:16, 27:22, 27:23, 28:3, 28:4, 31:23, 31:25, 33:14, 52:2, 56:1, 62:15, 63:8, 63:9, 67:10, 67:21, 71:1, 71:5, 71:16, 76:15, 77:5, 77:9, 77:15, 80:8, 81:5, 81:17, 82:7, 82:18, 84:16, 84:19, 84:22, 85:1, 85:5, 85:8, 85:10, 87:16, 87:23, 89:8, 93:2, 93:20, 94:11, 94:16, 95:6, 95:15, 96:25, 97:24, 98:21, 98:25, 99:25, 100:19, 106:25, 110:9,

111:17, 112:14, 113:14, 114:3, 114:7, 114:9, 115:10, 154:11, 169:8
**Produce** [1] - 9:1
**produced** [71] - 9:7, 17:9, 18:14, 22:5, 22:16, 26:5, 26:11, 26:18, 27:18, 27:19, 33:9, 37:12, 38:20, 46:12, 47:1, 47:16, 49:19, 54:24, 56:23, 57:1, 59:10, 59:14, 60:18, 61:14, 61:24, 63:7, 63:14, 65:21, 65:25, 71:18, 71:20, 72:2, 72:3, 72:6, 73:23, 78:5, 80:4, 81:8, 81:14, 81:25, 82:3, 82:8, 82:9, 83:17, 83:24, 84:1, 84:14, 84:24, 85:2, 85:3, 85:4, 85:5, 85:20, 88:6, 93:11, 93:17, 96:16, 99:5, 99:17, 106:3, 113:25, 114:2, 115:6, 116:17, 121:16, 121:25, 150:20, 154:3, 165:9
**producing** [13] - 23:6, 23:12, 26:16, 26:20, 61:16, 72:18, 74:3, 78:5, 82:22, 85:9, 95:2, 114:17, 154:7
**product** [228] - 8:11, 14:7, 18:22, 20:23, 21:23, 22:4, 22:24, 23:3, 23:21, 24:3, 24:5, 24:8, 24:12, 24:14, 24:19, 24:21, 25:7, 25:15, 26:8, 26:9, 26:11, 26:25, 27:3, 27:4, 27:6, 27:11, 27:21, 28:2, 28:10, 28:17, 28:20, 28:21, 29:2, 29:8, 29:16, 29:18, 29:21, 30:7, 30:11, 30:14, 31:1, 31:4, 31:11, 31:19, 32:4, 32:12, 32:15, 33:17, 34:14, 35:10, 36:12, 36:16, 37:6, 38:6, 39:10, 39:17, 40:16, 40:20, 42:8, 42:25, 44:1, 44:25, 46:6, 46:9, 46:18, 47:23, 48:6, 48:9, 48:11, 48:12, 49:21, 49:23, 51:2, 51:6, 51:24, 54:8,

54:9, 54:19, 54:20, 55:21, 56:8, 56:16, 57:6, 57:7, 57:8, 57:10, 57:18, 58:4, 59:7, 59:8, 59:11, 59:15, 59:24, 60:1, 60:4, 60:5, 60:7, 60:19, 60:21, 60:22, 61:2, 61:4, 61:10, 61:12, 61:17, 61:22, 62:9, 62:10, 62:12, 62:21, 62:24, 63:24, 64:13, 64:18, 64:19, 65:20, 66:12, 66:14, 66:17, 67:18, 68:11, 68:24, 69:2, 69:15, 69:16, 69:20, 70:5, 70:25, 71:4, 72:10, 72:20, 74:4, 76:13, 76:21, 77:6, 77:14, 77:25, 78:7, 78:13, 78:15, 78:16, 78:17, 79:4, 79:5, 79:7, 79:10, 79:12, 80:11, 80:14, 81:5, 82:12, 82:14, 82:15, 83:14, 83:17, 83:24, 84:6, 84:11, 84:16, 84:18, 84:24, 85:11, 85:20, 85:24, 85:25, 86:4, 86:8, 87:6, 87:17, 87:24, 88:21, 88:23, 89:5, 91:12, 91:18, 92:3, 92:8, 92:13, 92:14, 92:17, 92:20, 93:21, 94:6, 96:12, 97:5, 97:9, 97:13, 97:14, 97:16, 97:20, 97:22, 99:2, 99:14, 99:15, 99:16, 99:17, 101:1, 102:8, 102:12, 105:21, 105:24, 106:10, 106:12, 106:18, 107:2, 107:10, 108:1, 108:25, 111:16, 112:3, 112:17, 113:5, 114:15, 115:14, 116:2, 121:21, 128:17, 140:24, 151:22, 152:22
**Production** [4] - 19:6, 111:4, 111:9, 141:20
**production** [17] - 17:8, 22:8, 23:19, 23:23, 46:19, 49:9, 68:6, 71:11, 72:5, 72:6, 74:11, 75:22, 84:22, 102:9, 115:7, 121:16, 172:3

**products** [36] - 45:1, 45:4, 45:19, 45:21, 46:2, 47:3, 47:5, 48:1, 48:15, 48:18, 49:20, 49:24, 54:24, 55:2, 55:16, 55:18, 56:10, 56:12, 57:5, 57:13, 60:20, 60:25, 61:15, 63:11, 67:22, 69:20, 69:23, 72:10, 72:12, 78:12, 78:20, 111:14, 115:12, 118:9, 121:5, 123:8
**professionals** [1] - 19:11
**proffer** [4] - 14:14, 15:7, 18:6, 94:3
**program** [10] - 5:6, 6:7, 6:9, 6:12, 7:11, 40:24, 114:1, 114:7, 115:5
**promise** [1] - 17:5
**promised** [1] - 39:3
**promote** [1] - 83:13
**promptly** [1] - 101:22
**proper** [3] - 97:21, 146:3, 167:1
**properly** [6] - 15:1, 30:2, 33:19, 76:23, 101:9, 119:15
**property** [1] - 67:1
**proportional** [5] - 9:25, 12:16, 19:15, 106:21, 109:10
**proposal** [1] - 45:18
**propose** [1] - 16:6
**proposed** [6] - 43:17, 48:15, 150:12, 151:21, 167:13
**proposing** [3] - 17:1, 49:6, 49:13
**proprietary** [2] - 44:18, 98:22
**prosecutor** [1] - 131:13
**protected** [1] - 57:25
**protection** [1] - 63:2
**protective** [22] - 26:15, 32:24, 94:19, 96:25, 100:12, 117:4, 122:21, 126:13, 126:25, 132:23, 138:1, 142:2, 145:15, 165:6, 165:14, 166:10, 168:4, 168:8, 168:14, 169:2, 169:8, 170:7
**protocols** [1] - 114:7
**prove** [1] - 119:15

**provide** [45] - 4:5, 7:2, 7:22, 7:23, 8:23, 11:23, 14:4, 16:6, 16:9, 16:11, 21:5, 24:7, 28:15, 32:13, 32:14, 34:5, 35:19, 35:24, 37:18, 37:19, 38:13, 39:3, 41:7, 41:11, 49:20, 53:6, 53:7, 69:9, 73:20, 74:7, 87:8, 95:24, 96:13, 112:5, 115:20, 120:22, 129:2, 136:3, 140:13, 142:14, 142:18, 167:1, 169:13, 169:16, 170:19
**provided** [25] - 4:18, 8:7, 11:1, 20:24, 25:17, 30:4, 32:24, 44:6, 44:14, 50:8, 52:19, 54:16, 65:1, 68:20, 69:3, 69:15, 69:18, 70:5, 72:20, 73:16, 73:18, 127:24, 141:4, 142:1
**provider** [1] - 13:7
**provides** [5] - 11:7, 26:15, 40:14, 65:20, 139:24
**providing** [11] - 6:4, 8:4, 28:9, 46:13, 49:24, 50:5, 52:23, 69:11, 69:16, 144:1, 169:20
**provision** [1] - 119:25
**provisionally** [1] - 171:2
**proximity** [1] - 148:7
**prying** [1] - 50:15
**public** [4] - 167:4, 167:10, 171:5, 171:8
**publicly** [3] - 107:25, 168:18, 170:13
**purchase** [4] - 8:9, 18:22, 93:20, 97:13
**purchased** [1] - 40:23
**purchases** [1] - 59:15
**purpose** [3] - 43:1, 120:2, 152:3
**purposes** [12] - 40:13, 41:7, 41:10, 42:2, 42:3, 61:21, 78:13, 79:25, 124:9, 157:3, 160:7
**pursuant** [4] - 37:2, 86:3, 165:6, 168:4

**pursue** [2] - 120:11, 171:13
**push** [1] - 107:21
**pushed** [1] - 132:6
**put** [21] - 13:16, 24:24, 31:6, 34:4, 43:11, 43:25, 62:8, 69:4, 69:5, 95:5, 117:17, 128:18, 129:19, 131:3, 134:10, 137:5, 138:1, 142:2, 146:9, 158:21, 160:14

## Q

**qualifies** [1] - 64:18
**qualify** [1] - 4:20
**quash** [8] - 3:24, 4:2, 4:3, 92:25, 93:8, 103:1, 103:4, 103:5
**questioned** [1] - 146:2
**questions** [2] - 137:2, 145:23
**quick** [2] - 83:8, 107:13
**quickly** [1] - 142:19
**quite** [1] - 10:1
**quiz** [1] - 155:9
**quote** [3] - 10:16, 10:25, 130:12
**quote-unquote** [2] - 10:16, 10:25

## R

**rabbit** [1] - 22:1
**radar** [1] - 158:21
**raise** [3] - 20:11, 38:15, 38:16
**raised** [2] - 126:20, 148:4
**rampage** [1] - 50:18
**ran** [1] - 29:20
**random** [2] - 29:25, 65:15
**ranking** [2] - 131:23, 136:4
**rather** [6] - 8:24, 16:7, 78:10, 89:5, 119:23, 137:21
**RDR** [2] - 2:5, 173:8
**reached** [1] - 36:14
**read** [15] - 6:13, 8:17, 33:4, 40:6, 45:7, 55:15, 64:7, 76:1, 80:11, 103:13, 107:4, 122:19, 123:2, 133:4,

147:15
**reading** [1] - 144:23
**ready** [2] - 150:23,
171:5
**real** [3] - 83:7,
102:11, 137:7
**realistic** [1] - 140:14
**really** [30] - 9:18,
11:5, 11:23, 13:9,
14:7, 15:16, 30:21,
42:2, 42:15, 46:14,
54:13, 59:20, 67:3,
94:4, 94:5, 96:10,
98:8, 108:16, 118:17,
120:13, 128:5,
136:17, 148:14,
152:14, 153:1,
154:14, 155:1,
156:12, 159:11, 165:6
**reason** [15] - 6:6,
14:25, 18:18, 32:2,
35:16, 66:14, 99:18,
128:7, 135:21,
137:20, 139:25,
148:21, 150:11,
158:25
**reasonable** [1] -
19:14
**reasons** [4] - 41:20,
42:14, 123:13, 158:25
**rebuild** [1] - 36:3
**recede** [1] - 147:8
**receding** [1] - 44:9
**received** [1] - 156:1
**recent** [1] - 26:2
**recently** [2] - 29:15,
34:15
**recitation** [1] -
135:16
**recognize** [4] -
137:13, 140:7,
141:24, 168:23
**recollection** [5] -
14:19, 138:5, 141:18,
152:4, 152:9
**reconsider** [1] -
11:15
**reconsideration** [1]
- 8:13, 8:15, 8:16,
8:17, 8:19, 9:12, 9:14,
9:15, 17:4, 18:11,
19:25
**reconsidering** [1] -
8:22
**record** [19] - 13:16,
40:6, 47:18, 74:17,
74:20, 76:2, 82:11,
83:8, 84:21, 111:7,
130:13, 134:4, 158:5,
158:15, 158:20,

167:10, 168:24,
168:25, 171:9
**RECORDING** [1] -
1:11
**recording** [4] -
75:18, 166:18,
170:11, 171:5
**red** [2] - 18:8, 119:23
**red-herring** [1] - 18:8
**redact** [2] - 102:18,
106:20
**redacted** [4] - 167:4,
167:7, 167:9, 168:17
**redactions** [2] -
167:8, 167:13
**redundancy** [2] -
145:13, 145:15
**redundant** [2] -
145:8, 145:10
**reference** [2] -
108:17, 108:19
**referenced** [1] -
93:17
**references** [1] -
82:14
**referred** [1] - 57:16
**referring** [8] -
111:12, 112:25,
114:14, 115:2,
115:11, 116:5,
121:18, 143:1
**reflected** [1] - 9:20
**reflecting** [1] - 73:18
**reflects** [2] - 138:9,
152:2
**refused** [4] - 8:11,
27:16, 71:1, 126:22
**refusing** [4] - 23:8,
27:23, 28:3, 28:4
**regard** [1] - 122:20
**regarding** [2] - 5:8,
9:6, 20:19, 87:3, 87:5,
91:12, 91:24, 92:16,
92:20, 99:1, 106:10,
106:12, 107:2, 107:9,
110:8, 110:12,
113:22, 115:22,
116:6, 122:1, 122:17,
165:14
**regards** [2] - 8:18,
126:7
**reins** [1] - 144:8
**rejected** [31] - 10:20,
11:22, 13:23, 14:1,
14:3, 14:8, 14:11,
15:4, 15:9, 15:17,
15:22, 16:3, 16:4,
16:9, 16:12, 16:14,
17:21, 18:5, 18:12,
18:13, 18:21, 18:23,

19:14, 21:20, 73:25,
85:17, 86:11, 87:9,
95:22
**rejecting** [1] - 147:21
**rejection** [2] - 13:10,
14:11
**relate** [23] - 21:14,
47:11, 60:22, 60:23,
60:25, 61:13, 61:24,
62:4, 62:9, 68:13,
71:13, 78:13, 82:14,
84:18, 91:9, 93:18,
97:13, 98:5, 114:9,
137:22, 144:13,
158:14, 159:10
**related** [21] - 6:9,
6:11, 29:24, 31:12,
44:10, 46:14, 49:17,
49:19, 50:22, 67:11,
67:13, 67:22, 77:5,
77:16, 83:24, 87:16,
98:6, 106:11, 106:18,
113:14, 167:13
**relates** [42] - 12:13,
12:19, 19:7, 31:25,
44:14, 44:15, 46:9,
50:9, 52:4, 52:18,
54:15, 55:22, 60:19,
61:19, 62:7, 67:17,
68:1, 68:16, 68:17,
71:18, 72:2, 72:16,
78:19, 80:13, 92:6,
93:20, 93:22, 94:23,
94:25, 98:15, 106:17,
116:3, 116:25, 129:3,
130:23, 132:4,
135:19, 137:17,
137:19, 143:20,
168:14
**relating** [33] - 26:7,
26:10, 51:10, 71:1,
71:6, 73:17, 77:10,
78:11, 84:6, 84:23,
86:7, 86:24, 87:9,
87:10, 88:3, 91:14,
92:1, 92:10, 92:19,
95:19, 98:4, 105:13,
106:5, 106:12,
106:25, 107:7,
112:14, 113:18,
118:9, 119:1, 119:4,
119:17, 121:12
**relationship** [2] -
91:20, 170:13
**relationships** [2] -
169:3, 169:9
**relative** [2] - 10:18,
10:23
**released** [1] - 169:11
**relevance** [7] -

15:14, 18:8, 50:6,
93:7, 117:16, 154:18,
162:10
**relevant** [33] - 9:5,
9:25, 11:5, 12:15,
19:15, 44:13, 87:11,
88:23, 92:24, 96:8,
96:14, 96:17, 105:24,
107:22, 109:10,
110:2, 113:15,
117:24, 123:18,
123:21, 130:15,
135:21, 147:19,
152:14, 152:18,
152:25, 153:2,
153:11, 154:10,
157:19, 158:24,
158:25, 162:17
**relied** [1] - 169:7
**relies** [1] - 153:4
**relieving** [2] -
139:14, 139:15
**rely** [1] - 148:12
**relying** [2] - 67:7,
82:4
**remaining** [1] - 82:11
**remember** [1] - 134:7
**remind** [1] - 14:16
**remote** [1] - 143:23
**remove** [1] - 105:20
**removed** [1] - 31:5
**reopen** [1] - 77:20
**repetitive** [1] -
143:12
**replicate** [1] - 140:23
**replicating** [1] -
85:23
**replication** [1] -
141:12
**reply** [3] - 22:20,
104:5, 123:1
**report** [2] - 38:4,
143:3
**reported** [2] - 4:15,
6:21
**Reporterlisaedwar
ds@gmail.com** [2] -
2:6, 173:9
**reports** [1] - 123:10
**represent** [1] - 84:13
**representation** [1] -
38:11
**representative** [1] -
122:5
**represented** [1] -
99:23
**represents** [1] - 66:1
**reproduce** [2] -
38:19, 67:12
**reproduction** [3] -

35:11, 35:13, 50:23
**Request** [10] - 76:20,
76:24, 77:7, 78:9,
80:1, 87:23, 87:25,
111:3, 111:8, 141:20
**request** [17] - 19:6,
22:7, 23:23, 30:20,
30:21, 30:23, 31:3,
75:22, 78:10, 84:5,
86:14, 106:19, 112:9,
112:23, 121:1,
121:16, 167:2
**requested** [4] - 8:9,
21:1, 80:17, 88:18
**Requests** [3] - 9:1,
19:6, 91:9
**requests** [15] - 9:2,
10:19, 10:23, 54:23,
71:1, 71:11, 72:4,
72:5, 74:10, 76:12,
76:16, 82:3, 94:5,
111:2, 172:2
**require** [6] - 4:25,
5:25, 18:12, 106:24,
121:22, 171:24
**required** [4] - 5:17,
7:2, 95:12, 108:9
**requirement** [1] -
120:9
**requirements** [1] -
114:6
**requires** [6] - 119:2,
119:8, 119:14,
119:21, 163:7, 170:16
**requiring** [2] - 102:9,
166:23
**resale** [1] - 97:13
**research** [3] - 29:23,
118:10, 118:12
**resell** [1] - 101:1
**reseller** [6] - 91:16,
91:20, 100:3, 100:8,
100:25, 102:16
**reselling** [1] - 92:13
**reservation** [1] -
77:18
**reserve** [6] - 39:1,
49:22, 90:17, 94:11,
94:18, 162:24
**reserved** [1] - 162:10
**reserving** [5] - 83:18,
84:11, 96:24, 127:8,
156:12
**resolution** [1] - 90:4
**resolutions** [1] -
76:2
**resolve** [9] - 3:20,
3:21, 44:24, 74:12,
76:1, 81:2, 102:1,
111:2, 127:9

**resolved** [18] - 7:22, 7:24, 8:2, 43:8, 43:9, 43:10, 44:22, 44:23, 74:11, 81:6, 81:10, 86:3, 96:21, 101:14, 122:13, 122:14, 162:17

**resolves** [3] - 19:5, 37:18, 37:21

**respect** [8] - 24:9, 52:20, 77:2, 82:17, 83:16, 83:17, 90:17, 151:10

**respectfully** [2] - 59:18, 133:9

**respective** [1] - 81:1

**respond** [5] - 17:19, 40:7, 127:23, 134:18, 150:5

**responded** [3] - 19:19, 103:9, 133:25

**response** [28] - 4:10, 4:17, 5:14, 5:20, 5:23, 6:23, 7:6, 7:9, 8:18, 10:19, 22:7, 22:19, 28:3, 28:4, 76:14, 82:23, 103:20, 104:5, 122:24, 123:15, 138:4, 138:8, 149:10, 164:1, 164:4, 165:21, 165:22, 168:6

**responses** [15] - 4:6, 4:10, 8:24, 20:15, 21:9, 21:11, 25:5, 36:21, 80:12, 82:4, 91:1, 110:13, 117:18, 125:22, 167:2

**responsible** [3] - 43:15, 54:22, 123:9

**responsive** [9] - 7:23, 10:24, 22:14, 24:7, 81:9, 81:14, 82:3, 85:3, 154:11

**responsiveness** [1] - 80:10

**rest** [5] - 26:7, 32:12, 73:3, 110:20, 122:3

**restricted** [1] - 132:12

**result** [1] - 153:5

**resulted** [1] - 123:22

**results** [1] - 143:1

**retention** [1] - 26:6

**revenue** [1] - 144:2

**revert** [2] - 33:17, 34:2

**review** [9] - 33:4, 35:20, 80:7, 85:14, 103:8, 109:9, 158:20, 166:23, 167:7

**reviewed** [5] - 9:11, 12:25, 123:14, 130:9, 162:16

**revise** [1] - 7:9

**RFAs** [2] - 117:18, 149:10

**RFP** [8] - 21:1, 21:9, 21:11, 22:18, 27:18, 120:14, 122:4

**RFPs** [8] - 27:15, 73:3, 75:7, 105:6, 110:9, 110:13, 110:16, 118:22

**rights** [4] - 39:1, 67:3, 84:12, 169:22

**ripe** [2] - 103:9, 126:21

**rise** [2] - 75:17, 166:17

**road** [1] - 49:22

**role** [2] - 10:14, 128:23

**roll** [1] - 33:14

**roof** [1] - 72:2

**room** [3] - 48:4, 110:20, 164:13

**Rule** [6] - 8:20, 8:21, 127:4, 128:3, 159:14

**rule** [5] - 74:12, 116:23, 120:20, 156:24, 163:8

**ruled** [9] - 5:24, 7:17, 9:6, 14:1, 27:20, 73:21, 77:22, 87:13, 141:19

**rules** [4] - 82:17, 133:20, 156:15, 157:10

**ruling** [12] - 7:8, 19:8, 19:18, 77:19, 81:6, 81:10, 85:16, 87:2, 87:22, 96:4, 156:23, 157:12

**rulings** [5] - 73:4, 74:2, 74:6, 81:19, 105:19

**run** [7] - 38:5, 49:1, 64:9, 67:21, 110:20, 134:24, 146:5

**running** [1] - 67:25

**runs** [1] - 159:7

**rushing** [1] - 131:21

**S**

**safe** [2] - 113:25, 114:6

**safeguarding** [1] - 112:6

**safeguards** [1] - 111:22

**sale** [11] - 45:2, 45:19, 46:3, 47:3, 48:1, 48:16, 55:16, 56:13, 69:21, 72:10, 100:1

**sales** [12] - 82:13, 93:18, 100:22, 101:17, 105:15, 105:22, 105:23, 106:8, 106:16, 107:1, 107:8

**sample** [2] - 28:9, 117:6

**sampling** [4] - 16:7, 16:9, 17:10, 18:6

**sanctions** [1] - 134:19

**satisfy** [1] - 35:6

**Saturday** [1] - 163:18

**save** [1] - 164:12

**saw** [1] - 131:8

**scenario** [1] - 154:13

**schedule** [9] - 4:2, 103:11, 103:12, 103:15, 103:19, 103:20, 146:13, 156:1, 157:4

**scheduled** [3] - 124:5, 159:15, 160:22

**scope** [24] - 5:13, 82:16, 88:23, 96:20, 105:25, 131:4, 136:24, 146:16, 146:20, 147:23, 148:3, 148:15, 148:18, 148:21, 149:1, 149:4, 149:17, 149:25, 150:2, 154:19, 154:24, 156:25, 157:24, 158:17

**scopes** [1] - 5:8

**Scott** [1] - 3:11

**SCOTT** [1] - 1:21

**scrap** [2] - 113:18, 120:15

**screen** [2] - 139:1

**se** [1] - 118:7

**seal** [12] - 19:23, 19:25, 20:6, 104:3, 166:4, 166:6, 166:23, 167:3, 168:16, 168:25, 170:21, 170:24

**sealed** [5] - 166:23, 168:5, 170:18, 171:3, 171:7

**sealing** [1] - 171:2

**search** [8] - 13:4, 13:20, 14:25, 15:5, 95:6, 95:9, 95:11, 95:14

**searching** [1] - 26:18

**Sebastien** [1] - 125:12

**SEBASTIEN** [1] - 125:12

**second** [14] - 16:21, 31:14, 32:2, 32:11, 40:8, 47:9, 77:8, 78:18, 81:12, 112:8, 124:15, 131:20, 136:21, 152:15

**Second** [1] - 1:18

**seconds** [1] - 83:7

**secret** [8] - 4:18, 23:10, 26:7, 27:24, 53:17, 57:21, 58:1, 98:8

**secrets** [1] - 27:14

**secure** [2] - 118:3

**Security** [2] - 91:11, 91:12

**security** [27] - 42:14, 51:5, 58:20, 64:20, 102:22, 111:16, 111:22, 112:17, 113:2, 113:4, 113:19, 113:22, 114:1, 115:13, 115:17, 116:13, 118:1, 118:9, 118:11, 119:9, 119:22, 121:20, 121:25, 124:23, 125:6, 126:5, 152:23

**see** [41] - 13:5, 17:17, 21:7, 36:4, 36:11, 37:23, 39:3, 40:5, 55:15, 61:25, 65:6, 67:14, 67:15, 67:16, 68:2, 68:12, 68:14, 68:18, 68:25, 69:6, 72:20, 74:11, 75:6, 92:11, 93:8, 97:18, 102:21, 105:7, 108:7, 108:9, 108:10, 108:16, 117:16, 143:1, 143:5, 163:14, 165:21, 165:25, 169:18, 172:14

**seeing** [1] - 134:13

**seeking** [7] - 6:8, 6:11, 17:4, 82:12, 123:4, 169:14, 169:15

**seem** [7] - 4:8, 53:5, 85:12, 87:17, 98:24, 99:19, 147:16

**select** [2] - 30:18, 30:20

**selected** [1] - 156:14

**self** [1] - 5:16

**self-helped** [1] - 5:16

**sell** [22] - 8:11, 47:21, 47:23, 48:8, 48:9, 48:10, 57:6, 57:12, 58:13, 60:1, 60:21, 60:23, 61:2, 61:16, 61:17, 61:23, 62:1, 71:3, 83:12, 97:10, 99:13, 99:20

**selling** [3] - 49:2, 66:13, 91:17

**sells** [15] - 48:20, 49:12, 49:16, 50:11, 56:9, 56:10, 56:24, 58:11, 58:17, 58:19, 59:23, 60:2, 61:16

**send** [10] - 131:8, 131:13, 131:14, 132:10, 132:14, 133:3, 133:21, 133:24, 150:18

**sending** [1] - 122:3

**senior** [2] - 123:5, 123:7, 127:17, 128:23, 145:2, 155:4

**sense** [6] - 55:23, 55:24, 55:25, 65:13, 70:23, 162:6

**sensible** [2] - 65:15, 150:14

**sensitive** [12] - 44:17, 53:16, 53:17, 53:18, 57:21, 57:25, 66:19, 93:16, 93:22, 98:11, 108:24, 108:25

**sensitivities** [3] - 66:19, 70:23, 95:17

**sent** [4] - 129:23, 129:25, 133:24, 141:10

**separate** [2] - 48:3, 51:8

**separately** [2] - 55:2, 97:10

**September** [1] - 128:4

**serve** [4] - 120:16, 128:1, 131:16, 135:9

**served** [14] - 5:15, 25:4, 36:21, 93:9, 103:3, 125:22, 128:4, 133:11, 133:16, 133:18, 133:22, 134:2, 151:6

**server** [4] - 131:8, 131:14, 134:14, 151:22

**servers** [1] - 142:24
**serves** [1] - 14:19
**service** [3] - 49:23, 61:5, 127:2
**serving** [2] - 50:18, 137:18
**set** [24] - 3:24, 101:22, 103:11, 124:10, 124:14, 125:7, 125:15, 125:25, 126:3, 134:24, 134:25, 136:2, 142:24, 143:18, 156:14, 156:24, 157:13, 159:23, 160:10, 161:6, 161:11, 163:5, 163:7, 163:13
**setting** [1] - 3:22
**setup** [1] - 26:22
**seven** [2] - 157:5, 157:10
**seven-hour** [1] - 157:5
**several** [6] - 75:7, 91:17, 130:5, 150:23, 153:25, 160:21
**shall** [5] - 6:16, 6:24, 7:9, 77:9
**share** [2] - 66:22, 88:24
**shared** [1] - 153:21
**ship** [2] - 52:6, 52:19
**Shirk** [7] - 124:22, 129:7, 129:11, 141:7, 145:16, 146:21, 159:25
**SHIRK** [1] - 124:24
**shop** [1] - 61:18
**short** [7] - 18:4, 26:1, 74:9, 93:6, 165:2, 165:16, 166:12
**shorten** [1] - 157:14
**shot** [1] - 150:7
**show** [17] - 16:10, 67:8, 88:16, 107:16, 112:5, 116:11, 117:1, 117:5, 120:22, 121:1, 121:3, 130:20, 130:21, 133:6, 140:18, 148:22, 165:8
**showed** [1] - 127:13
**showing** [6] - 111:12, 112:24, 114:13, 115:10, 121:18, 154:21
**shut** [1] - 34:3
**shutting** [1] - 34:6
**sic** [2] - 61:4, 78:14
**side** [15] - 5:19, 8:1,

23:4, 34:15, 38:12, 51:2, 55:24, 63:1, 71:19, 95:14, 99:10, 124:7, 131:11, 134:21, 172:10
**sided** [1] - 53:5
**sides** [12] - 11:16, 19:11, 34:11, 36:8, 41:25, 45:6, 53:24, 65:19, 124:8, 137:3, 146:25, 171:25
**sign** [1] - 109:3
**signed** [3] - 88:17, 107:17, 146:23
**significant** [4] - 12:7, 40:14, 41:7, 91:16
**significantly** [1] - 14:15
**similar** [6] - 66:25, 117:18, 117:19, 117:22, 118:8, 169:24
**similarly** [1] - 133:11
**simple** [3] - 39:12, 39:15, 50:1
**simply** [16] - 4:25, 17:14, 30:10, 31:5, 31:6, 31:8, 31:10, 32:8, 35:15, 40:21, 52:5, 94:3, 137:9, 137:12, 137:18, 151:12
**simulated** [3] - 68:10, 68:11, 140:12
**simulator** [1] - 34:5
**simultaneously** [1] - 30:23
**SINGERMAN** [1] - 2:2
**Singerman** [1] - 3:12
**single** [11] - 13:1, 42:8, 42:25, 59:3, 66:22, 129:15, 135:8, 136:8, 136:25, 145:19, 147:6
**sink** [1] - 50:21
**sit** [3] - 130:4, 131:16, 148:18
**sitting** [1] - 134:15
**situation** [1] - 69:12
**six** [3] - 58:23, 157:9, 159:7
**six-minute** [1] - 159:7
**skeleton** [1] - 51:17
**skipped** [1] - 86:21
**slice** [1] - 92:5
**slide** [9] - 20:17, 129:23, 129:25, 130:2, 141:1, 141:4, 141:5, 149:14, 151:18

**slides** [2] - 141:10, 141:14
**slight** [1] - 99:11
**small** [2] - 12:4, 17:13, 82:11
**smiley** [1] - 143:4
**Smith** [8] - 125:9, 128:8, 143:18, 146:21, 159:19, 160:1, 161:19, 162:15
**Smith/Matthewman** [1] - 3:2
**societal** [3] - 40:14, 41:7, 41:11
**society** [4] - 42:3, 42:15, 51:5, 58:6
**software** [11] - 4:13, 6:19, 6:25, 7:3, 13:3, 13:7, 13:12, 120:6, 123:5, 123:7, 123:9
**Software** [2] - 124:17
**sold** [15] - 42:8, 45:2, 45:19, 46:3, 47:3, 48:16, 49:20, 52:12, 54:24, 55:16, 55:21, 56:13, 61:12, 69:21, 72:11
**sole** [1] - 123:17
**solely** [3] - 68:17, 82:4, 92:6
**solve** [1] - 37:14
**someone** [6] - 36:1, 79:24, 96:5, 98:15, 128:3, 129:25
**sometime** [3] - 24:10, 24:13, 156:3
**sometimes** [1] - 113:16
**somewhere** [4] - 30:3, 33:13, 131:15, 156:5
**Sony** [1] - 57:10
**soon** [2] - 7:23, 172:16
**sorry** [8] - 58:18, 76:10, 80:5, 80:19, 82:20, 102:5, 119:3, 145:9
**sort** [7] - 11:22, 28:9, 52:14, 76:18, 114:10, 153:16, 162:5
**sought** [1] - 18:22
**sounds** [3] - 140:22, 143:11, 166:8
**source** [22] - 26:16, 26:21, 27:5, 27:9, 32:25, 51:15, 51:16, 63:1, 65:17, 66:15, 70:22, 92:10, 97:24, 98:3, 98:8, 98:21,

99:2, 99:18, 102:9, 108:24, 123:17
**Southeast** [1] - 1:18
**SOUTHERN** [1] - 1:1
**spare** [1] - 130:12
**speaking** [1] - 141:6
**specific** [6] - 7:2, 18:2, 92:11, 108:6, 117:10, 163:1
**specifically** [11] - 6:1, 8:23, 18:2, 46:18, 52:4, 52:18, 79:21, 79:22, 108:15, 114:8, 169:17
**specificity** [1] - 6:4
**specifics** [1] - 37:15
**specified** [1] - 55:1
**spent** [2] - 97:15, 97:18
**spirit** [1] - 19:19
**split** [1] - 51:8
**spoliation** [1] - 34:1
**square** [1] - 144:14
**staff** [2] - 132:14, 137:10
**stamp** [1] - 8:6
**stamping** [2] - 7:19, 8:1
**stand** [1] - 150:25
**standard** [2] - 106:1, 115:4
**stands** [1] - 160:9
**start** [5] - 66:13, 145:18, 145:21, 157:7, 168:12
**started** [8] - 51:22, 66:13, 110:19, 128:8, 132:5, 134:6, 136:6, 161:13
**starting** [2] - 3:3, 146:4
**startup** [2] - 12:4, 108:24
**state** [6] - 5:25, 6:16, 6:24, 20:15, 36:21, 72:15
**statement** [3] - 20:10, 132:18, 149:24
**statements** [4] - 12:10, 138:4, 149:22, 149:23
**STATES** [2] - 1:1, 1:11
**states** [4] - 4:12, 4:17, 8:9, 10:21
**stay** [2] - 96:19, 121:6
**staying** [1] - 15:12
**steal** [3] - 57:22, 67:1, 67:12

**stealing** [2] - 67:24, 68:4
**STEBBINS** [208] - 1:14, 3:5, 4:23, 7:21, 16:21, 20:11, 20:14, 21:3, 21:9, 21:13, 21:19, 21:25, 22:2, 22:6, 22:25, 23:24, 24:1, 24:20, 24:23, 25:21, 26:14, 27:8, 28:12, 28:23, 32:23, 36:20, 38:18, 39:1, 39:6, 39:14, 39:20, 42:6, 42:17, 47:21, 48:21, 55:6, 56:3, 63:21, 64:1, 64:5, 65:3, 65:11, 65:23, 66:2, 66:9, 70:16, 70:18, 70:21, 71:9, 71:15, 73:1, 73:6, 73:11, 74:15, 74:19, 75:3, 75:14, 75:25, 76:5, 76:9, 77:11, 77:13, 77:18, 77:22, 78:4, 78:9, 78:21, 78:23, 78:25, 79:3, 79:9, 79:13, 79:16, 79:18, 79:20, 79:23, 80:3, 80:7, 80:17, 80:23, 80:25, 81:4, 81:16, 81:23, 81:25, 82:6, 82:25, 83:6, 83:9, 83:11, 84:2, 84:8, 84:10, 84:15, 84:25, 85:6, 85:10, 85:22, 86:2, 86:6, 86:12, 86:14, 86:17, 86:20, 86:24, 87:15, 87:21, 88:12, 88:16, 89:4, 89:8, 89:12, 89:20, 90:6, 90:11, 90:16, 90:20, 90:23, 91:3, 91:5, 91:7, 91:9, 92:2, 92:21, 92:23, 93:5, 96:1, 96:18, 97:8, 97:12, 98:9, 99:10, 100:3, 100:13, 100:21, 101:8, 101:13, 101:16, 102:5, 102:15, 103:2, 103:10, 103:18, 103:23, 104:2, 104:8, 104:15, 104:18, 104:22, 104:25, 105:4, 105:8, 105:18, 106:7, 106:11, 107:14, 107:19, 108:12, 108:18, 110:4, 110:6, 110:10, 112:11, 112:21, 113:24, 114:17,

114:21, 114:23, 115:1, 116:16, 117:9, 118:20, 118:24, 119:20, 119:23, 122:9, 124:7, 124:12, 125:18, 126:2, 126:11, 126:15, 150:5, 150:9, 157:2, 160:18, 160:21, 161:14, 161:16, 162:9, 163:3, 163:9, 163:21, 163:24, 164:3, 164:9, 164:25, 165:18, 165:24, 166:1, 166:8, 168:9, 168:22, 169:21, 170:25, 171:17, 172:8, 172:17

**Stebbins** [1] - 3:6
**step** [3] - 75:5, 144:18, 149:10
**steps** [1] - 112:4
**Steve** [2] - 125:9, 143:18
**stick** [2] - 28:6, 126:23
**still** [24] - 14:15, 15:7, 20:2, 22:16, 23:11, 25:6, 27:23, 36:22, 39:2, 40:19, 59:18, 66:3, 73:6, 75:7, 75:8, 77:1, 83:1, 103:8, 154:18, 156:19, 161:20, 165:17
**stolen** [9] - 43:22, 67:15, 67:16, 68:2, 68:15, 68:18, 68:25, 69:7, 140:21
**stone** [1] - 156:14
**stop** [4] - 31:14, 33:17, 119:13, 170:10
**store** [3] - 139:25, 140:11, 140:15
**store-bought** [3] - 139:25, 140:11, 140:15
**stored** [1] - 31:24
**story** [1] - 18:3
**straight** [1] - 64:22
**straight-up** [1] - 64:22
**straightforward** [3] - 64:13, 168:23, 169:1
**strategic** [4] - 82:13, 105:14, 106:6, 107:3
**strategically** [1] - 105:20
**Street** [1] - 1:18
**stretch** [1] - 49:18

**strike** [4] - 106:6, 112:18, 112:22, 116:20
**striking** [1] - 107:3
**stringent** [1] - 169:22
**strip** [1] - 144:25
**stripped** [1] - 128:22
**struck** [1] - 121:23
**struggle** [2] - 37:16, 149:15
**stuck** [2] - 63:24, 67:8
**stuff** [13] - 26:8, 26:9, 46:12, 46:25, 50:24, 59:1, 59:5, 93:19, 93:21, 101:4, 109:2, 109:6, 118:21
**subject** [13] - 23:6, 80:8, 82:18, 87:2, 101:3, 118:21, 130:16, 131:24, 147:22, 154:24, 156:11, 157:22, 170:10
**submit** [6] - 9:9, 11:17, 71:7, 109:9, 109:18, 109:22
**submitted** [5] - 9:11, 14:17, 20:17, 137:25
**submitting** [1] - 6:4
**subpoena** [17] - 51:21, 93:1, 93:9, 103:3, 127:2, 131:17, 132:4, 133:1, 134:1, 134:2, 134:9, 134:11, 137:6, 137:8, 137:18, 151:7
**subpoenaed** [1] - 50:19
**subpoenas** [7] - 50:16, 50:18, 131:17, 132:14, 132:15, 150:17, 151:2
**subscription** [1] - 36:23
**substantial** [3] - 5:4, 73:7, 154:5
**substantive** [2] - 139:19, 141:21
**sue** [1] - 120:11
**sufficient** [13] - 23:19, 26:17, 70:7, 70:8, 88:16, 107:16, 116:11, 117:1, 120:8, 120:22, 121:1, 121:3, 157:3
**suggest** [5] - 45:18, 118:1, 156:3, 157:7, 162:4

**suggesting** [1] - 106:4
**Suite** [3] - 1:18, 1:22, 2:3
**suite** [1] - 1:15
**summary** [1] - 162:17
**Sunday** [1] - 163:18
**supervised** [1] - 136:19
**supervises** [1] - 123:8, 155:5
**support** [6] - 11:8, 20:18, 108:20, 137:25, 141:24, 142:1
**supporting** [1] - 104:3
**supposed** [3] - 25:3, 26:16, 52:24
**supposedly** [1] - 129:17
**surprised** [1] - 44:9
**suspicions** [1] - 35:1
**suspicious** [2] - 31:15, 34:9
**sustain** [4] - 165:5, 166:5, 168:3, 171:11
**sustaining** [1] - 169:15
**Swift** [8] - 138:19, 138:20, 138:24, 139:12, 139:19, 151:19, 152:7
**system** [12] - 15:2, 25:10, 26:24, 30:8, 31:3, 33:5, 36:22, 38:4, 38:5, 38:8, 62:22, 113:6
**systems** [10] - 30:1, 39:12, 45:5, 45:22, 47:6, 48:19, 55:19, 62:11, 69:24, 72:13

## T

**tag** [1] - 118:17
**talks** [5] - 91:23, 119:25, 144:1, 153:8, 153:9
**tangential** [2] - 155:7, 168:23
**target** [1] - 140:12
**targeted** [2] - 120:16, 122:4
**team** [3] - 125:21, 143:3, 159:16
**teams** [2] - 118:17, 123:8
**tech** [1] - 35:16

**technical** [4] - 29:12, 98:17, 120:7, 120:8
**technological** [4] - 37:15, 42:21, 45:13, 70:12
**technology** [37] - 3:17, 13:3, 37:11, 39:18, 40:12, 40:13, 40:16, 40:22, 41:4, 41:5, 41:9, 41:10, 41:12, 41:17, 41:18, 42:1, 47:13, 47:24, 50:3, 52:8, 52:21, 53:10, 64:16, 83:15, 83:18, 84:12, 91:13, 91:14, 152:10, 152:12, 152:23, 153:15, 159:2, 159:4, 165:10
**technology-driven** [1] - 3:17
**tee** [1] - 76:2
**telephonic** [1] - 154:1
**ten** [3] - 16:4, 16:9, 83:7
**tend** [1] - 115:16
**tentative** [2] - 147:2, 164:8
**tentatively** [5] - 23:14, 23:16, 43:9, 43:10, 131:1
**term** [3] - 15:3, 15:5, 55:1
**terms** [5] - 14:25, 95:6, 99:10, 102:20, 156:25
**test** [27] - 28:10, 34:24, 51:2, 57:7, 57:8, 57:10, 58:21, 58:24, 59:11, 59:16, 60:9, 60:12, 65:24, 68:19, 69:1, 69:2, 70:5, 131:6, 135:4, 140:10, 140:11, 140:14, 140:16, 143:1, 149:18, 149:22
**tested** [1] - 66:6
**testified** [4] - 16:22, 68:23, 151:13
**testify** [2] - 123:20, 152:11
**testimony** [5] - 70:24, 149:7, 149:23, 151:12, 153:6
**testing** [22] - 27:25, 28:2, 58:20, 58:22, 59:12, 60:7, 60:14, 62:18, 66:3, 69:1, 77:5, 77:10, 77:13,

78:13, 78:15, 78:20, 79:5, 79:10, 79:11, 79:18, 79:24, 140:2
**tests** [1] - 29:20
**text** [5] - 139:7, 142:5, 142:9, 154:1, 154:4
**that'll** [4] - 16:10, 104:19, 163:15, 163:18
**THE** [424] - 1:10, 1:11, 1:14, 1:20, 3:1, 3:3, 3:8, 3:14, 5:19, 6:13, 6:15, 7:15, 7:17, 7:25, 8:5, 9:17, 9:22, 9:24, 10:9, 10:11, 11:13, 12:12, 12:14, 13:3, 13:6, 13:18, 13:22, 13:25, 14:10, 14:23, 15:19, 15:21, 16:2, 16:13, 16:18, 17:18, 18:10, 19:1, 19:4, 19:8, 20:2, 20:3, 20:4, 20:6, 20:9, 20:13, 21:1, 21:7, 21:11, 21:17, 21:20, 22:1, 22:3, 22:7, 22:11, 22:15, 23:14, 23:25, 24:18, 24:22, 25:13, 27:7, 28:6, 28:13, 29:3, 31:14, 32:1, 32:14, 32:18, 32:21, 33:9, 33:13, 33:21, 33:24, 34:4, 35:21, 36:5, 36:13, 36:18, 37:1, 37:23, 38:1, 38:10, 38:15, 38:23, 39:4, 39:7, 39:17, 39:22, 39:24, 40:2, 40:5, 40:8, 41:1, 41:3, 42:13, 43:2, 43:9, 43:13, 43:17, 44:20, 45:9, 46:1, 46:19, 47:2, 47:19, 48:14, 49:5, 51:1, 52:10, 52:13, 52:25, 53:2, 53:9, 54:17, 55:8, 55:15, 56:5, 56:11, 56:19, 57:4, 57:14, 57:20, 58:12, 58:15, 58:17, 59:10, 59:22, 59:25, 60:2, 60:5, 60:9, 60:12, 60:25, 62:3, 62:6, 62:17, 63:4, 63:8, 63:15, 63:19, 63:25, 64:4, 64:25, 65:9, 65:19, 65:25, 66:3, 67:9, 68:19, 68:23, 69:12, 70:3, 70:17, 70:20, 71:8, 71:10,

71:16, 71:19, 71:23,
72:4, 73:2, 73:10,
73:12, 73:15, 73:22,
73:25, 74:5, 74:8,
74:18, 74:22, 74:25,
75:4, 75:12, 75:16,
75:17, 75:19, 76:4,
76:7, 77:8, 77:12,
77:17, 77:21, 78:3,
78:8, 78:18, 78:22,
78:24, 79:2, 79:7,
79:11, 79:14, 80:2,
80:6, 80:16, 80:22,
80:24, 81:3, 81:12,
81:21, 81:24, 82:5,
83:2, 83:10, 85:4,
86:1, 86:3, 86:9,
86:13, 86:16, 86:23,
87:14, 87:19, 88:11,
88:15, 89:3, 89:7,
89:11, 89:14, 89:17,
89:21, 89:25, 90:2,
90:7, 90:14, 90:22,
90:25, 91:4, 91:6,
91:8, 91:23, 92:15,
92:22, 93:3, 93:12,
93:24, 94:10, 94:15,
95:9, 95:11, 95:21,
96:8, 96:14, 96:21,
96:24, 97:3, 97:6,
97:11, 97:15, 98:7,
98:19, 98:24, 99:24,
100:7, 100:11,
100:16, 100:18,
100:24, 101:6, 101:9,
101:15, 101:19,
102:7, 102:24, 103:7,
103:11, 103:22,
103:25, 104:4,
104:10, 104:14,
104:16, 104:19,
104:24, 105:2, 105:5,
105:10, 105:13,
106:4, 106:8, 106:13,
106:23, 107:6,
107:12, 107:15,
108:11, 108:16,
108:21, 109:4, 109:8,
109:13, 109:15,
109:17, 109:21,
110:7, 110:15,
110:21, 110:23,
110:25, 111:3, 111:6,
111:11, 111:20,
112:8, 112:20,
113:21, 114:12,
114:19, 114:22,
114:24, 115:8, 116:4,
116:14, 116:19,
118:16, 118:23,
118:25, 119:3, 119:5,

119:7, 119:19,
119:21, 120:19,
121:2, 121:8, 121:11,
121:14, 122:11,
122:16, 124:9,
124:15, 124:19,
124:21, 124:24,
125:1, 125:3, 125:5,
125:8, 125:10,
125:14, 125:24,
126:6, 126:12,
127:19, 127:22,
130:10, 130:24,
132:19, 133:13,
133:16, 133:19,
134:13, 135:3,
135:20, 135:22,
142:8, 142:16,
142:20, 144:19,
145:8, 145:10,
145:17, 146:15,
146:20, 147:9,
148:16, 150:1, 150:4,
150:8, 155:12, 157:6,
158:3, 158:8, 158:16,
160:9, 160:15,
160:19, 160:23,
160:25, 161:5,
161:12, 161:20,
162:3, 162:12,
162:23, 163:5,
163:10, 163:14,
163:23, 164:1, 164:4,
164:10, 164:24,
165:2, 165:21,
165:23, 165:25,
166:3, 166:10,
166:15, 166:17,
166:19, 167:14,
167:17, 167:20,
167:24, 168:2,
168:12, 168:17,
168:21, 169:19,
170:3, 170:6, 170:12,
170:17, 170:20,
170:23, 171:4, 171:8,
171:23, 172:9,
172:12, 172:14,
172:18
  **theirs** [1] - 117:22
  **there'll** [2] - 147:13,
156:2
  **therefore** [2] - 93:1,
169:17
  **thereof** [1] - 92:16
  **they've** [42] - 7:22,
13:21, 16:24, 23:8,
25:1, 25:9, 27:3,
27:16, 27:18, 36:3,
36:11, 36:12, 38:19,

51:22, 51:24, 51:25,
64:6, 65:14, 65:25,
71:1, 72:7, 74:11,
77:23, 78:5, 80:3,
80:4, 80:8, 80:18,
81:8, 81:16, 81:25,
87:23, 88:18, 99:22,
99:23, 125:20,
152:25, 154:10, 169:6
  **thinking** [1] - 139:7
  **third** [9] - 3:24, 4:1,
12:24, 75:21, 87:3,
91:18, 93:8, 101:1,
117:3
  **third-party** [2] - 3:24,
93:8
  **thoughts** [1] -
141:11
  **thousand** [1] - 91:17
  **three** [12] - 6:3,
12:23, 13:1, 25:11,
74:9, 76:6, 110:13,
151:3, 153:22,
155:19, 160:4, 162:1
  **Thursday** [1] -
163:14
  **ties** [1] - 169:11
  **Tim** [1] - 123:10
  **time-consuming** [2]
- 11:1, 11:3
  **time-sensitive** [1] -
93:16
  **timing** [3] - 101:14,
131:4, 132:17
  **tinkering** [1] - 113:5
  **title** [3] - 128:23,
130:18, 144:25
  **today** [26] - 3:15,
3:21, 4:5, 20:1, 32:20,
36:18, 44:24, 45:11,
45:16, 51:10, 71:11,
73:5, 85:16, 90:18,
90:19, 97:16, 101:21,
101:24, 102:25,
103:16, 104:3,
128:22, 139:23,
163:14, 165:4, 171:16
  **today's** [2] - 74:2,
74:6
  **together** [1] - 164:3
  **tomorrow** [8] -
32:19, 32:20, 163:16,
167:18, 167:19,
167:22, 167:25
  **tomorrow's** [1] -
32:21
  **ton** [3] - 32:3, 129:9,
130:3
  **took** [3] - 105:6,
126:20, 132:10

**tools** [3] - 26:17,
26:19, 113:3
  **top** [1] - 155:5
  **topic** [2] - 141:21,
155:17
  **topics** [1] - 125:21
  **total** [1] - 129:10
  **totally** [1] - 42:18
  **touch** [2] - 148:2,
168:10
  **town** [1] - 163:22
  **track** [4] - 20:15,
20:21, 21:4, 21:5
  **trade** [9] - 4:18, 23:9,
26:7, 27:14, 27:24,
53:17, 57:21, 57:25,
98:7
  **traditional** [1] -
154:14
  **trait** [2] - 15:3, 15:6
  **TRANSCRIBED** [2] -
1:11, 2:5
  **transcript** [5] - 6:10,
159:9, 170:18
  **transcription** [1] -
173:4
  **transformative** [7] -
42:18, 42:23, 64:16,
64:23, 66:17, 67:5,
67:6
  **transformativeness**
[1] - 42:19
  **transforming** [1] -
64:17
  **transition** [1] -
152:15
  **transpired** [1] -
157:25
  **treating** [1] - 159:14
  **tremendous** [3] -
10:12, 10:16, 11:3
  **tremendously** [1] -
113:17
  **trial** [29] - 20:15,
20:20, 20:23, 21:15,
21:17, 22:4, 22:13,
50:17, 51:21, 86:8,
86:10, 87:9, 94:25,
95:23, 96:5, 123:19,
123:21, 147:13,
148:4, 148:5, 148:13,
151:22, 162:7,
162:15, 162:17,
164:20, 164:21,
164:23
  **trials** [4] - 95:1, 95:3,
95:19, 95:20
  **trickle** [1] - 128:6
  **trickling** [1] - 128:12
  **tried** [3] - 16:25,

48:4, 74:4
  **trip** [7] - 160:13,
160:14, 160:25,
161:2, 161:4, 161:5,
161:19
  **trips** [2] - 160:7,
161:21
  **true** [6] - 26:14, 80:1,
98:14, 117:10, 134:1,
136:15
  **truly** [1] - 50:7
  **try** [11] - 18:16, 24:6,
113:17, 120:5,
125:21, 127:9, 135:9,
137:11, 145:22,
157:3, 163:18
  **trying** [29] - 11:16,
17:16, 26:25, 34:19,
35:4, 49:6, 53:4,
53:13, 53:15, 53:17,
53:23, 54:12, 54:14,
55:10, 58:2, 65:4,
65:13, 67:1, 67:2,
73:11, 76:10, 107:23,
116:7, 117:20, 118:4,
133:7, 137:16, 143:20
  **Tuesday** [4] -
109:19, 109:21,
163:17, 164:4
  **tune** [1] - 91:16
  **turn** [7] - 8:16, 17:14,
29:3, 64:15, 67:4,
89:13, 138:25
  **turned** [2] - 29:20,
64:20
  **turns** [1] - 64:23
  **twelve** [1] - 155:5
  **twenty** [1] - 75:1
  **Twitter** [1] - 29:23
  **two** [35] - 9:18, 19:2,
24:1, 25:11, 29:14,
31:23, 32:11, 48:22,
51:8, 70:21, 74:9,
76:10, 101:23, 105:7,
117:21, 118:18,
126:8, 127:15, 128:6,
128:15, 129:11,
129:19, 132:2,
135:15, 135:18,
147:18, 148:2,
150:25, 153:20,
154:7, 155:2, 155:3,
158:7, 169:6
  **two-second** [1] -
32:11
  **type** [1] - 25:18
  **types** [2] - 62:13,
115:22

**U**

**Uber** [1] - 140:6
**ultimate** [3] - 62:18, 152:13, 154:15
**ultimately** [1] - 171:1
**unclarity** [1] - 17:22
**under** [36] - 4:20, 7:10, 8:20, 19:19, 24:7, 38:24, 53:13, 63:13, 63:17, 66:23, 66:25, 72:1, 84:23, 104:3, 109:5, 113:10, 127:6, 133:20, 138:3, 139:18, 144:15, 149:7, 149:13, 149:23, 150:2, 156:25, 158:12, 158:23, 159:7, 166:4, 166:6, 167:3, 168:16, 168:25, 170:20, 170:24
**under-oath** [1] - 144:15
**underling** [1] - 135:8
**underlings** [5] - 131:21, 131:25, 136:19, 141:7, 145:21
**understandings** [2] - 74:21, 102:20
**understood** [4] - 29:5, 82:15, 87:21, 98:19
**undertaking** [3] - 10:12, 10:16, 11:4
**undiscoverable** [1] - 93:9
**unfounded** [1] - 35:1
**unified** [2] - 39:12, 99:13
**unifies** [1] - 15:4
**uniform** [1] - 15:5
**unifying** [2] - 15:3
**unilaterally** [1] - 132:15
**unique** [4] - 123:21, 127:14, 152:17
**UNITED** [2] - 1:1, 1:11
**unless** [2] - 54:25, 99:17
**unlikely** [1] - 99:19
**unnecessary** [1] - 135:10
**unobtainable** [1] - 34:1
**unpatched** [3] - 4:13, 6:18, 6:24
**unquote** [2] - 10:16,

10:25
**unreasonable** [1] - 17:16
**unsealed** [1] - 171:6
**untested** [1] - 35:3
**up** [50] - 14:18, 24:13, 25:16, 26:23, 29:18, 31:3, 33:3, 37:1, 42:10, 43:7, 50:14, 50:21, 51:8, 52:6, 52:19, 52:20, 55:10, 57:3, 58:25, 59:6, 61:18, 64:22, 67:22, 69:4, 69:5, 69:13, 70:14, 76:2, 82:20, 83:3, 94:22, 120:4, 120:5, 128:7, 132:6, 133:24, 134:3, 134:5, 137:10, 138:11, 138:21, 139:9, 139:10, 139:13, 142:24, 144:2, 144:14, 155:16, 157:12, 171:20
**update** [1] - 30:7
**upfront** [1] - 132:9
**upload** [5] - 25:4, 43:24, 46:7, 56:25, 59:5
**uploaded** [1] - 35:15
**useable** [14] - 27:9, 32:24, 33:10, 35:21, 37:13, 37:19, 38:13, 38:20, 46:10, 65:22, 69:18, 72:18, 99:1, 140:24
**useless** [1] - 27:2
**user** [8] - 113:7, 114:5, 115:3, 115:21, 116:8, 122:1, 139:4, 141:20
**users** [26] - 39:11, 47:24, 88:18, 88:21, 111:13, 111:14, 112:6, 112:15, 112:25, 113:12, 113:16, 114:15, 114:22, 114:25, 115:12, 115:19, 116:3, 116:6, 116:21, 117:1, 117:3, 118:13, 121:4, 121:12, 121:19, 121:24
**users'** [1] - 115:23
**uses** [3] - 43:12, 44:12, 59:15
**usual** [1] - 103:23
**utilize** [2] - 40:16, 65:1

**utilizes** [6] - 39:18, 40:12, 41:4, 41:10, 41:17, 53:10
**utilizing** [2] - 42:1, 42:2

**V**

**valuable** [1] - 153:15
**valuation** [1] - 138:11
**value** [3] - 138:17, 143:15, 144:6
**various** [1] - 39:11
**vendor** [1] - 17:15
**venue** [1] - 148:8
**verify** [2] - 38:12, 38:15
**Verizon** [1] - 139:10
**version** [42] - 17:2, 24:11, 24:14, 24:18, 24:21, 24:23, 24:25, 25:6, 25:15, 25:16, 25:17, 25:19, 27:4, 27:10, 27:11, 29:10, 31:21, 31:24, 32:5, 32:7, 32:9, 32:15, 33:13, 33:18, 33:21, 33:24, 34:1, 34:5, 34:16, 34:17, 34:18, 34:20, 35:4, 35:6, 36:22, 37:8, 167:5, 167:7, 168:5
**versions** [14] - 34:24, 45:3, 45:20, 46:4, 47:4, 47:8, 48:17, 55:1, 55:17, 56:14, 56:19, 69:22, 72:11
**versus** [2] - 35:15, 46:7
**via** [1] - 60:15
**vice** [14] - 123:5, 124:16, 124:17, 125:13, 127:16, 128:16, 128:23, 131:18, 134:14, 136:16, 136:18, 145:2, 154:7, 154:8
**vice-presidents** [3] - 127:16, 128:16, 154:7
**video** [1] - 164:23
**videos** [1] - 32:3
**videotaped** [1] - 164:15
**view** [11] - 11:18, 24:19, 42:6, 48:13, 48:14, 102:13, 117:18, 136:15, 156:13, 165:12,

165:13
**viewable** [1] - 33:1
**viewing** [1] - 26:17
**violated** [3] - 34:16, 34:17, 57:15
**violates** [3] - 41:13, 102:13, 102:14
**violating** [3] - 58:4, 62:22, 117:14
**violation** [2] - 42:11, 64:22
**violations** [1] - 42:4
**virtual** [15] - 30:17, 45:3, 45:20, 46:4, 47:4, 47:8, 48:16, 54:25, 55:7, 55:17, 56:13, 56:19, 69:21, 72:11, 139:24
**Virtual** [1] - 135:19
**virtualization** [8] - 83:15, 83:18, 84:12, 91:13, 91:14, 118:8, 118:12, 139:24
**virtualizes** [1] - 39:10
**virtualizing** [1] - 66:16
**virtually** [2] - 3:19, 141:4
**virtue** [1] - 140:19
**voluminous** [2] - 96:10, 172:2
**vs** [1] - 1:6
**vulnerabilities** [7] - 4:13, 4:16, 4:20, 6:2, 6:19, 6:21, 6:25

**W**

**Wade** [29] - 123:25, 124:3, 133:10, 135:17, 135:18, 135:25, 136:21, 136:22, 138:5, 138:15, 141:5, 141:10, 141:22, 142:23, 143:8, 149:14, 152:3, 152:6, 152:8, 152:11, 153:8, 153:10, 154:4, 165:9, 165:13, 165:14, 169:5, 169:17, 170:6
**Wade's** [4] - 138:5, 144:9, 149:25, 151:16
**wait** [2] - 72:16, 91:6
**waiver** [1] - 117:5
**walk** [1] - 118:14
**wall** [4] - 69:4, 69:6, 134:3, 134:6

**wants** [10] - 57:7, 57:8, 57:9, 58:21, 58:24, 95:5, 126:9, 127:20, 165:8, 170:3
**watch** [1] - 32:11
**Watkins** [2] - 3:6, 133:25
**WATKINS** [1] - 1:14
**wax** [1] - 94:19
**ways** [1] - 31:23
**website** [3] - 29:22, 30:22
**week** [5] - 29:1, 29:14, 109:19, 109:22, 160:22
**weekend** [1] - 127:3
**weeks** [5] - 24:10, 25:12, 101:23, 117:21, 155:19
**welcome** [1] - 75:19
**WEST** [1] - 1:2
**West** [2] - 1:4, 1:23
**whatsoever** [1] - 11:6
**whoever's** [1] - 171:24
**whole** [17] - 14:23, 17:25, 26:24, 34:6, 34:13, 47:23, 48:10, 48:12, 49:14, 50:21, 64:23, 66:20, 66:21, 94:19, 99:16, 130:4, 141:15
**wholly** [1] - 11:18
**wife** [4] - 131:9, 131:16, 133:4, 133:11
**wiggle** [1] - 48:4
**wildly** [1] - 114:23
**WILLIAM** [1] - 1:10
**willing** [8] - 13:16, 35:19, 91:13, 92:2, 95:4, 105:19, 105:20
**wish** [1] - 10:3
**wished** [1] - 9:9
**wishes** [2] - 74:10, 104:10
**withdrawing** [1] - 81:20
**withdraws** [1] - 81:21
**withholding** [4] - 23:12, 76:17, 76:22, 77:24
**witness** [13] - 123:19, 127:3, 128:25, 130:14, 131:23, 136:16, 145:5, 147:12, 151:6, 153:6, 154:14, 169:24
**witnesses** [12] -

125:19, 125:25, 127:15, 129:23, 130:6, 145:11, 145:25, 150:21, 150:23, 151:3, 154:6, 155:1

**witnesses'** [1] - 144:20

**word** [7] - 43:5, 43:12, 43:21, 54:4, 56:7, 120:19, 140:22

**words** [7] - 14:1, 41:9, 48:22, 56:12, 92:10, 94:11, 172:1

**works** [13] - 24:12, 25:1, 27:3, 27:6, 30:11, 32:4, 38:8, 44:1, 44:8, 59:19, 61:11, 110:6, 163:6

**world** [2] - 67:13, 169:10

**worried** [1] - 17:10

**worst** [1] - 67:12

**wrestling** [1] - 118:16

**writing** [1] - 156:7

**written** [3] - 103:16, 105:3, 172:15

**wrote** [1] - 90:8

## X

**XYZ** [1] - 14:6

## Y

**year** [1] - 91:17

**years** [3] - 22:16, 50:3, 155:3

**yesterday** [3] - 93:1, 104:2, 123:1

**yourself** [1] - 139:15

**yourselves** [1] - 37:10

**YouTube** [6] - 32:3, 32:5, 32:9, 32:11, 33:8, 51:25