**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:19-cv-81160-RS**

APPLE INC.,

      Plaintiff,

 v.

CORELLIUM, LLC,

      Defendant.

**PLAINTIFF APPLE INC.'S OPPOSITION TO**
**NON-PARTY L3HARRIS TECHNOLOGIES, INC.'S MOTION TO QUASH**

Plaintiff Apple Inc. ("Apple") submits this opposition to non-party L3Harris Technologies, Inc.'s ("L3Harris") Motion to Quash Apple's document and deposition subpoenas (ECF No. 184).

## INTRODUCTION

This is a copyright infringement lawsuit against Corellium, LLC ("Corellium") based on its development and sale of the Corellium Apple Product. Apple is pursuing claims against Corellium for both direct and contributory infringement, as well as for trafficking in tools designed to circumvent Apple security measures. ECF No. 56 ¶¶ 51–77. Corellium's primary defense, fair use, relies on its assertions that the Corellium Apple Product is used for good-faith security research and it sells the product only to responsible persons who use the research for socially laudable purposes. ECF No. 64 at 6, 21, 26–27. Indeed, earlier this week, Corellium served *three separate* expert reports on the subject of fair use, all extolling Corellium's putative social virtues. The point, in short, is that Corellium's primary defense in this litigation turns on its contentions about precisely what its customers are doing with Apple's copyrighted works—works that are a central part of the product that Corellium has sold and continues to sell to its ▌ customer, Azimuth Security ("Azimuth"), and that Azimuth is reselling to others.

Azimuth is intimately connected with Corellium and the Corellium Apple Product. As Corellium's ▌ customer, Azimuth ▌ ▌ ▌ *See* Ex. 1 (Resps. to Interrog. No. 9–11). Furthermore, Azimuth ▌ ▌ ▌ . *Id*. Corellium has stated in discovery that it ▌ ▌ *Id.* (Resp. to Interrog. No. 11). And, consistent with this central relationship, one of Corellium's expert reports *specifically relies* on Corellium's relationship with Azimuth to advance Corellium's fair use defense.

The relevance of discovery to Azimuth in this dispute is thus indisputable. Azimuth possesses critical information relating to Corellium's infringing product, the sales of that product, and the uses of that product. Information in its possession is directly relevant to Apple's claims that Corellium infringes its copyrights and traffics in tools designed to circumvent its security measures. What Azimuth does with the Corellium Apple Product, and to whom Azimuth sells the product, is central to both Apple's affirmative case and Corellium's fair use defense.

Given the central role that Azimuth plays in this case, Apple served document and

deposition subpoenas on both Azimuth and its parent corporation, L3Harris Technologies, Inc. Those subpoenas seek documents and deposition testimony concerning the companies' relationships with Corellium (RFP 1; Depo. Topic 1); their use of the Corellium Apple Product (RFP 2; Depo. Topic 2); their resale of the Corellium Apple Product (RFP 3 & 6; Depo. Topic 3 & 6); contracts addressing the Corellium Apple Product (RFP 5; Depo. Topic 5); communications with Chris Wade, the Chief Technology Officer and co-founder of Corellium (RFP 4; Depo. Topic 4); and employees who use the Corellium Apple Product (RFP 7–8; Depo. Topic 7). ECF No. 184-1; Ex. 2. While L3Harris has moved to quash, Azimuth has not responded or objected to the document and deposition subpoenas served on it. Apple will discuss hereafter the subpoenas to L3Harris; however, given that the subpoenas to each company are almost identical, the arguments herein apply equally to the Azimuth subpoenas.

Apple served L3Harris in part because *Corellium* had already identified L3Harris as having information relevant to this lawsuit, when it issued a notice of intent to depose L3Harris back in October 2019. In that notice, Corellium listed many of the exact same topics that Apple's subpoenas identify. *See* Ex. 3. L3Harris likewise recognized that it has at least some documents that should be produced, as prior to the filing of the motion to quash, L3Harris's in-house counsel had agreed to produce its reseller agreement with Corellium, correspondence with Corellium that did not reveal customer information, and documents reflecting the volume and dollar value of sales of the Corellium Apple Product. *See* Ex. 4. Rather than making even a partial production, however, L3Harris recanted its agreement and filed its motion to quash.

None of the bases L3Harris now identifies in support of its motion have merit, or support quashing Apple's subpoenas to L3Harris. The motion should be denied.

## I. L3HARRIS'S GEOGRAPHIC OBJECTION SHOULD BE REJECTED

As a threshold matter, L3Harris's argument that the subpoenas are outside the geographical limits of Rule 45(c) is not well-taken. L3Harris asserts it is not subject to the Court's subpoena power because its principal place of business in Melbourne, Florida is 160 miles away from the designated Fort Lauderdale place of compliance. ECF No. 184 at 3–4. L3Harris, however, regularly transacts business in the immediate vicinity of Fort Lauderdale, including in a Sunrise, FL location that is just 7 miles from the Fort Lauderdale location of compliance. *See* Ex. 5. It also operates a location in Miami, Florida, 21 miles from the location of compliance. *Id.* Rule 45 permits compliance within 100 miles of where the company resides *or* "regularly transacts

2

business," and the subpoena is thus fully compliant with the Rule. Fed. R. Civ. P. 45(c). Furthermore, even if the subpoena had designated a place for compliance that was more than 100 miles from where L3Harris conducts business (which it did not), the appropriate remedy would be to modify the subpoena to comply with the Rule, not to quash it. *E.g. Sams v. GA West Gate*, LLC, 316 F.R.D. 693, 696–97 (N.D. Ga. 2016); *see also CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 713–14 (D.S.C. 2017) (electronic production can resolve place-of-compliance objection). Indeed, although unnecessary under Rule 45, Apple has already offered to accept the production electronically or to move the place of compliance to a location more convenient for L3Harris. The Court should overrule this objection.

## II.  THE SUBPOENAED INFORMATION SHOULD BE PRODUCED

L3Harris does not dispute that the information sought is highly relevant to this case. Instead, it claims that the subpoenas should be quashed because they implicate sensitive national security interests, and seek trade secret and privileged information. ECF No. 184 at 4–7. These assertions lack merit.

### A.  L3Harris May Not Withhold Responses On The Basis Of National Security Interests It Does Not Possess.

L3Harris argues that identifying customers it has sold (or licensed) the Corellium Apple Product to, and identifying employees involved in using or reselling the Corellium Apple Product would somehow harm national security interests. *Id.* at 2, 5. As a threshold matter, L3Harris is ineligible to assert government sensitivity as a reason to avoid civil discovery. Only the federal government may assert the state secrets privilege, the law enforcement privilege, or other exemptions from discovery touching on national security. *See, e.g.*, *In re Sealed Case,* 856 F.2d 268, 271–72 (D.C. Cir. 1988) (requiring agency heads to assert formal claims of law enforcement privilege); *United States v. Reynolds*, 345 U.S. 1, 7 (1953) ("The [state secret] privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party. It is not to be lightly invoked.") (citations omitted); *see also In re Hubbard*, 803 F.3d 1298, 1309 (11th Cir. 2015) (applying *Reynolds*) (citation omitted). When the government does properly assert that certain information is classified, there is a regulation that addresses the potential "safeguards" the government can seek "to protect classified information from unauthorized disclosure." 28 C.F.R. § 17.17(c); *see, e.g.*, *Halliwell v. A-T Sols.*, No. 13-cv-2014, 2014 WL 4472724, at *6 (S.D. Cal. Sept. 10, 2014). L3Harris has provided no reason for this Court to forgo requiring the government to assert any claim of sensitivity, nor has it explained why the protections

3

in 28 C.F.R. § 17.17 would be ineffective or unavailable here. And, as this Court has already recognized, "when the Federal Government has a national security concern, they're not shy about coming into court and asserting it." Ex. 6, 2/12/2020 Hr'g Tr. at 143:11–13.

Furthermore, L3Harris admits its and Azimuth's customers for the Corellium Apple Product include *foreign* government entities. ECF No. 184 at 5, 8. L3Harris comparably lacks standing to assert foreign governments' interests. *See, e.g.*, *Phoenix Process Equip. Co. v. Capital Equip. & Trading Corp.*, No. 3:16-cv-00024, 2019 WL 1261352 at *15 (W.D. Ky. Mar. 19, 2019) (granting motion to compel and collecting cases regarding need for foreign governments to raise their own objections to discovery); *accord Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 12–13 (D.D.C. 2007).

Even if the Court were to consider the objection on its merits (and it should not, given L3Harris's lack of standing), L3Harris's assertion is wholly unsupported, even by the under-seal declaration of ▮▮▮▮▮▮ *See* L3Harris Decl. Rather than identify any basis as to why the specific discovery requested in this case—which includes only materials relating to *Corellium* and the *Corellium Apple Product*—somehow justifies the extraordinary relief of quashing that discovery, ▮▮▮▮ declares ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ L3Harris Decl. ¶¶ 7, 8, 12. Neither the Motion nor the declaration state anywhere that the discovery called for by Apple even falls into these categories. To the contrary, L3Harris seeks to avoid responding to Apple's subpoenas on the basis that "allowing certain information to get into the wrong hands could significantly compromise the security interests of its customers involved in national security and law enforcement." ECF No. 184 at 5. But Apple's hands—the hands that design and maintain the copyrighted software at issue—are not the "wrong" hands. Moreover, L3Harris offers no basis for supposing that the normal means for protecting highly sensitive information—a protective order that includes an outside-counsel-eyes' only designation, *e.g.*, ECF No. 50—is insufficient to protect any sensitivities that actually exist.

Finally, L3Harris's claims regarding the sensitivity of its customers' identity is directly undercut by Corellium's own prior disclosure in marketing presentations to Apple of what appear to be Azimuth customers. *See* ECF No. 175-3 at 16; ECF No. 201-1 at 11 (version of Corellium

4

slide deck Corellium provided to Apple) (identifying  . If Azimuth can freely share its customer list with Corellium, and in the past has permitted Corellium to use that list to market its own product, it is not so sensitive that it cannot be produced in discovery. L3Harris's national security objection should be overruled.

### B. L3Harris May Not Withhold Responses On The Basis Of Trade Secrets.

L3Harris's other principal objection—also supported primarily by conclusory statements—is that Apple's requests call for L3Harris's trade secrets. *See* ECF No. 184 at 4–6. Again, however, L3Harris makes no specific showing that the information sought constitutes an L3Harris trade secret, or that the Protective Order is insufficient to protect that information from untoward disclosure. This objection should be overruled as well.

The relevance of the requested discovery is paramount to this case. Azimuth is a *reseller* of the primary product that Apple alleges infringes its copyrights. ECF No. 184 at 1. Azimuth provides ▇▇▇ Corellium's income. *See* Ex. 1 (Resps. to Interrog. Nos. 9–11). Its sales and licensing of that product are critically relevant and necessary for Apple to support its claim of infringement, contributory infringement, and trafficking in tools of circumvention. Azimuth (and perhaps L3Harris) are also *users* of the Corellium Apple Product. The uses they put that product to bear directly on Corellium's fair use defense and its defenses under the Digital Millennium Copyright Act. For instance, Corellium is relying on 17 U.S.C. §§ 1201(f), (g), and (j)—asserting its product is used for purposes of reverse engineering, security testing, and encryption research—all uses which have specific factual predicates that Apple is entitled to test. *See* ECF. No. 64 at 26–27. Moreover, communications between Corellium and Azimuth, Corellium's ▇▇▇ customer, are likely to bear directly on other issues relating to this case, including whether Corellium intentionally engaged in acts of infringement.

Corellium itself has put Azimuth's role as a Corellium customer directly at issue in this case. In the expert report from Alexander Stamos that Corellium served on March 3, 2020, Stamos opines that the Corellium Apple Product "is an important part of the security ecosystem" and "constitutes fair use." Ex. 7 ¶¶ 11, 39. In support of that opinion, Stamos specifically relies on Azimuth's role as a Corellium customer. *Id.* ¶ 32. Stamos contends that Azimuth "provide[s] vulnerabilities to governments allied with the United States," is a "well-known defense contractor

supplying the United States government and its allies," and "is an openly acknowledged customer of Corellium." *Id.* The discovery sought from L3Harris and Azimuth goes directly to those assertions, which Apple must be allowed to test.

In the face of this overwhelming relevance, L3Harris's conclusory trade secret objections cannot, and should not, bar discovery. *See Dish Network L.L.C. v. Fraifer*, No. 8:16-cv-2549, 2017 WL 3701140, at *3 (M.D. Fla. May 24, 2017) ("[D]iscovery related to the manufacturers, suppliers, and sellers or resellers of the [accused product] is relevant to the copyright allegations and defenses and appropriate for discovery in this matter. The claim of trade secret as to these matters is overruled."). "It is well settled that there is no absolute privilege for trade secrets and similar confidential information." 8A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2043 (3d ed. 2019). An entity resisting discovery on the basis of a "trade secret" objection must first meet its burden to show "that the information sought is a trade secret and that disclosure may be harmful." *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 148 F. Supp. 2d 1322, 1324 (S.D. Fla. 2001) (citation omitted). L3Harris fails to make that showing.

To establish that information should be shielded from discovery based on a trade secret objection, L3Harris must demonstrate both that the information sought is actually a trade secret, and that disclosure may be harmful. *E.g.*, *TIC Park Ctr. 9, LLC v. Cabot*, No. 16-cv-24569, 2017 WL 3034547, at *7 (S.D. Fla. July 18, 2017) ("[I]n order to prevent the discovery of confidential information, the objecting party must first show that the information is confidential and that its disclosure might be harmful."). L3Harris has not done either. To establish that the information at issue constitutes a trade secret as contemplated in Federal Rule of Civil Procedure 26(c), L3Harris needed to show, *inter alia*, that "the information represents substantial value" to Azimuth, "that it would be valuable to [Azimuth's] competitors," and that Azimuth has "consistently treated the information as closely guarded secrets." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313–14 (11th Cir. 2001) (citation omitted). L3Harris has made none of these showings. While L3Harris's brief describes in general that L3Harris believes revealing its customer information could harm its business, ▮▮▮▮▮ declaration ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ L3Harris Decl. ¶¶ 7–12. As noted above with respect to governmental information, L3Harris does not identify any information actually sought by the subpoenas that falls within these standards. This failure to identify specific

6

information that actually constitutes a trade secret is fatal to its claim. So too is the fact that the information has not consistently been treated as closely guarded secrets, given that, as noted above, Corellium appears to have already identified many of Azimuth's customers to Apple. ECF No. 201-1 at 11; *see also* ECF No. 56 at 13 n.5, 17 n.9; ECF No. 175-3 at 16.

Moreover, L3Harris has failed to meet its burden to demonstrate that any harm is likely to come from discovery even into genuinely sensitive areas. L3Harris does not claim it is a competitor of Apple such that disclosure to Apple would be harmful, or that disclosure to Apple's *outside counsel* poses any risk whatsoever of its competitors learning commercially sensitive information. Importantly, the existing Protective Order extends to non-parties. ECF No. 50 ¶ 2(d). Any production L3Harris makes may be designated "Confidential" or "Confidential-Attorneys' Eyes Only," as appropriate. *Id.* ¶ 2(e). While courts often recognize customer lists as protected trade secrets, courts also permit their discovery pursuant to a protective or confidentiality order. "[A]ny potential harm is obviated by the previously entered Confidentiality Order that limits the use of this information to this litigation and to those who would be privy to it." *OKO Int'l Co. v. Haurex Italy, S.r.l,* No. 12-cv-60405, 2012 WL 12899041, at *1 (S.D. Fla. Dec. 11, 2012) (citation omitted). Just as this Court ordered Corellium to produce lists of customers, so too should the Court require L3Harris to disclose its customers to the extent those customers are also end users of the Corellium Apple Product, and documents related thereto. L3Harris's trade secret objection should likewise be overruled.

### C. L3Harris Other Privilege Objections May Be Resolved With A Privilege Log

Finally, L3Harris contends that some of Apple's requests calling for "all communications" and "all documents" implicate attorney-client communications. ECF No. 184 at 7. To be clear, and as Apple has already explained to L3Harris, Apple does not seek attorney-client privileged materials. But there is no basis to quash an entire subpoena just because some of the materials it calls for are subject to privilege. Rather, the Federal Rules already provide a method to refuse production of such materials: log them. Fed. R. Civ. P. 45(e)(2)(a)(ii). For any objection based on privilege not overruled by the Court, L3Harris should be required to provide a privilege log in conjunction with its production.

### CONCLUSION

For the foregoing reasons, Apple respectfully requests that this Court deny L3Harris's Motion to Quash (ECF No. 184).

Dated: March 5, 2020

Kathryn Ruemmler*
*kathryn.ruemmler@lw.com*
Sarang Vijay Damle*
*sy.damle@lw.com*
Elana Nightingale Dawson*
*elana.nightingaledawson@lw.com*
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200 / (202) 637-2201 Fax

Andrew M. Gass*
*andrew.gass@lw.com*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 / (415) 395-8095 Fax

Jessica Stebbins Bina*
*jessica.stebbinsbina@lw.com*
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500 / (424) 653-5501 Fax

*Admitted pro hac vice

Respectfully Submitted,

*/s/ Martin B. Goldberg*
Martin B. Goldberg
Florida Bar No. 0827029
*mgoldberg@lashgoldberg.com*
*rdiaz@lashgoldberg.com*
Emily L. Pincow
Florida Bar. No. 1010370
*epincow@lashgoldberg.com*
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL 33131
(305) 347-4040 / (305) 347-4050 Fax

*Attorneys for Plaintiff* APPLE INC.