UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 19-cv-81160-RS**

APPLE INC.,

    Plaintiff,

v.

CORELLIUM, LLC,

    Defendant.

_____/

**NON-PARTY L3HARRIS TECHNOLOGIES, INC[1].'S REPLY IN SUPPORT OF ITS MOTION TO QUASH PLAINTIFF'S SUBPOENAS TO PRODUCE DOCUMENTS AND FOR DEPOSITION**

---

[1] Azimuth Security ("Azimuth") is a subsidiary of L3Harris and joins in L3Harris' objections.

Non-party L3Harris Technologies, Inc. ("L3Harris") replies in response to its request for the Court to quash the two subpoenas issued by Plaintiff Apple Inc. ("Plaintiff") [DE 184].

## 1. The Alleged Relevance of the Information

Filtering through Plaintiff's Response [DE 220] to understand the relevance of the information sought from L3Harris shows that the Subpoenas[2] are overbroad, and the over breadth is compounded by Plaintiff's failure to provide L3Harris with a proper opportunity to review and analyze the information sought. Indeed, in light of the undeniably sensitive nature of the information requested, L3Harris sought an extension to analyze the Subpoenas and determine how it could respond without creating unnecessary risk for its customers and employees, but Plaintiff would agree only to the immediate production of certain documents and two extra days for full compliance and production. Plaintiff's unreasonable position made it impossible to conduct a meaningful inquiry, especially when considering the complexity of the underlying lawsuit (of which L3Harris is not involved) and the national security concerns implicated. Instead of recognizing its unfair stance, Plaintiff now attempts to use conferral discussions to argue why L3Harris must be compelled to produce the information requested in the overbroad Subpoenas.

Putting aside Plaintiff's bully-tactics, Plaintiff's Response identifies the relevance of the information from L3Harris at various points:

o "The point, in short, is that Corellium's primary defense in this litigation turns on its contentions about precisely what its customers are doing with Apple's copyrighted works." [DE 220 at 1].

o "Azimuth possesses critical information relating to Corellium's infringing product, the sales of that product, and the uses of that product." *Id.*

o What Azimuth does with Corellium Apple Product, and to whom Azimuth sells the product, is central to both Apple's affirmative case and Corellium's fair use defense." *Id.*

---

[2] Subpoenas has the same definition as in L3Harris' Motion to Quash [DE 184].

Summarizing the relevance of the information from L3Harris, as stated by Plaintiff, demonstrates that it is limited to the following, which is more narrow than the expansive scope of the Subpoenas:

1. **Azimuth's use of the Corellium Apple Product ("CAP");**
2. **Azimuth's sales of the CAP; and**
3. **To whom Azimuth sells the CAP.**

To provide Plaintiff with the relevant information, L3Harris will produce (1) the reseller agreement between Azimuth and Corellium, (2) evidence of its transactions with Corellium regarding the CAP, (3) communications with Corellium related to sales of the CAP and the CAP's direct delivery, (4) documents reflecting the value of sales by L3Harris of the CAP, and (5) a description of L3Harris' customers it sold the CAP without specifically identifying the governmental entities.

Importantly, L3Harris has not used the CAP other than to initially evaluate it and selling it to two customers, and L3Harris has no knowledge of its customers' use. In fact, L3Harris and Azimuth have never asked the customers about their use of the CAP. L3Harris cannot provide Plaintiff with L3Harris' customer identities for the various reasons discussed below. Furthermore, because L3Harris does not use the CAP, the identities of L3Harris' employees is completely irrelevant and nothing more than a fishing expedition that implicates safety concerns for those employees and national security interests. Relying on Plaintiff's own admissions of relevance, the information L3Harris is willing to provide should end this dispute.

2. **Trade Secrets**

L3Harris met its burden to establish that the identities of its customers are trade secrets and must not be disclosed. Plaintiff repeatedly states that L3Harris failed to meet its burden of demonstrating that the information sought is a trade secret and that disclosure would be harmful. [DE 220 at 6]. Contrary to Plaintiff's repetition, L3Harris provided a Declaration[3] ("L3 Dec.")

---

[3] The Declaration was filed under Seal.

that established both necessary elements. The L3 Dec. was explicit that disclosure of "the identities of the governmental agencies (i.e customers) would violate confidentiality agreements with those governmental agencies." L3 Dec. ¶ 8. This information, along with additional information within the L3 Dec., are sufficient to establish that the customer identities are trade secrets and that disclosure would be harmful. *See Fadalla v. Life Auto Products*, 258 F.R.D. 501, 505-06 (M.D. Fla. 2007) (relying on an affidavit that the movant had non-disclosure agreements that prohibited revealing the name of its customers when finding that the identification of customers is a trade secret . . . "Here, O & C states disclosure would be harmful because it would require O & C to breach its non-disclosure and secrecy agreements. The Court is persuaded by O & C's reasoning.") To be clear, the foundation of Azimuth's business is its customers' trust and confidence in Azimuth's discretion and forcing disclosure would destroy that trust and confidence and create a ripple-effect that would gravely harm Azimuth's business. Plaintiff fails to even attempt to address the cases relied on by L3Harris, yet the case law cited by Plaintiff is quickly distinguished. Plaintiff relies on *Dish Network LLC v. Fraifer*, 2017 WL 3701140 (M.D. Fla. 2017) to argue information related to copyright allegations is relevant and defeats claims of trade secret [DE 220 at 6]. Critically lacking in *Fraifer* was an affidavit explaining that disclosure of the information would violate confidentiality agreements. That is not the case for L3Harris.

Furthermore, Plaintiff cites to three cases[4] for general principles of law and does not—nor could it—argue that the facts of those cases bear any relevance to this case. Plaintiff also relies on *OKO Int'l Co. v. Haurex Italy, S.r.l*, 2012 WL 12899041 (S.D. Fla. Dec. 11, 2012) to suggest the existence of the Confidentiality Order is sufficient to overrule L3Harris' objections. Unlike *OKO*,

---

[4] *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 148 F. Supp. 2d 1322 (S.D. Fla. 2001), *TIC Park Ctr. 9, LLC v. Cabot*, 2017 WL 3034547 (S.D. Fla. July 18, 2017), and *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304 (11th Cir. 2001)

3

L3Harris asserted trade secret objections instead of only "voic[ing] trade secret/confidentiality concerns." *Id*. at *1.  And unlike in *OKO*, L3Harris is not a party. Simply put, the Confidentiality Order is inconsequential because L3Harris is not a party, the customers' identities are secret, highly sensitive, and the disclosure of the customers will cause L3Harris and Azimuth to violate confidentiality agreements and cause substantial harm their business, as stated in the L3 Dec.

Plaintiff repeatedly criticizes L3Harris for allegedly asserting conclusory statements. Failing to remember its accusations, Plaintiff relies on its own conclusions to argue that trade secret protection is unwarranted, "Azimuth (and perhaps L3Harris) are also *users* of the Corellium Apple Product." [DE 220 at 5].  Plaintiff is wrong.  Azimuth's use of the product was limited to an initial trial and evaluation of the CAP. Azimuth purchased and resold the CAP to two customers (two transactions for less than $1 million), and Azimuth has no knowledge of its customers' CAP Use. Moreover, Plaintiff again advances a conclusory argument when it claims Azimuth disclosed its customer list to Corellium and permitted Corellium to use that list to market its product. [DE 220 at 4-5, 7]. Plaintiff is incorrect. Neither L3Harris nor Azimuth have ever informed Corellium which government customers purchased the CAP.

Also noticeably lacking from Plaintiff's Response is its failure to establish need. *See Fadalla*, 258 F.R.D. at 506 ("If, however, the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.") Because L3Harris established the information as trade secrets, provides an alternative and because Plaintiff failed to even attempt to establish need, the Court should err on the side of caution when a description of the customers would provide Plaintiff with the relevant information it seeks.  On

4

balance, the Court can protect the security and safety interests at stake while providing Plaintiff sufficient information so that they are informed of the type of customer and purchase amounts.

### 3. National Security Interests

Plaintiff argues that L3Harris does not have standing to assert an objection based upon national security interests, and that to advance objections based upon national security interests, the customers will have to assert those objections. Plaintiff's argument misses the point that the identities of the customers are the trade secrets and revealing those identities implicates national security issues, in addition to seriously harming Azimuth's business. Forcing the customers to assert such objections would be an end-around way for Plaintiff to obtain the trade secrets. Furthermore, private governmental contracts invoking privileges based on national security concerns is not rare. See, Laura K. Donohue, The Shadow of State Secrets, 159 U. Pa. L. Rev. 77, 97 (2010) ("What is remarkable about these contractors is that, quite apart from Reynolds's requirement that only the government invoke the state secrets privilege, PMCs such as Halliburton, DynCorp, and L-3 Communications, as well as more traditional contractors, such as Boeing Company, Northrop Grumman, Raytheon, and Honeywell International, consistently assert state secrets as an affirmative defense.") Again, the government agencies are procuring these products because they are critical to their national security needs. Allowing the disclosure of their identities alone could compromise their operations related to national security missions, combating significant criminal activities and public health and safety needs.

### 4. Geographic Objection

Plaintiff ignored the geographic constraints identified within Rule 45(c) and hopes to have the Court overlook the distance requirement. And, while chastising L3Harris for allegedly making conclusory statements, Plaintiff baldly asserts that L3Harris regularly transacts business within

100 miles because L3Harris' website identifies locations in Sunrise, Florida, and Miami, Florida. Ignoring that the operations at these two locations are wholly unrelated to Azimuth or the relevant information requested, Plaintiff fails to explain or identify legal support that a location on a website is sufficient to establish that a subpoenaed-party is "regularly transact[ing] business **in person**" as is required under Rule 45. Plaintiff's *conclusory* argument should be rejected.

5. **Privilege Objection**

Plaintiff seemingly cannot pick a side: Plaintiff refuses to acknowledge the overly broad request that seeks privileged information; Plaintiff states that it does not seek privileged information; Plaintiff states that this Court should overrule privilege objections and to the extent it does not, Plaintiff requests a privilege log identifying privilege information. L3Harris' position is much more clear: Plaintiff's requests are objectionably overbroad and improperly seek privilege communications, and this Court should sustain L3Harris' objections, and because Plaintiff has now admitted it does not seek attorney-client privileged materials, L3Harris should not be obligated to provide a privilege log.

Dated: March 9, 2020

Respectfully submitted,

**HOLLAND & KNIGHT LLP**
*Attorneys for L3Harris Technologies, Inc.*
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Tel: (305) 374-8500
Fax: (305) 789-7799

By: *s/Benjamin Taormina*
Adolfo E. Jimenez (FBN: 869295)
Adolfo.jimenez@hklaw.com
Benjamin A. Taormina (FBN: 106731)
Benjamin.taormina@hklaw.com

## CERTIFICATE OF SERVICE

I certify that on March 9, 2020, I filed this document with the Clerk of Court using CM/ECF, which will serve this document on all counsel of record.

*s/ Benjamin Taormina*