**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:19-cv-81160-RS**

APPLE INC.,

                            Plaintiff,

      v.

CORELLIUM, LLC,

                        Defendant.

**JOINT NOTICE REGARDING**
**L3HARRIS TECHNOLOGIES, INC.'S MOTION TO QUASH AND**
**OUTSTANDING DISCOVERY DISPUTES BETWEEN APPLE AND CORELLIUM**

Plaintiff Apple Inc. ("Apple"), Corellium, LLC ("Corellium"), and Non-Party L3Harris Technologies, Inc. ("L3Harris"), by and through their undersigned counsel, and pursuant to the Court's February 28, 2020 order, hereby jointly provide the Court with the following notice regarding certain ongoing discovery disputes.

## L3HARRIS TECHNOLOGIES, INC.'S MOTION TO QUASH

### GENERAL ISSUES

### L3Harris's Position

As we previously stated, we are willing to produce the following:

(1) the reseller agreement between Azimuth and Corellium,

(2) evidence of its transactions with Corellium regarding the CAP,

(3) communications with Corellium related to sales of the CAP and the CAP's direct delivery,

(4) documents reflecting the value of sales by Azimuth of the CAP, and

(5) a description of Azimuth's customers it sold the CAP without specifically identifying the governmental entities.

L3Harris/Azimuth's position is that the documents we are willing to produce allow for Apple to discover the information that it needs, and the identity of L3Harris'/Azimuth's customers and Azimuth's employees are not relevant and should not be disclosed based upon trade secrets and national security / safety concerns.

L3Harris attempted to confer with Apple on March 10th by telephone. Apple's position, as made clear by on the telephone call, is that Apple does not think that the Subpoenas need to be narrowed and Apple is unwilling to narrow the Subpoenas, and Apple expects L3Harris/Azimuth to produce everything that Apple requested. Furthermore, Apple stated on the call that it did not have the authority to narrow any of the requests. L3Harris tried in good faith to provide reasonable solutions and Apple did not provide any concessions. Apple failed to allow for a meaningful conferral. L3Harris' positions are presented below.

### Apple's Position

On Tuesday, March 10, 2020, counsel for Apple, counsel for L3Harris, and counsel for Corellium had a telephone conference regarding L3Harris's Motion to Quash. Apple requested clarity on L3Harris's positions with respect to what it is agreeing to produce and the scope of the remaining dispute. Counsel for L3Harris expressed that they believed L3Harris's positions were

clear from its reply.  Following the phone call, at 6:22pm ET on Tuesday, March 10, in an effort to continue to identify the remaining areas of dispute, counsel for Apple laid out Apple's positions in email correspondence to counsel for L3Harris, including the positions detailed below, and requested that L3Harris either confirm that Apple correctly understands L3Harris's positions or clarify L3Harris's positions so the parties can meaningfully confer regarding whatever disputes remain.  The next day, counsel for L3Harris responded by stating that they disagree with Apple's representations of L3Harris's and Azimuth's positions, but did not provide any further clarification regarding Azimuth's and L3Harris's positions, stating that counsel for L3Harris would simply provide their portion of this Joint Notice at 4:30pm ET.  Apple responded by explaining that further clarification of L3Harris's and Azimuth's positions is necessary for the parties to meaningfully meet and confer.  Given the positions L3Harris's counsel has taken, Apple has not been able to meaningfully confer with L3Harris regarding the relief sought in its motion or about how, if at all, the remaining disputes can be narrowed.  Nonetheless, Apple attempts to lay out its position with respect to the specific issues below.

**Corellium's Position**

Corellium has joined L3Harris' Motion to Quash and arguments raised therein. The Parties should agree that the definition of "Corellium Apple Product" provided by the Court on February 27, 2020 should be used for the topics of deposition.

## SPECIFIC ISSUES

## I.      GEOGRAPHICAL OBJECTION

**L3Harris's Position**: L3Harris/Azimuth's position is stated in the Motion and Reply that the Sunrise and Miami locations are unrelated to any operations by Azimuth, and Azimuth has no presence outside of Melbourne.

**Apple's Position**: Apple contends the subpoenas were appropriately served, as the place of compliance was within 100 miles of two different offices where L3Harris conducts business. L3Harris's reply discusses where its subsidiary, Azimuth, conducts business,[1] but the question at issue is where L3Harris conducts business, and L3Harris has not produced any evidence that it

---

[1] Azimuth was served separate subpoenas, ECF No. 220-2, to which no objections have been made.

does not conduct business at the locations identified by Apple.  Nonetheless, Apple is willing to accept production via electronic means and believes that this offer should resolve the geographical objection.

## II.     DEPOSITION SUBPOENA

**L3Harris's Position**: L3Harris/Azimuth sees no need for depositions because the information that Apple has requested and described as relevant will be provided for in the document responses.

**Apple's Position**: Once documents have been produced, Apple is open to conferring regarding whether a deposition is necessary and, if so, whether the scope of any such deposition can be narrowed.  However, the given the paramount position of L3Harris's subsidiary, Azimuth, with respect to Corellium's business operations, it remains likely that a deposition will be needed.[2]  The subpoena topics listed are directly relevant to this litigation and have been put at issue by Corellium.

**Corellium's Position**:

**Topic No. 4**: "relevance, privacy, and overbroad" Mr. Wade is not a party to this lawsuit, nor are his action in an individual capacity at issue in this lawsuit.

**Topic No. 5:** Vague and confusing as to the use of the phrase "or any of its technology"  The phrase "or any of its technology" is vague and confusing as it is not clear what technology is sought in addition to the Corellium Apple Product. If that phrase relates to any technical information outside of the new definition for Corellium Apple Product, then Corellium maintains this objection.

**Topics seeking technical information on Corellium's proprietary technology**. Apple's use of the phrase "technology" throughout the Notice. Such technology may have been shared or access to same been provided to customers to the extent such limited sharing is necessary for the customer to access and purchase, but Corellium maintains its proprietary expectation of privacy related to same.

---

[2] Azimuth was separately subpoenaed but failed to appear for deposition on the noticed date of March 6, 2020.

III.    DOCUMENT SUBPOENA

**Request No. 1: All Documents and Communications relating to Corellium.**

**L3Harris's Position**: The documents L3Harris/Azimuth can produce without compromising their trade secrets, national security, safety, confidentiality and client relationship interests allow for Apple to discover the information that it needs.  The only information it would not obtain is the identity of customers and names of employees.  The identity of L3Harris'/Azimuth's customers and Azimuth's employees are not relevant and should not be disclosed.  Azimuth does not use the CAP for development of its own technology, but only for evaluation and troubleshooting, as explained in our Reply.  And, L3Harris/Azimuth do not know how the two customers specifically use the CAP.  Thus, the relevance of Azimuth's employees is irrelevant and Azimuth/L3Harris will not disclose its customers identities for the numerous reasons explained in our papers, including trade secrets and national security / safety concerns.

**Apple's Position**: Apple's focus is on documents and communications related to the product and services Corellium offers that allow for the creation of virtual devices using iOS, and anything related to Apple and iOS more generally.  If there are documents and communications relating to Corellium that are not related to such product and services, or to Apple and iOS more generally, Apple is not seeking such documents and communications.  However, Apple understands that, per Corellium's representations to the Court, it offers "one product"; thus, it would seem that Corellium-related communications are related to the Corellium Apple Product.  Apple has attempted to confer with L3Harris regarding the categories of documents it believes fall outside of this scope, but L3Harris has not provided information regarding such categories.

L3Harris has represented that it will produce certain categories of documents.  ECF No. 223 at 3.  Those representations, however, do not make clear what L3Harris intends to withhold.  For example, although L3Harris has represented that it will produce certain documents, such as communications with Corellium related to sales of the [Corellium Apple Product] and the [Corellium Apple Product's] direct delivery, Apple is unclear on what, if anything L3Harris intends to withhold.  The statement suggests that L3Harris intends to withhold at least some documents and communications related to the Corellium Apple Product, including those related to L3Harris's and Azimuth's own use of the product.  Similarly, L3Harris's statement that it will produce "evidence of its transactions" does not make clear whether the production will represent all such documents or some limited subset.  Apple's position is that all documents relating to

Azimuth's and/or L3Harris's interactions with Corellium regarding the Corellium Apple Product should be produced.

**Corellium's Position**: The Parties should agree that the definition of "Corellium Apple Product" provided by the Court on February 27, 2020 should be used for the request of documents.  Apple's use of the phrase "technology" throughout the Notices of Subpoena. Such technology may have been shared or access to same been provided to customers to the extent such limited sharing is necessary for the customer to access and purchase, but Corellium maintains its proprietary expectation of privacy related to same.

**Request Nos. 2 and 7: All Documents relating to L3Harris's and/or Azimuth's use of the Corellium Apple Product, including the nature of the use of the Corellium Apple Product, the length of the use of the Corellium Apple Product, and any payments made to Corellium in exchange for use of the Corellium Apple Product, as well as documents sufficient to identify L3Harris's and/or Azimuth's employees who use the Corellium Apple Product in the course of their employment.**

**L3Harris's Position**: L3Harris/Azimuth's position is that the documents we are willing to produce allow for Apple to discover the information that it needs, and the identity of Azimuth's customers and Azimuth's employees are not relevant and should not be disclosed based upon trade secrets and national security / safety concerns.  Azimuth does not use the CAP for development of its own technology, but only for evaluation and troubleshooting, as explained in our Reply.  And, L3Harris/Azimuth do not know how the two customers specifically use the CAP.  Thus, the relevance of Azimuth's employees is irrelevant and Azimuth/L3Harris will not disclose its customers identities for the numerous reasons explained in our papers, including trade secrets and national security / safety concerns.

**Apple's Position**: L3Harris has represented that L3Harris and Azimuth are not Corellium customers and do not themselves use the Corellium Apple Product other than for purposes of testing a product that they are then reselling.  Corellium, ███████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

If either Azimuth or L3Harris are Corellium customers, or if either entity uses the Corellium Apple Product, ████████████████████████, then documents relating to that use, including the nature, length, and cost of the use, is directly relevant and should be produced, as should documents identifying the L3Harris and/or Azimuth employees who use the Corellium Apple Product during the course of their employment, as such information relates directly to

Apple's contributory infringement claim and Corellium's fair use defense.

**Corellium's Position**:  The Parties should agree that the definition of "Corellium Apple Product" provided by the Court on February 27, 2020 should be used for the request of documents.  Apple's use of the phrase "technology" throughout the Notices of Subpoena. Such technology may have been shared or access to same been provided to customers to the extent such limited sharing is necessary for the customer to access and purchase, but Corellium maintains its proprietary expectation of privacy related to same.


**Request No. 3: All Documents and Communications relating to L3Harris's and/or Azimuth's sale or resale of the Corellium Apple Product to third parties, including Documents sufficient to identify all customers who purchased (or who L3Harris and/or Azimuth otherwise provided access) to any feature, technology, component, or part of Corellium Apple Product from L3Harris and/or Azimuth, and all Communications with such customers.**

**L3Harris's Position**: L3Harris does not have any customers related to the CAP, and Azimuth only sold the CAP to two governmental entities.  L3Harris/Azimuth's position is that the documents we are willing to produce allow for Apple to discover the information that it needs, and the identity of L3Harris'/Azimuth's customers and Azimuth's employees are not relevant and should not be disclosed based upon trade secrets and national security / safety concerns.  Azimuth does not use the CAP for development of its own technology, but only for evaluation and troubleshooting, as explained in our Reply.  And, L3Harris/Azimuth do not know how the two customers specifically use the CAP.  Thus, Azimuth's employees are irrelevant and Azimuth/L3Harris and identifying them places them at risk when they travel internationally.  Azimuth and L3Harris cannot disclose its customers identities for the numerous reasons explained in our papers, including trade secrets and national security / safety concerns.

**Apple's Position**: The users of the Corellium Apple Product, and how the product is being used, has been put at issue both by Apple's contributory infringement claims and by Corellium's fair use defense, which specifically relies on the use of the Corellium Apple Product both by Azimuth and by Azimuth's customers.  *See, e.g.*, Stamos Expert Report, ECF No. 220-7 at 11 ("Azimuth is currently owned by L3Harris Technologies of Melbourne, Florida.  L3Harris is a well-known defense contractor supplying the United States government and its allies.").  Apple is entitled to the names of the customers who bought the Corellium Apple Product from L3Harris or Azimuth, and such information can be designated Confidential – Attorneys' Eyes Only pursuant to the

protective order in this case, which extends to third parties (ECF No. 50 at 2), without harming any trade secret or government interests.  Apple is also entitled to communications and documents relating to those customers, to the extent they relate to the Corellium Apple Product.  Apple does not seek documents or communications unrelated to the Corellium Apple Product, or the identify of other L3Harris or Azimuth customers who have not purchased or licensed the Corellium Apple Product.

**Corellium's Position**:  The Parties should agree that the definition of "Corellium Apple Product" provided by the Court on February 27, 2020 should be used for the request of documents.  Apple's use of the phrase "technology" throughout the Notices of Subpoena. Such technology may have been shared or access to same been provided to customers to the extent such limited sharing is necessary for the customer to access and purchase, but Corellium maintains its proprietary expectation of privacy related to same.

**Request No. 4**:  **All Documents and Communications relating to Christopher Wade.**

**L3Harris's Position**: That Apple is willing to narrow the scope of this request is a new revelation that was not communicated to us on the telephone.  If it is limited to the time period of September 2017 to the present and limited to the CAP, Azimuth/L3Harris is examining Apple's offer.

**Apple's Position**: Documents and Communications relating to Christopher Wade—Corellium's founder and Chief Technology Officer—are directly relevant to this litigation.   Apple is willing to narrow this request to the time period when Corellium existed—so from September 2017 to the present.   L3Harris has not informed Apple as to whether this narrowing changes L3Harris's position regarding this request.  In addition, if L3Harris provides evidence that it communicates with Wade on matters wholly unrelated to the Corellium Apple Product, Apple would be willing to narrow the request to remove such unrelated communications as well.

**Corellium's Position**:  "relevance, privacy, and overbroad".  Mr. Wade is not a party to this lawsuit, nor are his action in an individual capacity at issue in this lawsuit.

**Request Nos. 5 and 6: All Documents and Communications relating to, or constituting any license, agreement, contract, or covenant (whether written or oral) to which L3Harris and/or Azimuth is a party that covers or otherwise relates to the Corellium Apple Product, or to the reselling or providing access to that product, or to any feature, technology, component, or part thereof, or any technology in the Corellium Apple Product.**

**L3Harris's Position**: The documents L3Harris/Azimuth can produce without compromising their trade secrets, national security, safety, confidentiality and client relationship interests allow for Apple to discover the information that it needs.  The only information it would not obtain is the identity of customers and names of employees.  The identity of L3Harris'/Azimuth's customers and Azimuth's employees are not relevant and should not be disclosed.  Azimuth does not use the CAP for development of its own technology, but only for evaluation and troubleshooting, as explained in our Reply.  And, L3Harris/Azimuth do not know how the two customers specifically use the CAP.  Thus, the relevance of Azimuth's employees is irrelevant and Azimuth/L3Harris will not disclose its customers identities for the numerous reasons explained in our papers, including trade secrets and national security / safety concerns.

**Apple's Position**: For the reasons explained with respect to Request No. 3, the documents and communications requested in Request Nos. 5 and 6 are critical to the issues in this case.  To the extent that there are documents related to the purchase, sale, licensing, or resale of the hypervisor in the Corellium Apple Product that are separate and apart from the purchase, sale, licensing, or resale of the Corellium product that allows for the creation of virtual devices containing iOS, Apple is not seeking such documents at this time, but reserves the right to seek them if the Court rules they are discoverable.  However, Apple understands Corellium to sell a single product, and invoices, licenses, and agreements relating to that product are relevant and should be produced.

**Corellium's Position**:  The Parties should agree that the definition of "Corellium Apple Product" provided by the Court on February 27, 2020 should be used for the request of documents.  Apple's use of the phrase "technology" throughout the Notices of Subpoena. Such technology may have been shared or access to same been provided to customers to the extent such limited sharing is necessary for the customer to access and purchase, but Corellium maintains its proprietary expectation of privacy related to same.


**Request No. 8: Documents sufficient to identify any communications by L3Harris and/or Azimuth or any of L3Harris and/or Azimuth employees to Apple based on the use of the Corellium Apple Product.**

**L3Harris's Position**: L3Harris/Azimuth will confirm whether any such documents exist, but Apple should also be able to confirm whether any of these communications exist.  This does not in any way justify the request since the documents requested would be as accessible to Apple as they would be to L3Harris/Azimuth.

**Apple's Position**: If any such documents exist, they should be produced. If L3Harris and Azimuth do not have any such documents, L3Harris should state as much. At present, Apple does not know L3Harris's position with respect to this request.

**Corellium's Position**: The Parties should agree that the definition of "Corellium Apple Product" provided by the Court on February 27, 2020 should be used for the request of documents. Apple's use of the phrase "technology" throughout the Notices of Subpoena. Such technology may have been shared or access to same been provided to customers to the extent such limited sharing is necessary for the customer to access and purchase, but Corellium maintains its proprietary expectation of privacy related to same.

IV.     **CLARIFICATION OF CORELLIUM ANTICIPATED INCOME FROM**
███████

**L3Harris's Position**: L3Harris has no revenue related to the purchase or sale of the CAP, and Azimuth's revenue is limited to re-selling the product to two customers for a total of approximately $1 million over the last two years.

**Apple's Position**: In its opposition to L3Harris's Motion to Quash, Apple stated that Corellium "████████████████████████████████████████████
██████." Opp. at 1 (ECF No. 222). This statement was based on a response in Corellium's interrogatories that addressed anticipated revenues and included a reference to ██████████████
█████████ Ex. 1 (Resp. to Interrog. No. 11) (ECF No. 222). Counsel for Corellium has since represented that the amount of anticipatory revenues Apple attributed to ████████ was significantly higher than the amount Corellium actually anticipates receiving from them. Given the representation by Corellium's counsel that ████████████████████████████████
████████████████████████████████████████████ Apple no longer relies upon this sentence regarding anticipated revenues for its opposition. However, Apple believes its remaining statements, ████████████████████████████████████████████
████████████████████████████████████████ are supported by Corellium's interrogatory responses.

## DISCOVERY DISPUTES BETWEEN APPLE AND CORELLIUM

I.      **APPLE'S DISCOVERY REQUESTS TO CORELLIUM**

**<u>Apple's Position</u>**

Two categories of discovery disputes remain with respect to Apple's discovery requests to Corellium. First, disputes remain with respect to productions related to the Corellium Apple Product. These disputes involve the changes Corellium has made to the Corellium Apple Product, Apple's requests for the production of source code, and the question whether Corellium will be required to produce discovery related to the hypervisor portion of the Corellium Apple Product. The parties are continuing to confer regarding these issues, and Apple's expert is continuing to review the evidence Corellium has and will be making available. Apple will address the status of these disputes in the affidavit from its expert that it will be filing on Sunday, March 15.

Second, disputes remain with respect to Corellium's document production in this case. Apple sent a letter to Corellium on Monday, March 9, 2020 outlining Apple's continued concerns regarding Corellium's deficient production. Apple understands that Corellium is continuing to evaluate these issues and Apple expects that the parties will further confer regarding these issues in the coming days. Should the disputes raised in Apple's March 9, 2020 correspondence be resolved or narrowed, Apple will file a supplemental notice updating the Court regarding such resolution. In the meantime, Apple briefly sets forth herein the issues that remain at present, which are detailed more fully in Apple's March 9, 2020 correspondence to Corellium, attached hereto as Exhibit A.

Finally, Apple is continuing to review Corellium's productions and its discovery responses, and notes that additional issues beyond those identified herein may still exist and Apple will timely raise them before the Court.

**Corellium's Purported Privilege Log**: Corellium served what it claimed was a privilege log that lists 9,860 unique entries. Only 1,820 of those entries are designated as representing classic privilege log categories, such as attorney-client privilege or attorney work product. The remaining 8,040 documents contain designations such as "trade secret" or "client privacy" and, in some instances, contain no designation at all. Further, the titles of many of the documents indicate that they are directly relevant to this litigation, and specifically relate to communications with Corellium customers about the Corellium Apple Product, for example, including documents titled ████_iOS_On_Premise_Datasheet.pdf," "Accepted: iOS Virtualization Discussion with Corellium," "Corellium iOS Virtualization Demo," and "FW: Corelli Demo ████ – Virtual iOS – next step." Ex. A at 6. Apple's position is that all 8,040 documents that do not contain a

classic privilege category should be produced immediately, particularly given Apple's understanding that the Court overruled Corellium's confidentiality and trade secret objections except as related to the hypervisor technology, which Apple understands that the Court will deal with separately. *See* ECF No. 211 at 2–4.

**Documents Missing From Corellium's Production**: Corellium's production to date appears markedly deficient. Corellium still has not produced many of the exhibits that it attached to its opposition to Apple's Motion for a Protective Order to Barring Deposition of Plaintiff's Apex Employee, including CF No. 175 Exs. 3, 8–12, 14, and 16–18. Corellium also produced only 57 documents on Monday, March 9, 2020, most of which are statements to potential customers that a version of the product is ███████████████████████████████████ ████████████████████████ There are many categories of documents that Corellium still has not produced documents related to, or has only produced a small subset of documents related to, such as documents related to its product trial accounts, communications with its Corellium Apple Product customers, and large volumes of information relating to its finances. For instance, Apple's financial expert was able to identify documents supporting only about one-third of Corellium's claimed expenditures, and was not able to resolve a substantial discrepancy in Corellium's reported revenues, as virtually no revenue documents have been produced. Other documents missing or largely unproduced include:

- Corellium's agreements with its customers.
- Corellium's communications with its customers.
- Corellium's financial information, including revenues and expenses attributable to the Corellium Apple Product
- The sales agreement between Corellium and Azimuth Security, which the Court specifically ordered produced.
- Documents relating to Corellium's sales plans and forecasts for the Corellium Apple Product.
- Documents relating to testing and analysis of the Corellium Apple Product, including testing that involved iOS and/or copying iOS.
- iMessage communications between Chris Wade and Apple employees.

Apple suspects that many of these improperly withheld documents are among the 8,040 documents improperly included in Corellium's purported privilege log, and maintains the documents should

be produced immediately.

**Corellium's Failure To Preserve And Produce Responsive Communications**: Corellium's productions indicate that Corellium is using methods of communication, such as Slack, that do not preserve such communications and thus risk significant spoliation.  In addition, Corellium has redacted documents that it has produced with no indication on its privilege log or elsewhere regarding why such redactions exist.

<u>**Corellium's Position**</u>:  Apple's position that documents are missing from Corellium's production is baseless. Merely because Apple believes a document should exist, does not mean it does. By way of examples that have been raised by Apple:

- All responsive iMessages that are in the possession custody or control of Corellium have been produced
- All design and architecture-type documents have been produced. These type of documents change over time as architecture and design and there are not that many that have ever been in existence.
- Customer-facing technical documents are unclear, however, all documents that relate to iOS have been produced. There are not generally documents that only relate to iOS that are provided to customers.

Apple further raised issue with the records produced as exhibits in Response to Apple's Motion for Protective Order in connection with Craig Federighi [D.E. 175]. First, Apple raises an issue with Exh. 3. This document was produced as Corellium-026324. Second, Apple raises issue with Exh. 8-12 and 14. These exhibits are iMessages that Corellium received from Apple. They are not in Corellium's possession. As stated above, the only responsive iMessages Corellium has, have been produced. Finally, Apple raises issue with Exh. 16-18. Again, these are records that Corellium received from Apple.  The email ▇▇▇▇▇▇ is no longer in use and are documents from five years ago. Corellium further advises that it will endeavor to re-review the Slack messages in its possession including the redactions in those messages produced to Apple. Corellium further advises that documents sufficient to show all revenues and profits related to the iOS as well as every expense related thereto have been produced.  The "ever-changing numbers" issue about which Apple complains about is Corellium updating its revenue numbers per its Rule 26 obligations.

As it relates to the privilege log and outstanding documents that became "outstanding" only at the last hearing upon the Court's rulings, Corellium is still working through its extensive privilege log to gather those materials that were previously deemed privileged but will be produced. Corellium anticipates it will produce these records by March 15, 2020.  These documents including those that relate to entities that had trial accounts, affirmatively rejected entities, agreements with customers, communications with customers, and other materials.

Corellium has no failure to preserve any records. All code has been produced in usable format.

## II.   CORELLIUM'S DISCOVERY REQUESTS TO APPLE

**Apple's Position**: On March 8, 2020, Corellium sent Apple a letter regarding its concerns with Apple's discovery responses served on March 2, 2020.  Most of these concerns featured small changes to response wording, which Apple is working to resolve.  The others related to Apple's responses to requests for production regarding Apple's financial information, as well as Apple's intended purposes for iOS in response to Corellium's Interrogatory No. 15.  Apple is also working on language to resolve those two concerns, and continues to meet and confer in good faith.

**Corellium's Position**:  The Parties have conferred on issues relateing to its second round of written discovery. However, until the changed language has been received an accepted by Corellium, Corellium lists the following issues.

### a.  Corellium's Deficiency Letter to Apple

#### i.  Corellium's Second Request for Production

| Dispute | Corellium's Position on Pending Disputes | Apple's Position |
|---|---|---|
| Nos. 100, 101, 102, 103, 104, and 105 | Apple has provided in its responses to RFP's Nos. 100, 101, 102, 103, 104 and 105, that it will not be seeking damages for any loss of revenue or profits by Apple, and thus, Apple will not be producing the requested records to the | On March 8, 2020, Corellium sent Apple a letter regarding its concerns with Apple's discovery responses served on March 2, 2020.  Most of these concerns featured small changes to response wording, which Apple is working |

| | | |
|---|---|---|
| | Requests. Corellium requests a stipulation with Apple that may be read to the jury that Apple has not incurred any financial harm in connection with the Corellium product or any other issue alleged in this case. The Parties met and confer about a certain stipulation and if Apple agrees to the same, this dispute will be resolved. | to resolve. The others related to Apple's responses to requests for production regarding Apple's financial information, as well as Apple's intended purposes for iOS in response to Corellium's Interrogatory No. 15. Apple is also working on language to resolve those two concerns, and continues to meet and confer in good faith. Apple anticipates this issue is likely to be resolved by the hearing. |
| Nos. 106 and 107 | The Court denied Corellium's discovery as to Apple's internal developments due to Apple's counsel representation to the Court that Apple did not have an emulation, simulation or virtualization product. Apple objects to these requests based on burdensome and other boilerplate objections. The parties met and confer on March 10, 2020, Apple agreed to produce amended responses to clarify that it has produced all documents relating to its emulation and/or simulation products but for any internal documents from Apple. Once Corellium receives Apple's supplemental response, it may withdraw its objection. | On March 8, 2020, Corellium sent Apple a letter regarding its concerns with Apple's discovery responses served on March 2, 2020. Most of these concerns featured small changes to response wording, which Apple is working to resolve. The others related to Apple's responses to requests for production regarding Apple's financial information, as well as Apple's intended purposes for iOS in response to Corellium's Interrogatory No. 15. Apple is also working on language to resolve those two concerns, and continues to meet and confer in good faith. Apple anticipates this issue is likely to be resolved by the hearing. |
| No. 108 | This Request seeks documents that relate to Corellium's affirmative defense of Fair Use. Apple asserts that it will not produce the requested documents because it is Corellium that "bears the burden of establishing" the defense. The parties met and confer on March 10, 2020, Apple agreed to produce amended responses to provide a better understanding as to what documents are being produced. Once Corellium receives Apple's | On March 8, 2020, Corellium sent Apple a letter regarding its concerns with Apple's discovery responses served on March 2, 2020. Most of these concerns featured small changes to response wording, which Apple is working to resolve. The others related to Apple's responses to requests for production regarding Apple's financial information, as well as Apple's intended purposes for iOS in response to |

14

|  | | Corellium's Interrogatory No. 15. Apple is also working on language to resolve those two concerns, and continues to meet and confer in good faith. Apple anticipates this issue is likely to be resolved by the hearing. |
|---|---|---|
|  | supplemental response, it may withdraw its objection. | |

### ii. Corellium's Second Set of Interrogatories

| Dispute | Corellium's Position on Pending Disputes | Apple's Position |
|---|---|---|
| Interrogatory No. 13 | Apple self-limits its answer to this Interrogatory. Apple responds with the limitation of whether it has accessed Corellium's employees iCloud accounts "to gain an advantage therein." The parties met and confer on March 10, 2020, Apple agreed to amend its answer in order to provide clarification. Once Corellium receives Apple's supplemental answer, it may withdraw its objection. | On March 8, 2020, Corellium sent Apple a letter regarding its concerns with Apple's discovery responses served on March 2, 2020. Most of these concerns featured small changes to response wording, which Apple is working to resolve. The others related to Apple's responses to requests for production regarding Apple's financial information, as well as Apple's intended purposes for iOS in response to Corellium's Interrogatory No. 15. Apple is also working on language to resolve those two concerns, and continues to meet and confer in good faith. Apple anticipates this issue is likely to be resolved by the hearing. |
| Interrogatory No. 16 | In response to Interrogatory 16, Apple provides not a response, but rather, examples of "security approaches" which "***may*** be considered technological protection measures." (Emphasis added). The Interrogatory seeks items that ***are*** technological protection measures, not items that *may* be—the way that Apple has answered this request leaves the answer open-ended and Corellium uncertain as to whether | On March 8, 2020, Corellium sent Apple a letter regarding its concerns with Apple's discovery responses served on March 2, 2020. Most of these concerns featured small changes to response wording, which Apple is working to resolve. The others related to Apple's responses to requests for production regarding Apple's financial information, as well as Apple's intended purposes for iOS in response to |

| | | |
|---|---|---|
| | the question has actually been fully answered. The parties met and confer on March 10, 2020, Apple agreed to amend its answer in order to provide clarification. Once Corellium receives Apple's supplemental answer, it may withdraw its objection. | Corellium's Interrogatory No. 15. Apple is also working on language to resolve those two concerns, and continues to meet and confer in good faith.  Apple anticipates this issue is likely to be resolved by the hearing. |
| Interrogatory No. 18 | Apple objects on numerous grounds including the Court making other rulings, relevancy, and calling for proprietary information. Further, Apple also asserts objections but then, while maintaining its objections, sets forth an answer. Initially, the Court has not ruled that Corellium cannot learn of other Apple products that are similar to the Corellium product. The parties met and confer on March 10, 2020, Apple agreed to amend its answer in order to provide clarification. Once Corellium receives Apple's supplemental answer, it may withdraw its objection. | On March 8, 2020, Corellium sent Apple a letter regarding its concerns with Apple's discovery responses served on March 2, 2020.  Most of these concerns featured small changes to response wording, which Apple is working to resolve.  The others related to Apple's  responses to requests for production regarding Apple's financial information, as well as Apple's intended purposes for iOS in response to Corellium's Interrogatory No. 15. Apple is also working on language to resolve those two concerns, and continues to meet and confer in good faith.  Apple anticipates this issue is likely to be resolved by the hearing. |

In addition, Corellium maintains the following disputes:

  **b. Corellium's Response to Apple's 30(b)(6) Objections (Corellium will confer with Apple relating to the issues below).**

| Dispute | Corellium's Position on Pending Disputes | Apple's Position |
|---|---|---|
| Topic No. 1 | Apple argues this information improperly seeks legal conclusions. This is not true and corporate rep is must testify as it subjective believes and opinions. *Penn Mut. Life Ins. Co. v. Imperial Premium Fin., LLC*, No. 11-80818-MC, 2011 WL 13228574, | Corellium presented this issue by email for the first time 15 minutes before this joint notice was due. Apple will meet and confer with Corellium with respect to these issues, but believes they were not timely raised in good faith. |

| | | |
|---|---|---|
| | at *5 (S.D. Fla. Sept. 15, 2011) ("Opposing counsel characterized many of these questions during the deposition as asking for 'legal conclusions,' but a Rule 30(b)(6) deponent is required to present a corporation's position on the topic, including its 'its subjective beliefs and opinions' and 'its interpretation of documents and events.'). | |
| Topic No. 2 | Same as above. Additionally, facts and claims asserted in this matter are not beyond the scope as they define the scope of this litigation. | Corellium presented this issue by email for the first time 15 minutes before this joint notice was due. Apple will meet and confer with Corellium with respect to these issues, but believes they were not timely raised in good faith. |
| Topic No. 5 | Boilerplate objections for privilege. Apple claims we're asking for copyrights beyond scope. We have on numerous occasions (conferral calls) agreed that when either party refers to copyrights, we are only referring to those at issue in the litigation. | Corellium presented this issue by email for the first time 15 minutes before this joint notice was due. Apple will meet and confer with Corellium with respect to these issues, but believes they were not timely raised in good faith. |
| Topic No. 7 | Judge said this information is beyond the scope for RFP and Rogs, but he did not say that it cannot be asked in depositions, in fact, in several instances encouraged that the information sought be asked in depositions instead. | Corellium presented this issue by email for the first time 15 minutes before this joint notice was due. Apple will meet and confer with Corellium with respect to these issues, but believes they were not timely raised in good faith. |
| Topic No. 10 | Judge said this information is beyond the scope for RFP and Rogs, but he did not say we cannot ask at depositions, in fact, in several instances encouraged that the information sought be asked in depositions. Knowledge of competing technologies is relevant to affirmative defenses such as laches, acquiescence, and restraint of trade. | Corellium presented this issue by email for the first time 15 minutes before this joint notice was due. Apple will meet and confer with Corellium with respect to these issues, but believes they were not timely raised in good faith. |

| Topic No. 13 & 14 | Judge said this information is beyond the scope for RFP and Rogs, but he did not say we cannot ask at depositions, in fact, in several instances encouraged that the information sought be asked in depositions. | Corellium presented this issue by email for the first time 15 minutes before this joint notice was due. Apple will meet and confer with Corellium with respect to these issues, but believes they were not timely raised in good faith. |
|---|---|---|
| Topic No. 15 | Apple needs to have individuals prepared to testify on the documents relevant to this litigation. If too burdensome for one representative, Apple can assign this topic to several individuals. All Corellium asks is that Apple provides names of all the individuals that will be prepared to testify and what specific areas of documents they are prepared to testify regarding. For example, damages, copyright infringement, DMCA violations, etc. | Corellium presented this issue by email for the first time 15 minutes before this joint notice was due. Apple will meet and confer with Corellium with respect to these issues, but believes they were not timely raised in good faith. |
| Topic No. 16 | Apple is not pursuing actual damages, so that leaves statutory damages or disgorgement of profits. Corellium, in order to properly defend itself, has the right to know what type of damages Apple is seeking. As such, Apple must indicate the types of damages it seeks. It cannot hide behind uncertainty and blindside Corellium. | Corellium presented this issue by email for the first time 15 minutes before this joint notice was due. Apple will meet and confer with Corellium with respect to these issues, but believes they were not timely raised in good faith. |

### a. Status of Depositions

| Dispute | Corellium's Position on Pending Disputes | Apple's Position |
|---|---|---|
| Seattle Deposition | Due to the current environment of the Coronavirus in Seattle, Corellium has requested that the deposition of Jason Shirk to be held in Seattle, WA on March 23, 2020 to be changed to | Apple has offered to allow any Corellium attorney appear by video at the deposition. See *S.E.C. v. Aly*, 320 F.R.D. 116, 119 (S.D.N.Y. 2017) (citations |

| | | |
|---|---|---|
| | California. Apple has not provided a response as to this request. | omitted) (alterations in original) (The "potential burden on travel to each side plainly points to holding the deposition by videoconference. This is frequently a preferred solution to mitigate the burden of a deposition location inconvenient to one or both sides."). *See id.* ("As one court has noted, 'modern videoconference technology [allows] the Government to observe [the deponent] and ask follow up questions as is necessary to obtain the relevant testimony.' . . . For this reason, '[p]arties routinely conduct depositions via videoconference, and courts encourage the same, because doing so minimizes travel costs and permits the jury to make credibility evaluations not available when a transcript is read by another.'") <br><br> Apple does not believe it is in the best interests of the witness, or consistent with containing the coronavirus pandemic, to require him to travel to another location for deposition. |
| California Depositions | Due to the current environment of the Coronavirus in California, Corellium has requested that the depositions of all Apple's employees to be held in a mid-point location between Florida and California that is not currently affected by the virus. Apple has not provided a response as to this request. | Apple had understood this issue to be resolved because counsel for Corellium confirmed multiple times that they intend to travel to California for deposition. To the extent this remains a live issue, Apple has offered to allow any Corellium attorney to appear by video at the deposition. See *S.E.C. v. Aly*, 320 F.R.D. 116, 119 (S.D.N.Y. 2017) (citations omitted) (alterations in original) (The "potential burden on travel to each side plainly points to holding |

| | | |
|---|---|---|
| | | the deposition by videoconference. This is frequently a preferred solution to mitigate the burden of a deposition location inconvenient to one or both sides."). *See id.* ("As one court has noted, 'modern videoconference technology [allows] the Government to observe [the deponent] and ask follow up questions as is necessary to obtain the relevant testimony.' . . . For this reason, '[p]arties routinely conduct depositions via videoconference, and courts encourage the same, because doing so minimizes travel costs and permits the jury to make credibility evaluations not available when a transcript is read by another.'") |
| Depositions of Corellium's Employees | Corellium provided availability to Apple of its employees and explained that its employees can be deposed in the offices of Cole, Scott & Kissane in West Palm Beach. Apple unilaterally scheduled the depositions to be in the offices of Lash & Goldberg in Weston. Corellium has requested that the location of those depositions are changed to the offices of Cole, Scott & Kissane in WPB or Ft. Lauderdale. | Corellium cites no basis for its employees to be deposed at the office of its own counsel, rather than as noticed at Apple's counsel's office (which is typical). Apple's counsel needs to bring materials to the depositions and have access to print facilities. The depositions should proceed as noticed at Apple's counsel's office. |

## III.    CORELLIUM'S DISCOVERY REQUESTS TO APPLE

On March 8, 2020, Corellium sent Apple a letter regarding its concerns with Apple's discovery responses served on March 2, 2020.  Most of these concerns featured small changes to response wording, which Apple is working to resolve.  The others related to Apple's responses to requests for production regarding Apple's financial information, as well as Apple's intended

purposes for iOS in response to Corellium's Interrogatory No. 15.  Apple is also working on language to resolve those two concerns, and continues to meet and confer in good faith.

Dated: March 11, 2020

Kathryn Ruemmler*
*kathryn.ruemmler@lw.com*
Sarang Vijay Damle*
*sy.damle@lw.com*
Elana Nightingale Dawson*
*elana.nightingaledawson@lw.com*
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200 / (202) 637-2201 Fax

Andrew M. Gass*
*andrew.gass@lw.com*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 / (415) 395-8095 Fax

Jessica Stebbins Bina*
*jessica.stebbinsbina@lw.com*
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500 / (424) 653-5501 Fax

*Admitted pro hac vice*

Respectfully Submitted,

*/s/ Martin B. Goldberg*[3]

Martin B. Goldberg
Florida Bar No. 0827029
*mgoldberg@lashgoldberg.com*
*rdiaz@lashgoldberg.com*
Emily L. Pincow
Florida Bar No. 1010370
*epincow@lashgoldberg.com*
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL  33131
(305) 347-4040 / (305) 347-4050 Fax

*Attorneys for Plaintiff* APPLE INC.

---

[3] While Apple is the party filing this Joint Notice, at 4:58pm, counsel for L3Harris provided additional content for the Joint Notice, and at 5:07pm ET, counsel for Corellium represented that Corellium was providing additional content for this Joint Notice as well.  In an effort to ensure all parties' positions were represented, Apple agreed to defer filing pending the incorporation of the additional content requested by Corellium, which Corellium provided at 5:19pm ET.

By:   <u>s/ *Lizza C. Constantine*</u>

JONATHAN VINE
Florida Bar No.: 10966
JUSTIN LEVINE
Florida Bar No.:  106463
LIZZA CONSTANTINE
Florida Bar No.: 1002945

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant*
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 383-9222
Facsimile (561) 683-8977
E-mail: jonathan.vine@csklegal.com
E-mail: justin.levine@csklegal.com
E-mail: lizza.constantine@csklegal.com

     *and*

PIERCE BAINBRIDGE BECK PRICE & HECHT
LLP
277 Park Avenue, 45th Floor
New York, NY 10172
Telephone (646) 779-5315
Facsimile (646) 968-4125
David Hecht, *Pro hac vice*
E-mail: dhecht@nortonrosefulbright.com
Maxim Price, *Pro hac vice*
E-mail: mprice@piercebainbridge.com
Melody McGowin, *Pro hac vice*
E-mail: mmcgowin@pierbainbridge.com
Wen Wu, *Pro hac vice*
E-mail: wwu@pierbainbridge.com
Minyao Wang, *Pro hac vice*
E-mail: mwang@pierbainbridge.com

*Attorneys for Defendant* CORELLIUM, LLC.

**HOLLAND & KNIGHT LLP**
*Attorneys for L3Harris Technologies, Inc.*
701 Brickell Avenue, Suite 3300
Miami, Florida 33131

Tel: (305) 374-8500
Fax: (305) 789-7799
By**:** *s/Benjamin Taormina*
Adolfo E. Jimenez (FBN: 869295)
Adolfo.jimenez@hklaw.com
Benjamin A. Taormina (FBN: 106731)
Benjamin.taormina@hklaw.com

*Attorneys for* L3HARRIS TECHNOLOGIES, INC.