# EXHIBIT A

# LATHAM&WATKINS LLP

10250 Constellation Blvd., Suite 1100
Los Angeles, California  90067
Tel: +1.424.653.5500  Fax: +1.424.653.5501
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

March 11, 2020

**VIA EMAIL**

Justin Levine
Cole, Scott & Kissane
Esperante Building
222 Lakeview Ave., Suite 120
West Palm Beach, FL 33401
(561) 612-3476

Re:  *Apple Inc. v. Corellium, LLC*, No. 19-cv-81160 (S.D. Fl.)

**CORELLIUM CONFIDENTIAL MATERIAL**
**CORELLIUM AEO MATERIAL**

Dear Justin:

We write to identify ongoing and serious deficiencies in Corellium's discovery responses and productions.  Initial expert reports have already been submitted, depositions begin next week, and discovery closes entirely in less than six weeks.  Yet Corellium still has not provided critical information or complied with the Court's orders in this case.  Corellium must correct these deficiencies immediately.

We have discussed many of these points extensively by telephone, but, to date, they have not been adequately addressed.  Accordingly, we detail them again below, and reiterate our intention to address promptly with the Court any failures that continue to be un-remedied by Corellium.

**I.   CORELLIUM'S FAILURE TO PRESERVE EVIDENCE REGARDING PREVIOUS VERSIONS OF THE CORELLIUM APPLE PRODUCT**

Corellium has utterly failed to produce documents and information adequate to delineate the features in each version of its product, and Corellium's statements to date indicate that it may be unable to produce at least some of this information because Corellium cannot revert its system to a previous version.  Corellium has released at least ▮ different versions of the Corellium Apple Product between ▮▮▮▮▮▮ and ▮▮▮▮▮▮, including at least ▮ new versions since the date this suit was initiated.  *See* Corellium's 3d Am. Interrog. Resp. (Feb. 27, 2020) at 4–10.  In at least some previous versions of the Corellium Apple Product, when a user of the cloud-based version was creating a new device, he or she would be presented with a series of

**LATHAM&WATKINS**LLP   <mark>CORELLIUM CONFIDENTIAL MATERIAL</mark>
<mark>CORELLIUM AEO MATERIAL</mark>

Apple devices and versions of iOS to choose from. *See* https://www.youtube.com/watch?v=6rmTfmdUIVY at 1:08–1:55; https://www.youtube.com/watch?v=9sZZZhPnunY at 2:35–2:41. Additionally, at least some previous versions of the Corellium Apple Product provided the option for a user to "Copy Previous Install," which allowed a user to "Clone a freshly restored state of one of [the user's] other devices." *See* https://www.youtube.com/watch?v=6rmTfmdUIVY at 1:38.

Sometime in early February 2020, Corellium modified the cloud-based version of the Corellium Apple Product so that the Corellium Apple Product no longer displays the menu of Apple devices and versions of iOS. *See* Hearing Tr. (Feb. 27. 2020) at 29:14–30:9. In the current version, the user must upload her own IPSW if she wants to create a virtual device running iOS—no Apple products are offered to the user by default anymore. *See* Hearing Tr. (Feb. 27. 2020) at 30:11–31:9; Nieh Report ¶¶ 201–208. Corellium's interrogatory responses confirm that Corellium changed its product in material ways in the midst of this litigation. In response to an interrogatory requesting a description of "the functional flow" for each version of the Corellium Apple Product, Corellium's Second Amended Response on February 24, 2020 stated: "███████████████████████████████████████████████████████████████████████████████████████████████" Corellium's 2d Am. Interrog. Resp. (Feb. 24, 2020) at 12; *see* Corellium's Am. Interrog. Resp. (Jan. 16, 2020) at 12 (same); Corellium's Interrog. Resp. (Nov. 18, 2019) at 12 (same). However, Corellium's response changed just three days after it served its second amended interrogatory responses.[1] Corellium eliminated its previous description of the options presented to the user and instead stated: ██████████████ ███████████████████████████████." Corellium's 3d Am. Interrog. Resp. (Feb. 24, 2020) at 12. Now, ████████████ ████████████ *Id.* at 13. Counsel for Corellium admitted that going back to any given version of the Corellium Apple Product is "**not something that can be implemented**," because even if the system was reverted back to a previous version, counsel could not "**even say that it's going to work properly**." Hearing Tr. (Feb. 27. 2020) at 33:2–19.

Because Corellium has made material changes to the product at issue in this litigation and has not provided Apple with access to the previous versions of the product, and has likewise not provided Apple with Corellium's full code repository, including the history of all code changes, Apple is unable to determine exactly when these material changes occurred, or what source code is associated with the changes. The prejudice resulting to Apple due to Corellium's conduct is substantial. *See Coal. Am., Inc. v. Arlotta*, No. 1:03-cv-4012, 2008 WL 11320050, at *3–4 (N.D. Ga. Mar. 31, 2008) (modification of source code such that a comparison between two versions of the software was "impossible" deprived the plaintiff "of the opportunity to examine the evidence most critical to its claims" and constituted spoliation of evidence). Indeed, because the source code Corellium has produced is without any contextual information at all, it is impossible for Apple to even determine which single version (of more than █) of the Corellium Apple Product such code represents. *See* Section II, *infra*.

---

[1] Corellium has not provided verifications for either its second or third amended interrogatory responses. These also must be provided immediately.

LATHAM&WATKINS LLP

**CORELLIUM CONFIDENTIAL MATERIAL**
**CORELLIUM AEO MATERIAL**

Moreover, because Corellium has only provided Apple with access to the most recent version of the cloud-based Corellium Apple Product, Apple is also unable to examine the operation of the product to determine whether any other features have changed over time, or what features differ with respect to versions of the on-premises Corellium Apple Product. *See* Nieh Report ¶¶ 186, 202–208, 230. Corellium's failure to preserve the operation of its product severely limited Apple's expert's ability to review the Corellium Apple Product. As just one example of the adverse impact of Corellium's acts on Apple, Corellium's expert was able to review at least two versions of the cloud-based Corellium Apple Product, one of which appears to have been a version prior to the most recent change, while Apple's expert was limited to viewing only the most recent version. *Compare* Olivier Report ¶¶ 54–58 *with* Nieh Report ¶¶ 201–208.

While Apple remains hopeful the parties can find a resolution to address this issue, the significant prejudice to Apple from Corellium's actions increases every day Corellium fails to provide Apple with full access to the prior versions of the Corellium Apple Product, as well as documents and information about *all* versions of the Corellium Apple Product. Apple reserves all rights and remedies available to it to address the apparent spoliation of evidence here, including the right to seek fees, sanctions, and other relief associated with Corellium's failure in this regard. *See Keithley v. Home Store.com, Inc.*, No. 03-cv-04447, 2008 WL 3833384, at *16–20 (N.D. Cal. Aug. 12, 2008) ("engag[ing] in a large scale transfer of source code to a new source code control system without taking adequate precautions to safely maintain the older information" was "reckless and egregious discovery misconduct," warranting sanctions, fees, and an adverse instruction).

**II.    CORELLIUM'S DEFICIENT SOURCE CODE PRODUCTION**

Corellium's source code production to date has been deficient in numerous respects. The source code Corellium has produced was not contained in a software repository and, as a result and as explained further below, does not comply with the plain language of Apple's Requests for Production ("RFPs"), the governing Protective Order (ECF No. 50), the Federal Rules of Civil Procedure, or Counsel's own agreement at the February 27 hearing that Corellium's source code would be produced "in a useable format." Hearing Tr. at 38:19–25. By producing source code outside of a software repository, Corellium's source code production is lacking any contextual or versioning information. Corellium must produce its source code in its GitHub repository, or in whatever software repository Corellium uses in the ordinary course of its business. And because of these deficiencies, discussed in more detail below, Apple cannot assess whether Corellium's source code production is complete. Apple therefore reserves the right to further address the adequacy of the source code Corellium has produced once the deficiencies below have been rectified.

First, Apple's RFPs defined source code to mean "computer code, scripts, assembly, binaries, object code, source code listings and descriptions of source code, object code and listings and descriptions of object code, Hardware Description Language (HDL), or Register Transfer Level (RTL) files that describe the hardware design of any ASIC or other chip, and

3

LATHAM&WATKINS LLP

**CORELLIUM CONFIDENTIAL MATERIAL**
**CORELLIUM AEO MATERIAL**

Computer Aided Design (CAD) files that describe the hardware design of any component." ECF No. 68-1 at 3. Apple's RFPs further specified that the term "source code" "includes all comments," and that, to the extent the source code at issue is "maintained in a repository in the ordinary course of business," "the full repository not any one version of the repository" shall be produced. *Id.* Corellium never objected to the form of source code production specified in Apple's RFPs. To date, however, and despite Corellium's representations to the Court, Corellium has not produced source code in conformity with Apple's requests. Instead, Corellium produced individual source code files with no versioning, context, or description of how the individual source code files relate to each other, as would be provided in the full repository used by Corellium in its usual course of business.

Second, the Protective Order that the parties agreed to and that governs this case requires Corellium to produce source code on a source code computer along with "tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business." ECF 50 at 13–14. Corellium's source code production to date also fails to comply with the Protective Order because it did not include the tools sufficient to view or search the source code on the platform Corellium uses in its usual course of business. For example, Apple is aware that Corellium uses the GitHub platform to store its publicly released code repositories. *See* https://github.com/corellium. ███████████████████████████████████████████████████████████████. *See, e.g.,* Corellium-014712. Corellium was therefore required, at a minimum, to produce its source code to Apple in its Github repository, or in another repository that it uses in the ordinary course of its business.

Third, Federal Rule of Civil Procedure 34 further requires that documents be produced "as they are kept in the usual course of business" and, unless a request specifies a form for producing electronically stored information, "a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E). There is "no source code exception to the production requirements of Fed. R. Civ. P. 34." *Apple Inc. v. Samsung Elecs. Co.*, No. 11-cv-1846, 2012 WL 1595784, at *1 (N.D. Cal. May 4, 2012). As such, Corellium is obligated to produce the requested source code in the form in which it is ordinarily maintained or in a reasonably usable form. That is presumably why counsel for Corellium agreed to produce the requested source code "in a useable format." Hearing Tr. (Feb. 27. 2020) at 38:19–25. Despite making this commitment before the Court, Corellium still has not produced its source code in the requisite usable format. Rather, Corellium has produced random individual source code files completely separated from any repository—a form of production that is not "reasonably usable" in the context of source code review or analysis, and cannot possibly be the format in which Corellium maintains its codebase. *See, e.g., Entrust Datacard Corp. v. Zeiser GmbH*, No. 3:17-cv-110, 2019 WL 7423519, at *7 (M.D. Fla. Mar. 26, 2019) (requiring source code to be produced "in native format, with all source code repository information and software for the same").

Corellium's production of individual source code files outside of the context of the software repository—contrary to the RFPs, the PO, and the Federal Rules—severely prejudices Apple. The production of source code files without any context makes it impossible for Apple to

4

**CORELLIUM CONFIDENTIAL MATERIAL**
**CORELLIUM AEO MATERIAL**

determine which version of a file it is reviewing, which build of the Corellium Apple Product the source code relates to, or even "whether the source code is a full and complete set of code representing any given version of the Corellium Apple Product." Nieh Report ¶ 186; *see id.* ¶ 11.

While Apple believes that Corellium should be able to readily resolve the issues related to its source code production, and is hopeful that Corellium's provision of a source computer will do just that, Apple continues to be prejudiced by Corellium's failure to produce the requisite source code to date, in the context of its native repository, and reserves its rights to seek fees and sanctions associated with Corellium's failure in this regard. *See Manchester v. Sivantos GmbH*, No. 17-cv-5309, 2019 WL 1598755, at *2 (C.D. Cal. Mar. 12, 2019) (ordering source code repository be made available for inspection to review different versions of accused source code); *Manchester v. Sivantos GmbH*, No. 17-cv-5309, 2019 WL 2902489, at *4 (C.D. Cal. May 1, 2019) (sanctioning party who failed to timely produce its source code repository).

### III.    CORELLIUM'S DEFICIENT DOCUMENT PRODUCTION

#### A.    Corellium's Overbroad And Improper Withholding Log

Corellium's withholding log, which it purports to be a privilege log, is grossly overinclusive. It has approximately 9860 unique entries, only 1820 of which are designated under classic privilege log categories: attorney-client privilege, attorney work product, joint defense privilege, and anticipation of litigation. Apple continues to analyze those classic entries in depth for any improprieties. But the remaining 8,040 documents assert no attorney-related privileges and must be produced immediately.

As an initial matter, 46 documents on Corellium's privilege log are withheld without any annotations at all, and thus must be produced. For the other 8,000 documents, Corellium withheld them exclusively under Trade Secret and Client Privacy objections. As Corellium recently recounted to Apple, no documents should be withheld "based on confidentiality as the parties have an agreed PO in place [D.E. 50]." Levine Ltr. at 2 (Mar. 8, 2020). Corellium withheld 7,000 documents based on Client Privacy alone.

The Court has rejected Corellium's trade secret objections and withholdings as to everything except (a) the source code for the hypervisor itself, Hearing Tr. (Feb. 27. 2020) at 98–99, and (b) Azimuth-related communications and a reseller agreement which are the subject of a pending motion to quash. *Id.* at 94, 100–101. Those two issues are slated for review at the March 16 hearing. Corellium's proper solution for trade secret and privacy objections is not to unilaterally withhold documents on that basis, but rather to designate the documents under the confidentiality order (ECF No. 50) and produce them.

Notably, documents Corellium withheld on the basis of trade secret objections alone include numerous documents that are obviously relevant to this litigation, including internal Corellium emails with subject lines like:

- Correllium-015532: [JIRA] (DEV-671) iPod Touch patcher crashes on iOS 10.x

**CORELLIUM CONFIDENTIAL MATERIAL**
**CORELLIUM AEO MATERIAL**

- Correllium-017806: [JIRA] (COR-214) Safari Crashes Springboard in iOS 11.2.5

- Correllium-017185: [JIRA] (COR-211) Onsite IPSW Storage

- Correllium-017266: [JIRA] (COR-493) Preferences crash on iPhone X iOS12 beta 1.

- Correllium-017420: [JIRA] (IOS-97) app install issue on iPhone 6s 11.3.1 non jailbroken

Similarly, Corellium withheld on the basis of privacy grounds alone a multitude of documents which are directly relevant to this litigation, with file names or subject lines like:

- Correllium-008131: ▆▆▆▆▆_iOS_On_Premise_Datasheet.pdf

- Correllium-008298: iOS_On-Prem_Price_Breakdown.pdf

- Correllium-006530: [Corellium] Re: Question about availability of IOS images

- Correllium-009218: Accepted: Android & iOS in the cloud - follow on discussion

- Correllium-013611: Accepted: Invitation: Virtual iOS@Wed Aug 28, 2019 3pm - 4pm (PDT)

- Correllium-007471: Accepted: iOS Virtualization Discussion with Corellium

- Correllium-011188: Contact iOS Simulator

- Correllium-007438: Corellium iOS Virtualization Demo

- Correllium-006498: Corellium - Security Bug

- Correllium-009792: FW: Corelli Demo for ▆▆▆-Virtual iOS - next step

- Correllium-005789: Fw: GPIT6647 Corellium Inc ▆▆▆▆ iOS +60 Core Srvr + SEP & iBoot Modules + Android Beta

- Correllium-011197: iOS Virtualization service inquiry

- Correllium-008512: Re: Corellium iOS emulator

Even more significantly, the Court has twice rejected Corellium's arguments for withholding customer, trial customer, and rejected customer information and communications (except as to Azimuth, which is reserved for decision until March 16). ECF No. 211 ¶ 4(i); ECF No. 206; ECF No. 153; Hearing Tr. (Feb. 27. 2020) at 94, 100–101. Yet Corellium's privilege log lists *thousands* of communications with third-party customers, trial customers, and rejected customers which fall within the scope of the Court's order. These include the following final executed agreements:

6

**CORELLIUM CONFIDENTIAL MATERIAL**
**CORELLIUM AEO MATERIAL**

- Corellium-004639: Purchase Agreement_ ▇▇▇ _Fully Executed.pdf

- Corellium-004740: Corellium Demo License Agreement_ ▇▇▇ _FullyExecuted.pdf

- Corellium-004677: Corellium Purchase and License Agreement_ ▇▇ .docx

- Corellium-009412: Corellium_Purchase_and _License_Agreement_ ▇▇ _corellium_Executed.pdf

- Corellium-004644: ▇▇▇ Purchase and License Agreement_ Fully Executed.pdf

- Corellium-004655: Final Corellium Purchase and License Agreement_ ▇▇▇ _Fully Executed.pdf

- Corellium-004667: ▇▇▇ Purchase and License Agreement_ FULLY EXECUTED.PDF

Corellium also has not produced its license agreement with Azimuth, despite the Court requiring it to do so. *See* Hearing Tr. (Feb. 27. 2020) at 94, 100; ECF No. 211 ¶ 4(k). Instead, Corellium improperly included that agreement in its withholding log. *See* 3/4/2020 Privilege Log, Corellium-004620: Corellium-Azimuth License Agreement-Signed.pdf.

Corellium also has not produced any reseller agreements despite the identification of numerous such agreements on Corellium's purported privilege log, including with ▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* 3/4/2020 Privilege Log, Corellium-008962, Corellium-009236, Corellium-004778. All reseller agreements except for the reseller agreement with Azimuth must be produced. ECF No. 211 ¶ 4(k) (reserving ruling on whether Corellium must produce its reseller agreement with Azimuth Security).

Of the customers Corellium previously identified in its interrogatory responses, it has withheld documents and communications for every single one of them on privacy and/or trade secret grounds alone. To illustrate, the following are known Corellium customers for whom it has withheld at least ▇▇ documents:[2]

- ▇▇▇▇▇▇▇ documents withheld

- ▇▇▇▇▇▇▇ documents withheld

- ▇▇▇▇▇▇▇ documents withheld

---

[2] These are conservative estimates. The process of converting Corellium's 2,200 page privilege log from PDF to Excel introduced a large number of spacing errors and typos. These estimates are based on word searches which, due to those errors, may undercount hits.

**LATHAM&WATKINS**LLP    <mark>**CORELLIUM CONFIDENTIAL MATERIAL**</mark>
<mark>**CORELLIUM AEO MATERIAL**</mark>

- ████████  documents withheld
- ██████████████  documents withheld
- ████████  documents withheld

Corellium's log also reveals large numbers of communications with trial or undisclosed customers also withheld on privacy and/or trade secret grounds. Entities for whom Corellium has withheld at least ███ documents include:

- ████████  documents withheld
- ██████████████  documents withheld
- ████████████  documents withheld
- ████████████████████████████████████████████████  documents withheld
- ██████████  documents withheld
- ██████████  documents withheld
- ████████████████  documents withheld

Furthermore, the promotional slide deck Corellium provided to Apple, and then Apple produced in this litigation, about Corellium's then-current customers and prospects reveals numerous names that have not appeared in either Corellium's productions or privilege log. *See* ECF No. 201-1 at 11. These include:

- ████████████████████████
- ██████████████████████████████
- ████
- ████████

The Court has made it crystal clear that all documents and communications about customers, trial customers, and affirmatively rejected customers must be produced. ECF No. 211 ¶ 4(i); ECF No. 206; ECF No. 153; Hearing Tr. (Feb. 27. 2020) at 19, 21-22, 73-74. The only exceptions are for inquiries Corellium entirely ignored, and for Azimuth documents which are the subject of L3Harris's pending motion to quash. ECF Nos. 184, 218. Everything else must be provided immediately, whether previously logged or not. Corellium must also serve an updated withholding log verifying the changes.

8

LATHAM&WATKINS LLP

**CORELLIUM CONFIDENTIAL MATERIAL**
**CORELLIUM AEO MATERIAL**

### B.      Documents Missing From Corellium's Productions

In addition to the deficiencies that are obvious in light Corellium's purported privilege log, Corellium's productions themselves reveal numerous deficiencies.

First, Corellium has not produced all responsive iMessages. Apple has produced over 300 iMessages between Chris Wade and Ivan Krstić. Corellium, in contrast, has not produced any such messages even though Chris Wade was a participant in the communications, and even though Corellium has produced other iMessages from Chris Wade during the same time period. *See, e.g.*, Correllium-019661. Similarly, Apple has produced several iMessages between Steve Smith and Chris Wade, but Corellium has produced only one exchange between Mr. Wade and Mr. Smith. All responsive iMessages that are in Corellium's possession, custody, or control must be produced.

Second, Corellium has not produced any internal technical documents such as design and architecture descriptions, or testing results and analyses. For example, Apple has produced emails containing what appears to be design documents and test results *from Corellium*. *See* APL-CORELLIUM_00036199 (email attaching files such as "GeneralArch1.pdf" and "corelluimlogicalv2.png"); APL-CORELLIUM_00036204 (attachment to above email showing Corellium architecture); APL-CORELLIUM_00036205 (same); APL-CORELLIUM_00036235 (same); APL-CORELLIUM_00036236 (same); APL-CORELLIUM_00036230 (attachment to above email showing apparent results of Corellium's testing). Corellium has not produced any equivalent documents displaying or describing any such architecture, design, or test. All internal technical and testing documents must be produced, at least with respect to all aspects of the Corellium Apple Product except the hypervisor. *See* Apple RFP Nos. 7–13, 15–16; ECF No. 211 at 3.

Third, Corellium's production of customer-facing technical documents appears to be deficient. Corellium has apparently produced only one version of its User Guide, dated April 2019. Correllium-014520. Searches in Corellium's production for the terms "manual" or "faq" results in no customer-facing documents describing Corellium's product and its operation. Corellium has produced versions of an "Advanced Customer Features" document, *see* Correllium-025432, Correllium-025417, but has not produced any other documents that describe "user features" or "customer features." Similarly, Corellium appears to have produced only one user-facing document describing installation of only one version of the product. *See* Correllium-014463. All installation and user manuals for all versions of Corellium's product must be produced. *See* Apple RFP Nos. 7–9, 14, 18–19; ECF No. 211 at 3.

Fourth, with respect to the .zip files listed in Corellium's production, the native .zip files were not in the production file Corellium served on February 24, and Corellium has still not produced the native files despite our emails notifying you of the issue. We understand that not all file types can be imaged, but the native .zip files are not in the "natives" subfolder or otherwise included in the served production. We have confirmed that this is not a review platform issue. Please provide the native .zip files or their complete contents, or confirm that all files that were contained in the referenced .zip files were already produced individually, and provide the corresponding Bates numbers for those individual files.

LATHAM&WATKINS LLP     **CORELLIUM CONFIDENTIAL MATERIAL**
**CORELLIUM AEO MATERIAL**

Fifth, Corellium has not produced all documents responsive to Apple's requests that are within Corellium's possession, custody, or control. For example, Exhibit 3 to Corellium's February 24, 2020 Opposition to Apple's Motion for a Protective Order Barring the Deposition of Apex Employee is a presentation about Corellium dated July 2018. ECF No. 175-3. Corellium has not produced this document or any documents related to its creation. Similarly, Exhibits 8–12 and 14 to the same opposition are iMessages between Chris Wade and Ivan Krstić produced by Apple, but not by Corellium. *See* APL-CORELLIUM_00018105, APL-CORELLIUM_00018148, APL-CORELLIUM_00035986, APL-CORELLIUM_00018508, APL-CORELLIUM_00018488, APL-CORELLIUM_00018302, APL-CORELLIUM_00018491, APL-CORELLIUM_00018494. And Exhibits 16–18, which are emails from 2014, are nowhere to be found in Corellium's productions. The omission of these documents from Corellium's productions to date raise serious questions about the completeness and thoroughness of Corellium's searches and productions. Corellium must provide an explanation as to its search process in order to confirm an appropriate scope, and then immediately ensure that it has produced *all* responsive documents that are in its possession, custody, or control.

Finally, Corellium has produced a very limited number of documents related to its revenues and profits. As stated in David Connelly's expert report, [REDACTED] Connelly Report at 2. As requested in Apple's Requests for Production Nos. 49 and 52, Corellium must produce financial documentation sufficient to corroborate Corellium's representations.

        C.      **Corellium's Failure To Preserve And Produce Responsive Communications**

Corellium's production to date indicates that Corellium used Slack channels for internal communications regarding the development of the Corellium Apple Product and other responsive topics. Corellium has produced a small number of these communications, and a large majority of them are from after this litigation was initiated—in particular, from December 2019, January 2020, and February 2020. The relative lack of communications from earlier time periods leading up to and including this litigation, and including periods in which development of the Corellium Apple Product was ongoing, indicates that Corellium has failed to preserve and/or provide these communications.

Additionally, among the messages Corellium has produced, Corellium has redacted significant portions of many of the Slack messages, with no indication on its purported privilege log that the documents have been redacted or whether the redacted portions constitute privileged information. Two examples among many are Corellium-025381 and Corellium-025401. Please provide unredacted versions of all Slack communications or update Corellium's privilege log to justify their redaction.

Corellium must provide all unproduced responsive communications and confirm whether it preserved all such communications consistent with its discovery obligations in this litigation. Apple reserves its rights to seek fees, sanctions, and other relief associated with any failure by Corellium in this regard. *See, e.g.*, *Brewer v. Leprino Foods Co., Inc.*, No. 1:16-cv-1091, 2019 WL 356657, at *10 (E.D. Cal. Jan. 29, 2019) (imposing sanctions, including fees and

March 11, 2020
Page 11

LATHAM&WATKINS LLP

**CORELLIUM CONFIDENTIAL MATERIAL**
**CORELLIUM AEO MATERIAL**

costs, due to a party's failure to preserve messages that could not be restored, and reserving the right to provide an adverse instruction to the jury).

* * *

We are available to meet and confer immediately.

Best regards,

Jessica Stebbins Bina

11