UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:19-CV-81160-RS

APPLE INC.,

    Plaintiff,

v.

CORELLIUM, LLC,

    Defendant.
_____/

**DECLARATION OF JUSTIN B. LEVINE IN SUPPORT
CORELLIUM'S *CERTIFIED* MOTION FOR PARTIAL
RECONSIDERATION OF THE COURT'S OMNIBUS ORDER**

1. My name is Justin B. Levine, Esq. and I am over the age of 18, and otherwise *sui juris* in all respects. I make this declaration based upon my personal knowledge.

2. I am a Partner at the law firm of Cole, Scott & Kissane, P.A. which represents Defendant, Corellium, LLC ("Corellium") in the above-captioned matter.

3. On March 12, 2020, I met with the following individuals at the Corellium office in Boynton Beach, FL:

    a. Chris Wade – Principal and Chief Technology Officer of Corellium,

    b. Dr. Jason Nieh – Apple Inc.'s ("Apple") Expert Witness,

    c. Holly Victorson, Esq. – Latham & Watkins, LLP Counsel for Apple.

4. This meeting occurred upon the Court's order that Apple's Expert be provided access to Corellium's "On-Premises" version of the Corellium Apple Product.

5. Based upon communications with Corellium, my understanding is that due to the expense and other logistical hurdles to providing on-site access to the "On-Premises" version,

EXHIBIT 3

hosting it on one of Corellium's test servers at Corellium's office was one of the few, if not the only reasonably feasible way to provide non-remote access. The implication of this—hosting access on a Corellium test server—as I understand it, would be that the server would need to be connected to Corellium's internal network, something that would not otherwise be done on a typical "On-Premises" set up. The end result of this, as I understand it, is that if left unattended, the user, Dr. Nieh in this case, could access Corellium's internal network. Accordingly, Mr. Wade and I stayed with Dr. Nieh, and for the first approximate 30-45 minutes, Mr. Wade navigated Dr. Nieh to the product and got him set up. After that, Dr. Nieh took the controls for the product for the rest of the afternoon.

6. During that time, Dr. Nieh asked Mr. Wade many, many questions, the answers to probably 95% of which, Mr. Wade answered. At the same time, Ms. Victorson took copious notes. For all intents and purposes, Apple got a first, unofficial test deposition of Mr. Wade.

7. Mr. Victorson stated to me at that time that she is predominantly a patent attorney.

8. Throughout the time that Dr. Nieh was interacting with the product and asking his numerous questions, I asked him, at the very least five times or more, to inform Mr. Wade and I of everything he might need to render his full opinions in this case. In fact, I specifically recall telling Dr. Nieh that our goal there that day was to get Dr. Nieh everything he needed in order to render his opinions in this case.

9. After approximately three and a half hours of direct interaction with the product (and approximately four hours interaction in total), Dr. Nieh and Ms. Victorson met alone for approximately 20-30 minutes in the conference room. Dr. Nieh and Ms. Victorson emerged from the private conference and informed Mr. Wade and I of the following four areas of code that were allegedly necessary for Dr. Nieh to reach his opinions in this case:

   a. Snapshots,
   b. Cloning,
   c. Rendering, and
   d. Display.

10. After a brief discussion, Mr. Wade agreed to produce these four areas of code, unredacted to Apple, pursuant to the Protective Order. That code has been provided to Cole, Scott & Kissane, P.A. and we are prepared to make it available to Apple's expert and counsel, under the terms of the Protective Order.

11. After approximately four hours of interaction with the product, having approximately four hours of questions answered, and a private conference with his counsel, Dr. Nieh only stated the above four areas needed for his work in this case.

12. Dr. Nieh left Corellium that day without having anything he expressed that he needed, unfulfilled. In other words, everything he stated he needed, Corellium agreed to produce and stands ready to do so upon the coordination with Apple's counsel.

13. On March 15, 2020, three days later, Apple filed on behalf of Dr. Nieh a Declaration that presented a 180-degree reversal of what Dr. Nieh had stated he had needed only days earlier, face-to-face, to myself and Mr. Wade. Dr. Nieh's Declaration was submitted in support of Apple's arguments that were to be made at a hearing the following day, March 16, 2020.

14. The Parties' Experts were to submit competing affidavits "stating their respective positions and rationale <u>on the limited issue</u> of whether Apple requires additional discovery on Corellium's hypervisor." *See* D.E. 211, ¶2 (emphasis added). Corellium's expert provided a six-page Declaration responding to that direct and limited question. At no point did I understand the Court to be instructing the Parties' Experts to opine on areas other than why the hypervisor should or should not be subjected to discovery in this case.

15. On March 15, 2020, Counsel were instructed by the Court to not attend the hearing in person due to the outbreak of COVID-19, but instead, to attend by telephone. *See*, Paperless Order [D.E. 234].

16. Corellium had planned to bring Mr. Wade, Chief Technology Officer of Corellium as well as Manuel Delgado, Litigation Support Manager of Cole, Scott & Kissane, P.A. to the hearing to testify as to issues related to, *inter alia*, the hypervisor and/or how Corellium has been in compliance with its discovery obligations thus far. During the telephonic hearing, Mr. Wade and Mr. Delgado were still present and ready to testify for the Court. That opportunity was never presented due to an expiration of time.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 27th day of March, 2020.

*/s/ Justin B. Levine*
Justin B. Levine, Esq.