# EXHIBIT A

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                      WEST PALM BEACH DIVISION
              CASE NO.  19-81160-CIV-SMITH/Matthewman


    APPLE, INCORPORATED,

              Plaintiff,

         vs.
                                        West Palm Beach, Florida
                                        March 16, 2020
    CORELLIUM, LLC,                     Pages 1-116

              Defendant.
    _____

                TRANSCRIPT OF TELEPHONIC MOTION HEARING
              BEFORE THE HONORABLE WILLIAM MATTHEWMAN
                   UNITED STATES MAGISTRATE JUDGE


    APPEARANCES:

    FOR THE PLAINTIFF:
                         Latham & Watkins, LLP
                         BY:  JESSICA STEBBINS BINA, ESQ.
                         BY:  GABRIEL S. GROSS, ESQ.
                         10250 Constellation Boulevard
                         Suite 1100
                         Los Angeles, California 90067

                         Lash & Goldberg
                         BY:  EMILY PINCOW, ESQ.
                         Miami Tower
                         100 Southeast 2nd Street
                         Suite 1200
                         Miami, Florida 33131

    FOR THE DEFENDANT:
                         Cole, Scott & Kissane, P.A.
                         BY:  JUSTIN LEVINE, ESQ.
                         BY:  LIZZA CONSTANTINE, ESQ.
                         Esperante Building
                         222 Lakeview Avenue
                         Suite 120
                         West Palm Beach, Florida 33401
```

PROCEEDINGS RECORDED BY THE COURT'S DIGITAL AUDIO RECORDER
TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY
AND COMPUTER-AIDED TRANSCRIPTION

1   "does not relate to iOS, therefore we're cutting it", so our
2   expert can't see the code in context because they've taken
3   things out, and I think they've done that around 50 times.
4            Three, there are lots and lots of areas separate and
5   apart from the hypervisor that we have reason to believe, based
6   on the evidence, copy, modify or circumvent Apple security
7   measures that have not been produced at all.
8            THE COURT:  All right.  Hold on a second.  All right.
9            Mr. Levine, can you respond to that briefly?
10           MR. LEVINE:  Yes, Your Honor.  As it relates to the
11  repository, we produced everything in an accredited repository
12  that the protective order, on Page 14, the top line, requires a
13  repository for the viewing and searching of the code produced.
14  We have used a normal standard ESI repository.  In fact, in
15  addressing these concerns, we actually called the engineers at
16  Everlaw and they confirmed for us that this is a certified
17  repository for the review and searching and maintaining of code.
18  If Apple wants it in GitHub, I mean, they can produce their
19  stuff in Github, but Corellium doesn't retain its code in
20  Github, and the protective order and the ESI repository here
21  meets all the qualifications that's necessary.
22           One other issue though is that if they're claiming that
23  it's inconvenient the way that -- for the tools that Everlaw
24  provides, we actually went above and beyond.  The protective
25  order only requires us to produce code here at our office.  The

1  large majority or actually all the code that has been produced
2  to date has actually been provided directly to Apple.  So if
3  they're talking about convenience, they don't have to jump on an
4  airplane and come to West Palm; they can look at it on their own
5  repository, do whatever they want with it where it is.  So that
6  addresses that point.  Again, the tools on Everlaw are most
7  efficient for what's called for by the protective order.
8        Let's see.  As far as the edited code, there is
9  redacted code, but that's because some of the redacted code
10 deals with Linux or Android or other issues that, as the
11 redactions state, have no connection to iOS.  They just -- they
12 literally have no bounds in this lawsuit whatsoever and that's
13 an important thing.
14       You know, Your Honor has to remember that Dr. Nie --
15 even providing some of this code to Dr. Nie, Dr. Nie himself is
16 a competitor in this field to Corellium.  Dr. Nie is a
17 specialist in virtualization.  He is the owner of 11 patents in
18 the field, and we've been having to draw him diagrams and
19 explain to him our proprietary technology.  And even if it's
20 this code and the secret sauce, if you will, has been provided
21 to Dr. Nie in this case, now another prominent figure in the
22 field after this case is done has the thinking, the thoughts,
23 the proprietary innovation of Corellium to then apply to his own
24 work, even if he's just doing it quietly and to himself.
25       And, you know, I know Your Honor is under a time

```
 1   crunch, but I would go so far as to say how do we even know that
 2   Apple hasn't retained Dr. Nie to build a version of this for
 3   them.  Apple has wanted this product, they've offered millions
 4   of dollars for it, and something as outlandish as that, and to
 5   file a lawsuit to try to get this kind of proprietary
 6   information would not be above them.  Just today, Apple was
 7   fined $1.1 billion in Europe for breaking antitrust violations,
 8   and just last month they were fined $25 million for misleading
 9   customers.  So, you know, the protection of this very highly
10   sensitive and proprietary information is critical.
11           THE COURT:  Let me ask you a question.  I need to ask
12   you a question.  What about portions of the product that
13   display, copy or manipulate iOS?  Has that all been produced or
14   not?
15           MR. LEVINE:  Those portions have been produced.
16           THE COURT:  So there's no withheld portions that
17   display, copy or manipulate iOS?
18           MR. LEVINE:  The only other areas are the four areas
19   that Dr. Nie stated at the end of the meeting, which we have
20   agreed to produce.  Now, Ms. Bina stated that we have not
21   produced it, except the problem is that only happened Thursday
22   and we agreed to produce those areas.  But if Ms. Bina isn't
23   content with us providing the code to them, then we will follow
24   the protective order to the "T", and that means that Dr. Nie has
25   to fly back to Cole, Scott and he has to provide us with a
```

1  request within seven days so we can have our IT department set
2  up this special computer again so that he can review that code.
3  He hasn't made that request.
4         THE COURT: What about the fact that they're making an
5  argument that the code has been edited approximately 50 times?
6         MR. LEVINE: Judge, I just addressed that. So that
7  code relates to things that are outside this case such as
8  Android or Linux or other issues that don't deal with iOS. And
9  the reason I got into Dr. Nie being a competitor is that the
10 only thing at issue in this case is copyright as it relates to
11 iOS. And if that code relates to -- does not relate in any
12 stretch, then it's a serious concern even providing it to
13 Apple's expert because he is a direct competitor in this
14 industry. And so those items that have been redacted are beyond
15 any order of the court, and they're beyond any requests and
16 they're beyond any allegation or claim or defense in this case,
17 and therefore they're redacted from site.
18        THE COURT: All right. So here's what I'd like to do
19 is this. First of all, as far as the changes made to the
20 Corellium Apple product, I've already ruled on that. Either
21 work out a stipulation or produce the 12 to 16 updates, prior
22 versions, whatever you want to call them.
23        The second issue is I am ordering that Corellium must
24 produce portions of the product that display, copy or manipulate
25 iOS. It's up to Corellium to make sure that they comply in good

```
 1    faith with that order, but that is my order.
 2              As far as the source code and the hypervisor portion of
 3    the Corellium Apple product, I'm going to review the experts'
 4    affidavits, and I will rule further on that after I've had time
 5    to review the experts' affidavits regarding the editing of the
 6    code or the whether or not the source code has been fully
 7    produced and whether or not the hypervisor portion of the
 8    Corellium Apple product must be produced.
 9              MR. LEVINE:  Your Honor, may I make a very brief point?
10              THE COURT:  Sure.  Go ahead.
11              MR. LEVINE:  The first point relates to the two
12    affidavits provided by the experts.  The Court's order at the
13    last hearing was to only provide an affidavit as it relates to
14    why the hypervisor should or should not be produced, and that's
15    why Dr. Olivier's declaration only goes to that issue.
16              The issue of the source code, and basically I think
17    about 15 or 16 pages of Dr. Nie's declaration, is all beyond the
18    scope of what the Court ordered, so I just wanted to make that
19    issue clear.
20              The other issue is on your Court's second ruling that
21    all source code that relates to copying, modifying, et cetera,
22    as the Court said, I just want to make it very clear that we
23    agreed to produce that on Thursday, and we're perfectly okay
24    with providing all of that to Apple.  And I tell you this to
25    show you about that that stuff which we are perfectly okay with
```

1    producing and agreed to do so last Thursday has no connection to
2    the hypervisor.  We can't be in agreement to produce those items
3    that you just ruled, but also sit here at the same time and
4    state that the hypervisor is not relevant and should be
5    withheld, and that's why I just want to make it clear that there
6    is actually clear line between those and that's why anything
7    related to the hypervisor should not be produced in this case,
8    Your Honor.  Thank you.
9            THE COURT:  All right.  No, I understand your position
10   and -- I'll get to you in a second, Ms. Bina.
11           But your position, Mr. Levine, is the hypervisor is off
12   limits according to you, and you don't want the hypervisor
13   produced, but that you have and have agreed to produce all
14   portions of the product that display, copy or manipulate iOS,
15   and that you agreed to that a few days ago and you're willing to
16   produce that because I am ordering that.
17           As far as the code editing where Apple says it's been
18   edited 50 times and you say that it's basically just redactions
19   of noniOS matters, all I can say is that I've ordered that the
20   portions of the product that display, copy or manipulate iOS be
21   produced and also, any edits of the code, any redactions from
22   the code that would be relevant to this case would be improper.
23   So I want to make sure that you take a look at that and that you
24   have redacted what is properly redacted because if not, it could
25   be a problem down the road.

1          So Ms. Bina, I know you wanted to respond.  What did
2    you want to respond, Ms. Bina?
3          MS. STEBBINS BINA:  Just very briefly, Your Honor.
4    Mr. Levine has spoken extensively, and I know that Your Honor
5    has another hearing so I'm going to try to be brief, but there's
6    a lot that he said that is vigorously disagreed with, not the
7    least of which when he accused me of unethically using an expert
8    to steal code.  That is not something that is happening here.
9    Dr. Nie is a retained expert through my law firm, in good faith
10   attempting to understand Corellium's product.  But they have
11   taken such a narrow view of what is relevant and they are
12   self-editing on their side.  I had understood that after our
13   last hearing, Your Honor, that we would essentially get
14   everything but the hypervisor, and instead they're giving us
15   little dribs and drabs that no expert can put together in a
16   sensible way.  Dr. Nie's affidavit addresses those issues
17   because before he can even get to whether we need the hypervisor
18   or not, there's huge chunks of information that are just missing
19   and that they have not produced and they have not made
20   available.  So this is something I encourage Your Honor to read
21   the affidavit very, very carefully.  I know that you will, but
22   this is not us trying to game the system or take some advantage
23   or steal Corellium's product, it's us trying to identify how the
24   product copies our product, displays our product, circumvents
25   our products technical protections.  And there are portions of

1  recognize what Your Honor is saying, but I have to put on the
2  record that the product does not actually copy, modify or alter
3  or any of that.  So that's all.  Thank you, Your Honor.
4          THE COURT:  That may be your position and that's an
5  issue that may have to be decided at summary judgment or trial,
6  it's not a discovery issue.  All right.  The hearing is
7  concluded.
8          MR. LEVINE:  Understood.
9          MS. STEBBINS BINA:  Thank you, Your Honor.
10         MR. LEVINE:  Thank you, Your Honor.
11         (PROCEEDINGS CONCLUDED)
                  * * * * *
12
                **C E R T I F I C A T E**
13  I certify that the foregoing is a correct transcript from the
    digital audio recording of proceedings in the above-entitled
14  matter.
15
    3/19/2020             /s/ Dawn M. Savino
16  Date                  DAWN M. SAVINO, RPR