**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:19-cv-81160-RS**

APPLE INC.,

                    Plaintiff,

        v.

CORELLIUM, LLC,

                    Defendant.

**PLAINTIFF APPLE INC.'S OPPOSITION TO CORELLIUM'S EXPEDITED
CERTIFIED MOTION FOR PARTIAL RECONSIDERATION OF THE
COURT'S OMNIBUS DISCOVERY ORDER PROVIDING DISCOVERY
<u>RULINGS AFTER THE MARCH 16, 2020 DISCOVERY HEARING</u>**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................1

II.      BACKGROUND ..................................................................................3

     A.      Corellium Received Full and Fair Process from Magistrate Judge
Matthewman. ..........................................................................4

         1.      The First Hearing ........................................................4

         2.      The Second Hearing.....................................................5

         3.      The Third Hearing........................................................7

     B.      The Omnibus Order .................................................................8

     C.      Corellium's Conduct Since the Omnibus Order ..........................9

III.      LEGAL STANDARD...........................................................................10

IV.      ARGUMENT ......................................................................................11

     A.      The Evidence Corellium Submits with Its Motion Cannot Be Considered...........11

     B.      Magistrate Judge Matthewman's Order Is Not Contrary to Law. ........................14

     C.      Magistrate Judge Matthewman's Findings of Fact Are Not Clearly
Erroneous. ............................................................................15

     D.      Corellium's Factual Arguments Should Be Rejected. ...........................................16

         1.      Requiring Corellium to Provide an On-Premises Product Is
Relevant and Proportional...........................................................16

         2.      Requiring Corellium to Provide Information, Including Source
Code, Regarding the Hypervisor, Is Relevant and Proportional...............18

V.      CONCLUSION....................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Apple Inc. v. Psystar Corp.*,
  673 F. Supp. 2d 931 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) ........................19

*Autodesk, Inc. v. ZWCAD Software Co. Ltd.*,
  No. 5:14-cv-01409, 2015 WL 2454003 (N.D. Cal. May 22, 2015)........................................19

*Bouton v. Ocean Props., Ltd.*,
  No. 16-cv-80502, 2017 WL 2720927 (S.D. Fla. June 23, 2017)......................................10, 12

*Cincinnati Ins. Co. v. Cochran*,
  No. 5:05CV93, 2005 WL 5277203 (N.D. Fla. Sept. 22, 2005), *aff'd*, 198 F.
  App'x 831 (11th Cir. 2006) ........................................................................................................12

*Clark v. Rockhill Ins. Co.*,
  No. 6:18-cv-780, 2019 WL 6696394 (M.D. Fla. Dec. 9, 2019) .............................................10

*Combs v. Town of Davie*,
  No. 06-60946, 2007 WL 676102-CIV (S.D. Fla. Feb. 28, 2007)......................................10, 12

*Haines v. Liggett Grp., Inc.*,
  975 F.2d 81 (3d Cir. 1992)........................................................................................................12

*Holton v. City of Thomasville Sch. Dist.*,
  425 F.3d 1325 (11th Cir. 2005) ....................................................................................2, 10, 11

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
  No. 11-cv-61357, 2012 WL 4192987 (S.D. Fla. Sept. 18, 2012)............................1, 10,11, 15

*Montgomery v. Risen*,
  No. 15-20782-CIV, 2015 WL 5167628 (S.D. Fla. Sept. 3, 2015)......................................2, 11

*Mora Group, Inc. v. United States v. Ranch*,
  2006 WL 4524143 (11th Cir. 2006) .........................................................................................11

*Nearstar, Inc. v. Waggoner*,
  No. 4:09-CV-00218, 2010 WL 11531229 (E.D. Tex. Mar. 15, 2010) ...................................19

*Pierre v. Intuitive Surgical, Inc.*,
  No. 18-60095-CIV, 2019 WL 4731934 (S.D. Fla. June 3, 2019)...........................................17

*Plouffe v. GEICO Gen. Ins. Co.*,
  No. 16-25145-Civ, 2017 WL 7796323 (S.D. Fla. Aug. 8, 2017) ...........................................20

*Ramdeo v. United States*,
No. 12-80226-Cr, 2017 WL 6607400 (S.D. Fla. Nov. 14, 2017), *aff'd*, 760 F.
App'x 900 (11th Cir. 2019) ...........................................................................................10

*Salazar v. Wells Fargo Bank, N.A.*,
No. 09-23809-CIV, 2011 WL 379145 (S.D. Fla. Feb. 2, 2011) ........................................11, 15

*Sides v. Advanced Disposal Servs. Nat'l Accts., Inc.*,
2015 WL 13333185 (M.D. Fla. Dec. 11, 2015)......................................................................14

*Summit Towers Condo. Ass'n, Inc. v. QBE Ins. Corp.*,
No. 11-60601-CIV, 2012 WL 1440894 (S.D. Fla. Apr. 4, 2012)....................................10, 14

*Williams v. McNeil*,
557 F.3d 1287 (11th Cir. 2009) ..............................................................................................12

## STATUTES

27 U.S.C. § 636(b)(1)(A)...................................................................................................1, 2, 10

28 U.S.C. § 1746...........................................................................................................................11

Digital Millennium Copyright Act......................................................................2, 3, 18, 19

## RULES

Fed. R. Civ. P.
26................................................................................................................................................2
26(b)(1) ..................................................................................................................................8, 14
72(a) ....................................................................................................................................1, 10


S.D. Fla. Magistrate Judge L.R. 4(a)(1)................................................................................1, 10

Plaintiff Apple Inc. respectfully submits this opposition to Corellium's Expedited Certified Motion for Partial Reconsideration of the Court's Omnibus Order Providing Discovery Rulings After The March 16, 2020 Discovery Hearing.  ECF No. 255 ("Motion for Reconsideration").

## I.    INTRODUCTION

Defendant Corellium LLC's ("Corellium") appeal of Magistrate Judge Matthewman's Omnibus Order Providing Discovery Rulings After The March 16, 2020 Discovery Hearing ("Order" or "Omnibus Order") (wrongly styled as a motion for reconsideration) should be denied.  The discovery disputes Corellium now seeks to re-litigate have been the subject of extensive and careful consideration by Magistrate Judge Matthewman.  The Order itself is reasoned, lengthy, and based on evidence and law.  It resulted from Magistrate Judge Matthewman's consideration of the issues and the evidence over a three-month period.  Both sides submitted expert declarations and documentary evidence.  Magistrate Judge Matthewman held three separate hearings, issued multiple orders addressing these issues, and carefully weighed the written submissions from and the reliability and credibility of both sides' expert witnesses, all prior to issuing the Omnibus Order.  *See, e.g.*, ECF Nos. 68, 77, 88, 149, 172, 192, 249.  Corellium chose not to submit any additional briefing or to introduce any testimony or other evidence between the final hearing and the Omnibus Order's issuance five days later.  In short, Corellium had every opportunity to make the same arguments and provide the same evidence to Magistrate Judge Matthewman that it now presents to the Court.  But Corellium was content in resting on the lengthy record it helped create before Magistrate Judge Matthewman—that is, until it lost the dispute and was compelled by the Court to provide the crucial discovery it had long been withholding.

A district court judge may set aside a magistrate judge's order only if that order is "clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); S.D. Fl. Magistrate Judge L.R. 4(a)(1).  The "clearly erroneous" standard is "a very difficult one to meet."  *Manno v. Healthcare Revenue Recovery Grp., LLC*, No. 11-61357, 2012 WL 4192987, at *2 (S.D. Fla. Sept. 18, 2012) (internal citation omitted).  Corellium does not even attempt to meet this "very difficult" standard.  Instead, it invites the District Court to revisit Magistrate Judge Matthewman's carefully considered 13-page Order, based on arguments and evidence Magistrate Judge Matthewman rejected, and based on evidence that Corellium did not bother to submit prior to the Order's issuance.  This is not a basis for reversal.  Even if the Court differs with Magistrate Judge

Matthewman on some of his conclusions, "[t]he district court may not undo the magistrate judge's determination 'simply because it is convinced that it would have decided the case differently.'" *Id.* (quoting *Holton v. City of Thomasville Sch. Dist.,* 425 F.3d 1325, 1350 (11th Cir. 2005). Rather, reconsideration is permitted only "where it has been shown that the magistrate judge's Order is clearly erroneous or contrary to law." *Montgomery v. Risen*, No. 15-20782-CIV, 2015 WL 5167628, at *1 (S.D. Fla. Sept. 3, 2015); *see* 28 U.S.C. § 636(b)(1)(A). Corellium's failure to advance any arguments that would entitle it to relief under the applicable statutory standard of review alone requires denial of its motion.

Even if the Court were to consider its merits, Corellium's motion should be denied because Corellium fails to demonstrate clear error or anything contrary to law in Magistrate Judge Matthewman's Omnibus Order. Rather, the Order reflects a magistrate judge's routine and thoughtful management of discovery and consideration of the evidence and arguments before him. In this computer technology-focused copyright case, Apple alleges that Corellium makes and sells a product—the Corellium Apple Product ("CAP")—that provides its users with exact digital replicas of Apple iPhones, infringing Apple's copyrights in its software, called iOS, and in the associated copyrighted graphical user interface elements of iOS. Apple further alleges that Corellium traffics in tools of circumvention, which is prohibited by the Digital Millennium Copyright Act, by selling a product that permits users to circumvent Apple's security measures.

In the context of this case, the Omnibus Order does not work some grave injustice or provide any extreme relief. It simply requires Corellium to produce, under a confidential, Attorneys' Eyes Only designation, and under the stringent restrictions of the Protective Order (ECF No. 50): (1) the on-premises Corellium Apple Product that Corellium regularly ships to its customers (and which Apple contends infringes its copyrights);[1] and (2) the source code for

---

[1] Apple has been negotiating with Corellium since before Corellium filed its reconsideration motion to explore a possible compromise that would minimize the burden Corellium claims it would suffer from complying with the Order and producing to Apple the on-premises version of the product. Those talks are ongoing. If the parties reach a compromise, they will notify the Court and Apple expects Corellium to withdraw its motion as it relates to that aspect of the Court's order. Any compromise will not moot Corellium's motion, however, as Apple requires and expects full, timely compliance with the Court's order that Corellium provide discovery regarding the hypervisor.

Corellium's hypervisor, a critical component of the Corellium Apple Product that Apple contends is infringing. Neither form of discovery is unusual or inappropriate under Rule 26. As the Omnibus Order itself explains, Corellium's hypervisor is "an integral part and parcel of the Corellium Apple Product," and Apple's expert is entitled to "view and evaluate [the on-premises Corellium Apple Product] outside the presence of Corellium and its counsel." ECF No. 249 at 7–8. The Court need not, and should not, revisit these sound, evidence-based determinations.

Finally, and of particular note here, there are only sixteen business days left in fact discovery. At least five depositions are on hold pending the production of the evidence Corellium was ordered to produce, which is of critical importance to Apple's case. *See* Declaration of Jessica Stebbins Bina (hereafter "Bina Decl.") ¶ 7. Apple has been seeking this discovery ***since October***. While Corellium claims the sky will fall if the Omnibus Order is upheld, there is no basis for its hyperbolic claims of prejudice. Rather, and to the contrary, Magistrate Judge Matthewman specifically determined that "Corellium's discovery positions have, in part, been overly restrictive and stubbornly recalcitrant," and thus reached "the inescapable conclusion that Apple has not yet had a full and complete opportunity to examine the CAP at issue in this case." ECF No. 249 at 4. The Court should deny Corellium's motion, and permit Apple to complete discovery.

## II.     BACKGROUND

Apple filed this lawsuit claiming both direct and contributory copyright infringement on August 15, 2019. Corellium's entire business of "virtualizing" Apple products is based on copying some of Apple's most important products—its iOS operating systems that power Apple's iPhone and related mobile devices—and in the process, infringing Apple's copyrights on both the operating system and certain graphical elements of its user interface. ECF Nos. 1, 56. Specifically, Apple alleges the Corellium Apple Product infringes Apple's copyrights because it copies, modifies, and displays Apple's copyrighted works, and because users of the Corellium Apple Product likewise engage in those acts of infringement. Apple further alleges that Corellium's sale and license of the Corellium Apple Product violate the anti-trafficking provisions of the Digital Millennium Copyright Act ("DMCA") by circumventing Apple's technical protection measures that would otherwise prevent unauthorized access to, and modification and display of, iOS. ECF No. 56. It is Corellium's use and sale of the entire Corellium Apple Product, and not any particular component thereof, that underlies Apple's claim under the DMCA.

Corellium offers its customers both a "cloud-based" and an "on-premises" version of the

Corellium Apple Product that make virtual replicas of Apple's proprietary iPhones. While Corellium's two products are similar,  Ex. A at 12–13; Ex. B. Both products have a "hypervisor" component, which is ██████████. Declaration of Dr. Jason Nieh, ECF No. 239 (hereafter "Nieh Decl.") ¶¶ 60–63; *see also* Declaration of Dr. James Olivier, ECF No. 240 (hereafter "Olivier Decl.") ¶ 4.

### A. Corellium Received Full and Fair Process from Magistrate Judge Matthewman.

Contrary to Corellium's claims that it was unfairly surprised by the Omnibus Order, Corellium received a full and fair hearing—three of them—before Magistrate Judge Matthewman on all matters for which it now seeks reconsideration. Notwithstanding the generous process it received, once faced with an order compelling it to provide the discovery Apple has been seeking for nearly six months, and with 16 business days left before the close of discovery, Corellium seeks once again to avoid its discovery obligations.

### 1. The First Hearing

Apple served its first requests for production on October 9, 2019. ECF No. 68-1. After Corellium failed to meaningfully comply, Apple moved to compel on January 13, 2020. ECF No. 68. Corellium opposed, advancing what has become its mantra in these proceedings: that any discovery about the technology it sells to customers purportedly "will severely injure Corellium's business and will cause irreparable harm, irrespective of the Protective Order in place, because highly sensitive information will have been shared outside of Corellium." ECF No. 77 at 3. Corellium particularly opposed producing information about its "core virtualization technology"—in other words, the technology it uses to replicate Apple's copyrighted works. ECF No. 77 at 3–5. Corellium stated it would only "produce those records that relate to the facilitation of study and research of iOS." ECF No. 77 at 4.

Magistrate Judge Matthewman held a *two-day* hearing on February 12 and 13, 2020, to address this and other discovery motions. In that hearing, Corellium repeatedly argued—as it does again in the instant motion—that the hypervisor component of its product should not be included in the Court's definition of the Corellium Apple Product for discovery purposes, even though the hypervisor is part of the product that is shipped to customers, and that it should not have to respond

to discovery requests related to the hypervisor.  *See* Ex. C at 27:8–30:24; 32:25–34:7; 100:18–104:8, 108:9–115:13, 164:4–20.  As a compromise, Apple *provisionally* agreed at the hearing to proceed with a narrower definition of the Corellium Apple Product that excluded the hypervisor.  In exchange, Corellium agreed to promptly produce responsive documents, including source code, based on that narrower definition, and to provide Apple's expert with credentials to access its cloud-based version of the product.  ECF No. 149 at 2; Ex. C at 97–98, 126.  The parties agreed that Apple would "be permitted to seek additional discovery based on *a broader definition* of the Corellium Apple Product" if the compromise definition proved insufficient, as it later did.  ECF No. 149 at 2 (emphasis added).  In accordance with that agreement, Magistrate Judge Matthewman reserved ruling on Apple's motion to compel and instead set a February 27, 2020 hearing to "re-address any remaining issues."  *Id.* at 3.

## 2.    The Second Hearing

In February, in the middle of this litigation and shortly before it provided Apple's expert witness with credentials to access the cloud-based Corellium Apple Product, Corellium materially changed the way that product accesses Apple's copyrighted iOS files. Ex. D at 24:1–25:25.  While Corellium claims this change was made for technical reasons, the change effectively made it impossible for Apple's expert to review evidence of the cloud-based Corellium Apple Product as it existed before February 2020.[2]  *Id.* at 24:1–26:13, 29:5–32:13.  Furthermore, when Corellium made its first production of source code on February 24, 2020, the source code was deficient in numerous respects.  Most notably, Corellium produced only *one* version of the product, rather than the multiple earlier versions listed in its discovery responses.  ECF No. 188 at 5–7; Nieh Decl.¶¶ 22, 28–30.

At the February 27, 2020 hearing, Apple raised its concerns with Corellium's apparent mid-lawsuit changes to the product and the deficiencies Apple had so far identified with respect to Corellium's source code production.  Again, and contrary to Corellium's claims that Apple never requested an on-premises version of the Corellium Apple Product, Apple specifically explained that, given Corellium's modification to the cloud-based product, Apple "would need access to an

---

[2] If Corellium has not appropriately preserved or does not produce in discovery evidence of how the earlier versions of the product worked, Apple will address this loss of evidence at the appropriate time.

on-premises version of a Corellium Apple product, since that is the only version that's now functioning in a way that it did historically." Ex. D at 27, *see id.* at 36–37, 47–48. Magistrate Judge Matthewman then ordered Corellium to permit inspection and to produce source code "in a native and usable format, for the prior and current versions of the Apple patches." ECF No. 211 at 2–3. The Court further ordered the Parties to "determine a method for Apple's expert to obtain the credentials to interact with the Corellium Apple Product as if the expert were a customer of both the current and the prior version of the Corellium Apple Product." ECF No. 211 at 2. Pursuant to that order, Corellium made the on-premises version available for inspection in its office. Levine Decl., ECF No. 255-3 at 1.

At the same hearing, Magistrate Judge Matthewman also heard extensive arguments on whether the hypervisor portion of the source code should be produced. *See* Ex. D at 39:7–41:2; 43:2–47:18; 49:5–54:16; 56:7–63:18; 67:10–69:10. Once again, however, Magistrate Judge Matthewman deferred ruling on the issue. After strenuous objection by Corellium, he asked each party to submit a declaration from its respective expert as to whether the discovery provided to date that did *not* include the hypervisor was "sufficient or not." *Id.* at 70:3–8. The Court explained that it "need[ed] some technological expert to tell [it] why it is that Apple says they absolutely have to have this and why it is [Corellium] say[s] if you give this, you're giving up the farm." *Id.* at 70:12–15.[3] Magistrate Judge Matthewman set a follow-up hearing for March 16, 2020, and ordered the parties to submit their expert declarations by noon on Sunday, March 15, 2020. ECF No. 211. Magistrate Judge Matthewman stressed that he wanted Corellium to produce "pretty much everything else regarding iOS in usable or native format." Ex. D at 98:24–99:9.

---

[3] In an order following the hearing, Magistrate Judge Matthewman required Corellium to produce more code, and to arrange for Apple's expert to access both the current and prior versions of the Corellium Apple Product. Magistrate Judge Matthewman expressly stated his intention to address the hypervisor at the next hearing, explaining: "the definition for discovery purposes of the Corellium Apple Product shall be as follows: 'All products developed, offered for sale, or sold by Corellium that create virtual versions of iOS-operated devices. This definition does not include Corellium products that are based on other mobile operating systems. **The Court will rule at a later date whether this definition includes the hypervisor platform included in the Corellium Apple Product sold by Corellium to the extent it relates to iOS.**'" ECF No. 211 at 2–3 (emphasis original).

6

### 3.      The Third Hearing

Pursuant to Magistrate Judge Matthewman's order, Apple's expert, Dr. Jason Nieh, and Apple's counsel traveled to Florida on March 12, 2020, to review Corellium's source code and to inspect the on-premises version of the Corellium Apple Product.  Once again, however, Corellium failed to cooperate.  As Apple's expert Dr. Nieh explained in his subsequent declaration:

(a)      Corellium withheld "large swaths of source code, even beyond the hypervisor code," Nieh Decl. ¶¶ 38–40. ████████████████████████████████ ████████████████████████████████████ *Id.*

(b)      Corellium had deleted portions of source code files that it had produced, "fundamentally altering the evidence of how its product would normally operate," Nieh Decl. ¶¶ 38, 41; and

(c)      Corellium had withheld key technical documents about the design of its product that would "likely provide some of the clearest evidence about the operation of the product," Nieh Decl. ¶¶ 38, 42.

As Dr. Nieh recounted, Corellium's altering of its code, namely to obscure functions that apply to both Apple and non-Apple virtual devices, substantially impeded Apple's ability to evaluate core elements of its claims—namely, whether the product copies or displays iOS and whether any technological protection measures are circumvented.  Nieh Decl. ¶ 37.  Dr. Nieh further explained why the limited access he had been provided to the on-premises version was insufficient.  Nieh Decl. ¶¶ 31–34, 36, 49–52.  As a result, even after Apple's expert and counsel traveled to Florida, Apple was still denied basic information about the Corellium Apple Product's functionality and operation.  Nieh Decl. ¶ 36.

This was the situation on March 15, 2020, when Apple filed with the Court the declaration from Dr. Nieh (ECF Nos. 233-1, 239), detailing his review of Corellium's productions to date, and the resulting need for Corellium to produce further information, including the source code for the hypervisor portion of the Corellium Apple Product, Nieh Decl. ¶¶ 20–34.  That same day, Corellium filed its own expert's declaration from Dr. James Olivier, more than four hours past the noon deadline, at 4:15 p.m.  ECF Nos. 237, 240.  Despite the Court having invited Corellium to address why production of the hypervisor would be "giving up the farm," Dr. Olivier's declaration did not address any harm that would befall Corellium from providing this discovery.  Rather, Dr. Olivier explained that he had personally viewed Corellium's hypervisor code and summarily concluded "that Apple does not require any additional discovery on Corellium's hypervisor

because it is not relevant."  Olivier Decl. 3; *see also id*. ¶ 10.  Corellium did not submit, or request to submit, any further evidence.

On Monday, March 16, 2020, Magistrate Judge Matthewman held the third hearing. During the hearing, Corellium's counsel argued at length against allowing a more fulsome production of source code and any discovery related to the hypervisor, making virtually all of the arguments Corellium now contends it did not have the opportunity to make.  *See* Ex. E at 88:22– 101:1;  106:10–109:17;  110:9–111:25.    Corellium's  counsel  advised  Magistrate  Judge Matthewman that Corellium's Chief Technology Officer, Chris Wade, and Corellium's counsel's director of ESI, Manny Delgado, *were present and available to provide technical information*. *Id.* at 4:7–11, 97:12–18.  However, counsel never proffered either as a witness or even requested that they be permitted to speak.  *Id.*[4]  At the close of the hearing, Magistrate Judge Matthewman took the matter under submission, stating he intended to review both parties' expert declarations in depth.  *Id.* at 110:2–8.  Corellium did not submit or seek to submit any supplemental briefing or evidence.

### B.     The Omnibus Order

On Friday, March 20, 2020, Magistrate Judge Matthewman issued the Omnibus Order addressing, *inter alia*, the outstanding dispute regarding discovery into the Corellium Apple Product.  ECF No. 249.  Magistrate Judge Matthewman explained that he carefully reviewed the "prior orders, the entire docket in this case, the relevancy and proportionality requirements of Rule 26(b)(1), and counsel's arguments at the March 16, 2020 discovery hearing and at prior discovery hearings held in this case."  ECF No. 249 at 2.

In addition, the Court "very carefully reviewed . . . the sealed versions of the parties' competing expert Declarations [DEs 239, 243] to determine the pending issues in this case."  ECF No. 249 at 3.  Notably, Magistrate Judge Matthewman stated that he found the declaration from Dr. Nieh, Apple's expert, "to be more factual, precise, explanatory, and helpful to the Court's decision-making process."  *Id.* at 4.  Magistrate Judge Matthewman went on to explain that, "Mr. Nieh's 20-page Declaration relies primarily on facts and information, whereas Mr. Olivier's 6-

---

[4] Rather, Corellium's counsel concluded the hearing not by complaining about any failure to be heard, but by reiterating his argument that his client's product does not actually copy iOS.  Ex. E at 115:20–116:10.

page Declaration is in large part, conclusory and argumentative.  Mr. Olivier's Declaration is also overly simplistic and somewhat dismissive of the complex issues in this case." *Id.*

Based on this extensive review, Magistrate Judge Matthewman was led "to the inescapable conclusion that Apple has not yet had a full and complete opportunity to examine the CAP at issue in this case." *Id.*  He concluded that "Corellium's discovery production has been inadequate, and that Corellium's discovery positions have, in part, been overly restrictive and stubbornly recalcitrant." *Id.*  With respect to Corellium's production of source code, in particular, Magistrate Judge Matthewman explained that he was "becoming increasingly concerned that Corellium is trying to obfuscate the discovery issues or possibly 'hide the ball' regarding the CAP" and that "Corellium has improperly refused to make relevant and proportional discovery available to Apple under the guise of labelling certain items as 'non-iOS' functions or not relevant to this lawsuit." *Id.* at 6.  Magistrate Judge Matthewman concluded that "Corellium's interpretation of the CAP is far too narrow and restrictive and fails to fully comply with th[e] Court's Orders and [Corellium's] discovery obligations." *Id.*

In light of those findings, Magistrate Judge Matthewman ordered Corellium to produce a significant volume of materials it had been withholding for months and source code related to the hypervisor portion of the Corellium Apple Product as well as an on-premises Corellium Apple Product. *Id.* at 4–9.

## C.   Corellium's Conduct Since the Omnibus Order

On March 22, 2020, Corellium stated that it intended to move for reconsideration of the Omnibus Order.  Bina Decl. ¶ 4.  In part, it claimed it would seek to reverse the requirement to produce materials related to the hypervisor portion of the Corellium Apple Product.  Given the obvious relevance of these materials, which form a core component of Corellium's infringing product, and the months the parties have already spent litigating this exact issue, Apple believes that Magistrate Judge Matthewman's order should be upheld in full with respect to this issue.

Corellium also informed Apple that it would challenge the order to produce the on-premises Corellium Apple Product because of alleged logistical and other burdens that complying with the order would inflict on Corellium.  Apple's counsel has been meeting and conferring with Corellium in good faith to attempt to address these concerns and minimize any logistical challenges.  However, Apple plainly needs access to a functional version of the on-premises Corellium Apple Product (whether in-person or remotely) to examine the facts that are central to

its allegations of copying copyrighted material and trafficking of an anti-circumvention tool, as Magistrate Judge Matthewman ordered.

Magistrate Judge Matthewman ordered all of these materials to be produced by Tuesday, March 31, 2020. Corellium did not disclose to Apple any intention to seek a stay of that deadline until shortly before midnight on Friday, March 27, 2020. Corellium then filed a motion for stay at midnight on March 27, 2020, and filed its motion for partial reconsideration the following morning, on Saturday, March 28, 2020—eight days after the Omnibus Order was entered and just three days before its deadline to comply with the order.

## III.    LEGAL STANDARD

"The District Judge shall consider the appeal and shall set aside any portion of the Magistrate Judge's order found to be *clearly erroneous or contrary to law*." S.D. Fla. Magistrate Judge L.R. 4(a)(1) (emphasis added); *see also* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). The "clearly erroneous" standard constrains the district court's review to only the evidence that was before the magistrate judge. *See Bouton v. Ocean Props., Ltd.*, No. 16-cv-80502, 2017 WL 2720927, at *1 (S.D. Fla. June 23, 2017). As such, when proceeding under this standard of review, "[t]he district court may not undo the magistrate judge's determination 'simply because it is convinced that it would have decided the case differently.'" *Manno v. Healthcare Revenue Recovery Grp.*, LLC, No. 11-61357, 2012 WL 4192987, at *2 (S.D. Fla. Sept. 18, 2012) (quoting *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1351 (11th Cir. 2005)). The "'clearly erroneous' review" is thus "very different from the *de novo* review and adoption of a Report and Recommendation on a dispositive Order, and more closely resembles an appellate function." *Bouton*, 2017 WL 2720927, at *1 (citing *Combs v. Town of Davie*, No. 06-60946-CIV, 2007 WL 676102, at *2 (S.D. Fla. Feb. 28, 2007)).

Although Corellium styles its motion as one for "reconsideration" of Magistrate Judge Matthewman's Omnibus Order, it directs the motion to this Court, rather than to Magistrate Judge Matthewman, and cites the  statute and local rule that apply to objections to a magistrate judge's non-dispositive rulings. *See* ECF No. 255 at 1 (citing 28 U.S.C. § 636(b)(1)(A) and S.D. Fla. Magistrate Judge L.R. 4(a)(1)). As such, Corellium's motion must be considered pursuant to the standard above, as codified in 28 U.S.C. § 636(b)(1)(A), Magistrate Judge Local Rule 4(a)(1), and Federal Rule of Civil Procedure 72(a). *See, e.g.*, *Clark v. Rockhill Ins. Co.*, No. 6:18-cv-780, 2019 WL 6696394, at *1 n.1 (M.D. Fla. Dec. 9, 2019); *see also Ramdeo v. United States*, No. 12-80226-

Cr, 2017 WL 6607400, at *1 (S.D. Fla. Nov. 14, 2017), *aff'd*, 760 F. App'x 900 (11th Cir. 2019).

A party challenging a magistrate's non-dispositive order must specify, in written objections, "a concise statement of the alleged error in the magistrate Judge's ruling, and statutory, rule, or case authority, in support of the moving party's position."  S.D. Fla. Magistrate Judge L.R. 4(a)(1).  To show that an order is contrary to law, a party must show that the order "fails to apply or misapplies relevant statutes, case law or rules of procedure."  *Summit Towers Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 11-60601-CIV, 2012 WL 1440894, at *1 (S.D. Fla. Apr. 4, 2012).  To show that a magistrate judge's findings are clearly erroneous, a party must do more than simply convince the district court that "it would have decided the case differently."  *Manno*, 2012 WL 4192987, at *2 (quoting *Holton*, 425 F.3d at 1351 (11th Cir. 2005)).  The party must instead leave the district judge "with the definite and firm conviction that a mistake has been committed."  *Salazar v. Wells Fargo Bank, N.A.*, No. 09-23809-CIV, 2011 WL 379145, at *3 (S.D. Fla. Feb. 2, 2011).

## IV.    ARGUMENT

As courts in this district have recognized, "the standard of review for overturning a magistrate judge's non-dispositive order is 'a very difficult one to meet.'"  *Montgomery v. Risen*, No. 15-20782-CIV, 2015 WL 5167628, at *2 (S.D. Fla. Sept. 3, 2015) (internal citation omitted). Corellium does not even attempt to satisfy that standard here.  It does not argue Magistrate Judge Matthewman's reasoned order, issued after months of briefing and hearings, is contrary to law or clearly erroneous.  It identifies no legal standard ignored, no critical finding not made, no obviously wrong factual determinations.   Instead, Corellium simply seeks to re-litigate its failed motion before a different audience, making the same arguments and adding additional evidence it regrets not providing to Magistrate Judge Matthewman.  This is inappropriate, and the Court should deny the motion on this basis alone.   Furthermore, even if the Court were to take up Corellium's invitation to re-adjudicate Magistrate Judge Matthewman's order (which it should not), the order should be affirmed.

### B.    The Evidence Corellium Submits with Its Motion Cannot Be Considered.

The Court should disregard entirely Corellium's attempt to submit evidence that, although long available to it, Corellium never sought to put before Magistrate Judge Matthewman.  That evidence includes new statements in Corellium's motion that it says are "certified" by Corellium's

11

Chief Technology Officer, Chris Wade,[5] as well as two declarations—one from Corellium's counsel and one from the litigation support manager for Corellium's counsel. *See* ECF Nos. 255, 255-1, and 255-3. "The problem with defendant's proffer of new evidence" is that this Court "is limited to reviewing the magistrate judge's order under a clearly erroneous standard." *Cincinnati Ins. Co. v. Cochran*, No. 5:05CV93, 2005 WL 5277203, at *6 (N.D. Fla. Sept. 22, 2005), *aff'd*, 198 F. App'x 831 (11th Cir. 2006). Under that standard, "[i]t is inappropriate to consider evidence not presented to the magistrate judge." *Id.* (citing *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 93 (3d Cir. 1992)); *see also Combs*, 2007 WL 676102, at *2.

Courts reviewing a magistrate judge's non-dispositive rulings thus routinely refuse to consider evidence not put before the magistrate, and the Court should do so here. Indeed, the very purpose of referring non-dispositive motions to the magistrate judge is "to increase the efficiency of the system"—a purpose that would be "frustrate[d]" by allowing "the opportunity to fully re-litigate every pretrial Order with which [a party is] dissatisfied." *Combs*, 2007 WL 676102, at *2; *see also Bouton*, 2017 WL 2720927, at *1. Were it otherwise, such consideration "would effectively nullify the magistrate judge's consideration of the matter." *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009); *see also id.* ("Systemic efficiencies would be frustrated and the magistrate judge's role reduced to that of mere dress rehearser . . . ."). As one court in this District has explained, "[c]onsideration of this 'new evidence' would . . . be improper at this juncture of the proceedings. When reviewing [the magistrate judge's] Discovery Order, this Court sits in an appellate-like capacity and will not allow the parties to litigate the issues anew. To do so would eviscerate the purpose underlying the referral of non-dispositive motions to magistrate judges." *Bouton*, 2017 WL 2720927, at *2.

Corellium feebly suggests that it did not have an opportunity to make a full record before Magistrate Judge Matthewman. *See, e.g.*, ECF No. 255 at 5. Even were this true—and it is not,

---

[5] Many of the "facts" in Corellium's motion are improper assertions by counsel without evidence. *See In re Complaint of Levenshon*, 407 F. Supp. 2d 1349, 1350 (S.D. Fla. 2005) ("statements and arguments of counsel are not evidence" (quoting *Coleman v. Singletary*, 30 F.3d 1420, 1427 (11th Cir. 1994))). For other assertions, Corellium proffers a "certified" motion in lieu of submitting a Declaration by Chief Technology Officer Chris Wade pursuant to 28 U.S.C. § 1746. Corellium also offers a Declaration by Justin Levine, outside counsel, about his interpretations of Court orders and his inadmissible impressions of hearsay conversations with Chris Wade, Apple's expert Dr. Nieh, and Apple's counsel Holly Victorson during Apple's limited on-site inspection.

12

given the extensive process and three hearings Corellium received—it would not be grounds to eviscerate the legal limits on this Court's review.  If Corellium believes that Magistrate Judge Matthewman should have considered additional evidence, then Corellium should seek reconsideration from Magistrate Judge Matthewman on the basis of that evidence.  Corellium has not done so.  More to the point, Corellium's portrayal of the proceedings before Magistrate Judge Matthewman bears little resemblance to reality.  As detailed above, Magistrate Judge Matthewman gave Corellium every possible opportunity to make its case regarding discovery related to the Corellium Apple Product, including over the course of three hearings and with the allowance of an expert declaration.  *See supra* 4–8.  Corellium took full advantage of those opportunities, advancing at all three hearings many of the same arguments it now presses.  *See, e.g.*, Ex. C at 27:8–30:24; 32:25–34:7; 100:18–104:8, 108:9–115:13, 164:4–20; Ex. D at 39:7–41:2; 43:2–47:18; 49:5–54:16; 56:7–63:18; 67:10–69:10.

Corellium now claims it "was entirely unaware that the Court would order the production and installation of its 'On-Premises' version of the CAP."  ECF No. 255 at 12.  Nonsense.  That topic had been raised at the February 27 hearing (Ex. D at 27, *see id.* at 36–37, 47–48), and Corellium acknowledges that Apple's March 12 visit "occurred upon the Court's order that Apple's Expert be provided access to Corellium's 'On-Premises' version of the Corellium Apple Product" (Levine Decl., ECF No. 255-3 ¶ 4).  Magistrate Judge Matthewman even previewed at the second hearing—well before Corellium submitted the declaration from its expert—that, in light of Corellium's changes to the Corellium Apple Product in the middle of litigation, he wanted Corellium to provide to Apple the product that Corellium provides to a customer.  *See* Ex. D at 59:10–17 ("So what I'd want produced to Apple would be the product that somebody buys that can then test an iOS device, because you're saying it's merely testing to find bugs and they're saying it's being copyrighted, et cetera.  So that's what needs to be produced. Whatever that product is that a customer purchases and then uses that portion of the platform to test or copy or whatever it is they're doing, an iOS device.").  Dr. Nieh then submitted a declaration regarding his need for further information, as described above, and Corellium's counsel argued extensively at the next discovery hearing that the four hours Dr. Nieh had received were sufficient.  Ex. E at 85– 111.  The hearing concluded with the Court stating it would rule on the papers.  *Id.* at 109–110; ECF No. 245.  After that, when both parties' cards were on the table, Corellium never submitted

13

or even asked for the opportunity to submit supplemental evidence countering Dr. Nieh's narrative regarding access to the on-premises version.

Corellium likewise fails to mention that, at the March 16 hearing, it made virtually identical arguments before Magistrate Judge Matthewman that it now claims it was unable to advance. Corellium argued, for example, that the servers used in its on-premises product are "very large, very expensive, very sensitive servers." Ex. E at 93:16–17; *compare with* ECF No. 255 at 10. Corellium argued that Dr. Nieh's declaration was, in its view, inconsistent with what Dr. Nieh said in Florida. *Compare* Ex. E at 100:07–10, *with* ECF No. 255 at 12. Corellium argued about the scope of copyright law. *See* Ex. E at 96:11–24. It told Magistrate Judge Matthewman, as it has argued to this Court, that "the hypervisor is a piece of hardware. Now it's software, but it is effectively a piece of hardware." *Id.* at 99:10–12. And although Corellium says that it merely "*attempted* to inform the Court of" its offer to Dr. Nieh to produce particular portions of code, ECF No. 255 at 16 (emphasis added), Corellium, in fact, did tell the Court of that offer. *See* Ex. E at 108:18–109:03.

In short, Corellium had a full and fair opportunity to submit the evidence that it now belatedly offers with its motion for reconsideration. The Court should reject any attempt to introduce new evidence now.

### C.  Magistrate Judge Matthewman's Order Is Not Contrary to Law.

Corellium does not and cannot show that Magistrate Judge Matthewman's order is contrary to law; *i.e.*, that the order "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Summit Towers*, 2012 WL 1440894, at *1. Here, the relevant rule is Federal Rule of Civil Procedure 26(b)(1), which sets the scope of permissible discovery: "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Sides v. Advanced Disposal Servs. Nat'l Accts., Inc.*, 2015 WL 13333185, at *1 (M.D. Fla. Dec. 11, 2015) (quoting Fed. R. Civ. P. 26(b)(1)).

Corellium cannot demonstrate that Magistrate Judge Matthewman failed to apply or misapplied Rule 26(b)(1). To the contrary, he expressly took into account "the relevancy and proportionality requirements of Rule 26(b)(1)," ECF No. 249 at 2, and made explicit relevancy and proportionality findings based on that rule in concluding that the ordered discovery was appropriate. For example, before ordering Corellium to produce all technical documents related to the Corellium Apple Product, the Court found that "Corellium has improperly refused to make

relevant and proportional discovery available to Apple under the guise of labelling certain items as 'non-iOS' functions or not relevant to the CAP at issue in this lawsuit." *Id.* at 6. The Court also found that, "due to the infringement, circumvention and other issues asserted in this case, including Apple's claims and Corellium's defenses, the entire hypervisor is relevant and proportional and must be produced." *Id.* at 9.

Corellium offers no authority challenging this plainly appropriate analysis, and thus cannot demonstrate that the Omnibus Order was contrary to law. *See Manno*, 2012 WL 4192987, at *2 (rejecting challenge to magistrate judge's non-dispositive ruling where objecting party "has not offered any case law suggesting" that the ruling was incorrect).

### D. Magistrate Judge Matthewman's Findings of Fact Are Not Clearly Erroneous.

Corellium likewise cannot show that Magistrate Judge Matthewman's factual findings are clearly erroneous. As explained above, to make such a serious showing, a party must do more than simply try to persuade the district court that "it would have decided the case differently." *Id.* at *2. The party must instead leave the district judge "with the definite and firm conviction that a mistake has been committed." *Salazar*, at *3. Corellium has not even attempted to make that showing.

The factual findings in Magistrate Judge Mathewman's omnibus discovery order are the result of his "careful review" and consideration of the record and are fully supported by the evidence. Magistrate Judge Matthewman's diligent analysis is evident throughout the Omnibus Order. For example, he explains in detail why Dr. Nieh's declaration is more persuasive than Dr. Olivier's. *See* ECF No. 249 at 4 ("Mr. Nieh's 20-page Declaration relies primarily on facts and information, whereas Mr. Olivier's 6-page Declaration is, in large part, conclusory and argumentative. Mr. Olivier's Declaration is also overly simplistic and somewhat dismissive of the complex issues in this case."). Magistrate Judge Matthewman then concludes, based on "a careful review of the competing Declarations together with all the filings in this case," "that Apple has not yet had a full and complete opportunity to examine the CAP at issue in this case"—a conclusion that is fully supported by Dr. Nieh's explanation of the discovery material that had not yet been provided by Corellium. *See id.*; Nieh Decl. ¶¶ 35–65. Dr. Nieh's detailing of the information Corellium had not yet produced, and the incomplete nature of the material Corellium had produced, likewise supports Magistrate Judge Matthewman's findings that (a) "Corellium's discovery positions have, in part, been overly restrictive and stubbornly recalcitrant," ECF No.

249 at 4; and (b) "Corellium improperly refused to make relevant and proportional discovery available to Apple under the guise of labelling certain items as 'non-iOS' functions or not relevant to the CAP at issue in this lawsuit," *id.* at 6.   Dr. Nieh's explanation of the role the hypervisor plays supports Magistrate Judge Matthewman's conclusion that the hypervisor "appears to be a core component of, and the foundation of, the Corellium Apple Product," and that "the entire hypervisor is [therefore] relevant."   ECF No. 249 at 9; *see also* Nieh Decl. ¶¶ 37–39, 60–65. Notably, even Corellium's expert acknowledged ████████████████████████████████████ ███████████████████████████ Olivier Decl. ¶ 4, ████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████

In short, Magistrate Judge Matthewman's factual findings are amply supported by the record.   Corellium's motion should therefore be denied.

### D.   Corellium's Factual Arguments Should Be Rejected.

Given Corellium's failure to comply with the Rules of this Court or demonstrate error under the relevant legal standard, the Court should simply deny Corellium's motion.   If, however, the Court chooses to evaluate Corellium's factual assertions, it still should affirm those portions of the Omnibus Order granting Apple access to the on-premises Corellium Apple Product and the hypervisor's documentation and source code.   *See* Omnibus Order, ECF No. 249.

### 1.   Requiring Corellium to Provide an On-Premises Product Is Relevant and Proportional.

As Magistrate Judge Matthewman properly held, the compelled discovery is relevant and proportional.   Apple has been seeking basic discovery into Corellium's infringing product for months.   *See supra* at 4.   Corellium has resisted, repeatedly providing unilaterally edited materials and failing to provide other materials entirely.   Indeed, as of the date of this filing, Corellium continues to withhold more than 3,400 documents as "trade secrets" or on the putative basis of "client privacy."   Bina Decl. ¶ 8.   As Magistrate Judge Matthewman held, Corellium's "recalcitrant" conduct has made it impossible for Apple to obtain basic, relevant information about the core product at issue in this case.   ECF No. 249 at 4.

Critically, Corellium does not dispute those portions of Dr. Nieh's declaration demonstrating that Corellium withheld and altered key evidence regarding the functionality of its product.   Rather, Corellium repeats its longstanding and rejected arguments that Corellium has

unilaterally decided what Apple needs in discovery, and then "provide[d] everything necessary for Apple to understand and show a jury whether the Corellium Apple Product copies, displays, or makes modifications to iOS." ECF No. 255 at 11; *compare with* ECF No. 77 at 4 ("Corellium will produce those records that relate to the facilitation of study and research of iOS.") *and with* Ex. D at 49 (MR. LEVINE: "Everything related to iOS has been produced.").

Indeed, in its certified motion for reconsideration and supporting declarations, Corellium admits that it redacted portions of the source code based on its own narrow interpretation of prior Court orders. ECF No. 255 at 6, 8. And those redactions formed the basis for Magistrate Magistrate Judge Matthewman's omnibus order compelling more fulsome discovery into the Corellium Apple Product, including the delivery to Apple of an on-premises version. ECF No. 249 at 5 ("Corellium shall not edit or delete any code, and there shall not be any alterations of the native source code produced to Apple by Corellium."); *id. at* 6 ("[T]he Court is becoming increasingly concerned that Corellium is trying to obfuscate the discovery issues or possibly 'hide the ball' regarding the CAP. Corellium has improperly refused to make relevant and proportional discovery available to Apple under the guise of labelling certain items as 'non-iOS' functions or not relevant to the CAP at issue in this lawsuit. Corellium's interpretation of the CAP is far too narrow and restrictive and fails to fully comply with this Court's Orders and its discovery obligations.").

Corellium also now claims the cost to provide an on-premises version is prohibitive. ECF No. 255 at 3, 6, 17, 18, 19. As a threshold matter, Corellium's statements regarding costs and lost income do not match its own records. Corellium contends it costs ███████████ to make an on-premises version of the Corellium Apple Product, ECF No. 255. Yet it charges its customers only ██████ for materials. Ex. F at 94:11–12. And while Corellium asserts that it will lose ██████ in lost business if it lends a server to Apple, ████████████████████████████ ██████████████ *id.* at 94:2–23, and it has sold units for as little as ██████ Ex. A at 27–28. In any event, Corellium's contention that there is no way for it to produce a copy of its own product to Apple is unconvincing. Whether ████████████████, ████████████████████████████ ████████████████████████ *See, e.g., Pierre v. Intuitive Surgical, Inc.*, No. 18-60095-CIV, 2019 WL 4731934, at *3–6 (S.D. Fla. June 3, 2019) (granting motion to compel despite Defendant's claimed $70,000 production cost). Apple has incurred significant costs of its own in discovery in this matter—to say nothing of the expense incurred in forcing Corellium to

comply with its own discovery obligations.  Moreover, Courts commonly order parties to produce their products in intellectual property cases in the form provided to customers, and Apple of course would return any such product to Corellium afterwards, in compliance with the Protective Order. This is the product Corellium offers to its customers; there is no reason it cannot be provided, temporarily, to Apple.

### 2.    Requiring Corellium to Provide Information, Including Source Code, Regarding the Hypervisor, Is Relevant and Proportional.

Corellium's assertions regarding the hypervisor portion of its product are equally unavailing.  The production of documentation and source code related to the hypervisor has been hotly contested since January.  *See, e.g.*, ECF No. 77 at 3-5; Ex. C at 97–98, 126; Ex. D at 77; ECF No. 211 ¶ 3.  The Court resolved the dispute on March 20, finding "the hypervisor appears to be an integral part and parcel of the Corellium Apple Product [that] manage[s] virtual devices and is central to the CAP."  ECF No. 249 at 8.  Magistrate Judge Matthewman ordered Corellium to provide discovery to  "fully demonstrate the operation of the hypervisor as it is central to the issues in this case and determinative of whether a copyright or DMCA violation has occurred as alleged in the Complaint."  *Id.*

Corellium acknowledges that it has been fully heard on discovery issues surrounding the hypervisor.  ECF No. 237-1 (Olivier Declaration); ECF No. 255 at 4 (contending Corellium "never had the opportunity to address" issues "that did ***not*** relate to the hypervisor) (emphasis added). Nevertheless Corellium tries to re-litigate the hypervisor issue here by re-asserting the same points the Court already rejected.  ECF No. 255 at 13–17.  Indeed, Corellium's principal objection to the Court's March 20, 2020 Order is that ordering "Corellium to produce all of the hypervisor is overbroad."  *Id.* at 6.

The problem with Corellium's artificial attempts to separate its hypervisor from the infringing Corellium Apple Product for discovery purposes is that the two are inseparable. Corellium sells one product, the Corellium Apple Product, and that product unlawfully displays, copies, and modifies Apple's copyrighted operating system and graphical user interface elements using the hypervisor.  Indeed, Corellium's expert *admits* that ████████████████████ ████████████████████████—which in and of itself ████████████████████ ██████████ Apple's allegation that Corellium illegally copies the copyrighted iOS.  Olivier Decl., ECF No. 237-1 ¶¶ 4–6.  Corellium's argument is simply that, because ████████████████

███████████, Apple is not entitled to discovery about how it interacts with, and copies, iOS.  *Id.* ¶ 10 ("The Corellium hypervisor is operating system agnostic.").

Corellium's argument that the "functional and operational aspects" of the accused product are irrelevant is absurd.  ECF No. 255 at 13–14.  Many copyright and DMCA cases require the production and inspection of the source code of the allegedly infringing software. *See, e.g.*, *Autodesk, Inc. v. ZWCAD Software Co.*, No. 5:14-cv-01409, 2015 WL 2454003, at *2 (N.D. Cal. May 22, 2015) (ordering production of entire source code for copyright case in which "[t]he complaint includes allegations that implicate the source code as a whole"); *Nearstar, Inc. v. Waggoner*, No. 4:09-CV-00218, 2010 WL 11531229, at *2 (E.D. Tex. Mar. 15, 2010) (requiring production of source code for accused product in copyright case and noting that a protective order requiring an expert to "sign an agreement to be bound by the protective order and submit to the jurisdiction of this Court" provided "sufficient protections" for the trade secrets therein).

Corellium does not dispute, and indeed adopts, Dr. Nieh's general description of a hypervisor.  ECF No. 255 at 15.  Curiously, only when this general description is applied to Corellium's product does Corellium take issue with Dr. Nieh's description.  *Compare* Nieh Decl. ¶ 61, *with* Nieh Decl ¶ 17.  Magistrate Judge Matthewman saw through this and deemed Dr. Nieh credible (ECF No. 249); if this Court revisits the Omnibus Order, it should find the same. Corellium also suggests, based on its counsel's perceptions of Dr. Nieh's in-person reactions during inspection, that Dr. Nieh must have concluded that he did not need information about the hypervisor.  ECF No. 255-3.  This is not true.  Dr. Nieh's Declaration accurately sets forth what he needs, including the hypervisor, and the reasons for that need.  Nieh Decl. ¶ 64.  Magistrate Judge Matthewman, reviewing that analysis and all the evidence presented, decided that "the entire hypervisor is relevant and proportional and must be produced."  ECF No. 249 at 9.  If the Court revisits the Omnibus Order, it should find likewise for the same reason.

Corellium also argues that because this is "not a patent case," "no functional analysis of the hypervisor, which models *hardware* (not copyrightable software), needs to be done."  ECF No. 255 at 13.  That makes no sense.  The notion that hardware—on which copies of information can be stored—is categorically irrelevant to a copyright infringement or DMCA anti-trafficking claim is contrary to both logic and the law.  The seminal case *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011), is just one example of copyright and DMCA claims where the defendant's hardware was directly at issue.  Here, the product

accused of infringing Apple's copyrights, and of circumventing the technological protection measures that protect its copyrighted works, is the Corellium Apple Product—a product that includes the hypervisor.  See ECF No. 239 (Nieh Decl. ¶¶ 60–65).  Corellium's own expert admits that ██████████████████████████████████████████, *see* ECF No. 240 ¶ 4—that is, the virtual iPhones that use and display Apple's copyrighted operating system.  In addition, since Apple embeds security measures in the iPhone's hardware, the hypervisor is one of the many vehicles Corellium is likely using to circumvent the technological protection measures that protect Apple's copyrighted works.

Finally, Corellium's contention that the Protective Order does not provide adequate protection for confidential information exchanged in discovery strains credulity.  First, the protective order was agreed to by *both* parties and jointly submitted to the Court.  ECF No. 50.  If Corellium truly thought additional protections were needed, it would have asked to have them included.  Second, Corellium does not identify anywhere what additional protections it thinks are necessary—and that is because the Protective Order is more than sufficient.  As courts in this District regularly recognize, and as the Court already recognized here, protective orders of this sort adequately address concerns of the sort Corellium raises here.  ECF No. 249 at 9 (restricting production of the hypervisor to Apple's outside counsel and expert Dr. Nieh).  *See, e.g., Plouffe v. GEICO Gen. Ins. Co.*, No. 16-25145-Civ, 2017 WL 7796323, at *3, (S.D. Fla. Aug. 8, 2017) (rejecting argument that disclosure of trade secrets pursuant to a protective order would "severely injure [the] business and cause irreparable harm").  Corellium offers ***no basis whatsoever*** supporting its supposition that Apple's attorneys or expert will violate the Protective Order, and in any event, it has full abilities to seek enforcement thereof.

## V.    CONCLUSION

For the foregoing reasons, Apple respectfully requests that this Court deny Corellium's Motion for Reconsideration.

Dated: March 30, 2020

Respectfully Submitted,

_s/ Martin B. Goldberg_

Kathryn Ruemmler*
_kathryn.ruemmler@lw.com_
Sarang Vijay Damle*
_sy.damle@lw.com_
Elana Nightingale Dawson*
_elana.nightingaledawson@lw.com_
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200 / (202) 637-2201 Fax

Martin B. Goldberg
Florida Bar No. 0827029
_mgoldberg@lashgoldberg.com_
_rdiaz@lashgoldberg.com_
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL  33131
(305) 347-4040 / (305) 347-4050 Fax

Andrew M. Gass*
_andrew.gass@lw.com_
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 / (415) 395-8095 Fax

Jessica Stebbins Bina*
_jessica.stebbinsbina@lw.com_
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500 / (424) 653-5501 Fax

Gabriel S. Gross*
_gabe.gross@lw.com_
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 463-2628 / (650) 463-2600 Fax

*Admitted pro hac vice*

_Attorneys for Plaintiff_ APPLE INC.

21