**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO: 9:19-cv-81160-RS**

APPLE INC.,

Plaintiff,

v.

CORELLIUM, LLC,

Defendant.

_____/

**DEFENDANT CORELLIUM, LLC'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL RECONSIDERATION**

Defendant Corellium, LLC ("Corellium") respectfully submits this Reply in Support of its Expedited Certified Motion for Partial Reconsideration of the Court's Omnibus Order Providing Discovery Rulings After the March 16, 2020 Discovery Hearing [D.E. 255] ("Motion").

**I.     INTRODUCTION**

Long before this litigation began, Apple sought to better understand Corellium's technology, not because Apple found that it violated any intellectual property, but because it was *valuable to Apple*. Indeed, Corellium's hypervisor is one of its most valuable trade secrets. While Apple has consistently offered speculation as to why the hypervisor could be relevant to its claims, this speculation is completely unfounded.

Corellium's hypervisor software is a closely guarded trade secret. The disclosure of this software, especially together with Corellium's entire server architecture, would be damaging to Corellium. Corellium's customers rely on it for untainted security research products. Permitting Apple to take discovery of the hypervisor would unnecessarily and unfairly expose that trade secret

even though it *has no bearing on any claim in this case*. Handing this information over to Apple or its expert, is unduly burdensome. Corellium implores the Court to reconsider its decision to permit discovery into the hypervisor.

II.     **ARGUMENT**

      A.     **The Corellium Hypervisor Should Be Excluded from Production**

           1.     **The Corellium Hypervisor Is Unrelated to the Claims in This Case**

The core of the Court's definition of the Corellium Apple Product is "All products developed, offered for sale or sold by Corellium that create virtual versions of iOS-operated devices."[1] ECF No. 249 at 8. This is the correct definition of the product at issue here, and Corellium's hypervisor does not fall within this definition because it does not create any virtual versions of iOS-operated devices. Rather, Corellium's hypervisor provides virtual models for a range of mobile devices that can be operated by iOS, Android, *or* Linux operating systems (*i.e.* the models are not tied to any particular operating system). Where Apple has physical hardware like memory, storage, chips, and circuits, Corellium has written its own hypervisor code. And like physical hardware, these hardware models remain unchanged whether iOS, Android, or Linux is running on them; an iPhone model, for example, does not inherently need to run iOS. Like physical hardware, the models are not involved in loading, executing, installing, or managing the running operating system. On the contrary, the models simply take direction from the running operating system. Furthermore, the hypervisor does not initiate creation of the models or manage the models.

---

[1] Corellium's description of the "core" of the Court's definition of the Corellium Apple Product is not intended to disregard the subsequent sentences in the Court's definition recited in the Court's Order, which explicitly include the hypervisor. ECF 249 at 8-9. Corellium's description is only intended to reflect the fact that its Motion seeks partial reconsideration of the Court's Order, including certain of the subsequent sentences of the Court's definition.

Rather, creation, loading, installation, and management are all performed by a separate component of the Corellium product, the virtual machine manager, or "Dom0" (*dom-zero*). As such, it is the Dom0 code, not the hypervisor code, that can inform Apple or its expert as to whether a copyright or DMCA violation has occurred (*i.e.* whether the CAP copies, modifies, displays, or circumvents protection measures of iOS).

If there were an actual security measure that had to be circumvented by Corellium's hypervisor (the hardware layer), Apple would be able to point it out with specificity. Apple should be able to show line numbers in its own code where access is prevented depending on the configuration of the "hardware" that is running on. Apple has been unable to do so. Every alleged security measure that Apple has cited is addressed by code that has already been produced by Corellium, in particular the code for Dom0. Corellium should not, therefore, be required to produce the code for its hypervisor to permit Apple's expert to fish through its technology — technology that Apple unsuccessfully tried to purchase in the past.

Corellium's expert witness, Dr. James Olivier, reviewed the code for the hypervisor. He too concluded that it is effectively the equivalent of a hardware device.[2] Declaration of James Olivier, Ph.D. Regarding Corellium's Hypervisor, ECF No. 240 ("Olivier Decl.") at ¶ 4. He also found that Corellium's hypervisor does not contain an operating system like iOS, Android, or Linux, just as a new PC purchased from a retailer might not come with an operating system

---

[2] Apple critiques Corellium for agreeing with Dr. Nieh's general description of what a hypervisor is ("like the hardware in a physical machine") as inconsistent with Corellium's position "when this general description is applied to Corellium's product." ECF No. 260 at 19. This is misleading. Corellium agreed with Dr. Nieh's general description of what a hypervisor **is,** but disputes Dr. Nieh's unsupported characterization about the particular functions that Corellium's hypervisor **performs**. ECF No. 255 at 15. This is an entirely consistent position.

installed, and just as a VCR does not, until one loads it with a cassette, contain or play a movie. Olivier Decl. at ¶ 6.

Corellium's hypervisor is able to simulate a hardware device that can run Linux, Android, or iOS. Olivier Decl. at ¶¶ 4, 6. Even then, the hypervisor does not itself contain, load, manage, or implement any Apple software (*i.e.* the hypervisor is not a source of any alleged copyright infringement and therefore not relevant to Apple's claims). Olivier Decl. at ¶¶ 4, 8, 11. As Dr. Olivier has indicated in his sworn declaration, the code responsible for loading, installing, executing, and managing the iOS software and the virtual devices on which the iOS software runs are not part of the hypervisor, but instead comprise a different component of the Corellium Apple Product called the "virtual management machine," also referred to as the "Dom0". Olivier Decl. at ¶ 11; Declaration of Chris Wade ("Wade Decl.") at ¶ 10. In other words, in the context of the Corellium product, the Dom0 acts like the operating system, and the hypervisor effectively acts like hardware – and hardware is not a source of software copyright infringement.

[redacted]

███████████████████████████████████████

███████████████████████████████████████

██████

Thus, the Dom0 code, and not the hypervisor, necessarily addresses all allegations of copying, modifying, displaying, distributing, and bypassing protection measures of iOS. This is why, when Dr. Nieh requested the code for four key actions – creating a device, creating a snapshot, cloning a snapshot, and display – Corellium and Dr. Nieh discussed how these actions occurred and Corellium agreed that it would produce the applicable source code for Dom0, as explained Corellium's Motion and as both parties' experts generally acknowledge. ECF No. 255 at 16; Olivier Decl. at ¶ 11; Nieh Decl. at ¶¶ 39-40. Corellium has made available to Apple the applicable code that comprises Dom0, and Corellium does not dispute that Dom0 contains components that fall within the core of the Court's definition. ECF No. 255 at 16; Olivier Decl. at ¶ 11.

        **2.    Apple Mischaracterizes the Nature of Corellium's Hypervisor to Try to Justify a Fishing Expedition**

Apple argues that the hypervisor is "inseparable" from the Corellium Apple Product for purposes of discovery, because the entire product (which includes the hypervisor) infringes Apple's copyrighted software. *See* ECF No. 260 at 18. This is incorrect. If it were, the absurd outcome would follow where Apple could take discovery into every aspect of the "entire" Corellium Apple Product, down to the power cables that allow hardware to operate. Presumably Apple does not contend that such a scope of discovery is appropriate. The same reasoning applies to any portions of the Corellium Apple Product that do not create virtual versions of iOS-operated devices. As discussed above, the Corellium hypervisor does not perform this function; that

function is handled by the Dom0, and Corellium has produced all of the Dom0 code to Apple. Apple's argument, if followed, would allow impermissibly broad discovery into the hypervisor even if it were never actually used in connection with emulation of iOS devices.

In addition, Apple argues that the "hypervisor is one of many vehicles Corellium is likely using to circumvent technological protection measures that protect Apple's copyrighted works," but this is simply not correct. ECF No. 260 at 20. Corellium has already produced the code to Apple that performs the functions which Apple claims circumvent its security measures. Apple has not identified an alleged security measure that would have to be circumvented by the "hardware" virtualization accomplished by the hypervisor. If there exists an alleged security measure for which code has not yet been produced, Apple should be able to identify it readily and with specificity.

Apple has identified its alleged technological protection measures ("TPMs") and Corellium has responded by producing and identifying every mechanism by which those measures are addressed by the source code (though Corellium disagrees that any such TPMs are circumvented in contravention of the DMCA). Apple has not identified any alleged TPM, with any specificity whatsoever, that would be addressed in the "hardware" layer created by the hypervisor. Instead, Apple merely claims that its expert needs to evaluate "whether any technological protection measures are circumvented." ECF No. 260 at 7. But Apple is the master of its own iOS code. If Apple truly knows of security measures implemented in iOS that must be circumvented in the hardware (as virtualized by the hypervisor), it would identify those with specificity. Corellium would in turn be able to reasonably limit the production of its proprietary code to address those allegations. Apple should not be permitted to go on a fishing expedition through the entirety of Corellium's hypervisor codebase without identifying any alleged security measure(s).

Apple cites *Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931 (N.D. Cal. 2009), for the proposition that hardware is relevant and discoverable as to software copyright infringement and DMCA claims. *Psystar*, however, is readily distinguishable. Psystar sought to compete with Apple in selling computers. *Id.* at 934-35. Corellium does not. Psystar purchased the OSX that it used from Apple, subject to the EULA. *Id.* Corellium, however, permits a user to load the iOS software that Apple makes freely available, unencrypted, and without any agreement required to download it. Psystar modified the software using circumvention techniques. *Id.* at 934-35, 941. Corellium's hypervisor, as discussed above, does no such thing. Apple's reliance on *Psystar,* is thus misplaced, and is inapposite.

Apple hopes to dig through Corellium's hypervisor code and learn how its technology works in a misguided attempt to glean some semblance of a case for circumvention of a heretofore unidentified security measure. But in order to lead to the discovery of relevant evidence, Apple's source code discovery must be linked to some specific iOS security measure that Apple accuses the hypervisor of circumventing first. Apple should not be permitted to run freely through Corellium's entire technology, having made no showing that the review could lead to the discovery of relevant evidence.

### B. Apple Mischaracterizes Corellium's Opportunities to Present Testimony at the Discovery Hearings

Apple suggests, incorrectly, that Corellium did not take the opportunity at the hearings to present testimony from Messrs. Wade and Delgado regarding Corellium's technologies. The transcript of the March 16, 2020 hearing is clear that Corellium offered Mr. Wade's testimony to

7

the Court about Corellium's technology, near the outset of the hearing and later on.³ *See* Transcript of Mar. 16, 2020 at 5:1-4; 103:9-10 (ECF No. 277) ("I have Mr. Wade here today to provide the technical information if your Honor likes."). It also evident that the Court was unable to hear from Mr. Wade at the hearing not because Corellium failed to properly offer his testimony, but because the Court's remaining time for the hearing simply did not allow it (despite all parties' best efforts to be efficient). This unfortunate circumstance should not, however, preclude Corellium from providing the Court with evidence (certified by Mr. Wade in Corellium's Motion), that will benefit the Court in making a full and fair determination of the issues here.

C. **CONCLUSION**

For the foregoing reasons, Corellium respectfully requests that the Court grant its Motion and order that Corellium is not required to produce all the code comprising its hypervisor beyond that already made available to Apple, and (if the parties have not reached agreement before the Court issues its ruling) that Corellium is not required to produce an on-premises CAP to Apple.

Dated: April 4, 2020  Respectfully submitted,

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant CORELLIUM, LLC*
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 612-3459
Facsimile (561) 683-8977
Primary e-mail: justin.levine@csklegal.com
Secondary e-mail: lizza.constantine@csklegal.com

By: s/ Justin B. Levine
JONATHAN VINE

---

³ While Apple faults Corellium for not making a formal motion on the record or otherwise to allow Mr. Wade or Mr. Delgado to testify, Apple cites no authority to suggest such was required, especially in a telephonic hearing.

Florida Bar. No.: 10966
JUSTIN B. LEVINE
Florida Bar No.: 106463
LIZZA C. CONSTANTINE
Florida Bar No.: 1002945
MICHAEL A. BOEHRINGER
Florida Bar No.: 1018486

and

HECHT PARTNERS LLP
20 West 23rd St. Fifth Floor
New York, NY 10010
Tel: (212) 851-6821
David L. Hecht *pro hac vice*
Email: dhecht@hechtpartnersllp.com
Minyao Wang *pro hac vice*
Email: mwang@hechtpartnersllp.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2020 a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

<u>/S/ Justin B. Levine</u>

Justin B. Levine