UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-cv-81160-RS

APPLE INC.,

                Plaintiff,

v.

CORELLIUM, LLC,

                Defendant.

**PLAINTIFF APPLE INC.'S SUPPLEMENTAL BRIEF IN FURTHER
SUPPORT OF MOTION FOR PROTECTIVE ORDER BARRING
<u>DEPOSITION OF PLAINTIFF'S APEX EMPLOYEE</u>**

Plaintiff Apple Inc. ("Apple"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 26(c) and this Court's order (ECF No. 208), files this supplemental brief in further support of Apple's motion for the entry of a protective order preventing Defendant Corellium, LLC ("Corellium") from taking the deposition of Apple's Senior Vice President of Software Engineering, Craig Federighi.

## INTRODUCTION AND BACKGROUND

On February 18, 2020, Apple filed its Motion for Protective Order Barring Deposition of Plaintiff's Apex Employee and Incorporated Memorandum of Law (ECF No. 158, "Motion") to prevent Corellium from taking the deposition of Apple's Senior Vice President of Software Engineering, Craig Federighi. The Court deferred ruling on the Motion pending the depositions of various other fact witnesses. ECF No. 208.[1] Apple hereby renews its Motion and provides the further factual support below.

Mr. Federighi is a senior executive at Apple, responsible for the management of 5,800 Apple employees. ECF No. 158-1 ¶ 5. He has not been designated by Apple as a witness in this case. Initially, Apple objected to Mr. Federighi's deposition two grounds: (1) Mr. Federighi's senior role at Apple and corresponding limited, cumulative knowledge regarding the facts of this case, *see* ECF Nos. 158 at 3–4, 158-1 ¶¶ 8–13; and (2) that Corellium sought to depose Mr. Federighi prior to taking any other depositions and on topics where both Corellium and Apple identified numerous other Apple employees with relevant knowledge. ECF No. 158 at 4–5. Apple also expressed concern with Corellium's extremely aggressive approach to Mr. Federighi, including attempting to serve him personally with a subpoena *at his home* despite his clearly being a party witness, and despite being instructed to contact him only through counsel for Apple. *See id.* at 2, ECF No. 158-1 ¶ 14.

Corellium has now deposed an Apple 30(b)(6) witness,[2] five Apple employees in their individual capacity, including two Vice Presidents (both of whom report to Mr. Federighi), and a former Apple employee, and has scheduled the depositions of four other Apple employees, for a total of **ten** Apple employee depositions—the presumptive limit under Rule 30(a)(2)—on the same

---

[1] Pursuant to the Court's order, the parties met and conferred, and Apple set aside a date, April 17, 2020, where Mr. Federighi would sit should the Court order such deposition to take place.

[2] Apple designated different individuals for different topics, and three Apple fact witnesses were deposed in both a personal and corporate capacity thereunder.

1

topics they seek to depose Mr. Federighi. Despite Corellium's counsel continuing to obsess over Mr. Federighi, directing dozens of questions regarding him to each Apple deponent, those depositions have confirmed Mr. Federighi's limited role and lack of relevant unique knowledge. In particular, they have confirmed that Mr. Federighi interacted with Corellium personally on only two occasions; that he was not involved in correspondence with any Corellium employees prior to this action being filed; and that he has no unique personal knowledge regarding the facts of this case. The Court should deny Corellium's request to exceed the presumptive limit on fact depositions to take a cumulative and unnecessary deposition of Mr. Federighi.

## TESTIMONY BY OTHER APPLE WITNESSES

In its initial Motion, Apple demonstrated that Mr. Federighi was not involved in any correspondence with Corellium's personnel (other than an unsolicited *post-litigation* email sent by Mr. Wade, to which Mr. Federighi did not respond), and received very few documents, none unique, relating to Corellium.[3] Since that motion, Corellium has taken the depositions of six Apple employees (including one former employee), and is scheduled to take four more in the next ten days.[4] These witnesses have testified extensively about all topics about which Corellium could possibly ask Mr. Federighi, and—despite vigorous questioning by Corellium's counsel to try to demonstrate otherwise—confirm that Mr. Federighi lacks unique, relevant knowledge.

**Jon Andrews:** Mr. Andrews is Vice President, Core OS Software Engineering at Apple, and was deposed in an individual and 30(b)(6) capacity. He reports directly to Mr. Federighi. Mr. Andrews' corporate designation included all facts in Apple's complaint and Corellium's answer, as well as communications with Corellium and information regarding Corellium's technology. To prepare for his 30(b)(6) deposition, Mr. Andrews specifically met with Mr. Federighi to ensure that he had all knowledge that Mr. Federighi had regarding the facts in this matter. ████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████

---

[3] Corellium in opposition contended that Mr. Wade showed Mr. Federighi a unique presentation document in July 2018; however, Apple demonstrated that a near-identical document was also provided to Apple Vice President Jon Andrews. *Compare* ECF Nos. 175 at 6 and 175-3 *with* ECF Nos. 195 at 3 and 195-2, 195-3.

[4] Corellium has further noticed the depositions of Apple employees Jacques Vidrine, Akila Srinivasan, Lee Peterson, and Matthew Firlik.

2

Mr. Andrews confirmed Mr. Federighi's limited, oversight role in the Corellium acquisition negotiations. ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**Ivan Krstić:** Mr. Krstić is the Head of Security Engineering and Architecture at Apple,

3

and was deposed in both an individual and 30(b)(6) capacity.  Mr. Krstić described ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

**Steve Smith:**  Mr. Smith is a Senior Director in Apple's corporate development team, which is primarily involved in executing acquisitions on behalf of the company, and was deposed in his individual and 30(b)(6) capacity. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**Sebastien Marineau-Mes:**  Mr. Marineau-Mes's title at Apple is Vice President, Software.  Ex. N (Decl. of J. Stebbins Bina) ¶ 8(a).  Like Mr. Andrews, he reports directly to Mr. Federighi.  *Id.*  Mr. Marineau-Mes testified that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

4

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███

**Jason Shirk:** Mr. Shirk was an Engineering Program Manager responsible for the Apple Security Bounty and general outreach to the global security research community. *Id.* ¶ 5(a).[5] Mr. Shirk provided testimony regarding the Apple Security Bounty program, the subject of Corellium's counterclaims. *Id.* ¶ 5(b). He testified that ████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ████████████████████████████

**Chris Betz:** Mr. Betz formerly led security for Apple. With respect to Mr. Federighi, Mr. Betz testified ████████████████████████████████████ ████████████████████████

## ARGUMENT

Even absent Mr. Federighi's testimony, by the close of discovery in this case, Corellium will have taken the depositions of ten Apple fact witnesses—the presumptive limit under the Rules of Civil Procedure—and will have had full discovery on all possible facts relevant to Apple's claims, Corellium's defenses, and Corellium's counterclaims. Corellium has never claimed that Mr. Federighi possesses any unique knowledge actually relevant to those claims; they do not contend, for example, that he made any particular statements to Mr. Wade that require cross-examination, or that he learned unique facts about Corellium during the acquisition negotiations that were unknown to other Apple witnesses. They do not claim he has any role in adjudicating the bugs Corellium asserts it submitted to the Security Bounty Program. Nonetheless, they continue to demand his deposition on the basis that Mr. Federighi spent two hours, over eight years, with Mr. Wade, and because he had ultimate authority over what amount, if any, Apple could offer to acquire Corellium. Neither of these is a basis to require Mr. Federighi's deposition, and the Court should issue an order preventing it.

---

[5] Mr. Shirk was an employee of Apple at the time of his deposition, but left the company thereafter.

As set forth in Apple's opening brief, this Court should not permit Corellium to take the deposition of Mr. Federighi unless Corellium can establish that Mr. Federighi "has unique, non-repetitive, firsthand knowledge of the facts at issue," and that "less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Tillman v. Advanced Pub. Safety, Inc.*, No. 15-CV-81782, 2017 WL 679980, at *2 (S.D. Fla. Feb. 16, 2017); *see also Noveshen v. Bridgewater Assocs., LP*, No. 13-61535-CIV, 2016 WL 536579, at *1 (S.D. Fla. Feb. 3, 2016). Corellium cannot possibly meet this burden. In addition to the ten fact depositions already taken or scheduled on every conceivable topic, Apple has provided Corellium with approximately 45,000 pages of documents, answered 18 interrogatories, and 250 requests for admission. And that discovery—as detailed above—has confirmed that Mr. Federighi possesses no unique, non-cumulative, firsthand knowledge of the facts at issue in this case.

### A. Mr. Federighi Has No Unique Knowledge of Relevant Facts.

Corellium cannot establish that Mr. Federighi possesses unique knowledge regarding the relevant facts. Corellium has now taken the deposition of six separate Apple employees (five current and one former), all of whom *Corellium* identified as having knowledge of the exact same topics as Mr. Federighi, and is preparing to take the depositions of four others. Despite Corellium's repeated attempts to probe Apple's witnesses regarding Mr. Federighi's role, involvement, knowledge, and communications (totaling no fewer than approximately 70 mentions over the course of the various depositions), all of Apple's witnesses confirm that Mr. Federighi's knowledge is limited and secondhand.

The testimony given to date confirms that Corellium cannot demonstrate—as it must—that no other witness but Mr. Federighi can "adequately testify to the facts at issue," *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015).[6] To the contrary, it demonstrates Mr. Federighi's *lack* of knowledge of the relevant facts. Each of the witnesses who has already been deposed was significantly and more directly involved with the subject matter of the topics identified by Corellium, and has indicated that he either did not discuss the relevant

---

[6] Notably, the facts Corellium contends will be established by Mr. Federighi's deposition—namely, that Apple had knowledge of Corellium's technology in 2018—have already been admitted by Apple. *See* ECF No. 100-3 at 4–6, 8–9, 26–27 (Apple's responses to Request for Admission Nos. 1–3, 9, 40–41). Such facts were also admitted during the depositions of the Apple witnesses identified herein.

6

facts with Mr. Federighi or possessed knowledge co-extensive with Mr. Federighi's regarding the relevant facts. *See, e.g.,* Ex. A (Andrews Tr.) at 59:15–60:12; 121:6–16; 112:17–115:18; Ex. C (Krstić Tr.) 105:17–20; 16:5–7; 197:14–22; 198:9–12; Ex. D (Smith Tr.) at 47:15–17; 48:5–20; 103:9–19; 51:19–21; Ex. F (Betz Tr.) at 76:14–25; Ex. N (Decl. of J. Stebbins Bina) ¶¶ 5, 8.

As Mr. Federighi explains in his signed declaration, his knowledge about the matters that are actually at issue in this lawsuit (namely, Corellium's infringing product and Corellium's alleged submission of bugs via the Apple Security Bounty Program) is managerial and based entirely on either meetings at which other Apple employees were also present or information provided to him by other Apple employees, many of whom have already been deposed. ECF No. 158-1 ¶¶ 8–11. Corellium has **already taken** the depositions of Mr. Federighi's senior direct reports who led all interactions with Corellium. Mr. Federighi's managerial level of knowledge does not establish the unique and direct knowledge that must be present for an apex deposition to occur. *See Little League Baseball, Inc. v. Kaplan*, No. 08-60554-CIV, 2009 WL 426277, at *3 (S.D. Fla. Feb. 20, 2009). Further, as one of Apple's 30(b)(6) witnesses in this action, Mr. Andrews met with Mr. Federighi in preparation for his testimony, thus obviating any purported need to depose Mr. Federighi in relation to the noticed topics on which Apple designated Mr. Andrews to testify.

The only possible unique knowledge which Mr. Federighi may possess relates to a one-hour individual meeting in July 2018, late in the acquisition negotiations between the parties, and months after Corellium had demonstrated its technology to Apple and Apple had conducted a technical review. However, as Mr. Federighi explains, that short meeting was focused on Mr. Wade's and Mr. Federighi's "personal backgrounds and interests, Apple's culture, and how Mr. Wade might contribute to Apple as a potential hire," ECF No. 158-1 ¶ 10, none of which has any bearing on the parties' claims or defenses in this action. Corellium does not contend that Mr. Federighi learned anything relevant to this action at that meeting, nor that Mr. Federighi made any statements at the meeting bearing on any of Apple's claims or Corellium's defenses. *See* ECF No. 175-1 ¶¶ 12–14.

In a meet and confer leading up to this supplemental briefing, Corellium's counsel contended that evidence now showed that Mr. Federighi was "involved in technical diligence" of the Corellium Apple Product. That statement is not supported by the record, which indisputably shows that Mr. Federighi attended only a single "demo" of Corellium's product, and not any of

7

the lengthy technical diligence sessions that took place in March, June, and July 2018. *See, e.g.,* Ex. C at 156:25–157:7; Exs. G (APL-CORELLIUM_00000080), H (APL-CORELLIUM_00000081), and I (APL-CORELLIUM_00000368). Corellium's basis for asserting otherwise is the ▮▮▮▮▮▮—but that, itself, demonstrates Mr. Federighi's lack of firsthand knowledge and Mr. Andrews' superior knowledge.

Corellium also contended during the meet and confer that Mr. Wade will testify that he discussed Apple's End-User License Agreement ("EULA") with Mr. Federighi, and that Mr. Federighi is the *only* person with whom Mr. Wade discussed the EULA. Counsel was unable to describe exactly what Mr. Wade was going to testify was discussed. Mr. Wade did not include any such claim in his initial declaration, *see generally* ECF No. 175-1. Despite mentioning a number of specifics surrounding Mr. Wade's purported interactions with Mr. Federighi, *see, e.g.*, *id.* ¶ 14 (describing the topics addressed in the July 24, 2018 meeting between Mr. Wade and Mr. Federighi), there is no mention of any discussion pertaining to the EULA between Mr. Wade and Mr. Federighi, even though such a critically important fact surely would have been included had it actually transpired. *See generally id.*

Furthermore, even if Mr. Federighi was present at a conversation where licensing was discussed, it is overwhelmingly likely that testimony regarding such a conversation would be cumulative as well. Mr. Krstić and Mr. Marineau-Mes both testified that they ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. C (Krstic Tr.) at 218:17–219:13; Ex. N (Bina Decl.) ¶ 8(g). Corellium apparently now disputes these conversations took place, even though some of them were contemporaneously documented. Ex. J (APL-CORELLIUM 00000251). With respect to Mr. Federighi, there is no evidence that Mr. Federighi ever discussed licensing with Corellium, during the 2018 negotiations or otherwise. There is one document that suggests that Mr. Federighi may have been present at a meeting with Mr. Marineau-Mes in 2014 where Mr. Marineau-Mes relayed that information to Mr. Wade in the context of the Virtual negotiations, *see* Ex. K (APL-CORELLIUM 0044283), but Mr. Marineau-Mes testified

8

that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, Ex. N ¶ 8(h), and Mr. Federighi has already stated in a sworn declaration that he does not recall his 2014 meeting with Mr. Wade, ECF No. 158-1 ¶ 11. In any event, even if Mr. Federighi had attended the 2014 meeting, his testimony would be cumulative of Mr. Marineau-Mes's.

More fundamentally, any assertion that Corellium relied on statements by Mr. Federighi regarding the EULA is foreclosed by Corellium's verified discovery responses as well as the deposition of its corporate representative, CEO Amanda Gorton. Ms. Gorton, for instance, was asked to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Corellium also contended, in verified responses, that it was unaware of any of Apple's copyrights until the filing of this action, Ex. M (Corellium's Fourth Amended Answers to Apple's First Set of Interrogatories) at 6, and failed to mention any purported discussion between Mr. Wade and Mr. Federighi in its verified answer to Interrogatories No. 6, in which it was asked to describe all licenses or authorizations granted by Apple to Corellium, or No. 18, in which it described "all actual and legal bases" for each of its affirmative defenses, *id.* at 4–5, 7–17. Furthermore, Mr. Andrews' prep notes for Mr. Federighi's 2018 meeting with Mr. Wade noted, as background, the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Thus, had Mr. Federighi discussed the EULA with Mr. Wade (and ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ it is highly likely that his conversation would have been no different than the conversations repeatedly had by Messrs. Krstić and Marineau-Mes. There is thus no unique testimony that is likely to be obtained from Mr. Federighi.

None of Corellium's putative bases for taking Mr. Federighi's deposition comes remotely close to demonstrating that he possesses unique, relevant knowledge that cannot be obtained from the ten other Apple employee depositions Corellium is taking in this case.

   **B. The Court Should Not Permit Corellium To Exceed Rule 30's Limits.**

Rule 30 sets forth the presumptive limit that a party is only entitled to ten depositions absent leave of the court. Fed. R. Civ. P. 30(a)(2)(A); *see also Royal Bahamian Ass'n Inc. v. QBE Ins.*

9

*Corp.*, No. 10-21511-CIV, 2010 WL 3003914, at *1 (S.D. Fla. July 29, 2010). Corellium has already taken or is scheduled to take the depositions of ten fact witnesses—nine individuals and the 30(b)(6) witness—in this matter. *Belfor USA Grp., Inc. v. Bray & Gillespie, LLC*, No. 6:05-CV-1624, 2007 WL 9723121, at *2 (M.D. Fla. Apr. 23, 2007) ("A deposition pursuant to Rule 30(b)(6) is considered a single deposition for purposes of the ten deposition numerical limit."); *see also Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2015 WL 2090401, at *3 n.2 (S.D. Fla. May 5, 2015).

Corellium has thus already reached the numerical limit allowed under Rule 30 without seeking leave from the court. *Gavins v. Rezaie*, No. 16-24845-CIV, 2017 WL 3034621, at *1 (S.D. Fla. July 18, 2017).[7] The Court should not permit Corellium to exceed this limit in order to take the cumulative, unnecessary deposition of Apple's apex employee Craig Federighi.

## CONCLUSION

Apple respectfully requests that this Court grant Apple's Motion to prevent Corellium from taking the deposition of Mr. Federighi and grant such other relief it deems just and proper. Should the Court believe any discovery of Mr. Federighi to be appropriate, it should limit such discovery to a short list of written interrogatories, not an unnecessary and burdensome oral deposition.[8]

---

[7] To exceed this limit, a party must "justify the necessity of each deposition *previously taken* without leave of the court." *AIG Centennial Ins. Co. v. O'Neill*, No. 09-60551-CIV, 2010 WL 4116555, at *16 (S.D. Fla. Oct. 18, 2010). Corellium cannot make that showing as its depositions to date have been cumulative and, in many instances, irrelevant. Indeed, Corellium has noticed the deposition of Jacques Vidrine, despite not including Mr. Vidrine on its initial disclosures or trial witness list. Similarly, Corellium intends to depose both Jason Shirk and Akila Srinivasan on the same topics, and Corellium has deposed multiple witnesses, including Steve Smith and Sebastien Marineau-Mes, on acquisition-related topics that are unrelated to the claims or defenses in this case.

[8] Apple made this proposal to Corellium, but Corellium refused. Corellium offered only to reduce the deposition time from 7 hours to 5 hours.

Dated: April 10, 2020

Kathryn Ruemmler*
*kathryn.ruemmler@lw.com*
Sarang Vijay Damle*
*sy.damle@lw.com*
Elana Nightingale Dawson*
*elana.nightingaledawson@lw.com*
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200 / (202) 637-2201 Fax

Andrew M. Gass*
*andrew.gass@lw.com*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 / (415) 395-8095 Fax

Jessica Stebbins Bina*
*jessica.stebbinsbina@lw.com*
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500 / (424) 653-5501 Fax

Gabriel S. Gross*
*gabe.gross@lw.com*
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 463-2628 / (650) 463-2600 Fax

*Admitted pro hac vice

Respectfully Submitted,

*/s/ Martin B. Goldberg*

Martin B. Goldberg
Florida Bar No. 0827029
*mgoldberg@lashgoldberg.com*
*rdiaz@lashgoldberg.com*
Emily L. Pincow
Florida Bar No. 1010370
*epincow@lashgoldberg.com*
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL  33131
(305) 347-4040 / (305) 347-4050 Fax

*Attorneys for Plaintiff* APPLE INC.

11