# EXHIBIT A

1

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                      WEST PALM BEACH DIVISION
                    CASE NO. 19-81160-CIVIL-SMITH


APPLE, INC.,                            West Palm Beach, Florida

              Plaintiff,                February 12, 2020
                                             -and-
        vs.                             February 13, 2020

CORELLIUM, LLC,

              Defendant.                Pages 1 to 368
_____

                           MOTION HEARING
             BEFORE THE HONORABLE WILLIAM MATTHEWMAN,
                 UNITED STATES MAGISTRATE JUDGE
          (TRANSCRIBED FROM THE DIGITAL AUDIO RECORDING)

APPEARANCES:


FOR THE PLAINTIFF:       JESSICA STEBBINS BINA, ESQ.
                         LATHAM & WATKINS, LLP
                         10250 Constellation Boulevard
                         Suite 1100
                         Los Angeles, California 90067


                         ELANA NIGHTINGALE DAWSON, ESQ.
                         LATHAM & WATKINS, LLP
                         555 Eleventh Street, Northwest
                         Suite 100
                         Washington, DC 20004


                         EMILY PINCOW, ESQ.
                         LASH & GOLDBERG, LLP
                         100 Southeast Second Street
                         Suite 1200
                         Miami, Florida 33131
```

```
 1              MS. CONSTANTINE:  I can answer that, your Honor:
 2              During that due diligence portion of Corellium's
 3   potential acquisition by Apple, Corellium provided all of its
 4   technology to Apple.
 5              We just want to make sure that none of that technology
 6   has been -- it's being utilized by Apple.  And that's why the
 7   interrogatory was framed this way.
 8              THE COURT:  All right.  Let me hear from Ms. Bina.
 9              MS. STEBBINS BINA:  So, your Honor, that last point is
10   the first I've heard, but also way beyond the scope of this
11   case.
12              They don't have a claim for infringement of their
13   technology.  And the fact that they showed a demo to Apple
14   doesn't somehow open the field into Apple's own internal
15   development of hypervisor emulation simulation virtualization.
16   If they want to ask a question, "Are you using any of
17   Corellium's technology," we could answer that question.  The
18   answer is no.
19              THE COURT:  Hypervisor is Corellium's?
20              MS. STEBBINS BINA:  Hypervisor is Corellium's.
21              And, your Honor, in our complaint, we name I think two
22   products that we believe compete with Corellium.  But not
23   because they're hypervisors; because they're security product
24   research tools that Apple offers to the public.
25              And Corellium didn't ask us an interrogatory about
```

1    those products.  That probably would be relevant.
2           Instead, they asked us about internal development of
3    completely different products.
4           So we just don't think that's relevant.
5           THE COURT:  All right.  I'll tell you what -- here's
6    what I'm going to do:  I'm going to deny the motion to compel
7    on 12.  However, if Corellium wishes to amend its interrogatory
8    request to have Apple state whether they are using
9    hypervisor --
10          MS. STEBBINS BINA:  Corellium's hypervisor, your Honor.
11          THE COURT:  Right.  Corellium's hypervisor, whether
12   they are using that software, you can certainly do that.  In
13   other words, if they are using that software, then that may be
14   something that might be relevant.
15          But I don't think that -- this question almost
16   presupposes that they are using Corellium's hypervisor, because
17   it says:  Identify and describe Apple's internal development of
18   hypervisor.
19          MR. LEVINE:  Well, your Honor, I mean, this entire case
20   is based upon copyright infringement.  It's the use of an
21   identical product.  And so if they're conceding that they're
22   not using anything like it, then why are we here?
23          THE COURT:  Not anything like it; they're conceding
24   that they're not using Apple's hypervisor -- I mean,
25   Corellium's hypervisor.

```
 1   that virtualization is not a competing product?
 2            MS. STEBBINS BINA:  Right, your Honor.  Exactly.
 3            What is alleged to have been infringed here is iOS,
 4   iTunes and GUI elements.  What is alleged to be a competing
 5   product are not virtualization products.
 6            They're trying to go back and say:  Look into Apple's
 7   own internal development and see essentially, is it doing
 8   something similar internally to what they think Corellium is
 9   doing?
10            And that's just totally outside the scope of
11   appropriate discovery here.  You know, we cited authority in
12   our opposition that says there's nothing that says, you know,
13   how we copyrighted work -- the research, development and
14   testing of a copyrighted work is relevant.
15            THE COURT:  So what do you assert the competing
16   products are?
17            MS. STEBBINS BINA:  Their security products.
18            So there are other products that people can use to help
19   identify bugs in Apple or fix flaws in iOS.  But they don't --
20   so the way virtualization works is it puts on a computer what
21   would be on a phone and allows you to look at the code.
22            The competing products don't work that way.  They do
23   something different.  And I apologize.  I don't have the exact
24   details of what they do.  But we're happy to provide discovery
25   on those products and how they work.
```

1             They haven't sought that.  And they're not seeking that
2   through this RFP.
3             THE COURT:  All right.  Ms. Constantine --
4             MS. CONSTANTINE:  Your Honor --
5             THE COURT:  -- about those products that they're
6   asserting are the competing products, have you sought discovery
7   on those?
8             MS. CONSTANTINE:  We believe we have with this request.
9   They were making the claim that the competing product was a
10  virtualization.
11            THE COURT:  But that's not what they're saying.
12            MS. CONSTANTINE:  Correct, your Honor.
13            THE COURT:  What they're saying is that something --
14  they're security products.
15            MS. CONSTANTINE:  They're saying now -- they're
16  changing their previous statement, saying that our -- that the
17  Corellium product does not necessarily compete and that they
18  have other products that do something different.  We need to
19  know how those products work to be able to show that there's a
20  transformative nature to our product.
21            In the past, they have made statements that they have
22  virtualizations or other types of similar products that
23  Corellium provides and that we're competing in the same
24  markets.  How can we prove that we are competing in the same
25  markets and providing the same and similar products if we are

1  not even able to see that these products have the same
2  technology or have the same value or go to the same -- the same
3  people?
4          THE COURT:  It seems like we're talking apples and
5  oranges.  You're talking virtualization and they're talking
6  security products.  Where is it that they said that
7  virtualization was a competing product?
8          MS. CONSTANTINE:  Your Honor, they made the statement.
9          THE COURT:  Where?
10         MS. CONSTANTINE:  I'm not sure where.  It was in --
11         THE COURT:  Is it in their complaint?
12         MS. CONSTANTINE:  It was --
13         MR. LEVINE:  It's inherently in copyright.  If it's not
14 competing, then this case --
15         THE COURT:  Well, let me just -- there's enough
16 double-teaming going on.
17         MR. LEVINE:  I'm sorry, your Honor.
18         THE COURT:  So just hold on a second.
19         Where -- do they make it in their complaint?  I mean,
20 where are they -- you're saying that Apple says that
21 virtualization is the competing product, and therefore you have
22 to get discovery into all their virtualization.
23         Then I'm hearing from Apple that they're not saying
24 that virtualization is a competing product, that it's security
25 products that are competing products.

1          Do I have that right so far from Apple?
2          MS. STEBBINS BINA: Yes, your Honor. And they're
3   actually named in our complaint, what we believe is
4   competitive.
5          THE COURT: All right. So if they're saying -- they're
6   on the record and they haven't named it in the complaint that
7   the virtualization product is a competing product, why do we
8   need discovery on it as a competing product? They're saying
9   it's not, so they're not going to be able to argue at summary
10  judgment or at trial that it is. So why have discovery on it?
11  I mean, haven't you gotten something by them saying that that
12  is not the competing product?
13         MS. CONSTANTINE: This is actually the first time I get
14  to hear that virtualization is not a competing product, your
15  Honor.
16         However, if they don't have anything that competes
17  virtualization-related, then the answer to this response should
18  have been "none," not a list of objections and then -- well, it
19  says "Apple will not produce." But if there's no documents
20  relating to virtualization, which they have claimed now that
21  they don't have, then the response should be "none."
22         THE COURT: I think that's what they said. They didn't
23  say they don't have any documents relating to virtualization,
24  because I'm sure Apple in-house does virtualization. It would
25  seem to me that they would.

1           But what they're saying is that's not the competing
2    product.  The competing products are alleged in their
3    complaint.
4           If your request for production went to the competing
5    products they allege in their complaint, I think they have to
6    produce that.
7           But if they're saying here on the record that
8    virtualization is not the competing product, why would we want
9    discovery on it?  It seems like you've already gotten them to
10   state that is not the competing product.  So why do you need to
11   get discovery to prove something that's not a competing
12   product?  I'm having a real hard time with this.
13           MS. CONSTANTINE:  I understand, your Honor.
14           In the complaint, it wasn't clear what they were
15   claiming was the competing product.
16           Now they have made that clear.  They have clarified.
17           THE COURT:  Okay.
18           MS. CONSTANTINE:  So for --
19           MR. LEVINE:  Just so it's clear on the record, your
20   Honor, we'll back away from this.
21           THE COURT:  All right.  I'm going to deny the motion to
22   compel on that interrogatory and just -- I'll just note on the
23   record that -- what the statement just said.
24           MS. STEBBINS BINA:  And, your Honor, I think that
25   covers 20 to 23 and 87 to 92.

```
 1   soon as we get them all done.
 2           And then just keep in mind we need to be back here --
 3   we need to have all this production done by the 24th and then
 4   we'll be back here on the 27th at 10:00 a.m.  All right?
 5           MR. LEVINE:  Thank you, your Honor.
 6           MS. STEBBINS BINA:  Your Honor, thank you.
 7           THE COURT:  Have a good day.
 8           MS. STEBBINS BINA:  Thank you.
 9           THE COURT:  Court's in recess.
10           (Proceedings concluded.)
11
12
13
                         C E R T I F I C A T E
14
15         I hereby certify that the foregoing is an
16   accurate transcription of the proceedings in the
17   above-entitled matter to the best of my ability.
18
19
     _____           /s/Lisa Edwards
20      DATE                LISA EDWARDS, RDR, CRR
                            (305) 439-7168
21                          Reporterlisaedwards@gmail.com
22
23
24
25
```