UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:19-cv-81160-RS

APPLE INC.,

    Plaintiff,

v.

CORELLIUM, LLC,
    Defendant.

_____/

**DEFENDANT CORELLIUM, LLC'S *DAUBERT* MOTION TO PRECLUDE CERTAIN TESTIMONY BY DR. MICHAEL SIEGEL AND INCORPORATED MEMORANDUM OF LAW**

Defendant Corellium, LLC ("Corellium"), pursuant to Federal Rules of Civil Procedure 26 and 37 and Local Rules 7.1 and 26 respectfully moves this Court for an order precluding certain testimony by Dr. Michael Siegel.

## I. INTRODUCTION

Apple's expert witness Michael Siegel has submitted several reports in this litigation, each of which focuses on the concept of "good faith security research." While "good faith security research" falls within a regulatory exemption (established by the Library of Congress) to the Digital Millennium Copyright Act, that exemption is not relevant to Apple's claims in this litigation. The relevant exemption is created by statute, 17 U.S.C. § 1201(j), and Dr. Siegel has simply not addressed the relevant exemption. Moreover, Dr. Siegel has adopted a definition of "good faith security research" that is not found in either the applicable statutory exemption or even the inapplicable regulatory exemption. His testimony, therefore, fails to address a relevant issue in this litigation. It would not, therefore, be helpful to the finder of fact, and would risk jury confusion if admitted. Lastly, Dr. Siegel's Second Supplemental Report was submitted after the close of expert discovery, but relies almost entirely on information that was readily available to

him as of at least his rebuttal report, if not sooner. For these reasons, the Court should preclude Dr. Siegel from offering testimony at trial on the issue of "good faith security research" as it pertains to Corellium's defenses in this matter.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony, and allows that an expert witness may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. *See* Fed. R. Evid. 702; *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*).

Rule 702 asks that courts play a "gatekeeping role" when considering the admissibility of scientific and technical evidence. *See Frazier*, 387 F.3d at 1260 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 n.7, 597 (1993)). When assessing the admissibility of expert testimony, courts must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.
>
> *See Brown v. NCL (Bahamas) Ltd.*, 190 F. Supp. 3d 1136, 1141 (S.D. Fla. 2016) (citing

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The proponent of the expert opinion has the "burden of establishing qualification, reliability, and helpfulness". *See Frazier*, 387 F.3d at 1260.

## III. ARGUMENT

As an initial matter, Dr. Siegel's reports were solely directed to the issue of good-faith security research as it pertains to Apple's claims pursuant to 17 U.S.C. §§ 1201(a)(2) and 1201(b) of the Digital Millennium Copyright Act ("DMCA"). Nowhere in his multiple reports does Dr. Siegel suggest that he is speaking to any other issue in this litigation, such as a consideration under fair-use (in fact the word "fair" does not even appear in Dr. Siegel's reports, *See* Declaration of Conor B. McDonough ("McDonough Decl.") ¶ 4). Dr. Siegel's opinions are, instead, limited to what he considers "good-faith security research" as it pertains to Corellium's defenses to Apple's claims pursuant to the DMCA. *See* McDonough Decl., Ex. A at ¶¶ 16-17; *see also id.* Ex. B at 62:16-63:2. As discussed further below, Dr. Siegel's opinions still fail to address an applicable exemption in this case. They are, therefore, irrelevant and unhelpful to the finder of fact, and ultimately would risk jury confusion if admitted.

**A.     Dr. Siegel's Opinion Addresses An Inapplicable Exemption to the DMCA**

Apple's First Amended Complaint raises in Count IV claims pursuant to 17 U.S.C. §§ 1201(a)(2) and 1201(b) of the Digital Millennium Copyright Act ("DMCA"). These subsections proscribe the distribution of tools that circumvent technological measures that control access to copyrighted works (§ 1201(a)(2)) or protects rights of a copyright owner (§ 1201(b)). The DMCA, however, provides for certain exemptions to liability under Section 1201(a)(2), in particular Section 1201(j) which addresses "Security Testing".

In addition to this statutory exemption, the Library of Congress has established, pursuant to the statutory authority conferred by 17 U.S.C. §§ 1201(a)(1)(C) and (D), regulatory exemptions to liability under Section 1201(a)(1) for, among other things, (a) computer programs that allow connections to wireless networks, (b) computer programs that allow for interoperability of programs running on mobile devices, and (c) for security research. *See* 37 C.F.R. §§ 201.40(b)(5),

(6), and (11). The regulatory defense for security research, however, does not apply to Apple's claims pursuant to Sections 1201(a)(2) and 1201(b). *See* 37 C.F.R. §§ 201.40(b) (limiting application of regulatory exemptions to Section 1201(a)(1)(A) of the DMCA). Nonetheless, Dr. Siegel confirmed at his deposition that he was asked to consider the regulatory exemption for "good faith security research" found at 37 C.F.R. §§ 201.40(b)(11). McDonough Decl. Ex. B at 62:16-63:2. He never testified that he had formed an opinion on the applicable statutory exemption for "security testing" set forth at 17 U.S.C. § 1201(j) (and the statutory exemption only provides a definition for "security testing," it does not define the term "good faith security research").

Additional evidence that shows Dr. Siegel was opining on the inapplicable regulatory exemption is seen when comparing the definition of "good faith security research" that Dr. Siegel sets forth at paragraph 22a of his Opening Report to the language in the regulatory exemption. McDonough Decl. Ex. A at ¶ 22. In the table below, the left cell contains the language defining "good faith security research" from 37 C.F.R. §§ 201.40(b)(11), and the right cell contains the definition Dr. Siegel provides in his Opening Report (language in bold is virtually identical to the regulatory definition). It is facially evident from this comparison that Dr. Siegel is attempting to address the (inapplicable) regulatory definition, even while appending his own language to the definition (italicized language).[1]

| Regulatory Definition of "Good-Faith Security Research" | Dr. Siegel's Definition of "Good Faith Security Research" |
|---|---|
| For purposes of this paragraph (b)(11), "good-faith security research" means accessing a computer program solely for purposes of good-faith testing, investigation, and/or correction of a security flaw or vulnerability, where such activity is carried out in an environment designed to avoid any harm to individuals or | It is my opinion that, for security research to be considered "**good-faith security research**," it must be done **solely for** the **purpose of testing, investigating, and/or correcting a security flaw or vulnerability**; it must be **carried out in an environment designed to avoid any harm to individuals or the public**; |

---

[1] Dr. Siegel's personal definition also omits the language from the regulatory definition "the activity is used primarily to promote the security or safety of the class of devices or machines on which the computer program operates, or those who use such devices or machines".

4

| | |
|---|---|
| the public, and where the information derived from the activity is used primarily to promote the security or safety of the class of devices or machines on which the computer program operates, or those who use such devices or machines, and is not used or maintained in a manner that facilitates copyright infringement. | the **information derived from the** research must not be **used or maintained in a manner that facilitates** illegal activity; *and finally, and most critically, the information derived from the research must be properly and responsibly disclosed to the vendor of the product that contains the software flaw or vulnerability*. |

This comparison and Dr. Siegel's own testimony confirm that his opinions do not address an applicable exemption to Apple's claims under 17 U.S.C. §§ 1201(a)(2) and 1201(b) of the DMCA. It follows that his testimony on this topic would, by definition, not "assist[] the trier of fact." *Brown v. NCL (Bahamas) Ltd.*, 190 F. Supp. 3d 1136, 1141 (S.D. Fla. 2016). This is because Dr. Siegel's opinion regarding good faith security research is directed to an inapplicable exemption, not at "a fact in issue." Fed. R. Evid. 702. The Court should, therefore, preclude his testimony on whether Corellium's product is used for good-faith security research. And as discussed below, Dr. Siegel's imposition of his own definition of "good faith security research" that is not found in either the statutory or regulatory exemptions only further undermines the relevance and admissibility of his opinion.

**B.    Dr. Siegel's Opinion Regarding "Good Faith Security Research" Uses a Definition Not Found in the Applicable Exemption**

As mentioned above, Section 1201(j) establishes the applicable exemption to Apple's DMCA claim pursuant to Section 1201(a)(2). That exemption provides that

> Notwithstanding the provisions of subsection (a)(2), it is not a violation of that subsection for a person to develop, produce, distribute or employ technological means for the sole purpose of performing the acts of security testing described in subsection (2), provided such technological means does not otherwise violate section (a)(2).

17 U.S.C. § 1201(j)(4). Factors to be considered in determining whether the security testing at issue falls within the exemption include:

> (A) whether the information derived from the security testing was used solely to promote the security of the owner or operator of such computer, computer system

5

> or computer network, or shared directly with the developer of such computer, computer system, or computer network; and
>
> (B) whether the information derived from the security testing was used or maintained in a manner that does not facilitate infringement under this title or a violation of applicable law other than this section, including a violation of privacy or breach of security.

17 U.S.C. § 1201(j)(3). The statute simply does not (contrary to Dr. Siegel's view) require that information derived from the security testing *must* be shared with the "developer" of the relevant computer system (such as Apple), for the exemption to apply. Instead, such sharing is merely one possible factor. By the express terms of the statute, security testing is eligible for the exemption when it simply promotes the security of the "owner or operator of such computer, computer system or computer network" (such as a Corellium customer), even absent disclosure to a developer (such as Apple).

Even though the applicable statutory exemption does not require that a security researcher share information with a developer of the computer system such as Apple, Dr. Siegel nonetheless adopts a definition of good-faith security research that unequivocally mandates such sharing. McDonough Decl. Ex. B at ¶ 22. He does this despite conceding that such a definition is merely his own. McDonough Decl. Ex. B at 74:20-75:6.

This imposition of an *ad hoc* and wholly personal definition of "good faith security research" is fatal to the relevance and admissibility of Dr. Siegel's opinions, because the DMCA claims and applicable defenses at issue are explicitly established by specific statutory language. Only testimony that is grounded in this specific statutory language will be helpful to the jury. But Dr. Siegel's opinions regarding good-faith security research are disconnected from the DMCA claims and applicable defenses in this case. By definition, they are unhelpful to the trier of fact. Further, it would be confusing and thus harmful to jury deliberations to allow Dr. Siegel to offer his opinion on "good faith security research" that imposes requirements not found in the applicable

exemptions. The Court should, therefore, preclude Dr. Siegel from offering testimony at trial on what constitutes "good faith security research," and by extension, whether Corellium's product falls within any exemption.

C. **Dr. Siegel's "Supplemental" Opinion Improperly Raises Opinions That Should Have Been Raised in His Opening or Rebuttal Reports**

"The rules on expert witness discovery are designed to prevent surprise and allow both sides the opportunity to adequately prepare their cases." *QBE Ins. Corp. v. Prof'l Ins. Underwriters, Inc.*, No. 06-21731-CIV, 2008 WL 11403212, at *2 (S.D. Fla. July 14, 2008). Where a party submits an untimely expert report and the opposing party is foreclosed from conducting "additional discovery with respect to the Supplemental Report," courts preclude such opinions because of the prejudice to the opposing party. *Id.*

Supplemental reports are intended to allow experts to offer updated opinions based on information not available to them at the time of their opening or rebuttal reports; they are not a mechanism to allow an expert to offer an updated opinion timed to avoid examination at deposition. *Jones Creek Investors, LLC v. Columbia Cnty.*, 98 F. Supp. 3d 1279, 1289 (S.D. Ga. 2015) ("[Rule] 26(e) does not permit supplementation to add points that could have been made in the original expert report . . . ."). Instead, "Rule 26(e) 'permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was **not available at the time of the initial report**." *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277, 2016 WL 3102225, at *6 (S.D. Fla. June 2, 2016) (emphasis in original) (quoting *Minebea Co., Ltd. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005)); *see also Stuhlmacher v. Home Depot USA, Inc.*, No. 2:10 CV 467, 2012 WL 5866297, at *2 (N.D. Ind. Nov. 19, 2012) ("It is disingenuous to argue that the duty to supplement under Rule 26(e)(1) can be used as a vehicle to disclose entirely new expert opinions after the deadline established by the court under Rule 26(a)(2)(c). This is

particularly true where, as here, the **materials on which the new expert opinions are based were available to the Defendant prior to Plaintiff deposing her expert witness**.") (emphasis added).

Here, Dr. Siegel's Second Supplemental Report, served on April 28, 2020 after the close of expert discovery, relies almost entirely on materials that were available to Dr. Siegel before his opening report (dated March 3, 2020), or at least as of his rebuttal report (dated April 13, 2020). A review of the materials cited in Appendix B to Dr. Siegel's Second Supplemental Report reveals that each of the non-publicly available materials he cites were available to him as of at least his rebuttal report, if not before his opening report. A table showing the dates of production of the non-publicly available materials that Dr. Siegel cites in Appendix B to his Second Supplemental Report is attached as Exhibit C to the concurrently filed declaration of Conor B. McDonough.

This is a classic instance of sandbagging, where a party engages in a blatant effort to present expert opinion that an adversary is foreclosed from examining at deposition. The Court should not countenance such gamesmanship, and should strike Dr. Siegel's entire Second Supplemental Report as untimely.

## IV. CONCLUSION

For the foregoing reasons, Defendant Corellium requests that the Court GRANT its motion and preclude Dr. Siegel from offering testimony at trial regarding "good faith security research" as that concept relates to Corellium's defenses in this matter, and also strike Dr. Siegel's Second Supplemental Report in its entirety as untimely.

## V. LOCAL RULE 7.1(A)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel verifies that counsel for Defendant conferred via telephone call and electronic mail with counsel for Plaintiff on May 8, 2020 regarding the relief sought herein. Plaintiff opposes the relief sought, thereby necessitating this Motion.

Dated: May 11, 2020	COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant CORELLIUM, LLC*

Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 612-3459
Facsimile (561) 683-8977
Primary e-mail: justin.levine@csklegal.com
Secondary e-mail: lizza.constantine@csklegal.com

By: s/ Justin B. Levine
JONATHAN VINE
Florida Bar. No.: 10966
JUSTIN B. LEVINE
Florida Bar No.: 106463
LIZZA C. CONSTANTINE
Florida Bar No.: 1002945
MICHAEL A. BOEHRINGER
Florida Bar No.: 1018486

and

HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, NY 10017
Tel: (212) 851-6821
David L. Hecht *pro hac vice*
Email: dhecht@hechtpartners.com
Minyao Wang *pro hac vice*
Email: mwang@hechtpartners.com
Conor McDonough *pro hac vice*
Email: cmcdonough@hechtpartners.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 11, 2020, a true and correct copy of the foregoing has been transmitted by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

Dated: May 11, 2020                                             /s/ Justin B. Levine
                                                                             Justin B. Levine