# Exhibit B

```
              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF FLORIDA

                 NO.: 9:10-cv-81160-RS


    APPLE, INC.,

            Plaintiff,

    vs.

    CORELLIUM, LLC.

            Defendants.

    * * * * * * * * * * * * * * * * * * * * * * *



              CONFIDENTIAL - ATTORNEYS' EYES ONLY



    VIDEOCONFERENCE

    DEPOSITION OF:      DR. MICHAEL SIEGEL

    DATE TAKEN:         Thursday, April 16, 2020

    TIME:               10:00 a.m - 4:20 p.m.

    PLACE:              All parties via videoconference

    TAKEN BY:           Defendants


    REPORTED BY:        Janice Aguirre, FPR
                        Court Reporter and
                        Notary Public
```

```
 1                MR. DAMLE:  Same objection.
 2                THE WITNESS:  I was not asked to do so.
 3     BY MR. PRICE:
 4         Q    Same question with respect to Section 10.
 5                MR. DAMLE:  Same objection.
 6                THE WITNESS:  I was not asked to do so.
 7     BY MR. PRICE:
 8         Q    Same question with respect to Section 11.
 9                MR. DAMLE:  Same objection.
10                THE WITNESS:  So, could you ask your
11           question again?  Are you referring to 11(i)?
12     BY MR. PRICE:
13         Q    I'm referring to the entirety of 11, 11(i),
14     yes.
15         A    And your question?
16         Q    Have you formed an expert opinion about
17     whether or not Corellium's Apple product falls within
18     the exemption found in Section 11, both subsections?
19                MR. DAMLE:  Objection, vague.  Calls for
20           legal conclusion.
21                THE WITNESS:  So, to the extent which it
22           calls for a legal conclusion, I have not been
23           asked to do so.
24                To the extent that it asked me to look
25           at certain wording that is in this, with
```

1           regards to Corellium, that is in my
2           assignment.  I have been asked to do that.
3    BY MR. PRICE:
4        Q   Just to clarify what you just said, are you
5    referring specifically to the term good-faith security,
6    or some other words?
7        A   If we look at my assignment --
8        Q   Good-faith security research, that is what I
9    meant to say.
10           Let me ask a related question, because we've
11   already gone through your assignment.  Was your
12   assignment to define good-faith security research as it
13   is used in the Statute?
14              MR. DAMLE:  Objection, vague.
15              THE WITNESS:  As part of my opinion, to
16          address the assignment and see, I put forth a
17          definition of good-faith security research.
18   BY MR. PRICE:
19       Q   And the definition that you have put forth
20   includes the concept that you referred to as
21   responsible disclosure, is that correct?
22       A   Correct.
23       Q   Do you know whether responsible disclosure is
24   required under this exemption?
25              MR. DAMLE:  Objection, calls for a legal

```
 1              short?
 2                   MR. DAMLE:  Entirely up to you.  You're
 3              the one in the hot seat.  Let's go off the
 4              record for the lunchtime conversation.
 5                   THE WITNESS:  Yes, please.
 6                   THE REPORTER:  It's 1:01.
 7                   (Recess was held from 1:01 p.m. until
 8              1:47 p.m.)
 9                   THE REPORTER:  Back on at 1:47.
10       BY MR. PRICE:
11           Q    Let's talk about the good-faith security
12       research.
13           A    Excuse me one second.  I failed to power off
14       my phone, which I would like to do.
15           Q    Thank you.
16           A    Sorry.
17           Q    No worries.  Let's turn to Exhibit 1, your
18       opening report, Page 8.
19           A    Okay, I'm on Page 8.
20           Q    Section 22 B is what I'll be asking about.
21       And there you state that security research that does
22       not result in responsible disclosure or security flaws
23       and vulnerabilities to the research company would not
24       be considered good-faith security research.  Do you see
25       that?
```

```
 1      A    Correct.
 2      Q    Would not be considered good-faith security
 3  research by whom?
 4      A    According to the definition in my document.
 5      Q    So, by you?
 6      A    That's correct.  That's my opinion.
 7      Q    You state on Page 9, still Paragraph 22, that
 8  Corellium cannot represent, that it is Corellium Apple
 9  Product, is used only or even primarily for good-faith
10  research; do you see that?
11      A    Again, point to where it is.
12      Q    One second.  It says Section 22 B.
13      A    Okay.
14      Q    What basis do you have for the claim that
15  Corellium cannot represent that its product is used
16  primarily for good-faith research?
17      A    I'm not seeing evidence that Corellium keeps
18  track of whether -- what happens to any vulnerabilities
19  that it or other -- I'll imagine it tracks its own, but
20  that any other organization does when it finds -- when
21  it finds vulnerabilities.
22      Q    So, you have no knowledge of what percentage
23  of the use of Corellium Apple Product is for good-faith
24  research?
25           MR. DAMLE:  Objection, vague.
```