UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-cv-81160-RS

APPLE INC.,

                Plaintiff,

v.

CORELLIUM, LLC,

                Defendant.

**PLAINTIFF APPLE INC.'S MOTION TO EXCLUDE LEGAL OPINIONS AND
CORRESPONDING TESTIMONY OF CORELLIUM'S EXPERT
<u>STEWART APPELROUTH AND INCORPORATED MEMORANDUM OF LAW</u>**

**TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I. | Legal Standard | 1 |
| II. | Background | 2 |
| III. | Appelrouth's Opinions Regarding The Parties' Burdens Under 17 U.S.C. § 504(b) Should Be Excluded. | 4 |
| | A. Appelrouth Is Not Qualified To Interpret The Law. | 4 |
| | B. Appelrouth's Opinion Seriously Misstates The Law, and Is Unhelpful, Prejudicial, and Confusing. | 5 |
| IV. | Conclusion | 9 |

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aerospace Servs. Int'l v. LPA Grp., Inc.*,
   57 F.3d 1002 (11th Cir. 1995) ...................................................................................6

*Andreas v. Volkswagen of Am., Inc.*,
   336 F.3d 789 (8th Cir. 2003) ......................................................................................8

*Bonner v. Dawson*,
   404 F.3d 290 (4th Cir. 2005) ..............................................................................3, 7, 8

*Burkhart v. Wash. Metro. Area Transit Auth.*,
   112 F.3d 1207 (D.C. Cir. 1997).................................................................................5

*City of Tuscaloosa v. Harcros Chems., Inc.*,
   158 F.3d 548 (11th Cir. 1998) ............................................................................1, 2, 4

*Commodores Entm't Corp. v. McClary*,
   879 F.3d 1114 (11th Cir. 2018) .........................................................................1, 2, 4, 5

*Cordoves v. Miami-Dade Cty.*,
   104 F. Supp. 3d 1350 (S.D. Fla. 2015) ...................................................................5, 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
   509 U.S. 79 (1993)..............................................................................................1, 9, 10

*Feliciano v. City of Miami Beach*,
   844 F. Supp. 2d 1258 (S.D. Fla. 2012) .....................................................................4

*Home Design Servs, Inc. v. Park Square Enters.*,
   No. 6:02-cv-637-ORL-28JGG, 2005 WL 1027370 (M.D. Fla. May 2, 2005) ........7

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)...............................................................................................1, 4

*Lorentz v. Sunshine Health Prods. Inc.*,
   No. 09-61529-CIV, 2010 WL 11492992 (S.D. Fla. Sept. 7, 2010)..........................7

*Mamani v. Sanchez Berzain*,
   No. 07-22459-CIV, 2018 WL 1090546 (S.D. Fla. Feb. 28, 2018)..........................2

*Martinez v. Porta*,
   601 F. Supp. 2d 865 (N.D. Tex. 2009) ....................................................................9

*MGE UPS Systems, Inc. v. GE Consumer & Industries, Inc.*,
  622 F.3d 361 (5th Cir. 2010) ..................................................................................................3, 7

*Montgomery v. Aetna Cas. & Sur. Co.*,
  898 F.2d 1537 (11th Cir. 1990) ..........................................................................................2, 4, 5

*Montgomery v. Noga*,
  168 F.3d 1282 (11th Cir. 1999) .................................................................................................6

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
  523 F.3d 1051 (9th Cir. 2008) ...................................................................................................9

*On Davis v. The Gap, Inc.*,
  246 F.3d 152 (2d Cir. 2001) ...................................................................................................7, 8

*Oravec v. Sunny Isles Luxury Ventures L.C.*,
  469 F. Supp. 2d 1148 (S.D. Fla. 2006), *aff'd*, 527 F.3d 1218 (11th Cir. 2008) ..................7, 8, 9

*United States ex rel. Phalp v. Lincare Holdings*,
  116 F. Supp. 3d 1326 (S.D. Fla. 2015) .......................................................................................2

*Pleasant Valley Biofuels, LLC v. Sanchez-Medina*,
  2014 WL 2855062 (S.D. Fla. June 23, 2014) .............................................................................2

*Polar Bear Products v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) ...........................................................................................3, 7, 8

*Ryken v. Celebrity Cruises, Inc.*,
  No. 18-CV-25152-UU, 2019 WL 5485177 (S.D. Fla. Sept. 10, 2019) ......................................4

*Thornton v. J. Jargon Co.*,
  580 F. Supp. 2d 1261 (M.D. Fla. 2008) .....................................................................................7

*Uchytil v. Avanade*,
  No. C12-2091, 2018 WL 4091692 (W.D. Wash. Aug. 21, 2018) ..............................................9

*Umana-Fowler v. NCL (Bah.) Ltd.*,
  49 F. Supp. 3d 1120 (S.D. Fla. 2014) ................................................................................2, 4, 5

*United States v. Frazier*,
  387 F.3d 1244 (11th Cir. 2004) ..............................................................................................1, 2

*United States v. Milton*,
  555 F.2d 1198 (5th Cir. 1977) ................................................................................................2, 4

**STATUTES**

17 U.S.C.
   § 504..................................................................................................................1, 3, 7, 9
   § 504(b) ................................................................................................................... *passim*

Copyright Act.............................................................................................................3, 5

**RULES**

Fed. R. Evid.
   403............................................................................................................................1
   702.........................................................................................................................1, 4

Local Rule
   7.1(A)(3) ................................................................................................................10
   7.1(b)(2) .................................................................................................................10

Plaintiff Apple Inc. moves to exclude a limited portion of the opinions of Corellium LLC's damages expert, Stewart Appelrouth, and his corresponding testimony because it is based on an extreme misstatement of law and is thus unhelpful to the trier of fact. Furthermore, allowing Appelrouth to testify to the legal opinions proffered in his Second through Fourth Expert Reports would undermine the Court's role and risk hopelessly confusing the jury. Accordingly, Apple respectfully moves under Rules 702 and 403 for an order excluding the testimony of Mr. Appelrouth interpreting 17 U.S.C. § 504 as well as his related opinion regarding Apple's damages under a profits-of-the-infringer analysis.

## I.     LEGAL STANDARD

Federal Rule of Evidence 702 permits the admission of expert testimony that helps the trier of fact understand the evidence or determine a fact at issue. Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers in determining whether an expert's testimony should be presented to the jury. *See* 509 U.S. 579, 590–93 (1993). "The objective of that requirement is to ensure the reliability and relevancy of expert testimony," and "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). "The importance of *Daubert*'s gatekeeping requirement cannot be overstated." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

The party offering the expert's testimony has the burden to prove "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Id.* (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). Rule 403 provides that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

Courts in this circuit thus have consistently held that expert testimony interpreting the law should be excluded. *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1128 (11th Cir. 2018)

("[E]xperts 'may not testify to the legal implications of conduct' or 'tell the jury what result to reach.'") (citation omitted); *Frazier*, 387 F.3d at 1262–63 ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.") (citation omitted); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (citation omitted); *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977) ("[C]ourts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law.") (citation omitted).

The "Court must be the jury's only source of law"—simply put, "questions of law are not subject to expert testimony." *Commodores Entm't*, 879 F.3d at 1128–29 (quoting *Montgomery*, 898 F.2d at 1541) (internal quotations omitted); *see also Mamani v. Sanchez Berzain*, No. 07-22459-CIV, 2018 WL 1090546, at *6 (S.D. Fla. Feb. 28, 2018) (holding that an expert's "enunciation of legal standards is impermissible"). "An expert witness may not testify as to the state of the law" because that "is the Court's duty." *Pleasant Valley Biofuels, LLC v. Sanchez-Medina*, 2014 WL 2855062 at *5 (S.D. Fla. June 23, 2014) (citing *Montgomery*, 898 F.2d at 1541); *see also United States ex rel. Phalp v. Lincare Holdings*, Inc., 116 F. Supp. 3d 1326, 1341 (S.D. Fla. 2015) (holding that "the applicable law and expert opinions regarding the legal standards applicable to a case must be excluded.") (citing *Harcros Chems.*, 158 F.3d at 565). "Furthermore, merely telling the jury what result to reach is unhelpful and inappropriate." *Umana-Fowler v. NCL (Bah.) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (citing *Montgomery*, 898 F.2d at 1541). "The district court's responsibility to serve as the singular source of law require[s] it to be vigilant about the admissibility of legal conclusions from an expert witness." *Commodores Entm't*, 879 F.3d at 1129.

## II.     BACKGROUND

Appelrouth is Corellium's damages expert. He is a certified public accountant. He is not an attorney. But his rebuttal expert reports (the Second, Third, and Fourth Reports) are premised in part on his offering of a legal opinion: specifically, that it "is the Plaintiff's burden to determine gross revenues and the proper allocation of gross revenues to [i]OS sales" when determining infringer's profits under Section 504 of the Copyright Act. *See* Ex. A (Second Expert Report of Stewart L. Appelrouth (Apr. 13, 2020)) at 14; Ex. B (Third Report of Stewart L. Appelrouth (Apr. 20, 2020)) at 15; Ex. C (Fourth Report of Stewart L. Appelrouth (Apr. 27, 2020)) at 4. He

2

confirmed this opinion in his deposition. *See* Ex. D (Transcript of Deposition of Stewart L. Appelrouth (Apr. 22, 2020)) at 180:6–181:8. In his Fourth Report, Appelrouth further opines:

> It is my understanding that "gross revenue" under the provisions of 17 U.S.C. § 504(b), "refers only to revenue reasonably related to the infringement" where the copyright owner has the burden of demonstrating some causal link between the infringement and the particular profit stream. Counsel has provided me with case law to support this understanding, whereas "a copyright holder must show more than the infringer's total gross revenue from all of its profit streams" and only those profits attributable to the infringement are recoverable under the Copyright Act.

Ex. C at 4. Appelrouth cites three out-of-circuit cases: *Bonner v. Dawson*, 404 F.3d 290 (4th Cir. 2005); *MGE UPS Systems, Inc. v. GE Consumer & Industries, Inc.*, 622 F.3d 361 (5th Cir. 2010); and *Polar Bear Products v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004), which purportedly support his conclusion. At his deposition, Appelrouth confirmed that his opinion on the law was based on cases sent to him by Corellium's attorneys. Ex. D at 181:9–182:24.

Based on his understanding of the parties' respective burdens under Section 504(b) of the Copyright Act, Appelrouth goes on to opine that, because Apple expert David Connelly only determined Corellium's gross revenues attributable to the Corellium Apple Product but did not attempt to apportion those revenues attributable to factors other than Corellium's infringement, Apple had not met its burden to establish gross revenues under Section 504. Ex. A at 14; Ex. B at 15; Ex. C at 4. Specifically, Appelrouth contends it is not enough under Section 504 for Connelly to have calculated all revenues Corellium earned from the allegedly infringing Corellium Apple Product; in Appelrouth's view, Apple has the further burden of apportioning revenues and determining "the elements of profit" *from that single product line* attributable to factors other than the copyrighted work. Appelrouth then contends that, since Corellium's alleged infringing product may have some elements of profit not attributable to infringement,[1] Apple has failed to meet its burden to demonstrate Corellium's "gross revenues" within the meaning of Section 504(b). These opinions, which Appelrouth is not qualified to give, are blatant legal errors, and should be excluded

---

[1] ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Ex. E at 4–10 (Corellium's Fifth Amended Answers to Apple's First Set of Interrogatories (Apr. 18, 2020)).

3

both because Appelrouth is not qualified to give them, and because they supplant the role of the Court and are unhelpful to the trier of fact.[2]

### III. APPELROUTH'S OPINIONS REGARDING THE PARTIES' BURDENS UNDER 17 U.S.C. § 504(B) SHOULD BE EXCLUDED

The Court, not experts, should be the one to instruct the jury on the law. *Milton*, 555 F.2d at 1203 ("[A]n expert witness may not substitute for the court in charging the jury regarding the applicable law.") (citation omitted). Opinions by experts on the law "do no more than offer expert opinion in the form of legal conclusions, and they risk[] confusing, prejudicing, or misdirecting the jury." *Commodores Entm't*, 879 F.3d at 1129. Furthermore, by "telling the jury how he thinks they should rule" on the ultimate issues in this case, a Corellium expert "invade[s] the province of the jury." *Ryken v. Celebrity Cruises, Inc.*, No. 18-CV-25152-UU, 2019 WL 5485177, at *6 (S.D. Fla. Sept. 10, 2019). That is why courts have found expert testimony that does so to be "unhelpful and inappropriate." *Umana-Fowler*, 49 F. Supp. 3d at 1122 (citing *Montgomery*, 898 F.2d at 1541). Although "rejection of expert testimony is the exception rather than the rule," Fed. R. Evid. 702 advisory committee notes, 2000 amends., the particular testimony at issue here shows "the importance of *Daubert*'s gatekeeping requirement," and should be excluded. *Kumho Tire*, 526 U.S. at 152 (1999).

#### A. Appelrouth Is Not Qualified To Interpret The Law

Setting aside these general principles regarding opinions on the law, it is manifestly clear that Appelrouth is not qualified to opine on any matters of legal interpretation. An expert may testify only about matters within the scope of his or her expertise. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (explaining that "the expert [must be] qualified to testify competently regarding the matters he intends to address") (citations omitted); *Feliciano v. City of Miami Beach*, 844 F. Supp. 2d 1258, 1262 (S.D. Fla. 2012) ("Determining whether a witness is qualified to testify as an expert requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.") (internal quotation marks and citation omitted). Appelrouth has no expertise in reviewing legal authorities or conducting legal research. He is not an attorney, and he is not qualified to interpret

---

[2] In his Supplemental Report, Connelly did provide such an apportionment; however, Appelrouth likewise challenges that apportionment under a theory not relevant here. Ex. C at 4–5. The issue raised by this motion is Appelrouth's inappropriate attempt to testify regarding the law, and his serious substantive misstatement of the law at issue.

4

the law.[3] The Court should exclude any attempt by Appelrouth to testify with respect to the plaintiff's burden of proof under Section 504(b) of the Copyright Act because he is not qualified to testify regarding the Copyright Act.

Moreover, even were Appelrouth qualified to interpret the law, that is not his role in this case. "Experts are not permitted to explain to the jury what the applicable legal standards are." *Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1364 (S.D. Fla. 2015); *see also Commodores Entm't*, 879 F.3d at 1128–29; *Montgomery*, 898 F.2d at 1541. "Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) (citation omitted). Yet Appelrouth not only opines on matters of statutory interpretation, he also cites case law purportedly supporting his construction of the statute. In so doing, he acts as a mouthpiece for Defendant's counsel, not as an independent financial expert. It is counterproductive for Appelrouth to instruct the jury on *his* view of the appropriate interpretation of 17 U.S.C. § 504(b) or the parties' respective burdens of proof with respect to damages under the Copyright Act, because the jury must apply the law as interpreted *by the Court*, and Appelrouth's opinion purporting to do so is inadmissible, "unhelpful," and "inappropriate." *Umana-Fowler*, 49 F. Supp. 3d at 112; *see also Commodores Entm't*, 879 F.3d at 1128–29.

### B. Appelrouth's Opinion Seriously Misstates The Law, and Is Unhelpful, Prejudicial, and Confusing

In addition to excluding Appelrouth's express testimony regarding the proper interpretation of 17 U.S.C. § 504(b) because Appelrouth is unqualified to give it, the Court should likewise exclude Appelrouth's resulting opinion that Apple has not met its burden of demonstrating Corellium's gross revenues within the meaning of Section 504(b), as that opinion flows from Appelrouth's unfounded interpretation of Section 504(b), and is therefore contrary to law.

In forming his opinion, Appelrouth concedes that (1) Corellium sells a single product, the Corellium Apple Product, and (2) every unit sold of this single product supports iOS and thus is contended by Apple to be infringing. Ex. C at 4; Ex. D at 47:24–48:14, 193:13–194:10. Appelrouth also does not dispute that Apple's expert, Connelly, included in his selection of gross revenues only revenues that ***Corellium itself*** identified as being derived from its alleged infringing

---

[3] Nor is he qualified by experience. At his deposition, he could not identify a single copyright damages case he had ever testified in. Ex. D at 11:23–15:20; 31:12-21.

Corellium Apple Product.[4]  Ex. E at 24–35; Ex. F (Expert Report of David B. Connelly (Mar. 3, 2020)) at 4–7; *see* Ex. D at 136:7–16; 192:1-194:24.

Appelrouth nonetheless opines that Apple did not meet its burden to demonstrate Corellium's "gross revenues" under Section 504(b) because Connelly did not take the further step of reducing the Corellium Apple Product gross revenues by some amount of profit attributable to elements other than infringement of Apple's copyrighted works.  Ex. C at 4; Ex. D at 174:2–7, 180:6–181:3, 192:19–193:12.  Because some versions of the Corellium Apple Product virtualize Android as well as iOS, Appelrouth asserts that some portion of Corellium's revenues from the Corellium Apple Product must be attributable to Android, not iOS, and further asserts it is *Apple's* burden to determine and apportion out those revenues.  Ex. A at 13–14; Ex. B at 14–15; Ex. C at 4.  Appelrouth is wrong as a matter of black-letter law.  His opinion is thus not only unsupported and unhelpful, but also inappropriate and prejudicial.

Appelrouth's opinion is based entirely on his mistaken belief that the law allocates to *Apple* the burden of proving the "proper allocation of gross revenue to [i]OS sales" within the Corellium Apple Product gross revenues.  Ex. A at 14; Ex. B at 15.  In fact, the law is the exact opposite. Section 504(b) of the Copyright Act provides, in pertinent part:

> In establishing the infringer's profits, ***the copyright owner is required to present proof only of the infringer's gross revenue***, and the ***infringer is required to prove*** his or her deductible expenses and ***the elements of profit attributable to factors other than the copyrighted work.***

17 U.S.C. § 504(b) (emphasis added).  The law is clear that the burden of allocating Corellium Apple Product revenues to factors other than Corellium's infringement of iOS falls on Corellium, not on Apple.

Appelrouth contends the statute means the opposite of what it says, relying on three out-of-circuit authorities provided to him by Corellium's counsel.  Ex. C at 4.  The authorities cited in Appelrouth's report, however, stand only for the unexceptional proposition that, while the Eleventh Circuit has not yet ruled on this issue,[5] courts in other circuits have held that the plaintiff

---

[4] This Court has held that the Corellium Apple Product includes "[a]ll products developed, offered for sale, or sold by Corellium that create virtual versions of iOS-operated devices." ECF No. 249 at 8.

[5] *Cf. Montgomery v. Noga*, 168 F.3d 1282, 1294 (11th Cir. 1999) (finding that plaintiff "went well beyond" statutory obligation by presenting evidence of total sales of four CD–ROM titles and profits after expenses); *Aerospace Servs. Int'l v. LPA Grp., Inc.*, 57 F.3d 1002, 1004 (11th Cir.

6

in a copyright case must establish some broad causal link between either infringement or infringing activity and a "particular profit stream" before the burden-shifting provisions of Section 504(b) apply. *See, e.g. MGE UPS Sys.*, 622 F.3d at 366–67; *Bonner*, 404 F.3d at 294 (citation omitted); *Polar Bear Prods.*, 384 F.3d at 711. "For example, a plaintiff cannot show a causal connection by simply lumping all sales revenues of a retailer together, ***if the retailer's infringement relates only to one item*** that is a small part of overall sales." *Oravec v. Sunny Isles Luxury Ventures L.C.*, 469 F. Supp. 2d 1148, 1175 (S.D. Fla. 2006), *aff'd*, 527 F.3d 1218 (11th Cir. 2008) (emphasis added); *see also On Davis v. The Gap, Inc.*, 246 F.3d 152, 160–61 (2d Cir. 2001) (burden did not shift by identifying entirety of The Gap's $1.668 billion in revenue when infringement related to advertisements for only certain products and stores).

    Courts in this circuit are not consistent on whether any such rule should apply, or whether Section 504 should be read literally to require a plaintiff to produce only the *infringer's* gross revenues.[6] Even if limited to gross revenues with a causal link to the infringement, Section 504 does not shift the burden of allocating an infringer's revenues within a *single product line* to copyright plaintiffs, as Appelrouth claims. To the contrary, courts interpreting Section 504 have universally held that where, as here, there is a single alleged infringing product line, it is sufficient to identify revenues from that product line, and the burden then shifts to the *defendant* to attempt to allocate within-product-line revenues.

    In *On Davis*, for example, the Second Circuit explained that, for infringement of a single poem, it would not be sufficient for the plaintiff to identify a publisher's gross revenues from sales of hundreds of books, "including trade books, textbooks, cookbooks, etc." 246 F.3d at 160. However, it *would* be sufficient to identify revenues from the single infringing anthology, even

---

1995) (finding that actual damages were properly measured as portion of total fees that defendants received from the use of two documents containing the infringing material).

[6] *Compare Home Design Servs, Inc. v. Park Square Enters.*, Inc., No. 6:02-cv-637-ORL-28JGG, 2005 WL 1027370, at *4 (M.D. Fla. May 2, 2005) ("Notwithstanding the plain language of Section 504(b), Defendants maintain that, to survive summary judgment, Home Design must proffer 'non-speculative evidence' which supports a causal link between Defendants' profits and [ ] their alleged infringing activities. As there is no basis here to depart from the plain language of a statute, Defendants' argument fails."), *with Lorentz v. Sunshine Health Prods. Inc.*, No. 09-61529-CIV, 2010 WL 11492992, at *7 (S.D. Fla. Sept. 7, 2010) (noting lack of in-circuit authority, following circuits holding that some minimal nexus between infringing product and revenues is required); *Thornton v. J. Jargon Co.*, 580 F. Supp. 2d 1261, 1279–80 (M.D. Fla. 2008) (same).

though that anthology contained hundreds of poems. *Id*. The defendant publisher would then bear the burden of demonstrating the revenues from that anthology that were attributable to the other poems in the anthology rather than the infringing poem. *Id*. Other Circuits—including in the decisions cited by Appelrouth—have all held likewise. *See, e.g.*, *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003) (burden of proving initial "nexus" is plaintiff's; "burden of proving apportionment (i.e., the contribution to profits of elements other than the infringed property) is the defendant's") (citation omitted); *see also Bonner*, 404 F.3d at 294 (sufficient for plaintiff to identify revenues from infringing building; burden of apportionment to factors other than infringement shifted to defendant); *Polar Bear Prods.*, 384 F.3d at 711 ("Polar Bear was not required to separate the gross profits resulting from the infringement from the profits resulting from other sources."); *see also Oravec*, 469 F. Supp. 2d at 1176 (finding that plaintiff "need not parse out which revenues are attributable to his design and which are attributable to other elements" because that "burden falls on Defendants by operation of the burden shifting mechanism of § 504(b)").

The Fourth Circuit in *Bonner* explained that the copyright owner's burden is limited to "demonstrating *some* causal link between the infringement and the particular profit stream." 404 F.3d at 294 (emphasis added). The *Bonner* court explained that this causal link was easily met by demonstration of the defendant's leasing revenue of a single building, which the plaintiff alleged was built based on an infringing design. *Id.* Reversing the trial court's finding that the lease revenues were not sufficiently connected to the design (since all sorts of things besides a building's design affect the value of a lease), the *Bonner* court explained that the district court "misinterpreted the level of connection between infringement and profits that is required" to shift the burden under Section 504(b). *Id.* The court held it was sufficient for plaintiff to identify total revenues from the allegedly infringing building, and then the burden of apportionment shifted to defendant. *Id.* Similarly, in *Oravec*, the district court held that it was sufficient for plaintiff to identify sales from a building alleged to have an infringing exterior design, and the burden shifted to the defendant to identify revenues attributable to something other than that design:

> Oravec has shown the total revenue from sales of the infringing building itself. While the allegedly infringing exterior design may only contribute to a portion of Defendants overall revenue from sales of the building, there is no doubt that the exterior design is so interwoven with the building as a whole that, like the anthology which contains the infringing poem, **sale of the building amounts to sale of the**

>    **infringing design** in a way to meet the needed "conceivable connection" standard . . . .

469 F. Supp. 2d at 1175–76 (emphasis added).

The same is true here. It is undisputed that every single version of the Corellium Apple Product offers the ability for Corellium's customers to make virtual iOS devices—the basis for Apple's copyright claim. *See* Ex. C at 4; Ex. D at 47:24–48:14, 193:13–194:10. This is sufficient to link the revenues to Corellium's infringing activity, and the burden to "parse out which revenues are attributable to [Apple's iOS] and which are attributable to other elements" now "falls on Defendants by operation of the burden shifting mechanism of § 504(b)." *Oravec*, 496 F. Supp. 2d at 1176.

Appelrouth's opinion that this burden lies with Apple, and not Corellium, is thus based on a misstatement of law. As such, it is unhelpful to the trier of fact, creates a danger of misleading the jury, and should be excluded. *See, e.g.*, *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058–59 (9th Cir. 2008) (holding that expert's opinion contained "legal conclusions [that] not only invaded the province of the trial judge, but [also] constituted erroneous statements of law" and that "[i]n such a case, expert testimony 'would have been not only superfluous but mischievous'") (citation omitted); *Uchytil v. Avanade*, No. C12-2091, 2018 WL 4091692, at *4 (W.D. Wash. Aug. 21, 2018) (excluding portions of the expert's testimony because it "is not supported by law") (citation omitted); *Cordoves*, 104 F. Supp. 3d at 1364–65 (finding that rebuttal testimony that "reads . . . like a lawyer's *Daubert* motion to exclude" is unhelpful and subject to exclusion); *Martinez v. Porta*, 601 F. Supp. 2d 865, 866–67 (N.D. Tex. 2009) (finding that expert opinion "cannot be based on an erroneous legal premise") (citation omitted).

## IV.   CONCLUSION

For the foregoing reasons, Apple respectfully requests that this Court exclude legal opinions and corresponding testimony from Stewart Appelrouth regarding the parties' burdens of proof under 17 U.S.C. § 504, as well his opinions and corresponding testimony that Apple has not met its burden to demonstrate the "defendant's gross revenues" within the meaning of Section 504(b) merely because Apple's expert did not apportion *within-product-line* revenues attributable to the Corellium Apple Product.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), based on the importance and complexity of the issues presented, Apple respectfully requests a hearing on this motion. Apple estimates that such a hearing will require one hour of the Court's time to address this and Apple's other *Daubert* motions.

## LOCAL RULE 7.1(A)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel verifies that counsel for Plaintiff conferred with counsel for Defendant on May 8, 2020, regarding the relief sought herein. Despite these efforts, the parties have been unable to resolve the issues described herein.

Dated: May 11, 2020

Michele D. Johnson*
*michele.johnson@lw.com*
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
(714) 540-1235 / (714) 755-8290 Fax

Sarang Vijay Damle*
*sy.damle@lw.com*
Elana Nightingale Dawson*
*elana.nightingaledawson@lw.com*
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200 / (202) 637-2201 Fax

Andrew M. Gass*
*andrew.gass@lw.com*
Joseph R. Wetzel*
*joe.wetzel@lw.com*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 / (415) 395-8095 Fax

Jessica Stebbins Bina*
*jessica.stebbinsbina@lw.com*
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500 / (424) 653-5501 Fax

Gabriel S. Gross*
*gabe.gross@lw.com*
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 463-2628 / (650) 463-2600 Fax

*Admitted pro hac vice

Respectfully Submitted,

*s/ Martin B. Goldberg*

Martin B. Goldberg
Florida Bar No. 0827029
*mgoldberg@lashgoldberg.com*
*rdiaz@lashgoldberg.com*
Emily L. Pincow
Florida Bar No. 1010370
*epincow@lashgoldberg.com*
*gizquierdo@lashgoldberg.com*
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL 33131
(305) 347-4040 / (305) 347-4050 Fax

*Attorneys for Plaintiff* APPLE INC.

11