# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

APPLE, INC.,

      Plaintiff/Counter-Defendant,

CASE NO: 9:19-CV-81160-RS

v.

CORELLIUM, LLC,

      Defendant/Counter-Plaintiff
_____/

Third Expert Report of
Stewart L. Appelrouth, CPA, ABV, CVA, CrFAC, CFE
April 20, 2020

I have been engaged, by the Defendant/Counter-Plaintiff, to provide consulting on behalf of the Defendant/Counter-Plaintiff relating to the above referenced litigation matter.

The opinions and conclusions expressed in this report are based on the documents I have reviewed and the procedures I have performed to date. I reserve the right to update this report if additional information becomes available or if additional procedures are performed. While these opinions are valid with respect to the information available today, more information may become available which could alter the opinions expressed herein.

This action relates to the alleged damages, if liability is found, suffered by Apple, Inc. ("Apple" or "Plaintiff/Counter-Defendant") as a result of the alleged actions of Corellium, LLC ("Corellium" or "Defendant/Counter-Plaintiff"). Apple is seeking damages based on three claims of relief including Direct Federal Copyright Infringement (Computer Programs), Direct Federal Copyright Infringement (Graphical User Interface Elements), and Contributory Federal Copyright Infringement under Title 17 of the United States Code, Section 501.

This action also relates to the damages, if liability is found, suffered by Corellium as result of the actions of Apple. Corellium is seeking damages based on Unjust Enrichment/Quantum Meruit (Count I) and Unlawful/Unfair Business Practice (Count II).

Case 9:19-cv-81160-RS   Document 448-3   Entered on FLSD Docket 05/11/2020   Page 3 of 17

**Appelrouth Farah & Co**  **April 20, 2020**
**Stewart L. Appelrouth - Expert Rebuttal Report**
**Apple, Inc. v Corellium, LLC**

# TABLE OF CONTENTS

SECTION 1: INTRODUCTION ................................................................................................................. 3

SECTION 2: DOCUMENTS CONSIDERED ........................................................................................... 3

SECTION 3: SUMMARY OF MR. CONNELLY'S EXPERT OPINIONS AND ANALYSIS ...................................... 4

    GROSS REVENUE THROUGH TRIAL ....................................................................................................... 4

    COSTS AND EXPENSES ........................................................................................................................ 5

    STATUTORY DAMAGES ........................................................................................................................ 6

SECTION 4: ANALYSIS AND REBUTTAL ............................................................................................. 7

SECTION 5: SUMMARY OF CORELLIUM'S COSTS AND EXPENSES ............................................. 9

SECTION 6: PLAINTIFF'S EXPERT WORK PRODUCT ................................................................... 14

SECTION 7: CONCLUSION .................................................................................................................... 16

EXHIBIT 1: STEWART APPELROUTH – CURRICULUM VITAE .................................................. 17

EXHIBIT 2: CASES TESTIFIED OR DEPOSITION GIVEN ................................................................ 25

Case 9:19-cv-81160-RS   Document 448-3   Entered on FLSD Docket 05/11/2020   Page 4 of 17

**Appelrouth Farah & Co** **April 20, 2020**
**Stewart L. Appelrouth - Expert Rebuttal Report**
**Apple, Inc. v Corellium, LLC**

# SECTION 1: INTRODUCTION

The purpose of this report is to present my findings on the analysis of the Expert Report of Mr. David B. Connelly ("Mr. Connelly" or "Connelly") dated March 3, 2020 and the documents provided to me as presented within Section 2 below.

This report addresses the statements, opinions and conclusions presented within Mr. Connelly's report. In addition, I offer my opinions on costs and expenses. No additional information has been presented as a supplement or update to my preliminary expert report dated March 3, 2020 including my opinions on the documents provided in support for Corellium's damages based on the bounty program bug submissions and outstanding receivables resulting therefrom.

Based on my review of Mr. Connelly's report, his investigation appears to be incomplete and his analysis flawed based on revenues selected without any underlying basis or support. His analysis failed to demonstrate any attempt to allocate revenues specific to IOS related products, and projections were made without any basis or reasonable methodology.

This updated report considers additional documents received after issuance of the report dated April 13, 2020.

# SECTION 2: DOCUMENTS CONSIDERED

- Complaint dated August 15, 2019,
- Corellium's Answer, Affirmative Defenses, and Counterclaims dated November 8, 2019,
- Corellium's Answers to Interrogatories dated November 18, 2019,
- Corellium's First amended answers to Interrogatories dated January 16, 2020,
- Corellium's Second amended answers to Interrogatories dated February 24, 2020,
- Corellium's Third amended answers to Interrogatories dated February 27, 2020,
- Corellium's Fourth amended answers to Interrogatories dated March 9, 2020,
- Expert Report of David B. Connelly dated March 3, 2020,
- Exhibit B - Materials Considered of Expert Report of David B. Connelly Dated March 3, 2020, Reference/Bates Stamped documents only,
- Corellium's Supplemental Rule 26 Production dated April 9, 2020,
- Berger Singerman Invoices dated 9/4/19, 10/11/19, 11/5/19, 12/3/19, and 1/7/19,
- Deposition Transcript of Amanda Gorton dated March 25, 2020.

# SECTION 3: SUMMARY OF MR. CONNELLY'S EXPERT OPINIONS AND ANALYSIS

## Gross Revenue through Trial

At Section III, Subsection B of Mr. Connelly's report, he provides Corellium's Gross Revenue through Trial. In this section, Mr. Connelly calculates estimated gross revenue for Corellium beginning in 2017 through October 31, 2020. It appears that the starting period of 2017 was selected due to the company having been formed in August 2017.[1]

Mr. Connelly calculated total Estimated Gross Revenue for Corellium of ▇▇▇▇▇▇ comprised of "reported revenues" for 2017 and 2018, extrapolated revenues for 2019 and projected revenues for 2020. A summary of said estimate is presented below:

| SUMMARY OF MR. CONNELLY'S EXPERT ANALYSIS CORELLIUM'S ESTIMATED INFINGING GROSS REVENUES | |
|---|---|
| **Description** | **Amount** |
| Gross Revenues for 2017 and 2018 | ▇▇▇ |
| *Plus:* Extrapolated Gross Revenues for 2019 | ▇▇▇ |
| *Plus:* Projected Gross Revenues for the first 10 months of 2020 | ▇▇▇ |
| **ESTIMATED GROSS REVENUES** | ▇▇▇ |

Per Mr. Connelly's explanation, Gross Revenues for 2017 and 2018 were obtained from the "total reported in Corellium's amended responses to Apple's Interrogatory No. 10 dated January 16, 2020 and February 24, 2020."[2] However, Mr. Connelly states that "Corellium has made it difficult to identify gross revenue from sales of its infringing Apple Product, by presenting a "moving target" of repeatedly modified interrogatory responses." Mr. Connelly has selected this source for revenues without any explanation as to why the amended responses to Apple's Interrogatory No. 10 are more accurate than the other sources.

---

[1] Formation date of August 16, 2017 per the Delaware Certification filed with the Florida Division of Corporations on October 2, 2017.
[2] Refer to Exhibit A of Mr. Connelly's expert report dated March 3, 2020 summarizing sales by year based on Corellium's Answer to Apple Interrogatory No. 10.

Extrapolated revenues for 2019 were calculated based on the revenues provided in Corellium's answer to Apple Interrogatory No. 10 from the period between January 1 through November 15, 2019 of ▓▓▓ consisting of on-site and cloud sales.

Projected Gross Revenues for the first 10 months of 2020 were arbitrarily ▓▓▓ prorating the amount through October 31, 2020.

## Costs and Expenses

Section III, Subsection C includes additional explanations for incurred costs and expenses, which Mr. Connelly could not assess due to the absence of invoices and other underlying transaction documentation. A total of ▓▓▓ is identified as ▓▓▓ that serve to question the integrity of Corellium's reported expenditures." I could not reconcile the ▓▓▓ identified, nor did Mr. Connelly provide any explanations or support for the inference that Corellium's reported expenditures lack integrity. The presence of legal fees within a business's financial statements does not represent any impropriety or error. The exclusion of such expenses would result in understated expenses and overstated net income. It is, however, understood that for purposes of this legal action legal fees directly related to this litigation should be removed.

Mr. Connelly presents challenges associated with making cost and expense attribution determinations due to the following statements made by Corellium representatives:



It is noted that the presence of such challenges was not raised by Mr. Connelly when providing an opinion on estimated gross revenues. He only raises the issue relating to expenses while ignoring a similar challenge when addressing revenues.

My opinions related to the costs and expenses are addressed at Section 5 of this report.

*The remainder of this page is left blank intentionally.*

Appelrouth Farah & Co  
Stewart L. Appelrouth - Expert Rebuttal Report  
Apple, Inc. v Corellium, LLC

April 20, 2020

## Statutory Damages

Section III, Subsection D includes two calculations of damages based on interpretations of Title 17 of the United States Code, Section 504 and Section 1203.

Under Section 504, Mr. Connelly calculates two scenarios based on his interpretation of sections 504(c)(1) and 504(c)(2). Using §504(c)(1), statutory damages range between amounts not less than $16,500 and not more than $660,000. The single input of **22 U.S. Copyright registrations** was utilized to complete this calculation. A summary of this calculation is provided below.

Under Section 1203, Mr. Connelly calculates a statutory damage range of not less than ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The single input of ▇▇▇▇▇▇▇▇▇▇ was utilized to complete this calculation. However, Mr. Connelly has identified discrepancies between sources provided by Corellium.

A summary of these calculations is provided below with applicable sections and inputs identified.



This is a visual summary of Mr. Connelly's analysis presented within his expert report dated March 3, 2020.

Mr. Connelly appears to have accepted the total amount of U.S. Copyright registrations based on Apple's allegations presented within the Plaintiff's First Amended Complaint.

Case 9:19-cv-81160-RS   Document 448-3   Entered on FLSD Docket 05/11/2020   Page 8 of 17

**Appelrouth Farah & Co** **April 20, 2020**
**Stewart L. Appelrouth - Expert Rebuttal Report**
**Apple, Inc. v Corellium, LLC**

## SECTION 4: ANALYSIS AND REBUTTAL

Based on my analysis of Mr. Connelly's report, it is clear that his opinions regarding estimated gross revenues are speculative and lack fundamental procedures which should have been performed or considered throughout his investigation and analysis. Specifically, doubling 2019 revenue to estimate 2020 revenue is speculative at best.

Mr. Connelly describes Corellium's responses as a "moving target," whereas such responses are repeatedly modified and inconsistent. He has expressed difficulty with identifying gross revenues, but finally makes his determination based on Corellium's most recent interrogatory responses. The total based on these responses is conveniently the highest amount of all the alternatives available. These alternatives are included in Exhibit A of Mr. Connelly's report. The totals by source are provided below:

**SUMMARY OF MR. CONNELLY'S EXPERT ANALYSIS**
**EXHIBIT A: TOTAL GROSS REVENUES**

| Source Description | Totals - All Periods |
|---|---|
| Gross Revenue per Corellium's Answer to Apple Interrogatory No. 10. | [redacted] |
| Gross Revenue per Corellium's Answer to Apple Interrogatory No. 9 [redacted] | [redacted] |
| Gross Revenue per Corellium's "Profit and Loss Detail" QuickBooks Records | [redacted] |

*Mr. Connelly utilizes the highest amount without an explanation to support his selection and without an indication that an analysis was performed to determine which alternative may be the most appropriate.* No explanation was provided to justify a departure from utilizing contemporaneous financial records, or any reference to an application of adjustments in consideration of potential errors or inconsistencies.

The presented conclusion fails to show that any basic analysis was performed, where some form of a revenue analysis could have been completed with Corellium's "profit and loss detail," such as revenues per time period or computed trends. Mr. Connelly simply accepts one number without support and incorporates elementary math to formulate his conclusion.

Appelrouth Farah & Co  
Stewart L. Appelrouth - Expert Rebuttal Report  
Apple, Inc. v Corellium, LLC

April 20, 2020

To emphasize challenges relating to the allocation of costs and expenses, Mr. Connelly references a statement made by one of Corellium's representatives related to their contemporaneous financial recordkeeping, highlighting that ███████████████████████████████████████████████████████████ This understanding did not lead to any added analysis upon selecting a revenue standard, nor was the statement referenced as a potential challenge.

*Mr. Connelly not only conveniently ignores his own reference (Section III, subsection C) upon selecting a standard for estimating revenues but failed to conduct fundamental procedures to attempt an allocation of revenues specific to Apple related products.* A list of possible procedures is enumerated below:

1. Conduct research relating to the Apple IOS platform usage or demand worldwide in comparison to any and all operating systems which Corellium offers to its clients on a worldwide scale.

2. Request records from Apple, Inc. relating to the usage or demand of the Apple IOS operating system usage or demand in comparison to any and all operating systems which Corellium offers to clients.

Furthermore, *Mr. Connelly simply doubles the extrapolated revenues for 2019 to project prorated 2020 revenues. Mr. Connelly fails to utilize or consider other scientific methods which would be more appropriate to project revenues.* Such methods may include the application of averages, trend analysis, standard growth analysis year over year, or conducting a historical analysis based on client engagement or product mix.

The task is usefully omitted which would result in a windfall to Apple, if liability was found. Conversely, Mr. Connelly highlights the specific task of "cost and expense attribution determinations" when addressing expenses. Performing an expense analysis to attribute or carve out expenses unrelated to Apple without performing the same analysis for unrelated revenues would be improper and inappropriate, only causing further injury to Corellium.

*The remainder of this page is left blank intentionally.*

Case 9:19-cv-81160-RS   Document 448-3   Entered on FLSD Docket 05/11/2020   Page 10 of 17

**Appelrouth Farah & Co** **April 20, 2020**
**Stewart L. Appelrouth - Expert Rebuttal Report**
**Apple, Inc. v Corellium, LLC**

## SECTION 5: SUMMARY OF CORELLIUM'S COSTS AND EXPENSES

Mr. Connelly's failure to perform any substantive analysis of revenues where an allocation or "attribution determination" would be necessary precludes me from being able to allocate a percentage of expenses attributable to IOS. If Plaintiff's expert updates his analysis, I may update this report.

Notwithstanding the above, I have prepared a reconciliation of the cost of goods sold and expenses as detailed on the Answer to Interrogatory Number 10 from the Verified Third Amended Interrogatories dated February 27, 2020. I have not been provided the Profit and Loss Detail that reconciles to the Fourth Amended Interrogatories dated March 9, 2020 which include activity through March 9, 2020. The following page details the Cost of Goods Sold ("COGS") and expenses as responded to on the interrogatory and reconciled to within ▇▇ᴰ for the three-year period of 2017 through 2019. Corellium Profit and Loss ("P&L") Detail Excel File used and named "Corellium_Profit+and+Loss+Detail" is referenced within Exhibit B – Materials considered as Reference/Bates Number Corellium – 022289.

*The remainder of this page is left blank intentionally.*

| Answer to Interrogatory No. 10 from the Verified Third Amended Interrogatories dated February 27, 2020. | | | | |
|---|---|---|---|---|
| | **2019** | **2018** | **2017** | **Total** |
| COGS | ■ | ■ | ■ | ■ |
| Expenses | ■ | ■ | ■ | ■ |
| Total Expenses | ■ | ■ | ■ | ■ |

Source:
Answer to Interrogatory No. 10 from the Verified Third Amended Interrogatories dated February 27, 2020.

| Per Corellium P&L Detail | | | | |
|---|---|---|---|---|
| | **2019** | **2018** | **2017** | **Total** |
| COGS | ■ | ■ | ■ | ■ |
| Expenses | ■ | ■ | ■ | ■ |
| Total Expenses | ■ | ■ | ■ | ■ |

Source:
Corellium_Profit+and+Loss+Detail

| Difference | | | | |
|---|---|---|---|---|
| | **2019** | **2018** | **2017** | **Total** |
| COGS | ■ | ■ | ■ | ■ |
| Expenses | ■ | ■ | ■ | ■ |
| Total Expenses | ■ | ■ | ■ | ■ |

*The remainder of this page is left blank intentionally.*

Appelrouth Farah & Co  
Stewart L. Appelrouth - Expert Rebuttal Report  
Apple, Inc. v Corellium, LLC

April 20, 2020

The schedule below details all the COGS and Expenses as responded to on the interrogatory and reconciled to the P&L detail for 2017-2019.



Corellium Cost of Goods Detail and Expenses 2017 - 2019

Source:
File Name: Corellium_Profit+and+Loss+Detail

*The remainder of the page left blank intentionally.*

The schedule below details all the COGS and Expenses as elaborated on the P&L detail for 2017-2020. The detail is for the period of October 6, 2017 through February 12, 2020.

| Corellium Cost of Goods Detail and Expenses 2017 - 2020 | | | | | | |
|---|---|---|---|---|---|---|
| Row Labels | | 2017 | 2018 | 2019 | 2020 | Grand Total |

Source:  
File Name: Corellium_Profit+and+Loss+Detail

*The remainder of the page left blank intentionally.*

Appelrouth Farah & Co  
Stewart L. Appelrouth - Expert Rebuttal Report  
Apple, Inc. v Corellium, LLC

April 20, 2020

After speaking to counsel, we have been advised that the ▮▮▮ and thus should be removed as non-operating expenses. The same applies ▮▮▮ after the litigation began. After an analysis of the expenditures from ▮▮▮ have been identified and removed. ▮▮▮ that was determined to be litigation related by the client, but my office has not received the actual invoice as of the date of this report. As such, I have removed and updated those three categories from the below schedule to show what the operating expenses of Corellium are for the period of inception through February 12, 2020 in their totality.

| Corellium Cost of Goods Detail and Expenses 2017 - 2020 | | | | | | |
|---|---|---|---|---|---|---|
| Row Labels | | 2017 | 2018 | 2019 | 2020 | Grand Total |

Source:  
File Name: Corellium_Profit+and+Loss+Detail

The above represents the totality of operating expenses as recorded on Corellium's Profit and Loss Detail through February 12, 2020.

## SECTION 6: PLAINTIFF'S EXPERT WORK PRODUCT

The gross revenue provided within the answer to Interrogatory No. 10 on the Third Amended Answers to Plaintiff's First Set of Interrogatories dated February 27, 2020 states a gross revenue ▇▇▇▇▇▇▇▇▇▇ through November 15, 2019. It is my understanding from Counsel ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and has carved out that revenue that was incorrectly included in prior Amended Answers to the Interrogatories. Mrs. Amanda Gorton, CEO of Corellium discussed this matter in her deposition.

Plaintiff's expert has not performed any analysis in determining any kind of allocation of revenues to apply to IOS sales worldwide. Plaintiff's expert has taken the position that 100% of gross revenues would be allocated to IOS. Had Plaintiff's expert performed any kind of relevant research and analysis, he would have known that IOS sales worldwide fluctuate on a monthly basis and hover around **21.74%** of worldwide sales for the period from October 2017 to February 2020. Below are the statistics on mobile operating system market share worldwide.



Circled in red above, one can see IOS Mobile Operating System Market Share Worldwide. Furthermore, the data in the following page is the source figures used to create the line chart above.

| Mobile Operating System Market Share Worldwide October 2017 - February 2020 | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | Android | iOS | Unknown | KaiOS | Windows | Samsung | Series 40 | Nokia Unknown | Tizen | BlackBerry OS | Firefox OS | SymbianOS | Linux | LG | Sony Ericsson | Other |
| 2017-10 | 73 05 | 19.99 | 3.65 | 0 | 0.75 | 0.33 | 0.51 | 0 89 | 0.2 | 0.23 | 0.07 | 0.17 | 0.04 | 0.05 | 0.02 | 0.04 |
| 2017-11 | 73.11 | 20.34 | 3.43 | 0 | 0.71 | 0.33 | 0.5 | 0 53 | 0.21 | 0.2 | 0.3 | 0.17 | 0.04 | 0.05 | 0.02 | 0.04 |
| 2017-12 | 73 54 | 19.91 | 3.54 | 0 | 0.64 | 0.34 | 0.53 | 0 29 | 0.23 | 0.18 | 0.46 | 0.18 | 0 04 | 0.05 | 0.03 | 0.04 |
| 2018-01 | 74 39 | 19.64 | 3.03 | 0 | 0.61 | 0.35 | 0.5 | 0 28 | 0.21 | 0.16 | 0.51 | 0.17 | 0 04 | 0.04 | 0.03 | 0.04 |
| 2018-02 | 74.78 | 20.15 | 2.53 | 0 | 0 58 | 0.28 | 0.37 | 0 24 | 0.17 | 0.15 | 0.45 | 0.15 | 0 05 | 0.04 | 0.02 | 0.04 |
| 2018-03 | 74 24 | 20.83 | 2.83 | 0.03 | 0 55 | 0.27 | 0.34 | 0 23 | 0.16 | 0.14 | 0.13 | 0.13 | 0 05 | 0.04 | 0.02 | 0.03 |
| 2018-04 | 75.66 | 19.23 | 3.05 | 0.04 | 0 54 | 0.27 | 0.36 | 0 24 | 0.18 | 0.14 | 0 | 0.14 | 0 06 | 0.04 | 0.02 | 0.03 |
| 2018-05 | 76 53 | 18.97 | 2.69 | 0.04 | 0.49 | 0.26 | 0.31 | 0 22 | 0.16 | 0.11 | 0 | 0.11 | 0 05 | 0.04 | 0.01 | 0.03 |
| 2018-06 | 76.99 | 18.91 | 2.34 | 0.03 | 0.47 | 0.26 | 0.28 | 0 2 | 0.15 | 0.09 | 0 | 0.1 | 0.11 | 0.03 | 0.01 | 0.03 |
| 2018-07 | 77.32 | 19.4 | 1.74 | 0.02 | 0.43 | 0.24 | 0.24 | 0.18 | 0.14 | 0.08 | 0 | 0.08 | 0 06 | 0.02 | 0.01 | 0.03 |
| 2018-08 | 76.82 | 20.45 | 1.23 | 0.02 | 0.4 | 0.28 | 0.23 | 0.18 | 0.13 | 0.08 | 0 | 0.08 | 0 06 | 0.02 | 0 01 | 0.02 |
| 2018-09 | 76.61 | 20.66 | 0.83 | 0.56 | 0 37 | 0.27 | 0.2 | 0.16 | 0.12 | 0.06 | 0 | 0.07 | 0 06 | 0.01 | 0 01 | 0.02 |
| 2018-10 | 74.69 | 22.34 | 0.68 | 0.93 | 0 36 | 0.3 | 0.2 | 0.16 | 0.12 | 0.06 | 0 | 0.07 | 0 06 | 0.01 | 0 01 | 0.02 |
| 2018-11 | 72.35 | 24.44 | 0.62 | 1.12 | 0 39 | 0.32 | 0.22 | 0.17 | 0.13 | 0.06 | 0 | 0.07 | 0 07 | 0.01 | 0 01 | 0.02 |
| 2018-12 | 75.16 | 21.98 | 0.46 | 1.13 | 0 33 | 0.29 | 0.19 | 0.15 | 0.11 | 0.05 | 0 | 0.06 | 0 05 | 0.01 | 0 01 | 0.02 |
| 2019-01 | 74.45 | 22.85 | 0.41 | 1.1 | 0.3 | 0.28 | 0.18 | 0.14 | 0.1 | 0.05 | 0 | 0.06 | 0 05 | 0.01 | 0 01 | 0.02 |
| 2019-02 | 74.15 | 23.28 | 0.42 | 0.96 | 0 29 | 0.29 | 0.18 | 0.14 | 0.09 | 0.05 | 0 | 0.06 | 0 06 | 0.01 | 0 01 | 0.02 |
| 2019-03 | 75.33 | 22.4 | 0.36 | 0.84 | 0 28 | 0.26 | 0.14 | 0.13 | 0.07 | 0.04 | 0 | 0.05 | 0 06 | 0 | 0 01 | 0.01 |
| 2019-04 | 75.22 | 22.76 | 0.32 | 0.73 | 0 26 | 0.24 | 0.12 | 0.11 | 0.07 | 0.05 | 0 | 0.05 | 0 04 | 0 | 0 01 | 0.01 |
| 2019-05 | 75.34 | 22.66 | 0.32 | 0.77 | 0 24 | 0.22 | 0.12 | 0.11 | 0.08 | 0.04 | 0 | 0.04 | 0 04 | 0 | 0 01 | 0.01 |
| 2019-06 | 76.03 | 22.04 | 0.32 | 0.79 | 0 21 | 0.21 | 0.1 | 0.1 | 0.07 | 0.03 | 0 | 0.04 | 0 04 | 0 | 0 01 | 0.01 |
| 2019-07 | 76.08 | 22.01 | 0.31 | 0.81 | 0.2 | 0.21 | 0.1 | 0.1 | 0.07 | 0.03 | 0 | 0.03 | 0 04 | 0 | 0 | 0.01 |
| 2019-08 | 76.23 | 22.17 | 0.26 | 0.59 | 0.2 | 0.21 | 0.09 | 0 09 | 0.07 | 0.03 | 0 | 0.02 | 0 03 | 0 | 0 | 0.01 |
| 2019-09 | 76 24 | 22.48 | 0.23 | 0.38 | 0.17 | 0.18 | 0.08 | 0 08 | 0.06 | 0.02 | 0 | 0.02 | 0 04 | 0 | 0 | 0.01 |
| 2019-10 | 76.67 | 22.09 | 0.21 | 0.42 | 0.15 | 0.17 | 0.07 | 0 07 | 0.05 | 0.02 | 0 | 0.02 | 0 03 | 0 | 0 | 0.01 |
| 2019-11 | 75 82 | 22.9 | 0.19 | 0.49 | 0.15 | 0.18 | 0.06 | 0 07 | 0.05 | 0.02 | 0 | 0.02 | 0 03 | 0 | 0 | 0.01 |
| 2019-12 | 74.13 | 24.79 | 0.19 | 0.35 | 0.13 | 0.18 | 0.06 | 0 06 | 0.04 | 0.02 | 0 | 0.02 | 0 03 | 0 | 0 | 0.01 |
| 2020-01 | 74.3 | 24.76 | 0.19 | 0.21 | 0.12 | 0.2 | 0.05 | 0 06 | 0.03 | 0.02 | 0 | 0.01 | 0 03 | 0 | 0 | 0.01 |
| 2020-02 | 73.3 | 25.89 | 0.13 | 0.23 | 0.12 | 0.18 | 0.03 | 0 03 | 0.03 | 0.02 | 0 | 0.01 | 0 03 | 0 | 0 | 0.01 |
| Average | 75.12 | 21.74 | 1.26 | 0.43 | 0.36 | 0.26 | 0.22 | 0.19 | 0.11 | 0.08 | 0.07 | 0.08 | 0.05 | 0.02 | 0.01 | 0.02 |

Source: https://gs statcounter com/os-market-share/mobile/worldwide/#monthly-201710-202002

It is the Plaintiff's burden to determine gross revenues and the proper allocation of gross revenues to IOS sales. The cursory research I conducted clearly suggests that the IOS platform make up a minority of a mobile market dominated by the Android platform. I cannot use any percentage allocation determined by Plaintiff's expert to any of the costs and expenses determined above in Section 5 as he hasn't performed that very integral and necessary analysis.

*The remainder of the page left blank intentionally.*

## SECTION 7: CONCLUSION

I cannot complete my analysis until the Plaintiff is able to provide an allocation of revenues for IOS worldwide usage as it relates to Corellium. This is a necessary step prior to completing an allocation for the corresponding expenses. However, based on my cursory research on the worldwide usage of the IOS platform, it can be deduced that it may be a figure closer to **22%** on average than the **100%** that Plaintiff's expert is opining. On a worst-case scenario, we're aware that the products sold are not 100% IOS related due to the availability of multiple operating system testing capabilities within the program.

Based on my analysis of Mr. Connelly's expert report dated March 3, 2020, it is my opinion that his analysis and conclusions are inadequate where they lack fundamental procedures to properly present estimated gross revenues attributable to the alleged actions by Corellium, LLC.

Mr. Connelly fails to properly address and/or present reasonable conclusions within the scope of his assignment as identified within his report, specifically to perform an investigation and analysis "to assess and quantify damages Apple has suffered as a result of Corellium's infringing activities."

As stated in Section 5 of this report, I have not been provided the Profit and Loss Detail that reconciles to the Fourth Amended Interrogatories dated March 9, 2020 which include activity through March 9, 2020. As such this report takes into consideration those answers as elaborated through the Defendant's Notice of Serving Third Amended Answers to Plaintiff's First Set of Interrogatories dated February 27, 2020.

- Attached as **Exhibit 1** is my Curriculum Vitae.
- Attached as **Exhibit 2** is the list of the cases I have been deposed in or gave testimony in the last 4 years.
- My hourly compensation rate is $550 per hour.

The ultimate conclusions reported herein are that of Stewart L. Appelrouth, CPA/ABV, CFE, CRFAC, CVA. All judgments made in the development of the conclusions are that of Mr. Appelrouth. Thomas E. Garland, CPA, CFE, CVA, CRFAC Litigation and Valuation Services Senior Manager & Nicholas Landera, CPA, CFE, CVA, AMLCA Litigation and Valuation Services Manager, provided significant professional assistance to Mr. Appelrouth in the performance of this report. All of Mr. Garland's and Mr. Landera's efforts were under Mr. Appelrouth's direction and supervision.

I reserve the right to update this report if any additional information becomes available.

Respectfully Submitted,

*Stewart L. Appelrouth*

Stewart L. Appelrouth CPA, ABV, CVA, CrFAC, CFE