# EXHIBIT F

Expert Report of

David B. Connelly

On Behalf of Plaintiff

Under Federal Rule of Civil Procedure 26(a)(2)(B)

In the Matter of

APPLE INC.

Plaintiff,

v.

CORELLIUM, LLC

Defendant.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:19-cv-81160-RS

The Honorable Rodney Smith, Judge Presiding

<u>RED UNDERLINED</u> = CORELLIUM CONFIDENTIAL – ATTORNEYS' EYES ONLY

**I.     ASSIGNMENT**

I understand that Plaintiff Apple Inc. ("Apple") has filed suit against Defendant Corellium, LLC ("Corellium"), alleging copyright infringement in violation of 17 U.S.C. § 501, and unlawful trafficking of a product used to circumvent security measures in violation of 17 U.S.C. § 1201.  Specifically, I understand that Apple alleges that Corellium has infringed on Apple's copyrighted works by, among other things, providing customers with a digital facsimile of a broad range of Apple's market-leading devices (Corellium's "Apple Product"), in the process infringing on Apple's copyrighted works, including its iOS operating system, various software "application" programs that run on its operating system and graphic design elements ("GUI Elements") that make Apple device interfaces visually attractive to consumers.  Further, I understand that Apple alleges that Corellium, through its Apple Product, has engaged in unlawful trafficking activities designed to circumvent Apple's significant technological protection measures that control access to, and protect Apple's exclusive rights in, its copyrighted works.

My firm and I have been retained to perform an investigation and analysis concerning the federal copyright damages Apple is entitled to under 17 U.S.C. § 504(b) and § 1203(b)(3) & (c)(2), or in the alternative, statutory damages under 17 U.S.C. § 504(c) and § 1203(c)(3), for Corellium's infringement of, and unlawful trafficking activities concerning, Apple's copyrighted and protected works.  Specifically, and at this stage, we have been asked to examine financial records and documents that have recently been produced by Corellium, in order to assess and quantify the actual damages Apple has suffered as a result of Corellium's infringing activities, and in particular, the profits Corellium has generated from its infringing efforts, and to calculate the alternative statutory damages available to Apple under both statutes.

1

This report is based upon information now available and upon such investigation as we were reasonably able to undertake. Based on my review of documents provided to date, I believe that Corellium has not provided significant financial information that has been requested, including information concerning its revenues, costs, expenses and profits that are attributable to its infringing Apple Product. Further, Corellium's recently produced general ledger type accounting records only concern profit & loss accounts, and are not complete. Accordingly, I reserve the right to supplement, modify or otherwise change this report should Corellium produce additional financial information that impacts my analysis. I may also develop additional opinions based on any opinions, work or testimony that may be offered concerning these or other matters by any experts retained by Corellium. I am aware of my continuing obligation to supplement my report under Rule 26 of the Federal Rules of Civil Procedure. I reserve the right to supplement, modify, or otherwise change this report as necessary and appropriate based upon any further information that becomes available, and/or upon additional or different analysis of existing information.

## II.   EXPERT OPINIONS

At trial, I intend to testify regarding the federal copyright damages Apple is entitled to under 17 U.S.C. § 504(b) and § 1203(b)(3) & (c)(2), or in the alternative, statutory damages under 17 U.S.C. § 504(c) and § 1203(c)(3), for Corellium's infringement of, and unlawful trafficking activities concerning, Apple's copyrighted and protected works. Specifically, I intend to testify regarding the following summary opinions, as well as the bases for such opinions that are set forth herein. I may rely on demonstrative exhibits, including pictures, figures, and drawings at trial.

(i)   Although Corellium's "moving target" of repeatedly modified, inconsistent interrogatory responses has made it difficult to identify gross revenues from its infringing

activities, Corellium's most recent interrogatory responses report gross revenue from the sale or licensing of its infringing Apple Product totaling as much as ▮▮▮▮▮ during periods from Corellium's formation in 2017 through November 15, 2019;

(ii) Corellium's estimated gross revenue from the sale or licensing of its infringing Apple Product may total as much as ▮▮▮▮▮ for periods from the Company's formation through the trial of this matter in October 2020;

(iii) Although Corellium has undoubtedly incurred costs and expenses while generating these gross revenues, I have not been able to fully assess and substantiate Corellium's deduction claims because Corellium has not produced invoices and other underlying transaction documentation for 66% of its total reported costs of goods sold and expenses during the years 2017 through 2019, and we have identified more than ▮▮▮▮▮ in reported, non-deductible legal fees and other expenses that serve to question the integrity of Corellium's reported expenditures;

(iv) Alternatively, Apple is entitled to an award of statutory damages that could total as much as $3,300,000 for willful infringement under 17 U.S.C. § 504(c), and/or a presently unclear amount that could be at least as much as ▮▮▮▮▮, and potentially substantially greater, under the provisions of 17 U.S.C. § 1203(c)(3).

## III.   ANALYSIS, OBSERVATIONS AND CONCLUSIONS

My investigation and analysis to date has primarily involved the examination of accounting records and other financial documents that Corellium has recently produced. In particular, my examination has focused on Corellium's "Profit and Loss Detail" QuickBooks general ledger type records, listing transactions by revenue, cost of goods sold, and expense accounts for periods from October 6, 2017 through February 12, 2020. I have compared the transactions reported in these records with Corellium's various amended answers to Apple's First Set of Interrogatories (dated November 18, 2019, January 16, 2020, and February 24, 2020), and

examined certain transaction documents that have been produced. I also examined certain Corellium annual expenditures reports (Excel files), listing the company's expenditures for each of the years 2017 through 2020 (through February 12, 2020), that included ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were not reported in Corellium's "Profit and Loss Detail" QuickBooks records. The documents that I have considered and relied upon in forming my opinions set forth in this report are listed in the attached Exhibit B.

Corellium's recent financial records and document production has not provided significant information that has been requested, including detailed records, documents and information that concerns, and corroborates, the revenues, costs, expenses and profits attributable to Corellium's infringing Apple Product, or elements of Corellium's profits that may be attributable to factors other than the copyrighted work. Further, Corellium's inconsistent, amended interrogatory responses to Apple's Special Interrogatory Nos. 9 and 10 demonstrate that Corellium has not provided sufficient information to enable our corroboration of its reported gross revenues, and suggest that Corellium's produced "Profit and Loss Detail" QuickBooks records are not complete, and apparently do not include all pertinent sales revenue transactions. Finally, it bears noting that Corellium's recently produced QuickBooks records do not include the company's balance sheet accounts and associated transactions, and thus do not disclose, among other things, transactions concerning capitalized costs, liabilities, and LLC member capital account transactions.

    A. **CORELLIUM'S GROSS REVENUE FROM INFRINGING APPLE PRODUCT**

The actual damages provisions of 17 U.S.C. § 504(b) and § 1203(c)(2) provide for the recovery of an infringer's profits (that are attributable to the infringement). 17 U.S.C. § 504(b)

provides, in pertinent part: "In establishing the infringer's profits, the copyright owner is required to present proof only of the **infringer's gross revenue**, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." (emphasis added).

However, Corellium has made it difficult to identify gross revenue from the sales of its infringing Apple Product, by presenting a **"moving target" of repeatedly modified interrogatory responses**. Apple's Interrogatory No. 10 requested that Corellium identify revenues from the sale or licensing of its Apple Product. In Corellium's initial response to this Interrogatory dated November 18, 2019, it reported 2019 revenue totaling ▮▮▮▮ through November 15, 2019, comprised ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In Corellium's amended response to this Interrogatory dated January 16, 2020, it reported 2019 revenue totaling ▮▮▮▮ through November 15, 2019, comprised of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Most recently, in its second amended response to this Interrogatory dated February 24, 2020, **Corellium curiously reported 2019 revenue totaling** ▮▮▮▮ **through November 15, 2019, even though it still reported** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. **Corellium's latest interrogatory response has effectively washed away** ▮▮▮▮ **in infringing revenues**, with no change to the ▮▮▮▮▮▮▮▮ reported in its preceding interrogatory response (and no apparent effort to report on revenues received through the end of 2019).

In addition, Corellium has made it difficult to identify gross revenue from the infringing sales of its Apple Product, by presenting **inconsistent interrogatory responses** concerning such revenues. Apple's Interrogatory No. 9 requested that Corellium provide details on individual customer sales or licensing of its Apple Product, and Corellium's responses have disclosed **gross**

5

**revenues totaling** ▮[1] **on listed customer sales**, for periods from 2017 (no reported transactions) through January 2020.  In contrast, Corellium's (repeatedly modified) responses to Apple's Interrogatory No. 10, concerning revenue totals for such customer sales/licensing, have reported the following significantly greater gross revenues for periods from 2017 through November 15, 2019 (and over a shorter duration): ▮ per Corellium's initial interrogatory response dated November 18, 2019; and ▮ per Corellium's amended responses to this interrogatory dated January 16, 2020 and February 24, 2020 (not including ▮).  In sum, Corellium's amended answer to Apple Interrogatory No. 10 disclosed gross revenue totals that were nearly ▮ (and over a shorter duration) than the gross revenues disclosed in Corellium's amended answer to its preceding Apple Interrogatory No. 9.

As summarized in the attached Exhibit A, Corellium's special interrogatory responses, and its recently produced QuickBooks profit and loss records, have presented **significantly different gross revenue amounts**, for periods from the company's formation in 2017 through January 2020.  As just noted, Corellium's amended responses to Apple Interrogatory No. 10 disclosed **total gross revenues of** ▮ from sales/licensing of its Apple Product, and its responses to Apple Interrogatory No. 9 disclosed total **gross revenues of** ▮, for periods from 2017 through November 15, 2019.  On the other hand, the gross revenues reported in Corellium's recently produced "Profit and Loss Detail" QuickBooks records[2] reported gross revenues totaling ▮ for periods from formation through December 2019, an amount that is approximately ▮ than the ▮ revenue total (for a shorter duration)

---

[1] Based on listed on-site prices, and suggested cloud subscription gross revenue totals derived from reported monthly subscription prices, as applied to reported subscription periods.
[2] Such records should corroborate the gross revenue amounts reported in Corellium's interrogatory responses.

reported in Interrogatory No. 10, and ▓▓▓▓▓▓ than the ▓▓▓▓▓▓ revenue total reported in Interrogatory No. 9 for such period.

This significant shortfall in the gross revenue reported in Corellium's recently produced "Profit and Loss Detail" QuickBooks records clearly demonstrates that **Corellium has not provided sufficient information to enable our corroboration of its reported gross revenue**. Further, this significant shortfall in reported gross revenue serves to suggest that **Corellium's produced "Profit and Loss Detail" QuickBooks records were not complete**, and apparently did not include all pertinent sales or licensing transactions.

In addition to the foregoing, I understand that Corellium has agreed to produce, but has not yet produced: (i) income attributable to its sale or use of exploits developed through the use of the Corellium Apple Product; and (ii) non-cash income (*e.g.*, stock rights, in-kind income, etc.) attributable to the Corellium Apple Product, but has not yet done so. Production of documents relating to these additional sources of income attributable to the infringing work may require a further adjustment to my analysis.

Pending the production of further information that might clarify the differing reported gross revenue amounts, my analysis has adopted the ▓▓▓▓▓▓ gross revenue total reported in Corellium's amended responses to Apple Interrogatory No. 10 dated January 16, 2020 and February 24, 2020.

### B. CORELLIUM'S PROJECTED GROSS REVENUES THROUGH TRIAL

I have projected Corellium's gross revenues through the October 2020 trial date (and as of October 31, 2020), on the basis of Corellium's projection that its Apple Product revenues for

2020 ▮▮▮ would more than double its projection for 2019 ▮▮▮ as reported in Corellium's Amended Answer to Apple Interrogatory No. 11.³

I began by extrapolating Corellium's 2019 gross revenues of ▮▮▮ through November 15, 2019 (per response to Interrogatory No. 10, excluding unexplained revenue) to arrive at extrapolated gross revenues through December 31, 2019 year totaling ▮▮▮. I then computed projected gross revenues of ▮▮▮ for 2020 by doubling this ▮▮▮ extrapolated 2019 total, and prorating the amount through October 31, 2020 (based on days in year).

In sum, I have determined that Corellium's estimated, infringing **gross revenues will total approximately** ▮▮▮ **for all periods through October 31, 2020**. This derived total is comprised of Corellium's reported gross revenues that totaled ▮▮▮ for 2017 and 2018, plus extrapolated gross revenues of ▮▮▮ for the entire year 2019, plus projected gross revenues totaling ▮▮▮ for the first 10 months of 2020.

## C. CORELLIUM'S COSTS AND EXPENSES ATTRIBUTABLE TO THE APPLE PRODUCT

In accordance with the provisions of 17 U.S.C. § 504(b), and having presented proof of Corellium's gross revenue from its infringing activities, the burden now shifts to Corellium to prove its "deductible expenses and the elements of profit attributable to factors other than the copyrighted work." It would appear that these cost and expense attribution determinations could be particularly challenging in this matter, as Corellium has stated the following in each of its answers to Apple Interrogatory No. 10:

▮▮▮

---

³ It is not clear from Corellium's amended response to Interrogatory No. 11 whether the referenced revenue projections only concerned ▮▮▮, or Corellium's entire revenues.

8

███████████████████████████████████████
███████████████████████████████████████
████

Absent product line profit & loss statements, and supporting cost and expense attribution records, the burden for identifying and proving deductible costs and expenses should rest with Corellium.

However, Corellium has not produced sufficient accounting records or supporting transaction documents to permit Apple to corroborate, or confirm any claimed cost or expense deductions. Prior to Corellium's recent production of its "Profit and Loss Detail" QuickBooks records, corresponding annual expenditures reports, and copies of invoices and other transaction documents that concern some of Corellium's reported cost and expense transactions, Corellium had only disclosed the annual cost of goods sold and expense totals set forth in its varying responses to Apple Interrogatory No. 10. In its most recent second amended response to this interrogatory dated February 24, 2020, Corellium reported costs of goods sold totaling ████, and expenses totaling ████, for a combined costs and expense total of ████ for the years 2017 through 2019.

My review of the recently produced Corellium accounting records, and in particular the transactions reported in the QuickBooks cost of goods sold and expense accounts, served to identify over ████ in expenditures for ████████ that apparently relate to Corellium's defense in this litigation, and should not be deducted when determining its profits from infringement. Specifically, I identified ████████ that were paid in 2019 and 2020, including ██████████████████████ ████████, and ██████████████████████ ██████████████████████ presumably for services concerning this litigation. Further, I identified ██████████████████

9

██████████████████████████ for services rendered after this suit was filed in mid-August 2019, also presumably for services concerning this litigation. These litigation related expenditures collectively totalled ████████████████████████ ██████████████, and should not be deducted when determining Corellium's profits from infringement.

We also examined the copies of invoices and other documents that Corellium recently produced concerning its cost of goods sold and expense transactions during periods from August 2017 through November 21, 2019. In sum, these recently produced invoices and other transaction documents concern transactions that **collectively totaled** ██████████, **or a mere 34% of the** ██████████ total costs of goods sold and expenses (for the years 2017 through 2019) that were reported in Corellium's most recent amended response to Apple Interrogatory No. 10, dated February 24, 2020. Our examination of the produced transaction documents identified certain expenses that should not serve as deductions to Corellium's sales (or licensing) of its infringing Apple Product. These identified expenses, that are not attributable to Corellium's infringing sales, included the following: (i) ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████. ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████). In sum, **I have not been able to substantiate Corellium's apparent claim for over** ██████████ **in deductions,** for costs of goods

---

[4] Bates Nos. ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████

10

sold and expenses attributable to its infringing sales from 2017 through 2019, because **Corellium has not produced** invoices and other underlying transaction documentation for approximately 66% of its total reported costs of goods sold and expenses during such period. Further, our identification of more than ███████████████████████████████████████████, serves to raise significant questions concerning the integrity of Corellium's thus far reported cost and expense claims.

### D.  STATUTORY DAMAGES

As an alternative to actual damages and profits, the provisions of 17 U.S.C. § 504(c) and 17 U.S.C. § 1203(c)(3) entitle Apple to seek recovery of statutory damages.

The provisions of 17 U.S.C. § 504(c) entitle Apple to seek recovery of statutory damages based on the number of its works infringed, with statutory damage amounts ranging from not less than $750 or more than $30,000 per work infringed, or up to $150,000 for willful infringements. Applying these ranges to Apple's 22 U.S. Copyright registrations (as listed in Exhibit A to Apple's First Amended Complaint), results in **statutory damages ranging from not less than $16,500 to not more than $660,000 under § 504(c)(1)**, and **not more than $3,300,000 for willful infringements under § 504(c)(2)**. I reserve the right to amend these amounts if the number of infringed works changes, as determined through further discovery in this matter.

Further, the provisions of 17 U.S.C. § 1203(c)(3)(A) entitle Apple to seek recovery of statutory damages based on the number of acts of circumvention under § 1201, with statutory damage amounts ranging from not less than $200 or more than $2,500 per act. Corellium's responses to Apple Interrgatory No. 9 identify ███████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████ Applying the DMCA statutory ranges to these ██████ results in **statutory damages ranging from not less than** ███████████████████████ **for**

11

**§ 1201 violations**. These figures, however, appear from availably produced documents to be an underestimate.

For example, Corellium's Interrogatory Responses do not include 10 additional entities that Corellium reported in a July 2018 pitch deck provided to Apple. Specifically, that pitch deck listed three additional entities as ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████ and seven additional entities as "Customers with Trial Accounts" ███████

███████████████████████████████████████████████ Adding these ten additional accounts to the ██ customer sales identified above, and applying the DMCA statutory ranges to all ███████████████████████████████████████████

███████████ **for § 1201 violations**.

However, this analysis, too, is critically limited in several important respects. First, I understand that another expert in the case is providing the opinion that, the evidence produced to date by Corellium indicates that every time a user directs the Corellium Apple Product to create a new virtual device, Corellium bypasses a series of protective measures each designed to ensure that the version of iOS is what it says it is, and that iOS is installed on authorized Apple hardware, and that, additionally, after a virtual device is created, every time a Corellium user virtually "boots" the virtual device, Corellium again bypasses a series of protective measures designed to ensure that the version of iOS is what it says it is, and that iOS is installed on authorized Apple hardware. I do not presently have any information as to how often Corellium engages in these alleged acts of circumvention, and thus am unable to presently calculate statutory damages based upon them. I further note that it is possible that the cloud subscriptions, which I understand Apple alleges allow Corellium's customers to repeatedly circumvent Apple's security measures each time the subscribers visit the site, could be characterized as multiple acts

of circumvention, rather than as single sales, with each provision of access to the product by cloud-based customers a separate act of circumvention by Corellium. I have not been provided with any information regarding how often Corellium customers access the cloud-based product or how many times Corellium allowed such customers to use the cloud-based product to circumvent Apple security measures, or the number of times Corellium has enabled its on-premises customers to circumvent Apple measures, and thus I reserve the right to supplement this opinion should such information be provided, and such supplementation be appropriate.

It is also possible that Corellium has provided upgrades, support, or services to the on-premises or cloud installations of its product that could likewise be considered additional acts of circumvention. For instance, Corellium's response to Apple's Special Interrogatory No. 2 generally describes ▮▮▮▮ to its Corellium Apple Product, all of which may have involved additional or repeated acts of circumvention. Again, I have not yet been provided with any information regarding such upgrades, support, or services that would enable me to determine whether they should be counted as further acts of circumvention, and thus reserve the right to supplement this opinion should supplementation be warranted.

Furthermore, as mentioned above, Corellium's discovery responses identify ▮▮▮▮ ▮▮▮▮. Each ▮▮▮▮ ▮▮▮▮, should be counted as an additional act of circumvention attributable to Corellium. However, we presently do not have sufficient information to determine the quantity of ▮▮▮▮ Finally, the discovery produced to date for my review does not include information regarding trial customers of Corellium's product, other than those identified on the July 2018 pitch deck. However, the aforementioned July 2018 pitch deck identifies an additional 46 "Companies Who've Requested Accounts." Each shipment of, or provision of access to, these potential customers of the Corellium Apple Product

13

is likewise an act of circumvention attributable to Corellium, as are any additional customer trial accounts provided by Corellium since its formation. Thus, I reserve the right to amend these amounts once further information regarding these additional acts of circumvention is produced in discovery.

I understand that under prevailing law, there are limits on recovering under different legal theories where the underlying conduct is the same. Hence, Apple may ultimately need to elect amongst alternative, available remedies to the extent the underlying conduct overlaps. I reserve the right to update this report, or my testimony at trial, and provide a final calculation to the extent necessary once that election has taken place.

### E. ATTORNEY'S FEES

Finally, my report does not address any attorneys' fees and costs that are awarded as costs of suit pursuant to sections 505 and 1203(b). I understand that Apple is seeking such attorneys' fees and costs, and will document them as appropriate in the event Corellium is held to have engaged in violations of 17 U.S.C. § 501 and § 1201(a)(2) and 1201(b).

### IV. QUALIFICATIONS

I am licensed as both a Certified Public Accountant and an attorney at law in the State of California. I am a Vice President with the financial litigation consulting firm Freeman & Mills, Inc. I have over 35 years of collective financial investigation, audit and legal experience, and for the past 27 years I have specialized in complex forensic accounting investigations and damages analysis. I have previously served as an expert in federal copyright damages matters, including *Reinsdorf v. Skechers U.S.A., Inc., et al., USDC C Ca Case No. CV10-7181-DDP (SSx)*, and *Inter-Avid Productions v. Ventura Content, LTD, et al., USDC C Ca Case No. 11-CV-05119 GHK (VBK)*.

14

A copy of my professional resume, which further describes my experience, publications, prior testimony, previous professional positions and professional affiliations is attached hereto as Exhibit C.

## V.     COMPENSATION

My hourly billing rate for investigation and analysis on this matter is $520 per hour. The hourly billing rates for my assistants on this engagement range from $295 to $195 per hour. The positions articulated herein are my own. My payment is not contingent on my findings or on the outcome of this case.

Executed this 3rd day of March 2020, in Los Angeles, California.

*David B. Connelly*
David B. Connelly, CPA, JD