# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-cv-81160-RS

APPLE INC.,                     §
                                §
          Plaintiff,            §
                                §
     v.                         §
                                §
CORELLIUM, LLC,                 §
                                §
          Defendant.            §
_____

REMOTE ORAL AND VIDEOTAPED DEPOSITION OF

JAMES OLIVIER, Ph.D.

April 24, 2020
_____

*********************************************************
          DESIGNATED ATTORNEYS' EYES ONLY
*********************************************************


          REMOTE ORAL AND VIDEOTAPED DEPOSITION OF
JAMES OLIVIER, Ph.D., located in Dallas, Texas,
produced as a witness at the instance of the Plaintiff,
and duly sworn, taken in the above-styled and numbered
cause on April 24, 2020, from 10:10 a.m. to 7:23 p.m.,
before Joseph D. Hendrick, Certified Shorthand Reporter
in and for the State of Texas, reported by machine
shorthand, pursuant to Notice and the Federal Rules of
Civil Procedure and any provisions stated on the record
or attached hereto.

Job No. 4082349




                                            Page 1

ATTORNEYS EYES ONLY

```
 1                    A P P E A R A N C E S
 2     FOR THE PLAINTIFF APPLE INC.:
            Gabriel S. Gross (Remote via Zoom)
 3          LATHAM & WATKINS LLP
            140 Scott Dr.
 4          Menlo Park, CA 94025
            Telephone (650) 463-2628
 5          gabe.gross@lw.com
 6          Jeremiah Egger (Remote via Zoom)
            LATHAM & WATKINS LLP
 7          555 11th Street NW, Suite 1000
            Washington, DC 20004-1327
 8          Telephone (202) 637-2297
            jeremiah.egger@lw.com
 9
       FOR THE DEFENDANT CORELLIUM, LLC
10          David Hecht (Remote via Zoom)
            HECHT PARTNERS LLP
11          20 West 23rd St.
            New York, NY 10010
12          dhecht@hechtpartnersllp.com
13     ALSO PRESENT:
            David Crenshaw, Videographer (Remote via Zoom)
14
15
16
17
18
19
20
21
22
23
24
25
```

Page  2

ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | BY MR. GROSS: | 10:45:16 |
| 2 | Q.    And what did you do to do that? | 10:45:16 |
| 3 | A.    I reviewed some literature on copyrights. | 10:45:18 |
| 4 | I also reviewed an expert report by Mr. Asay as to his | 10:45:21 |
| 5 | understanding of the copyright law.  I understand he is | 10:45:33 |
| 6 | a professor at a university in copyright law. | 10:45:37 |
| 7 | Q.    Anything else you did to help understand | 10:45:43 |
| 8 | concepts of copyright law? | 10:45:46 |
| 9 | MR. HECHT:  Objection, vague. | 10:45:49 |
| 10 | A.    I guess I've had discussions with | 10:45:51 |
| 11 | attorneys. | 10:45:55 |
| 12 | BY MR. GROSS: | 10:45:56 |
| 13 | Q.    Anything else? | 10:45:59 |
| 14 | A.    Not that I recall sitting here. | 10:46:00 |
| 15 | Q.    And how did the Norton Rose attorney who | 10:46:01 |
| 16 | first contacted you about the case reach out to you? | 10:46:06 |
| 17 | A.    By telephone.  I don't recall exactly. | 10:46:11 |
| 18 | Q.    Have you met any of the personnel at the | 10:46:17 |
| 19 | defendant company, Corellium, before? | 10:46:21 |
| 20 | A.    No. | 10:46:26 |
| 21 | Q.    Never met Chris Wade? | 10:46:27 |
| 22 | A.    I've only spoken to him on the phone. | 10:46:31 |
| 23 | Q.    Let me ask you the same question about the | 10:46:36 |
| 24 | company's CEO Amanda Gorton.  Have you ever met her? | 10:46:38 |
| 25 | A.    No. | 10:46:43 |

Page 33

ATTORNEYS EYES ONLY

```
 1        Q.     Spoken with her by phone?              10:46:43

 2        A.     I don't recall if I did or not.  I don't   10:46:46

 3    know if she was on some of the conference calls we had   10:46:49

 4    with the attorneys or not.                     10:46:52

 5        Q.     How about David Wang?                  10:46:53

 6        A.     Again, I don't recall one way or another if   10:46:56

 7    he was on the conference calls we had with the    10:46:59

 8    attorneys or not.                              10:47:02

 9        Q.     Let me ask the same question about someone   10:47:03

10    named Stan Skowronek?                          10:47:06

11        A.     Again, same answer.                   10:47:10

12        Q.     So the only person you remember speaking   10:47:11

13    with from Corellium is Chris Wade, is that fair?   10:47:13

14        A.     Directly, yes.                        10:47:18

15        Q.     About how many times?                 10:47:20

16        A.     Three times.  Maybe four.             10:47:22

17        Q.     And who else, if anyone, joined you on your   10:47:27

18    phone calls with Mr. Wade?                     10:47:30

19        A.     Attorneys from the two law firms that are   10:47:32

20    involved in this case.                         10:47:38

21        Q.     So I think the firms involved in the case   10:47:40

22    may have changed over time.  Did you speak with   10:47:43

23    Mr. Wade and anybody from Mr. Hecht's firm?       10:47:47

24        A.     I think Mr. Hecht was on some of the phone   10:47:50

25    calls.                                         10:47:53
```

Page 34

ATTORNEYS EYES ONLY

```
 1        A.      Correct.                                11:44:54

 2   ███ ████████████████████████████████   ████████

     ███████████████████████████████████ ███████   ████████

     ████████████████████                           ████████

     ██ █████████████████████████               ████████

     █████████████████████████████████████   ████████

     ██████████████████████████████████████   ████████

     ████████      I wanted to have a really good    11:45:23

 9   understanding of what the IPSW files were, how readily  11:45:26

10   they were available and those kind of things.  So I    11:45:31

11   went to the different places in Apple where you can    11:45:37

12   download the files, I downloaded them and looked in --  11:45:40

13        Q.      What were the last few words of your    11:45:53

14   answer, sir?  You looked in?                      11:45:55

15        A.      Into the files.  Yes, into the IPSW files  11:45:58

16   to see what other files were within it.            11:46:03

17        Q.      All right.  I'd like to focus on the work  11:46:06

18   you did using the Corellium product to download IPS    11:46:09

19   files.  And before I get into that, you mentioned you    11:46:14

20   wanted to have a really good understanding of what the  11:46:19

21   IPSW files were.  So can you tell me, please, what --    11:46:21

22   what is an IPSW file?                              11:46:25

23        A.      The ones we're talking about here are a  11:46:27

24   restore file that contains a number of other files    11:46:29

25   within it and some disk files of the bytecode        11:46:33
```

Page 69

ATTORNEYS EYES ONLY

```
1    associated with the operating system.              11:46:43

2         Q.    Did you say bytecode, sir?              11:46:49

3         A.    Yes.  Object code.  Bytecode.           11:46:51

4         Q.    The IPSW files you reviewed, they contained  11:46:57

5    the code for the operating system, right?          11:47:03

6         A.    Among other things, true.  They can also  11:47:06

7    contain some device drivers it looks like.  There was  11:47:09

8    three sets of disk object codes in them.            11:47:14
```

Veritext Legal Solutions
866 299-5127

ATTORNEYS EYES ONLY

```
 1      updating a device over the air, it's for updating one    12:04:02

 2      that's connected to a computer when you are doing a      12:04:05

 3      restore.                                                 12:04:07

 4           Q.    What do you mean when you say "a restore      12:04:09

 5      file goes through iTunes," sir?                          12:04:11

 6           A.    Oh.  So, the -- the -- if you're restoring    12:04:15

 7      a product, an Apple device, it goes through iTunes.      12:04:21

 8           Q.    Are you saying that's the only way to         12:04:32

 9      restore an Apple device is to go through iTunes?         12:04:34

10           A.    No.  But I'm saying when you are using a      12:04:37

11      restore file, you are going through iTunes.  There's     12:04:39

12      other files out there that they use to update the        12:04:43

13      systems.                                                 12:04:47

14           Q.    But is it your testimony that the only way    12:04:51

15      someone can restore an iOS device is to go through       12:04:55

16      iTunes?                                                  12:04:59

17           A.    I think that was -- I put it that that's my   12:04:59

18      understanding.                                           12:05:04

19           Q.    What's that based on?                         12:05:04

20           A.    Discussions with Chris Wade.                  12:05:06

21           Q.    Did you base it on any information from       12:05:11

22      Apple?                                                   12:05:17

23           A.    No.                                           12:05:25

24           Q.    Anything else you based that understanding    12:05:26

25      on?                                                      12:05:28
```

Page 82

ATTORNEYS EYES ONLY



```
1        ██████████████████████████████████     ████████

         ████  ████████████████████████████     ████████

         ████████████████████████████████       ████████

         ████████████████████████████            ████████

5        Q.    Now, you just referred us to statements you   12:13:43

6   wrote in Paragraph 69 of Exhibit 1, right?              12:13:45

7        A.    Correct.                                      12:13:48

8        Q.    ██████████████████████████████     ████████

    ██████████████████████████████████            ████████

    ████████████████████                          ████████

         ██    ████████                           ████████

         ██    ████████████████████               ████████

    ██████████████████████████████████            ████████

    ██████████████████████                        ████████

         ██    ████████                           12:14:11

16       ██    ██████████████████████             ████████

    ████████████████████████████████████████     ████████

         ██    ██████████████████                 ████████

         ██    ██████████████████████████         ████████

    ████████████████████                          ████████

         ██    ██████████████████                 ████████

22       Q.    And in paragraph -- so I'm sorry.  May I     12:14:38

23   ask you a new question?                                12:14:43

24       A.    Sure.                                        12:14:44

25       Q.    Was your conversation -- your conversation   12:14:44
```

Page 88

ATTORNEYS EYES ONLY

```
1    with Mr. Wade the only basis for your statements █████   ████████
█    ██████████████████   in Paragraph 69?              12:14:53
3         A.    No.   I went and researched ██████████   ████████
█    ████████████to kind of just make sure that         12:14:59
5    everything was -- made sense I was saying in it.  So I   12:15:06
6    went and looked at the internet █████████████   █████████
█    ██████████████████████████                          12:15:13
8         ██   █████████████████                          12:15:14
9         A.    Like I said, I can't recall their name.   12:15:18
10        Q.    That doesn't ring a bell?                 12:15:20
11        A.    I don't know one way or another.          12:15:21
12        Q.    Okay.  So other than the internet research 12:15:23
13   you conducted that you don't remember and your      12:15:27
14   conversation with Mr. Wade, is there any other      12:15:29
15   information you relied on ████████████████   █████████
█    ████████                                            12:15:36
17        A.    No, I -- I wouldn't say the internet      12:15:37
18   research was I don't remember.  I remember doing     12:15:39
19   internet research and verifying that this was correct. 12:15:42
20        Q.    What was correct, sir?                    12:15:46
21        A.    █████████████████████████████   █████████
█    █████████████████████████████████████               12:15:52
23        Q.    Okay.  Aside from your internet research   12:15:56
24   and your conversation with Mr. Wade, is there any other 12:15:59
25   information you relied on to form the basis for your 12:16:01
```

Page 89

ATTORNEYS EYES ONLY

```
 1    statements ███████████████████████████        12:16:05

 2        A.     No, that's the basis.               12:16:08

 3        Q.     In your Paragraph 69 --             12:16:13

 4             MR. HECHT:  We've been going -- I was just   12:16:14

 5    going to say we've been going about another hour.  Do   12:16:16

 6    you want to take a lunch break at some point soon?   12:16:18

 7             MR. GROSS:  Tell what you, let me wrap up   12:16:23

 8    this line of questioning, please, then we can talk   12:16:24

 9    about our next break.                          12:16:26

10             MR. HECHT:  You got it.                12:16:27

11    BY MR. GROSS:                                  12:16:29

12        Q.     In Paragraph 69, Dr. Olivier, ████     ████

██    ████████████████████████████████████          ████

██    █████████████████████████████████             ████

██    ████████████████████                          ████

██         ██    ████████                           12:16:42

17        Q.    ████████████████████████             ████

██    ███████████████████████████████████           ████

██    ████████████████████                          ████

██         ██    ███████████████                    12:16:50

21        Q.    ████████████████████████             ████

██    ██████████████████████████████████████        ████

██    ████████████████████████████████████          ████

██    ████████                                      ████

██         ██    ████████                           12:17:08
```

Page 90

ATTORNEYS EYES ONLY



| 1 | A. | Yes. | 13:33:17 |
|---|---|---|---|
| 2 | Q. | ███████████████ | ███ |

14    Q.    Where did you hear that from?    13:34:17

15    A.    From Chris Wade.    13:34:19

16    Q.    Any other source for your understanding ██    13:34:21

17    ████████████████████    13:34:23

18    A.    No.    13:34:27

19    Q.    And are there any other reasons you heard    13:34:29

20    from Mr. Wade ███████████████    13:34:32

21    ████████    13:34:35

22    A.    No.    13:34:37

23    Q.    When is the last time you used Corellium's    13:34:40

24    product?    13:34:44

25    A.    Sometime in March.    13:34:50

Page 113

ATTORNEYS EYES ONLY



1        A.      No.                                              13:59:46

2        Q.      ███████████████████              ████████

■        ■       ███████████████████████████      ████████

■        ███████████████     ██████████████████   ████████

■        ■       ███████████████████████████      ████████

■        ████████████████  █████████████████████  ████████

■        ████████████████ ████████████████████    ████████

■        ███████████████████████████████████████  ████████

■        ██████████████████████████  ██████████   ████████

■        ████████████████████                        14:00:10

11    BY MR. GROSS:                                      14:00:13

12        Q.      You don't use a web browser on your phone?   14:00:13

13        A.      Typically not, no.                           14:00:16

14        Q.      Don't use email on your phone?               14:00:18

15        A.      ███████████████████████████      ████████

■        ████████████████████████████████████████   ████████

■        ███████████████████████████                  14:00:30

18        Q.      Because you didn't set it up to work?        14:00:32

19        A.      Because I couldn't get it to work.           14:00:35

20        Q.      With your email account?                     14:00:40

21        A.      Right.  But that could have been a problem   14:00:42

22    with my email account.  I don't know.               14:00:46

23        Q.      ███████████████████████████      ████████

■        ████████████████████████████████████████   ████████

■        ███████████████████████████████████         14:01:13

                                                     Page 134

ATTORNEYS EYES ONLY



```
 1       A.              ███████████     this is an        14:01:21

 2   understanding I got from Chris Wade.  ███████    ███████

 █   ███████████████████████████████████████           ███████

 █   ████████████████████████████████████████████████  ███████

 █   ████████████                                       14:01:44

 6        ██   ██████  █████████████████████████████    ███████

 █   ███████████████████████████████████████████       ███████

 █   ███████████████████████████                        ███████

 █        ██   █████████████████                        14:02:00

10       Q.    All right.  So you won't be offering      14:02:02

11   additional opinions on that topic at trial?         14:02:05

12       A.    No, I don't plan to.                       14:02:09

13       Q.    Let's turn to the next paragraph, third -- 14:02:10

14   excuse me.  Not the next paragraph.  The next screen 14:02:16

15   capture shown in your report which is on page 27.  What 14:02:19

16   is displayed at the top of page 27, sir?             14:02:26

17       A.    ██████████████████████████████            ███████

 █   ███████████████████                                 ███████

 █         ██       ██                                   ███████

 █         ██       ██   ██████████████████████          ███████

 █   ██████     ███████████████████████                 ███████

 █         ██   █████████████████████                    ███████

 █         ██       █████                                ███████

 █         ██   ████████████████████████████            ███████

 █   ███████████████████████████████████                14:02:59
```

Page 135

ATTORNEYS EYES ONLY



1        A.    I do not.                                14:12:41

2              MR. HECHT:  I was going to say vague.    14:12:42

3    BY MR. GROSS:                                      14:12:44

4

                                                        14:13:59

                                                        Page 142

ATTORNEYS EYES ONLY



```
 1    ███    ███    ██████████              ████
 ■    ███    ██████████    █████████        ████
 ■    █████████████████                          14:14:07
 4         Q.      What's that based on?           14:14:09
 5         A.      I think it's based on conversations with  14:14:14
 6    Chris Wade.                                   14:14:17
 7         Q.      Anything else?                   14:14:19
 8         A.      No.                              14:14:24
 9         ███    █████    ██████████             ████
 ■    ████████████████████████████               ████
 ■    ████████████████████████████               ████
 ■    █████████████████████████                  ████
 ■    ████████████                               ████
 ■         ██    ████                             ████
 ■         ██    ██████████████                  ████
 ■    █████████████████████                       ████
 ■         ██    ████                             ████
 ■         ██    ██████████████                  ████
 ■         ██    ██████████████                  ████
 ■    █████ ████████████████                     ████
 ■    ████████                                    ████
 ■         ██    ████    █████████████           ████
 ■    ██████████████████████                      ████
 ■    █████████████████████████
 ■    ████████████████████                         14:15:15
```

Page 143

```
 1    the copyrighted work that it copied relevant to the      15:37:02

 2    fair use analysis?                                       15:37:06

 3            MR. HECHT:  Objection, calls for a legal         15:37:07

 4    conclusion.                                              15:37:09

 5        A.    That it's not making -- so the third factor    15:37:09

 6    is, "The amount and substantiality of the portion used  15:37:13

 7    in relation to the copyright work as a whole." █         ████████
```

23            MR. HECHT:  Objection.  Calls for                15:38:12

24    speculation.                                             15:38:14

25        A.    Yeah, I didn't do that analysis.               15:38:14

Veritext Legal Solutions
866 299-5127

ATTORNEYS EYES ONLY



ATTORNEYS EYES ONLY



1      ▮    ▮▮▮▮▮        ▮▮▮▮▮

▮      ▮    ▮▮▮▮▮▮▮▮▮▮▮    15:39:31

3      A.     Because in conversation with Chris Wade    15:39:33

4    they said ▮▮▮▮▮▮▮▮▮    15:39:36

5      Q.     Okay. You never checked yourself though ▮   15:39:39

6      ▮▮▮▮▮▮▮▮▮▮     ▮▮▮▮    15:39:44

▮      ▮    ▮▮▮▮▮    15:39:44

8      Q.     Chris Wade was your exclusive source of    15:39:46

9    that information?    15:39:49

10      A.     Yes, that's why --    15:39:52

11      MR. HECHT: Objection, asked and answered.    15:39:53

12      A.     Yes, that's why I cited it here.    15:39:54

13    BY MR. GROSS:    15:40:01

14      Q.     Okay. You also described a fourth factor    15:40:02

15    in your fair use analysis which is, "The effect of the    15:40:03

16    use upon the potential market for or value of the    15:40:06

17    copyrighted work," right?    15:40:09

18      A.     Correct.    15:40:11

19      ▮    ▮▮▮    ▮▮▮▮▮▮    15:40:15

20    ▮▮▮▮▮▮▮▮▮▮▮▮    ▮▮▮▮    15:40:15

▮    ▮▮▮▮▮▮    ▮▮▮▮

▮      ▮    ▮▮▮▮▮▮▮▮    ▮▮▮▮

▮    ▮▮▮▮▮▮    ▮▮▮▮

▮      ▮    ▮▮▮▮▮▮▮▮▮    ▮▮▮▮

▮    ▮▮▮▮▮▮▮▮    15:40:42

Page 195

ATTORNEYS EYES ONLY





1        A.    I've been given from Chris ██████  ████

16:36:25

Page 224

ATTORNEYS EYES ONLY

1        ██████████████████              ███████████

██   ████   █████████████████████████   ███████████

██   ████████████████████   █████████████   ███████████

██   ███████████████████              17:59:10

5        Q.    And you wrote that, "Many researchers   17:59:13

6   believe that Apple uses open source software in its   17:59:16

7   kernel," right?                                17:59:20

8        A.    Correct, and I refer to the section above   17:59:20

9   where I document that.                         17:59:22

10       Q.    You then look at the source code that was   17:59:30

11   provided along with the copyright registrations in this   17:59:33

12   case when you were preparing the report in Exhibit 1?   17:59:37

13       A.    No, I did not.                        17:59:41

14       Q.    We had talked a little earlier today about   17:59:53

15   your opinions in Paragraph 90, right, sir?  And this is   17:59:56

16   about the amount and substantiality of the code that   18:00:01

17   was used, correct?                            18:00:04

18       A.    Correct.                            18:00:05

19       ████   █████████████████████              ███████████

██   ████████████████████████████████████   ███████████

██   ██████████████████████              ███████████

██   ████   ████████              ███████████

██   ████   ██████████████████████              ███████████

██   █████████████████████████████████████   ███████████

██   ████   ███████████              18:00:27

Page 263

ATTORNEYS EYES ONLY

```
1        Q.    And you cite your conversations with Chris    18:00:28

2   Wade for those facts, right?                             18:00:31

3        A.    Correct.                                      18:00:33

4        Q.    And you didn't look at any source code        18:00:34

5   yourself to confirm those statements, did you?           18:00:36

6        A.    I did not.                                    18:00:41

7              MR. HECHT:  Objection, vague.                 18:00:42

8   BY MR. GROSS:                                            18:00:48

9        Q.    You trusted Mr. Wade was giving you           18:00:48

10  accurate and complete information, right?                18:00:50

11       A.    Yes.                                          18:00:53

12       Q.    But you didn't independently verify that?     18:00:54

13       A.    Correct.                                      18:01:02

14       Q.    All right.  Let's turn to Section 2 of your   18:01:33

15  opening report.  That begins on Paragraph 94, right,     18:01:36

16  sir?                                                     18:01:43

17       A.    Correct.                                      18:01:44

18       Q.    And in this point -- or in this part of       18:01:45

19  your report you are addressing Apple's allegations       18:01:48

20  under Section 1201 of the DMCA, right?                   18:01:53

21       A.    Correct.                                      18:01:57

22       Q.    And you quote some of the statutory           18:01:57

23  language in Paragraph 94, right?                         18:02:02

24       A.    Correct.                                      18:02:04

25       Q.    In Paragraph 95 you write, "I also            18:02:06
```

Page 264

ATTORNEYS EYES ONLY

```
1        A.     So I was aware of that.                18:41:04

2   BY MR. GROSS:                                      18:41:08

3        Q.     And so Dr. Nieh described how the Corellium  18:41:08

4   Apple Product appeared based on the information     18:41:13

5   available to him, correct?                          18:41:14

6        A.     He --                                   18:41:17

7               MR. HECHT:  Objection.  Assumes facts.  18:41:17

8   Calls for speculation.                              18:41:20

9        A.     He reached a conclusion not based on facts  18:41:28

10  as an example.                                      18:41:32

11  BY MR. GROSS:                                       18:41:35

12       █        ████████████████████        ██████

    █    █████████████████████████        ██████

    █    █   ██████                        18:41:41

15       Q.     And you learned that because you had a  18:41:41

16  private conversation with Chris Wade about it, right?  18:41:44

17       A.     Correct.                                18:41:47

18       Q.     Dr. Nieh wasn't a part of that          18:41:48

19  conversation, was he?                               18:41:50

20       A.     I hope not.                             18:41:51

21       Q.     Was he, sir?                            18:41:54

22       A.     No, he was not.                         18:41:55

23       █      ███████████████████████      ██████

    █    ███████████████████████████      ██████

    █    ███████████████████████        18:42:21
```

Page 282

ATTORNEYS EYES ONLY

```
1    ████████████████████████████████  ███████
▮    ███████████                        18:56:47
3         Q.    And did you see anything in any of   18:56:52
4    Dr. Nieh's reports in this case that suggested to you   18:56:55
5    he agreed with you that any changes made by Corellium   18:56:58
6    are so transformative that they would constitute fair   18:57:02
7    use?                                      18:57:05
8         A.    No, I did not.                 18:57:08
9         Q.    Do you need a break, Dr. Olivier?  I heard   18:57:25
10   you coughing a moment ago.               18:57:27
11        A.    I'm fine.                       18:57:29
12        Q.    Okay.  All right.  Let's turn to   18:57:30
13   Paragraph 27.  That's where you began a section of your   18:57:54
14   rebuttal report titled ███████████████████  ███████
▮    ████████████████████████               18:57:59
16        Do you see that, sir?               18:58:04
17   A.    Yes, I do.                          18:58:05
18        Q.    All right.  ████████████████  ███████
▮    ██████████████████████████████████████  ███████
▮    █████████████████████████████████       ███████
▮    ███████████████████████████████████     ███████
▮              █████████                      ███████
▮         ██   ███████                        ███████
▮         ██   ████████████████████████       ███████
▮    ███████████████████████████████████      18:58:27
```

Page 294

ATTORNEYS EYES ONLY



| 1 | right? | 18:58:31 |
| 2 | A.      Correct. | 18:58:31 |
| 3 | Q.      All right.  Did you rely on anything else | 18:58:32 |
| 4 | to satisfy yourself that ▮▮▮▮▮▮ | ▮▮▮ |
| ▮ | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | ▮▮▮ |
| ▮ | ▮▮▮ | 18:58:41 |
| 7 | A.      Yes. | 18:58:42 |
| 8 | Q.      What else did you rely on? | 18:58:43 |
| 9 | ▮   ▮▮▮▮▮▮▮▮▮▮▮ | ▮▮▮ |
| ▮ | ▮▮▮▮▮▮▮▮▮ | ▮▮▮ |
| ▮ | ▮▮▮▮▮▮▮▮▮ | ▮▮▮ |
| ▮ | ▮▮▮▮▮▮▮▮▮▮ | ▮▮▮ |
| ▮ | ▮▮▮▮▮▮▮ | ▮▮▮ |
| ▮ | ▮▮▮▮▮▮▮ | ▮▮▮ |
| ▮ | ▮▮▮▮ ▮▮▮▮▮ | ▮▮▮ |
| ▮ | ▮▮▮▮▮▮ So this was | 18:59:22 |
| 17 | further confirmation of what Mr. Wade had told me. | 18:59:30 |
| 18 | ▮   ▮▮▮▮▮▮▮▮▮ | ▮▮▮ |
| ▮ | ▮▮▮▮▮▮▮▮ | ▮▮▮ |
| ▮ | ▮▮▮▮▮▮ | ▮▮▮ |
| ▮ | ▮  ▮▮ | ▮▮▮ |
| ▮ | ▮  ▮▮▮▮▮▮▮ | ▮▮▮ |
| ▮ | ▮  ▮▮▮▮▮▮▮▮ | ▮▮▮ |
| ▮ | ▮▮ | ▮▮▮ |
| ▮ | ▮  ▮▮ ▮▮▮▮▮ | 18:59:54 |

Page 295

ATTORNEYS EYES ONLY



19:01:27

Page 296

ATTORNEYS EYES ONLY



19:02:33

20  BY MR. GROSS:                                          19:02:39

21       Q.     Are you aware that Corellium has publicly   19:02:39

22  stated that its product could run any version of iOS?  19:02:43

23              MR. HECHT:   Objection.   Lacks foundation.  19:02:47

24       A.     I have seen that, that marketing blurb, and  19:02:48

25  I specifically discussed with Chris that and he told me  19:02:53

Page 297

ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | that was incorrect. | 19:02:56 |
| 2 | BY MR. GROSS: | 19:02:59 |
| 3 | Q.    That was -- is that the tweet you are | 19:02:59 |
| 4 | referring to? | 19:03:02 |
| 5 | A.    Yes. | 19:03:03 |
| 6 | (Marked Deposition Ex. 9) | 19:03:03 |
| 7 | BY MR. GROSS: | 19:03:03 |
| 8 | Q.    Let's take a look at it.  I think it will | 19:03:03 |
| 9 | be Exhibit 8 in your Exhibit Share folder.  I'm | 19:03:06 |
| 10 | skipping over -- no, forget it.  It's Exhibit 9.  Do | 19:03:11 |
| 11 | you see that, sir?  I think I skipped over 8 so we'll | 19:03:15 |
| 12 | ignore that for now.  I think I've got the wrong | 19:03:18 |
| 13 | document -- no, I've got the right document.  Sorry. | 19:03:24 |
| 14 | Bear with me, please. | 19:03:27 |
| 15 | Let me know when you have Exhibit 9 in | 19:03:29 |
| 16 | front of you, please. | 19:03:31 |
| 17 | A.    Yes, I see it. | 19:03:33 |
| 18 | Q.    All right.  Have you seen the document in | 19:03:34 |
| 19 | Exhibit 9 before? | 19:03:36 |
| 20 | A.    I think it was mentioned in Dr. Nieh's | 19:03:38 |
| 21 | report. | 19:03:41 |
| 22 | Q.    All right.  Let's take a look, please, at | 19:03:42 |
| 23 | the third page of Exhibit 9 which contains a printout | 19:03:47 |
| 24 | of a tweet from Corellium.  Let me know when you have | 19:03:52 |
| 25 | that in front of you, sir. | 19:03:55 |

Veritext Legal Solutions
866 299-5127

ATTORNEYS EYES ONLY

| | | |
|---|---|---|
| 1 | A.     I see it. | 19:03:57 |
| 2 | Q.     Okay.  Is this a tweet that you have seen | 19:03:57 |
| 3 | before? | 19:04:01 |
| 4 | A.     I believe so, yes. | 19:04:01 |
| 5 | Q.     Okay.  If you can see in about the middle | 19:04:02 |
| 6 | of the page this tweet has a time stamp of 8:21 p.m. on | 19:04:07 |
| 7 | January 8, 2018. | 19:04:11 |
| 8 | Do you see that, sir? | 19:04:12 |
| 9 | A.     Yes, I do. | 19:04:13 |
| 10 | Q.     Okay.  So this appears to be a tweet from | 19:04:14 |
| 11 | the @CorelliumHQ account, right? | 19:04:17 |
| 12 | A.     Correct. | 19:04:21 |
| 13 | Q.     That was made in January 2018? | 19:04:21 |
| 14 | A.     That's what it appears to be, yes. | 19:04:27 |
| 15 | Q.     All right.  And in it the company says, | 19:04:28 |
| 16 | "Our Corellium hypervisor for ARM enables us to run | 19:04:33 |
| 17 | virtual iPhones in the cloud with game-changing | 19:04:40 |
| 18 | features like run any version of iOS." | 19:04:43 |
| 19 | Do you see that part, sir? | 19:04:46 |
| 20 | A.     Yes, I do. | 19:04:47 |
| 21 | Q.     All right.  Now, the -- the image beneath | 19:04:47 |
| 22 | the text appears to be a screen grab of the interface | 19:04:50 |
| 23 | of the Corellium virtualization product, right? | 19:04:53 |
| 24 | A.     My understanding from talking to Chris is | 19:05:00 |
| 25 | ████████████████████████████████████████████ | 19:05:02 |

Page 299

ATTORNEYS EYES ONLY

```
1    ███████████████████████████████████   19:05:06

2    ███████████████████                   19:05:10

3         Q.    Okay.  So it appears to be a screen grab of   19:05:13

4    the Corellium product, right?         19:05:17

5         A.    Yes, █████████████████████   19:05:18

6    █████████████████████                 19:05:22

7         Q.    And in this image that appears to be a   19:05:22

8    screen grab of a Corellium product, there's some   19:05:25

9    details about the virtual machine that says iPhone 6   19:05:28

10   iOS 9.  Do you see that towards the top of the image,   19:05:33

11   sir?                                  19:05:35

12        A.    Yes, I do.                  19:05:36

13        Q.    All right.                  19:05:37

14        A.    I'm trying to pull it up.  One second.   19:05:39

15   Okay.                                 19:05:41

16        Q.    Yeah.  Feel free.  Okay.  All right.  You   19:05:41

17   saw that section where in the image on this tweet it   19:05:43

18   shows a virtual machine described as iPhone 6 iOS 9?   19:05:47

19        A.    Yes, there's an image in this tweet that   19:05:53

20   has that printed on it.               19:05:56

21        Q.    All right.  So at least in January 2018   19:05:57

22   Corellium was tweeting publicly to its customers that   19:06:00

23   its product could run any version of iOS and this   19:06:04

24   marketing image appears to show a virtual iPhone 6   19:06:08

25   running iOS 9, right?                 19:06:12
```

Page 300

```
1        A.     Yes, this marketing image appears to show    19:06:14

2    that.                                                   19:06:18

3        ▆▆ᵀᴱᴰ  ████████████████████        ███████

     ▌        ▆▆   ███████                                   19:06:21

5        Q.     -- I take it?  So --                         19:06:22

6               MR. HECHT:  Asked and answered.              19:06:24

7    BY MR. GROSS:                                           19:06:25

8        Q.     -- this was a false -- this was a false      19:06:26

9    statement that Corellium was making to the consuming    19:06:28

10   public?                                                 19:06:30

11              MR. HECHT:  Objection.  Lacks foundation.    19:06:31

12   Mischaracterizes.                                       19:06:33

13       A.     I don't know why they made this statement    19:06:39

14   to the public.                                          19:06:40

15   BY MR. GROSS:                                           19:06:44

16       Q.     But you know it was not true, right?         19:06:44

17       A.     I know now that, ████████████████  ████████

     ▌  ████████████████████████████████████████  ████████

     ▌  ███████████                                          19:06:59

20       Q.     All right.  Let's turn to Paragraph 33 of    19:07:14

21   your report, please, the rebuttal report.  And that is  19:07:17

22   Exhibit 6, sir.  Do you have that in front of you?      19:07:32

23       A.     Not quite yet.  I had to open up -- back up  19:07:42

24   again.                                                  19:07:47

25       Q.     Okay.                                        19:07:47

                                                             Page 301
```