UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:19-cv-81160-RS

APPLE INC.,

    Plaintiff,

v.

CORELLIUM, LLC,
    Defendant.

_____/

### DEFENDANT CORELLIUM, LLC'S *DAUBERT* MOTION TO PRECLUDE CERTAIN TESTIMONY OF DR. JASON NIEH AND INCORPORATED MEMORANDUM OF LAW

Defendant Corellium, LLC ("Defendant"), by and through undersigned counsel, and pursuant to the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), Federal Rules of Civil Procedure 26 and 37, Rules 402, 403 and 702 of the Federal Rules of Evidence, and Local Rule 7.1, hereby moves this Court for an order to exclude the proposed expert testimony of Dr. Jason Nieh, the infringement expert of Plaintiff Apple, Inc. ("Plaintiff") In support of this motion, Plaintiff states:

CASE NO: 9:19-cv-81160-RS

## **INTRODUCTION**

Despite the clear subject matter of the case – Apple's copyright registrations-in-suit – Apple attempts to circumvent the U.S. Copyright Office, in violation of the Supreme Court's recent decision in *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, to inject irrelevant and nonprobative "expert" testimony from Dr. Nieh relating to iOS generally. 139 S. Ct. 881, 886–87, 203 L. Ed. 2d 147.

Dr. Nieh, a professor of Computer Science, has never offered testimony in a copyright case or a case involving Digital Millennium Copyright Act ("DMCA") claims; his experience as a technical expert is limited to patent litigation.  Dr. Nieh misunderstood the scope of the copyright registrations-in-suit on various versions of Apple's iOS mobile operating system, which only cover "[n]ew and revised computer program" code in each version—and specifically exclude previously published Apple material from earlier versions of iOS.  When asked if he had reviewed the first of the copyright registrations asserted by Apple, [REDACTED]

Dr. Nieh admittedly took no steps to determine the extent of the new and revised code for each version of iOS. Without conducting that analysis, Dr. Nieh's opinions are fundamentally flawed as they are not tied to the intellectual property at issue in this litigation.[1]  For example, while Dr. Nieh opines that the iOS image is "modified" by Corellium, he does not opine that any of the "new and revised" code covered by any of the registrations-in-suit have been modified.  His opinions are based on a single allegation: that Corellium's accused product copies and loads Apple's publicly available container file, called an IPSW, which contains iOS.  However, Nieh

---

[1] Apple's claims in this case are specific: Apple alleges direct federal copyright infringement under 17 USC 501 and identifies the allegedly infringed copyright registrations with particularity in Exhibit A to its Amended Complaint.  Dkt. 56-1.

2

does not analyze what was allegedly copied from the IPSW, and otherwise distributed and/or modified.

Dr. Nieh also offers opinions related to Apple's Digital Millennium Copyright Act (DMCA) claim, regarding alleged modifications made to the iOS image avoid, fool, or bypass technological protection measures. But Dr. Nieh admits that the unencrypted iOS image, which contains code protected by the registrations in suit, is freely available on Apple's servers. Hecht Decl. Ex A. at 48:5-11. Dr. Nieh doesn't know but "expected" that encrypted files within would be unencrypted by Corellium—but offers no evidence of such. Instead, Dr. Nieh focused on the ████████ which does not protect the code covered by the copyright registrations-in-suit—it simply ensures that the code runs on an Apple device. That kind of protection is not covered by the DMCA, which specifies that the circumvention must protect access to the copyrighted work, which is available in the IPSW file. In short, Dr. Nieh is focused on protection that is inapplicable to Apple's DMCA claim.

On top of these glaring issues with Dr. Nieh's opinions, Apple submitted a supplemental 290-page report from Dr. Nieh on May 2, with entirely new opinions that should be stricken. While the parties agreed that supplemental reports would be allowed for analysis of any material produced after April 13, 2020, Dr. Nieh's report does not address any such material. Rather, Dr. Nieh has developed more fulsome opinions that he could have, and should have, reached earlier. His supplemental report takes unfair advantage of shortcomings he learned during deposition, and is fundamentally unfair as Apple has completely disregarded the Court's schedule for expert discovery and the limited agreement for supplemental reports between the parties. Apple cannot be permitted to sandbag Corellium with Dr. Nieh's voluminous expert report "do-over".

CASE NO: 9:19-cv-81160-RS

## **LEGAL STANDARD**

In *Daubert*, the United States Supreme Court held that Rule 702 of the Federal Rules of Evidence requires the district court to serve as a "gatekeeper" charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant. *See* 509 U.S. at 589-93. The Eleventh Circuit, utilizing *Daubert*, has adopted a three-part inquiry to determine such admissibility pursuant to Rule 702. Under this inquiry, the Court must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc*., 158 F.3d 548, 563 (11th Cir. 1998) (*citing Daubert*, 509 U.S. at 589).

Under *Daubert*, in the event that the Court declines to exclude an expert's testimony, the Court is required to conduct an independent Rule 403 analysis to determine if the probative value of an expert's testimony is substantially outweighed by the danger of unfair prejudice. *Daubert*, 509 U.S. at 595; *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985); *Allison v. McGhan Med. Corp*., 184 F.3d 1300, 1310 (11th Cir. 1999) ("The Supreme Court recognized in Daubert the intricate role of Rule 403 in an expert testimony admissibility analysis when it noted that expert testimony could be "both powerful and quite misleading because of the difficulty in evaluating it."); *Sorrels v. NCL (Bahamas) Ltd*., No. No. 13-21413-CIV., 2013 WL 6271522, at *3 (S.D. Fla. Dec. 4, 2013); *see* Fed. R. Evid. 403. Because expert evidence is often more misleading than other evidence, Rule 403 gives a judge greater control over experts than over lay witnesses. *Daubert*, 509 U.S. at 595. Rule 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

4

cumulative evidence.

Fed. R. Evid. 403.

"The rules on expert witness discovery are designed to prevent surprise and allow both sides the opportunity to adequately prepare their cases." *QBE Ins. Corp. v. Prof'l Ins. Underwriters, Inc.*, No. 06-21731-CIV, 2008 WL 11403212, at *2 (S.D. Fla. July 14, 2008). Where a party submits an untimely expert report and the opposing party is foreclosed from conducting "additional discovery with respect to the Supplemental Report," courts preclude such opinions because of the prejudice to the opposing party. *Id.*

Supplemental reports are intended to allow experts to offer updated opinions based on information not available to them at the time of their opening or rebuttal reports; they are not a mechanism to allow an expert to offer an updated opinion timed to avoid examination at deposition. *Jones Creek Investors, LLC v. Columbia Cnty.*, 98 F. Supp. 3d 1279, 1289 (S.D. Ga. 2015) ("[Rule] 26(e) does not permit supplementation to add points that could have been made in the original expert report . . . ."). Instead, "Rule 26(e) 'permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was **not available at the time of the initial report**." *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277, 2016 WL 3102225, at *6 (S.D. Fla. June 2, 2016) (emphasis in original) (quoting Minebea Co., Ltd. v. Papst, 231 F.R.D. 3, 6 (D.D.C. 2005)); *see also Stuhlmacher v. Home Depot USA, Inc.*, No. 2:10 CV 467, 2012 WL 5866297, at *2 (N.D. Ind. Nov. 19, 2012) ("It is disingenuous to argue that the duty to supplement under Rule 26(e)(1) can be used as a vehicle to disclose entirely new expert opinions after the deadline established by the court under Rule 26(a)(2)(c). This is particularly true where, as here, the **materials on which the new expert opinions are based were available to the Defendant prior to Plaintiff deposing her expert witness**.") (emphasis added).

## ARGUMENT

The proposed testimony of Apple's technical expert that relate to copyright infringement significantly falls short of the reliability standard under Rule 702 of the Federal Rules of Evidence and *Daubert* and its progeny. Other of Dr. Nieh's opinions are irrelevant under Rule 402 or unfairly prejudicial under Rule 403.

### A. Dr. Nieh's Opinions on Copying, Distributing, and Modifying are Not Tied to the Asserted Copyright Registrations

Dr. Nieh assumes that "the Corellium Apple Product copies an image of the copyrighted iOS object code [contained in an IPSW container] onto a disk volume," which may be patched, necessarily means that code covered by the registrations-in-suit was copied, distributed, or used to prepare derivative works. Hecht Decl. Ex. B at ¶¶ 14, 16. But Dr. Nieh performs no analysis as to whether or how the specific code covered *by the registrations-in-suit* were allegedly copied, distributed or used to prepare derivative works. For example, Dr. Nieh testified that he did not use any tool "for matching a specific version of source code to a specific version of iOS." Hecht Decl. Ex. A at 217:24-218:8. Dr. Nieh's entire methodology is based on an assumption divorced from the registrations-in-suit and is therefore fundamentally flawed and unreliable.

"[T]he court must undertake an independent analysis of each step in the logic leading to the expert's conclusions; if the analysis is deemed unreliable at any step the expert's entire opinion must be excluded." *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009), *aff'd.*, 609 F.3d 1183 (11th Cir. 2010). Here, the registrations-in-suit are at the core of all of Apple's infringement claims in this case, implicated in three of the four causes of action against Defendant (*i.e.* the copyright infringement claims). *Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*, 785 F.2d 897, 903 (11th Cir.1986) ("[A]n owner's cause of action for infringement of that copyright is unenforceable until compliance with the formalities of registration, including payment

6

of fees and deposit of copies of the work, is shown.") Step one of Dr. Nieh's analysis, consideration of the scope of the intellectual property at issue, exposes the unreliability of Dr. Nieh's analysis: it is untethered to the protectible elements of the copyrights-in-suit. That is no surprise considering that Dr. Nieh does not recall ever having reviewed copyright registrations in his prior work as an expert. Hecht Decl. Ex. A at 95:21-96:10.

In *Feist Publications, Inc. v. Rural Telephone Service Co*., 499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991), the Supreme Court stated: "Not all copying, however, is copyright infringement. To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Id*. at 361, 111 S.Ct. 1282 (citing *Harper & Row Publishers, Inc. v. Nation Enters*., 471 U.S. 539, 547, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)). Dr. Nieh's opinions do not focus on the constituent elements of the work that are original or protected, and thus must be excluded under Rule 702.

**B. Dr. Nieh's Anti-Circumvention Opinions are Not Relevant**

Dr. Nieh also testified that he couldn't recall that his role as an expert in any of his prior cases concerned DMCA-related issues. Hecht Decl. Ex. A at 95:21-96:10. His analysis in this case is irrelevant to the DMCA provisions regarding trafficking asserted by Apple, 17 U.S.C. §§ 1201(a)(2), (b), 1203.

17 U.S.C. § 1201(a)(2) states that:

> No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that—
> (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively **controls access to a work** protected under this title;
> (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively **controls access to a work** protected under this title [17 U.S.C.A. § 1 et seq.]; or,
> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively **controls access to a work** protected under this title.

(emphasis added). *See also* 17 U.S.C. § 1201(b)(1) (setting forth similar prohibitions, protecting a right of a copyright owner under Title 17 in a work or portion thereof); *see* Hecht Decl. Ex. B at ¶¶ 25-27.

Dr. Nieh repeats these prohibitions in the legal section of his opening report, *id*., as well as the definition of "technological measure," which "effectively controls access **to a work**." *Id*. But Dr. Nieh admits that "Apple makes IPSW files publicly available for its customers to download…" Hecht Decl. Ex. C at ¶ 60. In other words, *there is no technological measure* employed to control access to the IPSW file, which Dr. Nieh also admits "contain[s] an 'image' of iOS, which contains the object code for iOS, data which represents the images and other graphical assets that display on the iOS GUI, and other files and data utilized by iOS." Hecht Decl. Ex. B at ¶ 68.

Dr. Nieh's opinions are linked to a different means of technological protection measures, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ to protect the iPhone and iPad from accepting an operating system that is not authorized. Hecht Decl. Ex. C at ¶ 59. But these protection measures have no effect whatsoever on access, by other hardware or virtual hardware, to iOS. These measures are irrelevant under the DMCA because Corellium's product never touches or affects an iPhone or iPad, where these measures live. As such, Dr. Nieh's opinions on bypassing of technological protection measures that do not restrict access to the work have no bearing on Apple's claims and should be not be admitted under Rule 402.

**C. Dr. Nieh's Opinions on the EULA Are Not Relevant As This Case Has No Breach of Contract Claim**

Dr. Nieh's opinions on Apple's Software License Agreement (SLA) are also irrelevant, as Apple has not alleged any breach of contract of the SLA. *See generally* Dkt. 56 (Amended Complaint). When asked whether a user attempting to download an IPSW from an Apple server

8

is prompted with any kind of agreement before downloading, Dr. Nieh testified that he did not remember. Hecht Decl. Ex. A at 147:1-9 (Nieh Dep. Tr. 147:1-9).

Dr. Nieh relies on the mere existence of SLAs on Apple's website. Hecht Decl. Ex. B at ¶¶ 64-65 (Opening Report at ¶¶ 64-65). But, as stated right on that website, the SLA requires "agreement to these terms" before installing or using the product. *Id*. That only happens on approved Apple hardware, not on Corellium's accused product. Corellium and its users do not assent to these terms and nowhere in Dr. Nieh's reports does he allege that there is any agreement that is clicked or otherwise assented to before downloading an IPSW file from Apple's server.

All of Dr. Nieh's opinions on Apple's SLA are irrelevant and is inadmissible under Rule 402.

### D. Dr. Nieh's 290 page "Supplemental" Report Was Not Tied to Newly Produced Materials and Should be Stricken

On March 31, 2020, Plaintiff proposed two deadlines for submission of any supplemental expert reports "to ensure we're scheduling the depositions with sufficient time to address follow-on expert discovery." Hecht Decl. Ex. E. Plaintiff's proposed deadlines were (a) April 20, 2020 for reports based on "all material produced between 3/3 and 4/13 and depositions that occur through 4/17", and (b) April 27, 2020 based on "materials produced after 4/13". Hecht Decl. Ex. E. The parties had agreed to extend this second deadline for supplemental reports for certain experts, but that agreement did not alter the requirement that such reports be limited to "materials produced after 4/13." Hecht Decl. Ex. F.

Despite the Parties' agreement to these deadlines, Plaintiff served on May 3, 2020 a "supplemental" report from Dr. Nieh spanning 290 pages and 366 paragraphs, virtually all of which relied on materials that were produced before April 13, 2020, or were otherwise readily available to Dr. Nieh from Apple employees. This report was, therefore, really due on April 20,

2020. That deadline, as Plaintiff itself indicated, was set to allow for depositions that addressed "follow-on" expert discovery such as that from Dr. Nieh. Hecht Decl. Ex. E. Dr. Nieh's deposition occurred on April 22, 2020. And yet, Plaintiff served Dr. Nieh's supplemental report on May 3, 2020, nearly two weeks later (and after the close of expert discovery), foreclosing Corellium from examining Dr. Nieh on any of the opinions he presented in this voluminous supplemental report.

It is highly prejudicial to Corellium to allow Dr. Nieh to testify on matters that he could and should have included in his opening or rebuttal report, or in a supplemental report filed April 20, 2020. This is because the Court's discovery schedule does not permit Corellium the opportunity to re-depose Dr. Nieh or offer rebuttal expert testimony to respond to these untimely opinions. The Court should, therefore, at the very least, preclude Dr. Nieh from offering testimony based on his untimely supplemental report.

"The rules on expert witness discovery are designed to prevent surprise and allow both sides the opportunity to adequately prepare their cases." *QBE Ins. Corp. v. Prof'l Ins. Underwriters, Inc.,* No. 06-21731-CIV, 2008 WL 11403212, at *2 (S.D. Fla. July 14, 2008). Where a party submits an untimely expert report and the opposing party is foreclosed from conducting "additional discovery with respect to the Supplemental Report," courts preclude such opinions because of the prejudice to the opposing party. *Id.* Dr. Nieh's supplemental report is, without question, untimely and he should be precluded from offering any testimony at trial based on information in his supplemental report that relies on any materials produced or otherwise readily available to him before April 13, 2020.

Dr. Nieh's Supplemental Report sets forth a lengthy series of opinions, spanning pages 33-288, on the operation of the Corellium Apple Product, with significant attention to his review of Corellium's source code and his use of the Corellium Apple product. But as Dr. Nieh admits in

his report, the code and related materials he cites were made available to him as of at least April 6, 2020, if not earlier. Hecht Decl. Ex. D at page 6-7. In fact, Dr. Nieh had access to the cloud version of the Corellium Apple Product as of February 18, 2020. Hecht Decl. Ex. B at ¶ 11. Dr. Nieh admits that the cloud version and on-premises version of the Corellium Apple Product operate in substantially the same way. Hecht Decl. Ex. D at page 33. Thus, any opinion he formed based on his analysis of the Corellium Apple Product was due in his opening report, but not later than April 20, 2020 per the Parties' agreement. Had Apple abided by the Parties' agreement, Corellium would have had the opportunity to examine Dr. Nieh regarding his analysis of Corellium's code at deposition on April 22, 2020. Apple's dilatory conduct, however, foreclosed Corellium's ability to examine Dr. Nieh at his deposition on that analysis. It is extremely prejudicial to Corellium to allow nearly 250 pages of Dr. Nieh's opinions to go unexamined by deposition.

The Parties did not agree that rebuttal expert witness reports or expert depositions would be deemed "produced" for purposes of supplemental reports. Such materials are not, therefore, properly included in any supplemental expert report.[2] Moreover, information that Dr. Nieh could have readily obtained from Apple in preparing his opening or rebuttal reports cannot properly deemed "produced" after April 13, 2020. *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277, 2016 WL 3102225, at *6 (S.D. Fla. June 2, 2016) ("Rule 26(e) permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was **not available at the time of the initial report**.") (emphasis in original) (internal quotations omitted). The supplemental report also "foreclosed Defendant's opportunity to

---

[2] Even if such material were properly deemed "produced," Corellium's rebuttal reports were served on April 13, 2020, not after that date. Thus, any report addressing such material was due, per the Parties' agreement, by April 20, 2020.

11

redepose [Plaintiff's expert] or otherwise address [Plaintiff's expert's] Supplemental Report" *QBE Ins. Corp.*, 2008 WL 11403212, at *2.

For example, Dr. Nieh acknowledges that he considered information obtained from discussions with certain Apple employees Jon Andrews, Pierre-Olivier Martel, Lee Peterson, and Eric Brown. Hecht Decl. Ex. D at page 3. Additionally, Dr. Nieh admits that Appendix B to his supplemental report is based on information he obtained from Lee Peterson. Hecht Decl. Ex. D at page 3. He also repeatedly explains that he learned information on which he relied from discussions with Lee Peterson on pages 31, 75, 134, 142, 153, 169, 179, 187, 196, 208, and 217 of his supplemental report. Hecht Decl. Ex. D at pages 31, 75, 134, 142, 153, 169, 179, 187, 196, 208, and 217. Dr. Nieh, however, does not explain when such discussions occurred, nor does he justify his failure to have had such discussions earlier in discovery, given that he is Apple's own expert witness and could readily discuss any issues with Apple's own employees. It is also entirely improper to allow Dr. Nieh to offer an untimely opinion based on documents Apple itself produced after April 13, 2020, because Dr. Nieh could have easily obtained such documents when preparing his opening report. *Companhia Energetica Potiguar*, 2016 WL 3102225, at *6 ("Rule 26(e) permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was **not available at the time of the initial report**.") (emphasis in original) (internal quotations omitted). Corellium is now unable to depose Dr. Nieh or the witnesses that Dr. Nieh mentions in his supplemental report regarding such issues. *QBE Ins. Corp.*, 2008 WL 11403212, at *2. Thus, opinions in his supplemental report that rely on depositions of Apple employees taken after April 13, 2020 or that are found in Apple's own documents produced after April 13, 2020, are not properly included in this supplemental report. *QBE Ins. Corp.*, 2008 WL 11403212, at *2.

Dr. Nieh's supplemental report also improperly relies on materials produced by Corellium before April 13, 2020. A review of Appendix A to his supplemental report reveals that, with a single exception, every non-publicly available document produced by Corellium on which Dr. Nieh relied was produced between February 11, 2020 and April 8, 2020, with the majority having been produced as of March 31, 2020. Hecht Decl. Ex. G. Only document Correllium-030082 was produced after this time, on April 15, 2020. *Id.*

After accounting for the dates of production of all materials cited in his 316-page supplemental report spanning 366 paragraphs, Dr. Nieh's opinions on subject matter *only produced after April 13, 2020* appears to be set forth in a single paragraph, number 21.

### E. Rule 403 Requires a Separate Balancing Test

Even if the Court finds the admissibility requirements of Rule 702 are met, the Court may still exclude Dr. Nieh because the jury will assume that because Dr. Nieh is a "technical expert," anything discussed by him is reliable and highly pertinent to their inquiry. *See Thomas v. Evenflo Co., Inc.*, 205 F. App'x 768, 771-72 (11th Cir. 2006, citing *U.S. v. Frazier*, 387 F.3d 1244 (11th Cir. 2004); *Frazier*, 387 F.3d at 1263 ("Because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403 . . . . Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse."); *see, e.g., United States v. Carswell*, 922 F.2d 876, 879 (D.C. Cir. 1991) ("[I]f a witness' expertise on a subject appears to be attenuated or questionable, then the trial court may conclude that the danger of prejudice merely from labeling him an 'expert' outweighs the possibility that his testimony would helpful."). For this reason, Dr. Nieh should not be permitted to testify on any issues. Even if Dr.

Nieh's testimony concerns certain evidence that meets a standard of bare relevance, its low probative value on the issue of whether the Corellium accused product infringes (which, again, Dr. Nieh does not tie to the registrations-in-suit) is substantially outweighed by the danger of unfair prejudice that it causes to Corellium.

The jury could easily be misled into believing that the plethora of citations to code and other technical materials cited by Dr. Nieh are relevant, which in turn would cause a jury to give undue weight to his opinions, notwithstanding the fact that these opinions are not related to the pertinent inquiry: whether Corellium copies, distributes or modifies the code covered by the copyright registrations-in-suit, or circumvents access control to those works.  In addition, Dr. Nieh's assertions could easily confuse the jury as to the relevant issues (including the scope of the copyrights-in-suit). Accordingly, given the low probative value of Dr. Nieh's testimony, the Court should exclude him from testifying under Rules 702 and 403.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Court should exclude the testimony of Plaintiff's proposed expert witness, Dr. Jason Nieh.

CASE NO: 9:19-cv-81160-RS

## **LOCAL RULE 7.1(A)(3) CERTIFICATION**

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel verifies that counsel for Defendant conferred via telephone call on May 8, 2020 with counsel for Plaintiff regarding the relief sought herein. Plaintiff opposes the relief sought, thereby necessitating this Motion.

Dated: May 11, 2020

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant CORELLIUM, LLC*

Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 612-3459
Facsimile (561) 683-8977
Primary e-mail: justin.levine@csklegal.com
Secondary e-mail: lizza.constantine@csklegal.com

By: s/ *Justin B. Levine*
JONATHAN VINE
Florida Bar. No.: 10966
JUSTIN B. LEVINE
Florida Bar No.: 106463
LIZZA C. CONSTANTINE
Florida Bar No.: 1002945
MICHAEL A. BOEHRINGER
Florida Bar No.: 1018486

and

HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, NY 10017
Tel: (212) 851-6821
David L. Hecht *pro hac vice*
Email: dhecht@hechtpartners.com
Maxim Price *pro hac vice*
Email: mprice@hechtpartners.com
Conor McDonough *pro hac vice*
Email: cmcdonough@hechtpartners.com
Minyao Wang *pro hac vice*
Email: mwang@hechtpartners.com

CASE NO: 9:19-cv-81160-RS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 11, 2020, a true and correct copy of the foregoing has been transmitted by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.


Dated: May 11, 2020                     /s/ *Justin B. Levine*
                                        Justin B. Levine