UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:19-cv-81160-RS

APPLE INC.,

       Plaintiff,

v.

CORELLIUM, LLC,
       Defendant.

_____/

**DEFENDANTS CORELLIUM, LLC'S *DAUBERT* MOTION TO PRECLUDE
CERTAIN TESTIMONY BY DAVID B. CONNELLY AND INCORPORATED
MEMORANDUM OF LAW**

Defendant Corellium, LLC ("Corellium"), pursuant to Federal Rules of Civil Procedure 26
and 37 and Local Rules 7.1 and 26 respectfully moves this Court for an order precluding certain
testimony by David B. Connelly on damages pursuant to 17 U.S.C. § 504(b), 17 U.S.C. § 504(c),
17 U.S.C. § 1203(b)(3), and 17 U.S.C. § 1203(c)(2), and in support thereof, states as follow:

**I.
INTRODUCTION**

Corellium's technology provides users an efficient alternative to physical devices to
conduct security research and testing on iOS, Android and other operating systems through one
virtual platform. *See* ECF No. 64. After Plaintiff, APPLE, INC. ("Apple"), failed to acquire
Corellium, Apple filed a lawsuit against the company alleging infringement on Apple's copyrights
related to iOS. *See* ECF No. 56. Specifically, Apple filed suit against Corellium for (1) Direct
Federal Copyright Infringement of the Computer Programs pursuant to 17 U.S.C. § 501; (2) Direct
Federal Copyright Infringement of the Graphical User Interface Elements pursuant to 17 U.S.C. §
501; (3) Contributory Federal Copyright Infringement pursuant to 17 U.S.C. § 501; and (4)
Unlawful Trafficking pursuant to 17 U.S.C. §§ 1201(a)(2), (b), 1203. *See* ECF No. 56.

Apple retained David B. Connelly to provide an opinion in the field of accounting on Apple's behalf.[1] According to Mr. Connelly, he is a Certified Public Accountant ("CPA").[2] ██

████████████████████████████████████████████████████████████████████████

████████████████████ In the first case, *Inter-Avid v. Ventura Content*, Mr. Connelly was not deposed.[4] In the other copyright infringement case, entitled *Reinsdorf v. Skechers U.S.A.*, the court excluded Mr. Connelly's expert report on damages "suffer[ed] from serious methodological and factual deficiencies that raise serious questions as to its admissibility and relation to Reinsdorf's indirect profits claim." *Reinsdorf v. Skechers U.S.A.*, 922 F.Supp.2d 866, 881 (2013). According to the Court, Connelly's method for calculating Sketchers' indirect profits "does 'not attribute [Skechers'] sales to specific product lines." *Id.* Thus, the Court ruled that Connelly's report was "not grounded upon reliable methods or data, and does no more than establish a speculative relationship between Skechers' profits and its infringing uses of Reinsdorf's photographs." *Id.* Nearly identical concerns exist in this instant case.

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████                  ████████████████████████████

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

███████████████████ █████████████████████████████████████

███████████████████ █████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████ For the reasons outlined below, Corellium seeks to exclude Mr. Connelly's

testimony and Reports as they relate to:

    1.  Mr. Connelly's methodology in determining Corellium's gross revenue is
unreliable because ██████████████████████████████████████
████

    2.  Mr. Connelly's methodology to conclude that ████████████████████
████████████████████████████████████████████████
████████████████████

    3.  Mr. Connelly's methodology of projecting Corellium's gross revenue from April
2020 to October 2020 is unreliable because █████████████████████████
██████████████████████████████████

    4.  Mr. Connelly's alternative methodology for projecting Corellium's 2020 gross
revenue is unreliable because ███████████████████████████████████
████████████████████

    5.  Mr. Connelly's methodology for calculating the statutory damages pursuant to 17
U.S.C. § 1203 is unreliable ██████████████████████████████████
██████████████████████████

---

█ ██████████████████████████████████████

█ ████████████████████████████████

█ ███████████████████████████████████

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

## II.
## LEGAL MEMORANDUM

**A.   Framework for Assessing the Admissibility of Expert Testimony**

The admission of expert testimony is governed by Federal Rule of Evidence 702, as explained and refined by the United States Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137 (1999). Pursuant to Rule 702, which controls the admission of expert witness testimony, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)   the testimony is based on sufficient facts or data;
> (c)   the testimony is the product of reliable principles and methods; and
> (d)   the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702.

The Eleventh Circuit courts employ a three-part test to determine whether an expert's testimony or any report prepared by an expert may be admitted.  The three parts include whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *City of Tuscaloosa v. Harcros Chems.*, Inc., 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589). The Eleventh Circuit denotes each of these three requirements as the "qualifications," "reliability," and "helpfulness" prongs and analyzes each individual respectively. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

First, under the qualification prong, "the expert must be qualified to testify competently regarding the matter he or she intends to address." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010). An expert's qualifications may be based on "knowledge, skill, experience, training, or education." *Frazier*, 387 F.3d at 1261. The burden of establishing qualification rests on the proponent of the expert opinion. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

Second, under the reliability prong, the testimony "must be 'scientific,' meaning grounded in the methods and procedures of science, and must constitute 'knowledge,' meaning something more than subjective belief or unsupported assumptions." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) (citing Daubert, 509 U.S. at 590). Scientific encompasses hard sciences as well as soft sciences such as economics. *Frazier*, 387 F.3d at 1262-63. There must be some evidence substantiating the expert's opinion in order to find it reliable. Pursuant to *Daubert*, a District Court is tasked **"to act as a gatekeeper to insure that speculative and unreliable opinions do not reach the jury."** *Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1244 (11th Cir. 2018); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005); *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir.2002). (emphasis added). The Eleventh Circuit has recognized the great weight that juries often give scientific or technical testimony explains "why the trial judge plays an important role as the gate-keeper in monitoring the evidentiary reliability of such testimony." *Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 920 (11th Cir. 1998). The burden of establishing the reliability of an expert's opinion rests on the proponent of that expert's testimony. *Frazier*, 387 F.3d at 1260.

*Daubert* requires that the district court "assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

properly can be applied to the facts in issue" and observes "that the expert's bald assurance of validity is not enough." *Id.* at 1261. To determine reliability, *Daubert* sets forth a number of factors for courts to consider, including: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. *Daubert*, 509 U.S. at 589-590. These factors are non-exhaustive, and a court's inquiry is flexible and is to include other considerations that may bear on the reliability of an expert's opinion. *Id.* (citing *Kumho Tire*, 526 U.S. at 150).

Third, under the helpfulness prong, the expert's testimony "must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue." *Kilpatrick*, 613 F.3d at 1335. The test for determining if the expert testimony will assist the trier of fact is "whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Fed. R. Evid. 702. The proponent of the expert opinion has the burden of establishing helpfulness. *Allison* 184 F.3d at 1306. Expert testimony will generally not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments. *Frazier*, 387 F.3d at 1262.

Additionally, "[t]he *Daubert* analysis does not operate in a vacuum," as expert testimony is also subject to the threshold requirements imposed by Rules 401, 402, and 403. *See Allison* 184 F.3d at 1309. Accordingly, evidence that survives a Rule 702 inquiry, may still be excluded under Rules 401 and 402 if it is irrelevant, and under Rule 403 if it its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, or by misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 401, 402, and 403.

Under *Daubert* analysis of expert testimony, Mr. Connelly's methods in attempting to determine Corellium's gross revenues, Corellium's profits, and the alleged statutory damages fail to qualify as reliable because they are conclusory, undeniably speculative, and based on unsubstantiated assumptions. Therefore, any opinions based upon such methods should be stricken and precluded from being introduced at trial.

### B.  Legal Standard for Damages Pursuant to 17 U.S.C. § 504

A plaintiff may recover both actual damages and infringer's profits under the Copyright Act. *See* 17 U.S.C. § 504(a). Under section 504(b) the copyright owner must first establish the infringer's gross revenue before the burden then shifts to the alleged infringer to establish costs and expenses. *Bonner v. Dawson*, 404 F.3d 290, 294 (4th Cir. 2005). The calculated gross revenue must bear some **"reasonable" relation to the infringement**. *Bonner*, 404 F.3d at 294.  Therefore, the copyright owner must demonstrate "some causal link between the infringement and the particular profit stream before the burden-shifting provisions of § 504(b) apply." *Bonner*, 404 F.3d at 294; *see also Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1375 (Fed. Cir. 1999) ("The University's argument presumes that the sales of reformulated Materna were due to Cyanamid's copyright infringement. The University had the burden to show this connection."). A court will deny recovery of infringer's profits when they are "only remotely and speculatively attributable to infringement." *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) (quoting 4 Nimmer on Copyright § 14.03, 14-34 (2004)). The requirement that the plaintiff apportion the gross revenue related to the infringement reduces the chance of the plaintiff claiming profits greater than those related to the infringement without diminishing the plaintiff's benefits. *Id.* at 711-12. In the present matter, Mr. Connelly has failed to consider the required nexus

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

in his methodology. Instead, he has offered an alternative percentage of attribution that is simply not based on any valid scientific or otherwise accepted method.

**C.** **Legal Standard for Damages Pursuant to 17 U.S.C. § 1203**

The Digital Millennium Copyright Act ("DMCA") "prescribes that no person shall circumvent a technological measure that effectively controls access to a work. *Stockwire Research Group, Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1267–68 (S.D. Fla. 2008); 17 U.S.C. § 1201(a)(2). Circumventing a technological measure means to "descramble a scrambled work, to decrypt an encrypted work, or to otherwise avoid, bypass, remove, deactivate, or impair a technological measure." *Dish Network L.L.C. v. Whitehead*, 3:09-CV-532-J-32JRK, 2011 WL 6181732, at *5 (M.D. Fla. Dec. 13, 2011); 17 U.S.C. § 1201(a) (3)(A).  Pursuant to the DMCA, a plaintiff may elect to recover statutory damages in an action to enforce 17 U.S.C. § 1201. The DMCA provides for an award of statutory damages as follows:

> (A) At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer, or performance of service, as the court considers just.

> (B)  At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000.

17 U.S.C. § 1203(c)(3)(A)-(B).

**D.** **Mr. Connelly Employs Unreliable Methods Throughout His Reports and Testimony**

As discussed above, Mr. Connelly, in his role as an expert, was required to not only offer an opinion but employ a reliable scientific method and investigation to substantiate his opinions. However, it is evident that Mr. Connelly has failed to sufficiently comply with this basic expert standard with respect to his opinions regarding damages under 17 U.S.C. §§ 504 and 1203.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

*1.* 

As previously stated, the gross revenue under section 504 must have a causal connection to the alleged infringed copyrights. However, Mr. Connelly did not perform a causal nexus analysis in determining his initial opinion of Corellium's gross revenue pursuant to Section 504.

As stated, this case is not the first time that Mr. Connelly has speculated about profits and the profits' link to the usage of the work at issue in a copyright action. Connelly has only one previous experience serving as a financial damages expert in a copyright action in which his report



was actually examined by the Court. *Reinsdorf v. Skechers* was a dispute in which the plaintiff accused the defendant of infringing upon the plaintiff's copyright.  In his deposition in this instant case, Mr. Connelly repeatedly testified that the court did not reject his expert report on damages.[15] However, the court rejected Mr. Connelly's report because it was "not grounded upon reliable methods or data, and does no more than establish a speculative relationship between Skechers' profits and its infringing uses of Reinsdorf's photographs." *Reinsdorf v. Skechers U.S.A.*, 922 F.Supp.2d 866, 881 (2013). Mr. Connelly began with the "baseless assumption that 100% of sales not attributed to a specific product line (see n. 9, *supra* ) were the result of Skechers' infringing uses of Reinsdorf's photos." *Id.* ███████████████████████████████

████████████████████████████████████████████████████████████████

██████████ Mr. Connelly has employed similar non-attribution methods in the instant case as he did in *Reinsdorf,* and his report and testimony should be similarly excluded.

      ***2.*** ████████████████████████████████████████████
████████████████████████████████████████████
████████████

After being identified of the issue in Corellium's expert's case, Mr. Connelly, apparently conceding that some form of attribution was needed, changed his method. ███████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

_____

█ █████████████████████████████
█ ████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
█ ██████████████████████████████

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX



**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX



Instead, Mr. Connelly assumes that the ███████████████████████████

The clearly surface-level supposition relied upon by Mr. Connelly does not provide any information or correlation as to

. And yet, Mr. Connelly arrives at an

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████ In no venue can this be deemed a reliable method

for providing an expert accounting opinion and neither Corellium nor the jury should not be

subjected to this type of speculative methodology.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████ ██████████████████████████████████████████████████

██████████████████████████████████████████

████ ██ ████████████████████████ ████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████ █████████

██████████████████████████████████████████████

████████████████████████ ████████

[24] Exhibit 1 – Connelly, Errata Supp. & Rebuttal Report at 26
[25] Exhibit 2 – Connelly Depo. at 214:4-11.
[26] Exhibit 1 – Connelly, Errata Supp. & Rebuttal Report at 26.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

██ ████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████

██  ████

Mr. Connelly's methods ████████████████████████████████████ are entirely

unreliable, should not be presented to a jury, and accordingly, should be stricken.

*3.*  ███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████  ████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████  ████  In no context of expert work, is

this an acceptable form of forensic accounting.

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

Again, there is absolutely no scientific support to the final calculation arrived at by Mr. Connelly.

Surely, sole reliance upon ███████████████████████████████████████

██████ is not an acceptable methodology of arriving an expert damages opinion.

Indeed, Courts are wary of financial experts who rely heavily on sales projections of a

business. In *MasForce Europe, BVBA v. MEC3 Co.*, the court rejected the expert's simple adoption

---

██ ████████████████████████████
██ ████████████████████████████████
██ █████████████████████████████████████████████████
██ ████████████████████████████████████

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

of a company's business plan to calculate future profits. 2013 WL 12156469, at *6 (M.D. Fla. Dec. 4, 2013) ("Put differently, it does not appear that Wiggins actually made any calculations, but instead simply accepted MasForce's own statements regarding what it would have earned but for the incident"). Likewise in *JMJ Enterprises*, the CPA expert's testimony was rejected because the expert relied on the testimony of one of the principals and failed to verify the sales projections or use common tools for predicting the potential of a business, such as market surveys and studies. *JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc*., CIV. A. 97-CV-0652, 1998 WL 175888, at *8 (E.D. Pa. Apr. 15, 1998), aff'd, 178 F.3d 1279 (3d Cir. 1999). Again, simple reliance upon a party's own statements in fact discovery is not something that necessitates an expert. However, the weight that juries tend to give experts is significant, and for an expert to simply rely on standard fact discovery information without any real analysis presents a highly prejudicial scenario.

The limitations of Mr. Connelly's methodology are apparent



Like the rest of Mr. Connelly's opinions, they are no more than what an attorney could have proffered based upon the evidence produced in fact discovery. Under Mr. Connelly's method, had Corellium stated that its gross revenue was projected to only be One Thousand Dollars ($1,000.00) then he would

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

have accepted that figure—or maybe he would not have.  The point is, Mr. Connelly conducted no formal analysis recognized under any widely accepted standard.

*4.*  ████████████████████████████████████████
████████████████████████████████████████
████████████████████

████████████████████████████████████████

███████████████████  ██████████████████████████

████████████████████████████████████████

█████████████████████  ██  ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████  This opinion is insufficient to be considered expert opinion as there were no calculations performed to justify the conclusion. The method starts out with the theory that

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

*5.*  ████████████████████████████████████████
████████████████████████████████████████
███████████████████████

Mr. Connelly makes unsupported assumptions regarding the statutory damages which allows him to substantially increase the potential damages.  █████████████████████

---

■ ███████████████████████████████



This is analogous to someone buying a 64GB iPhone and storing exactly 64GB worth of information on it.  This is simply not a practical reality. Mr. Connelly conducted no formal investigation or analysis in this regard.

This is again simply pulled out of thin air that has exactly zero basis in fact.  What's worse, is that Mr. Connelly then uses this number that was not mentioned or reflected in any other aspect of the case, as a *multiplier*

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

*of damages*.  For such an important role in the formula, this number has no grounding in reality.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████    ████████████████████████████

█████████████████████████████ █████████████████████████

████████████████████████████████████████████████████████

██████████████████████

If any of these assumptions are false, then Mr. Connelly's formula fails. Since Mr. Connelly did not independently verify any of these assumptions the formula cannot be confirmed as reliable. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

It is clear that Mr. Connelly's method should fail under *Daubert*.

**E.     Mr. Connelly's Proposed Testimony Regarding Statutory Damages May Not Be Delivered by an Expert because it is Simple Arithmetic.**

Under Section 504(c), non-willful infringers can be liable for $750–$30,000 per work infringed.  The maximum penalty can increase to $150,000 per work infringed for willful infringers, and even innocent infringers may be liable for at least $200 per work infringed. 17 U.S.C. § 504. ████████████████████████████████████████████

_____

█ ████████████████████████████
█ ██████████████████████████████

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

███████████████████████████████████████████████████

████████████████████████

The statutory damages calculation made by Mr. Connelly were based on simple mathematics. Such calculations can be computed by a lay person and should be barred from being deemed expert testimony in light of the weight that juries tend to afford experts. *See United States v. Lundy*, 809 F.2d 392, 395 (7th Cir.1987) ("Courts agree that it is improper to permit an expert to testify regarding facts that people of common understanding can easily comprehend") (citations omitted). Neither CPA training nor experience re required to make the calculation. ██████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████

### III.
### CONCLUSION

Throughout his report, Mr. Connelly attempts to couch his guesswork and lack of methodology by stating that he is being conservative. However, being conservative is neither accurate nor a replacement for actually doing the work required of a financial expert. It defeats the very purpose of hiring an expert.  Mr. Connelly is required to support his methodology with science. However, he failed to do just that. Instead he provided speculative facts that formed the basis for his methods and formulas. Had Mr. Connelly, attempted to acquire supportive documentation from Corellium or its customers, conducted studies or analyses, or provided peer-reviewed support for his methods, he would then have provided a report sustainable under the *Daubert* standard. He did none of these things. For the reasons presented herein, and on the record

---

█ ████████████████████████████████

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

supplied in support of this motion, Corellium respectfully requests that the Court exclude Mr. Connelly's report and testimony on Corellium's gross revenue and Apple's alleged statutory damages pursuant to 504(c) and 1203(c)(3). For the foregoing reasons, Plaintiffs' Motion to Exclude Expert Testimony of David B. Connelly should be granted.

**WHEREFORE**, Defendant, CORELLIUM, LLC, respectfully requests this Honorable Court grant this Motion and exclude the entirety of David B. Connelly's reports and testimony from trial in the case as requested above, or in the alternative, exclude from the jury any portion of the Report, discussion, or testimony related to Corellium's gross revenues and statutory damages pursuant to 17 U.S.C. §504 and §1203(c), and for any and all other relief this Court deems just and proper.

## LOCAL RULE 7.1(A)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel verifies that counsel for Defendant conferred via email with counsel for Plaintiff on May 8, 2020, regarding the relief sought herein. Plaintiff opposes the Motion and the relief requested herein.

Dated: May 11, 2020                     Respectfully submitted,

                                        COLE, SCOTT & KISSANE, P.A.
                                        *Counsel for Defendant CORELLIUM, LLC*
                                        Esperante Building
                                        222 Lakeview Avenue, Suite 120
                                        West Palm Beach, Florida 33401
                                        Telephone (561) 612-3459
                                        Facsimile (561) 683-8977
                                        Primary e-mail: justin.levine@csklegal.com
                                        Secondary e-mail: lizza.constantine@csklegal.com

                                        By:  *s/ Justin B. Levine*
                                             JONATHAN VINE

Florida Bar. No.: 10966
JUSTIN B. LEVINE
Florida Bar No.:  106463
LIZZA C. CONSTANTINE
Florida Bar No.:  1002945
MICHAEL A. BOEHRINGER
Florida Bar No.: 1018486

*and*

HECHT PARTNERS LLP
*Counsel for Defendant*
20 West 23rd St. Fifth Floor
New York, NY 10010
Tel: (212) 851-6821
David L. Hecht *pro hac vice*
Email: dhecht@hechtpartners.com
Minyao Wang *pro hac vice*
Email: mwang@hechtpartners.com
Conor McDonough pro hac vice
Email: cmcdonough@hechtpartners.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 11, 2020, a true and correct copy of the foregoing has been transmitted by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

Dated: May 11, 2020                  /s/ Justin B. Levine
                                     Justin B. Levine

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8877 FAX