**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:19-cv-81160**

APPLE INC.,

        *Plaintiff*,

   v.

CORELLIUM, LLC,

        *Defendant*.

**DEFENDANT'S NOTICE OF SERVING FIFTH AMENDED ANSWERS**
**TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Defendant Corellium, LLC ("Corellium"), by and through undersigned counsel, pursuant

to the Federal Rules of Civil Procedure, hereby files this Notice of Serving Fifth Amended

Answers to Plaintiff, Apple Inc.'s ("Apple"), First Set of Interrogatories.

Dated: April 18, 2020        Respectfully submitted,

           By:   */s/ Justin B. Levine*
               Jonathan Vine
               Florida Bar No. 10966
               jonathan.vine@csklegal.com
               Justin Levine
               justin.levine@csklegal.com
               Florida Bar No. 106463
               Lizza Constantine
               lizza.constantine@csklegal.com
               Florida Bar No. 1002945

               COLE, SCOTT & KISSANE, P.A.
               Esperante Building
               222 Lakeview Avenue, Suite 120
               West Palm Beach, Florida 33401
               Telephone: (561) 383-9222
               Facsimile: (561) 683-8977

               and

HECHT PARTNERS LLP
*Counsel for Defendant*
20 West 23rd St. Fifth Floor
New York, NY 10010
Telephone (212) 851-6821
David Hecht, *Pro hac vice*
E-mail: dhecht@hechtpartnersllp.com
Maxim Price, *Pro hac vice*
E-mail: mprice@hechtpartnersllp.com
Minyao Wang, *Pro hac vice*
E-mail: mwang@hechtpartnersllp.com

*Attorneys for Corellium, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18 day of April, 2020, a true and correct copy of the

foregoing document has been furnished via email to counsel of record identified below.

*/s/ Justin B. Levine*
Justin B. Levine

## SERVICE LIST

Martin B. Goldberg
mgoldberg@lashgoldberg.com
rdiaz@lashgoldberg.com
Emily L. Pincow
epincow@lashgoldberg.com
gizquierdo@lashgoldberg.com
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL 33131

Kathryn Ruemmler (*pro hac vice*)
kathryn.ruemmler@lw.com
Sarang Vijay Damle (*pro hac vice*)
sy.damle@lw.com
Elana Nightingale Dawson (*pro hac vice*)
elana.nightingaledawson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004

- 2 -

Andrew M. Gass (*pro hac vice*)
andrew.gass@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Jessica Stebbins Bina (*pro hac vice*)
jessica.stebbinsbina@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067

*Attorneys for Plaintiff,*
*Apple Inc.*

**DEFENDANT'S FOURTH AMENDED ANSWERS TO PLAINTIFF'S
<u>FIRST SET OF INTERROGATORIES</u>**

<mark>XXX</mark> = Confidential
<mark style="background-color:red">XXX</mark> = Attorney's Eyes Only

**<u>INTERROGATORY NO. 1:</u>**  Identify each version, release, update, or patch, (including any alpha or beta versions) of the Corellium Apple Product, including for the cloud-based Corellium Apple Product and all private installations of the Corellium Apple Product, with a description of the changes made in each successive version.

> **<u>ANSWER:</u>**       Corellium objects to this request as it seeks disclosure of proprietary and trade secret information regarding Corellium's product. Specifically, this Interrogatory seeks detailed and technical information that comprises portions of innovative technology that is at issue in this case. Therefore, Corellium responds only under the protection of the Protective Order under Fed. R. Civ. P.26(c).
>
> Corellium objects to this Interrogatory in that it is intended to annoy or harass Corellium and its officers, employees, agents, representatives, and other persons acting, or purporting to act on behalf of Corellium. The information sought is not necessary for Plaintiff to establish any of its claims, as it is Corellium's product in general and the virtual display of iOS that Apple takes issue with.
>
> Corellium states as follows:

**<mark>Release 1.1 – January 2018</mark>**
- <mark>Improve response time for console and springboard. Took serial console latency from 1.235s to 0.5052s and display latency from 3.71s to 0.6817s</mark>
- <mark>Fixed a panic on reboot command</mark>
- <mark>Support for Not Jailbroken patchset</mark>
- <mark>Lock-Down Services can now be used because device is "hacktivated" (activation is faked)</mark>
- <mark>Fixed special characters in project names resulting in unusable TunnelBlick VPN configuration</mark>

**<mark>Release 1.1.2 – April 2018</mark>**
- <mark>Support for iOS 10</mark>
- <mark>Support for iPhone 6 Plus, iPad Mini 4, iPod Touch 6</mark>
- <mark>Resolved issue preventing the Passcode / PIN from setting</mark>
- <mark>Resolved issue with previously viewed screen appearing on lock screen when waking device</mark>
- <mark>Resolved Safari crashes</mark>
- <mark>Resolved USB disruption to Cycript after device restart</mark>

**<mark>Release 1.1.3 – May 2018</mark>**
- <mark>Support for iPhone 8 Plus, 6S, 6S Plus, and SE</mark>

- Performance optimizations for iPhone 8 and X
- Free allocation
- Users can now create an iPhone 7 with any version of iOS 10
- Eliminated the slight white line on the edge of the iPhone X display

**Release 1.1.4 – June 28, 2018**
- The USBFlux app allows the virtual device to be seamlessly detected by the host machine, just like a physical device plugged into the USB port. The virtual device can then be used with applications such as iTunes and Xcode.
- iOS 12 support
- The Corellium API is now available for programmatic testing and development. The API supports commands such as creating a device, starting and stopping a device, and launching applications. Additional information can be found in our API documentation.
- iOS 10 renders properly on iPad Mini 4
- UI Alerts no longer cause the UI to temporarily hang on iPhone 7
- Turning Wi-Fi on / off no longer causes the UI to hang on iPhone 7

**Release 1.2 – August 21, 2018**
- Virtual devices are now able to play both audio and video in the web UI.
- Users can now create a clone of a device snapshot.

**Release 1.3 – October 24, 2018**
- A12 device support

**Release 1.3.2 – February 13, 2019**
- SEP Emulation for iPhone 8 and X
- Video and Audio Playback
- PAC Support
- USBFlux for Linux (separate package, provided on request)
- Support for iOS 12.1.x
- Syscall trace feature (command-line)
- Support for Ampere servers
- Added DHCP filter to prevent VMs from getting IP addresses from non-Corellium DHCP servers
- Fixed bug preventing custom images from being used when creating devices
- Fixed allowing users to remove themselves from team leads
- Allowed non-admins to list projects in API
- Disabled SSH links on non-jailbroken devices
- Removed unneeded call to iTunes during iOS restore
- Fixed race condition during iOS restore involving FDR
- Improved reliability of iOS firmware updater
- Added instructions for using firmware updater as a separate piece to download firmware

- Added USB support for iOS 12.2b2 on iPhones 8/X/XS/XR
- Fixed USB ZLP / short packet handling issue
- Added 'monitor info' to GDB stub
- Added flush to storage backend on iOS VM NAND flush
- Conformed PAC model to ARMv8.3 error handling spec bit patterns
- Enabled SEP and AP security and production mode
- Support for Linux 4.20.6 as Dom0. Fix UAF bug in Dom0 kernel module and handle Dom0 daemon crashes more gracefully
- USB performance improvement, especially on iOS 10.3
- Support for tagged pointers for application patcher
- Fixed audio amplifier model buffer overflow
- Disabled baseband firmware update message on XS/XR
- Fixed AES block handling of descrambler setup. Add AES DART support for XS/XR
- Support for Bluetooth on XS
- Fixed CPSR size reported to GDB: IDA debugger support
- Dom0 EFI variable and date/time setting support
- Added 'version' command to retrieve daemon and hypervisor version in charmd.
- Fixed WebCore (Safari rendering) patch for iOS >= 12.2
- Fixed backboardd UAF patch for iOS >= 12.2
- Fixed firmware validation patch for iOS >= 12.2
- Fixed iOS 10.x restore being very slow
- Fixed mount patch failure on iOS 10
- Fixed iPod Touch patcher crash on iOS 10.x
- Converted ECID field to read-only so that snapshot clones retain ECID
- Fixed soft-reset of USB controller to resolve DMA issues, including 1) panic if PIN was set multiple times in a row, 2) "IOAccessoryUSBConnectShim: chargerFunction: ilim=100mA type=0" repeats indefinitely.
- Resolved: USBFlux shows more Remote Instances than Remote Devices

**Release 2.0 – March 5, 2019**
- iBoot / SecureROM support for A8, A9, A11
- More robust jailbreak command-line utilities
- OpenStack Refactor
- UI Refresh
- Android Ranchu 7 Beta
- Pass-through keyboard on iOS
- Resolved: USBFlux does not detect the specific device configurations
- Resolved: the dyld_shared_cache for A12 devices contains patches which are incompatible with Xcode
- Fix unsigned app installation on A12 devices.
- Fix fstab for snapshot mount devices.
- Add API to connect/disconnect WiFi.
- Fix deleting apps on iPad.

- iBoot/SecureROM: support for first A11 device (iPhone 8).
- Improve boot reliability by reducing number of synchronous calls to Dom0.
- Flush EEPROM before a snapshot, allowing iOS VMs with simulated SEP to be snapshotted.
- Live Strace thread list support for iOS.
- Add token trust patch for jailbroken VMs.
- Reset system when early boot fails - hopefully it succeeds in the end (relevant on Ampere).
- Add support for audio on A11 and A12 devices.
- Fix Camera.app crashing for iOS newer than 12.1.
- Virtual keyboard support.
- Disable appstored on jailbroken devices.
- Disable wide gamut mode, preventing screenshot problems and blue flashes on some devices. Fix screenshot capture on iOS 10/11.
- iBoot/SecureROM: support for A8 and A9 devices.
- Cydia support as well as improved jailbreak with better 3rd party compatibility.
- Disable GPU acceleration in WebKit.
- Enable fridaserver on jailbroken VMs.
- Support for kernel slide in iHoot.
- Reset SmartIO endpoint table on reboot, preventing (some) SmartIO panics in early boot.
- Add useful hypervisor access from VMs (retrieving kernel location, universal kernel/user/physical mem-copy).
- Disable Pearl on iPhone X/XR/XS/XSmax to lower amount of console spam.
- Support for new ARMv8.3 CPU opcode used on A12 devices by new iOS's WebKit.
- Android: refresh video frame periodically, even if there's no activity.
- Accesses to unsupported peripherals and unmapped memory will now be delivered to VM as external aborts.

**Release 2.0.1 – April 1, 2019**
- SEP and iBoot support for A12 devices
- Adjusted the ECID filed to prevent users from entering a value less than or greater than 16 digits
- Resolved: API flavor on instance doesn't exist
- Update USBflux with statically linked libplist
- Added cloning Android snapshots
- Ability to add corelliumd agent to non-jailbroken devices
- Fix for keyboard pass-through on Chrome
- Resolved: panic on access to vibrator on iPhone SE.
- Fixed PAC support for jailbroken VMs
- SEP simulator: Fix extended console support on older versions of SEPOS (older than 11.3).
- Added support for Secure Enclave decryption and signing API.

- SEP simulator: Support for iOS 12.2b3 and newer.
- SEP simulator: Support for A12 SEPOS.
- Android: Networking fixes.
- iOS: Add file access functions to apiagent.
- Android: Support for Android kernel 4.4 on Qualcomm servers.
- Core: Fix rare system crash during Dom0 memory access.
- SEP simulator: breakpoint and watchpoint filtering, enhanced SEPOS debug console.
- Core: Support automatic log rotation and size limit in Strace.
- SEP simulator: fix A11 support for iPhone 8+/X.
- iBoot/SecureROM: fix A11 support for iPhone 8+/X.
- iBoot/SecureROM: support for A12 devices (XR/XS/XSmax).
- iOS: Quiet battery authentication messages.
- Core: Strace filter can be used to filter kernel debugger breakpoints. Also, add GDB monitor command to retrieve current OS thread.
- iBoot/SecureROM/SEP simulator: support for combination boot with both iBoot/SecureROM and simulated SEP.
- SEP simulator: support for all iOS versions on all supported devices.
- Core: Strace output can be filtered by any number of threads (by thread ID, process ID or name).
- SEP simulator: automatic support for binary and IMG4 SEPOS images.

**Release 2.1 – May 16, 2019**
- App Browser
- File Browser
- CoreTrace
- Live Snapshots (iOS)
- USBFlux for Linux (available on github.com/corellium)
- Fixed bug where under high load, iOS restores will fail to reboot
- Fixed bug where API and interface will mistakenly report an instance as being shutdown when it is still being created
- Added error messaging when more than one person tries to view a device screen
- Fixed bug where long passwords were not contained in notification box for credentials
- Added Jailbroken / Non-Jailbroken indicator in top bar
- Added ability to assign users / teams to a project from the Users / Teams tabs
- Update copy on Help Page
- Added animations to clarify device status when turning on, reloading
- Added "Clone of" label in device name for clones of a device
- Added click-to-copy links for notifications when creating new users
- Updated the UDID format for A12 devices
- Improve visibility of upload progress bars
- Fix bug where creation of devices with firmware originally imported manually by file would fail.

- Fix bug with installer identifying wrong local addresses for nodes.

**Release 2.1.1 – June 24, 2019**
- Support for iOS 13 (excluding SEP and iBoot support)
- Added a button to switch from pass-through keyboard to touch-type keyboard
- Removed CoreTrace real-time log from UI to prevent users from missing portions of the log
- Fixed a bug in extracting the libs for the dyld_shared_cache for A12 devices in syncing with Xcode
- Fixed a bug where install breaks when one of our shipped dependencies explicitly depends on a version of a package that is older than one that is already installed
- Updated USBFlux to accept IP addresses as well as DNS host names
- Fixed a bug where Bluetooth died on XS & XS Max
- Fixed a bug that caused the iPhone 7 Plus to take more than 5 minutes to reboot
- Implemented an API for monitoring device status in the cloud and automatically restarting them
- Fixed a bug where a race condition occurred when adding roles at the same time as deleting projects
- Fixed a bug allowing non-RFC1918 addresses to be specified as local IPs during setup
- Fixed certain FP16 opcodes leading to better app compatibility

**Release 2.1.2 – July 18, 2019**
- Added feature to use existing network DHCP rather than Corellium needing its own static IP range for virtual devices
- Distributed video encoding load among compute nodes for GPU-enabled compute nodes
- Fixed support for custom TLS certificates for the web interface
- Improved installer behavior for logins
- Fixed a bug where triggering a reinstall of grub-efi-arm64 will delete disk boot entries from EFI when RAID is configured
- Fixed a bug with installer failing due to some packages being updated past compatibility with our packages
- Fixed a bug where apt proxy settings should be removed after single-node installation completes
- Fixed a bug where, after snapshot restore, usbmuxd did not come back up
- Updated shipped dependencies to latest version
- Updated installer to reject incorrect values of instance IP starts
- Updated installer to allow installation of custom certificates
- Fixed a race condition on Android device bringup

**Release 2.1.3 – July 25, 2019**
- iOS 13 beta 4 support
- iOS 13 SEP support for A10/A11/A12

- Fixed upgrading Android firmware images
- Fixed UI allowing users to clone snapshots when there are not enough cores
- Fixed iOS 13 snapshots
- Fixed display of file browser disclosure
- Hypervisor performance and stability improvements

**Release 2.1.4 – September 9, 2019**
- Beta Support for Raspberry Pi
- Extended iOS 13 beta support
- iOS 13 SEP A9 support
- iBoot for iOS 13 support
- Ability to change file attributes through File Browser
- Fixed bug that prevented user from setting "Require passcode after:" to anything other than "Immediately"
- Made Wi-Fi IP / Services IP bar collapsable
- Fixed an API bug that caused 'panicked' and 'panic-length' not to work
- Fixed a bug that made the installer unable to start when the controller IP was set to higher than x.x.253.x.
- Allow compute node IP changes
- Fixed a bug where multinode setups were unable to change IP addresses
- Upgraded the Corellium image creation scripts to use 4096-byte logical sectors to improve Android performance

**Release 2.2 – December 2, 2019**
- Support for iPhone 11, iPhone 11 Pro, and iPhone 11 Pro Max
- Fixed Android 8 intermittent networking failure
- Fixed Android 8 alignment fault crash
- Fixed Android 8 framework crash during boot
- Fixed an error causing Google Play Services to stop on Android 9
- Fixed an error causing unsupported virtual SD card on Android
- Fixed an error causing Chrome app to crash on Android

**Release 2.2.1 – December 18, 2019**
- Support for iOS 13.3

**INTERROGATORY NO. 2:**  Separately for each version or installation of the Corellium Apple Product Identified in Interrogatory No. 1, fully describe the functional flow for the Corellium Apple Product, including at least: a) all steps a user takes to set up and access the Corellium Apple Product; b) how the user creates a new Virtual Device; c) how an existing Virtual Device is saved; d) how the user accesses a saved Virtual Device; e) how a user interacts with a Virtual Device created in Corellium Apple Product; and f) how the GUI Elements are determined and displayed to the user.

**ANSWER:**   Corellium objects to this request as it seeks disclosure of proprietary, confidential and/or trade secret information regarding Corellium's product.   Therefore, Corellium responds under the protection of the Protective Order under Fed. R. Civ. P.26(c). In that regard, Corellium states as follows:

        **(a)**      **Setup**

For the on-premise product, the user must first physically connect the received hardware to power and local networking. Upon receiving the hardware, customers will often change the IP addresses of the controller and compute nodes by connecting to the hardware via SSH, editing /etc/network/interfaces and then rerunning corellium-configure --leader on the controller node and corellium-configure on the compute node to reconfigure the product for those IP settings. In versions prior to April 2018, since firmware links were provided by ipsw.me, no further setup was required. For versions released between April 2018 inclusive and March 2019 exclusive, an additional step of obtaining IPSWs must be performed and the files must be placed in the /var/ipsw directory on the controller node. For versions released during or after March 2019:

1.   The customer must connect to a setup service with their browser running on port 8088 with a specific static IP address on a specific static subnet that appears on the serial console of the device. The user must configure their browser to use the same subnet and a non-conflicting IP address and then connect their browser to the same network.

2.   The customer then accesses the setup service.

3.   The customer will configure the username and password of the admin user, the permanent networking information of the hardware, and the desired networking information of the virtual device network.

4.   The customer will click the Setup button and wait for Corellium to reconfigure itself with the new networking information.

5.   After the networking is set up, the customer can connect to the controller node's permanent IP address via SSH. They then must transfer IPSWs to the /var/ipsw directory in order for iOS Virtual Device creation options to appear.

6.   The customer will then login to the product and may either directly use Corellium or use the admin interface to create other user accounts.

7.   For the cloud product, the user may sign up through an invite link we send them and they are e-mailed a URL to sign in with, a login, and password automatically, or we may create a domain for them manually and e-mail them the URL, login, and password manually.

For both the on-premise and cloud product, user accounts are created, and the user may now log in and create Virtual Devices.

**(b)      Creating Devices**

The user visits the Corellium product with their web browser. This request is routed to the frontend service. In versions released during or after January 2019, this is done through nginx web server software. In versions prior to January 2019, this was done through Apache web server software. In the on-premise product, the user's browser directly interacts with the web server software. In the cloud product, this request is passed through Netscaler before reaching one of the instances of the frontend service running on any of three redundant physical server nodes. The frontend service transmits the frontend web code to the browser and the web code runs in the user's browser.

1.  After logging in, the user may click the "Create Device" button. The user selects which Project they wish to create the Virtual Device within. Projects are ways for administrators of each Corellium installation to manage user access control as well as allocation of hardware resources (CPU cores and RAM). Users can be restricted to accessing only certain projects, and projects are allocated only a certain amount of CPU cores and RAM.

2.  The user is presented with the option to Upload Firmware or select a Pre-Configured Firmware.

3.  If the user selects to create from a pre-configured firmware:

    a.  A list of available pre-configured device models is presented. The list of available device models is determined by 1) the general list of device models supported by Corellium, and 2) the specific list of firmware available to the system.

       The frontend service code contains an internal database of compatible hardware devices that can be virtualized by Corellium, i.e. types of Virtual Devices that can be created. The database contains information that allows the frontend service to identify which images would be compatible with the Virtual Device, what parameters to pass into the Hypervisor Daemon to identify the correct device to the Hypervisor Daemon and the Hypervisor, which hardware buttons the device supports, the size of the disk volume required to store the Virtual Device's state, the format the simulated NAND of the Virtual Device must be partitioned to, the boot arguments that must be passed to the iOS kernel for a successful boot for each range of iOS versions, and the amount of RAM and CPU resources that would be consumed by the Virtual Device.

The frontend service code also detects the list of firmware files available to the system. In the on-premise product, users are able to upload desired firmwares to their server. A service called fwservice is also available, which users can choose to activate. This service regularly retrieves the list of available IPSWs from the iTunes servers and maintains this list in a database. In the cloud product, no pre-configured Apple device models are presented because no pre-configured IPSW files are made available by Corellium. Previously, the cloud product also used fwservice to detect the list of available IPSWs that users could choose to download on demand from the Apple iTunes servers.

The frontend service code correlates the available firmware information and the hardware device database to send only a list of available supported Virtual Device types to the frontend web code. A list of the supported devices appears. The user clicks on the desired device.

b. A dropdown list is shown with the list of available firmwares for the selected device model, along with a radio button with an option to specify a jailbroken device or a non-jailbroken device. The user selects the desired firmware and option and clicks the Select button.

c. A confirmation screen is shown giving the user the option to change the displayed name of the device in the Corellium UI. There is also an opportunity for the user to choose to change "advanced options", e.g. the boot arguments passed to the iOS kernel or the device identifiers, or to replace components in the firmware with a user-uploaded alternative. In the general case, the user clicks Create Device.

4. Alternatively, if the user chooses to upload a firmware file:

a. The user can drag-and-drop a firmware file into the designated area of the UI, or they can browse the filesystem for a firmware file to upload. Once the upload is complete and the user clicks Create, a list of supported device models for that particular firmware is presented.

b. The user selects the desired device model, as well as the option for the device to be jailbroken or non-jailbroken.

c. A confirmation screen is shown giving the user the option to change the displayed name of the device in the Corellium UI. There is also an opportunity for the user to choose to change "advanced options", e.g. the boot arguments passed to the iOS kernel or the device identifiers, or to replace components in the IPSW with a user-uploaded alternative. In the general case, the user clicks Create Device.

- 13 -

At this point, a request to create a new virtual device is generated by the web code and sent to the frontend service. The request must now be translated into an appropriate form and relayed to a chosen compute node for fulfillment. The specific way this is done varies by Corellium version. In versions using OpenStack, the OpenStack API is used to create the device and OpenStack relays the request to libvirt on the chosen compute node. The libvirt code has a custom Corellium plugin that processes the request. In subsequent versions, OpenStack is removed, and the Corellium coordinator service chooses a compute node and relays the request to a service running on that node. However, the content of the request remains substantially the same. The translation of the request from the frontend web code to a form appropriate for relaying involves first validating the request (for user permissions, device being supported, etc.) and attaching the parameters of the device from the frontend database to the request. In particular, the actual IPSW selected by the user is transmitted simply as a URL from which it can be downloaded, as well as metadata regarding what iOS version it corresponds to.

The code running on the compute node allocates the required disk resources sufficient to represent the state of the machine according to the size described in the frontend service's device database, relayed in the request. In the on-premise version, this is done locally on the disk of the compute node. In the cloud version, this is done by making a request to create an iSCSI volume to Packet, our host, of sufficient size and attaching the volume to the compute node. In both cases, a virtual volume is created for the device, attached to the compute node. The volume is then partitioned into portions for storing the simulated NAND, snapshot state, and boot information for the device. The simulated NAND is formatted to the specifications relayed from the frontend. The IPSW is downloaded from the URL specified in the request and stored in the volume. In the cloud, the file is retrieved from Apple's servers. In the on-site version, the file is retrieved from the /var/ipsw directory on the controller node populated by the user. In versions prior to February 2019, the entire IPSW is downloaded and the kernel, restore ramdisk and the NAND disk image are extracted. In versions released during or after February 2019, the IPSW is extracted as it is being downloaded to those same components. The Virtual Device is then setup with that volume. Further technical detail of this process is described in interrogatory 3.

### (c)    Device States – Snapshots

Virtual Devices are not "saved" in the sense that they are ephemeral until a certain action is taken. From the moment they are created, the Virtual Devices are like hardware devices in that they always have an ephemeral state (the internal hypervisor state and memory contents) and non-ephemeral state (the state of the simulated NAND).

Unlike a hardware device, it is possible to snapshot a Virtual Device, which stores its ephemeral state onto the disk for later retrieval. The user may do that by clicking the snapshot icon on the main device screen, and then clicking Take a Snapshot. This will relay the request to the compute node service, which will request the Hypervisor Daemon to store the ephemeral state onto a file on the volume allocated for the device, and then take a disk snapshot of the entire volume.

Restoring the snapshot involves the user clicking on the "Restore" button next to any previously taken snapshot. This will relay the request to the compute node, which restores the disk snapshot, and then requests the Hypervisor Daemon to turn the Virtual Device on, restoring the ephemeral state from the previously saved file on the volume allocated for the device.

When the Virtual Device is shut down, in the on-premise version, the volume remains present on the compute node, but the volume is logically disconnected. In the cloud version, the volume is disconnected via iSCSI from the compute node. In either case, when the user requests the Virtual Device to be turned on again, the volume is reconnected and the compute node service requests the Hypervisor Daemon to boot the device given the previously saved kernel and simulated NAND contents. The user may turn the device on and off via a button on the main device screen, or via a dropdown option on the devices list screen. When the user logs in, they are first sent to the Devices list screen. From there, they can get to the main device screen of any device by clicking on the list item for that device.

### (d)    Device Interaction

Various forms of user interaction with the device are permitted through the Corellium product. On the main device screen, the user may connect to the device's virtual screen and interact with it through virtual touches. The GUI elements are rendered on that screen. They are rendered by Apple's software running on the ARM hardware that the Corellium Hypervisor is running on. When Apple's software attempts to draw to the screen, the Hypervisor, emulating the behavior of the display controller of Apple devices, receives these requests and relays it to the Hypervisor Daemon. When the user is connected to the screen, the Hypervisor Daemon then transmits what is drawn to an Encoding Service which then encodes what is drawn into a h.264 video stream that is transmitted to the user and displayed in the web browser through WebRTC. Mouse clicks and movements are captured over this video display and transmitted back through the WebRTC channel, through the Encoding Service, back to the Hypervisor Daemon. The Hypervisor Daemon relays the information back to the Hypervisor, which emulates the behavior of the multitouch controller hardware in Apple devices. Corellium software does not attempt to draw, render, duplicate, or formulate any Apple-designed GUI elements at all. It merely takes any pixels that the iOS software draws and transmits them to the user.

The Hypervisor also emulates the wifi and USB controllers on Apple hardware devices. The USB controller is connected via the Hypervisor Daemon to an open source project called libusbmuxd, which is a long-standing project that emulates the behavior of Apple software running on Macs and PCs that allow software such as iTunes to communicate with iOS devices. This project has previously allowed computers running Linux to be able to connect with iOS devices. Corellium users can use any of the methods supported by libusbmuxd to access the Virtual Devices. To do this, users must first connect to the Virtual Device Network. Typically, in the on-premise version of the software, user's computers will already be connected to the Virtual Device Network if they can access the web service. In the cloud version of the software, the user must first download an OpenVPN profile from the main device screen and connect to the VPN using a third-party OpenVPN client. After the user is connected, they can use libusbmuxd functions by specifying the host and port displayed on the main device screen in commands involving libusbmuxd. Users can also use the main device screen to forward TCP ports to the device using libusbmuxd. On jailbroken devices, an SSH daemon is installed on the Virtual Device and is forwarded by default.

Users, once connected to the Virtual Device Network, also may interact with the Virtual Devices via the emulated wifi controller. The device will appear to the user as being connected via wifi to the Virtual Device network. The IP address of the device will appear on the main device screen.

**INTERROGATORY NO. 3:** Fully describe the process or processes by which the Corellium Apple Product creates a new Virtual Device, including any steps taken to bypass any Security Measures that would otherwise prevent iOS from being installed on anything other than Apple-manufactured hardware.

> **ANSWER:**        Corellium objects to this request as it seeks disclosure of proprietary, confidential and trade secret information regarding Corellium's product.   Therefore, Corellium responds only under the protection of the Protective Order under Fed. R. Civ. P.26(c).
>
> Corellium states that the two definitions of "Security Measures" are not equivalent. One refers to iOS itself and the other to protected / encrypted / secured applications. This response attempts to answer in both senses, with the understanding that "protected / encrypted / secured" refers to what is commonly described as iTunes Store DRM.
>
> During creation of a new Virtual Device intended to run iOS, after the user identifies the requested configuration of the Virtual Device, the following steps generally happen:
>
>   1.   Provision of the firmware archive
>
> The user uploads the firmware file or selects a firmware that has been pre-configured for the system. Other firmware or software components may be provided by the user here, but they are not required to run iOS on the Virtual Device.
>
>   2.   Extraction of firmware components

The firmware archive is a standard unencrypted ZIP or ZIP64 file. The archive contains numerous components, but only the following ones are used in the Corellium Virtual Device creation process: guest OS kernel, restore RAM disk, hardware device tree, and on certain versions of iOS, the so-called external trust cache.

Extraction or interpretation of none of these requires circumventing a security measure. In particular, there is no encryption applied.

3. Preparation of restore components

During this step, two components are built: the adjusted restore RAM disk and the "AP ticket". The adjusted restore RAM disk contains the original restore RAM disk, with a number of new files added to it. These files fall into two categories: disable updating firmware of certain hardware not supported by Corellium Virtual Devices (the intent is that the update process does not attempt to load firmware for end-user functionality Corellium does not support, like NFC payments), and a number of programs that run during the second phase of Virtual Device restore process, and will be enumerated further in step 6.

The "AP ticket" component contains a cryptographic digest of the firmware archive file. The digest certifies to the guest OS kernel that the restore process was initiated for that specific firmware archive. We do not alter the firmware archive and so its digest is also unchanged.

4. Preparation of Virtual Device memory (disk storage and RAM)

Corellium loader creates a number of disk partitions corresponding to the ones that would exist in the Flash memory of a physical device. The partitions are initialized to be all-zero or all-one, except the NVRAM partition, which is initialized as a valid, though empty, NVRAM image.

The RAM is prepared by clearing it to a value of zero, then placing the unencrypted firmware components in RAM. Finally, the Corellium loader builds a memory structure that indicates to the guest OS where to find all these components in RAM.

Unique device serial numbers in the device tree are provisioned with values like "CORELLIUM-I7" or 0x1122334455667788, intended to clearly not be like the ones issued by Apple.

The hardware cryptographic keys associated with the device are loaded with values randomly generated at this stage, or with fixed dummy values similar to the dummy serial numbers mentioned above. The Virtual Device will not be able to obtain or decrypt DRM-protected content, and this is by design.

5. Guest OS kernel patching

Depending on the configuration, a number of patches can be applied to the in-memory guest OS kernel. The minimal patch set required to run iOS consists of the following:

- disable CPU sleep, which is a power saving feature not relevant to Virtual Devices,

- fix a number of programming mistakes where Apple engineers forgot to apply proper locking technique, resulting in intermittent system failure; these mistakes could also show up on real devices as they are timing dependent,

- disable loadable firmware validation on Virtual Devices modeling SoCs at least as new as Apple A9,

- disable self-verification of the FIPS module on SoCs at least as new as Apple A12,

- optionally adding Corellium software to the "trust cache", which allows it to run on an otherwise unchanged guest OS kernel.

Other patches may be applied to allow third-party software to run on the Virtual Device, but they are not required to run iOS. As a result, they are not applied in every Corellium Virtual Device configuration as selected by the user.

None of the patches installed in this step, under any circumstances, include features enabling decryption or installation of DRM-protected applications or content. The optional patches mentioned in previous paragraph enable installation of unprotected applications that users must provide in unencrypted form.

6.  Restore process

The restore process of a Virtual Device runs by using the generally available idevicerestore tool set. The restore tool set is instructed not to contact Apple servers for kernel / device tree / firmware signing. However, this signing process prevents unauthorized loads of modified Apple software by original Apple boot firmware on real hardware; our boot process, for instance the loader mentioned in section 4, does not verify these signatures in the first place as it is not a derivative of the Apple boot firmware.

After the first phase of the restore process completes, the second phase, mentioned in step 3, starts. This phase performs a number of modifications of the newly created partition image. These modifications include:

- fixing a number of programming mistakes where Apple engineers do not check error codes; instead of an informative error message or a graceful bypass, programs running inside iOS crash when they access hardware unsupported by the Virtual Device,

- fixing timing dependent programming mistakes where Apple engineers do not apply proper locking technique;

- wrapping firmware elements that need to be ignored during the boot process in "dummy" signed packages (this relates to disabling firmware validation in point 5),

- disabling some unsupported temperature sensors on models of certain devices newer than or equal to iPhone XS.

- disabling Apple software update nag screen that intends to discourage users from running older versions of iOS.

- disabling software components for unsupported hardware, like NFC (mobile payments), camera, accelerated 3D graphics or cellular baseband.

- disable self-verification of the FIPS module on SoCs at least as new as Apple A12 (see section 5 for the kernel equivalent of this modification).

- setting the device configuration to "activated"; activation of iPhone devices requires a cellular network connection, which Virtual Devices do not support.

Other patches may be applied to allow third-party software to run on the Virtual Device, but they are not required to run iOS. As a result, they are not applied in every Corellium Virtual Device configuration as selected by the user.

None of the patches installed in this step, under any circumstances, include features enabling decryption or installation of DRM-protected applications or content. The optional patches mentioned in the previous paragraph enable installation of unprotected applications that users must provide in unencrypted form.

After completion of this step, the devices undergo a "first boot" which ends in a user-interactive Virtual Device.

In general, Apple security measures that we have seen are aimed at preventing users from running subverted software on their physical devices. This is largely the opposite direction of what Corellium does, where the goal is to run software on virtual devices. The partitions are initialized to be all-zero or all-one, except the NVRAM partition which is initialized as a valid, though empty, NVRAM image.

The RAM is prepared by clearing it to a value of zero, then placing the unencrypted firmware components in RAM. Finally, the Corellium loader builds a memory structure that indicates to the guest OS where to find all these components in RAM.

Unique device serial numbers in the device tree are provisioned with values like "CORELLIUM-I7" or 0x1122334455667788, intended to clearly not be like the ones issued by Apple.

**INTERROGATORY NO. 4:**  Fully describe the process by which the Corellium Apple Product was developed, including but not limited to the circumstances under which the idea for the Corellium Apple Product was conceived, the date the development work began, the date the development work was complete or substantially complete, and all Persons who contributed in any way to the Corellium Apple Product.

**ANSWER:**    Corellium objects to this Interrogatory as it seeks disclosure of proprietary, confidential and trade secret information regarding Corellium's business and product. Therefore, Corellium responds only under the protection of the Protective Order under Fed. R. Civ. P.26(c). Accordingly, Corellium states as follows:

For the Corellium team, the concept of mobile device virtualization has roots as far back as 2010, when co-founder Christopher Wade began development of an iOS emulation project called iEMU. In 2014, Wade, along with Amanda Gorton and Stanislaw Skowronek, created a company called Virtual, which developed a platform capable of virtualizing the iPhone 4. The motivation behind developing Virtual was witnessing the extreme inefficiency and pain of testing and developing mobile products at a previous startup. Virtual was acquired by Citrix. In 2017, Wade, Skowronek, and Gorton reignited the mobile virtualization concept as a new company with new technology.

Development of a prototype of the Corellium Apple Product began around summer 2017. Development work for the "minimum viable product" of the Corellium Apple Product was substantially complete by around January 2018. Corellium continues to develop substantial new features and functionality, including support for new device models, operating system versions, research tools, and enhancements to the user experience.

The following individuals have contributed to the development of the Corellium Apple Product: Christopher Wade, Stanislaw Skowronek, David Wang, Alexander Hude, Nikias Bassen, Brian Sanders, Theodore Dubois. Corellium has also contracted with enterprises and individuals for development work, including: CloudOps (OpenStack work), Simeon Lee (UI work), Daniel Johnston (frontend work).

**INTERROGATORY NO. 5:**  Describe the complete factual and legal basis for Your contention, if any, that You have not infringed any of Apple's asserted copyrights in this Action, including Identifying all Documents You will rely upon in support of such contention.

**ANSWER:**    Corellium objects to this Interrogatory as it seeks production of documents and information protected by the work product doctrine or the attorney-client privilege.  The Interrogatory specifically seeks information that serve as the legal bases of Corellium's defenses, therefore, that information and communications related thereto are privileged on their face.

Corellium describes the factual basis of its position as follows:  the Corellium product, in its as-built state that is delivered to customers, does not contain any works that Apple is asserting copyrights to in this Action. The product is akin to an operating system of a computer, where an application is loaded by the operating system, adjusted to interoperate with OS components, and exposed to the user in this final form.

The Corellium product uses exclusively Corellium-developed and third-party technology to perform the loading process of iOS. In particular, the "boot loader" used by Corellium is not a derivative work of Apple device firmware. Similarly, the SEP model used by Corellium does not contain a copy of Apple SEP firmware. Corellium developed those integrated pieces separately based on clean-room reverse engineering of freely available Apple products.

The Corellium product loads iOS from a separate firmware archive that is not provided by Corellium. Subsequently, the firmware is modified at load time to achieve interoperability with Corellium - much like an operating system loads an executable - and to add the following significant features that are relevant to the research and testing markets:

- optional "jailbreak" of the Virtual Device, where users are enabled to load unprotected, unencrypted programs for research and testing purposes,

- tracing features like CoreTrace or KAlloc heap debugger, which enable deeper insight into the OS than provided by Apple software,

- kernel debugger support, which is considered to be a basic and essential research tool that is not provided by Apple,

- ability to save and restore the complete state of the device while it's running (including state normally hidden from the user), which is a feature exclusive to Virtual Devices,

- ability to control features that are always-on on Apple hardware, in particular PAC, APRR and KTRR system integrity protection.

Note that "jailbroken" Virtual Devices offer a different set of features than "jailbroken" physical phones. In particular, Corellium Virtual Devices do not contain cryptographic keys required to access protected iTunes store content. They are substantially aimed towards enabling researchers to gain greater understanding of the software running inside. Because this is transformative, it is fair use.

**INTERROGATORY NO. 6:**  Identify and fully describe any and all licenses or authorizations that You contend permitted You to create the Corellium Apple Product, including but not limited to describing the Person to whom the license or authorization was granted and the Person who granted it, the scope of the license or authorization, the date and place the license or authorization was granted, for what period of time the license or authorization was granted, under what terms or restrictions the license or authorization was granted, and the consideration that was provided for the license or authorization.

  **ANSWER:**  Various Apple employees, including but not limited to Jason Shirk, Jon Andrews, Craig Federighi, and Ivan Krstić, were aware of and encouraged Corellium to further develop its technology.

Apple's behavior towards Corellium and the general public qualifies as an implied license and/or acquiescence to use of the Corellium Apple Product. By providing iOS online for download directly from its servers, and by acquiescing to third parties' offering iOS for download from Apple's servers (on websites such as ipsw.me), Apple effectively granted Corellium a right to utilize iOS in its technology, at least for the intended purpose of Corellium's technology – which is transformative fair use in view of Apple's own products. In addition, by allowing other companies such as FireEye to sell an enterprise server appliance with a custom hypervisor for virtualizing MacOS on non-Apple hardware, Apple has publicly displayed acquiescence and authorization to the use of iOS in a similar manner.

Separately, and by way of further example, Apple's encouragement of Corellium's further development of its technology up to and during its continued negotiations for the acquisition of Corellium, after obtaining access to its technology and information concerning its underlying functionality, further qualifies as an implied license and/or acquiescence to Corellium's use of iOS.

**INTERROGATORY NO. 7:**  Describe whether Corellium and/or its employees are aware of or have been aware of since the founding of Corellium any unpatched bugs, exploits, vulnerabilities, or other software flaws in iOS, and whether Corellium has reported any such bugs, exploits, vulnerabilities, or flaws to Apple.

**ANSWER:**          The information provided below is confidential and trade secret.

Since August 2017, Corellium has discovered the following vulnerabilities in iOS which would qualify under the parameters of the Apple Security Bounty:

1. Persona Race Condition – submitted to Apple November 13, 2017
2. Posix_spawn issue – submitted to Apple November 13, 2017
3. Nfssvc issue – submitted to Apple November 13, 2017
4. BPF race condition – submitted to Apple January 23, 2018
5. Backboardd bug --  submitted to Apple January 23, 2018
6. Kernel execution bug – submitted to Apple September 30, 2019
7. Kernel execution bug 2 – submitted to Apple September 30, 2019
8. Memory leak bug – submitted to Apple September 30, 2019
9. Bug 1, not reported
10. Bug 2, not reported
11. Bug 3, not reported

All of the above listed vulnerabilities are currently patched. Corellium is not currently aware of any unpatched security bugs, exploits, vulnerabilities or other software flaws in iOS which would qualify under the parameters of the Apple Security Bounty program.

Corellium is also aware of or has been aware of a number of bugs which would not qualify under the parameters of the Apple Security Bounty program, such as timer races, hardware bugs, or improper locking techniques. Despite not qualifying under the bounty program, Corellium has nonetheless reported many of these bugs to Apple. In the ordinary course of business, Corellium does not keep records of or track such bugs.

1. Bug 4, reported
2. Bug 5, reported
3. Bug 6, reported
4. Bug 7, not reported
5. Bug 8, not reported
6. Bug 9, not reported
7. Bug 10, not reported

Finally, some of Corellium's employees may have encountered or may continue to encounter flaws in iOS in the ordinary course of using their personal iOS devices, but neither they nor Corellium keep records of or track such flaws.

**INTERROGATORY NO. 8:**  Separately for each version or installation of the Corellium Apple Product Identified in Interrogatory No. 1, describe in detail Your pricing policies, approaches, and/or strategies for the Corellium Apple Product, from the formation of Corellium to the present, including but not limited to (1) the price(s) at which You have offered the Corellium Apple Product for sale or license; and (2) any discounts or promotions given and the bases therefor.

**ANSWER:**        The documents produced that respond to this Interrogatory are designated as Confidential or Attorney's Eyes Only, as will be designated on their face, and are trade secret material.

In accordance with the Court's Order and pursuant to Fed. R. Civ. P. 33(d)(4), Corellium is producing documents in lieu of an answer and from which the answer to this Interrogatory may be determined, and the burden of deriving or ascertaining the answer will be substantially the same for either party. The Bates numbers for these documents are:

Corellium-004707.000001
Corellium-017021
Corellium-006057.000001
Corellium-008130.000001
Corellium-008131.000001
Corellium-008173.000001
Corellium-008202.000001
Corellium-008203.000001
Corellium-008232.000001
Corellium-008233.000001
Corellium-008261.000001
Corellium-008340.000001
Corellium-008345.000001

Corellium-008346.000001
Corellium-008375.000001
Corellium-008379.000001
Corellium-008489.000001
Corellium-008539.000001
Corellium-008585.000001
Corellium-008636.000001
Corellium-008660-000001
Corellium-008667.000001
Corellium-008709.000001
Corellium-008723.000001
Corellium-008871.000001
Corellium-008948.000001
Corellium-008963.000001
Corellium-008996.000001
Corellium-009028.000001
Corellium-009103.000001
Corellium-011343.000001
Corellium-011246.000001
Corellium-012315.000001
Corellium-014360
Corellium-014367
Corellium-014372
Corellium-014375
Corellium-017021
Corellium-014521

**INTERROGATORY NO. 9:**   Separately for each version or installation of the Corellium Apple Product Identified in Interrogatory No. 1, state the following information for the Corellium Apple Product and any license of the Corellium Apple Product for each fiscal quarter from the formation of Corellium to present: (1) the Dates of each sale or license, (2) the type of sale or license (e.g., private installation or access to Corellium Apple Product), (3) the customer for each sale or license, (4) the Person(s) billed for each sale or license (whether the same as the customer or different), (5) the address where any private installations occurred, (6) the terms of each sale or license, and (7) the price paid for each sale or license, including whether no monetary amount was paid.

> **ANSWER:**   Corellium objects to this Interrogatory as it seeks disclosure of proprietary, confidential and/or trade secret information regarding Corellium's business and product. Specifically, Apple is seeking confidential information about clients relative to the terms of their individual purchase from Corellium.  However, individual purchase terms are neither necessary to show damages nor whether infringement or a violation of the DMCA has occurred. In that regard, notwithstanding the fact that each client's sale terms are highly sensitive, they are not relevant to any issue in this case.

For the same reasons, Corellium also objects to this Interrogatory as it seeks private information of Corellium or Corellium's customers in violation of the parties' right to privacy under the US Constitution.  Similarly, again for the same reasons, Corellium further objects to this Interrogatory in that it is as it is overbroad in both time and scope.

As it relates to the other information requested, Corellium states as follows:  in the ordinary course of business, Corellium has provided free accounts for beta testing, trialing the product, and special projects; Corellium does not keep records of these licenses.

| On-Site Sales |
|---|
| **2017** |
| None |
| **2018** |

| Azimuth Security (as a customer) | 1.  Date: 25 January 2018<br>2.  Type: On-site<br>3.  Customer: Azimuth Security LLC<br>4.  Person billed: Azimuth Security LLC<br>5.  Address where shipped:<br>    Azimuth Security Pty Ltd<br>    Suite 1102, 77 Pacific Hwy<br>    North Sydney, NSW 2060 Australia<br>6.  Price paid: $250,000 |
|---|---|
| Azimuth Security (as a reseller) | 1.  Date: 24 April 2018<br>2.  Type: On-site<br>3.  Customer: Azimuth Security LLC<br>4.  Person billed: Azimuth Security LLC<br>5.  Address where shipped:<br>    Linchpin Labs<br>    Ground Floor Mezzanine, 20 Air Street<br>    London, W1B 5AN England<br>6.  Price paid: $500,000 |
| Azimuth Security (as a reseller) | 1.  Date: 16 August 2018<br>2.  Type: On-site Renewal<br>3.  Customer: Azimuth Security LLC<br>4.  Person billed: Azimuth Security LLC<br>5.  Address where shipped: N/A<br>6.  Price paid: $250,000 |
| Azimuth Security (as a reseller) | 1.  Date: 8 November 2018<br>2.  Type: On-site<br>3.  Customer: Azimuth Security LLC |

|  | 4. Person billed: Azimuth Security LLC<br>5. Address where shipped:<br>   LPL-US Headquarters<br>   504 Bramblewood Court<br>   Millersville, MD 21108<br>6. Price paid: $800,000 |
|---|---|
| **2019** ||
| **Cyxtera** | 1. Date: 26 February 2019<br>2. Type: On-site<br>3. Customer: Cyxtera Technologies<br>4. Person billed: Cyxtera Technologies<br>5. Address where shipped:<br>   Cyxtera Technologies<br>   14901 FAA Blvd<br>   Fort Worth, TX 76155<br>6. Price paid: $125,000 |
| **NCC Group** | 1. Date: 8 March 2019<br>2. Type: On-site<br>3. Customer: NCC Group<br>4. Person billed: NCC Group<br>5. Address where shipped:<br>   NCC Group<br>   Kings Court, Kingston Road<br>   Leatherhead KT22 7SL UK<br>6. Price paid: $432,000 |
| **Cellebrite** | 1. Date: 29 May 2019<br>2. Type: On-site<br>3. Customer: Cellebrite Ltd.<br>4. Person billed: Cellebrite Ltd.<br>5. Address where shipped:<br>   7 Campus Drive, Suite 210<br>   Parsippany NJ 07054<br>6. Price paid: $25,000 |
| **Optiv** | 1. Date: 7 June 2019<br>2. Type: On-site<br>3. Customer: Optiv Security Inc<br>4. Person billed: Optiv Security Inc.<br>5. Address where shipped:<br>   Cyxtera – Optiv<br>   9180 Commerce Center<br>   Littleton, CO 80129 |

|  | 6. Price paid: $50,200 |
|---|---|
| **Lockheed Martin** | 1. Date: 29 May 2019<br>2. Type: On-site<br>3. Customer: Lockheed Martin Corporation<br>4. Person billed: Lockheed Martin Corporation<br>5. Address where shipped:<br>    Lockheed Martin<br>    3 Executive Campus Suite 600<br>    Cherry Hill, NJ 08002<br>6. Price paid: $35,000 |
| **Paragon Solutions Ltd. / Nash Cyber** | 1. Date: 11 July 2019<br>2. Type: On-site<br>3. Customer: Paragon Solutions Ltd.<br>4. Person billed: Paragon Solutions Ltd.<br>5. Address where shipped:<br>    10 Beit Tzuri Eliyahu<br>    Tel Aviv, Israel<br>6. Price paid: $86,000 [paid as $50,000 deposit and monthly installments of $3,000] |
| **NowSecure** | 1. Date: 19 July 2019<br>2. Type: On-site<br>3. Customer: NowSecure, Inc.<br>4. Person billed: NowSecure, Inc.<br>5. Address where shipped:<br>    Nowsecure<br>    3600 136th Pl SE #300<br>    Bellevue, WA 98006<br>6. Price paid: $31,500 |
| **Novetta** | 1. Date: 11 July 2019<br>2. Type: On-site<br>3. Customer: Novetta<br>4. Person billed: Novetta<br>5. Address where shipped:<br>    Novetta OBO U.S. Gov<br>    7921 Jones Branch Dr 5th Fl<br>    Mclean, VA 22102<br>6. Price paid: $62,750 |
| **Kudu Dynamics** | 1. Date: 20 August 2019<br>2. Type: On-site<br>3. Customer: Kudu Dynamics<br>4. Person billed: Kudu Dynamics |

| | |
|---|---|
| | 5. Address where shipped:<br>Kudu Dynamics<br>14425 Penrose Pl Ste 404<br>Chantilly, VA 20151<br>6. Price paid: $312,750 |
| **Azimuth Security (as a reseller)** | 1. Date: 17 July 2019<br>2. Type: On-site<br>3. Customer: Azimuth Security<br>4. Person billed: Azimuth Security<br>5. Address where shipped:<br>Linchpin Labs<br>Level 7, 282 Oxford Street<br>Bondi Junction, NSW 2022 AU<br>6. Price paid: $150,000 |
| **Azimuth Security (as a reseller)** | 1. Date: 14 November 2019<br>2. Type: On-site Renewal<br>3. Customer: Azimuth Security<br>4. Person billed: Azimuth Security<br>5. Address where shipped: N/A<br>6. Price paid: $450,000 [not paid until 2020] |
| **Lockheed Martin** | 1. Date: 25 November 2019<br>2. Type: On-site<br>3. Customer: Lockheed Martin<br>4. Person billed: Lockheed Martin<br>5. Address where shipped:<br>4301 N Fairfax Drive Suite 500<br>Arlington, VA 22203<br>6. Price paid: $50,500 |
| **Microsoft** | 1. Date: 12 December 2019<br>2. Type: On-site<br>3. Customer: Microsoft<br>4. Person billed: Microsoft<br>5. Address where shipped:<br>Studio B, 4661<br>4200 150th Ave NE<br>Redmond WA 98052<br>6. Price paid: $7,500 |
| | **2020** |
| **ThunderCat Technologies** | 1. Date: 7 February 2020<br>2. Type: On-Site<br>3. Customer: ThunderCat Technologies |

|  | 4. Person Billed: ThunderCat Technologies<br>5. Address where shipped:<br>3203 General Hudnell Drive Ste 109<br>San Antonio, TX 78226<br>6. Price paid: $45,350 |
|---|---|
| **Cyxtera (Renewal)** | 1. Date: April 16, 2020<br>2. Type: On-Site<br>3. Customer: Cyxtera<br>4. Person Billed: Cyxtera<br>5. Address where shipped: N/A<br>6. Price paid: $100,000 |
| **JHUAPL** | 1. Date: April 1, 2020<br>2. Type On-Site<br>3. Customer: JHUAPL<br>4. Person Billed: JHUAPL<br>5. Address where shipped:<br>PO 162086<br>11100 Johns Hopkins Road<br>Laurel, MD 20723<br>6. Price paid: $142,800 |

| **Cloud Sales** | |
|---|---|
| **2019 - 2020** | |
| **AMW Technologies LTD** | 1. Date: Subscription from May 25, 2019 – July 25, 2019 [2 months]<br>2. Type: Cloud<br>3. Customer: AMW Technologies LTD<br>4. Person billed: AMW Technologies LTD<br>5. Address where shipped: N/A<br>6. Price paid: $575 / mo |
| **Compass Security** | 1. Date: October 28, 2019<br>2. Type: Cloud<br>3. Customer: Compass Security<br>4. Person billed: Compass Security<br>5. Address where shipped: N/A<br>6. Price paid: $1,000<br><br>1. Date: November 6, 2019<br>2. Type: Cloud<br>3. Customer: Compass Security<br>4. Person billed: Compass Security<br>5. Address where shipped: N/A<br>6. Price paid: $775 |

| | |
|---|---|
| **Critical Start** | 1. Date: Ongoing subscription from August 22, 2019 to January 24, 2020<br>2. Type: Cloud<br>3. Customer: Critical Start<br>4. Person billed: Critical Start<br>5. Address where shipped: N/A<br>6. Price paid: $575 / mo |
| **Dinesh Shetty** | 1. Date: October 18, 2019<br>2. Type: Cloud<br>3. Customer: Dinesh Shetty<br>4. Person billed: Dinesh Shetty<br>5. Address where shipped: N/A<br>6. Price paid: $684<br><br>1. Date: 4 November 2019<br>2. Type: Cloud<br>3. Customer: Dinesh Shetty<br>4. Person billed: Dinesh Shetty<br>5. Address where shipped: N/A<br>6. Price paid: $720<br><br>1. Date: 2 December 2019<br>2. Type: Cloud<br>3. Customer: Dinesh Shetty<br>4. Person billed: Dinesh Shetty<br>5. Address where shipped: N/A<br>6. Price paid: $432<br><br>1. Date: Subscription -- December 11, 2019 – Feb 16, 2020 [2 months]<br>2. Type: Cloud<br>3. Customer: Dinesh Shetty<br>4. Person billed: Dinesh Shetty<br>5. Address where shipped: N/A<br>6. Price paid: $200 / month |
| **Elcomsoft** | 1. Date: Ongoing subscription starting May 27, 2019<br>2. Type: Cloud<br>3. Customer: Elcomsoft<br>4. Person billed: Elcomsoft<br>5. Address where shipped: N/A<br>6. Price paid: $1,600 / mo |

| | |
|---|---|
| **Gotham Digital Science** | 1. Date: Ongoing subscription from March 14, 2019<br>2. Type: Cloud<br>3. Customer: Gotham Digital Science<br>4. Person billed: Gotham Digital Science<br>5. Address where shipped: N/A<br>6. Price paid: $2,600 / mo |
| **Hans Weisheimer** | 1. Date: Subscription from Jun 21, 2019 – Aug 21, 2019.<br>2. Type: Cloud<br>3. Customer: Hans Weisheimer<br>4. Person billed: Hans Weisheimer<br>5. Address where shipped: N/A<br>6. Price paid: $200 / mo<br><br>1. Date: Nov 18, 2019<br>2. Type: Cloud<br>3. Customer: Hans Weisheimer<br>4. Person billed: Hans Weisheimer<br>5. Address where shipped: N/A<br>6. Price paid: $200<br><br>7. Date: Dec 24, 2019<br>8. Type: Cloud<br>9. Customer: Hans Weisheimer<br>10. Person billed: Hans Weisheimer<br>11. Address where shipped: N/A<br>12. Price paid: $200<br><br>1. Date: Jan 3, 2020<br>2. Type: Cloud<br>3. Customer: Hans Weisheimer<br>4. Person billed: Hans Weisheimer<br>5. Address where shipped: N/A<br>6. Price paid: $1,000 |
| **Immersive Labs** | 1. Date: June 7, 2019 [2 months]<br>2. Type: Cloud<br>3. Customer: Immersive Labs<br>4. Person billed: Immersive Labs<br>5. Address where shipped: N/A<br>6. Price paid: $1,700 |

| | |
|---|---|
| **Cyberis** | 1. Date: Subscription from May 20, 2019 – Nov 5, 2019 (with some pauses)<br>2. Type: Cloud<br>3. Customer: Cyberis<br>4. Person billed: Cyberis<br>5. Address where shipped: N/A<br>6. Price paid: $575 / mo |
| **Marko Maric** | 1. Date: Nov 3, 2019<br>2. Type: Cloud<br>3. Customer: Tapi<br>4. Person billed: Marko Maric<br>5. Address where shipped: N/A<br>6. Price paid: $800 [refund $800] |
| **Negg** | 1. Date: Sep 18, 2019 – Nov 18, 2019 [3 months], Feb 3, 2020<br>2. Type: Cloud<br>3. Customer: Negg<br>4. Person billed: Negg<br>5. Address where shipped: N/A<br>6. Price paid: $575 / mo |
| **NowSecure** | 1. Date: July 27, 2019 – Aug 6, 2019<br>2. Type: Cloud<br>3. Customer: NowSecure, Inc.<br>4. Person billed: NowSecure, Inc.<br>5. Address where shipped: N/A<br>6. Price paid: $1,480 |
| **PWNZEN** | 1. Date: March 25 – 27, 2019<br>2. Type: Cloud<br>3. Customer: PWNZEN Technology<br>4. Person billed: PWNZEN Technology<br>5. Address where shipped: N/A<br>6. Price paid: $3,000 |
| **PWNZEN** | 1. Date: April 15, 2019 – October 15, 2019<br>2. Type: Cloud<br>3. Customer: PWNZEN Technology<br>4. Person billed: PWNZEN Technology<br>5. Address where shipped: N/A<br>6. Price paid: $8,037 |

| TyphoonCon | 1. Date: June 1-12, 2019<br>2. Type: Cloud<br>3. Customer: Typhoon Con<br>4. Person billed: SSD Secure Disclosure<br>5. Address where shipped: N/A<br>6. Price paid: $0 |
|---|---|
| Randorisec | 1. Date: Jun 16, 2019<br>2. Type: Cloud<br>3. Customer: Randorisec<br>4. Person billed: Randorisec<br>5. Address where shipped: N/A<br>6. Price paid: $600<br><br>7. Date: Jun 18, 2019<br>8. Type: Cloud<br>9. Customer: Randorisec<br>10. Person billed: Randorisec<br>11. Address where shipped: N/A<br>12. Price paid: $600<br><br>1. Date: Feb 11, 2020<br>2. Type: Cloud<br>3. Customer Randorisec<br>4. Person billed: Randorisec<br>5. Address where shipped: N/A<br>6. Price paid: $200 |
| Vladimir Katalov | 1. Date: Ongoing subscription starting September 18, 2019<br>2. Type: Cloud<br>3. Customer: Vladimir Katalov, Elcomsoft<br>4. Person billed: Vladimir Katalov, Elcomsoft<br>5. Address where shipped: N/A<br>6. Price paid: $575 / mo |
| Zenly on behalf of the GO Project | 1. Date: Ongoing subscription starting June 20, 2019<br>2. Type: Cloud<br>3. Customer: GO Language Project, Elias Naur<br>4. Person billed: Zenly<br>5. Address where shipped: N/A<br>6. Price paid: $800 / mo |

| Hex-Rays | 1. Date: Dec 16, 2019<br>2. Type: Cloud<br>3. Customer: Hex-Rays<br>4. Person Billed: Ilfak Guilfanov<br>5. Address: N/A<br>6. Price paid: $575 |
|---|---|
| Sven Schleier | 1. Date: Jan 23, 2020<br>2. Type: Cloud<br>3. Customer: OWASP Training<br>4. Person Billed: Sven Schleier<br>5. Address: N/A<br>6. Price paid: $200<br><br>1. Date: Feb 12, 2020<br>2. Type: Cloud<br>3. Customer: OWASP Training<br>4. Person Billed: Sven Schleier<br>5. Address: N/A<br>6. Price: $541.58 |
| 7A Security | 1. Date: Monthly beginning Jan 20, 2020<br>2. Type: Cloud<br>3. Customer: 7A Security<br>4. Person Billed: 7A Security<br>5. Address: N/A<br>6. Price: $200 / mo |

**For item 6, "terms of each sale or license," pursuant to Fed. R. Civ. P. 33(d)(4), Corellium is producing documents from which the answer to this Interrogatory may be determined and the burden of deriving or ascertain the answer will be substantially the same for either party.**

**INTERROGATORY NO. 10:** Separately for each version or installation of the Corellium Apple Product Identified in Interrogatory No. 1, state the following information for the Corellium Apple Product and any license of the Corellium Apple Product for each fiscal quarter from the formation of Corellium to present: (1) revenue received by Corellium for each sale or license; (2) costs of any goods sold for each private installation of the Corellium Apple Product; (3) standard costs (and any other costs) for Corellium; (4) research and development costs attributable to the Corellium Apple Product; (5) per-sale or per-license profit, and (6) total profit for Corellium from sales of the Corellium Apple Product.

**ANSWER:** Corellium objects to this Interrogatory as it seeks disclosure of proprietary and confidential information from Corellium. Corellium responds only under the protection of the Protective Order under Fed. R. Civ. P.26(c).

- 34 -

Corellium states that in the ordinary course of business, Corellium does not differentiate between product versions for financial record keeping or differentiate the Corellium Apple Product from other products. Corellium does not track cost of goods sold, R&D, or standard costs per license or per sale, but rather by aggregate per year.

2020
1. Revenue as of March 9, 2020: $513,214.99
   a. Cloud Sales: $11,864.99
   b. On-Site Sales: $501,350
2. Cost of goods sold: $13,169.56
3. Standard costs (expenses, including R&D): $443,247.71
   a. R&D: $293.95
4. Net Income: $56,797.72

2019
5. Revenue: $1,413,774.63
   a. Cloud Sales: $73,031.43
   b. On-Site Sales: $1,340,743.20
6. Cost of goods sold: $112,596.60
7. Standard costs (expenses, including R&D): $1,224,614.37
   a. R&D: $4,179.56
8. Net Income: $76,563.66

2018
1. Revenue: $2,233,405
2. COGS: $636,618.27
3. Expenses: $657,127.42
   a. R&D: $37,137.68
4. Net income: $939,659.31

2017
1. Revenue: $0
2. COGS: $3,980.04
3. Expenses: $57,319.20
   a. R&D: N/A
4. Net income: -$61,299.24

**INTERROGATORY NO. 11:** Separately for each version or installation of the Corellium Apple Product Identified in Interrogatory No. 1, state Your historical and currently projected revenues, projected costs, and projected per-sale profits for at least five (5) years into the future for the Corellium Apple Product.

> **ANSWER:** Corellium objects to this Interrogatory as it seeks disclosure of proprietary, confidential and trade secret information regarding Corellium's business and product. Corellium responds only under the protection of the Protective Order under Fed. R. Civ. P.26(c).
>
> Corellium does not have any historical or current projections for revenue, costs, or per-sale profits specific to the Corellium Apple Product.

**INTERROGATORY NO. 12:** Describe Your advertising, promotion, or marketing of the Corellium Apple Product, including the advertising, promotion, or marketing of (1) all features thereof; and (2) all products or services used in conjunction with the Corellium Apple Product. Include the Dates, locations, and description of all conferences at which one or more Corellium LLC employees publicly advertised or discussed the capabilities of the Corellium Apple Product, all paid advertising campaigns, all social media promotion, all advertising agencies used, all purchased media buys, all free media (including but not limited to interviews given by employees or owners of Corellium LLC), and any and all other means of advertising, promoting, or marketing the Corellium Apple Product from inception to the present.

> **ANSWER:** Corellium states as follows:

**Conferences**

**Black Hat 2018**
- Conference name: Black Hat USA 2018
- Date: August 4 – 9, 2018
- Location: Las Vegas
- Description of Conference: "Black Hat is the most technical and relevant information security event series in the world. For more than 20 years, Black Hat Briefings have provided attendees with the very latest in information security research, development, and trends in a strictly vendor-neutral environment. These high-profile global events and trainings are driven by the needs of the security community, striving to bring together the best minds in the industry. Black Hat inspires professionals at all career levels, encouraging growth and collaboration among academia, world-class researchers, and leaders in the public and private sectors."
- Attended by: Chris Wade, Amanda Gorton, Rob Turner, David Wang
- Description of Activity: Corellium met privately with peers, partners, and potential clients.

**Black Hat 2019**

- Conference name: Black Hat USA 2019
- Date: August 3 – 8, 2019
- Location: Las Vegas
- Description of Conference: (See above)
- Attended by: Chris Wade, Amanda Gorton, David Wang, Stan Skowronek, Rob Turner, Tim Strazzere, Steve Dyer
- Description of Activity: Corellium gave a private talk titled "Hidden Gems: iOS 13 Security and the Hardware Enabling It." Corellium hosted an invite-only party for customers, partners, and potential clients. Corellium and NowSecure co-sponsored a "capture the flag" (CTF) adventure game for Black Hat attendees.

**TenSec 2017**
- Conference name: Tencent Security Conference (TenSec)
- Date: August 31, 2017
- Location: Shenzhen China
- Description of Conference: "An international cybersecurity summit. The summit focuses on Big Data, Artificial Intelligence, Mobile Internet, Cloud Computing, Internet of Things, Block Chain, Virtualization, Intelligent Connected Vehicle and research tools in the security field, and encourages the sharing of the forefront of the international first-class security technologies and research achievements. We look forward to creating a platform to discuss the security technology innovation and the development trend in the future for all the experts in the security community. Since its launch in 2016, TenSec has been committed to exploring international frontier security technologies and research, building a long-term and sustainable communication and cooperation platform for international manufacturers and security communities to safeguard emerging Internet forms and user security."
- Attended by: Chris Wade
- Description of Activity: Chris Wade gave a presentation demonstrating a virtualized device.

**TenSec 2018**
- Conference name: Tencent Security Conference (TenSec)
- Date: October 10-11, 2018
- Location: Shenzhen China
- Description of Conference: (See above)
- Attended by: Chris Wade, David Wang
- Description of Activity: Chris and David gave a presentation on iOS SEP.

**Infiltrate 2019**
- Conference name: Infiltrate Security Conference
- Date: May 2-3, 2019
- Location: Miami
- Description of Conference: "Infiltrate is a deep technical conference that focuses entirely on offensive security issues. Groundbreaking researchers focused on the

latest technical issues will demonstrate techniques that you cannot find elsewhere. Infiltrate eschews policy and high-level presentations in favor of just hard-core thought-provoking technical meat." http://infiltratecon.com
- Attended by: Chris Wade, Amanda Gorton, Steve Dyer, Stanislaw Skowronek
- Description of Activity: Corellium was a sponsor and had a booth in the sponsor hall. Corellium also included a Zip drive in the attendee's goodie-bags that contained a puzzle; attendees who solved the puzzle could come to the booth to get a code to access an online adventure game, which was hosted on the Corellium platform.

**Infiltrate 2018**
- Conference name: Infiltrate Security Conference
- Date: April 26 -27, 2018
- Location: Miami
- Description of Conference: See above
- Attended by: Chris Wade, Amanda Gorton, Rob Turner
- Description of Activity: Networking

**TyphoonCon**
- Corellium did not attend TyphoonCon, but sponsored TyphoonCon by providing free accounts for training. In exchange, Corellium was listed as a sponsor on the website.
- Conference dates: June 10-14, 2019
- Location: Seoul, South Korea
- Description of Conference: Offensive security conference hosted by SSD Secure Disclosure

**Paid Advertising Campaigns**
Corellium paid for a promotional tweet on Twitter. $500. June 19 – July 19, 2019.
> "If you plan on attending Black Hat USA and would like to see how Corellium rewrites the book on iOS & Android security, DM/Email us to schedule a free 1 hour training which includes iOS 13 - SEP, iBoot & Kernel debugging and an overview of new mitigations/enhancements."
> -@CorelliumHQ

**Advertising agencies**
None

**Purchased Media Buys**
None

**Free Media**
Interviews

- Forbes, Thomas Brewster, interviewed Amanda Gorton, article Feb 15, 2018 (interview date uncertain)
- Forbes, Thomas Brewster, interviewed Amanda Gorton on Oct 11, 2019

**Other**

Website

Corellium created a Splash Page promotional website in Q4 2017 to receive signups for beta testing and later to receive sales inquiries. Corellium contracted design firm Jellypepper out of Australia in July 2019 to begin work on an updated and more robust website.

Trainings

Corellium has provided free devices for trainings and events to introduce potential users to the product. Corellium provided free devices for:

- TyphoonCon (in exchange for being listed as a sponsor)
- MDSec, for use at BlackHat 2018 and 2019. MDSec provided a free penetration test of our website in 2018.
- Jeff Crowell, an Apple employee, for the official DEFCON 2019 capture-the-flag game (CTF).
- Prateek Gianchandani and Dinesh Shetty, for use at Black Hat 2018 and 2019. In exchange, Corellium received two trainer badges for access to the Black Hat conference.
- Nullcon – Enciphers training course

Twitter

Corellium uses the Twitter handle @CorelliumHQ. Corellium has used Twitter to announce beta testing signups, new features, job opportunities, news, and other events.

**INTERROGATORY NO. 13:** Identify the date when Corellium first became aware any of Apple's copyrights alleged in the Action, and describe the circumstances under which Corellium first became aware of Apple's copyrights, including Identifying all Persons and Documents through which Corellium first became aware of Apple's copyrights.

**ANSWER:**

Upon subsequent clarification by Apple that the term "copyrights" in this interrogatory relates only to those copyrights specifically asserted in the operative Complaint, Corellium states that the date when it first became aware of Apple's copyrights alleged in the Action is at least the date of service of Apple's initial Complaint. As a result of the service of Apple's Complaint, the following individuals became aware of Apple's copyrights: Amanda Gorton and Christopher Wade.

**INTERROGATORY NO. 14:** Identify all actions Corellium has taken with regard to or in response to Apple's copyrights or in the anticipation of any copyright litigation with Apple, including, but not limited to, any steps taken by Corellium to inform its customers about Apple's copyrights or to obscure information about Apple's copyrights from Corellium's users or customers.

      ANSWER:  Corellium states that it has taken no actions either to inform its customers about Apple's copyrights or to obscure information about Apple's copyrights from its users or customers.

**INTERROGATORY NO. 15:** Identify all Persons who have requested purchase of, license to, or any other access to, the Corellium Apple Product to whom Corellium has refused to sell, license, or give access.

      **ANSWER:**      Corellium has declined sale, license, or access to at least the following individuals or organizations:

1. DarkMatter
2. Pretech Systems Limited
3. COEIA
4. Pure Reactions
5. Shutzwerk
6. Volicon
7. Garrett Russell
8. ProductWorld
9. Sberbank
10. Softline Group Company
11. Mirza Saadat Baig
12. Harrison Jones
13. Blessen Thomas
14. Ethan Cochran
15. Proxyclick
16. Samuel Neely
17. TechInsights Inc.
18. 冯腾飞
19. PWNZEN

In accordance with the Court's Order and pursuant to Fed. R. Civ. P. 33(d)(4), Corellium is producing documents in lieu of an answer and from which the answer to this Interrogatory may be determined, and the burden of deriving or ascertaining the answer will be substantially the same for either party. The Bates numbers for these documents are:

Corellium-026274
Corellium-026353
Corellium-007732

Corellium-026348
Corellium-008022
Corellium-007995
Corellium-026350
Corellium-026352
Corellium-026349
Corellium-026356
Corellium-026355
Corellium-026354
Corellium-026360
Corellium-026361
Corellium-026359
Corellium-026362

**INTERROGATORY NO. 16:** Identify all Foreign Persons, including but not limited to Foreign governments, public and private Foreign agencies, and Foreign companies, who have approached Corellium to learn about the Corellium Apple Product or its capabilities, or who have requested purchase of, license to, or any other access to the Corellium Apple Product, and describe Corellium's interactions and business with each such Person.

> **ANSWER:**      Corellium objects to this Interrogatory as it seeks disclosure of proprietary, confidential and trade secret information regarding Corellium's business and product. Corellium has already provided its customer list to Apple. Providing every inquiry Corellium has had for the purchase of its product has no connection whatsoever to this lawsuit and is a quintessential trade secret material. On the same grounds, Corellium also objects to this Interrogatory as it seeks private information of Corellium or Corellium's customers in violation of the parties' right to privacy under the US Constitution.
>
> Corellium further objects to this Interrogatory in that it is as it is overbroad in both time and scope. Specifically, this request is not narrowly tailored to determine whether Corellium's product infringes on Apple's copyright but rather, seeks information related to Corellium's business and contracts with third parties, or inquiries that had occurred and have been rejected, all of which are unrelated to the allegations in the Complaint and Apple.

**INTERROGATORY NO. 17:** Identify all Persons who have offered, formally or informally, to purchase or acquire part or all of Corellium's business and describe the circumstances of each offer.

**ANSWER:** Corellium objects to this request as it is overbroad, harassing, and not proportional to the needs of this case. Indeed, if a third-party company offered to acquire Corellium, that is entirely irrelevant and goes to no element of Apple's copyright infringement claim. Corellium also objects to this Interrogatory as it seeks private information of Corellium or Corellium's customers in violation of the parties' right to privacy under the US Constitution. Corellium further objects to this Interrogatory in that it is overbroad in both time and scope because it fails to identify a specific period or circumstance whereby an attempt by a third party to acquire Corellium, or any of the applicable details, may have had any relevancy to this lawsuit.

As it relates to Apple, on January 25, 2018, Corellium and Apple entered into a Confidentiality Agreement for Possible Transaction (the "Non-Disclosure Agreement") to purchase Corellium. Subject to the terms of the Non-Disclosure Agreement, Corellium will produce its documents with Apple regarding its offer and negotiations regarding a potential acquisition which are responsive to this request.

**INTERROGATORY NO. 18:** Fully describe all factual and legal bases for each affirmative defense asserted, if any, in Your answer to the Complaint.

**ANSWER:** Corellium objects to this Interrogatory as it seeks production of documents or information protected by the work product doctrine or the attorney-client privilege due to relating to the mental and strategic impressions of counsel and communications and strategy shared between counsel and the client. A discussion of the factual bases for each affirmative defense follows:

## FIRST AFFIRMATIVE DEFENSE
### (Failure To State A Claim)

Apple has failed to state a claim for both infringement and violation of the DMCA for the reasons stated below.

## SECOND AFFIRMATIVE DEFENSE
### (Fair Use)

The Corellium product is a wholly new, distinct, transformative, and socially-beneficial product with an entirely distinct purpose from ordinary iOS devices. Corellium's product provides users with a substantially more efficient and effective way to research, test, and critique both iOS itself and iOS-based applications.

Corellium's technology was designed solely for the limited purposes of research, critique, and testing.

First, the Corellium product does not provide key functionality that makes a standard iOS device desirable to ordinary consumers. For example, Corellium's virtual devices cannot make or receive phone calls, send or receive text messages, access iTunes or other DRM-protected content, log into an iCloud account, navigate with GPS, pair Bluetooth headphones, or take pictures. Indeed, the Corellium product is so significantly different from an ordinary iOS device that the

differences render the Corellium product unusable and undesirable to consumers of ordinary iOS devices. In other words, it's an entirely different product than an iPhone.

Further, and in addition to the substantial differences stated above, Corellium's virtual product provides new and additional features for research, critique, and testing purposes that are not otherwise available on a standard iOS device.

For instance, the Corellium product incorporates several advanced and innovative research and testing tools. These tools include, for example, a file browser, an app browser, and CoreTrace, a proprietary tool that enables researchers to holistically view and comprehend all system calls made by the operating system and the apps running on it, giving researchers the ability to examine and understand both iOS itself and iOS-based applications in advanced new ways that cannot be achieved with a standard device, nor with any other research tools on the market. Corellium also offers a KAlloc heap debugger, kernel debugger support, and the ability to control features that are always-on on Apple hardware, such as PAC, APRR, and KTRR. These features, which again are not available with a standard iOS device, all contribute to deeper insight for more advanced research, testing, and critique.

What's more, Corellium's virtualization technology enables the interoperability of iOS on an entirely new form-factor: that is, Corellium enables iOS to run on virtual devices on an enterprise computer server. Importantly, this new form-factor is exponentially more scalable, efficient, and effective than ordinary iOS devices for the purposes of research, testing, and critique.

Virtualization yields greater scalability and efficiency, and it provides advanced, innovative new ways to meet the challenges of workloads like testing, research, and development.

To effectively test, research, and critique iOS and iOS-based applications, developers often need to perform their work on many different device models and many different iOS versions. This is because there are many different models and versions available on the market for end users, and developers want to ensure their testing and research applies across all the different variations that end users might have. In addition, developers often want to run tests across many devices in parallel, rather than testing in series on a single device, for greater speed and efficiency.

Physical devices are simply not designed for use at scale; they are designed for use by the individual consumer. This makes them inefficient and ineffective for testing and research at volume. Further, physical devices are immutable resources: they cannot be changed into another device on demand, so if you need a different device model or OS version, you must obtain an entirely new device resource.

Corellium's virtualization technology eliminates these inefficiencies by enabling iOS to run on a form-factor purposefully designed for scale and productivity: an enterprise server. Servers consolidate resources to a single piece of hardware, simplifying resource management. This provides a streamlined way for a user to orchestrate, deploy, and manage the resources they need for rapid, nimble, efficient testing and research. Moreover, Corellium eliminates resource inefficiency by allowing users to instantly create, destroy, and recreate virtual devices on demand as needed, rather than tracking down the physical devices they need while unneeded devices sit

- 43 -

idle.

Notably, while scalability and efficiency carry no advantage for ordinary consumers, these factors are crucially advantageous for developers performing testing and research across many different device models and OS versions.

In addition, unlike physical devices, virtual devices can be paused, snapshotted, restored to a previous state, and cloned – features that further facilitate efficiency in research and testing. These features allow a developer to, for example, temporarily pause the running system and examine precisely what is happening at that moment, or return to a previous point and re-run a test in a slightly different way, or create multiple clones of a device and examine the results of different tests from the exact same starting point. This can't be done with physical iOS devices.

In short, not only does Corellium's technology not support several of the key features that make the original product desirable to ordinary consumers, but it also adds dramatic new functionality specifically designed for research, critique, and testing – functionality that is not otherwise available with the original product. These significant differences result in meaningful improvements in developers' ability to test, research, and critique iOS and iOS-based applications. Indeed, Apple itself recognized the significant advantages presented by virtual devices for research and testing purposes when it sought to acquire Corellium's technology for these purposes for millions of dollars.

Because Corellium's product differs so dramatically from Apple's iOS devices, it cannot be said to serve as a substitute for Apple's iOS devices, and as such, it cannot be said to impact the market for iOS or Apple's iOS devices. In fact, Corellium's product addresses a market that Apple not only does not address, but actually impedes.

Not only are Apple's iOS devices not marketed for the purpose of testing, research, and critique, but moreover, they are designed and sold in a way that encumbers these purposes. For example, it is not possible to purchase iOS devices running older versions of iOS, nor does Apple permit users to downgrade their iOS devices to older versions of iOS. As a result, developers seeking to perform research and testing on older iOS versions must look to second-hand markets to obtain these devices. Often, researchers will contact a seller to ensure the device is not accidentally upgraded before shipping, and once they obtain the device, the must hope no one accidentally upgrades it or breaks the device, or they must find a new one. They must repeat this process every time they need an appropriate device with the appropriate version. Significantly, any enterprise providing an iOS-based application will need to perform this type of testing and research to ensure that their application is safe and stable for their end users, who may be using many different devices and iOS versions.

With Corellium's product, on the other hand, developers can instantly deploy the precise model with the precise OS version that they need for testing or research. Moreover, they can easily and quickly run tests across every device model on every iOS version. This exponential improvement in efficiency meaningfully impacts developers' ability to perform testing and research and further distinguishes the Corellium product from physical iOS devices.

Further, security research typically requires a jailbroken device. On a physical device, jailbreaking requires exploiting a vulnerability in the iOS code. As a result, iOS security researchers often hoard vulnerabilities, rather than report them, to ensure they can continue performing research.

Corellium's platform enables developers to "jailbreak" a virtual device without the use of any such vulnerabilities. Furthermore, Corellium's "jailbreak" does not facilitate access to DRM-protected content or bypass any DRM restrictions. With Corellium, researchers are thus able to meaningfully explore the system without relying on or retaining vulnerabilities in the iOS system, and without compromising DRM-protected content. Further, Corellium's platform gives developers tools that exceed the capabilities available on a physical jailbroken device, as described above.

In short, Corellium cannot be said to compete with Apple products because Corellium does not provide a substitute for iOS devices, but rather provides an entirely new and transformative product. In this way, it cannot be said to impact the market for iOS or Apple's iOS devices. On the contrary, Corellium addresses a market failure that is otherwise hindered by Apple's iOS devices.

Notably, a week before filing its lawsuit against Corellium, Apple announced its plans to provide pre-jailbroken research devices to select security researchers. However, these devices have not been released. If they ever are released, they will lack the innovative features described above, including the highly scalable form-factor and advanced controls only offered by virtual devices. As such, it is incorrect to suggest that Corellium impacts the market for Apple's "research devices," not only because no such market exists, but also because Corellium dramatically differs in key features and functionality.

The Corellium product, in its as-built state that is delivered to customers, does not contain any iOS code. The user obtains the unencrypted, publicly available iOS files from Apple's servers. Corellium's platform loads iOS and modifies it at load time to achieve interoperability, like an operating system loading an executable. Importantly, these modifications augment iOS with the advanced research features described above.

### THIRD AFFIRMATIVE DEFENSE
### (Estoppel)

Apple is estopped from making a claim stemming from Corellium's product because it is now taking a position directly contrary to its prior position relative to Corellium and Corellium's technology.  Specifically, Apple has long been aware of the virtualization technology offered by Corellium and/or Corellium's affiliated entities and principals in the past. In fact, Apple employees have not only known about the virtualization technology and failed to protest, but instead, have actively encouraged the continued development by Corellium, thus causing Corellium to continue investing significant resources into ongoing innovation.  Apple supported Corellium's innovation and technology so much so that Corellium has been invited to the Apple campus to provide demonstrations to Apple on multiple occasions. Never once did Apple object or protest.  Apple is well-aware of these facts and knows the specifics as to its own knowledge about Corellium and

Corellium's technology.  Now, after encouragement by Apple, inducing Corellium to sink further resources into the technology, Apple suddenly sues for alleged damages.

**FOURTH AFFIRMATIVE DEFENSE**
**(Laches)**

Apple has long been aware of the virtualization technology offered by Corellium and/or Corellium's affiliated entities and principals in the past. In fact, Apple employees have not only known about the virtualization technology and failed to protest, but instead, have actively encouraged the continued development by Corellium, thus causing Corellium to continue investing significant resources into ongoing innovation.  Apple supported Corellium's innovation and technology so much so that Corellium has been invited to the Apple campus to provide demonstrations to Apple. Never once did Apple object or protest.  Apple is well-aware of these facts and knows the specifics as to its own knowledge about Corellium and Corellium's technology.  Now, after encouragement by Apple, inducing Corellium to sink further resources into the technology, Apple suddenly sues for alleged damages.

**FIFTH AFFIRMATIVE DEFENSE**
**(Waiver)**

Apple has waived any claim it may have had stemming from Corellium's product because it has long been aware of the virtualization technology offered by Corellium and/or Corellium's affiliated entities and principals. In fact, Apple employees have not only known about the virtualization technology and failed to protest, but instead, have actively encouraged the continued development by Corellium, thus causing Corellium to continue investing significant resources into ongoing innovation.  Apple supported Corellium's innovation and technology so much so that Corellium has been invited to the Apple campus to provide demonstrations to Apple. Never once did Apple object or protest.  Apple is well-aware of these facts and knows the specifics as to its own knowledge about Corellium and Corellium's technology.  Now, after encouragement by Apple, inducing Corellium to sink further resources into the technology, Apple suddenly sues for alleged damages.

**SIXTH AFFIRMATIVE DEFENSE**
**(Unclean Hands)**

Apple comes to the court with unclean hands because Apple has and is directly benefitting from Corellium's product after actively and implicitly encouraging Corellium to continue the development of the product but then suing Corellium for the same development.  In that regard, please see paragraphs 31 through 37 of Corellium's Counterclaim [D.E. 64].  Apple is now estopped from making a claim stemming from Corellium's product because it is now taking a position directly contrary to its prior position relative to Corellium and Corellium's technology. Specifically, Apple has long been aware of the virtualization technology offered by Corellium and/or Corellium's affiliated entities and principals in the past. In fact, Apple employees have not only known about the virtualization technology and failed to protest, but instead, have actively encouraged the continued development by Corellium, thus causing Corellium to continue investing significant resources into ongoing innovation.  Apple supported Corellium's innovation and

technology so much so that Corellium has been invited to the Apple campus to provide demonstrations to Apple. Never once did Apple object or protest.  Apple is well-aware of these facts and knows the specifics as to its own knowledge about Corellium and Corellium's technology.  Now, after encouragement by Apple, inducing Corellium to sink further resources into the technology, Apple suddenly sues for alleged damages.  Moreover, Apple is knowingly and improperly trying to restrain trade and control the security and research markets as discussed further below.

## SEVENTH AFFIRMATIVE DEFENSE
### (Restraint of Trade)

Apple is attempting to restrain trade through the guise of this lawsuit claiming alleged copyright infringement and violation of the DMCA.  If Apple succeeds in this case, it will not merely terminate an innovative technology that facilitates and advances the positive work of mobile developers and testers, but will stunt security, research, and innovation efforts within and beyond the mobile development industry.  To be clear, a successful result by Apple with the copyright infringement claim will set a precedent that the virtualization of any third-party software or other app or program, no matter the use or transformative nature, is infringing upon that third-party's intellectual property rights.  Such a result is at odds with the entire idea behind fair use and will inevitably close the door on virtualization and emulation efforts and other similar useful development and testing methods.  Such a precedent will keep the industry as a whole from advancing forward, limited to only what is made available by hard devices—such as those entirely controlled by Apple.

Similarly, a successful result by Apple on the DMCA claim will result, effectively, in the jailbreak industry being deemed illegal, a notion that Congress and the U.S. Copyright Office has already expressly declined to ratify. Such a precedent, at odds with the current intent of Congress, would have a resounding negative effect on advancing security (national or otherwise), app testing, repair and maintenance, and innumerable other good faith uses for the jailbreaking of an electronic device.

Finally, a week before filing its lawsuit, Apple announced that it planned to release pre-jailbroken iPhones, which it will ostensibly offer for free for select security researchers – thus implying through this instant case, that providing jailbroken iOS for security research *is* permissible, so long as Apple controls it and has no competition.

## EIGHTH AFFIRMATIVE DEFENSE
### (Authorized Use, License, Consent, Acquiescence)

As stated above, Apple has long been aware of the virtualization technology offered by Corellium and/or Corellium's affiliated entities and principals in the past. In fact, Apple employees have not only known about the virtualization technology and failed to protest, but instead, have actively authorized and encouraged the continued development by Corellium, thus causing Corellium to continue investing significant resources into ongoing innovation.  Apple supported Corellium's innovation and technology so much so that Corellium has been invited to the Apple campus to provide demonstrations to Apple. Never once did Apple object or protest.  Apple is

well-aware of these facts and knows the specifics as to its own knowledge about Corellium and Corellium's technology. Apple has acquiesced as well as expressly and implicitly authorized Corellium's virtualization technology and any use of Apple iOS therewith.

### NINTH AFFIRMATIVE DEFENSE
### (Invalidity or Unenforceability of Copyright)

Apple's protected work, or portions of it, are functional, not expressive works.

### TENTH AFFIRMATIVE DEFENSE
### (*Scenes a Faire* Doctrine)

Elements of Apple's copyrighted works are dictated by practical realities, such as by hardware standards and mechanical specifications, software standards and compatibility requirements, as well as standard programming practices, and may not obtain copyright protection as such.

Several elements of the iOS driver stack, where Corellium software meets Apple's iOS product, are particularly good examples. The NAND Flash driver for currently supported iPhones (including the model 6s and newer) is an implementation of the open NVMe standard. Additionally, the USB driver stack on all iPhones not only implements the USB standards, but also interacts - on a real phone - with a third-party USB controller which also has Linux drivers. Similarly, for the WLAN device driver, a major part of functionality mirrors closely the Broadcom device drivers on other platforms. Another example is the FIPS module referred to in Interrogatory 3 above: FIPS (Federal Information Processing Standards) are public standards developed by the National Institute of Standards and Technology for use in computer systems by non-military American government agencies and contractors, establishing requirements for security and interoperability. These are only a few examples.

Furthermore, many portions of the iOS software, including the kernel, are based on unencrypted open-source software.

### ELEVENTH AFFIRMATIVE DEFENSE
### (Merger Doctrine)

Corellium's use of its product is protected under the Copyright Merger Doctrine as there is only one way to virtualize third-party software for the purpose of research and testing—that is through the virtualization of the third-party software for the purpose of research and testing. Further, there is only one way to test and research a software, and that is to use the actual software. Corellium is merely providing a virtual platform for the purposes of research, critique, and testing. The virtualization is strictly Corellium code and there is no other way to research a certain software other than to use that software.

### TWELTH AFFIRMATIVE DEFENSE
### (No Willful infringement)

Corellium completely denies any and all claims made by Apple that it has infringed upon any of Apple's protected rights. That notwithstanding, Corellium states that all actions taken by it in the development and sale of its product were done innocently and in good faith and lack any willful intent to infringe.

### THIRTEENTH AFFIRMATIVE DEFENSE
### (Misuse)

Apple, via this lawsuit, is attempting to extend the protections afforded by its asserted Copyright Registrations to restrain trade as well as preclude Corellium from providing its virtualization product. This is copyright misuse.

### FOURTEENTH AFFIRMATIVE DEFENSE
### (De Minimis Infringement)

Apple sells its iOS devices, which include its iOS software to a certain target market and for certain commercial purposes. Corellium's product is neither marketed nor sold to either that same target market or for those same purposes. Thus, there is minimal harm, if any, realized by Apple. On the contrary, Corellium's product is marketed and sold to developers seeking to advance the security and stability of iOS and iOS-based applications, and as such, Corellium benefits and improves Apple's iOS products and the iOS ecosystem.

Furthermore, the Corellium product uses no code written by Apple for its proprietary virtualization platform. The Corellium virtualization platform merely enables users to load and execute certain portions of iOS for testing and research.  Corellium's clients download unencrypted publicly available iOS IPSW files directly from Apple to be run on Corellium's virtualization platform. Importantly, Corellium does not enable the user to run any encrypted iOS files, nor does Corellium facilitate any decryption. Corellium users are not able to run any portions of iOS that yield access to DRM-protected content or Apple services. Accordingly, any possible infringement, if any, is entirely de minimis. For clarity, however, Corellium denies any and all infringement.

### FIFTEENTH AFFIRMATIVE DEFENSE
### (Innocent Intent)

Corellium completely denies any and all claims made by Apple that it has infringed upon any of Apple's protected rights. That notwithstanding, Corellium states that all actions taken by it in the development and sale of its product were done innocently and in good faith and lack any willful intent to infringe.

### SIXTEENTH AFFIRMATIVE DEFENSE
### (Failure to State a Claim – No Copyright Infringement)

For all the reasons stated herein, Apple has failed to state a claim for Copyright Infringement.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (Constitutionality of 17 U.S.C. §§1201(a)(2) & (b))

The stated provisions abridge the First Amendment's protected right of free speech as the Corellium product is used for such purposes including the research, testing, and security efforts engaged by Corellium's clients.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (17 U.S.C. §1201(c)(4) – Free Speech)

Pursuant to 17 U.S.C. §1201(c)(4), the language set forth in section 17 U.S.C. §1201 does not "enlarge or diminish any rights of free speech or the press for activities using consumer electronics, telecommunications, or computing products."  Corellium retains the right to freely express its code and products using, *inter alia*, computing products as permitted by 17 U.S.C. §1201(c)(4). Corellium's expression is its own virtualization software, which is formed entirely upon its own code.

## NINTEENTH AFFIRMATIVE DEFENSE
### (No Circumvention Enabled)

Initially, it is noteworthy that Apple has failed to specify exactly what technological protection measures Apple believes Corellium has circumvented, thus, it is impossible to assert any specific factual bases which Corellium will express to support this instant defense.

However, Corellium does state that it has not circumvented any technological protection measures in connection with the product at issue in this case because no such technological protection measures can be said to exist. For clarity, Apple makes its iOS files freely available, unencrypted, for anyone to download, and no technological measures are in place to prevent users from accessing, opening, viewing, modifying, copying, displaying, executing, or otherwise interacting with the iOS files once downloaded.  As such, no technological protection measures can be said to exist.

## TWENTIETH AFFIRMATIVE DEFENSE
### (17 U.S.C. §1201(c)(1) – Fair Use)

The factual bases for Corellium's defense of fair use is set forth above.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
### (17 U.S.C. §1201(f) – Reverse Engineering)

The Corellium product was developed and is sold for the purposes of repair, maintenance, research, testing, and security related reasons including reverse engineering.

## TWENTY-SECOND AFFIRMATIVE DEFENSE
### (17 U.S.C. §1201(g) – Encryption Research)

The Corellium product was developed and is sold for the purposes of repair, maintenance, research, testing, and security related reasons including encryption research.

### TWENTY-THIRD AFFIRMATIVE DEFENSE
### (17 U.S.C. §1201(j) – Security Testing)

The Corellium product was developed and is sold for the purposes of repair, maintenance, research, testing, and security related reasons including security testing.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (37 C.F.R. §201.40(b)(6) – Jailbreaking)

The Corellium product was developed and is sold for the purposes of repair, maintenance, research, testing, and security related reasons including jailbreaking.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE
### (37 C.F.R. §201.40(b)(11) – Good Faith Security Research)

The Corellium product was developed and is sold for the purposes of repair, maintenance, research, testing, and security related reasons including good faith security research.

## <u>DECLARATION UNDER PENALTY OF PERJURY</u>

I, Amanda Gorton as the authorized representative and on behalf of Corellium, LLC, declare under penalty of perjury under the laws of the United States of America that the foregoing Fifth Amended Answers to Apple, Inc.'s First Set of Interrogatories are true and correct. Executed on April 18, 2020.

_____
AMANDA GORTON

AS THE AUTHORIZED REPRESENTATIVE
AND ON BEHALF OF CORELLIUM, LLC.