# EXHIBIT 25

ATTORNEY'S EYES ONLY

```
 1              UNITED STATES DISTRICT COURT

 2              SOUTHERN DISTRICT OF FLORIDA

 3      APPLE INC.

 4          Plaintiff,      CASE NO. 9:19-cv-81160-RS

 5      vs.

 6      CORELLIUM, LLC,

 7          Defendant.

 8      _____/

 9

10              Zoom, Virtual Deposition

11              Wednesday, March 25, 2020

12              10:08 a.m.-6:17 p.m.

13

14              ATTORNEY'S EYES ONLY

15      VIDEOTAPED 30(b)(6) AND INDIVIDUAL DEPOSITION OF

16              AMANDA GORTON

17

18          Taken on Behalf of the Plaintiff before

19      Lisa Gerlach, Court Reporter, Notary Public

20      in and for the State of Florida at Large,

21      pursuant to Plaintiff's Notice of Taking

22      Deposition in the above cause.

23

24      Job No. 4027360

25      Pages 1-213
```

Page 1

ATTORNEYS EYES ONLY

```
 1            Virtual Appearances through Zoom:
 2              Counsel for the Plaintiff:
 3              JESSICA STEBBINS BINA, ESQUIRE
                ELANA NIGHTINGALE DAWSON, ESQUIRE
 4              Latham & Watkins, LLP
                10250 Constellation Boulevard
 5              Suite 1100
                Century City, CA 90067
 6              424-653-5525
                jessica.stebbinsbina@lw.com
 7              elana.nightingaledawson@lw.com
 8
 9            Counsel for the Defendant and Witness:
                JONATHAN VINE, ESQUIRE
10              Cole Scott & Kissane
                222 Lakeview Avenue
11              Suite 120
                West Palm Beach, FL 33401
12              561-383-9203
                jonathan.vine@csklegal.com
13
14            Also Present: Brandon Miller, Videographer
15
16
17
18
19
20
21
22
23
24
25

                                              Page  2
```

ATTORNEYS EYES ONLY

```
 1                          INDEX
 2    WITNESS           EXAMINATION              PAGE
 3    Amanda Gorton
 4            Direct by Ms. Bina                   6
 5    Certificate of Oath                        211
 6    Certificate of Reporter                    212
 7    Witness Review Letter                      213
 8
 9                   PLAINTIFFS' EXHIBITS
10                       None
11                  DEFENDANTS' EXHIBITS
12    Exhibit 1    Notice of Deposition            8
13    Exhibit 2    Corellium, LLC's Responses and
                   Objection to Apple Inc.'s Notice of
14                 Rule 30(b)(6) Deposition of
                   Defendant Corellium               8
15
      Exhibit 3    ████████████████████████
█     ████████████████████████
      ████████████████████████
█     ██████████                             31
18    Exhibit 4    ████████████████████████████
      █████████                             60
19    Exhibit 5    ███████████                   88
20    Exhibit 6    ███████████                  100
21    Exhibit 7    ███████████                  115
22    Exhibit 8    ███████████                  132
23    Exhibit 9    █████████                    138
24    Exhibit 10   ████████████                 146
25    Exhibit 11   ████████████                 182

                                        Page  3
```

ATTORNEYS EYES ONLY



| | | |
|---|---|---|
| 1 | Exhibit 12 | 185 |
| 2 | Exhibit 13 | 186 |
| 3 | Exhibit 14 | 190 |
| 4 | Exhibit 15 | |
| | | 197 |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

Page 4

ATTORNEYS EYES ONLY

```
 1              THE VIDEOGRAPHER:  Good morning.  We're
 2         going on the record at 10:08 a.m. on
 3         March 25th, 2020.  Please note that the
 4         microphones are sensitive and may pick up
 5         whispering and rubbing of clothing.  Please
 6         silence all cell phones.  Please keep them
 7         away from the microphones, as they can
 8         interfere with the deposition audio.  Audio
 9         and video recording will continue to take
10         place unless all parties agree to go off the
11         record.
12              This is media unit number one of the
13         video-recorded deposition of Amanda Gorton,
14         taken by counsel for plaintiff, in the matter
15         of Apple Inc. vs. Corellium, LLC, filed in
16         the United States District Court, Southern
17         District of Florida.  The Case Number is
18         9:19-cv-81160-RS.
19              This deposition is taking place by
20         Zoom Virtual and all participants are
21         attending remotely.
22              My name is Brandon Miller, from the firm
23         Veritext Legal Solutions, and I'm the
24         videographer.  The court reporter is Lisa
25         Gerlach, from the firm Veritext Legal
```

Page 5

ATTORNEYS EYES ONLY

1          Solutions.  I'm not related to any party in

2          this action, nor am I interested in the

3          outcome.

4               Counsel and everyone attending remotely

5          will now state their appearances and

6          affiliations for the record, and the court

7          reporter will swear the witness.

8               MS. BINA:  This is Jessica Stebbins Bina,

9          from Latham & Watkins, counsel for plaintiff,

10         Apple Inc.

11              MS. NIGHTINGALE DAWSON:  This is Elana

12         Nightingale Dawson, with Latham & Watkins,

13         counsel for Apple Inc., plaintiff.

14              MR. VINE:  Jonathan Vine, with the law

15         firm of Cole Scott & Kissane, on behalf of

16         Corellium and the witness.

17    THEREUPON,

18                        AMANDA GORTON,

19         A Witness herein, acknowledged after having

20    been duly sworn and testified upon her oath as

21    follows:

22              THE WITNESS:  I do.

23                   DIRECT EXAMINATION

24    BY MS. BINA:

25         Q.  Good morning, Ms. Gorton.  Can you hear me

                                        Page 6

ATTORNEYS EYES ONLY

```
 1      okay?
 2          A.  Good morning.  Yes, I can hear you well.
 3          Q.  Have you ever had your deposition taken
 4      before?
 5          A.  No.  This is my first time.
 6          Q.  I may take a moment then and just go through
 7      a few of the ground rules.  I know you've attended a
 8      few of these depositions this week, so this may sound
 9      familiar to you.
10              Do you understand that you're here under oath
11      to testify?
12          A.  Yes, I do.
13          Q.  Just like you were in court?
14          A.  Yes.
15          Q.  It's very important, particularly with us all
16      attending by video, that you give me word answers and
17      not "uh-huh" or "uh-uh" or gestures of any kind.
18              Do you understand that?
19          A.  Yes, I understand.
20          Q.  And, also, we should try very hard not to
21      talk over one another so the court reporter, who is
22      taking down everything we say, can make sure to get a
23      good record.
24              Can you help me with that today?
25          A.  Absolutely.
```

Page  7

ATTORNEYS EYES ONLY

```
 1          MS. BINA:  I'm going to briefly just mark
 2     two exhibits.  Elana, if you can move in to
 3     have 00 and 01?  The first is a personal
 4     deposition notice to Amanda Gorton and the
 5     second is Corellium's responses to Apple's
 6     30(b)(6) deposition notice.
 7          MS. NIGHTINGALE DAWSON:  Sure.  Just to
 8     confirm, that's going to be Exhibit 1 for the
 9     notice and Exhibit 2 for the responses;
10     correct?
11          MS. BINA:  Yes, it is.
12          (Plaintiff's Exhibits 1 and 2 marked for
13     identification.)
14          MS. BINA:  And, Jonathan, you should be
15     able to move into the introduced folder as
16     Elana marks them.
17          MR. VINE:  That is the e-mail from the
18     remote from ███████████
19          MS. NIGHTINGALE DAWSON:  No.  There was a
20     second --
21          MS. BINA:  That should be Veritext
22     Exhibit Share.  Maybe we can go off the
23     record for a moment, Jonathan, to make sure
24     you can find it.
25          THE VIDEOGRAPHER:  Going off the record
```

Page 8

ATTORNEYS EYES ONLY

```
 1              at 10:13 a.m.
 2                   (Off record.)
 3                   THE VIDEOGRAPHER:  We are back on the
 4              record at 10:15 a.m., and this marks the
 5              beginning of media number two in the
 6              deposition of Amanda Gorton.
 7                   You may proceed, Counsel.
 8                   MR. VINE:  I see it.  We can go ahead.
 9                   MS. BINA:  Perfect.
10    BY MS. BINA:
11         Q.  If you can just open Gorton Exhibit 1,
12    Ms. Gorton?  This is a deposition notice to you.
13              Have you seen this notice before?
14         A.  I have not.
15         Q.  You understand your deposition was noticed
16    for today and you're appearing; correct?
17         A.  Yes.
18         Q.  If you could just look at Exhibit 2?  I'm
19    going to, again, ask you if you've seen the document.
20    I'm not sure whether you have or haven't.  I'll
21    represent to you, this is your counsel's responses and
22    objections to our notice of the taking of the
23    deposition of Corellium, LLC.
24              And, if you scroll here, you'll see there are
25    a number of topics where Corellium has designated you
```

Page 9

ATTORNEYS EYES ONLY

```
1    as the person who will be testifying on behalf of the

2    company.

3            I'm going to ask you a couple of questions

4    first.  Have you seen this document before?

5        A.  I have, yes.

6        Q.  And your understanding is that you'll be

7    testifying on behalf of Corellium, LLC today on the

8    topics identified herein?

9        A.  That is correct.

10       Q.  And you'll also be answering questions in

11   your personal capacity today as well; correct?

12       A.  Yes.

13           MR. VINE:  Objection.

14           MS. BINA:  Was there an objection,

15   Mr. Vine?

16           MR. VINE:  There was.

17           MS. BINA:  Okay.

18   BY MS. BINA:

19       Q.  Without telling me any conversations that you

20   had with your lawyers, can you tell me generally what

21   you did to prepare for your deposition today?

22       A.  Sure.  I had a call with my counsel yesterday

23   and I reviewed a variety of documents in preparation

24   both for my personal deposition and to prepare on

25   behalf of Corellium as the 30(b)(6) representative for
```

Page 10

ATTORNEYS EYES ONLY

```
 1      the topics listed.
 2              Q.   Which counsel did you meet with by telephone?
 3              A.   I had a call with Mr. Vine yesterday.
 4              Q.   Approximately how long was that call?
 5              A.   I don't recall.
 6              Q.   Ballpark, an hour, two hours, three hours,
 7      six?
 8              A.   30 minutes to an hour.
 9              Q.   Have you had any other calls or meetings to
10      prepare for today's deposition with anyone?
11              A.   No.
12              Q.   Did you meet with anyone from Corellium, LLC
13      in connection with preparing for this deposition?
14              A.   I did have conversations with my teammates,
15      specifically Chris Wade, Stan Skowronek, and David
16      Wang, to ask about some of the topics for the 30(b)(6)
17      questions.
18              Q.   When did you have those meetings?
19              A.   During the course of this week.  I met with
20      David, Stan and Chris on Sunday and Monday.
21              Q.   Did you meet with all three of them together
22      or separately?
23              A.   I met with all three of them together.
24              Q.   We're going to go through some of the topics
25      in more detail, but can you just tell me, at a high
```

                                                    Page 11

```
 1    level, which topics you met with them related to the
 2    30(b)(6) notice?
 3              MR. VINE:  Let me just put an objection
 4         and some guidance to Amanda.  If anybody from
 5         my law firm was present for those meetings,
 6         obviously, communications would be
 7         privileged, so please do not discuss
 8         privileged communications.
 9    BY MS. BINA:
10         Q.  Again, I don't want to hear anything you
11    discussed with your lawyers.  My understanding was
12    that this was a meeting with fact witnesses to prepare
13    for the 30(b)(6).  But if you were discussing matters
14    with counsel, I don't want to hear those
15    communications.
16              MR. VINE:  If I may just give a better
17         instruction?  If counsel was present for
18         those discussions, it's still privileged.
19         Meaning, they participated in that
20         conversation, just like Dave took that
21         position and you have taken that deposition
22         in other depositions.
23              However, you can tell Jessica what
24         specific topics were addressed without
25         waiving the attorney-client privilege.
```

Page 12

ATTORNEYS EYES ONLY

```
 1       BY MS. BINA:
 2           Q.  Before we do that, let me ask.  Was counsel
 3       present at the meeting?
 4           A.  No.
 5           Q.  Then can you, please, let me know which
 6       topics you met with them to discuss?
 7           A.  Sure.  I reviewed all topics with them just
 8       to make sure that I thoroughly investigated each
 9       topic.
10           Q.  About how long was this meeting?
11           A.  About an hour.
12           Q.  And did you -- did the four of you look at
13       any documents at the meeting?
14           A.  No.
15           Q.  You mentioned that you had reviewed documents
16       yourself.
17               Can you tell me what you reviewed to prepare
18       for your deposition?
19           A.  Yes.  I reviewed several court-related
20       documents, such as the complaint, Corellium's response
21       to the complaint, our interrogatory responses, our
22       responses to requests for admissions and production.
23               I also reviewed several company documents.
24       For example, financial statements, marketing
25       materials, pricing documents.  I reviewed a few
```

Page 13

ATTORNEYS EYES ONLY

```
1    communications with customers and resellers.

2            I'm sure there are others that I can't recall

3    off the top of my head.

4        Q.  When you say you reviewed a few

5    communications with ███████████████ can you

6    tell me which ████████████████ that you recall?

7        A. ████   ████████████████████

█   █████████████████████████████████████

9            I know there were others, but I don't recall

10   specifically which ones at the moment.

11       Q. █████████████████████████████

█   ████████████████████████████████████

█   ███████████████████

14       A.  No.

15           MR. VINE:  Objection.

16   BY MS. BINA:

17       Q.  You said that you had reviewed the

18   correspondence with resellers.

19           Which correspondence with resellers did you

20   review?

21           MR. VINE:  Objection.

22       A. ████████████████████████████

23   BY MS. BINA:

24       ██ ██████████████████████████

█   ███████████████
```

ATTORNEYS EYES ONLY

5        Q.   Which company?

6             MR. VINE:  I'm just going to designate

7        this portion -- all of this is confidential,

8        but this portion is highly confidential.

9             MS. BINA:  And, Jonathan, so you're

10       aware, what we've been doing is, the entire

11       transcript has been presumptively "attorney's

12       eyes only."  And then once the transcripts

13       come back, we'll be reviewing and

14       redesignating appropriately, if that works

15       for you --

16            MR. VINE:  That's perfect.

17            MS. BINA:  Okay.

18            MS. GORTON:  Could we have the question

19       read back, Madam Court Reporter, please?

20            THE REPORTER:  "Which company?"  Are you

21       talking about the question before?

22            MS. BINA:  "Which company" was actually

23       my question.

24   BY MS. BINA:

25       Q.

Page 15

ATTORNEYS EYES ONLY

```
  ██████████████████████████████████████████

  ██████████████████████████████████████████████

3          My question was, which company was that?

4          A.   █████████████████████████

  ████       ██████████████████████████████

  ████████

  ████  ███████

  ████  ██████████████████████████████████

  ████  █████████████████████████

10          MR. VINE:  Objection.

11          A.   ██████████████████████████████

12     BY MS. BINA:

13          ████  ████████████████████

14          MR. VINE:  Objection.

15          ████  ████████████████████████████████

  ████  ██████████████████

17     BY MS. BINA:

18          Q.   Have we now gone through everything that

19     you've done to prepare for your deposition today or is

20     there anything else that you've done that we haven't

21     discussed?

22          MR. VINE:  Objection.

23          A.   I believe that covers everything I've done to

24     prepare.

25     BY MS. BINA:
```

Page 16

ATTORNEYS EYES ONLY

```
 1              Q.  Thank you.  I want to turn a little bit --
 2      can you briefly describe your educational background?
 3              A.  Yes.  I attended high school in Kansas City
 4      at Pembroke Hill.  I attended university at Yale
 5      University, where I received a four-year master's and
 6      bachelor's degree.
 7              Q.  Was that a master of art, a master of
 8      science?
 9              A.  A master of arts.
10              Q.  In what subject?
11              A.  In the classics, ancient Latin and Greek.
12              Q.  Do you, yourself, have any technical or
13      programming computer engineering background?
14              A.  I have a limited background insofar as I've
15      taken a few online courses in basic programming.  I've
16      also worked at tech companies for the majority of my
17      career.
18              Q.  Have you taken any business and marketing
19      courses in connection -- or after -- before -- after
20      graduation from Yale?
21              A.  No.
22              Q.  Any accounting or finance courses?
23              A.  No.
24              Q.  What is your current title at Corellium?
25              A.  My title is the CEO.
```

Page 17

ATTORNEYS EYES ONLY

```
 1        Q.  Has that always been your title since
 2   Corellium's formation?
 3        A.  Yes.
 4        Q.  Do you have any other titles besides CEO?
 5        A.  Occasionally, we refer to each other as
 6   cofounders, but I don't consider that an official
 7   title.
 8   ██      ████████████████████████████████████
     █       ████████████████████████████████████
     █    █████████████████████████████████████████
     █    █████████████████
12        Q.  And how long have you known Mr. Wade?
13        A.  I've known Mr. Wade since --
14             MR. VINE:  We broke up, I think.
15             MS. BINA:  There was some noise, I think,
16        on your end.
17   BY MS. BINA:
18        Q.  You had started to say that you had known
19   Mr. Wade since -- and that was the last I heard.
20        A.  Yes.  I trailed off because I was trying to
21   remember when we met.  I believe we met in 2012.
22        Q.  Did you meet him first in a personal or
23   professional capacity?
24        A.  I met him in a professional capacity.
25        Q.  What was that capacity?
```

ATTORNEYS EYES ONLY

```
 1              A.   I had joined a startup called OpenPeak.
 2      Mr. Wade was employed by that startup.   I met him as
 3      part of my introduction to the team.
 4              Q.   At some point, you developed a personal
 5      relationship and the two of you eventually married;
 6      correct?
 7              A.   That is correct.
 8              Q.   Have you also worked together continuously
 9      since 2012 in a professional capacity?
10              A.   No.
11              Q.   At what points have you worked with Mr. Wade
12      in that time period?
13      ███     ███   ████████████████████████████████████
14      ███     ███████████████████████████████████████
15      ███     ██████████    █████████████████████████
16      ███     █████████████████████    ████████████████
17      ███     ██████████   ████████████████     ███████████
18      ███     ████████████████████████████████████
19      ███     ██████████████████████████████████
20      ███        ████████████████████████████████████
21      ███     ██████████████████████████████████
22              Q.   What was that?
23              A.   Sorry.  Do you mean what startup was that?
24              Q.   Yes.  Sorry.  What startup was that?
25      ███     ████████████████████████████████████████
```

Page 19

ATTORNEYS EYES ONLY

1    ████████████████████

2        Q.  You were carrying on.  I didn't mean to

3    interrupt.

4            ██  ████████████  ██████████████████

     █████████████████████████████████████████████

     ██████████████████████████████

7        Q.  When was Corellium founded?

8        ████████  ████████████████████████████

9        Q.  So turning back to your cofounders -- how

10   long have you known Mr. Skowronek?  And did I say that

11   correctly?

         ██  ████████████  ██████████████████████

     ███████████████████████████████████████████████████

     ██  ████

15       Q.  When, approximately, was that?

     ██  ██  ████████████████

17       Q.  Did he -- I think you testified that Virtual

18   was acquired by Citrix.  Did he also go and work with

19   you at Citrix -- or not with you -- but work at Citrix

20   when Virtual was acquired?

21           ██  ██████████████  ██████████████████

     ██  ██████████████████████

23       Q.  Did you and he and Mr. Wade all work at

24   Citrix for the same amount of time?  In other words,

25   did you start at the same time and leave at the same

                                              Page 20

ATTORNEYS EYES ONLY

```
 1    time or did some of you start or leave at different
 2    times?
 3         A.  We all started at the same time, but we
 4    departed at different times.
 5         Q.  When did you depart Citrix?
 6         A.  I don't recall offhand exactly when I
 7    departed.  I believe it was in 2015.
 8         Q.  What about Mr. Wade; do you know when he
 9    left?
10         A.  I don't recall when he departed either.  I
11    know he departed after me.
12         Q.  What about Mr. Skowronek?
13         A.  I don't recall when he departed either, but,
14    again, I believe he departed after I did.
15         Q.  How long have you known Mr. Wang?
16         A.  I believe I first met Mr. Wang in 2014.  He
17    attended our wedding.
18         Q.  So did Mr. Wade know him prior to the wedding
19    and you met him there?
20         A.  That's correct.
21         Q.  Did you work with Mr. Wang prior to
22    Corellium, LLC?
23         A.  No.
24         Q.  Were you involved at all with iEMU, which, I
25    believe, was a prior project of Mr. Wade's in the
```

Page 21

ATTORNEYS EYES ONLY

```
 1    early 2000s?
 2         A.  I was not involved in that project.
 3         Q.  Ms. Gorton, one of the topics that's been
 4    designated by Corellium as the person to speak on a
 5    particular topic is the topic of agreements or
 6    arrangements with purchase --
 7              THE REPORTER:  I'm sorry.  Hang on.
 8         Someone's got paper I can hear.  I can't hear
 9         the question.
10              MR. VINE:  Can you tell us the topic
11         number first?
12              MS. BINA:  It's topic number 17.
13              MR. VINE:  Okay.
14    BY MS. BINA:
15         ▇  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇    ▇▇▇▇▇▇▇▇▇▇
18              Without telling me any conversations that you
19    had with your attorneys, can you briefly tell me what
20    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇    ▇  ▇  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇    ▇▇▇▇▇▇▇▇▇▇▇▇
23         Q.  Anything else?
24         A.  No.  That's all.
▇    ▇  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
```

Page 22

ATTORNEYS EYES ONLY



Page 23

ATTORNEYS EYES ONLY



1      Q.  And what was your role?

2      A.  I apologize.  The audio cut out a little bit

3   there.

4   ████    ████████████    ████████████████

    ████████████████    ████████████████████

    ████    ██████████████████████████████████

    ████████████

    ████    ██████████████████████

9           MR. VINE:  Then I'll object because it's

10      compound, but okay.  No problem.  You can go

11      on and answer.

12      A.  My role at Virtual was CEO.  I was involved

13   in the negotiations from that perspective.  ████████

    ████████████████████████████████████████████████

    ████████████████████████████████████████████████

    ████████████

17   BY MS. BINA:

18      Q.  ████████████████████████████████████████

    ████████████████████████████████████████████████

    ████████████

21           MR. VINE:  Objection.

22   ████    ████████    ████████████████████████████

23   BY MS. BINA:

24      Q.  ██████████████████████████████████

25           MR. VINE:  Objection.

Veritext Legal Solutions
866 299-5127

ATTORNEYS EYES ONLY

```
1        A.  ████████████████████████████
█        ██████████.
3    BY MS. BINA:
4        Q.  ██████████████████████████████████
█        ████████████████████    ███████████████████
6        ██████████████████
7            MR. VINE:  Objection.
8        A.  There were multiple individuals with whom we
9    communicated during the course of negotiations.  The
10   pri██████████████████████████████████████████
█        ██████████
█        ████  ████████████████████████████
█        ████  ███████████
█        ████  ██████████████████████████
█        ████  ████  ████████████████████████████████
█        ██████████████████████
█        ████  ████████████████  ██████████████████████████
█        ████████████████████████████████████
19           MS. BINA:  Mr. Vine, we're hearing a lot
20       of the paper shuffling.  Is there a way you
21       could move the microphone?
22           MR. VINE:  Apparently, it's very
23       sensitive, but I have to take notes, but I
24       will do my best.  Go ahead.
25       ████  ██████  ██████████████████████████████
```

Page 25

ATTORNEYS EYES ONLY

2     BY MS. BINA:

3

7           MR. VINE:  Objection.

           MS. BINA:  So, I apologize.  My

11    four-year-old just walked in.  I didn't hear

12    the answer.  Madam Court Reporter, could you

13    read it back, please?

14        THE REPORTER:  "I don't recall any

15    conversations to that effect."

16    BY MS. BINA:

20           MR. VINE:  Objection; asked and answered,

21    lack of foundation.

22    A.

23  a

25    BY MS. BINA:

Page 26

ATTORNEYS EYES ONLY

```
1              Q.  ████████████████████████████████
█  ████████████████████████████████████████████████
█  ████████████████████████████████████
4              A.  I am aware that meeting took place, but I was
5      not involved in that meeting.
6              Q.  Were you told anything about what happened at
7      it?
8              A.  No.
9              Q.  Do you have any understanding as to what
10     happened at that meeting, as you sit here today?
11                 MR. VINE:  Objection.  How could she have
12             an understanding if she just testified she
13             wasn't told what happened at that meeting?
14                 MS. BINA:  I'm asking if she had any
15             understanding.
16                 MR. VINE:  Well, I'll allow the
17             repetitive question.  At some point, it's
18             going to become harassing.
19                 Go ahead, Amanda.
20             A.  I do have some understanding of what happened
21     at that meeting in conjunction with discussions with
22     counsel.
23     BY MS. BINA:
24             Q.  I don't want to hear anything you discussed
25     with counsel.
```

Page 27

ATTORNEYS EYES ONLY

1          Do you have any understanding outside of a

2     privileged communication?

3          A.   I do not.

4          Q.   When Mr. Wade left Citrix, and prior to the

5     formation █████████████████████████████████████████



ATTORNEYS EYES ONLY



```
 1  ███████████████

 █      █    █████████

 █      █    █████████████████████████

 █      ███████████████

 5           MR. VINE:  Objection.

 6      █    ████████████████████████

 7      ███████████████████████

 8  BY MS. BINA:

 9      █    ██████████████████████████████

 █      ████████████████████████████████

11           MR. VINE:  Objection; asked and answered.

12      A.  That is correct.

13  BY MS. BINA:

14      █    ██████████████████████████████

 █      ████████

16           MR. VINE:  Objection; asked and answered.

17      █    ███████████████████████████

18  ████████████████████████████████

 █  █████████████████    █████████████████

 █  ████████████████████████████

21  BY MS. BINA:

 █      █    ██████████████████████

 █      █    ███████████████

 █      █    ████████████████████████████

 █  ███████████████
```

Page 29

ATTORNEYS EYES ONLY

```
 7              MS. BINA:  If we can pause and go off the
 8        record for one second?
 9              THE VIDEOGRAPHER:  Okay.  Going off the
10        record at 10:53 a.m.
11              (Off record.)
12              THE VIDEOGRAPHER:  We are back on the
13        record at 10:54 a.m., and this marks the
14        beginning of media unit number three in the
15        deposition of Amanda Gorton.
16              You may proceed, Counsel.
17   BY MS. BINA:
18        Q.  Were you finished with your answer,
19   Ms. Gorton?  I apologize.  I was distracted.
20        A.  Perhaps the court reporter can read back the
21   last question?
22
```

Page 30

ATTORNEYS EYES ONLY



```
1    BY MS. BINA:
2         Q.  ███████████████████
     ████████    ███████████████
     ████████    ██████████████
5         MR. VINE:  Okay.
6       ██  ████████████████   █████████████
     ██████████████████████████████████
     ███████
9    BY MS. BINA:
10      ██  ████████████████████████
     ███████████████████████████████████
     ██  ██
     ██  ████████████████████████
     ███████████████████████
     ██  ██
     ██  ██████████████████
     ██  ████████    █████████████
     ██████████████████
19        MS. BINA:  I'd like to introduce as
20   Exhibit 3 Corellium's responses and
21   objections -- fourth amended responses and
22   objections to Apple's interrogatories.
23        (Plaintiff's Exhibit 3 was marked for
24   identification.)
25        MS. BINA:  Apple's first set of special
```

Page 31

ATTORNEYS EYES ONLY

```
 1              interrogatories, I should say.
 2                   THE WITNESS:  Ms. Stebbins Bina?
 3                   MS. BINA:  Yes?
 4                   THE WITNESS:  You didn't ask me at the
 5              outset, but I would like to make you aware
 6              that I do have a copy of those
 7              interrogatories with me here.
 8     BY MS. BINA:
 9         Q.  Great.  I'm still going to mark them for the
10     record.
11                   Do you have any other documents with you,
12     Ms. Gorton?
13         A.  I do.  I also have a copy of the list of
14     30(b)(6) topics.
15         Q.  Anything else?
16         A.  No.
17         Q.  Do you have any e-mails or chat windows or
18     other -- is there anything else open on your screen
19     besides the Veritext deposition information?
20         A.  No, nothing besides that.
21                   MR. VINE:  That's offensive.  That's
22              offensive, Jessica.  Go on, Amanda.
23                   MS. BINA:  Mr. Vine, it's a standard
24              question that you've asked all of our
25              witnesses as well.  I presumed the answer was
```

Page 32

ATTORNEYS EYES ONLY

```
 1              no, but I'd like a clear record on the topic.
 2                   MR. VINE:  I knew what you were getting
 3              at.  Go ahead.
 4         BY MS. BINA:
 5              ███████ ██████████████████████████████
   ███ █████████████████████████████████████████████
   ███      ███ ████████████████
 8              Q.  You reviewed them, I presume, prior to
 9         verification to ensure they were accurate?
10              A.  To the best of my ability, yes.
11              Q.  Of course.  So I'd like to look at your
12         response to interrogatory number four.  In particular,
13         I'm looking for -- bear with me one moment -- page 20
14         of the document.
15              A.  Sure.
   ███      ███ ███████████████████████████████████████
   ███ ████████████████████████████████████████████
   ███ ███████████████████████████████  ██████████████
   ███ ████████████████████████████████████████████████
   ███ ██████████████████████████████████████
   ███ ███████████████████
   ███      ███████████████████████████████████████
   ███ █████████
   ███      ███ ██████████████████████████████████████
   ███ ███████████████████████████████████████████████
```

Page  33

ATTORNEYS EYES ONLY

1    that can be used by end users, but in a minimum --



21        Q.  Do you use iPhones personally?

22            MR. VINE:  Objection.

23        A.  I do.

24   BY MS. BINA:

25        Q.  Do you use other Apple devices?

Page 34

ATTORNEYS EYES ONLY

```
 1              A.  I do.

 2              Q.  Which ones?

 3                  MR. VINE:  Objection.

 4              A.  I use a MacBook.

 5      BY MS. BINA:

 6              Q.  Does Corellium use Apple devices for work

 7      separate and apart from the one it virtualizes?

 8                  MR. VINE:  For what purpose?

 9                  MS. BINA:  Office purposes, any other

10          purpose.

11                  MR. VINE:  For office purposes, Amanda,

12          you can answer.

13              A.  For office purposes, Corellium has at least

14      one Mac computer.  I'm trying to recollect if there

15      are any other Apple products at the office.  I don't

16      recall if we have any other Apple devices specific for

17      office purposes.

18      BY MS. BINA:

19      ██   ████████████████████████████████

██ ██████████████████████████████████████

██ ██   ██████████████████████████

██ ██   ████████████████████████████████████████

██ ████████████████████████

24                  MR. VINE:  This is a little over the top

25          and not relevant in any way.
```

Page 35



```
 1              I'll allow you to answer that question.
 2         That's a yes or no.
 3         A.  Yes.
 4    BY MS. BINA:
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17              MR. VINE:  Objection.
18         A.
19
20    BY MS. BINA:
21         Q.  Thank you for that clarification.
22
23         A.
24
25
```

Page 36

ATTORNEYS EYES ONLY



```
 1              THE REPORTER:  Sorry.  You're cutting

 2      out.

 3      ██   ███████████████████████████████████████

        ██████████████████

 5      BY MS. BINA:

 6          Q.  Anything else?

 7          A.  Those were my primary aspects of involvement.

 8      ██   ███████████████████████████████████████

██      ███████████████████████████████████████████

██      ██████████████████████████████████████

██      █████████████

██      ██   ███████████████████████████    █████████

██      ███████████████   ████████████   ███████████

██      █████████████████████████████████████

██      █████████████████████████    ███████████

██      ████████████████████████████████████  █

██      ██████████████████████████████████

██        █████████████████████████████████████████

██      ███████████████████████████████████████

██      ███████████████████████████████████████

██      ████████████████████    █████████████████

██      ███████████████████████

██        █████████████████████████████████████████

██      ██████████████

25              THE REPORTER:  You just cut out.

                                            Page 37
```

ATTORNEYS EYES ONLY

```
1              MS. BINA:  We can't understand anything
2       now.
3              THE WITNESS:  Can you hear me now?
4              THE REPORTER:  Yes.  I'll tell you how
5       far I got.  ███████████████████████████
  █     ████████████████████████████
7              THE WITNESS:  ████████████████████████
  █     ███████████████████████████████████████
  █     █████████
  █   █████████████████
11        █  █████████████████████████████████████
  █   ████████████████████████
  █     █  ████████████████████████████████████
14             Q.  How many times did you personally visit
15      Apple's offices?
16        █  █████████████████████████████████████████
  █   █████████████████████████████████████
  █   ███████████████████████
19             Q.  Are there other times outside of acquisition
20      talks that you visited Apple?
21             A.  Not that I recall.
22        █  █████████████████████████████████
  █   ██████████████████████████████████████████████
  █   ███████████████████████████
  █     █  ████████████████████████████  █████████████
```

Page 38

ATTORNEYS EYES ONLY

```
 2        Q.  I know it was a few years ago.  I'm just

 3    asking for your best recollection.

 4           So did you have, to the best of your

 5    recollection, any calls -- any telephonic

 6    communications -- with Apple personnel prior to the

 7    meeting that, ████████████████████████████████

      ███████████

 9        A.  I don't recall. ██████████████████████

      ████████████████████████████████████████████

      ██████████████████████████████████████████████

      ██████████████████████████████████████████

      ████████████████████████

14        Q.  █████████████████████████████████████

      ███████████████████████████████████████████████

      █████████████████████████████████████

17           MR. VINE:  Objection.

18        A.  ██████████████████████████████████████
```

ATTORNEYS EYES ONLY



1

2

3

BY MS. BINA:

5    Q.   Anything else?

6    A.

7         THE REPORTER:   You cut out.

8    A.

9

10

11

12

13

14   BY MS. BINA:

15   Q.

16

17

18

19

20        MR. VINE:   Objection.

21

22

23

24

25

Page 40

ATTORNEYS EYES ONLY

```
1    ███████████████████████████████████████

     ███████████████████████████████████████

     ████████████████████████████████████

     ████████████████████████████████████

     ███████████████████████████████

6    BY MS. BINA:

7         ██    ███████████████████████████████████

     ██████████████████████████

9         MR. VINE:  Objection.

10   A.   ███████████████████████████████

     █████████████████████████████████████

12   BY MS. BINA:

13        ██   ██████

14        MR. VINE:  Let her finish the question.

15   Jessica, she wasn't done with her answer.

16   Let her finish.  Thank you.

17        MS. BINA:  I think she was trying to

18   clarify and I was trying to help in that

19   regard.

20   BY MS. BINA:

21   Q.  Yes, that was my question.

22        ██   █████   █████████████████████████

     ████████████████████████████████████████

24   BY MS. BINA:

25   Q.  ██████████   ████████████████████████████
```

                                        Page 41

ATTORNEYS EYES ONLY

```
 1   ████████████████████████████████████

 ■   ███████████████

 ■        ■    ■    ████████████████████████████

 ■        ■    █████████████████████████████████

 ■   ██████████████████

 6        A.   No.  We never discussed those things.

 7        Q.  ██████████████████████████████████

 ■   ███████████████  that we have not covered that you

 9   recall as we sit here today?

10        A.   Not at this time.

11        Q.  ███████████████████████████

 ■   █████████████████████████████████████████

 ■        ■    ████████████████████

14        Q.   Similarly to what we just did with

15   Mr. Krstic, can you tell me, at a high level, the

16   topics you remember discussing with Mr. Smith?

17        ■    ■    ██████████████████████████

 ■   █████████████████████████████████████████████

 ■   ████████████████████████████    ███████████

 ■   █████████████████████████████████████████████

 ■   █████████████████████████████████████

 ■   █████████████████████    ████████████████████

 ■   ███████████████████████████

 ■        ■    ███████████████████████████████████

 ■   ████████████████████████████████?
```

Page 42

ATTORNEYS EYES ONLY



```
 1        ██    ██    ████████████████████████████████
          ██    ██    █████████████████████████████████
   ██        ███████████████
   ██        ██    ██    █████████████████████
 5        Q.   I believe you testified that you also recall
 6   meeting with Jon Andrews?
 7        A.   That is correct.
 8        Q.   Was that just one time or did you meet with
 9   him multiple times either by phone or in person?
10        ██    ████████████████████████████████
   ██   █████████████████████████████████
   ██   ████████████████
13        Q.   Can you tell me what you recall discussing
14   with Mr. Andrews?
15        ██    ██    █████████████████████████████
   ██   █████████████    ████████████████████████████████████
   ██   █████████████████████████████████████
   ██        ██████████████████████████████████
   ██   ███████████████████████████████████
   ██   █████████████████████████████████████████
   ██   ███████████████████████████
   ██   ████████████████████████████████████
   ██   ████████████
   ██        █████████████████████████████████
   ██   ████████████████    ████████████████████████
```

ATTORNEYS EYES ONLY



1

 

 

 

 

 

 

 

 

 

 

12          MR. VINE:  Whenever you're ready --

13     Jessica, whenever you're at a good breaking

14     point, maybe we can take a five-minute break?

15     Whenever you're ready.

16          MS. BINA:  I was going to ask one or two

17     more questions and offer a break, so that's

18     perfect timing.

19     BY MS. BINA:

20          Q.

21

 

 

 

 

Page 44

ATTORNEYS EYES ONLY

1 ████████████████████

██ ████ ████ ████████████████████

██ ████████████████████████████

4          MS. BINA:  Now would be a good time for

5     that five or ten minute break, if we want to

6     go off the record.

7          MR. VINE:  Yeah.

8          THE VIDEOGRAPHER:  Stand by.  This marks

9     the end of media unit number three.  Going

10     off the record at 11:27 a.m.

11          (Brief recess.)

12          THE VIDEOGRAPHER:  We're back on the

13     record at 11:38 a.m.  This marks the

14     beginning of media number four in the

15     deposition of Amanda Gorton.

16          You may proceed, Counsel.

17          MS. BINA:  Thank you.

18     BY MS. BINA:

19     ████ ████████████████████████

██ ████████████████████████████

██ ████████████████████████

██ ████████████████████████████

██ ██████████████████

██ ████ ████

██ ████ ████████████████████████

                                        Page 45

ATTORNEYS EYES ONLY



Page 46

ATTORNEYS EYES ONLY



1

22        A.   I don't know off the top of my head.

23

25             MR. VINE:   Objection.

Page 47

ATTORNEYS EYES ONLY



```
 1          A.  I don't know for certain.  I would assume so,
 2     but I'm not sure.
 3     BY MS. BINA:
 4          ████████████████████████████████████████████
       ██████████████████████████████████████████████████
       ██████████████████
 7          A.  Not that I can recall at the moment.
 8          Q.  █████████████████████████████████████
       ████████████████████████████████████████
       █████████████████████████████████████████████
       ████████████████████████████████
12          A.  No.
13          Q.  ███████████████████████████████████████████████
       ██         ██████████████████████████████████████████████
       █████████████████████████████     ████████████████████████
       ████████████████████████████████████████████████████
       ██         ████████████████████████████████████████████
       ██████████████████████████
19          A.  Yes.
20          Q.  -- what is his role?
21          A.  Would you like me to spell the last name?
22          THE REPORTER:  Yes.
23          THE WITNESS:  ███████████████████████.
24     BY MS. BINA:
25          ████████████████████████████████████████████████
                                                      ███████ 48
```

ATTORNEYS EYES ONLY

▮   ▮   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮   ▮▮▮▮▮

3        Q.   I understand that other persons at Corellium

4    are more involved with the technical aspects of the

5    product than you.

6             Is that fair to say?

7        A.   Yes, that's fair to say.

8        Q.   Could you give me your basic understanding in

9    layman's terms of what the product does and how it

10   works?

11            MR. VINE:   Objection.  This is not as a

12       corporate representative, but you're saying

13       as an individual.  Correct?

14            MS. BINA:   Correct.  I'm not asking her

15       in her corporate representative capacity.

16       I'm asking her, as the CEO of the company,

17       what her company does, essentially.

18            MR. VINE:   Well, let me just say this.

19       We had the e-mail exchange, and you made it

20       very clear that you're not going to ask her

21       about technical stuff in a corporate

22       representative capacity.  She's not been

23       designated -- let me finish my statement,

24       please.  And that she's not going to have to

25       answer questions on technical.

Page 49

```
 1              But, I agree, Amanda individually can
 2         answer at a high level what she understands
 3         the product does.
 4              MS. BINA:  Yes.  Just so we're clear,
 5         Jonathan, the correspondence we're talking
 6         about related to technical aspects of bugs
 7         that Corellium had found, but I'm not asking
 8         her this question as a 30(b)(6) witness.  I'm
 9         just asking what she knows.
10              MR. VINE:  There were other things
11         besides the bug issue, but I'm not going to
12         have that debate anymore.  Move on, please.
13    BY MS. BINA:
14         Q.  You can answer the question.  Would you like
15    to have it read back?
16         A.  Yes, please.
17              THE REPORTER:  "Could you give me your
18         basic understanding in layman's terms of what
19         the product does and how it works?"
20         ████████████    ██████    ████████████████
██    ████████████████████████████████
██    ████████████████████████████████████████████
██    ██████████████████████████    ███████████
██    █████████████████████████████████████████
██    ████████████████████████████████
```

Veritext Legal Solutions
866 299-5127

ATTORNEYS EYES ONLY

1 ████████████████████████████████

2 ████████████████████████████████

3 ████████████████████████████████

4 ████████████████████████████████

5 ████████████

6     BY MS. BINA:

7          Q.  Are you finished?

8          A.  Yes.

9          Q.  Thank you.  What product does Corellium

10    currently virtualize or allow customers to virtualize?

11          A.  Corellium currently enables users to

12    virtualize a variety of iPhone and Android models.

13          Q.  At what point did Corellium begin offering

14    the Android models?

15          A.  I don't recall.

16          Q.  Do you know approximately when?

17          A.  I don't.  I believe it may have been early

18    2019, but that's purely a guess.

19          Q.  It is correct that, at least when the company

20    launched, it only offered an Apple device model;

21    correct?

22          MR. VINE:  Objection.

23          A.  That is correct; although, it was always our

24    intention to enable Android device models.  It simply

25    took us some time to develop those models.

Page 51

ATTORNEYS EYES ONLY

```
 1      BY MS. BINA:
 2           Q.  And then for approximately a year, in your
 3      best estimation, it offered only the iOS devices and
 4      then others were added?
 5           A.  Yes, that is correct.  Although, during that
 6      time, we were actively working on adding the Android
 7      device models.
 8           Q.  Does Corellium currently offer a cloud-based
 9      product to its users?
10           A.  Yes.
11           Q.  Is it possible at the moment for new cloud
12      users to sign up or are you only servicing existing
13      cloud accounts?
14           A.  It is possible for new users to sign up,
15      however, we generally don't enable simply anyone to
16      sign up, so all users must still go through our
17      qualification process before they're able to access or
18      sign up to the product.
19           Q.  When did you start offering the cloud-based
20      product?
21           A.  To the best of my recollection, we began
22      offering a cloud-based product in early 2019.
23           Q.  At an earlier point in 2018, did you offer
24      trial versions of a cloud-based product?
25           A.  Yes.  We initially offered beta testing
```

Page 52

ATTORNEYS EYES ONLY

1    accounts for a limited number of users.  The goal of

2    beta testing was to help us identify bugs in the

3    platform and to give feedback about the features of



12            THE REPORTER:  I'm sorry.  You're

13       breaking up.  We developed a reseller

14       relationship?

23    BY MS. BINA:

Page 53

ATTORNEYS EYES ONLY



```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10          A.   That is correct.
11          Q.
12
13
14
15
16
17
18
19
20
21
22
23
24                                              ?
25          MR. VINE:   I know it's hard, guys,
```

Page 54

```
1          because there's a little bit of a delay.  If
2          you can just give it a one-more-second pause,
3          Jessica, before Amanda finishes, because
4          sometimes there's a delay and she's still
5          talking.  Thank you.
6               Go ahead, Amanda.
7               THE WITNESS:  ██████████  ██████
   ██  ████████████████████████████████████
   ██  ████████████████████████████████████
   ██  ████████████████████████████████████
   ██  ██████████████████████████████████████████
   ██  ██████████████████████████████████████████
   ██  ██████████████  ████████████████████████
   ██  ████████████████████████████████████
15   BY MS. BINA:
16        Q.  Do you remember offhand any of those people?
17        A.  I don't recall the specific names offhand,
18   but I do recall that many of them posted about their
19   experience with the product.
20        Q.  Ms. Gorton, you cut out for quite a bit of
21   that answer.  Is it possible that you could repeat it?
22        A.  Sure.  I don't recall the names of the
23   individuals offhand, but I do recall that several of
24   them Tweeted about their experience with the product.
25   ██  ████████████████████████████████████████████
                              ████████
```

ATTORNEYS EYES ONLY



Page  56

ATTORNEYS EYES ONLY



1    A. ▮▮▮ ▮▮▮▮▮▮▮▮▮▮

     ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮

     ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮

     ▮▮▮▮▮▮▮▮▮▮▮

     ▮▮▮▮▮▮▮▮▮▮▮▮

     ▮▮▮▮▮▮▮▮▮▮▮▮▮

     ▮ ▮▮▮▮▮▮▮▮▮▮

     ▮▮▮▮▮▮▮▮▮▮▮

     ▮▮▮▮▮▮▮

     ▮ ▮▮▮▮▮▮▮▮

     ▮▮▮▮▮▮▮▮▮▮▮▮▮

     ▮▮

     ▮ ▮▮▮▮▮▮▮▮▮▮

     ▮▮▮▮▮▮▮▮▮

     ▮▮▮

     ▮ ▮▮▮▮▮▮▮▮

     ▮▮

     ▮  So I'm going to turn now to a topic on which

19   you've been designated as a corporate representative,

20   and that's topic number 14, internal names or code

21   names for the Corellium Apple product.

22       Before I launch into that line of

23   questioning, I am cognizant that it's noon Eastern

24   time, and I wanted to ask you and Mr. Vine at what

25   time you would like a lunch break.

                                              Page 57

ATTORNEYS EYES ONLY

```
 1              A.  I don't normally eat lunch.
 2                  Jonathan, do you have a preference?
 3                  MR. VINE:  If it means finishing earlier
 4              and trying to get even skinnier, then I don't
 5              need to eat lunch.  But if we need to take a
 6              quick break at, like, 1:00 so Amanda can get
 7              out some orange juice or a bar or something,
 8              I'm happy to do that.  I'm good right now.
 9                  Amanda, are you good?
10                  THE WITNESS:  I am good.
11                  MS. BINA:  I do think we'll be going for
12              several hours more, so I imagine that the
13              court reporter would probably appreciate a
14              lunch break at some point.  I'll plan to stop
15              around 1:00 Eastern time for lunch or
16              thereabouts, so we can take whatever break is
17              appropriate.
18                  MR. VINE:  And not to hold you to it, but
19              when you say several hours, does that mean
20              you'll go to 5:00 Eastern Standard Time?
21                  MS. BINA:  I don't know exactly,
22              Jonathan.  It's going to be several hours.
23              It's more just based on the length of -- the
24              number of areas of this witness's knowledge.
25              Unfortunately, she has the good or bad luck
```

Page 58

```
 1              of going first, so there's a lot of questions
 2         to ask her.
 3              MR. VINE:  Go ahead.
 4    BY MS. BINA:
 5         Q.  Turning to topic number 14, that's internal
 6    names or code names for the Corellium Apple product.
 7              Can you tell me, without telling us any
 8    conversations you had with your attorneys, what you
 9    did to answer the question on this topic?
10         A.  Well, the topic is easy because we don't have
11    any internal names or code names for the Corellium
12    Apple product.
13         Q.  Okay.  I suspected that might be the case.
14    So that is an easy topic to close out.
15              Turning to topic number 15, each version or
16    update of the Corellium Apple product, including for
17    the cloud-based Corellium Apple product and all
18    private installations of the Corellium Apple product.
19              And without telling me any conversations you
20    had with your attorney, can you tell me what you did
21    to prepare to answer questions on this topic?
22         A.  Primarily what I did to prepare was to review
23    our answer to interrogatory number one, and to review
24    the corresponding release notes.
25              MS. BINA:  I'd like to introduce
```

ATTORNEYS EYES ONLY

1 ████████████████  ██████████████████

2 ███████████  █████████████████

3 ████████████████████████████████

4 ████████████   I'm going to mark that as

5 Exhibit 4.

6        (Plaintiff's Exhibit 4 was marked for

7 identification.)

8        MR. VINE:  Just let us know when you've

9 shared it.  It didn't come yet.

10       MS. BINA:  Elana is loading it now.  It

11 should be arriving momentarily.

12       MR. VINE:  Thank you.  I got it.  Let me

13 open it.  Give me one second.

14       MS. BINA:  I'm specifically going to ask

15 you about slide 14 of this document.

16       MR. VINE:  Okay.  You may proceed.

17 BY MS. BINA:

18       Q.  Ms. Gorton, do you have slide 14 in front of

19 you?

20       A.  I apologize.  Is that "current status?"

21       Q.  Yes, it is.

22       A.  Yes, I do.

23       █  ████████████████████████████

24 ██████████████████████████████

25       ████████████████████

Page 60

ATTORNEYS EYES ONLY



Page 61

ATTORNEYS EYES ONLY



to

Page 62

ATTORNEYS EYES ONLY

12    BY MS. BINA:

13        Q.   Thank you.  So I believe you said that you

14    reviewed your response to Corellium's response to

15    interrogatory number 1 in connection with this

16    30(b)(6) topic.  So let's return to Exhibit 3.

17            If you can turn to the fourth page of that

18    document, I believe that's the response you're

19    referring to.

20            MR. VINE:  Did you say Exhibit 3, number

21        4?

22            MS. BINA:  Exhibit 3, and I think I said

23        page 4.

24            MR. VINE:  Page 4.  Okay.  I apologize.

25        Got it.

Page 63

ATTORNEYS EYES ONLY

```
1              THE WITNESS:  Yes.
2       BY MS. BINA:
3              Q.  So these, again, are the interrogatory
4       responses that you verified on behalf of Corellium,
5       LLC; correct?
6              A.  Yes.
7       ██  ████████████████████████████████
   ██   ███████████████████████████████████
   ██         ███████████  ███████████
   ██      ██  ██████████████████████████████
   ██   ██████████  ██████████████████████████
   ██      ██████████████
13      BY MS. BINA:
14             Q.  Do you know whether those release notes have
15      been produced to us in discovery in this case?
16             A.  I believe that Dr. Nieh indicated that he had
17      reviewed them, which would lead me to believe that
18      they have been produced.
19             Q.  Are you personally aware of how the Corellium
20      Apple product -- let me back up a second.  Do you know
21      what I mean when I say "Corellium Apple product?"
22             A.  I am aware that the definition has varied
23      through the course of discovery.  When you say
24      "Corellium Apple product," in my mind, I typically
25      substitute what we refer to as CORSEC, which is the
```

Page 64

ATTORNEYS EYES ONLY



1    product that we sell and advertise.

14        Q.   Then I'm going to refer to "Corellium Apple

15   product" today using the definition that you've just

16   provided, which is the CORSEC product that you sell to

17   customers at this time, as well as all prior versions

18   of that product.

19            So my question is, are you personally aware

20   of how the Corellium Apple product was developed

21   technically?

22            MR. VINE:   Objection.   Just so it's

23        clear, this is not on behalf of the corporate

24        rep.   Go ahead.

25        A.   In my capacity at Corellium, I am involved in

                                              Page 65

ATTORNEYS EYES ONLY

```
 1    general project management, so I have a general

 2    understanding of the evolution of the product, but I

 3    don't have a deep technical understanding of the

 4    various fixes, updates, feature additions, and so

 5    forth.

 6    BY MS. BINA:

 7         Q.  ████████████████████████████████

      ███████████████████████████████████

      █████████████████████████████████

      █████████████████████████████████████

      ████████████████████████

         ███████████  ███████████  ██████████

         ██  ████████████████████████████████████

      ██████████████████████████████████████

         ████████████

16    BY MS. BINA:

17         ██  ████████████████████████████████████

      █████████████████████████████████████████

      ████████████████████████

         ███████████  █████████████

         ██  ████████████████████████████████████

      ██████████████████████████████████████

         ████████

24    BY MS. BINA:

25         Q.  What do you mean by "proprietary source
```

ATTORNEYS EYES ONLY

```
 1       code?"
 2              A.  I mean, source code that belongs to Apple.
 3              Q.  I couldn't quite catch that answer.  Would
 4       you mind repeating it?  I'm sorry.
 5              A.  I mean, source code that belongs to Apple.
 6              Q.  When you say -- sorry.  I didn't mean to cut
 7       you off.
 8              A.  ██████   ███████████    █████████████████████
   ██  ██████████████████████████████████████████████████████
   ██  █████████████████████████████
11              Q.  So your understanding is, there's no non-open
12       source -- Apple source code -- within the Corellium
13       Apple product code?
14              A.  That is correct.
15              Q.  Before we march through the response to
16       interrogatory 1 in detail, can you tell me
17       generally -- what are the most significant changes
18       that Corellium has made to its product's functionality
19       over time?
20              MR. VINE:  Objection.
21                ██  ████████████████████████████████████████████
   ██  ████████████████████████████████████████
   ██  ██████████████████  ███████████████████████████
   ██  ██████████████████████████████████████████
   ██  ███████████████████████████████████████
```

ATTORNEYS EYES ONLY

1     ███████████████

      ███                    ████████████████████████████

      ███   █████████████████

4     BY MS. BINA:

5           Q.  And what are those key features that you

6     described that have been added --

7               THE REPORTER:  I can't understand.  What

8           are those key features?

9     BY MS. BINA:

10          Q.  -- that have been added to facilitate

11    research?

12              MS. BINA:  I'm going to try plugging the

13          headset back in and let's see --

14              MR. VINE:  You're going to have to repeat

15          that question because it was, like, slurry.

16              MS. BINA:  Let's see if this makes

17          horrible static.

18    BY MS. BINA:

19          Q.  The question was, what are the key features

20    that have been added that you just referenced?

21              MR. VINE:  Objection.

22          ██   ███████████████████████

      ███   ████████████████████████████████

      ███   █████████████████████████████   ███████████

      ███   █████████████████████████████████

                                              Page 68

ATTORNEYS EYES ONLY

1    ████████████████████████████████████████████████

2         Those are a few of the features to which I

3    was referring.

4    BY MS. BINA:

5         Q.  ████████████████████████████████████

█    ████    ██    ████████████████████████████████

█    ████    ████████████████████████████    ████████████████

█    ████    ████████████████████████████████████████████████████

█    ████    ██████████████████

█    ████    ██    ████    ████████████████████████████

█    ████    ██████████████████

█    ████    ██    ████████████████████████████

█    ████    ████████████████████████████████████

14        May I reference that?

15   Q.  You may.

16        MR. VINE:  Amanda, any time you need to

17   review the answers to interrogatories or

18   information in front of you, by all means, go

19   ahead.

20        THE WITNESS:  Thank you.

21   ████    ██    ████████████████████████████████████

█    ████    ████████████████████████

23   BY MS. BINA:

24        Q.  And if we look at that entry, it looks like

25   that was also when the app and file browsers you

Page 69

```
1      mentioned were added?

2           A.   Yes, that is correct.

3           Q.   ████████████████████████████████████

       ████████████

       █████████████████████████████

       █   ██████████████████████████████████████

       █████████████████████   ████████████████████████

       ████████████████████████████████████████████

       ███████████████████████████████████

       █   ██   █████████   ████████████████   █████████

       █████████████████████████████████████████   ████████

       ████████████████████████████████████   ██████████

       ████████████████████████████████████████████████

       █████████████████████████████████   █████████████

       ████████████████████████████████████████████████

       ████████

17          ███████████████████████████████████████████

       ████████████████████████████████████████████

       ██████████████████████████████████████████

       ███████████████████████████████████████

       ██████████████████████████████████████████████

       ███████████████████████

23          MR. VINE:   Objection.

24          A.   I would say that we endeavored to adopt the

25      strategy that you have just outlined as we've evolved
```



                                                        Page 70

ATTORNEYS EYES ONLY

```
 1     as a company.  But I'm not confident in saying that
 2     we've always adhered to that standard, particularly
 3     for earlier releases.
 4     BY MS. BINA:
 5          Q.  Understood.  So if we could look at the 1.1,
 6     January 2018, was that the first version that you
 7     offered to the public?
 8               MR. VINE:  Objection.
 9          A.  I believe this would be the first version,
10     yes.
11     BY MS. BINA:
12          Q.  And it looks like, three months later, in
13     April 2018, there was an update where there was
14     support added for a number of Apple devices.
15               Is that correct?
16          A.  That is what the document reflects, yes.
17          Q.  Is the document accurate in your
18     understanding?
19          A.  In my understanding, it is accurate, yes.
20          Q.  When it says "support for" does that mean
21     that customers could now load virtual iPhone 6 Plus,
22     iPad Mini 4, iPod Touch 6, and so on, into the
23     Corellium Apple product?
24          A.  That is accurate.
25          Q.  At that time, did the product have a
```

Page 71



```
 1    drop-down menu, where users could select from amongst

 2    supported products and they would then be downloaded

 3    and pulled in?

 4         A.  Yes, that is --

 5         Q.  We lost you, Ms. Gorton.

 6    ███   ████████████   ████████████████   ██████████

█     ████████████████████████████████████████████████

█     ████████████████████

 9         Q.  You said "in all previous versions?"

10         A.  Correct.

11         Q.  Until the most recent update?

12         A.  That's correct.

13    ███   ██████████████████████████████████████

█     ██████████████████████████████████████████████████████

█     ██████████████████

16         MR. VINE:  Objection.

17         A.  ████████████████████████████████████████

18    BY MS. BINA:

19    ███   ████████████████████████████████████████████████

█     ██████████████████████████████████████████████████████

█     ████████████████████

22         MR. VINE:  Is somebody typing or is that

23    static?

24         MS. BINA:  It seems like I'm staticing up

25    again.  I'm trying to figure out how to stop
```

                                            Page 72

ATTORNEYS EYES ONLY

```
 1          it.
 2               Is it still there?  I can't hear it, but
 3          I think other people can hear it.
 4               THE REPORTER:  It's better.
 5               MS. BINA:  It's better?
 6               MR. VINE:  No.  It's still there.
 7               MS. BINA:  All right.  I'll go back to
 8          speaker and hopefully --
 9               THE REPORTER:  It's so much better with
10          the headphones for me.
11               MS. BINA:  It apparently causes horrific
12          static for some folks.  I'm not sure what the
13          technical issue is.  I'll try to keep my
14          phone as close as I can.
15     BY MS. BINA:
16          Q.  So my question was, there were a number of
17     additional iPhones that were added here in the May
18     2018 update; correct?
19          A.  That is what the document reflects, and I
20     have no reason to doubt its accuracy.
21          Q.  ████████████████████████████████
██          ██  ███████████████████████████████████
██     █████████████████████████████████████████████████
██     ███████████████████████████████████████
██     █████████████████████████████
```

Page 73

ATTORNEYS EYES ONLY



17          What does this mean?

18

Page 74

ATTORNEYS EYES ONLY



1          Q.

2

16         A.

Page  75

ATTORNEYS EYES ONLY



17        MR. VINE:   Objection.

22    BY MS. BINA:

Page 76

ATTORNEYS EYES ONLY



Page  77

ATTORNEYS EYES ONLY

1        Q.   What does it mean that users can now create a

2        ███████████████████████

3        ██        ██   ████████████████████████

4        ██        ███████████████████████████

5        ██        ██████████████   ███████████████

6        ██        ████████████████████████████████

7        ██        ████████

8        ██        ██   ████████████████████████

9        ██        ████████████████████████████████

10       ██        ████████████████████████████████

11       ██        ████████████████████████

12       ██        ████████████████████████

13       ██        ██████████

14            MR. VINE:   Objection.

15       A.   A clone would be a new instance of a virtual

16   device created from the data contained in the device

17   snapshot.

18   BY MS. BINA:

19       Q.   So the clone is a copy of the first device?

20            MR. VINE:   Objection.

21       A.   No.   The clone is not a copy of the first

22   device.   It's a new device based on the information

23   contained in the device snapshot.

24   BY MS. BINA:

25       Q.   How is that not a copy?

                                              Page 78

1           MR. VINE:  Objection; asked and answered.

2      She just explained it.

3           MS. BINA:  Mr. Vine --

4           MR. VINE:  Amanda, if you want to repeat

5      your answer to the witness, by all means, go

6      ahead.  I mean, to the lawyer.

7           MS. BINA:  Mr. Vine, you're coaching the

8      witness and that's improper.  Please let her

9      answer the question.  My question was, how is

10      the process that she just described not

11      creating a copy?

12           MR. VINE:  Okay.  Let me make my

13      response.  Number one, I take offense when

14      you say I'm coaching the witness.  Completely

15      inaccurate.  Please try to act professional.

16      I simply was objecting because I believe that

17      question was asked and answered.  I didn't

18      direct her to not answer the question.  She

19      can still answer the question.

20           By all means, Amanda, please, go ahead.

21      A.  When a new device is created based on the

22   information from the previous device, it inevitably

23   becomes a new device and, therefore, is not a copy of

24   the old device.

25   BY MS. BINA:

Veritext Legal Solutions
866 299-5127

```
 1              Q.  Isn't any copy a new version of an old -- for

 2       instance, if I copy a piece of paper, I'm creating a

 3       physical new piece of paper that has all the

 4       information that was contained on the old piece of

 5       paper.  It sounds like the process you're describing

 6       for cloning is similar.  You take the version from the

 7       old snapshot and you put it on a new device, just like

 8       I would put the print from one piece of paper to

 9       another.

10              So I'm trying to understand what the

11       difference is.

12              MR. VINE:  Objection.  Is there a

13          question?  I didn't hear a question there.

14       BY MS. BINA:

15          Q.  The question is, what is the difference?

16              MR. VINE:  Objection; asked and answered.

17          A.  The piece of paper is static.  The virtual

18       device is in motion.

19       BY MS. BINA:

20          Q.  So at the time of creation, the virtual

21       device would potentially be a copy, but then it could

22       be modified?

23              MR. VINE:  Objection.

24          A.  No.  The new virtual device is itself a new

25       virtual device.  It is not a copy of the old virtual
```

                                                    Page 80

ATTORNEYS EYES ONLY

1   device.  It is simply a new virtual device that

2   contains the information as a starting point.

3   BY MS. BINA:

4        Q.  Right.  But at the moment of creation, it's

5   identical to the device snapshot it's cloning from;

6   right?

7             MR. VINE:  Objection.  We're definitely

8        getting into an area of a technical issue

9        that she may or may not know.

10            Again, please go ahead and answer.

11       A.  To the best of my understanding, the new

12  device created from this snapshot is not identical to

13  or a copy of the initial device or its snapshot.

14  BY MS. BINA:

15       Q.  In what way is it different at the moment --

16            MR. VINE:  Objection.  Jessica, you've

17       now asked the same question four or five

18       times.  It's getting harassing.

19            MS. BINA:  I still -- I'm trying to

20       understand the answer to this question,

21       because she told me it pulls identical

22       information and creates a new device, but

23       then she says it's not identical.  So I'm

24       asking in what way is it not identical.

25  BY MS. BINA:

Page 81

ATTORNEYS EYES ONLY

1          Q.  If the answer, Ms. Gorton, is these are

2     technical questions that someone else should answer,

3     you can let me know that it's beyond your knowledge.

4     But I think I'm just trying to understand the answer

5     to your question, which is that it pulls material from

6     the old snapshot to the new device and repopulates

7     that material completely, but it's somehow not

8     identical.  I'm not understanding how it's not

9     identical.

10            MR. VINE:  Objection; mischaracterizes

11        her testimony.

12            Amanda, to the extent you, one more time,

13        can try to explain the difference, I'll allow

14        you this last time.

15        A.  I think that this question is perhaps better

16     left to someone with a deeper technical knowledge to

17     better explain the technical differences.

18     BY MS. BINA:

19        Q.  Thank you.  All right.

20            So what would you consider the benefits of

21     the cloning feature to Corellium users?

22        A.  One example would be to enable an end user

23     to --

24        Q.  It's getting hard to understand you,

25     Ms. Gorton.

Veritext Legal Solutions
866 299-5127

ATTORNEYS EYES ONLY

1        A.   I apologize.  One example would be to enable

2    an end user to spin up multiple virtual devices that

3    have the same basic starting parameters.  In this way,

4    they're able to run experiments from similar starting

5    points and have a new outcome of different

6    applications.

7        Q.   Turning to release 1.3.2, SEP emulation for

8    ████████████████████

9              █████████████████████████████

10   ██    ██  █████████████████████████████████

11   ██    ██  ████████████████████████████████████

12        MR. VINE:   Objection.

13        A.   Yes.

14   BY MS. BINA:

15        Q. ███████████████████████████████

     ██   █████████████████

     ██        ████████████    █████████████

     ██    ██  ███████████████████████████████████████

     ██   █████████████████████████

     ██   ████████████

     ██    ██  ███████████████████████

     ██    ██  ██████████████████████████████████

     ██   ████████████████████████████████████

     ██   ██████████████████████████

     ██    ██  ████████████████████████████

                                        Page  83

ATTORNEYS EYES ONLY

1 ████████████████████████████████████████

2 ██████████████████████████████████

3 ██████████████████████████

4       MR. VINE:  Objection.

5       ██ ████████████████████████████████

6 ████████████████████████████████████████

7 ████████████████████████████████████████

8 ████████████████

9       Q.  So --

10       MR. VINE:  Jessica?

11       MS. BINA:  Yes, Mr. Vine?

12       MR. VINE:  I was going to say, when you

13       have a point that we can take this lunch

14       break -- take a half-hour break -- just go

15       ahead.

16       MS. BINA:  Absolutely.  I'm hoping to get

17       through this line of questioning.  If I'm

18       unable to finish it, we'll take a break.  But

19       I'd like to go a couple more minutes and try

20       to get through this.  If anyone needs a break

21       urgently, please let me know.

22       MR. VINE:  We'll see how it goes.

23 BY MS. BINA:

24       Q.  ███████████████████████████████████

25 ████████████████████████████████████████

                                    ████████

                    ████████████████

ATTORNEYS EYES ONLY



```
 1  ██████████████████████████████████████████
    ██████████████████
    ███████████████  ████████████
    ███  ████████████████████████
    ███████████████████████████████████  ████
    ██████████████████████████████████████████
    ████████████████████████████████████████████
    ████████████████████
 9  BY MS. BINA:
10  ███  ██████████████████████████████████
    ███████  ██████████████████████████████
    ████████████████████████████████████
    ███████████████████  ████████████████████████
    ██████████
    ███████████████  ████████████
    ███  ████████████████████████  ████████████████
    ████████████████  ████████████████████████████████
    ████████████████████████████████████████████████
    ████████████████████
    ████████████████
    ███  ████████████████████████████████████
    ██████████████████████████████████
    ███████████ would it be better to ask a witness other than
24  yourself?
25       A.  That would probably be more fruitful, yes.
```

Page 85

ATTORNEYS EYES ONLY



1          Q.

5                  MR. VINE:   Objection.

6          A.

18                 MR. VINE:   Objection.

19         A.

21    BY MS. BINA:

22         Q.

24         A.   That appears to be correct according to the

25    documents, and I don't have a reason to doubt it.

Page 86

ATTORNEYS EYES ONLY

1        Q.   Do you have any understanding as to when
2    iOS 13 was released to the public?
3        A.   I do not.
4        Q.   Do you know whether it was in -- it was still
5    in testing and demo mode in June 2019?
6        A.   I do not have the information to know whether
7    it was in testing or released to the public at that
8    point.
9        Q.   Okay.  2.1.2 on July 28, 2019, again, would
10   it be better to ask someone else what these technical
11   details mean?
12       A.   Yes, I believe it would be.
13       Q.   ███████████████████████████████████
     ████████████████████████████████████
     ███    ██████████████████████████████████
     ███    ██████████████████████████████████████
     ████████████████████████████████████████████
     ██████████████████████████████████████
     ████    ██████████████████████████████
     ██████████████████
     ███    ██████████████████████████████
     ████    ██████████████████████████
     ███    ████████████████████████████████████
     ██████████████████████████████████████
     ██████

ATTORNEYS EYES ONLY

```
1              Have you made any changes to that tool since
2    December 2019?
3         A.  I don't have knowledge of that.
4         MS. BINA:  I think this would be a good
5    time to take our lunch break.  Go off the
6    record.
7         THE VIDEOGRAPHER:  Stand by, please.
8    This marks the end of media number four.
9    Going off the record at 1:09 p.m.
10        (Lunch recess.)
11        THE VIDEOGRAPHER:  We are back on the
12   record at 1:31 p.m.  This marks the beginning
13   of media number five of the deposition of
14   Amanda Gorton.
15        You may continue, Counsel.
16        MS. BINA:  ███████████████████████
     ██  ███████████████████████████ Elana, I
18   think that is Tab 11.  I believe that will be
19   Exhibit 5 -- I think it's 5.
20        (Plaintiff's Exhibit 5 was marked for
21   identification.)
22        THE WITNESS:  While we're waiting for the
23   exhibit to be loaded, I wonder if I might
24   clarify some of my earlier testimony with
25   regards to meetings with Apple employees?
```

Page 88

ATTORNEYS EYES ONLY

```
 1    BY MS. BINA:
 2        Q.  Certainly.  If you have something else to add
 3    that you didn't state earlier or if there's something
 4    you've forgotten, you can add that.
 5        A.  ███████  ████████████████████████████████
      ████████████████████████████████████████████████████
      ████████████████████████████████████████████
      ████████████     ██████████████████████████████
      ████████████████████████████████████████████
      ██████████
      ████     ███████████     ████████████████████████████
      ████████████████████████████████████████████████
      ████████████████████████████████████
      ████████████████████████████████████
      ████     ████████████████████████████████
      ██████████
17        Q.  Do you have the exhibit?
18        A.  I do.
19        Q.  So this is a document that was produced to us
20    in discovery.  ████████████████████████████████
      ████     ██████     ██████████████████████████████
      ██████████     ████████████████████████████████
      ██████████████████████     ████████████████████
      ████████████████████████████████████████
      ██████████████████████████████████████████████
```

Page 89

ATTORNEYS EYES ONLY

1

2

3

4

5              MR. VINE:  There's static again.

6              MS. BINA:  Let's give it a minute to see

7         if it goes away.  I'm trying to make things

8         easier on the court reporter so she can hear

9         me.  If it doesn't go away after a minute or

10        two, let me know.  I don't know what's

11        causing it.

12   BY MS. BINA:

13        Q.  So do you know how we, looking at the

14   documents, could tell which ones were distributed and

15   which ones were not?

16        A.  I don't suppose -- is there a way to view the

17   metadata?

18        Q.  Not here, but there may be ways for us to

19   view it offline.  Would the metadata be able to tell

20   us if something was a draft or not?

21        A.  Potentially, it may have been in a folder

22   marked "draft."

23        Q.  And if it was a final, would it be in a

24   folder marked in some other way?

25        A.  Unfortunately, not necessarily.  It may have

Page 90

ATTORNEYS EYES ONLY

```
1      been attached to an e-mail.  That might be a way to

2      ascertain if it was --

3              THE REPORTER:  I'm sorry.  I can't hear.

4              MR. VINE:  It's very hard to hear with

5          the static.

6              MS. BINA:  Well, I'm having trouble

7          hearing Ms. Gorton even without static.

8              THE REPORTER:  Me too.

9              MS. BINA:  My point is, she's inaudible.

10         I think there's a problem on her end.  I'll

11         go back to --

12             How is the audio right now?

13             THE REPORTER:  That's good.

14     BY MS. BINA:

15         Q.  You were describing, I think, ways we might

16     be able to tell if it was a draft or not?

17         A.  Yes.  It's possible we may be able to

18     ascertain if it was attached to an e-mail sent to a

19     customer.  That might be a way to tell.

20         Q.  Looking at this document, can you say for

21     certain that it is an uncirculated draft, or you don't

22     know whether it's a draft or a final?

23         A.  Unfortunately, I don't have a solid way to

24     say for certain.

25         Q.  Okay.  In any event, there were versions of
```

ATTORNEYS EYES ONLY



1     this data sheet that were circulated; correct?

2        A.   Correct.

3        Q.

11            Can you turn to that?

12       A.   Yes.

13       Q.

24       Q.   So if I were a standard purchaser and I

25   wanted ████████████, I would ████████████████

Page 92

ATTORNEYS EYES ONLY

1   ████████████████████████████████████████

2   ████████████████

3           MR. VINE:   Objection.

4       A.   That is correct, insofar as it is listed on

5   this document.

6   BY MS. BINA:

7       ██   ████████████████████████████████

8   ██   ████████████

9   ██   ███   ███   ██████████████████████

10  ██   ██████████████████

11      Q.   What is the current pricing for the on-site

12  product?

13          MR. VINE:   Objection.

14      A.   It would be beneficial if I could reference a

15  document.

16  BY MS. BINA:

17      Q.   Are you referring to a document that you have

18  or are you requesting that I provide one?

19      A.   If you have a document to provide with

20  current pricing, that would be preferable.   But given

21  our previous difficulty ascertaining the draft or

22  non-draft status of the documents, I suspect that this

23  may prove a challenge.

24      Q.   Yeah -- it's not necessarily clear to me what

25  is current and what's past, as well as what was

                                              Page 93

ATTORNEY'S EYES ONLY

1     official and what was unofficial.



10     Q.  Go ahead.

Page 94

ATTORNEYS EYES ONLY

```
1    hardware cost?

2         A.   That is correct.

3         Q.   What is the current per-server price for the

4    enterprise edition?

5         A.  ████████████████████████████████████████

     ██████████████████████       ████████████████████

     ████████████████████████████████████████

     ██████████████████████       ████████████████████

     ████████████████████████████████████████████████

     ████████████████████

11        Q.   Okay.  What about -- I'm sorry.  Go ahead.

12        A.   Just to clarify, in addition, ████████████

     ████████████████████████████████████████████████

     ████████████████████████████████████

     ████  ████████████████████████████████████████████

     ██████████████████████████████████████████

     ████  ██████████████████████████████

18        Q.   And then what about for the premium?

19        A.  ████████████████████████████████████████████

     ████████████████████████████████████████████████

     ██████████████████████████████

22        Q.   What are the differences principally between

23   the standard, the enterprise, and the premium edition?

24        A.  ████████████████████████████████████████

     ████████████████████████████████████████████████
```

Page 95

ATTORNEYS EYES ONLY



1

19

22          MR. VINE:   Objection.

23

25      BY MS. BINA:

Page 96

ATTORNEYS EYES ONLY



```
 1        ████   ██████████████████████████

          ████   ████

          ████   ████████████████████████████████

          █████████████████████

 5        A.   I don't know offhand.

 6        Q.   Do you know any of them offhand?

 7             MR. VINE:  Objection.

 8        ████   ███████████████████████████████

          ██████████████████████   ████████████████

          ██████████████████████

11   BY MS. BINA:

12        Q.   Anyone else?

13        A.   Possibly, but I cannot recall offhand.

14        ████   ████████████████████████████████

          ████████████████████   ████████████

16   "████████████████████████████

17             Is that true for all three license classes?

18             MR. VINE:  Objection.

19        A.   █████████████████████████████   ████

          ████████████████████████████████████

          ███████████████████████████████████████

22   BY MS. BINA:

23        Q.   ████████████████████████████████████

          ██████████████████████████████████

          ███████████████████████████████
```

Page  97

ATTORNEYS EYES ONLY



1       ████

████          ████

████          ████

████

████

████

7       Q.   That's for the cloud-based version?

8       A.   That's correct.

9       ████

████

████

12      A.   No.

13      ████

████

████

████

████

████

████

████

22      MR. VINE:   Objection.

23      A.   ████

████          ████

████          ████

Page 98

ATTORNEYS EYES ONLY



VINE:  Objection.

any demands as necessary to enforce that
license.

BY MS. BINA:

Page 99

ATTORNEYS EYES ONLY

1   ██████████████████████   ██████████████████

    ██████████████████████████████████████

    ██████████████████████████   ██████████████████

    ████████████████████████████████

5        Q.  No worries.   ██████████████████████████

    ████████████████████████

7            (Plaintiff's Exhibit 6 was marked for

8        identification.)

9            THE REPORTER:  Is that a mouse that I

10       keep hearing?  It makes it hard to hear on my

11       end.

12           MR. VINE:  I can't help it.

13           MS. BINA:  Yeah -- it might help,

14       Mr. Levine, if you call in from a separate

15       line so that you're not using the computer

16       audio.  That might reduce some of the

17       computer noise.  If you have a cell phone you

18       can call in from?

19           MR. VINE:  One, my last name is Vine, but

20       that's okay.

21           MS. BINA:  I'm sorry, Mr. Vine.

22           MR. VINE:  Two -- it's okay -- two, I

23       will do my best not to make any computer

24       noises.  I'm not a tech wiz like the four of

25       you ladies, and somebody had to set this up

                                        Page 100

ATTORNEYS EYES ONLY

```
 1              and I don't want to touch it.
 2       BY MS. BINA:
 3              Q.  Let's look at Exhibit 6, if it's loaded.
 4                  MR. VINE:  Just got loaded.
 5                  MS. BINA:  Give me a moment.  Hang on.  I
 6              have it now.
 7       BY MS. BINA:
 8              Q.  If we can turn to the bottom of the second
 9       page -- first off, what is this document?
10       ██    ████████████████████████████████
██    ████████████████████████████████████████
██    ████████
██    ██    █████     ████████████████████████████
██    ████████████████████████████████████████
██             ██████████████
16              A.  Yes.
17              Q.  ███████████████████████████████████████
██    ██████████████████████████████████████
██    ██████████████████████████
20                  Do you see that?
21              A.  I do, yes.
22       ██    ████████████████████████████████████████
██    ████████████████████████████
24              A.  I don't believe so.
25              Q.  ██████████████████████████████████████
```

Page 101

ATTORNEYS EYES ONLY



1

2

3

4

5

6

7

8          MR. VINE:  Objection.

9

10

11

12

13

14

15

16

17     BY MS. BINA:

18

19

20

21          A.  Correct.

22          Q.

23

24

25

Page 102

ATTORNEYS EYES ONLY



1    a

6            MR VINE:   Objection.

10   BY MS. BINA:

12   fi

13           MR. VINE:   Objection.

19   BY MS. BINA:

Page 103

ATTORNEYS EYES ONLY



1

14       A.   That is correct.

15       Q.   Do you know when in February 2020?

16       A.   I don't recall the precise date.

17       Q.   Does the other tool that we were discussing,

18   the on-premises tool, still function as of today?

19       A.   Yes.   To the best of my knowledge, it still

20   functions today.

21

Page 104

ATTORNEYS EYES ONLY

1 ████████████████

  ████████████████████████████████████

  ████████████████████

  ████████████████    ████████████

  ███    ████████████████████████    ████████

  ████████████████████████████████████████

  ████████████    ████████████████████████████

  ████████████████████████████████████████████

  ████████████████████████████

10    BY MS. BINA:

11         Q.   Why not?

12         A.   This was a technical decision and it was

13    determined that we would not implement it.

14         Q.   For technical reasons only?

15         A.   The motivation for not implementing it is --

16    the motivation for not implementing it comprehends

17    more than technical reasons.

18         Q.   What are the other reasons?

19    ███    ████████████████████████████████

  ████████████████████████████████████████████

  ████████████████████████████████████████████

  ████████████████████████████████████████████

  ██████████████████████████████████████████

  ████████████████████████████████████████

  ████████████████████████████    ████████████████

                                    Page 105

ATTORNEY'S EYES ONLY

[REDACTED]

[REDACTED]

3          Q.   Any other reasons?

4          A.   That was the primary factor.

5          Q.   Okay.   I think another topic where you're

6     designated to speak on behalf of the company is topic

7     number 27, locations of private installations of the

8     Corellium Apple product.

9               Is a private installation of Corellium the

10    same as a non-premises version or are those different

11    things?

12         A.   I take those to mean the same thing.

13    [REDACTED]

[REDACTED]

15         A.   If it's all right, I'll reference the

16    interrogatory responses to ensure that we can cover

17    those comprehensively.

18         Q.   Sure.   I'll open those as well.   That's

19    Exhibit 3 to the deposition.   Let me just get them

20    open.   Let me know what page you're referencing.

21         A.   I believe that's on page 24.  [REDACTED]

[REDACTED]                                             I'm

23    sorry.

24         Q.   [REDACTED]   [REDACTED]   [REDACTED]

[REDACTED]

Page 106

ATTORNEYS EYES ONLY



1

Q.  Sure.

A.

A.  That is correct.

10

Page 107

ATTORNEYS EYES ONLY



Page 108

```
1          Q.  Were you finished -- what was that sound?
2     Ms. Gorton, were you finished with your answer?  I'm
3     sorry.  I didn't hear you.
4          A.  Yes, I was finished.  ████████████████████
      ██████████████████████████████████
      ████  ████████  ████████████████████████████████
      ████████████████████████████████████████████████████
      ████  ██████
9          A.  That's correct.
10         MS. BINA:  I'm getting a lot of
11    background noise.  I'm not sure where it's
12    coming from.
13         THE REPORTER:  I hear it too.
14         THE WITNESS:  I think it might be
15    Jonathan from the conference room.
16         MR. VINE:  I think they stopped.  I think
17    they were cleaning windows, believe it or
18    not.  Nope.  That's them again.  Let me go
19    talk to them outside.
20         MS. BINA:  Since he just walked out of
21    the room, can we go off the record for a
22    minute?
23         THE VIDEOGRAPHER:  Going off the record
24    at 2:19 p.m.
25         (Off record.)
```

Page 109

ATTORNEYS EYES ONLY

```
1            THE VIDEOGRAPHER:  We are back on the
2       record at 2:21 p.m.  This marks the beginning
3       of media number six of the deposition of
4       Amanda Gorton.
5            You may proceed, Counsel.
6   BY MS. BINA:
7       Q.  Ms. Gorton, I may come back to this.  I have
8   just a few more questions about this ███████
```

Page 110

ATTORNEYS EYES ONLY



```
 1        ███████████████████████████████████

          ███████████████████████████████████

          ████████████████████████   ████████

          ██████████████████████████████████

          ████████████████████

 6        Q.  Okay.  I don't recall -- go ahead.  I didn't

 7   realize you -- there's a delay, so sometimes it looks

 8   like you're done when you're not.  I apologize.

 9        A.  Not a problem.  Why don't we clarify that

10   first and then I'll continue my answer?

11        Q.  ██████████████████████████

          ████████████████████████████████████

          ████████████████████████   ████████████

          ████████████████████████████████████

          ██████████████████████████████████

          ██████████████████████████████████

          ████████████

               ████████████████████████████████

          ██████████████████████

             ██  ███   ██████████   ████████████

          ██████████

             ████████████████████████████████████

          ████████████████████████████████

          ██████████████████   ████████████████

          ████████████████████████████████████
```

ATTORNEYS EYES ONLY



```
22        MR. VINE:  Are you done with Exhibit 5

23   for now?

24        MS. BINA:  Exhibit 5 or -- I think we

25   were on Exhibit 3 just now.
```

Page 112

ATTORNEYS EYES ONLY

```
 1              MR. VINE:  I know.  Sorry -- yeah --

 2         Exhibit 6.  Yeah -- 3, I'm keeping open.

 3    BY MS. BINA:

 4         Q.  In the meantime, I'll ask you two questions.

 5    Elana is waiting for the materials to load.  While I'm

 6    doing that, have any of your customers -- actually,

 7    flip back to Exhibit 3.

 8              So, looking at Exhibit 3, it looks like as
```

9 ███████████████████████████████

██ ██████████    █████████████████████████

██ ██████████████████████████████████████

██ ██████████████

██             ██████████████████████████████

██ █████████████████████

```
15              MR. VINE:  Objection.

16         A. ██████████████████████████████
```

██ ██████████████████████████████

██ ██████████████

██          ██  ██████████████████████████████

██ ███████

██          ██  ███████

```
22         Q.  Do you know whether your contracts would

23    require you to indemnify them for any claims of

24    infringement against any of those entities for the use

25    of your software?
```

Page 113

ATTORNEYS EYES ONLY

```
 1              MR. VINE:  Objection; outside the scope.
 2              MS. BINA:  I'm asking her as the CEO of
 3         the company and under the 30(b)(6)
 4         designation.
 5              MR. VINE:  You asked about -- I'm not
 6         going to debate it, but I don't recall seeing
 7         any designation regarding indemnification
 8         issues, but that's fine.
 9              MS. BINA:  Again, she's also here in her
10         personal capacity, you understand, Mr. Vine.
11              MR. VINE:  I did not direct her not to
12         answer.  I was objecting that it was outside
13         the scope because it is.  She can answer to
14         the extent she knows in her personal
15         capacity.
16              MS. BINA:  I believe she's also
17         designated on agreements with customers, so
18         I'm going to disagree with that.
19    BY MS. BINA:
20         Q.  In any event, if you know the answer, do you
21    have any indemnification obligations to them?
22         A.  ████████████████████████  ████████████████
   ██  ███████████████████████████████████████████████
   ██  █████████████████████  ██████████████████████████
   ██  █████████████████████████████████████
```

Page  114

ATTORNEY'S EYES ONLY

```
 1              (Plaintiff's Exhibit 7 was marked for
 2         identification.)
 3    BY MS. BINA:
 4         Q.  Let's open up, if we have it now, Exhibit 7.
 5    It's loading for me.  Let me know when you have it,
 6    Ms. Gorton.
 7              MR. VINE:  I have it, just so it's clear.
 8              MS. BINA:  I'm assuming, Mr. Vine, you'll
 9         let me know if you don't.
10              MR. VINE:  I have it.
11              THE WITNESS:  I have the document as well
12         now.
13    BY MS. BINA:
14         Q.  I actually don't.  Here we go.  I've got it
15    now.
16              So if we can turn to the section that says,
17    ██████████████████████████  there's a list of locations
18    where you say that you give preference to.  I'm trying
19    to find the specific page here.
20              So if you look at the -- it's page, I think,
21    3 of the exhibit.  It's the first page of text.
22         A.  Yes.  ███████████████████████████
   █████  ████████████████
   ███  ███  ████  ████████████████████████████████
   █████  █████████████████  ████████████████████████████
```

                                                    Page 115

ATTORNEYS EYES ONLY



1

3        MR. VINE:  Objection.

4     A.

6  BY MS. BINA:

7     Q.  This is the second time you've mentioned

8

24

Page 116

ATTORNEYS EYES ONLY



1

MR. VINE:  Objection.

A.  Correct.

Q.  Okay.  And then if you can carry on -- I
didn't mean to interrupt -- I just wanted to make sure
I understood the first steps.

A.  Happy to clarify.

5127

ATTORNEYS EYES ONLY



12          Q.   What about the development of applications

13     other than security-related?

14

15

16

17

18

19

20

21

22

23

24

25          Q.   Is that true for the cloud-based product as

Page 118

ATTORNEYS EYES ONLY

```
 1    well?  That's a significantly less expensive product;

 2    correct?

 3            MR. VINE:  Objection.  Is that compound?

 4        What's your question?

 5    BY MS. BINA:

 6        Q.  The question is, is that true for the less

 7    expensive cloud-based product as well?

 8            MR. VINE:  Objection.

 9        A.  ████    ████████████████████████████████
        ███████████████████████████████████████████████████
    ████████████████████████████████████████████████
    ███████████████████████████████████████████████████
    ███████████████████████████████████████████████
    ████████████
        ██████████████████████████████████████
    █████████████████████████████████████████████████
    ███████████████████████████████████████████████████
    █████████████████████████████████████████████████
    ████████████████████████████████████████████
    ████████████████████████████████████████████████
    ██████████████████████████████████████

22    BY MS. BINA:

23        Q.  ████████████████████████████████████████████
    ████████████████████████████████
        ██  █████████████    ███████████████████████
```

                                          Page 119

ATTORNEYS EYES ONLY



14       Q.  Ms. Gorton, I can't hear you at all.

15

Page 120

ATTORNEYS EYES ONLY



Page 121

ATTORNEYS EYES ONLY



Page 122

ATTORNEYS EYES ONLY



25          MR. VINE:  Objection.

Page 123

ATTORNEYS EYES ONLY

```
 1          A.   I think that covers the gist of it.
 2     BY MS. BINA:
 3
 4
 5
 6
 7
 8
 9          MR. VINE:   Objection.
10
11
12
13
14
15
16
17     BY MS. BINA:
18          Q.
19
20
21
22
23
24
25
```



Page 124

ATTORNEYS EYES ONLY

1       Q.  Wouldn't it be the case that different

2   activities might be considered lawful or unlawful

3   depending on the jurisdiction where they're taking

4   place and to whom they're reporting to?

5       A. ▌ ████████████████████████████████

    ████████████████████████

    ██  ███████████████████████████████

    ████████████████████████████████████

    ███████████████████████████████████

10          MR. VINE:  Go ahead, Amanda.  After this,

11      could we get a break?

12          MS. BINA:  I was going to take a break at

13      the hour, if that works for you, Jonathan.

14          MR. VINE:  Yep.  Four minutes.  Perfect.

15      Thank you.

16          MS. BINA:  Sure.

17      A.  You did in fact ask this question earlier,

18  and it is the case that they do not sell or resell

19  access to the cloud.

20  BY MS. BINA:

21      ██  ██████████████████████████

    ██████████████████████████████

    █████████████████████████████

    ███████████████████████████████

    ██  ████████████████████████████████

                                        Page 125

ATTORNEYS EYES ONLY



1

▮

▮

▮

▮

▮

▮

▮

9        A.   To the best of my knowledge, that is correct.

10       Q.   Does he also work for Corellium?

11       A.   He does not.

12       Q.

▮

▮

▮

▮

▮

▮

▮

20

▮

▮

▮

▮

▮

Page 126

ATTORNEYS EYES ONLY

```
 1        Q.  One last question and then we can go to
 2   break. ███████████████████████████████████████
     ████████████████████████████████████████████
     ████████████
 5        MR. VINE:  Objection.
 6        A.  Well, to be clear,████████████████████
     ████████████████    ████████████████████████
     ███████████████████████████████████████
     █████████████████████████████████████████████
     ████████████████████████████████████
     ████████████████
12        MS. BINA:  Should we take 10 or
13   15 minutes to go off the record?
14        MR. VINE:  Sure.  How much longer do you
15   think you have?
16        MS. BINA:  A couple more hours.
17        MR. VINE:  Is that two, three?
18        MS. BINA:  Depends on the answers and how
19   quickly we get through the material.
20        MR. VINE:  You got it.  Thank you.
21        MS. BINA:  Off the record.
22        THE VIDEOGRAPHER:  Stand by, please.
23   This marks the end of media number six.
24   Going off the record at 3:01 p.m.
25        (Brief recess.)
```

Page 127

ATTORNEYS EYES ONLY

```
 1              THE VIDEOGRAPHER:  We are back on the
 2         record at 3:14 p.m.  This marks the beginning
 3         of media number seven in the deposition of
 4         Amanda Gorton.
 5              You may proceed, Counsel.
 6    BY MS. BINA:
 7         Q.   Thank you.  ██████████████████████████
 ██   ███████████████████████████████████████████████
 ██   ███████████████████████████████████████████████
 ██   ███████████████████████████
11              MR. VINE:   Objection.  Do you mean
12         through the use of the Apple Corellium
13         product or the CORSEC?
14              MS. BINA:  █████████████████████████
15    BY MS. BINA:
16         Q. █████████████████████████████████████
 ██   ████████████████████████████████████████████
 ██   ████████████████████████████████████████████
 ██   █████████████████████████████
 ██        ██   ██
 ██        ██   ███████████████████████████████████
 ██   ████████
 ██        ██   ████████████████████████████████
 ██   ███████████████████   █████████████████████████
 ██   ████████████████████████████
```

1          (Attorney Gabe Gross is now attending by

2      telephone.)

3   BY MS. BINA:

4      Q.  But nothing that you impose on them?

5      A.  Correct.  ███████████████████████

   ██████████████████████████████████████

   ███████████████████████████████████

   █████████

   █████████████████████████████████

   ██████████████████████████████████████

   ████████████████████████████████████

   ██████████████████████████████████████

   █████████████████████████

14      Q.  I understand.  In any event, ████████

   ███████████████████  your testimony?

16      A.  I think --

17          MR. VINE:  Objection.

18      A.  I think that might be a slight

19   oversimplification.

20          I believe my colleague, Gabe Gross of

21      Latham & Watkins, is now in our virtual room.

22      I just want to announce him.

23          Mr. Vine, did you say something?

24          MR. VINE:  I said, I don't see him.

25          MR. GROSS:  I'm on by audio.  I don't

                                        Page 129

ATTORNEYS EYES ONLY

```
 1          have the bandwidth or the internet

 2          connectivity to participate by video.  I'll

 3          just be on a short amount of time.  I'll make

 4          it clear on the record when I leave.

 5               MR. VINE:  Thank you, Gabe.  No worries.

 6      BY MS. BINA:

 7          Q.  Ms. Gorton, let me just try to be clear with

 8      my question.  My question was, ███████████████

 ■      ███████████████████████████████████████████████

 ■      ██████████████████████████████████████████

11               MR. VINE:  Objection.

12          A.  ██████  ████████████████████████████████

 ■      ███████████████████████████████████████████████

 ■      ████████████████████████████████████████████████

 ■      ████████████████████████████████████████████████

 ■      █████████████████████████████████

17      BY MS. BINA:

18          Q.  ██████████████████████████████████████

19               MR. VINE:  Objection.

20          A.  ██████

21      BY MS. BINA:

22          Q.  ███████████████████████████████████████

 ■      ████████████████████

24               MR. VINE:  Objection.  The better

25          question is, do you know?  But, by all means,
```

                                        Page 130

ATTORNEYS EYES ONLY

```
 1        go ahead.

 2        A.    ████████████████████████████████████

 ▮  ████████████████████████████████████

 4   BY MS. BINA:

 5        Q.    ████████████████████████████████████

 ▮   ███████████████████████████████████████████████████

 ▮   ███████████████████████████████████████████████████

 ▮   ████████

 ▮        ██   ████████████████████████████████████████

 ▮   ███████████████████████████████████████████████████

 ▮   ███████████████████████████████████████████████

 ▮   ████████████████████████████████████████

 ▮        ██   █████████████████████████████████████████

 ▮   ████████████████████████████████████████████████

 ▮   ████████████████████████████████████████████████

16        A.    ██████████████████████████████████████

 ▮   ███████████████████████████████████████████

 ▮   ███████████  ████████████████████████████████████

 ▮   ████████████████████████  ███████████████████

 ▮   ██████████████████████████████████████████████████

 ▮   ██████████████████████████████████████████

 ▮   ████████████████████████████

23        Q.   Turning to topic number 23 of your 30(b)(6)

24   designation, that's marketing or promotion of the

25   Corellium Apple product, including Corellium's
```

Page 131

ATTORNEYS EYES ONLY

```
 1      promotion of the Corellium Apple at conferences.
 2              Without telling me any communications with
 3      your attorneys, what did you do to educate yourself on
 4      those topics?
 5          A.  I primarily relied on reviewing our answer to
 6      the interrogatory question on this subject.
 7          Q.  Did you speak with anyone?
 8              MR. VINE:  Objection.
 9      BY MS. BINA:
10          Q.  If it's with counsel, I don't want to know
11      about any conversations with counsel.
12          A.  As I mentioned at the outset, when we were
13      discussing what I did to prepare, I believe I
14      mentioned that I met with Chris, Stan, and David.  And
15      while I don't recall the precise specifics of what all
16      we discussed, it's possible that I may have asked a
17      marketing-related question during that meeting.
18              MS. BINA:  Elana, can you put up
19      ████████████ as Exhibit 8?
20              (Plaintiff's Exhibit 8 was marked for
21          identification.)
22              THE WITNESS:  Yes.
23      BY MS. BINA:
24          Q.  ██████████████████████████████████
██  ████████████████████████████████████
```

Page 132

ATTORNEYS EYES ONLY



1 �per

2        I want to particularly draw your attention to

3 the last paragraph on the page ▬▬▬▬▬▬▬▬▬

10        A.  Well, given that the Corellium Apple product

11 or CORSEC did not exist as a product in the market

12 yet, ▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬ The reason

19 for this is simple.

20 ▬▬▬▬▬▬▬▬▬

Page 133

ATTORNEYS EYES ONLY

1 ████████████████████████████████

2 ██ ███████████████████████████████

3 ██   ███████    The ARM server market has had trouble getting

4 off the ground.  It has been plagued with -- beyond

5 the mere aspect.

6          THE REPORTER:  We lost the middle part of

7     it.

8          MS. BINA:  It's okay -- I think we're

9     getting a little off topic.  If we could try

10    to stay --

11         THE REPORTER:  Hang on.  I think

12    something's happening.  I don't know what the

13    problem is.  But if we could start again?

14         MS. BINA:  Can you hear me now?

15         THE REPORTER:  I can now.

16         MS. BINA:  Ms. Gorton, do you want to try

17    to say something to see if the reporter can

18    hear you?

19         THE WITNESS:  Are you able to hear me as

20    well?

21         THE REPORTER:  Yes.  I don't know if it

22    was an internet thing or what.

23         THE VIDEOGRAPHER:  When you start

24    speaking, just speak a little slower in the

25    beginning so the technology can catch up to

                                        Page 134

ATTORNEYS EYES ONLY

```
 1        you.
 2   BY MS. BINA:
 3        Q.  Ms. Gorton, I guess, I appreciate the
 4   interesting history of the ARM server market, but I
 5   really want -- we have limited time left and I want to
 6   try to stay focused on Corellium's own targeting.
 7             I did understand you earlier to testify that
 8   you moved away from this avenue of marketing.
 9        A.  For clarity, we really never initiated this
10   avenue of marketing as it pertains to any product that
11   was offered for sale.
12        Q.  What is Corellium's primary method of
13   marketing itself?
14        A.  ████████████████████████████████████████
     ████████████████████████████████████████████
     ████████████████    ██████████████████████████████
     ████████████████████████████████████████████████
     ████████████████████████████████████████████████
     ████████████████████████████████████████████.
20        Q.  I'd like to ask about the 2019 Blackhat
21   Conference.
22             Did you attend that conference?
23        A.  Yes, I did attend that conference.
24        Q.  ████████████████████████████████████████
     ████████████████████████████████████████████
```

ATTORNEYS EYES ONLY

1 ███████████   ████████████

█      ████   ████████████

█      ████   ████████████ presenters of that talk?

4      A.   No.  I did not present any portion of that

5 talk.

6      Q.   Did you attend it?

7      A.   I did attend that talk.

8      Q.   Who was invited to attend?

9      MR. VINE:  Objection.  Do you know who

10 was invited to attend?

11      MS. BINA:  Jonathan, let me ask my

12 questions.

13      MR. VINE:  Okay.  Objection.  Just trying

14 to help you out.

15      MS. BINA:  I'm sure she'll tell me.

16      A. ████████████████████

█ ██████████████████████

█ █████████████████████

█ ██████████████████████

█ ████

█          ████████████████

█ ██████████████████; but,

23 without a list in front of me, it's difficult to say

24 precisely.

25 BY MS. BINA:

Page 136

ATTORNEYS EYES ONLY

1       Q.  Was a list of invitees created?

2       A.  ████████████████████████████████

████████████████████████████████

████████████████  ███████████████████

████████████████████████████

6    BY MS. BINA:

7       Q.  Did you invite any Apple personnel?

8       A.  ██████████████████████████████

████████████████    I'm not certain if any Apple

10   personnel were invited to or attended the seminar to

11   which you are referring.

12           I do know, however, ████████████████████

████████████████████████████████

████████████████████████████████

████████████████

16      Q.  Which employee was that?

17      A.  I believe it was either Jacques Fortier or

18   Ivan Krstic, but I -- I'm not 100 percent certain.

19      Q.  Why did you provide -- do you know who

20   provided that material?  Was it you personally or

21   someone else at Corellium?

22      A.  It was Mr. Wade.

23      Q.  Do you know why he provided that material to

24   either Mr. Krstic or -- sorry -- who was the other

25   person -- Mr. Fortier?

                                        Page 137

ATTORNEYS EYES ONLY

1        A.   Mr. Fortier.   ████████   ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ .

7        Q.   Did they provide any feedback on the

8    presentation?

9        A.   To my knowledge, they did not.

10            (Plaintiff's Exhibit 9 was marked for

11        identification.)

12    BY MS. BINA:

13        Q.   Let's look at Exhibit 9, briefly.  Do you

14    want to turn to the second slide in that exhibit and

15    let me know when you have it in front of you?

16        A.   Is this the ████████████████████████████

17        Q.   Yes.

18        A.   Okay.

19        Q.   ████████████████████████████████████████

████████████████████████████████████████   ████████████

████████████████████████████████████████████████

████████████████

23            Is that true?

24        A.   ████████████████████████████████████████

████████████████████████████████████████████████████████

ATTORNEYS EYES ONLY

1 ████████████████████████████████

██ ██████████████████████████████████

██ ████████████

██    █    ████████████████████████████

██ ████████████████████████

6           MR. VINE:   Objection.

7      A.   Because this is a use case for our customers.

8  BY MS. BINA:

9      Q.   Is it something that appeals to them?

10      A.   It is something that they require to perform

11  the use case that they have.

12      Q.  ████████████████████████████████

██ ████████████

14      A.   I have heard the term before, yes.

15      Q.  ████████████████████████████████

██ ████████████████████████████████████

██ ██████████████████

██    █    ████████████████████████████

██ ████████████████████

20      Q.   That wasn't my question.

21      A.  ████████████████████████████████

██ ██████████████████████████████████

██ ████████████████, my knowledge is inherently limited.

24      Q.   Do you have any knowledge one way or the

25  other as to ████████████████████████████████

                                          Page 139

ATTORNEYS EYES ONLY

```
1        ██████████████████████████████?

2                MR. VINE:  Objection.

3        A.  I don't have direct knowledge of that.

4   BY MS. BINA:

5        Q.  Do you have indirect knowledge of it?

6                MR. VINE:  Same objection.

7        A.  ████████████████████████████████████

    ██████████████████████████████████  █████████████

    ███████████████████████████████████████████

    ████████████████████████████████████████████

    ██████████████

12  BY MS. BINA:

13       Q.  What about any other customers?

14               MR. VINE:  Objection.

15       A.  I████████████████████████████████████

    ████████████████████████████████████████

    █████████████████████████████████████████████

    ████████████████████████████████

19  BY MS. BINA:

20       Q.  What about the use of them?

21               MR. VINE:  Objection.

22       A.  █████████████████████████████████████

    ██████████████████████████████████████████████████

    ██████████████████

25  BY MS. BINA:
```

Page 140

ATTORNEYS EYES ONLY

```
 1        Q.   Ms. Gorton, have you ever -- scratch that.
 2             ████████████████████████████████████████
 █   ████████████████████████████████████████████
 █   ██████████████████████████████████████████████
 █   █████████████████████████████████████
 6             Did that use case ever materialize?
 7        A.   As I stated before, ██████████████
 8        Q.   Has Corellium ever sold an exploit?
 9             MR. VINE:  Objection.  You mean through
10        something connected to the Corellium Apple
11        product or just in general?
12             MS. BINA:  Corellium, as a business, has
13        it ever sold an exploit?
14             MR. VINE:  I think that's outside the
15        scope of one, 30(b)(6), two, this case.
16             Can you explain to me how it's relevant
17        to any of the causes of action?
18             MS. BINA:  I'm not going to get into a
19        debate with you on the record, Jonathan.  I
20        think it's relevant.
21             Are you instructing her not to answer?
22             MR. VINE:  I'm asking you -- and the
23        Court is going to look into this when we're
24        discussing it -- I'm asking you to explain to
25        me how it's relevant to any claims you have
```

Page 141

ATTORNEYS EYES ONLY

```
 1              or any defenses I have.
 2                   MS. BINA:  And, Jonathan, respectfully,
 3              I'm not going to get into a debate with you
 4              on the record.  If you'd like to go off the
 5              record so I don't have to take up my time
 6              with this witness, we can have a discussion
 7              on it.
 8                   MR. VINE:  All right.  Let's go off the
 9              record.  I want to hear the relevance.
10                   THE VIDEOGRAPHER:  Stand by.  Is that
11              okay to go off the record?
12                   MS. BINA:  That's fine.
13                   THE VIDEOGRAPHER:  This marks the end of
14              media number seven.  Going off the record at
15              3:46 p.m.
16                   (Off record.)
17                   MR. GROSS:  I'm going to step out.  I
18              won't be with you any longer.  Goodbye.
19                   THE VIDEOGRAPHER:  We are back on the
20              record at 3:48 p.m., and this marks the
21              beginning of media number eight in the
22              deposition of Amanda Gorton.
23                   You may proceed, Counsel.
24      BY MS. BINA:
25              Q.  Ms. Gorton, my question was, has Corellium
```

Page 142

ATTORNEYS EYES ONLY



```
 1      ever sold an exploit?

 2              MR. VINE:  Objection.

 3         A. ███████ ████████████████████████

        ███████

 5      BY MS. BINA:

 6         Q. ███████████████████████████████

        █████████████████████████████████

        █ ████ ████ ███████████████████████████

        █ ██████████

        █ ████ ████████████████████████████

        █ ███████████████

12              MR. VINE:  Objection.

13         A. ██████

14      BY MS. BINA:

15         Q. ██████

16              MR. VINE:  Objection.

17         █ █████████████████████████████████

18      BY MS. BINE:

19         █ ████████████████████████

20              MR. VINE:  Objection.

21         A. █████████████████  I don't recall offhand.

22      BY MS. BINA:

23         Q. Do you recall how many times that has taken

24      place?

25              MR. VINE:  Objection.
```

Page 143

ATTORNEYS EYES ONLY

```
 1        A.  ████████████████████████████████
 2   BY MS. BINA:
 3        ██  █████████████████████████████████
     █  ███████████████
 5             MR. VINE:  Objection.
 6        A. ████
 7   BY MS. BINA:
 8        Q.  Do you know what a dev-fused iPhone is?
 9        A.  I have a general understanding, but I don't
10   have any direct knowledge of what it means
11   specifically at Apple.
12        ██  ████████████████████████████████
     █  ██████████████████
     █     ██  ███
15             MR. VINE:  Objection.
16        A.  Let me --
17   BY MS. BINA:
18        Q.  I didn't hear your answer, Ms. Gorton.
19        A.  Let me be clear.  ██████████████████
     █  ██████████████████████████████████████
     █  ████████████████████
22        Q.  So is it your understanding that Corellium
23   employees have done so outside their capacity as
24   Corellium employees?
25        A.  That is not what I said at all.  I have
```

                                        Page 144

```
 1    limited knowledge as to what employees may have done

 2    outside of their capacity as agents of Corellium.  So

 3    I am in no way stating they have done so, but I am

 4    stating very clearly that, in their capacity as agents

 5    of Corellium, they have not.

 6    ██    ████████████████████████████████████████

      ████████████████████████████████████████████████

      ████████████████████████████████████

 9         A.   I am not.

10         Q.   I'd like to turn to two more 30(b)(6)

11    designations, topics 22 -- and, actually, I think we

12    already covered 28, so I'll just do -- actually,

13    topics 22 and 28 are somewhat related.  I'll be

14    focusing on 22, all sales of and licensed sale rights

15    or other use rights for the Corellium Apple product,

16    but I may also address contractual limits imposed by

17    Corellium on the use of the product in that

18    conversation.

19              MS. BINA:  ██████████████████████████████

      █████████████████████   I think it's Tab 22.  It will

21    be Exhibit 9.

22              MS. NIGHTINGALE DAWSON:  We're on 10.

23              MS. BINA:  10.  I think you're right.

24              MR. VINE:  We are at 10.

25              MS. BINA:  It's 10, yes.
```

Page 145



```
 1                    (Plaintiff's Exhibit 10 was marked for
 2          identification.)
 3     BY MS. BINA:
 4          Q.   Let me know when you have it up, Ms. Gorton.
 5          A.   I
 6
 7
 8
 9                                                        .
10          Q.   Sure.
11          A.   In the interest of time, I won't attempt to
12     read the whole document; but,
13                                                         .
14          Q.   Okay.  I'd like to turn to paragraph 2 --
15     actually, strike that.
16
17
18
19
20                                                       ?
21          A.   Correct.
22          Q.
23
24
25
```

Page 146

ATTORNEYS EYES ONLY



```
1        Q.   I was referring to B, actually.
2        A.   It appears that that is what this subsection
3   indicates.
4        Q.  ████████████████████████████████████
    █████████████████████████████████████████████
    ████████████████████████████████████████████████
    █████████████████████████████████
8        A.   That is what the document says, yes.
9        Q.  ████████████████████████████████████████
    ███████████████████████████████████████████
    ████████████████████████████████████████████
    ██████████████████
13       A.   That is what the document says, yes.
14       Q.   I███████████████████████████████████
    ███████████████████████████████████████████
    ██ ████████████████████████████████████
    ██ ██████████████████████████████████████████
    █████████████████████████████████████████████
    ███████████████████████████████
    ██ ████████████████████████████████████
    ████████████████████████████████████████
    ████████████████████████████
    ██ ████████████████████████████████████████
    █████████████████████████████████████████████
    ████████████████████████████████
```

████ 147

ATTORNEYS EYES ONLY



1

2

3

4

5

6

7

8            MR. VINE:  Objection.

9       A.  Correct.

10   BY MS. BINA:

11       Q.  So let's look at page 15 of this document.

12       A.

Page 148

ATTORNEYS EYES ONLY



```
 1   ███████████████████████████████████

     ███████████████████

         ██  █████████████████████████████████

     ████████████████████████

         ██  █████████████████████████████████

     ███████████████

             █████████████   ████████████

         ██  ███████████████████████████   ███

     ██████████████████████████████████████████

     ██████████████████████████████████████

     ███████████████████████████████

     ██████████████

         ██  ████████████████████████████████

     ████████████████████████

15              MR. VINE:  Objection.

16       A.   ████████████████████████████████████

     █████████████████████   ██████████████████████

     ███████████████████████████

19   BY MS. BINA:

20       Q.   Is that the only reason?

21              MR. VINE:  Objection.

22        ██  ██  ████████████████████████████████

     ████████████████████████████████████████

     ████████████████████████████████████

     ████████████████
```

Veritext Legal Solutions
866 299-5127

ATTORNEYS EYES ONLY



```
 1        ███                ████████████████████

 ██       ███████████████████████████████████

 ██       █████████████████████████████████

 4            MR. VINE:  Objection.

 5        ███                ███████████████████████

 ██       ████████████████████████████████████

 ██       ████████████

 8        ███                ██████████████████████

 9            MR. VINE:  Objection; asked and answered.

10        A. ████████████████████████████████████████

 ██       █████████████████████████████████████

 ██       ████████████

 ██       ███                ████████████████████████

 ██       ███████████████████████████████████████████

 ██       ███████████████████████████████████████

 ██       ██████████████████████████████████████

 ██       ██████████████████████

18            MR. VINE:  Objection.  I'm not sure I

19        understand the question.

20            THE WITNESS:  I think I understand the

21        question.

22            MR. VINE:  Okay.  Perfect.

23        ███                █████████████████████████

 ██       █████████████████████████████████████████

 ██            █████████████████████████████████████
```

Page 150

ATTORNEYS EYES ONLY



18          MR. VINE:  Objection; mischaracterizes

19     her testimony.

20          A.  I'm uncomfortable with such an

21     oversimplification.

22     BY MS. BINA:

23

ATTORNEYS EYES ONLY

```
1    ██████████████████████████████████████████
2    ████████
3          MR. VINE:  Objection.  This is another
4     area that I see as completely irrelevant, but
5     move on.
6          You can answer, Amanda, if you can.
7          You're taking advantage of the situation,
8     but do what you need to do.  You're wasting
9     your time.
10         MS. BINA:  Mr. Vine, that is an
11    inappropriate coaching of the witness and
12    argumentative.  I ask that you let me ask my
13    questions and let her answer.
14         MR. VINE:  I didn't coach the witness at
15    all.  All I simply said was, this is an
16    inappropriate question, and you know it, but
17    you can move on.
18         MS. BINA:  I don't think it's
19    inappropriate.
20   BY MS. BINA:
21         Q.  Can you answer the question, please,
22   Ms. Gorton?
23         A.  ████████████████████████████████████
     ██████████████████████████████████████████
     ██████████████████████████████████████████████
                                     ██████████████
```

ATTORNEYS EYES ONLY



```
 1        ████████████
 █        ██    ████████████████████████
 █        ████████████████████    ██████████████████
 █        ██████████████████████████████████
 █        ██████████████████████████████
 █                 ██████████████████████████████
 █        ████████████████    ████████████████████████
 █        ██████████████
 █                 ██████████████████████████████
 █        ████████████████████████████
 █        ████████████████
12        A.  No, I don't believe so.
13        Q.  ████████████████████████
 █        ████████████████████████████████
 █             ██    ████████████████████
 █             ██    ██████████
17             MR. VINE:  Objection.
18             ██    ████████████████████
19    BY MS. BINA:
20        Q. ██████████████████████
 █        ████████████
 █             ██    ████
 █             ██    ██████████████████
 █        ██████████████████████████████
 █        ████████
```

Page 153

ATTORNEYS EYES ONLY

1    ████  ███████  █████████████████████

██  ████████████████████████████████████████

██  ████████████████████████████████████████

██  ███████████████████████

5         Q.  I'm going to get to that shortly.  So why

6    don't --

7              MR. VINE:  No, no, no.  She was in the

8         middle of testifying.

9              You can complete your statement, Amanda.

10             (Inaudible due to multiple speakers.)

11             MR. VINE:  No, she wasn't.

12             MS. BINA:  -- rather than to answer my

13        question.

14             MR. VINE:  Amanda, you may continue.

15        Amanda, you may continue.

16             You can't interrupt the witness.

17             MS. BINA:  Mr. Vine, if you continue to

18        disrupt the deposition, I'm going to have to

19        ask the Court for additional time with this

20        witness.  You're not allowing me to conduct

21        the examination.

22             MR. VINE:  It is disrespectful to the

23        witness to interrupt the witness.

24    BY MS. BINA:

25        Q.  Ms. Gorton, if you'd like to continue

                                              Page 154

ATTORNEYS EYES ONLY

```
1      speaking, you may, but I'm going to put that

2      declaration up and you'll have the opportunity to

3      clarify that later.  I'll leave it to your discretion.

4         A.
```



Page 155

ATTORNEYS EYES ONLY



24          MR. VINE:   Objection.

25

Page 156

ATTORNEYS EYES ONLY

▮ ██████████████████████████████████

▮ ████████████████████████████████

▮ ██████████████████████████████████

▮ ███████

 5            MS. BINA:  Okay. ████████████████

▮              ████████████████████████████

▮              ████████████████████████████████

▮              ███████████   I'll give you an opportunity to

 9     make a clarification.  That will be

10     Exhibit 11.  I think it's -- it won't be

11     Exhibit 11 because I think we made it an

12     exhibit earlier.  I don't remember what

13     exhibit that slide deck was.

14            MS. NIGHTINGALE DAWSON:  I believe it's

15     Exhibit 4.

16            MS. BINA:  All right.

17     BY MS. BINA:

18        Q.  Ms. Gorton, you're nodding.  Let's go ahead

19     and load Exhibit 4.  Let's look at slide 11.  Let me

20     know when you have it.

21            MS. BINA:  Jonathan, did you say

22     something?

23            MR. VINE:  Mine is frozen, but it's fine.

24     I reviewed it.  She can answer the question.

25     I don't know why mine just froze all of a

                                    Page 157

ATTORNEYS EYES ONLY



1        sudden.

2              MS. BINA:   Okay.   Let us know if you need

3        to go off the record.

4    BY MS. BINA:

5        Q.   This is the slide you were referring to

6    earlier; right?

7        A.   That's correct.

8        Q.

ATTORNEYS EYES ONLY



Page 159

ATTORNEYS EYES ONLY



```
 1          ████  ████████████████
 █   ████  ████████████████████████████████
 █   █████████████████████████████████████████████████
 █   ████████████████████████
 █          ████████████████████████████████████
 █   ████████████████████████████████████████
 █          ████  ████████████████████████████████████
 █   █████████████████████████████  ███████████████
 █   █████████████████████████████████████████
 █   █████████████████████████████████████████████████
 █   ████████████████
12          Q.  Were you finished?
13          A.  Sorry.  Yes.
14          ████  ████████████████████████████████
 █   ███████████████████████████████████
16          A.  I do not believe so.
17          ████  ████████████████████████████████████
 █   ██████████████████████████████████
 █          ████  ████████████████████
20          Q.  Did you at some time?
21              MR. VINE:  Objection.
22          A.  No.
23   █████████████████
 █          ████  ██████████████████████████████████████
 █   ██████████████
```

Page 160

ATTORNEYS EYES ONLY



ATTORNEYS EYES ONLY



```
 5        Q.  Yes.

 6        A.  Just generally, not specifically vis-à-vis

 7   the use of the Corellium product?

 8        Q.  Correct.

 9        A.  The nature of their business, as I understand

10   it, is to create forensics tools.

11        Q.
```

```
22             Can you tell me about that?

23        A.
```

Page 162

ATTORNEYS EYES ONLY



```
 1     ███████████████████████████████████████

       ████████████████████████████████████████████

       ███████████████████████

       ██     ███████████████████████████████████

       ████████████████████

       ██     ███████████████████████████████████

       ████

       ██     ██████████████████████████████

       ████████████████████████████████████

       ███████████████████

11     A.   We did.

12     Q.   What caused you not to go through with it?

13     ██     ██████████████████████████████

14     ████████████████████████████████████████████

       ████████████████████████████████████████████

       █████████████████████████████████

       ██████████████████████████████████████████

       ████████████████████████████████████████

       ████████████████████████████████████████

       ███████████████████████████████████

       ███████████████████████████████████

       ████████████

       ████████████████████████████████████████████

       ███████████████████████████████████████████

25     ████████████████████████   ███████████████
```

Page 163

ATTORNEYS EYES ONLY



1

2

3

4

5

6

7

8      Q.   Did they have a trial account during this

9   period of time?

10      A.   I believe they did have a trial account, yes.

11      Q.   Was it for one week or longer?

12      A.   My expectation would be that it was for one

13   week, but I can't confirm.

14

15

16      MR. VINE:   Objection.

17

18

19

20

21

22

23

24

25

Page 164

ATTORNEYS EYES ONLY

14          MR. VINE:  Objection.

15     A.  ███████████████████████

16  BY MS. BINA:

17     Q.  I'm going to go through a number of companies

18  now, and my questions are essentially what Corellium's

19  relationship is to these entities.  I believe, in many

20  instances, they will have been trial customers, but

21  I'm not sure that that's the case in all instances.

22  They might be suppliers or something else like that.

23          So, for each one, if you can just let me

24  know -- customer, trial customer, supplier, or I don't

25  know, or if it's some other classification that you're

Page 165

ATTORNEYS EYES ONLY

```
 1     aware of?

 2             MR. VINE:   Jessica, after this line, can

 3       we take a break?

 4             MS. BINA:   Sure.

 5     BY MS. BINA:

 6
```



```
22       A.   Past consideration, effectively dead.

23

24       MR. VINE:   Objection.

25       A.
```

Page 166

ATTORNEYS EYES ONLY



ATTORNEYS EYES ONLY



Page 168

ATTORNEYS EYES ONLY



Page 169

ATTORNEYS EYES ONLY



Page 170

ATTORNEYS EYES ONLY



```
 1            MR. VINE:  Objection.
 2            MS. BINA:  I hear you.  What's the
 3     question, Jonathan?  Are you there?
 4            MR. VINE:  I didn't ask a question.
 5            MS. BINA:  Oh, did you say "objection?"
 6     I thought you said "Jessica."
 7            MR. VINE:  Just "objection."
 8     BY MS. BINA:
 9        Q.  Are any of those folks likely or anticipated
10     customers?
11            MR. VINE:  Objection.
```

```
24            MS. BINA:  Let's off the record then.
25            THE VIDEOGRAPHER:  Going go off the
```

Page 171

```
1              record at 4:47 p.m.
2                   (Brief recess.)
3                   THE VIDEOGRAPHER:  We are back on the
4              record at 5:03 p.m.  This marks the beginning
5              of media number nine in the deposition of
6              Amanda Gorton.
7      BY MS. BINA:
8         Q.  Ms. Gorton, turning now to topic number
9      four -- sorry -- number 24 -- Corellium's knowledge of
10     Apple's copyrights at issue in this action.  That's
11     another topic where you've been designated on behalf
12     of Corellium.
13                  Again, without telling me any conversations
14     you had with your attorneys, can you tell me what
15     specifically you did to prepare to answer questions on
16     this topic?
17        A.  Sure.  It was limited preparation because we
18     had no prior knowledge of copyrights.
19        Q.  So what was the limited preparation that you
20     did?
21        A.  I didn't prepare in any way except insofar as
22     to mentally review the circumstances in which
23     copyrights were made available to us.
24                  MS. BINA:  Okay.  Sorry about that noise.
25              Apparently, to close out of my Outlook, I
```

Page 172

ATTORNEYS EYES ONLY

```
 1            can't mute it without muting this call.  Bear

 2            with me one moment.

 3    BY MS. BINA:

 4            Q.  Ms. Gorton, when did you become aware -- let

 5    me back up.  Are you aware that Apple has copyrights

 6    in various versions of iOS?

 7                MR. VINE:  Objection.

 8            A.  I am aware that Apple has registered

 9    copyrights with the Copyright Office for various

10    versions of iOS.

11    BY MS. BINA:

12            Q.  And when did you become aware of that?

13            A.  I became aware of that as a result of this

14    case.  My counsel provided copies of the registration

15    filings.

16            Q.  Prior to receiving those copies, did you have

17    a general understanding that Apple had copyrights to

18    iOS?

19                MR. VINE:  Objection; asked and answered.

20            A.  I wouldn't say that I did.  It wasn't a topic

21    that I had any knowledge of.

22    BY MS. BINA:

23            Q.  So is it your testimony that, prior to this

24    lawsuit, you had no idea whatsoever that Apple's

25    operating system was subject to copyrights?
```

Veritext Legal Solutions
866 299-5127

ATTORNEYS EYES ONLY

```
 1              MR. VINE:  Objection.
 2      ████  ████████████████████████████████
████████████████████████████████████████████████
████  ████████████████████████████████████████
████  ████████████████████
 6   BY MS. BINA:
 7       Q.  Before launching a business based around the
 8   virtualization of iOS, did you ever do any
 9   investigation to determine whether it was subject to
10   any copyrights?
11              MR. VINE:  Objection.
12       A.  Could you repeat the question?
13              MS. BINA:  Sure.  Could the court
14   reporter read it back?
15              THE REPORTER:  ██████████████████████
████  ██████████████████████████████████████████
████  ████████████████████████████████████
████  ██████████████████████████████████████
████  ████████████████████
████  ████████████████████  ██████████████████████
21   BY MS. BINA:
22       Q.  Is Corellium aware that Apple has a software
23   license agreement for iOS?
24              MR. VINE:  Objection.
25       A.  Yes.
```

Page 174

ATTORNEYS EYES ONLY

```
 1      BY MS. BINA:

 2          Q.  Have you ever reviewed that agreement?

 3              MR. VINE:  Objection.

 4          A.  I believe that I have, yes.

 5          Q.  Corellium does not have any licenses in place

 6      from Apple for the operation of the Corellium Apple

 7      product; does it?

 8              MR. VINE:  Objection.

 9          A.  As far as I'm aware, Corellium does not have

10      any written license agreements with Apple to license

11      the iOS software.

12      BY MS. BINA:

13          Q.  In your view, does Corellium have any

14      unwritten license agreement with Apple?

15              MR. VINE:  Objection.

16          A.  I think that that question, being of such a

17      legal nature, is one that I don't have the expertise

18      to comment upon.

19      BY MS. BINA:

20          Q.  So the answer is, you're not sure whether it

21      does or doesn't?

22              MR. VINE:  Objection, asked and answered.

23          A.  My response was that this seems -- this is a

24      question of a legal nature, which I lack the expertise

25      to remark on.
```

Veritext Legal Solutions
866 299-5127

ATTORNEYS EYES ONLY

```
 1    BY MS. BINA:
 2        Q.  I'm not asking you for a legal opinion.  I'm
 3    asking for your knowledge as the CEO of the company
 4    and as the witness designated to testify on behalf of
 5    Corellium's knowledge of Apple's copyrights.
 6            I need to know whether Corellium understood
 7    it to have a license of any kind with Apple for the
 8    use and development of its product.  And the answer
 9    from you would be that you didn't have such an
10    understanding, but I need to know what the answer is.
11            MR. VINE:  Amanda, before you answer, let
12            me object.  Number one, she's provided
13            answers about what Corellium's knowledge was
14            about the copyrights.
15            You're now on a licensing issue of
16            software.  She's told you, the way you
17            phrased the question -- just like Ivan
18            answered and other witnesses answered for
19            Apple, even though they were designated as
20            corporate representatives, there was
21            something of a legal question that they
22            didn't feel comfortable answering.  Amanda
23            has stated the same.
24            Amanda, if you can answer it again in any
25            other way, please, feel free to do so.
```

Page 176

ATTORNEYS EYES ONLY

1          A.  ████████████████████████████

██   ██████████████████████████████████████

██   ████████████████████████████████

4     BY MS. BINA:

5          Q.  Again, I understand you're not a lawyer, so

6     I'm not asking for the legal basis, but what facts

7     underpin that belief?

8               MR. VINE:  Objection.  You can answer.

9          A.  There are a couple of factors that contribute

10    to that belief.  In the first instance, the iOS

11    software files are made available freely online for

12    anyone to download and use.  These files can be opened

13    and explored upon download.  There are no restrictions

14    upon these files when they are downloaded.  No end

15    user license agreement is presented and no copyright

16    notice is presented and no other form of restriction

17    is presented.

18               And, so, in that regard, it indicates that

19    the vendor, i.e., Apple, has willingly and with

20    consent given the downloader the ability to do so and

21    to use the file upon download.

22             ████████████████████████████████████

██   ████████████████████████████████

██   ██████████████████████████████████████████

██   ██████████████████████████████████████

ATTORNEYS EYES ONLY

1    ███████████████████████████████████████

     ██████████████████████████████████████

     ██████████████████████████████████████

     ████████████████████

5              Apple was aware of what we were doing at the

6    highest levels, including the SVP of software, Craig

7    Federighi; and, yet, no one at Apple ever indicated to

8    us that they had any issue with what we were doing.

9    BY MS. BINA:

10        Q.  Is that a complete answer?

11        A.  I appreciate the pause, yes.  That's the

12   extent of my answer for now.

13        Q.  Just a couple of clarification questions,

14   starting with the last point.

15             █████████████████████████████████████

     █████████████████████████████████████████████

     ████████████████████████████████████

     ██   ██████████████████████████████████████

     ██   ███████████████████████████████████████████

     █████████████████████████   rather than something someone

21   affirmatively said to you, like -- I don't know --

22   someone at Apple saying, "You have a license to use

23   the product" or something like that?

24             MR. VINE:  Objection.

25   BY MS. BINA:

                                            Page 178

ATTORNEYS EYES ONLY

```
 1          Q.  That was a bit of a confusing question.  I'm
 2    trying to understand whether it's based on the absence
 3    of something saying no or the presence of something
 4    saying yes?
 5               MR. VINE:  I think what she was saying,
 6          it's based upon their actions.  That's what
 7          she just testified to.
 8               MS. BINA:  Well, I'm asking her for
 9          clarification, Jonathan.
10               MR. VINE:  Objection.  Go ahead, Amanda,
11          if you want to repeat it.
12               MS. BINA:  Please stop directing the
13          witness how to answer and let her answer my
14          question.
15               MR. VINE:  I'm not directing her.
16          A.  In the course of our discussions with Apple,
17    it wasn't simply that they never said anything to the
18    effect of, "Stop what you're doing" or "This is not
19    something that we condone."
20               It was, in addition, what I would consider
21    positive actions, which indicated that they not only
22    approved of what we were doing, but, in fact,
23    encouraged it and found it beneficial to the
24    community.
25               One such example was during a meeting that we
```

Page 179

ATTORNEYS EYES ONLY



```
 1
 
 
 
 
 
 
 
 
 
 
12   BY MS. BINA:
13        Q.   Encouraged the development of the technology?
14        A.   And the business.
15        Q.   Did they specifically encourage you to sell
16   the product to anyone?
17             MR. VINE:   Objection.
18        A.
 
 
 
 
 
 
25   BY MS. BINA:
```

Page 180

ATTORNEYS EYES ONLY

1      Q.   ██████████████████████

       ███████████████████████████

       █████████████████████████████████████████

       ████████████████████████████████████████

       ███████████████████████

6            MR. VINE:   Objection; asked and answered.

7   BY MS. BINA:

8      Q.   You can answer.

9      A.   █████████████████████████████████

       █████████████████████████████████████████

       ████████████████████████████████████████

       ██████████████████████████    ████████████████

       ████████████████████████████████████

       █████████████████████████████

          ██   ██████████████████████████████

       ███████████████████████████████

       █████████████████████████

18           MR. VINE:   Objection; mischaracterizing

19      the testimony.

20           You may answer, Amanda.

21      A.   I wouldn't say that they -- that anyone

22      directly said that.

23           MS. BINA:   █████████████████████

24      ████████.   While that's loading, I think --

25      what exhibit will it be, Elana?

                                          Page 181

ATTORNEYS EYES ONLY

```
 1              MR. VINE:  11.

 2              MS. NIGHTINGALE DAWSON:  I believe it's

 3         already there and it's 11.

 4              (Plaintiff's Exhibit 11 was marked for

 5         identification.)

 6              MS. BINA:  Perfect.  While we open

 7         that -- I don't have 11.  Let me reload it.

 8              MR. VINE:  I don't have it uploaded yet.

 9    BY MS. BINA:

10         Q.  I've got it.  But while we're waiting, one

11    more follow-up on the question you asked before.

12    ████████████████████████████████████████

      ████████  ████████████████████████████████

      ████████████████████████████████████████████

      ████  ██  ███████████  ██████  ██████████████

      ████████████████████████  ███████████████████

      █████████████████████████████████████

      ████████████  ███████████████████████████

      ████████████████████████████████████

      ████████████████████████████████████████

      ██████████████

22              Furthermore, other open-source projects have

23    demonstrated that it is entirely possible to run

24    components of the iOS operating system, which is

25    fundamentally what Corellium does.  It does not run
```

                                        Page 182

ATTORNEYS EYES ONLY



```
 1

            MR. VINE:  Objection.

13      A.

24  BY MS. BINA:

25      Q.
```

Page 183

ATTORNEYS EYES ONLY

```
 1      ███████████████████████████████████████████

        ███████████████████████████████████████████████

        ████████████████████

        ██      █████████████████████████████████████████████

        █████████████████

        ██      ████████████████████      ████████████████

        ████████████████████████████████████████████████████

        █████████████████████████████

 9              Let's turn to Tab 11 -- Exhibit 11 -- which

10      is an e-mail from Ollie Whitehouse at NCC Group to

11      you.

12              Do you have that in front of you?

13      A.  I do.

14      Q.  And he has a question for you.  ████████████

        ████████████████████████████████████████████

        ██████████████████████████

17              Do you remember him asking this question?

18      A.  I don't remember this e-mail specifically,

19      but I do see it on the page here.

20      ████      ██████████████████████████████████████████

        ████████████████████████████████████████████████████

        ████████████

        ████      ████

24              MS. BINA: |  ████████████████████████████████

        ████████████
```

Page 184

ATTORNEYS EYES ONLY

```
 1              MS. NIGHTINGALE DAWSON:  This is
 2       Exhibit 12, correct?
 3              (Plaintiff's Exhibit 12 was marked for
 4       identification.)
 5   BY MS. BINA:
 6       Q.  ████████████████████████████████
     █████████████████████████████████
     ████████████████████████
 9              MR. VINE:  Objection.
10       A.  ██████████████████████████████
     ███████████████████████████
12   BY MS. BINA:
13       Q.  Permission.
14       A.  I don't know that I would say that that's the
15   only criteria in all circumstances.
16       Q.  ██████   █████████████████████   ██████
     ████████████████████   █████████████████████
     ████████   ████████████████████████
     ██████████████████████████████████████
     ████████████████████
     ██████████████████████████████████
     ██████████████████████████████████████
     ██████████████████████████████████████
     ████████████████████████████████████
     ████████████████████████████
```

ATTORNEYS EYES ONLY



1

2      ▮

3      ▮

4      ▮

5      ▮

6      ▮

7      ▮

8      ▮

9      ▮

10     ▮

11          To be clear --

12     Q.  So it's -- sorry.  Go ahead.

13     A.

14     ▮

15     ▮

16     ▮

17          MS. BINA:  Let's look at Corellium

18     008526, which will be Exhibit 13.

19          (Plaintiff's Exhibit 13 was marked for

20     identification.)

21          MS. NIGHTINGALE DAWSON:  It moved.

22     BY MS. BINA:

23     Q.

24     ▮

25     ▮

Page 186

ATTORNEYS EYES ONLY



```
 1  ████████████████████████████████████
    ██████████████████████████████████████████
    ██████████████████████████████████████████
    ████████████████████████████    ████████████
    ████████████████████████████████████
    ██████████████████████████████████████████
    ████████████████████████
                    ████████████████████████████?
 9         MR. VINE:  Objection.
10    A.   I████████████████████████████████████
    ████████████████████████████
    ████████████████
       ██  ████████████████████████████████
    ██████████████████████████████████████████
    ████████████████████████████████
       ██  ████████████████████████████████
    ██████████████████████████████
    ██████████████
       ██  ████████████████████████████████
    ██████████████████████████████████████████
    ████████████████████████████████████████
22  ████████████████████████████████
23         MR. VINE:  Objection; mischaracterizes
24    the evidence in front of you.
25         Go ahead.  You can answer.
```

Page 187

ATTORNEYS EYES ONLY

```
 1          A.  Sorry.  For clarity, the question was,

 2     "Given" --

 3     BY MS. BINA:

 4          Q.  ████████████████████████████████

      ██████████████████████████████████████

      ██████████████████████████████████████

      ████████████████████████████████████████

      ██████████████████████████

 9          MR. VINE:  Objection.

10          A.  ████████████████████████████████████

      █████████████████████████████████████

      ████████████████

              ██████████████████████████████████

      ████████████████████████████████████████

      ██████████████████████████  ████████████

      ████████████████████████████████████████

      ██████████████████████████████████

      ██████████

19     BY MS. BINA:

20          Q.  Is there a reason you never asked Apple

21     specifically for a license?

22          A.  ███████████████████████████████████

      ████████████  ████████████████████████████

      █████████████████████████████████████████

      ████████████████████  █████████████████████
```

Page 188

ATTORNEYS EYES ONLY



23      A.   That's correct.

24           MS. BINA:

             Exhibit 14.

                                        Page 189

ATTORNEYS EYES ONLY

```
1              (Plaintiff's Exhibit 14 was marked for

2         identification.)

3    BY MS. BINA:

4         Q.  It should be up.  ███████████████████

     █████████████

     ██████████████████████████████

     ████████████████

8         A.  It could be me or another teammate.

9         Q.  Okay.  ████████
```



ATTORNEYS EYES ONLY

```
 1    ████████████████████████████████████████████████
 █    ██████████████████████████████████████████
 █    ████████████████
 4              MR. VINE:  Objection.
 5         A.  No.
 6    BY MS. BINA:
 7         Q.  No, it's not your understanding?
 8         A.  Correct.
 9       ██  ████████████████████████████████████
 █    ██████████████████████████████████████████
 █    ████████████████
12              MR. VINE:  Objection.
13       ██  ████████████████████████████████████████
 █    ████████████████████████████████████████████
 █    ██████████████████████████████████████
 █    ██████████████████████████
17    BY MS. BINA:
18       ██  ████████████████████████████████████████
 █    ████████████████████████████████████████████
 █    ██████████████████████████████████
21              MR. VINE:  Objection.
22         A.  Yes.
23    BY MS. BINA:
24         Q.  I didn't hear your answer, Ms. Gorton.
25         A.  Yes.
```



Page 191

ATTORNEYS EYES ONLY



14          MR. VINE:  Move to strike counsel's

15     comments.

16          Go ahead, Amanda.  Objection.

17     A.  It is evident to us, from the ongoing

18     discussions and behavior, that such terms were

19     unlikely to have ever been a realistic offer.

20     BY MS. BINA:

21     Q.  Okay.  I'm not going to belabor time on this

22     topic, so let's move on to Exhibit 3, which, again, is

23     the fourth amended answers to plaintiff's

24     interrogatories.

25          There's another topic that you're designated

                                        Page 192

ATTORNEYS EYES ONLY

1    to testify on, and that's -- actually, two topics, 18

2    and 19, which is disclosures by Corellium of bugs and

3    software flaws found in iOS.

4          I'd like to look at pages 22 to 23 of

5    Exhibit 3.  If you look on page 22, ███████████████

████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

████████████████████

██████    ██████████████████████████████████

██████    ████████████████████████████████

██████████████████████████

██████    ████████████████████████████

14         Q.  Do you know when, approximately, those sales

15   took place?

16         A.  No, I don't recall.

17         Q.  ███████████████████████████████

███████████████████████████████████

████████████████████████████████████████████████

████████████████████

██████████████████████████████████████████

█████████████████████████

██████    █████████████████

24         Q.  Continuing on in this document, you were also

25   designated to discuss Corellium's finances, so I want

ATTORNEYS EYES ONLY

```
1      to look at pages 23 to 24 of this document, which we

2      discussed at some degree earlier going through sales.

3              Did you personally compile this information?

4      A.   Are we discussing interrogatory number 8 or

5      9?

6      Q.   9 is what I'm discussing right now.

7      A.   ██████████████████████████████████████████

       ██████████████████

       ██  ██████████████████████████████████████████████

       ██  ████████████████████████████████████

11     Q.   And then there's cloud sales as well.  That

12     was the same answer, you and Mr. Dyer?

13     A.   Yes.

14     Q.   I'd like to move on to interrogatory number

15     10.  In interrogatory number 10, you provide annual

16     figures for various years of sales of the Corellium

17     Apple product.

18              ████████████████████████████████████████

19     ███████████████████████████████████████████████████

       ██████████████████████████████████████████████████████

       ██  ███████████████████████████████████████

22     A.   Well, off the top of my head, I don't know

23     that they don't.

24     Q.   ████████████████████████████████████████████

       ██  ██  ███████████████████████  ████████████████████
```

Page 194

ATTORNEYS EYES ONLY

```
1    ██████████████████████████████
2         Q.  Have you reviewed the expert report that
3    David Connelly, our expert, filed in this case,
4    cataloging some discrepancies amongst these
5    interrogatory responses?
6              MR. VINE:  Objection.
7         A.  I have skimmed that report, and I think that
8    his observations were from previous iterations of the
9    interrogatory responses, if I'm not mistaken.
10   BY MS. BINA:
11        Q.  So you think this version has fixed those
12   problems?
13        A.  I am not a hundred percent confident that, if
14   you tally up every figure from interrogatory number 9,
15   it will precisely match interrogatory number 10 for a
16   couple of reasons.
17              ████████████████████████████████████
     ██████████████████████████████████  ██████████
     ███████████████████████████████████████
     ████████████████
     ████████████████████████████████████
     ███████████████████████████████████████████
     ██████████  ████████████████████████████████
     ███████████████████████████████████████████
     ███████████████████████████████████.
```

ATTORNEYS EYES ONLY



```
 1              ████████████████████████████

                ████████████████████████████████████████

                ██████████████████████████    ████████████████

                ████████████████████████

 5        Q.  Sorry.  Go ahead.  I didn't mean to interrupt

      you.  Go ahead.

 7        A. ████████████████████████████████

                ██████████████████████████████████████████████

                ████████████████████████████████████████

                ██████████████████████████████████

                ████████████████████████████████████████  ████████

                ██████████████████████████████████████

                ████████████████████████

                      ████████████████████████████████████████

                ████████████████████████████████████

                ██████████████████████████████████

                ████████████████████████████████████  ████████

                ████████████████████████████

19        Q.  So does this fourth amended set of answers

      represent only actual receipts and actual expenses or

      does it still include estimated or anticipated

      expenses or receipts?

23        A.  This response only included actual receipts

      or expenses.

25        Q.  Can we look at -- and I don't know the Bates
```

Page 196

ATTORNEYS EYES ONLY

```
 1    numbers for this -- the Corellium QB sales revenue
 2    report, which I'll mark as Exhibit --
 3                MR. VINE:  15.
 4                MS. BINA:  -- 15. ████████████████████
      ████████████████████████
 6                (Plaintiff's Exhibit 15 was marked for
 7          identification.)
 8    BY MS. BINA:
 9          Q.  Ms. Gorton, who keeps this in the ordinary
10    course of business at Corellium?
11          A. ████████████████████████████████████████
      ████████████████████████████████████
      ████████████████████████████████████████
      █████████████████████  ████████████████████████
      ██████████████████
16    BY MS. BINA:
17          Q.  How are expenses and revenues ordinarily
18    booked in your accounting system?
19                THE VIDEOGRAPHER:  Counsel, your
20          microphone is getting more scratchy as we go.
21                MS. BINA:  I haven't moved.  This is fun.
22          Can you hear me okay now?
23                THE VIDEOGRAPHER:  It's still a little
24          scratchy.  We'll just monitor it.
25                MS. BINA:  Let me know if you're having
```

Page 197

ATTORNEYS EYES ONLY

```
 1              trouble.  I'll try to do something.
 2      BY MS. BINA:
 3              Q.  So the question was, how are your expenses
 4      and revenues booked in the ordinary course of
 5      business?
 6              A.  I'm not sure I understand the question.
 7      Could you clarify?
 8              Q.  Sure.  If you book revenue, how is that put
 9      into your accounting system?  So you get a big check
10      from somebody for selling an on-premises version or a
11      wire transfer.  What do you do with it?
12              A.  If I'm understanding the question correctly,
13      our bank account automatically syncs with the --
14              Q.  You cut out there.  With some kind of
15      software?
16              A.  ████████████████████████████████
17              Q.  What about expenses; how are they accounted
18      for?
19              A.  ██████████████████████
    ██      ██  ████████████████████████
    ██  ████████████████████████████████████████
    ██  ████████████████████████████████
    ██      ██  ████████████████████████████████████
    ██      ██  ████████████████████████
    ██      ██  ████████████████████████████████
```

Page  198

ATTORNEYS EYES ONLY



```
 1   ██████████████████████████████

     ██  ████████████████████████████████████

     ████████████████████████████████████████████

     ██████████████████

     ██  ████████████████████████████████████████

     ████████████████████████████

     ██  ████████████████████████████████████████

     ████████████████████████████████████████████████████

     ████████████████████████████████████████████████████

     ██████████████████████████

     ██  ████████████████████████████████ includes all

12   sales between March 14, 2019 and January 17, 2020.

13        Q.   So you don't know whether it includes -- do

14   you know what date this report was run?

15        A.   I do not.

16        Q.   ██████████████████████████████████████

     ████████████████████████████████████████

     ██  ████████████████████████████████████████████

     ████████████████████████████████  ████████

     ████████████████████████████████████████████████

     ██████████████████████████

     ██  ████████████████████████████████████

     ████████████████████████████████████████████████

     ████████████████████████████████████████████████

     ████████████████████████████████████████████████
```

Page  199

ATTORNEYS EYES ONLY

1    ███████████████████████████████████

     █         █       ██████████████████

     ███████████████████████████████████████

     ████████████████████████████████

     █         █       ████████████████████████

     ███████████████████████████

     █         █     █     █████████████████████

     █████████████████████

     █         █       ████████████████████

     █████████████████████████████████    █

     ██████████████████████████████

     █         █       █████████████████████

13        Q.   In interrogatory number 9, when you listed

14   the sale prices for the product, ████████████████████

     ████████████████████████████████████████

     ███████████████████████████

17        A.   One moment.  Let me pull up interrogatory 9

18   again.

19        Q.   Sure.  That's Exhibit 3.

20        A.   Thank you.  ████████████████████████

     ████████████████████████████████████

     ██████████████████████████

23        Q.   Right.  Exactly.  Did you make any discount

24   or adjustment to the purchase price?

25        A.   We did not.

Page 200

ATTORNEYS EYES ONLY

```
 1          Q.  You stated that you skimmed Mr. Connelly's
 2   report.  There are some expenses that he identified in
 3   that report, ██████████████████████████████
 ▓   ███████████████████████████████████████████████████
 ▓   ██████████████████████████████
 6          Is it your understanding -- do you have an
 7   understanding as to whether those are expenses
 8   properly attributed in a copyright case?
 9          A.  No, I don't have any understanding of that.
10          ██  ████████████████████████████████████████
 ▓   ██████████████████
12          MR. VINE:  Objection.
13          A.  Probably not.
14   BY MS. BINA:
15          ██  ███████████████████████████████████████
 ▓   █████████████████████████████████████████████████
 ▓   ██████████████████████████████████████████
18          MR. VINE:  Objection; mischaracterizes
19          the document.
20          A. ████████████████████████████████████████
 ▓   ██████████████████████████████████████████████
 ▓   ███████████████████████████████████████████████████
 ▓   ██████████████████
24   BY MS. BINA:
25          Q.  So I understand why there would be new
```

Page 201

1    information added, ████████████████████████

▮    ████████████████████████████████████████?

3         MR. VINE:  Objection; asked and answered.

4         ██   ███   ████████████████████████

▮    ████████████████████████████████████████

▮    ███████████████████████████████████████

▮    ████████████████████████████████████████

▮    ████████████████████████████████

▮    ████████████

▮    ██   ████████████████████████████████

▮    ████████████████████

12        MR. VINE:  Come on.  Objection.  Did you

13   just accuse the witness of changing things

14   improperly?

15        MS. BINA:  No.  I'm trying to understand

16   what she's testified to.  She said that the

17   numbers have changed based on things deemed

18   relevant and irrelevant in litigation.  ███

▮    █████████████████████████████████████

▮    ███████████████████████████████

▮    ████████████████████

22        MR. VINE:  Well, to the extent, Amanda,

23   that any of these questions relate to

24   conversations that you had with counsel,

25   don't answer the question.  If you can answer

Page 202

ATTORNEYS EYES ONLY

```
 1             it in a different way --
 2                  MS. BINA:  I'm not asking --
 3                  MR. VINE:  She may have received
 4             instructions from counsel.
 5                  MS. BINA:  I'm not asking about her
 6             communications with counsel.
 7                  MR. VINE:  You're asking her why.  And at
 8             the direction of counsel, then I don't want
 9             her to answer the question.  If it wasn't,
10             then she can answer the question.
11        BY MS. BINA:
12             Q.  ████████████████████████████████
   ██████████████████████████████████████████████████
   ████████████████████████████████████
15                  MR. VINE:  Same objection.
16             A.  Sure.  ███████████████████████████████
   █████████████████████████████████████████
   █████████████   ████████████████████████████████████
   ██████████████████████████████
20                  MR. VINE:  I don't want you --
21        BY MS. BINA:
22             Q.  Don't testify about communications with your
23        counsel.  If the only way to answer this question is
24        to tell about a direction you received from counsel,
25        you shouldn't answer it.
```

Page 203

ATTORNEYS EYES ONLY



```
 1        A.   Let me simply say this then.   The differences

 2   are
```

A.   Exactly right.

Q.

Page 204

ATTORNEY'S EYES ONLY

```
 1          Q.  But what do they relate to?

 2              MR. VINE:  Objection; asked and answered.

 3              MS. BINA:  Respectfully, she hasn't

 4          answered it.  She told me what they don't

 5          relate to.

 6              MR. VINE:  You don't get to choose -- if

 7          you don't like her answer, that's fine, but

 8          she did answer the question.

 9      BY MS. BINA:

10          Q.  You can answer, Ms. Gorton.

11          A.  ████████████████████████████████████████
    ████     ██████████████████████████████████
    ████     ██     ████████████████████████████
14              MR. VINE:  Objection; asked and answered.

15      BY MS. BINA:

16          Q.  I didn't hear your answer because your

17      counsel spoke over you.

18          A.  That's correct.

19          Q.  One question I forgot to ask earlier.  I'm

20      hoping the answer is not yes.  Are you under the

21      influence of any medication or other substance that

22      could affect the accuracy or clarity of your testimony

23      today?

24          A.  I am not.

25              MS. BINA:  Good.  We don't have to
```

Page 205

ATTORNEYS EYES ONLY

```
 1              withdraw the last six and a half hours.
 2                  I think that I am through with what I
 3              have at this point.  Over what I'm sure will
 4              be the vociferous objection of Mr. Vine,
 5              which we will discuss at a later time, I
 6              would like to reserve the right to hold this
 7              deposition open.  There are a number of
 8              documents relating to this witness
 9              potentially in her corporate designee
10              categories that have not yet been produced to
11              us and it may be necessary for us to revisit
12              those topics after production.
13                  I anticipate that Mr. Vine would oppose
14              any such reopening; although, if you feel
15              otherwise, Mr. Vine, please go ahead and tell
16              me, but I do want to make that statement on
17              the record.
18                  MR. VINE:  Gabe and I had a discussion
19              about this issue.  I suggested that we push
20              off both Amanda and Stephen Dyer.  You guys
21              elected for three other witnesses to proceed
22              after March 31st, which is the deadline to
23              produce the documents, and to proceed with
24              Amanda and Stephen.
25                  We told you, if you do, that you're not
```

Page 206

ATTORNEYS EYES ONLY

```
 1              going to get a second bite of the apple.  I'm
 2              just putting that on the record.  We warned
 3              you before taking today's deposition --
 4              you're smirking, but the reality is, that was
 5              the discussion.
 6                   How about this?  We will meet and confer
 7              about it after you get the production; and
 8              then, if there's a discussion that you
 9              believe you need to have with Amanda, we will
10              consider the request.  And if we can come to
11              an agreement, we can let Judge Matthewman
12              address it.
13                   MS. BINA:  Just for clarification, I am
14              aware of your conversation with Mr. Gross.
15              We did decide to defer three depositions
16              because of the overwhelming amount of
17              material that had not been produced.
18              However, given that you have not been willing
19              to consent to any extension of fact discovery
20              in this case, which closes in about three
21              weeks, and given that we have depositions
22              scheduled nearly every day between now and
23              the end of the fact discovery period, we have
24              had to proceed with some depositions.
25                   I'm hopeful that we will not need to
```

Page 207

ATTORNEYS EYES ONLY

1       redepose Ms. Gorton on any topics and I

2       appreciate that you will confer in good faith

3       after the production of documents.

4               MR. VINE:   Yeah -- and I just want to

5       correct the record because I don't think you

6       did it intentionally.  I know you don't

7       intentionally misstate.  We do not have

8       depositions nearly every day.  In fact,

9       there's a number of dates that we do not have

10      depositions.

11              But, as I stated, I would suggest that

12      you push off Mr. Dyer's for the same reason.

13      We're willing to make him available from

14      April 1st through April 20th.  And I don't

15      know if you've seen it, but the Court also

16      extended the deadline as it relates to the

17      expert discovery, so that pushes back some of

18      the issues as well.  It's up to you --

19              MS. BINA:   We'll look at that, but I

20      don't want to take up more of Ms. Gorton's

21      time.  Do you have any questions for her?

22              MR. VINE:   I do not.

23              MS. BINA:   Okay.  Ms. Gorton, at some

24      point after this deposition is completed,

25      you'll get a copy of your transcript and

Page 208

ATTORNEYS EYES ONLY

```
 1              you'll have the right to review it and make
 2              any changes that you deem appropriate.  Of
 3              course, those changes can be commented on by
 4              people for Apple.
 5                   Would you like to exercise your right to
 6              review and read your transcript and make any
 7              necessary edits or would you like to waive
 8              that right?
 9                   MS. BINA:  She's going to read.  I'll
10              answer for her.
11                   THE WITNESS:  Okay.
12                   THE REPORTER:  Do you want this
13              transcribed?
14                   MR. VINE:  Yes.
15                   Can we get on the record the amount of
16              time by the videographer, please?
17                   THE VIDEOGRAPHER:  Yes.  One second,
18              please.  Seven hours exactly.
19                   THE REPORTER:  And I didn't hear,
20              Ms. Bina, if you wanted this transcribed.
21                   MS. BINA:  I would like a transcription.
22                   MR. VINE:  We would like it.
23                   MS. BINA:  I'd like to order a rough as
24              well.
25                   MR. VINE:  We'll take a copy of the
```

Page 209

ATTORNEYS EYES ONLY

```
 1              rough.
 2                   MS. BINA:  That's fine.
 3                   THE VIDEOGRAPHER:  Let me conclude first.
 4              This concludes today's deposition of Amanda
 5              Gorton.  The total number of media used is
 6              nine.  We're going off the record at
 7              6:17 p.m., with 7 hours and 1 minute on the
 8              record.  Thank you so much.
 9                   (The reading and signing of the
10              transcript were not waived, and these
11              proceedings concluded at 6:17 p.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 210

ATTORNEYS EYES ONLY

```
1                          ERRATA SHEET
2        RE:  Apple Inc. v. Corellium, LLC
         DEPO OF:  Amanda Gorton
3        TAKEN:  March 25, 2020
4
5        Under penalties of perjury, I declare that I have read
6        the foregoing document and that the facts stated in it
7        are true.
8
9
10
11
12       _____
13       DATE                      AMANDA GORTON
14
15
16
17       Subscribed and sworn before me this _____ day of
18       _____, 2020.
19
20       State of Florida    )
21       County of           )  _____
22
23                                NOTARY PUBLIC
24
25
                                            Page 211
```

ATTORNEYS EYES ONLY

```
 1                     CERTIFICATE OF OATH

 2

 3       STATE OF FLORIDA

 4       COUNTY OF PALM BEACH

 5

 6

 7              I, Lisa Gerlach, the undersigned Notary

 8       Public, in and for the State of Florida, hereby

 9       certify that Amanda Gorton personally appeared before

10       me and was duly sworn.

11

12              WITNESS my hand and official seal this

13       29th day of March, 2020.

14

15

16

17              Lisa Gerlach, Court Reporter

18              Commission #GG023652

19              Expires 9/8/2020

20

21

22

23

24

25

                                          Page 212
```

ATTORNEYS EYES ONLY

```
 1                      CERTIFICATE OF REPORTER

 2

 3         STATE OF FLORIDA

 4         COUNTY OF PALM BEACH

 5

 6                 I, Lisa Gerlach, Court Reporter, do hereby

 7         certify that I was authorized to and did

 8         stenographically report the foregoing deposition; and

 9         that the transcript is a true and correct

10         transcription of the testimony given by the witness.

11                 I further certify that I am not a relative,

12         employee, attorney or counsel of any of the parties,

13         nor am I a relative or employee of any of the parties'

14         attorney or counsel connected with the action, nor am

15         I financially interested in the action.

16                 Dated this 29th day of March, 2020.

17

18

19                 Lisa Gerlach, Court Reporter

20

21         The foregoing certification of this transcript does

22         not apply to any reproduction of the same by any means

23         unless under the direct control and/or discretion of

24         the certifying reporter.

25
```

Veritext Legal Solutions
866 299-5127