# EXHIBIT 3

SECOND SUPPLEMENTAL
REPORT OF

DAVID B. CONNELLY

On Behalf of Plaintiff

Under Federal Rules of Civil Procedure 26(a)(2)(B)

In the Matter of

APPLE INC.

Plaintiff,

v.

CORELLIUM, LLC

Defendant

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:19-cv-81160-RS

The Honorable Rodney Smith, Judge Presiding

## I.     ASSIGNMENT

I understand that plaintiff Apple Inc. ("Apple") has filed suit against defendant Corellium, LLC ("Corellium"), alleging copyright infringement in violation of 17 U.S.C. § 501, and unlawful trafficking of a product used to circumvent security measures in violation of 17 U.S.C. § 1201.

My firm and I have been retained to perform an investigation and analysis concerning the federal copyright damages Apple is entitled to under 17 U.S.C. § 504(b) and § 1203(b)(3) and (c)(2), or in the alternative, statutory damages under 17 U.S.C. § 504(c) and § 1203(c)(3), for Corellium's infringement of, and unlawful trafficking activities concerning, Apple's copyrighted and protected works.  Specifically, we have been asked to examine financial records and documents that Corellium has produced, in order to assess and quantify the actual damages Apple has suffered as a result of Corellium's infringing activities, and in particular, the profits Corellium has generated from its infringing efforts, and to calculate the alternative statutory damages available to Apple under both statutes.

I previously issued my original report in this matter dated March 3, 2020, and my Supplemental and Rebuttal report dated April 20, 2020 ("Supplemental Report"), that set forth my observations and conclusions drawn through the dates of those reports.  Subsequent to the issuance of my Supplemental Report, I have had the opportunity to review the deposition transcript of Azimuth Security, LLC and its representative Courtney Smith (that was held on April 20, 2020), and attend the deposition of Corellium's designated damages expert Stewart Appelrouth ("Appelrouth"). In addition, I have subsequently had the opportunity to examine the second Corellium's updated "Profit & Loss Detail" QuickBooks report that Corellium has produced in this matter, concerning periods from February 12, 2020 through April 18, 2020 (Correllium-030116), that was produced on April 20, 2020.  Further, my deposition was taken by Corellium on April 23, 2020. Finally, as I was preparing to issue this report today (which to my understanding

1

is the final day of expert discovery in this case, and one week after the fact discovery cut-off date), I have just received **two new "Profit & Loss Detail" QuickBooks reports that Corellium has produced today, concerning periods from 2017 through March 5, 2019 (Corellium-030132), and March 6, 2019 through April 20, 2020 (Corellium-030133)**. Both of these reports include certain transactions that were not included in the two prior "Profit & Loss Detail" QuickBooks reports that Corellium had produced before today. Attached hereto as Exhibit E is a listing of the documents that I and my team have received and reviewed between April 13, 2020 and April 27, 2020. Also attached here as Exhibit F is a listing of the documents that I have received and reviewed today.

This Second Supplemental Report serves to supplement my Supplemental Report for my observations and conclusions drawn from these recent depositions, and my examination of Corellium's updated, partial QuickBooks report. Upon review of my Supplemental Report dated April 20, 2020, I noted a small number of nonsubstantive, typographical errors. Attached hereto as Exhibit A is my restated Supplemental & Rebuttal Report with errata changes correcting these typographical errors, the contents of which are incorporated by reference in this Second Supplemental Report.

This report is based upon information now available and upon such investigation as we were reasonably able to undertake. I believe that Corellium has still not provided significant financial information that has been requested, including its █████████████████████████ █████████████████ and information concerning its costs, expenses, and revenues that are attributable to its infringing Apple Product.

I reserve the right to supplement, modify or otherwise change this report should Corellium produce additional financial information that impacts my analysis. I may also develop additional opinions based on any further reports or opinions offered by Appelrouth  or other experts retained

by Corellium, as well as based on experts retained by Apple, and on any further evidence, including testimony, presented and made available to me, including evidence presented at trial in this matter. I am aware of my continuing obligation to supplement my report under Rule 26 of the Federal Rules of Civil Procedure.

## II.    EXPERT OPINIONS

At trial, I intend to testify regarding the federal copyright and DMCA damages Apple is entitled to under 17 U.S.C. § 504(b) and § 1203(b)(3) and (c)(2), or in the alternative, statutory damages under 17 U.S.C. § 504(c) and § 1203(c)(3), for Corellium's infringement of, and unlawful trafficking activities concerning, Apple's copyrighted and protected works.  Specifically, I intend to testify regarding the following summary opinions, as well as the bases for such opinions that are set forth herein.  I may rely on demonstrative exhibits, including pictures, figures, and drawings at trial.

(i)    Although Corellium's "moving target" of repeatedly modified, inconsistent interrogatory responses has made it difficult to identify gross revenues from its infringing activities, I have been able to identify, and to a large extent corroborate, Corellium's gross revenues from the sale or licensing of its infringing Apple Product totaling at least ████████ for the periods from Corellium's formation in August 2017 through April 18, 2020;

(ii)    Corellium's estimated gross revenues from the sale or licensing of its infringing Apple Product range between ██████████████ for the periods from the Company's formation in August 2017 through the trial of this matter in October 2020;

(iii)    I have not been able to fully assess and substantiate Corellium's anticipated (but yet to be asserted) deduction claims because Corellium has not produced invoices and other underlying transaction documentation for 62% of its total reported costs of goods sold and expenses during the periods from August 2017 through April 18, 2020;

(iv)    Although Corellium (and Appelrouth) has not met its burden under the provisions of 17 U.S.C. § 504(b) to prove deductible expenses and the elements of profit attributable to factors other than the copyrighted works, we have nonetheless prepared a calculation of Corellium's net profits from the sale or licensing of its Apple Product, which indicates that Corellium's net profits from the sale or licensing of its infringing Apple Product totaled at least $███████ for the period from Corellium's formation in August 2017 through April 18, 2020;

(v)    On the basis of our calculation of Corellium's net profits for the period from August 2017 through April 18, 2020, we have prepared a calculation projecting that Corellium's estimated net profits from the sale or licensing of its Apple Product, pursuant to 17 U.S.C. § 504(b) and 17 U.S.C. § 1203(b)(3) & (c)(2), will fall within an estimated range between ████████ and ████████ for the period from Corellium's formation in August 2017 through trial in October 2020;

(vi)    In the alternative, should the trier of fact choose to reject Corellium's incomplete QuickBooks records and deduct only Corellium's costs of goods sold from its gross revenues as discussed in my Supplemental Report, I have updated my prior calculations, demonstrating that Corellium's gross profits (revenues less costs of goods sold) totaled at least ████████ for the period from Corellium's formation in August 2017 through April 18, 2020, and its estimated profits from the sale or licensing of its Apple Product, pursuant to 17 U.S.C. § 504(b) and 17 U.S.C. § 1203(b)(3) & (c)(2), will fall within an estimated range between ████████ and ████████ for the period from Corellium's formation in August 2017 through trial in October 2020;

(vii)    Alternatively, Apple is entitled to an award of statutory damages that could total as much as $3,300,000 for willful infringement under 17 U.S.C. § 504(c), and/or at least as much as

██████ and potentially a substantially greater amount up to ██████ under the provisions of 17 U.S.C. § 1203(c)(3);

(viii)   Appelrouth has erroneously dismissed the infringer's burden of proof requirements under 17 U.S.C. § 504(b) concerning revenue attribution and deductible expenses, and not even attempted to examine transaction documents supporting Corellium's revenues and expenses (other than █████████████), or corroborate the transactions reported in Corellium's incomplete and suspect QuickBooks reports, in favor of a proposed, unwarranted iOS worldwide market analysis;

(ix)   It appears that Corellium ████████████████████ ██████ concerning its sales or licensing of the Apple Product, and has ████████ ██████████████████ that should have been recorded in its QuickBooks accounting records. In order to fully assess Corellium's gross revenues (and costs and expenses), its electronic QuickBooks files must be produced.

### .III.   ANALYSIS, OBSERVATIONS, AND CONCLUSIONS

### A.   CORELLIUM HAS SIGNIFICANTLY UNDER-REPORTED ITS GROSS REVENUES FROM THE APPLE PRODUCT

On April 20, 2020, Apple took the deposition of Azimuth Security, LLC ("Azimuth"), through Azimuth's representative Courtney Smith ("Smith").  During this deposition, Azimuth confirmed that it had paid Corellium at least ██████ relating to the Corellium Apple Product during periods from October 2017 through January 2020 (*see* discussion of Corellium invoices that served as deposition Exhibits 8 through 18, at C. Smith Deposition Transcript pp. 128–169). Included in such payments were **Azimuth payments to Corellium totaling** ████████ ████████████████████████████████ ████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████.  Specifically, Azimuth

confirmed that it had paid Corellium for the following:

(i)    █████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

██    █████████████████████████████████████

████████████████████████████████████████████████ for the

Corellium Apple Product.[3]

In addition, Azimuth confirmed that it █████████████████████████

█████████████████ and Smith stated that "████████████████████████

████████████████████████████████████."  C. Smith Deposition at

80:17-22.  On the basis of Azimuth's testimony, I have continued to include Corellium's ████████

███████████████████████████████████████████████████████

which are reflected in the following Corellium invoices ████████████████████

███████████████████████████████████████████████████████

---

[1] C. Smith Deposition at 162:10-165:8; 165:9-166:167:11.
[2] C. Smith Deposition at 167:24-169:14.
[3] C. Smith Deposition at 130:19-133:12.

██████████████████████). When added to the confirmed ███████ in payments by Azimuth █████████████████████████████████████████████ ████████████████████████████████.

I understand that there is a factual dispute amongst the parties as to whether these ████████████████ represent revenues from Corellium's infringement and trafficking in circumvention of the Apple Product, notwithstanding the fact that ███████████████████ ███████████████████████████████████████████████████████ ████████████████████████ the trier of fact determine that these revenues are separate from the Apple Product, then I will adjust my computed gross revenues, and remove them accordingly.

In addition to these sales to Azimuth, my examination of Corellium's recently produced, updated "Profit and Loss Detail" QuickBooks report for the period from February 12 through April 18, 2002 (Correllium-030116) served to identify a reported ████████████████████ ██████████████████████ on March 12, 2020. This ███████████████████ was not reported in Corellium's Fifth Amended Answer to Apple's Interrogatory Nos. 9 and 10 dated April 18, 2020, or the electronic file "Corellium-03110" that Corellium produced on April 19, 2020 detailing ██████████████████████.

Collectively, and as set forth in the attached Exhibit B (Supplement), these████████ ████████████████████████████ When added to Corellium's ███████ reported total on-premises revenues set forth in its Fifth Amended Answer to Apple's Interrogatory No. 9, I have determined that **Corellium's on-premises revenues from its Apple**

**Product have totaled at least** ████████ for all periods from August 2017 (inception) through April 18, 2020.[4]

B. **APPELROUTH DEPOSITION TESTIMONY**

I attended the deposition of Corellium's designated damages expert Stewart Appelrouth on April 22, 2020.  His testimony regarding Corellium's ████████████████████████████ was of particular interest.

**Corellium's Gross Revenues.**  With respect to Corellium's revenues, Appelrouth admitted that he ███████████████ Appelrouth Transcript at 136:17–22), and had not ████████████ ████████████████████████████████████████████████████ ████████████████ (*id.* at 134:4–23)).  Appelrouth believes Corellium's QuickBooks records to be accurate and complete, and would provide the best representation of Corellium's revenues (at 141:1–8), explaining his understanding that when Corellium receives monies:

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

If Appelrouth's understanding is correct, and ████████████████████████ ████████████████████████████████████████████████ ████████████████████████ then ████████████████████████ ████████████████████████████████████████████.  If such is the case, that could explain Corellium's ████████████████████████████████

---

[4] In my prior supplemental report, I also identified an executed "████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████

██████████████████████████████████████████████████ Appelrouth testified that he had

also not been provided ████████████████████████████████ Applerouth Transcript

at 134:6–22.

As I was preparing this report, I received **two new "Profit & Loss Detail" QuickBooks reports that Corellium has just produced today, April 27, 2020, concerning periods from 2017 through March 5, 2019 (Correllium-030132), and March 6, 2019 through April 20, 2020 (Correllium-030133)**.   Both of these reports **include certain transactions that were <u>not</u> included in the two prior "Profit & Loss Detail" QuickBooks reports that Corellium had produced before today**.  Specifically, the new QuickBooks report for periods from 2017 through March 5, 2019 (Correllium-030132) now includes ████████████████████████████

███████████████████████████████████████ that were <u>not</u> disclosed in its previously produced QuickBooks reports.  I had initially questioned these unrecorded revenues in my March 3, 2020 Report and Exhibit A thereto (noting that such revenues had been included in Corellium's answers to Apple's Interrogatory No. 10, but not its answers to Interrogatory No. 9 or its QuickBooks reports), and further identified these ARM server sales to Azimuth in my first Supplemental Report dated April 20, 2020 and Exhibit B thereto.

Corellium's **QuickBooks omissions have not been limited to revenues, as today's last minute production makes it clear that Corellium's previously produced QuickBooks reports also omitted certain expenses**.  Specifically, Corellium's new QuickBooks report for periods from March 6, 2019 through April 20, 2020 (Correllium-030133) now includes a ████████████████

████████ that was recorded as a payroll expense on February 10, 2020.  While Corellium's previously produced QuickBooks reports had reported ████████████████████████████████

█████ ████████████████████████████████████ they had not previously disclosed this now-reported ██████████████████████████ .

**Today's production has confirmed that Corellium's produced QuickBooks reports are not complete accounting records for the company**. In light of the omissions of confirmed revenues from Corellium's "Profit & Loss Detail" QuickBooks reports, and the identified inconsistencies between such reports and Corellium's interrogatory responses, it is my opinion that in order to fully assess Corellium's gross revenues (and costs and expenses), one must review its █████████████████████████████ that have not been produced.

Notwithstanding these facts, Appelrouth has chosen to █████████████████████████ ████████████████████████████ completed his testimony by admitting that, **if Corellium's** ████████████████████████████████████████████████████ █████████████████████████████████████████████████ ███████████████. Appelrouth Transcript at 208:1–7. Further, Appelrouth admitted that he ██ ████████████████████████████████████████████████ ████████████████████████████████████████████████████. *Id.* at 208:8–12.

**Corellium's Net Profits from Apple Product**. Notwithstanding the provisions of 17 U.S.C. § 504(b) and Corellium's burden to prove its "deductible expenses and the elements of profit attributable to factors other than the copyrighted work," Appelrouth testified that ████████ ████████████████████████████████████████████████ Appelrouth Transcript at 125:12–15. Appelrouth claims that he has not performed the profits calculation, or an analysis of Corellium's revenues, because, in his view, my reports have not adequately identified Corellium's gross revenues, and thus, he cannot calculate Corellium's profits. *Id.* at 125:12–20. I disagree with this assertion. With the exception of the █████████████████████ ███████████████████████████████████████ that was reported in recently produced Correllium-030110, and the ████████ identified in AZI000451, which Smith testified █████████████

10

██████████████████, *see* Smith Transcript at 168:8-24, my reports include in gross revenues only

(1) direct revenues from sales of Corellium's alleged infringing Apple Product; and (2) revenues

that ████████████████████████████████████████████████████████████████

██████████████████████████.[5]  I have not included in my calculation of gross revenues any

other product lines, or revenues with no nexus to the Apple Product.

Further, Appelrouth testified that ████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████.  Appelrouth

Transcript at 125:25–126:18.

## C.   CORELLIUM'S NET PROFITS FROM INFRINGING APPLE PRODUCT

It thus seems clear from Appelrouth's deposition testimony that he will not be performing

the requisite analysis of Corellium's deductible expenses, or elements of profit attributable to

factors other than the copyrighted work.

He does, however, challenge my decision to include only Corellium's costs of goods sold,

and not any expenses, in my provisional calculation of Corellium's profits stemming from

---

[5] Apple's Interrogatory No. 10 asked Corellium to identify only revenues attributable to the
Corellium Apple Product.  Specifically, Interrogatory No. 10 states:

> Separately for each version or installation of the Corellium Apple Product Identified in
> Interrogatory No. 1, state the following information for the Corellium Apple Product and
> any license of the Corellium Apple Product for each fiscal quarter from the formation of
> Corellium to present: (1) revenue received by Corellium for each sale or license; (2) costs
> of any goods sold for each private installation of the Corellium Apple Product; (3)
> standard costs (and any other costs) for Corellium; (4) research and development costs
> attributable to the Corellium Apple Product; (5) per-sale or per-license profit, and (6)
> total profit for Corellium from sales of the Corellium Apple Product.

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████

*See* Smith Transcript at 164:9-12 and 166:16-19.

infringement under section 504 of the Copyright Act, and trafficking in circumvention under section 1203 of the DMCA.  As I explained in my prior report, I believe that inclusion only of those minimal, provable costs is a reasonable choice, due, as I explained therein, to the disarray in Corellium's recordkeeping enabling me to review less than half of its claimed expenses, the inclusion of clearly disallowable expenses in the putative costs included in Corellium's interrogatory responses, and the presence of questionable expenses that do not appear to be clearly related to the Apple Product.

However, on the basis of Appelrouth's testimony and rebuttal reports, as well as the further revenue and expenses information produced by Corellium between April 9, 2020 and the present,[6] we have proceeded to update our analysis of Corellium's profits attributable to infringement and trafficking in circumvention.  Up through the issuance of my Supplemental Report on April 20, 2020, our focus with respect to Corellium's costs and expenses had concerned our assessment of the completeness of Corellium's production of underlying transaction documents (as set forth in Exhibit D to the Supplemental Report).  In this report, and with the benefit of a final accounting from Corellium and the completion of fact discovery (and thus, the certainty that no further records will be produced), we complete the analysis by attempting to corroborate the costs and expenses reported in the partial QuickBooks reports.

**Reconciliation of Corellium's Cost & Expense Documents to QuickBooks Reports**.
Our corroboration analysis began by attempting to agree the cost and expense transactions that we had examined to date (as forth in Exhibit D to my Supplemental Report) to Corellium's "Profit and Loss Detail" QuickBooks reports.  For each cost and/or expense transaction greater than

---

[6] As explained in my Supplemental Report and reflected on Exhibit D thereto, I understand that Corellium produced a large number of expense documents on April 9, 2020, which I received on April 10, 2020.  However, Corellium did not produce its final Profit & Loss Report (Correllium-030116) until April 20, 2020; this Second Supplemental Report reflects my reconciliation of those new documents together with Corellium's previously produced documentation.

$1,000 that was listed on Exhibit D, we attempted to agree such transactions to the corresponding Excel export QuickBooks reports (Corellium-022289 and Corellium-030116).   Our individual transaction reconciliation efforts served to reveal the following:

1.      Transaction Documents Not in QuickBooks.  As detailed on page 8 of the attached Exhibit D (Supplemental), 27 documented expense transactions totaling ████████were ██

████████████████████████████████ The absence of recorded QuickBooks entries for these items suggests that the produced documents may have been for personal expenditures (such as ██

████████████████████████████████████████████████████

████████████████████████ Because Corellium does not include these expenses as costs in its business records, our conclusion is that such costs should not be deducted from profits attributable to the Apple Product.

2.      Duplicate Transaction Documents Listed in Exhibit D.  During the course of our individual transaction reconciliation procedures, we identified numerous transactions, totaling ████████that had been included twice in our prior Exhibit D, as well as certain transaction amounts that were not charged to Corellium (such as additional costs for ████████████████

████████████████████████████████████████████████ The elimination of these duplicates, as well as the above noted transactions that were not recorded in QuickBooks, served to reduce the documented cost & expense transaction total set forth in the new Exhibit D (attached hereto) by ████████.   When combined with the additional costs and expenditures ████████████ that were reported in Corellium's recently produced, updated QuickBooks report, the percentage of QuickBooks reported costs and expenses that were documented dropped from 48% in my Supplemental Report to 38%, as set forth on page 7 of the attached Exhibit D.

3.      <u>Additional Undocumented Expenses.</u>  Of the remaining 62% of expenditures that are not documented, our reconciliation procedures served to reveal that the ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████

**Adjustments to Corellium's Reported Expenses**.   To recap, our reconciliation procedures served to identify ████████ in documented costs, ████████ in undocumented payroll and consulting expenses, and a remaining ████████ in undocumented costs and expenses. Collectively, these Corellium costs and expenses (that were reported in its "Profit & Loss Detail" QuickBooks reports) totaled ████████████████████████████. On the basis of issues we identified during our examination of the records and transaction documents, we made the following adjustments to Corellium's reported cost and expense totals.

<u>Additional Apple Meeting Travel Expenses.</u>  In addition to the ████ in travel expenses for the ████████████████████████████ that was reported in my Supplemental Report, my further review of the travel expense documents that Corellium produced on April 10, 2020 served to identify an additional ████ in travel expenses for other meetings at Apple, including ████ for meetings held from ████████████████ for meetings held from ██████████, ████ for meetings held ████████████████████████ ████████████████████████████████ As discussed in my prior reports, these trips to ████████████, for the ████████████████████████ ████████████████re not appropriate deductions in determining Corellium's infringing profits.

<u>Other Adjustments.</u>  **In addition to Corellium's** ████████████████

██████████████ that were addressed in my prior reports (including an additional ████

███████████████████████████ during March and April 2020

(Correllium-030116), **I have identified the following additional adjustments to Corellium's**

**reported expenses**:   (i) ██████████████████████████████████

███████████████████████████████, that could not be

explained by Appelrouth during his deposition (and for which balance sheets that would reflect

the basis for such provisions were not produced); (iii) ██████████████████████

███████████████████████████████, that could not be

explained by Appelrouth during his deposition; and (iv) ████████████████████

█████████████████████████ as such expenditures are adjusted out to

reflect Corellium's profits.

As set forth in the attached Exhibit C (Supplement), I have prepared updated gross and net

profits calculations, concerning (i) the profits attributable to the infringement under section 504;

and (ii) the profits attributable to Corellium's violations of section 1201,[7] indicating that—

assuming the trier of fact credits Corellium's excerpted and incomplete QuickBooks records, as

adjusted above— **Corellium's net profits from the sales or licensing of its Apple Products**

**totaled** ████████ **for periods from inception in August 2017 through April 18, 2020**.

Alternatively, if the trier of fact chooses to reject the QuickBooks records for the reasons stated in

my Supplemental Report, Corellium's profits (revenues less costs of goods sold) from the sales of

licensing of its Apple Products totaled ████████

---

[7] As explained in my Supplemental Report, these two calculations overlap in this instance, given
the nature of Corellium's business and its Apple Product.

Further, as set forth on the attached Exhibits C1 and C2 (Supplement), I have prepared updated gross and net profit calculations.   On Exhibit C1, I demonstrate that **Corellium's projected gross profits (revenues net of costs of goods sold) from its Apple Product will fall within an estimated range between** ███████████████ **for all periods from inception through trial**. On Exhibit C2, I demonstrate that, assuming the trier of fact credits Corellium's QuickBooks-documented costs, as adjusted above, **Corellium's projected net profits from its Apple Product will fall within an estimated range between** ███████████████ **for all periods from inception through trial**. These projection calculations are based on: (i) my gross and net profit calculations set forth in the attached Exhibit C (Supplemental); (ii) my projections of Corellium's gross revenues through trial, based on the alternative projection methodologies set forth in my Supplemental Report; and (iii) applied estimated Corellium gross and net profit margins of ████████, respectively, and based on Corellium's historic operations, for the period from April 19, 2020 through October 31, 2020 (trial date).

## V.    COMPENSATION

My hourly billing rate for investigation and analysis on this matter is $520 per hour.  The hourly billing rates for my assistants on this engagement range from $295 to $195 per hour.  Our billings for services rendered through March 31, 2020 have collectively totaled $54,265, and our services rendered thus far in April total approximately $125,000.

The positions articulated herein are my own.  My payment is not contingent on my findings or on the outcome of this case.

Executed this 27th day of April 2020, in Los Angeles, California.

_David B. Connelly_
David B. Connelly, CPA, JD

16

APPLE v. CORELLIUM

CORELLIUM APPLE PRODUCT REVENUES (NON-CLOUD)



**APPLE v. CORELLIUM**
**CORELLIUM PROFITS FROM**
**APPLE PRODUCT SALES OR LICENSING**
**AUGUST 2017 THRU APRIL 18, 2020**

EXHIBIT C
(SUPPL)



EXHIBIT C1

APPLE v. CORELLIUM
CORELLIUM GROSS PROFITS FROM
APPLE PRODUCT SALES OR LICENSING
PROJECTIONS THRU OCTOBER 31, 2020



CORELLIUM - CONFIDENTIAL - AEO

APPLE v. CORELLIUM
CORELLIUM NET PROFITS FROM
APPLE PRODUCT SALES OR LICENSING
PROJECTIONS THRU OCTOBER 31, 2020



CORELLIUM - CONFIDENTIAL - AEO

APPLE v. CORELLIUM
CORELLIUM COSTS & EXPENSES
TRANSACTION DOCUMENTS PRODUCED
JULY 2017 THRU APRIL 18, 2020

EXHIBIT D
(SUPPL)

APPLE v. CORELLIUM

EXHIBIT D

CORELLIUM COSTS & EXPENSES

(SUPPL)

TRANSACTION DOCUMENTS PRODUCED

JULY 2017 THRU APRIL 18, 2020

**APPLE v. CORELLIUM**
**CORELLIUM COSTS & EXPENSES**
**TRANSACTION DOCUMENTS PRODUCED**
**JULY 2017 THRU APRIL 18, 2020**

EXHIBIT D
(SUPPL)

**APPLE v. CORELLIUM**
**CORELLIUM COSTS & EXPENSES**
**TRANSACTION DOCUMENTS PRODUCED**
**JULY 2017 THRU APRIL 18, 2020**

**EXHIBIT D**
**(SUPPL)**



**APPLE v. CORELLIUM**
**CORELLIUM COSTS & EXPENSES**
**TRANSACTION DOCUMENTS PRODUCED**
**JULY 2017 THRU APRIL 18, 2020**

**EXHIBIT D**
**(SUPPL)**

CORELLIUM - CONFIDENTIAL - AEO

APPLE v. CORELLIUM
CORELLIUM COSTS & EXPENSES
TRANSACTION DOCUMENTS PRODUCED
JULY 2017 THRU APRIL 18, 2020

EXHIBIT D
(SUPPL)



CORELLIUM - CONFIDENTIAL - AEO

APPLE v. CORELLIUM
CORELLIUM COSTS & EXPENSES
TRANSACTION DOCUMENTS PRODUCED
JULY 2017 THRU APRIL 18, 2020

EXHIBIT D
(SUPPL)

CORELLIUM - CONFIDENTIAL - AEO

APPLE v. CORELLIUM

EXHIBIT D
(SUPPL)

**CORELLIUM COSTS & EXPENSES**
**TRANSACTION DOCUMENTS PRODUCED**
**JULY 2017 THRU APRIL 18, 2020**

## <u>CERTIFICATE OF SERVICE</u>

I, Jessica Stebbins Bina, do hereby certify that on April 27, 2020 I caused a copy of the

foregoing Second Supplemental Report of David B. Connelly to be served via email upon:


S. Jonathan Vine
Justin B. Levine
Lizza C. Constantine
Michael Alexander Boehringer
COLE, SCOTT & KISSANE, P.A.
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
jonathan.vine@csklegal.com
justin.levine@csklegal.com
lizza.constantine@csklegal.com
michael.boehringer@csklegal.com

David L. Hecht
Maxim Price
Minyao Wang
Conor B. McDonough
HECHT PARTNERS LLP
20 West 23rd St. Fifth Floor
New York, NY 10010
dhecht@hechtparntersllp.com
mprice@hechtpartnersllp.com
mwang@hechtpartnersllp.com
cmcdonough@hechtpartners.com



*s/ Jessica Stebbins Bina*
Jessica Stebbins Bina