**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:19-cv-81160-RS**

APPLE INC.,

                    Plaintiff,

     v.

CORELLIUM, LLC,

                 Defendant.

**PLAINTIFF APPLE INC.'S RESPONSE TO**
**DEFENDANT CORELLIUM, LLC'S *DAUBERT* MOTION TO**
**PRECLUDE CERTAIN TESTIMONY OF DR. MICHAEL SIEGEL**

i

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     Background ................................................................................................................1

II.    Legal Standard ........................................................................................................3

III.   Dr. Siegel Helpfully Applies Security Research Industry Standards To The Facts
of this Case .............................................................................................................4

       A.    Corellium's Good Or Bad Faith Conduct Bears On Multiple Legal Issues ............5
       B.    Corellium Has Repeatedly Put Its Good Faith Conduct At Issue ...........................7

IV.  Conclusion .............................................................................................................9

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Bellitto v. Snipes*,
    302 F. Supp. 3d 1335 (S.D. Fla. 2016) ...................................................................3, 5, 9

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) ..............................................................................................6, 7

*Chanel, Inc. v. Italian Activewear of Florida, Inc.*,
    931 F.2d 1472 (11th Cir. 1991) ...............................................................................7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) .................................................................................................3

*Flynn v. FCA US LLC*,
    No. 15-cv-0855, 2018 WL 2063871 (S.D. Ill. Jan. 31, 2018) ..................................4

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985) .................................................................................................6

*Hemisphere Holdings I, LLC v. Wal-Mart Stores East, LP*,
    No. 15-cv-23404, 2016 WL 7538834 (S.D. Fla. Aug. 17, 2016) .............................5

*Kwiatkowski v. Allstate Ins. Co.*,
    717 F. App'x 910 (11th Cir. 2017) ..........................................................................7

*Martorella v. Deutsche Bank Nat'l Trust Co.*,
    931 F. Supp. 2d 1218 (S.D. Fla. 2013) ....................................................................7

*In re Med/Waste, Inc.*,
    No. 04-cv-22526, 2006 WL 8433382 (S.D. Fla. July 25, 2006) ..............................3

*Peter Letterese And Assocs., Inc. v. World Inst. Of Scientology Enterprises*,
    533 F.3d 1287 (11th Cir. 2008) ............................................................................6,7

*Quality Plus Servs., Inc. v. Nat'l Fire Ins. Co. of Pittsburgh*,
    No. 3:18-cv-454, 2020 WL 539598 (E.D. Va. Jan. 15, 2020) .................................4

*United States v. Frazier*,
    387 F.3d 1244 (11th Cir. 2004) ............................................................................3, 9

*Zaki Kulaibee Estabishment v. McFliker*,
    No. 08-cv-60296, 2011 WL 1327145 (S.D. Fla. Apr. 5, 2011)................................3

**STATUTES**

Digital Millennium Copyright Act, 17 U.S.C. § 1201 ........................................................1, 2, 5, 6

**RULES**

Fed. R. Evid.702 ........................................................................................................................1, 3

Corellium has the law of expert witnesses backwards.  In its *Daubert* motion, Corellium attempts to exclude Dr. Siegel's opinions because he did *not* purport to offer legal conclusions related to fair use or the Digital Millennium Copyright Act.  Dr. Siegel instead offered helpful background about the security research industry, and analyzed facts bearing on Corellium's good faith.  Experts are supposed to "reliably appl[y] the principles and methods" from their field of expertise "to the facts of the case."  Fed. R. Evid. 702(d).  Rather than supply grounds to exclude Dr. Siegel, Corellium's straw man arguments illustrate why Dr. Siegel's testimony will aid the jury.  Corellium has long asserted good faith to support its fair use, willful infringement, and DMCA defenses. Dr. Siegel properly rebuts that evidence by opining on the industry definition of good-faith security research and analyzing whether Corellium's business activities comport with that industry definition.  His testimony is thus unquestionably relevant to Corellium's asserted defenses, helpful to explain security research to a lay audience, and should be permitted in full.

Corellium also initially moved to strike Dr. Siegel's second supplemental report, claiming that it was untimely.  In doing so, Corellium misrepresented to the Court both the dates on which it produced documents to Apple and the parties' express agreement on supplemental expert disclosure deadlines.  *See* Ex. 13 (Apr. 21, 2020 email chain showing agreement of the parties); After Apple brought these misrepresentations to Corellium's attention, Corellium withdrew the timeliness portion of its motion.  *See* Ex. 12 (May 16, 2020 email regarding withdrawal); ECF No. 489.

I.      **BACKGROUND**

Dr. Michael Siegel is the Director of Cybersecurity at the Massachusetts Institute of Technology's Sloan School of Management.  *See* Ex. 1 (Expert Report of Michael D. Siegel (Mar. 3, 2020)), Appendix A at A-1.  He holds a Ph.D. in Computer Science from Boston University and has worked for thirty years on MIT's research faculty.  *Id.*  In his work at MIT, Dr. Siegel frequently interacts with Chief Information Security Officers at government agencies and Fortune 500 companies.  *See* Ex. 1 ¶ 7.  Dr. Siegel has authored more than 70 journal articles and reports on subjects relating to information technologies, information integration, distributed software systems, and management of information systems and cybersecurity.  *See* Ex. 1 ¶ 4.

Dr. Siegel submitted four reports in connection with this case.  On March 3, 2020, Dr. Siegel served his opening report.  *See* Ex. 1.  His Report provides background into the security research industry, *id.* § III, sets forth an industry definition of good-faith security research, *id.* §

1

IV, and evaluates whether Corellium's business practices ensured good-faith security research, *id.* § V.  The report notes that Corellium had not yet produced marketing materials, customer agreements, and customer communications that would further inform Dr. Siegel's opinions.  *Id.* ¶¶ 19–21.

The same day, on March 3, 2020, Corellium submitted the expert opinion of Alexander Stamos, current director of the Stanford Internet Observatory and former Chief Information Security Officer at Facebook, Inc.  Mr. Stamos similarly provides background into the security research industry, *see* Ex. 5 (Expert Report and Declaration of Alexander Stamos (Mar. 3, 2020)) ¶¶ 15–23, 27–29, and evaluates the Corellium Apple Product's use as a tool for "engaging in or enabling security research," *id.* ¶¶ 24–27, 30–38.

On April 13, 2020, Dr. Siegel served his rebuttal report in response to Mr. Stamos.  *See* Ex. 2 (Expert Rebuttal Report of Michael D. Siegel (Apr. 13, 2020)).[1]  In the intervening five weeks, Corellium had produced documents related to the Corellium Apple Product's marketing, customers, and ██████████████████████████████.  *See id.* at ¶ 5, Appendix B.  Based on that new information, Dr. Siegel opines that Corellium is not solely engaged in good-faith security research because Corellium ████████████████████████████████ ██████████████████████████████████████ *id.* ¶¶ 20–25, 28–34, and ███████████████ ██████████████████████████████████████ *id.* ¶¶ 11–14, 36–39.  Dr. Siegel also provides rebuttal opinions on the dangers of offensive stockpiling of vulnerabilities, *id.* § V, and Apple's recognition in the industry for strong security practices, *id.* § VI.

On April 20, 2020, Dr. Siegel submitted a brief supplemental report adopting his rebuttal opinions as affirmative opinions.  *See* Ex. 3 (Expert Supplemental Report of Michael D. Siegel (Apr. 20, 2020)).  On April 28, 2020, Dr. Siegel submitted a second supplemental report to incorporate the prior week's deposition testimony of Corellium security expert Alexander Stamos and Corellium customer Azimuth Security and state that the new information confirmed his prior opinions.  *See* Ex. 4 (Second Supplemental Report of Michael D. Siegel (Apr. 28, 2020)).

On May 11, 2020, Corellium filed a *Daubert* motion to exclude Dr. Siegel's opinions entirely.  ECF No. 444.  Corellium's basis for exclusion is that Corellium no longer intends to assert one of its Answer's affirmative defenses under the Digital Millennium Copyright Act.

---

[1] Dr. Siegel's Rebuttal Report also addresses the portions of Corellium's other expert opinions bearing on good faith security research.

*Compare* Answer, ECF No. 64 at 27–28 (asserting regulatory defense for "good faith security research") *with* Siegel *Daubert* Motion, ECF No. 444 at 4 ("The regulatory defense for security research, however, does not apply to Apple's claims."). In Corellium's view, because Dr. Siegel's opinions on security research could relate to that abandoned defense, his opinions on industry standards applied to this litigation as a whole would not aid the trier of fact. *See id.* at 3–7.

Apple opposes Corellium's motion.

## II.    LEGAL STANDARD

Federal Rule of Evidence 702 permits the admission of expert testimony where "the expert's scientific, technical, or other specialized knowledge will help the trier of fact understand the evidence or determine a fact at issue." Fed. R. Evid. 702(a) (emphasis added). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers in determining whether an expert's testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Applying *Daubert,* the Eleventh Circuit instructs district courts to assess whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address;
>
> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and
>
> (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1293 (11th Cir. 2004) (citation omitted). Experts are supposed to "reliably" apply their "principles and methods to the facts of the case." Fed. R. Evid. 702(d).

Expert testimony on industry customs and practices is helpful to the trier of fact. *See Frazier*, 387 F.3d at 1297–98 ("[E]xperts on industry customs and practices . . . are often permitted to derive their conclusions in this fashion.") (citations omitted); *Bellitto v. Snipes*, 302 F. Supp. 3d 1335, 1354 (S.D. Fla. 2017); *accord In re Med/Waste, Inc*., No. 04-cv-22526, 2006 WL 8433382, at *4 (S.D. Fla. July 25, 2006) (citation omitted); *Zaki Kulaibee Establishment v. McFliker*, No. 08-cv-60296, 2011 WL 1327145, at *7 (S.D. Fla. Apr. 5, 2011) (citation omitted).

III.   **DR. SIEGEL HELPFULLY APPLIES SECURITY RESEARCH INDUSTRY STANDARDS TO THE FACTS OF THIS CASE**

Dr. Siegel's expert reports provide an overview of the security research industry, set forth an industry definition of good-faith security research, and then apply facts about Corellium's business to that definition. *See* Ex. 1 §§ IV–V; Ex. 2 at ¶¶ 11–14, 20–25, 28–34, 36–40. Corellium raises no objection to Dr. Siegel's expert qualifications or methodologies. Cybersecurity experts like Dr. Siegel are routinely qualified in federal courts. *See, e.g.*, *Quality Plus Servs., Inc. v. Nat'l Fire Ins. Co. of Pittsburgh*, No. 3:18-cv-454, 2020 WL 539598, at *14–16 (E.D. Va. Jan. 15, 2020) ("Based on his background and his central role in a number of high profile investigations, the Court agrees that Anderson is qualified as a cybersecurity expert."); *Flynn v. FCA US LLC*, No. 15-cv-0855, 2018 WL 2063871 at *5–6 (S.D. Ill. Jan. 31, 2018) (denying all of defendant's motions to exclude plaintiff's four cybersecurity experts). Corellium itself has offered one in this case, Alexander Stamos.

Corellium does not dispute the existence of security research industry practices, or that Dr. Siegel's analysis is grounded in them. Dr. Siegel's opening report states that industry practice understands that "good-faith security research" is

> done solely for the purpose of testing, investigating, and/or correcting a security flaw or vulnerability; it must be carried out in an environment designed to avoid any harm to individuals or the public; the information derived from the research must not be used or maintained in a manner that facilitates illegal activity; and finally, and most critically, the information derived from the research must be properly and responsibly disclosed to the vendor of the product that contains the software flaw or vulnerability.

Ex. 1 ¶ 22(a). That definition is widely supported in the security industry. *Id.* ¶¶ 44–47, 49–51 (citing numerous industry publications and companies' disclosure policies). Corellium's own security expert largely corroborates Dr. Siegel's background regarding the security research industry and the responsible disclosure of vulnerabilities. For example, Mr. Stamos agreed that security researchers should do "everything possible" to have a vendor fix a vulnerability in their product, and █████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ *See* Ex. 4, Siegel Second Supplemental Report ¶¶ 26, 28-31; *see generally id.* §§ V–VI.[2]

---

[2] Apple has moved to exclude Mr. Stamos's legal conclusions regarding fair use, but not Mr. Stamos's security research industry analysis or opinions. *See* ECF No. 451 at 7–10.

4

Indeed, Corellium questioned Apple's witnesses about their personal knowledge of industry standards surrounding good-faith security research. Their answers also support responsible disclosure to the vendor as an industry norm. *E.g.*, Ex. 10 (Transcript of Deposition of Jason Shirk (Mar. 23, 2020)) at 36:24–38:17; Ex. 11 (Transcript of Deposition of Sebastien Marineau-Mes (Apr. 3, 2020)) at 61:7–64:7; Ex. 9 (Transcript of Deposition of Ivan Krstic (Mar. 19, 2020)) at 104:11–25.

Instead of challenging Dr. Siegel's qualifications or methodology, Corellium contends that Dr. Siegel's opinions are unhelpful. Its only basis for excluding Dr. Siegel's factual analysis about whether or not Corellium engages in good-faith security research is that Corellium has changed its legal theory in the case, rendering Dr. Siegel's opinion (in Corellium's view) irrelevant. *See* ECF No. 444 at 5; *see id.* at 1, 3, 6. Corellium's premise is incorrect: Corellium's legal defenses still rely on the purported societal benefits of the Corellium Apple Product, and the good or bad faith of Corellium's and its users' security research conduct remains a pervasively disputed fact.

## A.    Corellium's Good Or Bad Faith Conduct Bears On Multiple Legal Issues

Despite Dr. Siegel's grounding in industry practice, Corellium moves to exclude his opinion as insufficiently legal. Corellium faults Dr. Siegel for not using the words "fair use" and contends with respect to the DMCA that "[o]nly testimony that is grounded in this specific statutory language will be helpful to the jury." ECF No. 444 at 3, 6. This is nonsensical. Experts are supposed to opine on industry standards and *not* the law, just as Dr. Siegel did. *See Bellitto*, 302 F. Supp. 3d at 1352–54 (permitting industry testimony but excluding legal conclusions); *Hemisphere Holdings I, LLC v. Wal-Mart Stores E., LP*, No. 15-cv-23404, 2016 WL 7538834, at *3 (S.D. Fla. Aug. 17, 2016) (same). This same logic explains why Apple has moved to exclude Corellium's own cybersecurity industry expert's legal conclusions on fair use, but not Mr. Stamos's factual opinions on the security research community and Corellium's use as a security research tool. *See* ECF No. 451 at 7–10.

Corellium's willingness to have its own experts offer legal opinions leads it to focus its objections to Dr. Siegel on a straw man—i.e., that the words "good faith security research" only appear in copyright law within an inapplicable regulatory exemption, and Dr. Siegel's industry definition is not identical to that exemption's language. ECF No. 444 at 3–7. Corellium then contends that "Dr. Siegel's reports were solely directed to the issue of good-faith security research as it pertains to Apple's claims pursuant to 17 U.S.C. §§ 1201(a)(2) and 1201(b) of the Digital

Millennium Copyright Act." ECF No. 444 at 3. Corellium is wrong. Dr. Siegel is not purporting to opine on the applicability of a legal exemption. He references the language of the DMCA exemption only once, for the point that the exemption resulted from industry-wide dialogue and therefore borrows from industry standards. *See* Ex. 4 ¶ 27.

Corellium is also incorrect in asserting that Dr. Siegel's opinion could not apply to any issue other than a DMCA exemption. To the contrary, Dr. Siegel's opinions on good-faith security research within the cybersecurity research community bear on multiple ultimate issues in the case, and would aid the fact-finder's analysis as to all of them. In particular, Corellium relies on the same fundamental factual contentions—*i.e.*, that Corellium engages in and enables beneficial and praiseworthy security research into iOS—to support at least the following legal arguments:

- "[T]he purpose of Corellium's product is for, *inter alia*, the criticism, research, and/or improvement of Apple's alleged copyright-protected material." ECF No. 64 at 21 (fair use defense).

- "Corellium states that its actions were in good faith and with non-willful and innocent intent at all material times." *Id.* at 24 (willful infringement defense).

- "Corellium's technology was developed to perform good faith encryption research and is provided to its users for the purpose." *Id.* at 26–27 (DMCA defense under 17 U.S.C. § 1201(g)).

- "Corellium developed, produced, and/or employed technological means solely for the purpose of performing acts of security testing." *Id.* at 27 (DMCA defense under 17 U.S.C. § 1201(j), which requires that the conduct is "solely for the purpose of good faith testing.")

- "Corellium facilitates noninfringing uses of computer programs . . . solely for the purpose of good-faith security research." *Id.* at 27–28 (DMCA defense under 37 C.F.R. § 201.40(b)(11)).

Although Corellium now implies that it has abandoned that last "good-faith security research" regulatory defense as "inapplicable," ECF No. 444 at 1, Corellium has not abandoned the others. Instead, Corellium's fair use argument (for which good faith is a sub-factor) lays the cornerstone of its defense on summary judgment. *See* ECF No. 456 at 1–2, 7–8, 10–15, 18-20 (arguing for summary judgment under fair use doctrine); *see also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 585 n.18 (1994) (noting that good faith can play into fair use analysis) (citations omitted); *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985) ("Fair use presupposes good faith.") (citation omitted); *Peter Letterese & Assocs., Inc. v. World Inst. Of Scientology Enters.*, 533 F.3d 1287, 1312 n.27 (11th Cir. 2008) ("[G]ood faith does not insulate a

defendant from liability," but is a "'presupposition' of a defendant's claim to the defense.").

Dr. Siegel's expert opinions would be helpful to a jury in assessing fair use. In particular, Corellium argues that it simply offers "a security research and testing platform," and that it users conduct "socially-beneficial research." *See* ECF. No. 456 at 1. Dr. Siegel's opinions refute these unsupported assertions and provide the factfinder with more complete information to assess Corellium's mischaracterizations. *See* Ex. 2 ¶¶ 36–39; Ex. 4 ¶¶ 24, 32 (noting that Corellium's customers ██████████████████████████, and "may use the Corellium Apple Product for bad-faith, offensive purposes"). Furthermore, if the case proceeds to trial, presumably Corellium will raise its good faith contentions again to defend against a finding of willful infringement. There again, Dr. Siegel's opinions and analysis will aid the finder of fact.

### B.    Corellium Has Repeatedly Put Its Good Faith Conduct At Issue

In any legal context, "good faith" or "bad faith" is a classic question of fact. *See, e.g.*, *Kwiatkowski v. Allstate Ins. Co.,* 717 F. App'x 910, 912 (11th Cir. 2017) ("Whether an insurer acted in good faith is generally a question of fact for the jury.") (citation omitted); *Martorella v. Deutsche Bank Nat'l Trust Co.*, 931 F. Supp. 2d 1218, 1226 (S.D. Fla. 2013) ("[W]hether Defendants acted in good faith is a question of fact to be resolved at trial.") (citations omitted); *see also Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991) ("[W]illful blindness could provide the requisite intent or bad faith [for a finding of treble damages]. . . and, like intent itself, will generally be a question of fact for the factfinder after trial."). Corellium does not contend otherwise. Instead, it asserts that its good or bad faith is not "a fact in issue." ECF No. 444 at 5 (citing Fed. R. Evid. 702). But its own legal expert acknowledges that evaluation of a fair-use defense "sometimes includes an assessment of the good or bad faith of the defendant." Ex. 8 (Declaration and Expert Report of Clark Asay (Mar. 3, 2020)) ¶¶ 23–24 (citing *Campbell*, 510 U.S. at 585 n.18).[3] And it is Corellium who first put its purported good faith conduct at issue, where it remains a live dispute. *See* ECF No. 456 at 1 ("Customers . . . use Corellium for highly socially-beneficial research that protects . . . the citizens of the United States."). Corellium cannot exclude Dr. Siegel's contrary analysis just because it is inconvenient to Corellium's narrative.

Corellium first raised the laudability of its security research activities in its Answer. *See*

---

[3] Apple has moved to exclude Mr. Asay's legal opinions. *See* ECF No. 451.

*generally* ECF No. 64.  To quote:

- "Corellium's technology enables its users to . . . conduc[t] advanced security research in an environment highly constrained by that purpose."  *Id.* at 2.

- Corellium "simply enables . . . security researchers" to "help [Apple] create a better product" in "a more productive way."  *Id.* at 9.

- "Corellium does not license its platform to anyone.  Its end users include well-known and well-respected financial institutions, government agencies, and security researchers."  *Id.* at 12.

- "Corellium's technology is intended to improve the security research and development community."  *Id.* at 14.

Later in the case, Corellium proffered expert opinions praising Corellium's conduct related to security research:

- "I am providing my expert opinion on Corellium's product, its capabilities, its usefulness to the security research community and the downstream benefits to Apple users globally."  Ex. 5 ¶ 11.

- Apple's sought-after "restrictions on Corellium would likely harm good faith research more than it would harm bad actors."  Ex. 6 (Rebuttal Report and Declaration of Alexander Stamos (Apr. 13, 2020)) ¶ 37.

- "Corellium's identification of these bugs and reporting of them to Apple benefits society."  Ex. 7 (Expert Report of James Olivier (Mar. 3, 2020)) ¶ 76.

And Corellium's pending motion for summary judgment continues to rely on these same assertions of good faith:

- Corellium's platform is "lauded by the research industry."  ECF No. 456 at 1.

- "Customers like ███████████████████████████ use Corellium for highly socially-beneficial research that protects . . . the citizens of the United States."  *Id.*

- Corellium is a "product designed solely for security research."  *Id.* at 5.

- "Corellium only exists for its users to conduct research into the security of computer programs, including portions of Apple's iOS."  *Id.* at 9.

Corellium's assertions are rife with facts to be challenged.  For example, it would undercut Corellium's assertions if Apple demonstrated that the Corellium Apple Product is not designed or marketed to only be used for security research, that Corellium and its users do not report vulnerabilities to Apple to improve iOS, or that Corellium licenses or sells its software to malicious actors.  These are precisely the questions Dr. Siegel asks and the facts he evaluates within the

framework of cybersecurity industry standards.  *See* Ex. 2 §§ II–V.

Dr. Siegel first provides background on security research into flaws in software, differentiating between bugs, vulnerabilities, and exploits.  Ex. 1 ¶¶ 25–29.  He then explains how "white hat," "gray hat," and "black hat" hackers in the security research community use software flaws either defensively or offensively, *i.e.*, to benefit society by improving vendor software security, or to harm society by exploiting the flaws for financial gain, identity theft, or other malicious ends.  *Id.* ¶¶ 30–40.  Dr. Siegel then introduces a definition of good-faith security research and provides extensive industry support for that definition.  *Id.* § IV.  Finally, Dr. Siegel evaluates Corellium's business practices within that industry framework.  *Id.* § V; Ex. 2 §§ III–V.  Dr. Siegel relies in particular on Corellium's failure to ████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████  *Id.*  Based on his analysis of the facts revealed in discovery, Dr. Siegel concludes Corellium is not engaged exclusively in good faith security research.  *Id.* ¶ 6(b)–(e).

This sort of expert opinion "on industry practices he is familiar with [and] what he perceives as deficiencies" in the opposing party's conduct is "'beyond the understanding of the average lay person' and will lend assistance to the factfinding in this case."  *Bellitto*, 302 F. Supp. 3d at 1354 (quoting *Frazier*, 387 F.3d at 1262).  Dr. Siegel's expert opinion is, therefore, helpful.  Corellium's motion to exclude the entirety of Dr. Siegel's opinions as unhelpful should be denied.

## IV.   CONCLUSION

For the foregoing reasons, Apple respectfully requests that this Court deny Corellium's motion to exclude the opinions and testimony of Dr. Michael Siegel.

Dated: May 26, 2020

Respectfully Submitted,

*s/ Martin B. Goldberg*

Martin B. Goldberg
Florida Bar No. 0827029
*mgoldberg@lashgoldberg.com*
*rdiaz@lashgoldberg.com*
Emily L. Pincow
Florida Bar No. 1010370
*epincow@lashgoldberg.com*
*gizquierdo@lashgoldberg.com*
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL  33131
(305) 347-4040 / (305) 347-4050 Fax

Michele D. Johnson*
*michele.johnson@lw.com*
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
(714) 540-1235 / (714) 755-8290 Fax

Sarang Vijay Damle*
*sy.damle@lw.com*
Elana Nightingale Dawson*
*elana.nightingaledawson@lw.com*
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200 / (202) 637-2201 Fax

Andrew M. Gass*
*andrew.gass@lw.com*
Joseph R. Wetzel*
*joe.wetzel@lw.com*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 / (415) 395-8095 Fax

Jessica Stebbins Bina*
*jessica.stebbinsbina@lw.com*
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500 / (424) 653-5501 Fax

Gabriel S. Gross*
*gabe.gross@lw.com*
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 463-2628 / (650) 463-2600 Fax

*\*Admitted pro hac vice*

*Attorneys for Plaintiff* APPLE INC.