# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

APPLE INC.,

Plaintiff,

v.

CORELLIUM, LLC,

Defendant.

Case No. 9:19-cv-81160-RS

**SECOND SUPPLEMENTAL REPORT OF MICHAEL D. SIEGEL, PH.D**

**APRIL 28, 2020**

**RED UNDERLINED = CORELLIUM CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**RED UNDERLINED = CORELLIUM CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## TABLE OF CONTENTS

I. INTRODUCTION AND ASSIGNMENTS ....................3

A. SUMMARY OF PRIOR REPORTS ....................3

B. ASSIGNMENT ....................7

C. MATERIALS RELIED UPON ....................7

II. AZIMUTH SECURITY CONFIRMS THAT THEY DO NOT RESPONSIBLY DISCLOSE ALL VULNERABILITIES TO APPLE ....................8

III. AZIMUTH SECURITY CONFIRMS THAT [REDACTED] ....................10

IV. NEITHER CORELLIUM NOR AZIMUTH KNOW HOW CORELLIUM'S CUSTOMERS USE THE CORELLIUM APPLE PRODUCT ....................12

V. MR. STAMOS AGREES THAT RESPONSIBLE DISCLOSURE TO THE VENDOR IS AN IMPORTANT FACET OF SECURITY RESEARCH ....................13

VI. MR. STAMOS AGREES [REDACTED] ....................14

VII. CONCLUSION ....................16

## I. INTRODUCTION AND ASSIGNMENTS

1. I am a Principal Research Scientist in the Information Technology Group at MIT's Sloan School of Management. I am currently Director of Cybersecurity at MIT Sloan, a research consortium focused on management, strategy and organizational issues related to cybersecurity. I have also been a Senior Lecturer at the Sloan School of Management. Appendix A provides my Curriculum Vitae, which includes my publications.

2. I am being compensated at the rate of $850 per hour for the time I incur on this matter. In preparation of this report, I have been assisted by certain employees of Analysis Group, who provided me support and assistance under my direction. The positions articulated herein are my own. My payment is not contingent on my findings or on the outcome of this case.

### A. SUMMARY OF PRIOR REPORTS

3. As I understand from counsel, Corellium, LLC ("Corellium") has claimed that the Corellium Apple Product[1] is used "solely for the purpose of good-faith security research."[2] My opinions put forth in this matter are in the context of evaluating whether the Corellium Apple Product is used solely for the purpose of good-faith security research. My opinion is based on the legal context of the case. I make no legal opinion. This report, like the others

---

1 Corellium offers a product that creates virtual versions of Apple's iOS operated devices that are accessible on a web browser or via an on-premises platform. This product is referred to in this report as the Corellium Apple Product.

2 CORELLIUM'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO APPLE'S FIRST AMENDED COMPLAINT, *Apple Inc. v. Corellium, LLC*, Case 9:19-cv-81160-RS, January 10, 2020, ¶ 25; *see also id.* at p. 3-9.

before it, are evaluating the Corellium Apple Product in terms of a security research tool in the context of this case.

4. On March 3, 2020, I submitted an initial report and offered opinions on what constitutes "good-faith" security research and whether Corellium's business practices ensure that the Apple Corellium Product is used solely for good-faith security research.

5. The report is attached as Appendix B.[3] Specifically, I opined that "for research to qualify as 'good-faith security research,' the research must satisfy at least the following criteria:

   a. the research is done solely for the purpose of testing, investigating, and/or correcting a security flaw or vulnerability.

   b. the research is carried out in an environment designed to avoid any harm to individuals or the public.

   c. the information derived from the research is not used or maintained in a manner that facilitates illegal activity.

   d. the information derived from the research is properly and responsibly disclosed to the vendor of the product that contains the software flaw or vulnerability."[4]

6. I also explained that "responsible disclosure" of vulnerabilities to the impacted software vendor is "a critical requirement for good-faith security research, and security research that

3 Expert Report of Michael D. Siegel, PH.D., *Apple Inc. v. Corellium, LLC*, Case No. 9:19-cv-81160-RS, March 3, 2020 ("Siegel Report").

4 Siegel Report, ¶ 43.

**RED UNDERLINED = CORELLIUM CONFIDENTIAL – ATTORNEYS' EYES ONLY**

does not include this critical requirement cannot be considered good-faith security research."[5]

7. Furthermore, I also provided the opinion that "Corellium's business practices are not designed to ensure that the Corellium Apple Product is used solely for good-faith security research, and Corellium's actual business activities confirm that Corellium cannot represent that its product is used only or even primarily for good-faith security research."[6]

8. On April 13, 2020, I submitted a rebuttal report to evaluate the expert reports of Mr. Alexander Stamos,[7] Dr. James Olivier,[8] and Mr. Clark Asay[9] and to opine on the experts' failure to examine the facts of Corellium's practices and the risk of harm they cause to Apple's users, Apple, and society. That report, which is attached as Appendix C,[10] took account of the additional material made available to me after I submitted my initial report.

9. In my rebuttal report, I provided opinions on how Corellium's experts fail to consider Corellium's actual evidence or acknowledge the severe risk that use of the Corellium Apple

---

5 Siegel Report, ¶ 44.

6 Siegel Report, ¶ 22.d.

7 Expert Report and Declaration of Alexander Stamos, *Apple Inc. v. Corellium, LLC*, Case No. 9:19-cv-81160-RS, March 3, 2020 ("Stamos Report").

8 Expert Report of James Olivier Ph.D., *Apple Inc. v. Corellium, LLC,* Case No. 9:19-cv-81160-RS, March 3, 2020 ("Olivier Report"); Expert Report/Disclosure of James Olivier Ph.D. RE: Corellium's Bug Submissions to Apple, *Apple Inc. v. Corellium, LLC*, Case No. 9:19-cv-81160-RS, March 2, 2020 ("Olivier Bug Report").

9 Expert Report of Clark Asay, *Apple, Inc. v. Corellium, LLC*, Case No. 9:19-cv-81160 RS, March 3, 2020, Attachment C. ("Asay Report"). With respect to Mr. Asay, I do not address any of his legal framework or analysis, but only the factual basis for his description of the Corellium Apple Product as supporting good-faith security research.

10 Expert Rebuttal Report of Michael D. Siegel, Ph.D., *Apple Inc. v. Corellium, LLC*, Case No. 9:19-cv-81160-RS, April 13, 2020 ("Siegel Rebuttal Report").

Product by bad actors poses.[11] I found that Corellium's experts "ignore the potential for bad-faith, offensive uses of the Corellium Apple Product" including the "likelihood that black-hat and grey-hat researchers will add vulnerabilities to their offensive stockpiles."[12] [redacted]

10. Furthermore, while Corellium's experts voiced "support in their reports for responsible disclosure to the software vendor," they ignored the importance of "ensuring that responsible disclosure of vulnerabilities actually occurs through the use of the Corellium Apple Product."[14] In addition to not requiring that vulnerabilities discovered by its customers be disclosed responsibly, through review of the materials provided to me at the time, I found that [redacted]

11. Lastly, Corellium's experts also suggested that Apple's closed approach to its product is a security risk, without providing evidence to support this. However, Apple's products are known in the industry as being secure and resistant to malware, even compared to mobile

---

11 Siegel Rebuttal Report, ¶ 6.

12 Siegel Rebuttal Report, ¶ 6.

13 Siegel Rebuttal Report, ¶¶ 28-35.

14 Siegel Rebuttal Report, ¶ 6.

15 Siegel Rebuttal Report, ¶ 6.

phone operating systems with an open approach such as Android (Apple iOS and Android make up the vast majority of mobile operating systems).[16]

12. On April 20, 2020, I submitted a supplemental report to incorporate as my affirmative opinion all the opinions put forth in my rebuttal report, and all the bases for those opinions, including the evidence relied upon therein.[17] This report is attached as Appendix D.[18]

### B. ASSIGNMENT

13. I have been asked by counsel for Apple Inc. ("Apple") to evaluate statements made during the depositions of Ms. Courtney Smith,[19] the corporate representative of Azimuth Security, as well as Corellium's expert, Mr. Alexander Stamos,[20] and assess whether their statements confirm my previous opinions.

### C. MATERIALS RELIED UPON

14. I have been provided copies of the deposition transcripts of Ms. Smith and Mr. Stamos, including deposition exhibits. A list of materials I have relied upon are listed in Appendix E.

---

16 Siegel Rebuttal Report, ¶ 6.

17 Expert Supplemental Report of Michael D. Siegel, PH.D., *Apple Inc. v. Corellium, LLC*, Case No. 9:19-cv-81160-RS, April 20, 2020 ("Siegel Supplemental Report").

18 Siegel Supplemental Report.

19 Deposition of Courtney Smith, *Apple Inc. v. Corellium, LLC*, 9:19-cv-81160-RS, United States District Court, Southern District of Florida, April 22, 2020 ("Smith Deposition").

20 Deposition of Alexander Stamos, *Apple Inc. v. Corellium, LLC*, 9:19-cv-81160-RS, United States District Court, Southern District of Florida, April 24, 2020 ("Stamos Deposition").

## II. AZIMUTH SECURITY CONFIRMS THAT THEY DO NOT RESPONSIBLY DISCLOSE ALL VULNERABILITIES TO APPLE

15. As I stated in my original report, responsible disclosure is a critical requirement for good-faith security research[21] and involves the following steps:

    a. "The security researcher who found the vulnerability to confidentially report it to the impacted company.

    b. The security researcher and company work in good faith to establish an agreed upon period of time for the vulnerability to be patched.

    c. Once the agreed upon time period expires and the vulnerability is patched or the patch is available for installation by the users of the software, the security researcher can publicly disclose the vulnerability."[22]

16. I also noted that while good-faith research requires responsible disclosure, by contrast, black-hat researchers do not typically disclose vulnerabilities to affected companies at all.[23] It has been clear since writing my original report that [REDACTED], Azimuth, does not engage in good-faith security research, evidenced by its own admission that it has never reported a bug found using Corellium's product back to Apple.[24]

---

[21] Siegel Report, ¶ 44.

[22] Siegel Report, ¶ 45.

[23] Siegel Report, ¶ 48.

[24] Lorenzo Franceschi-Bicchierai, "iPhone Emulation Company Sued by Apple Says It's Making iPhones Safer," *Motherboard Tech by Vice*, October 29, 2019, available at https://www.vice.com/en_us/article/8xw7gx/iphoneemulation-company-sued-by-apple-says-its-making-iphones-safer.

17. [REDACTED].[27]

18. As described in my rebuttal report, "the U.S. government has established what is called a 'vulnerability equities process' (VEP) to '[balance] whether to disseminate vulnerability information to the vendor/supplier in the expectation that it will be patched, or to temporarily restrict the knowledge of the vulnerability to the [US Government].'"[28] The government acknowledges that "[i]n the vast majority of cases, responsibly disclosing a newly discovered vulnerability is clearly in the national interest."[29] Corellium's expert, Mr. Stamos, described the VEP as a process "that has representatives of the intelligence community, the military and defensive -- more defensive groups, such as Department of Homeland Security, arguing over whether the U.S. Government should fix a bug or whether it should be used in an offensive use."[30] [REDACTED]

---

25 Smith Deposition, p. 217:9-19.

26 Smith Deposition, p. 219:5-13.

27 Smith Deposition, p. 241:1-19.

28 Siegel Rebuttal, ¶ 54.

29 "Vulnerabilities Equities Policy and Process for the United States Government," *WhiteHouse.gov*, November 15, 2017, available at https://www.whitehouse.gov/sites/whitehouse.gov/files/images/External%20-%20Unclassified%20VEP%20Charter%20FINAL.PDF.

30 Stamos Deposition, p. 77:6-13.

[redacted][32]

19. The failure to report vulnerabilities back to Apple [redacted] is not consistent with good-faith security research and could cause potential harm to Apple's users, Apple, and society.

## III. AZIMUTH SECURITY CONFIRMS [redacted]

20. As I mention in my first report, the security research industry has many players,[33] and there exists a wide range of reasons why security researchers and entities engage in security research. Broadly, some players are looking to improve the security of software and the public (white-hat researchers); some players are interested in using vulnerabilities and exploits to do harm through cyberattacks (black-hat researchers); and some players are somewhere in between, typically focused on how they can personally benefit from their

---

31 Smith Deposition, p. 228:17-24.

32 Smith Deposition, p. 228:25-229:11.

33 Siegel Report, Section III.

vulnerability discoveries (grey-hat researchers).[34] It is these latter two types of researchers who may use the Corellium Apple Product for bad-faith, offensive purposes.

21. Azimuth Security, , is publicly reported to be in the business of developing, "zero-day exploits, according to six sources."[35] .[37]

22. "[38]

[34] Siegel Report, ¶ 34.

[35] Joseph Cox, Lorenzo Frenceschi-Bicchierai, "How a Tiny Startup Became The Most Important Hacking Shop You've Never Heard Of," *Motherboard Tech by Vice*, February 7, 2018, available at https://www.vice.com/en_us/article/8xdayg/iphone-zero-days-inside-azimuth-security.

[36] Joseph Cox, Lorenzo Frenceschi-Bicchierai, "How a Tiny Startup Became The Most Important Hacking Shop You've Never Heard Of," *Motherboard Tech by Vice*, February 7, 2018, available at https://www.vice.com/en_us/article/8xdayg/iphone-zero-days-inside-azimuth-security.

[37] Smith Deposition, pp. 80:23-81:1.

[38] Smith Deposition, p. 80:20-22.

[39] Deposition of Amanda Gorton, *Apple Inc. v. Corellium, LLC*, 9:19-cv-81160-RS, United States District Court, Southern District of Florida, March 25, 2020 ("Gorton Deposition"), p. 140:5-24.

23. [redacted]

## IV. NEITHER CORELLIUM NOR AZIMUTH KNOW HOW CORELLIUM'S CUSTOMERS USE THE CORELLIUM APPLE PRODUCT

24. In my rebuttal report, I described how Corellium's reseller agreements "do not require the resellers to report back to Corellium who they have resold the Corellium Apple Product to or whether these new customers would use the Corellium Apple Product for good-faith security research."[41] [redacted]."[42] [redacted]."[43]

25. [redacted]

40 Siegel Report, ¶ 73.

41 Siegel Rebuttal, ¶ 33.

42 Gorton Deposition, pp. 107:21-108:3.

43 Smith Deposition, p. 87:9-13.

## V. MR. STAMOS AGREES THAT RESPONSIBLE DISCLOSURE TO THE VENDOR IS AN IMPORTANT FACET OF SECURITY RESEARCH

26. As I stated in my original report and in Section II above, responsible disclosure is a critical requirement for good-faith security research.[44] Mr. Stamos throughout his deposition agreed that responsible disclosure is important. For example, he described that responsible disclosure was his "personal choice of how I believe security researchers should act"[45] and "security researchers should do everything possible to get a flaw fixed by the vendor in most cases."[46] I agree with his opinions on responsible disclosure and find them consistent with industry standards.[47]

27. In addition, while my opinions on what constitutes good-faith security research are informed by my industry experience and research, it aligns closely with accepted definitions of good-faith security research, with responsible disclosure being an important tenet. As discussed in commentary during several proceedings regarding the DMCA's security research exemption, responsible disclosure is specifically indicated as a norm of good-faith security research.[48] Furthermore, in 2015, in adopting the final rule for good-faith security research the Library of Congress noted the importance of responsible disclosure since "the interests

---

44 Siegel Report, ¶ 44.

45 Stamos Deposition, p. 95:14-15.

46 Stamos Deposition, p. 75:1-2.

47 Siegel Report, ¶¶ 44-48.

48 *See e.g.,* Ed Felten and J. Alex Halderman, "Long Comment Regarding a Proposed Exemption Under 17 17 U.S.C. § 1201," *United States Copyright Office* (2017); Ed Felten and J. Alex Halderman, "Long Comment Regarding a Proposed Exemption Under 17 17 U.S.C. § 1201: Reply Comments on Proposed Class 10 Computer Programs — Security Research," *United States Copyright Office* (2018).

of the manufacturer and the public may both be affected by the nature and timing of disclosure of software flaws."[49]

## VI. MR. STAMOS AGREES [redacted]

28. As I noted in my rebuttal report, [redacted].

29. In Mr. Stamos's expert report, he described the NSO Group as a mercenary.[51] Indeed, when questioned about an example of an unethical company, Mr. Stamos responded that "a great example now would be [the] NSO Group of Israel," because they sold "malware to autocratic regimes that are then being used against journalists, local democracy [sic] activists, and in a variety of ways that I do not believe to be an appropriate [sic] use of malware by a government."[52] [redacted].[53] [redacted]

---

[49] "Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies," 37 CFR Part 201, Docket No. 2014-07, October 28, 2015, p. 13.

[50] Siegel Rebuttal Report, Section IV.2.

[51] Stamos Report, ¶ 34.

[52] Stamos Deposition, p. 78:8-18.

[53] Siegel Rebuttal, ¶ 29.

[redacted].

30. Mr. Stamos also described the Kingdom of Saudi Arabia as a government with a history of unethical behavior, using exploits "in ways that are not compatible with my personal moral framework for sure."[54] [redacted].[55] [redacted][56] [redacted]."[57] If the Corellium Apple Product were to be used in a way consistent with Kingdom of Saudi Arabia's past behavior, it would be unethical and may cause harm for Apple's users, Apple, and society.

31. Mr. Stamos also described the United Arab Emirates as using "malware and exploits to spy on journalists and suppress local dissent."[58] [redacted].[59] [redacted]

---

54 Stamos Deposition, p. 251:20-24.

55 [redacted]

56 Siegel Rebuttal, ¶ 30.

57 Gorton Deposition, p. 163:8-22.

58 Stamos Deposition, p. 252:5-7.

59 Gorton Deposition, pp. 122:25-123:21.

32. I agree with Mr. Stamos's assessment that [redacted] . Providing access to the Corellium Apple Product to customers with histories of bad-faith, offensive behavior is unethical. These customers may use the Corellium Apple Product for bad-faith, offensive purposes, which may cause harm to Apple's users, Apple, and society. Thus, the Corellium Apple Product could not be considered a tool used solely for good-faith security research.

## VII. CONCLUSION

33. After review of all the materials provided to me since my initial report, I still am of the opinion that "Corellium's business practices are not designed to ensure that the Corellium Apple Product is used solely for good-faith security research, and Corellium's actual business activities confirm that Corellium cannot represent that its product is used only or even primarily for good-faith security research."[61]

---

60 Siegel Rebuttal, ¶ 31.

61 Siegel Report, ¶ 22.d.

Michael Siegel
April 28, 2020

**CERTIFICATE OF SERVICE**

I, Carolyn M. Homer, do hereby certify that on April 28, 2020 I caused a copy of the foregoing Second Supplemental Report of Dr. Michael Siegel to be served via email upon:

S. Jonathan Vine
Justin B. Levine
Lizza C. Constantine
Michael Alexander Boehringer
COLE, SCOTT & KISSANE, P.A.
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
jonathan.vine@csklegal.com
justin.levine@csklegal.com
lizza.constantine@csklegal.com
michael.boehringer@csklegal.com

David L. Hecht
Maxim Price
Minyao Wang
Conor B. McDonough
HECHT PARTNERS LLP
20 West 23rd St. Fifth Floor
New York, NY 10010
dhecht@hechtparntersllp.com
mprice@hechtpartnersllp.com
mwang@hechtpartnersllp.com
cmcdonough@hechtpartners.com

*s/ Carolyn M. Homer*