# EXHIBIT 10

```
 1                 UNITED STATES DISTRICT COURT

 2                 SOUTHERN DISTRICT OF FLORIDA

 3                  CASE NO: 9:19-cv-81160-RS

 4   ------------------------------------------------------------

 5   APPLE INC.,                      )
                                      )
 6                   Plaintiff,       )
                                      )
 7        vs.                         )
                                      )
 8   CORELLIUM, LLC,                  )
                                      )
 9                   Defendant.       )

10   ------------------------------------------------------------

11                     DEPOSITION OF

12                      JASON SHIRK

13                 NON-CONFIDENTIAL PORTION

14

15                    March 23, 2020

16                      10:15 a.m.

17

18              1200 Sixth Avenue, Suite 610

19                   Seattle, Washington

20

21

22

23

24

25   REPORTED BY:  Allison O'Brien, CCR No. 2163
```

Jason Shirk Vol Non-confidential
March 23, 2020                                    36

1   information and make it public in damaging or, we'll say,

2   personal ways.  So I can't, as a blanket statement, say that

3   it's good for the community.  I think it all depends on the

4   intentions of the actor.

5        Q.   Fair enough.  Okay.  So let's talk about the good

6   side of it for now and ignore, for the purpose of this

7   conversation, the fact that it could be used for a nefarious

8   purpose.  As it relates to the good side, so you would agree

9   with me that it then could be used for good purposes?

10                MS. BINA:  Objection, incomplete

11       hypothetical.

12                You can answer.

13       Q.   You can answer.

14       A.   It could be used -- so we'll say very specifically

15   I'm not a lawyer, but I know the Library of Congress has

16   talked about the DMCA, the Digital Millennium Copyright Act,

17   and how the act of breaking or reversing the protections in

18   a device, so long as they are for public benefit or personal

19   use, are considered to be non-violations of the act.  So if

20   they're being used -- if a jailbreak is being used to

21   discover vulnerabilities for the purpose of delivering those

22   vulnerabilities to the vendors in order to make the product

23   better, I think in those cases there can be goods.

24       Q.   Do you think there could be any cases where the

25   vulnerabilities are not directly provided to the vendor but

Jason Shirk Vol Non-confidential
March 23, 2020                    37

1    would still constitute good security research or good

2    jailbreaking?

3                    MS. BINA:  Objection, improper hypothetical,

4         improper expert opinion.

5         You can answer.

6         A.   Well, I certainly am biased, as I've spent my last

7    21 years professionally working for builders of operating

8    systems.  I believe that the vulnerabilities that are

9    discovered by an individual may be discovered by multiple

10   individuals and that there's some level of potential

11   irresponsibility of not reporting those to the vendor to be

12   fixed.

13        Q.   And -- okay.  And where does this element that

14   reporting it to the vendor come from?  Is it something you

15   read somewhere, or something you heard?

16        A.   No, I've been very involved in this community for

17   a long time.  It's a topic of quite some debate.

18        Q.   What do you mean by "a topic of debate"?

19        A.   Different points of view amongst your researchers.

20        Q.   And why would -- so -- so actually, I'm curious as

21   to that.  What exactly is the debate?  And let me -- well,

22   let me try and phrase it for what my understanding might be.

23        Would the debate be whether -- whether research can

24   constitute good research and whether that turns on the fact

25   of -- strike that.  Let me -- let me say it a little bit

Jason Shirk Vol Non-confidential
March 23, 2020                              38

1    cleaner.

2         Would the debate be that research can constitute

3    good-faith security research if the vulnerabilities do not

4    ultimately return to the vendor?

5         A.   It depends entirely on the motivations of the

6    researcher and their definition of good.  For those who do

7    this from a place of curiosity and may not have the -- well,

8    I won't make any judgments there.  For those who do it for

9    the sake of curiosity, they may believe that the act of

10   doing the research itself is a good.  For those who are

11   involved directly in protecting individuals and the devices

12   that they use in order to protect the individuals, they

13   would claim -- and I fall into the second category -- that

14   vulnerabilities discovered should be reported provided it's

15   reasonable to do so -- not all companies have a reasonable

16   way to do that -- in order for the issues to be fixed.

17              MS. BINA:  Justin, we've been going for about

18        an hour.  So when it's convenient, I'd like a short

19        break.

20              MR. LEVINE:  Okay.  Sure, just a few minutes.

21              MS. BINA:  Okay.

22        Q.   (By Mr. Levine)  When -- when you were doing your

23   jailbreaking, you said, back in the early nineties, did you

24   do it through a vulnerability?

25              MS. BINA:  Objection, vague.

Jason Shirk Vol Non-confidential
March 23, 2020                        72

1    the record?

2              MS. BINA:  We can go off the record.

3              MR. LEVINE:  Yes, we can.

4              (Lunch recess taken.)

5              (Ms. Gorton and Mr. Wade left the

6              proceedings.)

7              (Whereupon the testimony from pages 73 to 166

8              has been marked confidential, excerpted and

9              bound separately.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25