**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 9:19-cv-81160-RS

APPLE INC.,

                Plaintiff,

   v.

CORELLIUM, LLC,

                Defendant.

**PLAINTIFF APPLE INC.'S RESPONSE TO**
**DEFENDANT CORELLIUM, LLC'S *DAUBERT* MOTION**
**TO PRECLUDE CERTAIN TESTIMONY OF DR. JASON NIEH**

# TABLE OF CONTENTS

**Page**

I. Introduction ........................................................................................................................1

II. The *Daubert* Standard .......................................................................................................3

III. Dr. Nieh is Qualified to Offer the Opinions in His Report ................................................3

IV. Dr. Nieh's Opinions ...........................................................................................................5

V. Dr. Nieh's Opinions Are Admissible .................................................................................6

    A. Dr. Nieh's Opinions Related to Corellium's Infringement of Apple's Copyrights Are Reliable ........................................................................................6

    B. Dr. Nieh's Opinions Regarding Corellium's Circumvention of Measures that Protect iOS Are Admissible ..........................................................................9

    C. Dr. Nieh's Opinions Related to Apple's Software License Agreement Are Admissible ............................................................................................................10

VI. The Probative Value of Dr. Nieh's Opinions and Testimony Vastly Outweighs Any Alleged Prejudice .....................................................................................................11

VII. Conclusion .......................................................................................................................12

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*321 Studios v. Metro Goldwyn Mayer Studios, Inc.*,
  307 F. Supp. 2d 1085 (N.D. Cal. 2004) ................................................................................10

*Adams v. Lab. Corp. of Am.*,
  760 F.3d 1322 (11th Cir. 2014) ..............................................................................................3

*Apple, Inc. v. Psystar Corp.*,
  673 F. Supp. 2d 931 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) .........................10

*Compulife Software Inc. v. Newman*,
  __ F.3d __, Nos. 18-12004, 18-12007, 2020 WL 2549505 (11th Cir. May 20,
  2020) ......................................................................................................................................7

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) ................................................................................................................3

*FCOA, LLC v. Foremost Title & Escrow Servs., LLC*,
  No. 17-23971-CIV, 2019 WL 416817 (S.D. Fla. Feb. 1, 2019) ..............................................4

*Fonar Corp. v. Domenick*,
  105 F.3d 99 (2d Cir. 1997) ......................................................................................................8

*Frey v. Accessory Brands, Inc.*,
  No. 11-60486-CIV, 2012 WL 13005551 (S.D. Fla. June 1, 2012) ..........................................4

*JCW Software, LLC v. Embroidme.com, Inc.*,
  No. 10-80472-CIV, 2012 WL 13015051 (S.D. Fla. May 29, 2012) ......................................10

*Maiz v. Virani*,
  253 F.3d 641 (11th Cir. 2001) ................................................................................................3

*Mamani v. Sánchez Berzaín*,
  No. 07-22459-CIV, 2018 WL 1090546 (S.D. Fla. Feb. 28, 2018) ........................................11

*Pacinelli v. Carnival Corp.*,
  No. 18-22731-CIV, 2019 WL 3252133 (S.D. Fla. July 19, 2019) ........................................12

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*,
  326 F.3d 1333 (11th Cir. 2003) ..............................................................................................3

*Sorrels v. NCL (Bahamas) Ltd.*,
  796 F.3d 1275 (11th Cir. 2015) ............................................................................................12

*Stenograph L.L.C. v. Bossard Assocs., Inc.*,
    144 F.3d 96 (D.C. Cir. 1998) ........................................................................................... 8

*Triad Sys. Corp. v. Se. Express Co.*,
    64 F.3d 1330 (9th Cir. 1995) .......................................................................................... 8

*United States v. Lehder-Rivas*,
    955 F.2d 1510 (11th Cir. 1992), *abrogated on other grounds by*
    *Richardson v. United States*, 526 U.S. 813 (1999) ..................................................... 12

*United States v. Nerey*,
    877 F.3d 956 (11th Cir. 2017) ...................................................................................... 11

*Ward v. Carnival Corp.*,
    No. 17-24628-CV, 2019 WL 1228063 (S.D. Fla. Mar. 14, 2019) ................................. 8

*Williams v. Illinois*,
    567 U.S. 50 (2012) .......................................................................................................... 8

**STATUTE**

17 U.S.C.
    § 1201 .............................................................................................................................. 9

**RULES**

Fed. R. Evid.
    403 ........................................................................................................................... 11, 12
    702 ............................................................................................................................. 3, 4
    703 ............................................................................................................................. 1, 8

**I.      INTRODUCTION**

Corellium's motion to exclude all of the testimony of Dr. Jason Nieh, Apple's technical expert, is legally and factually unsound and should be denied.  Although Corellium styles its request as a *Daubert* motion, it does not meaningfully address any of the bases for exclusion under *Daubert*.  Corellium does not challenge Dr. Nieh's technical expertise.  It does not dispute that his expertise will help the jury understand the technical evidence about computer technology and comprehend and resolve the disputed facts in this case.  It does not challenge Dr. Nieh's underlying methodology in analyzing the documents and source code produced by the parties.  It does not dispute the sufficiency, authenticity, or reliability of the underlying data, information, and source code relied on by Dr. Nieh in his analyses.  And it does not dispute that Dr. Nieh's opinions are the product of careful and reasoned analysis.

Instead, Corellium argues that Dr. Nieh's opinions should be excluded because: (1) Dr. Nieh, a computer scientist, did *not* offer a legal opinion on the scope of Apple's copyrights; (2) Apple's interpretation of the Digital Millennium Copyright Act ("DMCA") is purportedly incorrect; (3) Apple has not brought a breach-of-contract claim; and (4) Dr. Nieh's testimony allegedly will be unfairly prejudicial.  None of those arguments warrants the extreme remedy of exclusion.

First, Corellium faults Dr. Nieh for not opining on the "scope of the intellectual property at issue."  But the scope of Apple's copyright protection is a legal question.  As expressly permitted by Federal Rule of Evidence 703, Dr. Nieh properly considered the facts that were provided to him, such as the source code he analyzed and the versions of iOS to which it pertained, in reaching the opinions he offered.  There is nothing improper about Dr. Nieh's opinions related to Apple's copyright infringement claims.

Second, Corellium argues that Dr. Nieh's opinions regarding the Corellium Apple Product's circumvention of measures that protect iOS are irrelevant because the measures do not qualify as protection measures under the DMCA.  Corellium's legal interpretation of the DMCA is wrong.  But more importantly, this legal dispute is no basis for excluding the testimony of an expert regarding how the infringing, circumventing product works.  If Corellium believes that Apple's security features do not qualify as protection measures under the DMCA, it can make that legal argument to the Court (as it has in its motion for summary judgment).  What it cannot do is

transform that legal dispute into a basis for excluding Dr. Nieh's evidence-based opinions regarding how the Corellium Apple Product works.

Third, Corellium contends that "Dr. Nieh's opinions on Apple's Software License Agreement (SLA) are also irrelevant, as Apple has not alleged any breach of contract of the SLA." Mot. at 8. Dr. Nieh does not, however, offer any opinions *on* the SLA or how to interpret that legal instrument. Instead, Dr. Nieh offers an opinion on Corellium's circumvention of Apple's protection measure that would ordinarily present users of iOS with the SLA and require them to affirmatively agree to it before using the software—an opinion that is directly relevant to whether Corellium violates the provisions of the DMCA that prohibit trafficking in tools that circumvent measures that protect copyrighted works.

Finally, Corellium argues that the probative value of Dr. Nieh's opinions is outweighed by their purportedly highly prejudicial impact. Not so. Dr. Nieh's opinions about what the Corellium Apple Product does and how it works go to the heart of this case. This computer scientist's testimony is hardly the type of graphic or emotional evidence that could inflame the passions of a jury or otherwise unduly prejudice Corellium. In reality, the reason Corellium wants Dr. Nieh's opinions excluded is *because* his testimony is so probative of the issues in this case and is thus necessarily, and appropriately, prejudicial to Corellium—because his opinions identify the many ways in which Corellium infringes Apple's copyrights and traffics in tools that circumvent measures that protect iOS. That, of course, is not a basis for excluding an expert's testimony and is precisely why the jury is entitled to hear from Dr. Nieh, who will provide "factual, precise, explanatory, and helpful" testimony to the jury just as he previously provided to this Court. *See* ECF No. 249 at 4 (referring to ECF No. 233-1).

In a now-withdrawn portion of its motion, Corellium also argued at length regarding the timing of Dr. Nieh's final report, claiming that it was untimely and should be stricken. This is categorically false, and Corellium's motion misrepresented to the Court the facts about the parties' express agreement as well as the dates on which it produced documents to Apple. *See* Ex. A at 4–6 (showing the parties' agreement "to an extension for all supplemental reports from Dr. Nieh and Dr. Olivier to May 1, meaning no reports would be due for Dr. Nieh or Dr. Olivier on Monday, April 20 or Monday, April 27"); Ex. B ¶¶ 3–5 (Nightingale Dawson declaration regarding dates of production). After Apple raised these misrepresentations with Corellium directly, Corellium withdrew that portion of its motion. *See* Ex. A at 1–4; ECF No. 489.

2

## II. THE *DAUBERT* STANDARD

Federal Rule of Evidence 702 allows expert testimony where "the expert's scientific, technical, or other specialized knowledge will help the trier of fact *to understand the evidence or to determine a fact at issue*." Fed. R. Evid. 702(a) (emphasis added). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers in determining whether an expert's testimony should be presented to the jury. 509 U.S. 579, 589–93 (1993). "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595.

Under *Daubert*, the Court's gatekeeping function is narrow, limited to "screening out speculative, unreliable expert testimony." *Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1327 (11th Cir. 2014) (internal quotation omitted). The role of the Court is to act as a "gatekeeper" of unreliable, irrelevant evidence, not to "to supplant the adversary system or the role of the jury" in weighing evidence. *Id.* at 1311–12. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." *Id.* at 1311 (quoting *Daubert*, 509 U.S. at 596); *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

## III. DR. NIEH IS QUALIFIED TO OFFER THE OPINIONS IN HIS REPORT

Jason Nieh is one of the world's leading authorities on the technology of virtualization. *See generally* ECF No. 233-2 (*curriculum vitae*). He is a Professor of Computer Science and co-Director of the Software Systems Laboratory at Columbia University. ECF No. 233-1 ¶ 2. He has been a Professor at Columbia University since 1999. *Id.* His research spans a broad range of software systems, including operating systems, virtualization, cloud computing, and mobile computing. *Id.* Dr. Nieh has received numerous honors for his research, including being named an IEEE Fellow and ACM Fellow. *Id.* ¶ 4. He received the Sigma Xi Young Investigator Award (awarded once every two years in the physical sciences and engineering), a National Science Foundation Career Award, a Department of Energy Early Career Award, multiple IBM Faculty and Shared University Research Awards, six Google Research Awards, and various best paper awards, including from MobiCom, SIGCSE, SIGMETRICS, and SOSP—all of which were for research related to virtualization and mobile computing. *Id.* Dr. Nieh has published over one

3

hundred scholarly articles and research papers, and he is a co-author of a 2017 book which provides an introduction to virtualization. *Id.* ¶ 6. He has served on over seventy program committees, and has given keynote addresses at various conferences, including the world's leading virtualization conference. *Id.* ¶ 7. And he has been qualified as an expert witness for various technical matters in seventeen prior litigation proceedings. Ex. C, Appendix A at 2–3 (listing litigation-related experience). His testimony has never been excluded in any previous matter. *See* Ex. D at 168:9–13.

Corellium does not directly challenge Dr. Nieh's qualifications, but comments on his past litigation experience, stating that he "has never offered testimony *in a copyright case* or a case involving [DMCA] claims" and "his experience as a technical expert is limited to patent litigation." Mot. at 2 (emphasis added). To the extent Corellium intends these statements as an indirect challenge to Dr. Nieh's qualifications to provide opinions in a copyright and DMCA case about computer technology, they are not well taken. An expert is qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Corellium does not—and cannot—dispute that Dr. Nieh, a leading academic on virtualization technology, is eminently qualified under each and every one of Rule 702's five measures. *See* ECF Nos. 233-1 ¶¶ 2–8 (summary of qualifications), 233-2 (*curriculum vitae*). An expert need not have experience with the type of legal claim presented in a case. *Cf. Frey v. Accessory Brands, Inc.*, No. 11-60486-CIV, 2012 WL 13005551, at *6 (S.D. Fla. June 1, 2012) (holding a "lack of legal experience does not negate [expert's] classification as an expert" in the relevant field). What matters is whether the expert's specialized knowledge will help the factfinder understand the evidence or determine disputed facts—and Dr. Nieh easily meets that low bar here.[1] *See FCOA, LLC v. Foremost Title & Escrow Servs., LLC*, No. 17-23971-CIV, 2019 WL 416817, at *5–6 (S.D. Fla. Feb. 1, 2019) (An expert is "not necessarily unqualified simply because her experience does not precisely match the matter at hand. . . . Determining an expert's qualifications is not a stringent inquiry and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility.") (internal citations and quotations omitted).

---

[1] Indeed, Corellium must know that copyright-specific litigation experience is not a necessary qualification given that its own technical expert has never worked on a copyright case. *See* Ex. E at 50–53 (listing "Patent Investigation" and "Patent Review" as the type of previous engagements); Ex. F at 32:19–21 ("Q. Is this the first copyright case you have worked on, sir? A. Yes.").

4

## IV.   DR. NIEH'S OPINIONS

Although Corellium seeks to exclude all of Dr. Nieh's opinions, it does not tell this Court what those opinions are or provide any detail about the basis for those opinions. Apple thus provides that background here before addressing Corellium's meritless arguments for exclusion.

Dr. Nieh submitted three reports in connection with this case. On March 3, 2020, Apple served Dr. Nieh's opening report. At that time, Corellium had not yet produced the vast majority of its technical documents and source code. *See* ECF Nos. 249 (Omnibus Discovery Order), 290 (Stipulation and Order Regarding Corellium's Compliance With Omnibus Order). Dr. Nieh noted that Corellium had not yet provided "the technical documentation that [he] need[ed] to fully support [his] opinions in this report." Ex. C at 5–6. In that report, and despite not yet having the benefit of most of Corellium's relevant technical information, he described, *inter alia*:

- a brief background on the type of technology at issue in this case, *id.* at 13–24;
- the copyrighted operating system at issue in this case, iOS; and the copyrighted works, including examples of new and creative features unique to each version of iOS at issue, *id.* at 24–29, 33–79;
- the various technical control measures ("TCMs") that protect iOS, *id.* at 29–33;
- the design and operation of the Corellium Apple Product, including how it copies, modifies, displays, and distributes iOS and Apple's copyrighted visual works of art, and how it circumvents the TCMs that protect iOS, *id.* at 79–325.

On April 13, 2020, Apple served Dr. Nieh's report rebutting the opening report from Corellium's technical expert, Dr. James Olivier.[2] Dr. Nieh's rebuttal report addressed, *inter alia:*

- Dr. Olivier's identification of some open source components in iOS, and why those components had no bearing on Dr. Nieh's analysis or opinions in light of, among other things, Dr. Nieh's analysis of original Apple source code for certain creative features in each version of iOS at issue, Ex. G at 4–20;
- Dr. Olivier's incorrect understanding of the facts underlying his legal conclusion that the Corellium Apple Product represents a fair use of iOS, *id.* at 29–51;

---

[2] Dr. Nieh served a corrected version of the same report on April 20, 2020, which is the version referenced here. *See* Ex. G.

5

- Dr. Olivier's incorrect understanding of the facts underlying his legal conclusion that Corellium is not liable for violating the DMCA's anti-trafficking provisions, *id.* at 51–56.

Pursuant to the Court's order addressing supplemental reports (ECF No. 159) and the parties' agreement (*see* Ex. A), Dr. Nieh served a combined supplemental and supplemental rebuttal report on May 1, 2020. *See* Ex. H. Dr. Nieh did not include any new opinions in his combined supplemental report. Dr. Nieh did, however, include a more detailed discussion of the evidence—the vast majority of which Corellium only produced in discovery after Dr. Nieh had completed his opening report—supporting those opinions related to the Corellium Apple Product, its infringement of the copyrighted works at issue, and its circumvention of the TCMs that protect iOS. Specifically, Dr. Nieh's supplemental opinion included discussion of, *inter alia*:

- Evidence regarding how the Corellium Apple Product copies iOS, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ copy of the contents of the Apple-generated IPSW file containing iOS, Ex. H at 54–72, 124–25, 144–48, 156–59, 163–67, 172–76, 181–85, 190–94, 199–203, 211–15, 220–24;
- Evidence identifying the wallpaper works of visual art that are copied, distributed and displayed by the Corellium Apple Product and contained in virtual iOS devices running various versions of iOS, *id.* at 102–03, 133–34, 140–42, 148–51, 203–06, 229–35, 249–57;
- Evidence identifying the protected icon art copied by the Corellium Apple Product and contained in virtual iOS devices running various versions of iOS, *id.* at 229–49;
- Evidence regarding the precise patches (i.e., modifications) the Corellium Apple Product applies to various aspects of iOS to make iOS operate reliably on Corellium's platform, *id.* at 54–99, 109–14, 258–84.

## V.  DR. NIEH'S OPINIONS ARE ADMISSIBLE

Corellium seeks to exclude all of Dr. Nieh's opinions on three bases. None has merit.

### A.  Dr. Nieh's Opinions Related to Corellium's Infringement of Apple's Copyrights Are Reliable

Corellium seeks to exclude all of Dr. Nieh's opinions related to Corellium's infringement of Apple's copyrights as unreliable. Corellium does not challenge Dr. Nieh's actual analysis of the source code at issue in this case or of the Corellium Apple Product. Instead, Corellium argues

that all of Dr. Nieh's opinions related to Apple's copyright infringement claims should be excluded as unreliable because Dr. Nieh (a) did not opine on "the scope of the intellectual property at issue," and (b) did not tie the "specific code" covered by the copyright registrations at issue to Corellium's infringing acts. Mot. at 6. The law requires no such thing.

Corellium's argument is based on a fundamental misunderstanding of what constitutes a legal question versus a factual one. The scope of Apple's copyrights is a legal question, informed by underlying facts such as what portions of each of the iOS versions at issue, each of which is a derivative work, are new. *Cf. Compulife Software Inc. v. Newman*, __ F.3d __, Nos. 18-12004, 18-12007, 2020 WL 2549505, at *7 n.7 (11th Cir. May 20, 2020). Dr. Nieh thus appropriately did not consider or opine on "the scope of the intellectual property at issue," Mot. at 7—that is, what portions of each version of iOS at issue are covered by Apple's copyright registrations. In fact, to do so would be improper since "[f]iltering protectable expression from non-protectable expression is . . . a question of law or, at the very least, a mixed question of law and fact." *Compulife*, 2020 WL 2549505, at *7 n.7 (internal quotation omitted). That is why Dr. Nieh repeatedly made clear, both in his reports and during his deposition, that he was not offering—nor was he asked to offer—an opinion on the legal contours of Apple's copyright protection in iOS. *See* Ex. C at 8 ("I have not been asked to provide any opinions on the law or legal conclusions."); Ex. D at 171:3–172:6 ("I'm not a lawyer. So to the extent you're asking for a legal conclusion, I don't want to misrepresent . . . what is stated [on the face of the copyright registration]."), *id.* at 219:15–220:23 ("I don't recall providing any kind of legal opinion regarding the validity of a copyright registration").

Corellium is likewise wrong in claiming that Dr. Nieh did not tie the "specific code" covered by Apple's copyright registrations at issue to Corellium's infringing acts. First, even though the law requires no such analysis,[3] Dr. Nieh did exactly that, opining and explaining on multiple occasions that Corellium's wholesale copying of the entirety of iOS necessarily includes all of Apple's copyrighted code, including examples of specific new and creative aspects of each version of iOS that the Corellium Apple Product copies. *See* Ex. H at 54–72, 124–25, 132–228. Second, it is well settled that the law "permits an expert to explain the facts on which his or her

---

[3] The Eleventh Circuit recently clarified that a copyright holder need not "affirmatively prove that the copied portions of its code were protectable. Rather, the defendants ha[ve] the burden to demonstrate that the copied elements [a]re unprotectable." *Compulife*, 2020 WL 2549505, at *10.

7

opinion is based without testifying to the truth of those facts," which he may have obtained from other sources rather than observed firsthand. *Williams v. Illinois*, 567 U.S. 50, 57 (2012) (citing Fed. R. Evid. 703). In fact, Federal Rule of Evidence 703 specifically states that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." That is exactly what happened here. Dr. Nieh was provided with truthful information about the versions of iOS at issue, including source code that an Apple employee informed him was new in those versions of iOS, and the source code deposits for each those versions of iOS that accompanied each copyright registration. Ex. G at 8–20; Ex. H at 3, Appx. B.[4] Based on this information, including the duly issued copyright registrations that are accorded a presumption of validity, Dr. Nieh then opined on the creativity of the source code in those versions of iOS and the Corellium Apple Product's copying, modifying, displaying, and distribution of them. There is nothing unsound about that approach. *See Ward v. Carnival Corp.*, No. 17-24628-CV, 2019 WL 1228063, at *7 (S.D. Fla. Mar. 14, 2019) ("There is nothing inherently flawed about an expert relying on facts he or she assumes[.]").[5]

Notably, Corellium does not—and cannot—dispute the reliability of Dr. Nieh's methodology in analyzing the source code from the copyrighted works at issue as well as the Corellium Apple Product. In his opening report, Dr. Nieh analyzed the release notes for each version of iOS at issue to identify and opine on the creativity of the new features in each version. Ex. C at 37–38, 41–42, 43–48, 50–63, 66–69. In his rebuttal report, Dr. Nieh addressed Dr. Olivier's opinions regarding open source components of iOS by analyzing and opining on the creativity of original (non-open source) Apple source code exemplars from each version of iOS at issue. Ex. G at 8–20. Dr. Nieh concluded that this code supported his original opinion that each

---

[4] Corellium's criticism of Dr. Nieh for not using a tool to "match[] a specific version of source code to a specific version of iOS," Mot. at 6, is thus immaterial. As Corellium is aware from its extensive questioning of Dr. Nieh on this very topic at his deposition, Ex. D at 217:1–219:3, Dr. Nieh did not purport to do any such matching. Rather, his reports—like his deposition testimony—made clear that he was relying on information provided to him regarding the origin of the source code—an approach that is entirely proper under the law. *See* Fed. R. Evid. 703.

[5] In addition, it is well established that when, as here, a copyright defendant copies the entirety of a copyrighted program, "there is no doubt that protected elements of the software were copied." *Stenograph L.L.C. v. Bossard Assocs., Inc.*, 144 F.3d 96, 100 (D.C. Cir. 1998) (quoting *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1335 (9th Cir. 1995)); *Fonar Corp. v. Domenick*, 105 F.3d 99, 106 (2d Cir. 1997) (same). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g.*, Ex. H at 124.

8

version of iOS contains new and creative expression.  *Id.*  And throughout his opening and supplemental reports, Dr. Nieh analyzed how the Corellium Apple Product works and described how it copies, modifies, displays, and distributes iOS code, including examples of new and creative code expressed in each iOS version.  *See generally* Ex. C at 79–228; Ex. H at 33–258.  Corellium takes issue with none of this.  Corellium has thus failed to identify any basis to exclude Dr. Nieh's opinions regarding Apple's copyright infringement claims.

## B. Dr. Nieh's Opinions Regarding Corellium's Circumvention of Measures that Protect iOS Are Admissible

Corellium seeks to exclude as irrelevant all of Dr. Nieh's opinions related to Corellium's circumvention of measures that protect iOS.  Corellium's argument is premised on its own partisan view that the DMCA provisions at issue here—17 U.S.C. § 1201(a)(2) and (b)—do not apply to Corellium's conduct.  Those provisions prohibit the trafficking of tools that circumvent technical control measures that "effectively protect[] a right of a copyright owner" or "effectively control[] access to" a copyrighted work.  17 U.S.C. § (a)(2), (b).  The statute goes on to define an effective control as one that, "in the ordinary course of its operation," controls access to or protects the copyright owner's rights in a copyrighted work.  17 U.S.C. § (a)(2), (b).  According to Corellium, iOS is not protected by any such technical measures and, as a result, Dr. Nieh's opinions regarding the Corellium Apple Product's circumvention of any such measures must be excluded.

For two separate and independent reasons, the Court should reject Corellium's argument.  First, the proper interpretation of a federal statute has no bearing on whether Dr. Nieh's opinions are admissible.  And with respect to those factors that do bear on the admissibility of Dr. Nieh's opinions regarding circumvention, Corellium is silent.  Corellium does not challenge his qualifications to opine on the Corellium Apple Product's circumvention of the technical measures that protect iOS.  Corellium does not challenge the methods Dr. Nieh used to analyze the Corellium Apple Product's circumvention of the technical measures that protect iOS.  And Corellium does not challenge the reliability of Dr. Nieh's opinions regarding the Corellium Apple Product's circumvention of the technical measures that protect iOS.  These failures alone are fatal to Corellium's request to exclude Dr. Nieh's opinions related to Apple's DMCA claim.

Even taken on their own terms, Corellium's arguments are wrong.  Under the DMCA, a technical measure effectively controls access to or protects rights in a copyrighted work if it prevents intrusion by an "ordinary consumer."  *JCW Software, LLC v. Embroidme.com, Inc.*, No. 10-80472-CIV, 2012 WL 13015051, at *10 (S.D. Fla. May 29, 2012).  It is thus immaterial that

9

ordinarily unexecutable IPSW files, which are the files in which Apple distributes iOS, are publicly available. What matters for purposes of the DMCA is that iOS ordinarily cannot be installed, run, or accessed on non-Apple hardware—that is, not without circumvention of Apple's technical control measures. ECF No. 455 ¶¶ 13–23. That alone is sufficient to demonstrate as a matter of law that Apple's TCMs effectively control access to and protect Apple's rights in iOS. *See Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 940–42 (N.D. Cal. 2009) (holding that TCM preventing installation of Mac OS X on non-Apple computers was an effective protection measure), *aff'd*, 658 F.3d 1150 (9th Cir. 2011); *see also 321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085, 1097 (N.D. Cal. 2004) (rejecting argument that TCM was not "effective" because DVD's encrypted data could be copied because copying the encrypted data "is not particularly useful, as any copy made without circumventing [the TCM] could not be accessed or viewed") (internal quotations omitted); *JCW Software*, 2012 WL 13015051, at *10 (theoretical ability to access work in a cumbersome way unlikely to be discovered by ordinary consumers did not render controls ineffective).[6]

### C. Dr. Nieh's Opinions Related to Apple's Software License Agreement Are Admissible

Corellium's final argument regarding the substance of Dr. Nieh's opinions takes aim at his references to Apple's Software License Agreement. Corellium argues that "Dr. Nieh's opinions on Apple's Software License Agreement (SLA) are also irrelevant, as Apple has not alleged any breach of contract of the SLA." Mot. at 8. But Dr. Nieh has not offered an opinion on any purported breach of Apple's SLAs or the interpretation of those contracts. Rather, the opinion Dr. Nieh has offered related to the SLA addresses the *technical* measure—known as the "Buddy" program—that in the ordinary course presents users of iOS with the Apple SLA and requires them to agree to it to use iOS. Dr. Nieh's analysis and opinion addresses the Corellium Apple Product's circumvention of the Buddy program, which allows the Corellium Apple Product to access and run iOS without the SLA ever being presented. *See* Ex. C at 26–28, 229–31, 235–36, 240–41, 245–47, 251–52, 256–58, 262–63, 267–69, 273–74, 278–79, 283–85, 289–90; Ex. H at 14, 82,

---

[6] Corellium's factual assertion that some of the TCMs analyzed by Dr. Nieh "have no effect whatsoever on access . . . to iOS" has no bearing on the admissibility of Dr. Nieh's opinions under *Daubert*. It is also incorrect, as Apple explained at length in its motion for partial summary judgment on its claim under the DMCA. *See* c

262, 273–284.[7] That opinion is directly relevant to Apple's anti-trafficking claim under the DMCA. And Corellium does not challenge Dr. Nieh's qualifications to give that opinion, the methodology he used to reach that opinion, or the reliability of that opinion. Corellium's challenge to Dr. Nieh's opinion related to the SLA must therefore be denied.

## VI. THE PROBATIVE VALUE OF DR. NIEH'S OPINIONS AND TESTIMONY VASTLY OUTWEIGHS ANY ALLEGED PREJUDICE

Despite its failure to identify any sound basis for excluding any one of Dr. Nieh's opinions under *Daubert*, Corellium urges this Court to exclude Dr. Nieh's testimony anyway under Federal Rule of Evidence 403. Under Rule 403, a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The Eleventh Circuit has described exclusion under Rule 403 as an "extraordinary remedy" that should only be applied "sparingly." *United States v. Nerey*, 877 F.3d 956, 975 (11th Cir. 2017); *accord Mamani v. Sánchez Berzaín*, No. 07-22459-CIV, 2018 WL 1090546, at *8 (S.D. Fla. Feb. 28, 2018). Corellium has not come close to justifying its request for the extraordinary remedy of exclusion under Rule 403.

Corellium's argument for exclusion under Rule 403 is nothing more than a rehash of its argument for why Dr. Nieh's opinions related to Corellium's infringing conduct should be excluded. Corellium seems to be saying that, because Dr. Nieh did not offer an opinion on the legal impact or scope of Apple's registrations for the copyrighted works at issue, his opinions regarding how the Corellium Apple Product operates are of "low probative value." Mot. at 14. Corellium does not explain why that is the case. Nor could it. Dr. Nieh's opinions are unquestionably probative of the highly technical, factual issues at the heart of this case—what the Corellium Apple Product does and how it does it. Corellium does not dispute that the virtualization technology utilized by the Corellium Apple Product is beyond the common knowledge of the average lay person, or that Dr. Nieh's deep technical knowledge regarding virtualization will

---

[7] In fact, Corellium even concedes that the SLA is ordinarily presented to an iOS user, but is not presented on the Corellium Apple Product. *See* Mot. at 9 ("[Presentation of the SLA] only happens on approved Apple hardware, not on Corellium's accused product.").

11

therefore assist the jury.[8]  This Court itself previously recognized the probative value of Dr. Nieh's analysis, referring to it as "factual, precise, explanatory, and helpful to the Court's decision-making process," and based "on facts and information."  ECF No. 249 at 4 (referring to ECF No. 233-1).  The jury is entitled to the same benefit of Dr. Nieh's informed and helpful opinions.

Similarly absent from Corellium's motion is any explanation for why the admission of Dr. Nieh's testimony would result in unfair prejudice, much less prejudice that would "substantially outweigh" the probative value of that testimony.  Indeed, courts rarely invoke Rule 403 "because the federal rules favor admission of evidence and in part because relevant evidence is inherently prejudicial to a defendant."  *Pacinelli v. Carnival Corp.*, No. 18-22731-CIV, 2019 WL 3252133, at *6, n.6 (S.D. Fla. July 19, 2019); *see also Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1285 (11th Cir. 2015) ("There is a difference between unfairly prejudicial evidence, which may be excluded under Rule 403, and evidence that is 'simply adverse to [an] opposing party.'"); *United States v. Lehder-Rivas*, 955 F.2d 1510, 1516 (11th Cir. 1992) ("The major function of Rule 403 is limited to excluding matters of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.") (internal quotations omitted), *abrogated on other grounds by Richardson v. United States*, 526 U.S. 813, 815 (1999).  Ultimately, Corellium's dissatisfaction with Dr. Nieh's opinions is not based on any infirmity in the opinions themselves but rather their adversity to Corellium.  That is not a basis to exclude them under Rule 403, or any other Rule.

## VII. CONCLUSION

For the foregoing reasons, Apple respectfully requests that this Court deny Corellium's motion to exclude the opinions and testimony of Dr. Jason Nieh.

---

[8] In fact, far from questioning Dr. Nieh's technical expertise or value to the jury, Corellium's own technical expert, Dr. Olivier, relied on Dr. Nieh's book about virtualization to support Dr. Olivier's assertions about virtualization technology.  ECF No. 449-2 ¶ 48, n. 35–36.

| | |
|---|---|
| Dated: May 26, 2020 | Respectfully Submitted, |
| | |
| | s/ Martin B. Goldberg |
| Michele D. Johnson* | |
| michele.johnson@lw.com | Martin B. Goldberg |
| LATHAM & WATKINS LLP | Florida Bar No. 0827029 |
| 650 Town Center Drive, 20th Floor | mgoldberg@lashgoldberg.com |
| Costa Mesa, CA 92626 | rdiaz@lashgoldberg.com |
| (714) 540-1235 / (714) 755-8290 Fax | Emily L. Pincow |
| | Florida Bar No. 1010370 |
| Sarang Vijay Damle* | epincow@lashgoldberg.com |
| sy.damle@lw.com | gizquierdo@lashgoldberg.com |
| Elana Nightingale Dawson* | LASH & GOLDBERG LLP |
| elana.nightingaledawson@lw.com | 100 Southeast Second Street |
| LATHAM & WATKINS LLP | Miami, FL 33131 |
| 555 Eleventh Street NW, Suite 1000 | (305) 347-4040 / (305) 347-4050 Fax |
| Washington, DC 20004 | |
| (202) 637-2200 / (202) 637-2201 Fax | |
| | |
| Andrew M. Gass* | |
| andrew.gass@lw.com | |
| Joseph R. Wetzel* | |
| joe.wetzel@lw.com | |
| LATHAM & WATKINS LLP | |
| 505 Montgomery Street, Suite 2000 | |
| San Francisco, CA 94111 | |
| (415) 391-0600 / (415) 395-8095 Fax | |
| | |
| Jessica Stebbins Bina* | |
| jessica.stebbinsbina@lw.com | |
| LATHAM & WATKINS LLP | |
| 10250 Constellation Blvd., Suite 1100 | |
| Los Angeles, CA 90067 | |
| (424) 653-5500 / (424) 653-5501 Fax | |
| | |
| Gabriel S. Gross* | |
| gabe.gross@lw.com | |
| LATHAM & WATKINS LLP | |
| 140 Scott Drive | |
| Menlo Park, CA 94025 | |
| (650) 463-2628 / (650) 463-2600 Fax | |

*Admitted pro hac vice

*Attorneys for Plaintiff* APPLE INC.