UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:19-cv-81160-RS

APPLE INC.,

    Plaintiff,

v.

CORELLIUM, LLC,
    Defendant.

                              /

**DEFENDANT CORELLIUM, LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF CLARK ASAY AND ALEXANDER STAMOS**

Defendant Corellium, LLC ("Defendant"), by and through undersigned counsel, submits this Opposition to Plaintiff Apple, Inc.'s ("Apple") Motion to Exclude Legal Opinions and Corresponding Testimony of Corellium's Experts Clark Asay and Alexander Stamos, ECF No. 451 ("Motion").

## BACKGROUND

Prof. Clark Asay holds a JD from Stanford Law School, a Masters in Philosophy from University of Cambridge. *See* ECF No. 451, Ex. B at ¶ 3. He is currently a tenured professor of law at the J. Reuben Clark Law School at Brigham Young University, where he has taught law since 2014. *Id.* at ¶ 1. His scholarly research focuses on intellectual property issues, including copyright. Prior to joining the BYU law faculty, he held the position of Visiting Assistant Professor from 2012-2014 at Penn State Law in University Park, Pennsylvania. *Id.* He has published numerous scholarly works on topics in copyright law (including the intersection of software and copyright law) in law review journals such as the Harvard Journal of Law & Technology, Stanford Law Review Online, Emory Law Journal, Stanford Technology Law Review, and has a forthcoming study of fair use considerations to be published in the Boston College Law Review. *Id.* at ¶ 86, 93. Prior to his work in academia, Prof. Asay worked as an intellectual property attorney at the law firm of Wilson Sonsini Goodrich & Rosati, and as in-house counsel at Amazon's Lab126. *Id.* at ¶ 1.

Prof. Asay submitted his opening report, executed February 24, 2020, setting forth his analysis of policy considerations relevant to the technologies (*See* ECF No. 451, Ex. B), and a rebuttal report executed April 13, 2020 (*See* ECF No. 451 Ex. C) addressing the opinions offered by Apple's experts Dr. Jason Nieh and Dr. Michael Siegel. Apple took Prof. Asay's deposition on April 22, 2020. *See* ECF No. 451, Ex. A).

Prof. Alexander Stamos is an expert in the field of security research, who submitted his opening report (executed February 28, 2020) in which he opined on the background of the security research industry, and the role of Corellium's product in security research and its benefits to Apple

users globally.[1] *See, e.g.*, ECF No. 451 Ex. E at ¶ 2, 11. Apple took Prof. Stamos's deposition on April 24, 2020. *See* ECF No. 451, Ex. D.

As explained below, the Court should deny Apple's Motion, where Prof. Asay is wholly qualified to offer his opinions, and both Asay and Stamos intend to offer expert opinion testimony that is admissible.

## ARGUMENT

**A.  Prof. Clark Asay**

    **1.  Prof. Asay is properly qualified to offer his opinions at trial.**

Apple faults Prof. Asay as lacking "qualifications to testify competently on any admissible subjects." ECF No. 451 at 5. But experts merely need minimal qualifications; objections to the degree or level of expertise "typically go to the credibility and weight of the expert's opinion, not the admissibility of it." *Carideo v. Whet Travel, Inc.*, No. 16-23658-CIV, 2018 WL 1367444, at *8 (S.D. Fla. Mar. 16, 2018). "The test is 'whether the subject matter of the witness's proposed testimony is sufficiently within the expert's expertise.'" *Id.* (*quoting In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 711 F. Supp. 2d 1348, 1367 (M.D. Ga. 2010); *see also Latele Television, C.A. v. Telemundo Commc'ns Grp.*, LLC, No. 12-22539-CIV, 2014 WL 7150626, at *4 (S.D. Fla. Dec. 15, 2014). "Courts have liberally interpreted the specialized knowledge requirement, and have stated that this policy of liberal admissibility of expert testimony "extends to the substantive as well as the formal qualification of experts." *Carideo*, 2018 WL 1367444 at *9 (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994).

---

[1] Prof. Stamos also submitted a rebuttal report (executed April 13, 2020) in which he responded to the opinions of Apple's expert Dr. Michael Siegel, but Apple has not moved to preclude him from testifying on the particular content of that report.

Prof. Asay easily meets this threshold. His academic focus on intellectual property (including copyright law), as well as his practical experience as an intellectual property attorney, provides him with the specialized knowledge of the relevant public policies and legal principles sufficient to qualify him as an expert in the present case. *Id.* at 8 (noting that "basis of this specialized knowledge can be practical experience as well as academic training and credentials.") (internal quotations omitted). Prof. Asay intends to offer opinion testimony at trial about the relationship between Corellium's technology and the public policies underlying certain issues in copyright law (such as the factors underlying the fair use defense, copyright misuse, and the policies at issue when considering the intent of the protections afforded by the DMCA). These public policies are "not within the common knowledge of the average layman", such that Prof. Asay's specialized knowledge of these relevant public policies will assist the jury to understand the policy context that applies to the technologies here. *See Carideo*, 2018 WL 1367444, at *8.

Further, Prof. Asay's use of the Corellium Apple Product (and his observation of videos demonstrating others' use of the product) provides him with the requisite direct experience and context to provide opinion testimony regarding the relationship between the use of the technologies at issue and public policies underlying the relevant copyright principles here. *See Galarza v. Carnival Corp.*, No. 15-24380-CIV, 2016 WL 7507883, at *5 (S.D. Fla. Aug. 8, 2016) (noting that Federal Rules allow a witness "to testify in the form of an opinion if it is 'rationally based on the witness's perception . . . [and] helpful to clearly understanding the witness's testimony or to determining a fact in issue . . . ."); *see also Cruz v. United States*, No. 12-21518-CIV, 2013 WL 246763, at *5 (S.D. Fla. Jan. 22, 2013) (permitting treating physicians to offer lay witness testimony despite excluding their testimony as expert opinions).

### 2. Prof. Asay will testify to factual issues of policy considerations and their relation to the technology here; he will not purport to state what the law is.

Apple asserts that Eleventh Circuit law precludes testimony from a "copyright law expert." ECF No. 451 at 5. But Apple is wrong. Courts in this Circuit admit expert testimony regarding copyright law for several purposes, including the issue of "substantial similarity" that is relevant to infringement. *See Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1257 (11th Cir. 1999). Case law further establishes the admissibility of expert testimony that addresses governing copyright law precedent, and the application of such precedent to the issue of substantial similarity between works in dispute. *See Corwin v. Walt Disney Co.*, No. 602CV1377ORL19KRS, 2004 WL 5486639, at *10 (M.D. Fla. Nov. 12, 2004) (noting that expert "report does not constitute a statement of law to the jury because the report provides information that is helpful beyond a simple statement as to the verdict that should be reached.").

Recognizing that "experts must walk a fine line: they must give their expert opinions on ultimate issues of fact, while explaining their own understandings of the law, but without purporting to give expert opinions as to what the law is," courts in this circuit allow expert opinion testimony on policies and procedural issues as they relate to technical subject matter. *Arlaine & Gina Rockey, Inc. v. Cordis Corp.*, No. 02-22555-CIV, 2004 WL 5504978, at *24–25 (S.D. Fla. Jan. 5, 2004); *Ass Armor, LLC v. Under Armour, Inc.*, No. 15-CV-20853-CIV, 2016 WL 7156092, at *3 (S.D. Fla. Dec. 8, 2016) (noting that admissible "testimony by a PTO expert may include information regarding PTO procedures and policies and practices"). Similarly, courts admit expert testimony on issues such as Copyright Office practices and procedures. *See Team Play, Inc. v. Boyer*, 391 F. Supp. 2d 695, 700 (N.D. Ill. 2005) (admitting, for summary judgment, expert testimony regarding effect of copyright registration); *accord Pods Enterprises, Inc. v. U-Haul Int'l, Inc.*, No. 812CV01479T27MAP, 2014 WL 12628606, at *1 (M.D. Fla. July 7, 2014) (allowing

5

expert testimony "*generally* about practices and procedures of the Patent and Trademark Office, as well as the process for examining trademark applications.") (emphasis in original). Courts in other circuits, particularly in disputes involving software, have allowed expert testimony on the "limited nature of the protection afforded by copyrights in the software context." *See In re Data Gen. Corp. Antitrust Litig.*, 529 F. Supp. 801, 816 (N.D. Cal. 1981*), aff'd in part, rev'd in part on other grounds*, 734 F.2d 1336 (9th Cir. 1984).

Apple suggests that Prof. Asay's report comprises "legal briefs" that address "ultimate legal issues in this case." ECF No. 451 at 1–2, 5. This mischaracterizes Prof. Asay's intended testimony. In fact, his testimony will address his understanding of the policies underlying governing legal precedent and will relate those policies to the use of the technology at issue here. This is admissible expert testimony.[2] *See Corwin*, 2004 WL 5486639 at *10 (admitting, at summary judgment, expert testimony that addressed governing Eleventh Circuit precedent as applied to substantial similarity between works in dispute, where that "report [did] not constitute a statement of law to the jury because the report provides information that is helpful beyond a simple statement as to the verdict that should be reached.").

Apple also gets it wrong as to Prof. Asay's rebuttal of the Nieh and Siegel reports. ECF No. 451 at 6–7. His critique of both Nieh and Siegel is that each expert failed to grapple with certain policy considerations, where such considerations are reflected in case law. Prof. Asay's concern with Dr. Nieh's conclusions lie, in part, on Nieh's failure to contend with the nuanced

---

[2] Apple also implies that Prof. Asay has wrongly omitted discussion of certain out-of-circuit case law that finds no need for violations of Digital Millennium Copyright Act to have a nexus of a protected right under the Copyright Act." ECF No. 451. at 6, n.1. But Apple's critique would only be relevant if experts were permitted to opine on what the law is. Prof. Asay does not intend to offer testimony on what the law is; it will instead address underlying policy principles as they relate to the technologies at issue.

6

scope of copyright protection that applies in the software context. Such testimony has been allowed previously in another circuit. *See In re Data Gen. Corp. Antitrust Litig.*, 529 F. Supp. 801, 816 (N.D. Cal. 1981*), aff'd in part, rev'd in part on other grounds*, 734 F.2d 1336 (9th Cir. 1984) (allowing expert testimony on the "limited nature of the protection afforded by copyrights in the software context."). Prof. Asay's critiques Prof. Siegel's use of a personalized definition of "good faith security research" that is not anchored in the policies underpinning the applicable statutes. Expert testimony regarding such policy considerations is admissible.

Prof. Asay's testimony will also assist the jury to understand the policy contexts that are relevant to the technologies at issue, where it would come after the testimony of technical experts and fact witnesses, and thus the jury would have proper factual context to interpret and apply Prof. Asay's testimony in deliberations. *Arlaine & Gina Rockey, Inc.,* 2004 WL 5504978, at *24–25 ("[An expert's] testimony, preceded by the testimony of the scientific experts on [applicable] technology, may assist the jury in understanding the evidence and determining the facts in issue.").

**B.      Prof. Alexander Stamos**

Apple grossly mischaracterizes Prof. Stamos's opinions and his intended testimony by cherry-picking a handful statements from a few paragraphs in the body of his opening report. ECF No. 451 at 7–9. But even a cursory review of Prof. Stamos's opening report demonstrates that his opinions and intended testimony are directed to factual issues such as the nature of computer security research, Apple's historical and present approach to security research, how Corellium's product is used for such security research, and his conclusions on how Corellium's product relates to his understanding of various elements of the fair use factors, as well as the factors underlying Apple's DMCA claims. Prof. Stamos will thus offer at trial "expert opinions on ultimate issues of fact, while explaining [his] own understandings of the law, but without purporting to give expert

7

opinions as to what the law is", which is precisely the role of admissible expert testimony. *See Arlaine & Gina Rockey, Inc.*, 2004 WL 5504978, at *24–25.

Apple argues that Prof. Stamos should be precluded from offering testimony about his own understanding of the intent of the DMCA. ECF No. 451 at 9. But Prof. Stamos is not only permitted, but in fact must be prepared to testify as to <u>his understanding</u> of the intent of the DMCA, as it relates to his conclusions regarding the use of the Corellium Product for security research. This follows where that understanding is among the "basis and reasons for" his opinion. Fed. R. Civ. P. 26(a)(2)(B)(i). But Prof. Stamos does not, however, intend to state <u>what the law is,</u> and Apple is free to cross-examine Prof. Stamos about his understanding of the intent of the DMCA, just as it did at his deposition. *See* ECF No. 451 at 9 (citing Ex. D to ECF No. 451). And Apple faces no prejudice should Prof. Stamos testify about issues at trial on which Apple has examined Prof. Stamos at deposition. *See Mesi v. First Liberty Ins. Corp.*, No. 8:12-CV-1597-T-35EAJ, 2014 WL 12625772, at *2 (M.D. Fla. Jan. 13, 2014) (holding that risk of any prejudice from expert testimony was cured where party had opportunity to take said experts' depositions).

It would also be unduly prejudicial to Corellium if Apple's expert, Dr. Siegel, is permitted to offer opinion testimony on the meaning of "good faith security research" that is unrebutted by Prof. Stamos. This would be particularly prejudicial where Siegel's definition literally purports to state what the law is, but does so based on his peculiar, personal definition of good faith security research that contradicts the applicable statutory exemption set forth at 17 U.S.C. § 1201(j), and where Prof. Stamos is prepared to offer rebuttal testimony addressing the factual shortcomings of Dr. Siegel's analysis, in which important policy context for Prof. Stamos's rebuttal derives from analysis set forth in his opening report. *See generally* ECF No. 451, Ex. E. If Prof. Stamos is not permitted to testify regarding practical aspects of the DMCA, Dr. Siegel's testimony would carry

a significant risk of confusing the jury as to the nature of what comprises "good faith security research," which is relevant to one of the DMCA exemptions that a jury can find applies to Corellium, thus supporting a verdict in favor of Corellium as to certain of Apple's claims.

To resolve any doubt regarding Prof. Stamos's intended testimony at trial, Corellium hereby withdraws the following from Prof. Stamos's February opening report: the first sentence of paragraph 39; the last sentence of paragraph 41; the word "transformative" from the first sentence of paragraph 42; paragraph 43; the last two sentences of paragraph 44; the phrase " which weighs in favor of fair use" from the last sentence of paragraph 45; the phrase "find fair use" from the last sentence of paragraph 48; paragraph 49; the last sentence of paragraph 51; and the last sentence of paragraph 55.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion to Exclude Legal Opinions and Corresponding Testimony of Corellium's Experts Clark Asay and Alexander Stamos.

Dated: May 26, 2020
                        COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant CORELLIUM, LLC*

Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 612-3459
Facsimile (561) 683-8977
Primary e-mail: jonathan.vine@csklegal.com
Primary e-mail: justin.levine@csklegal.com
Primary e-mail: lizza.constantine@csklegal.com
Primary e-mail: michael.boehringer@csklegal.com

By: s/ *Justin B. Levine*
JONATHAN VINE
Florida Bar. No.: 10966
JUSTIN B. LEVINE
Florida Bar No.: 106463
LIZZA C. CONSTANTINE
Florida Bar No.: 1002945
MICHAEL A. BOEHRINGER
Florida Bar No.: 1018486

and

HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, NY 10017
Tel: (212) 851-6821
David L. Hecht *pro hac vice*
Email: dhecht@hechtpartners.com
Maxim Price *pro hac vice*
Email: mprice@hechtpartners.com
Conor McDonough *pro hac vice*
Email: cmcdonough@hechtpartners.com
Minyao Wang *pro hac vice*
Email: mwang@hechtpartners.com

CASE NO.: 9:19-CV-81160-RS

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 26, 2020, a true and correct copy of the foregoing has been transmitted by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

Dated: May 26, 2020                                  /s/ *Justin B. Levine*
                                                                Justin B. Levine

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX