DEX  2

FOR THE CASE OF

# Apple vs. Corellium, et al.

TRANSCRIPT OF

# Ivan Krstic

March 19, 2020

**Martell Associates**

PO Box 172718

Tampa, FL 33672

800-636-1136

This transcript is intended for your law firm's own use. If you wish to share this transcript with an outside law firm, log back in to your CasePlannerPro account and click the **Share** button.

For questions, call 800-636-1136
or send an email to info@martellassociates.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA


APPLE INC.,

           Plaintiff,

vs.                                    No. 9:19-cv-81160-RS

CORELLIUM, LLC,

           Defendants.

_____/



DEPOSITION OF IVAN KRSTIC

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY



           Date:        Thursday, March 19, 2020

           Time:        10:05 a.m.

           Location:    All parties via
                        videoconference


           Stenographically reported by:

                        Nina Pavone, CSR
                        License No. CSR-7802




                        *   *   *   *

```
 1                        APPEARANCES

 2       For the Plaintiff:

 3               LATHAM & WATKINS LLP
                 BY:  GABRIEL S. GROSS,
 4                    JEREMIAH EGGER,
                      ATTORNEYS AT LAW
 5               140 Scott Drive
                 Menlo Park, CA 94025
 6               650.463.2628
                 gabe.gross@lw.com
 7               (Via videoconference)

 8

 9       For the Defendants:

10               COLE, SCOTT & KISSANE, P.A.
                 BY:  JONATHAN VINE,
11                    LIZZA CONSTANTINE,
                      ATTORNEYS AT LAW
12               222 Lakeview Avenue, Suite 120
                 West Palm Beach, FL  33401
13               561.383.9222
                 jonathan.vine@csklegal.com
14               (Via videoconference)

15       Also present:

16               Chris Wade, Amanda Gorton, Jess Koehler
                 (Via videoconference)
17

18

19

20

21

22

23

24

25
```

Page 3

1          I N D E X   O F   E X A M I N A T I O N S

2                                                          PAGE

3    EXAMINATION BY MR. VINE                                  6

4    EXAMINATION BY MR. GROSS                               212

5    FURTHER EXAMINATION BY MR. VINE                        223

6

7              I N D E X   O F   E X H I B I T S

8

9

10      NUMBER          DESCRIPTION                         PAGE

        Exhibit 1       ████████████████████                 32
11                      ███████████████████

12      Exhibit 2       ████████████████████                 35
                        ████████████████
13                      █████████████████
                        ██████████████████
14
        Exhibit 3       ████████████████████                 38
15                      ████████████████
                        ███████████████████
16

17      Exhibit 4       ████████████████████                 41
                        █████████████████
18                      ████████████████████

19      Exhibit 5       ████████████████████                 73
                        ████████████████
20                      ███████████████████

21      Exhibit 6       Twitter messages                    116

22      Exhibit 7       ████████████████████                135
                        ████████████
23                      ██████████████

24

25



Page 4

1                    INDEX OF EXHIBITS (CONTINUED)

2        NUMBER              DESCRIPTION                        PAGE

3
         Exhibit 8                                             136
4

5
         Exhibit 9                                             137
6

7
         Exhibit 10          E-mails between Chris Wade and    138
8                            Jon Andrews, Bates stamped
                             CORRELLIUM-001478
9
         Exhibit 11                                            140
10

11
         Exhibit 12                                            153
12

13
         Exhibit 13                                            155
14

15
         Exhibit 14                                            158
16

17
         Exhibit 15                                            160
18
         Exhibit 16                                            161
19

20

21       Exhibit 17                                            163
22

23       Exhibit 18                                            170
24

25



```
 1                 INDEX OF EXHIBITS (CONTINUED)

 2        NUMBER           DESCRIPTION                    PAGE

 3
          Exhibit 19       ████████████████████████       178
 4                         ████████████████████
                           ████████████████
 5
          Exhibit 20       ████████████████████████       180
 6                         ████████████████████████

 7
          Exhibit 21       E-mail between                 188
 8                         chris@corellium.com and
                           betz@apple.com, Bates stamped
 9                         CORELLIUM-001448

10        Exhibit 22       ████████████████████████       191
11                         ████████████████

12        Exhibit 23       Apple Amended Responses To     206
                           Corellium's First Set of
13                         Interrogatories

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                            -oOo-

2                         PROCEEDINGS

3              THE REPORTER:  Before we proceed, I will ask

4     counsel to agree on the record that under the current

5     National Emergency, due to COVID-19, that there is no

6     objection to this deposition officer administering

7     the oath to the witness via remote video conference.

8     Please state your agreement on the record.

9              MR. VINE:  No objection.

10             MR. GROSS:  No objection from the plaintiff.

11                          --oOo--

12                        IVAN KRSTIC,

13             having been first duly sworn by the

14             Certified Shorthand Reporter to tell

15             the truth, the whole truth, and nothing

16             but the truth, testified as follows:

17                        EXAMINATION

18    BY MR. VINE:

19        Q. Mr. Krstic, is that how I pronounce your last

20    name?

21        A. Almost.  It's like the cur in current

22    followed by stitch like stitching.  So Krstic.

23        Q. Perfect.  So my name is Jonathan Vine.  I'm

24    from the law firm of Cole, Scott & Kissane.  I have

25    the privilege of representing Corellium.
```

1          You understand you're here pursuant to a

2     subpoena?

3          A. I believe so.

4          Q. Have you ever sat for a deposition before?

5          A. I have not.

6          Q. Okay.  I'm going to give you some ground

7     rules that we all have as typical for a deposition.

8     I'm going to start with the following.

9          One, all your responses need to be verbal as

10    the court reporter can't take down non-verbal

11    responses.

12          Is that acceptable?

13         A. Of course.

14         Q. So nods and gestures or anything not audible,

15    does that make sense?

16         A. Yeah.

17         Q. Okay.  From time to time, you're going to

18    hear objection from counsel and -- counsel for Apple.

19    You're still required to answer the question unless

20    he directs you not to answer.

21          I'm not going to have a debate with Mr. Gross

22    today about those objections.  We can just move on

23    and he and I or our two friends will have that issue

24    addressed on a different day.

25          It's also important that you wait for me to

```
1    complete my question especially because we're doing

2    this by video and there's a bit of a lag time.  The

3    court reporter can't take the two of us speaking down

4    at the same time.

5         Do you understand that?

6         A. Yes.

7         Q. If you do not understand my question please

8    ask me to rephrase it.  If you don't ask me to

9    rephrase it I'm going to assume you understood the

10   question.  Okay?

11        A. Yes.

12        Q. And of course, if you need a break at any

13   point, feel free to let me know or your counsel know

14   and we're happy to take that break.

15        A. Thank you.  I appreciate that.

16        Q. Okay.  How did you prepare today for your

17   deposition?

18        MR. GROSS:  Let me object.

19        Mr. Krstic, let me interpose an objection to

20   remind you when you answer Mr. Vine's question you

21   should not reveal the content of any communications

22   you had with your counsel, but if you can answer

23   without doing that, you may go ahead.

24   BY MR. VINE:

25        Q. And let me add to that, just so it's clear.
```

1    Mr. Gross is correct, I have no desire to get any

2    privileged communications.  So my questions are not

3    for that.

4         Certainly you can tell me if you met with

5    your counsel, but you can't tell me about the

6    communication with your counsel.

7         Does that make sense?

8         A. Yes.  Thank you.  I met with counsel

9    yesterday.

10        Q. Yesterday?

11        A. Yes.

12        Q. Okay.  And was that the first time you met

13   with counsel to prepare for your deposition?

14        A. Yes.

15        Q. Okay.  Had you ever spoken to any lawyer from

16   Latham & Watkins to prepare yourself for your

17   deposition prior to yesterday?

18        A. I don't believe so.

19        Q. Okay.  Have you spoken to anybody from

20   Apple's legal department prior to yesterday to

21   prepare for your deposition?

22        A. No, I don't believe so.

23        Q. Okay.  When did you first learn that you were

24   required to be deposed?

25        A. I don't recall the exact date, but I think it

1    was perhaps a month ago in the context of just

2    scheduling available dates.

3        Q. Okay.  Did you review any documents in

4    preparation for your deposition?

5        A. Yes, I have.

6        Q. Okay.  What documents did you review?

7        A. I don't recall any of the exact documents.

8    We reviewed a number of them, but generally, the

9    categories were things like e-mails and some text

10   message exchanges.

11       Q. Okay.  Did you receive copies of the exhibits

12   that we intend to potentially use at today's

13   deposition?

14            MR. GROSS:  Objection.  Foundation.

15   BY MR. VINE:

16       Q. You can answer.

17       A. I'm not entirely sure.  I received some

18   documents, but I'm not sure whether they are the

19   complete set you are going to use today.

20       Q. Okay.  Fair enough.

21       A. So -- by the way, if I may, am I supposed to

22   see you on video?

23       Q. Yes.  Can you see me now?

24       A. No.  I see -- oh, okay.  There we go.  Zoom

25   was hiding you.  I see you now.  Perfect.  Thank you.

1       Q. Okay.  Did you review text messages with

2    Chris Wade?

3       A. Yes.

4       Q. Okay.  Did you review text messages in

5    relation to the acquisition of Corellium?

6       A. Yes.

7          MR. GROSS:  Objection.  Vague.  Foundation.

8    BY MR. VINE:

9       Q. You can answer.

10      A. Yes, I believe so.

11      Q. Okay.  I want to get some background

12   information.  If you could give me a brief

13   description of your educational background, I'd

14   greatly appreciate it.

15      A. Certainly.  I went to high school in America

16   in Michigan.  I then went to college at Harvard

17   University where I decided to drop out to join an

18   education nonprofit and that terminated my formal

19   education.

20      Q. Did you graduate from the school in Michigan?

21      A. I have, yes.

22      Q. What school was that?

23      A. It was Cranbrook of Kingswood High School.

24      Q. After high school, did you go to college?

25      A. Yes.  Sorry.  I might have not been clear.

1    After completing high school I went to Harvard

2    University for undergrad, but did not complete that

3    degree.

4         Q. Understood.  And how many years did you go to

5    Harvard?

6         A. One.

7         Q. Okay.  And what year was that?

8         A. I started at Harvard in, I believe, the fall

9    of 2004.  I completed one semester at the time, took

10   a leave of absence and returned for a second semester

11   about a year later.

12        Q. Understood.  When did you first start working

13   for Apple?

14        A. In May of 2009.

15        Q. What was your role when you started at Apple?

16        A. I was a junior software engineer working on

17   security.

18        Q. And how long did you stay in that role?

19        A. I don't remember exactly, but several years.

20        Q. Prior to working at Apple, so prior to 2009,

21   where were you employed, if at all?

22        A. I was employed at a nonprofit called One

23   Laptop per Child.

24        Q. How many years were you there?

25        A. About two.

1          Q. Okay.  And what did you do there?

2          A. I worked on a variety of the software

3     challenges with that project with a particular focus

4     on security.

5          Q. Okay.  And before One Laptop per Child were

6     you employed?

7          A. No.

8          Q. Okay.  So you went from Harvard to One Laptop

9     per Child to Apple; is that correct?

10         A. Yes.  I thought -- that's roughly correct.  I

11    had done some brief consulting in the middle, most of

12    it unpaid.

13         Q. Consulting with whom?

14         A. Zagreb Children's Hospital.  Zagreb is the

15    capital city of Croatia which is where I'm from, as

16    well as Facebook.

17         Q. What kind of consulting did you do for

18    Facebook?

19         A. Primarily, security and software

20    architecture.

21         Q. When did you become the head of Apple's

22    security engineering and architecture?

23         A. A little over four years ago.

24         Q. Okay.  So prior to four years ago, what was

25    your title?

1          A. Before that, my title was software

2     engineering manager.  I was manager of a different

3     small team.

4          Q. Okay.  But in the security field?

5          A. Yes.

6          Q. And prior to being a manager, you were a

7     software security engineer?

8          A. That's correct.

9          Q. So those were three separate titles during

10    your tenure at Apple; is that correct?

11         A. Yes.  The levelling of the individual

12    engineering role changed over time, but yes.

13         Q. Okay.  And currently as head of Apple

14    security and engineering and architecture how many

15    people do you supervise?

16         A. About 220.

17         Q. And what is your -- what are your job

18    functions?  What do your duties entail?

19         MR. GROSS:  I'd like to interpose a quick

20    objection for confidentiality reasons.

21         Mr. Krstic, if you think, in answering this

22    question, you need to reveal anything confidential to

23    Apple, will you please say so and we can make some

24    accommodations before you answer?

25         THE WITNESS:  Thank you.  I think I can

1     answer without revealing anything confidential, at

2     least the current question.

3              So my job responsibility is to manage the

4     Apple -- in my current role, I manage a group that is

5     responsible end-to-end for the security of all

6     products that Apple ships to customers.

7     BY MR. VINE:

8         Q. So you're in charge of all the security for

9     all Apple products, right?

10        A. For all Apple products, yes.

11        Q. Okay.  Does your job include the design of

12    implementation of the key security mechanisms in

13    Apple products?

14        A. Yes, it does.

15        Q. Who do you report to?

16        A. I report to Sebastien Marineau-Mes.

17        Q. And what is his title?

18        A. He is a vice president of software

19    engineering.

20        Q. And does he report to Craig Federighi?

21            MR. GROSS:  Foundation.

22    BY MR. VINE:

23        Q. You can answer.

24        A. Yes, he does.

25        Q. Do you report in any fashion to Craig

1    Federighi?

2          A. No, I do not.

3          Q. Okay.  Do you communicate with him regularly

4    regarding your day-to-day activities?

5          A. I don't communicate with him regarding the

6    day-to-day activities, but I have ongoing contact

7    with him.

8          Q. And your ongoing contact relates to your job

9    functions, correct?

10             MR. GROSS:  Vague.

11   BY MR. VINE:

12         Q. You can answer.

13         A. Yes, that's correct.

14         Q. Okay.  And one of your job functions is the

15   overall security functions in the Apple products,

16   correct?

17         A. That's correct.

18         Q. Okay.  Do you ever speak at conferences?

19         A. Yes, I've spoken a couple of times, yes, a

20   couple of times I've spoken at conferences while

21   employed at Apple.

22         Q. Is Black Hat one of them?

23         A. Yes.  The only two times I've spoken at an

24   industry conference while working for Apple was for

25   Black Hat.

1        Q. What is Black Hat?

2        A. Black Hat is a prominent computer security

3    industry conference.

4        Q. And what years did you speak at Black Hat?

5        A. I spoke last year and then I want to say

6    about two years prior.

7        Q. And do you recall what you spoke about last

8    year?

9        A. Yes.

10       Q. Okay.  What do you recall you spoke about

11   last year?

12       A. I covered several technical topics regarding

13   security features and work that was done in a variety

14   of Apple products, as well as changes to the Apple

15   security bounty.

16       Q. And you're referring to the bug bounty

17   program, correct?

18       A. That's correct.  It's called the Apple

19   Security Bounty Program formally.

20       Q. And you implemented changes in 2019; isn't

21   that correct?

22       A. Yes.

23       Q. We'll get to that at some point.

24          Okay.  In 2017, you also spoke at the Black

25   Hat conference.

1          Can you tell me what you talked about there?

2          A. Yes.  Similarly to 2019, I covered a number

3     of text message security mechanisms that were unique

4     to Apple platforms.  In 2017, I first announced the

5     Apple Security Bounty Program.

6          Q. Okay.  Did you also talk about the removal of

7     the encryption of the kernel?

8          MR. GROSS:  Excuse me.  Objection.  Vague.

9     Foundation.

10    BY MR. VINE:

11         Q. You can answer.

12         A. I don't immediately remember, but it's

13    possible.

14         Q. Okay.  When do you recall when the removal of

15    the encryption was done at Apple?

16         MR. GROSS:  Objection.  Foundation.

17         MR. VINE:  Let me withdraw that.  Let me take

18    that back.  Good objection.

19    BY MR. VINE:

20         Q. ██████████████████████████████████████████

21    ████████████████

22         A. ██████

23         Q. ███████████████████████████████████████

24    ███████████

25         A. ██████

1    Q. Okay. ████████████████████████

2    ████████████

3    A. ████████████████.

4    Q. Okay.  ████████████████████████

5    ████

6    A. That sounds correct to me.

7    Q. Okay.  Back to Black Hat, what is the -- do

8    you know what the term "Black Hat" means?

9    A. Yes.

10   Q. What does it mean?

11   A. It refers to hackers usually with malicious

12   or nefarious intent.

13   Q. Why would Apple be sending representatives to

14   a conference called Black Hat that refers to hackers

15   with malicious or nefarious intent, question mark?

16   A. Black Hat is seen universally by, I would

17   say, every major tech company as one of the

18   pre-eminent security conferences.  It's a business

19   conference and the name is more a historical relic

20   than any reflection of the content for the

21   professionality level of that conference.

22   Q. Are there hackers that attend and participate

23   at the conference?

24       MR. GROSS:  Objection.  Foundation.  Calls

25   for speculation.

```
 1      BY MR. VINE:

 2           Q. You may answer.

 3           A. Presumably.  I have no direct knowledge of

 4      the full attendees of that conference.

 5           Q. Okay.  Are you aware of any hackers that have

 6      attended the Black Hat conference when you were

 7      present?

 8              MR. GROSS:  Can you clarify what you mean by

 9      hackers?

10      BY MR. VINE:

11           Q. What is your definition of a hacker?

12           A. I grew up in a time when hacker meant people

13      who were technical tinkerers and liked understanding

14      how complex computer systems work.

15           Q. Okay.  So that's what you're -- you're

16      telling the ladies and gentlemen of the jury under

17      oath, that's what your understanding of the word

18      "hacker" means?

19              MR. GROSS:  Objection.  Vague.

20              THE WITNESS:  I think that in order -- I

21      think that in order --

22      BY MR. VINE:

23           Q. You can answer.

24           A. To answer your question about -- yes, in

25      order to answer your question that's asking me to
```

1    speculate whether people attended that conference,

2    I'm asking you to clarify what hacker means to you

3    and I would be happy to try to give you a good

4    answer.

5        Q. I'm asking you -- I ask the questions here.

6            So I'm asking you to define what you

7    understand hacker means and then you gave me a

8    definition; is that correct?

9        A. Yes.

10       Q. Okay.  So your definition of hacker did not

11   include malicious or nefarious intent; isn't that

12   correct?

13           MR. GROSS:  Objection.  Misstates the

14   testimony.

15           Go ahead.

16           MR. VINE:  Mr. Gross, I appreciate the

17   objection.  That's, of course, something that we do

18   not allow in the Southern District.  You're allowed

19   to say form or something related to that, but that

20   last comment was definitely over the grounds.

21           So please refrain from doing that.

22   BY MR. VINE:

23       Q. Go ahead, Mr. Krstic.

24       A. I'm sorry, what was your question?

25       Q. Okay.  Your definition did not include

1    nefarious or malicious intent of hackers; isn't that

2    correct?

3         A. That's correct.  I think I'm less qualified

4    specifically to define their intent, such as white

5    hat hackers or black hat hackers or in some other

6    way.

7         Q. What's a white hat hacker?

8         A. White hat hackers are hackers who use their

9    skills in order to try and prove the security of

10   various deployed computer systems.

11        Q. Now, back to the removal of the encryption,

12   did they remove encryption of DEF CON?

13           MR. GROSS:  Objection.

14           MR. VINE:  D-E-F-C-O-N.

15   BY MR. VINE:

16        Q. Did you attend the DEF CON conference?

17        A. I don't recall.  It's possible that I stopped

18   by informally and briefly, but I did not attend in

19   any formal capacity.

20        Q. What is the DEF CON conference?

21        A. DEF CON is a larger community event for the

22   security community that happens right after Black Hat

23   in -- in Las Vegas as well.

24        Q. Do you know who Chris Wade is?

25        A. Yes.

1      Q. Okay.  Who is he?

2      A. Chris Wade is a computer security engineer

3  and here, perhaps most relevant, the founder of

4  Corellium.

5      Q. Okay.  And when did you first meet Chris

6  Wade?

7      A. I don't recall exactly, but it was quite a

8  long time ago.  I would guess 2011 or '12.

9      Q. And in what context did you meet Mr. Wade?

10     A. I, unfortunately, don't recall the details of

11 this.  He came to my attention because of some work

12 that he was doing, but I don't actually remember how

13 we ended up meeting for the first time.

14     Q. What type of work was he doing?

15     A. ███████████████████████████████████████

16 ██████████████████

17     Q. And what is that project?

18     A. █████████████████████████████████████████

19 ██████

20     Q. What's an emulator?

21     A. An emulator is a technical tool that enables

22 the execution of one type of system usually on top of

23 a different system.

24     Q. And an emulation is different than

25 virtualization; is that correct?

1        A. Yes, that is correct.

2        Q. Is emulation different than simulation?

3        A. Usually, yes.

4        Q. Do you recall meeting with Chris in 2014?

5        A. ████████████████████████████ ████

████████████████████████████████████████████

████████████████████████████

8        Q. Okay.  Do you recall having many meetings

9    with him from 2011 through present?

10        ████████████████████████████████

████████

12        Q. Who's Jacques Vidrine?

13        A. At the time when I joined Apple, Jacques

14    Vidrine was my manager.

15        Q. And ████████████████████████████

16    ████████████████████████████

17    ████████████████████

18        A. ██████████████████████████████

19    ██████████████████ ██████████

20    ██████████████████████████████

21    ██████████████████████████

22    ██████████████████████████.

23        Q. Okay.  I want you to take a look.  I'm going

24    to give you the Bates stamp number and this we will

25    mark as Exhibit 1, for the court reporter's sake.

1 ████████████████████████████████████.

2 ████████████████████ ) ████████████████ )

3 ████████████████████.

4          MR. GROSS:  How you would you like him to

5 access the document?

6          MR. VINE:  We forwarded you all the exhibits.

7          MR. GROSS:  Right.  We didn't know what your

8 intent was in doing that.  He doesn't have that in

9 front of him.

10          MR. VINE:  Well, if you could send him the

11 exhibits, that would be --

12          MR. GROSS:  I don't think that will take

13 long.  Give us a moment to do that.

14          I think we had heard that in a previous

15 deposition they were being e-mailed in realtime.

16          MS. CONSTANTINE:  I'm going to have Amanda

17 and Chris walk out of the room because I believe that

18 document is marked confidential AEO, just so you are

19 aware, they are outside of the room.

20          MR. VINE:  Thank you very much.

21          Gabe, the reason why we sent them all to you

22 last night is because we wanted to -- we didn't want

23 to have to do it in realtime.  That's why I had them

24 sent yesterday.

25          MR. GROSS:  I don't think any instructions

1    came with it so give us a moment if you'd like us to

2    give Mr. Krstic everything you sent us last night.

3              MR. VINE:  Sure, and then he'll be able to

4    pull up each document.

5              MR. GROSS:  You should be receiving an e-mail

6    momentarily with a series of attachments that should

7    include the documents that Mr. Vine wants to ask you

8    about.

9              THE WITNESS:  I am looking at my box.  The

10   documents have not yet arrived.  I'll let you know as

11   soon as they do.

12   BY MR. VINE:

13        Q. ████████████████████

14        A. I believe they just arrived.

15        Q. Okay.  Let me just ask this question and then

16   we can go on to the document.

17        A. Okay.

18        Q. ████████████████████████████████████

19   ████████████████████████████████████████

20   ████████████

21              MR. GROSS:  Objection.  Vague.

22              THE WITNESS:  I'm sorry, ████████████████████

23   ████████████████████

24   BY MR. VINE:

25        Q. ████████████████████████████████████



1

2

3  A.

4

5

6  Q. Okay.

7

8

9  A.

10

11

12  Q.

13

14  A.

15

16

17

18  Q.

19      A. I'm sorry, I didn't hear the last few words

20  of your question.

21  Q.

22

23

24      MR. GROSS:   Foundation.

25      Go ahead.

1        THE WITNESS: ██████████████████

2    ██████████████████████████

3    █████████████ █████████████████

4    ██████████████████████████

5    ████████████████████

6         ██████████████████████████

7    █████████████████████████

8    █████████████████████████

9    ████████████████████████

10   █████████████████████████

11   █████████

12   BY MR. VINE:

13        Q. ████████████████████

14   ████████████████

15        A. █████████████████████

16   █████████

17        Q. █████████████ ██████████████

18   ████

19        ████████████ █████████████

20   █████████████████████████

21   ███████████

22        A. ████████████████████

23   ████████████████████

24   ████████████████.

25        Q. Okay. ████████████████



```
 1   ████████████████████████████
 2        A.  ████████████████████████████████████
 3   ████████████████████████████████████
 4   ██████  ██████████████████████████████
 5   █████████████████████████████████████████
 6   ██████████████████████████████████
 7   █████████████████████████████████████
 8   ████████████████████████████████████
 9        Q.  ███████████████████████████████████
10   ████████████████████████████████████
11   ████████
12        A.  █████████████████████████████████████
13   ████████████████████████████████████
14   ████████████████████████████████████
15   ███████████████████
16        Q.  ██████  █████████████████████████
17   ██████  █████████████████████████████████
18   ██████████████████████████████████████████
19   █████████████████████████████████████████
20   ██████████████████████
21        MR. GROSS:  Objection.  Vague.
22        THE WITNESS:  ████  ██████████████
23   BY MR. VINE:
24        Q.  ████████████████████████████████████
25   ████████████
```

1    A. ████████

2    Q. ████████████████

3    A. ████

4    Q. ████████████████████████████████

5    ████████████████ ████████ ████████

6    A. ████████████████.

7    Q. ████████████████████████████████

8    ████████████████

9    A. I████████████████████████████████

10   ████████████████

11   ████████████████████████

12   ████████████████████████████████

13   ████████████████████████████

14   ████████████████████████████

15   ████████████████████████████

16   ████████████████████████████████

17   ████████████████████████████████

18   ████████████████████████████

19   ████████

20   MR. GROSS: ████████████████

21   ████████████████████████

22   ████████████████████████████

23   ████████████████████.

24   MR. VINE: ████████████ ████████

25   ████████████████████████████



1   ███████████████████████████████████████████

2   ████████████████████████████████████████████████

3   ███████████████████████████████████████████████

4   █████

5            MS. CONSTANTINE:  ███████████████████

6   █████████████████

7            MR. VINE:  ████████████  ██████████

8            MR. GROSS:  ██████████  ██████████

9   ████████████.

10           MR. VINE:  ███████

11  BY MR. VINE:

12       Q.  ████████████████████

13       A.  ███████████████████████████

14  ███████████████████

15       Q.  ████████████████████

16       A.  ████████████

17       Q.  ███████████████████████████████

18  ████████████████████

19       A.  ██████████████████████

20  ███████████████████

21       Q.  ██████  █  ████████████████████████

22  ███████████████████████████

23       A.  ██████████████████████

24  ████████████  █  █████████████████████

25  █████████████████████████



Page 32



4       A.

6       Q.

8       A.

9       Q.

10          (Whereupon, Exhibit 1 was marked for

11      identification.)

12          THE WITNESS:

14      BY MR. VINE:

15      Q.

16      A.

18      Q. Okay.

20      A.

21      Q.

23      A.

24      Q.



```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20          MR. GROSS:  Vague.  Foundation.
21          Go ahead.
22     BY MR. VINE:
23          Q. You can answer.
24
25
```



Page 35

1  ████████████████████████████████████████

2  ██████████

3  Q. ██████████████████████████████

4  ████████████████████████████████████████

5  ████████████████

6  A. ██████████████████████  ████████████

7  ████████████████████████████████████

8  ████████████████████████████████████████

9  ██████  ████████████████████████████████

10  ████████████████████████████████████

11  ██████████████████████████████████████

12  ████████████████

13  ██████████████████████████  ████████

14  ████████████████████████████████

15  ██████████████████████████████████████

16  ████████████████

17  Q. ██████████████████████████████████████

18  ████████████████████

19  A████████████

20        (Whereupon, Exhibit 2 was marked for

21  identification.)

22        THE WITNESS: ████████████████

23  BY MR. VINE:

24        Q. ██████  ████████████████████████

25  ████████████████████████████████

```
 1  ██████████████████████████████████████
 2    ████████████████████████████████████████
 3  ██████████████████████████████████████████
 4  ████████████████████████████████████████
 5       A. ██████████████
 6       Q. ████████████████████████████████████
 7  ████████████████████████████████████████████
 8  ██████████████████████████████████
 9       A. ████████████████████████████
10       Q. ████████████████████████████████████
11  ██████████
12       A. ████████████████████████████████████
13  ████████████████████████████████████████████
14  ██████████████████
15       Q. ████████████████████████████████████
16  ████████████████████████████████████████████
17  ████████████████████████████████████████████
18  ████████████████████████████████████████
19  ██████████████████████████████████████
20  ████████████████████████████████
21       MR. GROSS:  Objection.  Compound.
22  BY MR. VINE:
23       Q. You can answer.
24       A. I ████████████████████████████████
25  ████████████████████████████████████████████
```

1   ████████

2       ███████████████████████████████████

3   ███████████████████████████████████

4   ██████████████████████████████████████

5   █████████████████████████

6       ██████████████████████████████████

7   ███████████████████████████████████████

8   ██████████████████████████████████████████

9   ████████

10      ████████████████████████

11      Q.  It does.   I appreciate that.   And thank you

12  for clarifying.

13      A. Certainly.

14      Q. ██████████████████████████████████████

15  ███████████████████████████

16  █████████████████

17      ████████████████████████████

18  ████████████████████

19      A. ███████████████████████████████████████

20  ████████████████████

21      Q. ███████   ██████████████████████████

22  █████.

23      █████████████████████████████████

24  █████████████

25      A. ███████████████████████████████

Page 38

1

2

3

4

5

6

7

8    A.

9    Q.

10   A.

11

12

13

14   Q.

15

16

17   A.

18   Q.

19

20   A.

21

22

23

24        (Whereupon, Exhibit 3 was marked for

25   identification.)



1    BY MR. VINE:

2        Q. ██████████████████

3    ████████████████████████████████████████████████

4    ████████████████████████████████████████████████

5        MR. VINE: ████████████████████████

6    ████████████████████████████

7        THE WITNESS: ████████████████████

8    ████████████████

9    BY MR. VINE:

10        Q. Okay. ████████████████████████████

11    ████████████████████████████████████████

12    ████████████████████████████████

13        ████████████████

14        A. █████████████████████████████

15        Q. ██████  ████████████████████████████████

16        A. ████████████████████████████████

17    ██████████████████████████████████████████

18        Q. ████████████████████████████████

19    ████████████████████████

20        A. ████████████████████████  ████████

21    ████████████████████████████████████████████

22    ████████████████████████████████████████████

23    ████████████████████████████████████████████

24    ████████████████████████████████████

25    ████████████████████████████████████



```
 1   ████████████████████████████████████
 2   ██████████████████████████████████████
 3   ████████████████████
 4        Q. Okay.  ██████████████████████████
 5   ████████████████████████████████████████████
 6   ████████████████████████████████████████████
 7   ███████████████████████████████████████████
 8        A.  █████████████████████████████████
 9   ████    ██████████████
10        Q.  ████████████████████████████████
11   █████████████
12        A.  ██████████
13        Q.  ███    ████████████████████████
14        A.  ██████████████████
15        Q.  ████████████████
16        A.  ███████████████████████████████████
17   ██████████████████████████████████████
18   ██████████████████████████████████████
19   ████████████████████
20        Q.  ██████████████████████████████████
21   █████████████████████████████████████████
22   █████████████████████████████████████████
23        A.  ████████████████████████████████
24   ████████
25        Q.  ████████████████████████████████
```

Page 41



1

2

3

4

5

6

7

8

9

10

11     Q. Yes.

12

13

14

15

16

17

18

19

20

21

22

23

24        (Whereupon, Exhibit 4 was marked for

25     identification.)



1     BY MR. VINE:

2          Q.

3

4

5          A.

6          Q.

7

8          A.

9

10          Q.

11

12

13

14          A.

15          Q.

16

17

18          A.

19

20

21

22

23          Q.

24          A.

25          Q.





Page 45

```
 1  ████████████████████████████████████████████
 2  ███████████████████████████
 3       Q.  ████████████████████████████████████
 4  ███████████████████████████
 5       MR. GROSS:  ████████████  ██████████████████
 6  ████████████████████████████
 7       MR. VINE:  ██████
 8  BY MR. VINE:
 9       Q.  ████████████████████████████████████
10  ████████████████████████████████████████████
11  ██████████
12       A.  ██████████████
13       Q.  ███████  ██████████████████████████
14  ████████████████████████████████████████████
15       A.  ██████████████████████████████████████
16  ███████████████████████████
17       Q.  ██████████████████████████████████████
18  ██████████████████████████████████████████
19       A.  ██████████████████████████████████████
20  ████████████████████████████████████████████
21  ██████████
22       ██████████████████████████████████████
23  ████████████████████████████████████████████
24  ████████████████████  ██████████████████████
25  ████████████████████
```



 1

 2

 3

 4

 5

 6

 7

 8

 9

10       Q. Okay.

11          MS. CONSTANTINE:

12

13

14

15

16

17          MR. GROSS:

18

19          MS. CONSTANTINE:

20

21

22          MR. GROSS:  Okay.  I need you to let me know

23   upon entrance or exit from the room to make sure what

24   parts of the record are being developed and who is in

25   then because if a document itself may not have been

```
 1        highly confidential, but the testimony enters into

 2        that territory, I'll need to protect the record,

 3        please.

 4               MS. CONSTANTINE:  I will let you know when

 5        she walks in.  If there are any communications that

 6        are attorneys' eyes only, if you can please let me

 7        know so I can have Amanda leave the room as well.

 8               MR. GROSS:  Sure.  I'll do my best.  Let's

 9        help each other out with that, please.

10               MS. CONSTANTINE:  Thank you.

11   BY MR. VINE:

12        Q. So the question was:  Can you define iOS?

13        A. Yes.  iOS is Apple's mobile operating system

14   for iPhone.

15        Q. What is included in iOS?

16               MR. GROSS:  Vague.

17               THE WITNESS:  iOS is --

18   BY MR. VINE:

19        Q. Strike that.

20               Do you know what is included in iOS?

21        A. I don't have knowledge of every single

22   component that is in iOS, no.

23        Q. Okay.  Can you tell me what is included in

24   iOS that you do have knowledge of?

25        A. Certainly.  Everything from low level
```

1    firmware required to initialize the hardware to the

2    low level system software required to boot the

3    operating system to the high level pieces of the

4    operating systems that users interface with and

5    perceive to be the operating system.

6         Q. So is iOS the operating system for multiple

7    hardware devices?

8         A. Until relatively recently, iOS also ran on

9    iPad.  However, it was -- the name of that operating

10   system was recently changed to iPad iOS.

11        Q. Okay.  So I don't think you answered my

12   question.  I'm going to ask it again.  I'm not as

13   smart as you so we have to dumb it down for me.  So

14   let me make sure I understood that.

15             Up until recently, was iOS the operating

16   system for hardware devices produced by Apple?  Yes

17   or no.

18        A. Yes.

19        Q. Okay.  Does iOS include applications?

20        A. Yes, it does.

21        Q. Does iOS include the GUI?  G-U-I, for the

22   court reporter.

23        A. Yes, it does.

24        Q. Do you know if Apple has a copyright on iOS?

25             MR. GROSS:  Object to the extent it calls for

1     a legal conclusion.

2              You may answer.

3              THE WITNESS:  I would certainly presume so,

4     but I'm not a lawyer.

5     BY MR. VINE:

6         Q. Well, we know you're not a lawyer.  I

7     appreciate that.

8              At the beginning of the deposition we went

9     over your education and I didn't hear law school or

10    anything else related to that.  So let's go back to

11    my question.

12             Are you aware if Apple maintains a copyright

13    for iOS?  Yes or no.

14             MR. GROSS:  Same objection.

15             Go ahead.

16             THE WITNESS:  I certainly believe so, yes.

17    BY MR. VINE:

18        Q. When you say you certainly believe so, that

19    means you have personal knowledge, sir?

20        A. No, I did not have personal knowledge.  I

21    don't -- it's not part of my job to be trying to gain

22    direct personal knowledge over Apple's legal

23    protections of its products.

24        Q. Okay.  I'm confused.  Isn't your job meant

25    for security and protection of Apple product?

1        A. Yes, it is.

2        Q. And as you sit here today as the head of --

3    what's your title, sir, again?

4        A. It's head of security, engineering and

5    architecture.

6        Q. So as Apple's head of security, engineering

7    and architecture, you don't know -- you don't have

8    personal knowledge as to whether iOS has a copyright

9    on that; is that correct?

10       A. That is correct.

11       Q. Okay.

12           MR. GROSS:  We've been going almost an hour.

13   When you're done with this line of questions,

14   Jonathan, why don't we take our first restroom break,

15   please.

16           MR. VINE:  One more question and then we'll

17   take a break.

18   BY MR. VINE:

19       Q. So Mr. Krstic, tell me if I'm wrong, you

20   can't tell me what Apple's copyright over iOS

21   entails; is that correct?

22           MR. GROSS:  Object to the extent it calls for

23   a legal conclusion.

24           You can answer.

25           THE WITNESS:  That is correct.

```
 1              I would like to point out that from -- I'm

 2      perceiving you to be somewhat incredulous in asking

 3      me this, so I would like to state that my job is to

 4      protect the technical security of Apple's billion

 5      users and billion app devices.  My job is a security

 6      engineering role.  It is not a copyright role, a

 7      legal role or any other similar role.

 8              MR. VINE:  Okay.  Gabe, any time you're

 9      ready, I can take the break now.

10              MR. GROSS:  Okay.  I can use one.  Let's go

11      off the record, please.

12              MR. VINE:  Thank you.  We'll come back in

13      five minutes or ten minutes.

14              (Whereupon, a break was taken.)

15              MS. CONSTANTINE:  Amanda Gorton is in the

16      room with me.

17      BY MR. VINE:

18          Q.  ██████████████████████████████████████████

19      ██████████████████████████

20          A.  ██████████████████████  ████████████████████

21      ████████████████████████████████████████████████████

22      ██████████████

23          ██████████████████████████████████████████████████

24      ████████████████████████████████████████████████

25      ██████████
```

Page 52



```
 1    Q.
 2    A.
 3
 4    Q.
 5    A.
 6
 7
 8    Q.
 9    A.
10    Q.
11    A.
12    Q.
13    A.
14
15    Q.
16
17    A.
18
19    Q.
20
21    MR. GROSS:
22    THE WITNESS:
23
24
25
```

Page 53

1   ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮

2   BY MR. VINE:

3        Q. ▮▮▮▮▮▮▮▮▮▮▮

4        A. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6        Q. ▮▮▮ ▮▮▮▮▮▮

7        A. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9   ▮▮▮▮▮▮▮▮▮▮

10       Q. ▮▮▮▮▮▮▮▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮

12       A. ▮▮▮▮▮▮▮▮

13       Q. ▮▮▮▮▮▮

14       A. ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮

15  ▮▮▮▮▮▮▮▮▮▮▮▮

16  ▮▮▮

17       Q. ▮▮▮ ▮▮▮▮▮▮▮▮▮▮

18       MR. GROSS: ▮▮▮▮▮▮▮▮▮▮

19  ▮▮▮▮▮▮▮

20  ▮▮▮▮▮▮▮▮▮▮▮

21  ▮▮▮▮▮▮▮▮▮▮▮▮▮

22  ▮▮▮▮▮▮▮▮▮

23       MR. VINE: ▮▮▮▮▮▮▮▮▮▮

24  ▮▮▮▮ ▮▮▮▮▮▮▮▮

25  ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮

Page 54



```
 1   ████████████████████████  █████████████████

 2   BY MR. VINE:

 3        Q.  ██████████████████████████████

 4   ████████████

 5        A.  ███████

 6        Q.  ████████████████████████████████

 7   ████

 8        A.  █████████████████████████████████

 9   ██████████████

10        Q.  ████████████████████████

11        A.  █████████████████████████████████

12   ██████████████████████████████████████

13   ██████████████████

14        Q.  ██████████████████████████████

15        A.  ████████████████████████

16        Q.  ███████  ██████████████████████████

17   ████████

18        A.  ██████████████

19        Q.  ████████████████████████

20        A.  ████████████████████  ██████████

21   █████████████████████████████████████

22   ██████████████████  █████████████████████

23        ██████████████████████████████████

24   █████████████████

25        Q.  ██████████████████████████████
```



```
 1    ████████████  ███████████████████████
 2        A.  ███████████████████████████████
 3    ███████  ████████████████████████████
 4        Q.  ████████  ████████  ████████████████
 5            █████████████████████████████████
 6    █████████████████████
 7        A.  ██████████████████████████████
 8        Q.  ███████████████████████████
 9        A.  ██████
10        Q.  ██████████████
11        A.  ██████████████████████████████
12        Q.  ██████████  ██████████████████
13        A.  ██████  ████████████████████████████████
14    █████████████████████████████████████████  ███
15    ████████████████████████████████████████████
16    ██████████
17        Q.  ███████████████████████████
18        A.  ████████████████████████  ████████████████████
19    ██████████████████████████████████████████
20    ██████████  ████████████████████████████████████
21        Q.  ██████████████████████  ██████████████████████
22    ██████████████
23        A.  ██████████
24        Q.  ██████████  ████████████████████████
25        A.  ██████████████████████████████████████████
```

1   ████████████

2        Q.  ████████████████████████████████████

3   ███████████████████████████████████████████

4   ████████████████

5        MR. GROSS:  I think this calls for some

6   confidential testimony in response.  I'd like to ask

7   Ms. Gorton to leave the room before Mr. Krstic

8   answers.

9        MS. CONSTANTINE:  You are referring to

10  confidential attorneys' eyes only, because she is

11  able to hear information relating to confidential.

12  So I want to be clear.

13       MR. GROSS:  That's what I understand.

14       MS. CONSTANTINE:  Is it confidential AEO or

15  is it just confidential?

16       MR. GROSS:  We won't really know until the

17  testimony comes out, so out of an abundance of

18  caution, I need her to leave the room.

19       MS. CONSTANTINE:  Okay.  Amanda is leaving

20  the room.

21       She is not in the room.

22       MR. GROSS:  Thank you.

23       THE WITNESS:  ████████████████████████

24  ████████████████████████████████████████████

25  ███████████████████████████████████████████

Page 57



2   BY MR. VINE:

3      Q.

4      A.

10      Q. Does Apple have a copyright on the actual

11 devices such as iPhone; do you know?

12        MR. GROSS:  Calls for a legal conclusion.

13        You may answer.

14        THE WITNESS:  I'm sorry, I don't -- I'm not

15 familiar with the specifics of Apple legal

16 protections.

17 BY MR. VINE:

18      Q. That wasn't my question.  Mr. Krstic, I would

19 just ask that you listen to my question.

20        I have specifically asked if you're aware if

21 Apple had a copyright on devices such as the iPhone.

22 Do you know?  Yes or no.

23        MR. GROSS:  Same objection.

24        Go ahead.

25        THE WITNESS:  I do not know, no.

1        BY MR. VINE:

2            Q. ████████████████████████████████

3            A. ████████████████████████████████

4    ██████████████████████████

5        ██████████████████████████████████████

6    ██████████████████████████████████████

7    ████████████████████████████

8            Q. ██████████████████████

9            A. ████████████████████████████████

10           Q. ██████████████████████████████

11           A. ████████████

12           Q. ████████████████████████████████

13   ████████  ████████████████████████

14           A. ████████████████████████████████

15   ████████████████

16           Q. Is iOS accessible on ipsw.me?

17               MR. GROSS:  Objection.  Foundation.

18               MR. VINE:  I'll -- sorry.

19               THE WITNESS:  I'm not sure.  I'm not familiar

20   with -- sorry, my answer was not familiar with that.

21   BY MR. VINE:

22           Q. Do you know what ipsw.me is?

23           A. Not with certainty, no.

24           Q. You've never heard of it?

25           A. I've heard of websites that distribute some

1    Apple IPSW files.  This is not one that I

2    specifically recall off the top of my head.

3        Q. Isn't it true that Apple allows access to iOS

4    available online?

5        A. Can you please be more specific with that

6    question?

7        Q. Yes.  Does Apple allow, for free, people to

8    access iOS online?

9            MR. GROSS:  Objection.  Vague.

10           You may answer.

11           THE WITNESS:  I'm struggling to give you a

12    good answer.  I think if you're asking whether iOS

13    can be downloaded online, then the answer is yes.

14    BY MR. VINE:

15       Q. Okay.  It's downloaded directly from the

16    Apple server; isn't that correct?

17       A. That's correct.

18       Q. When a person downloads iOS, is the person

19    directed to sign the EULA?

20       A. I am not sure.

21       Q. Do you know what EULA is?

22       A. My understanding is that stands for an end

23    user license agreement.

24       Q. Okay.  Have you seen it before?

25       A. I have seen many EULAs over the years as a

Page 60

1    person who uses a computer.

2         Q. Isn't it true a person only signs the EULA

3    when a new device is activated?

4         A. I'm sorry, I don't know.

5         Q. Okay.  So, again, the head of security,

6    engineering and architecture at Apple does not know

7    when the EULA is signed, that's correct?  That's your

8    testimony under oath?

9         A. Yes, it is, sir.  I'm going to repeat my

10   prior clarification of this, which is that you seem

11   to consider this to be some kind of great puzzle, but

12   my role is an engineering role.  It is not a legal

13   role.

14          So to the extent that Apple has legal

15   protections which is what you're asking me about and

16   I'm telling you that I don't know them off the top of

17   my head and don't feel comfortable testifying about

18   them, this should not present any kind of surprising

19   mystery.

20        Q. If someone downloads the iOS -- sorry,

21   downloads iOS, is that infringement?

22          MR. GROSS:  Objection.  Calls for a legal

23   conclusion.

24          You may answer.

25   BY MR. VINE:

1      Q. You can answer.

2      A. I don't know how to answer that question

3   without a legal degree which you helpfully pointed

4   out we all know I don't have.

5      Q. So is it copying when somebody downloads

6   something?

7      MR. GROSS:  Objection.  Calls for a legal

8   conclusion.

9      You may answer.

10     THE WITNESS:  In a nonlegal sense, yes.  In a

11  legal sense, I don't feel comfortable answering that

12  and don't feel like I can.

13  BY MR. VINE:

14     Q. ████████████████████████████████

15  ██████████████████████████████████

16     A. ███████████████████████████████

17  ████████████████████████████████████

18  ██████████████

19     Q. ████████████████  ███████████

20     A. ████████████████████████████████

21  ████████████████████████████████████

22  ████████████████████████████████████

23  ████████████████████████████████████

24  █████

25     ██████████████████████████████████

1 ████████████████████████████████████████

2 ████████████████████████████████████

3 █████████████████████████████████████

4 ██████████

5     Q. █████████████████████████████████

6 ██████

7     A. ██████████████████████████████

8 ██████ ████████████████████████████████

9        ██████████████████████████████████

10 █████████████████████████████████████

11 ████████████████████████████████████████

12 I████████████████████████████████

13     Q. Okay.  Well, let me add -- let me ask

14 something else first.

15        █████████████████████████████████

16 ██████████████

17     A. Can you ask that question in a different way?

18     Q. What about the question don't you know --

19 understand?

20     A. ██████████████████████████████

21 ████████████████████████████

22 ████████████████████████████████████████

23 ███████████████████

24     Q. Okay.  ██████████████████████████

25     A. ██████████████████████████████



1 ████████████████████████████████████████

2 ████████████████████████████████████

3 ████████████████████████████████████████

4 █████████████████████████████████████████

5 ████████████████████████████████████████

6 ████████████████████

7      Q.  ████████████████████████████████

8 ████████

9           MR. GROSS:  Objection.  Vague.

10 BY MR. VINE:

11      Q.  █████████████████████████████

12      A.  ██████████████████████████████

13 ██████████████████████████████████████

14 █████████████████

15      Q.  ████████████████████████████

16 ██████████████████

17      A.  █████████████████████████████

18 ████████████████████

19           MS. CONSTANTINE:  Just for the record, is any

20 of this information confidential or confidential AEO?

21 Can I have Amanda and Chris back in the room?

22           MR. GROSS:  If I can be certain of that, I'll

23 let you know when and then, they're welcome to join

24 us, but right now, this level of technical detail I'm

25 not comfortable de-designating right now.  So feel

1    free to ask me again and I'll let you know.

2              MS. CONSTANTINE:  As of right now --

3              MR. VINE:  Sorry.  Go ahead.

4              MS. CONSTANTINE:  I want to ask as of right

5    now, Chris and Amanda are not allowed in the room

6    because we're not discussing anything relating to

7    Apple's internal operations.  So I want --

8              MR. GROSS:  Yes, I want -- okay.  I disagree

9    with your characterization of it and I'd like to keep

10   them out of the room until I have more assurance that

11   we're out of that sort of highly confidential subject

12   matter.

13             MS. CONSTANTINE:  That's fine.  Please let me

14   know when they can come back to the room.

15             MR. GROSS:  Sure.  And please feel free to

16   ask me.  I'm happy to ask Mr. Krstic to let us know

17   if he knows he is talking about something that's

18   publicly known and, of course, they can resume their

19   participation.

20             MR. VINE:  Is everybody done?  I can move on

21   now?  Okay.

22   BY MR. VINE:

23        Q. ██████████████████████████████

24   ████████████████████████████████████

25        A. Sure.  And if you wouldn't mind, my last name

Page 65

1    is Krstic.

2

3

4

5        Q.

6

7

8

9

10

11

12        Do you remember testifying to that?

13    A. Yes.

14        Q.

15    A.

16

17

18

19

20

21

22

23

24

25



1

2

3

4

5     Q. Okay.

6

7

8

9     A.

10

11

12

13    Q.

14    A.

15

16

17

18

19    Q

20

21          MR. GROSS:  Objection.  Vague.

22    BY MR. VINE:

23    Q.

24    A.

25

Page 67

1   

2

3

4

5        Q. Okay.

6

7

8

9           A.

10          MR. GROSS:  Compound.

11   BY MR. VINE:

12          Q.

13

14          A.

15

16          Q.

17

18          A.

19

20

21

22          Q.

23

24

25



Page 69



1

2     A. ████████████████████████████ █

3     ████████ ████████████████████████

4     ████████████████

5     Q. Okay. ██████████████████████

6     ████████████████

7     A. ████████████

8     Q. ██████████████████████████████

9     ████████████████

10     A. That's not what I was saying earlier and I

11     ████████████████

12     Q. Okay. ██████████████████████

13     ██████████████████████████████

14          MR. GROSS:  Before you answer, you can answer

15     it -- excuse me, Mr. Krstic, you may answer this

16     question with a yes or no, but let me just remind you

17     and caution you not to reveal the substance of

18     communications you might have had with Apple's

19     lawyers.

20          ████████████ : ██████

21     BY MR. VINE:

22     Q. Okay. ████████████████

23          MR. GROSS:  You may answer that.

24          THE WITNESS: ██████████████████

25     ██████████████████████████████

1   ██████████████

2   BY MR. VINE:

3        Q. ████████████████████████

4        A. ████████████████████████████████████

5   ████

6        Q. ███████████████████████████████

7   ████████████████████████████████████

8   ████

9        A. ██████████████████████

10       Q. Okay. ████████████████████████

11   ████

12       A. ████████████████████ ███████████████

13   █████████████████████████████████████

14   █████████████████████████

15       Q. ████████████████████████████

16   ████████████████████████████████████

17   ████████████████████████████████████

18   █████

19       A. ████████████████████

20       Q. Okay. ███████████ ███████████████

21   ████████████████████████████████████████

22   ████████████████████████████████████████

23   ████████████████████████████████████████

24       A. ████████████████████████████████████

25   ████████████████████████████████████████



1

2

3

4     Q.

5

6

7     A.

8

9

10    Q. Okay.

11

12    A.

13    Q.

14

15

16        MR. GROSS:  Objection.  Vague.

17

18    BY MR. VINE:

19        Q. Do you have any experience with hypervisors?

20        A. I have never written one as an engineer, but

21    I am familiar with how they're designed and generally

22    how they're implemented.

23        Q. Okay.

24        MR. VINE:  Lizza, I think you probably can

25    bring them in because I'm doing some more general

```
1    questions right now.

2              MS. CONSTANTINE:  Okay.  Amanda, Chris.

3    They're coming in.

4              MR. GROSS:  Are they within earshot the whole

5    time?  I want to make sure there is proper

6    separation.

7              MS. CONSTANTINE:  I was screaming on the

8    other side.  The door was closed.  They're now in the

9    room.

10             MR. GROSS:  Thank you.

11   BY MR. VINE:

12        Q. Do you have experience with emulators?

13        A. I have never worked on one as an engineer,

14   but I'm familiar with the general concept of how --

15   the design.

16        Q. And what about simulators?

17        A. Same thing, sir, I have never worked on one,

18   but I have general familiarity.

19        Q. ███████████████████████████████████████

20   ████████

21        A. ████████████████████████████████████

22        Q. ████

23        A. ████████████████████████████████████

24        Q. ████████████████████████████████████

25   ██████████████████████████████████████████
```

Page 73

1

2

3

4      Q. I'm just looking for the document.  In the

5      meantime, let me just move on.

6           If you could -- this is just marked as

7      confidential, this document, it's ████████████

8      ████████

9           MS. CONSTANTINE:  Chris Wade is walking out

10     of the room and he has now left the room.

11          Amanda is in the room because the document is

12     only listed as confidential.

13          MR. GROSS:  Thank you.  Can I hear the number

14     of the document again?

15          MR. VINE:  ██████

16          (Whereupon, Exhibit 5 was marked for

17     identification.)

18          THE WITNESS:  I have the document.

19          MR. GROSS:  Thanks for letting me catch up.

20     BY MR. VINE:

21          Q. Okay. ██████████████████

22     ████████████████████████

23     ████████████████████████████

24     ██████████████████████

25          A. ████████████████

Page 74

1       Q. Okay. ████████████████████████

2          MR. GROSS:  Vague.

3          Go ahead.

4          THE WITNESS: ███████████████████

5    BY MR. VINE:

6       Q. ████████████████

7       A. ████████████████████

8   ████████████ ████████████████

9   ██████████████████████████

10  ██████████ █████████████████████

11  ██████████████████

12      Q. Okay. ██████████████████

13  ████████████████████████████████

14  ████████████████████████████████

15      A. █████████████████████

16  █████████████████████████

17  ███████████████████████

18      Q. Okay. ██████████████████████

19  ████████████

20      A. ██████████████████████

21  ██████████

22      Q. Okay. █████████████████████

23  ██████████████

24      A. █████████████████████

25  ██████████

1　　██████████████████████████████████

2　　██████████████████████████████████

3　　██████████████████████████████████

4　　　　　MR. VINE:  I think Chris can come in now

5　　because there's no document designated confidential.

6　　　　　MS. CONSTANTINE:  Hold on.  Let me go get

7　　him.  One second.

8　　　　　Chris.  Okay, Chris is walking in the room.

9　　Thank you.

10　　　　MR. VINE:  Okay.

11　BY MR. VINE:

12　　　　Q. ████████████████████████████

█　██████████████████████████████

14　　　　MR. GROSS:  May I hear that again?

15　　　██████████████  ██████████████

16　BY MR. VINE:

17　　　　Q. Sure.  Okay.  You understand what a

18　hypervisor is, correct?

19　　　　A. Yes.

20　　　　Q. █████  ████████████████████

█　██████████████████████████

22　　　　MR. GROSS:  Foundation.

23　　　　You may answer.

24　　　██████████  ████████████████

25　BY MR. VINE:

1          Q. Do you know what render is?

2          A. In a technical -- as a technical engineering

3     term, it does not sound like that's what you're

4     asking, so it would be helpful for me to hear that

5     question a different way.

6          Q. Okay.  Do you know if render means deliver?

7          A. I don't know.  Rendering, as a technical

8     term, refers specifically to the drawing of graphics.

9     That's the term in which -- that's the meaning in

10    which I use it and am familiar with it.

11         Q. Okay.  Is rendering the automatic process of

12    generating a photorealistic or non-photorealistic

13    image from a 2D or 3D model?  You're familiar with

14    that?

15         A. I've heard that definition before as well,

16    yes.  That is not a commonly-used meaning of that

17    term in my industry.

18         Q. ████  ████████████████████████████████████

      ██  ████████████████████████████████████

20         MR. GROSS:  Foundation.

21         Go ahead.

22         THE WITNESS:  I████████████████████████████

      ██  ████████████████████████████████.

24    BY MR. VINE:

25         Q. You don't know one way or the other?

1    A. Will you please -- let me try this one more

2    time.

3         Can you repeat that definition?

4    Q. Rendering is the automatic process of

5    generating a photorealistic or non-photorealistic

6    image from a 2D or 3D model by means of computer

7    programs.  That's the definition.

8    A. ██████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

████████████████████

14        There is not a common understanding of that

15   term among normal software engineers or security

16   practitioners.

17        A more common understanding of that term, for

18   example, would be to say that a web page was rendered

19   on the screen, which you will see does not fit with

20   that definition.

21   Q. █████    ████████████████████████████

█████████████████████████████

23        MR. GROSS:  Vague.  Foundation.

24        Go ahead.

25        THE WITNESS:  In this -- here again, I

1    apologize.  I'm not trying to be difficult.  █████

2    █████████████████████████████████████

3        ████████████████████████████████

4    █████████████████████████████████████

5    ██████████████████████████████████████

6    █████████████████

7    BY MR. VINE:

8         Q. Does iOS render itself on an iPhone?

9         A. Given the concerns expressed about the term

10   "render," is there any other way you are willing to

11   ask this question?

12        Q. Well, had iOS -- how do you see iOS on an

13   iPhone?

14             MR. GROSS:  Objection.  Vague.

15             Go ahead.

16             THE WITNESS:  When you run iOS on an iPhone,

17   you run an enormous amount of code and system

18   components.  One or more of those components are

19   involved in actually drawing graphics on the screen

20   which creates the visual appearance of the user

21   interface and that's what users perceive to be the

22   operating system.

23             Does that answer your question?

24   BY MR. VINE:

25        Q. Not exactly, but I'll move on.

```
1              On this issue, do you think the Corellium
2      Apple product is a unique idea?
3              MR. GROSS:  Objection.  Foundation.
4              You may answer.
5              THE WITNESS:  The idea, no.
6      BY MR. VINE:
7          Q. Okay.  What is the idea?
8              MR. GROSS:  Foundation.
9              THE WITNESS:  The idea of the Corellium
10     product -- I'm sorry, go ahead.
11             MR. GROSS:  Go ahead.  The objection was
12     foundation.
13             You may answer.
14             THE WITNESS:  ████████████████████
15     ████████████████████████████████
16     ████████████████████████████████
17     ████████████████████
18     BY MR. VINE:
19         Q. Okay.  And where did you get that
20     understanding from?
21         A. ████████████████████
22     ████████████████████████████
23     ████████████████████████████
24     ████████████████████
25             Q. Okay.  So it's your testimony under oath that
```

Page 80

1    ████████████████████████████████████████████

2    ████████

3         A.████████████

4         Q. Okay.  Has anyone been able to create

5    virtualization of iOS on mobile devices?

6         A. Can you explain what you mean by that?

7         Q. Do you know what virtualization is?

8         A. Yes.  I'm asking about the part where you

9    said virtualization on mobile devices.  Can you ask

10   that differently?

11        Q. Sorry, no.  iOS on mobile devices, for

12   example, you're virtualizing the iOS that would be

13   otherwise on a mobile device.

14        MR. GROSS:  Can I hear it again, please?

15   BY MR. VINE:

16        Q. Okay. ████████████████████████████

17   ████████████████████████████████████████████████

18   ████████████████████

19        MR. GROSS:  Vague and foundation.

20        You may answer.

21        THE WITNESS: ██████████████████████████

22   █████████████████████████████████████

23   BY MR. VINE:

24        Q. Okay. ████████████████████████████

25   ████████████████████████████████



1    A.

2

3

4

5

6

7

8

9

10

11

12    Q.

13

14

15    A.

16    Q.

17    A.

18    Q.

19

20

21    A.

22    Q.

23

24

25            MR. GROSS:   Foundation.



1          THE WITNESS:

2

3

4

5

6

7    BY MR. VINE:

8          Q.

9

10         A.

11

12

13

14         Q.

15

16         A.

17         Q

18

19         A.

20         Q.

21

22

23

24

25         A.

Page 83

1 

2 

3 

4 

5 

6      Q. Okay.

7 

8 

9      A.

10 

11 

12 

13 

14      Q. What are jailbreakers?

15      A. Jailbreakers are a community of folks who

16   seek to usually weaken or remove security

17   restrictions on a given piece of technology, Apple or

18   not, in order to have a different experience of using

19   that technology.

20      Q.

21 

22      MR. GROSS:  Vague.

23      THE WITNESS:

24 

25

1    ██████████████████████

2    BY MR. VINE:

3        Q. ████████████████████████

4        A. ██████████████████████████████████

5  ████████████████████████████████████████

6        Q ████████  ████████████

7        A. ████████████████████

8        MR. GROSS:  I'm sorry, hold on.  Before you

9  answer, I'm concerned that it -- this might be

10  confidential personnel information.

11        So I'd like to ask Ms. Gorton and Mr. Wade to

12  leave the room.

13        MR. VINE:  She's allowed for confidential.

14  You're saying it's highly confidential?

15        MS. CONSTANTINE:  Is that a yes?  Sorry.

16        MR. GROSS:  I'm thinking.  Please give me a

17  moment.

18        MS. CONSTANTINE:  Chris, you can leave the

19  room.

20        MR. GROSS:  No, I think Ms. Gorton can stay

21  to the answer of this question.  Let me know when we

22  can proceed.

23        MS. CONSTANTINE:  Mr. Wade has left the room

24  and Amanda is still in the room.  Thank you.

25        MR. GROSS:  Thank you.

Page 85

```
 1          THE WITNESS: ███████████████████████
 2     ████████████████████████████████████████
 3     █████████████████████████████████████
 4     BY MR. VINE:
 5          Q.  ███████████████
 6          A ████████████████████████████████
 7     ████████  ███████████████████████████ ██
 8     ████████████████████████████████████████
 9     ███████  ██████████████████████████
10          Q.  ███████████████
11          A.  █████████████████████
12          Q.  ███████████████████████████████
13     █████████████████████
14          A.  ███████████████ ████████████████
15     ████████████████████████████████████████
16     ███████████████
17          Q.  █████████████████████████████
18          A.  ██████
19          Q.  ████████  ████████████████████
20          A.  ████████████
21          MR. GROSS:  Objection.  Foundation.
22     BY MR. VINE:
23          Q.  ██████████████████████████████
24     ████████████████████
25          A.  ██████
```



Page 86





Page 87

1 ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4 ▮▮▮▮▮▮▮▮▮▮▮▮▮

5   Q. ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮

6   A. ▮▮▮▮▮▮▮▮▮▮

7   Q. ▮▮▮▮▮▮▮

8   A. ▮▮▮

9   Q. ▮▮▮▮▮

10  A. ▮▮▮▮▮▮▮▮▮

11 ▮▮▮▮▮ ▮▮▮▮

12        MR. GROSS:  Before you do -- pardon me,

13  pardon me.  Excuse me.  Pardon me, before you do,

14  it's getting awfully technical.  I'm going to ask

15  Ms. Gorton to step out before you give the answer,

16  please.

17        MS. CONSTANTINE:  Amanda, you can step out.

18  Just give me one second.

19        MR. GROSS:  Okay.

20        MS. CONSTANTINE:  Okay.  Amanda has left the

21  room.

22        MR. GROSS:  Okay.  Thank you.

23        THE WITNESS:  May I proceed?

24  BY MR. VINE:

25        Q. Yes.



1    A.

2

3

4    Q.

5    A.

6    Q.

7    A.

8

9

10

11

12    Q.

13

14    A.

15    Q.

16

17    A.

18    Q. Okay.

19

20    A.

21    Q.

22

23    A.

24

25    Q. Sure.

Page 89



16          MR. GROSS:  Objection.  Foundation.

17     BY MR. VINE:

```
1              MR. GROSS:  Objection.

2       BY MR. VINE:
```



```
12              MR. GROSS:  Excuse me, excuse me, pardon me.

13      Can you hear me?

14              THE WITNESS:  Yes.

15              MR. GROSS:  I lost the audio.  I need you to

16      stop for a second.  Time out.

17              Can anyone hear me?

18              MR. VINE:  Yes, we can hear you.  Can you

19      hear us?

20              MR. GROSS:  The phone line cut out.  Please

21      give me a few seconds to get back in.  Right now, I'm

22      on a very delayed computer audio.  Bear with me.

23              MR. VINE:  Okay.

24              THE WITNESS:  After -- Mr. Vine, perhaps

25      after this line of questioning, I would love to take
```

1    a short break.

2            MR. VINE:  Sure.  As soon as Gabe is back on,

3    I'll have one or two follow-up questions and then

4    we'll move on -- then, we'll get a break.

5            THE WITNESS:  Thank you very much.

6            MR. VINE:  And you can call me Jonathan.  You

7    don't have to call me Mr. Vine.

8            THE WITNESS:  Thank you.

9            MR. VINE:  I'm not that old.

10           (Whereupon, there was a discussion off the

11   record.)

12           MR. VINE:  Let's take a five-minute break.

13           (Whereupon, a break was taken.)

14           (The record was read by the Reporter.)

15           MS. CONSTANTINE:  I'm going to have Amanda

16   and Chris step out of the room.

17           (The record was read by the Reporter.)

18           MR. GROSS:  So I want wanted to thank the

19   court reporter for reading the last partial question

20   and answer.  We had an audio difficulty.  This is

21   Gabe Gross.

22           I wasn't able to participate in the last

23   question and answer, but it's been read to me.

24           So I'd like to interpose an objection.  It

25   may call for privileged communication and caution the

1    witness not to reveal any communications with counsel

2    in that answer.

3         It also elicits highly confidential

4    information and, for that reason, Ms. Gorton and Mr.

5    Wade have stepped out of the room.

6         With that objection, I'm fine with

7    proceeding.

8    BY MR. VINE:

Page  93



Page 94



1

2

3

4

5

6          (Reporter clarification.)

7

8

9

10

11

12     BY MR. VINE:

13

14

15

16

17

18

19

20

21

22

23

24

25





A. Can you ask that question in a different way, please?

Q. Sure. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇



```
20        Q. Thank you.  Sir, I want -- I have a couple

21   questions. ████████████████████████

22   ████████████████████████████████

23        ████████████████████████████████

24   ████████████████████

25        A. ███████████████████████████████
```



Q. Okay.

A.

Q. Okay.

A.

Page 99





Page 101



```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18   Q. Okay.
19   A.
20
21   Q.
22
23   A.
24
25
```

Page 102

1   ████████████████████████████████

2   Q. ████████████████████████████████

3   ████████████████

4   A. ████████████████████████████████

5   ████████████████████ ████████████████

6   ████████████████████████

7   Q. ████████████████████████████

8   ████████████████████████████

9   A. ████████████

10  Q ████████████████████████████████

11  ████████████████████████████

12  ████████████████

13  ████████████████████████████████

14

15

16

17

18

19      MR. GROSS:  Foundation.

20      THE WITNESS: ████████████████

21  ████████████████████████████████

22  ████████████████████████

23  ████████████████████████████████

24  ████████████████

25      ████████████████████████████



1

2

3    BY MR. VINE:

4        Q. We're going to get to the area of

5    virtualization in a couple of minutes.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 104

 1

 2

 3

 4

 5

 6

 7     Q.

 8

 9

10     A.

11     Q. Do you have an understanding of what good

12  faith security research means?

13     A. I have a colloquial understanding, yes.

14     Q. What's your understanding?

15     A. Good faith security research is a term that I

16  think is similar or related to white hat hackers

17  which is something you asked about earlier in that it

18  is security research done specifically with the goal

19  of finding vulnerabilities and then getting them

20  addressed, reported to vendors so that users can be

21  protected.

22

23

24

25



```
12        MR. VINE:  Let's take a break.

13        (Whereupon, a break was taken.)

14   BY MR. VINE:

15        Q. So do you know who Jon Andrews is?

16        A. Yes, I do.

17        Q. Okay.

18

19

20        A.

21        Q. Okay.

22

23

24

25        A.
```



Page 107

1 ▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5 ▮▮▮▮▮▮▮▮▮▮▮

6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9 ▮▮▮▮▮▮▮▮▮▮▮

10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11 ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮

12 ▮▮▮▮▮▮▮▮▮▮

13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15 Q. ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮

16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18 A. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21 ▮▮

22 Q. ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮

23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24 ▮▮

25      A. One moment.



1        Sorry, I found it just now.  I have this on

2    my screen.  Just give me one moment to read the

3    document.

4        I think I have reviewed this document.

5        Q. Okay.

6

7

8        A.

9        Q.

10

11

12        A.

13        Q.

14        MR. GROSS:  Foundation.

15        THE WITNESS:

16

17

18

19

20

21

22

23

24

25

Page 109



1    BY MR. VINE:

2         Q.

3

4

5

6         A.

7         Q.

8

9

10

11        A.

12        Q.

13        A.

14

15

16

17

18

19

20

21

22

23        Q.

24

25

Page 110



1    A. I █████████████████████████████

2    Q. Okay. ███████████████████████

3    ██████████████████████████████

4    A. █████████████████████

5    Q. Okay. ██████████████████

6    ████████████████████████

7    A. ████████████████████████████

8    ██████████████

9    ████████████████████████████

10   ██████████████████████████████

11   █████████████████████████████

12   █████ ) ███████████████████████.

13   ████████████████████████

14   ██████████████████████████████

15   ██████████████████████████████

16   █████████████████ ████████████

17   ██████████████████████████████

18   ██████████████████████████████

19   █████████████████████

20   Q. ███████████████████████

21   ██████████████

22   A. ██████

23   Q. Okay. ███████████████████████

24   ██████████████████████████████

25   ██████████████████████████████

Page 111

1
2
3    A.
4    Q.
5
6
7    A.
8    Q. Okay.
9
10        MR. GROSS:  Objection.  Foundation.  Vague.
11        MR. VINE:  I'll ask it a different way.
12   BY MR. VINE:
13   Q.
14
15   A.
16   Q.
17   A. Can you ask that question --
18   Q.
19
20
21
22   A.
23   Q.
24        A. Gabe and others, I'm not sure who is still in
25   the room.  This goes into some extremely sensitive

```
 1    product confidential information.

 2            Are we all clear to proceed?

 3            MR. GROSS:  Thank you.  I understand you're

 4    the only non-lawyer and non-court reporter in the

 5    room.

 6            Lizza, can you confirm that, please?

 7            MS. CONSTANTINE:  That's correct.

 8            MR. GROSS:  Go ahead.  We already designated

 9    the transcript highly confidential and AEO.  I'll

10    just reinforce that.

11            You can answer the question.

12            THE WITNESS:  Thank you.  ████████████

13    ███████████████████████████████████████████████

14    ████████████████████████████████████████

15    ███████████████████████████████████████████████

16    ███████████████████████████████████████████████

17    █████████████████████████████████████████

18    █████████████████████████████  ████████████████

19    ███████████████████████

20    BY MR. VINE:

21        Q. Okay.  ████████████████████████████████

22    ███████████████████████

23            MR. GROSS:  Foundation.

24            THE WITNESS:  ████████████████

25    BY MR. VINE:
```



```
 1      Q. Okay.
 2
 3      A.
 4      Q.
 5      A.
 6      Q.
 7      A.
 8      Q.
 9      A.
10      Q
11
12      A.
13      Q.
14      A.
15      Q.
16
17      A. Can you ask that question differently?
18      Q. Sure.
19
20      A.
21      Q.
22      A.
23
24
25      Q.
```

Page 114

1

2      A

3

4      Q. Okay.

5      A.

6

7

8

9

10

11      Q.

12

13

14          MR. GROSS:  Vague and ambiguous.

15          You can answer.

16          THE WITNESS:

17

18  BY MR. VINE:

19      Q.

20

21

22      A.

23

24

25      Q.

Page 115



7          MR. GROSS:  Vague.

8          THE WITNESS:

9

10   BY MR. VINE:

11        Q. Okay.

12

21        Q. Okay.

Page 116

1

2

3

4

5

6

7      Q. Okay.  I'm going to do something better.  We

8   had sent an exhibit to you.  It's a Twitter feed.

9      A. Okay.

10      Q. It doesn't have any Bates stamp numbers, but

11   it's one of the exhibits that were sent to you.

12      Can you open that up?

13      A. I see that.

14      Q. It says Twitter --

15      MR. GROSS:  I want to make sure is this the

16   file name ivantwitter.pdf?

17      MR. VINE:  Yes.

18      (Whereupon, Exhibit 6 was marked for

19   identification.)

20   BY MR. VINE:

21      Q. Can you turn to the third page?

22      A. Yes.

23      Q. Okay.  And look at the fifth entry now.  Did

24   you make an entry or was there an entry made on this

25   Twitter feed under Ivan Krstic saying "For testing, I

Page 117

1   actually prefer VMs," period?

2        A. I don't recall this exact tweet, but this

3   looks like my Twitter feed, so I have no reason to

4   believe otherwise.

5        Q. So you did put in on January 12th, 2012 "For

6   testing, I actually prefer VMs," period, correct?

7        A. That is what the page says, yes.

8        Q. Okay.  What's VM?

9        A. Virtual machines.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 118



8        Q.  Okay.  And I think you had indicated that

9    Twitter at Radian, that's your Twitter account,

10   correct?

11        A.  That is correct.

12        Q.  And you have no reason to dispute that you

13   entered this?

14        A.  No, not to my knowledge, no.

15        Q.  Okay.

16

17        A.

18

19        Q.

20        A.

21        Q.

22        A.

23

24

25



17      Q. Do you know of any company that can

18   virtualize macOS on non-Apple hardware?

19      A. I apologize, I'm not sure about non-Apple

20   hardware.  I'm familiar with companies that can

21   virtualize macOS on Apple Mac hardware.

22      Q. Okay.

23

24

25

Page 120



1         A.

2

3

4

5         Q.

6              (Simultaneous conversation.)

7              MR. GROSS:  I was asking the witness to be

8    allowed to finish his answer before the next

9    question.

10   BY MR. VINE:

11        Q. Okay.  Go ahead.

12        A.

13

14

15

16

17

18

19

20

21

22        Q. Okay.

23

24

25        A.

Q. Back to the Twitter feed, you indicate you
get full system snapshot.  Snapshot of what?

but the idea here is that by not having to go through
the installation process in order to initialize a
virtual machine, you get a snapshot of the immediate
runnable system.

Q. And you would agree with me that makes
research more efficient?

A. I would not agree with you, no.  I wasn't
talking about research at all, but testing and within
the Linux context, to the best of my recollection.

Q. So for testing, it makes it more efficient?

A. In the context of Linux, which is what I

1    believe I was referring to, yes.

2         Q. Okay. █████████████████████████

3    ████████████████████████████████████████

4    █████████████████████

5         A. █████████████████████████████

6    ████████████████████████████████████████

7    ████████████

8    ████████████████████████████████████████
9    ████████████████████████████████████████
10   ████████████████████████████████████████
11   ████████████████████████████████████████
12   ████████████████████████████████████████
13   ████████████████████████████████████████
14   ████████████████████████████████████████
15   ████████████████████████████████████████
16   ████████████████████████████████████████
17   ████████████████████████████████████████
18   ████████████████████████████████████████
19   ████████████████████████████████████████
20   ████████████████████████████████████████
21   ████████████████████████████████████████
22   ████████████████████████████████████████

23   ████████████████████████████████████████
24   ████████████████████████████████████████

25        Q. Fair enough.

1        A. One thing I wanted to ask, with this Twitter

2    feed I asked this, but I think it was maybe taken as

3    rhetorical.  Is there information about what tweet

4    this was in reply to?

5        Q. Do you still have access to your Twitter?

6        A. My Twitter was unfortunately -- well, years

7    ago I basically gave up on Twitter and emptied out

8    all of the tweets.

9        Q. Okay.  Let me ask you a question.  What type

10   of things does -- what types of things constitute

11   security research?

12       A. Broadly, security research is trying to find

13   unintended and unknown weaknesses in any kind of

14   system.

15       Sometimes security research is even done on

16   physical systems like, for example, actual locks,

17   trying to understand how they work and how they could

18   be opened without the key.

19       In the computer security context, it's a

20   similar premise.  It's any activity that is designed

21   to find unintended or unknown weaknesses in a

22   system -- in a system under research.

23       Q. What are some of the methods you use?

24       A. For -- given my personal background, most of

25   the security research that I found that I've done in

Page 124

1    the vulnerabilities that I have discovered have been

2    through source code inspection, and certain kinds of

3    runtime debugging, D-E-B-U-G-G-I-N-G.

4        Q. Anything else?

5        A. Not for me personally.  Of course, there are

6    many other techniques that are used broadly in the

7    community.

8        Q. Okay.

9        MR. VINE:  Now is a good time for a 15, 20,

10   30-minute break.  I probably have -- I probably have

11   about an hour and a half, an hour, maybe, after this.

12       MR. GROSS:  If it's all right with you, then,

13   let's reconvene at 2:00 p.m. Pacific, 5:00 for you

14   and then hopefully we can get your last hour done.

15       MR. VINE:  Okay.

16       MR. GROSS:  Thanks everyone.

17       (Lunch recess taken.)

18

19

20

21

22

23

24

25

Page 125



Page 126



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19       Q. It does.

20

21           MR. GROSS:  One second, please.  Lizza, can I

22   hear who's in the room with you?

23           MS. CONSTANTINE:  There's no one in the room

24   with me.  It's just me.

25           MR. GROSS:  Okay.  Thank you.  Please

Page 127



1    continue.

2          THE WITNESS:

3

4

5

6

7    BY MR. VINE:

8          Q. Okay.

9

10         A.

11

12

13

14

15          (Reporter clarification.)

16          THE WITNESS:

17

18

19

20

21

22    BY MR. VINE:

23          Q. Okay.

24

25

Page 128

```
 1        A.  ███
 2        Q.  Okay.  ██████████████████████████
 3   ██████████████████████████████
 4             MR. GROSS:  Let me object to the extent it
 5   calls for a legal conclusion.
 6             You may answer the question.
 7             THE WITNESS:  ███████████████████
 8   ████████████████████████████
 9   ██████████████  ████████████████
10   █████████████████████████████
11   ████████
12   BY MR. VINE:
13      ████████████████
14        A.  █████████████████████████████
15   ████████████████████████
16     █████████████████████████████
17   ██████████████████████████
18   █████████████████████████████
19   ██████████████████████████
20   ████████
21   ████████████████████████████████████
22   ████████████████████████████████████
23   ████████████████████████████████████
24   ████████████████████████████████████
25   ████████████████████████████████████
```

Page 129

1    A. ████████████

2    Q. Okay. ████████████████████

3    ████████████████████

4    A. ████████████████████

5    ██████████████

6    Q. ████████████████████

7    ████████████████████

8    ██████████  ████████████

9    A. ████████████████

10   Q. Okay. ████████████████

11   ████████████████████████

12   ████████████████████████

13        MR. GROSS:  Vague.

14        THE WITNESS: ████████████

15   BY MR. VINE:

16   ████████████████████████████

17   ████████████████████████████

18   ████████████████████████████

19   ████████████████████████████

20   ████████████████████████████

21   ████████████████████████████

22   ████████████████████████████

23        MR. GROSS:  Vague.

24        THE WITNESS:  Sorry, go ahead.

25        MR. GROSS:  Objection.  Vague.

Page 130

```
1          You may answer.

2          THE WITNESS: ████████████████████████

3    ██████████████████████████████████████████

4    █████████████████████████

5    BY MR. VINE:

6          Q. Okay. ██████████████████████████

7    ████████████████████

8          A. ██████████████████████████████████

9    ██████████████████████████████████████████

10   ████████████████████████████████████

11         Q. ██████████████████████████████████

12   ████████

13         A. ████████████████████████████████████

14   ██████████████████████████████████

15         Q. ████████████████████████████████████

16   ████████████████

17         MR. GROSS:  Incomplete hypothetical.

18         Go ahead.

19         THE WITNESS: It's ████████████████████

20   ████████ ) ████████████████████████████████

21   ██████████████

22   BY MR. VINE:

23      ████████████████████████████████████████

24   ██████████████████████████████████████

25   ██████████████████
```

Page 131

1          MR. GROSS:  Same objections.

2          Go ahead.



6     BY MR. VINE:



Page 133



1

2

3

4        Q. Okay.

5

6        A.

7        Q.

8

9        A.

10

11

12        Q.

13        A.

14

15

16        Q.

17        A.

18        Q. Okay.

19

20

21             MR. GROSS:  Objection.  Hold on, hold on.

22        Sorry.  Hold on.  I object that it calls for a legal

23        conclusion and lacks foundation.

24             Now, you can answer.

25        BY MR. VINE:

Page 134

```
 1          Q. ███████████████████████████████████
 2     ████
 3          MR. GROSS:  Objection --
 4          THE WITNESS: ████████████████████
 5     BY MR. VINE:
 6          Q. █████████████████████████████████
 7          MR. GROSS:  Same objections.
 8          You may answer.
 9     ████████████████████████████████████████████
10     ████████████████████████████████████████████
11     ████████████████████████████████████████████
12     ████████████████████████████████████████████
13     ████████████████████████████████████████████
14     BY MR. VINE:
15          Q. Okay. ███████████████████████████
16     ████████████████████████████
17          A. ████████████████████████████████
18     ██████████████████████████
19          Q. ██████
20          MR. VINE:  We're going to mark as Exhibit 7
21     which is ███████████ and it's a confidential
22     document, so Amanda can stay, it's ██████████
23     Actually, not stay but come in because I don't think
24     she's been in the room.
25          MS. CONSTANTINE:  I will have Amanda come in.
```

1    Just one second.

2              (Whereupon, Exhibit 7 was marked for

3    identification.)

4              THE WITNESS:  I have the document open.

5    BY MR. VINE:

```
 1    and that document, again, I testify is confidential

 2    so Amanda can stay - ██████████████████

 3              (Whereupon, Exhibit 8 was marked for

 4    identification.)

 5              THE WITNESS:  I have it open.  Give me one

 6    moment to read this.

 7    BY MR. VINE:

 8         Q.  Okay.

 9    ████████████████████████████████████████████

10    ████████████████████████████████████████████

11    ████████████████████████████████████████████

12    ████████████████████████████████████████████

13              MR. GROSS:  Sorry, which one, Counsel?

14    ████████████████████████████████████████████

15    ████████████████████████████████████████████

16              THE WITNESS:  I have this on my screen, yes.

17    BY MR. VINE:

18    ████████████████████████████████████████████

19    ████████████████████████████████████████████

20    ████████████████████████████████████████████

21    ████████████████████████████████████████████

22    ████████████████████████████████████████████

23    ████████████████████████████████████████████

24    ████████████████████████████████████████████

25    ████████████████████████████████████████████
```



```
 1

 2

 3

 4

 5

 6

 7          Q.  Okay.  So give me a second and I'll get that

 8     exhibit number.

 9              If you'd turn to -- we'll make this as

10     Exhibit 8 [sic].  It's a confidential document.

11

12              (Whereupon, Exhibit 9 was marked for

13     identification.)

14              THE WITNESS:  I've reviewed the document,

15     thank you.

16     BY MR. VINE:

17

18

19

20

21

22

23

24          Q.  Okay.  If you can pull the next exhibit which

25     is a Corellium document,                    that we'll
```

1    mark as Exhibit 9 [sic].

2              (Whereupon, Exhibit 10 was marked for

3    identification.)

4              MR. GROSS:  Hold on, please.  I need to catch

5    up.  ███████████████

6              MR. VINE:   ██████  It's a document we

7    produced.

8              MR. GROSS:  I've got it.  Mr. Krstic, do you?

9              THE WITNESS:  I have ███████ on my screen, yes.

10   BY MR. VINE:

11        Q.  ██████████████████████████████████

12   █████████████████████████████

13        A.  █████████████

14        Q.  █████████████████████████████

15   ███████████████████████████████████████

16             MR. GROSS:  Foundation.

17             THE WITNESS:  ███████████████████████

18   ████████████

19   BY MR. VINE:

20   ████████████████████████████████████████

21   ████████████████████████████████████████

22   ████████████████████████████████████████

23   ████████████████████████████████████████

24   ████████████████████████████████████████

25   ████████████████████████████████████████

Page 139



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25          MR. VINE:  I'm going to mark -- I think it's

1    Exhibit 9 or 10 -- I think it's Exhibit 10 [sic],

2    which is an attorneys' eyes only document, ████████

3    ████████████████████████████████████████████████ )

4    ████████████████████████████████ )

5          MR. GROSS:  Before you ask your question --

6          MS. CONSTANTINE:  I will have Amanda leave

7    the room.

8          (Whereupon, Exhibit 11 was marked for

9    identification.)

10          THE WITNESS:  I have the document on my

11    screen.  I wanted to ask after this line of

12    questioning is done a very short, few-minute break

13    would be appreciated.

14    BY MR. VINE:

15        Q. I didn't even get to ask you the question, so

16    there is no open question.  So if you want to take a

17    break now, by all means, I will accommodate.

18        A. I would appreciate that and I'll be back in

19    less than three minutes.

20        Q. No problem, Ivan.

21          (Whereupon, a break was taken.)

22    BY MR. VINE:

23    ████████████████████████████████████████████████

24    ████████████████████████████████████████████████

25    ████████████████████████████████████████████████

Page 141



Page 142



24          MR. GROSS:  Objection.  That misstates

25      testimony.

Page 143



```
 4        BY MR. VINE:



 9             Q.  Okay.  Now, let's go to the Corellium --


12             A.  It's on my screen.

13             MR. GROSS:  Before you ask your question,

14        Lizza, can you remind me who, if anyone, is in the

15        room with you?

16             MS. CONSTANTINE:  There's no one in the room

17        with me.

18             MR. GROSS:  Thank you.  I appreciate it.

19        BY MR. VINE:
```





Page 146



Provided by Martell Associates 800-636-1136



```
 1

 2

 3

 4

 5

 6

 7

 8

 9            MR. GROSS:  Just object to the line of

10    questioning about unannounced or future products as

11    entirely irrelevant.

12            MR. VINE:  Okay.

13    BY MR. VINE:

14        Q. You can go on.

15

16

17

18

19            MR. GROSS:  So I -- I wanted to -- well, we

20    have -- we're under the AEO, the attorneys' eyes only

21    designation, which I think is appropriate here, but I

22    think we have some Court guidance to the extent any

23    of this testimony is relevant much less discoverable

24    right now.

25            You can keep your testimony to a high level
```

1       to answer Mr. Vine's question.  Why don't we start

2       with that.  I'm not sure how deep he expects to go

3       into this.

4              MR. VINE:  Let me make sure the record is

5       clear.

6

7

8

9

10

11

12

13

14

15

16      BY MR. VINE:

17          Q. Fair enough.

18

19

20

21

22          A. As

23

24

25          Q. Okay.  I'll move on.

Page 149

1        A. Thank you very much.

2        Q. No problem. ███████████████████████████

3     ██████████████████████████████████████████

4     ████████████

5        A. ██████████████████████████████████

6     ████████████████████████████████████████████
7     ████████████████████████████████████████████
8     ████████████████████████████████████████████
9     ████████████████████████████████████████████

10       MR. GROSS:  Foundation.

11       Go ahead.

12    ████████████████████████████████████████████
13    ████████████████████████████████████████████
14    ████████████████████████████████████████████
15    ████████████████████████████████████████████

16    BY MR. VINE:

17    ████████████████████████████████████████████
18    ████████████████████████████████████████████
19    ████████████████████████████████████████████
20    ████████████████████████████████████████████
21    ████████████████████████████████████████████
22    ████████████████████████████████████████████
23    ████████████████████████████████████████████
24    ████████████████████████████████████████████
25    ████████████████████████████████████████████

Page 150





Provided by Martell Associates 800-636-1136

Page 152



Page 153



9          Q. Sure.  If you can take a look at -- it's an

10     attorneys' eyes only document,

11

12

13          MR. GROSS:  I need the number one more time,

14     please.

15          MR. VINE:

16          THE WITNESS:  I have this in front of me.

17          MR. VINE:  It's the next number.  I don't

18     remember if it was 10 or 11.

19          (Whereupon, Exhibit 12 was marked for

20     identification.)

21          MS. CONSTANTINE:  It will be 11 [sic].

22          MR. VINE:  Perfect.

23     BY MR. VINE:

24          Q.

25





1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3 ▮▮▮▮▮

4      Q. ▮▮▮▮

5      MR. VINE:  Let's mark this as Exhibit 12

6 [sic].  It's an attorneys' eyes only document, ▮▮

7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8 ▮▮▮

9      (Whereupon, Exhibit 13 was marked for

10 identification.)

11      THE WITNESS:  I have it.

12      MR. GROSS:  You may have misspoken about the

13 date, or I may not have heard it right.

14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16 BY MR. VINE:

17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



19   Q. Okay. ████████████████████████

20   ████████████████████████

21   A. ████████████████████████

22   Q. ████████████████████████████

23   ██████

24   A. ████████████████████

25   Q. ████████████████████████



158



Q. If we could turn to I think it's Exhibit 13

[sic] now, ▮▮▮▮▮▮▮▮▮▮ -- it's an attorneys' eyes

only document ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮ ▮▮▮▮▮▮▮▮▮▮

(Whereupon, Exhibit 14 was marked for

identification.)

THE WITNESS:  I have it on my screen.

BY MR. VINE:

Q. Okay. ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮

A. ▮▮▮▮▮▮▮▮▮▮





Page 160

1

2

3

4

5

6

7        MR. VINE:  If we can mark as Exhibit 14 [sic]

8

9

10

11

12        (Whereupon, Exhibit 15 was marked for

13    identification.)

14    BY MR. VINE:

15        Q. Do you have that document?

16        A. I have it on my screen.

17

18

19

20

21

22

23

24

25



Page 161

11    MR. VINE:  Let's go to ▮▮▮▮▮▮▮▮) --

12  sorry, ▮▮▮▮▮▮▮▮▮).  We'll mark that as

13  Exhibit 15 [sic].

14        (Whereupon, Exhibit 16 was marked for

15  identification.)

16        THE WITNESS:  I have it on my screen.

17  BY MR. VINE:

Page 162



```
 1
 2
 3
 4
 5
 6          MR. VINE:  Next exhibit,
 7          , it's attorneys' eyes only.
 8          MR. GROSS:  Just give me a moment.  I don't
 9    see that one yet in the ones you sent over.
10          MR. VINE:
11          THE WITNESS:  I don't appear to have that
12    document.
13          MR. VINE:  Fine.  I'll move on, not a big
14    deal.  I'll withdraw that.
15    BY MR. VINE:
16        Q. The                          can you take a look
17    at that?  We'll mark that as the next exhibit.
18        A. Yes.  Please allow me a moment to read that.
19        Q. Yes.
20          (Whereupon, Exhibit 17 was marked for
21    identification.)
22          THE WITNESS:  Thank you.  I reviewed it.
23    BY MR. VINE:
24
25
```

Page 164



21          MR. GROSS:   Compound.

22          Go ahead.

23     BY MR. VINE:

Page 165



Page 166



**Provided by Martell Associates 800-636-1136**



1

2

3

4      Q. Can you unknowingly lie?

5      A. Is that a philosophical question?

6      Q. You're the one who said "knowingly."  I've

7   never heard anybody say that.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 168



1

2

3          A. If it's okay at about 3:30 -- perhaps at

4      3:30, in about ten minutes, we can take a short

5      break.

6          Q. Okay.  Not a problem.

7

8

9

10

11

12

13

14          MR. GROSS:  Foundation.

15

16

17          MR. GROSS:  Go ahead.  I objected to

18      foundation.

19          You may answer.

20

21

22

23

24

25

Page 169



BY MR. VINE:

1 ███████████████████████████████████████

2 ███████████████████████████████████████

3      Q. Sure.  It's an attorneys' eyes only document,

4 ██████████████████████████████

5           (Whereupon, Exhibit 18 was marked for

6     identification.)

7           MR. GROSS: ███████████████████████

8 ███████████████████ ) ██████████████████ )

9           MR. VINE: ████████ ) █████████████████████

10 █████ )

11           MR. GROSS:  No, I don't have that.

12           (Simultaneous conversation.)

13           MS. CONSTANTINE:  I can send it to you right

14     now you.

15           THE WITNESS:  Perhaps we could take a

16     three-minute break now?

17           MR. VINE:  Sure.

18           MR. GROSS:  Thank you.

19           MR. VINE:  No problem.

20           (Whereupon, a break was taken.)

21     BY MR. VINE:

22           Q. So did you get the document?

23           A. Oh, sorry, let me look.

24           Yes, I have it on my screen.

25 ████████████████████████████████████████



Page 172



21          MR. GROSS:  May I hear that again?  I'm

22     sorry, I missed the question.

23          MR. VINE:  Not a problem.

24     BY MR. VINE:

25



73

          Q.  Okay.  If we could turn to the next exhibit

     that we'll mark, it's a ▮▮▮▮▮▮▮▮ attorneys' eyes

1      only, 

2          A. I have it.

```
1


2


3


4


5


6


7

8              MR. GROSS:  Objection.  Foundation.

9              You can answer.  Make sure when you do, you

10     don't reveal the substance of any conversations you

11     had with attorneys.  But you can answer the question.

12


13


14


15

16     BY MR. VINE:

17         Q. You don't have anything wrong -- you haven't

18     been diagnosed at all or on any medication that would

19     somehow impact your memory; is that correct?

20              MR. GROSS:  Objection.  Argumentative.

21              THE WITNESS:  No.  Let me take that as if you

22     intended it good-naturedly and say that in the --

23     BY MR. VINE:

24         Q. Sir, sir, sir --

25              MR. GROSS:  Let him finish his answer.
```

Page 176

1    BY MR. VINE:

2         Q. I'm going to make my statement.  He accused

3    me of doing something inappropriate.  It is a

4    standard question in any deposition asking about

5    somebody's memory.

6              So it is not meant to offend you.  That is

7    asked at every deposition.

8         A. And I replied by saying yes, I will take it

9    exactly as that, which is in good faith, that was no

10   accusation in what I replied with.

11             So my point was that no, it's -- I have no

12   known disability with memory, but I do have a job

13   where I participate in thousands of meetings and send

14   thousands of e-mails and text messages which means

15   that it's basically impossible to try and recall the

16   specific details of most of them.



23             MR. GROSS:  Again, you may answer the

24   question if you can do so without revealing any

25   communications you might have had with counsel.



7   BY MR. VINE:

11        Q. Okay.  Are you aware that -- are you aware

12   that Corellium had a party at Black Hat in Las Vegas

13   or at that event, the Black Hat conference?

14        A. Yes, I answered that two questions ago and

15   yes, I vaguely recall Chris mentioning something to

16   that effect, but I don't remember any of the

17   specifics.

18        Q. Did you attend that party?

19        A. No, not that I recall.

20        Q. Are you aware that five people from Apple

21   attended that party?

22        A. No, I'm not.

23        Q. Do you know what Capture the Flag is?

24        A. In the security context, yes.

25        Q. Yes.

Page 178



12          MR. VINE:  This is an attorneys' eyes only

15          (Whereupon, Exhibit 19 was marked for

16     identification.)

17          MR. GROSS:  One second.

18          Okay.  I'm ready when you are.

19          THE WITNESS:  Ready.  I have it on my screen

20     and I've reviewed it.  Thank you.

21     BY MR. VINE:



Page 180



```
 1
 2
 3
 4
 5        MR. VINE:  Then, I want to mark the next
 6   exhibit which is ███████████   another
 7   attorneys' eyes only document ███████████
 8   ███████████
 9        A. I have it on my screen.
10           (Whereupon, Exhibit 20 was marked for
11   identification.)
12   BY MR. VINE:
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 181



Page 182



Page 183



20          (Simultaneous conversation.)

21      BY MR. VINE:

Page 184



Page 185



Page 186



Page 187



Page 188

1

2          Q. That's fine.  I will.

16          Q. I'm going to give you that document.  I

17    believe it was sent to you all and it's

18

19               MR. GROSS:  Hold on, please.

20               Okay.  I have it.  Mr. Krstic, do you have

21    it?

22               THE WITNESS:  I have it.  I have it on the

23    screen.

24               (Whereupon, Exhibit 21 was marked for

25    identification.)

Page 189

1    BY MR. VINE:



13          Q. Okay.

15          MR. GROSS:  Foundation.

16    BY MR. VINE:

Page 190



15          MR. GROSS:   Foundation.

16          You may answer.

17      BY MR. VINE:

18

19

20

21

22          Q. Can you turn to the next document which is

23      now attorneys' eyes only, which is ███████████████

24      ███████████

25          A. I have it on my screen.

Page 191

1           (Whereupon, Exhibit 22 was marked for

2       identification.)

3       BY MR. VINE:

4           Q. ███████████████████████████████

5       ████████

6           A. That's on the screen.

7           Q. ███████████████████████████████

8       ████████████████████

9           ████████████



Page 192



      Q. Are you aware that you were designated as the

representative of Apple to discuss the bug bounty

program?

      A. Yes.

           MR. GROSS:  Vague and ambiguous.

           You can answer.

BY MR. VINE:

           MR. GROSS:  Before you answer, let me just

caution you not to reveal the substance of your

1    communications with your lawyers or the company's

2    lawyers.

3           But if you can answer Mr. Vine's question by

4    explaining facts that are not privileged

5    communications, you should feel free to do so.

6           THE WITNESS:  Thank you. ████████████

7    ████████████████████████████████████████████

8    ████████████████████████████████████████████

9    BY MR. VINE:

10   ████████████████████████████████████████████

11        A. Can I ask counsel on my side, is this a

12   list --

13          MR. GROSS:  Hold on, hold on, hold on.  So

14   before you ask a question that might elicit a

15   privileged answer, let me just offer something that I

16   think could help.

17   ████████████████████████████████████████████

18   ████████████████████████████████████████████

19   ████████████████████████████████████████████

20   ████████████████████████████████████████████

21          MR. VINE:  That's what I asked him.  ████████

22   ████████████████████████████████

23          (Simultaneous conversation.)

24   BY MR. VINE:

25   ████████████████████████████████████████████

Page 194



4        A. Okay.  Thank you.

95



MR. GROSS:  Vague.

BY MR. VINE:

Page 196



2          MR. GROSS:  Objection.  Compound.

3     BY MR. VINE:

Page 197



BY MR. VINE:



Page 199



MR. GROSS:  Vague.  Foundation.

1          You may answer.

2      BY MR. VINE:

3          Q. You can answer.





Page 202





1

2

3

4

5

6

7

8

9

10

11

12

13     MR. VINE:  Why don't you guys give me two

14  minutes.  I've got to look at my notes and then I'll

15  tell you if I'm done or not.  Okay?

16     MR. GROSS:  That sounds fine.  Thank you.

17     (Whereupon, a break was taken.)

18     MR. VINE:  So we just submitted -- everybody

19  should have received an e-mail with the next exhibit.

20  Did everybody get it?

21     It's Apple amended responses or objections to

22  Corellium's first set of interrogatories.

23  BY MR. VINE:

24     Q. Do you have that?

25     A. I don't have it in my inbox yet.

Page 204

1              MS. CONSTANTINE:  Gabe, I sent it to you.

2              MR. VINE:  Gabe, we need you to approve it so

3       we can send it to Ivan.

4              Are we a go?  Gabe?  We can't hear you.

5              MR. GROSS:  Sorry, I was speaking into a

6       muted phone.  Just bear with me, please.

7              MR. VINE:  No problem.  We couldn't hear you.

8              While he's looking at that, let me ask you

9       this question.

10      BY MR. VINE:

11

12

13              MR. GROSS:  It's vague and ambiguous.

14      BY MR. VINE:

15

16

17

18

19

20

21

22

23

24

25



14          MR. GROSS:  I'm sorry.  Vague and ambiguous.

15      BY MR. VINE:



1

2

3

4

5

6

7

8

9

10     I want you to turn to ████████████

11 ████████████

12          (Whereupon, Exhibit 23 was marked for

13     identification.)

14     BY MR. VINE:

15          Q. And if you look in this document, on page --

16          A. I'm sorry, I don't believe you gave me that

17     that document number.

18          Q. It's the exhibit that Lizza just sent.

19              MR. VINE:  Gabe, did you send it to Ivan?

20              MR. GROSS:  I did.

21              THE WITNESS:  Got it.  One moment.

22     BY MR. VINE:

23

24          A. I'm just waiting for it to download.  One

25     second.

1          I have the page on my screen and I'm just

2     going to read it.

3          Q. Okay.

4          A. Yes.  I just finished reading it.

15          MR. GROSS:  Objection.  Vague and ambiguous.

16     Lacks foundation.

17          MR. VINE:  It's not vague at all.

18     BY MR. VINE:

19          Q. But go ahead and answer.

Page 208



Page 209



Page 210



MR. GROSS:  Vague and ambiguous.



Page 212



1

2

3

4

5

6

7

8

9

10

11          MR. VINE:  I'm done, Ivan.  I appreciate your

12     time.  I don't know if counsel has any questions.

13          Do you, Gabe?

14          MR. GROSS:  I think I have a few.  Why don't

15     we jump into them now.  Hopefully I can do it in

16     short order without the need for a break, but I'm not

17     going to promise that.  I may need five.  So let me

18     get through what I think would be useful, please.

19     One second.

20                    EXAMINATION

21     BY MR. GROSS:

22

23

24

25

Page 213



Page 214





Page 216

1    BY MR. GROSS:



14                 MR. VINE:  Objection.

25    BY MR. GROSS:

Page 217



```
1
2
3
4
5
6
7
8
9
10
11
12
13
14    MR. VINE:
15
16    MR. GROSS:
17    MR. VINE:
18    MR. GROSS:
19
20    MR. VINE:
21    BY MR. GROSS:
22
23
24
25           MR. VINE:  Objection.
```

Page 218



BY MR. GROSS:

Page 219



Page 220

1    Q. █████████████████████████████████

2    █████████████████████████████

3    A. █████████████████████████████████

4    Q███████ ████████████████████ ████████

5    ████████████████████████████████████

6    ███████████████████████████████████

7    ██████████████████████████████████████

8        █████████████████████████████████

9    ████████████████████████████████████

10   ████████

11       MR. VINE:  Objection.

12       THE WITNESS: ████████

13   BY MR. GROSS:

14   ██████████████████████████████████████

15   ██████████████████████████████████████

16   ██████████████████████████████████████

17   ██████████████████████████████████████

18   ██████████████████████████████████████

19   ██████████████████████████████████████

20   ██████████████████████████████████████

21   ██████████████████████████████████████

22   ██████████████████████████████████████

23   ██████████████████████████████████████

24   ██████████████████████████████████████

25   ██████████████████████████████████████

Page 221



24          (Simultaneous conversation.)

25          THE WITNESS:

1    BY MR. GROSS:

13         Q. All right.  I think I'm likely done or close

14    to done.

15              MR. GROSS:  So why don't we take five.

16              MR. VINE:  I have a couple of follow-up.

17              MR. GROSS:  Excuse me, could you just wait

18    until I'm done with the redirect?  If I have no

19    questions, then I'll hand it right over to you.

20              MR. VINE:  Okay.

21              MR. GROSS:  Okay.  Let's take five, please.

22              MR. VINE:  Thank you.

23              (Whereupon, a break was taken.)

24              MR. GROSS:  Back on the record.

25              Jonathan, I'm done questioning.  I pass the

Page 223

```
1    witness.

2              MR. VINE:  Sure.  Thank you.

3                  FURTHER EXAMINATION

4    BY MR. VINE:

5         Q. A couple follow-up questions, Ivan.
```



```
1        Q. ███████████████████████████

2   ████████████████████████████████████

3        A. ████████████████████████████

4   ████████████████████████████████████

5   █████████████████████

6        Q. Okay.  Now, what I don't get is I asked you a

7   number of questions throughout the deposition and you

8   answered █████████████████████████████

9   ████████████████████████████

10  ███████████  You just don't remember.

11              ██████████████████████████

12  ██████████████████████████████

13  ████████████████████████████████████

14  ██████████████████████

15           Can you explain why all of a sudden you have

16  a memory in answering Apple's questions on

17  conversations but you didn't have a memory when I

18  asked you those questions?

19        A. Yes, I'd be happy to try.  The questions that

20  we're asking are in regards to specific dates and

21  ████████████████████████

22  ████████████████████████████████████

23  ██████████████████████████████

24  ████████████████████████

25           Whereas, a couple of things that I pointed
```



Page 225

1    out in response to Mr. Gross' question █████████

2    ████████████████████████████████████████████

3    █████████████

4         Q. Okay. █████████████████████████████

5    █████████████████████████████████

6    ████████████████████  ████████████

7         A. ████████████████████████

8         Q. ████████████████████████████

9    ███████████████████████  ██████████████

10        A. █████████████████████████

11        MR. VINE:  No further questions.

12        You have the opportunity to read or waive.  I

13   suspect your counsel is going to want you to read,

14   but that's up to him.

15        MR. GROSS:  I'll handle that.  We won't be

16   waiving anything.  The witness will check and review

17   and sign his transcript.

18        THE REPORTER:  Would you like to order a

19   certified copy of this deposition?

20        MR. GROSS:  Yes, please.  Nina, if you need

21   to be in touch with somebody from my office to take

22   care of the form, we'll get right on it.

23        THE REPORTER:  Does anybody need a rough

24   draft?

25        MR. GROSS:  Yes, please.

Page 226

1          MR. VINE:  Okay, we'll take a rough draft if

2     they are.  Thank you everybody.  Have a good day.

3          (The deposition of IVAN KRSTIC was concluded

4     at 5:04 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               CERTIFICATE OF WITNESS

2

3       I, IVAN KRSTIC, hereby declare that I have read

4    the foregoing testimony pages 1 through 228,

5    inclusive.  I hereby state there are:

6

7         (check one)

8

9         _____  no corrections

10        _____  corrections per attached

11

12

13    _____

      IVAN KRSTIC

14

15    _____

16    DATE

17

18                    ---o0o---

19

20

21

22

23

24

25

1          I, NINA PAVONE, a Certified Shorthand

2    Reporter, hereby certify that the witness in the

3    foregoing deposition was by me duly sworn to tell the

4    truth, the whole truth, and nothing but the truth in

5    the within-entitled cause;

6          That said deposition was taken down in

7    shorthand by me, a disinterested person, at the time

8    and place therein stated, and was hereafter

9    transcribed, by computer, into typewriting, under my

10   direction and supervision;

11         That before completion of the deposition

12   review of the transcript ( x) was requested ( ) was

13   not requested.  If requested, any changes made by the

14   deponent (and provided to the reporter) are appended

15   hereto.

16         I further certify that I am not of counsel,

17   nor attorney for any of the parties in the foregoing

18   deposition and caption named, nor in any way

19   interested in the outcome of the cause named in said

20   caption, and that I am not related to any of the

21   parties hereto.

22

23   DATE: March 31, 2020

24                      _____

25                            NINA PAVONE, CSR #7802