DEX  4

FOR THE CASE OF

# Apple vs. Corellium

TRANSCRIPT OF

# Craig Federighi

April 17, 2020

**Martell Associates**

PO Box 172718

Tampa, FL 33672

800-636-1136

This transcript is intended for your law firm's own use. If you wish to share this transcript with an outside law firm, log back in to your CasePlannerPro account and click the **Share** button.

For questions, call 800-636-1136
or send an email to info@martellassociates.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA


APPLE INC.,

      Plaintiff,

vs.                          No. 9:19-cv-81160-RS

CORELLIUM, LLC,

      Defendants.

_____/




VIDEOTAPED DEPOSITION OF CRAIG FEDERIGHI

CONFIDENTIAL - ATTORNEYS' EYES ONLY



Date:         Friday, April 17, 2020

Time          8:07 a.m.

Location:     All parties via
               videoconference


Stenographically reported by:

          Nina Pavone, CSR
          License No. CSR-7802




* * * *

Page 2

```
 1                      APPEARANCES

 2       For the Plaintiff:

 3               LATHAM & WATKINS LLP
                 BY:  MICHELE JOHNSON,
 4                    ATTORNEY AT LAW
                 650 Town Center Drive, 20th Floor
 5               Costa Mesa, CA 92626
                 714.540.1235
 6               michele.johnson@lw.com
                 (Via videoconference)
 7
                 LATHAM & WATKINS LLP
 8               BY:  ELANA NIGHTINGALE DAWSON,
                      ATTORNEY AT LAW,
 9               555 Eleventh Street, NW, Suite 1000
                 Washington, D.C. 20004
10               202.637.2303
                 elana.nightingaledawson@lw.com
11               (Via videoconference)

12       For the Defendants:

13               HECHT PARTNERS
                 BY:  DAVID L. HECHT,
14                    ATTORNEY AT LAW
                 20 W. 23rd Street, 5th Floor
15               New York, NY 10010
                 212.851.6821
16               dhecht@hechtpartnersllp.com
                 (Via videoconference)
17               COLE, SCOTT & KISSANE, P.A.
                 BY:  JUSTIN LEVINE and JONATHAN VINE,
18                    ATTORNEYS AT LAW
                 222 Lakeview Avenue, Suite 120
19               West Palm Beach, FL  33401
                 561.383.9222
20               justine.levine@csklegal.com
                 (Via videoconference)
21
         The Videographer:
22
                 Brian Durborow
23               (Via videoconference)

24       Also present:

25               Amanda Gorton, Jesse Koehler
                 (Via videoconference)
```

Page 3

1              I N D E X   O F   E X A M I N A T I O N S

2                                                           PAGE

3    EXAMINATION BY MR. HECHT                                 7

4    EXAMINATION BY MS. JOHNSON                             142

5

6              I N D E X   O F   E X H I B I T S

7

8

9    NUMBER            DESCRIPTION                          PAGE

     Exhibit 1         ████████████████████████   ███

     ████              ███████████████████████
     ████              ██████████

12   Exhibit 2         ████████████████████████   ███

     ████              ██████████████████████

14   Exhibit 3         ██████████████████         ███

     ████              ████████████████

16   Exhibit 4         ████████████████████████   ███

     ████              ███████████████████████

18

19   Exhibit 5         ████████████████████████   ███

     ████              ███████████████████████

21   Exhibit 6         ████████████████████████   ███

     ████              ███████████████████████

23   Exhibit 7         ████████████████████████   ███

     ████              ███████████████████████

25





```
 1                          -oOo-

 2                        PROCEEDINGS

 3

 4           THE REPORTER:  Before we proceed, I will ask

 5      counsel to agree on the record that under the current

 6      National Emergency, due to COVID-19, that there is no

 7      objection to this deposition officer administering

 8      the oath to the witness via remote video conference.

 9      Please state your agreement on the record.

10           MR. HECHT:  On behalf of defendant, I agree.

11           MS. JOHNSON:  We agree as well.

12           THE VIDEOGRAPHER:  We are on the video

13      record.  Today is Friday, April 17th, 2020.  Time is

14      11:09 a.m. Eastern Standard Time.

15           This is Craig Federighi's videotaped

16      deposition regarding Apple Incorporated versus

17      Corellium LLC, filed in the United States District

18      Court, Southern District of Florida, case number

19      9:19-cv-81160-RS.

20           This deposition is being conducted via Zoom.

21      All counsel have agreed that all parties, including

22      the videographer and court reporter, may appear

23      remotely.

24           My name is Brian Durburow from Martell &

25      Associates, and I'm a certified videographer.
```

1          All counsel present state their appearance

2      for the record, please.

3          MR. HECHT:  David Hecht on behalf of

4      defendant, Corellium.

5          MR. LEVINE:  Justin Levine.  Justin Levine

6      from the law firm of Cole, Scott & Kissane on behalf

7      of Corellium.

8          MS. JOHNSON:  Michele Johnson, Latham &

9      Watkins on behalf of Apple.

10          MS. NIGHTINGALE DAWSON:  Elana Nightingale

11      Dawson, Latham & Watkins on behalf of Apple.

12          THE VIDEOGRAPHER:  Is that everybody?

13          MS. NIGHTINGALE DAWSON:  We have Jesse

14      Koehler on as well on behalf of Apple.

15          THE VIDEOGRAPHER:  Okay.  The certified court

16      reporter, Nina Pavone, may swear in the witness and

17      all counsel may then proceed.

18                      --oOo--

19              CRAIG FEDERIGHI,

20          having been first duly sworn by the

21          Certified Shorthand Reporter to tell

22          the truth, the whole truth, and nothing

23          but the truth, testified as follows:

24          MS. JOHNSON:  Mr. Hecht?

25          MR. HECHT:  Yes?

1          MS. JOHNSON:  Before you begin, can I ask --

2     I see Ms. Gorton is on the line, just ask whether she

3     is by herself or if anyone is with her.  We just need

4     to monitor who is defending, as you know.

5          MS. GORTON:  Yes, I'm by myself.

6          MS. JOHNSON:  Great.  Thank you.

7          MR. HECHT:  And one thing I wanted to ask

8     everyone before we begin, I think, except for me and

9     opposing counsel, Ms. Johnson, if everyone else could

10    mute unless they're going to be speaking.

11         Of course, Craig should not be muted unless

12    we instruct you to, but everyone else because I do

13    hear some slight feedback.

14                          EXAMINATION

15    BY MR. HECHT:

16        Q. Please state your full name for the record.

17        A. Craig Michael Federighi.

18        Q. My name is David Hecht.  I represent

19    defendant in this case, Corellium LLC, which I will

20    refer to as Corellium.

21         And in my referring to Corellium in the

22    shorthand, will you understand what I'm talking

23    about?

24        A. Yes.

25        Q. Were you ever asked to collect documents in

Page 8

1    connection with this litigation?

2         A. Yes.

3         Q. How did you go about collecting documents in

4    litigation?

5         A. We had a meeting in a conference room where I

6    brought my laptops and we went through -- searches

7    were conducted.  There are tools that extract

8    documents from my machines.

9         Apple also has access to my IMAP e-mail

10   accounts which have all my messages for many, many

11   years.  And I think they independently went -- had

12   tools for extracting relevant e-mails from those.

13        I was asked whether I had any other like

14   handwritten notes or materials like that.  I don't.

15   I keep all my notes in typed form on my computers.

16        So those were all searched for and turned

17   over.

18        Q. How many devices were searched by counsel?

19        A. I think a couple, although all of my data is

20   synced, we -- for Apple, we use iCloud extensively.

21   All of my notes and files and messages are all synced

22   across all my devices, so the content is the same.

23        So they were able to get at all -- all of

24   that material from a single device.

25        Q. Which device was that?  Was that the laptop

1    you referred to?

2         A. Yes, it was, I believe, my MacBook Pro, yes.

3             (Reporter clarification.)

4    BY MR. HECHT:

5         Q. Did you turn your phone, I'm presuming

6    iPhone, over to your attorneys?

7         A. I don't believe they looked at my iPhone.  As

8    I said, the contents of my iPhone are all completely

9    mirrored to my Mac.  All my messages, all my e-mails,

10   all my notes are -- all my documents are synced

11   between all of them, plus I don't take any notes on

12   my phone really.  I use my iPad and my Mac.

13        Q. Is the same true of your iPad, that your iPad

14   syncs with the iCloud?

15        A. Yeah, exactly.

16        Q. Did you ever receive a litigation hold notice

17   in connection with or anticipation of this case?

18        A. Yes, I believe so.

19        Q. Do you know when you received that litigation

20   hold?

21        A. I don't.  Although I've been under litigation

22   hold for, you know, probably -- many years.  So I've

23   been keeping all documents for all time always, you

24   know, for many, many years now.

25        Q. Do any of your e-mail accounts have any purge

1  like after 30 days delete for sent e-mails or

2  anything like that?

3       A. No, they do not.

4       Q. Have you ever been deposed before?

5       A. Yes.  Might have been like ten years ago now.

6  Maybe -- actually, 13 years ago now.

7       Q. Were you at Apple at that point when you were

8  deposed?

9       A. No.  No, I was at a previous company.

10      Q. Okay.  Is this the first time at Apple that

11 you have been deposed?

12      A. As far as I recall, yeah, I think so.

13      Q. So I will go through some of the ground

14 rules, just like -- look, you are under oath.

15          Do you understand that?

16      A. Of course.

17      Q. And you're subject to perjury if you answer

18 something not truthful.

19          And all of your answers need to be audible in

20 words, no gestures or head shaking.  No pointing or

21 uh-huhs because the court reporter has to get

22 everything down on a clean transcript.

23          So I'll ask that you say something audible in

24 responses to all my questions.

25      A. I'll do my best.  I am a bit of a natural

1    gesticulator, I may be redundant, extra

2    communication, but I'll attempt to express myself

3    where possible.

4         Q. Fair enough.  You -- you'll have the

5    opportunity to review and correct errors in the

6    transcript, but we reserve the right to challenge

7    your testimony if substantive changes are made.

8         Do you understand that?

9         A. Yes.

10        Q. Okay.  And I'm going to ask, because of the

11   nature of the Zoom deposition, that we try to go a

12   little slowly so you give your counsel a chance to

13   object and the court reporter a chance to actually

14   take down the words.

15        Fair enough?

16        A. Yes.

17        Q. Okay.  And counsel's objections to my

18   questions are for the record.  If you're instructed

19   by counsel not to answer, then you could choose not

20   to answer, but otherwise you should answer any of my

21   questions.

22        Do you understand that?

23        A. Yes.  I may ask for clarification at moments

24   along the way in case there's ambiguity there.

25        Q. Absolutely.  If you have any question on

1     something that I'm asking you, feel free.  If you

2     need a break, you can ask and I just ask that you

3     finish answering the questions.  And then, otherwise,

4     we'll take breaks approximately every hour.

5          Is that fair?

6          A. Great.

7          Q. Can you tell me, are you currently at home?

8          A. I am, yeah.

9          Q. Have you been under quarantine like the rest

10    of us?

11         A. Yeah, yeah.

12         Q. How long have you been in your house?

13         A. Oh, I think a little over a month now.

14         Q. Same here.

15         A. Yeah.

16         Q. So have you gone out for any like to the

17    store or anything or have you stayed at home?

18         A. I've gone for walks in the neighborhood.

19    I've not personally gone to the store.

20         My wife was the unlucky designee in our

21    family for going to the store, so she's been doing

22    that.

23         Q. Can you tell me the layout of your monitors

24    and how you set up the windows that are in your

25    monitors right now so that I know what you're looking

1    at?

2         A. Yeah, sure.  I have -- this is my work setup

3    now.  So I have the iPad that we are conducting the

4    Zoom call on straight ahead of me and I have two

5    Macs, MacBooks to each side of me.

6              One of them is turned off.  One of them has

7    open a window containing the list of deposition

8    exhibits I was given before this call open and that

9    is -- that's it.

10              I have various other test devices that are

11    turned off around and behind me, but that's it.  And

12    I have a couple of -- a table and a couple glasses of

13    water.

14         Q. Okay.  Thanks.

15              And with respect to those other electronic

16    devices, is anything -- just to clarify, nothing is

17    accessible or broadcasting information to you?

18         A. Correct, correct.

19         Q. Okay.

20         A. I have my devices on do not disturb.  So I

21    would not receive any notifications or messages or

22    anything like that.

23         Q. Got it.  Do you have any paper documents

24    around you or visible to you?

25         A. No.

1        Q. And did you prepare any paper documents in

2   preparation for this deposition?

3        A. No.  I -- I typed -- I typed notes during a

4   call with counsel, but did not print that out.

5        Q. Are you going to be able to see on that

6   MacBook that you mentioned the documents that we had

7   sent over so that you could see and read them when I

8   reference them?

9        A. Yes.

10        Q. Is there anyone else, anyone with you in the

11   room?

12        A. Just a dog.  There's -- she won't -- she

13   won't -- she's unwilling to leave me right now.  So

14   she is at my feet.  She may make herself known at

15   some point during the next four hours, but hopefully,

16   not too disruptively.

17        Q. That's fine.  Will you tell me if someone

18   else comes into the room?

19        A. Absolutely, yeah.

20        Q. Is there anyone nearby who might be able to

21   hear you or the sound from your speakers?

22        A. No, I'm behind a closed door right now.

23        Q. And as I mentioned before, with respect to

24   the microphone, can you make sure that you do not

25   mute the microphone while we are on a break?

1      Throughout the testimony you don't have to turn it on

2      and off whether or not you're answering --

3           A. Yes.

4           Q. -- your microphone should be continuously on.

5           A. Yeah, sure.

6           MR. HECHT:  Counsel, will you please let me

7      know if anyone from Apple joins this deposition

8      because some of the questions might elicit attorneys'

9      eyes only responses, possibly.  Is that fair?

10          MS. JOHNSON:  Yes.  As we noted, Jesse

11     Koehler is on the line, and we will do the same with

12     Ms. Gorton if attorneys' eyes only information comes

13     up.

14          However, this is an Apple witness, though.  I

15     think we may have more basis for objection than you

16     do at this time.

17          MR. HECHT:  Give me one second.

18          Okay.

19     BY MR. HECHT:

20          Q. To your knowledge, do you have any symptoms

21     of sickness today that might impair you or otherwise

22     prevent you from being able to give your best

23     testimony?

24          A. No, I'm not aware of any symptoms.

25          Q. Have you taken any substances or medications

Page 16

1    that might impair your ability to give full and

2    correct testimony?

3         A. No.

4         Q. How did you prepare for today's deposition?

5         A. I had -- I think I've had two -- is it two --

6    discussions with counsel.  One was yesterday for a

7    couple of -- maybe three -- less than three hours.

8              And I think there was -- there was a

9    collection of documents before that.  I'm trying to

10   recall if there was another meeting before that with

11   counsel just to discuss how the case was going to go,

12   but I think that's about it.

13        Q. Did you review any documents for the

14   deposition?

15        A. Yesterday at the -- at the meeting I referred

16   to, there were some documents that they said these

17   are exhibits that you may be presented with during

18   the -- during today's deposition and I was shown some

19   of those.

20        Q. Did you review any e-mails regarding

21   Corellium?

22        A. Yes, some of the documents were e-mails, yes,

23   relating to Corellium, yes.

24        Q. Did you review any text messages or iMessages

25   relating to the acquisition of Corellium?

1      A. Yes.

2      Q. Were those messages from you or other

3   people's messages?

4      A. I think -- I think when it came to the

5   iMessages, they were just things that mentioned my

6   name, but that I was not a recipient of.

7      Q. All right.  Did you speak with anyone at

8   Apple about your deposition?

9      A. I spoke before my -- well, of course, there's

10  Apple counsel who was part of the call I referred to

11  yesterday.

12         Other than that, prior to knowing that I was

13  going to be deposed, I had a discussion with Jon

14  Andrews who I believe was set up as our corporate

15  witness and he was doing some of his preparation to

16  make sure he could represent Apple as the corporate

17  witness.

18         And he and I spoke a week or two ago before

19  his testimony because he wanted to ask me what my

20  recollection was of a few things that he was going to

21  represent in his deposition.

22         So I did speak to him.

23      Q. You spoke to him before his deposition?

24      A. Correct.

25      Q. But not after his deposition?

1    A. No.  I mean, I've spoken to him on other

2    matters unrelated to Corellium after the deposition,

3    but I did not speak to him about this case after his

4    deposition.

5    Q. Okay.  Fair enough.

6         Have you spoken with anyone else about

7    this -- about their depositions such as Ivan, Steve

8    Smith, or anyone else?

9    A. No, I have not.

10    Q. Okay.  When did you start working for Apple?

11    A. Well, slightly complex answer.  I started

12    working for a company called NeXT which was a --

13    Steve post -- Apple Steve Job's company back in 1994.

14    NeXT was acquired into Apple in 1997.  And so all

15    NeXT employees became retroactive Apple employees.

16         And so I stayed employed at Apple for another

17    three years, left for ten years and came back to

18    Apple in 2009.

19    Q. What is your current position at Apple?

20    A. I'm the Senior Vice President of software

21    engineering.

22    Q. Are you considered a senior officer at Apple?

23    A. Well, there are a couple of different

24    designations of that.  With respect to our public

25    company SEC filings, I am not one of -- one of the

1    five designated officers that are reported on in that

2    way at this time, but I am part of the executive

3    team.

4          So if you were to look at Apple's web page

5    and see the list of top, you know, executives, I am

6    listed there.

7          Q. And as an SVP, are all SVPs considered to be

8    executives at Apple?

9          A. I guess, sure.  I mean people use the word

10   "executive" in all different ways in the press and so

11   forth, but I believe I'm thought of as an executive,

12   yes.

13         Q. How many SVPs are there at Apple?

14         A. I think there are 11 of us, maybe 12.  I

15   should probably know that.

16         Q. How long have you held the position of SVP?

17         A. I want to say since 2014.  I'm going to go

18   with that.  2013, 2014, somewhere in there.

19         Q. And who do you report to?

20         A. Tim Cook, the CEO.

21         Q. ███████████████████████████████████████████

     ██ ███████

23         A. ███████████████████████████████████████████

     ██ █████████ █████████████████████████████████████

     ██ █████████████████████████████████████████████████



1 ████████████████████████████████████████

2 ██  ████████████████████████

3    Q. ████████████████████████████████████

4 ██  ████████████████████████

5       THE WITNESS: ████████████████████

6 ██  ██████████████████████  ██████████████████

7 ██  ██████████████████████████████████.

8       MS. JOHNSON:  He's entitled to your --

9 well --

10      (Simultaneous conversation.)

11      ██████████  ████████████████  ████████

12 ██  ████████████████████████████

13 ██  ██████████████

14 BY MR. HECHT:

15    Q. Okay.  And I'm going to ask you a couple of

16 questions about direct reports.

17      ██████████████████████████

18 ██  ██████████████

19 ██  ████████████████████████

20 ██  ██████████████████████████

21 ██  ████████████████

22 ██  ██████████  ████████████████████

23 ██  ██████████  ██████████████████

24 ██  ██████████  ████████████████████████████

25 ██  ████████████████.



20          MS. JOHNSON:  Objection.  Vague.

21     BY MR. HECHT:

22



13          MS. JOHNSON:   Objection.   Calls for

14     speculation.   Foundation.



24        Q. As a senior executive at Apple, do you have

25    to carefully manage your schedule?

 1              (Reporter clarification.)

 2      BY MR. HECHT:

 3          Q. Carefully manage your schedule.

 4          A. Well, I'm not exactly sure how to answer

 5      that.  I have a very busy schedule.

 6              I would say that, in practice, the way my

 7      schedule is managed and I think different people at

 8      Apple handle their schedules differently, but in my

 9      case, there are a lot of different areas that are

10      demanding of my time.

11              People tend to actually come to my executive

12      assistant and say, hey, I need time and they tend to

13      justify to her and work with others to figure out if

14      this is the most -- if this is something that I

15      should look at or whether someone else should and so

16      forth.

17              In a lot of ways, I'm not -- I'm only

18      sometimes directly involved in managing my schedule,

19      often others putting meetings on my calendar and so

20      forth without me necessarily having been part of

21      carefully managing that part of it that.

22              But it is a busy schedule with lots of --

23      lots of activity and lots of meetings.

24          Q. So if someone like Ivan Krstic wanted to

25      arrange a schedule, would he come to you directly or

1      would he go to your assistant?

2              MS. JOHNSON:  Objection.  Foundation.

3              THE WITNESS:  If Ivan wanted to -- it -- it

4      varies, actually, depending on the matter.  I think

5      both have happened.

6              There have been reviews that Ivan has asked

7      for that he just works with someone and gets it on

8      the calendar.  There are other times where he might

9      say to me, hey, I would like to show you X, Y, Z,

10     is -- would you like, you know, is that okay or do

11     you want to see that and I'd say, sure, and he'd go

12     work with my assistant to find time.

13             MS. JOHNSON:  Counsel, I think someone just

14     entered the meeting.  Can we find out who that is and

15     note that when people enter and exit we should get

16     that on the record?

17             MR. HECHT:  I think it's Jonathan Vine.

18             MR. VINE:  It's Jonathan Vine.  I just joined

19     in for a little.  When Justin gets off, I will join

20     back in later.

21             MS. JOHNSON:  Thank you.

22     BY MR. HECHT:

23     ██████████████████████████████████

       ██████████████████████████████████

       ██████████████████████████████  █████████████



19          MS. JOHNSON:  Objection.  Vague.

1    ████████████████████████████████

2 █  ██████████████████  ████████████████

3 █  █████████████████████████

4    BY MR. HECHT:

5        Q. When did you first hear about Corellium?

6        A. Say again, about Corellium?

7        Q. Corellium, yes.

8        A. I'm not going to get the date right here.  I

9    recall that we had -- we had known about Chris Wade

10   from a previous company and he had ended up doing

11   something different, not coming to Apple.

12           Then years later, I remember Ivan mentioned

13   to me, hey, Chris Wade has left his last thing and

14   created another virtualization product and is, you

15   know, interested in talking to us about it.

16           And so I don't remember the date, though,

17   honestly.

18       Q. Would you think it would be sometime in 2018

19   or late 2017?

20       A. I couldn't -- I couldn't accurately place the

21   date.  I'm sure if there's information somewhere in

22   the record, that would be more clear on that.

23       Q. Sure.  What's your understanding of what the

24   Corellium product does?

25       A. Well, I mean several things.  I think

Page 28

1    Corellium, as I understand it at its core, there's

2    some virtualization technology to allow running of

3    Android or iOS on third-party ARM server hardware.

4         But iOS is not meant to be run on non-Apple

5    hardware. ██████████████████████████

██████████████████████████

██████████████████████████

██████████

9         It provides ways for access via like a web

10   console to launch -- launch iOS images and test

11   software on them in a virtual manner rather than on

12   the iOS software that the iOS normally was intended

13   to run on.

14        Q.  ████████████████████████

████████████████   ████████████

████████

17        A.  ████████████████

████████████████████

████████████████████████

██████████████████████████

██████████████████████████

████████████████.

23        ██████████████████████████

██████████████████████████

██████████████████████████



```
 1    ████████████████████████████████████
      ████████████████████████████████████
      ███████
      ████████████████████████████████████
      ███████████████    ██████████████████
      ███████████████████████████████████
      ███████████████████████████████████
      ███████████████████████████████████
      ████████████████████████████
      ███████████████████████████
      ████████████████████████████████████
      ████████████████████████████████████
      ████████████   ██████████████████████
      ████████████████████████████████████
      ███████████████████████████████████
16    ██████████████████████████████████
      ██████████   ████████████████████████
      █████████████████████████████████████
      ████████████████████
20          MS. JOHNSON:  Objection.  Compound.
21          THE WITNESS:  ████████████████  █
      ████████████████████████████████
      ███████████████████████████████████
      █████████████████
      ████████████████████████████████████
```



Page 30

1

3   BY MR. HECHT:

4

8            MS. JOHNSON:  Objection.  Vague.  Foundation.

9

22  BY MR. HECHT:

23        Q. So just to be clear, what you just said is

24  your understanding of how a system might work, but

25  you have no actual understanding of how the Corellium

1    system does work aside from what Chris Wade allegedly

2    told you?

3         A. I certainly -- yeah, when -- what I'm saying

4    is what -- I'm just saying what Chris Wade told me.

5    I do not have intimate knowledge -- I'm not the right

6    person to talk to about the intimate knowledge about

7    how the Corellium system works technically.

8         Q. Okay.  And in terms of -- you mentioned Chris

9    allegedly saying a bunch of things about security

10   exploits.

11        When did Chris tell you these things?

12        A. There was a meeting which I've since been

13   shown was on -- I think it was a March meeting, March

14   1st, maybe, 2018, where there was Chris and a few of

15   his main team members had come to Apple to have

16   detailed technical briefings with a bunch of

17   different groups at Apple.

18        I participated in one sort of higher level

19   demonstration that he gave of his software and he

20   talked about it in that meeting.

21        Q. I think you're referring to a March

22   demonstration; is that right?

23        A. Yeah, correct.

24        Q. That was the demonstration that included -- I

25   believe it was Sebastien and Ivan Krstic.



Page 32

1        A. I suspect they were there, yes.  That would

2     have -- that would make sense.

1 ████████████████████████████████████████

2 █████████████████████████████████████████████

3 ████████████████████████████████████████████

4          Q. Do you know if Chris submitted security

5    exploits to Apple as part of the bug bounty program?

6              MS. JOHNSON:  Objection.  Foundation.

7              THE WITNESS:  Okay.  I did not hear about

8    that at the time.

9              I've since heard that Chris has sued Apple

10   saying that he had submitted things to the bounty

11   program and that he feels he was not paid or not paid

12   appropriately or something.

13             But I did not know that at the time.  I just

14   heard about that in the last -- well, I think in my

15   briefing yesterday.

16   BY MR. HECHT:

17         Q. When you say "sued," are you talking about a

18   different lawsuit than what we're here today about?

19             MS. JOHNSON:  Objection.  This is outside the

20   scope of the deposition and calls for attorney-client

21   privilege.  I would instruct him not to answer.

22             MR. HECHT:  Okay.  I'm asking about a

23   potential public lawsuit that he's referring to which

24   he mentioned.  I'm asking for clarification.

25             MS. JOHNSON:  And I'm saying that those

1    questions are outside the scope of the four-hour

2    deposition, according to the Court's order.

3           MR. HECHT:  Well, I'll move on.  It's not

4    really pertinent.  I'll talk --

5    BY MR. HECHT:

6    ███████████████████████████████████

     ████████████████████████████████████████

     ██████████████████████████████████████

     ██████████████████████████████████████

     ████████████████

     ██████████████████████████

12          MS. JOHNSON:  Objection.

13   ███████████████  ██████████████████████

     ████████████████████████████████████████████

     ██████████████████████████  █████████████

     ████████

17          (Reporter clarification.)

18          MS. JOHNSON:  Vague.  Foundation.  Thank you.

19          (Dog barking.)

20          THE WITNESS:  Excuse me one moment.  I've got

21   to let my dog out the door.

22          Apologies.  I'm back.

23   BY MR. HECHT:

24          Q. No problem.  ████████████████████

     ████████████████████████████████████

```
 1    ████████████████████████████████████████

 2    ████████████████████

 3            MS. JOHNSON:  I would -- it's not an

 4    objection, but we're getting into attorneys' eyes

 5    only information and I would direct -- request or

 6    direct Ms. Gorton to step out.

 7            THE WITNESS:  Sorry, am I supposed to answer

 8    the question now or are we waiting for something?

 9            MS. JOHNSON:  Can you confirm that she's out

10    of the meeting?

11            MR. HECHT:  Amanda can walk out and then

12    we'll tell her when she can come back.

13            MS. JOHNSON:  Okay.  I understand.  We can

14    still see her.  She needs to shut down so she's not

15    hearing or seeing the attorneys' eyes only

16    information.

17            MR. HECHT:  At the last depo, she agreed that

18    she would leave the room and she wouldn't be

19    listening in.

20            MS. JOHNSON:  Okay.  On your representation,

21    thank you.

22            MR. HECHT:  Yeah.

23            THE WITNESS:  Could you ask the question

24    again?

25    BY MR. HECHT:
```

1      Q. Sure. ████████████████████████████

       ████████████████████████████████████

       ████████████████████████████

4            ████████████████████████████████

       ███████████████████████████████████████

       ████████████████████████████████████████

       ████████████████████████████████

            ████████████████████████████████

       ████████████████████████ -- sorry, one second.  The

10     dog is being let in again.  Okay.  Door is closed

11     again.

12          ████████████████████████████████

       ██████████████████████████████████

       ███████████████████

       ████████████████████████████████

       █████████████████████████████████████

       █████████████████████████████████████

       █████████████████████████████████████

       ████████████████████████████

20          ██████████████████████████████████

       ████████████████

       █████████████████████████████████████

       ████████ █████████████████████████████████

       ████████████████ █████████████████████

       ████████████



1

2

3

4

5

6

7

8

9          (Reporter clarification.)

10          THE WITNESS:

11     BY MR. HECHT:

12

13

14

15          MS. JOHNSON:  Objection.  Compound.

16

17

18

19     BY MR. HECHT:

20

21

22

23

24

25

[redacted]

   2      Q.  Sure.  We're under -- we don't have Corellium

   3   on the phone, and so that we can talk about

   4   confidential matters.

   5   [redacted]

[redacted]

[redacted]

   8        (Reporter clarification.)

   9   BY MR. HECHT:

  10   [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

23       MS. JOHNSON:  Counsel, we're getting a bit

24   far afield of the topic.  A little leeway is fine,

25   but I want to note for the record we're getting

1    close.

2              MR. HECHT:  For the record, this all has to

3    do with the valuation.  I'm going get into that in a

4    second.

5    BY MR. HECHT:

6 

1   ████████████████████████████████████████

2           MS. JOHNSON:  And I'll object as beyond the

3   scope.  I understand your representation, Counsel,

4   that this relates to valuation, but that has not been

5   established.

6           This is outside the scope and I instruct you

7   not to answer.

8           THE WITNESS:  Sorry, I was told not to

9   answer.

10          MS. JOHNSON:  Correct.

11  BY MR. HECHT:

12          ████████████████████████████████████

█   ████████████████████████████████████████

█   ███████████████████

█   █████████████████████████    █████████████████████

█   ████████████████████████████████████████████

█   ████████████████████████████████████████████

█   ███████████████████████████

19          MS. JOHNSON:  Objection.  Foundation.

20  Outside the scope unless you're asking specifically

21  about Corellium.

22          MR. HECHT:  I am asking about Corellium.

23          MS. JOHNSON:  Objection.  Foundation.

24          ██████████████   ████████   █████████████████

█   ████████████████████████████████████████

Page 41



22    BY MR. HECHT:

23        Q. What was your opinion of Chris Wade when you

24    met him?

25            I guess we'll focus first on the

1    demonstration that you mentioned in March 2018.

2         A. That's a broad question.  I mean, I guess

3    there was -- there was a lot of sort of bravado in

4    Chris, a -- he was -- I mean he was kind of impressed

5    with himself.

6              He -- he expressed a lot of enthusiasm about

7    his technology, about his team and about all the

8    different kinds of things he'd love to do at Apple.

9    ███████████████████████████████████████

     ███████████████████████████████████████████

     ███████████████████████████████████████████

     ███████████████████████████████████████████

     ██████████████████████████

14             He was certainly smart.  His team members

15   appeared to be quite smart.  So I don't know.  Those

16   are a few impressions.

17   ████████████████████████████████████

     ███████████████

     ████████████████████████████████████

     █████████████████████████████████████████

     █████████

     ███████████████████████████████████

     ████████████████████████████████████

     ████████████████████████████████████

     ███████████████████  ███████████████





```
18              MS. JOHNSON:  Objection.  The question is

19     vague and to my understanding, it's outside the

20     scope.  But it's a vague question.

21              THE WITNESS:  Is there --

22              MS. JOHNSON:  If you can rephrase.  Yeah, if

23     you can rephrase so I can understand whether to

24     object it's outside the scope.

25     BY MR. HECHT:
```



6        MS. JOHNSON:  Objection.  Vague.  Foundation.

8

9        MS. JOHNSON:  Go ahead.

10        THE WITNESS:  Sorry.

11

20        MS. JOHNSON:  Objection.  Outside the scope.

21   Unless -- Counsel, the topics obviously involve

22   valuation.  If that's the tenor of your question,

23   then fine.  But the question was vague and not

24   specifically tied to a topic.

25   BY MR. HECHT:



Page 47



12      Q. And had you heard of Chris Wade prior to

13   2018?  I think you mentioned his other company.

14      A. Yeah, I had.  He had built some

15   virtualization thing before.  He shopped it around at

16   Apple.

20      And so when Corellium came up, I heard of it

21   in the context of, oh, you remember that guy Chris

22   Wade, he's done -- you know, he's done another

23   startup doing virtualization again.

24      Q. You mentioned -- well, the company that

25   you're talking about, the prior company, is that

1    Virtual?

2         A. When -- I was reminded of that name at the --

3    in preparing for this deposition.  I honestly don't

4    recall that name, though.

5    ████████████████████████████████████████

     ████████████████████████

     ██████████████

8         MS. JOHNSON:  Objection.  Foundation.

9         THE WITNESS:  Sorry.

10        MS. JOHNSON:  And outside the scope to the

11   extent it goes beyond the one meeting in the

12   declaration.

13        THE WITNESS:  I'm not sure what I'm supposed

14   to -- if I'm supposed to proceed.

15        MS. JOHNSON:  Yes, thank you for the

16   clarification.  I'll instruct you not to answer.

17   It's outside the scope.

18   BY MR. HECHT:

19   ████████████████████████████████████████

     ██████████████████████████████

21        MS. JOHNSON:  Objection.  Vague as to time.

22   The two meetings -- I'm sorry, Counsel, vague.

23   BY MR. HECHT:

24   ████████████████████████████████████

     ████████

1          MS. JOHNSON:  Okay.

2          

17         MS. JOHNSON:  Objection.  Asked and answered.

18         But you can answer.

19

24    BY MR. HECHT:

25         Q. Okay.  I'm going to ask you -- do you want to

1    take a break and then we can open an exhibit?

2         A. Either way.

3         Q. Okay.  Let's take a break and then we'll come

4    back in, say, ten minutes.

5         A. Sure.

6         MS. JOHNSON:  Sounds good.

7         THE VIDEOGRAPHER:  At 12:13 p.m. we're going

8    off the record.

9         (Whereupon, a break was taken.)

10        THE VIDEOGRAPHER:  At 12:23 p.m. we're back

11   on the video record.

12   BY MR. HECHT:

13        Q. Welcome back.  A question for you:  ██

██   ████████████████████████████████████████████████

██   ███████████████████████████████████████████████

██   ████████████████████████████████████████████████

██   ███████████████████████████████

18        (Simultaneous conversation.)

19        MS. JOHNSON:  Objection to the form.

20   Compound.

21        THE WITNESS:  I didn't answer.  Did you hear

22   the objection?

23        THE REPORTER:  Yes.

24        THE WITNESS:  I can answer now.

25        ████████████████████████████████████████



17          MS. JOHNSON:  Objection.  Foundation.  Vague.



10          MS. JOHNSON:  Objection.  Objection.

11    Foundation.  Calls for speculation.  Vague as to the

12    term "offer."

██  ████████████

2        MS. JOHNSON:  Counsel, sorry, can I -- we're

3   just noticing that Justin is on the phone.  So just

4   wanted to note for the record that -- get your

5   representation that no one outside of who's on the

6   deposition can hear the audio.

7        MR. HECHT:  I think Justin can confirm that

8   with a thumbs up, but I don't think -- Justin, are

9   you listening?

10       MR. LEVINE:  I'm sorry, say it again.

11       MR. HECHT:  Counsel asked if you were on the

12  phone and if anyone else can hear what's going on.

13       MR. LEVINE:  Oh, no.  No, no.  No, sorry.

14  Yeah, sorry about that.  I wasn't even listening.

15  And no, I have the computer completely turned down.

16       MS. JOHNSON:  Thank you.

17       MR. LEVINE:  Sorry.

18  BY MR. HECHT:

19        ████████████████████████

██   ██████████████████████  ████████

██   ████████████████

██   ████████████████████████████

██   ██████████████████████

██   ██████████████████████

██   ████████████████████████



1

5

11

18          MS. JOHNSON:  Objection.  Vague.  Foundation.

19

5          MS. JOHNSON:  Same objection.

6

9    BY MR. HECHT:

10         Q. That's my point.  That's my point.  If you

11   were using Corellium, say, for example, Jon Andrews

12   had a demo account, did you hear about Jon Andrews'

13   demo account that he used from Corellium?

14         A. No.

15         MS. JOHNSON:  Objection.  Vague.  Outside the

16   scope.

17   BY MR. HECHT:

18         Q. Did you hear about anyone at Apple using the

19   demo account on the Corellium platform at any time?

20         A. No, I heard Chris --

21         MS. JOHNSON:  Objection.  Sorry, sorry.  I'm

22   sorry.

23         Objection.  You haven't tied it to a

24   valuation or the decision around valuation.  So

25   outside the scope at this point.

1    BY MR. HECHT:

2    

11        I think we're going in circles here.  I guess

12   I -- yeah.

13        Q. Yeah, I appreciate -- the way depositions

14   work, sometimes they do seem like they're going in

15   circles.  We're just trying to get a clean record.

16        A. Right.

17        Q. I, too, am an engineer.  So I like to get

18   to the meat of it and the answer, but at the same

19   time, we have to ensure a clear record.  So

20   that's why I asked the question slightly --

21        A. Yeah, my apology.  I'm not sure what more to

22   give you.

23        I'm not -- I'm starting to have trouble

24   understanding what you're getting at or how I can be

25   more clear in trying to answer your question.



1      Q. Well, let's go to document ████████████

2   and we're going to mark that as Exhibit 1.

3         (Whereupon, Exhibit 1 was marked for

4   identification.)

5         THE WITNESS:  Okay.  I have that.

6   BY MR. HECHT:

7   ████████████████████████████

    ████████████████████

    █████████████████ ██████ ██████████

    ████████ ████████████████████████

    █████

12      Q. Well, take your time and look at it and I'll

13   ask you some questions, because ████████████

14      A. Okay.

15         Okay.

16   ████████████████████████████

    ██████████████ █████████████

    ████████████████████████████████

    ██████

    ███████

    ████████████████████████

    ████████

23         MS. JOHNSON:  Objection.  Foundation.

24         You can answer.

25         ████████████ ██████ ██████████





3          MS. JOHNSON:  Objection.  Foundation.  Calls

4     for speculation.



6        MS. JOHNSON:  Objection.  Compound.

7    Speculation.  Calls for speculation.  Foundation.

14        (Reporter clarification.)

15    BY MR. HECHT:

16

19        MS. JOHNSON:  Objection.  Foundation.

20



1    ██████████ ) -- well, I guess that's enough

2    said, yeah.

3    BY MR. HECHT:

4    ████████████████████████ )

5    ████████████████████████ )

6    ████████████████████ ) █████████ )

7    ████████████████ )

8         MS. JOHNSON:  Objection.

9    ██████████ ) ██████ ) ██████████████ )

10   ██████ - )

11        MS. JOHNSON:  Asked and answered.

12   BY MR. HECHT:

13   ██████████████████████████ )

14   ████████████████████████ )

15   ██████████ )

16   ████████████████████████ )

17   ██████████ )

18   ██████ )

19   ██████████████████████████ )

20   ████████████████████████ )

21   ████████████████████ )

22   ██████████ ) █████████ )

23   ████████████████████████ )

24   ██████ )

25   ████████████████████████ )





25              MS. JOHNSON:  Object to the form.

Page 64



1    Foundation.

2

5    BY MR. HECHT:

6

11         MS. JOHNSON:  Objection.  Vague.

12

20    BY MR. HECHT:

21

23         MS. JOHNSON:  Objection.  Assumes facts.

24    Foundation.

25



 1  ████████████████  ████████████████

    ██ ████████████  ████████████████

    ██ ██████████████████████████

    ██ ████████████████████████  ████████████████

    ██ ████████████████████████████

    ██ ████████████████████████  ████████████

    ██ ████████████  ████████████████  ██████

    ██ ██████████████████████████

    ██ ██████████████████████████

    ██ ██████

    ██ ████████████████████████

12  BY MR. HECHT:

13  ████████████████████████████

    ██ ██████████

15          MS. JOHNSON:  Objection.  Vague as to time.

16  Getting close to outside the scope.

17  ████████████  ████████████████████

    ██ ████████████████████████████

    ██ ████████████████████████

    ██ ██████████████

21  BY MR. HECHT:

22  ████████████████████████████

    ██ ████████████████████  ██████████

    ██ ████████████████████████

    ██ ████████████████████████████



2          MS. JOHNSON:  Objection.  Compound.  Vague.

3     Foundation.

13    BY MR. HECHT:

25          MS. JOHNSON:  Objection.  Vague as to time.

Page 67

1        █████████  ████████████  ███████████

2     █████████████████████████████████████████

3     █████████

4           MS. JOHNSON:  I counsel you not to reveal

5     attorney-client privileged information.

6           THE WITNESS:  Then I have nothing further to

7     say.

8           MS. JOHNSON:  Thank you.

9     BY MR. HECHT:

10        ████████████████████████████████████████

11    █████████████████████████████████████████████

12    ████████████████████████████████████

13         ███████████████████████████████████

14    █████████████████████████████████████████████

15    ██████████████████████████

16          MS. JOHNSON:  Objection.  Outside the scope.

17    This is getting too far afield.

18          I instruct you not to answer.

19    BY MR. HECHT:

20         Q. Let me -- let's turn to the next exhibit

21    which is ending in ████ so it's ████████████████.

22    This will be Exhibit 2.

23         A. I'm sorry, I'm having difficulty finding that

24    one.  One moment.

25         Q. No problem.

Page 68

```
 1              (Whereupon, Exhibit 2 was marked for
 2        identification.)
 3              THE WITNESS:  I'm going to go back to the
 4        original e-mail.  I attempted to copy them out of the
 5        original e-mail to a folder, but I do not see █████)
 6        One moment.
 7              Can you tell me anything to look for in what
 8        it says, like --
 9        BY MR. HECHT:
10        Q. You can't see the file names?
11        A. Not in this -- oh, got it.  Good luck, okay.
12        Got it.  Unfortunately, not in the e-mail message I'm
13        dragging it from.  They're all truncated and
14        sometimes I can only see the last two digits and it's
15        a bit of a mess.  Where did it go?  Come on now.
16              Okay, I have █████) in front of me now.
17        Q. Okay.  If you could take a quick look at this
18        e-mail.
19        A. I'm going to try to open these on a different
20        computer.  The text is messed up in a way it makes me
21        think I've got a problem with my computer.
22              I'm having other computer problems on this
23        computer.  I'll try to read the message.  It's a
24        little garbled.  I want to make sure -- ah, geez.
25              Okay.  I've mostly been able to read this
```

Page 69

1     message.

2          Q.  Okay. 

20          MS. JOHNSON:  Object to the form.  Compound.

21     Foundation.



1

2    BY MR. HECHT:

3

7            MS. JOHNSON:  Objection.  Foundation.

8

18   BY MR. HECHT:

19

23            MS. JOHNSON:  Objection.  Compound.

24   Foundation.

25   BY MR. HECHT:



1 ████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████

5        MS. JOHNSON:  Objection.  Outside the scope

6    of the three topics.

7        I'd instruct you not to answer unless you

8    could confine it to one of the topics.

9        MR. HECHT:  Yeah.

10   BY MR. HECHT:

11       ████████████████████████████████

████████████████████████████████████████

████████████████████

██████████████████████

████████████  ██████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████

████████████████

████████████  ██████████████████████████

████████████████████████████████████

22       MS. JOHNSON:  Objection.  Asked and answered.

23       ██████████████  ████████████████████

████████████████  ████████████████████████

████████████████████████████████████



5    BY MR. HECHT:

9         MS. JOHNSON:  Objection.  Foundation.

18        MS. JOHNSON:  Objection.  Vague.

21    BY MR. HECHT:

22        Q.  Sorry.  I'll rephrase the question.



1

2

3          MS. JOHNSON:  Objection.  Vague and

4     ambiguous.

5

6

7

8

9

10

11

12

13

14     BY MR. HECHT:

15

16

17          MS. JOHNSON:  Objection.  Vague and

18     ambiguous.

19

20

21

22

23

24     BY MR. HECHT:

25          Q. Next exhibit, I'd like you to turn to

1      APL-CORELLIUM and it ends with █████

2          A.  Okay.

3              (Whereupon, Exhibit 3 was marked for

4      identification.)

5              THE WITNESS:  I have it.  I've read it.

6      BY MR. HECHT:

7      ████████████████████████████████████████

       ██████████████████████████████

       ███████████████████████

       ████████████████████████████  ████████████████

       █████████████████████

       ████████████████████  ██████████████

       ██████████████████████

14             MS. JOHNSON:  Objection.  Outside the scope

15     to the extent it is not tied to the declaration or

16     affidavit.

17             (Reporter clarification.)

18             THE WITNESS:  Again, am I not supposed to

19     answer?

20             MS. JOHNSON:  Correct, as framed.

21             MR. HECHT:  I actually -- I'm going to tie it

22     to the valuation.

23     BY MR. HECHT:

24     ████████████████████████████████████████

       ██████████████████████████████████████



11          MR. HECHT:  We'll make this Exhibit 4.

12          (Whereupon, Exhibit 4 was marked for

13  identification.)

14          THE WITNESS:  Okay.  I found that.  I'm

15  looking at it now.

16  BY MR. HECHT:

17       Q. Okay.

18       A. Okay.





8              MS. JOHNSON:  Objection.  Foundation.



2    BY MR. HECHT:

7         MS. JOHNSON:  Objection.  Foundation.

9    BY MR. HECHT:

15        MS. JOHNSON:  Objection.  Compound.  Vague

16   and ambiguous.  Foundation.

17   BY MR. HECHT:

18        Q. You can answer.



6       Q. Fair enough.

7          MR. HECHT:  Let's look at this document, ends

8       in ███████████████  we are up to Exhibit 5.

9          (Whereupon, Exhibit 5 was marked for

10      identification.)

11         THE WITNESS:  Okay, I found that document.

12      BY MR. HECHT:

13         Q. Please take a look.  █████████████████

14

15         A. Yes, I've read it now.

16         Q. Okay.  █████████████████

17

18

19

20

21

22

23

24         MS. JOHNSON:  Objection.  Foundation.  Calls

25      for speculation.



1    And, Counsel, if you could tie it to the --

2    to the topics, if you can.  But to the extent you

3    don't, it's outside the scope.

4    BY MR. HECHT:

20    MS. JOHNSON:  Objection.  Foundation.

21    THE WITNESS:  Yes.

22    BY MR. HECHT:

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮

3 MS. JOHNSON:  Objection.  Outside the scope.

4 I'd instruct you not to answer.

5 BY MR. HECHT:

6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9 ▮▮▮▮▮▮▮▮

10 MS. JOHNSON:  Objection.  Compound.

11 ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮



Page 82



17          MS. JOHNSON:  Objection to the extent it

18     mischaracterizes the testimony.

19



Page 83

1 ████████████████████████

2 ████████████████████████████████

3 ████████████████████████████████

4 ████████████████████████████

5 ████████████████████████████ ████████

6 ████████████████████

7   BY MR. HECHT:

8       Q.  Okay.  Thank you.

9 ████████████████████████████████

10 ████████████████████████████████

11 ████████████████████████████

12       MS. JOHNSON:  Objection.  That assumes facts.

13   Vague and ambiguous.

14 ██████████ ██████████████████████

15 ████████████████████████████████

16 ████████████████████████████████

17 ████████████████████████████

18 ████████████████████████████████

19 ██████████ ██████████ ██████████████

20 ████████████████████████████

21 ████████████████████

22   BY MR. HECHT:

23 ████████████████████████████████

24 ████████████████

25 ████████████████████ ████████████████



1   ███████████████████████████████

2   █████████████████████████

3        MS. JOHNSON:  Objection.  Vague as to time.

4   Vague.

5   █████████████ ███████████████████

6   ████████████████████ ████████████████████

7   ████████████████████████████████████████

8   ████████████████████████████████████████ █

9   ███████████████████████████████████

10  █████████████████

11  BY MR. HECHT:

12  ██████████████████████████████████

13  ██████████████████████████████████

14  ██████████████████████████████████

15  ████████████████████ ██████████████████████

16  ████████████████████████████████████████████

17  ██████████████████████████████████████

18  ██████████████████████████████████████████████

19  ████████████████████████████████████████████████

20  ████████████████████████████████████████████████

21  █████████████████████████████

22        MS. JOHNSON:  Objection.  Foundation.

23  Assumes facts.

24  ████████████████ ███████████

25  BY MR. HECHT:



1

15        MS. JOHNSON:  Objection.  Assumes facts.

16    Foundation.

17



```
 7    BY MR. HECHT:
```

```
11         MS. JOHNSON:  Objection.  Foundation.

12    Assumes facts.
```

```
22    BY MR. HECHT:

23         Q. Do you approve of bug bounties as far as

24    awards?

25         MS. JOHNSON:  Objection.  Outside the scope.
```

Page 88

1        I instruct you not to answer.

2            MR. HECHT:  It goes to his -- I disagree.  I

3    think it's within the scope.  It goes to his view of

4    the value of bug finding.

5            MS. JOHNSON:  Thank you.  I disagree that

6    it's within the scope given his testimony just now

7    about -- about what went into the valuation.

8            So instruct you not to answer.

9    BY MR. HECHT:

10   ████████████████████████████████████

     ████████████████████████████████████████████

     ████████████████████████████████████████

     ████████████████████████████████████████████

     ██████████████████████████████████

15           MS. JOHNSON:  Objection.  Compound.  Vague.

16   Foundation.

17   ████████████████  █████████████████████████████

     ████████████████████████████████

19   BY MR. HECHT:

20       Q. Okay.  ████████████████████████████

     ██████████████████████████████████████████████

     █████████████████████████████████████████████

     █████████████████

     ████████████████████████

25           MS. JOHNSON:  Objection.  Vague.



Page 89

1 ███████████  ██████████████████

███████████████████████

███████████████████████████

████████████████████████████████

██████████████████████████

██████████████████████████

███████████████

8  BY MR. HECHT:

9      Q. You want to take another break?  We've been

10 going a little over an hour.

11      A. Either way.  Whenever you want.

12      Q. Sure.

13      MR. HECHT:  We can take another ten minutes.

14      THE VIDEOGRAPHER:  It's 1:22 p.m.  We're

15 going off the video record.

16          (Whereupon, a break was taken.)

17      THE VIDEOGRAPHER:  At 1:34 p.m. we're back on

18 the video record.

19 BY MR. HECHT:

20   ████████████████████████

   █████████████████████████████

   ███████

23      MS. JOHNSON:  Objection.  Foundation.

24   ███████████  ███████████████████

   ███████████████████████

1  ████████████████████████████████████

2  ███████████████████████████████

3  ████████████████████████████████

4  █████████████████████████████████

5  ██████████

6  BY MR. HECHT:

7  ██████████████████████████████

8  ███████████████████████████

9  ██████████████ ██████████████████

10  ████████████

11  MS. JOHNSON:  Objection.  Foundation.

12  Assumes facts.

13  ████████████ ████████████████████

14  █████████████ ██████████████████

15  ██████████████ ██████████████████

16  ████████████████

17  (Reporter clarification.)

18  ████████████ ██████████████████

19  ██████

20  BY MR. HECHT:

21  Q. Would you say that you are an aggressive

22  negotiator?

23  A. Say again.

24  MS. JOHNSON:  Objection.  Vague and

25  ambiguous.

1    BY MR. HECHT:

2        Q. Would you say that you're an aggressive

3    negotiator?

4            MS. JOHNSON:  Same objection.

5            THE WITNESS:  I don't know what that means.

6    Could you clarify?

7    BY MR. HECHT:

8    ██████████████████████████████████████

██

10           MS. JOHNSON:  Objection.  Foundation.  Vague.

11   ████████████  ██████████████████

██  █████████████████████████  ████████████

██  ████████████████████████████████

██  ██████████████████████████████████

██  ████████████████████████████████████

██  ███████████████

17   BY MR. HECHT:

18   ██████████████████████████████████████

██  ██████████████████████████████████

██  ██████████████████

21           MS. JOHNSON:  Same objection.

22           THE WITNESS:  Maybe you know something I

23   don't.

24   BY MR. HECHT:

25           Q. Something we've heard from other Apple -- at



Page 92

1   least one other Apple employee.

2       A. Okay.

3

11          MS. JOHNSON:  Objection.  Vague.

12

19   BY MR. HECHT:

20



1

2          MS. JOHNSON:  Objection.  Foundation.

3

4    BY MR. HECHT:

5

6

7          MS. JOHNSON:  Objection.  Certainly

8    foundation.  It's also outside the scope to the

9    extent not tied to Corellium, which it sounds like

10   from your question it's not.

11         So instruct you not to answer.

12   BY MR. HECHT:

13

14

15         MS. JOHNSON:  Objection.  Foundation.

16

17   BY MR. HECHT:

18

19

20         MS. JOHNSON:  Objection.  That

21   mischaracterizes the testimony.

22





6          MS. JOHNSON:  Objection.  Foundation.

Page 96



4                MS. JOHNSON:  Objection.  Outside the scope.

5        I appreciate the tying to valuation of

6    Corellium, but it's outside the scope of the topic.

7            I'd instruct you not to answer.

8    BY MR. HECHT:

9

13                (Reporter clarification.)

14    BY MR. HECHT:

15

20                MS. JOHNSON:  Objection.  Compound.

21

1    BY MR. HECHT:

2    ████████████████████████████████████

3         MS. JOHNSON:  Objection.  Vague.

4    ██████████████  ████████████████████████

█   ████████████████████████████████████

█   ████████████████████████████████████

█   ████████  ██████████████████████████████

█   ██████████████████

█   ████████████████████████████

█   ████████████████████████████████████

█   ████████████████████████████████████

█   ██████████████████████████████

█   ████████████████████████████████████

█   ████████████████████████████████

15   BY MR. HECHT:

16   ████████████████████████

17         MS. JOHNSON:  Objection.  Vague.  Foundation.

18   ██████████████  ██████████████████████

█   ██████████████████████████████████████

█   ██████████████████████████████████████

█   ████████████████████████████████

█   ██████████████████████████████████

█   ██████████████████████████████████████

█   ████████████

█   ████████████████████████████████████

Page 98

1 ████████████████████████████████████

2 ████████████████████████████████ ████

3 ████████████████████████████████████

4     ██████████████████████████████

5 ████████████████████████████████████

6 ████████████████████████████

7 BY MR. HECHT:

8     ████████████████████████████████

9 ████████████████████████████████████

10 ██████████████

11         MS. JOHNSON:  Objection.  Vague and

12 ambiguous.

13     ████████████ ██████████████████████

14 ████████████ ██████████████ ████ ████

15 ██████████████████

16     ██████████████████████████████████

17 ████████████████████████████

18 ██████████

19     ████████████████████████████████

20 BY MR. HECHT:

21     ██████████████████████████████

22 ████████████████████████████████

23         MS. JOHNSON:  Objection.  It's getting far

24 afield.  It's vague and ambiguous.

25         You can answer.



Page 100



14          MS. JOHNSON:  Objection --

15

16

17     BY MR. HECHT:

18

19

20

21

22          Q. Okay.  And let's look at -- you spoke about

23     the demo.  I'm going to ask you to open up

24

25          (Whereupon, Exhibit 6 was marked for

Page 101

1    identification.)

2              THE WITNESS:  Okay.  ▮▮▮▮▮▮▮▮▮▮

3    ▮▮▮▮▮▮▮

4              (Dog barking.)

5              THE WITNESS:  Sorry.  I have to let the dog

6    out.

7              MR. HECHT:  We'll mark this as Exhibit 6.

8              THE WITNESS:  Okay.  I'm back.

9    BY MR. HECHT:

10       Q. You can take a look at this.  ▮▮▮▮▮▮

11    ▮▮▮▮▮▮▮▮▮▮▮▮

12       A. Okay.

13       Q. Okay.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15       MS. JOHNSON:  Objection.  Foundation.

16    ▮▮▮▮▮▮▮▮▮  ▮▮▮▮▮▮▮▮▮▮

17    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18    BY MR. HECHT:

19    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20    ▮▮▮▮▮▮▮▮▮▮▮▮

21    ▮▮▮▮▮▮▮▮

22    ▮▮▮▮▮▮▮▮▮▮▮▮▮

23    ▮▮▮▮▮▮▮▮▮▮▮▮

24    ▮▮▮▮▮▮▮▮▮▮▮▮▮

25    ▮▮▮▮▮  ▮▮▮▮▮▮▮▮▮▮▮▮



Page 102

1    Occasionally, there would be a check-in on --

2

12          MS. JOHNSON:  Objection.  Vague.  Getting

13   close to outside the scope.

14          But you can answer that.

15

17   BY MR. HECHT:

18          Q. Okay.  We're going to look at

20          MR. HECHT:  I'm going to mark this as

21   Exhibit 7.

24          THE WITNESS:  Okay.

25          (Whereupon, Exhibit 7 was marked for



1    identification.)

2    BY MR. HECHT:

3

11        MS. JOHNSON:  Objection.  Foundation.

12

14    BY MR. HECHT:

15

22        MS. JOHNSON:  Objection.  Foundation.

23

Page 104



11    BY MR. HECHT:

12

13

14

15

16

17

18

19

20

21

22          MS. JOHNSON:  Objection.  Foundation.  Calls

23    for speculation.

24

Page 105



7    BY MR. HECHT:

8

10        MS. JOHNSON:  Objection.  Foundation.  Calls

11   for speculation.

12

20   BY MR. HECHT:

21



8      Q. Sure.

9          MR. HECHT:  We can look at ▮▮▮▮▮▮▮▮

▮▮▮▮  We'll mark that as Exhibit 8.

11         (Whereupon, Exhibit 8 was marked for

12     identification.)

13     BY MR. HECHT:

14

15     A. Sorry, I'm not finding it.  One second.

16     Q. Sure.  Take your time.

17     A. Okay.  I have this document open.

18



```
 5          MS. JOHNSON:  I'm sorry, Counsel, could you

 6     let me know where you're referring?  I'm sorry to

 7     interrupt.

 8          MR. HECHT:

 9          MS. JOHNSON:  On

10          MR. HECHT:  Correct, Exhibit 8.

11          MS. JOHNSON:  Thank you.  Got it.

12

25     BY MR. HECHT:
```

Page 108



3         MS. JOHNSON:  Objection.  Vague and

4     ambiguous.



2        MS. JOHNSON:  Objection --

18            (Reporter clarification.)

19            MS. JOHNSON:  I believe it was vague and

20    ambiguous.

21    BY MR. HECHT:

22        Q. Okay.  Do you recall a meeting with Chris, a

23    one-on-one at the end of July 2018?

24        A. Yes.

25        Q. Before your meeting, did you receive an

```
1    e-mail from Jon Andrews regarding talking points?

2         A.  Probably.

3         Q.  Okay.

4             MR. HECHT:  I'm going to mark as Exhibit 9

5    and 10.  This will be ███████████████ and ████

6             (Whereupon, Exhibit 9 was marked for

7    identification.)

8             (Whereupon, Exhibit 10 was marked for

9    identification.)

10            MR. HECHT:  ████████████████████

11            THE WITNESS:  Got it.

12   BY MR. HECHT:

13        █████████████████████████████
```



(Reporter clarification.)



14          MS. JOHNSON:  Objection.  Foundation.  Calls

15     for speculation.



6          MS. JOHNSON:  Objection.  Vague and compound.

Page 114



1              MS. JOHNSON:  Objection.  Foundation.



MS. JOHNSON:  Objection.  Compound.

1   Foundation.

2   

11          MS. JOHNSON:  Objection.  Outside the scope.

12  Foundation as well.  But outside the scope of the

13  topic.

14          I'd instruct you not to answer.

15  BY MR. HECHT:

16      Q. During your conversation with Chris Wade, did

17  you anticipate that if the deal didn't go through,

18  that Apple would go against Corellium legally?

19          MS. JOHNSON:  Objection.  Outside the scope.

20  Calls for attorney-client privileged information.

21          I'd instruct you not to answer.

22  BY MR. HECHT:

23      Q. Well, to the extent that it doesn't implicate

24  attorney-client privilege, can you answer?

25          MS. JOHNSON:  It's still outside the scope,

1    Counsel.

2         MR. HECHT:  I'm asking about what his thought

3    process was during the meeting.  It also goes to

4    valuation.

5         MS. JOHNSON:  Can you reframe the question?

6    I did not see that connection.

7    BY MR. HECHT:

8    ████████████████████████████████████

█    ████████████████████████ -- excuse me.

10   ████████████████████████████████████

█    ████████████████████████████████████

█    ████████████████████████████████████

█    ██████████████████████

█    ████████████████████████████████████

█    ████████████████████████████████████

█    ██████████████████████

17        MS. JOHNSON:  Objection.  Vague.  Compound.

18   Misstates testimony.

19   ████████████  ████████████████████

█    ████████████████████████████████████

█    ████████████████████████████████████

█    ██████████████████████████████████

█    ████████████████████████████.

24   ████████████████████████████████

█    ████████████████████████████████████

Page 118

1    █████████████████████████████████████████

2    █████████████████████████████████████████

3    ████████████████████████████████████████

4    ███████████████████████████████████████████

5    ████████████████████████████

6    BY MR. HECHT:

7         ██████████████████████████████████

8    ████████████

9         ███████████████████████████

10        MS. JOHNSON:  Asked and answered.

11   ████████████   █████████████████████

12   █████████████████

13   BY MR. HECHT:

14        █████████████████████████████████

15   ██████████████████████████████████████████

16   ██████████████████████████████████████████

17   ████████

18   ████████████████████████████████████

19   ███████████████████████████████████

20   ███████████████████████████████████████████

21   ██████████████████████

22        MS. JOHNSON:  Objection.  Incomplete

23   hypothetical.  Foundation.  Vague.

24   ████████████   ████████

25        ████████████████████████████████████

Page 119



10    BY MR. HECHT:



Page 120

8          MS. JOHNSON:  Sorry.  Objection.

10          MR. HECHT:

19          MS. JOHNSON:  Objection.  Foundation.



```
 1    ███████████████████████████████████████
 2    █ ████████████████
 3    █    ███████████████████████████
 4         MS. JOHNSON:  Objection.  Foundation.
 5         THE WITNESS:  Sorry.  Apologies for speaking
 6    over the attorney.
 7         █████████████████████████
 8    █ █████████████████
 9    █   ██████████████████████████
10    █ ████████████████████████████████
11    █ ██████████████████
12    █   ██████████████████████████
13    █ ██████████████ ███████████████
14    █ ██████████████████████████
15    █ ██████████████ ██████████████████████
16    █ ███████████████████
17    █   ███████████████████████████████
18    █ █████████████████████████████
19    █ █████
20    █ ██████████
21    █  ██████████████████████████
22    █ █████████████████
23    █   ██████████████████████████
24    █ ████████████████████████████████
25    █ ███████████████████
```



```
1        MS. JOHNSON:  Objection.  Foundation.
2
17    BY MR. HECHT:
18        Q. How long did the one-on-one meeting in July
19    of 2018 last?
20        A. I don't recall.  I would have guessed it
21    would have been standard for it to be about an hour
22    or 45 minutes.
23        Q. What do you mean by "standard"?
24        A. I mean, my calendar slots are very often
25    filled with hour long or 45-minute meetings.
```



Page 123

1      ████████████████████████████████████████

       ████████████████████████████████████

3           MS. JOHNSON:  Objection to the extent it

4      mischaracterizes the testimony.

5           ██████████████  ██████████████████████

       ███████████████████████████████████

7      BY MR. HECHT:

8           Q. Different question.

9           A. So you're re-asking the question from earlier

10     or --

11          MS. JOHNSON:  Objection.

12          THE WITNESS:  I'm confused.

13     BY MR. HECHT:

14          ███████████████████████████████████████

       ████████████████████████████████████████████

       ████████████████████████████████████████████

       ████████████████████████████████

18          MS. JOHNSON:  Objection.  Asked and answered.

19          ██████████████  █████████

20          MS. JOHNSON:  Mischaracterizes the testimony.

21          ██████████████  ████████████████████████

       ████████████████████████████████████████████████

       ████████████████████████████████

       ██████████████████████████████████  ██████████

       ████████████████  ████████████████████████████

Page 124

1   ████████  ████████

2          In this case, it seemed especially material

3   to understand whether Chris' motivations and Apple's

4   motivations were aligned.

5          So I was -- I took the time to meet with

6   Chris.

7   BY MR. HECHT:

8       Q. Where did you guys meet?

9       A. In Apple Park, there are some kind of

10  interview rooms on the first floor.  We met in one of

11  those.

12      Q. Okay.  ████████████████████



Page 125

1 ████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ██████████████████████████████████

4          Q. To your knowledge, did anyone else at Apple

5    speak with Mr. Wade about ████████████████?

6          A. I don't know.

7             MS. JOHNSON:  Objection.  Foundation.

8    BY MR. HECHT:

9          Q. Do you recall Chris asking about using you in

10   the video?

11         A. No.  That would have been weird.

12         Q. ████████████████████████████████████

     █████████████████

     ██████████████████████████████████████

     ██████████████      █████████████████

     █████████████████████████████████████████

     █████████████████████████████████████████

     ███████████████████████████████████

     ██████████████████████████████████████████

     ██████████████████      ████████████████████

     █████████████████████      ███████████████

     ██████████████████████████

23         Q. To your knowledge, did anyone at Apple see

24   that deck?

25             MS. JOHNSON:  Objection.  Foundation.



Page 126

1          THE WITNESS:  I don't know.

2     BY MR. HECHT:

3

4

5          MS. JOHNSON:  Objection.  Vague.

6



Page 127

1   ████████████████████████████

2   BY MR. HECHT:

3   ████████████████████████████████

    ████████████████████████████

5       (Reporter clarification.)

6       MS. JOHNSON:  Objection.  Calls for

7   speculation.  Foundation.

8   ██████████  ████████████████████

    ████████████████████

    ██████████

    ████████████████████

    ████████████████████████████████

    ████████████████████████████████

    ████████████████████████████████

15      MS. JOHNSON:  Same objections.  Compound.

16  ██████████  ████████████████████

    ██████████████████████████████

    ██████████████████████████████

    ████████████████████

    ████████████████████████████████

    ██████████████████████████

    ████████████████████████████████

    ████████████████████████████████

    ████████████████  ████████████████

    ██████████████

Page 128

1   BY MR. HECHT:

2       Q. ████████████████████████████████

    ████████████████████████████████████

    ██████████████████████████████████

    ██████████████

        ████████████████████████████████. As I

7   said, had Chris brought it up, hey, we think what

8   we're doing is okay, I would have said, no way in

9   hell.  I mean, that's crazy.

10      Q. Did you discuss anything regarding the

11  Corellium product itself during your one-on-one

12  meeting?

13      A. I mean Chris presume -- presumably, he was

14  pitching something about the Corellium product.  I

15  don't recall.

16      Q. Okay. ████████████████████████████████

    ████████████████████████████

        ████████   If he brought up anything relating to

19  the legality of what Corellium was doing, I would

20  have said, Chris, you're nuts, that -- you know

21  better, there's no way that this is okay.  Apple has

22  already, you know, gone -- successfully litigated

23  copyright issues on Macintoshes.  You know this isn't

24  allowed.

25          ████████████████████████████████. He

1   had to know our position on this.  That's why he

2   mentioned it to Ivan and -- yeah, there was no way.

3        Q. How did you think the one-on-one meeting went

4   with Chris?

5             MS. JOHNSON:  Objection.  Vague.

6             THE WITNESS:  I mean, on an interpersonal

7   level, I thought it was fine. ████████████████████

    ████████████████████████████████████████████████

    ██████████████████████████████████████████████████

    ███████████████████████████████████████████████

    ██████████████████████████████████████████████████

    █████████████████████████████████████████████████

    ████████████████████████████████████████████████

    █████████████████████████████████████████████████

    ██████████████████████████████████████████████████

    ████████████████████████████████████████████████

    ████████████████████

18        So I felt like, okay, it was nice enough

19   meeting, probably wasn't going do end with him

20   joining.

21   BY MR. HECHT:

22        Q. What did you think was going to happen after

23   that meeting?

24             MS. JOHNSON:  Objection.  Vague.

25        ███████████████     ██████████████████████

Page 130



```
 1  ███████████████████████████  ████████
 2  █████████████████████████████████
 3  ████████████████████████████████
 4  ███████████████████████
 5  ██████████████████████████████
 6  ████████████████████
 7      ████████████████████████████
 8      ████████████████████████████
 9  ██████████████████████████████████
10  BY MR. HECHT:
11      ██████████████████
12          MS. JOHNSON:  Objection.  Vague.  Ambiguous.
13      ██████████  ██████████████████
14  ████████████████  █████████████
15  ████████████████████████████████████
16  ██████████████████████████████
17  ████████
18  BY MR. HECHT:
19      ███████████████████████
20  ████████
21          MS. JOHNSON:  To the extent this gets outside
22  of the scope, because you haven't tied it to the
23  topics, I'd object and instruct not to answer.
24          But if you'd tie it to the topics, we can
25  evaluate.
```

Page 131

BY MR. HECHT:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10   Q. Did you -- actually we've been going about an

11   hour. Do you want to take another break? This may

12   be the last break.

13   A. Are we going to wrap up at 12:00? A short

14   break would be good because I'm trying to -- got to

15   get to work.

16   Q. We can --

17   MR. HECHT: Let's go off the record for a

18   second and get kind of the time.

19   THE VIDEOGRAPHER: At 2:32 p.m. we're going

20   off the video record.

21   (Whereupon, a break was taken.)

22   THE VIDEOGRAPHER: At 2:38 p.m. we're back on

23   the video record.

24   MR. HECHT: Okay. I would like to mark as

25   Exhibit 11 ▮▮▮▮▮▮▮▮.

Page 132

1        (Whereupon, Exhibit 11 was marked for

2     identification.)

3     BY MR. HECHT:

4



Page 133



```
12          MS. JOHNSON:  Object.  Hold on.  Hold for the

13     question.

14     BY MR. HECHT:

15

18          MS. JOHNSON:  Objection.  Foundation.

19          To the extent it calls for attorney-client

20     information, don't answer, but if you can answer

21     outside of that, subject to that objection.

22

24     BY MR. HECHT:

25          Q.  Okay.  So did you hear from Mr. Wade again at
```

1  any point after your one-on-one with him in July of

2  2018?

3       MS. JOHNSON:  Objection.  Apologies.

4  Objection to the extent it's outside the scope of the

5  topic, and I believe that it is, given it's anything

6  after the meetings.

7  BY MR. HECHT:

8       Q. Well, actually, in the Apple motion for

9  protective order on page 1, Apple says that you were

10 involved with no correspondence with Mr. Wade.

11      So I'm asking in connection with the

12 declaration that you submitted, what correspondence

13 you had had with Mr. Wade after the July 2018

14 meeting.

15      MS. JOHNSON:  And what portion of the

16 declaration are you referring to?  The protective

17 order is outside the scope.  That's the scope of --

18 the testimony topics is very --

19      MR. HECHT:  The motion for the protective

20 order but -- let's see.  I guess we can move on from

21 that question.

22 BY MR. HECHT:

23      Q. Did you ever meet with Amanda Gorton before?

24      MS. JOHNSON:  Outside the scope to the extent

25 you're not connecting it to the topics.  Objection.

1          MR. HECHT:  Well, it's background for

2     evaluation of what Ms. Gorton's capabilities are.

3     I'm going to ask that he answer it.

4          MS. JOHNSON:  Objection.  Instruct the

5     witness not to answer unless you tie it to the

6     topics.

7     BY MR. HECHT:

8

1 ███████████████████████████████████████

2 ████████████████████████

3     Q. In your declaration you do refer to Chris

4 Wade's earlier company.  Specifically, it says you

5 may have met with Mr. Wade several years earlier in

6 2014.

7        Did you ever review any materials in

8 connection with the deposition that might have

9 refreshed your recollection about the 2014 meeting?

10        MS. JOHNSON:  Objection to the extent it

11 calls for attorney-client privileged information.

12        You can answer without revealing those

13 communications.

14        THE WITNESS:  Okay.

15        I saw -- or I'm aware that -- of messages

16 indicating that meeting was set up and -- around the

17 time of I think while I was at our Worldwide

18 Developer's Conference, that there might have been a

19 meeting with Chris back then.  I nonetheless still

20 actually have no recollection of that meeting or

21 meeting him then, but I could believe it took place.

22        That's a crazy week for me when I meet like

23 literally hundreds of people.  So I'm afraid it's all

24 a bit of a blur for me.

25 BY MR. HECHT:



1

2

3          MS. JOHNSON:  Objection to the extent it

4     mischaracterizes the facts or assumed facts.

5

6

7

8

9

10

11

12

13

14

15

16          MS. JOHNSON:  Objection.  Outside the scope.

17          You're not tying it to the meeting or

18     anything in the declaration.

19          I'd instruct the witness not to answer.

20          MR. HECHT:  In the declaration, meeting with

21     Chris Wade and the potential hire by Apple, paragraph

22     11.

23          MS. JOHNSON:  How is your question tied to

24     the declaration?  He's just testified he doesn't

25     recall the meeting.

1    MR. HECHT: I'm asking him if he recalled --

2    the second aspect of the potential hire, being

3    potentially hired, you missed that part of the

4    sentence.

5    MS. JOHNSON: Objection. The question is not

6    clear from my perspective. If you'd like to rephrase

7    it so I can see how it's tied to the topics.

8    MR. HECHT: Sure.

9    BY MR. HECHT:

10    Q. You describe in your declaration that you may

11    have had a meeting relating to them being potentially

12    hired. ██████████████████████████████

      ████████████████████████████████████

      ████████████████████████████████████

15    MS. JOHNSON: Asked and answered.

16    ████████████  ████████████████████████

      ████████████████████████████████████

      ████████  ████████████████████████████

19    MR. HECHT: I think that's it. Let me just

20    round up. I'm going to see if there's anything else.

21    Take a brief -- everyone stay online, but let me take

22    a few minutes to see if there are any other

23    questions. Otherwise, I think I'm almost done.

24    We can go off the record for a second.

25    (Whereupon, a break was taken.)

```
1    BY MR. HECHT:

2         Q. Okay.  I have one follow-up question.  I had

3    asked you about --

4              THE VIDEOGRAPHER:  Sorry, I have to go back

5    on video.

6              MR. HECHT:  Sorry.

7              THE VIDEOGRAPHER:  At 2:50 p.m. we're back on

8    the video record.

9    BY MR. HECHT:

10   ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

14             MS. JOHNSON:  Objection.  Assumes facts.

15   Vague as to -- it's vague and ambiguous.

16             You can answer if you understand it.

17   ████████████████  ███████████████████████

████████████████████████████████████  █████████████

████████████████████

20   BY MR. HECHT:

21        Q. Do you recall an article in Forbes relating

22   to potentially Apple dev devices?

23             MS. JOHNSON:  Objection.  Outside the scope.

24        I don't see how this is connected to any of

25   the topics.
```

1    BY MR. HECHT:

2    ██████████████████████████████████████

3    ████████████

4         MS. JOHNSON:  Objection.  Outside the scope.

5    The article is not in front of him.  It seems far --

6    BY MR. HECHT:

7         Q. Let me give you --

8         MR. HECHT:  Let's look at ██████████████.

9    We'll mark it as Exhibit 12.

10        (Whereupon, Exhibit 12 was marked for

11   identification.)

12   BY MR. HECHT:

13   ████████████████████  ██████████████████████

14   ██████████████████)  ████████████████████████

15        A. All right.  What's your question?

16   ██████████████████████████████████████████

17   ████████████████████████████████████████████

18   ████████████████████████

19        MS. JOHNSON:  Objection given the timing.

20   I -- I see that you framed your question about

21   valuation, but I would object as outside the scope.

22        If he can answer within the scope of

23   valuation, he can answer, but it's outside the scope,

24   outside the timeline.

25        THE WITNESS:  Sorry, I don't --

```
 1            (Simultaneous conversation.)
 2        ████████████  ████████████████████
          ███████████████████████████████████
          ██████████████████████████████████
          ██████████████  █████████████████
 6     BY MR. HECHT:
 7         Q. Well, what happened after your one-on-one?
 8     What was -- where did the discussions lead after
 9     that?
10            MS. JOHNSON:  Objection to the extent it's
11     outside the valuation or decision making.
12            As to this, you can answer.
13            THE WITNESS:  I think it all kind of went
14     nowhere.  I think we -- we█████████████████
          █████████████████████████████████████
          █████████████
17     BY MR. HECHT:
18         Q. Okay.
19            MR. HECHT:  I don't think I have anything
20     else.
21            So I got you out on time almost.
22            MS. JOHNSON:  I have just a couple of
23     questions for you.  They will be quite brief.
24            THE WITNESS:  Okay.
25     ///
```

```
1                  EXAMINATION

2    BY MS. JOHNSON:

3        Q. Thank you.  You were asked questions earlier

4    about your understanding of Corellium's technology.

5            Do you remember the series of questions

6    asking you to characterize Corellium's technology?

7        A. Yes.

8        Q. I wanted to ask the basis for your

9    understanding.  What was the time frame for the basis

10   of your understanding of Corellium's technology that

11   you described earlier?

12       A. Primarily in and around -- I mean there had

13   been -- our team had been evaluating Corellium in and

14   around that March 1st meeting, and then we deepened

15   our understanding and I was -- I had that one -- that

16   high level briefing on March 1st and then there were

17   subsequent internal discussions about how -- what we

18   learned about the technology and how it might be

19   applicable to Apple.

20           So it was around that time frame that I built

21   my primary understanding.

22       Q. And by March 1st, you mean March 1st, 2018?

23       A. Correct.

24       Q. All right.  And in any of your discussions

25   with Mr. Wade, did you say anything that would
```

1       indicate that Corellium's product did not infringe

2       Apple's intellectual property?

3           A. Absolutely not.

4           Q. And is that true for both of the meetings

5       that you participated in, both in March and in July

6       of 2018?

7           A. Yes, absolutely.

8           Q. Thank you.

9           MS. JOHNSON:  No further questions.

10          MR. HECHT:  No further questions here either.

11          THE REPORTER:  Counsel, would you like to

12      order a certified copy of this deposition?

13          MS. JOHNSON:  Ms. Nightingale, do we have a

14      standing stipulation?

15          MS. NIGHTINGALE DAWSON:  Yes, we do want a

16      transcript.  It doesn't need to be rushed.

17          THE REPORTER:  Would you like a rough?

18          MS. NIGHTINGALE DAWSON:  We will take a

19      rough.  We don't need the transcript itself to be

20      expedited.

21          I did want to say just for the record that

22      this is pursuant to the protective order attorneys'

23      eyes only for the next 30 days and then it will be

24      de-designated.

25          THE REPORTER:  Mr. Hecht, do you want a rough

Page 144

1    also?

2              MR. HECHT:  I believe so.  Yes, we do.

3              Have a nice afternoon.

4              THE VIDEOGRAPHER:  At 2:56 p.m., we're going

5    off the video record.

6              (The deposition of CRAIG FEDERIGHI was

7    concluded at 2:56 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              CERTIFICATE OF WITNESS

2

3          I, CRAIG FEDERIGHI, hereby declare that I have

4      read the foregoing testimony pages 1 through 146,

5      inclusive.  I hereby state there are:

6

7          (check one)

8

9          _____  no corrections

10         _____  corrections per attached

11

12

13         _____
                CRAIG FEDERIGHI
14

15         _____
                DATE
16

17

18                     ---o0o---
19

20

21

22

23

24

25

1          I, NINA PAVONE, a Certified Shorthand

2     Reporter, hereby certify that the witness in the

3     foregoing deposition was by me duly sworn to tell the

4     truth, the whole truth, and nothing but the truth in

5     the within-entitled cause;

6          That said deposition was taken down in

7     shorthand by me, a disinterested person, at the time

8     and place therein stated, and was hereafter

9     transcribed, by computer, into typewriting, under my

10    direction and supervision;

11         That before completion of the deposition

12    review of the transcript ( x) was requested ( ) was

13    not requested.  If requested, any changes made by the

14    deponent (and provided to the reporter) are appended

15    hereto.

16         I further certify that I am not of counsel,

17    nor attorney for any of the parties in the foregoing

18    deposition and caption named, nor in any way

19    interested in the outcome of the cause named in said

20    caption, and that I am not related to any of the

21    parties hereto.

22

23    DATE:  April 22, 2020

24                        _____

25                        NINA PAVONE, CSR #7802