DEX  32

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:19-cv-81160**

APPLE INC.,

                 *Plaintiff*,

     v.

CORELLIUM, LLC,

                 *Defendant*.

---

**DEFENDANT'S NOTICE OF SERVING FOURTH AMENDED ANSWERS**
**TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Defendant Corellium, LLC ("Corellium"), by and through undersigned counsel, pursuant to the Federal Rules of Civil Procedure, hereby files this Notice of Serving Fourth Amended Answers to Plaintiff, Apple Inc.'s ("Apple"), First Set of Interrogatories.

Dated: March 9, 2020              Respectfully submitted,

                    By:   */s/ Justin B. Levine*
                          Jonathan Vine
                          Florida Bar No. 10966
                          jonathan.vine@csklegal.com
                          Justin Levine
                          justin.levine@csklegal.com
                          Florida Bar No. 106463
                          Lizza Constantine
                          lizza.constantine@csklegal.com
                          Florida Bar No. 1002945

                          COLE, SCOTT & KISSANE, P.A.
                          Esperante Building
                          222 Lakeview Avenue, Suite 120
                          West Palm Beach, Florida 33401
                          Telephone: (561) 383-9222
                          Facsimile: (561) 683-8977

                          and

PIERCE BAINBRIDGE BECK PRICE &
HECHT LLP
277 Park Avenue, 45th Floor
New York, NY 10172
Telephone (646) 779-5315
Facsimile (646) 968-4125
David Hecht, *Pro hac vice*
E-mail: dhecht@nortonrosefulbright.com
Maxim Price, *Pro hac vice*
E-mail: mprice@piercebainbridge.com
Melody McGowin, *Pro hac vice*
E-mail: mmcgowin@pierbainbridge.com
Wen Wu, *Pro hac vice*
E-mail: wwu@pierbainbridge.com
Minyao Wang, *Pro hac vice*
E-mail: mwang@pierbainbridge.com

*Attorneys for Corellium, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of March, 2020, a true and correct copy of the

foregoing document has been furnished via email to counsel of record identified below.

*/s/ Justin B. Levine*
Justin B. Levine

## SERVICE LIST

Martin B. Goldberg
mgoldberg@lashgoldberg.com
rdiaz@lashgoldberg.com
Emily L. Pincow
epincow@lashgoldberg.com
gizquierdo@lashgoldberg.com
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL 33131

Kathryn Ruemmler (*pro hac vice*)
kathryn.ruemmler@lw.com
Sarang Vijay Damle (*pro hac vice*)
sy.damle@lw.com
Elana Nightingale Dawson (*pro hac vice*)

elana.nightingaledawson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004


Andrew M. Gass (*pro hac vice*)
andrew.gass@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Jessica Stebbins Bina (*pro hac vice*)
jessica.stebbinsbina@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067

*Attorneys for Plaintiff,*
*Apple Inc.*

**DEFENDANT'S FOURTH AMENDED ANSWERS TO PLAINTIFF'S**
**FIRST SET OF INTERROGATORIES**



**INTERROGATORY NO. 1:** Identify each version, release, update, or patch, (including any alpha or beta versions) of the Corellium Apple Product, including for the cloud-based Corellium Apple Product and all private installations of the Corellium Apple Product, with a description of the changes made in each successive version.

> **ANSWER:** Corellium objects to this request as it seeks disclosure of proprietary and trade secret information regarding Corellium's product. Specifically, this Interrogatory seeks detailed and technical information that comprises portions of innovative technology that is at issue in this case. Therefore, Corellium responds only under the protection of the Protective Order under Fed. R. Civ. P.26(c).
>
> Corellium objects to this Interrogatory in that it is intended to annoy or harass Corellium and its officers, employees, agents, representatives, and other persons acting, or purporting to act on behalf of Corellium. The information sought is not necessary for Plaintiff to establish any of its claims, as it is Corellium's product in general and the virtual display of iOS that Apple takes issue with.
>
> Corellium states as follows:















**INTERROGATORY NO. 2:**   Separately for each version or installation of the Corellium Apple Product Identified in Interrogatory No. 1, fully describe the functional flow for the Corellium Apple Product, including at least: a) all steps a user takes to set up and access the Corellium Apple Product; b) how the user creates a new Virtual Device; c) how an existing Virtual Device is saved; d) how the user accesses a saved Virtual Device; e) how a user interacts with a Virtual Device created in Corellium Apple Product; and f) how the GUI Elements are determined and displayed to the user.

**ANSWER:**   Corellium objects to this request as it seeks disclosure of proprietary, confidential and/or trade secret information regarding Corellium's product.  Therefore, Corellium responds under the protection of the Protective Order under Fed. R. Civ. P.26(c). In that regard, Corellium states as follows:













**INTERROGATORY NO. 3:** Fully describe the process or processes by which the Corellium Apple Product creates a new Virtual Device, including any steps taken to bypass any Security Measures that would otherwise prevent iOS from being installed on anything other than Apple-manufactured hardware.

      **ANSWER:**     Corellium objects to this request as it seeks disclosure of proprietary, confidential and trade secret information regarding Corellium's product.  Therefore, Corellium responds only under the protection of the Protective Order under Fed. R. Civ. P.26(c).

     Corellium states that the two definitions of "Security Measures" are not equivalent. One refers to iOS itself and the other to protected / encrypted / secured applications. This response attempts to answer in both senses, with the understanding that "protected / encrypted / secured" refers to what is commonly described as iTunes Store DRM.

     During creation of a new Virtual Device intended to run iOS, after the user identifies the requested configuration of the Virtual Device, the following steps generally happen:

    1.  <u>Provision of the firmware archive</u>

     The user uploads the firmware file or selects a firmware that has been pre-configured for the system. Other firmware or software components may be provided by the user here, but they are not required to run iOS on the Virtual Device.

    2.  <u>Extraction of firmware components</u>

The firmware archive is a standard unencrypted ZIP or ZIP64 file. The archive contains numerous components, but only the following ones are used in the Corellium Virtual Device creation process: guest OS kernel, restore RAM disk, hardware device tree, and on certain versions of iOS, the so-called external trust cache.

Extraction or interpretation of none of these requires circumventing a security measure. In particular, there is no encryption applied.







**INTERROGATORY NO. 4:** Fully describe the process by which the Corellium Apple Product was developed, including but not limited to the circumstances under which the idea for the Corellium Apple Product was conceived, the date the development work began, the date the development work was complete or substantially complete, and all Persons who contributed in any way to the Corellium Apple Product.

**ANSWER:**      Corellium objects to this Interrogatory as it seeks disclosure of proprietary, confidential and trade secret information regarding Corellium's business and product. Therefore, Corellium responds only under the protection of the Protective Order under Fed. R. Civ. P.26(c). Accordingly, Corellium states as follows:



**INTERROGATORY NO. 5:**  Describe the complete factual and legal basis for Your contention, if any, that You have not infringed any of Apple's asserted copyrights in this Action, including Identifying all Documents You will rely upon in support of such contention.

**ANSWER:**      Corellium objects to this Interrogatory as it seeks production of documents and information protected by the work product doctrine or the attorney-client privilege.  The Interrogatory specifically seeks information that serve as the legal bases of Corellium's defenses, therefore, that information and communications related thereto are privileged on their face.

Corellium describes the factual basis of its position as follows:  the Corellium product, in its as-built state that is delivered to customers, does not contain any works that Apple is asserting copyrights to in this Action. The product is akin to an operating system of a computer, where an application is loaded by the operating system, adjusted to interoperate with OS components, and exposed to the user in this final form.

The Corellium product uses exclusively Corellium-developed and third-party technology to perform the loading process of iOS. In particular, the "boot loader" used by Corellium is not a derivative work of Apple device firmware. Similarly, the SEP model used by Corellium does not contain a copy of Apple SEP firmware. Corellium developed those integrated pieces separately based on clean-room reverse engineering of freely available Apple products.

The Corellium product loads iOS from a separate firmware archive that is not provided by Corellium. Subsequently, the firmware is modified at load time to achieve interoperability with Corellium - much like an operating system loads an executable - and to add the following significant features that are relevant to the research and testing markets:

- optional "jailbreak" of the Virtual Device, where users are enabled to load unprotected, unencrypted programs for research and testing purposes,

- tracing features like CoreTrace or KAlloc heap debugger, which enable deeper insight into the OS than provided by Apple software,

- kernel debugger support, which is considered to be a basic and essential research tool that is not provided by Apple,

- ability to save and restore the complete state of the device while it's running (including state normally hidden from the user), which is a feature exclusive to Virtual Devices,

- ability to control features that are always-on on Apple hardware, in particular PAC, APRR and KTRR system integrity protection.

Note that "jailbroken" Virtual Devices offer a different set of features than "jailbroken" physical phones. In particular, Corellium Virtual Devices do not contain cryptographic keys required to access protected iTunes store content. They are substantially aimed towards enabling researchers to gain greater understanding of the software running inside. Because this is transformative, it is fair use.

**INTERROGATORY NO. 6:**  Identify and fully describe any and all licenses or authorizations that You contend permitted You to create the Corellium Apple Product, including but not limited to describing the Person to whom the license or authorization was granted and the Person who granted it, the scope of the license or authorization, the date and place the license or authorization was granted, for what period of time the license or authorization was granted, under what terms or restrictions the license or authorization was granted, and the consideration that was provided for the license or authorization.

**ANSWER:**      Various Apple employees, including but not limited to Jason Shirk, Jon Andrews, Craig Federighi, and Ivan Krstić, were aware of and encouraged Corellium to further develop its technology.

Apple's behavior towards Corellium and the general public qualifies as an implied license and/or acquiescence to use of the Corellium Apple Product. By providing iOS online for download directly from its servers, and by acquiescing to third parties' offering iOS for download from Apple's servers (on websites such as ipsw.me), Apple effectively granted Corellium a right to utilize iOS in its technology, at least for the intended purpose of Corellium's technology – which is transformative fair use in view of Apple's own products. In addition, by allowing other companies such as FireEye to sell an enterprise server appliance with a custom hypervisor for virtualizing MacOS on non-Apple hardware, Apple has publicly displayed acquiescence and authorization to the use of iOS in a similar manner.

Separately, and by way of further example, Apple's encouragement of Corellium's further development of its technology up to and during its continued negotiations for the acquisition of Corellium, after obtaining access to its technology and information concerning its underlying functionality, further qualifies as an implied license and/or acquiescence to Corellium's use of iOS.

**INTERROGATORY NO. 7:**  Describe whether Corellium and/or its employees are aware of or have been aware of since the founding of Corellium any unpatched bugs, exploits, vulnerabilities, or other software flaws in iOS, and whether Corellium has reported any such bugs, exploits, vulnerabilities, or flaws to Apple.





**INTERROGATORY NO. 8:**   Separately for each version or installation of the Corellium Apple Product Identified in Interrogatory No. 1, describe in detail Your pricing policies, approaches, and/or strategies for the Corellium Apple Product, from the formation of Corellium to the present, including but not limited to (1) the price(s) at which You have offered the Corellium Apple Product for sale or license; and (2) any discounts or promotions given and the bases therefor.

> **ANSWER:**       The documents produced that respond to this Interrogatory are designated as Confidential or Attorney's Eyes Only, as will be designated on their face, and are trade secret material.
>
> In accordance with the Court's Order and pursuant to Fed. R. Civ. P. 33(d)(4), Corellium is producing documents in lieu of an answer and from which the answer to this Interrogatory may be determined, and the burden of deriving or ascertaining the answer will be substantially the same for either party. The Bates numbers for these documents are:
>
> Corellium-014372
> Corellium-014375
> Corellium-017021
> Corellium-014521

**INTERROGATORY NO. 9:**   Separately for each version or installation of the Corellium Apple Product Identified in Interrogatory No. 1, state the following information for the Corellium Apple Product and any license of the Corellium Apple Product for each fiscal quarter from the formation of Corellium to present: (1) the Dates of each sale or license, (2) the type of sale or license (e.g., private installation or access to Corellium Apple Product), (3) the customer for each sale or license, (4) the Person(s) billed for each sale or license (whether the same as the customer or different), (5) the address where any private installations occurred, (6) the terms of each sale or license, and (7) the price paid for each sale or license, including whether no monetary amount was paid.

**ANSWER:** Corellium objects to this Interrogatory as it seeks disclosure of proprietary, confidential and/or trade secret information regarding Corellium's business and product. Specifically, Apple is seeking confidential information about clients relative to the terms of their individual purchase from Corellium. However, individual purchase terms are neither necessary to show damages nor whether infringement or a violation of the DMCA has occurred. In that regard, notwithstanding the fact that each client's sale terms are highly sensitive, they are not relevant to any issue in this case.

For the same reasons, Corellium also objects to this Interrogatory as it seeks private information of Corellium or Corellium's customers in violation of the parties' right to privacy under the US Constitution. Similarly, again for the same reasons, Corellium further objects to this Interrogatory in that it is as it is overbroad in both time and scope.























**INTERROGATORY NO. 10:** Separately for each version or installation of the Corellium Apple Product Identified in Interrogatory No. 1, state the following information for the Corellium Apple Product and any license of the Corellium Apple Product for each fiscal quarter from the formation of Corellium to present: (1) revenue received by Corellium for each sale or license; (2) costs of any goods sold for each private installation of the Corellium Apple Product; (3) standard costs (and any other costs) for Corellium; (4) research and development costs attributable to the Corellium Apple Product; (5) per-sale or per-license profit, and (6) total profit for Corellium from sales of the Corellium Apple Product.

      **ANSWER:**       Corellium objects to this Interrogatory as it seeks disclosure of proprietary and confidential information from Corellium. Corellium responds only under the protection of the Protective Order under Fed. R. Civ. P.26(c).





**INTERROGATORY NO. 11:** Separately for each version or installation of the Corellium Apple Product Identified in Interrogatory No. 1, state Your historical and currently projected revenues, projected costs, and projected per-sale profits for at least five (5) years into the future for the Corellium Apple Product.

**ANSWER:**        Corellium objects to this Interrogatory as it seeks disclosure of proprietary, confidential and trade secret information regarding Corellium's business and product.  Corellium responds only under the protection of the Protective Order under Fed. R. Civ. P.26(c).

**INTERROGATORY NO. 12:** Describe Your advertising, promotion, or marketing of the Corellium Apple Product, including the advertising, promotion, or marketing of (1) all features thereof; and (2) all products or services used in conjunction with the Corellium Apple Product. Include the Dates, locations, and description of all conferences at which one or more Corellium LLC employees publicly advertised or discussed the capabilities of the Corellium Apple Product, all paid advertising campaigns, all social media promotion, all advertising agencies used, all purchased media buys, all free media (including but not limited to interviews given by employees or owners of Corellium LLC), and any and all other means of advertising, promoting, or marketing the Corellium Apple Product from inception to the present.

**ANSWER:**  Corellium states as follows:

**Conferences**

**Black Hat 2018**
- Conference name: Black Hat USA 2018
- Date: August 4 – 9, 2018
- Location: Las Vegas
- Description of Conference: "Black Hat is the most technical and relevant information security event series in the world. For more than 20 years, Black Hat Briefings have provided attendees with the very latest in information security research, development, and trends in a strictly vendor-neutral environment. These high-profile global events and trainings are driven by the needs of the security community, striving to bring together the best minds in the industry. Black Hat inspires professionals at all career levels, encouraging growth and collaboration among academia, world-class researchers, and leaders in the public and private sectors."
- Attended by: Chris Wade, Amanda Gorton, Rob Turner, David Wang
- Description of Activity: Corellium met privately with peers, partners, and potential clients.

**Black Hat 2019**
- Conference name: Black Hat USA 2019
- Date: August 3 – 8, 2019
- Location: Las Vegas
- Description of Conference: (See above)
- Attended by: Chris Wade, Amanda Gorton, David Wang, Stan Skowronek, Rob Turner, Tim Strazzere, Steve Dyer

- Description of Activity: Corellium gave a private talk titled "Hidden Gems: iOS 13 Security and the Hardware Enabling It." Corellium hosted an invite-only party for customers, partners, and potential clients. Corellium and NowSecure co-sponsored a "capture the flag" (CTF) adventure game for Black Hat attendees.

**TenSec 2017**
- Conference name: Tencent Security Conference (TenSec)
- Date: August 31, 2017
- Location: Shenzhen China
- Description of Conference: "An international cybersecurity summit. The summit focuses on Big Data, Artificial Intelligence, Mobile Internet, Cloud Computing, Internet of Things, Block Chain, Virtualization, Intelligent Connected Vehicle and research tools in the security field, and encourages the sharing of the forefront of the international first-class security technologies and research achievements. We look forward to creating a platform to discuss the security technology innovation and the development trend in the future for all the experts in the security community. Since its launch in 2016, TenSec has been committed to exploring international frontier security technologies and research, building a long-term and sustainable communication and cooperation platform for international manufacturers and security communities to safeguard emerging Internet forms and user security."
- Attended by: Chris Wade
- Description of Activity: Chris Wade gave a presentation demonstrating a virtualized device.

**TenSec 2018**
- Conference name: Tencent Security Conference (TenSec)
- Date: October 10-11, 2018
- Location: Shenzhen China
- Description of Conference: (See above)
- Attended by: Chris Wade, David Wang
- Description of Activity: Chris and David gave a presentation on iOS SEP.

**Infiltrate 2019**
- Conference name: Infiltrate Security Conference
- Date: May 2-3, 2019
- Location: Miami
- Description of Conference: "Infiltrate is a deep technical conference that focuses entirely on offensive security issues. Groundbreaking researchers focused on the latest technical issues will demonstrate techniques that you cannot find elsewhere. Infiltrate eschews policy and high-level presentations in favor of just hard-core thought-provoking technical meat." http://infiltratecon.com
- Attended by: Chris Wade, Amanda Gorton, Steve Dyer, Stanislaw Skowronek
- Description of Activity: Corellium was a sponsor and had a booth in the sponsor hall. Corellium also included a Zip drive in the attendee's goodie-bags that

contained a puzzle; attendees who solved the puzzle could come to the booth to get a code to access an online adventure game, which was hosted on the Corellium platform.

**Infiltrate 2018**
- Conference name: Infiltrate Security Conference
- Date: April 26 -27, 2018
- Location: Miami
- Description of Conference: See above
- Attended by: Chris Wade, Amanda Gorton, Rob Turner
- Description of Activity: Networking

**TyphoonCon**
- Corellium did not attend TyphoonCon, but sponsored TyphoonCon by providing free accounts for training. In exchange, Corellium was listed as a sponsor on the website.
- Conference dates: June 10-14, 2019
- Location: Seoul, South Korea
- Description of Conference: Offensive security conference hosted by SSD Secure Disclosure

**Paid Advertising Campaigns**
Corellium paid for a promotional tweet on Twitter. $500. June 19 – July 19, 2019.

"If you plan on attending Black Hat USA and would like to see how Corellium rewrites the book on iOS & Android security, DM/Email us to schedule a free 1 hour training which includes iOS 13 - SEP, iBoot & Kernel debugging and an overview of new mitigations/enhancements."
-@CorelliumHQ


**Advertising agencies**
None

**Purchased Media Buys**
None

**Free Media**
Interviews
- Forbes, Thomas Brewster, interviewed Amanda Gorton, article Feb 15, 2018 (interview date uncertain)
- Forbes, Thomas Brewster, interviewed Amanda Gorton on Oct 11, 2019

**Other**



Twitter

Corellium uses the Twitter handle @CorelliumHQ. Corellium has used Twitter to announce beta testing signups, new features, job opportunities, news, and other events.

**INTERROGATORY NO. 13:** Identify the date when Corellium first became aware any of Apple's copyrights alleged in the Action, and describe the circumstances under which Corellium first became aware of Apple's copyrights, including Identifying all Persons and Documents through which Corellium first became aware of Apple's copyrights.

   **ANSWER:**

   Upon subsequent clarification by Apple that the term "copyrights" in this interrogatory relates only to those copyrights specifically asserted in the operative Complaint, Corellium states that the date when it first became aware of Apple's copyrights alleged in the Action is at least the date of service of Apple's initial Complaint. As a result of the service of Apple's Complaint, the following individuals became aware of Apple's copyrights: Amanda Gorton and Christopher Wade.

**INTERROGATORY NO. 14:** Identify all actions Corellium has taken with regard to or in response to Apple's copyrights or in the anticipation of any copyright litigation with Apple, including, but not limited to, any steps taken by Corellium to inform its customers about Apple's copyrights or to obscure information about Apple's copyrights from Corellium's users or customers.

   ANSWER:  Corellium states that it has taken no actions either to inform its customers about Apple's copyrights or to obscure information about Apple's copyrights from its users or customers.

**INTERROGATORY NO. 15:** Identify all Persons who have requested purchase of, license to, or any other access to, the Corellium Apple Product to whom Corellium has refused to sell, license, or give access.

    **ANSWER:**    Corellium has declined sale, license, or access to at least the following individuals or organizations:



In accordance with the Court's Order and pursuant to Fed. R. Civ. P. 33(d)(4), Corellium is producing documents in lieu of an answer and from which the answer to this Interrogatory may be determined, and the burden of deriving or ascertaining the answer will be substantially the same for either party. The Bates numbers for these documents are:

Corellium-026274
Corellium-026353
Corellium-007732
Corellium-026348
Corellium-008022
Corellium-007995
Corellium-026350
Corellium-026352
Corellium-026349
Corellium-026356
Corellium-026355
Corellium-026354
Corellium-026360

Corellium-026361
Corellium-026359
Corellium-026362

**INTERROGATORY NO. 16:** Identify all Foreign Persons, including but not limited to Foreign governments, public and private Foreign agencies, and Foreign companies, who have approached Corellium to learn about the Corellium Apple Product or its capabilities, or who have requested purchase of, license to, or any other access to the Corellium Apple Product, and describe Corellium's interactions and business with each such Person.

> **ANSWER:**        Corellium objects to this Interrogatory as it seeks disclosure of proprietary, confidential and trade secret information regarding Corellium's business and product. Corellium has already provided its customer list to Apple. Providing every inquiry Corellium has had for the purchase of its product has no connection whatsoever to this lawsuit and is a quintessential trade secret material. On the same grounds, Corellium also objects to this Interrogatory as it seeks private information of Corellium or Corellium's customers in violation of the parties' right to privacy under the US Constitution.

> Corellium further objects to this Interrogatory in that it is as it is overbroad in both time and scope. Specifically, this request is not narrowly tailored to determine whether Corellium's product infringes on Apple's copyright but rather, seeks information related to Corellium's business and contracts with third parties, or inquiries that had occurred and have been rejected, all of which are unrelated to the allegations in the Complaint and Apple.

**INTERROGATORY NO. 17:** Identify all Persons who have offered, formally or informally, to purchase or acquire part or all of Corellium's business and describe the circumstances of each offer.

> **ANSWER:**        Corellium objects to this request as it is overbroad, harassing, and not proportional to the needs of this case. Indeed, if a third-party company offered to acquire Corellium, that is entirely irrelevant and goes to no element of Apple's copyright infringement claim. Corellium also objects to this Interrogatory as it seeks private information of Corellium or Corellium's customers in violation of the parties' right to privacy under the US Constitution. Corellium further objects to this Interrogatory in that it is overbroad in both time and scope because it fails to identify a specific period or circumstance whereby an attempt by a third party to acquire Corellium, or any of the applicable details, may have had any relevancy to this lawsuit.

> As it relates to Apple, on January 25, 2018, Corellium and Apple entered into a Confidentiality Agreement for Possible Transaction (the "Non-Disclosure Agreement") to purchase Corellium. Subject to the terms of the Non-Disclosure Agreement, Corellium will produce its documents with Apple regarding its offer and negotiations regarding a potential acquisition which are responsive to this request.

**INTERROGATORY NO. 18:** Fully describe all factual and legal bases for each affirmative defense asserted, if any, in Your answer to the Complaint.

**ANSWER:**      Corellium objects to this Interrogatory as it seeks production of documents or information protected by the work product doctrine or the attorney-client privilege due to relating to the mental and strategic impressions of counsel and communications and strategy shared between counsel and the client. A discussion of the factual bases for each affirmative defense follows:

### FIRST AFFIRMATIVE DEFENSE
### (Failure To State A Claim)

Apple has failed to state a claim for both infringement and violation of the DMCA for the reasons stated below.

### SECOND AFFIRMATIVE DEFENSE
### (Fair Use)

The Corellium product is a wholly new, distinct, transformative, and socially-beneficial product with an entirely distinct purpose from ordinary iOS devices. Corellium's product provides users with a substantially more efficient and effective way to research, test, and critique both iOS itself and iOS-based applications.

Corellium's technology was designed solely for the limited purposes of research, critique, and testing.

First, the Corellium product does not provide key functionality that makes a standard iOS device desirable to ordinary consumers. For example, Corellium's virtual devices cannot make or receive phone calls, send or receive text messages, access iTunes or other DRM-protected content, log into an iCloud account, navigate with GPS, pair Bluetooth headphones, or take pictures. Indeed, the Corellium product is so significantly different from an ordinary iOS device that the differences render the Corellium product unusable and undesirable to consumers of ordinary iOS devices. In other words, it's an entirely different product than an iPhone.

Further, and in addition to the substantial differences stated above, Corellium's virtual product provides new and additional features for research, critique, and testing purposes that are not otherwise available on a standard iOS device.

For instance, the Corellium product incorporates several advanced and innovative research and testing tools. These tools include, for example, a file browser, an app browser, and CoreTrace, a proprietary tool that enables researchers to holistically view and comprehend all system calls made by the operating system and the apps running on it, giving researchers the ability to examine and understand both iOS itself and iOS-based applications in advanced new ways that cannot be achieved with a standard device, nor with any other research tools on the market. Corellium also offers a KAlloc heap debugger, kernel debugger support, and the ability to control features that are always-on on Apple hardware, such as PAC, APRR, and KTRR. These features, which again are not available with a standard iOS device, all contribute to deeper insight for more advanced research, testing, and critique.

- 41 -

What's more, Corellium's virtualization technology enables the interoperability of iOS on an entirely new form-factor: that is, Corellium enables iOS to run on virtual devices on an enterprise computer server. Importantly, this new form-factor is exponentially more scalable, efficient, and effective than ordinary iOS devices for the purposes of research, testing, and critique.

Virtualization yields greater scalability and efficiency, and it provides advanced, innovative new ways to meet the challenges of workloads like testing, research, and development.

To effectively test, research, and critique iOS and iOS-based applications, developers often need to perform their work on many different device models and many different iOS versions. This is because there are many different models and versions available on the market for end users, and developers want to ensure their testing and research applies across all the different variations that end users might have. In addition, developers often want to run tests across many devices in parallel, rather than testing in series on a single device, for greater speed and efficiency.

Physical devices are simply not designed for use at scale; they are designed for use by the individual consumer. This makes them inefficient and ineffective for testing and research at volume. Further, physical devices are immutable resources: they cannot be changed into another device on demand, so if you need a different device model or OS version, you must obtain an entirely new device resource.

Corellium's virtualization technology eliminates these inefficiencies by enabling iOS to run on a form-factor purposefully designed for scale and productivity: an enterprise server. Servers consolidate resources to a single piece of hardware, simplifying resource management. This provides a streamlined way for a user to orchestrate, deploy, and manage the resources they need for rapid, nimble, efficient testing and research. Moreover, Corellium eliminates resource inefficiency by allowing users to instantly create, destroy, and recreate virtual devices on demand as needed, rather than tracking down the physical devices they need while unneeded devices sit idle.

Notably, while scalability and efficiency carry no advantage for ordinary consumers, these factors are crucially advantageous for developers performing testing and research across many different device models and OS versions.

In addition, unlike physical devices, virtual devices can be paused, snapshotted, restored to a previous state, and cloned – features that further facilitate efficiency in research and testing. These features allow a developer to, for example, temporarily pause the running system and examine precisely what is happening at that moment, or return to a previous point and re-run a test in a slightly different way, or create multiple clones of a device and examine the results of different tests from the exact same starting point. This can't be done with physical iOS devices.

In short, not only does Corellium's technology not support several of the key features that make the original product desirable to ordinary consumers, but it also adds dramatic new functionality specifically designed for research, critique, and testing – functionality that is not otherwise available with the original product. These significant differences result in meaningful improvements in developers' ability to test, research, and critique iOS and iOS-based applications.

- 42 -

Indeed, Apple itself recognized the significant advantages presented by virtual devices for research and testing purposes when it sought to acquire Corellium's technology for these purposes for millions of dollars.

Because Corellium's product differs so dramatically from Apple's iOS devices, it cannot be said to serve as a substitute for Apple's iOS devices, and as such, it cannot be said to impact the market for iOS or Apple's iOS devices. In fact, Corellium's product addresses a market that Apple not only does not address, but actually impedes.

Not only are Apple's iOS devices not marketed for the purpose of testing, research, and critique, but moreover, they are designed and sold in a way that encumbers these purposes. For example, it is not possible to purchase iOS devices running older versions of iOS, nor does Apple permit users to downgrade their iOS devices to older versions of iOS. As a result, developers seeking to perform research and testing on older iOS versions must look to second-hand markets to obtain these devices. Often, researchers will contact a seller to ensure the device is not accidentally upgraded before shipping, and once they obtain the device, the must hope no one accidentally upgrades it or breaks the device, or they must find a new one. They must repeat this process every time they need an appropriate device with the appropriate version. Significantly, any enterprise providing an iOS-based application will need to perform this type of testing and research to ensure that their application is safe and stable for their end users, who may be using many different devices and iOS versions.

With Corellium's product, on the other hand, developers can instantly deploy the precise model with the precise OS version that they need for testing or research. Moreover, they can easily and quickly run tests across every device model on every iOS version. This exponential improvement in efficiency meaningfully impacts developers' ability to perform testing and research and further distinguishes the Corellium product from physical iOS devices.

Further, security research typically requires a jailbroken device. On a physical device, jailbreaking requires exploiting a vulnerability in the iOS code. As a result, iOS security researchers often hoard vulnerabilities, rather than report them, to ensure they can continue performing research.

Corellium's platform enables developers to "jailbreak" a virtual device without the use of any such vulnerabilities. Furthermore, Corellium's "jailbreak" does not facilitate access to DRM-protected content or bypass any DRM restrictions. With Corellium, researchers are thus able to meaningfully explore the system without relying on or retaining vulnerabilities in the iOS system, and without compromising DRM-protected content. Further, Corellium's platform gives developers tools that exceed the capabilities available on a physical jailbroken device, as described above.

In short, Corellium cannot be said to compete with Apple products because Corellium does not provide a substitute for iOS devices, but rather provides an entirely new and transformative product. In this way, it cannot be said to impact the market for iOS or Apple's iOS devices. On the contrary, Corellium addresses a market failure that is otherwise hindered by Apple's iOS devices.

Notably, a week before filing its lawsuit against Corellium, Apple announced its plans to provide pre-jailbroken research devices to select security researchers. However, these devices have not been released. If they ever are released, they will lack the innovative features described above, including the highly scalable form-factor and advanced controls only offered by virtual devices. As such, it is incorrect to suggest that Corellium impacts the market for Apple's "research devices," not only because no such market exists, but also because Corellium dramatically differs in key features and functionality.

The Corellium product, in its as-built state that is delivered to customers, does not contain any iOS code. The user obtains the unencrypted, publicly available iOS files from Apple's servers. Corellium's platform loads iOS and modifies it at load time to achieve interoperability, like an operating system loading an executable. Importantly, these modifications augment iOS with the advanced research features described above.

### THIRD AFFIRMATIVE DEFENSE
### (Estoppel)

Apple is estopped from making a claim stemming from Corellium's product because it is now taking a position directly contrary to its prior position relative to Corellium and Corellium's technology.  Specifically, Apple has long been aware of the virtualization technology offered by Corellium and/or Corellium's affiliated entities and principals in the past. In fact, Apple employees have not only known about the virtualization technology and failed to protest, but instead, have actively encouraged the continued development by Corellium, thus causing Corellium to continue investing significant resources into ongoing innovation.  Apple supported Corellium's innovation and technology so much so that Corellium has been invited to the Apple campus to provide demonstrations to Apple on multiple occasions. Never once did Apple object or protest.  Apple is well-aware of these facts and knows the specifics as to its own knowledge about Corellium and Corellium's technology.  Now, after encouragement by Apple, inducing Corellium to sink further resources into the technology, Apple suddenly sues for alleged damages.

### FOURTH AFFIRMATIVE DEFENSE
### (Laches)

Apple has long been aware of the virtualization technology offered by Corellium and/or Corellium's affiliated entities and principals in the past. In fact, Apple employees have not only known about the virtualization technology and failed to protest, but instead, have actively encouraged the continued development by Corellium, thus causing Corellium to continue investing significant resources into ongoing innovation.  Apple supported Corellium's innovation and technology so much so that Corellium has been invited to the Apple campus to provide demonstrations to Apple. Never once did Apple object or protest.  Apple is well-aware of these facts and knows the specifics as to its own knowledge about Corellium and Corellium's technology.  Now, after encouragement by Apple, inducing Corellium to sink further resources into the technology, Apple suddenly sues for alleged damages.

### FIFTH AFFIRMATIVE DEFENSE

- 44 -

**(Waiver)**

Apple has waived any claim it may have had stemming from Corellium's product because it has long been aware of the virtualization technology offered by Corellium and/or Corellium's affiliated entities and principals. In fact, Apple employees have not only known about the virtualization technology and failed to protest, but instead, have actively encouraged the continued development by Corellium, thus causing Corellium to continue investing significant resources into ongoing innovation.  Apple supported Corellium's innovation and technology so much so that Corellium has been invited to the Apple campus to provide demonstrations to Apple. Never once did Apple object or protest.  Apple is well-aware of these facts and knows the specifics as to its own knowledge about Corellium and Corellium's technology.  Now, after encouragement by Apple, inducing Corellium to sink further resources into the technology, Apple suddenly sues for alleged damages.

## SIXTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

Apple comes to the court with unclean hands because Apple has and is directly benefitting from Corellium's product after actively and implicitly encouraging Corellium to continue the development of the product but then suing Corellium for the same development.  In that regard, please see paragraphs 31 through 37 of Corellium's Counterclaim [D.E. 64].  Apple is now estopped from making a claim stemming from Corellium's product because it is now taking a position directly contrary to its prior position relative to Corellium and Corellium's technology.  Specifically, Apple has long been aware of the virtualization technology offered by Corellium and/or Corellium's affiliated entities and principals in the past. In fact, Apple employees have not only known about the virtualization technology and failed to protest, but instead, have actively encouraged the continued development by Corellium, thus causing Corellium to continue investing significant resources into ongoing innovation.  Apple supported Corellium's innovation and technology so much so that Corellium has been invited to the Apple campus to provide demonstrations to Apple. Never once did Apple object or protest.  Apple is well-aware of these facts and knows the specifics as to its own knowledge about Corellium and Corellium's technology.  Now, after encouragement by Apple, inducing Corellium to sink further resources into the technology, Apple suddenly sues for alleged damages.  Moreover, Apple is knowingly and improperly trying to restrain trade and control the security and research markets as discussed further below.

## SEVENTH AFFIRMATIVE DEFENSE
### (Restraint of Trade)

Apple is attempting to restrain trade through the guise of this lawsuit claiming alleged copyright infringement and violation of the DMCA.  If Apple succeeds in this case, it will not merely terminate an innovative technology that facilitates and advances the positive work of mobile developers and testers, but will stunt security, research, and innovation efforts within and beyond the mobile development industry.  To be clear, a successful result by Apple with the copyright infringement claim will set a precedent that the virtualization of any third-party software or other app or program, no matter the use or transformative nature, is infringing upon that third-

- 45 -

party's intellectual property rights. Such a result is at odds with the entire idea behind fair use and will inevitably close the door on virtualization and emulation efforts and other similar useful development and testing methods. Such a precedent will keep the industry as a whole from advancing forward, limited to only what is made available by hard devices—such as those entirely controlled by Apple.

Similarly, a successful result by Apple on the DMCA claim will result, effectively, in the jailbreak industry being deemed illegal, a notion that Congress and the U.S. Copyright Office has already expressly declined to ratify. Such a precedent, at odds with the current intent of Congress, would have a resounding negative effect on advancing security (national or otherwise), app testing, repair and maintenance, and innumerable other good faith uses for the jailbreaking of an electronic device.

Finally, a week before filing its lawsuit, Apple announced that it planned to release pre-jailbroken iPhones, which it will ostensibly offer for free for select security researchers – thus implying through this instant case, that providing jailbroken iOS for security research *is* permissible, so long as Apple controls it and has no competition.

## EIGHTH AFFIRMATIVE DEFENSE
### (Authorized Use, License, Consent, Acquiescence)

As stated above, Apple has long been aware of the virtualization technology offered by Corellium and/or Corellium's affiliated entities and principals in the past. In fact, Apple employees have not only known about the virtualization technology and failed to protest, but instead, have actively authorized and encouraged the continued development by Corellium, thus causing Corellium to continue investing significant resources into ongoing innovation. Apple supported Corellium's innovation and technology so much so that Corellium has been invited to the Apple campus to provide demonstrations to Apple. Never once did Apple object or protest. Apple is well-aware of these facts and knows the specifics as to its own knowledge about Corellium and Corellium's technology. Apple has acquiesced as well as expressly and implicitly authorized Corellium's virtualization technology and any use of Apple iOS therewith.

## NINTH AFFIRMATIVE DEFENSE
### (Invalidity or Unenforceability of Copyright)

Apple's protected work, or portions of it, are functional, not expressive works.

## TENTH AFFIRMATIVE DEFENSE
### (*Scenes a Faire* Doctrine)

Elements of Apple's copyrighted works are dictated by practical realities, such as by hardware standards and mechanical specifications, software standards and compatibility requirements, as well as standard programming practices, and may not obtain copyright protection as such.

Several elements of the iOS driver stack, where Corellium software meets Apple's iOS

product, are particularly good examples. The NAND Flash driver for currently supported iPhones (including the model 6s and newer) is an implementation of the open NVMe standard. Additionally, the USB driver stack on all iPhones not only implements the USB standards, but also interacts - on a real phone - with a third-party USB controller which also has Linux drivers. Similarly, for the WLAN device driver, a major part of functionality mirrors closely the Broadcom device drivers on other platforms. Another example is the FIPS module referred to in Interrogatory 3 above: FIPS (Federal Information Processing Standards) are public standards developed by the National Institute of Standards and Technology for use in computer systems by non-military American government agencies and contractors, establishing requirements for security and interoperability. These are only a few examples.

Furthermore, many portions of the iOS software, including the kernel, are based on unencrypted open-source software.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Merger Doctrine)

Corellium's use of its product is protected under the Copyright Merger Doctrine as there is only one way to virtualize third-party software for the purpose of research and testing—that is through the virtualization of the third-party software for the purpose of research and testing. Further, there is only one way to test and research a software, and that is to use the actual software. Corellium is merely providing a virtual platform for the purposes of research, critique, and testing. The virtualization is strictly Corellium code and there is no other way to research a certain software other than to use that software.

## TWELTH AFFIRMATIVE DEFENSE
### (No Willful infringement)

Corellium completely denies any and all claims made by Apple that it has infringed upon any of Apple's protected rights. That notwithstanding, Corellium states that all actions taken by it in the development and sale of its product were done innocently and in good faith and lack any willful intent to infringe.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Misuse)

Apple, via this lawsuit, is attempting to extend the protections afforded by its asserted Copyright Registrations to restrain trade as well as preclude Corellium from providing its virtualization product. This is copyright misuse.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (De Minimis Infringement)

Apple sells its iOS devices, which include its iOS software to a certain target market and for certain commercial purposes. Corellium's product is neither marketed nor sold to either that same target market or for those same purposes. Thus, there is minimal harm, if any, realized by

Apple. On the contrary, Corellium's product is marketed and sold to developers seeking to advance the security and stability of iOS and iOS-based applications, and as such, Corellium benefits and improves Apple's iOS products and the iOS ecosystem.

Furthermore, the Corellium product uses no code written by Apple for its proprietary virtualization platform. The Corellium virtualization platform merely enables users to load and execute certain portions of iOS for testing and research.   Corellium's clients download unencrypted publicly available iOS IPSW files directly from Apple to be run on Corellium's virtualization platform. Importantly, Corellium does not enable the user to run any encrypted iOS files, nor does Corellium facilitate any decryption. Corellium users are not able to run any portions of iOS that yield access to DRM-protected content or Apple services. Accordingly, any possible infringement, if any, is entirely de minimis. For clarity, however, Corellium denies any and all infringement.

### FIFTEENTH AFFIRMATIVE DEFENSE
### (Innocent Intent)

Corellium completely denies any and all claims made by Apple that it has infringed upon any of Apple's protected rights. That notwithstanding, Corellium states that all actions taken by it in the development and sale of its product were done innocently and in good faith and lack any willful intent to infringe.

### SIXTEENTH AFFIRMATIVE DEFENSE
### (Failure to State a Claim – No Copyright Infringement)

For all the reasons stated herein, Apple has failed to state a claim for Copyright Infringement.

### SEVENTEENTH AFFIRMATIVE DEFENSE
### (Constitutionality of 17 U.S.C. §§1201(a)(2) & (b))

The stated provisions abridge the First Amendment's protected right of free speech as the Corellium product is used for such purposes including the research, testing, and security efforts engaged by Corellium's clients.

### EIGHTEENTH AFFIRMATIVE DEFENSE
### (17 U.S.C. §1201(c)(4) – Free Speech)

Pursuant to 17 U.S.C. §1201(c)(4), the language set forth in section 17 U.S.C. §1201 does not "enlarge or diminish any rights of free speech or the press for activities using consumer electronics, telecommunications, or computing products."   Corellium retains the right to freely express its code and products using, *inter alia*, computing products as permitted by 17 U.S.C. §1201(c)(4). Corellium's expression is its own virtualization software, which is formed entirely upon its own code.

### NINTEENTH AFFIRMATIVE DEFENSE

**(No Circumvention Enabled)**

Initially, it is noteworthy that Apple has failed to specify exactly what technological protection measures Apple believes Corellium has circumvented, thus, it is impossible to assert any specific factual bases which Corellium will express to support this instant defense.

However, Corellium does state that it has not circumvented any technological protection measures in connection with the product at issue in this case because no such technological protection measures can be said to exist. For clarity, Apple makes its iOS files freely available, unencrypted, for anyone to download, and no technological measures are in place to prevent users from accessing, opening, viewing, modifying, copying, displaying, executing, or otherwise interacting with the iOS files once downloaded.  As such, no technological protection measures can be said to exist.

**TWENTIETH AFFIRMATIVE DEFENSE**
**(17 U.S.C. §1201(c)(1) – Fair Use)**

The factual bases for Corellium's defense of fair use is set forth above.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**
**(17 U.S.C. §1201(f) – Reverse Engineering)**

The Corellium product was developed and is sold for the purposes of repair, maintenance, research, testing, and security related reasons including reverse engineering.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**
**(17 U.S.C. §1201(g) – Encryption Research)**

The Corellium product was developed and is sold for the purposes of repair, maintenance, research, testing, and security related reasons including encryption research.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**
**(17 U.S.C. §1201(j) – Security Testing)**

The Corellium product was developed and is sold for the purposes of repair, maintenance, research, testing, and security related reasons including security testing.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**
**(37 C.F.R. §201.40(b)(6) – Jailbreaking)**

The Corellium product was developed and is sold for the purposes of repair, maintenance, research, testing, and security related reasons including jailbreaking.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**
**(37 C.F.R. §201.40(b)(11) – Good Faith Security Research)**

The Corellium product was developed and is sold for the purposes of repair, maintenance, research, testing, and security related reasons including good faith security research.

## **DECLARATION UNDER PENALTY OF PERJURY**

I, Amanda Gorton as the authorized representative and on behalf of Corellium, LLC,

declare under penalty of perjury under the laws of the United States of America that the foregoing

Fourth Amended Answers to Apple, Inc.'s First Set of Interrogatories are true and correct.

Executed on March  9 , 2020.

_____

AMANDA GORTON

AS THE AUTHORIZED REPRESENTATIVE
AND ON BEHALF OF CORELLIUM, LLC.