UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:19-cv-81160-RS

APPLE INC.,

    Plaintiff,

v.

CORELLIUM, LLC,
    Defendant.

_____/

**DEFENDANT CORELLIUM, LLC'S OPPOSITION
TO PLAINTIFF'S MOTION TO EXCLUDE CERTAIN
OPINIONS AND CORRESPONDING TESTIMONY OF JAMES OLIVIER**

Defendant Corellium, LLC ("Defendant"), by and through undersigned counsel, submits this Opposition to Plaintiff Apple, Inc.'s ("Apple") Motion to Exclude Certain Opinions and Corresponding Testimony of Corellium's Expert James Olivier and Incorporated Memorandum of Law (ECF No. 449, "Motion").

## INTRODUCTION

Apple argues that Dr. James Olivier should be precluded from testifying as to opinions that Apple alleges are only based on conversations with Corellium's co-founder and Chief Technology Officer Chris Wade. But Apple's arguments are tied to incomplete citations to Dr. Olivier's deposition transcript that do not, in fact, suggest (as Apple wrongly alleges) that Dr. Olivier's opinions were not predicated on sufficient facts or data.

Apple's Motion must fail for at least three reasons. First, Mr. Wade's testimony and Dr. Olivier's recitation of facts that he understood from Mr. Wade are consistent, particularly with respect to the fact that the Corellium Apple Product does not utilize the "update disk image" or encrypted portions of Apple's IPSW file containing iOS. Second, Dr. Olivier's testimony did not preclude the possibility that another Corellium engineer was on the calls with Mr. Wade and Dr. Olivier. Finally, Apple mischaracterizes testimony and intentionally omits critical portions, including statements that make clear that Dr. Olivier also relied on information in addition to his conversations with Mr. Wade.

## LEGAL STANDARD

District courts have broad discretion in deciding to admit or exclude expert testimony. *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 142 (1997). However, "[a] district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.,* 326 F.3d 1333, 1341 (11th Cir. 2003) (citing *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001) (quoting *Allison v. McGhan*, 184 F.3d 1300, 1311 (11th Cir. 1999))). "Quite the contrary, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible

evidence.'" *Id.* (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993)).

Consistent with *Daubert*, Federal Rule of Evidence 702 governs the admission of expert testimony. The rule permits qualified experts to proffer their expert opinions where (a) the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or decide a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702.

The trial court thus functions as a gatekeeper and engages in a three-part inquiry to determine whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See, e.g., United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001) (citing *Daubert*, 509 U.S. at 592). The Eleventh Circuit has referred to these requirements as the "qualifications," "reliability," and "helpfulness" prongs and, although there is inevitably some overlap, they remain distinct concepts that must be individually analyzed. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

## ARGUMENT

Apple's *Daubert* motion primarily focuses on Dr. Olivier's understanding that the Corellium Apple Product does not make use of (1) the "update disk image" or (2) encrypted files in Apple's IPSW container (which contains an image of iOS). *See* ECF No. 449 at 2-3. This understanding is based on conversations with Mr. Wade, which Apple alleges are incompatible

with Mr. Wade's understanding based on his deposition testimony. But Mr. Wade's testimony is completely consistent with Dr. Olivier's understanding, as the transcripts reveal.

While Mr. Wade made clear that he was not familiar with the exact details of some of *the code* in the Corellium Apple Product, Apple has not tied that lack of specific knowledge about code to the broader technical facts on which Dr. Olivier relies, *e.g.*, lack of use of the update disk image or encrypted files. For example, Apple does not cite to any testimony from Mr. Wade concerning the update disk image because it never asked him about that subject matter.

On the topic of Corellium's use of encrypted files in Apple's IPSW container, Apple omitted from its arguments Mr. Wade's testimony that, with respect to iOS 9, "we don't have access to the encryption key[s] . . . required to [de]crypt the iOS firmware. So we were unable to run." Hecht Decl. Ex. 1 (Wade Deposition Transcript) at 189:20-190:14. Apple could have, but did not ask Mr. Wade whether the Corellium Apple Product makes use of any encrypted information in the IPSW file, which is the fact that Dr. Olivier learned from Mr. Wade.

As to the issues of whether Corellium uses the "update disk image" or encrypted portions of the IPSW file, Mr. Wade's testimony does not (contrary to Apple's arguments) undercut Dr. Olivier's analysis of those facts, which he understood from his discussions with Mr. Wade. Apple's failure to inquire about these issues at Mr. Wade's deposition does nothing to alter the fact that Mr. Wade related these facts to Dr. Olivier, who was then properly allowed to rely on them when forming his opinions. This is not a scenario in which an expert relied on discussions with a fact witness who then refused to answer deposition questions about facts the expert learned in such discussions. Apple simply failed to examine Mr. Wade at deposition about certain aspects of the operation of Corellium's product. Apple cannot now credibly suggest that this failure somehow precludes Dr. Olivier from offering testimony on those topics.

CASE NO.: 9:19-CV-81160-RS

And yet this facially absurd premise is precisely what Apple now asks this Court to accept. Apple moves to exclude portions of Dr. Olivier's report that cover what portion and amount of the IPSW files the Corellium Apple Product uses. *See* ECF No. 449 at 6, & Ex. A ¶ 90. As to the portion of IPSW files that Corellium uses, as stated above, Dr. Olivier properly relied on his discussions with Chris Wade for purposes of understanding that the Corellium Apple Product does not use certain portions of the IPSW. Apple's argument does nothing to disturb this fact. As to the amount of IPSW files that Corellium uses: it is undisputed (and Apple agrees) that Dr. Olivier does not intend to offer opinion testimony on the actual amount or substantiality of the portions that Corellium allegedly used in relation to the copyright work. Dr. Olivier has confirmed this under oath. Hecht Decl. Ex. 2 (Olivier Deposition Transcript) at 194:2-7.

Finally, Apple makes numerous misleading citations to the transcript of Dr. Olivier's deposition that do not support its argument. For example, Apple cites to Hecht Decl. Ex. 2 at 88:12-15, 89:23-90:2, 142:20-143:21; 224:1-8; 294:18-296:5; 297:21-298:1; 299:21-300:2 as evidence that Dr. Olivier relied on conversations with Mr. Wade as a source of information on several "technical" topics; but those portions of the transcripts concern (1) the identities of Corellium's customers; (2) similarity of the interface between the cloud-based version of the Corellium Apple Product and the on-premises version; (3) versions of iOS supported by the Corellium Apple Product; and (4) whether marketing material purporting to show the Corellium Apple Product in fact displayed an actual screen grab. None of these are "technical" topics or concern topics on which Apple has presented any testimony suggesting that Mr. Wade did not know. Also, with respect to Hecht Decl. Ex. 2 at 300:21-301:19, Apple does not mention that Dr. Olivier also relied on his "understanding how [] iOS [is] encrypted" in determining that the

statement in Corellium's marketing material was incorrect. *See* Hecht Decl. Ex. 2 at 300:21-301:19.

I. Dr. Olivier's Understanding That Corellium's Product Did Not Support iOS Versions Prior to 10.3 Was Not Based Solely on His Conversations with Mr. Wade

Apple also takes issue with Dr. Olivier's understanding that iOS versions prior to 10.3 were not supported. To support its arguments, Dr. Olivier should also be permitted to testify that iOS 9.0 (or any version prior to 10.3) is not supported by the Corellium Apple Product because he reviewed the Corellium source code, in addition to talking to Mr. Wade.[1] *See* Hecht Decl. Ex. 2 at 295:3-21.

II. Dr. Olivier is Permitted to Opine Even Where He Did Not Review Code

Even where Dr. Olivier did not review code, his opinions are nonetheless admissible. Courts in the Southern District of Florida have consistently held that testimony is admissible, even without an inspection of the relevant product, "when there is other evidence in the record that gives an expert's opinion additional credibility." *Eldridge v. Pet Supermarket, Inc*., No. 18-22531-CIV, 2020 WL 1076103, at *6 (S.D. Fla. Mar. 6, 2020); *see also, e.g.*, S*trauss v. CBE Grp., Inc*., 2016 WL 2641965, at *3 (S.D. Fla. Mar. 23, 2016) ("Although Hansen did not visually inspect the equipment in preparing the Report, he reviewed, among other things, CBE's patent application for the MCA, Plaintiff's account notes, and Johnson's deposition transcript. In light of Hansen's familiarity with CBE's dialing systems and review of evidence particular to this case, the Court finds sufficiently reliable Hansen's expert opinion on the technologies CBE used to place the calls at issue."). Here it is undisputed that Dr. Olivier is familiar with virtualization systems and Apple

---

[1] While Apple cites to Olivier's deposition transcript at 294:18-296:5 and 297:21-298:1, Apple omits testimony that makes clear that Dr. Olivier did in fact rely on his review of Corellium source code, not just his conversation with Mr. Wade. *See* Hecht Decl. Ex. 2 at 294:18-296:16.

6

has not cast aspersions on his technical qualifications. Because Dr. Olivier reviewed code, used the Corellium Apple System to familiarize himself with the product, and spoke with Mr. Wade, all of which adds credibility to Dr. Olivier's opinions, the fact that he did not review all Corellium's voluminous code is inconsequential. *See Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2018 WL 3707283, at *9 (N.D. Cal. Aug. 3, 2018) ("[T]he fact that Mr. Snyder did not physically inspect the Ytel Dialer does not preclude Mr. Snyder's testimony about its nature.").

III. <u>Apple Has Not Established That Olivier's Calls with Chris Wade Did Not Include Others</u>

While Dr. Olivier could not remember the names of people who may have attended various conference calls with Mr. Wade on which he relied, Apple never asked him the ultimate question as to whether, aside from the attorneys and Mr. Wade, *anyone else* from Corellium had attended these teleconferences, as was the case. Thus, Apple's conclusion that Dr. Olivier never spoke with other engineers at Corellium is unsupported by the record. Apple did not cite to any of the deposition transcript surrounding the misleading quote on which it relies. *See* Hecht Decl. Ex. 2 at 33:21-35:11.

In fact, the testimony on which Apple relies only confirms that Dr. Olivier did not remember who from Corellium, aside from Mr. Wade, he remembered speaking with—but it does not establish that no one else from Corellium was on any of the calls. In fact, Apple asked Dr. Olivier when he had the calls "with Corellium," and Dr. Olivier did not indicate that those calls were only with Mr. Wade. Hecht Decl. Ex. 1 at 35:9-11. In other words, Dr. Olivier's references to discussions with Chris Wade were not limited to discussions with only Chris Wade. Apple could have asked Chris Wade if any other engineers were on the call, but they did not.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion.

CASE NO.: 9:19-CV-81160-RS

| | |
|---|---|
| Dated: May 26, 2020 | COLE, SCOTT & KISSANE, P.A.<br>*Counsel for Defendant CORELLIUM, LLC* |

Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 612-3459
Facsimile (561) 683-8977
Primary e-mail: jonathan.vine@csklegal.com
Primary e-mail: justin.levine@csklegal.com
Primary e-mail: lizza.constantine@csklegal.com

By: s/ *Justin B. Levine*
JONATHAN VINE
Florida Bar. No.: 10966
JUSTIN B. LEVINE
Florida Bar No.: 106463
LIZZA C. CONSTANTINE
Florida Bar No.: 1002945
MICHAEL A. BOEHRINGER
Florida Bar No.: 1018486

and

HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, NY 10017
Tel: (212) 851-6821
David L. Hecht *pro hac vice*
Email: dhecht@hechtpartners.com
Maxim Price *pro hac vice*
Email: mprice@hechtpartners.com
Conor McDonough *pro hac vice*
Email: cmcdonough@hechtpartners.com
Minyao Wang *pro hac vice*
Email: mwang@hechtpartners.com

CASE NO.: 9:19-CV-81160-RS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 26, 2020, a true and correct copy of the foregoing has been transmitted by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

Dated: May 26, 2020                                     /s/ Justin B. Levine
                                                        Justin B. Levine

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX