UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:19-cv-81160-RS

APPLE INC.,

 Plaintiff,
v.

CORELLIUM, LLC,
 Defendant.

_____/

## CORELLIUM'S RESPONSE IN OPPOSTION TO APPLE'S MOTION TO EXCLUDE LEGAL OPINIONS AND CORRESPONDING TESTIMONY OF CORELLIUM'S EXPERT STEWART APPELROUTH AND INCORPORATED MEMORANDUM OF LAW

Defendant Corellium, LLC ("Corellium"), pursuant to Federal Rule of Evidence 702, files this Response in Opposition to Plaintiff Apple, Inc.'s ("Apple") Motion to Exclude Legal Opinions and Corresponding Testimony of Corellium's Expert Stewart Appelrouth, and in support thereof, states as follow:

### I. BACKGROUND

In response to Apple's filing of the instant lawsuit, Corellium retained Stewart Appelrouth ("Mr. Appelrouth"), a Certified Public Accountant, to serve as Corellium's damages expert. As part of his role, Mr. Appelrouth was tasked with opining, *inter alia*, as to the total amount of damage potentially incurred from the alleged copyright infringement pursuant 17 U.S.C. § 504. Specifically, section 504(b) states that "[i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504. Accordingly, as Corellium is the alleged infringer, Mr. Appelrouth's role included, *inter alia*, calculating deductible expenses. *Id.* Once

deductible expenses are calculated, this number must be used in conjunction with the apportioned gross revenue values to determine the total amount of statutory damages pursuant 17 U.S.C. § 504(b).

Relevant to this Response, Mr. Appelrouth reviewed the initial expert report from Apple's damages expert, Mr. David Connelly, as Mr. Appelrouth would need to rely on the calculations contained therein to perform his own expert analysis. In reviewing Mr. Connelly's initial report, it was clear that Mr. Connelly had miscalculated gross revenue, an essential element to Mr. Appelrouth's calculations. Specifically, Mr. Connelly applied absolutely no apportionment between revenues that did not stem from iOS and those that did. Mr. Connelly's calculations simply ignored Corellium's other sources of profit, such as Android. As a result of this oversight, Mr. Connelly arrived at the incorrect gross revenues figure, which would have the effect of restricting Mr. Appelrouth's ability to properly determine applicable deductible expenses. It was only after Mr. Appelrouth discussed apportionment in his rebuttal report, that Mr. Connelly attempted such a calculation in his own subsequent reports. This of course, is a tacit admission by Mr. Connelly that some apportionment should have been applied in his first report.

Indeed, part of Mr. Appelrouth's role as damages expert necessitates that he offset deductible expenses from the correctly apportioned gross revenue to determine the amount of damages owed. Mr. Appelrouth's ability to properly perform this calculation, however, was overcome by the fact that the gross revenue provided by Mr. Connelly was blatantly incorrect.[1]

In arriving at the incorrect gross revenue figure, Mr. Connelly also incorrectly states in his final report that:

---

[1] Ex. 1. Appelrouth Dep. at *182:8-11.

███████████████████████████████████████[2]

Mr. Appelrouth, despite Mr. Connelly's statement in Mr. Connelly's initial report, was aware that he would be unable to properly calculate the applicable deductible expenses and other profits without first having the correct apportionment of gross revenue to work from. Accordingly, Mr. Appelrouth contacted Counsel for Corellium to provide clarity and confirmation as to the scope of the assignment because he knew he may be unable to accomplish his calculations. Specifically, as Mr. Appelrouth was not an attorney and did not want to engage in any legal research, he requested information relating to 17 U.S.C. § 504(b) and the statements made by Mr. Connelly in his initial report that he could refer to if necessary. Counsel for Corellium thereafter provided certain cases to Mr. Appelrouth.[3] Mr. Appelrouth testified repeatedly that he did not rely on the cases or information provided by Counsel for Corellium, as it proved unnecessary in his efforts as an expert witness:[4]

> Q   So you reviewed case law?
>
> A   Yes, I did. I read it.
>
> Q   And you clearly relied on that case law for your opinion, right?
>
> A   Well, no. I knew what I was doing before, but I asked -- once Mr. Connelly brought up the matter, I asked him for the case law relating to it.
>
> Q   So you've just testified that you relied on case law provided to you by counsel in determining who has the burden of proof in this case.
>
> A   No, that's not what I said. That's not what I said. That's not what I said, okay. That's exactly not what I said. **I said once I got Mr. Connelly's report,**

---

[2] Ex. 2. Connelly, Errata Supp. & Rebuttal Report at *11.
[3] Ex. 1. Appelrouth Dep. at *181:15-19.
[4] Ex. 1. Appelrouth Dep. at *181:9-182:20.

> **which I got Monday, okay, I called the lawyers up, because I knew -- I knew what I was doing, but now I'm going to need the proof.** It's similar to, I guess, if I'm driving my car and I run a red light, all right. I know it's against the law, but now if I have to go into the court, I got to go pull out the statutes and cases and all that stuff. But I knew, I knew –
>
> **Q**  So –
>
> **A**  -- I knew what I was supposed to do and I knew what Mr. Connelly was supposed to do.[5]

Mr. Appelrouth clearly testified did not rely upon the information contained in these opinions, but instead, simply requested information from Counsel for Corellium to later reference if necessary, which indeed, turned out to be the case. *Id.*

Significantly, Mr. Appelrouth did not cite any of the three cases provided by Counsel for Corellium anywhere in his first three expert reports[6] because the information contained in the cases did not influence, in any way, his methodology or his work in this case one way or another. Just as telling, it was only after specifically requested by Apple's Counsel during Mr. Appelrouth's deposition, that Mr. Appelrouth felt the need to include these cases, despite his repeated testimony (Appelrouth Dep. at *181:9-182:20) that he never relied upon them in forming his expert opinions.[7]

> **Q**  So your supplemental report will include all this case law that you relied upon?
>
> **A**  The supplemental will have that in it, probably.[8]

---

[5] Ex. 1. Appelrouth Dep. at *181:20-182:20 (emphasis added).
[6] *See* DE 454 Ex. A.; DE 454 Ex. B.; and DE 454 Ex. C.
[7] Despite agreeing to include the cases that he had seen, Mr. Appelrouth remained adamant that he did not rely on the cited cases in drafting his report. *See* Ex. 1. Appelrouth Dep. at *182:2-7.
[8] Ex. 1. Appelrouth Dep. at *182:21-24.

As a result of Apple's question, Mr. Appelrouth listed the three cases in his in his Fourth Expert Report.[9] Apple now moves to exclude Mr. Appelrouth for the very reference of these cases that it requested be included in Mr. Appelrouth's final report. Notwithstanding, and as discussed at length below, Apple's argument, however, is entirely flawed and must be denied for the reasons set forth herein.

## II. LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 137 (1999). In applying Rule 702, district courts are charged with "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). Although scientific education and specialized expertise may provide one method to qualify as an expert in a case, experience and training in a field can offer another route to acquiring expert status. *Coquina Invs. v. Rothstein*, 2011 WL 4949191, at *1 (S.D. Fla. Oct. 18, 2011). The plain language of Federal Rule 702, which governs the admissibility of expert testimony, makes it clear that "A witness who is qualified as an expert by knowledge, skills, experience, training, or education may testify in the form of an opinion . . ." Fed. R. Evid. 702.

The determination of whether an expert's testimony and report may be admitted involves a three-part inquiry of whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in

---

[9] DE 454 Ex. C. at *4.

issue. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589). "A court must also determine whether the expert testimony will assist the jury. Expert testimony is admissible under this requirement 'if it concerns matters that are beyond the understanding of the average lay person." *Coquina Invs. v. Rothstein*, 2011 WL 4949191, at *2 (S.D. Fla. Oct. 18, 2011).

### III. MR. APPELOUTH DOES NOT PROVIDE LEGAL CONCLUSIONS REGARDING THE PARTIES' BURDENS UNDER 17 U.S.C. § 504(b)

#### A. Mr. Appelrouth's Commentary on the Alleged Burden Shift is Not Improper

Expert witnesses, in the course of their duties as an expert, are allowed to "provide [information that] could be helpful to a jury to clarify the language of the claims as interpreted by the scientific experts." *Arlaine & Gina Rockey, Inc. v. Cordis Corp.*, 2004 WL 5504978, at *24 (S.D. Fla. Jan. 5, 2004).

In *Arlaine*, the Southern District was tasked with determining the proper scope of an expert patent witnesses' testimony, in particular, his ability to opinion on the legal issues of the case. In reaching its opinion, the *Arlaine* Court was clear that the if the expert's testimony was to be offered it "shall not include any exposition or opinion as to the legal issues in this case or patent law generally." *Id.* The *Arlaine* Court clarified, however, that the expert witness "may explain his own understandings of the law and apply it to opinions of the scientific experts on the issues of fact, without giving expert opinions as to what the law is." *Id. (citing*, *Donnelly Corp. v. Gentex Corp.,* 918 F.Supp. 1126, 1137 (W.D. Mich. 1996) (denying motion *in limine* to preclude testimony by patent law expert, finding that "experts must walk a fine line: they must give their expert opinions on ultimate issues of fact, while explaining their own understandings of the law, but without purporting to give expert opinions as to what the law is"). To that end, *"*[t]he

Court will provide any 'necessary and appropriate instructions to the jury regarding the weight to be accorded to the testimony' after hearing [the expert's] testimony in light of the testimony of the other experts in the technical field."

In the instant action, Mr. Appelrouth's actions complied with the standards for the scope of an expert witnesses' testimony as set forth by the Southern District in *Arlaine*. In particular, the term gross revenue is in the relevant statute and its meaning governed the methodology used by Mr. Appelrouth and Mr. Connelly to calculate potential damages under § 504(b). Mr. Appelrouth's report and testimony explains the differences between Mr. Appelrouth's understanding of the term versus Mr. Connelly's understanding in order to assist the jury in understanding of the methods, and limitations of the methods, utilized by each expert.

### B. Mr. Appelrouth only Obtained the Subject Cases from Counsel for Corellium for the Limited Purpose of Reference.

"Although the role of a witness is to produce factual testimony, 'a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible.'" *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004); *United States v. Oles*, 994 F.2d 1519, 1523 (10th Cir. 1993) (citation omitted).

In the instant action, Mr. Appelrouth merely utilized the cases relating to 17 U.S.C. § 504(b) that he received from Counsel for Corellium as a possible tool of reference given that Mr. Connelly had specifically raised the issue. Indeed, as discussed in greater detail above, Mr. Connelly, in his expert report informs of the purported burden shift that must occur pursuant 17 U.S.C. § 504(b). In response to Mr. Connelly's statement, Mr. Appelrouth sought information regarding this alleged burden shift that he might reference when responding to Connelly's own reference to the law.

Notably, however, Mr. Appelrouth never relied on the information contained within these cases nor did the information influence, in any way, the methodology he employed or the way in which he applied it.[10] Instead, the cases received from Counsel for Corellium simply acted as additional reference material relating to 17 U.S.C. § 504(b), to be referred to only if requested.[11] Mr. Appelrouth, accordingly, never relied on any of the information contained in these cases.[12] In fact, the only reason Mr. Appelrouth cited to these cases in his Fourth Expert Report is due to the request received from Counsel for Apple during Mr. Appelrouth's deposition.[13]

To be sure, Apple spends the majority of its Motion arguing that not only has Mr. Appelrouth improperly interpreted the law, he did so incorrectly.[14] Apple, despite its fervor, has misconstrued the issues at hand here. The question before the Court is not whether Mr. Connelly accurately depicted the law as it relates to the burden shift in Apple's Motion, it is simply whether Mr. Appelrouth improperly provided legal interpretations—which he did not.

Moreover, Apple fails to acknowledge the information that it seeks to exclude is only at issue because Mr. Connelly first broached this subject of burden shifting in his own initial report. In particular, Mr. Connelly, on his own accord, included a statement regarding 17 U.S.C. §504(b), insisting that Corellium and Mr. Appelrouth "ha[d]not met its burden under the provisions of 17 U.S.C. § 504(b) to prove deductible expenses and the elements of profit attributable to factors other than the copyrighted works…"[15]

---

[10] Ex. 1. Appelrouth Dep. at *181:22-182:11.
[11] Mr. Appelrouth did not even place the cases in the "Documents Considered" section of his report. See DE 454 Ex. C. at *3.
[12] Ex. 1. Appelrouth Dep. at *181:22-182:11.
[13] Ex. 1. Appelrouth Dep. at *182:21-24.
[14] See DE 454 at *4, 5, 11, 12, 24, 27.
[15] Ex. 2. Connelly, Errata Supp. & Rebuttal Report at *4.

In his report, Mr. Appelrouth simply responded to the statement made by Mr. Connelly's initial statement regarding the burden shifting.

> It is Mr. Connelly's opinion that Corellium has not met its burden under the provisions of 17 U.S.C. §504(b) to prove deductible expenses and the elements of profit. However, as I have explained in my prior report, this analysis could not be completed due to Mr. Connelly's failure or lack of attempt to determine the total amount of revenues which would be attributable to the alleged Apple infringement.[16]

Had Mr. Connelly not first provided his opinion as to the law on burden shifting, Mr. Appelrouth would not have any need for future reference material. However, a review of the above quote makes it clear that even in the face of Mr. Connelly's own position of the law, Mr. Appelrouth merely responds that his "analysis could not be completed due to Mr. Connelly's failure or lack of attempt to determine the total amount of revenues . . . ." Mr. Appelrouth's response is not a position on the law, but one of an expert simply as it relates to his analysis.

Furthermore, Apple additionally fails to acknowledge that *if* what Mr. Appelrouth allegedly wrote was an improper interpretation of the law, Mr. Connelly did the exact same thing, as Mr. Connelly states, "Corellium has not met its burden under the provisions of 17 U.S.C. §504(b)."[17] Yet, the "improper opinion" that Apple complains of in its Motion is that Mr. Appelrouth "opines that Apple did not meet its burden to demonstrate Corellium's 'gross revenues' under Section 504(b)."[18] It defies common sense to suggest that the former is an improper interpretation of the law, whereas the prior was not.

Lastly, Apple fails to acknowledge that simply reading a case provided by counsel in no way establishes or even implies legal interpretation. To suggest that simply reading a case and

---

[16] DE 454 Ex. C at *4.
[17] Ex. 2. Connelly, Errata Supp. & Rebuttal Report at *4.
[18] DE 454 Ex. C at *4.

writing an expert report inherently implies the reading is thus formulating legal conclusions and interpreting the law is simply unsupported by any law or logic.

### C. The Cited Authority Relied on by Apple is Distinguishable

Additionally, the material cases cited by Apple in which an expert's testimony was stricken are fatally distinguishable from the instant case. In those cases, the experts opined on the conduct of the parties prior to the litigation and not on the corresponding expert's methodology as is at issue in this instance. *See Cordoves v. Miami-Dade County*, 104 F. Supp. 3d 1350, 1365 (S.D. Fla. 2015) (expert opinion in Americans with Disabilities Act ("ADA") discrimination lawsuit that a dog meets the statutory and regulatory criterion to qualify as a service dog and people who interacted with the dog were violating the ADA stricken as legal conclusions); *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1128 (11th Cir. 2018) (expert's opinions was stricken because he opined that defendant's rights "to use and enjoy the mark, which right was not waived, nor divested"); *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1210 (D.C. Cir. 1997) (expert's opinion was stricken because he opined on "whether WMATA and Officer Gray had complied with the requirements of the ADA and Rehabilitation Act as well as accepted police procedures" during physical altercation with deaf bus passenger); *Ryken v. Celebrity Cruises, Inc.*, 18-CV-25152-UU, 2019 WL 5485177, at *6 (S.D. Fla. Sept. 10, 2019) (expert's opinion was stricken because he provided "legal conclusions instructing the jury that Defendant was solely responsible for creating and failing to remove a hazardous condition and that Defendant's actions and inactions were the sole cause of Plaintiff's injuries").

In this case, and to the contrary, Mr. Appelrouth commented on the corresponding expert's methodologies. Mr. Appelrouth specifically stated that "due to Mr. Connelly's failure or lack of attempt to determine the total amount of revenues which would be attributable to the alleged Apple

infringement," Mr. Connelly's analysis of gross revenues was not complete which affected Mr. Appelrouth's own analysis which relied on the gross revenues.[19] Notably absent from Mr. Appelrouth's opinions are any legal conclusion about any underlying factual issue, interpretation of the law, or application of the law to the underlying facts.

Furthermore, if an expert is precluded from referencing law as it relates to how a methodology may be impacted, the expert risks proffering improper or incomplete opinions. By way of example, both experts in this case provided their opinions based upon their understanding of the respective damages frameworks and how those frameworks impacted their methodologies. Indeed, both cited the statutes in connection therewith.[20] Under Apple's incorrect theory, both experts' opinions should be excluded for doing so.

        D.    *Mr. Appelrouth's Testimony and Report are Helpful, Not Prejudicial, and Not Confusing to the Jury.*

Mr. Appelrouth's testimony regarding Mr. Connelly's lack of attempt to determine attributable gross revenues, will not confuse the jury about the standard but will provide an explanation as to why Appelrouth could not make a full determination of the profits. Mr. Appelrouth is not telling the jury how he thinks they should rule but instead explaining the parameters of his own task as an expert in this case—same as Mr. Connelly. To the contrary, excluding Mr. Appelrouth's understanding of gross revenue under § 504(b) will certainly confuse the jury and prejudice Corellium because the jury would have no basis for comprehending the reliability of the experts' methodologies in calculating gross revenues attributable to the allegedly infringing product, deductible expenses, and the relevant profits. In turn, the jury would be

---

[19] DE 454 Ex. C at *4.
[20] *Compare* Ex. 2. Connelly, Errata Supp. & Rebuttal Report at *1 *to* DE 454 Ex. C. at *1.

provided no foundation for understanding the issues with Mr. Connelly's opinion and Mr. Appelrouth's rebuttal of Mr. Connelly's findings.

## IV. CONCLUSION

In conclusion, there is a difference between stating the law for purposes of legal conclusion versus otherwise for reference and stating the parameters which underlie an assignment. While an expert is not qualified to argue the law or give legal advice, the expert is absolutely able to understand and refer to the legal principles which underlie the expert's assignment and scope thereof.

**WHEREFORE**, Defendant, Corellium, LLC, respectfully requests this Honorable Court deny Apple Inc.'s Motion to Exclude Legal Opinions and Corresponding Testimony of Corellium's Expert Stewart Appelrouth, and for any and all other relief this Honorable Court deems just and proper.

Dated: May 26, 2020    Respectfully submitted,

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant CORELLIUM, LLC*
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 612-3459
Facsimile (561) 683-8977
Primary e-mail: justin.levine@csklegal.com
Secondary e-mail: lizza.constantine@csklegal.com

By:  *s/ Lizza Constantine*
JONATHAN VINE
Florida Bar. No.: 10966
JUSTIN B. LEVINE
Florida Bar No.: 106463
LIZZA C. CONSTANTINE
Florida Bar No.: 1002945
MICHAEL A. BOEHRINGER

                Florida Bar No.: 1018486

                *and*

HECHT PARTNERS LLP
*Counsel for Defendant*
20 West 23rd St. Fifth Floor
New York, NY 10010
Tel: (212) 851-6821
David L. Hecht *pro hac vice*
Email: dhecht@hechtpartners.com
Minyao Wang *pro hac vice*
Email: mwang@hechtpartners.com
Conor McDonough pro hac vice
Email: cmcdonough@hechtpartners.com

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on May 26, 2020, the foregoing document was filed electronically with the Clerk of the Court using CM/ECF. It is also certified the foregoing document is being served on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or by some other authorized manner, or a combination thereof, so as to comply with the requirements of Local Rule 5.4 and other applicable rules and procedures.

## SERVICE LIST

Martin B. Goldberg
mgoldberg@lashgoldberg.com
rdiaz@lashgoldberg.com
Emily L. Pincow
epincow@lashgoldberg.com
gizquierdo@lashgoldberg.com
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL 33131

Kathryn Ruemmler (*pro hac vice*)
kathryn.ruemmler@lw.com

Sarang Vijay Damle (*pro hac vice*)
sy.damle@lw.com
Elana Nightingale Dawson (*pro hac vice*)
elana.nightingaledawson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004

Andrew M. Gass (*pro hac vice*)
andrew.gass@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Jessica Stebbins Bina (*pro hac vice*)
jessica.stebbinsbina@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067

*Attorneys for Plaintiff,*
*Apple Inc.*