# Plaintiff Exhibit 98

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-cv-81160-RS

| | |
|---|---|
| **APPLE INC.,**<br><br>               **Plaintiff,**<br><br>v.<br><br>**CORELLIUM, LLC,**<br><br>               **Defendant.** | |

### EXPERT REPORT AND DECLARATION OF ALEXANDER STAMOS

I, Alexander Stamos, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury:

1. My name is Alexander Stamos. I am over the age of twenty-one (21), under no legal disability, and have never been convicted of a felony or a crime involving moral turpitude. The facts stated herein are true and correct, and based upon my personal knowledge and/or on documents, depositions, and materials I have reviewed in connection with my work on this case. I am fully competent to make this declaration, and if called to testify, I would testify as follows:

2. I have been retained by Corellium, LLC's ("Corellium") attorneys in this case to, among other things, provide background and general opinions regarding the security research

**EXPERT REPORT AND DECLARATION OF ALEXANDER STAMOS**             Page 1

In so doing, security researchers essentially must make changes to the operating system, which makes research on those devices less accurate and/or more easily detectable by malware. Because security researchers must use vulnerabilities to gain access in the first place, researchers using physical devices are incentivized to hold back and not report these vulnerabilities. With Corellium, however, the virtual device does not have to be hacked in the same way.

26. Corellium makes security research more mobile and less costly.

27. It is also one of the few mechanisms by which researchers can accurately examine software that runs on iOS devices. Recent news stories have focused on the privacy issues inherent in mobile applications that include code from multiple untrusted sources, some of which violate the privacy of users by recording location or usage data in the background. Corellium can be used by security and privacy researchers to examine the behavior of mobile applications that Apple has allowed past security checks but continue to violate user privacy expectations. For example, independent security research was critical in the discovery that ToTok, a popular chat application in the Middle East, is actually a spy tool built for the government of the United Arab Emirates (https://www.nytimes.com/2019/12/22/us/politics/totok-app-uae.html). Apple allowed this application to be downloaded by millions of their users and did not move to protect them until notified by the New York Times. The existence of a rich community of external application researchers is critical in preventing the spread of malicious mobile applications, but such research requires the ability to run and examine apps with methods that Apple does not officially support.

28. This is a literal life and death issue. Last year, researchers from Google Project Zero announced that they had discovered the use of custom exploit chains utilizing multiple new vulnerabilities in Apple's iOS (https://googleprojectzero.blogspot.com/2019/08/a-very-deep-dive-into-ios-exploit.html). These exploit chains were discovered on websites frequented by the Uyghur

**EXPERT REPORT AND DECLARATION OF ALEXANDER STAMOS**          **Page 8**

ethnic minority of the People's Republic of China, and would give the authors of the malware full control over every aspect of the affected devices, including the ability to download locally stored data and turn on the phone's microphone remotely. Google attributed this malware to the security services of the PRC government. It has been widely reported that Uyghurs have been arrested, "re-educated" or even killed by the PRC government (https://www.nytimes.com/interactive/2019/11/16/world/asia/china-xinjiang-documents.html). It is an unfortunate possibility that electronic surveillance via exploits in Apple devices is playing a key role in this oppression.

29. Another famous purveyor of iOS exploits is NSO Group, an Israeli cyber-weapons dealer that has sold high-quality malware to countries such as the Kingdom of Saudi Arabia (https://citizenlab.ca/2020/01/stopping-the-press-new-york-times-journalist-targeted-by-saudi-linked-pegasus-spyware-operator/). NSO's "Pegasus" malware is known to be one of the most effective pieces of high-end iOS malware, and has been implicated in attacks against hundreds of members of civil society as well as, allegedly, the murder of journalist Jamil Khashoggi. (David D. Kirkpatrick, *Israeli Software Helped Saudis Spy on Khashoggi, Lawsuit Says*, N.Y. TIMES (Dec. 2, 2018), https://www.nytimes.com/2018/12/02/world/middleeast/saudi-khashoggi-spyware-israel.html).

30. There have been claims made that Corellium makes the safety issue worse by allowing the discovery of flaws by people not gated by Apple. This is an old argument, and one that has been made time and time again by large corporations looking to prioritize their public relations efforts over the safety of their users. It is certainly possible for any security tool to be misused to find flaws that are sold to oppressive regimes for profit instead of reported to the

34. While there are legitimate issues to be addressed between Apple, other major tech companies and the intelligence services of the United States, there is no upside to Apple or its users to eliminating the ability of Azimuth and other Western research groups to perform vulnerability research. Ceding the field to the intelligence services of the Russian Federation and People's Republic of China, as well as mercenaries such as NSO Group, only guarantees that any vulnerabilities they find first will be used offensively instead of being reported to Apple.

35. Apple has validated the value of Corellium's research by recognizing Corellium through the bug bounty program. Those instances are publicly available and found here: *About the security content of iOS 13.3 and iPadOS 13.3*, APPLE.COM (Dec. 10, 2019), https://support.apple.com/en-us/HT210785; *About the security content of iOS 13.3.1 and iPadOS 13.3.1*, APPLE.COM (Jan. 28, 2020), https://support.apple.com/en-us/HT210918; *About the security content of macOS Catalina 10.15.3, Security Update 2020-01 Mojave, Security Update 2020-001 High Sierra*, APPLE.COM (Jan. 28, 2020), https://support.apple.com/en-us/HT210919.

36. The fact Apple recognizes Corellium is contrary to its position in this lawsuit that Corellium is doing something other than engaging in or enabling security research.

37. The Corellium product has limited use: software research, application debugging and application testing. No consumer would purchase Corellium to replace an iPhone to talk, text, use Facetime, browse Facebook, or perform any of the normal functions of an iOS device. Corellium is making use of compiled code that Apple provides as a public download and this use is significantly in the public's interest – to assure a safer, more private and reliable iOS operating system.

38. All software has vulnerabilities, and it is very difficult to think of a computing platform that hasn't been attacked by authoritarian governments in service of suppression of local

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 28th day of February 2020 in Stanford, CA.

_____
Alexander Stamos