# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No. 9:19-cv-81160-RS

APPLE INC.,

                    Plaintiff,

     v.

CORELLIUM, LLC,

                  Defendant.

**PLAINTIFF APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE
LEGAL OPINIONS AND CORRESPONDING TESTIMONY OF
<u>CORELLIUM'S EXPERTS CLARK ASAY AND ALEXANDER STAMOS</u>**

## TABLE OF CONTENTS

Page

I.   NARROWED SCOPE OF ISSUES ON REPLY ...................................................1

II.  PROFESSOR ASAY'S TESTIMONY SHOULD BE EXCLUDED.................................2

     A.   Professor Asay Offers Improper Legal Opinions ....................................................2

     B.   Professor Asay Lacks Any Other Relevant Admissible Expertise .........................5

III. THE REMAINDER OF PROFESSOR STAMOS'S LEGAL CONCLUSIONS
     SHOULD BE EXCLUDED.........................................................................................6

IV.  CONCLUSION.........................................................................................................8

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*B2A, LLC v. Commlog, LLC*,
No. 09-CV-00528, 2011 WL 5569496 (D. Colo. Nov. 16, 2011) ...........................................4

*Baldwin v. EMI Feist Catalog*,
989 F. Supp. 2d 344 (S.D.N.Y. 2013), *rev'd on other grounds*, 805 F.3d 18
(2d Cir. 2015)...........................................................................................................................2

*Basketball Mktg. Co., Inc. v. Steve & Barry's Univ. Sportswear*,
No. 07-716, 2008 WL 5586141 (E.D. Pa. June 30, 2008)........................................................2

*Burkhart v. Wash. Metro. Area Transit Auth.*,
112 F.3d 1207 (D.C. Cir. 1997) ..............................................................................................4

*Commodores Entm't Corp. v. McClary*,
879 F.3d 1114 (11th Cir. 2018) .......................................................................................1, 3, 6

*Corbello v. DeVito*,
No. 08-CV-00867, 2016 WL 6122935 (D. Nev. Oct. 19, 2016) ..............................................4

*Cordoves v. Miami-Dade Cty.*,
104 F. Supp. 3d 1350 (S.D. Fla. 2015) ....................................................................................4

*Corwin v. Walt Disney Co.*,
No. 02-CV-1377, 2004 WL 5486639 (M.D. Fla. Nov. 12, 2004) ........................................4, 5

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)...............................................................................................................6, 7

*Gable v. Nat'l Broad. Co.*,
727 F. Supp. 2d 815 (C.D. Cal. 2010) .....................................................................................3

*Hendricks v. DreamWorks, LLC*,
No. CV-05-8271, 2007 WL 9705916 (C.D. Cal. Nov. 20, 2007)..........................................3, 6

*Herzog v. Castle Rock Entm't*,
193 F.3d 1241 (11th Cir. 1999) ...............................................................................................4

*Infogroup, Inc. v. DatabaseUSA.com LLC*,
No. 14-CV-49, 2018 WL 3826684 (D. Neb. Aug. 10, 2018) ...................................................2

*Osment Models, Inc. v. Mike's Train House, Inc.*,
No. 2:09-CV-04189, 2010 WL 4721228 (W.D. Mo. Nov. 15, 2010) .......................................2

*RCTV Int'l Corp. v. Rosenfeld*,
    No. 13-23611-CIV, Dkt. No. 194, slip op. (S.D. Fla. Sept. 28, 2015) ......................................3

*Umana-Fowler v. NCL (Bahamas) Ltd*,
    49 F. Supp. 3d 1120 (S.D. Fla. 2014) .........................................................................................1

*United States v. Frazier*,
    387 F.3d 1244 (11th Cir. 2004) .............................................................................................1, 4

*United States v. Milton*,
    555 F.2d 1198 (5th Cir. 1977) ...............................................................................................4, 7

**STATUTES**

17 U.S.C.
    § 1201(c)(1) ..............................................................................................................................7
    § 1201(j)....................................................................................................................................8

Corellium is attempting to usurp the role of this Court by having its experts offer naked legal guidance to the jury.  As courts everywhere recognize, this is improper.  "[T]he court must be the jury's only source of law." *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1128 (11th Cir. 2018).[1]  A legal opinion in the form of expert testimony "will not help the trier of fact" because "it offers nothing more than what lawyers for the parties can argue in closing arguments." *United States v. Frazier*, 387 F.3d 1244, 1262–63 (11th Cir. 2004); *see also Umana-Fowler v. NCL (Bahamas) Ltd*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014).  Thus, courts "must take adequate steps to protect against the danger that [an] expert's opinion would be accepted as a legal conclusion." *Commodores*, 879 F.3d at 1129.

Permitting Professors Stamos and Asay to offer legal conclusions on the central issues of fair use and liability under the Digital Millennium Copyright Act ("DMCA") risks "confusing, prejudicing, or misdirecting the jury." *Id.*  Corellium concedes this in part:  it has withdrawn some (but not all) of the legal opinions offered by Stamos.  ECF No. 507 at 9.  But Corellium continues to defend Asay's reports, even though his only qualifications are as an expert on copyright *law*.  Asay's legal opinion testimony should be excluded in its entirety, and Stamos should be precluded from offering legal opinions regarding fair use and the DMCA.

## I.   NARROWED SCOPE OF ISSUES ON REPLY

Apple and Corellium disagree on the admissibility of Asay's testimony in general and certain specific legal conclusions Corellium has not offered to strike from Stamos's report.  But there are a number of points the parties agree are not at issue.

First, Apple and Corellium agree that both Asay and Stamos are qualified within their respective areas of expertise, copyright law and security research.  ECF No. 451 at 1–2, ECF No. 507 at 2.  Apple instead maintains that "copyright law" is not an appropriate subject of expert testimony.

Second, Apple is not moving to exclude the bulk of Stamos's report or opinions.  The portions that focus on Stamos's stated area of expertise, security research, are the proper subject of expert testimony.  *See generally* ECF No. 451-6.  Apple agrees that Stamos can permissibly respond to Apple expert Dr. Michael Siegel's industry analysis of what constitutes "good faith security research."  But unlike Stamos, Dr. Siegel has not offered any legal conclusions, and instead stayed firmly within the domain of his expertise.  ECF Nos. 525-1, 525-2, 504-3, 525-4.

[1] Unless otherwise noted, internal quotations and citations omitted.

1

Third, Apple and Corellium agree that a number of Stamos's assertions constituted impermissible legal conclusions.  ECF No. 451 at 7–10; ECF No. 507 at 9.  Thus, at the very minimum, this Court should issue an order precluding Stamos from testifying on the withdrawn legal opinions.

Setting aside those areas of agreement, as detailed below, Apple and Corellium fundamentally disagree on the propriety of the remaining legal conclusions offered by Stamos and the entirety of the testimony offered by Asay.

## II.    PROFESSOR ASAY'S TESTIMONY SHOULD BE EXCLUDED

### A.    Professor Asay Offers Improper Legal Opinions

Corellium does not meaningfully dispute the inadmissibility of expert legal opinions.  It voluntarily agreed to withdraw many of Stamos's legal opinions.  ECF No. 507 at 9.  And it opposed Apple's motion to exclude certain opinions by its damages expert, Stewart Appelrouth, by arguing that "[n]otably absent . . . are any legal conclusion[s] about any underlying factual issue, interpretation of the law, or application of the law to underlying facts."  ECF No. 515 at 11.[2]  Corellium offers no basis for applying a different standard to Asay's legal opinions.

Asay's testimony should be excluded in its entirety because his reports consist solely of legal analysis and conclusions, just like a legal brief.  Asay makes no secret that he was brought onto the case as a "copyright law expert."  Ex. A (Asay Tr.) at 45:17–19.  But "[c]ourts have an obligation to exclude affidavits that purport to construe Copyright Law."  *Baldwin v. EMI Feist Catalog*, 989 F. Supp. 2d 344, 351–52 (S.D.N.Y. 2013) (striking copyright expert's affidavit as "inadmissible as a matter of law . . . because it does nothing other than express legal conclusions"), *rev'd on other grounds*, 805 F.3d 18 (2d Cir. 2015).  Indeed, courts have regularly determined that expert testimony, like Asay's, "about copyright . . . law as it applies to the facts of th[e] case" is inadmissible and invades the province of the court.  *See Basketball Mktg. Co., Inc. v. Steve & Barry's Univ. Sportswear*, No. 07-716, 2008 WL 5586141, at *1 n.2 (E.D. Pa. June 30, 2008) (excluding expert "expected to testify about copyright . . . law as it applies to the facts of this case" because "such matters are legal conclusions for the Court to determine at trial"); *see also Infogroup, Inc. v. DatabaseUSA.com LLC*, No. 14-CV-49, 2018 WL 3826684, at *2–4 (D. Neb. Aug. 10, 2018) (excluding testimony of "copyright expert" because it consisted of "legal conclusion[s], premised on [expert's] knowledge of copyright law"); *Osment Models, Inc. v.*

---

[2] The citations to Corellium's filings herein are to the public, redacted versions.

*Mike's Train House, Inc.*, No. 2:09-CV-04189, 2010 WL 4721228, at *1–2 (W.D. Mo. Nov. 15, 2010) (excluding opinions offered by an intellectual property professor and "expert in copyright law" because his report "discusse[d] different copyright doctrines and how the law ought to apply to the facts of th[e] case" and were thus "legal conclusions"); *Hendricks v. DreamWorks, LLC*, No. CV-05-8271, 2007 WL 9705916, at *5 (C.D. Cal. Nov. 20, 2007) (excluding expert's use of the phrase "striking similarity" since it was "a legal standard that is virtually dispositive of the 'copying' element of the copyright claim").

The same is true even when the expert is extraordinarily qualified to offer legal opinions about copyright law.  Professor David Nimmer has written what many consider to be the leading copyright treatise, but his opinions have routinely been excluded on the ground that they constituted improper legal opinion.  *See RCTV Int'l Corp. v. Rosenfeld*, No. 13-23611-CIV, Dkt. No. 194, slip op. at 3–5 (S.D. Fla. Sept. 28, 2015) (striking expert report offered by Nimmer because it, "in essence, is another legal brief" and "does not assist the [c]ourt in understanding the factual issues presented, but rather presents a legal argument" on the relevant copyright-related issue); *Gable v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 835–36 (C.D. Cal. 2010) (excluding expert report of Nimmer because "portions of Nimmer's report read much like a third legal brief" and thus constituted inadmissible legal conclusions).

Corellium attempts to evade this case law by asserting that Asay "does not intend to offer testimony on what the law is; [he] will instead address underlying policy principles as they relate to the technologies at issue."  ECF No. 507 at 6 n.2.  But Asay does not purport to be an expert in "policy principles"—he openly admits that he is an expert in "copyright law."  Ex. A at 45:17–19.  In any event, Corellium cannot be permitted to rewrite Asay's expert reports, both of which are "replete with legal opinion."  *Commodores*, 879 F.3d at 1129.  Asay himself summarizes his opinions in his initial report as follows:  "Corellium's use of Apple's products is a clear fair use of them, thus excusing Corellium from any copyright infringement liability"; "Corellium is also free from liability under the DMCA"; and "Apple's actions in this case constitute copyright misuse."  ECF No. 451-3 ¶ 7.  Similarly, in his rebuttal report, Asay opines that the report of Apple's software expert Dr. Jason Nieh "does not accurately apply the principles of U.S. copyright law."  ECF No. 451-4 ¶ 6.  Asay likewise admits that his "rebuttal to Dr. Siegel's report focuses on the concept of good faith security research as defined by the DMCA."  Ex. A at 245:9–13.  These are all *legal conclusions*, not "policy principles."

3

Moreover, even policy-focused discussions are the province of lawyers' argument and court rulings. *See, e.g.*, *Frazier*, 387 F.3d at 1262–63 ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."). Corellium tacitly admits this point: it intends to offer Asay's testimony on "the policy contexts that are relevant to the technologies at issue" immediately "after the testimony of technical experts and fact witnesses" so that "the jury would have proper factual context to interpret and apply Prof. Asay's testimony in deliberations." ECF No. 507 at 7. This argument betrays Asay's true role in Corellium's case: he is not offering any factual analysis himself, but rather he is teeing up a framework for how the jury should apply the law to the facts. *See id.* In other words, Corellium intends to offer Asay's legal framework as an advance closing argument, complete with shadow jury instructions, immediately before the defense rests and the Court reads actual jury instructions. This is a transparent attempt to usurp this Court's role.

Corellium's cited copyright cases are inapposite. Both involve factual assessments of whether two copyrighted works are "substantially similar" under an "extrinsic, or objective test." *See Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1257 (11th Cir. 1999) (factual comparison of two screenplays); *Corwin v. Walt Disney Co.*, No. 02-CV-1377, 2004 WL 5486639, at *10 (M.D. Fla. Nov. 12, 2004) (factual comparison of a painting and architectural rendering). Notably, Corellium cites no cases allowing an expert's opinion on the ultimate conclusion that a challenged activity is fair use or outside the scope of the DMCA. To the contrary, *Corwin*, cited by Corellium, emphasizes that experts may not offer legal conclusions. 2004 WL 5486639, at *10. Indeed, legal conclusions on "substantial similarity" are routinely excluded. *See, e.g.*, *Corbello v. DeVito*, No. 08-CV-00867, 2016 WL 6122935, at *2 (D. Nev. Oct. 19, 2016); *B2A, LLC v. Commlog, LLC*, No. 09-CV-00528, 2011 WL 5569496, at *2–3 & n.3 (D. Colo. Nov. 16, 2011). These cases thus underscore the impropriety of Asay's opinions.

In summary, all of Asay's opinions are legal conclusions. They risk sending confusing messaging to the jury about the applicable law and the jury's role in deciding the ultimate issues of this case, and therefore must be excluded. *See, e.g.*, *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards."); *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977) ("[A]n expert witness may not substitute for the court in charging the jury regarding the applicable law."); *Cordoves v.*

4

*Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1364 (S.D. Fla. 2015) ("Experts are not permitted to explain to the jury what the applicable legal standards are.").

### B.       Professor Asay Lacks Any Other Relevant Admissible Expertise

Unable to testify to the jury as an expert on copyright law, Asay lacks any other relevant expertise that would permit him to testify in this case at all.  *See* Ex. A at 45:11–19 (denying expertise in security research and computer science), 223:18–224:15 (denying expertise in virtualization technologies and how Corellium's technology works).  He is an intellectual property attorney who is qualified to assist Corellium's counsel with writing their legal briefs, but he is not an appropriate expert witness for the jury.

Nor can Asay's testimony guide the jury with respect to the application of facts to the law, given Asay's pinhole view of the record in this case.  *Cf. Corwin*, 2004 WL 5486639, at *10 (holding that "a mere bald assertion of law without any application of law to fact would be inadmissible").  Asay admits he used the Corellium Apple Product for only 30 to 90 minutes total, Ex. A, Asay Tr. at 66:12–67:5, and he has no understanding of or basis for opining on the Corellium Apple Product's technical operation.  *Id.* at 223:18–224:15, 225:3–12.  His limited knowledge of the facts of this case is based on a review of the pleadings, conversations with Corellium's counsel, and one single conversation with Corellium principals, which occurred only *after* the submission of his opening report.  *Id.* at 65:5–16, 70:12–71:2, 74:11–75:12, 76:11–18; 86:18–87:18, 221:13–22.  He also watched a couple of YouTube videos and read excerpts of a book that mentions Apple and Corellium.  *Id.* at 124:16–24, 144:18–23, 150:13–24.  And though this information would plainly be relevant to the Court's and jury's fair-use analyses in this case, Asay failed to review:  Corellium's contracts or communications with its customers, the bugs at issue in Corellium's counterclaims, or any of Corellium's marketing materials, *id.* at 78:5–79:7, 79:14–16, 79:22–80:7; any market research, *id.* at 163:7–15; Corellium's license agreement or any other communications with Corellium's customers, *id.* at 191:8–21; or *any* documents produced by Apple or Azimuth in this action, *id.* at 76:11–18, 221:23–222:14.  Asay did not sign the Protective Order, ECF No. 50, and thus has had no access to confidential materials.

Professor Asay thus cannot offer any admissible opinion that would assist the jury in determining the viability of Corellium's fair-use defense when he has not conducted (and is, in fact, unable to conduct) an analysis of the factual record in this case.  Asay thus lacks a "reliable foundation" to testify regarding the actual use of the copyrighted material at issue, which makes

his opinion entirely unhelpful since it offers the jury nothing it is incapable of determining itself. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

## III.   THE REMAINDER OF PROFESSOR STAMOS'S LEGAL CONCLUSIONS SHOULD BE EXCLUDED

Stamos's opening report, starting at paragraph 39, purports to analyze and offer an opinion on the fair-use factors. ECF No. 451-6 ¶¶ 39–55. Apple moved to exclude all legal analysis and opinions contained in those paragraphs. In response, Corellium has withdrawn the following portions of Stamos's opening report relating to the fair-use doctrine and the DMCA: "the first sentence of paragraph 39; the last sentence of paragraph 41; the word 'transformative' from the first sentence of paragraph 42; paragraph 43; the last two sentences of paragraph 44; the phrase 'which weighs in favor of fair use' from the last sentence of paragraph 45; the phrase 'find fair use' from the last sentence of paragraph 48; paragraph 49; the last sentence of paragraph 51; and the last sentence of paragraph 55." ECF No. 507 at 9. Given that Corellium concedes that these portions of Stamos's report constitute improper legal conclusions, the remaining legal conclusions should likewise be stricken. In short, Stamos should not be permitted to opine on whether Corellium is engaged in "fair use," whether the Corellium Apple Product is "transformative," or the meaning of or intent behind the "Digital Millennium Copyright Act" or "DMCA." *See Commodores*, 879 F.3d at 1129 (striking "expert opinion in the form of legal conclusions"); *Hendricks*, 2007 WL 9705916, at *5 (striking use of a legal term of art that amounted to "improperly telling the jury how to rule on a question of fact").

Notwithstanding Corellium's withdrawal of several of Stamos's legal opinions, the following inadmissible legal opinions remain:

- "The Supreme Court explained in *Campbell* that 'the extent of permissible copying varies with the purpose and character of the use.' With Corellium, the purpose and character of the use is security research, app design and testing. Full access to iOS is needed to do those things, which weighs in favor of fair use." ECF No. 451-6 ¶ 45.

- "I fail to see how Apple can make this claim [that Corellium violates the DMCA] in light of my analysis above along with my understanding of the history of the Digital Millennium Copyright Act." *Id.* ¶ 50.

- "My opinion and understanding is that such an effect was never the intent behind the DMCA . . .  These opinions are relevant to Section 1201(a)(2)." *Id.* ¶ 52.

- "The Corellium product does not fit the criteria set forth in Section 1201(b)(1)(A), (B), or (C) . . .  I do not see how Corellium can 'traffic' in any circumventions given the manner in which it operates." *Id.* ¶ 53.

- "In my opinion as a security researcher reading the DMCA provisions at issue, and understanding their applicability, I see no violations[.]" *Id.* ¶ 54 (characterizing Corellium as "transformative").

- "Finally, I am aware of 17 U.S.C. § 1201(c)(1) stating that '[n]othing in this section shall affect rights, remedies, limitations, or defenses to copyright infringement, including fair use, under this title.'" *Id.* ¶ 55 (with no further analysis).

Corellium offers no good reason why these legal opinions should not meet the same fate as the ones it has agreed to withdraw.  In particular, Corellium's explanation as to why Stamos should be permitted to offer testimony concerning the intent behind the DMCA misses the mark. Corellium attempts to couch Stamos's legal opinion regarding the legislative intent of the DMCA as "his understanding of the intent of the DMCA, as it relates to his conclusions regarding the use of the Corellium Product for security research."  ECF No. 507 at 8 (emphasis omitted).  However, this conclusion regarding the "intent of the DMCA" is functionally equivalent to the legal conclusion Corellium withdrew in paragraph 51.  *See* ECF No. 451-6 at ¶ 51 ("Apple knows this and, in my opinion, is stretching the DMCA to techniques that are necessary for basic security research.").  Stamos's opinion about the "intent of the DMCA" is a quintessential *legal* conclusion; to the extent it is relevant, it is this Court's responsibility to explain that intent to the jury.

In addition to the overt impropriety of this opinion, Stamos lacks any "reliable foundation" to testify as to the DMCA's legislative intent.  *See Daubert*, 509 U.S. at 597.  He had no role in drafting or passing the DMCA, ECF No. 451-5 at 43:10–19; did not review or study the legislative history of the relevant DMCA provisions, *id.* at 210:13–18; is an expert in security research, *not* the law or legislative action, *id.* at 42:24–43:6; and neither conducted a technical analysis nor reviewed *any* of the confidential produced documents in this case, *id.* at 59:2–61:21.  Allowing Stamos to offer baseless and improper legal opinions regarding the DMCA serves no purpose other than to impermissibly "charg[e] the jury regarding the applicable law."  *Milton*, 555 F.2d at 1203.

Finally, Corellium confusingly argues that it would be prejudiced if Stamos is unable to rebut Apple's security research expert, Dr. Siegel, on the meaning of "good faith security research." ECF No. 507 at 8–9. This argument is a red herring, as Apple did not move to strike any part of Stamos's rebuttal report.[3] ECF No. 451 at 4 (specifically mentioning "material portions of Alex Stamos's opening report"), 7–10 (referencing paragraphs of Stamos's opening report). Stamos may provide testimony in his recognized field of expertise—security research—which may include rebutting the industry definition of "good faith security research" proffered by Dr. Siegel. Apple only requests that Stamos's industry-based testimony should not stray into opining on the law, which it often does in his opening report.

## IV.  CONCLUSION

This Court should exclude the entirety of the legal opinions and testimony of Professor Asay and the remaining legal opinions and conclusions of Professor Stamos.

---

[3] In the context of making this argument Corellium misleadingly asserts that "[Dr.] Siegel's definition literally purports to state what the law is[.]" ECF No. 507 at 8. Not so. Dr. Siegel draws on his vast experience and expertise in the security research community to articulate an industry conception of "good faith security research" that is separate and distinct from the DMCA's statutory meaning. *See* 17 U.S.C. § 1201(j) (providing an exemption for "good faith testing, investigating, or correcting, a security flaw or vulnerability"); *see generally* ECF Nos. 525-1, 525-2, 504-3, 525-4 (describing in detail what the security community considers good faith security research and evaluating Corellium's business practices under that standard).

Dated: June 2, 2020

Respectfully Submitted,

*s/ Martin B. Goldberg*

Michele D. Johnson*
*michele.johnson@lw.com*
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
(714) 540-1235 / (714) 755-8290 Fax

Sarang Vijay Damle*
*sy.damle@lw.com*
Elana Nightingale Dawson*
*elana.nightingaledawson@lw.com*
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200 / (202) 637-2201 Fax

Andrew M. Gass*
*andrew.gass@lw.com*
Joseph R. Wetzel*
*joe.wetzel@lw.com*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 / (415) 395-8095 Fax

Jessica Stebbins Bina*
*jessica.stebbinsbina@lw.com*
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500 / (424) 653-5501 Fax

Gabriel S. Gross*
*gabe.gross@lw.com*
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 463-2628 / (650) 463-2600 Fax

*Admitted pro hac vice*

Martin B. Goldberg
Florida Bar No. 0827029
*mgoldberg@lashgoldberg.com*
*rdiaz@lashgoldberg.com*
Emily L. Pincow
Florida Bar No. 1010370
*epincow@lashgoldberg.com*
*gizquierdo@lashgoldberg.com*
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL 33131
(305) 347-4040 / (305) 347-4050 Fax

*Attorneys for Plaintiff* APPLE INC.

9