**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:19-cv-81160-RS**

APPLE INC.,

                    Plaintiff,

     v.

CORELLIUM, LLC,

                 Defendant.

**PLAINTIFF APPLE INC.'S REPLY IN FURTHER SUPPORT OF ITS**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................1

II.   RESPONSE TO CORELLIUM'S ASSERTED DISPUTED FACTS ...............................2

III.  CORELLIUM IS LIABLE FOR VIOLATING THE DMCA .............................................3

      A.    Apple's TCMs Protect iOS ...........................................................................3

      B.    Corellium Indisputably Traffics In A Circumvention Tool .....................................8

      C.    Infringement Liability Is Not A Prerequisite For DMCA Liability.........................8

IV.   CORELLIUM FAILS TO ESTABLISH A TRIABLE ISSUE ON ANY
      DEFENSE .................................................................................................................9

V.    CONCLUSION.........................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*321 Studios v. Metro Goldwyn Mayer Studios, Inc.*,
  307 F. Supp. 2d 1085 (N.D. Cal. 2004) ...................................................................8

*Adobe Sys. v. SKH Sys.*,
  No. A-17-CA-018, 2017 WL 6611513 (W.D. Tex. Dec. 12, 2017) .........................6

*Apple, Inc. v. Psystar Corp.*,
  673 F. Supp. 2d 931 (N.D. Cal. 2009) ...................................................................7

*Bell v. Mattox*,
  No. 1:18-CV-01677, 2019 WL 590147 (S.D. Ind. Feb 12, 2019) ..........................5

*Chamberlain Grp., Inc. v. Skylink Techs., Inc.*,
  381 F.3d 1178 (Fed. Cir. 2004) .........................................................................8, 9

*Compulife Software Inc. v. Newman*,
  __ F. 3d. __, No. 18-12004, 2020 WL 2549505 (11th Cir. 2020) .......................4, 5

*CoxCom, Inc. v. Chaffee*,
  536 F.3d 101 (1st Cir. 2008) .................................................................................8

*Davidson & Assocs. v. Jung*,
  422 F.3d 630 (8th Cir. 2005) ..............................................................................7, 8

*Dish Network LLC v. New Era Elecs. Corp.*,
  No. SACV 12-1097, 2013 WL 5486798 (C.D. Cal. Sep. 27, 2013) ........................8

*Gen. Universal Sys., Inc., v. Lee*,
  379 F.3d 131 (5th Cir. 2004) .................................................................................4

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
  140 S. Ct. 768 (2020) ............................................................................................2

*JCW Software LLC v. Embroidme.com, Inc.*,
  No. 10-80472-Civ, 2012 WL 13015051 (S.D. Fla. 2012) ......................................6

*Lexmark International, Inc. v. Static Control Components, Inc.*,
  387 F.3d 522 (6th Cir. 2004) ..............................................................................5, 6

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
  629 F.3d 928 (9th Cir. 2010) ..............................................................................6, 9

*MiTek Holdings, Inc. v. Arce Eng'g, Co.*,
   89 F.3d 1548 (11th Cir. 1996) ........................................................................4

*Montgomery v. Noga*,
   168 F.3d 1282 (11th Cir. 1999) ....................................................................5

*NNG, KFT. v. AVA Enters., Inc.*,
   No. 2:14-CV-00220, 2015 WL 5442725 (C.D. Cal. 2015) ....................6, 8

*RealNetworks, Inc. v. Streambox, Inc.*,
   No. 2:99-CV-02070, 2000 WL 127311 (W.D. Wash. Jan. 18, 2000) .................7

*TLS Grp., S.A. v. NuCloud Glob., Inc.*,
   No. 2:15-CV-00533, 2016 WL 1562910 (D. Utah Apr. 18, 2016)................6

*Universal City Studios v. Corley*,
   273 F.3d 429 (2d Cir. 2001)..........................................................................7

## STATUTES

17 U.S.C.
   § 410(c) ..........................................................................................................5
   § 1201(a)(2) ...........................................................................................1, 8, 10
   § 1201(a)(3)(A)...........................................................................................7, 8
   § 1201(a)(3)(B)....................................................................................2, 4, 6, 7
   § 1201(b)(1) ..........................................................................................1, 8, 10
   § 1201(b)(2)(B).......................................................................................2, 4, 6

## RULES

Fed. R. Civ. P. 56...............................................................................................2

## OTHER AUTHORITIES

Copyright Office, *Circular 61: Copyright Registrations of Computer Programs*
   (Oct. 2019), https://www.copyright.gov/circs/circ61.pdf .........................4

Copyright Office, *Relationship Between Source Code and Screen Displays*
   *721.10(A) in Copyright Office Compendium* (2017),
   https://www.copyright.gov/comp3/docs/compendium.pdf;.......................4

## TABLE OF ABBREVIATIONS

| Abbreviation | Definition | ECF No. (public) | ECF No. (sealed) |
|---|---|---|---|
| Mot. | Apple's Motion for Partial Summary Judgment | 453 | 470 |
| SOF | Apple's Statement of Facts | 455 | 470 |
| PEX | Plaintiff's Exhibits (1–83) to Apple's Statement of Material Facts in support of Apple's Motion for Partial Summary Judgment on 17 U.S.C. § 1201 | 455-1 to 455-83 | 470-4 to 470-47 |
| | Plaintiff's Exhibits (84–140) to Apple's Response to Corellium's Statement of Facts and Apple's Statement of Additional Material Facts | 518-1 to 518-57 | |
| Opp.[1] | Corellium's Opposition to Apple's Motion for Summary Judgment | 512 | |
| CSOFR | Corellium's Response to Apple's Statement of Facts and Statement of Additional Material Facts | 513 | |
| DEX | Exhibits to Corellium's Response to Apple's Statement of Facts and Statement of Additional Material Facts | 513-1 to 513-34 | |

---

[1] The citations to Corellium's Opp., CSOFR, and DEX herein are to the public, redacted versions.

# I.      INTRODUCTION

Corellium seeks to avoid summary judgment by mischaracterizing the record and the law to create the appearance of material disputes of fact where in reality there are none.  On the actual record in this case, the parties have a legal dispute rather than a factual one.  As courts have previously recognized and even casual observers of the industry appreciate, Apple has designed its operating systems so that in the ordinary course, they run only on Apple devices, not third-party hardware.  Corellium's entire value proposition is that it circumvents that limitation.  And it purports to do so on a legal technicality: the suggestion that, because the IPSW files that contain Apple's copyrighted operating system—iOS—are publicly downloadable (as they must be for iPhone users to update their software), it is somehow lawful to circumvent the technical control measures, or "TCMs," that in the ordinary course prevent people from doing what Corellium does.  But that is simply not how the law works.  TCMs that prevent unauthorized users from *running* software—from booting it up, seeing its graphical user interface ("GUI"), and dynamically interacting with it as commercially intended—are qualifying "controls" under the DMCA, so selling a tool to circumvent them is illegal trafficking under 17 U.S.C. § 1201(a)(2) and (b)(1).  It does not matter whether a file containing the software can be freely downloaded, opened, and inspected.  Numerous courts have so held, and none has reached a contrary conclusion.

In addition to advancing legal positions that are incorrect, Corellium's opposition brief consists in large measure of allegations that critical facts are disputed when even a cursory examination of both sides' evidence reveals they are not.  An illustrative example is Corellium's reaction to the observation in Apple's opening brief that "Corellium's business is selling virtual iPhones": "The statement is not just materially disputed," Corellium says, "it is patently false." Opp. at 1.  Outside of its legal filings, however, Corellium brags that it "███████████████ █████████████████████████████████████████████," PEX 66 at 3, including most prominently "█████████████████," PEX 65 at 1 (all emphases herein added unless otherwise stated).  It does so for money—█████████████.  CSOFR ¶ 69.  If a party could avoid summary judgment by using unsupported assertions in an opposition brief to disavow the record evidence, as Corellium has attempted to do here, Rule 56 would be a dead letter.

On the material facts for which there is no legitimate basis to recognize a dispute, Corellium is plainly liable as a matter of law.  Apple thus respectfully asks the Court to grant this motion.

## II.     RESPONSE TO CORELLIUM'S ASSERTED DISPUTED FACTS

Notwithstanding Corellium's material mischaracterizations of the record evidence, *see generally* ECF Nos. 512, 513, the undisputed facts satisfy each element of Apple's DMCA claim—namely, that Corellium traffics in (sells) the Corellium Apple Product, CSOFR ¶ 25, and the Product removes or bypasses technological controls that, in their ordinary course, prevent people from accessing, copying, and displaying the running version of iOS. SOF ¶¶ 13–22, 40–48, 64; CSOFR ¶¶ 13–22, 40–48, 64; *see* 17 U.S.C. § 1201(a)(3)(B), (b)(2)(B). Corellium's generalized suggestion that it is a platform for "security research" is irrelevant to the operative legal analysis.

While Corellium labels some of the preceding facts as "disputed," it has not put forth evidence demonstrating a genuine triable issue. *See Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 779 (2020) (only "genuine" dispute, not assertions "blatantly contradicted" by the record, can prevent summary judgment). First, Corellium purports to dispute the fundamental proposition that iOS cannot, in the ordinary course, be run on non-Apple hardware without circumventing Apple's TCMs. CSOFR ¶¶ 13–22. But there is no basis in the record to have a trial over this question. Corellium's asserted facts do not address at all what an *ordinary iOS user* experiences in the *ordinary course*, as the statute requires. Instead, they address only what *Corellium*'s product does, *id.*[2]—while the whole point of Corellium's product is letting people run iOS virtually, in a way that cannot normally be done. Corellium thus fails to dispute that *an ordinary user* of iOS cannot, *in the ordinary course*, access iOS on non-Apple hardware, make RAM copies of iOS on non-Apple hardware, or create derivative works of iOS on non-Apple hardware. *Id.* Indeed, the few times Corellium makes reference to what an *ordinary user* experiences, it agrees with Apple on these points. *See*, *e.g.*, DEX 8 at 64:25–65:12 (███████

---

[2] The same is true of Corellium's supporting evidence, which either supports Apple's position, is inapposite, or addresses Corellium's product alone. *See* DEX 1 at 90:14–91:1 (supports Apple's position); DEX 1 at 102:23–103:4 (supports Apple's position: ████████████ ████████████); DEX 1 at 274:7–11 (does not exist); DEX 2 at 128:14–23 (does not support claim); DEX 2 at 129:10–133:17 (supports Apple's position); DEX 2 at 130:15–21 (supports Apple's position regarding design of the kernel and file system); DEX 2 at 131:7–16 (supports Apple's position and does not address ordinary user); DEX 2 at 132:9–17 (does not support claim); DEX 3 at 47:11–17 (supports Apple's position regarding the chain of trust); DEX 3 at 54:12–19 (support's Apple's position that iOS must be run on Apple hardware); DEX 5 at 211:3–6 (off-topic, partial answer); DEX 7 at 230:18–235:2 (Corellium product); DEX 7 at 243:17–25 (Corellium product); DEX 7 at 274:7–11 (███████████████████████████████████████ ███); DEX 8 at 146:18–147:1 (Corellium product, partial answer); DEX 8 at 165:11–21 (incomplete quote, does not support claim).

2

███████████████████████████), 72:11–17 ██████████████████████████████████

██████; DEX 2 at 132:9–17 (Apple's protections prevent product from "running on any normal non-Apple platform.").

Second, Corellium attempts to characterize its circumvention of Apple's TCMs as merely refining iOS or removing components Corellium's product "does not utilize."  CSOFR ¶ 44; *see also* CSOFR ¶¶ 40–43, 46–48.  But the evidence it cites does not support that assertion at all.  To the contrary, it shows that the product's operation *depends* on modifying iOS in critical respects—modifications that are technologically necessary for users of Corellium's third-party hardware to

████████████████████████████████████████████████████████████████████████

████████████████████████████████████  SOF ¶¶ 40–48; CSOFR ¶¶ 40–48; *see also, e.g.*, DEX 7 at 234:9–16; DEX 8 at 165:7–21; CSOFR ¶¶ 40–45 █████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████).  Nothing about the evidence Corellium cites creates a "dispute" here or even tends to suggest any of that would be possible without the sophisticated alterations Corellium makes.  To the contrary, Corellium's *own expert*—who professed "first-hand knowledge" of Corellium's product, ECF No. 451-6 ¶ 54—acknowledged that Corellium has "to circumvent what you might call security protections since Apple has designed their systems to make it very much – very difficult to run iOS except on authorized Apple hardware."  SOF ¶ 64, PEX 52 at 212:2–212:6.  The undisputed evidence thus demonstrates that the Corellium Apple Product circumvents Apple TCMs.

## III.    CORELLIUM IS LIABLE FOR VIOLATING THE DMCA

The primary dispute between Corellium and Apple is therefore legal, not factual, and ripe for summary judgment.  Corellium makes multiple arguments why its conduct does not violate the DMCA.  All fail as a matter of law based on the preceding undisputed facts.

### A.    Apple's TCMs Protect iOS

The heart of Corellium's defense is its assertion that, because Apple makes its IPSW files freely available for download, the operating system contained in those files—iOS—is unprotected by effective access or rights controls.  Corellium takes that position even though the version of iOS contained in the IPSW file cannot, in the ordinary course, be *run* unless loaded on Apple hardware.  *See supra* at 2–3.  Corellium's arguments are contrary to established law.  Under the DMCA, an effective control is one that either (1) "in the ordinary course of its operation," requires

application of information, a process, or treatment, with the copyright owner's consent, to gain
access to the work, 17 U.S.C. § 1201(a)(3)(B) (access controls); or (2) "in the ordinary course of
its operation," "prevents, restricts, or otherwise limits the exercise of the right[s]" protected by the
Copyright Act (*i.e.*, copying, public display, derivative works, distribution), *id.* § 1201(b)(2)(B)
(rights controls). As explained below, Apple's TCMs meet both definitions.

   ***The Copyrighted Works.***  Corellium's opposition is founded on two critical errors of law.
First, it asserts that Apple's copyrights protect only iOS's source and object code, and not its
interactive graphical interface. Second, it asserts that there is no legal protection for iOS—in either
the Copyright Act or the DMCA—until iOS is installed on authorized Apple hardware. Opp. at
5–8, 10–11, 12. Both assertions are legally erroneous.

   First, Apple's copyrights are not so limited. Copyright in a computer program includes
both the literal elements (source and object code) and nonliteral elements, including user interfaces
and screen displays. *Compulife Software Inc. v. Newman*, __ F. 3d. __, No. 18-12004, 2020 WL
2549505, at *7–8 (11th Cir. 2020); *MiTek Holdings, Inc. v. Arce Eng'g, Co.*, 89 F.3d 1548, 1555
n.15, 1558 (11th Cir. 1996). This is "because the program code contains fixed expression that
produces the screen displays." Copyright Office, *Relationship Between Source Code and Screen
Displays 721.10(A) in Copyright Office Compendium* (2017), https://www.copyright.gov/comp3/
docs/compendium.pdf; Copyright Office, *Circular 61: Copyright Registrations of Computer
Programs*, at 4–5 (Oct. 2019), https://www.copyright.gov/circs/circ61.pdf ("A registration for a
computer program covers . . . any copyrightable screen displays it generates."); *see also Gen.
Universal Sys., Inc., v. Lee*, 379 F.3d 131, 142 (5th Cir. 2004) ("It is settled" that copyright
protection in software extends "to a program's nonliteral elements, including its structure,
sequence, organization, user interface, screen displays, and menu structures.").[3] The copyrighted
work here, then, is not just iOS's source and object code, but also iOS's user interface and screen
display—that is, the interactive visual display a user experiences when iOS's object code is run.
*See generally* ECF No. 56.[4]

---

[3] Corellium is wrong that the "look, feel, layout, interactions, interactive elements, and responses
to a users' commands of its home screen are not at issue in this case." Opp. at 6 n.3. In fact, that
is *exactly* what is at issue. *See* ECF No. 56 (FAC) ¶¶ 2, 3, 14, 16–17, 25–26, 30, 45, 49, 52–53,
56, 59–60, 63, 66–68, 72; ECF No. 56-1.

[4] Corellium briefly appears to argue that Apple's visual display is unprotected because it is
"generic." Opp. at 12. But Apple's copyrights over iOS's visual display are registered and
therefore presumptively valid. *See* 17 U.S.C. § 410(c); *Montgomery v. Noga*, 168 F.3d 1282, 1289

Second, notwithstanding Corellium's contention to the contrary, Corellium is not free to use iOS for any purpose just because it can download IPSWs from the Internet without agreeing to Apple's Software License Agreement ("SLA").  Copyright law makes it illegal to copy, make derivative works of, or publicly display the contents of an IPSW file, just as it makes it illegal to copy a photograph by downloading it from a photographer's website.  *See, e.g.*, *Bell v. Mattox*, No. 1:18-CV-01677, 2019 WL 590147, at *1–2 (S.D. Ind. Feb 12, 2019).  Apple's SLA gives users of Apple devices a license to make a copy of an IPSW file, but only onto his or her Apple device.  SOF ¶ 20; *see* CSOFR ¶ 20 ("Undisputed.").  By allowing users to skip the step in which they agree to the SLA, Corellium has not found a loophole that magically frees them to do whatever they want with iOS without legal restriction.  To the contrary, without a license, or some other legal defense, copying iOS is an unlawful act of copyright infringement.

***Access/Rights Controls.***  Corellium's unduly narrow conception of Apple's copyright protection cascades through the remainder of its arguments.  Having suggested that copyright law does not protect the dynamic visual display that users see, Corellium takes the further step of arguing that any TCMs preventing users from accessing, copying, or displaying *that part* of Apple's copyrighted works are not "effective" controls under the DMCA.  But this argument fails because its premise is wrong.  The relevant inquiry is instead whether Apple's TCMs restrict access to or infringement of the full expression protected by Apple's copyrights, including the screen display, user interface, and GUI elements.  And the undisputed evidence demonstrates that they do.  *Supra* at 2–3 (discussing SOF and CSOFR ¶¶ 13–22).

Corellium attempts to avoid this inescapable conclusion by relying on *Lexmark International, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004), Opp. at 5–6, but *Lexmark* directly *refutes* Corellium's arguments.  In *Lexmark*, the Court explained that "copyright protection operates on two planes: in the literal code governing the work and in the visual or audio manifestation generated by the code's execution."  387 F.3d at 548.  When a copyrighted work includes both literal code as well as visual and audio manifestations of that code, "restricting consumers from making use of the copyrightable expression in [such] work[s]"—that is, the music, motion picture, or video and audio generated from computer code—constitutes a restriction on access under the DMCA.  *Id.*  In contrast, and on the other side of the "liability line,"

---

(11th Cir. 1999).  Corellium has failed to carry its burden to demonstrate that such elements are unprotected as a matter of law, *see Compulife Software*, 2020 WL 2549505, at *8–9.

are copyrighted works for which the copyrightable expression "operates on only one plane: in the literal elements of the program, its source code and object code." *Id.* The work at issue in *Lexmark* was "purely functional," controlling printer operations. *Id.* It *had no visual display*—and thus, the only potentially protectable expression was the literal code itself. *Id.* Here, the opposite is true: it is undisputed that running iOS generates a graphical user interface and screen display that is protected by Apple's copyrights. *See supra* at 2–3; *see also* Opp. at 12 (admitting that running iOS "necessarily displays an interactive user interface"); *see also* CSOFR ¶ 38 (admitting

███████████████████████████████████████████████████████). Access to the working, visual iOS display is protectable under the DMCA and protected by Apple's TCMs.

This conclusion is neither controversial nor novel. Contrary to Corellium's claims, it is established law that TCMs that prevent a person from *using* a computer program in an unauthorized manner constitute controls under the DMCA. As a case Corellium itself relies on (Opp. at 13–14) states, "developing code . . . that allows [a] Copyrighted Work to run on a non-approved device"—exactly what the Corellium Apple Product does—"unquestionably" constitutes circumvention of a security measure under the DMCA. *NNG, KFT. v. AVA Enters., Inc.*, No. 2:14-CV-00220, 2015 WL 5442725, at *3 (C.D. Cal. 2015). Similarly, in *JCW Software LLC v. Embroidme.com, Inc.*, the court held that circumventing a program that limited a user's *use* of software beyond a 30-day trial period violated the DMCA. No. 10-80472-Civ, 2012 WL 13015051, at *10–11 (S.D. Fla. 2012). Even though the users in that case still possessed the computer program's object code—just as a person who downloads an IPSW possesses iOS's object code—the user could not access the working, displayed version of that program unless and until the person applied information, such as a license key, "with the authority of the copyright owner." *Id.* at *9; *see also MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 954–55 (9th Cir. 2010) (circumvention tools that give unauthorized access to running version of software violate DMCA); *Adobe Sys. v. SKH Sys.*, No. A-17-CA-018, 2017 WL 6611513, at *6 (W.D. Tex. Dec. 12, 2017) (bypassing customer activation key to "activate" software is DMCA circumvention); *TLS Grp., S.A. v. NuCloud Glob., Inc.*, No. 2:15-CV-00533, 2016 WL 1562910, at *8–10 (D. Utah Apr. 18, 2016) (defendant could be liable under the DMCA where it possessed copy of software, but bypassed measures that required software to be connected to website). The same is true here—"in the ordinary course," 17 U.S.C. § 1201(a)(3)(B), (b)(2)(B), a person who downloads and possesses an IPSW file cannot access the working, displayed version of iOS without Apple's authorization,

which is provided through Apple's TCMs, and which Corellium bypasses.  *See* Mot. at 3–4.

    ***Effectiveness***.  Corellium levels two challenges to the effectiveness of Apple's controls, arguing that the DMCA does not apply (1) because IPSW files are not encrypted, iOS is not protected, and (2) because Apple's TCMs are partially based in hardware.  Neither of these assertions—for which Corellium cites no legal authority—is correct.  A TCM "'effectively controls access to a work' if the measure, in the ordinary course of its operation, requires the application of information, or a process or treatment, with the authority of the copyright owner to gain access to the work."  17 U.S.C. § 1201(a)(3)(B).  Circumvention means not just decryption but *any* action "to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner."  *Id.* § 1201(a)(3)(A).[5]

    The undisputed facts demonstrate that, if Apple's TCMs are in place, iOS cannot be loaded on non-Apple hardware; after Corellium's software removes or evades those TCMs, it can be. *Supra* at 2–3 (discussing SOF and CSOFR ¶¶ 13–22, 40–48).  That is dispositive of Corellium's liability.  It is irrelevant that the TCMs that protect iOS operate interactively with Apple hardware. The same is true of numerous other TCMs, such as those that prevent DVDs from playing on unauthorized DVD players.  *See Universal City Studios v. Corley*, 273 F.3d 429, 437–38 (2d Cir. 2001) (defendant liable for reverse engineering decryption keys installed on DVD players); *see also Davidson & Assocs. v. Jung*, 422 F.3d 630, 633 & n.3, 640–41 (8th Cir. 2005) (defendant liable for circumventing "secret handshake" between a video game and remote computer server); *RealNetworks, Inc. v. Streambox, Inc*., No. 2:99-CV-02070, 2000 WL 127311, at *7–9 (W.D. Wash. Jan. 18, 2000) (similar).  Corellium's evasion of the integrated hardware/software checks that Apple employs, far from excusing its conduct, demonstrates its liability.  *See* Opp. at 8–10 (*e.g.*, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.).[6]

---

[5] Corellium attempts to distinguish *Apple, Inc. v. Psystar Corp*., 673 F. Supp. 2d 931 (N.D. Cal. 2009), on the same basis.  But *Psystar* specifically held that it (a) violates the DMCA to circumvent *any* TCMs to provide unauthorized access or make unauthorized copies, and (b) is no defense to argue that information was "publicly available on the internet," where the TCMs protect "the rights of copyright owners in the ordinary course of its operation."  *See* 673 F. Supp. 2d at 934, 941.

[6] Elsewhere, Corellium faults Apple for relying on the term "unauthorized."  Opp. at 10.  But *the statute itself* refers to obtaining "the authority of the copyright owner."  17 U.S.C. § 1201(a)(3)(A). It is undisputed that Apple provided no such authorization.  CSOFR ¶ 78.

## B. Corellium Indisputably Traffics In A Circumvention Tool

Corellium next argues that its sale of a product that bypasses or removes Apple's TCMs is not "trafficking" in such a tool "[b]ecause no Corellium user can ever take any alleged circumvention measure out of the Corellium environment" and thus the product does not allow access, copying, distribution, public performance, or making of derivative works "in the wild" Opp. at 13–14. But the DMCA's anti-trafficking provisions do not require "in the wild" violations; they require only that Corellium "manufacture[s]" or "offer[s] to the public" a product, some "part" of which circumvents access or rights controls on iOS, to be liable for trafficking. 17 U.S.C. § 1201(a)(2), (b)(1). Neither case cited by Corellium supports the exception Corellium seeks to persuade this Court to embrace. The citation to *Chamberlain* has nothing to do with trafficking and so is entirely inapposite. *See Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1197–98 (Fed. Cir. 2004). And in *NNG KFT*, the trafficked product did not itself circumvent any TCMs; rather, the defendant stripped out all security protections *before* selling the product. 2015 WL 5442725, at *4–5. Here, the undisputed evidence shows that the Corellium Apple Product *is* "do[ing] the circumventing itself." *Id.* at *4; *supra* at 2–3 (discussing SOF and CSOFR ¶¶ 40–48). And, contrary to Corellium's arguments, "within-product" tools can and do violate the DMCA. *See, e.g.*, *CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 110 (1st Cir. 2008) (pay-per-view scrambler); *Davidson & Assocs.*, 422 F.3d at 640–41 (online game).

## C. Infringement Liability Is Not A Prerequisite For DMCA Liability

There is similarly no merit to Corellium's assertion that a successful DMCA claim requires Apple to move for summary judgment on its separate and discrete copyright infringement claims. To the contrary, parties regularly pursue DMCA claims by themselves, without infringement claims, and prevail. *See, e.g.*, *321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085, 1089–90 (N.D. Cal. 2004) (DMCA claim only); *Dish Network LLC v. New Era Elecs. Corp.*, No. SACV 12-1097, 2013 WL 5486798, at *1, *7 (C.D. Cal. Sep. 27, 2013) (same). Corellium relies on a single case, *Chamberlain*, for its assertion. But *Chamberlain* merely speaks to a need for there to be a "nexus" between rights protected by the Copyright Act and DMCA claims. 381 F.3d at 1204. It in no way holds that Apple must first obtain judgment on its infringement claims as a prerequisite to judgment on its DMCA claim.[7]

---

[7] *Chamberlain* involved an attempt by a manufacturer of garage door openers to use the DMCA to block the sale of universal remote controls. *Id.* at 1183–85. In addressing that scenario, the

IV.    **CORELLIUM FAILS TO ESTABLISH A TRIABLE ISSUE ON ANY DEFENSE**

In addition to failing to establish a triable issue of fact on Apple's *prima facie* DMCA claim, Corellium fails to show that any affirmative defense applies, or provide evidence supporting any defense. *See Office of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1470 (S.D. Fla. 1997).

*Fair Use.* Fair use is not a defense under the DMCA. Mot. at 15–16 (collecting cases). Corellium cites two cases to argue otherwise, but neither supports its position. *Chamberlain* states expressly that it is not "reach[ing] the relationship between § 107 fair use and violations of § 1201." 381 F.3d at 1199 n.14. And *Suntrust Bank v. Houghton Mifflin Co.* is a copyright case that does not address the DMCA. *See generally* 268 F.3d 1257 (11th Cir. 2001). Corellium turns next to hyperbole, warning of the "death of fair use" if the Court does not depart from the law as written. Opp. at 16. Such rhetoric fails to address Corellium's burden in opposition to Apple's motion. The doctrine of fair use does not apply to the DMCA because, in enacting the statute, Congress balanced the rights and needs of copyright holders and user communities, by creating enumerated statutory defenses and giving the Librarian of Congress authority to adopt further exemptions. "If Congress had meant the fair use defense to apply to such actions, it would have said so." *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 322 (S.D.N.Y. 2000).

*1201(f).* Corellium has likewise failed to carry its burden under section 1201(f). *State Farm Mut. Auto Ins. Co. v. Med. Serv. Ctr. of Florida, Inc.*, 103 F. Supp. 3d 1343, 1349–50 (S.D. Fla. 2015) (movant need only show the "absence of evidence" supporting non-movant's defense). To prevail, Corellium needed to identify evidence sufficient to establish (a) that it is circumventing TCMs on a copy of iOS it "lawfully obtained the right to use," and (b) that the "sole purpose" of its product's circumvention is "to achieve interoperability" between iOS and "an independently created computer program." *See* 17 U.S.C. § 1201(f)(1)–(2). Corellium fails to show either. It does not present any evidence that it "lawfully obtained the right to use" the copies of iOS that it uses. *See* Opp. at 18. And it fundamentally misstates the relevant legal test: Corellium relies on section 1201(f)(1), but that section addresses violations of section 1201(a)(1), not (a)(2) or (b)(1). Instead, under the relevant provision, section 1201(f)(3), Corellium must show its *customers* use its product to achieve interoperability, a burden Corellium does not even address, much less meet

---

court distinguished cases where—like here—a tool allows a "user to circumvent" a protection measure "to view *or to copy*" a protected work; in such cases, the nexus requirement is satisfied, because the access is "intertwined with a protected right." *Id.* at 1199. Moreover, *Chamberlain*'s "nexus" requirement has been rejected by other circuits. *See, e.g.*, *MDY Indus.*, 629 F.3d at 950.

with a showing of evidence.

*1201(g) and 1201(j).*   Corellium has likewise not carried its burden for the "encryption research" defense in 17 U.S.C. § 1201(g) because it neither argues nor cites any facts showing that the Corellium Apple Product enables "encryption research." *See* Opp. at 19 (citing CSOFR ¶¶ 67–68, 109–110).  That is not surprising, since Corellium argues elsewhere that the iOS files it uses are *not* encrypted.  Opp. at 5–6.  Corellium likewise has not carried its burden for the "security testing" defense in section 1201(j) because the very facts it relies on confirm that Corellium does not distribute its tool for the "sole purpose of performing" "security testing"  17 U.S.C. § 1201(j)(1), (4).  To the contrary, Corellium's cited facts demonstrate that its product has other uses.  *See* CSOFR ¶ 110 (" ██████████████████████████████████ ██████████████████████████████ ").  Moreover, Corellium concedes that it lacks authorization from Apple, CSOFR ¶ 78, which is also fatal to this defense.

*Estoppel.*   Finally, Corellium fails to demonstrate a triable issue of fact with respect to estoppel.  As an initial matter, Corellium admits Apple never affirmatively authorized Corellium's use of iOS.  SOF ¶ 78; CSOFR ¶ 78 ("Undisputed.").   And it does not identify any misrepresentations by Apple, let alone identify evidence that Apple "misrepresented material facts" or otherwise intended to mislead Corellium, as is required to establish an estoppel defense. *See Martin v. Brevard*, 543 F.3d 1261, 1266 & n.2 (11th Cir. 2008).  Even if Corellium had done so, however, its estoppel defense still fails because Corellium offers no evidence of detrimental reliance, which Corellium concedes is required for estoppel (ECF No. 456 at 16).  *See generally* CSOFR; *Abromats v. Abromats*, No. 16-CV-60653, 2016 WL 4917153, at *6 (S.D. Fla. Sept. 15, 2016).  In fact, the undisputed evidence shows the opposite: Corellium's co-founder and Chief Technology Officer knew for years that a product like Corellium's required a license from Apple, SOF ¶¶ 73–76; CSOFR ¶¶ 73–76 ("Undisputed."), that understanding was communicated to Apple, SOF ¶ 74; CSOFR ¶ 74 ("Undisputed."), and well after developing and beginning to market its product, ████████████████████████████████████████████ ██████   *See* SOF ¶¶ 28, 76 ████████████████████████████████ ██████████████████████████████████████████████████ ").

V.   **CONCLUSION**

Apple respectfully asks the Court to grant summary judgment on Apple's DMCA claim.

Dated: June 2, 2020

Michele D. Johnson*
*michele.johnson@lw.com*
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
(714) 540-1235 / (714) 755-8290 Fax

Sarang Vijay Damle*
*sy.damle@lw.com*
Elana Nightingale Dawson*
*elana.nightingaledawson@lw.com*
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200 / (202) 637-2201 Fax

Andrew M. Gass*
*andrew.gass@lw.com*
Joseph R. Wetzel*
*joe.wetzel@lw.corm*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 / (415) 395-8095 Fax

Jessica Stebbins Bina*
*jessica.stebbinsbina@lw.com*
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500 / (424) 653-5501 Fax

Gabriel S. Gross*
*gabe.gross@lw.com*
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 463-2628 / (650) 463-2600 Fax

*Admitted pro hac vice*

Respectfully Submitted,

*s/ Martin B. Goldberg*

Martin B. Goldberg
Florida Bar No. 0827029
*mgoldberg@lashgoldberg.com*
*rdiaz@lashgoldberg.com*
Emily L. Pincow
Florida Bar.  No. 1010370
*epincow@lashgoldberg.com*
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL 33131
(305) 347-4040 / (305) 347-4050 Fax

*Attorneys for Plaintiff* APPLE INC.

11