**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:19-cv-81160-RS**

APPLE INC.,

                    Plaintiff,

        v.

CORELLIUM, LLC,

                    Defendant.

**PLAINTIFF APPLE INC.'S MOTION TO DISMISS DEFENDANT CORELLIUM, LLC'S**
**COUNTERCLAIMS AND SUPPORTING MEMORANDUM OF LAW**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................3

    A.    Procedural History. ..................................................................................3

    B.    Apple Security Bounty Program. ............................................................4

    C.    Corellium's Claims Against Apple. .........................................................6

ARGUMENT ........................................................................................................................6

   I.    CORELLIUM LACKS STANDING TO PURSUE DECLARATORY OR
        INJUNCTIVE RELIEF....................................................................................7

    A.    Corellium's Declaratory Judgment Act Claims Must Be Dismissed..........8

    B.    Corellium's Claims for Injunctive Relief Must Be Dismissed. ..................9

   II.   CORELLIUM FAILS TO STATE A CLAIM FOR CONSTRUCTIVE
        FRAUD. ...........................................................................................................10

   III.   CORELLIUM FAILS TO STATE A CLAIM FOR QUANTUM
        MERUIT. ..........................................................................................................11

   IV.   CORELLIUM FAILS TO STATE A CLAIM UNDER CALIFORNIA'S
        UCL.................................................................................................................15

    A.    Corellium's UCL Claims For Unlawful Business Practices Fail
            Because Its Constructive Fraud And Quantum Meruit Claims Fail. .........15

    B.    Corellium's UCL Claim For Unfair Business Practices Fails
            Because It Has Not Alleged A Cognizable Unfair Business
            Practice.................................................................................................16

    C.    Commercial Disputes Are Not Cognizable Under The UCL. ...................17

    D.    Corellium's Claim Fails Because It Does Not Allege A
            Restitutionary Injury. ...........................................................................18

   V.   CORELLIUM FAILS TO STATE A CLAIM UNDER FLORIDA'S
        DECEPTIVE AND UNFAIR TRADE PRACTICES ACT. .................................19

A.   Corellium Has Not Alleged A Deceptive Act Or Unfair Trade
     Practice..........................................................................................................19

B.   Corellium Has Not Alleged "Actual Damages" Under The Act. ..............20

CONCLUSION.............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
  925 F.3d 1205 (11th Cir. 2019) .........................................................7, 8

*Access Now, Inc. v. S. Fla. Stadium Corp.*,
  161 F. Supp. 2d 1357 (S.D. Fla. 2001) ...................................................2

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*,
  390 F. Supp. 2d 1170 (M.D. Fla. 2005)..........................................10, 11

*Bank of the West v. Superior Court*,
  833 P.2d 545 (Cal. 1992) .................................................................18

*Baron v. Acasta Capital*,
  No. 16-CV-25118, 2017 WL 3084416 (S.D. Fla. July 19, 2017)..........................14

*Berryman v. Merit Prop. Mgmt., Inc.*,
  62 Cal. Rptr. 3d 177 (Cal. Ct. App. 2007) .............................................16

*Big Five Props., Inc. v. Certain Underwriters at Lloyd's, London*,
  No. 12-23916-CIV, 2013 WL 12091814 (S.D. Fla. Feb. 27, 2013).........................8

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
  114 Cal. Rptr. 2d 109 (Cal. Ct. App. 2001)...................................11, 12, 14

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  973 P.2d 527 (Cal. 1999) .................................................................15

*Clark v. Superior Court*,
  235 P.3d 171 (Cal. 2010) .................................................................18

*In re ConocoPhillips Co. Serv. Station Rent Contract Litig.*,
  No. 09-cv-02040, 2011 WL 1399783 (N.D. Cal. April 13, 2011).........................17

*Corn v. Greco*,
  694 So. 2d 833 (Fla. Dist. Ct. App. 1997) .........................................14, 15

*Cox v. Porsche Fin. Servs., Inc.*,
  330 F.R.D. 322 (S.D. Fla. 2019).........................................................9

*Cross v. Strader Const. Corp.*,
  768 So. 2d 465 (Fla. Dist. Ct. App. 2000) ..............................................15

iv

*Davies v. Krasna*,
    535 P.2d 1161 (Cal. 1975) ....................................................................................10

*Davis v. Powertel, Inc.*,
    776 So. 2d 971 (Fla. Dist. Ct. App. 2000) ...........................................................19

*Day v. Taylor*,
    400 F.3d 1272 (11th Cir. 2005) ............................................................................12

*In re De Laurentiis Entm't Grp. Inc.*,
    963 F.2d 1269 (9th Cir. 1992) ..............................................................................12

*Dolphin LLC v. WCI Cmtys., Inc.*,
    715 F.3d 1243 (11th Cir. 2013) ............................................................................19

*Durell v. Sharp Healthcare*,
    108 Cal. Rptr. 3d 682 (Cal. Ct. App. 2010).........................................................12

*First Data Res., Inc. v. Safecard Servs., Inc.*,
    574 So. 2d 311 (Fla. Dist. Ct. App. 1991) .....................................................12, 15

*Fulton v. Brancato*,
    189 So. 3d 967 (Fla. Dist. Ct. App. 2016) ...........................................................11

*Graham v. Bank of Am., N.A.*,
    172 Cal. Rptr. 3d 218 (Cal. Ct. App. 2014).........................................................16

*Graphic Pallet & Transp., Inc. v. Balboa Capital Corp.*,
    No. 11-CV-9101, 2012 WL 1952745 (N.D. Ill. May 30, 2012)...........................17

*Gross v. White*,
    340 F. App'x 527 (11th Cir. 2009) .......................................................................12

*Hedging Concepts, Inc. v. First All. Mortg. Co.*,
    49 Cal. Rptr. 2d 191 (Cal. Ct. App. 1996), *as modified on denial of reh'g*
    (Feb. 22, 1996).........................................................................................11, 12, 15

*Herrejon v. Ocwen Loan Servicing, LLC*,
    980 F. Supp. 2d 1186 (E.D. Cal. 2013).................................................................16

*Horsley v. Feldt*,
    304 F.3d 1125 (11th Cir. 2002) ............................................................................12

*Houston v. Marod Supermarkets, Inc.*,
    733 F.3d 1323 (11th Cir. 2013) ..............................................................................8

*Jackson v. Calone*,
    No. 2:16-cv-00891, 2017 WL 4844483 (E.D. Cal. Oct. 26, 2017).........................7

*Klein v. Chevron U.S.A., Inc.*,
   137 Cal. Rptr. 3d 293 (Cal. Ct. App. 2012) ........................................................................12

*Korea Supply Co. v. Lockheed Martin Corp.*,
   63 P.3d 937 (Cal. 2003) ...................................................................................................15, 18

*Kwikset Corp. v. Superior Court*,
   246 P.3d 877 (Cal. 2011) ..................................................................................................16, 18

*Linear Tech. Corp. v. Applied Materials, Inc.*,
   61 Cal. Rptr. 3d 221 (Cal. Ct. App. 2007) ........................................................................17

*Lavigne v. Herbalife, LTD*,
   No. 18-cv-07480, 2019 WL 6721619 (C.D. Cal. Oct. 22, 2019) ........................................7

*Lazar v. Hertz Corp.*,
   82 Cal. Rptr. 2d 368 (Cal. Ct. App. 1999) ........................................................................16

*Leon v. Cont'l AG*,
   301 F. Supp. 3d 1203 (S.D. Fla. 2017) ..............................................................................7

*Leon v. Tapas & Tintos, Inc.*,
   51 F. Supp. 3d 1290 (S.D. Fla. 2014) ................................................................................19

*Lepkowski v. CamelBak Prods., LLC*,
   No. 19-cv-04598, 2019 WL 6771785 (N.D. Cal. Dec. 12, 2019) ......................................9

*Malowney v. FDIC*,
   193 F.3d 1342 (11th Cir. 1999) ..........................................................................................7

*Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*,
   No. 15-24363-CIV, 2018 WL 4932871 (S.D. Fla. Apr. 23, 2018) ....................................9

*Mattera v. Nusbaum*,
   No. 17-22406-CIV, 2018 WL 8576509 (S.D. Fla. Apr. 17, 2018) ....................................7

*McBride v. Boughton*,
   20 Cal. Rptr. 3d 115 (Cal. Ct. App. 2004) ........................................................................11

*MH Pillars Ltd. v. Realini*,
   No. 15-CV-1383, 2017 WL 916414 (N.D. Cal. Mar. 8, 2017) ....................................16, 17

*Miller v. Chase Home Fin., LLC*,
   677 F.3d 1113 (11th Cir. 2012) ..........................................................................................7

*Nat'l Alcoholism Programs/Cooper City, Fla., Inc. v. Palm Springs Hosp. Emp.*
*Benefit Plan*,
   825 F. Supp. 299 (S.D. Fla. 1993) .....................................................................................20

*Ocean Commc'ns, Inc. v. Bubeck*,
    956 So. 2d 1222 (Fla. Dist. Ct. App. 2007) ...........................................................11

*Patriot Sci. Corp. v. Korodi*,
    504 F. Supp. 2d 952 (S.D. Cal. 2007) ...................................................................10

*Picktown Foods, LLC v. Tim Hortons USA, Inc.*,
    No. 17-21072-CIV, 2017 WL 9854073 (S.D. Fla. Nov. 8, 2017) ...........................5

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
    842 So. 2d 773 (Fla. 2003) ...................................................................................19

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
    167 Cal. Rptr. 3d 832 (Cal. Ct. App. 2014) .........................................................15

*Ritterman v. Lexington Ins. Co.*,
    No. 18-61239-CIV, 2018 WL 7252902 (S.D. Fla. Dec. 3, 2018) ...........................8

*Rodriguez v. Recovery Performance & Marine, LLC*,
    38 So. 3d 178 (Fla. Dist. Ct. App. 2010) ..............................................................20

*Rubenstein v. The Gap, Inc.*,
    222 Cal. Rptr. 3d 397 (Cal. Ct. App. 2017) .........................................................16

*SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*,
    600 F.3d 1334 (11th Cir. 2010) ............................................................................14

*Shotz v. Cates*,
    256 F.3d 1077 (11th Cir. 2001) ..............................................................................9

*Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    295 F.R.D. 540 (S.D. Fla. 2013) ...........................................................................14

*Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*,
    623 F.3d 1371 (11th Cir. 2010) ..............................................................................4

*State Farm Mut. Auto. Ins. Co. v. Perf. Ortho. & Neuro., LLC*,
    278 F. Supp. 3d 1307 (S.D. Fla. 2017) ...................................................................7

*Stewart Agency, Inc. v. Arrigo Enters., Inc.*,
    266 So. 3d 207 (Fla. Dist. Ct. App. 2019) ...........................................................19

*Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*,
    850 So. 2d 536 (Fla. Dist. Ct. App. 2003) ...........................................................10

*Tiller v. State Farm Mut. Auto. Ins. Co.*,
    549 F. App'x 849 (11th Cir. 2013) .........................................................................8

*Town of Chester, NY v. Laroe Estates, Inc.*,
    137 S. Ct. 1645 (2017) ..................................................................................7

*Tyler v. Children's Home Soc'y*,
    35 Cal. Rptr. 2d 291 (Cal. Ct. App. 1994) ..............................................10

*Virgilio v. Ryland Grp., Inc.*,
    680 F.3d 1329 (11th Cir. 2012) ...............................................................6

*W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*,
    728 So. 2d 297 (Fla. Dist. Ct. App. 1999) ........................................11, 12

*Walsky v. Monel, Inc.*,
    No. 12-cv-23031, 2012 WL 4338868 (S.D. Fla. Sept. 20, 2012) ...........7

*In re Webkinz Antitrust Litig.*,
    695 F. Supp. 2d 987 (N.D. Cal. 2010) ....................................................17

*Webster v. Royal Caribbean Cruises, Ltd.*,
    124 F. Supp. 2d 1317 (S.D. Fla. 2000) ...................................................12

*Wilson v. Volkswagen Grp. of Am., Inc.*,
    No. 17-23033-CIV, 2018 WL 4623539 (S.D. Fla. Sept. 26, 2018) ........7

*Worldvision Enters., Inc. v. ABC, Inc.*,
    191 Cal. Rptr. 148 (Cal. Ct. App. 1983) ................................................11

*XP Glob., Inc. v. AVM, L.P.*,
    No. 16-CV-80905, 2016 WL 4987618 (S.D. Fla. Sept. 19, 2016) .........10

*Zhang v. Superior Court*,
    304 P.3d 163 (Cal. 2013) .................................................................18, 19

## STATUTES

Cal. Bus. & Prof. Code § 17200 .....................................................................17, 18

Cal. Bus. & Prof. Code § 17203 ...........................................................................18

Cal. Civ. Code § 1573 ...........................................................................................10

## RULES

Fed. R. Civ. P. 8 ......................................................................................................7

Fed. R. Civ. P. 9(b) .................................................................................................7

Fed. R. Civ. P. 12(b)(1) ...........................................................................................1

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 4, 6, 12

## OTHER AUTHORITIES

Tom Warren, *Apple extends its bug bounty program to cover macOS with $1 million in rewards*, The Verge (Aug. 8, 2019), https://www.theverge.com/2019/8/8/20756638/apple-macos-security-bug-bounty-rewards-program.............................................................................................5

Plaintiff Apple Inc. ("Apple") respectfully moves, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and for the reasons set forth in the memorandum of law below, to dismiss Defendant Corellium, LLC's first through tenth counterclaims in its Answer, Affirmative Defenses, and Counterclaims to Apple's Second Amended Complaint (ECF No. 599). This motion is materially identical to Apple's unresolved January 27, 2020 motion to dismiss (ECF No. 99).

## INTRODUCTION

This is a simple case of blatant and widespread copyright infringement by defendant Corellium, LLC ("Corellium"). Corellium has built a business out of copying and selling access to unauthorized, lightly modified versions of Apple's proprietary operating system ("iOS"), along with related software and images, for its own financial profit. Second Am. Compl. (ECF No. 589) ¶¶ 25–44. Incredibly enough, Corellium does not deny any of the dispositive facts. *See, e.g.*, ECF No. 599 at 6–7 (asserting Corellium does not "*merely* replicate Apple's products").[1] And how could it? The very purpose of Corellium's product is the creation of exact digital replicas of Apple's iOS, iTunes, and graphical user interface elements ("GUI Elements"), which Corellium makes available through both a web-based platform and private on-premises installations for its own wealthy customers. ECF No. 589 ¶ 25. To be clear, Corellium's business is copying and selling unauthorized access to Apple's copyrighted works. It does so indiscriminately, to anyone who can pony up whatever Corellium charges, without regard to whether its customers are well-intentioned or maliciously motivated. *Id.* ¶¶ 34–43.

With no meaningful defense to the merits of Apple's claims, Corellium has countered by accusing Apple of failing to pay it certain money it contends Apple owes pursuant to the Apple Security Bounty Program, a program under which Apple pays "bounties" to security researchers who report software bugs. Importantly, even if what Corellium has said here was true (which it is not), these facts would have no bearing on Apple's offensive Complaint. It is entirely possible to participate in Apple's Security Bounty Program, and many people do so, without selling access to

---

[1] Emphasis added, internal quotations and citations omitted throughout unless otherwise stated.

Apple's copyrighted works for profit, as Corellium does.

But regardless, Corellium has now filed counterclaims contending that it submitted seven bugs under that program, and that Apple wrongly failed to pay, resulting in $300,000 owed to Corellium. *See, e.g.*, ECF No. 599 at 39–40 (Counterclaims ¶¶ 48–59). This *should* be pleaded as a single (non-meritorious) claim for breach of contract. Instead, Corellium initially pleaded it as quantum meruit and unfair competition under California law—then, when faced with a motion to dismiss showing the claims were not and could not be pleaded under such theories, doubled down and now has a whopping *twelve* claims, all based on the same alleged failure to pay for the same seven "bugs." Such "shotgun" pleadings are inappropriate and disfavored in this Circuit. Moreover, the overwhelming majority of Corellium's claims—ten out of twelve—fail as a matter of black-letter law.

As an initial matter, Corellium seeks declaratory and injunctive relief in numerous claims, both under the Declaratory Judgment Act and under various state-law provisions. Corellium has failed, however, to include allegations establishing the "irreducible minimum" Article III standing requirement for such relief—that Corellium faces "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Access Now, Inc. v. S. Fla. Stadium Corp.*, 161 F. Supp. 2d 1357, 1364 (S.D. Fla. 2001) (emphasis in original). Corellium's claims under the Declaratory Judgment Act, along with its claims for injunctive relief under California and Florida's respective unfair competition laws, must thus be dismissed. Corellium's other non-contract claims fare no better. Corellium's claims for constructive fraud are deficient because Corellium's allegations do not establish the requisite fiduciary relationship between the parties. Corellium's quantum meruit claims fail under California and Florida law because Corellium's allegations establish that there is an express agreement governing the dispute before the Court, and such claims cannot be pursued in the face of an actual agreement between the parties. And Corellium's claims for unfair competition under California and Florida law are not viable for multiple reasons, all of which are the result of the same underlying problem—those laws are designed to protect consumers and competitors from anticompetitive, unfair, and deceptive practices that involve

2

consumers; they are not designed or intended to address commercial disputes of the sort that is at issue here.

In short, Corellium's only counterclaims that are not legally infirm are those in which it has pleaded its case as a breach of contract—which is in substance all that Corellium is actually alleging. Those contract counts should go forward past the pleadings stage, at which point Apple will demonstrate they have no merit in fact. The rest should be dismissed now.

## BACKGROUND

### A.   Procedural History.

Apple filed this lawsuit against Corellium on August 15, 2019. In its complaint, Apple alleges that Corellium's entire business is based on infringing copyrights central to some of Apple's most important products—the iOS operating system and GUI Elements that power Apple's iPhone and related mobile devices. ECF No. 1. Corellium answered the complaint on October 28, 2019, and brought two counterclaims based on Apple's alleged failure to pay monies owed under Apple's Security Bounty Program. ECF No. 41. Apple moved to dismiss those counterclaims, and Corellium amended its answer, turning two claims into twelve—all based on the same alleged failure to pay for seven software "bugs" submitted in connection with Apple's Security Bounty Program. ECF No. 48. Thereafter, after Corellium admitted in its discovery responses to violating a portion of the Digital Millennium Copyright Act ("DMCA") by trafficking in a product designed to circumvent Apple's security measures, Apple added a claim under that Act as well. ECF No. 56 ¶¶ 71–77. Corellium answered on January 10, 2020, asserting the same twelve counterclaims. ECF No. 64 at 28–57. Apple later amended its complaint solely to remove 5 of 22 copyrighted works and Corellium filed a virtually identical answer. ECF Nos. 589, 599.

While Corellium denies infringing Apple's works and trafficking in technology intended to circumvent measures that control access to Apple's works (in boilerplate fashion, *see* ECF No. 599 at 16–20), its answer acknowledges that its product, which it sells for profit, "utilizes . . . Apple's technology," *id.* at 6, and permits users to "execut[e] iOS on different [non-Apple] hardware," *id*. at 7. Corellium also acknowledges that its product competes directly with Apple's

own security products.  *Id.* at 11–13.  Its principal defense appears to be its assertion that its admittedly derivative product, which it admits competes with Apple's, and which allows purchasers to copy, display, modify, and use *identical* versions of Apple's copyrighted works, without consent from Apple, is somehow so "transformative" that it does not infringe.  *Id.* at 3–7.

Separately, Corellium brings twelve counterclaims based on Apple's alleged failure to pay monies owed under its Security Bounty Program, in which Corellium alleges it is a participant. *Id.* at 29–57 (Counterclaims ¶¶ 5–175).

### B.    Apple Security Bounty Program.

The Apple Security Bounty Program is a "program to reward the contributions of external researchers who help to identify ways that Apple can further strengthen the security" of Apple's products.  Apple Security Bounty Program Policy, Ex. B at 1.[2]  Apple created this program to incentivize security researchers to tell Apple about bugs in iOS that they have found so that Apple can fix them.  This program is just one of the many things Apple does to encourage good-faith security research and protect its customers.

The Apple Security Bounty Program is a contractual arrangement.  As Corellium acknowledged in its original Answer and Counterclaims, and thus cannot dispute now, participants in the program must create an Apple developer account (ECF No. 42 at 23–24 (Counterclaims ¶¶ 10, 17)) and, in so doing, agree to the Apple Developer Agreement.  Participants in the Apple Security Bounty Program—like Corellium founder Chris Wade—must also agree to the Apple Security Bounty Program Policy, which is incorporated by reference into the Developer Agreement.  *See* Ex. A ¶ 9;[3] Ex. B; *see also* ECF No. 599 at 31 (Counterclaims ¶¶ 19–20) (restating

---

[2] Corellium acknowledges the Apple Security Bounty Program "is governed by" the Apple Security Bounty Program Policy.  *See, e.g.*, ECF No. 599 at 29 (Counterclaim ¶ 10).  Because the Apple Security Bounty Program Policy, which is part of the Apple Developer Agreement, is central to Corellium's counterclaims and its authenticity is not challenged, consideration of that express agreement as part of Apple's Rule 12(b)(6) motion is appropriate.  *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

[3] The Apple Developer Agreement states the following regarding additional terms, such as the

portions of the Apple Security Bounty Program Policy). While Corellium modified its allegations—after seeing Apple's first motion to dismiss (ECF No. 44)—to state that "the policy is a proposed course of action—not a contract or agreement," ECF No. 599 at 29 (Counterclaims ¶ 10), that naked allegation is belied by the remainder of Corellium's allegations, which repeatedly discuss the "assurance" and "promise" that Apple allegedly breached. *See* Section III, *infra*. And when documents relied on in a complaint "contradict the general and conclusory allegations of the pleading," the documents govern. *Picktown Foods, LLC v. Tim Hortons USA, Inc.*, No. 17-21072-CIV, 2017 WL 9854073, at *6 (S.D. Fla. Nov. 8, 2017).

The Apple Security Bounty Program Policy (the "Policy") sets forth the program's parameters, including what makes a bug eligible for a reward, *see* Ex. B at 1 ("Program Eligibility"); ECF No. 599 at 31 (Counterclaims ¶ 19) (listing a number of the same factors), and the maximum potential value for reporting particular types of bugs, *see* Ex. B at 1 ("Payments"); ECF No. 599 at 34, 40, 42, 51, 53 (Counterclaims ¶¶ 29, 57, 69, 132, 145) (incorporating the Policy's valuation measure by reference). The Policy also explains Apple's role in adjudicating whether and when reward payments for bug submissions will be made, and explains that the program is limited to bugs related to iOS and iCloud only; as a result, bugs related to other Apple operating systems, including macOS (Apple's computer operating system), are ineligible.[4] *See* Ex. B at 1 ("Program Eligibility"); ECF No. 599 at 31 (Counterclaims ¶ 19) (acknowledging that the bug must be "present in the most recent version of iOS" to be eligible).

---

Apple Security Bounty Program Policy: "You will be responsible for reviewing and becoming familiar with any such modifications (including new terms, updates, revisions, supplements, modifications, and additional rules, policies, terms and conditions) ("Additional Terms") communicated to you by Apple. All Additional Terms are hereby incorporated into this Agreement by this reference and your continued use of the Site will indicate your acceptance of any Additional Terms." Ex. A ¶ 9 (emphasis omitted).

[4] The foregoing refers to the Apple Security Bounty Program in place at the times relevant to this dispute. On August 8, 2019, Apple announced that it will be expanding its Apple Security Bounty Program to cover additional Apple operating systems, including macOS, in the future. *See* Tom Warren, *Apple extends its bug bounty program to cover macOS with $1 million in rewards*, The Verge (Aug. 8, 2019), https://www.theverge.com/2019/8/8/20756638/apple-macos-security-bug-bounty-rewards-program.

### C.     Corellium's Claims Against Apple.

Corellium has now asserted twelve counterclaims against Apple: two claims under the Declaratory Judgment Act (Counts I and II); two claims for constructive fraud under California and Florida law, respectively (Counts III and IV); three claims for a violation of California Business and Professions Code § 17200, *et seq.* (Counts V, VI, and X); one claim under Florida's Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201, *et seq.* (Count VII); two claims for unjust enrichment/quantum meruit, under California and Florida law, respectively (Counts VIII and IX); and two claims, in the alternative, for breach of contract under California and Florida law, respectively (Counts XII and XIII).  All but the declaratory judgment claims allege that Corellium submitted bugs to Apple that should have resulted in compensation under the Policy, but for which Apple has not paid compensation.  ECF No. 599 at 39–57 (Counterclaims ¶¶ 48–175).  The declaratory judgment claims, in turn, seek to have the Court declare that the Policy is not a binding agreement between Corellium and Apple.  *Id.* at 37–38 (Counterclaims ¶¶ 38–47).

While the Court must accept Corellium's allegations as true for the purpose of evaluating a motion under Rule 12(b)(6), it bears mention that in reality, the claims are factually false.  Each of the five bugs submitted prior to the filing of this lawsuit was ineligible for compensation under the terms of the Apple Security Bounty Program.  And except in the two contract claims (which are pled in the alternative and not incorporated into counts subject to this motion), Corellium does not allege otherwise.  As for the remaining two bugs, Apple has since determined that they are eligible for monetary rewards.

### ARGUMENT

Under Federal Rule of Civil Procedure 12(b)(6), if "the facts as pled" in a party's claims "do not state a claim for relief that is plausible on its face, the count must be dismissed."  *Virgilio v. Ryland Grp., Inc*., 680 F.3d 1329, 1334 (11th Cir. 2012).  And when the facts as pled do not establish an entitlement to relief as a matter of law, then an entitlement to relief is not plausible on the face of the pleading and dismissal is required.  *See, e.g.*, *Miller v. Chase Home Fin., LLC*, 677

F.3d 1113, 1117 (11th Cir. 2012) (affirming dismissal where claim "fail[ed] as a matter of law").

In addition, Corellium's claims for constructive fraud, unjust enrichment/quantum meruit, and unfair and deceptive trade practices under Florida and California law are all based on Corellium's allegations that Apple misled Corellium by promising to pay for bug submissions while having "no intent to pay."  ECF No. 599 at 29–30 (Counterclaims ¶¶ 6–8, 13).  As a result, the claims sound in fraud and are thus subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *See State Farm Mut. Auto. Ins. Co. v. Perf. Ortho. & Neuro., LLC*, 278 F. Supp. 3d 1307, 1328 (S.D. Fla. 2017) ("[W]here the gravamen of the claim sounds in fraud, as here, the heightened pleading standard of Rule 9(b) applies.").[5]  But even if Rule 9(b) did not apply, Corellium's non-contract claims still fail, because they do not satisfy even the more liberal pleading standard under Rule 8.

## I.   CORELLIUM LACKS STANDING TO PURSUE DECLARATORY OR INJUNCTIVE RELIEF.

A party "must demonstrate [Article III] standing for each claim he seeks to press *and* for each form of relief that is sought."  *Town of Chester, NY v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017).  To establish standing to pursue declaratory or injunctive relief, a party must allege facts showing a "substantial likelihood that he will suffer injury in the future."  *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co*., 925 F.3d 1205, 1210–11 (11th Cir. 2019); *Malowney v. FDIC*, 193 F.3d 1342, 1347 (11th Cir. 1999).  Such a party must therefore allege and ultimately prove "real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future*

---

[5] *See Lavigne v. Herbalife, LTD*, No. 18-cv-07480, 2019 WL 6721619, at *12 (C.D. Cal. Oct. 22, 2019) (Florida and California unjust enrichment claims); *Jackson v. Calone*, No. 2:16-cv-00891, 2017 WL 4844483, at *9 (E.D. Cal. Oct. 26, 2017) (California constructive fraud); *Wilson v. Volkswagen Grp. of Am., Inc.*, No. 17-23033-CIV, 2018 WL 4623539, at *11–12 (S.D. Fla. Sept. 26, 2018) (California UCL).  District courts in Florida disagree over whether Rule 9(b) applies to Florida constructive fraud claims and claims under the Florida Deceptive and Unfair Trade Practices Act.  *See Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1225–26 (S.D. Fla. 2017); *compare Mattera v. Nusbaum*, No. 17-22406-CIV, 2018 WL 8576509, at *3 (S.D. Fla. Apr. 17, 2018), *with Walsky v. Monel, Inc.*, No. 12-cv-23031, 2012 WL 4338868, at *4 (S.D. Fla. Sept. 20, 2012).  Because Corellium's claims fail regardless of whether they are analyzed under Rule 8 or Rule 9(b), this Court need not decide which standard applies.

injury." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013); *see also A&M Gerber*, 925 F.3d at 1210–11. Corellium has made no such factual allegations here.

### A.    Corellium's Declaratory Judgment Act Claims Must Be Dismissed.

"In order to demonstrate that there is a case or controversy that satisfies Article III's standing requirement when a [claimant] is seeking declaratory relief—as opposed to seeking damages for past harm—the [claimant] must allege facts from which it appears that there is a substantial likelihood that he will suffer injury in the future." *A&M Gerber*, 925 F.3d at 1210–11. Corellium entirely fails to allege such likelihood of future injury in connection with either of its declaratory relief claims. Rather, the basis of these claims is alleged *past* injury—Apple's alleged failure to pay Corellium for its bug submissions. ECF No. 599 at 38 (Counterclaims ¶¶ 44, 47).

This is insufficient to establish standing under the Declaratory Judgment Act. *See, e.g.*, *Big Five Props., Inc. v. Certain Underwriters at Lloyd's, London*, No. 12-23916-CIV, 2013 WL 12091814, at *5–6 (S.D. Fla. Feb. 27, 2013). Corellium does not allege that, in the absence of declaratory relief, it will have a duty under the Policy or be subject to liability because of the Policy. It does not even allege that it intends to submit bugs to Apple under the Security Bounty Program in the future. Rather, Corellium's declaratory relief claims are a bald attempt to plead around Apple's original motion to dismiss Corellium's quantum meruit claim, which Apple moved to dismiss as barred by express contract. But the presence or absence of a contract covering *past* interactions between the parties is properly addressed in connection with Corellium's contract and quasi-contract claims. *See, e.g.*, *Tiller v. State Farm Mut. Auto. Ins. Co.*, 549 F. App'x 849, 855 (11th Cir. 2013) (no standing to seek declaratory relief where dispute focused on whether plaintiff had been fully compensated under contract and misled by defendant); *Ritterman v. Lexington Ins. Co.*, No. 18-61239-CIV, 2018 WL 7252902, at *2 (S.D. Fla. Dec. 3, 2018). It does not—and cannot—support two *separate* claims for declaratory relief that allege no future controversy whatsoever.

**B.      Corellium's Claims for Injunctive Relief Must Be Dismissed.**

Corellium's failure to include any factual allegations demonstrating a threat of future injury is also fatal to its claims for injunctive relief under California's Unfair Competition Law ("UCL") and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").   Under both Acts, Corellium purportedly seeks an injunction preventing Apple from engaging in the "unlawful," "wrongful," "unfair," "anticompetitive," or "deceptive" acts alleged in the counterclaims.  *See* ECF No. 599 at 44, 47, 50, 55 (Counterclaims ¶¶ 84, 103, 122, 159).

Here, too, however, Corellium lacks Article III standing to pursue injunctive relief under these statutes because it fails to allege any possibility of future threatened harm.  "[A]lthough the FDUTPA allows a [claimant] to pursue injunctive relief even where the individual [claimant] will not benefit from an injunction, it cannot supplant Constitutional standing requirements.  Article III of the Constitution requires that a [claimant] seeking injunctive relief allege a threat of future harm."  *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-24363-CIV, 2018 WL 4932871, at *4 (S.D. Fla. Apr. 23, 2018).  Corellium does not allege such a threat, other than in the most conclusory of terms.  *See* ECF No. 599 at 44, 47, 49 (Counterclaims ¶¶ 82, 102, 120) ("Corellium has sustained and will continue to sustain irreparable injury for which no adequate remedy at law exists.").  This fails entirely to concretely allege a threat of future harm sufficient to sustain Article III standing.  *See Marjam*, 2018 WL 49232871, at *4.  Accordingly, Corellium's claims for injunctive relief under the UCL and the FDUTPA must be dismissed.  *See id.*; *Lepkowski v. CamelBak Prods.*, *LLC*, No. 19-cv-04598, 2019 WL 6771785, at *3–4 (N.D. Cal. Dec. 12, 2019); *see also Shotz v. Cates*, 256 F.3d 1077, 1081–82 (11th Cir. 2001).[6]  Moreover, as explained further below, because Corellium has failed to state a claim for any other remedies available under those Acts, the claims must be dismissed in their entirety.

---

[6] A few courts have softened Article III's standing requirements in consumer protection lawsuits involving false advertising of consumer goods.  *See, e.g.*, *Cox v. Porsche Fin. Servs., Inc.*, 330 F.R.D. 322, 336 (S.D. Fla. 2019).  Even to the extent such cases are reconcilable with constitutional standing requirements (though it is unclear how they would be), these cases have no application to non-consumer cases such as this one.

9

## II.    CORELLIUM FAILS TO STATE A CLAIM FOR CONSTRUCTIVE FRAUD.

In addition to lacking Article III standing, Corellium's non-contract claims also fail as a matter of black-letter law.

First, Corellium's constructive fraud claims (Counts III and IV) fail because Corellium lacks the fiduciary relationship required for such claims under both California and Florida law.  A claim for constructive fraud, whether brought under California or Florida law, requires a "fiduciary or confidential relationship" that gives rise to a duty that is subsequently breached.  *XP Glob., Inc. v. AVM, L.P.*, No. 16-CV-80905, 2016 WL 4987618, at *8 (S.D. Fla. Sept. 19, 2016); *see Patriot Sci. Corp. v. Korodi*, 504 F. Supp. 2d 952, 966 (S.D. Cal. 2007) (applying Cal. Civ. Code § 1573). To establish such a relationship, a party must "allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 540 (Fla. Dist. Ct. App. 2003); *see also Tyler v. Children's Home Soc'y*, 35 Cal. Rptr. 2d 291, 312–13 (Cal. Ct. App. 1994).  As a result, "[t]he fact that one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party." *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005); *see also Davies v. Krasna*, 535 P.2d 1161, 1166 (Cal. 1975) ("A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind.").

Here, Corellium's allegations do not establish any such relationship.  Corellium never alleges that Apple recognized, accepted, or undertook a duty to advise, counsel, or protect Corellium.  Rather, it asserts only that it voluntarily "became a participant in Apple's bug bounty program," ECF No. 599 at 39 (Counterclaims ¶ 50), and that, in so doing, "Corellium placed its trust and confidence in Apple," *id.* (Counterclaims ¶ 51).  This allegation is insufficient, as a matter of law, to plead the kind of close, confidential, fiduciary relationship required for a constructive fraud claim.  Corellium has done nothing more than allege that the parties—whom Corellium contends are competitors—engaged at arm's length, and that Corellium's expectations were not

met.  Such allegations do not state a claim for constructive fraud.  *See Am. Honda*, 390 F. Supp. 2d at 1179–80 ("Constructive fraud will not lie where the parties are dealing at arms length because there is no duty imposed on either party to protect or benefit the other."); *Worldvision Enters., Inc. v. ABC, Inc.*, 191 Cal. Rptr. 148, 151 (Cal. Ct. App. 1983) ("The mere fact that in the course of their business relationships the parties reposed trust and confidence in each other does not impose any corresponding fiduciary duty in the absence of an act creating or establishing a fiduciary relationship known to law.").  Corellium's constructive fraud claims must be dismissed.

## III.    CORELLIUM FAILS TO STATE A CLAIM FOR QUANTUM MERUIT.

Corellium's quantum meruit claims—originally brought under California law, and now pleaded under both California and Florida law—are likewise fatally flawed.  The most obvious flaw—and the one on which Apple now moves for dismissal—is that the claim is based on a subject governed by an express agreement between Corellium and Apple.[7]

"Quantum meruit is an equitable theory which supplies, by implication and in furtherance of equity, implicitly missing contractual terms." *Hedging Concepts, Inc. v. First All. Mortg. Co.*, 49 Cal. Rptr. 2d 191, 197 (Cal. Ct. App. 1996); *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 305 (Fla. Dist. Ct. App. 1999) (same under Florida law).  As a result, a claim for quantum meruit does not, "as a matter of law, . . . lie where, as here, express binding agreements exist and define the parties' rights." *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 114 Cal. Rptr. 2d 109, 125 (Cal. Ct. App. 2001); *see Fulton v. Brancato*, 189 So. 3d 967, 969 (Fla. Dist. Ct. App. 2016) ("[A] plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists."); *Ocean Commc'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. Dist. Ct. App. 2007).  California and Florida courts have repeatedly recognized that, "[w]hen parties have an actual contract covering a

---

[7] Although Corellium titles its claim "Unjust Enrichment/Quantum Meruit," California courts refer to such a claim as one for quantum meruit or quasi-contract, in which "the law will imply a contract (or rather, a quasi-contract), without regard to the parties' intent, in order to avoid unjust enrichment." *McBride v. Boughton*, 20 Cal. Rptr. 3d 115, 122 (Cal. Ct. App. 2004); *see id.* at 121 ("Unjust enrichment is not a cause of action, however, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies."); *see also id.* at 122 n.6.

subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." *Hedging Concepts*, 49 Cal. Rptr. 2d at 198; *see also Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 330 (Cal. Ct. App. 2012) ("A plaintiff may not, however, pursue or recover on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter."); *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (Cal. Ct. App. 2010) (finding that imposition of quasi-contract to avoid unjust enrichment "does not lie where the parties have an enforceable express contract"); *Cal. Med.*, 114 Cal. Rptr. 2d at 126 (same); *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000) (dismissing unjust enrichment claim when defendant admitted an express contract existed); *First Data Res., Inc. v. Safecard Servs., Inc.*, 574 So. 2d 311, 311 (Fla. Dist. Ct. App. 1991) ("[B]reach of contract and quantum meruit are mutually exclusive remedies."). That is because "[t]he whole point of quantum meruit recovery is to compensate plaintiffs who have provided a benefit to defendants but who do *not* have a contract—express or implied—with those defendants." *In re De Laurentiis Entm't Grp. Inc.*, 963 F.2d 1269, 1273 (9th Cir. 1992) (interpreting California law); *W.R. Townsend*, 728 So. 2d at 305.

Corellium's quantum meruit claims are based on its theory that Apple agreed to pay Corellium over $300,000 for its submission of seven bugs through Apple's Security Bounty Program. ECF No. 599 at 50–53 (Counterclaims ¶¶ 123–47). The problem for Corellium is that the agreement it alleges—that is, the very agreement on which Corellium's claims are based, and which is incorporated by reference throughout the counterclaims—is an express agreement that is memorialized in the Apple Developer Agreement (Ex. A), and the Apple Security Bounty Program Policy (Ex. B), which is incorporated into the Apple Developer Agreement, *see* Ex. A ¶ 9. While courts considering a Rule 12(b)(6) motion ordinarily do not consider documents beyond the pleadings, courts do consider such documents when they are "central" to a party's claim and their authenticity is not in question. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see, e.g.*, *Gross v. White*, 340 F. App'x 527, 534 (11th Cir. 2009) ("Even though the documents were not physically attached to the second amended

12

complaint, they were incorporated by reference into it, and the district court did not err in considering them.").

Here, Corellium's agreement with Apple is not only referenced throughout Corellium's answer and counterclaims; it also forms the very basis of those claims. Corellium's quantum meruit claims (as well as its UCL and FDUTPA claims) are premised on the alleged "promises" and "assurance" Apple gave to Corellium regarding payment for submissions to the Apple Security Bounty Program. *See* ECF No. 599 at 1, 30 (Counterclaims ¶ 13). That is why, at the outset, Corellium alleges "Apple approved of Corellium participating in its invitation-only Security Bounty Program ('bug bounty program') with an *assurance* that Apple would pay for software bugs identified by Corellium." *Id.* at 1. And it is why Corellium alleges that, "[i]n the Security Bounty Program Policy, Apple *promises* it 'will pay cash rewards for security vulnerabilities found in specific Apple services and products, to researchers who abide by the guidelines' of the program." *Id.* at 30 (Counterclaims ¶ 13). The promise that Apple is alleged to have made to Corellium, and that Corellium now relies on, is the agreement codified in the Apple Developer Agreement (Ex. A) and the Policy incorporated therein (Ex. B).

Lest there be any doubt about the centrality of the parties' express agreement to Corellium's claims, Corellium specifically relies on, and quotes from, that agreement throughout. For example, Corellium states "[i]n order for a security researcher to receive payment for a submitted bug, the bug must be: (1) present in the most recent version of iOS; (2) accompanied by a proof of concept; and (3) the first external report of the bug." ECF No. 599 at 31 (Counterclaims ¶ 19). Those requirements are taken directly from the Apple Security Bounty Policy, which states that, for bugs to be eligible for a reward, they must meet a number of requirements, including being (1) "[p]resent in the most recent shipping version of iOS," (2) "[a]ccompanied by a proof of concept," and (3) the "[f]irst external report of a particular issue." Ex. B at 1 ("Program Eligibility"). In paragraphs 29, 57, 69, 132, and 145 of its counterclaims, Corellium again relies on this agreement, stating that, "[u]nder the guidelines of Apple's bug bounty program," the total "value of the[] bugs" Corellium submitted and thus the amount Apple purportedly promised to pay

13

"is, at a minimum, $300,000." ECF No. 599 at 34, 40, 42, 51, 53 (Counterclaims ¶¶ 29, 57, 69, 132, 145). Those valuation "guidelines" are likewise contained in the Apple Security Bounty Program Policy. *See* Ex. B at 1.

Because Corellium relies throughout its counterclaims on its express agreement with Apple, and repeatedly references and relies on the terms of that agreement, consideration of the parties' agreement, appended hereto in Exhibits A and B, is proper. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337–38 (11th Cir. 2010); *see, e.g.*, *Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 295 F.R.D. 540, 546 n.4 (S.D. Fla. 2013) ("In resolving Defendants' Motions [to dismiss], the Court may consider the documents incorporated by reference into Space Coast's Complaint (even though they are not physically attached to the Complaint) and the documents attached to the Motions."); *accord Baron v. Acasta Capital*, No. 16-CV-25118, 2017 WL 3084416, at *1 n.2 (S.D. Fla. July 19, 2017). And consideration of the parties' express agreement makes clear that Corellium's quantum meruit claims are governed by that agreement and cannot stand.

Even without reference to the documents embodying the parties' express agreement, however, Corellium's allegations alone establish that its quantum meruit claims are, in fact, based on an actual agreement between the parties, and is a contract claim rather than quasi-contract claims. *See, e.g.*, ECF No. 599 at 31 (Counterclaims ¶ 19) (detailing the requirements for bug rewards); *id.* at 40 (Counterclaims ¶ 57) (discussing alleged valuation of bugs "[u]nder the guidelines of Apple's Security Bounty Program Policy"). The written agreement in Exhibits A and B simply confirms that. And it is well settled that a claim for quantum meruit cannot "lie where, as here, express binding agreements exist and define the parties' rights" with respect to the "subject matter" of the claim. *Cal. Med.*, 114 Cal. Rptr. 2d at 125–26; *Corn v. Greco*, 694 So. 2d 833, 834 (Fla. Dist. Ct. App. 1997) ("[Quantum meruit] cannot be maintained, however, when the rights of the parties are described in a written contract."). This is because the very purpose of such a claim is to supply *missing* terms to govern an arrangement between two parties. Where there are express terms governing that same arrangement, a court supplying purportedly missing terms risks

14

a ruling that will conflict with the terms that "the parties have freely, fairly and voluntarily bargained for." *Hedging Concepts*, 49 Cal. Rptr. 2d at 197; *see Cross v. Strader Const. Corp.*, 768 So. 2d 465, 466 (Fla. Dist. Ct. App. 2000) ("Quantum meruit is the antithesis of matters contracted for."); *First Data Res.*, 574 So. 2d at 311.  Because Corellium has alleged, and the incorporated documents show, that the parties have an express agreement covering the subject matter, its unjust enrichment/quantum meruit claims, Counts VIII and IX, must be dismissed without leave to amend.  *See Hedging Concepts*, 49 Cal. Rptr. 2d at 197; *Corn*, 694 So. 2d at 834.

**IV.     CORELLIUM FAILS TO STATE A CLAIM UNDER CALIFORNIA'S UCL.**

Corellium's three claims—which are really a single claim—under California's UCL are also legally defective.  The UCL "is written in the disjunctive [and] establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 167 Cal. Rptr. 3d 832, 855 (Cal. Ct. App. 2014).  Here, Corellium purports to bring two claims under the "unlawful" prong and one claim under the "unfair" prong, all arising from Apple's alleged failure to pay for the same seven bugs.  All fail as a matter of law.

**A.     Corellium's UCL Claims For Unlawful Business Practices Fail Because Its Constructive Fraud And Quantum Meruit Claims Fail.**

By proscribing "any unlawful" business act or practice, the UCL "borrows" rules set out in other laws and makes violations of those rules independently actionable.  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539–40 (Cal. 1999).  The California legislature's "overarching" concern in enacting the UCL was "to provide a streamlined procedure for the prevention of ongoing or threatened acts of unfair competition." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 948 (Cal. 2003).  The UCL "is not an all-purpose substitute for a tort or contract action." *Id*.

Corellium asserts, as the bases for its "unlawful business practices" claims under the UCL, that Apple engaged in unlawful conduct by failing to pay it under either a constructive fraud or a quantum meruit theory under California Law.  ECF No. 599 at 44, 54 (Counterclaims ¶¶ 83, 158).  As detailed below, Corellium's claims fail under well-established law applying the UCL.  But its

15

claims also fail for the even more basic reason that they are wholly derivative of Corellium's failed constructive fraud and quantum meruit claims.  When, as here, the predicate offenses for a UCL claim fail, so too must the UCL claim itself.  *See Graham v. Bank of Am., N.A.*, 172 Cal. Rptr. 3d 218, 231–32 (Cal. Ct. App. 2014); *see, e.g.*, *Rubenstein v. The Gap, Inc.*, 222 Cal. Rptr. 3d 397, 406 (Cal. Ct. App. 2017) (UCL claim failed because statutory predicate claims failed); *Berryman v. Merit Prop. Mgmt., Inc.*, 62 Cal. Rptr. 3d 177, 185–86 (Cal. Ct. App. 2007) (same); *Lazar v. Hertz Corp.*, 82 Cal. Rptr. 2d 368, 375–76 (Cal. Ct. App. 1999); *Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1205–07 (E.D. Cal. 2013).

### B.      Corellium's UCL Claim For Unfair Business Practices Fails Because It Has Not Alleged A Cognizable Unfair Business Practice.

The UCL focuses on conduct that violates or threatens to violate legal norms in order to effectuate the statute's purpose of protecting consumers and competitors from unfair competition. *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 883 (Cal. 2011).  California courts have further explained that, where a UCL claim is predicated on the allegation of an "unfair business practice," the party pursing the claim must show that the allegedly illegal conduct "is tethered to an[ ] underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law.'" *Graham*, 172 Cal. Rptr. 3d at 233–34; *see also MH Pillars Ltd. v. Realini*, No. 15-CV-1383, 2017 WL 916414, at *10 (N.D. Cal. Mar. 8, 2017) .

Corellium does not allege that Apple engaged in any unfair business practice.  It does not tie its allegation of unfairness to a constitutional, statutory, or regulatory provision.  ECF No. 599 at 29–37, 45–47 (Counterclaims ¶¶ 5–37, 85–103).  And it does not allege that Apple's actions threaten an "incipient violation of an antitrust law." *Id.*  Nor could it.  Corellium's claim is that Apple acted unfairly by failing to pay Corellium as agreed for bugs Corellium submitted to Apple. "That is nothing more than a claim for breach of contract" or quasi-contract, at best. *MH Pillars*, 2017 WL 916414, at *11.  Corellium has "alleged no injury to consumers, and no harm to

competition, and thus, the complaint fails to state a claim for 'unfair' business acts and practices." *Id.*

### C.      Commercial Disputes Are Not Cognizable Under The UCL.

Corellium's UCL claims separately fail because the conduct alleged is not within the scope of the UCL.  "The UCL was enacted to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services."  *Linear Tech. Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 237 (Cal. Ct. App. 2007).  It was not enacted to protect corporate parties that have a commercial dispute.  *See id.*; *see also MH Pillars*, 2017 WL 916414, at *10.  As a result, a "dispute between commercial parties over their economic relationship" does not constitute unfair competition.  *In re ConocoPhillips Co. Serv. Station Rent Contract Litig.*, No. 09-cv-02040, 2011 WL 1399783, at *3 (N.D. Cal. April 13, 2011).  And so a party may not pursue a claim under the UCL where the dispute that gives rise to the purportedly unfair business activity "lacks any connection to the protection of fair competition or the general public."  *MH Pillars*, 2017 WL 916414, at *10.  Thus, where, as here, a UCL action is based on a dispute "not involving either the public in general or individual consumers," a corporate party may not rely on the UCL for the relief it seeks."  *See Linear Tech.*, 61 Cal. Rptr. 3d at 237; *see also Graphic Pallet & Transp., Inc. v. Balboa Capital Corp.*, No. 11-CV-9101, 2012 WL 1952745, at *6 (N.D. Ill. May 30, 2012) ("California courts have refused to allow commercial parties to use § 17200 to resolve disputes over their economic relationships.").

Corellium's dispute with Apple "lacks any connection to the protection of fair competition or the general public."  *MH Pillars*, 2017 WL 916414, at *10.  Rather, Corellium's counterclaims describe a plain-vanilla contract dispute: Corellium alleges Apple agreed to pay it, then failed to do so.  A failure of one corporate entity to pay another entity monies allegedly due is not an "unfair business practice" that threatens fair competition or the general public.  Such a dispute between two business entities, regardless of whether it is classified as a contract claim or a quasi-contract claim, is simply not within the purview of the UCL, as courts have repeatedly held.  *In re ConocoPhillips*, 2011 WL 1399783, at *3; *see also In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d

17

987, 999 (N.D. Cal. 2010) (claim brought under § 17200 by small retailers against a toy distributor "is invalid as it fails to state a connection to the protection of the general public"). As such, Corellium has failed to state a claim under § 17200.

**D.     Corellium's Claim Fails Because It Does Not Allege A Restitutionary Injury.**

Finally, and independent of the foregoing failings, Corellium fails to allege an injury compensable under the UCL and, as explained above, it does not have standing to pursue injunctive relief. *See* Cal. Bus. & Prof. Code § 17203. The UCL provides for only two forms of relief: injunctive relief and restitution. *Id.*[8] Corellium cannot seek injunctive relief. *See* Section I, *supra*. And—despite using the word "restitution"—it does not in fact seek restitution, as that term is used in the UCL. *See* Cal. Bus. & Prof. Code § 17203. To the contrary, Corellium's "restitution" demand is simply a demand for the money damages it contends are due as a result of Apple's alleged failure to pay. Damages, however, are not available under the UCL. *See Clark v. Superior Court*, 235 P.3d 171, 174 (Cal. 2010) (UCL prohibits recovery of damages); *Bank of the West v. Superior Court*, 833 P.2d 545, 552–53 (Cal. 1992) (actual and compensatory damages not available under § 17203); *see also Korea Supply*, 63 P.3d at 945 ("[R]estitution is the only monetary remedy expressly authorized by section 17203."). Moreover, a "court cannot, under the equitable powers of section 17203, award whatever form of monetary relief it believes might deter unfair practices." *Korea Supply*, 63 P.3d at 946.

Restitution is an equitable remedy available to return money or property *wrongfully taken* from a plaintiff, or in which plaintiff *has an ownership interest*. *Id.* at 946–47. While the word "restitution" can have a broad meaning depending on context, "[r]estitution under section 17203 is confined to restoration of any interest in money or property, real or personal, which may have been *acquired* by means of such unfair competition." *Kwikset*, 246 P.3d at 895. "A restitution order against a defendant thus requires both that money or property have been lost by a plaintiff,

---

[8] While Corellium also seeks declaratory relief, declaratory relief is not one of the two remedies authorized by the UCL. *See Korea Supply*, 63 P.3d at 943 ("[U]nder the UCL, prevailing plaintiffs are generally limited to injunctive relief and restitution.").

on the one hand, and that it have been acquired by a defendant, on the other." *Zhang v. Superior Court*, 304 P.3d 163, 168 (Cal. 2013). "[C]ompensatory damages are not recoverable as restitution." *Id.* Corellium, however, does not allege that it gave Apple any money or property that Apple has wrongfully retained. ECF No. 599 at 29–37 (Counterclaims ¶¶ 5–37). Rather, it alleges it provided information pursuant to a promise of payment. *Id.* at 29–34 (Counterclaims ¶¶ 10–15, 18–22, 25–30). That is a claim for *damages*, not restitution, and is not recoverable under the UCL. Because Corellium does not allege any claim for relief that is compensable under the UCL, its claims must be dismissed on this basis as well.

## V.   CORELLIUM FAILS TO STATE A CLAIM UNDER FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT.

Corellium's claim under the FDUTPA suffers from largely the same deficiencies as its claims under the UCL, but even more so because the FDUTPA is narrower in scope than its California counterpart. To state a claim under FDUTPA a plaintiff "must allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). Corellium's claim fails because it has not alleged either a "deceptive or unfair trade practice" or "actual damages" under the Act.

### A.   Corellium Has Not Alleged A Deceptive Act Or Unfair Trade Practice.

An "unfair practice" under the FDUTPA is "one that offends established public policy and one that is immoral, unethical, unscrupulous or substantially *injurious to consumers*." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). A "deceptive act" is also consumer-focused, as it constitutes a "representation, omission, or practice that is likely to mislead the *consumer* acting reasonably in the circumstances, to the *consumer's* detriment." *Id.*; *see Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000). And "[w]hile an entity does not have to be a consumer to bring a FDUTPA claim, it must still prove the elements of the claim, including injury *to a consumer*." *Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 212 (Fla. Dist. Ct. App. 2019). Under the FDUTPA, a consumer "is one who has engaged in the purchase of goods or services." *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1297 (S.D.

Fla. 2014); *see Nat'l Alcoholism Programs/Cooper City, Fla., Inc. v. Palm Springs Hosp. Emp. Benefit Plan*, 825 F. Supp. 299, 302–03 (S.D. Fla. 1993).

Corellium failed to allege that a person or entity that engaged in the purchase of goods or services was injured by Apple.  Corellium's FDUTPA claim (like its other claims) does not involve Apple's sale of goods or services to anyone; rather, Corellium asserts that Apple failed to pay Corellium for information *it* provided to Apple.  As a result, Corellium has not alleged that Apple has engaged in activity that has misled a person or entity that purchased a good or service, nor has Corellium alleged that Apple engaged in a practice that was "injurious" to a person or entity that purchased a good or service.  Corellium has therefore failed to state a claim under the FDUTPA.

**B.    Corellium Has Not Alleged "Actual Damages" Under The Act.**

Corellium's claim for "actual damages" under the Act is equally inapt.  The FDUTPA provides only two forms of relief: (1) injunctive relief (which, as explained above, Corellium cannot seek), and (2) "actual damages," which is "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties."  *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. Dist. Ct. App. 2010).  This definition is based on the Act's intent "to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer."  *Id.*

Corellium does not plead that Apple delivered a product at a lesser market value than promised to a consumer.  Rather, Corellium's counterclaims are all premised on its contention that it was Corellium that provided information to Apple.  Corellium's inability to obtain any relief under the FDUTPA provides an independent basis for dismissing the FDUTPA claim.

## CONCLUSION

For the foregoing reasons, Apple respectfully requests that this Court dismiss Counts I–X of Corellium's counterclaims for failing to state a claim upon which relief can be granted.

Dated: July 24, 2020

Michele D. Johnson*
*michele.johnson@lw.com*
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
(714) 540-1235 / (714) 755-8290 Fax

Sarang Vijay Damle*
*sy.damle@lw.com*
Elana Nightingale Dawson*
*elana.nightingaledawson@lw.com*
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200 / (202) 637-2201 Fax

Andrew M. Gass*
*andrew.gass@lw.com*
Joseph R. Wetzel
*joe.wetzel@lw.corm*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 / (415) 395-8095 Fax

Jessica Stebbins Bina*
*jessica.stebbinsbina@lw.com*
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500 / (424) 653-5501 Fax

Gabriel S. Gross*
*gabe.gross@lw.com*
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 463-2628 / (650) 463-2600 Fax

*Admitted pro hac vice*

Respectfully Submitted,

*s/ Martin B. Goldberg*

Martin B. Goldberg
Florida Bar No. 0827029
*mgoldberg@lashgoldberg.com*
*rdiaz@lashgoldberg.com*
Emily L. Pincow
Florida Bar. No. 1010370
*epincow@lashgoldberg.com*
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL 33131
(305) 347-4040 / (305) 347-4050 Fax

*Attorneys for Plaintiff* APPLE INC.

21