UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil No. 19-81160-cv-Smith/Matthewman

APPLE INC.,

    Plaintiff,

vs.

CORELLIUM, LLC,

    Defendant.
_____/

FILED BY KJZ D.C.
Jul 29, 2020
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANT CORELLIUM, LLC'S *DAUBERT* MOTION TO PRECLUDE
CERTAIN TESTIMONY BY DAVID B. CONNELLY [DEs 454, 468]**

THIS CAUSE is before the Court upon Defendant, Corellium, LLC's ("Corellium") *Daubert* Motion to Preclude Certain Testimony by David B. Connelly ("Motion") [DEs 454, 468[1]]. This matter was referred to the undersigned by the Honorable Rodney Smith, United States District Judge. *See* DE 471. Plaintiff, Apple Inc. ("Apple") filed a response [DE 503,526[2]], and Corellium filed a reply [DEs 543, 560[3]]. The Court held a hearing on the Motion by Zoom Video Teleconference on July 24, 2020. The matter is now ripe for review.

**II. MOTION, RESPONSE, AND REPLY**

**Corellium's Motion**

In Corellium's Motion, it is seeking to exclude the opinions of David B. Connelly, a Certified Public Accountant ("CPA"). [DE 454, p. 1]. Corellium first argues that Mr. Connelly has

---

[1] The public, redacted version of the Motion is at DE 454, and the sealed version of the response is at DE 468.
[2] The public, redacted version of the response is at DE 503, and the sealed version of the response is at DE 526.
[3] The public, redacted version of the reply is at DE 543, and the sealed version of the reply is at DE 560.

1

failed to employ a reliable scientific method and investigation to substantiate his opinions regarding damages under 17 U.S.C. §§ 504 and 1203.[4] *Id.* at p. 8. Corellium contends that the "gross revenue under section 504 must have a causal connection to the alleged infringed copyrights," but "Mr. Connelly did not perform a causal nexus analysis in determining his initial opinion of Corellium's gross revenue pursuant to Section 504." *Id.* at p. 9. Corellium alleges that this is not the first time that Mr. Connelly has "speculated about profits and the profits' link to the usage of the work at issue in a copyright action" and cites to the case of *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 870 (C.D. Cal. 2013). *Id.* at pp. 9-10. Finally, Corellium maintains that the statutory damages calculation made by Mr. Connelly pursuant to § 504(c) was based on "simple mathematics" and that, since such calculations can be computed by a lay person, the Court should bar them from being deemed expert testimony in light of the weight that juries tend to afford experts. [DE 454, p. 19].

## Apple's Response

In response, Apple first contends that Mr. Connelly is qualified to opine as to damages. [DE 503, pp. 3-4]. According to Apple, "[t]he preparation of Mr. Connelly's Initial Report, and to some degree his Supplemental and Second Supplemental Reports, was substantially hindered by Corellium's inadequate discovery responses at the time." *Id.* at p. 4. Apple also alleges that Corellium provided "ever-changing," sometimes conflicting, financial information through the discovery process. *Id.* at p. 5. Apple asserts that, "[n]otwithstanding these deficiencies, Mr. Connelly attempted to calculate Corellium's gross profits (revenues net of costs of goods sold) and net profits (revenues net of costs and appropriately chargeable expenses). He further conducted an

---

[4] Corellium makes more specific arguments about allegedly unreliable methodologies employed by Mr. Connelly in the sealed version of the Motion, which the Court has carefully considered. *See* DE 468, pp. 9-18.

exhaustive analysis of Corellium's costs, determining which were supported, which were supportable, and which are not reasonable." *Id.* at p. 6.

Apple next points out that Corellium does not challenge Mr. Connelly's calculations, his methodology for calculating Corellium's gross revenues, his analysis of Corellium's claimed costs, the accuracy of his calculation of statutory damages under 17 U.S.C. § 504(c), or the first of three alternative methods he provided for calculating statutory damages under 17 U.S.C. § 1203(c). [DE 503, p. 6]. Next, Apple argues that "Mr. Connelly's opinion regarding Corellium's gross revenues is consistent throughout his reports: all sales of the Corellium Apple Product constitute revenues attributable to Corellium's infringement because every single unit of, or license to, the Corellium Apple Product results in infringement of iOS." *Id.* at p. 7. According to Apple, "[b]oth Mr. Connelly's primary opinion and his supplemental opinion are based on reliable methodology and are admissible under *Daubert*." *Id.* at p. 8. Apple contends that Corellium misunderstands 17 U.S.C. § 504(b) and that the law actually places the burden of allocating Corellium Apple Product revenues "to factors other than" Corellium's infringement of iOS on Corellium, not on Apple. *Id.* at p. 9.

Apple next maintains that "Corellium merely challenges the input selected by Mr. Connelly to calculate future revenues, not his methodology in actually calculating those revenues based on that input. Corellium's challenge thus is not appropriately made in a *Daubert* motion, as it goes to credibility or weight, not reliability, and is for the jury to determine." [DE 503, p. 15]. Apple asserts that Mr. Connelly appropriately relied on Corellium's "verified interrogatory responses and its own pre-litigation projections." *Id.* With regard to Mr. Connelly's second calculation, based on Corellium's historical income, Apple argues that it is routine for "financial

3

experts to base estimates of future income on recent past income." *Id.* at p. 16.

Apple also asserts that Mr. Connelly's three alternative methods of calculating statutory damages pursuant to 17 U.S.C. § 1203(c)(3) were all proper and that Corellium is, in reality, improperly challenging the inputs that Mr. Connelly used. [DE 503, pp. 16-17]. Apple explains that "[r]ather than challenging any of the underlying data, Corellium asserts that Mr. Connelly erred in estimating the number of virtual devices created by each Corellium user" and that "Mr. Connelly's estimates regarding virtual devices are based on sound methodology, and he should be permitted to testify." *Id.* at pp. 17, 19. Apple notes that Corellium "challenges Mr. Connelly's calculation of the range of statutory damages attributable to Corellium's infringement on a 'per work' basis pursuant to 17 U.S.C. § 504, solely because that calculation requires only multiplication and thus is not 'helpful' under the third *Daubert* prong." *Id.* According to Apple, this objection is frivolous and unsupported by the law. *Id.* Finally, Apple argues that Corellium has mistakenly moved to exclude all of Mr. Connelly's testimony, including the unchallenged opinions. *Id.* at p. 20.

## **Corellium's Reply**

In reply, Corellium again argues that Mr. Connelly has repeatedly failed to provide opinions based upon reliable methods. [DE 543, p. 1]. Next, Corellium contends that Apple incorrectly asserts that Corellium is not disputing Mr. Connelly's methodologies when, in reality, Mr. Connelly's five methodologies are exactly what Corellium is disputing. *Id.* Corellium maintains that Mr. Connelly's failures are not attributable to Corellium because Corellium fulfilled its discovery obligations and Apple could have sought additional discovery. *Id.* at pp. 2-4. According to Corellium, the fact that Mr. Connelly provides multiple alternatives for his methods

4

is, in and of itself, "indicative that Mr. Connelly fails to set forth one cohesive reliable method, backed by fact, and in line with industry guidelines." *Id.* at p. 4. Corellium disagrees with Apple's analysis of the causal connection in copyright cases and states that the "plaintiff is required to present a causal relationship between the allegedly infringing activity and the gross profits." *Id.* According to Corellium, Mr. Connelly's conclusion in his supplemental report that "an attribution of the gross revenues to the alleged infringing activity should be 90%--or 97%" is "literally pulled from thin air." *Id.* at p. 8.

In its reply, Corellium also takes issue with Mr. Connelly's methodology for calculating future gross revenues. [DE 543, p. 8]. Corellium argues that both of his methods—using Corellium's prior marketing projections for 2019 revenue then simply doubling them using Corellium's actual 2019 revenue and doubling that number to obtain the 2020 future revenue—are both "fatally flawed." *Id.* According to Corellium, it is not just objecting to the inputs, but also the actual methodology. *Id.* at p. 9. Corellium next argues that "Mr. Connelly's DMCA damages testimony and reports make numerous assumptions regarding the way Corellium's customers interact with the product that has no foundation in reality" and are thus unreliable. *Id.* at p. 10. Finally, Corellium maintains that Mr. Connelly's various theories and opinions would confuse the jury. [DE 543, p. 10].

## IV. RELEVANT LAW

Federal Rule of Evidence 702 governs the admissibility of expert testimony. A party that proffers the testimony of an expert under Rule 702 bears the burden of laying the proper foundation and demonstrating admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184

F.3d 1300, 1306 (11th Cir. 1999). The Eleventh Circuit "has previously held that expert testimony may be admitted if three requirements are met. First, the expert must be qualified to testify competently regarding the matter he or she intends to address. Second, the methodology used must be sufficiently reliable as determined by a *Daubert* inquiry. Third, the testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010); *see also Horrillo v. Cook Inc.*, No. 08-60931-CIV, 2014 WL 2708498, at *2 (S.D. Fla. June 6, 2014); *Southpoint Condo. Ass'n, Inc. v. Lexington Ins. Co.*, No. 19-CV-61365, 2020 WL 3581611, at *2-3 (S.D. Fla. July 1, 2020) (J. Bloom) (setting forth a clear and detailed summary of the law under *Daubert* and Federal Rule of Evidence 702).[5]

With regard to the second requirement, "[t]he *Daubert* Court listed four non-inclusive factors courts should consider in determining reliability under Rule 702: (1) whether the theory or technique can be tested; (2) whether it has been subjected to peer review; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has attained general acceptance within the scientific community." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999).

The judge plays a "gatekeeping" role in determining admissibility. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 n.7, 597 (1993). However, this gatekeeping role "is not intended to supplant the adversary system or the role of the jury." *Southpoint Condo. Ass'n, Inc.*, 2020 WL 3581611, at *3 (quoting *Quiet Tech.*, 326 F.3d at 1341 (citations omitted)). A district

---

[5] The undersigned notes that Judge Beth Bloom's opinion in *Southpoint* discussing the manner in which *Daubert* and Rule 702 are to be applied in federal court, and applicable legal principles, is an excellent and concise recitation of *Daubert* principles and law.

court enjoys "considerable leeway" in making determinations regarding the admissibility of expert testimony and the reliability of an expert opinion. *United States v. Frazier*, 387 F.3d 1244, 1258–59 (11th Cir. 2004) (citing *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999)).

## V. ANALYSIS

In the Motion, Corellium is seeking to exclude the entirety of Mr. Connelly's opinions. At the July 24, 2020 hearing, Corellium's counsel stated that Corellium is not challenging Mr. Connelly's qualifications as a damages expert. Rather, Corellium is challenging the reliability of Mr. Connelly's methods and the helpfulness of his testimony to the trial of fact. Corellium's counsel argued that Mr. Connelly failed to conduct a sufficient investigation and simply reviewed the documents that were provided to him by Apple. Corellium's counsel argued that, even though counsel could cross-examine Mr. Connelly at trial, Corellium's opinions are so fundamentally wrong and unreliable that cross-examination would not remedy the extreme prejudice to Corellium.

Apple's counsel represented at the hearing that Mr. Connelly only referenced the applicable damages statute as a framework leading into how he completed his calculations and that he does not intend to testify as to the law or the parties' burden of proof. Apple's counsel stated that Apple did not plan on introducing Mr. Connelly's written reports at trial, but Apple might introduce exhibits and/or calculations from those reports. Apple also represented that Mr. Connelly will testify live at trial. This is important to the Court as there is no risk that the jury will be unfairly prejudiced by improper opinions or statements contained in Mr. Connelly's written reports. Rather, his testimony shall have to comply with the Court's directives as explained herein and any improper questions or responses can be dealt with at trial by contemporaneous objections

or motions to strike to be decided by the trial judge.

Finally, Apple's counsel represented that it did not intend to have Mr. Connelly testify about the discovery process or what Corellium produced other than possibly testifying that he did not have full and complete information in certain areas which negatively impacted his ability to formulate opinions as to damages. However, Apple will not seek opinions from Mr. Connelly which cast aspersions or lay blame on Corellium's discovery production.

The Court has fully reviewed Mr. Connelly's Expert Report dated March 3, 2020 [DE 468-3], his Supplemental & Rebuttal Report dated April 20, 2020 [DE 526-2], his Errata Supplemental & Rebuttal Report dated April 26, 2020 [DE 468-1], and his Second Supplemental Report dated April 27, 2020 [DE 526-3]. The Expert Reports do contain some improper legal conclusions. *See, e.g.*, DE 526-3, p. 4 (discussing the burden under 17 U.S.C. § 504(b)). While "[a]n expert may testify as to his opinions on an ultimate issue of fact ... he 'may not testify as to his opinion regarding ultimate legal conclusions.'" *Pacinelli v. Carnival Corp.*, No. 18-22731-CIV, 2019 WL 3252133, at *5 (S.D. Fla. July 19, 2019) (quoting *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014)). The Eleventh Circuit has also made clear that "merely telling the jury what result to reach is unhelpful and inappropriate." *Id.* (quoting *Umana-Fowler*, 49 F. Supp. 3d at 1122 (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)).

In light of this case law, and noting that Mr. Connelly is not an attorney and is not, therefore, qualified to opine on the law interpreting a statute, the Court finds that Mr. Connelly is not permitted to testify as to his legal opinions regarding the parties' burden under the applicable statute or the shifting of that burden. Further, Mr. Connelly is not permitted to comment upon any

legal opinions which Apple's counsel may have provided to him, as this would risk unfair prejudice and confusion of the jury. *See, e.g., Horrillo v. Cook Inc.*, No. 08-60931-CIV, 2014 WL 2708370, at *2 (S.D. Fla. June 6, 2014).

An expert such as Mr. Connelly is not permitted to usurp the role of the Court in instructing the jury on the applicable law. The Court will inform the jury as to what the burden is under Copyright damages law and whether said burden shifts, and if so, when. Mr. Connelly should not be permitted to testify as to the burden-shifting under the law; rather, he should simply provide his damage calculations, and then opposing counsel can test those opinions via cross-examination. Since the Court is excluding all testimony on the issue of the burden imposed by the statute, the Court does not need to rule on the actual underlying legal issue as to what the law on burden-shifting is at this time. That is, the Court will not attempt to resolve the parties' "burden battle" at this juncture. The parties can make their legal arguments to the District Judge, who will then instruct the jury.

Next, the Court next notes that Mr. Connelly's Expert Reports contain improper aspersions about Corellium's allegedly obstructionist conduct during the discovery process. *See, e.g.*, DE 526-3, pp. 2-4. It would be improper for Mr. Connelly to make any statement or issue any opinion at trial about Corellium's alleged violations of its discovery obligations or to accuse Corellium of being dilatory or obstructionist during the discovery process. Any such testimony or opinions should be excluded from both Mr. Connelly's testimony and Mr. Applerouth's testimony. *See, e.g., Horrillo*, 2014 WL 2708370, at *2. Mr. Connelly can simply testify that he was not provided with particular documents and that Corellium provided, in his opinion, somewhat inconsistent interrogatory responses, and that these issues made it more difficult for him to provide an opinion

9

as to damages, if that is the case. Of course, he will be subject to cross-examination on these issues, as he will be on all of his opinions permitted at trial.

Finally, Corellium asserts that the remainder of Mr. Connelly's opinions as to damages should also be excluded because Mr. Connelly's methodologies are unreliable and are based upon incorrect information. The Court has reviewed *Reinsdorf*, 922 F. Supp. 2d 866, a case in which the Central District of California, under the facts of that case, found Mr. Connelly's damages methodologies to be unreliable. However, that case is factually distinguishable from the instant case and is in no way binding here in the Eleventh Circuit. Upon careful review of his four Expert Reports, the Court finds that Mr. Connelly's methodologies in the case at hand are sufficiently reliable, especially in light of the fact that the Court is not making any legal determination as to the parties' burdens at this juncture.

The Court also determines, for purposes of this *Daubert* Motion, that Mr. Connelly has sufficiently demonstrated a causal nexus between Corellium's gross revenues and the infringement, given his understanding of how the Corellium Apple Product technology functions. *See Oceans of Images Photography, Inc. v. Foster & Smith, Inc.*, No. 8:11-CV-1160-T-30AEP, 2012 WL 5878092, at *8 (M.D. Fla. Nov. 21, 2012) ("A low initial burden is placed on the copyright holder to make a showing of some causal connection between the infringement and the profits claimed.") (citing *Ordonez–Dawes v. Turnkey Props., Inc.*, 2008 WL 828124, at *3 (S.D. Fla. Mar.26, 2008)) (There must be "some nexus between the infringing activity and the gross revenue figure proffered by a plaintiff."). For purposes of this *Daubert* challenge, such a nexus does exist. Thus, the Court finds Mr. Connelly's methodologies to be reliable for *Daubert* and gatekeeping purposes. However, if Corellium chooses to make a future legal argument about the

causal nexus issue, such issue is properly raised on summary judgment or before the District Judge at trial.

Importantly, for much of the time period when Corellium allegedly committed copyright violations, it had only one product—the Corellium Apple Product. This makes this case factually different from *Reinsdorf* because *Reinsdorf* involved damages calculations for a company (Skechers) which had multiple product lines. Further, Apple asserts that all sales of the Corellium Apple Product constitute revenue attributable to Corellium's alleged infringement because every unit sold and license issued of the Corellium Apple Product results in iOS infringement. There are thus significant factual differences between this case and *Reinsdorf*. The Court does not need to decide these factual disputes at this time in the context of a *Daubert* motion. In his several expert reports, after an extensive review of documents and other analysis, Mr. Connelly determined what he believes to be the appropriate amount of gross profits and net profits, and in doing so, he employed a reliable scientific method or investigation to substantiate his damage opinions. Although Corellium asserts that his opinions are so wrong and unreliable that they should be excluded, the Court disagrees. Both Corellium and Apple have a damages expert. The trial judge and jury will have the opportunity to evaluate those opinions and proceed accordingly.

This Court is a gate keeper, but as Judge Bloom has aptly noted, *Southpoint Condo. Ass'n, Inc.*, 2020 WL 3581611, at *3, that gatekeeper role is not intended to supplant the adversary process. Under the unique facts of this case, cross-examination of both Mr. Connelly (and Dr. Nieh, upon whose opinion he relies in part) can remedy any alleged potential prejudice to Corellium. This is not a case for exclusion of Mr. Connelly's expert testimony in its entirety under *Daubert*; rather, it is a case where he has asserted his damages opinions and calculations which, at

this juncture, sufficiently demonstrate a causal nexus and a sufficiently reliable methodology. Corellium may test his damages opinions and calculations at trial by cross-examination, and it will be up to the trier of fact to determine the weight to give those opinions. However, they should not be excluded in their entirety under a *Daubert* analysis.

Therefore, Mr. Connelly should be permitted to address the relevant factors in calculating damages and the damages that he has calculated based on the facts in this specific case.

## VI. CONCLUSION AND RECOMMENDATION

In light of the foregoing, it is the recommendation of this Court that Corellium's *Daubert* Motion to Preclude Certain Testimony by David B. Connelly [DEs 454, 468] be **GRANTED IN PART AND DENIED IN PART**. Corellium's Motion is GRANTED to the extent that Mr. Connelly should not be permitted to testify as to any legal opinions, particularly regarding the statutory burden and burden-shifting under 17 U.S.C. § 504(b), and he should not be permitted to disparage Corellium's conduct during the discovery process or assert that it did violate its discovery obligations. The Motion is DENIED to the extent that Corellium seeks to exclude all of Mr. Connelly's opinions. Mr, Connelly should be permitted to testify as to his damages calculations and damages opinions at trial.

## NOTICE OF RIGHT TO OBJECT

A party shall file written objections, if any, to this Report and Recommendation with United States District Judge Rodney Smith within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C). Failure to object to this Report and Recommendation within that time period waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions. 11th Cir.R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 29th day of July, 2020.

_/s/ William Matthewman_
WILLIAM MATTHEWMAN
United States Magistrate Judge
