UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil No. 19-81160-cv-Smith/Matthewman

APPLE INC.,

      Plaintiff,

vs.

CORELLIUM, LLC,

      Defendant.

_____/

FILED BY ___KJZ___ D.C.

**Jul 30, 2020**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT CORELLIUM, LLC'S *DAUBERT* MOTION TO PRECLUDE CERTAIN TESTIMONY BY DR. MICHAEL SIEGEL [DE 444]

THIS CAUSE is before the Court upon Defendant, Corellium, LLC's ("Corellium") *Daubert* Motion to Preclude Certain Testimony by Dr. Michael Siegel ("Motion") [DE 444]. This matter was referred to the undersigned by the Honorable Rodney Smith, United States District Judge. *See* DE 471. Plaintiff, Apple Inc. ("Apple") filed a response [DE 504, 525[1]], and Corellium filed a reply [DE 539]. Corellium has also filed a Notice of Partial Withdrawal of Timeliness Arguments from Dr. Nieh and Siegel's *Daubert* Motions [DE 489]. The Court held a hearing on the Motion by Zoom Video Teleconference on July 24, 2020. The matter is now ripe for review.

## II. THE MOTION, RESPONSE, AND REPLY

### Corellium's Motion

Apple's expert, Dr. Michael Siegel, has submitted several reports in this litigation which focus on the concept of "good faith security research." [DE 444, p. 1]. According to Corellium,

---

[1] The public, redacted version of the response is at DE 504, and the sealed version of the response is at DE 525.

while "good faith security research" does fall within a regulatory exemption to the Digital Millennium Copyright Act, that exemption is not relevant to Apple's claims. *Id.* Corellium also argues that Dr. Siegel has adopted a definition of "good faith security research" that is found neither in the applicable statutory exemption (17 U.S.C. § 1201(j)) nor even in the inapplicable regulatory exemption (37 C.F.R § 201.40(b)). *Id.*

Corellium additionally contends that its "security testing" is eligible for the 1201(j) exemption as it promotes ""the security of the 'owner or operator of such computer, computer system or computer network'" (such as a Corellium customer). [DE 444, p. 6]. However, according to Corellium, Dr. Siegel's definition of "good-faith" security research mandates that the security testing must be shared with the developer (such as Apple), but 17 U.S.C. §1201(j) does not require such disclosure for the exemption to apply. *Id.* Therefore, Apple asserts that, since Dr. Siegel's opinions are disconnected from the applicable DMCA claims and defenses in this case, as they are not grounded in specific statutory language, such a personal definition is fatal to the relevance and admissibility of his opinions and would consequently be both harmful and confusing to the jury. *Id.* Corellium requests that the Court preclude Dr. Siegel from offering testimony at trial on the issue of "good faith security research" as it pertains to Corellium's defenses in this matter. *Id.* at p. 8.

## **Apple's Response**

In response, Apple argues that experts are supposed to opine on industry standards and not the law, just as Dr. Siegel has done in this case. [DE 504, p. 9]. Apple contends that Dr. Siegel simply referenced the DMCA exemption once to demonstrate that the exemption resulted from an "industry-wide" dialogue which consequently borrows from the industry standards. *Id.* at p. 10.

2

Moreover, Dr. Siegel's opinions on "good-faith" security research bear on multiple issues in the case, and not just the single DMCA exemption, so his opinions would therefore aid the fact-finder's analysis. *Id.*

According to Apple, "good faith" or "bad faith" is a question of fact. [DE 504, p. 11]. Apple maintains that excerpts from Corellium's Answer, proffered expert opinions, and pending motion for summary judgement are rife with facts to be challenged that could undercut Corellium's assertions of "good faith." *Id.* at pp. 7-8. Therefore, since Corellium has repeatedly put its good faith conduct at issue, such a question of fact remains a live dispute that would render Dr. Siegel's assessment of the framework of the cybersecurity industry appropriate. *Id.* at p. 11. This precise assessment led Dr. Siegel to conclude that Corellium is not engaged exclusively in "good faith" security research. *Id.* at p. 13. Apple contends that this sort of expert opinion "on industry practices he is familiar with [and] what he perceives as deficiencies" in the opposing party's conduct is "beyond the understanding of the average lay person" and will be helpful with the fact finding in this case. *Id.*

## Corellium's Reply

In reply, Corellium asserts that Apple mischaracterizes Dr. Siegel's opinions as broadly addressing "facts bearing on Corellium's good faith" in an improper attempt to expand the issues upon which Dr. Siegal may try to testify when, in reality, the opinions were specifically limited to the issues of security research and the DMCA. [DE 539, p. 1]. According to Corellium, an expert who confines their opinions to a particular issue in his report cannot then offer testimony purporting to reach additional issues that were not addressed in the report. *Id.* at p. 2. This is even more true where, as here, an expert testifies at deposition as to the limited scope. *Id.* Corellium

argues that Dr. Siegel testified multiple times that his opinions were specifically limited to those defined in the assignment sections of his report—the issue of security research and the DMCA. *Id.* at pp. 2-3.

Corellium next asserts that, contrary to Apple's contention, Corellium's argument never suggested that an expert must offer legal conclusions. [DE 539, p. 3]. Instead, the actual argument was that expert testimony is always directed to particular issues in the case, and that the rules of expert discovery entitle an opposing party to know what particular issues the expert will be addressing. *Id.* Corellium therefore concludes that, since Dr. Siegel failed to indicate the full scope of his opinions (i.e that such opinions were not simply about security research and the DMCA), his opinions regarding fair use as it pertains to the issue of copyright infringement cannot be admitted. *Id.* at pp. 3-4.

### III. <u>RELEVANT LAW</u>

Federal Rule of Evidence 702 governs the admissibility of expert testimony. A party that proffers the testimony of an expert under Rule 702 bears the burden of laying the proper foundation and demonstrating admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). The Eleventh Circuit "has previously held that expert testimony may be admitted if three requirements are met. First, the expert must be qualified to testify competently regarding the matter he or she intends to address. Second, the methodology used must be sufficiently reliable as determined by a *Daubert* inquiry. Third, the testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010); *see also Horrillo v. Cook*

*Inc.*, No. 08-60931-CIV, 2014 WL 2708498, at *2 (S.D. Fla. June 6, 2014); *Southpoint Condo. Ass'n, Inc. v. Lexington Ins. Co.*, No. 19-CV-61365, 2020 WL 3581611, at *2-3 (S.D. Fla. July 1, 2020) (J. Bloom) (setting forth a clear and detailed summary of the law under *Daubert* and Federal Rule of Evidence 702).[2]

With regard to the second requirement, "[t]he *Daubert* Court listed four non-inclusive factors courts should consider in determining reliability under Rule 702: (1) whether the theory or technique can be tested; (2) whether it has been subjected to peer review; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has attained general acceptance within the scientific community." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999).

The judge plays a "gatekeeping" role in determining admissibility. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 n.7, 597 (1993). However, this gatekeeping role "is not intended to supplant the adversary system or the role of the jury." *Southpoint Condo. Ass'n, Inc.*, 2020 WL 3581611, at *3 (quoting *Quiet Tech.*, 326 F.3d at 1341 (citations omitted)). A district court enjoys "considerable leeway" in making determinations regarding the admissibility of expert testimony and the reliability of an expert opinion. *United States v. Frazier*, 387 F.3d 1244, 1258–59 (11th Cir. 2004) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

## IV. <u>ANALYSIS</u>

As an initial matter, Apple's counsel represented at the July 24, 2020 hearing that Apple does not intend to seek to admit Dr. Siegel's Expert Reports at trial. Dr. Siegel will be testifying

---

[2] The undersigned notes that Judge Beth Bloom's opinion in *Southpoint* discussing the manner in which *Daubert* and Rule 702 are to be applied in federal court, and applicable legal principles, is an excellent and concise recitation of *Daubert* principles and law.

live. This is important to the Court as there is no risk that the jury will be unfairly prejudiced by improper opinions or statements contained in Dr. Siegel's written reports. Rather, his testimony shall have to comply with the Court's directives as explained herein and any improper questions or responses can be dealt with at trial by contemporaneous objections or motions to strike to be decided by the trial judge.

The Court next finds that, in light of its representations in the Motion and reply, and in light of Corellium's counsel's representations at the July 24, 2020 hearing, it is clear that Corellium does not object to Dr. Siegel's expert qualifications or methodologies, the existence of security research industry practices, or the fact that Dr. Siegel's analysis is grounded in these practices. Rather, Corellium contends that Dr. Siegel's opinions are irrelevant and that they would not assist a trier of fact.

Corellium's counsel explained at the hearing on the Motion that Corellium is not moving to exclude Dr. Siegel's opinions regarding the background of the security research industry or general terms such as "white hats" or "black hats." Instead, Corellium seeks to exclude Dr. Siegel's testimony where he would apply his own personal definition of good faith, which allegedly includes the addition of "responsible disclosure" to certain statutory language, and his testimony where he would apply his personal definition to the facts of this case. According to Corellium, the confusion caused by Dr. Siegel's use of this personal definition of good faith could not be remedied with a jury instruction or in closing argument. Corellium is also concerned that Dr. Siegel would testify that Corellium's intent in creating the Corellium Apple Product was not to do good faith security research; according to Corellium, it is impermissible for Dr. Siegel to testify as to Corellium's intent.

In response, Apple's counsel argued at the hearing that the regulatory exemption that Corellium believes will cause confusion to the jury is not actually applicable in this case and that Dr. Siegel will only make an ancillary argument about that regulatory exemption with regard to industry standards. Apple's counsel maintained that Corellium has put its good-faith state of mind at issue in this case by asserting a fair use affirmative defense. Moreover, Apple's counsel represented that Dr. Siegel does not intend to provide legal conclusions about why the DMCA exists, how the DMCA was enacted, or any other regulations or law. Apple's counsel pointed out that Corellium is faulting Dr. Siegel for not using statutory or legal language in opinion, but it would actually be improper for Dr. Siegel to use such language.

The Court has carefully reviewed Dr. Siegel's Expert Report dated March 3, 2020 [DE 525-1], his Expert Rebuttal Report dated April 13, 2020 [DE 525-2], his Expert Supplemental Report dated April 20, 2020 [DE 504-3], and his Second Supplemental Report dated April 28, 2020 [DE 525-3]. The Court makes the following findings.

First, Dr. Siegel should be permitted to testify on security research industry standards, including the background of the security research industry, and related, properly disclosed opinions. An average layperson would not understand those industry standards or the security research industry, so these are appropriate areas of testimony for an expert witness. Such standards and background are factual matters, and Dr. Siegel is well qualified to testify as to these standards and background. Furthermore, Corellium does not now appear to challenge such opinions.

Second, good faith is a question of fact, and Apple should be permitted to rebut Corellium's assertion of good faith by way of Dr. Siegel's expert opinions and testimony. Again, Dr. Siegel shall rely on facts which are relevant to good faith in the industry, and not provide legal

opinions or legal conclusions. The District Judge, and not any expert, will instruct the jury on any law involving good faith. Such an expert can discuss facts and opinions which are relevant to good faith, not the law. It is important to note that Corellium put good faith at issue in this case through its affirmative defenses and designated its own expert, Professor Stamos, to opine on good faith in the security research industry. Ironically, Corellium wants to exclude Dr. Siegel's expert testimony and opinions regarding good faith while seeking admission of its own good faith expert, Professor Stamos. That is not how the adversary process operates in federal court.

Dr. Siegel's opinion on good faith security research is the proper subject matter of testimony, and he is highly qualified in the cyber-security industry. Dr. Siegel should be permitted to testify about the facts in the case and how the facts are relevant to his good faith analysis. Corellium can argue that facts relied upon by Dr. Siegel are not relevant to a good faith analysis or that the so-called "personal" definition utilized by Dr. Siegel does not apply to, or is distinct from, the language in a particular statute. Any possible confusion which Corellium complains of over the wording of Dr. Siegel's definition versus any particular statutory language is quite speculative, as the District Judge will instruct the jury on the elements of the causes of action and the affirmative defenses, including good faith. Furthermore, Corellium will have the opportunity to cross-examine Dr. Siegel and can request a limiting instruction if necessary.

Third, Dr. Siegel, a non-lawyer, should not be permitted to opine on the applicable legal regulations or the relevant case law. He also should not be permitted to testify as to whether the fair use doctrine applies in this specific case. However, Corellium does not even really raise this issue in its Motion. Furthermore, given Apple's representations at the hearing on the Motion, it does not appear that Dr. Siegel intends to testify as to legal opinions or legal conclusions.

Fourth, the Court rejects Corellium's argument, which was raised for the first time in its reply, that Apple is "trying to allow Dr. Siegel to offer new opinions at trial that have not been disclosed or examined during discovery." [DE 539, p. 2]. According to Corellium, if Dr. Siegel provided any opinions about the issue of "fair use" as it pertains, for example, to Apple's copyright infringement claims, this would be an expert disclosure violation. *Id.* Corellium asserts that it has relied on Dr. Siegel prior testimony under oath that his opinions were limited to those defined in the "Assignment" sections of his reports. *Id.*

The Court first notes that parties cannot raise new issues in a reply, as Corellium has improperly done here. *United States v. Krasnow*, 484 F. App'x 427, 429 (11th Cir. 2012). Next, Corellium's counsel opted not to address this issue at the July 24, 2020 hearing, which constitutes an abandonment of this argument. Finally, Corellium's argument that Dr. Siegel's opinions go beyond the opinions in the "Assignment" section in the Expert Reports is without merit. Any opinions included the Expert Reports are fair game unless the Court finds a particular opinion to be improper. The Court has reviewed the Expert Reports and finds that Dr. Siegel's opinions very clearly implicitly relate to fair use even if Dr. Siegel does not explicitly use the phrase "fair use" in the reports. This is really a quibble over nothing.

## V. <u>CONCLUSION AND RECOMMENDATION</u>

In light of the foregoing, it is the recommendation of this Court that Corellium's *Daubert* Motion to Preclude Certain Testimony by Dr. Michael Siegel [DE 444] be **DENIED**. While the undersigned recommends that the Motion be denied, Apple and Dr. Siegel should be put on notice that Dr. Siegel is not permitted to provide any legal opinions or legal conclusions at trial.

## **NOTICE OF RIGHT TO OBJECT**

A party shall file written objections, if any, to this Report and Recommendation with United States District Judge Rodney Smith within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C). Failure to object to this Report and Recommendation within that time period waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions. 11th Cir.R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 30th day of July, 2020.

WILLIAM MATTHEWMAN
United States Magistrate Judge