## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 9:19-cv-81160-RS

**APPLE INC.,**

               **Plaintiff,**

**v.**

**CORELLIUM, LLC,**

               **Defendant.**

**CORELLIUM'S RESPONSE IN OPPOSITION TO APPLE'S MOTION
TO DISMISS COUNTERCLAIMS AND SUPPORTING MEMORANDUM OF LAW**

## TABLE OF CONTENTS

Page

I.  SUMMARY ........................................................................................................ 1

II. BACKGROUND ................................................................................................ 1

III. ARGUMENT AND AUTHORITIES ............................................................... 3

A.  Corellium Has Standing To Pursue Declaratory And Injunctive
    Relief ........................................................................................................ 4

    1.  As Plead, Corellium Has Standing To Pursue Its Declaratory Judgment
        Claims. ............................................................................................... 4

    2.  Corellium Adequately Pleads Standing To Bring Its FDUTPA And
        UCL Claims. ...................................................................................... 6

B.  Corellium Adequately Pleads Its Quantum Meruit/Unjust Enrichment
    Claims Under Florida And California Law ........................................... 7

    1.  Apple's Bounty Program Policy Is Illusory. .................................... 8

    2.  Apple Inappropriately Attaches And Relies On Evidence Extrinsic To
        Corellium's Pleading. ....................................................................... 9

    3.  Apple's Bounty Program Policy Is Not Part Of Apple's Developer
        Agreement. ...................................................................................... 10

C.  Corellium Adequately Pleads Constructive Fraud Under Florida And
    California Law ....................................................................................... 11

D.  Corellium Adequately Pleads Deceptive And Unfair Trade Practices
    Under Florida's Deceptive And Unfair Trade Practices Act ........... 13

    1.  Corellium Is A FDUTPA Consumer And Can Bring Its FDUTPA
        Claim. ............................................................................................... 13

    2.  Corellium Can Recover Actual Damages Under The FDUTPA. ... 14

E.  Corellium Adequately Pleads Unfair And Unlawful Business Practices
    In Violation Of California's Unfair Competition Law ...................... 15

    1.  Whether The Conduct Alleged By Corellium Amounts To An Unfair
        Business Practice Under California's UCL Is A Fact Question Not
        Appropriate For Consideration At This Stage. .............................. 15

    2.  Corellium's UCL Claim For Unfair Business Practices Alleges A
        Cognizable Unfair Business Practice. ............................................ 15

3.    A Dispute Between Two Commercial Entities Is A Cognizable UCL
      Claim...................................................................................................................... 17

4.    Corellium Adequately Pleads A Restitutionary Injury Under The UCL......... 18

**IV. CONCLUSION** ................................................................................................................ 19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*1849 Condominiums Assoc., Inc. v. Bruner*,
  No. 2:09-CV-03339-JAM-EFB, 2010 WL 2557711 (E.D. Cal. June 21, 2010) ......................3

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
  925 F.3d 1205 (11th Cir. 2019) ...........................................................................................5

*Am. Ins. Co. v. Evercare Co.*,
  430 Fed. Appx. 795 (11th Cir. 2011)....................................................................................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................................3

*Asokan v. Am. Gen. Ins. Co.*,
  302 F. Supp. 3d 1303 (M.D. Fla. 2017)..............................................................................11

*Bardin v. DaimlerChrysler Corp.*,
  136 Cal. App. 4th 1255 (2006) ...........................................................................................17

*Beacon Prop. Mgmt., Inc. v. PNR, Inc.*,
  890 So. 2d 274 (Fla. Dist. Ct. App. 2004) .........................................................................13

*Bell Atlantic Corp v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................................3

*Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*,
  532 F. Supp. 2d 1350 (M.D. Fla. 2007).........................................................................13, 14

*Cappello v. Walmart Inc.*,
  394 F. Supp. 3d 1015 (N.D. Cal. 2019) ..............................................................................17

*Careerfairs.com v. United Bus. Media LLC*,
  838 F. Supp. 2d 1316 (S.D. Fla. 2011) ...............................................................................13

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*,
  No. 3:12-CV-04000-SC, 2015 WL 6638929 (N.D. Cal. Oct. 30, 2015) ..............................18

*Cleveland v. Groceryworks.com, LLC*,
  200 F. Supp. 3d 924 (N.D. Cal. 2016) ................................................................................15

*Cox v. Porsche Fin. Servs., Inc.*,
  330 F.R.D. 322 (S.D. Fla. 2019)...........................................................................................6

*Dapeer v. Neutrogena, Corp.*,
   95 F. Supp. 3d 1366 (S.D. Fla. 2015) ................................................................. 7

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ........................................................................... 17

*Dealertrack, Inc. v. Huber*,
   460 F. Supp. 2d 1177 (C.D. Cal. Oct. 25, 2006) ................................................ 12

*Democratic Republic of Congo v. Air Capital Grp., LLC*,
   614 Fed. Appx. 460 (11th Cir. 2015) ................................................................. 14

*Emory v. Peeler*,
   756 F.2d 1547 (11th Cir. 1985) ........................................................................... 4

*Fraley v. Facebook, Inc.*,
   830 F. Supp. 2d 785 (N.D. Cal. 2011) ............................................................... 18

*FTC v. Student Aid Ctr., Inc.*,
   281 F. Supp. 3d 1324 (S.D. Fla. 2016) ................................................................ 3

*Galstaldi v. Sunvest Communities USA, LLC*,
   637 F. Supp. 2d 1045 (S.D. Fla. 2009) ................................................................ 6

*Gov't Employees Ins. Co. v. Fred Javier Gonzalez Ins. Agency*,
   No. CV 09-6270-GHK (EX), 2011 WL 13187367 (C.D. Cal. Feb. 9, 2011) ........... 8

*Harris v. Nordyne, LLC*,
   No. 14-CIV-21884, 2014 WL 12516076 (S.D. Fla. Nov. 14, 2014) ....................... 3

*Harris v. Tap Worldwide, LLC*,
   248 Cal. App. 4th 373 (2016) .............................................................................. 8

*Hayes v. Moon*,
   No. 16-80365-CIV, 2017 WL 2547205 (S.D. Fla. June 13, 2017) ......................... 8

*Hernandez v. J.P. Morgan Chase Bank N.A.*,
   No. 14-24254-CIV, 2016 WL 2889037 (S.D. Fla. May 16, 2016) ............... 9, 10, 16

*Horsley v. Feldt*,
   304 F.3d 1125 (11th Cir. 2002) ........................................................................... 9

*Jeff Enters., Inc. v. Home Depot U.S.A., Inc.*,
   No. 07-60302-CIV, 2008 WL 11402017 (S.D. Fla. Mar. 10, 2008) ....................... 6

*Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*,
   162 F.3d 1290 (11th Cir. 1998) ........................................................................... 8

*Linear Technology Corp. v. Applied Materials, Inc.*,
    61 Cal. Rptr. 3d 221 (2007) ................................................................18

*Legacy Entm't Grp., LLC v. Endemol USA Inc.*,
    No. 3:15-CV-0252-HES-PDB, 2015 WL 12838795 (M.D. Fla. Oct. 1, 2015) .......................9

*Lennard v. Yeung*,
    No. CV 10-09322-MMM, 2012 WL 13006214 (C.D. Cal. Feb. 23, 2012)............................11

*LePatner & Assocs., LLP v. Thomas Jefferson Sch. of Law*,
    No. 13-CV-01950-H (JMA), 2014 WL 12666881 (S.D. Cal. May 15, 2014).........................3

*Lezhava v. Am. Home Mortg. Servicing, Inc.*,
    No. 1:08-CV-3605-BBM, 2009 WL 10666352 (N.D. Ga. May 15, 2009) ..............................5

*Lichfield Grp., Inc. v. Dwayne Wade Sch. of Fla., LLC*,
    No. 10-81413-CIV, 2011 WL 310750 (S.D. Fla. Jan. 28, 2011)................................................3

*Lockwood v. Beasley*,
    211 Fed. Appx. 873 (11th Cir. 2006) ......................................................................9

*Lozano v. AT&T Wireless Servs.*,
    504 F.3d 718 (9th Cir. 2007) ...................................................................16, 17, 18

*Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*,
    No. 15-24363-CIV, 2018 WL 4932871 (S.D. Fla. Apr. 23, 2018)...........................................7

*Maryland Cas. Co. v. Smartcop, Inc.*,
    No. 4:11-CV-10100-KMM, 2012 WL 2675476 (S.D. Fla. July 6, 2012) ...............................5

*Mayor's Jewelry, Inc. v. Barry N. Meyrowitz & Meyrowitz, Inc.*,
    No. 12-80055-CIV, 2012 WL 2344609 (S.D. Fla. June 20, 2012)....................................11, 12

*McCanna v. Eagle*,
    No. 2:08-CV-421, 2009 WL 1510159 (M.D. Fla. May 5, 2009).................................................9

*Moua v. Optum Servs.*,
    320 F. Supp. 3d 1109 (C.D. Cal. 2018) ..........................................................................8

*Pac. Tech Constr., Inc. v. Sauer, Inc.*,
    No. 3:18-CV-170-J-34-JRK, 2018 WL 4501738 (M.D. Fla. Sept. 20, 2018) .........................9

*PEO Experts CA, Inc. v. Engstrom*,
    No. 2:17-cv-00318-KJM-CKD, 2018 WL 3817561 (E.D. Cal. Aug. 10, 2018) ..............11, 12

*Princeton Homes, Inc. v. Virone*,
    612 F.3d 1324 (11th Cir. 2010) ..............................................................................8

*Richelle L. v. Roman Catholic Archbishop,*
106 Cal. App. 4th 257 (2003) .............................................................................11

*Roling v. E\*Trade Sec., LLC,*
756 F. Supp. 2d 1179 (N.D. Cal. 2010) ...............................................................17

*Smith v. Chase Mortg. Credit Grp.,*
653 F. Supp. 2d 1035 (E.D. Cal. 2009)................................................................15

*Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co.,*
No. 06-61055-CIV, 2007 WL 2826603 (S.D. Fla. Sept. 25, 2007).........................3

*Stewart Agency, Inc. v. Arrigo Enters., Inc.,*
266 So. 3d 207 (Fla. App. 2019).....................................................................13, 14

*T&K Capital, LLC v. Lilley Int'l, LLC*
No. 09-82436-CIV, 2010 WL 2044896 (S.D. Fla. May 24, 2010)..........................3

*In re Takata Airbag Prods. Liab. Litig.,*
193 F. Supp. 3d 1324 (S.D. Fla. 2016) .................................................................8

*Tiller v. State Farm Mut. Auto. Ins. Co.,*
549 F. App'x 849 (11th Cir. 2013) .......................................................................5

*Tri-County Plumbing Services, Inc. v. Brown,*
921 So. 2d 20 (Fla. Dist. Ct. App. 2006) .............................................................14

*In re U.S. Oil & Gas Litig.,*
No. 83-1702-A1-CIV, 1988 WL 28544 (S.D. Fla. Feb. 8, 1988)..........................11

*Walden v. Ctrs. for Disease Control & Prevention,*
669 F.3d 1277 (11th Cir. 2012) ............................................................................4

*Wells Pharmacy Network, LLC v. Regulatory Compliance Assocs. Inc.,*
No. 5:16-CV-319-OC-37PRL, 2016 WL 6106746 (M.D. Fla. Sept. 28, 2016),
*report and recommendation adopted*, No. 5:16-CV-319-OC-37PRL, 2016 WL
6083858 (M.D. Fla. Oct. 18, 2016)........................................................................4

*Williams v. Gerber Prods. Co.,*
552 F.3d 934 (9th Cir. 2008) ..............................................................................15

*Yakas v. Chase Manhattan Bank, U.S.A., N.A.,*
No. C 09-02964-WHA, 2010 WL 367475 (N.D. Cal. Jan. 25, 2010) ......................9

*Zarrella v. Pac. Life Ins. Co.,*
809 F. Supp. 2d 1357 (S.D. Fla. 2011) ..................................................................3

**Rules and Statutes**

28 U.S.C. § 2201(a) ...................................................................................................4

Cal. Bus. & Prof. Code § 17204 ..............................................................................18

Cal. Civ. Code § 1798.100...........................................................................................17

Fed. R. Civ. P. 8(a) ......................................................................................................3

Fed. R. Civ. P. 9(b) ......................................................................................................3

Fed. R. Civ. P. 12 .........................................................................................................1

Fed. R. Civ. P. 12(b)(6)...............................................................................................9

Fla. Stat. § 501.202 ....................................................................................................13

Fla. Stat. § 501.203 ....................................................................................................13

Fla. Stat. § 501.211 .................................................................................................6, 14

**Other Authorities**

*About the security content of iOS 13.3.1 and iPadOS 13.3.1* (Jan. 28, 2020),
      https://support.apple.com/en-us/HT210918;..................................................6

*About the security content of macOS Catalina 10.15.3, Security Update 2020-001*
      *Mojave, Security Update 2020-001 High Sierra* (Jan. 28, 2020),
      https://support.apple.com/en-us/HT210919.................................................6

Restatement (Third) of Restitution & Unjust Enrichment § 2(2) cmt. c ........................8

Defendant and Counter-Plaintiff Corellium, LLC ("Corellium") files this Opposition to Plaintiff and Counter-Defendant Apple Inc.'s ("Apple") Motion to Dismiss Corellium's Counterclaims [ECF No. 608] (the "Motion").   This Opposition is materially identical to Corellium's Opposition filed on February 10, 2020 [ECF No. 135].

## I.
## SUMMARY

In an overreaching attempt to dodge Corellium's counterclaims, Apple's Motion asks the Court to not accept Corellium's well-pled allegations as true.  At bottom, Apple cannot avoid that its security bug bounty program (the "Bounty Program") is outlined by a standalone document— the Security Bounty Program Policy (the "Bounty Program Policy").  Contrary to what Apple now argues, that Policy cannot be a binding, enforceable agreement because its terms are illusory. Hoping to avoid this fact, Apple attempts to misdirect the Court—asking it to assume without the benefit of any discovery or evidence that the Bounty Program Policy is incorporated by reference into the Apple Developer Agreement (the "Developer Agreement"), thereby transforming it into a binding document.

First, the Bounty Program Policy is not incorporated by reference into the Developer Agreement.  Second, the Developer Agreement is not central to (or mentioned in) Corellium's Answer, Affirmative Defenses, and Counterclaims [ECF No. 599] (the "Counterclaims").  As such, Apple's Motion goes well beyond the pleadings and Rule 12.

At this stage, the Court accepts as true the factual allegations supporting Corellium's request for declaratory judgment, as well as its counterclaims for constructive fraud, unjust enrichment/quantum meruit, unlawful and unfair business practices under California's Unfair Competition Law ("UCL"), and deceptive and/or unfair trade practices under Florida's Unfair And Deceptive Trade Practices Act ("FDUTPA").  Therefore, Apple's Motion should be denied.

## II.
## BACKGROUND

Corellium's claims arise out of Apple's operation of its Bounty Program.  The Bounty Program is a consumer reward program targeted toward individual security researchers and research firms.  Apple first announced the program at a conference for security researchers.

- 1 -

Counterclaims, ECF No. 608, at ¶ 6.  Apple has since announced updates to the program at the same conference but at a later date.  *Id*. at ¶ 21.

Through this program, Apple offers high dollar rewards to program participants who submit bugs to Apple that meet the "guidelines" listed in the Bounty Program Policy.  *See, e.g.*, *id*. at ¶¶ 10-11.  The Policy is not a bargained-for exchange between sophisticated parties.  It is a document that grants Apple complete and sole discretion to determine whether to pay participants for their submissions, regardless of whether Apple uses those submissions to improve the security of its products.  *Id*. at ¶¶ 15-16.

Moreover, the terms of the Policy reveal that it is not a binding agreement.  *Id*. at ¶ 10.  The Bounty Program Policy states that Apple "will pay cash rewards for security vulnerabilities found in specific Apple services and products, to researchers who abide by the guidelines" of the program.  *Id*. at ¶ 13.  At the same time, "[p]ayments are at Apple's sole discretion", "[r]ewards are granted solely at the exclusive discretion of Apple", "[t]he terms, program scope, and payments are all subject to change at Apple's sole discretion", and "[t]he program may be terminated at any time."  *Id*. at ¶ 14.  What's more, a participant in Apple's Bounty Program is "ask[ed]" to keep his or her "involvement with the program confidential." And before disclosing any information about an issue reported under the Bounty Program to other parties, and in order to receive payment for a submission, a participant is also required to let Apple: validate the report; diagnose the vulnerability; implement a fix or other corrective measure; validate the fix against all affected platforms; and distribute the fix to its customers.  *Id*. at ¶ 16.  In that same vein, under Apple's Bounty Program Policy, Apple asks that participants share any public comments about the reported bug with Apple first before releasing those comments publicly.  *Id*. at ¶ 17.  As such, Apple retains absolute control over the program.  The Policy is just that—a policy—not a binding agreement.

Apple induces program participants to act on its behalf.  *Id*. at ¶¶ 12-13, 35.  Participants spend valuable time and resources searching for these bugs, drafting exploits for them, and submitting them to Apple.  *Id*. at ¶¶ 90, 109.  Researchers have the right to determine whether to disclose the bug to Apple.  And if they choose to do so, they should be rewarded.

Corellium and Apple have an ongoing relationship under the Bounty Program.  Corellium has participated in the program for over two years.  *Id*. at ¶ 26.  Corellium co-founder, Chris Wade, has participated in the program for even longer.  *See id*. at ¶ 25.  Corellium and Mr. Wade remain participants in the program.  In fact, Corellium submitted bugs to Apple during this lawsuit.  *Id*. at

¶ 27. According to Apple, "Apple has since determined that [those bugs] are eligible for monetary rewards." Motion, ECF No. 608, at 6. Under the terms of the Bounty Program, Corellium has opted to donate the funds—to date, Corellium understands that the funds have not been paid. The parties, therefore, have a continuing relationship with one another.

**III.**
**ARGUMENT AND AUTHORITIES**

To survive a motion to dismiss, the pleading must contain enough factual allegations "to raise a right to relief above the speculative level." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Contrary to Apple's argument, Corellium's claims for declaratory relief, constructive fraud, unjust enrichment, UCL violations and FDUTPA violations are subject to Rule 8(a)'s notice pleading standard. *See T&K Capital, LLC v. Lilley Int'l, LLC*, No. 09-82436-CIV, 2010 WL 2044896, at *3 (S.D. Fla. May 24, 2010) (applying Rule 8(a) to plaintiff's declaratory judgment claim); *Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co.*, No. 06-61055-CIV, 2007 WL 2826603, at *5 (S.D. Fla. Sept. 25, 2007) (noting split in authority, but holding that "Rule 9(b)'s particularity requirement does not apply to claims of constructive fraud"); *1849 Condominiums Assoc., Inc. v. Bruner*, No. 2:09-CV-03339-JAM-EFB, 2010 WL 2557711, at *3 (E.D. Cal. June 21, 2010) (noting that "courts do not apply [Rule 9(b)'s] heightened pleading standard to constructive fraud claims"); *Lichfield Grp., Inc. v. Dwayne Wade Sch. of Fla., LLC*, No. 10-81413-CIV, 2011 WL 310750, at *3 (S.D. Fla. Jan. 28, 2011) (applying Rule 8(a) to unjust enrichment claim); *LePatner & Assocs., LLP v. Thomas Jefferson Sch. of Law*, No. 13-CV-01950-H (JMA), 2014 WL 12666881, at *5 (S.D. Cal. May 15, 2014) (finding that plaintiff's pleading satisfied Rule 8(a) pleading standard with regard to its quantum meruit claims); *FTC v. Student Aid Ctr., Inc.*, 281 F. Supp. 3d 1324, 1334 (S.D. Fla. 2016) (applying Rule 8(a) to plaintiff's FDUTPA claim concerning defendant's false and misleading representations); *Harris v. Nordyne, LLC*, No. 14-CIV-21884, 2014 WL 12516076, at *4 (S.D. Fla. Nov. 14, 2014) (explaining that "even where a FDUTPA claim includes allegations which implicate fraudulent conduct, it need not meet the heightened pleading requirements of Rule 9(b)"); *Zarrella v. Pac. Life Ins. Co.*, 809 F. Supp. 2d 1357, 1365 n.4 (S.D. Fla. 2011) (noting that "to the extent the

- 3 -

California UCL claim is not fraud-based, it need not meet Rule 9(b)'s requirements"). However, even if Corellium's Counterclaims were subject to Rule 9(b)'s heightened pleading standard, the claims meet the heightened standard.

### A.   Corellium Has Standing To Pursue Declaratory And Injunctive Relief.

#### 1.   As Plead, Corellium Has Standing To Pursue Its Declaratory Judgment Claims.

Corellium has standing to bring its declaratory judgment claims (Counts 1 & 2). The Declaratory Judgment Act allows a Court to "declare the rights and other legal relations of any interested party" in a case of "actual controversy." 28 U.S.C. § 2201(a). For purposes of the Act, an "actual controversy" exists when there is a substantial continuing controversy between parties having adverse legal interests. *See, e.g.*, *Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1284 (11th Cir. 2012) (quoting *Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir. 1985)). The determination of whether an actual case or controversy exists is made on a case-by-case basis. *See, e.g.*, *Am. Ins. Co. v. Evercare Co.*, 430 Fed. Appx. 795, 798 (11th Cir. 2011).

All of the above requirements are met in this case. Count 1 asks the Court to declare that the Bounty Program Policy is not an enforceable agreement, that any purported consideration is illusory, and, therefore, that there is no binding or enforceable agreement between the parties under the Bounty Program Policy. Counterclaims, at ¶ 44. Count 2 asks the Court to declare that there is no enforceable agreement between the parties under the Bounty Program Policy or any other written agreement. *Id.* at ¶ 47.

Corellium will suffer future injury if its declaratory judgment action cannot proceed. Without a determination of the legal relationship between the parties, Apple will continue to unfairly apply the terms of its Bounty Program Policy to Corellium. Corellium is still a participant in the Bounty Program, has submitted bugs via the Program that Apple acknowledges have value (at least by addressing some of the bugs in iOS security updates), but has not been paid for such submissions. Motion, at 6 ("[T]hose bugs are still undergoing review and consideration for eligibility."); Counterclaims, at ¶ 27. As such, there is a substantial continuing controversy between the parties.

Apple attempts to distort Corellium's request for declaratory relief as a request for the Court to determine the "presence or absence of a contract covering *past* interactions" between Apple and Corellium.  Motion, at 8 (emphasis in original).  That is not the case.  Corellium's Counterclaims ask for the Court to weigh in on the parties' current, ongoing relationship.  Courts in this circuit have allowed declaratory judgment claims to proceed on similar facts.  *See, e.g.*, *Wells Pharmacy Network, LLC v. Regulatory Compliance Assocs. Inc.*, No. 5:16-CV-319-OC-37-PRL, 2016 WL 6106746, at *6 (M.D. Fla. Sept. 28, 2016), report and recommendation adopted, No. 5:16-CV-319-OC-37-PRL, 2016 WL 6083858 (M.D. Fla. Oct. 18, 2016) ("A dispute over a contract's interpretation may constitute a sufficient controversy." (citing *Maryland Cas. Co. v. Smartcop, Inc.*, No. 4:11-CV-10100-KMM, 2012 WL 2675476, at *2 (S.D. Fla. July 6, 2012)); *Lezhava v. Am. Home Mortg. Servicing, Inc.*, No. 1:08-CV-3605-BBM, 2009 WL 10666352, at *10 (N.D. Ga. May 15, 2009) (finding it appropriate to seek guidance as to future obligations between the parties relating to plaintiff's mortgage payments).

Apple's argument hinges on the Eleventh Circuit's decision in *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205 (11th Cir. 2019).  *See* Motion, at 8.  That decision is distinguishable:  in *A&M Gerber*, the court found that a class representative did not have individual standing to raise the class claims.  925 F.3d at 1212-13.  The defendant argued that, at the time the plaintiffs' complaint was filed, there was no case or controversy because the plaintiffs' benefits had been paid in full.  *See id*.  Moreover, the court found that the plaintiffs' complaint was "specifically tailored . . . to *avoid* alleging future injury."  *Id*. at 1215 (emphasis in original).  The court could see no potential future threat to the plaintiffs, other than the possibility that they may someday be in another car accident; sustain an injury entitling them to insurance benefits; and still be insured by the defendant under the same or a similar policy being interpreted the same way, thereby having this issue present itself again.  *Id*. at 1216.  That was too contingent to constitute a "substantial likelihood" of future injury.  *Id*.

Another case relied upon by Apple, *Tiller v. State Farm Mut. Auto. Ins. Co.*, 549 F. App'x 849, 852 (11th Cir. 2013), is similarly unavailing.  In that case, the Eleventh Circuit noted that plaintiffs could not show either a continuing uncertainty in their legal relations with State Farm nor an imminent threat of future harm where the class-action plaintiffs claimed that they had not been adequately compensated for the diminution in value to their cars.  *Id*. at 852.  Here, on the

other hand, Corellium asks the Court to weigh in on the current, continuous relationship between the parties. As such, Corellium's declaratory judgment claims should proceed.

**2.      Corellium Adequately Pleads Standing To Bring Its FDUTPA And UCL Claims.**

Corellium pleads facts sufficient to show that it will continue to be harmed by Apple's unfair and/or deceptive business practices under the FDUTPA[1] and California UCL (Counts 5, 6, 7, & 10). First, Corellium pleads that "as a result of Apple's conduct . . . Corellium has sustained and will continue to sustain irreparable injury." Counterclaims, at ¶¶ 82, 102, 120. Corellium and Apple have a continuing relationship under the Bounty Program. Corellium is still a participant in that program. Corellium submitted its kernel execution and memory leak bugs during this litigation. *See, e.g., id.* at ¶ 27. Apple admits that "those bugs are still undergoing review and consideration for eligibility." Motion, at 6. Since filing these Counterclaims, Apple confirmed to Corellium in an email that Corellium's kernel execution and memory leak bugs would be addressed in an upcoming repair to Apple's software.[2] Apple then publicly credited Corellium for reporting these bugs.[3] But Apple's decision on whether to pay for these bugs, and for the other

---

[1]   Courts have softened standing requirements for FDUTPA violations. "There is no requirement that a plaintiff show an ongoing practice or irreparable harm." *Cox v. Porsche Fin. Servs., Inc.*, 330 F.R.D. 322, 336 (S.D. Fla. 2019) (quoting *Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1057-58 (S.D. Fla. 2009)). In *Cox*, the "[p]laintiff correctly point[ed] out that FDUTPA grants parties standing for injunctive relief for anyone who has already been harmed under FDUTPA." *Id.* Moreover, an aggrieved party under the FDUTPA may pursue claims for injunctive relief under the Act "even if the effect of those remedies would be limited to the protection of consumers who have not yet been harmed by the unlawful trade practice." *Jeff Enters., Inc. v. Home Depot U.S.A., Inc.*, No. 07-60302-CIV, 2008 WL 11402017, at *7 (S.D. Fla. Mar. 10, 2008) (also noting that "to the extent that Jeff Enterprises has standing under the FDUTPA for past harm . . . it has standing under section 501.211(1) to seek injunctive or declaratory relief, whether or not it is likely to suffer future harm.").

[2]   To the extent necessary, Corellium respectfully requests that the Court grant it leave to amend its Counterclaims to include additional factual allegations concerning the communications it received from Apple as well as the public acknowledgements made by Apple (referenced in Footnote 3 below) that occurred after Corellium filed its Counterclaims [ECF No. 599].

[3]   *About the security content of iOS 13.3.1 and iPadOS 13.3.1*, APPLE.COM (Jan. 28, 2020), https://support.apple.com/en-us/HT210918; *About the security content of macOS Catalina 10.15.3, Security Update 2020-001 Mojave, Security Update 2020-001 High Sierra*, APPLE.COM (Jan. 28, 2020), https://support.apple.com/en-us/HT210919.

bugs listed in Corellium's Counterclaims, is still outstanding. *See* Motion, at 6 ("[T]hose bugs are still undergoing review and consideration for eligibility). Finally, nowhere in Corellium's Counterclaims does Corellium state or otherwise imply that the parties' relationship has ended.

Apple cites *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-24363-CIV, 2018 WL 4932871, at *4 (S.D. Fla. Apr. 23, 2018) for the proposition that a FDUTPA claimant must allege future harm sufficient to satisfy Article III's standing requirement. *See* Motion, at 9. In that case, however, the plaintiff ***admitted*** that the distribution agreement at issue had been terminated. *Marjam*, 2018 WL 4932871, at *4. As such, there was no threat of future harm to the plaintiff. *Id*. The cases relied upon by the court in *Marjam* are equally distinguishable. For instance, in *Dapeer v. Neutrogena, Corp.*, 95 F. Supp. 3d 1366, 1374 (S.D. Fla. 2015), the plaintiff, who brought a class action against Neutrogena for labeling its sunscreen with a "water + sun barrier" claim, failed to allege a threat of future injury because his complaint affirmatively acknowledged that Neutrogena ***had since removed that claim from the labels*** and, therefore, "it would be impossible for Plaintiff to allege any threat of future harm from those products."

The facts at issue in this case are different. Apple's Bounty Program is an ongoing program. Days before bringing this lawsuit, Apple expanded the program by opening it to the public. Counterclaims, at ¶ 21. Corellium submitted bugs to Apple after this lawsuit was filed. *Id*. at ¶ 27. According to Apple, "those bugs are still undergoing review and consideration for eligibility." Motion, at 6. And after these Counterclaims were filed, Apple publicly acknowledged that it corrected security vulnerabilities in iOS due to Corellium's submissions. Payments for those submissions are outstanding. Motion, at 6. The ongoing relationship between the parties clearly indicates that Corellium will continue to sustain irreparable injury absent relief.

**B.**   **Corellium Adequately Pleads Its Quantum Meruit/Unjust Enrichment Claims Under Florida And California Law.**

Apple asserts that Corellium's unjust enrichment claims (Counts 8 & 9) are "fatally flawed" because these claims are based on a subject governed by an express agreement. Motion, at 11. This is incorrect. Although Corellium's claims relate to Apple's Bounty Program, which is governed by the Bounty Program Policy, Corellium affirmatively pleads that the Policy is not an express agreement because the terms of the Policy are illusory and, therefore, unenforceable. Counterclaims, at ¶¶ 10, 13-16, 42. As such, Corellium's quantum meruit/unjust enrichment claims should proceed.

1.      **Apple's Bounty Program Policy Is Illusory.**

While it is true that "[a]n unjust enrichment claim can exist only if the subject matter of that claim is not covered by a ***valid and enforceable*** contract," *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1344 (S.D. Fla. 2016) (emphasis added), Corellium expressly pleads that the Bug Bounty Program Policy is not a valid and enforceable agreement because it is illusory. *See* Counterclaims, at ¶ 42 ("The purported consideration flowing from Apple is illusory."); *see also id.* at ¶¶ 9-17 (noting that this "[h]eads I win, tails you lose" policy includes terms like "[p]ayments are at Apple's sole discretion", "[r]ewards are granted solely at the exclusive direction of Apple'", "[t]he terms, program scope, and payments are all subject to change at Apple's sole discretion", and "[t]he program may be terminated at any time.").

A contract is illusory "when 'one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor—who says, in effect, ***I will if I want to***.'" *Princeton Homes, Inc. v. Virone*, 612 F.3d 1324, 1331-32 (11th Cir. 2010) (emphasis added) (quoting *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1311 (11th Cir. 1998) (applying Florida law); *Moua v. Optum Servs.*, 320 F. Supp. 3d 1109, 1113 (C.D. Cal. 2018) (explaining that under California law "a contract is unenforceable as illusory when one of the parties has the unfettered or arbitrary right to modify or terminate the agreement or assumes no obligations thereunder." (quoting *Harris v. Tap Worldwide, LLC*, 248 Cal. App. 4th 373, 385 (2016))). This is exactly what Apple's Bounty Program Policy states and what Corellium expressly pleads: Apple "will pay" rewards "to researchers who abide by the guidelines below," but "[r]ewards are granted solely at the exclusive discretion of Apple" regardless of whether they otherwise satisfy the Bounty Program Policy's requisite criteria. *See* Motion, Exhibit B; *see also* Counterclaims, at ¶¶ 13-14.

Where an agreement between the parties could be deemed illusory or unconscionable, courts refuse to dismiss unjust enrichment and quantum meruit claims. *Hayes v. Moon*, No. 16-80365-CIV, 2017 WL 2547205, at *4 (S.D. Fla. June 13, 2017) ("That unjust enrichment claims are preempted by contract, though, does not necessarily preclude an action for equitable relief under a theory of unjust enrichment where the alleged contract is found invalid." (citing Restatement (Third) of Restitution & Unjust Enrichment § 2(2) cmt. c.)); *Gov't Employees Ins. Co. v. Fred Javier Gonzalez Ins. Agency*, No. CV 09-6270-GHK (EX), 2011 WL 13187367, at *2 (C.D. Cal. Feb. 9, 2011) (denying motion to dismiss unjust enrichment claim where an agreement

existed between the parties because counter-plaintiff "is not foreclosed from stating a claim [for unjust enrichment], at this point, because the Agency Agreement may be deemed to be unconscionable or illusory"); *Yakas v. Chase Manhattan Bank, U.S.A., N.A.*, No. C 09-02964-WHA, 2010 WL 367475, at *7 (N.D. Cal. Jan. 25, 2010) (denying defendant's motion to dismiss plaintiff's unjust enrichment claim for the same reasons and noting that "[a]t this point, the Court is unwilling to categorically exclude the possibility that unjust enrichment will turn out to be an appropriate remedy").  As such, Corellium's claims for unjust enrichment/quantum meruit are properly pleaded and should proceed.

## 2.     Apple Inappropriately Attaches And Relies On Evidence Extrinsic To Corellium's Pleading.

Corellium objects to Apple's reliance on and attachment of the Apple Developer Agreement ("Developer Agreement") to its Motion to Dismiss.  Courts considering Rule 12(b)(6) motions generally cannot consider documents beyond the pleadings.  A document attached to a motion to dismiss may only be considered by a court without converting the motion into one for summary judgment if the document is:  (1) central to the plaintiff's claim; and (2) is undisputed. *See, e.g.*, *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).  For a document to be considered central, "it must be '***unquestionable***' at this stage that [the] [p]laintiff ***would have to offer these documents in order to prove its case*.**"  *Legacy Entm't Grp., LLC v. Endemol USA Inc.*, No. 3:15-CV-0252-HES-PDB, 2015 WL 12838795, at *3 (M.D. Fla. Oct. 1, 2015) (emphasis added) (citing *McCanna v. Eagle*, No. 2:08-CV-421, 2009 WL 1510159, at *2 (M.D. Fla. May 5, 2009)).  Where a document is not central to the plaintiff's claim, but is central to the defendant's defense, the court will not consider it in ruling on the defendant's motion to dismiss.  *See, e.g.*, *Hernandez v. J.P. Morgan Chase Bank N.A.*, No. 14-24254-CIV, 2016 WL 2889037, at *7 (S.D. Fla. May 16, 2016) (on motion to dismiss, the court refused to consider documentation attached to defendant's motion because "the documentation . . . [wa]s not central to plaintiff's claim, but rather, central to [defendant]'s defense"); *Lockwood v. Beasley*, 211 Fed. Appx. 873, 877 (11th Cir. 2006); *Pac. Tech Constr., Inc. v. Sauer, Inc.*, No. 3:18-CV-170-J-34JRK, 2018 WL 4501738, at *3 (M.D. Fla. Sept. 20, 2018).

Corellium does not reference the Developer Agreement in its Counterclaims, nor does it need to.  The Developer Agreement has no bearing on Corellium's Counterclaims.  Corellium's unjust enrichment/quantum meruit Counterclaims center around Apple's Bounty Program, which

is governed by the Bounty Program Policy. That policy, Corellium pleads, is illusory, and therefore is not a binding agreement. To ***defend*** against these Counterclaims, Apple summarily asserts that the parties' relationship is governed by an express agreement because Apple's Bounty Program Policy "is incorporated into the Apple Developer Agreement." Motion, at 12. Apple's reference to the Developer Agreement in its Motion to Dismiss, while perhaps central to its defense against Corellium's unjust enrichment claim, is not central to Corellium's claims. As such, that document cannot be considered by the Court at this stage. *See, e.g.*, *Hernandez*, 2016 WL 2889037, at *7.

### 3.      Apple's Bounty Program Policy Is Not Part Of Apple's Developer Agreement.

Apple's Motion fails to explain how the Developer Agreement makes the Bounty Program Policy a binding, enforceable agreement. Instead, Apple simply attaches the document to its Motion and cites to Paragraph 9 of the Developer Agreement, which states that:

> **Amendment; Communication.** Apple reserves the right, at its discretion, to modify this Agreement, including any rules and policies at any time. You will be responsible for reviewing and becoming familiar with any such modifications (including new terms, updates, revisions, supplements, modifications, and additional rules, policies, terms and conditions) ("**Additional Terms**") communicated to you by Apple. All Additional Terms are hereby incorporated into this Agreement by reference and your continued use of the Site will indicate your acceptance of any Additional Terms . . . .

Motion, Exhibit A, at ¶ 9 (emphasis in original). If Apple is impliedly claiming that the Bounty Program Policy is one of the "Additional Terms" incorporated into the Developer Agreement, its Motion fails to explain how this is the case. Nowhere in the Bounty Program Policy does Apple reference the Developer Agreement. In fact, the word "developer" only appears in the Policy once. Motion, Exhibit B, at 2 ("Participants will not be deemed to be in breach of any applicable Apple license provisions which provide that a user or developer may not copy, decompile, reverse engineer, disassemble, attempt to derive the source code of, decrypt, modify, or create derivative works of Apple software . . ."). Nor does the Bounty Program Policy employ any of the defined terms from the Developer Agreement. The documents are not related. As such, Corellium's quantum meruit/unjust enrichment claims should proceed.

**C.** **Corellium Adequately Pleads Constructive Fraud Under Florida And California Law.**

Next, Apple claims that Corellium's constructive fraud claims (Counts 3 and 4) should be dismissed because Corellium lacks a fiduciary relationship with Apple.  Motion, at 10.  This argument fails.  A party claiming constructive fraud need only establish a confidential relationship between the parties, not a fiduciary relationship.  *See Mayor's Jewelry, Inc. v. Barry N. Meyrowitz & Meyrowitz, Inc.*, No. 12-80055-CIV, 2012 WL 2344609, at *8 (S.D. Fla. June 20, 2012); *PEO Experts CA, Inc. v. Engstrom*, No. 2:17-cv-00318-KJM-CKD, 2018 WL 3817561, at *6 (E.D. Cal. Aug. 10, 2018).  Whether a fiduciary or confidential relationship exists is generally a question of fact for the jury or the trial court.  *See In re U.S. Oil & Gas Litig.*, No. 83-1702-A1-CIV, 1988 WL 28544, at *23 (S.D. Fla. Feb. 8, 1988) ("The existence of a fiduciary or special relationship, at any rate, is a question of fact not properly resolved on a motion to dismiss."); *Asokan v. Am. Gen. Ins. Co.*, 302 F. Supp. 3d 1303, 1317 (M.D. Fla. 2017) ("In the end, whether a fiduciary relationship exists is a question of fact for the jury.").

Florida courts have stated that a fiduciary or confidential relationship requires some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party.  *Mayor's Jewelry*, 2012 WL 2344609, at *8.  California courts, on the other hand, have been reluctant to articulate a single set of factors that establish a confidential relationship.  Some factors include:  (1) the vulnerability of one party to the other, which (2) results in the empowerment of the stronger party by the weaker, which (3) empowerment has been solicited or accepted by the stronger party and (4) prevents the weaker party from effectively protecting itself.  *Lennard v. Yeung*, No. CV 10-09322-MMM, 2012 WL 13006214, at *17 (C.D. Cal. Feb. 23, 2012) (citing *Richelle L. v. Roman Catholic Archbishop*, 106 Cal. App. 4th 257, 272 (2003)).

Both California and Florida courts require that the facts, as alleged in the pleading, demonstrate that one party placed trust and confidence in the other and that the other party in some way recognized, accepted, or undertook a duty to counsel, advise, or protect the weaker party.  *Mayor's Jewelry*, 2012 WL 2344609, at *8; *PEO Experts*, 2018 WL 3817561, at *6.  This sort of acceptance need not be as overtly pleaded as Apple claims.  For instance, in *Mayor's Jewelry, Inc. v. Barry N. Meyrowitz & Meyrowitz, Inc.*, No. 12-80055-CIV, 2012 WL 2344609, at *8 (S.D. Fla. June 20, 2012), the defendant, like Apple, argued on motion to dismiss that plaintiff's constructive

fraud pleading sought to impose "unilaterally" a fiduciary relationship on the defendant.  The court refused to grant defendant's motion on that ground.  According to the court, the plaintiff, a jewelry store, successfully pleaded the existence of a confidential relationship between it and the defendant, a gemstone dealer, because on multiple occasions the jewelry store informed the dealer that it required gemstones that were not heat-treated and gem lab reports which authenticated the gemstones.  *Id*. at *8.  On the particular occasion at issue, the jewelry store advised the dealer of its customer's specific request for non-heat-treated stones.  *Id*.  Based on those facts, the jewelry store had "sufficiently alleged that it placed trust and confidence in [the dealer] and that [the dealer] accepted the trust and confidence when it supplied the gemstones."  *Id*. (internal quotation marks omitted).  California courts have also refused to dismiss constructive fraud claims on similar grounds.  *See PEO Experts*, 2018 WL 3817561, at *6 (denying motion to dismiss constructive fraud claim because "[a]s business partners in a long-term contractual relationship, there is sufficient basis to plead a 'confidential relationship' here"); *Dealertrack, Inc. v. Huber*, 460 F. Supp. 2d 1177, 1183 (C.D. Cal. Oct. 25, 2006).

Corellium sufficiently pleads the existence of a confidential relationship between it and Apple.  First, Corellium pleads that, by participating in the Bounty Program, Corellium entered into a confidential relationship with Apple.  *See* Counterclaims, at ¶¶ 51, 62.  Elaborating on that relationship, Corellium explains that:  (1) Apple created an exclusive rewards program to induce security researchers to act on its behalf, which required participants to keep their submissions confidential, *id*. at ¶¶ 11, 12, 22; (2) it invited Corellium's co-founder to participate in the program and later approved of Corellium's participation as well, *id*. at ¶¶ 25-26; (3) Corellium placed its trust and confidence in Apple and submitted bugs to Apple in reliance on Apple's statement that Apple would pay, *id*. at ¶¶ 50-55, 62-65; and (4) Apple accepted Corellium's bugs and made repairs to its software based on those bugs, *id*. at ¶¶ 54, 66.  The parties interacted repeatedly with one another.  Corellium submitted at least seven different bugs to Apple, and Apple used at least three of those bugs to correct and update its software.  *Id*. at ¶¶ 53-54, 65-66.  Like the defendant in *Mayor's Jewelry*, Apple accepted Corellium's trust and confidence when it accepted Corellium's submissions and made changes to and improved its software based on those submissions.  As such, Corellium's Counterclaims demonstrate that a confidential relationship exists between the parties.

D.    **Corellium Adequately Pleads Deceptive And Unfair Trade Practices Under Florida's Deceptive And Unfair Trade Practices Act.**

1.    **Corellium Is A FDUTPA Consumer And Can Bring Its FDUTPA Claim.**

In its Motion, Apple argues that Corellium has not adequately pleaded an "unfair practice" or "deceptive act" under the FDUTPA (Count 6) because both standards require injury to a consumer or actions taken to a consumer's detriment, and Corellium is not a "consumer" under the FDUTPA.  Motion, at 19.  Apple further claims that even if Corellium could bring a FDUTPA claim as a commercial entity (rather than as a consumer), Corellium's claim would still fail because it cannot establish injury to a consumer.  *Id*. at 19-20.  Apple is wrong on both fronts.

First, the FDUTPA protects commercial entities like Corellium.  The stated purpose of the Act is to "protect the consuming public and *legitimate business enterprises* from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices *in the conduct of any trade or commerce*." Fla. Stat. § 501.202(2) (emphasis added).  And despite Apple's purported definition of "consumer" as "one who has engaged in the purchase of goods or services," *see* Motion, at 19, the FDUTPA expressly defines "consumer" as an "individual; child, by and through its parent or legal guardian; *business*; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; *corporation; any commercial entity, however denominated*; or any other group or combination." Fla. Stat. § 501.203(7) (emphasis added).  The FDUTPA applies "to any act or practice occurring 'in the conduct of *any trade or commerce*' even as between purely commercial interests."  *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007) (emphasis in original) (quoting *Beacon Prop. Mgmt., Inc. v. PNR, Inc.*, 890 So. 2d 274, 278 (Fla. Dist. Ct. App. 2004)); *Careerfairs.com v. United Bus. Media LLC*, 838 F. Supp. 2d 1316, 1325 (S.D. Fla. 2011) (refusing to dismiss plaintiff's FDUTPA claim where the defendant, a business entity, used confidential information obtained during negotiations with plaintiff, another business entity, to develop and release a competing product). Apple's attempt to limit application of the FDUPTA to "consumer" transactions, in the narrowest sense of the word, misses the mark.

Apple's alternate argument—that commercial entities (who are not consumers) can bring FDUTPA claims but must still prove injury to a consumer—also misses the mark.  The cases cited by Apple for this point address a different situation—where a commercial entity who has suffered no injury sues another commercial entity for harm to third-party consumers.  In *Stewart Agency,*

- 13 -

*Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 212 (Fla. App. 2019), Stewart Agency, a used car dealership, sued Arrigo, another used car dealership, for unfair or deceptive trade practices for selling used vehicles with Takata airbag defects to consumers.  The appellate court affirmed the trial court's dismissal of plaintiff's claim on summary judgment because it agreed that there was no evidence that Arrigo ever sold vehicles with defective Takata airbags to consumers.  *Id*.  Thus, there was no consumer injury.  *Id*.  That is not the case here, where Corellium—as a consumer— brings a FDUTPA claim against Apple for its own injuries as well as those suffered by fellow Bounty Program participants.

> **2.      Corellium Can Recover Actual Damages Under The FDUTPA.**

Business entities may sue for damages under the FDUTPA.  *See, e.g.*, *Bookworld Trade*, 532 F. Supp. 2d at 1364.  Under Florida Statute § 501.211(2), "a person who has suffered a loss as a result of [a FDUTPA violation] may recover actual damages, plus attorney's fees and court costs."  Fla. Stat. § 501.211(2).  The statute does not define actual damages in detail, but Florida courts agree on the following:

> Generally, the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.  ***A notable exception to the rule may exist when the product is rendered valueless as a result of the defect***—then the purchase price is the appropriate measure of actual damages.

*See, e.g.*, *Democratic Republic of Congo v. Air Capital Grp., LLC*, 614 Fed. Appx. 460, 472 (11th Cir. 2015).  For example, purchase price can be used as a proxy for damages.  In *Tri-County Plumbing Services, Inc. v. Brown*, 921 So. 2d 20, 21 (Fla. Dist. Ct. App. 2006), the plaintiff sued the defendant, a repairman, for FDUTPA violations where she paid the repairman to fix her plumbing, but the repairs failed inspection, and the repairman walked off the job before correcting remaining defects.  *Id*.  The trial court awarded damages equal to the amount plaintiff deposited with the repairman, and the appellate court affirmed.  Because the repairman's repairs did nothing to complete the work assigned, the deposit price was the correct measure of FDUTPA damages. *Id*.  As such, Corellium's claim that it suffered actual damages due to Apple's unfair and deceptive conduct is not cause for dismissal.

**E.**     **Corellium Adequately Pleads Unfair And Unlawful Business Practices In Violation Of California's Unfair Competition Law.**

Apple's next argument is that Corellium's UCL claims for unlawful business practices (Counts 5 and 10) must fail because Corellium's underlying unjust enrichment/quantum meruit and constructive fraud claims fail. As discussed above, those claims are adequately pleaded and must not be dismissed.

**1.     Whether The Conduct Alleged By Corellium Amounts To An Unfair Business Practice Under California's UCL Is A Fact Question Not Appropriate For Consideration At This Stage.**

Apple's arguments for dismissal of Corellium's unfair business practices claim (Count 6) is equally unavailing. Apple once again asks the Court to dismiss Corellium's claim based on a fact issue: whether Corellium has alleged a cognizable unfair business practice under the UCL. *See, e.g., Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) (noting that California courts recognize that whether a business practice is deceptive, fraudulent or unfair is not an appropriate decision on motion to dismiss) (internal citations omitted); *see also Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 960 (N.D. Cal. 2016) ("Whether a business practice is 'unfair' in violation of the UCL is a question of fact." (quoting *Smith v. Chase Mortg. Credit Grp.*, 653 F. Supp. 2d 1035, 1045 (E.D. Cal. 2009))). Corellium pleads that Apple's operation of its Bounty Program amounts to an unfair business practice. Counterclaims, at ¶¶ 87, 97. Whether that business practice is unfair is not an appropriate consideration at this stage of the litigation.

**2.     Corellium's UCL Claim For Unfair Business Practices Alleges A Cognizable Unfair Business Practice.**

Corellium has sufficiently alleged unfair conduct in violation of California's UCL. Corellium expressly pleads that:

> Apple's administration of the bug bounty program, including, but not limited to, Apple's conduct in enticing members of the security research community to search for and identify bugs, develop exploits for those bugs, and submit bugs to Apple, despite having no intention to and not actually paying for those submissions is an unfair business practice under California law.

Counterclaims, at ¶ 87. Additional facts bolster this claim: (1) Apple's Bounty Program is intended to encourage and reward researchers who submit qualifying bugs to Apple, *see id.* at ¶

89; (2) Apple, in its Bounty Program Policy, represents that it "will pay cash rewards for security vulnerabilities . . . to researchers who abide by the guidelines", *id*. at ¶ 93; and (3) "once a participant performs these tasks and submits a bug to Apple that meets Apple's Bounty Program Policy guidelines, however, Apple fails to pay for those submissions", *id*. at ¶ 91.  Corellium identifies specific bugs that it has not received payment for, and identifies additional Bounty Program participants who also have not been paid by Apple for their submissions.  *See, e.g.*, *id.* at ¶¶ 27, 31, 32, 94, 97.

Corellium also pleads that Apple engages in unfair conduct that "prevents competition and controls the security research business by enticing members of the security research community to participate in and submit valuable bugs to Apple for which it has no intention of paying." Counterclaims, at ¶ 99.  Specifically, Apple "encourages security researchers to search for, identify, and develop exploits for bugs in Apple's iOS by offering cash rewards to participants." *Id*. at ¶ 90.  Apple accepts the benefits of those submissions by using them to correct and update its software.  *See id*. at ¶ 95.  Apple requires program participants to "'allow Apple the opportunity' to validate and diagnose a bug, and implement and distribute a fix before the participant can reveal the bug to a third party," which ensures control over the security research process by ensuring that the bug is fixed and, therefore, rendered worthless before Apple has to decide, under the guidelines of the Bounty Program Policy, whether to pay the researcher.  *Id*. at ¶ 100.

Apple suggests that in order to allege an unfair business practice under the UCL, Corellium must show "that the allegedly illegal conduct 'is tethered to an[ ] underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law."  *See* Motion, at 16 (citing *Graham v. Bank of Am., N.A.*, 172 Ca. Rptr. 3d 218, 233-34 (Cal. App. 2014)); *see also Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 735 (9th Cir. 2007) (phrasing the "tethering" test in slightly different terms, i.e. as requiring that the alleged unfairness "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.").

This is not the only test employed by California courts.  In fact, the case Apple cites, *Graham v. Bank of Am., N.A.*, 172 Ca. Rptr. 3d 218, 233-34 (Cal. App. 2014), explains that there are multiple tests to determine whether a business practice is unfair.  *See also id*. at 232 ("The standard for determining what business acts or practices are 'unfair' under the UCL for consumer actions remains ***unsettled***." (emphasis added)).  One of the tests omitted by Apple is a balancing

- 16 -

test, which requires courts to "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1023 (N.D. Cal. 2019) (quoting *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012)). Because the California Supreme Court has yet to clarify which test applies, the Ninth Circuit directs district courts *to apply either, or both, of the tests*. *Lozano*, 504 F.3d at 736-37.

Under the balancing test, "an unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Cappello*, 394 F. Supp. 3d at 1023-24 (quoting *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1268 (2006)). Enticing security researchers to submit bugs to Apple and utilizing the benefits of those submissions, all while withholding payment based on the illusory terms of its Bounty Program Policy, is unfair conduct. District courts have found similar allegations sufficient under the balancing test. *See, e.g.*, *Roling v. E*Trade Sec., LLC*, 756 F. Supp. 2d 1179, 1193 (N.D. Cal. 2010) (finding sufficient allegation of "unethical and unscrupulous conduct" under the balancing test where the basis of the plaintiffs' unfair business practice claim relied "on *monies withheld* in accordance with a *contractual provision that [was]* either missing or *allegedly unenforceable* due to the unconscionable nature in which it was imposed . . . ." (emphasis added)).

Applying Apple's "tethering" test yields the same result. Corellium's unfair business practices claim is tethered to the federal and state policy for consumer privacy and safety. Apple has publicly recognized Corellium's security research as helping strengthen Apple's iOS operating system used by millions of consumers. iOS interacts with personal, private health and other data. The California Legislature recently enacted the California Consumer Privacy Act ("CCPA") to protect consumer data and address data theft and security breaches. *See* Cal. Civ. Code § 1798.100 *et seq*. A security researcher, by definition, is working to prevent security breaches—in whole or in part. Corellium's claim that Apple seeks to limit and control security research satisfies this "tethering" test. As such, Corellium's Counterclaims adequately allege that Apple violated the "unfair" prong of the UCL under any of these tests.

### 3.     A Dispute Between Two Commercial Entities Is A Cognizable UCL Claim.

Apple summarily asserts that Corellium's UCL claims (Counts 5, 6, and 10) fail because the dispute between the parties is purely commercial and, therefore, not within the scope of the

UCL.  Motion, at 17.  But disputes between "commercial" parties, i.e. businesses, can proceed under the UCL.  The UCL applies to any "person who has suffered injury in fact and has lost money or property as a result."  Cal. Bus. & Prof. Code § 17204.  The term "person" includes "corporations."  *Id.* § 17201.  And while California courts have held that corporate plaintiffs may not seek relief under the UCL where their claims are based on "contracts not involving either the general public or individual consumers who are parties to the contract," *Linear Technology Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 237 (2007), California courts have also held that those cases "do[ ] not prevent any corporate plaintiff from proceeding under the UCL."  *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 3:12-CV-04000-SC, 2015 WL 6638929, at *4 (N.D. Cal. Oct. 30, 2015).

Notably, the plaintiffs in *Linear Tech.* and *Rosenbluth* (the case on which *Linear Tech.* relied) were corporate plaintiffs attempting to bring representative actions **on behalf of other corporate entities**.  The courts' holdings in those cases "turned less on the fact that the alleged victims . . . were businesses, and more on the fact that the[ ] entities were sophisticated and individually capable of seeking relief."  *Circle Click*, 2015 WL 6638929, at *4.  The alleged victims in *Linear Tech.*, for instance, were large corporations who had the resources to seek damages or other relief if they chose to do so.  *Id.*  In *Circle Click*, by contrast, the corporate plaintiff's representative action could proceed because "the proposed class of plaintiffs [wa]s not so uniformly sophisticated and capable of seeking relief against [the defendant]."  2015 WL 6638929, at *5.  Moreover, the action "deal[t] with form contracts, not individually negotiated contracts between sophisticated entities."  *Id.*

### 4.    Corellium Adequately Pleads A Restitutionary Injury Under The UCL.

Apple also claims that Corellium does not allege a restitutionary injury.  Motion, at 18.  Restitution under the UCL "includes restoring money or property that was not necessarily in the plaintiff's possession."  *Lozano*, 504 F.3d at 733.  Restitution is "broad enough to allow a plaintiff to recover money or property in which he or she has a ***vested interest***."  *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 811 (N.D. Cal. 2011) (denying Facebook's motion to dismiss UCL claims because the plaintiffs, Facebook users, had vested interests in their own right of publicity).

Like the plaintiffs in *Fraley*, Corellium has a vested interest in the software bugs it identified, developed exploits for, and submitted to Apple.  And Corellium pleads that Apple was

unjustly enriched by "retaining information submitted by Corellium without payment." Counterclaims, at ¶ 158; *see also id*. at ¶ 80 (noting that Apple "used those submissions to correct and update its software" but "did not pay Corellium for the benefit conferred"); *see id*. at ¶ 103 (requesting that "the Court award Corellium restitution in the amount of no less than $300,000" which is the amount Corellium should have received for its submissions). As such, Corellium's UCL claims should proceed.

## IV.
## CONCLUSION

For the above reasons, Corellium respectfully requests that Apple's Motion to Dismiss Corellium's Counterclaims be denied, and that Corellium's Counterclaims proceed. Corellium requests such further relief, in law or in equity, as the Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 7, 2020, a true and correct copy of the foregoing has been transmitted by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant, Corellium, LLC*
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 383-9222
Facsimile (561) 683-8977

Jonathan Vine
Florida Bar No.: 10966
jonathan.vine@csklegal.com
Justin Levine
Florida Bar No.: 106463
justin.levine@csklegal.com
Lizza Constantine
Florida Bar No.: 1002945
lizza.constantine@csklegal.com

*Attorneys for Defendant, Corellium, LLC*

By:

_/s/ Justin Levine_
Justin Levine

_and_

HECHT PARTNERS LLP
_Counsel for Defendant_
125 Park Ave, 25th Floor
New York, NY 10017
Tel: (212) 851-6821
David L. Hecht _pro hac vice_
Email: dhecht@hechtpartners.com
Maxim Price, _pro hac vice_
Email: mprice@hechtpartners.com
Conor McDonough, _pro hac vice_
Email: cmcdonough@hechtpartners.com
Minyao Wang _pro hac vice_
Email: mwang@hechtpartners.com

## SERVICE LIST

Martin B. Goldberg
mgoldberg@lashgoldberg.com
rdiaz@lashgoldberg.com
Emily L. Pincow
epincow@lashgoldberg.com
gizquierdo@lashgoldberg.com
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL 33131

Kathryn Ruemmler (_pro hac vice_)
kathryn.ruemmler@lw.com
Sarang Vijay Damle (_pro hac vice_)
sy.damle@lw.com
Elana Nightingale Dawson (_pro hac vice_)
elana.nightingaledawson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004

Andrew M. Gass (_pro hac vice_)

andrew.gass@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Jessica Stebbins Bina (*pro hac vice*)
jessica.stebbinsbina@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067

*Attorneys for Plaintiff,*
*Apple Inc.*