# EXHIBIT C

```
1                 UNITED STATES DISTRICT COURT

2                 SOUTHERN DISTRICT OF FLORIDA

3                  CASE NO: 9:19-cv-81160-RS

4    ------------------------------------------------------------

5    APPLE INC.,                        )
                                        )
6                       Plaintiff,      )
                                        )
7         vs.                           )
                                        )
8    CORELLIUM, LLC,                    )
                                        )
9                       Defendant.      )

10   ------------------------------------------------------------

11                       DEPOSITION OF

12                       JASON SHIRK

13                 NON-CONFIDENTIAL PORTION

14

15                     March 23, 2020

16                       10:15 a.m.

17

18               1200 Sixth Avenue, Suite 610

19                   Seattle, Washington

20

21

22

23

24

25   REPORTED BY:  Allison O'Brien, CCR No. 2163
```

```
1        A.    I did it through several vulnerabilities.

2        Q.    Did you discover those vulnerabilities, or were

3   they vulnerabilities that had been discovered elsewhere?

4        A.    Both.

5        Q.    And in the vulnerabilities that you discovered,

6   did you turn those vulnerabilities in to the -- in to the

7   vendor?

8        A.    No.  There was no way at that time to do so.  And

9   the most common response at that point in time in the

10  eighties and nineties -- we're in a different day today --

11  was to receive a cease and desist letter and have people in

12  suits show up at your house with potential penalties.

13       Q.    Do you consider what you did during your

14  jailbreaking during the nineties to be bad-faith research?

15       A.    No, I wouldn't say that.  I would, however, say

16  that I was naive and didn't understand the implications of

17  the things that I had found.  I was a child or young

18  teenager.  I didn't understand the potential impacts of what

19  I was actually looking at.

20       Q.    Okay.  But still not bad-faith, just being naive?

21       A.    Naive and curious.

22       Q.    What if a vulnerability is discovered and that

23  vulnerability is provided to, for example, the U.S.

24  government which is then used to unlock a phone or a device

25  of a terrorist cell that's planning attack against the
```

Jason Shirk Vol Non-confidential
March 23, 2020

```
 1   United States; would you consider that --
 2                  MS. BINA:  Objection --
 3        Q.   -- bad-faith?  Would you consider that bad --
 4                  MR. LEVINE:  I'm not done with the question
 5        yet.  Thank you.
 6                  MS. BINA:  I'm sorry.  I thought you were
 7        done.
 8        Q.   (By Mr. Levine)  Would you consider that bad-faith
 9   security research?  Go ahead.
10                  MS. BINA:  Objection, improper expert
11        question, improper opinion.
12             You can answer.
13        A.   The issue that I have with that type of reporting
14   is that a vulnerability open to one is open to all.  There
15   is no ability to wall it off for only use for those that
16   have, we'll say, the constitutional authority to perform
17   searches of that nature.  And so it's not the way that I
18   choose to do research.  I understand many do.  And most of
19   their reasons are monetary.  It can be very lucrative
20   personally to do so.
21        Q.   So I don't think that answered my question.  My
22   question was:  Do you believe, in your personal knowledge,
23   that that example would constitute good-faith research?  And
24   I would remind you that you testified earlier that -- when
25   we were discussing the good faith and bad faith -- that it
```

1    the record?

2           MS. BINA:  We can go off the record.

3           MR. LEVINE:  Yes, we can.

4           (Lunch recess taken.)

5           (Ms. Gorton and Mr. Wade left the

6           proceedings.)

7           (Whereupon the testimony from pages 73 to 166

8           has been marked confidential, excerpted and

9           bound separately.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25