UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:19-cv-81160-RS

APPLE INC.,

    Plaintiff,

v.

CORELLIUM, LLC,

    Defendant.

_____/

**CORELLIUM'S REPLY IN OPPOSITION TO APPLE'S RESPONSE TO THE OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT CORELLIUM LLC'S *DAUBERT* MOTION TO PRECLUDE CERTAIN TESTIMONY BY DAVID B. CONNELLY [DE'S 454, 468]**

Defendant, CORELLIUM, LLC ("Defendant" or "Corellium"), pursuant to Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(b)(1)(C), respectfully submits this Reply in Opposition to Apple's Response to Corellium's Objection to a portion of the Magistrate Judge's Report and Recommendation on Defendant Corellium, LLC's *Daubert* Motion to Preclude Certain Testimony by David B. Connelly [DEs 454, 468] (the "R&R"), and in support thereof, states as follows:

**I.  FACTUAL BANKGROUND**

1. On May 11, 2020 Corellium filed its *Daubert* Motion to Preclude Certain Testimony by David B. Connelly and Incorporated Memorandum of Law (the "Motion"). [D.E. 468]. Therein, *inter alia*, Corellium sought to exclude the testimony by Apple's damages expert, Mr. Connelly, on the basis that his methods for reaching his opinions were far too unreliable to admit at trial.

2. On July 29, 2020, the Court issued its Report and Recommendation on Defendant Corellium, LLC's *Daubert* Motion to Preclude Certain Testimony by David B. Connelly [DEs 454, 468] (the "R&R"). [D.E. 610].

3. On August 12, 2020, Corellium filed its Objection to the Court's R&R, whereby Corellium objected to portions of the R&R. [D.E. 622]. Specifically, Corellium objected to the portions of the R&R that found that i) a nexus exists between Mr. Connelly's damages findings

1

and the alleged infringing activity (*see*, R&R at 10), and ii) Mr. Connelly's methods are reliable (*see*, R&R at 10). *Id.*

    4.     On August 26, 2020, Apple filed its Response. [D.E. 663].

    5.     Corellium now files its Reply.

## II.  LEGAL MEMORANDUM

### A.  No Nexus Exists Between Mr. Connelly's Damages Numbers And The Alleged Infringing Activity.

In its objection, Corellium makes clear that the standard by which to determine whether a burden has been met by a damages expert is whether the ***infringing activity*** has a ***causal*** relationship with the alleged profits. *See*, Objection, 3-4; *see also*, *Pronman v. Styles*, 645 Fed. Appx. 870, 873 (11th Cir. 2016) ("the plaintiff must show a causal relationship between the ***infringement*** and ***profits***, and must also present proof of the infringer's gross revenue.") (emphasis added); *see also*, *Montgomery v. Noga*, 168 F. 3d 1282, 1296 (11th Cir. 1999) (citing to the Copyright Act to explain that, "the copyright owner is entitled to recover . . . any ***profits*** of the infringer that ***are attributable to the infringement***.") (emphasis added). The standard is *not* whether there is a single product at issue, nor is that a dispositive factor of the analysis.

Throughout its Response, Apple fails to address whether the actual ***infringing activity*** at issue has any ***causal*** connection to the profits discussed by Mr. Connelly. In fact, the causal relationship between when Corellium's product (CORSEC) is used for Android, or anything other than iOS, has yet to be articulated in this case. Instead, Apple embarks on an effort to convince the Court that merely because a single product is made by Corellium, that such a fact is somehow dispositive of the causal nexus analysis and that all gross profits are automatically caused by the alleged infringement—no matter how disconnected to the alleged infringement they actually might be. This, however, is not the standard. The scope of the alleged infringement (research of iOS on CORSEC) is defined by Exhibit A of the Second Amended Complaint [D.E. 589], which lists the copyright registrations at issue in this case. *See*, Second Amended Complaint ("Complaint"), at Exhibit A to the Complaint. Exhibit A to Apple's Complaint lists the 15 copyright registrations at issue here, each being related to iOS. S*ee*, *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886–87 (2019) (A plaintiff may only present evidence on infringement of asserted copyrights). CORSEC by itself is not infringing and is entirely independent of any

operating system (iOS, Android, or other). Instead, it must be used <u>in connection with an iOS file</u> before "the infringement" occurs. This "infringement" is what must have a causal relationship to the profits under federal law. As stated, the causal nexus for use of CORSEC in any ***non***-iOS capacity has yet to be articulated, in either the R&R or by Apple.

In its Response, Apple argues that "Corellium asserts that Apple bears the burden of determining the precise amount of Corellium's revenues that are attributable to its infringing activities." Response, at 1. Not true. But Corellium does argue that the causal relationship between the infringement and the profits set forth by Mr. Connelly must be satisfied. This simply has not been done because such a relationship between all profits from CORSEC <u>does not physically exist</u> unless iOS is being used. Mr. Connelly has failed to address this necessity for a causal relationship for all profits he is presenting.

In arguing that the "single product" in this case resolves the causal nexus requirement, Apple points to the language in 17 U.S.C. §504, whereby the statute requires:

> In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and <u>the elements of profit attributable to factors other than the copyrighted work.</u>

17 U.S.C. §504 (emphasis added); *see also*, Response, at 2. However, Apple also cites the *Home Design Servs., Inc. v. Turner Heritage Homes, Inc.* case, whereby the Court in that case found that the sale of the home at issue, due to an infringing floor plan, was sufficient to satisfy the causal nexus requirement, but that there were other areas of profit such as rising surrounding land values, location, and square footage that were ancillary aspects to profit. 101 F. Supp 3d 1201 (N.D. Fla. 2015); *see also*, Response, at 4. There are several problems with Apple's argument. First, it is these ancillary areas of profit that are the "elements of profit attributable to factors other than the copyrighted work" contemplated by §504 that sit with the defendant to establish. These "elements of profit attributable to factors other than the copyrighted work" are distinct, however, from the causal nexus must still first be established between the ***infringement*** and the ***profits***. Second, just as in the *Bonner v. Dawson* matter (a case about a single building; cited by both Apple and Corellium), of course the "single product" in the *Home Design Servs*. case (*i.e.*, the home) satisfies the causal nexus requirement because it is the very architectural floorplan of the home that was

infringing. *See*, *Home Design Servs.,* 101 F. Supp 3d, 1201; *see also*, *Inc. Bonner v. Dawson*, 404 F.3d 290 (4th Cir. 2005) (architect sues builder for a building based upon infringing architectural design). This has nothing to do with the fact that there was only one item at issue in those cases, but instead, that in fact, there was a causal nexus between the infringing architectural plans and the profits at issue.

Such an argument by Apple fails to be analogous to the facts here, where the CORSEC product itself is completely independent of any alleged infringement, but only when it is used in connection with iOS does "the infringement," occur. Like the other cases Apple cites in its Response, the "single product" at issue in the *Home Design Servs*. and *Bonner* cases are those respective structures, which are, at their foundation, based upon infringing designs. That is not the case here. The CORSEC product uses zero Apple code or technology to operate. It is 100% independent of anything iOS. It is only when an iOS file (IPSW file) is loaded onto CORSEC, that iOS is implicated and the alleged "infringement" occurs. Indeed, to test this, Apple is in possession of all of the CORSEC source code. Scenarios like this are precisely the scenarios that are impacted by the statute's requirement for a causal relationship between the infringement and the profits, and why "all gross revenues" is simply not appropriate.

It is, in this case, irrelevant whether there is one product or several. Instead, the requirement is that a causal relationship between the infringement and the profits must be established. Such a relationship has not been established, and therefore the burden has not been met. Further, comments by Apple such as "some versions of the Corellium Apple Product are capable of virtualizing the separate Android operating system," and "[Corellium] charges ▬▬ ▬▬▬▬▬▬▬ for iOS virtualization and throws in Android for free," appear to reveal that Apple has a fundamental misunderstanding of the CORSEC product and how it works. *See*, Response, at 3 and 9. For these reasons, and those stated in Corellium's Objection and *Daubert* briefings [D.E.'s 454, 468, and 543], Corellium respectfully submits this objection to the Court's R&R as it relates to the finding of a causal nexus between the allegedly infringing activity and the gross profits asserted by Mr. Connelly.

### B. Each of Mr. Connelly's Methods Are Unreliable.

Next, in its Response, Apple argues that Mr. Connelly's methods are sound. It does so by arguing that merely because Mr. Connelly used unreliable facts, that the Court should ignore this

fact and just look to whether the method, versus the facts upon which the method rests, is reliable. *See*, Response, at 1 and 7. Initially, that is an absurd extrapolation of the *Daubert* standard. Nevertheless, neither the inputs Mr. Connelly uses nor his "methods" are reliable.

"[A]n expert cannot merely aggregate various categories of otherwise unreliable evidence to form a reliable theory of general causation." *In re Abilify (Aripiprazole) Prod. Liab. Litig.*, 299 F. Supp. 3d 1291, 1311 (N.D. Fla. 2018). "While 'general acceptance' of a theory 'is not a necessary precondition to the admissibility of scientific evidence,' the Supreme Court has explained that the trial judge's task is to ensure that an expert's opinion 'rests on a reliable foundation and is relevant to the task at hand.'" *Lee-Bolton v. Koppers Inc.*, 319 F.R.D. 346, 371 (N.D. Fla. 2017) (emphasis added). "Also, *Daubert* cautions that the 'knowledge' requirement which qualifies an expert under Rule 702 'connotes more than subjective belief or unsupported speculation.'" *Id.* "The inquiry is not whether the testimony is 'scientifically correct' but whether, 'by a preponderance of the evidence, it is reliable.'" *Id.*

"To be considered reliable, the expert's weighing process must have been 'based on methods and procedures of science, rather than on subjective belief or unsupported speculation.' Otherwise, the methodology amounts to nothing more than the expert's *ipse dixit*, which the Supreme Court has admonished district courts against admitting into evidence." *In re Abilify*, 299 F. Supp. 3d, at 1311 (emphasis added). "*Daubert* describes the district court's gatekeeping function, [which is] designed to ensure that 'speculative, unreliable expert testimony does not reach the jury.'" *Lee-Bolton*, 319 F.R.D., at 371 (emphasis added); *see also*, *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004) ("speculative belief or unsupported assumptions" fail the reliability prong of the Daubert analysis).

1. Mr. Connelly's Analysis Under 17 U.S.C. §1203.

To argue that an expert may present an allegedly reliable method to a jury despite that method being based on highly speculative or incorrect facts is an absurd interpretation of *Daubert*. The point behind *Daubert* is to *prevent* speculative expert testimony from reaching the jury. *Id.* In this case, Mr. Connelly's methods have already been proven wrong. *See e.g.*, Objection, at 6-7. To be clear, it was shown that while Mr. Connelly relies upon the completely arbitrary and baseless assumption that each Corellium customer uniformly replicates a virtual device every month (*see*, Motion, at 17; *see also*, Connelly, Errata Supp. & Rebuttal Report ("Report") [D.E. 468-1], at 20-

5

21), the one Corellium customer that was deposed in the case, proved that assumption to be wholly inaccurate. *See*, Objection, at 6-7. Indeed, the "virtual device creation rate" among Corellium's customers is unknown as that discovery was not completed by Apple, and instead of simply stating that the fact is unknown, and thus an opinion cannot be drawn from it, Mr. Connelly pulls a number from thin air and incorporates it into his formula. *See*, Objection, at 13; *see also*, Motion, at 18; *see also*, Connelly Deposition [D.E. 468-2], at 210:2-6. Thus, at the very least, as it relates to the 17 U.S.C. §1203 analysis, there is no question that Mr. Connelly's methods have rendered wrong results and thus are, by definition, unreliable. This alone is grounds to reject Mr. Connelly's methods under 17 U.S.C. §1203. Contrary to Apple's arguments, the facts upon which the methods are used, are just as subject to reliability as the methods themselves. *In re Abilify Prod. Liab. Litig.*, 299 F. Supp. 3d, at 1311; *see also*, *Lee-Bolton v. Koppers Inc.*, 319 F.R.D., at 371. Again, the purpose of the *Daubert* analysis is to ensure that "speculative, unreliable expert testimony does not reach the jury." *Lee-Bolton*, 319 F.R.D., at 371. While, of course, the issue of unreliable facts could be addressed on cross-examination, permitting speculative, unreliable expert testimony to bypass *Daubert* and be presented to the jury, goes against the grain of the very purpose of *Daubert*.

2. Mr. Connelly's Analysis Under 17 U.S.C. §504.

As it relates to Mr. Connelly's efforts to quantify damages under 17 U.S.C. §504, and as is more fully laid out in Corellium's Daubert Motion [D.E. 468] and Corellium's Objection [D.E. 622], just a cursory glance at his methods reveals unreliability. In Mr. Connelly's Report [D.E.468-1], Mr. Connelly states:

> Even assuming that as much as 10% of Corellium's revenues after March 2019 have concerned Android features and/or services, *an assumption that seems doubtful* given the declining prices and the small number of supported files, I have estimated that at least ▮▮▮▮▮▮▮, or 97% of Corellium's gross revenues to date have related the Corellium Apple Product.

*See*, Errata Supp. & Rebuttal Report, at 26 (emphasis added). A review of Mr. Connelly's Report reveals that the 10% and 3% (97%) numbers are also pulled from thin air. Mr. Connelly even concedes his 10% assumption is doubtful. *Id.* Conservative or not, this method of simply picking (doubtful) arbitrary numbers is unreliable. To reiterate, "*Daubert* describes the district court's gatekeeping function, [which is] designed to ensure that 'speculative, unreliable expert testimony

does not reach the jury.'" *Lee-Bolton*, 319 F.R.D., at 371. Mr. Connelly only articulated these baseless numbers after it was pointed out that some form of apportionment between Android and iOS was necessary. As stated in the Motion, Mr. Connelly conceded there was no document that reflected a 90% apportionment rate. *See*, Connelly Deposition [D.E. 468-2]; *see also*, Motion [D.E. 468], at 13. This is unreliable testimony and should not be placed before a jury.

3. Mr. Connelly's Analysis To Project Future Revenues.

Finally, as it relates to Mr. Connelly's efforts to project future revenues, Mr. Connelly similarly did no discovery or investigation and simply used whatever umbers were readily available, notwithstanding any grounding in factual reality. Mr. Connelly, applied two "methods:"

> I have computed projected gross revenues of ▮▮▮▮ for 2020 by doubling Corellium's 2019 revenue total of ▮▮▮▮, and prorating the amount through[, and]

> [An] alternative approach on the premise that Corellium's gross revenues in 2020 will be consistent with its ▮▮▮▮ total for 2019.

*See*, Errata Supp. & Rebuttal Report, at 10-11. There is absolutely zero indication that simply doubling 2019 revenue, or otherwise perfectly equaling it, will be even remotely accurate to what Corellium's 2020 revenue is. Further, Mr. Connelly submitted this Report on April 26, 2020—four months into the year in question (2020). *See*, Report [D.E. 468-1], at 29. And Mr. Connelly was only projecting through October 2020, as trial was set in that month—so at the time of Mr. Connelly submitting his opinion about projected 2020 revenue through October 2020, he was already 40% of the way through the "projected" time period. He made no effort whatsoever to use actual 2020 data. As mentioned in Corellium's Objection, indeed the pendency of this instant case took a toll on Corellium's revenues and it is very likely that COVID did as well. None of these easily measurable factors were even considered—just like the real data available to him. Mr. Connelly's methods are unreliable.

C. Conclusion.

While the arguments laid out above are described in greater detail within Corellium's *Daubert* Motion and Objection, and their related briefings, it is clear, that Mr. Connelly's numeric results have already been proven incorrect. This is unsurprising, however, as his methods are each based upon speculation, assumptions, and conjecture. In light of the purpose and analysis of

*Daubert*, Mr. Connelly's opinions should not be placed before a jury. Further, as explained above and in prior briefings, whether there is one product or many, the standard is whether there exists a causal nexus between the infringement and the profits. No such nexus is yet to be articulated in this case and thus, *Daubert* has not been satisfied with respect to Mr. Connelly's opinions in this matter. Accordingly, Corellium submits its Objection to the R&R.

Dated: September 2, 2020          Respectfully submitted,

                         COLE, SCOTT & KISSANE, P.A.
                         *Counsel for Defendant*
                         Esperante Building
                         222 Lakeview Avenue, Suite 120
                         West Palm Beach, Florida 33401
                         Telephone (561) 612-3459
                         Facsimile (561) 683-8977
                         Primary e-mail: justin.levine@csklegal.com
                         Secondary e-mail: lizza.constantine@csklegal.com

By:  *s/ Justin Levine*
      JONATHAN VINE
      Florida Bar. No.: 10966
      JUSTIN B. LEVINE
      Florida Bar No.:  106463
      LIZZA C. CONSTANTINE
      Florida Bar No.:  1002945

         *and*

HECHT PARTNERS LLP
*Counsel for Defendant*
20 West 23rd St. Fifth Floor
New York, NY 10010
Tel: (212) 851-6821
David L. Hecht *pro hac vice*
Email: dhecht@hechtpartners.com
Minyao Wang *pro hac vice*
Email: mwang@hechtpartners.com
Conor McDonough pro hac vice
Email: cmcdonough@hechtpartners.com

CASE NO.: 9:19-CV-81160-RS

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on September 2, 2020, a true and correct copy of the foregoing has been transmitted by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

                                                 /s/ Justin B. Levine
                                                 Justin B. Levine