UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:19-cv-81160-RS

APPLE INC.,

    Plaintiff,

v.

CORELLIUM, LLC,

    Defendant.

_____/

**CORELLIUM'S OMNIBUS REPLY IN SUPPORT OF ITS MOTIONS IN *LIMINE*
AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Corellium, LLC ("Corellium"), pursuant to this Court's Order dated September 3, 2020 [D.E. 712], by and through the undersigned counsel, files its Omnibus Reply in Support of its Motions in Limine and Incorporated Memorandum of Law, and in support states as follows:

I.  **Replies in Support of Corellium's First, Second and Third Motion**

Replies in support of Corellium's First, Second and Third Motion in *Limine* are not required, as the Parties have stipulated to those motions. D.E. 680.

CASE NO.: 9:19-CV-81160-RS

**II.** **Reply in Support of Corellium's Fourth Motion in *Limine* to Exclude Argument, Testimony, or Evidence of the Identities of Azimuth Security LLC's or L3Harris Technology, Inc.'s Clients ("Fourth Motion")**

Apple agrees that "there is no evidence of customer identities to exclude," yet it still suspiciously opposes the Fourth Motion. D.E.'s 677, 694 ("Response"). Corellium is not seeking to exclude documents that were produced by Azimuth Security LLC ("Azimuth") during discovery, the name of the countries where Azimuth's customers are located, or that Azimuth's customers are government agencies. To be specifically clear, Corellium is narrowly seeking to exclude the *identities* of Azimuth's customers pursuant to this Court's Order relating to Non-Party L3 Harris Technology, Inc.'s Motion to Quash. D.E 247 ("Order"). Particularly, as it relates to the identities of Azimuth's Customers, the Court held that "Apple had not met its burden to obtain the identity of the two government agencies." *Id*., at 6.

As demonstrated in its Response, Apple may seek to introduce argument, testimony or evidence that could identify or *presume* to identify Azimuth's customers. Indeed, Apple claims that there is "no basis to exclude other evidence simply because it is 'related to' the identities of those customers." *See* Response. This appears to be a surreptitious attempt to go against the grain of the Court's Order. Moreover, Apple cites to Corellium's corporate representative deposition of Amanda Gorton where she explains that ███████████████████████ ███████████████████████████████████████ *See*, Ex. C to Response, D.E. 694-3, at 107:25 – 108:2. This type of testimony is the fundamental reason why the identities of Azimuth's customers should be excluded from trial, as Corellium does not know how Apple intends to introduce it, or whether Apple intends to make presumptions as to which government agencies are Azimuth's customers, thereby engaging in trial by ambush. *See Berry v. Fla. International Univ. Bd. Of Trustees*, 2008 WL 203362, at *2 (S.D. Fla. Jan. 23, 2008) ("For years Courts throughout the land have been charged with eliminating 'trial by ambush'" to eliminate surprise at trial); s*ee also Bostick v. State Farm Mutual Automobile Ins. Co*., 2017 WL 4518665, at *2 (M.D. Fla. Oct. 10, 2017) (explaining that the Federal Rules of Civil Procedure "make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent"). Accordingly, this Court should grant Corellium's Fourth Motion to protect Corellium from a trial by ambush.

**III.    Reply in Support of Corellium's Fifth Motion in *Limine* to Exclude Argument, Testimony or Evidence Related to Vice Articles and Other Press Regarding this Case ("Fifth Motion")**

Apple incorrectly states "Corellium does not identify any specific material sought to be introduced or excluded or any purpose for which it may be used." D.E. 666. Instead, Corellium's citation to the "six press articles published by Vice, Forbes and Wired in its Second Amended Complaint"[1] provides a sufficiently specific designation of the press, articles, and issues Corellium is seeking to exclude.[2] These posts and publications are inadmissible hearsay, as they include unverified statements of the respective reporters and lack any surrounding circumstances to infer reliability.[3] Corellium fears Apple will introduce these articles as substantive evidence at trial.

Apple's argument is an inaccurate conclusion that Corellium fails to "identify [the] specific material sought to be introduced or excluded or any purpose for which it may be used." D.E. 666. First, as stated above, Corellium has appropriately and properly identified the press and media sources Apple consistently references in its Amended Complaint or throughout this case. Second, Corellium does not know the purpose or reason Apple would attempt to introduce such evidence; as Corellium cannot predict Apple's legal and tactical decisions in the presentation of its case. Third, the parties have not yet submitted their exhibit lists and therefore, it is impossible for Corellium to know at this time if Apple will or will not attempt to introduce a specific article or media piece at trial. Fourth, Apple has failed to identify any reporter or journalist they intend to call at trial in order to establish the reliability of the articles cited in Apple's Amended Complaint. Fifth, Corellium simply seeks to prevent Apple from attempting to introduce such evidence at trial because it is hearsay. Sixth, the Court should not defer until trial because, if left until trial, there is a risk that the attempted introduction of such evidence, followed by an objection by Corellium's counsel may prejudice the jury against Corellium to the extent that it will appear as if Corellium is attempting to hide evidence from the jury.

---

[1] *See* D.E. 644 at 2, footnote 1.
[2] *See* Second Amended Complaint, [D.E. 589], at p. 2, 7, 13, 15, 16 and 17.
[3] *See United States v. Michtavi*, 155 F. App'x 433, 435 (11th Cir. 2005) ("[A] newspaper article is hearsay, and in almost all circumstances is inadmissible"); *Williams v. Consolidated City of Jacksonville*, 2006 WL 305916, at *10 (M.D. Fla. Feb. 8, 2006) ("The articles are the creation of newspaper reporters who are not listed as witnesses in this case, and they are rife with inadmissible hearsay, as they would be offered primarily to establish the truth of their contents").

IV. **Reply in Support of Corellium's Sixth Motion in *Limine* to Exclude All Legal Conclusions and Statements of Law by Witnesses ("Sixth Motion")**

Apple agrees that legal conclusions by lay witnesses are improper and inadmissible at trial. *See* D.E. 667. Thus, this Court should grant Corellium's motion *in limine* to the extent that legal conclusions by lay witnesses are inadmissable. Notably, Apple does not reference Corellium's request to exclude the legal opinions of expert witnesses. Nevertheless, this Court should grant Corellium's motion *in limine* in a similar respect.

Apple also inaccurately claims Corellium admits that a lay witness's understanding of a law is inadmissible to the extent it caused that witness to act or not to act. *See* D.E. 667. Instead, the statement to which Apple refers actually *distinguishes* between a lay witness's testimony regarding his or her personal understanding of the law to the extent it caused that witness to act or not to act, *versus* an inadmissible legal conclusion as to how the law should be applied to this case.[4] These are very different types of testimony. Rule 602 "requires a witness to testify from personal knowledge, and Rule 701 provides the limited occasion when a lay witness may provide an opinion.[5] Corellium does not seek to limit fact witnesses from testifying as to their personal knowledge or understanding of the law to the extent it relates to an issue in this case. Such are not inadmissible legal conclusions but rather, testimony as to one's personal knowledge.

To the extent the parties' expert witnesses should also be precluded from providing legal conclusions, Corellium submits that such evidence should be excluded in accordance with the several Reports and Recommendation provided by the Magistrate Judge.[6]

---

[4] *See* Corellium's Corrected Motion *in Limine* to Exclude All Legal Conclusions and Statements of Law By Witnesses [D.E. 657] ("In that regard, Corellium does not seek to limit fact witnesses from opining on what their understanding of what the law may have been to the extent that understanding is relevant to an issue in this case, such as causing that witness to act or not act, however, other conclusory statements of law should be precluded. *Blanco v. Capform, Inc.*, 2013 WL 118171, at *7 (S.D. Fla. 2013) ("Statements by lay witnesses that include legal conclusions…are improper and inadmissible at trial")) (emphasis added).

[5] The testimony must be based on the witness' personal perception and it must not be based on scientific, technical, or other specialized knowledge." *Tim Hortons USA, Inc. v. Singh*, 2017 WL 4837552, at *16 (S.D. Fla. 2017). "Such lay opinion testimony is permitted under Rule 701 because it has the effect of describing something that the jurors could not otherwise experience for themselves by drawing upon the witness's sensory and experiential observations that were made as a first-hand witness to a particular event." *Scaccetti v. NCL (Bahamas) Ltd.*, 2018 WL 6110999, at *1 (S.D. Fla. 2018).

[6] D.E.'s 609, 610, 611, 612, and 613.

**V.     Reply in Support of Corellium's Seventh Motion in *Limine* to Exclude, Argument, Testimony, or Evidence Related to the Parties' Settlement Efforts ("Seventh Motion")**

Corellium's Motion to prohibit the parties from offering argument, testimony or evidence related to settlement discussions, including the efforts of third-party individuals in assisting with such negotiations, is properly specific, establishes the undue prejudice of introducing such evidence, and should be granted.

Apple in its Response incorrectly claims that "Corellium fails to explain why normal application of [Rule 408] will not suffice." D.E. 668 ("Response"). In fact, Corellium cited the specific reasons why Rule 408 is not sufficient to protect from undue prejudice and confusion of the jury. D.E. 656. One of the reasons being that certain non-parties participated, or encouraged the Parties to engage, in settlement communications, thus, Corellium is seeking to exclude the communications had with those non-parties relating to settlement communications in the instant action. Such communications, or the discussion about certain non-parties, may only lead to confusion of the issues by the jury. *See Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2011 WL 2295269, at *9 (S.D. Fla. June 8, 2011) (encouraging exclusion of information relating to the selling of a business "to the *extent such facts occurred in connection with settlement negotiations*").

> Federal Rule of Evidence 408 fosters free and full discussion in connection with settlement negotiations, if a party had to worry that its settlement statements could be used against it in an opponent's trial case, parties could be expected to refrain from partaking in full and frank discussions of the issues relating to settlement.

*Jeld-Wen, Inc. v. Nebula Glass Int'l Inc.*, 2008 WL 11333315, at *2 (S.D. Fla. March 6, 2008) (citing to *Ramada Development Co. v. Rauch*, 644 F.2d 1097 (5th Cir. 1981)). Moreover, Corellium seeks to exclude any facts relating to or in connection with settlement negotiations. In the Response, Apple states that "settlement communications" can be introduced "for another purpose." *See* Response. However, Apple fails to provide in what other circumstance settlement negotiations can be used at trial, and thus, supports the reason why the Seventh Motion should be granted. *See Eli Research, LLC v. Must Have Info Inc.*, 2015 WL 6501070, at *2 (S.D. Fla. Oct. 22, 2015) (granting motion in limine to exclude the mentioning of *settlement offers*, compromise, or failure to offer when "Defendants [did] not offer what other circumstance settlement offers can be used for at trial.") (emphasis added). Thus, Corellium's Seventh Motion should be granted.

**VI.    Reply in Support of Corellium's Eighth Motion in *Limine* to Exclude Argument or Testimony that Attributes Mr. Wade's Personal Tweets to Corellium ("Eighth Motion")**

Corellium does not dispute that Chris Wade's tweets are admissible at this time, but instead seeks to prevent testimony or evidence that his personal tweets are attributable to Corellium. Mr. Wade, merely by virtue of his employment, does not speak for Corellium unless he is acting within that particular capacity.

First, Corellium does not challenge the admissibility of Chris Wade's tweets because Corellium intends to call Chris Wade as a fact witness at trial. Thus, any argument about hearsay can be rectified at trial. Second, Apple's conclusion that "Mr. Wade is an agent, officer, and employee of Corellium[,]" does not make Chris Wade's personal Twitter account an indubitable extension of Corellium or Corellium's Twitter account. [D.E. 678]. Notably, the clear difference between business and personal Twitter accounts is a critical feature of the platform.[7] Chris Wade can discuss his work on Twitter—however, simply because he does so, does not mean each of his tweets become attributable to Corellium. Apple's citation in its Response declaring that managerial employees are "typically considered parties" does not cure Apple's conclusory claim that Chris Wade's personal tweets fall within the scope of his employment, thereby automatically branding them as party admissions. Apple could have brought claims against Chris Wade when they commenced this action. Since they did not, Apple now attempts to characterize Chris Wade's personal tweets as "admissions by a party opponent" under the theory of agency. Apple's analysis is backwards. Corellium is the named party and any tweets from Chris Wade's personal account, even if they relate to Corellium, are not automatically attributed to Corellium. Third, Apple's contention that Corellium "implicitly acknowledg[es] their status as party statements" is wholly incorrect. Again, Corellium does not challenge Mr. Wade's tweets as inadmissible hearsay at this time because he will be at trial to be examined on his personal social media activity to the extent it is relevant, however, Apple should be precluded from attributing his tweets to Corellium.

---

[7] Alexandra L. Jamel, Mixing Business with Pleasure: Evaluating the Blurred Line Between the Ownership of Business and Personal Social Media Accounts Under S 541(a)(1), 33 Emory Bankr. Dev. J. 561, 576 (2017). ("Unlike Facebook, Twitter specifically allows for the creation of a business profile *by* the business; an individual person does not need to be associated with a business account on Twitter. By allowing business entities to create their own accounts, Twitter avoids Facebook's problematic lack of a clear distinction between individual accounts and business Pages").

VII.  **Reply in Support of Corellium's Ninth Motion in *Limine* to Exclude Argument, Testimony, or Evidence Related to the Notion that the Corellium Apple Product is Used for Any Purposes Other Than Security Research ("Ninth Motion")**

The Corellium Apple Product was designed, marketed, and sold for security research. *See*, Ex. 1, Corellium's Security Research Datasheet; *see also*, Gorton Deposition:

**Q. What about the development of applications other than security-related?**



Gorton Tr., [D.E. 472-25], 118:12-24. Apple's position that when the Product is used for "criticism, improvement, testing and development of iOS" is not security research, could not be more misplaced. In fact, those are quintessential security research activities. 37 C.F.R. §201.40(b)(11).

Apple correctly claims that under Corellium's fair use defense and Apple's DMCA claims, the purpose and use of the Corellium Product is directly at issue, however, case law is clear that the "purpose and use" to support those claims is the purpose designed by the owner entity and the use of the same.[8] Indeed, what other unintended and incidental uses people might use the product for (such as using a hammer as a weapon versus a tool) is not at issue in copyright infringement, DMCA claim, or the fair use defense. In *Sony*, the Supreme Court explained that Sony sold a VCR that could be used to "illegally copy protected material," and while Sony knew of its customer's potential uses, the Supreme Court found that fact insufficient to make Sony an infringer and held that Sony was not liable for its customers' acts of infringement.[9]  Lastly, Apple's contention that Corellium's customers "may be engaged in the sale of exploits" simply has no bearing on the argument at hand. Here, Corellium is seeking to exclude any unrelated, possible, or speculated uses Apple may try to inject to confuse and mislead the jury.  Neither of Apple's claims or Corellium's fair use defense depend on what the "possible" or "speculated" uses, but rely on the "purpose" and "use" by the alleged infringing company.

---

[8] *3Lions Pub., Inc. v. Scriptnetics, LLC*, 2015 WL 3935945, at * (M.D. Fla. June 26, 2015) (finding that "the purpose and character of the use, weighs in favor of [Plaintiff] because the record reflect that [Defendant] *used* the copied work to promote *its* [] product on its website.").

[9] *See Sony Corp. of America v. Universal City Studios, Inc.*, 465 U.S 417, 104 S. Ct. 774 (1984); *see also TracFone Wireless, Inc. v. Anadisk LLC*, 685 F.Supp.2d 1304, 1317 (S.D. Fla. 2010).

**VIII.** **Reply in Support of Corellium's Tenth Motion in *Limine* to Exclude Argument, Testimony, or Evidence of Expert Opinions Regarding Corellium's Advertising Materials ("Tenth Motion")**

Corellium seeks to preclude specific testimony of Apple's experts, Dr. Nieh and Mr. Connelly, regarding their respective interpretations and meanings of Corellium's marketing materials. Corellium *does not* seek to preclude the testimony of Dr. Nieh and Mr. Connelly regarding the information reflected on those materials, nor the experts' reliance thereon, but rather, Corellium seeks to exclude testimony from the experts regarding opinions as to the interpretation behind and of, and motivating factors or reasoning behind the advertising materials.

Apple's assertion that Corellium "cites no authority" as the basis for denying this motion *in limine* is simply untrue. [10] *See* D.E. 673, D.E. 649. Apple, however, responds by citing case law where expert witnesses were permitted to *consider* marketing materials in determining damages. Corellium is not challenging Apple's expert's ability to rely upon such materials. Instead, Corellium seeks to preclude Apple's experts from extrapolating interpreted meanings from such materials. As stated in the Tenth Motion, Dr. Nieh and Mr. Connelly are not marketing experts. Corellium agrees Dr. Nieh may testify to his "*observation* that the Corellium product is marketed as [allegedly] circumventing Apple's technical protection measures." D.E. 673 (emphasis added). However, as to any specific extrapolated meaning from or rationale *behind* the information provided in that marketing material, such as Corellium's intent or decision making, should be excluded.[11] *Second*, Apple mischaracterizes Corellium's argument and attempts to create an issue where none exists by claiming this motion is an improper attempt to bring "an untimely *Daubert* motion." *See* D.E. 673. Instead, this Motion is seeking to limit prejudicial testimony. Apple further, albeit inaccurately, explains Corellium did not challenge the testimony of Dr. Nieh or Mr. Connelly in bringing its *Daubert* motions. *Id.* In reality, Corellium *did* challenge Mr. Connelly's causal nexus analysis, which is premised on the supposed meaning behind the content of Corellium's marketing brochures. *See* D.E. 452.

---

[10] Apple claims that courts routinely allow *damages* experts to offer testimony regarding the *impact* of advertising materials. *See* D.E. 673. However, "[t]he question of intent or motive is a classic jury question and not one for experts." *In re Trasylol Prod. Liab. Litig.*, 2010 WL 4259332, at *8 (S.D. Fla. Oct. 21, 2010).

[11] Such testimony is not based on any particular expertise, as Apple concedes, and is therefore, not helpful to the trier of fact under Rule 702. It is also highly prejudicial under Rule 403 as it is coming from an expert. The same is true for Mr. Connelly.

9

### IX. Reply in Support of Corellium's Eleventh Motion in *Limine* to Exclude Argument, Testimony, or Evidence Related to Apple Expert Michael Siegal's Conclusory Legal Opinions ("Eleventh Motion")

Corellium's Eleventh Motion should be granted.[12] Under Rule 403, a court may exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Ostrow v. GlobeCast Am. Inc.*, 825 F. Supp. 2d 1267, 1274 (S.D. Fla. 2011).[13] In this case, as stated in the Eleventh Motion, Congress has been very clear in its definition of "good faith security research." 37 C.F.R. §201.40(b)(11) provides a codified, specific, and lengthy definition of "good faith security research." Notably absent from the statutory definition is *any* requirement for a researcher to disclose their findings to the software vendor. Similarly, the DMCA, 17 U.S.C. §1201(j)(1), provides a codified definition of "security testing." Again, notably absent from that instruction is *any* requirement for a researcher to disclose their findings to the software vendor. The law on this issue is clear. To provide a different legal definition to the jury, which imposes additional supposed "requirements," is a legal conclusion. Both parties have agreed that testimony of legal conclusions, by experts and fact witnesses, should be excluded.

Apple, through Mr. Siegel, seeks to include testimony of an arbitrary definition of a critical term in this case that directly contradicts established codified language by adding additional supposed legal requirements. Such testimony risks significant unfair prejudice by, "confusion of the issues . . . [and] misleading the jury," as to what is required. What Apple seeks to do here is precisely confusion of the issues by instructing the jury, through expert testimony, of additional, non-existent requirements that industry participants are supposed to be allegedly following. To permit such testimony would be adverse to the already-established language and serve to unfairly prejudice Corellium in a misleading presentation to the jury.

---

[12] It is notable that while Apple has claimed the instant issue has been resolved, such is not the case. Magistrate Matthewman has provided a Report and Recommendation ("R&R") as it relates to Mr. Seigel [D.E. 613], but the Court has not ruled on that R&R, nor on this particular issue.

[13] While "courts must 'look at the evidence in a light most favorable to its admission,'" (*Id.*) ". . . Rule 403's 'major function . . . is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" *AIM Recycling of Fla., LLC v. Metals USA, Inc.*, 2020 WL 236719, at *2 (S.D. Fla. Jan. 15, 2020).

X.  **Reply in Support of Corellium's Twelfth Motion in *Limine* to Exclude All References, Evidence and Testimony Relating to the Apple Developer Program Alleged Uses for Security Research ("Twelfth Motion")**

Corellium's Twelfth Motion should be granted because the Apple *Developer* Program is used for app *development*, not security research. To the contrary, the Apple *Security* Device Program is used for *security* research. *See* D.E. 472-1, Krstic's Tr., 89:6-8.[14] The Apple Developer Program is a program that assists app developers with developing third-party applications. *Id.*, at 89:6-8, 113:18-24 ("The Apple developer program is the program in which all third-party developers writing apps for Apple platforms has to be a member.") App development is a wholly distinct activity than security research, hence why Apple has two separate and wholly distinct programs for each activity. *See*, Ex. 2, Firlik Tr., 59:5-22.

Apple claims that by citing Mr. Andrews' deposition testimony in the Motion, that Corellium is "cherry-pick[ing] quote[s] from Mr. Andrews." However, Mr. Andrews is Apple's 30(b)(6) representative, and no other witness, document, or evidence has even suggested that the Apple Developer Program has or will have anything to do with security research. Indeed, Apple has presented no such evidence. However, it is in Apple's interest, in light of the highly technical nature of this case, to confuse the jury into believing that app development and security research go hand-in-hand or otherwise are one in the same. They are not. Under Rule 403, a court may exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Ostrow v. GlobeCast Am. Inc.*, 825 F. Supp. 2d 1267, 1274 (S.D. Fla. 2011).[15] Here, the only reason for Apple to now suggest that the Apple Developer program incorporates security research is to confuse the jury as to its established purpose and functionality. Accordingly, Corellium's Motion should be granted.

---

[14] "A. In fact, it's primarily for security research purposes and the name of that program as announced is the Apple Research Security Device Program."

[15] "Moreover, in determining whether evidence should be excluded under Rule 403, courts must 'look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its prejudicial impact.'" *Id.* However, "Rule 403's 'major function ... is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" *AIM Recycling of Fla., LLC v. Metals USA, Inc.*, 2020 WL 236719, at *2 (S.D. Fla. Jan. 15, 2020).

**XI.   Reply in Support of Corellium's Thirteenth Motion in *Limine* to Exclude All References, Evidence and Testimony Relating to Any of Apple's Copyrights Beyond Those Identified in Exhibit A to Second Amended Complaint ("Thirteenth Motion")**

Corellium's Thirteenth Motion should be granted. [ECF 652]. Apple intends to present evidence of infringement of iOS with respect to iOS versions before version 9.0, which are specifically excluded from the registrations-in-suit as framed by Apple's own pleadings. Such evidence, therefore, is irrelevant to the instant issues, and even if relevant, would be prejudicial.

Corellium's Thirteenth Motion identifies evidence with substantial specificity. The court in *Centre Hill*, the case cited by Apple, denied a motion *in limine* because it sought to broadly exclude evidence as to an entire disputed issue, fraud.[16] Corellium has identified specific evidence that it seeks to exclude as irrelevant and prejudicial: evidence related to computer code, animations, features, and versions that were excluded from Apple's asserted registrations because they predate iOS 9.0. Apple's alleged copyright registrations expressly exclude and disclaim all prior versions, they do not merely "describe" them. Apple's claims that the excerpt on the second page of the Thirteenth Motion "describes" or "identifies" iOS 8.4 and prior versions. ECF 670 at 1 (citing Thirteenth Motion at 2). This is a misleading claim. The line where this text is found in the registration is labeled "Material excluded from this claim." This express exclusion, part of Apple's bargain with the copyright office, cannot be mistaken for an "identification," "description," or for any other intent to include those prior versions within the scope of the registration. Thirteenth Motion at 2. Apple cannot now claim that the text stands alone, separate from its label. The exclusion would have no meaning if Apple could allege infringement of "iOS 8.4 and prior versions of iOS software" using this registration.

Evidence of the history and creation of iOS and of alleged illegal trafficking under the DMCA as it pertains to prior versions should also be excluded pursuant to FRE 403.[17] *See* Motion at 2. Thus, any discussion of computer code, animations, features, or versions prior to iOS 9 would have little value and would waste time and confuse the jury.

---

[16] *See* ECF 670 at 1 (citing *Centre Hill Cts. Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, 2020 WL 496065, at *2–3 (S.D. Fla. Jan. 30, 2020) ("A categorical bar on evidence of alleged fraud or misrepresentation by Plaintiff's representatives is unjustified.").

[17] A finder of fact would assume that they can include all versions of iOS presented at trial in the infringement analysis. Corellium would be prejudiced because it lacks the ability to make the distinctions between asserted and unasserted versions, Apple has not provided such discovery as it was not at issue. Apple has not asserted that Corellium's services even include versions of iOS prior or 9, nor could it.

**XII.    Reply in Support of Corellium's Fourteenth Motion in *Limine* to Exclude All References, Evidence and Testimony Relating to Apple's iOS Service Licensing Agreements (SLAs) ("Fourteenth Motion")**

Apple's iOS [Software] Licens[e] Agreements (SLAs) are not relevant. There was no mention of SLAs in Apple's Amended Complaint. Nor was its "Buddy" program ever mentioned. The "Buddy" program is merely a screen, which may prompt iPhone/iPad users to accept Apple's licensing terms, as seen below, after iOS is installed and running on an iPhone/iPad. It has absolutely no bearing on the rights or issues in this case, which are statutory.



No precedent exists wherein a software license agreement that "stops ordinary consumers from accessing [software] by presenting a binding contract…which they must digitally accept or they will not be given access…"[18] could be considered a technological measure under 17 USC § 1201. D.E. 671. The terms of Apple's SLA can only bind those who expressly agree to it and cannot limit the rights of those who do not agree to it. Th*e JCW Software, LLC v. Embroidme.com, Inc.* case cited by Apple involves the use of an "Unlock Mechanism" for the software at issue in that case, which uses an "Unlock Key," as well as a ***cause of action*** alleging breach of an End User License Agreement (which, critically, Apple has not alleged here). 2012 WL 13015051, at *16 (S.D. Fla. May 29, 2012); *see also* Case No. 10-cv-80472, D.E. 33; Complaint, at p. 12. An unlock mechanism with a digital key that provides access is completely unlike presenting a user with an SLA for digital acceptance that relates to outlining the rights related to use.

---

[18] The relevant ordinary consumer in this case would be a user of the Corellium product, not Apple's iPhone or iPad devices.

**XIII.    Reply in Support of Corellium's Fifteenth Motion in *Limine* to Exclude All References, Evidence and Testimony Relating to Evidence of Apple's Secure Boot Chain ("Fifteenth Motion")**

Corellium's Fifteenth Motion should be granted. D.E. 654. Apple has improperly attempted to include its complex "secure boot chain" as an alleged technological measure under 17 U.S.C. §1201 in this case. Its complexity coupled with its irrelevance is precisely why the inclusion of the secure boot chain in this case would be highly prejudicial. Apple will introduce it only to mislead the jury.

The secure boot chain is a function that enforces the rights that Apple obtains for itself through its contractual license agreement, *not* from any statutory rights under copyright law or the DMCA. It is therefore irrelevant to its DMCA claims and must be excluded. Evidence that is not relevant to any issue in the case should be excluded. Apple's claim that this Motion is merely a rehashing of Corellium's position on motions for summary judgment is, in that regard, unfounded.

Corellium's Motion does not merely dispute the fact that the secure boot chain is not a "technological measure" that controls "access" to a work, as Apple claims. D.E. 675. Corellium instead has asked this Court to preclude Apple from presenting testimony or argument relating to the secure boot chain because it would confuse the issues in this case, attempting to stretch the DMCA to provide Apple with the right to restrict how and where iOS is executed—something that is *not* contemplated by the DMCA. Naturally, Apple must limit evidence of technological measures to those that protect rights under copyright law and the DMCA.

No statute or case supports Apple's position that it can restrict how and where iOS is executed. Under at least Federal Rules of Evidence 402 and 403, the Court should not allow Apple to confuse issues or mislead the jury by conflating hardware restrictions on its own devices, which are not at all relevant to its claims here, with rights that Apple is entitled to protect under the DMCA. Accordingly, Corellium's Fifteenth Motion should be granted.

Dated: September 16, 2020　　　　　　　Respectfully submitted,

                                          COLE, SCOTT & KISSANE, P.A.
                                        *Counsel for Defendant CORELLIUM, LLC*
                                        Esperante Building
                                        222 Lakeview Avenue, Suite 120
                                        West Palm Beach, Florida 33401
                                        Telephone (561) 612-3459
                                        Facsimile (561) 683-8977
                                        Primary e-mail: jonathan.vine@csklegal.com
                                        Primary e-mail: justin.levine@csklegal.com
                                        Primary e-mail: lizza.constantine@csklegal.com

                              By:  */s/ Justin Levine*
                                        JONATHAN VINE
                                        Florida Bar. No.: 10966
                                        JUSTIN B. LEVINE
                                        Florida Bar No.:  106463
                                        LIZZA C. CONSTANTINE
                                        Florida Bar No.:  1002945

                                              *and*

                                        HECHT PARTNERS LLP
                                        *Counsel for Defendant*
                                        125 Park Ave, 25th Floor
                                        New York, NY 10017
                                        Tel: (212) 851-6821
                                        David L. Hecht *pro hac vice*
                                        Email: dhecht@hechtpartners.com
                                        Maxim Price *pro hac vice*
                                        Email: mprice@hechtpartners.com

CASE NO.: 9:19-CV-81160-RS

## **CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that on September 16, 2020, the foregoing document was filed electronically with the Clerk of the Court using CM/ECF. It is also certified the foregoing document is being served on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or by some other authorized manner, or a combination thereof, so as to comply with the requirements of Local Rule 5.4 and other applicable rules and procedures.

*/s/ Justin B. Levine*
Justin B. Levine

## **SERVICE LIST**

Martin B. Goldberg
mgoldberg@lashgoldberg.com
rdiaz@lashgoldberg.com
Emily L. Pincow
epincow@lashgoldberg.com
gizquierdo@lashgoldberg.com
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL 33131

Sarang Vijay Damle (*pro hac vice*)
sy.damle@lw.com
Elana Nightingale Dawson (*pro hac vice*)
elana.nightingaledawson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004

Andrew M. Gass (*pro hac vice*)
andrew.gass@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

CASE NO.: 9:19-CV-81160-RS

Jessica Stebbins Bina (*pro hac vice*)
jessica.stebbinsbina@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067

*Attorneys for Plaintiff,*
*Apple Inc.*