UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-81160-CIV-SMITH

APPLE INC.,

    Plaintiff,

v.

CORELLIUM, LLC,

    Defendant.

_____/

### ORDER GRANTING IN PART APPLE INC.'S MOTION TO DISMISS

This matter is before the Court on Plaintiff Apple Inc.'s Motion to Dismiss Corellium, LLC's Counterclaims [DE 608], Corellium, LLC's response [DE 619], and Apple Inc.'s reply [DE 620]. Apple Inc.'s ("Apple") Second Amended Complaint alleges claims for copyright infringement and violation of the Digital Millennium Copyright Act. In response to the Second Amended Complaint, Corellium LLC ("Corellium") filed its Answer, Affirmative Defenses, and Counterclaims to Apple's Second Amended Complaint [DE 599]. Corellium's twelve-count[1] Counterclaim seeks declaratory, injunctive, and monetary relief. Apple's Motion seeks to dismiss Counts I through X of the Counterclaim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the Motion is granted in part and denied in part.

**I.**     **THE COUNTERCLAIM**

In the fall of 2016, Apple announced its Bug Bounty Program, which offers external security researchers cash rewards for finding critical security vulnerabilities, i.e. bugs, in Apple's iOS operating system. The Bug Bounty Program is governed by the "Apple Security Bounty

---

[1] The Counterclaim appears to contain a numbering error. There is no Count XI in the Counterclaim but there is a Count XII and a Count XIII.

Program Policy" ("Program Policy"), which is a proposed course of action, not a contract or agreement.

The Program Policy promises it "will pay cash rewards for security vulnerabilities found in specific Apple services and products, to researchers who abide by the guidelines" of the program. The Program Policy further states that "[p]ayments are at Apple's sole discretion," "[r]ewards are granted solely at the exclusive discretion of Apple," "[t]he terms, program scope, and payments are all subject to change at Apple's sole discretion," and "[t]he program may be terminated at any time." Additionally, a participant in Apple's Bug Bounty Program is asked to keep his or her "involvement with the program confidential." Before disclosing any information about an issue reported under the Bug Bounty Program to other parties, a participant is also required to let Apple validate the report, diagnose the vulnerability, implement a fix or other corrective measure, validate the fix against all affected platforms, and distribute the fix to its customers. The Program Policy also asks participants to share any public comments about the reported bug with Apple before releasing those comments publicly. In order to receive payment for a submitted bug, which now can be up to $1,000,000, the bug must be: (1) present in the most recent version of iOS; (2) accompanied by a proof of concept; and (3) the first external report of the bug.

Initially, a security researcher had to be invited by Apple to participate in the Bug Bounty Program. The program is now, however, open to all security researchers. In April 2017, Apple invited Corellium's co-founder, Chris Wade ("Wade"), to join the Bug Bounty Program. In September 2017, Wade notified Apple that he was submitting new bugs to Apple on behalf of his new startup, Corellium, and Apple agreed that Corellium could be paid directly for its submissions. Thereafter, Corellium, submitted seven bugs to the program – three on November 13, 2017; two on January 23, 2018; and two on September 30, 2019. Apple benefited from Corellium's bug

submissions. Despite benefitting, Apple has not paid Corellium for these bugs, which have a minimum value under the Program Policy of $300,000.

As a result, Corellium filed its Counterclaim seeking declaratory, injunction, and monetary relief. Corellium's Counterclaim alleges twelve counts: Counts I and II for declaratory judgment pursuant to 28 U.S.C. § 2201; Count III for constructive fraud in violation of California Civil Code, section 1573; Count IV for constructive fraud under Florida common law; Count V for unlawful business practice: constructive fraud in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; Count VI for unfair business practices in violation of the UCL; Count VII for deceptive and unfair trade practices in violation of the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*; Count VIII for unjust enrichment/quantum meruit under California common law; Count IX for unjust enrichment/quantum meruit under Florida common law; Count X for unlawful business practice: unjust enrichment/quantum meruit in violation of the UCL; Count XII[2] for breach of contract under California common law; and Count XIII for breach of contract under Florida common law. Apple seeks to dismiss Counts I-X of the Counterclaim, all non-contract claims.

## II. DISCUSSION

### A. Apple's 12(b)(1) Motion

Apple first argues that Corellium's claims for declaratory and injunctive relief should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). Apple maintains that Corellium lacks standing to pursue declaratory or injunctive relief because Corellium has not alleged facts showing a substantial likelihood that it will suffer injury in the future. For the reasons, set forth below, Corellium lacks standing to bring its Declaratory Judgment Act claims, Counts I and II, and to bring its claims for injunctive relief under the under the UCL and FDUTPA.

---

[2] As noted earlier, there is no Count XI in the Counterclaim.

3

### *i.    Declaratory Judgment Act Claims*

In Count I of the Counterclaim, Corellium asks the Court to declare that Apple's Program Policy is not an enforceable contract or agreement, any purported consideration is illusory, and, therefore, there is no binding or enforceable agreement between the parties.  Count II seeks a declaration that there is no binding or enforceable agreement between Apple and Corellium under the Program Policy, any other written agreement, or any combination thereof.  Apple seeks to dismiss both these claims because Corellium lacks Article III standing to bring them.

Apple maintains that Corellium has not alleged facts showing a substantial likelihood of future injury.  According to Apple, Corellium pleads only alleged past injury because Corellium has not pled that it has a duty to continue to submit bugs to Apple under the Bug Bounty Program and, thus, it has not pled a future injury.  Corellium responds that it has adequately pled future injury because Apple will continue to unfairly apply the terms of the Program Policy to Corellium, Corellium is still a participant in the Bug Bounty Program, and Corellium has submitted bugs via the program for which it has not been paid.

"In order to demonstrate that there is a case or controversy that satisfies Article III's standing requirement when a plaintiff is seeking declaratory relief—as opposed to seeking damages for past harm—the plaintiff must allege facts from which it appears that there is a 'substantial likelihood that he will suffer injury in the future.'" *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210-11 (11th Cir. 2019) (quoting *Malowney v. Federal Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)).  "The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." *Malowney*, 193 F.3d at 1347 (citation omitted).

Corellium has failed to plead any facts establishing that there is a substantial likelihood of future injury.  Corellium has pled a past injury – that it submitted, through the Bug Bounty

Program, bugs to Apple for which it has not been paid; however, any future injury is purely speculative. While Corellium argues that it will continue to be unfairly treated under the Program Policy, Corellium has no obligation to continue to participate in the Bug Bounty Program. Further, it is pure speculation that Corellium will find future bugs if it continues to participate in the program and that those bugs will meet all of the eligibility requirements of the Program Policy. Unlike the cases cited by Corellium, this case does not involve a contract requiring any future performance by Corellium. Thus, Corellium has failed to plead that it is substantially likely to suffer future injury. Accordingly, Corellium lacks standing to bring its declaratory judgment claims and Count I and II of the Counterclaim are dismissed.

### ii. *Injunctive Relief*

Corellium seeks injunctive relief in Counts V, VI, VII, and X. Apple maintains that Corellium's failure to allege any facts demonstrating a threat of future injury is also fatal to Corellium's claims for injunctive relief under the UCL and FDUTPA. Corellium again argues that it has sufficiently pled facts establishing that it is likely to suffer future injury. However, for the same reasons it cannot establish a likelihood of future injury for its declaratory relief claims, Corellium has not pled facts to support a likelihood of future injury for its injunctive relief claims.

Corellium cites to *Cox v. Porsche Financial Services, Inc.*, 330 F.R.D. 322, 336 (S.D. Fla. 2019), for the proposition that the standing requirement for FDUTPA claims has "softened" and does not require a plaintiff to show an ongoing practice or irreparable harm. However, upon reconsideration, the *Cox* court reversed itself stating: "Although FDUTPA 'allows a plaintiff to pursue injunctive relief even where the individual plaintiff will not benefit from an injunction, it cannot supplant Constitutional standing requirements. Article III of the Constitution requires that a plaintiff seeking injunctive relief allege a threat of future harm.'" *Cox v. Porsche Fin. Servs., Inc.*, -- F.R.D. --, No. 1:16-CV-23409, 2020 WL 8269306, at *6 (S.D. Fla. Aug. 17, 2020) (quoting

*Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015)). Thus, Corellium has failed to establish standing to seek injunctive relief under the UCL or FDUTPA.

    **B.    Apple's Rule 12(b)(6) Motion**

Apple moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Corellium's remaining non-contract claims, Counts III-X. The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the facial sufficiency of a complaint. The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. It should be read alongside Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When a complaint is challenged under Rule 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A complaint can only survive a 12(b)(6) motion to dismiss if it contains factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the [factual] allegations in the complaint are true." *Twombly*, 550 U.S. at 555. However, a well-pled complaint survives a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556.

6

The Court will address each of the remaining non-contract claims, in turn.

### i. *Constructive Fraud Claims*

Apple seeks to dismiss Corellium's constructive fraud claims, Counts III, IV, and V, because Corellium lacks the required fiduciary relationship for such claims. Under Florida law, "[c]onstructive fraud occurs when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken." *Levy v. Levy*, 862 So. 2d 48, 53 (Fla. 3d DCA 2003). Under California law, constructive fraud requires: "(1) a fiduciary or confidential relationship; (2) nondisclosure (breach of fiduciary duty); (3) intent to deceive, and (4) reliance and resulting injury." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 167 Cal. Rptr. 3d 832, 854 (Cal. Ct. App. 2014), *as modified on denial of reh'g* (Feb. 27, 2014) (citations omitted). Thus, to plead a claim of constructive fraud under Florida or California law, one must plead the existence of a fiduciary or confidential relationship.

Under Florida law, a confidential relationship exists where "confidence is reposed by one party and a trust is accepted by the other, or where confidence has been acquired and abused. . . . a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005) (quoting *Doe v. Evans*, 814 So.2d 270, 374 (Fla. 2002) & *Watkins v. NCNB Nat. Bank of Fla., N.A.,* 622 So.2d 1063, 1065 (Fla. 3d DCA 1993)) (internal marks omitted). Similarly, under California law, a confidential relationship exists were "a person with justification places trust and confidence in the integrity and fidelity of another. A confidential relation exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind." *Tyler v. Children's Home Soc'y*, 35 Cal. Rptr. 2d 291, 313 (Cal. Ct. App. 1994) (citations and internal marks omitted).

7

Corellium argues that it has adequately pled a confidential relationship because it has pled that it entered into a confidential relationship with Apple based on Apple's creation of the Bug Bounty Program, which required participants to keep their submissions confidential; Apple invited Wade to participate and later approved Corellium's participation; Corellium placed its trust and confidence in Apple when it submitted bugs to Apple in reliance that Apple would pay; and Apple accepted Corellium's bugs and made repairs to its software based on those bugs. Apple maintains that these allegations are insufficient to establish a confidential relationship. None of Corellium's allegations establish that Apple recognized, accepted, or undertook a duty to advise, counsel, or protect Corellium. Nothing in the Counterclaim indicates that Apple undertook to do anything on behalf of Corellium, other than possibly pay Corellium.

Corellium's reliance on *Mayor's Jewelers, Inc. v. Meyrowitz*, No. 12-80055-CIV, 2012 WL 2344609 (S.D. Fla. June 20, 2012), to support its contention that it has adequately pled its constructive fraud claims, is misplaced. In *Mayor's*, the plaintiff jeweler placed its trust in the defendants to obtain a particular type of gemstones. *Id.* at *1. Defendants provided gemstones that they represented met the plaintiff's requirements but later the plaintiff learned that the gemstones purchased by the plaintiff from the defendants did not meet the requirements. *Id.* Unlike here, the *Mayor's* defendants undertook to provide a service, obtaining the gemstones, to the plaintiff and the plaintiff was relying on defendants and trusted the defendants to provide the requested service – obtaining gemstones meeting the requirements. Here, there are no allegations that Apple undertook any actions on Corellium's behalf. While Corellium may have been required to keep the relationship confidential and Corellium placed its trust and confidence in Apple, Apple did not undertake to act or advise with Corellium's interest in mind. The terms of the Program Policy make it clear that Apple acts at its own discretion. There is nothing in the Program Policy indicating that Apple acts or undertakes any duty on behalf of the program participants. Thus,

8

Corellium has not pled the existence of a confidential relationship. Accordingly, Counts III, IV, and V are dismissed.

### ii. *Unjust Enrichment/Quantum Meruit Claims*

Apple seeks to dismiss Corellium's unjust enrichment/quantum meruit claims, Count VIII and IX, based on California and Florida law, respectively. Apple maintains that the claims must be dismissed because they are based on an express agreement. Corellium responds that it has pled that the Program Policy is not an express agreement because the terms of the Program Policy are illusory and, therefore, the Program Policy is unenforceable.

Apple contends that the express agreement governing the parties' relationship is the Apple Developer Agreement ("Developer Agreement"), attached to Apple's Motion as Exhibit A [DE 608-1], and the Program Policy. Thus, Apple argues that the Court should consider the Developer Agreement, despite it not being pled or incorporated into the Counterclaim, as central to Corellium's claims. Generally, courts do not consider documents outside the pleadings when addressing a Rule 12(b)(6) motion, but courts may consider extrinsic documents if they are "central" to a party's claim. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). At the motion to dismiss stage, for documents to be "central" to a party's claims "it must be 'unquestionable'. . . that [a p]laintiff would have to offer these documents in order to prove its case." *Legacy Entm't Grp., LLC v. Endemol USA Inc.*, No. 3:15-CV-0252-HES-PDB, 2015 WL 12838795, at *3 (M.D. Fla. Oct. 1, 2015).

Contrary to Apple's contention, there is nothing in the Counterclaim indicating that the Developer Agreement is central to Corellium's claims. There is nothing to indicate that Corellium would unquestionably have to offer the Developer Agreement into evidence to prove any of its claims. Further, neither the Counterclaim nor the Program Policy reference the Developer Agreement and it is not clear that the Developer Agreement incorporates the Program Policy, as

9

asserted by Apple. Thus, the Court will not consider the Developer Agreement in addressing Apple's Motion.

Under Florida law, "[i]t is only upon a showing that an express contract exists [between the parties] that the unjust enrichment . . . count fails." *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 5th DCA 1998) (citation omitted). Thus, a motion to dismiss a claim for unjust enrichment on the grounds that an express contract exists is premature until the express contract is proven. *Id.* Similarly, under California law, an unjust enrichment or quantum meruit claim is not foreclosed by the existence of a written agreement that may be found unconscionable or illusory. *Gov't Employees Ins. Co. v. Fred Javier Gonzalez Ins. Agency*, No. CV 09-6270-GHK (EX), 2011 WL 13187367, at *2 (C.D. Cal. Feb. 9, 2011).

Corellium has pled that the Program Policy is an illusory contract and, as such, is not valid and enforceable. The terms of the Program Policy, including "[p]ayments are at Apple's sole discretion," "[r]ewards are granted solely at the exclusive discretion of Apple," "[t]he terms, program scope, and payments are all subject to change at Apple's sole discretion," and "[t]his program may be terminated at any time" (DE 608-2), support Corellium's allegation that the Program Policy is an illusory contract. *See Princeton Homes, Inc. v. Virone*, 612 F.3d 1324, 1331 (11th Cir. 2010) (stating that "[a] contract is illusory under Florida law when one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor—who says, in effect, 'I will if I want to.'") (internal marks omitted); *Moua v. Optum Servs., Inc.*, 320 F. Supp. 3d 1109, 1113 (C.D. Cal. 2018) (stating that "[a]n agreement is illusory, and no enforceable contract has been created, if a promisor is free to perform or to withdraw from the agreement at his own unrestricted pleasure . . . [or] when one of the parties has the unfettered or arbitrary right to modify or terminate the agreement or assumes no obligations thereunder."). Thus, Corellium has adequately pled that the Program Policy is an illusory contract. Because the contract between

the parties may be illusory, and therefore invalid, Corellium may maintain its unjust enrichment/quantum meruit claims at this stage of the proceedings. Thus, the motion to dismiss Corellium's unjust enrichment/quantum meruit claims, Counts VIII and IX is denied.

### iii. UCL Claims for Unlawful Business Practices

Apple argues that Corellium's claims under California's UCL, Counts V, VI, and X, all fail because (1) Corellium's constructive fraud and quantum meruit claims fail, (2) Corellium has not alleged an unfair business practice, (3) commercial disputes are not cognizable under the UCL, and (4) Corellium has failed to allege an injury compensable under the UCL. As set out above, Count V, based on constructive fraud, is dismissed, leaving Counts VI and X.

The UCL "prohibits unfair competition, including unlawful, unfair, and fraudulent business acts." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003). "The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Kasky v. Nike, Inc.*, 45 P.3d 243, 249 (Cal. 2002), *as modified* (May 22, 2002). Courts interpreting the UCL have found that "a dispute between commercial parties over their economic relationship . . . does not give rise to a claim under the UCL." *MH Pillars Ltd. v. Realini*, No. 15-CV-1383-PJH, 2017 WL 916414, at *10 (N.D. Cal. Mar. 8, 2017); *see also In re ConocoPhillips Co. Serv. Station Rent Contract Litig.*, No. M:09-CV-02040 RMW, 2011 WL 1399783, at *3 (N.D. Cal. Apr. 13, 2011) (citing *Linear Tech. Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 237 (Cal. Ct. App. 2007)). Corellium and Apple have a commercial relationship. Corellium is not a customer, nor a competitor of Apple. The dispute at issue and the relationship at issue do not involve the general public or individual consumers. Thus, it appears that Corellium has no claim under the UCL.

Even if Corellium could bring a claim under the UCL, it cannot recover the damages it seeks. Only equitable remedies are available under the UCL; damages are not an available

11

remedy.[3]  *Id.*  Thus, "[p]revailing plaintiffs are generally limited to injunctive relief and restitution." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999).  As set out above, Corellium does not have standing to seek injunctive relief.  Thus, the question before the Court is whether Corellium is seeking restitution.

While the Counterclaim asks for "restitution" under the UCL, based on the allegations in the Counterclaim, Corellium does not actually seek restitution.  Corellium does not seek to restore any money or property which Apple acquired through unfair competition; instead, Corellium seeks monetary damages.  Corellium relies on *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 811 (N.D. Cal. 2011), for the proposition that the concept of restitution under the UCL "is broad enough to allow a plaintiff to recover money or property in which he or she has a vested interest."  The California Supreme Court has explained: "[t]he object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply*, 63 P.3d at 947. Corellium argues that it has a vested interest in the software bugs it identified and submitted to Apple.  The Court agrees.  However, Corellium does not seek the return of its submitted bugs; instead, it seeks payment in the amount that it believes it is owed for the submitted bugs under the Program Policy.  Corellium has not shown that it has a vested interest in any payments allegedly owed under the Bug Bounty Program.  To do that, Corellium would have to allege that each of the submitted bugs met all of the eligibility requirements of the Program Policy.

---

[3] The relevant section of the UCL states, in pertinent part:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

Cal. Bus. & Prof. Code § 17203 (West).

It has not. Thus, Corellium has failed to allege a vested interest in payment from Apple for the bugs. Consequently, it has not stated a claim for restitution. Accordingly, the UCL offers no relief to Corellium and Counts VI and X are dismissed.

### *iv.* *FDUTPA Claim*

Apple moves to dismiss Corellium's FDUTPA claim, Count VII. To state a claim under FDUTPA, a plaintiff must allege: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). Apple contends that Corellium has not adequately pled the first and third elements of its FDUTPA claim. Because Corellium has not adequately pled a deceptive or unfair trade practice, the Court will not address the damages issue.

According to Apple, Corellium has not alleged a deceptive or unfair practice because a deceptive of unfair trade practice requires an injury to a consumer and Corellium is not a consumer. Corellium asserts that it is a consumer and also asserts that it brings the action on behalf of other Bug Bounty Program participants. "A deceptive practice is one that is 'likely to mislead' consumers. . . . An unfair practice is one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id.* (citations omitted). Thus, while an entity does not need to be a consumer to bring a claim under FDUTPA, it must allege an injury to a consumer. *Stewart Agency, Inc. v. Arrigo Enters, Inc.*, 266 So. 3d 207, 212 (Fla. 4th DCA 2019). Under FDUTPA, a "consumer" is a purchaser of goods or services. *N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So. 2d 672, 674 & n.3 (Fla. 3d DCA 2000). In *N.G.L. Travel*, the plaintiff, a travel agency, alleged that the defendants failed to pay it the full commissions to which it was entitled. *Id.* at 673. The court found that the plaintiff was not a "consumer" protected by FDUTPA because it was not a purchaser of goods or services in the transactions at issue, it was a provider of services. *Id.* at 674. Similarly, in the transactions at

issue here, Corellium is not a consumer of any of Apple's goods or services. Corellium was the provider of the bugs, not the consumer. While Corellium need not be a consumer to bring a FDUTPA action, it still must allege an injury to a consumer. This it has not done. Thus, Corellium's claim under FDUTPA fails and Count VII is dismissed.

Accordingly, it is

**ORDERED** that Plaintiff Apple Inc.'s Motion to Dismiss Corellium, LLC's Counterclaims [DE 608] is **GRANTED in part and DENIED in part:**

1. The Motion is **GRANTED** as to Counts I, II, III, IV, V, VI, VII, and X:

    a. Counts I and II and all requests for injunctive relief are **DISMISSED with prejudice.**

    b. Counts III, IV, V, VI, VII and X are **DISMISSED without prejudice.**

2. The Motion is **DENIED** as to Counts VIII and IX.

3. Corellium may file an Amended Counterclaim in accordance with this Order by **March 3, 2021**. In deciding whether to file an Amended Counterclaim, Corellium shall be guided by the dictates of Federal Rule of Civil Procedure 11.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 24th day of February, 2021.

_____
RODNEY SMITH
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record