# EXHIBIT 25

ATTORNEY'S EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2              SOUTHERN DISTRICT OF FLORIDA
 3      APPLE INC.
 4          Plaintiff,     CASE NO. 9:19-cv-81160-RS
 5      vs.
 6      CORELLIUM, LLC,
 7          Defendant.
 8      _____/
 9
10                  Zoom, Virtual Deposition
11                  Wednesday, March 25, 2020
12                  10:08 a.m.-6:17 p.m.
13
14              ATTORNEY'S EYES ONLY
15      VIDEOTAPED 30(b)(6) AND INDIVIDUAL DEPOSITION OF
16                  AMANDA GORTON
17
18          Taken on Behalf of the Plaintiff before
19      Lisa Gerlach, Court Reporter, Notary Public
20      in and for the State of Florida at Large,
21      pursuant to Plaintiff's Notice of Taking
22      Deposition in the above cause.
23
24      Job No. 4027360
25      Pages 1-213
```

Page 1

ATTORNEYS EYES ONLY

```
 1          Virtual Appearances through Zoom:
 2            Counsel for the Plaintiff:
 3            JESSICA STEBBINS BINA, ESQUIRE
              ELANA NIGHTINGALE DAWSON, ESQUIRE
 4            Latham & Watkins, LLP
              10250 Constellation Boulevard
 5            Suite 1100
              Century City, CA 90067
 6            424-653-5525
              jessica.stebbinsbina@lw.com
 7            elana.nightingaledawson@lw.com
 8
 9           Counsel for the Defendant and Witness:
              JONATHAN VINE, ESQUIRE
10            Cole Scott & Kissane
              222 Lakeview Avenue
11            Suite 120
              West Palm Beach, FL 33401
12            561-383-9203
              jonathan.vine@csklegal.com
13
14           Also Present: Brandon Miller, Videographer
15
16
17
18
19
20
21
22
23
24
25
```

Page 2

ATTORNEYS EYES ONLY

```
1                           INDEX
2    WITNESS              EXAMINATION                PAGE
3    Amanda Gorton
4            Direct by Ms. Bina                        6
5    Certificate of Oath                             211
6    Certificate of Reporter                         212
7    Witness Review Letter                           213
8
9                    PLAINTIFFS' EXHIBITS
10                        None
11                   DEFENDANTS' EXHIBITS
12   Exhibit 1     Notice of Deposition                8
13   Exhibit 2     Corellium, LLC's Responses and
                   Objection to Apple Inc.'s Notice of
14                 Rule 30(b)(6) Deposition of
                   Defendant Corellium                 8
15
     Exhibit 3     ███████████████████████
███                ██████████████████████
                   ██████████████████████
███                ██████████████            31
18   Exhibit 4     ████████████████████████
                   ██████████            60
19   Exhibit 5     ██████████████            88
20   Exhibit 6     ██████████████           100
21   Exhibit 7     ██████████████           115
22   Exhibit 8     ██████████████           132
23   Exhibit 9     █████████████            138
24   Exhibit 10    ██████████████           146
25   Exhibit 11    ██████████████           182
```

                                        Page  3

ATTORNEYS EYES ONLY



```
 1     Exhibit 12    ████████████            185

 2     Exhibit 13    ████████████            186

 3     Exhibit 14    ████████████            190

 4     Exhibit 15    ██████████████████████

                     ████████                197

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                      Page  4
```

ATTORNEYS EYES ONLY

```
 1              THE VIDEOGRAPHER:  Good morning.  We're
 2         going on the record at 10:08 a.m. on
 3         March 25th, 2020.  Please note that the
 4         microphones are sensitive and may pick up
 5         whispering and rubbing of clothing.  Please
 6         silence all cell phones.  Please keep them
 7         away from the microphones, as they can
 8         interfere with the deposition audio.  Audio
 9         and video recording will continue to take
10         place unless all parties agree to go off the
11         record.
12              This is media unit number one of the
13         video-recorded deposition of Amanda Gorton,
14         taken by counsel for plaintiff, in the matter
15         of Apple Inc. vs. Corellium, LLC, filed in
16         the United States District Court, Southern
17         District of Florida.  The Case Number is
18         9:19-cv-81160-RS.
19              This deposition is taking place by
20         Zoom Virtual and all participants are
21         attending remotely.
22              My name is Brandon Miller, from the firm
23         Veritext Legal Solutions, and I'm the
24         videographer.  The court reporter is Lisa
25         Gerlach, from the firm Veritext Legal
```

Page 5

ATTORNEYS EYES ONLY

```
 1          Solutions.  I'm not related to any party in
 2          this action, nor am I interested in the
 3          outcome.
 4               Counsel and everyone attending remotely
 5          will now state their appearances and
 6          affiliations for the record, and the court
 7          reporter will swear the witness.
 8               MS. BINA:  This is Jessica Stebbins Bina,
 9          from Latham & Watkins, counsel for plaintiff,
10          Apple Inc.
11               MS. NIGHTINGALE DAWSON:  This is Elana
12          Nightingale Dawson, with Latham & Watkins,
13          counsel for Apple Inc., plaintiff.
14               MR. VINE:  Jonathan Vine, with the law
15          firm of Cole Scott & Kissane, on behalf of
16          Corellium and the witness.
17     THEREUPON,
18                         AMANDA GORTON,
19          A Witness herein, acknowledged after having
20     been duly sworn and testified upon her oath as
21     follows:
22               THE WITNESS:  I do.
23                      DIRECT EXAMINATION
24     BY MS. BINA:
25          Q.  Good morning, Ms. Gorton.  Can you hear me
```

ATTORNEYS EYES ONLY

```
 1      okay?

 2          A.   Good morning.  Yes, I can hear you well.

 3          Q.   Have you ever had your deposition taken

 4      before?

 5          A.   No.  This is my first time.

 6          Q.   I may take a moment then and just go through

 7      a few of the ground rules.  I know you've attended a

 8      few of these depositions this week, so this may sound

 9      familiar to you.

10               Do you understand that you're here under oath

11      to testify?

12          A.   Yes, I do.

13          Q.   Just like you were in court?

14          A.   Yes.

15          Q.   It's very important, particularly with us all

16      attending by video, that you give me word answers and

17      not "uh-huh" or "uh-uh" or gestures of any kind.

18               Do you understand that?

19          A.   Yes, I understand.

20          Q.   And, also, we should try very hard not to

21      talk over one another so the court reporter, who is

22      taking down everything we say, can make sure to get a

23      good record.

24               Can you help me with that today?

25          A.   Absolutely.
```

Page 7

ATTORNEYS EYES ONLY

```
 1              MS. BINA:  I'm going to briefly just mark
 2       two exhibits.  Elana, if you can move in to
 3       have 00 and 01?  The first is a personal
 4       deposition notice to Amanda Gorton and the
 5       second is Corellium's responses to Apple's
 6       30(b)(6) deposition notice.
 7              MS. NIGHTINGALE DAWSON:  Sure.  Just to
 8       confirm, that's going to be Exhibit 1 for the
 9       notice and Exhibit 2 for the responses;
10       correct?
11              MS. BINA:  Yes, it is.
12              (Plaintiff's Exhibits 1 and 2 marked for
13       identification.)
14              MS. BINA:  And, Jonathan, you should be
15       able to move into the introduced folder as
16       Elana marks them.
17              MR. VINE:  That is the e-mail from the
18       remote from ██████████
19              MS. NIGHTINGALE DAWSON:  No.  There was a
20       second --
21              MS. BINA:  That should be Veritext
22       Exhibit Share.  Maybe we can go off the
23       record for a moment, Jonathan, to make sure
24       you can find it.
25              THE VIDEOGRAPHER:  Going off the record
```

Page 8

ATTORNEYS EYES ONLY

```
 1          at 10:13 a.m.
 2               (Off record.)
 3               THE VIDEOGRAPHER:  We are back on the
 4          record at 10:15 a.m., and this marks the
 5          beginning of media number two in the
 6          deposition of Amanda Gorton.
 7               You may proceed, Counsel.
 8               MR. VINE:  I see it.  We can go ahead.
 9               MS. BINA:  Perfect.
10     BY MS. BINA:
11          Q.  If you can just open Gorton Exhibit 1,
12     Ms. Gorton?  This is a deposition notice to you.
13               Have you seen this notice before?
14          A.  I have not.
15          Q.  You understand your deposition was noticed
16     for today and you're appearing; correct?
17          A.  Yes.
18          Q.  If you could just look at Exhibit 2?  I'm
19     going to, again, ask you if you've seen the document.
20     I'm not sure whether you have or haven't.  I'll
21     represent to you, this is your counsel's responses and
22     objections to our notice of the taking of the
23     deposition of Corellium, LLC.
24               And, if you scroll here, you'll see there are
25     a number of topics where Corellium has designated you
```

ATTORNEYS EYES ONLY

1    as the person who will be testifying on behalf of the

2    company.

3            I'm going to ask you a couple of questions

4    first.  Have you seen this document before?

5        A.  I have, yes.

6        Q.  And your understanding is that you'll be

7    testifying on behalf of Corellium, LLC today on the

8    topics identified herein?

9        A.  That is correct.

10       Q.  And you'll also be answering questions in

11   your personal capacity today as well; correct?

12       A.  Yes.

13           MR. VINE:  Objection.

14           MS. BINA:  Was there an objection,

15   Mr. Vine?

16           MR. VINE:  There was.

17           MS. BINA:  Okay.

18   BY MS. BINA:

19       Q.  Without telling me any conversations that you

20   had with your lawyers, can you tell me generally what

21   you did to prepare for your deposition today?

22       A.  Sure.  I had a call with my counsel yesterday

23   and I reviewed a variety of documents in preparation

24   both for my personal deposition and to prepare on

25   behalf of Corellium as the 30(b)(6) representative for

Veritext Legal Solutions
866 299-5127

ATTORNEYS EYES ONLY

```
 1      the topics listed.

 2              Q.  Which counsel did you meet with by telephone?

 3              A.  I had a call with Mr. Vine yesterday.

 4              Q.  Approximately how long was that call?

 5              A.  I don't recall.

 6              Q.  Ballpark, an hour, two hours, three hours,

 7      six?

 8              A.  30 minutes to an hour.

 9              Q.  Have you had any other calls or meetings to

10      prepare for today's deposition with anyone?

11              A.  No.

12              Q.  Did you meet with anyone from Corellium, LLC

13      in connection with preparing for this deposition?

14              A.   I did have conversations with my teammates,

15      specifically Chris Wade, Stan Skowronek, and David

16      Wang, to ask about some of the topics for the 30(b)(6)

17      questions.

18              Q.  When did you have those meetings?

19              A.  During the course of this week.  I met with

20      David, Stan and Chris on Sunday and Monday.

21              Q.  Did you meet with all three of them together

22      or separately?

23              A.  I met with all three of them together.

24              Q.  We're going to go through some of the topics

25      in more detail, but can you just tell me, at a high
```

Page 11

ATTORNEYS EYES ONLY

```
 1    level, which topics you met with them related to the
 2    30(b)(6) notice?
 3              MR. VINE:  Let me just put an objection
 4         and some guidance to Amanda.  If anybody from
 5         my law firm was present for those meetings,
 6         obviously, communications would be
 7         privileged, so please do not discuss
 8         privileged communications.
 9    BY MS. BINA:
10         Q.  Again, I don't want to hear anything you
11    discussed with your lawyers.  My understanding was
12    that this was a meeting with fact witnesses to prepare
13    for the 30(b)(6).  But if you were discussing matters
14    with counsel, I don't want to hear those
15    communications.
16              MR. VINE:  If I may just give a better
17         instruction?  If counsel was present for
18         those discussions, it's still privileged.
19         Meaning, they participated in that
20         conversation, just like Dave took that
21         position and you have taken that deposition
22         in other depositions.
23              However, you can tell Jessica what
24         specific topics were addressed without
25         waiving the attorney-client privilege.
```

Page 12

ATTORNEYS EYES ONLY

```
 1     BY MS. BINA:

 2          Q.   Before we do that, let me ask.  Was counsel

 3     present at the meeting?

 4          A.   No.

 5          Q.   Then can you, please, let me know which

 6     topics you met with them to discuss?

 7          A.   Sure.  I reviewed all topics with them just

 8     to make sure that I thoroughly investigated each

 9     topic.

10          Q.   About how long was this meeting?

11          A.   About an hour.

12          Q.   And did you -- did the four of you look at

13     any documents at the meeting?

14          A.   No.

15          Q.   You mentioned that you had reviewed documents

16     yourself.

17               Can you tell me what you reviewed to prepare

18     for your deposition?

19          A.   Yes.  I reviewed several court-related

20     documents, such as the complaint, Corellium's response

21     to the complaint, our interrogatory responses, our

22     responses to requests for admissions and production.

23               I also reviewed several company documents.

24     For example, financial statements, marketing

25     materials, pricing documents.  I reviewed a few
```

Page 13

ATTORNEYS EYES ONLY

1    communications with customers and resellers.

2            I'm sure there are others that I can't recall

3    off the top of my head.

4        Q.  When you say you reviewed a few

5    communications with ███████████████ can you

6    tell me which ████████████████ that you recall?

7        A. ████   ██████████████████

     ████████████████████████████████████

9            I know there were others, but I don't recall

10   specifically which ones at the moment.

11       Q.  ██████████████████████████████

     ████████████████████████████████████

     ██████████████████

14       A.  No.

15           MR. VINE:  Objection.

16   BY MS. BINA:

17       Q.  You said that you had reviewed the

18   correspondence with resellers.

19           Which correspondence with resellers did you

20   review?

21           MR. VINE:  Objection.

22       A. ████████████████████████████

23   BY MS. BINA:

24       ██ ████████████████████████████

     ████████████

                                        Page 14

ATTORNEYS EYES ONLY

███  ███  ████████████████████████████████

███  ███████████████████  █████████████████

███  ██████████████████████████████████████

███  ████████████████████████████

 5        Q.   Which company?

 6             MR. VINE:  I'm just going to designate

 7        this portion -- all of this is confidential,

 8        but this portion is highly confidential.

 9             MS. BINA:  And, Jonathan, so you're

10        aware, what we've been doing is, the entire

11        transcript has been presumptively "attorney's

12        eyes only."  And then once the transcripts

13        come back, we'll be reviewing and

14        redesignating appropriately, if that works

15        for you --

16             MR. VINE:  That's perfect.

17             MS. BINA:  Okay.

18             MS. GORTON:  Could we have the question

19        read back, Madam Court Reporter, please?

20             THE REPORTER:  "Which company?"  Are you

21        talking about the question before?

22             MS. BINA:  "Which company" was actually

23        my question.

24   BY MS. BINA:

25        Q.   ████████████████████████████████████

ATTORNEYS EYES ONLY

3          My question was, which company was that?

4     A.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

10          MR. VINE:  Objection.

11    A.  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

12    BY MS. BINA:

13    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

14          MR. VINE:  Objection.

15    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

17    BY MS. BINA:

18          Q.  Have we now gone through everything that

19    you've done to prepare for your deposition today or is

20    there anything else that you've done that we haven't

21    discussed?

22          MR. VINE:  Objection.

23          A.  I believe that covers everything I've done to

24    prepare.

25    BY MS. BINA:

Page 16

ATTORNEYS EYES ONLY

```
 1              Q.   Thank you.  I want to turn a little bit --
 2       can you briefly describe your educational background?
 3              A.   Yes.  I attended high school in Kansas City
 4       at Pembroke Hill.  I attended university at Yale
 5       University, where I received a four-year master's and
 6       bachelor's degree.
 7              Q.   Was that a master of art, a master of
 8       science?
 9              A.   A master of arts.
10              Q.   In what subject?
11              A.   In the classics, ancient Latin and Greek.
12              Q.   Do you, yourself, have any technical or
13       programming computer engineering background?
14              A.   I have a limited background insofar as I've
15       taken a few online courses in basic programming.  I've
16       also worked at tech companies for the majority of my
17       career.
18              Q.   Have you taken any business and marketing
19       courses in connection -- or after -- before -- after
20       graduation from Yale?
21              A.   No.
22              Q.   Any accounting or finance courses?
23              A.   No.
24              Q.   What is your current title at Corellium?
25              A.   My title is the CEO.
```

Page 17

ATTORNEYS EYES ONLY

```
 1            Q.   Has that always been your title since
 2       Corellium's formation?
 3            A.   Yes.
 4            Q.   Do you have any other titles besides CEO?
 5            A.   Occasionally, we refer to each other as
 6       cofounders, but I don't consider that an official
 7       title.
 8       ██    ████████████████████████████████████████
         ██    ██    ████████████████████████████████████
         ██    ████████████████████████████████████████████
         ██    ██████████████
12            Q.   And how long have you known Mr. Wade?
13            A.   I've known Mr. Wade since --
14            MR. VINE:   We broke up, I think.
15            MS. BINA:   There was some noise, I think,
16       on your end.
17       BY MS. BINA:
18            Q.   You had started to say that you had known
19       Mr. Wade since -- and that was the last I heard.
20            A.   Yes.   I trailed off because I was trying to
21       remember when we met.   I believe we met in 2012.
22            Q.   Did you meet him first in a personal or
23       professional capacity?
24            A.   I met him in a professional capacity.
25            Q.   What was that capacity?
```

Page 18

ATTORNEYS EYES ONLY

```
 1          A.   I had joined a startup called OpenPeak.
 2     Mr. Wade was employed by that startup.  I met him as
 3     part of my introduction to the team.
 4          Q.   At some point, you developed a personal
 5     relationship and the two of you eventually married;
 6     correct?
 7          A.   That is correct.
 8          Q.   Have you also worked together continuously
 9     since 2012 in a professional capacity?
10          A.   No.
11          Q.   At what points have you worked with Mr. Wade
12     in that time period?
13     ████  ████  ████████████████████████████████████████
14     ████  ████████████████████████████████████████████
15     ████  ████████  ████████████████████████████████
16     ████  ████████████████████████  ███████████████████
17     ████  ████████  █████████████████████  █████████████
18     ████  ███████████████████████████████████████
19     ████  ██████████████████████████████████
20     ████        ████████████████████████████████████████
21     ████  █████████████████████████████████
22          Q.   What was that?
23          A.   Sorry.  Do you mean what startup was that?
24          Q.   Yes.  Sorry.  What startup was that?
25          ████  ████████████████████████████████████████
```

Page 19

ATTORNEYS EYES ONLY

1 ██████████████████

2       Q.   You were carrying on.   I didn't mean to

3  interrupt.

4       ██   ████████████   ██████████████

█  █████████████████████████████████

█  █████████████████████

7       Q.   When was Corellium founded?

8       ███  ████████████████████████

9       Q.   So turning back to your cofounders -- how

10  long have you known Mr. Skowronek?   And did I say that

11  correctly?

█  ██   ████████████   ██████████████

█  ███████████████████████████████████

█  ████

15       Q.   When, approximately, was that?

█  ██   ████████████

17       Q.   Did he -- I think you testified that Virtual

18  was acquired by Citrix.   Did he also go and work with

19  you at Citrix -- or not with you -- but work at Citrix

20  when Virtual was acquired?

21       ██   ████████████████   ████████████████

█  ██████████████████

23       Q.   Did you and he and Mr. Wade all work at

24  Citrix for the same amount of time?   In other words,

25  did you start at the same time and leave at the same

                                              Page 20

ATTORNEYS EYES ONLY

1    time or did some of you start or leave at different

2    times?

3         A.   We all started at the same time, but we

4    departed at different times.

5         Q.   When did you depart Citrix?

6         A.   I don't recall offhand exactly when I

7    departed.  I believe it was in 2015.

8         Q.   What about Mr. Wade; do you know when he

9    left?

10        A.   I don't recall when he departed either.  I

11   know he departed after me.

12        Q.   What about Mr. Skowronek?

13        A.   I don't recall when he departed either, but,

14   again, I believe he departed after I did.

15        Q.   How long have you known Mr. Wang?

16        A.   I believe I first met Mr. Wang in 2014.  He

17   attended our wedding.

18        Q.   So did Mr. Wade know him prior to the wedding

19   and you met him there?

20        A.   That's correct.

21        Q.   Did you work with Mr. Wang prior to

22   Corellium, LLC?

23        A.   No.

24        Q.   Were you involved at all with iEMU, which, I

25   believe, was a prior project of Mr. Wade's in the

Page 21

ATTORNEYS EYES ONLY

```
1    early 2000s?

2          A.  I was not involved in that project.

3          Q.  Ms. Gorton, one of the topics that's been

4    designated by Corellium as the person to speak on a

5    particular topic is the topic of agreements or

6    arrangements with purchase --

7               THE REPORTER:  I'm sorry.  Hang on.

8          Someone's got paper I can hear.  I can't hear

9          the question.

10              MR. VINE:  Can you tell us the topic

11         number first?

12              MS. BINA:  It's topic number 17.

13              MR. VINE:  Okay.

14   BY MS. BINA:

15        ██    ██████████████████████████

     ██  █████████████████████████████████

     ██  █████████████████

18              Without telling me any conversations that you

19   had with your attorneys, can you briefly tell me what

20   ████████████████████████

     ██     ██    ██   ████████████████████████

     ██  ██████████████████████

23         Q.  Anything else?

24         A.  No.  That's all.

     ██    ██   ████████████████████████████
```

                                        Page 22

ATTORNEYS EYES ONLY



Page 23

ATTORNEYS EYES ONLY



 1         Q.  And what was your role?

 2         A.  I apologize.  The audio cut out a little bit

 3    there.

 4    ████  ██████████  █████████████

      ███████████  ██████████  █████████████

      ████  ██████████████████████████████

      █████████

      ████  ███████████████

 9              MR. VINE:  Then I'll object because it's

10         compound, but okay.  No problem.  You can go

11         on and answer.

12         A.  My role at Virtual was CEO.  I was involved

13    in the negotiations from that perspective.  █████

      ██████████████████████████████████████████

      ██████████████████████████████████████████

      ███████

17    BY MS. BINA:

18         Q. ███████████████████████████████

      ████████████████████████████████████

      ██████████

21              MR. VINE:  Objection.

22    ████  ██████  █████████████████████████

23    BY MS. BINA:

24         Q.  ██████████████████████████

25              MR. VINE:  Objection.

                                        Page 24

ATTORNEYS EYES ONLY

```
 1        A.  ███████████████████████████████
          ███████████.
 3   BY MS. BINA:
 4        Q.  ██████████████████████████████████
          ███████████████████████    ██████████████████
 6        ████████████████████
 7             MR. VINE:  Objection.
 8        A.  There were multiple individuals with whom we
 9   communicated during the course of negotiations.  The
10   pri████████████████████████████████████
          █████████
          ██████    █████████████████████████████
          ██████    ██████████████
          ██████    █████████████████████████████
          ██████   █████   ████████████████████████████████
          ████████████████████
          ██████    ████████████████    ██████████████████████████
          ██████████████████████████
19             MS. BINA:  Mr. Vine, we're hearing a lot
20        of the paper shuffling.  Is there a way you
21        could move the microphone?
22             MR. VINE:  Apparently, it's very
23        sensitive, but I have to take notes, but I
24        will do my best.  Go ahead.
25        ████    ████████    ██████████████████████████████
```

Page 25

ATTORNEYS EYES ONLY

██

2      BY MS. BINA:

3      ██    ███████████████████████

██     ████████████████████████

██     █████████████████████████████

██     ████████████

7             MR. VINE:  Objection.

██     ██    ████████████████████

██     ██████

██            MS. BINA:  So, I apologize.  My

11     four-year-old just walked in.  I didn't hear

12     the answer.  Madam Court Reporter, could you

13     read it back, please?

14            THE REPORTER:  "I don't recall any

15     conversations to that effect."

16     BY MS. BINA:

██     ██    ██████████████████████████

██     ██████████████████████████

██     ████████████

20            MR. VINE:  Objection; asked and answered,

21     lack of foundation.

22            A.    █████████████████████

23     a██████████████████████████████████

██     ███████████████████████████

25     BY MS. BINA:

Page 26

ATTORNEYS EYES ONLY

```
 1          Q.  ████████████████████████████████
 █  ████████████████████████████████████████
 █  ████████████████████████████████████████
 4          A.  I am aware that meeting took place, but I was
 5   not involved in that meeting.
 6          Q.  Were you told anything about what happened at
 7   it?
 8          A.  No.
 9          Q.  Do you have any understanding as to what
10   happened at that meeting, as you sit here today?
11          MR. VINE:  Objection.  How could she have
12          an understanding if she just testified she
13          wasn't told what happened at that meeting?
14          MS. BINA:  I'm asking if she had any
15          understanding.
16          MR. VINE:  Well, I'll allow the
17          repetitive question.  At some point, it's
18          going to become harassing.
19          Go ahead, Amanda.
20          A.  I do have some understanding of what happened
21   at that meeting in conjunction with discussions with
22   counsel.
23   BY MS. BINA:
24          Q.  I don't want to hear anything you discussed
25   with counsel.
```

ATTORNEYS EYES ONLY

1          Do you have any understanding outside of a

2     privileged communication?

3          A.   I do not.

4          Q.   When Mr. Wade left Citrix, and prior to the

5     formation 

Page 28

ATTORNEYS EYES ONLY



1

2

3

4

5       MR. VINE:  Objection.

6

7

8    BY MS. BINA:

9

10

11       MR. VINE:  Objection; asked and answered.

12       A.  That is correct.

13    BY MS. BINA:

14

15

16       MR. VINE:  Objection; asked and answered.

17

18

19

20

21    BY MS. BINA:

22

23

24

25

Page 29

ATTORNEYS EYES ONLY

7           MS. BINA:  If we can pause and go off the

8       record for one second?

9           THE VIDEOGRAPHER:  Okay.  Going off the

10      record at 10:53 a.m.

11          (Off record.)

12          THE VIDEOGRAPHER:  We are back on the

13      record at 10:54 a.m., and this marks the

14      beginning of media unit number three in the

15      deposition of Amanda Gorton.

16          You may proceed, Counsel.

17  BY MS. BINA:

18      Q.  Were you finished with your answer,

19  Ms. Gorton?  I apologize.  I was distracted.

20      A.  Perhaps the court reporter can read back the

21  last question?

22

Page 30

ATTORNEYS EYES ONLY



1        BY MS. BINA:

2            Q.  ███████████████████████████

     ███████████    █████████████████████

     ███████████    ██████████████████████

5            MR. VINE:  Okay.

6        ██  ██████████████████    ████████████████

  ████████████████████████████████████████████

  ██████████████

9        BY MS. BINA:

10       ██  █████████████████████████████████

  ████████████████████████████████████████████████

  ██  ███

  ██  █████████████████████████████████████████

  ██████████████████████████████

  ██  ███

  ██  ████████████████████████

  ██  ████████████    █████████████████████

  ████████████████████████████████

19           MS. BINA:  I'd like to introduce as

20       Exhibit 3 Corellium's responses and

21       objections -- fourth amended responses and

22       objections to Apple's interrogatories.

23           (Plaintiff's Exhibit 3 was marked for

24       identification.)

25           MS. BINA:  Apple's first set of special

                                    Page 31

ATTORNEYS EYES ONLY

```
 1              interrogatories, I should say.
 2                   THE WITNESS:  Ms. Stebbins Bina?
 3                   MS. BINA:  Yes?
 4                   THE WITNESS:  You didn't ask me at the
 5              outset, but I would like to make you aware
 6              that I do have a copy of those
 7              interrogatories with me here.
 8       BY MS. BINA:
 9              Q.  Great.  I'm still going to mark them for the
10       record.
11                   Do you have any other documents with you,
12       Ms. Gorton?
13              A.  I do.  I also have a copy of the list of
14       30(b)(6) topics.
15              Q.  Anything else?
16              A.  No.
17              Q.  Do you have any e-mails or chat windows or
18       other -- is there anything else open on your screen
19       besides the Veritext deposition information?
20              A.  No, nothing besides that.
21                   MR. VINE:  That's offensive.  That's
22              offensive, Jessica.  Go on, Amanda.
23                   MS. BINA:  Mr. Vine, it's a standard
24              question that you've asked all of our
25              witnesses as well.  I presumed the answer was
```

Page 32

ATTORNEYS EYES ONLY

```
 1              no, but I'd like a clear record on the topic.

 2              MR. VINE:  I knew what you were getting

 3         at.  Go ahead.

 4    BY MS. BINA:

 5         ███  ████████████████████████████████

      ███████████████████████████████████████████

      ███  ██████████████

 8         Q.  You reviewed them, I presume, prior to

 9    verification to ensure they were accurate?

10         A.  To the best of my ability, yes.

11         Q.  Of course.  So I'd like to look at your

12    response to interrogatory number four.  In particular,

13    I'm looking for -- bear with me one moment -- page 20

14    of the document.

15         A.  Sure.
```

ATTORNEYS EYES ONLY

1      that can be used by end users, but in a minimum --



21          Q.  Do you use iPhones personally?

22              MR. VINE:  Objection.

23          A.  I do.

24     BY MS. BINA:

25          Q.  Do you use other Apple devices?

Page 34

ATTORNEYS EYES ONLY

```
 1            A.   I do.

 2            Q.   Which ones?

 3                 MR. VINE:  Objection.

 4            A.   I use a MacBook.

 5       BY MS. BINA:

 6            Q.   Does Corellium use Apple devices for work

 7       separate and apart from the one it virtualizes?

 8                 MR. VINE:  For what purpose?

 9                 MS. BINA:  Office purposes, any other

10            purpose.

11                 MR. VINE:  For office purposes, Amanda,

12            you can answer.

13            A.   For office purposes, Corellium has at least

14       one Mac computer.  I'm trying to recollect if there

15       are any other Apple products at the office.  I don't

16       recall if we have any other Apple devices specific for

17       office purposes.

18       BY MS. BINA:

19       ██   ████████████████████████████

    ██   ███████████████████████████████

    ██   ████████████████████

    ██   ███████████████████████████████████

    ██   █████████████████

24                 MR. VINE:  This is a little over the top

25            and not relevant in any way.
```

Page 35

ATTORNEYS EYES ONLY



```
 1              I'll allow you to answer that question.

 2         That's a yes or no.

 3         A.  Yes.

 4    BY MS. BINA:

 5    ███  ██████████████████████

 6    ████████████████████████████████████

 ██  ███  ████

 ██  ███  █████████████████████████████

 ██  ████████████████████████████████████████

 ██  █████████████████████████████████

 ██  ████████████████████████████████

 ██  ███  ████

 ██  ███  ████████████████████████

 ██  █████████████████████████████████

 ██  ██████████████████████████████████████

 ██  ████

17              MR. VINE:  Objection.

18         A.  █████████████████████████  █████████

 ██  ████████████████████████████████████████

20    BY MS. BINA:

21         Q.  Thank you for that clarification.

22         ████████████████████████████████

23         A. █████████████████████████████

 ██  ████████████████████████████████

 ██  ███████████████████

                                      Page 36
```



1          THE REPORTER:  Sorry.  You're cutting

2      out.

3

BY MS. BINA:

6          Q.  Anything else?

7          A.  Those were my primary aspects of involvement.

25          THE REPORTER:  You just cut out.

Page 37

ATTORNEYS EYES ONLY

```
1              MS. BINA:  We can't understand anything
2       now.
3              THE WITNESS:  Can you hear me now?
4              THE REPORTER:  Yes.  I'll tell you how
5       far I got.  ████████████████████████
████    ██████████████████████████
7              THE WITNESS:  ██████████████████████
████    ████████████████████████████████████████
████    █████████
████    ███████████████
11     ██ █████████████████████████████████████
████    ███████████████████████
████    ██ ████████████████████████████████████
14             Q.  How many times did you personally visit
15     Apple's offices?
16     ██ ██████████████████████████████████████████
████    ████████████████████████████████████████
████    █████████████████████
19             Q.  Are there other times outside of acquisition
20     talks that you visited Apple?
21             A.  Not that I recall.
22     ██ ███████████████████████████████████
████    ██████████████████████████████████████████████
████    ████████████████████████████
████    ██ █████████████████████████████   ███████████
```

Page 38

ATTORNEYS EYES ONLY

████████████████████████████████████

2          Q.   I know it was a few years ago.  I'm just

3     asking for your best recollection.

4               So did you have, to the best of your

5     recollection, any calls -- any telephonic

6     communications -- with Apple personnel prior to the

7     meeting that, ████████████████████████

████████████

9          A.   I don't recall. ████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████████

███████████████████

14          Q.  ███████████████████████

████████████████████████████████████

████████████████████████

17               MR. VINE:  Objection.

18          A.  ████████████████████████████

████      ████████████████████████

████████████████████████████

████████████████████████

████████████████████████████

████████████████████████████

████████  ████████████████████

████████████████████████████████

                                    Page 39

ATTORNEYS EYES ONLY



```
 1    ████████████████████████████████████████████

      ████████████████████████████████████████

      ██████████████████████████

 4    BY MS. BINA:

 5          Q.   Anything else?

 6          A.   ███████████████████████████████

 7               THE REPORTER:  You cut out.

 8          A.   █████████████████████████████

      ███████████████████████████████████████████

      ██████████████████████████████████████

      ███████████████████████████████████████████

      ██████████████████████████████████████

      █████████████████████████████████████████

14    BY MS. BINA:

15          Q.   █████████████████████████████

      ████████████████████████████████████████████

      ██████████████████████████████████████

      ███████████████████   █████████████████████

      ██████████████████████████████████

20               MR. VINE:  Objection.

21          ██   █████████████████████████████████

      ████████████████████████████████████████████

      ████████████████████████

      ██████████████████████████████████

      ████████████████████████████████████
```

Page 40

ATTORNEYS EYES ONLY

```
 1   ████████████████████████████████████████

 ██  ██████████████████████████████████████████

 ██  ████████████████████████████████████

 ██  ████████████████████████████████████

 ██  █████████████████████████████

 6   BY MS. BINA:

 7       ██   ████████████████████████████████████████

 ██  ██████████████████████████

 9           MR. VINE:  Objection.

10       A.  ████████████████████████████████████

 ██  ███████████████████████████████████████

12   BY MS. BINA:

13       ██   ████████

14           MR. VINE:  Let her finish the question.

15       Jessica, she wasn't done with her answer.

16       Let her finish.  Thank you.

17           MS. BINA:  I think she was trying to

18       clarify and I was trying to help in that

19       regard.

20   BY MS. BINA:

21       Q.  Yes, that was my question.

22       ██   ████   ███████████████████████

 ██  ████████████████████████████████████████

24   BY MS. BINA:

25       Q.  ███████████   ███████████████████████████
```

Page 41

ATTORNEYS EYES ONLY

1   ███████████████████████████████████

    ████████████

    ██   ███   ████████████████████████

    ██   ████████████████████████████

    █████████████████

6       A.   No.   We never discussed those things.

7       Q.   ███████████████████████████████

    ████████████   that we have not covered that you

9   recall as we sit here today?

10      A.   Not at this time.

11      Q.   ███████████████████████████████

    █████████████████████████████████████

    ██   ████████████████████

14      Q.   Similarly to what we just did with

15  Mr. Krstic, can you tell me, at a high level, the

16  topics you remember discussing with Mr. Smith?

17      ██   ███   ████████████████████████████

    ███████████████████████████████████████

    ████████████████████████   ████████

    ████████████████████████████████████

    ██████████████████████████████████

    █████████   ████████████████████████████

    ██████████████████████

    ██   ████████████████████████████████████

    ██████████████████████████████?

ATTORNEYS EYES ONLY



1

2

3

4

5      Q.   I believe you testified that you also recall

6  meeting with Jon Andrews?

7      A.   That is correct.

8      Q.   Was that just one time or did you meet with

9  him multiple times either by phone or in person?

10

11

12

13      Q.   Can you tell me what you recall discussing

14  with Mr. Andrews?

15

Page  43

ATTORNEYS EYES ONLY



```
1
2
3
4
5
6
7
8
9
10
11
```

```
12        MR. VINE:  Whenever you're ready --
13   Jessica, whenever you're at a good breaking
14   point, maybe we can take a five-minute break?
15   Whenever you're ready.
16        MS. BINA:  I was going to ask one or two
17   more questions and offer a break, so that's
18   perfect timing.
19   BY MS. BINA:
20        Q.
21
```

Page 44

ATTORNEYS EYES ONLY

1 ████████████████████████

█  ████  ████  ████████████████████████████

█  ████████████████████████████████████████

4        MS. BINA:  Now would be a good time for

5        that five or ten minute break, if we want to

6        go off the record.

7        MR. VINE:  Yeah.

8        THE VIDEOGRAPHER:  Stand by.  This marks

9        the end of media unit number three.  Going

10       off the record at 11:27 a.m.

11       (Brief recess.)

12       THE VIDEOGRAPHER:  We're back on the

13       record at 11:38 a.m.  This marks the

14       beginning of media number four in the

15       deposition of Amanda Gorton.

16       You may proceed, Counsel.

17       MS. BINA:  Thank you.

18  BY MS. BINA:

19     █  ████████████████████████████████

█  ████████████████████████████████████████

█  ██████████████████████████████████

█  ████████████████████████████████████████

█  ████████████████████████

█  ████  ████

█  ████  ████████████████████████████████████

Page 45

ATTORNEYS EYES ONLY



Page 46



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22     A.   I don't know off the top of my head.

23

24

25          MR. VINE:   Objection.

Page 47

ATTORNEYS EYES ONLY

```
 1          A.   I don't know for certain.  I would assume so,

 2     but I'm not sure.

 3     BY MS. BINA:

 4          ██   ████████████████████████████████████████████

 ██    ████████████████████████████████████████████████████

 ██    ███████████████████████

 7          A.   Not that I can recall at the moment.

 8          Q.   ███████████████████████████████████████████

 ██    ██████████████████████████████████████

 ██         ████████████████████████████████████████████

 ██    █████████████████████████

12          A.   No.

13          Q.   ████████████████████████████████████████████

 ██         ██   █████████████████████████████████████████████

 ██    ██████████████████████████████    ███████████████████████

 ██    ██████████████████████████████████████████

 ██         ██   ██████████████████████████████████████

 ██    █████████████████

19          A.   Yes.

20          Q.   -- what is his role?

21          A.   Would you like me to spell the last name?

22          THE REPORTER:  Yes.

23          THE WITNESS:   ████████████████████████.

24     BY MS. BINA:

25          ██   ████████████████████████████████████████████

                                                    ████ 48
```

ATTORNEYS EYES ONLY

3          Q.   I understand that other persons at Corellium

4     are more involved with the technical aspects of the

5     product than you.

6               Is that fair to say?

7          A.   Yes, that's fair to say.

8          Q.   Could you give me your basic understanding in

9     layman's terms of what the product does and how it

10    works?

11              MR. VINE:   Objection.  This is not as a

12              corporate representative, but you're saying

13              as an individual.  Correct?

14              MS. BINA:   Correct.  I'm not asking her

15              in her corporate representative capacity.

16              I'm asking her, as the CEO of the company,

17              what her company does, essentially.

18              MR. VINE:   Well, let me just say this.

19              We had the e-mail exchange, and you made it

20              very clear that you're not going to ask her

21              about technical stuff in a corporate

22              representative capacity.  She's not been

23              designated -- let me finish my statement,

24              please.  And that she's not going to have to

25              answer questions on technical.

                                                  Page 49

ATTORNEYS EYES ONLY

```
 1              But, I agree, Amanda individually can
 2         answer at a high level what she understands
 3         the product does.
 4              MS. BINA:  Yes.  Just so we're clear,
 5         Jonathan, the correspondence we're talking
 6         about related to technical aspects of bugs
 7         that Corellium had found, but I'm not asking
 8         her this question as a 30(b)(6) witness.  I'm
 9         just asking what she knows.
10              MR. VINE:  There were other things
11         besides the bug issue, but I'm not going to
12         have that debate anymore.  Move on, please.
13    BY MS. BINA:
14         Q.  You can answer the question.  Would you like
15    to have it read back?
16         A.  Yes, please.
17              THE REPORTER:  "Could you give me your
18         basic understanding in layman's terms of what
19         the product does and how it works?"
20
```

Page 50

ATTORNEYS EYES ONLY

1   ███████████████████████████████████

    ██████████████████████████████████

    ███████████████████████████████████

    ████████████████████████████████████████

    ██████████████

6   BY MS. BINA:

7        Q.  Are you finished?

8        A.  Yes.

9        Q.  Thank you.  What product does Corellium

10   currently virtualize or allow customers to virtualize?

11        A.  Corellium currently enables users to

12   virtualize a variety of iPhone and Android models.

13        Q.  At what point did Corellium begin offering

14   the Android models?

15        A.  I don't recall.

16        Q.  Do you know approximately when?

17        A.  I don't.  I believe it may have been early

18   2019, but that's purely a guess.

19        Q.  It is correct that, at least when the company

20   launched, it only offered an Apple device model;

21   correct?

22             MR. VINE:  Objection.

23        A.  That is correct; although, it was always our

24   intention to enable Android device models.  It simply

25   took us some time to develop those models.

```
 1        BY MS. BINA:
 2             Q.  And then for approximately a year, in your
 3        best estimation, it offered only the iOS devices and
 4        then others were added?
 5             A.  Yes, that is correct.  Although, during that
 6        time, we were actively working on adding the Android
 7        device models.
 8             Q.  Does Corellium currently offer a cloud-based
 9        product to its users?
10             A.  Yes.
11             Q.  Is it possible at the moment for new cloud
12        users to sign up or are you only servicing existing
13        cloud accounts?
14             A.  It is possible for new users to sign up,
15        however, we generally don't enable simply anyone to
16        sign up, so all users must still go through our
17        qualification process before they're able to access or
18        sign up to the product.
19             Q.  When did you start offering the cloud-based
20        product?
21             A.  To the best of my recollection, we began
22        offering a cloud-based product in early 2019.
23             Q.  At an earlier point in 2018, did you offer
24        trial versions of a cloud-based product?
25             A.  Yes.  We initially offered beta testing
```

Page 52

ATTORNEYS EYES ONLY

1    accounts for a limited number of users.  The goal of

2    beta testing was to help us identify bugs in the

3    platform and to give feedback about the features of



12             THE REPORTER:  I'm sorry.  You're

13       breaking up.  We developed a reseller

14       relationship?

23    BY MS. BINA:

Page 53

ATTORNEYS EYES ONLY



```
 1        ███  ███   █████████████████████

   ██   ███████████████

   ██     ███  ██████████████████████

   ██   ███████████████████

   ██     ███  █████████████████████

   ██   ████████████████████████████████

   ██   ████

   ██     ███  █████████████████████

   ██   █████████████

10        A.   That is correct.

11        Q.  ██████████████████████

   ██   ██████████████████████

   ██   ██████████

   ██     ███  ██████████████████████████

   ██     ███  ██████████████████

   ██   ██████████████████  ███████████

   ██   █████████████████

18        ████████████████████████

   ██   █████████████████

   ██     ████████████████████████

   ██   █████████

   ██     ███  ███████████████████████████

   ██   ████████████

   ██     ███  ██████████████████████?

25             MR. VINE:  I know it's hard, guys,
```

1        because there's a little bit of a delay.  If

2        you can just give it a one-more-second pause,

3        Jessica, before Amanda finishes, because

4        sometimes there's a delay and she's still

5        talking.  Thank you.

6              Go ahead, Amanda.

7              THE WITNESS:  ██████████  ████████

██        ████████████████████████████████████

██        ████████████████████████████████████

██        ████████████████████████████████████

██        ██████████████████████████████████████

██        ██████████████████████████████████████

██        ██████████████    ████████████████████

██        ████████████████████████████████████

15   BY MS. BINA:

16        Q.  Do you remember offhand any of those people?

17        A.  I don't recall the specific names offhand,

18   but I do recall that many of them posted about their

19   experience with the product.

20        Q.  Ms. Gorton, you cut out for quite a bit of

21   that answer.  Is it possible that you could repeat it?

22        A.  Sure.  I don't recall the names of the

23   individuals offhand, but I do recall that several of

24   them Tweeted about their experience with the product.

25        ████   ██████████████████████████████████████

                                    ████████████

ATTORNEYS EYES ONLY



Page 56

ATTORNEYS EYES ONLY



So I'm going to turn now to a topic on which you've been designated as a corporate representative, and that's topic number 14, internal names or code names for the Corellium Apple product.

Before I launch into that line of questioning, I am cognizant that it's noon Eastern time, and I wanted to ask you and Mr. Vine at what time you would like a lunch break.

Page 57

```
 1          A.  I don't normally eat lunch.
 2              Jonathan, do you have a preference?
 3              MR. VINE:  If it means finishing earlier
 4          and trying to get even skinnier, then I don't
 5          need to eat lunch.  But if we need to take a
 6          quick break at, like, 1:00 so Amanda can get
 7          out some orange juice or a bar or something,
 8          I'm happy to do that.  I'm good right now.
 9              Amanda, are you good?
10              THE WITNESS:  I am good.
11              MS. BINA:  I do think we'll be going for
12          several hours more, so I imagine that the
13          court reporter would probably appreciate a
14          lunch break at some point.  I'll plan to stop
15          around 1:00 Eastern time for lunch or
16          thereabouts, so we can take whatever break is
17          appropriate.
18              MR. VINE:  And not to hold you to it, but
19          when you say several hours, does that mean
20          you'll go to 5:00 Eastern Standard Time?
21              MS. BINA:  I don't know exactly,
22          Jonathan.  It's going to be several hours.
23          It's more just based on the length of -- the
24          number of areas of this witness's knowledge.
25          Unfortunately, she has the good or bad luck
```

Veritext Legal Solutions
866 299-5127

ATTORNEYS EYES ONLY

```
 1              of going first, so there's a lot of questions
 2         to ask her.
 3              MR. VINE:  Go ahead.
 4    BY MS. BINA:
 5         Q.   Turning to topic number 14, that's internal
 6    names or code names for the Corellium Apple product.
 7              Can you tell me, without telling us any
 8    conversations you had with your attorneys, what you
 9    did to answer the question on this topic?
10         A.   Well, the topic is easy because we don't have
11    any internal names or code names for the Corellium
12    Apple product.
13         Q.   Okay.  I suspected that might be the case.
14    So that is an easy topic to close out.
15              Turning to topic number 15, each version or
16    update of the Corellium Apple product, including for
17    the cloud-based Corellium Apple product and all
18    private installations of the Corellium Apple product.
19              And without telling me any conversations you
20    had with your attorney, can you tell me what you did
21    to prepare to answer questions on this topic?
22         A.   Primarily what I did to prepare was to review
23    our answer to interrogatory number one, and to review
24    the corresponding release notes.
25              MS. BINA:  I'd like to introduce
```

ATTORNEYS EYES ONLY

```
 1    ███████████████████    ████████████████████
 ▮    ████████████    ████████████████████
 ▮    ██████████████████████████████████████████
 ▮    █████████████    I'm going to mark that as
 5    Exhibit 4.
 6            (Plaintiff's Exhibit 4 was marked for
 7    identification.)
 8            MR. VINE:  Just let us know when you've
 9    shared it.  It didn't come yet.
10            MS. BINA:  Elana is loading it now.  It
11    should be arriving momentarily.
12            MR. VINE:  Thank you.  I got it.  Let me
13    open it.  Give me one second.
14            MS. BINA:  I'm specifically going to ask
15    you about slide 14 of this document.
16            MR. VINE:  Okay.  You may proceed.
17    BY MS. BINA:
18            Q.  Ms. Gorton, do you have slide 14 in front of
19    you?
20            A.  I apologize.  Is that "current status?"
21            Q.  Yes, it is.
22            A.  Yes, I do.
23            ██    █████████████████████████████████
 ▮    ██████████████████████████████████████████
 ▮            ██████████████████████
```

Page 60



Page 61

ATTORNEYS EYES ONLY



to

Page 62

ATTORNEYS EYES ONLY



12    BY MS. BINA:

13         Q.   Thank you.  So I believe you said that you

14    reviewed your response to Corellium's response to

15    interrogatory number 1 in connection with this

16    30(b)(6) topic.  So let's return to Exhibit 3.

17              If you can turn to the fourth page of that

18    document, I believe that's the response you're

19    referring to.

20              MR. VINE:  Did you say Exhibit 3, number

21         4?

22              MS. BINA:  Exhibit 3, and I think I said

23         page 4.

24              MR. VINE:  Page 4.  Okay.  I apologize.

25         Got it.

ATTORNEYS EYES ONLY

1          THE WITNESS:  Yes.

2     BY MS. BINA:

3          Q.  So these, again, are the interrogatory

4     responses that you verified on behalf of Corellium,

5     LLC; correct?

6          A.  Yes.

7     ████   ████████████████████████████

      ████   ██████████████████████████████

      ████       ████████   ██████████

      ████   ███   ████████████████████████

      ████   ██████████   ████████████████████

      ████   █████████████

13    BY MS. BINA:

14         Q.  Do you know whether those release notes have

15    been produced to us in discovery in this case?

16         A.  I believe that Dr. Nieh indicated that he had

17    reviewed them, which would lead me to believe that

18    they have been produced.

19         Q.  Are you personally aware of how the Corellium

20    Apple product -- let me back up a second.  Do you know

21    what I mean when I say "Corellium Apple product?"

22         A.  I am aware that the definition has varied

23    through the course of discovery.  When you say

24    "Corellium Apple product," in my mind, I typically

25    substitute what we refer to as CORSEC, which is the

                                            Page 64

ATTORNEYS EYES ONLY

1     product that we sell and advertise.



14          Q.   Then I'm going to refer to "Corellium Apple

15    product" today using the definition that you've just

16    provided, which is the CORSEC product that you sell to

17    customers at this time, as well as all prior versions

18    of that product.

19          So my question is, are you personally aware

20    of how the Corellium Apple product was developed

21    technically?

22          MR. VINE:  Objection.  Just so it's

23          clear, this is not on behalf of the corporate

24          rep.  Go ahead.

25          A.   In my capacity at Corellium, I am involved in

Page 65

ATTORNEYS EYES ONLY

```
1    general project management, so I have a general

2    understanding of the evolution of the product, but I

3    don't have a deep technical understanding of the

4    various fixes, updates, feature additions, and so

5    forth.

6    BY MS. BINA:

7         Q.  ██████████████████████████████████

█    █████████████████████████████████████████

█    ███████████████████████████████████████

█    ██████████████████████████████████████████████

█    ██████████████████████████████

█         ████████████  █████████   █████████

█       ███  █████████████████████████████████████

█    ███████████████████████████████████████████

█    ███████████

16   BY MS. BINA:

17          ███  ████████████████████████████████

█    ████████████████████████████████████████████

█    ███████████████████████

█         ████████████  ███████████████

█       ███  █████████████████████████████████

█    ████████████████████████████████████████████

█    ███████████

24   BY MS. BINA:

25        Q.  What do you mean by "proprietary source
```

Page 66

ATTORNEYS EYES ONLY

```
 1      code?"
 2           A.  I mean, source code that belongs to Apple.
 3           Q.  I couldn't quite catch that answer.  Would
 4      you mind repeating it?  I'm sorry.
 5           A.  I mean, source code that belongs to Apple.
 6           Q.  When you say -- sorry.  I didn't mean to cut
 7      you off.
 8           A.  ████████  ██████████    ████████████████
        ████████████████████████████████████████████
        ██████████████████████
11           Q.  So your understanding is, there's no non-open
12      source -- Apple source code -- within the Corellium
13      Apple product code?
14           A.  That is correct.
15           Q.  Before we march through the response to
16      interrogatory 1 in detail, can you tell me
17      generally -- what are the most significant changes
18      that Corellium has made to its product's functionality
19      over time?
20           MR. VINE:  Objection.
21      ██  ████████████████████████████████████
        ████████████████████████████████
        ████████████████  ████████████████████
        ████████████████████████████████
        ████████████████████████████████
```

ATTORNEYS EYES ONLY

1    ██████████████████

     ████████████████████████████████████

     ████████████████

4    BY MS. BINA:

5        Q.  And what are those key features that you

6    described that have been added --

7            THE REPORTER:  I can't understand.  What

8        are those key features?

9    BY MS. BINA:

10       Q.  -- that have been added to facilitate

11   research?

12           MS. BINA:  I'm going to try plugging the

13       headset back in and let's see --

14           MR. VINE:  You're going to have to repeat

15       that question because it was, like, slurry.

16           MS. BINA:  Let's see if this makes

17       horrible static.

18   BY MS. BINA:

19       Q.  The question was, what are the key features

20   that have been added that you just referenced?

21           MR. VINE:  Objection.

22   ██  ████████████████████████

     ████████████████████████████████

     ████████████████████████████  ██████████

     ████████████████████████████████

                                          Page 68

ATTORNEYS EYES ONLY

1  ████████████████████████████████████

2          Those are a few of the features to which I

3  was referring.

4  BY MS. BINA:

5          Q.  ████████████████████████████

██  ████  ██  ██████████████████████████████

██  ██  ████████████████████████  █████████████████

██  ██  ██████████████████████████████████████████████

██  ██  ████████████████

██  ████  ██  ██  ████  █████████████████████████████

██  ██  ████████████████████

██  ██  ██  █████████████████████████████

██  ██  ██████████████████████████████

14          May I reference that?

15      Q.  You may.

16          MR. VINE:  Amanda, any time you need to

17      review the answers to interrogatories or

18      information in front of you, by all means, go

19      ahead.

20          THE WITNESS:  Thank you.

21      ██  ██  ████████████████████████████████████

██  ██  ████████████████████████████

23  BY MS. BINA:

24      Q.  And if we look at that entry, it looks like

25      that was also when the app and file browsers you

ATTORNEYS EYES ONLY

1    mentioned were added?

2         A.  Yes, that is correct.

3         Q. 

23              MR. VINE:  Objection.

24         A.  I would say that we endeavored to adopt the

25    strategy that you have just outlined as we've evolved

Page 70

ATTORNEYS EYES ONLY

```
 1    as a company.  But I'm not confident in saying that

 2    we've always adhered to that standard, particularly

 3    for earlier releases.

 4    BY MS. BINA:

 5         Q.  Understood.  So if we could look at the 1.1,

 6    January 2018, was that the first version that you

 7    offered to the public?

 8              MR. VINE:  Objection.

 9         A.  I believe this would be the first version,

10    yes.

11    BY MS. BINA:

12         Q.  And it looks like, three months later, in

13    April 2018, there was an update where there was

14    support added for a number of Apple devices.

15              Is that correct?

16         A.  That is what the document reflects, yes.

17         Q.  Is the document accurate in your

18    understanding?

19         A.  In my understanding, it is accurate, yes.

20         Q.  When it says "support for" does that mean

21    that customers could now load virtual iPhone 6 Plus,

22    iPad Mini 4, iPod Touch 6, and so on, into the

23    Corellium Apple product?

24         A.  That is accurate.

25         Q.  At that time, did the product have a
```

Page 71

ATTORNEYS EYES ONLY

1    drop-down menu, where users could select from amongst

2    supported products and they would then be downloaded

3    and pulled in?

4          A.  Yes, that is --

5          Q.  We lost you, Ms. Gorton.

6    ████   ████████   ████████████   ████

████   ████████████████████████████

████   ████████████

9          Q.  You said "in all previous versions?"

10         A.  Correct.

11         Q.  Until the most recent update?

12         A.  That's correct.

13   ████   ████████████████████████████

████   ████████████████████████████████████

████   ████████████

16         MR. VINE:  Objection.

17         A.   ████████████████████████████

18   BY MS. BINA:

19   ████   ████████████████████████████

████   ████████████████████████████████

████   ████████████

22         MR. VINE:  Is somebody typing or is that

23    static?

24         MS. BINA:  It seems like I'm staticing up

25    again.  I'm trying to figure out how to stop

                                        Page 72

ATTORNEYS EYES ONLY

```
 1            it.
 2                   Is it still there?  I can't hear it, but
 3            I think other people can hear it.
 4                   THE REPORTER:  It's better.
 5                   MS. BINA:  It's better?
 6                   MR. VINE:  No.  It's still there.
 7                   MS. BINA:  All right.  I'll go back to
 8            speaker and hopefully --
 9                   THE REPORTER:  It's so much better with
10            the headphones for me.
11                   MS. BINA:  It apparently causes horrific
12            static for some folks.  I'm not sure what the
13            technical issue is.  I'll try to keep my
14            phone as close as I can.
15       BY MS. BINA:
16            Q.  So my question was, there were a number of
17       additional iPhones that were added here in the May
18       2018 update; correct?
19            A.  That is what the document reflects, and I
20       have no reason to doubt its accuracy.
21            Q.  ███████████████████████████████
         ██   ██   ████████████████████████████████████
         ██   █████████████████████████████████████████████████████████
         ██   ███████████████████████████████████████████
         ██   ████████████████████████
```

Veritext Legal Solutions
866 299-5127

ATTORNEYS EYES ONLY



17          What does this mean?

18

Page 74

ATTORNEYS EYES ONLY



Veritext Legal Solutions
866 299-5127

ATTORNEYS EYES ONLY



17          MR. VINE:   Objection.

22     BY MS. BINA:

Page 76

ATTORNEYS EYES ONLY



Page  77

ATTORNEYS EYES ONLY

1        Q.  What does it mean that users can now create a

2    █████████████████

███       █   ██████████████████

███     ███████████████████

███     ██████████   █████████████

███     ████████████████████

███     ████

███        █   █████████████████

███     ████████████████████

███   ████████████████████

███     ██████████████████

███     ██████████████████

███     ████████

14        MR. VINE:  Objection.

15        A.  A clone would be a new instance of a virtual

16  device created from the data contained in the device

17  snapshot.

18  BY MS. BINA:

19        Q.  So the clone is a copy of the first device?

20        MR. VINE:  Objection.

21        A.  No.  The clone is not a copy of the first

22  device.  It's a new device based on the information

23  contained in the device snapshot.

24  BY MS. BINA:

25        Q.  How is that not a copy?

Page 78

1          MR. VINE:  Objection; asked and answered.

2     She just explained it.

3          MS. BINA:  Mr. Vine --

4          MR. VINE:  Amanda, if you want to repeat

5     your answer to the witness, by all means, go

6     ahead.  I mean, to the lawyer.

7          MS. BINA:  Mr. Vine, you're coaching the

8     witness and that's improper.  Please let her

9     answer the question.  My question was, how is

10    the process that she just described not

11    creating a copy?

12         MR. VINE:  Okay.  Let me make my

13    response.  Number one, I take offense when

14    you say I'm coaching the witness.  Completely

15    inaccurate.  Please try to act professional.

16    I simply was objecting because I believe that

17    question was asked and answered.  I didn't

18    direct her to not answer the question.  She

19    can still answer the question.

20         By all means, Amanda, please, go ahead.

21    A.  When a new device is created based on the

22    information from the previous device, it inevitably

23    becomes a new device and, therefore, is not a copy of

24    the old device.

25    BY MS. BINA:

Page 79

1           Q.  Isn't any copy a new version of an old -- for

2     instance, if I copy a piece of paper, I'm creating a

3     physical new piece of paper that has all the

4     information that was contained on the old piece of

5     paper.  It sounds like the process you're describing

6     for cloning is similar.  You take the version from the

7     old snapshot and you put it on a new device, just like

8     I would put the print from one piece of paper to

9     another.

10          So I'm trying to understand what the

11    difference is.

12          MR. VINE:  Objection.  Is there a

13      question?  I didn't hear a question there.

14    BY MS. BINA:

15          Q.  The question is, what is the difference?

16          MR. VINE:  Objection; asked and answered.

17          A.  The piece of paper is static.  The virtual

18    device is in motion.

19    BY MS. BINA:

20          Q.  So at the time of creation, the virtual

21    device would potentially be a copy, but then it could

22    be modified?

23          MR. VINE:  Objection.

24          A.  No.  The new virtual device is itself a new

25    virtual device.  It is not a copy of the old virtual

                                              Page 80

1    device.  It is simply a new virtual device that

2    contains the information as a starting point.

3    BY MS. BINA:

4         Q.  Right.  But at the moment of creation, it's

5    identical to the device snapshot it's cloning from;

6    right?

7              MR. VINE:  Objection.  We're definitely

8         getting into an area of a technical issue

9         that she may or may not know.

10             Again, please go ahead and answer.

11        A.  To the best of my understanding, the new

12   device created from this snapshot is not identical to

13   or a copy of the initial device or its snapshot.

14   BY MS. BINA:

15        Q.  In what way is it different at the moment --

16             MR. VINE:  Objection.  Jessica, you've

17        now asked the same question four or five

18        times.  It's getting harassing.

19             MS. BINA:  I still -- I'm trying to

20        understand the answer to this question,

21        because she told me it pulls identical

22        information and creates a new device, but

23        then she says it's not identical.  So I'm

24        asking in what way is it not identical.

25   BY MS. BINA:

Page 81

ATTORNEYS EYES ONLY

```
 1            Q.  If the answer, Ms. Gorton, is these are
 2      technical questions that someone else should answer,
 3      you can let me know that it's beyond your knowledge.
 4      But I think I'm just trying to understand the answer
 5      to your question, which is that it pulls material from
 6      the old snapshot to the new device and repopulates
 7      that material completely, but it's somehow not
 8      identical.  I'm not understanding how it's not
 9      identical.
10            MR. VINE:  Objection; mischaracterizes
11         her testimony.
12            Amanda, to the extent you, one more time,
13         can try to explain the difference, I'll allow
14         you this last time.
15            A.  I think that this question is perhaps better
16      left to someone with a deeper technical knowledge to
17      better explain the technical differences.
18      BY MS. BINA:
19            Q.  Thank you.  All right.
20            So what would you consider the benefits of
21      the cloning feature to Corellium users?
22            A.  One example would be to enable an end user
23      to --
24            Q.  It's getting hard to understand you,
25      Ms. Gorton.
```

Page 82

ATTORNEYS EYES ONLY

```
 1          A.   I apologize.  One example would be to enable

 2     an end user to spin up multiple virtual devices that

 3     have the same basic starting parameters.  In this way,

 4     they're able to run experiments from similar starting

 5     points and have a new outcome of different

 6     applications.

 7          Q.   Turning to release 1.3.2, SEP emulation for

 8     ████████████████

 9                   ████████████████████████

10          ██    ██████████████████████████████

11          ██    ███████████████████████████████████

12          MR. VINE:   Objection.

13          A.   Yes.

14     BY MS. BINA:

15          Q.  ██████████████████████████████████

16     ████   ████████████████████

17              ███████████   █████████████

18          ██   █████████████████████████████████████

19     ███████████████████████████

20     ██████████████████

21          ██   ████████████████████████████

22          ██   ███████████████████████████████████

23     █████████████████████████████████████

24     ████████████████████████████████

25          ██   ███████████████████████████████
```

Page  83

ATTORNEYS EYES ONLY

1   ███████████████████████████████████████

███████████████████████████████

███████████████████████

4        MR. VINE:  Objection.

5   ██ ████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████

9        Q.  So --

10       MR. VINE:  Jessica?

11       MS. BINA:  Yes, Mr. Vine?

12       MR. VINE:  I was going to say, when you

13  have a point that we can take this lunch

14  break -- take a half-hour break -- just go

15  ahead.

16       MS. BINA:  Absolutely.  I'm hoping to get

17  through this line of questioning.  If I'm

18  unable to finish it, we'll take a break.  But

19  I'd like to go a couple more minutes and try

20  to get through this.  If anyone needs a break

21  urgently, please let me know.

22       MR. VINE:  We'll see how it goes.

23  BY MS. BINA:

24       Q.  ████████████████████████████

███████████████████████████████████████

████████

ATTORNEYS EYES ONLY



9    BY MS. BINA:

24    would it be better to ask a witness other than
      yourself?

25         A.   That would probably be more fruitful, yes.

Page 85

ATTORNEYS EYES ONLY

```
 1        Q.  ███████████████████████████████

          ████████████████████████████████

          ████████████████████████████████████

          ████████████████████████████

 5            MR. VINE:  Objection.

 6        A.  ████████████████████  ████████████

          ██████████████████████████████████████

          █████████████████████  ████████████████████

          ██████████████████████████████████

          ████████████████████████

          ████████████████

              ██  ████████████████████████████████████

          ██████████████████████████████████████

          ███████████████████████████████████████████

          ███████████████████████████

                ██████████████████████████████████

              ██████████

18            MR. VINE:  Objection.

19        A.  █████████████████████████████████

          ████████████████████████

21   BY MS. BINA:

22        Q.  ████████████████████████████████████

          █████████████████████████████

24        A.  That appears to be correct according to the

25   documents, and I don't have a reason to doubt it.
```

Page 86

ATTORNEYS EYES ONLY

```
 1              Q.  Do you have any understanding as to when
 2       iOS 13 was released to the public?
 3              A.  I do not.
 4              Q.  Do you know whether it was in -- it was still
 5       in testing and demo mode in June 2019?
 6              A.  I do not have the information to know whether
 7       it was in testing or released to the public at that
 8       point.
 9              Q.  Okay.  2.1.2 on July 28, 2019, again, would
10       it be better to ask someone else what these technical
11       details mean?
12              A.  Yes, I believe it would be.
13              Q.  ████████████████████████████████████
██       ████████████████████████████████████████
██          ██  █████████████████████████████████████
██          ██  ██████████████████████████████████████████
██       ██████████████████████████████████████████████
██       ████████████████████████████████████████████
██          █████████████████████████████████████████
██       ██████████████████
██          ██  ███████████████████████████████████████
██       ██████████  █████████████████████████
██          ██  █████████████████████████████████████████
██       █████████████████████████████████████████
██       ██████████
```

Page  87

ATTORNEYS EYES ONLY

```
 1              Have you made any changes to that tool since
 2     December 2019?
 3          A.   I don't have knowledge of that.
 4          MS. BINA:  I think this would be a good
 5     time to take our lunch break.  Go off the
 6     record.
 7          THE VIDEOGRAPHER:  Stand by, please.
 8     This marks the end of media number four.
 9     Going off the record at 1:09 p.m.
10          (Lunch recess.)
11          THE VIDEOGRAPHER:  We are back on the
12     record at 1:31 p.m.  This marks the beginning
13     of media number five of the deposition of
14     Amanda Gorton.
15          You may continue, Counsel.
16          MS. BINA:  ███████████████████████████
       ██████████████████████████████████ Elana, I
18     think that is Tab 11.  I believe that will be
19     Exhibit 5 -- I think it's 5.
20          (Plaintiff's Exhibit 5 was marked for
21     identification.)
22          THE WITNESS:  While we're waiting for the
23     exhibit to be loaded, I wonder if I might
24     clarify some of my earlier testimony with
25     regards to meetings with Apple employees?
```

Page 88

ATTORNEYS EYES ONLY

```
 1     BY MS. BINA:
 2          Q.   Certainly.  If you have something else to add
 3     that you didn't state earlier or if there's something
 4     you've forgotten, you can add that.
 5          A.   ██████  ██████████████████████████████████
       ███████████████████████████████████████████████████
       ██████████████████████████████████████████████
       ██████████  ███████████████████████████████████
       ████████████████████████████████████████████████
       ███████████████
       ████  █████████████  ████████████████████████████████
       ████████████████████████████████████████████████████
       ████████████████████████████████████████████████
       ████████████████████████████████████████████
       ████  ████████████████████████████████████████████
       █████████████
17          Q.   Do you have the exhibit?
18          A.   I do.
19          Q.   So this is a document that was produced to us
20     in discovery.  █████████████████████████████████████
       ████  ██████  ███████████████████████████████████████
       ████████  █████████████████████████████████████████
       ██████████████████████  █████████████████████████████
       ██████████████████████████████████████████████
       ████████████████████████████████████████████████████
```

Page 89

ATTORNEYS EYES ONLY

1　████████████

2　█　　　█　████████████████████

3　█　████████████████████

4　█　　　██　████

5　　　　　　　MR. VINE:  There's static again.

6　　　　　　　MS. BINA:  Let's give it a minute to see

7　　　　if it goes away.  I'm trying to make things

8　　　　easier on the court reporter so she can hear

9　　　　me.  If it doesn't go away after a minute or

10　　　　two, let me know.  I don't know what's

11　　　　causing it.

12　BY MS. BINA:

13　　　　Q.  So do you know how we, looking at the

14　documents, could tell which ones were distributed and

15　which ones were not?

16　　　　A.  I don't suppose -- is there a way to view the

17　metadata?

18　　　　Q.  Not here, but there may be ways for us to

19　view it offline.  Would the metadata be able to tell

20　us if something was a draft or not?

21　　　　A.  Potentially, it may have been in a folder

22　marked "draft."

23　　　　Q.  And if it was a final, would it be in a

24　folder marked in some other way?

25　　　　A.  Unfortunately, not necessarily.  It may have

1    been attached to an e-mail.  That might be a way to

2    ascertain if it was --

3              THE REPORTER:  I'm sorry.  I can't hear.

4              MR. VINE:  It's very hard to hear with

5         the static.

6              MS. BINA:  Well, I'm having trouble

7         hearing Ms. Gorton even without static.

8              THE REPORTER:  Me too.

9              MS. BINA:  My point is, she's inaudible.

10        I think there's a problem on her end.  I'll

11        go back to --

12             How is the audio right now?

13             THE REPORTER:  That's good.

14   BY MS. BINA:

15        Q.  You were describing, I think, ways we might

16   be able to tell if it was a draft or not?

17        A.  Yes.  It's possible we may be able to

18   ascertain if it was attached to an e-mail sent to a

19   customer.  That might be a way to tell.

20        Q.  Looking at this document, can you say for

21   certain that it is an uncirculated draft, or you don't

22   know whether it's a draft or a final?

23        A.  Unfortunately, I don't have a solid way to

24   say for certain.

25        Q.  Okay.  In any event, there were versions of

                                        Page 91

ATTORNEYS EYES ONLY



1    this data sheet that were circulated; correct?

2    A.  Correct.

3    Q.

11    Can you turn to that?

12    A.  Yes.

13    Q.

24    Q.  So if I were a standard purchaser and I

25    wanted    , I would

Page 92

ATTORNEYS EYES ONLY

1   ████████████████████████████████████████████

2   ████    ██████████████

3              MR. VINE:   Objection.

4        A.   That is correct, insofar as it is listed on

5   this document.

6   BY MS. BINA:

7        ██   ███████████████████████████████

8   ██    ████████

9   ██    ████   ██   ████████████████████

10  ██    █████████████████

11       Q.   What is the current pricing for the on-site

12  product?

13             MR. VINE:   Objection.

14       A.   It would be beneficial if I could reference a

15  document.

16  BY MS. BINA:

17       Q.   Are you referring to a document that you have

18  or are you requesting that I provide one?

19       A.   If you have a document to provide with

20  current pricing, that would be preferable.  But given

21  our previous difficulty ascertaining the draft or

22  non-draft status of the documents, I suspect that this

23  may prove a challenge.

24       Q.   Yeah -- it's not necessarily clear to me what

25  is current and what's past, as well as what was

Page 93

ATTORNEYS EYES ONLY



1    official and what was unofficial.

10   Q.  Go ahead.

Page 94

ATTORNEYS EYES ONLY

1    hardware cost?

2        A.   That is correct.

3        Q.   What is the current per-server price for the

4    enterprise edition?

5        A.  ████████████████████████████████████

     ████████████████████    ████████████████████

     ██████████████████████████████████████

     ████████████████████    ████████████████████

     ████████████████████████████████████████████

     ████████████

11       Q.   Okay.  What about -- I'm sorry.  Go ahead.

12       A.   Just to clarify, in addition, ██████████

     ████████████████████████████████████████

     ████████████████████████████

     ██  ████████████████████████████████████

     ██████████████████████████████

     ██  ████████████████████

18       Q.   And then what about for the premium?

19       A.  ██████████████████████████████████

     ████████████████████████████████████████

     ████████████████████

22       Q.   What are the differences principally between

23   the standard, the enterprise, and the premium edition?

24       A.  ████████████████████████████████████

     ████████████████████████████████████

ATTORNEYS EYES ONLY



1

19

22              MR. VINE:   Objection.

23

25        BY MS. BINA:

Page 96

ATTORNEYS EYES ONLY



```
 1         ██   ████████████████████

           ██   ████

           ██   ██████████████████████

           ████████████████

 5         A.  I don't know offhand.

 6         Q.  Do you know any of them offhand?

 7              MR. VINE:  Objection.

 8         ██   █████████████████████████

           ████████████████   ███████████

           █████████████████

11    BY MS. BINA:

12         Q.  Anyone else?

13         A.  Possibly, but I cannot recall offhand.

14         ██   ██████████████████████

           ████████████████   ███████

16         "███████████████████

17              Is that true for all three license classes?

18              MR. VINE:  Objection.

19         A.  ██████████████████   ██

           ██████████████████████

           ████████████████████████

22    BY MS. BINA:

23         Q.  ██████████████████████

           █████████████████████

           ████████████████████
```

Page  97

ATTORNEYS EYES ONLY



```
 1       ████ ████████████████████████████████████

         ██████████████   ███████████████████████

         ███████████████████   █████████████████████

         █████████████████████████████████████████

         ████████████████████████████████████████████

         ██████████████████████

 7       Q.  That's for the cloud-based version?

 8       A.  That's correct.

 9       ████ ███████████████████████████████████

         ████████████████████████████████████████████

         ███████████████████████████████████

12       A.  No.

13       ████ ██████████████████████████████████████

         ██████████████████████████████████████████

         ██████████████████████████████████████████

         █████████████████████████████████████

         ████ ██████████████████████████████████

         ██████████████████████████████████████

         ████ ████████████████████████████████████████

         ████████████████████████████████████████████

         ██████████████████

22            MR. VINE:  Objection.

23       A.  ██████████████████████████████████████████

         █████████████████████████   █████████████

         ████████████████████████████   ██████████████
```

Page 98

ATTORNEYS EYES ONLY



 1

            VINE:  Objection.

13

                         any demands as necessary to enforce that

17    license.

18    BY MS. BINA:

19

21

                                                          Page  99

ATTORNEYS EYES ONLY

1     ██████████████████ ████████████████

    ██████████████████████████████

    ████████████████████████ ████████████

    ████████████████████████

5     Q.  No worries.  ██████████████████

    ██████████████

7     (Plaintiff's Exhibit 6 was marked for

8     identification.)

9     THE REPORTER:  Is that a mouse that I

10     keep hearing?  It makes it hard to hear on my

11     end.

12     MR. VINE:  I can't help it.

13     MS. BINA:  Yeah -- it might help,

14     Mr. Levine, if you call in from a separate

15     line so that you're not using the computer

16     audio.  That might reduce some of the

17     computer noise.  If you have a cell phone you

18     can call in from?

19     MR. VINE:  One, my last name is Vine, but

20     that's okay.

21     MS. BINA:  I'm sorry, Mr. Vine.

22     MR. VINE:  Two -- it's okay -- two, I

23     will do my best not to make any computer

24     noises.  I'm not a tech wiz like the four of

25     you ladies, and somebody had to set this up

Page 100

ATTORNEYS EYES ONLY

```
 1          and I don't want to touch it.
 2     BY MS. BINA:
 3          Q.  Let's look at Exhibit 6, if it's loaded.
 4              MR. VINE:  Just got loaded.
 5              MS. BINA:  Give me a moment.  Hang on.  I
 6          have it now.
 7     BY MS. BINA:
 8          Q.  If we can turn to the bottom of the second
 9     page -- first off, what is this document?
10     █    ██████████████████████████████████████████
       ███████████████████████████████████████████
       ████████████
       █    ████    ████████████████████████████████
       ████████████████████████████████████████████████
       █        ████████████████████
16          A.  Yes.
17          Q.  █████████████████████████████████████████
       ██████████████████████████████████████████████
       ███████████████████████████████████
20              Do you see that?
21          A.  I do, yes.
22     █    ██████████████████████████████████████████████
       ████████████████████████████████████
24          A.  I don't believe so.
25          Q.  █████████████████████████████████████████
```

Page 101

ATTORNEYS EYES ONLY



1

MR. VINE:  Objection.

9

BY MS. BINA:

A.  Correct.

Q.

Page 102

ATTORNEYS EYES ONLY

1   a ██████████████████████████████  ████

█   ████████████████████████████████████████

█   ████████████████████████

█       ██████████████████████████████████

█   ██████████████████████████████

6       MR VINE:  Objection.

7     ███  ████████████████████████████████████

█   ████████████████████████████████████████

█   ████████████████████████████████

10  BY MS. BINA:

11    ███  ████████████████████████████████

12  fi███

13      MR. VINE:  Objection.

14    ███  ██████████████████████████████

█   ████████████████████████████████████████

█   ████████████████  ████████████████████████

█   ████████████████████████████████████████████

█   ██████████████████

19  BY MS. BINA:

20    ███  ██████████████████████████████

█   ██████████████████████████████████

█     ███  ████████████████████████████  ████

█   ████████████████████████████████████████████

█   ████████████████████████████████████████

█   ████████████████████████████████████████

Veritext Legal Solutions
866 299-5127

ATTORNEYS EYES ONLY



```
 1   ████████████████████████████████████████

 █   ██████████  ███████████████████████████

 █   █████████████████████████████████████████

 █   ████████████████████████████████████████

 █   ██████

 █            ████████████████████████████████

 █   █████████████████████████████████████████

 █   █████████████████████████  ██████████████

 █   █████████████████████████████████████████

 █   ██████████████████████████████████

 █        ██  ████████████████████████████████

 █   █████████████████████████████████████████

 █   ████████████████████████████████████
```

14        A.   That is correct.

15        Q.   Do you know when in February 2020?

16        A.   I don't recall the precise date.

17        Q.   Does the other tool that we were discussing,

18   the on-premises tool, still function as of today?

19        A.   Yes.  To the best of my knowledge, it still

20   functions today.

```
21        ██  ██████████████████████████████

 █   ████████████████████████████████████████

 █   ██████████████████████████████████████

 █   ██████████████  █████████████████████████

 █   ████████████████████████████████████
```

Page 104

ATTORNEYS EYES ONLY

1    ███████████

█    ████████████████████████████

█    █████████████

█    ███████████     ████████

█    ███   ██████████████████████   ████████

█    ███████████████████████████████

█    █████████████████████   ██████████████████

█    ████████████████████████████████████

█    █████████████████████

10   BY MS. BINA:

11        Q.   Why not?

12        A.   This was a technical decision and it was

13   determined that we would not implement it.

14        Q.   For technical reasons only?

15        A.   The motivation for not implementing it is --

16   the motivation for not implementing it comprehends

17   more than technical reasons.

18        Q.   What are the other reasons?

19        ███   ████████████████████████████

█    █████████████████████████████████

█    █████████████████████████████████

█    █████████████████████████████████

█    ████████████████████████████████

█    ███████████████████████████████

█    ██████████████████   ██████████████

Page 105

▮ ████████████████████████████████████████

▮ ████████████████████

3        Q.   Any other reasons?

4        A.   That was the primary factor.

5        Q.   Okay.   I think another topic where you're

6    designated to speak on behalf of the company is topic

7    number 27, locations of private installations of the

8    Corellium Apple product.

9             Is a private installation of Corellium the

10   same as a non-premises version or are those different

11   things?

12       A.   I take those to mean the same thing.

13       ██   ██████████████████████████████████

██ ████████████████████████████████████

15       A.   If it's all right, I'll reference the

16   interrogatory responses to ensure that we can cover

17   those comprehensively.

18       Q.   Sure.   I'll open those as well.   That's

19   Exhibit 3 to the deposition.   Let me just get them

20   open.   Let me know what page you're referencing.

21       A.   I believe that's on page 24.   ████████████

██ ██████████████████████████████████████ I'm

23   sorry.

24       Q.   ██████████   ██████████   ██████████

██      ██   ██████████████████████████████

ATTORNEYS EYES ONLY



```
 1   ███████████████████████████████████████

     ███████████████████████████████████████

     ███████████████████████

 4   Q.  Sure.

 5   A.  █████████████████████████████

     ████████████████████████████████████

     ██  █████████████████████████████

     ████████████████████████████████████

 9   A.  That is correct.

10   ██  █████████████████████████████████

     ██████████████████████████████████████

     ████████████████████████

     ██  ██  ████████████████████████

     ████████████████

     ██  ████████████████████████████████

     ███████████████████████████████████

     ████████████████

     ██  ████████████████████████████████

     ███████████████████████████████████████

     ████████████████

     ██  ██████████████████████████████████

     ██████████████████████████████████

     ██  ████████████████████████████████

     ████████████████  █████████████████████

     ████████████████  ██████████████████████
```

Page 107

ATTORNEYS EYES ONLY



Page 108

```
 1          Q.  Were you finished -- what was that sound?

 2     Ms. Gorton, were you finished with your answer?  I'm

 3     sorry.  I didn't hear you.

 4          A.  Yes, I was finished. ████████████████████

       ██████████████████████████████

       ████  ██████  ██████████████████████████████████

       ██████████████████████████████████████████████████

       ██████

 9          A.  That's correct.

10          MS. BINA:  I'm getting a lot of

11     background noise.  I'm not sure where it's

12     coming from.

13          THE REPORTER:  I hear it too.

14          THE WITNESS:  I think it might be

15     Jonathan from the conference room.

16          MR. VINE:  I think they stopped.  I think

17     they were cleaning windows, believe it or

18     not.  Nope.  That's them again.  Let me go

19     talk to them outside.

20          MS. BINA:  Since he just walked out of

21     the room, can we go off the record for a

22     minute?

23          THE VIDEOGRAPHER:  Going off the record

24     at 2:19 p.m.

25          (Off record.)
```

Page 109

ATTORNEYS EYES ONLY

```
1            THE VIDEOGRAPHER:  We are back on the

2       record at 2:21 p.m.  This marks the beginning

3       of media number six of the deposition of

4       Amanda Gorton.

5            You may proceed, Counsel.

6   BY MS. BINA:

7       Q.  Ms. Gorton, I may come back to this.  I have

8   just a few more questions about this ██████████
```

Page 110

ATTORNEYS EYES ONLY



```
 1

 6        Q.   Okay.  I don't recall -- go ahead.  I didn't

 7   realize you -- there's a delay, so sometimes it looks

 8   like you're done when you're not.  I apologize.

 9        A.   Not a problem.  Why don't we clarify that

10   first and then I'll continue my answer?

11        Q.
```

Page 111

ATTORNEYS EYES ONLY



```
22        MR. VINE:  Are you done with Exhibit 5

23   for now?

24        MS. BINA:  Exhibit 5 or -- I think we

25   were on Exhibit 3 just now.
```

Page 112

ATTORNEYS EYES ONLY

```
 1              MR. VINE:  I know.  Sorry -- yeah --
 2        Exhibit 6.  Yeah -- 3, I'm keeping open.
 3   BY MS. BINA:
 4        Q.  In the meantime, I'll ask you two questions.
 5   Elana is waiting for the materials to load.  While I'm
 6   doing that, have any of your customers -- actually,
 7   flip back to Exhibit 3.
 8              So, looking at Exhibit 3, it looks like as
 9   ███████████████████████████████████
     ███████████     ██████████████████████
     ██████████████████████████████████████
     ██████████████████
                  ███████████████████████████
     █████████████████████
15            MR. VINE:  Objection.
16        A. ██████████████████████████████
     ██████████████████████████████████
     ███████████████
              ███  ██████████████████████████
     █████████
              ███    █████
22        Q.  Do you know whether your contracts would
23   require you to indemnify them for any claims of
24   infringement against any of those entities for the use
25   of your software?
```

Page 113

ATTORNEYS EYES ONLY

```
 1            MR. VINE:  Objection; outside the scope.
 2            MS. BINA:  I'm asking her as the CEO of
 3       the company and under the 30(b)(6)
 4       designation.
 5            MR. VINE:  You asked about -- I'm not
 6       going to debate it, but I don't recall seeing
 7       any designation regarding indemnification
 8       issues, but that's fine.
 9            MS. BINA:  Again, she's also here in her
10       personal capacity, you understand, Mr. Vine.
11            MR. VINE:  I did not direct her not to
12       answer.  I was objecting that it was outside
13       the scope because it is.  She can answer to
14       the extent she knows in her personal
15       capacity.
16            MS. BINA:  I believe she's also
17       designated on agreements with customers, so
18       I'm going to disagree with that.
19  BY MS. BINA:
20       Q.  In any event, if you know the answer, do you
21  have any indemnification obligations to them?
22       A.  ███████████████████      ████████████
    ███████████████████████████████████████
    ████████████████      ██████████████████████
    █████████████████████████████████
```

Page 114

ATTORNEY'S EYES ONLY

```
 1              (Plaintiff's Exhibit 7 was marked for
 2          identification.)
 3    BY MS. BINA:
 4          Q.  Let's open up, if we have it now, Exhibit 7.
 5    It's loading for me.  Let me know when you have it,
 6    Ms. Gorton.
 7              MR. VINE:  I have it, just so it's clear.
 8              MS. BINA:  I'm assuming, Mr. Vine, you'll
 9          let me know if you don't.
10              MR. VINE:  I have it.
11              THE WITNESS:  I have the document as well
12          now.
13    BY MS. BINA:
14          Q.  I actually don't.  Here we go.  I've got it
15    now.
16              So if we can turn to the section that says,
17    ████████████████████████  there's a list of locations
18    where you say that you give preference to.  I'm trying
19    to find the specific page here.
20              So if you look at the -- it's page, I think,
21    3 of the exhibit.  It's the first page of text.
22          A.  Yes.  ██████████████████████████████
██     ████████████████
██         ████   ████   ██████████████████████████████████
██         ████████████████   ██████████████████████████████
```

Page  115

ATTORNEYS EYES ONLY



1

3          MR. VINE:  Objection.

4     A.

6     BY MS. BINA:

7          Q.  This is the second time you've mentioned

8

24

Page 116

ATTORNEYS EYES ONLY



11          MR. VINE:  Objection.

17          A.  Correct.

20          Q.  Okay.  And then if you can carry on -- I

21     didn't mean to interrupt -- I just wanted to make sure

22     I understood the first steps.

23          A.  Happy to clarify.

ATTORNEYS EYES ONLY



12          Q.   What about the development of applications

13     other than security-related?

14

          Q.   Is that true for the cloud-based product as

25

Page 118

ATTORNEYS EYES ONLY

```
 1     well?  That's a significantly less expensive product;
 2     correct?
 3            MR. VINE:  Objection.  Is that compound?
 4         What's your question?
 5     BY MS. BINA:
 6         Q.  The question is, is that true for the less
 7     expensive cloud-based product as well?
 8            MR. VINE:  Objection.
 9         A.  ████████   ████████████████████████████████
       ██████████████████████████████████████████████████
       ████████████████████████████████████████████████
       ████████████████████████████████████████████████
       ███████████████████████████████████████████
       ████████████
       ████████████████████████████████████████
       ████████████████████████████████████████████████
       ██████████████████████████████████████████████████
       ████████████████████████████████████████████████
       ███████████████████████████████████████████
       ███████████████████████████████████████████████
       ██████████████████████████████████
22     BY MS. BINA:
23         Q.  ████████████████████████████████████████████
       ███████████████████████████████
       ████   ████████████   ████████████████████████
```

Page 119

ATTORNEYS EYES ONLY



14          Q.   Ms. Gorton, I can't hear you at all.

15

Page 120

ATTORNEYS EYES ONLY



Page 121

ATTORNEYS EYES ONLY



Page  122

ATTORNEYS EYES ONLY



25          MR. VINE:  Objection.

Page 123

ATTORNEYS EYES ONLY



1       A.   I think that covers the gist of it.

2   BY MS. BINA:

9               MR. VINE:   Objection.

17  BY MS. BINA:

18      Q.

Page 124

ATTORNEYS EYES ONLY

```
1        Q.  Wouldn't it be the case that different
2    activities might be considered lawful or unlawful
3    depending on the jurisdiction where they're taking
4    place and to whom they're reporting to?
5        A. ███████████████████████████████████████

██  ████████████████████████████████████

██      ██  ████████████████████████████████

██  ████████████████████████████████████████

██  ████████████████████████████████████████

10        MR. VINE:  Go ahead, Amanda.  After this,
11    could we get a break?
12        MS. BINA:  I was going to take a break at
13    the hour, if that works for you, Jonathan.
14        MR. VINE:  Yep.  Four minutes.  Perfect.
15    Thank you.
16        MS. BINA:  Sure.
17        A.  You did in fact ask this question earlier,
18    and it is the case that they do not sell or resell
19    access to the cloud.
20    BY MS. BINA:
21        ██  ████████████████████████████████

██  ████████████████████████████████████

██  ████████████████████████████████████

██  ████████████████████████████████████████

██      ██  ████████████████████████████████
```

Page 125

ATTORNEYS EYES ONLY



```
 1  ████████████████████████████████████████

    ████████████████████████████████████████

    ███████████████████████

    ███  ████████████████████████████████

    ███████████████████████████████████

    ███  █████████

    ███  ████████████████████████████  ████████

    ███████████████████████████████

 9      A.   To the best of my knowledge, that is correct.

10      Q.   Does he also work for Corellium?

11      A.   He does not.

12      Q.  ██████████████████████████████████

    ██████████████████████████████

    ███  █████  ████████████████████████████████

    █████████████████████████████████████████

    ██████████████████████████  ████████████████

    ██████████████████████████████████████████████

    ██████████████████████████████████████████

    ███████████

20      ██████████████████████████████████████

    ████████████████████████████████████████

    ██████████████████████████████████

    █████████████████████████████████████████

    ██████████████████████████████████████████████

    ████████████████
```

Page 126

ATTORNEYS EYES ONLY

```
 1          Q.  One last question and then we can go to
 2     break. ████████████████████████████████████████
       ███████████████████████████████████████████
       ██████████████
 5          MR. VINE:  Objection.
 6          A.  Well, to be clear, ████████████████████
       ████████████████    ████████████████████████
       ████████████████████████████████████
       ███████████████████████████████████████████████
       ██████████████████████████████████████
       ██████████████████
12          MS. BINA:  Should we take 10 or
13     15 minutes to go off the record?
14          MR. VINE:  Sure.  How much longer do you
15     think you have?
16          MS. BINA:  A couple more hours.
17          MR. VINE:  Is that two, three?
18          MS. BINA:  Depends on the answers and how
19     quickly we get through the material.
20          MR. VINE:  You got it.  Thank you.
21          MS. BINA:  Off the record.
22          THE VIDEOGRAPHER:  Stand by, please.
23     This marks the end of media number six.
24     Going off the record at 3:01 p.m.
25          (Brief recess.)
```

Page 127

ATTORNEYS EYES ONLY

```
 1              THE VIDEOGRAPHER:  We are back on the
 2        record at 3:14 p.m.  This marks the beginning
 3        of media number seven in the deposition of
 4        Amanda Gorton.
 5              You may proceed, Counsel.
 6    BY MS. BINA:
 7        Q.  Thank you.  ██████████████████████████
     ████████████████████████████████████████████████
     ████████████████████████████████████████████████
     ██████████████████████████████
11              MR. VINE:  Objection.  Do you mean
12        through the use of the Apple Corellium
13        product or the CORSEC?
14              MS. BINA:  ████████████████████████
15    BY MS. BINA:
16        Q. ████████████████████████████████████████
     ████████████████████████████████████████████████
     ████████████████████████████████████████████████
     ████████████████████████████████
     ██████████  ██████
     ██████████  ██████████████████████████████████████
     ███████
     ██████████  ██████████████████████████████████
     ████████████████████  ████████████████████████████
     ████████████████████████████
```

Page 128

ATTORNEYS EYES ONLY

1            (Attorney Gabe Gross is now attending by
2        telephone.)
3    BY MS. BINA:
4        Q.  But nothing that you impose on them?
5        A.  Correct.  ██████████████████████
     ████████████████████████████████████
     █████████████████████████████████
     ███████
          █████████████████████████████
     ████████████████████████████████████
     ███████████████████████████████████
     ████████████████████████████████████
     ██████████████████
14        Q.  I understand.  In any event, ██████████
     █████████████ your testimony?
16        A.  I think --
17            MR. VINE:  Objection.
18        A.  I think that might be a slight
19    oversimplification.
20            I believe my colleague, Gabe Gross of
21        Latham & Watkins, is now in our virtual room.
22        I just want to announce him.
23            Mr. Vine, did you say something?
24            MR. VINE:  I said, I don't see him.
25            MR. GROSS:  I'm on by audio.  I don't

                                        Page 129

ATTORNEYS EYES ONLY

```
 1              have the bandwidth or the internet

 2              connectivity to participate by video.  I'll

 3              just be on a short amount of time.  I'll make

 4              it clear on the record when I leave.

 5                    MR. VINE:  Thank you, Gabe.  No worries.

 6         BY MS. BINA:

 7              Q.  Ms. Gorton, let me just try to be clear with

 8         my question.  My question was, ██████████████

   ████  ████████████████████████████████████████████

   ████  ██████████████████████████████████████

11                    MR. VINE:  Objection.

12              A.  ████  ████████████████████████████████

   ████  ██████████████████████████████████████████████

   ████  ███████████████████████████████████████████████

   ████  ██████████████████████████████████████████████

   ████  ██████████████████████████

17         BY MS. BINA:

18              Q.  ██████████████████████████████████████

19                    MR. VINE:  Objection.

20              A.  ████

21         BY MS. BINA:

22              Q.  █████████████████████████████████████

   ████  ██████████████████

24                    MR. VINE:  Objection.  The better

25              question is, do you know?  But, by all means,
```

                                                    Page 130

ATTORNEYS EYES ONLY

```
1         go ahead.

2         A. ███████████████████████████

█         ███████████████████████████

4    BY MS. BINA:

5         Q. ███████████████████████████

█    ███████████████████████████████████

█    ███████████████████████████████████

█    ██████

█         ██  ████████████████████████████

█    ███████████████████████████████████

█    ███████████████████████████████

█    ████████████████████████████

█         ██  ████████████████████████

█    █████████████████████████████████

█    █████████████████████████████████

16        A. ████████████████████████

█    ████████████████████████████████

█    █████████  ██████████████████████████

█    ███████████████████  █████████████

█    ████████████████████████████████████

█    █████████████████████████████████

█    █████████████████████

23        Q.  Turning to topic number 23 of your 30(b)(6)

24   designation, that's marketing or promotion of the

25   Corellium Apple product, including Corellium's
```

Page 131

ATTORNEYS EYES ONLY

```
 1      promotion of the Corellium Apple at conferences.
 2              Without telling me any communications with
 3      your attorneys, what did you do to educate yourself on
 4      those topics?
 5          A.  I primarily relied on reviewing our answer to
 6      the interrogatory question on this subject.
 7          Q.  Did you speak with anyone?
 8              MR. VINE:  Objection.
 9      BY MS. BINA:
10          Q.  If it's with counsel, I don't want to know
11      about any conversations with counsel.
12          A.  As I mentioned at the outset, when we were
13      discussing what I did to prepare, I believe I
14      mentioned that I met with Chris, Stan, and David.  And
15      while I don't recall the precise specifics of what all
16      we discussed, it's possible that I may have asked a
17      marketing-related question during that meeting.
18              MS. BINA:  Elana, can you put up
19      ██████████████  as Exhibit 8?
20              (Plaintiff's Exhibit 8 was marked for
21          identification.)
22              THE WITNESS:  Yes.
23      BY MS. BINA:
24          Q.  ███████████████████████████████████
        ████████████████████████████████████████
```

Page 132

ATTORNEYS EYES ONLY

1    ███████████████████████████

2         I want to particularly draw your attention to

3    the last paragraph on the page ██████████████████

4    ██████████████████████████████

5    ████████████████████████████████████████

6    ███████████████████

7              █████████████████████████████████

8    ██████████████████████████████████████████

9    ███████████████████

10        A.  Well, given that the Corellium Apple product

11   or CORSEC did not exist as a product in the market

12   yet, ████████████████████████████████

13   ███████████████████  ███████████████████████████

14   █████████████████████████████████████

15   ██████████████████████████████████

16             █████████████████████████████████

17   ████████████████████████████████████

18   ██████████████████████████████  The reason

19   for this is simple.

20             ███████████████████████████████

21   ████████████████████████████████████████

22   ██████████████████████████████████████████

23   ██████████████████████████████████████████

24   ██████████████

25             ████████████████████████████████████

Page 133

ATTORNEYS EYES ONLY

1   ██████████████████████████████████

2   ██  ██████████████████████████████

3   ██  ████████    The ARM server market has had trouble getting

4   off the ground.  It has been plagued with -- beyond

5   the mere aspect.

6           THE REPORTER:  We lost the middle part of

7       it.

8           MS. BINA:  It's okay -- I think we're

9       getting a little off topic.  If we could try

10      to stay --

11          THE REPORTER:  Hang on.  I think

12      something's happening.  I don't know what the

13      problem is.  But if we could start again?

14          MS. BINA:  Can you hear me now?

15          THE REPORTER:  I can now.

16          MS. BINA:  Ms. Gorton, do you want to try

17      to say something to see if the reporter can

18      hear you?

19          THE WITNESS:  Are you able to hear me as

20      well?

21          THE REPORTER:  Yes.  I don't know if it

22      was an internet thing or what.

23          THE VIDEOGRAPHER:  When you start

24      speaking, just speak a little slower in the

25      beginning so the technology can catch up to

Page 134

ATTORNEYS EYES ONLY

```
 1        you.
 2    BY MS. BINA:
 3        Q.  Ms. Gorton, I guess, I appreciate the
 4    interesting history of the ARM server market, but I
 5    really want -- we have limited time left and I want to
 6    try to stay focused on Corellium's own targeting.
 7            I did understand you earlier to testify that
 8    you moved away from this avenue of marketing.
 9        A.  For clarity, we really never initiated this
10    avenue of marketing as it pertains to any product that
11    was offered for sale.
12        Q.  What is Corellium's primary method of
13    marketing itself?
14        A.  ████████████████████████████████████████
      ██  ████████████████████████████████████████████
      ██  ██████████████████    ████████████████████████
      ██  ████████████████████████████████████████████████
      ██  ██████████████████████████████████████████████████
      ██  ████████████████████████████████████████.
20        Q.  I'd like to ask about the 2019 Blackhat
21    Conference.
22            Did you attend that conference?
23        A.  Yes, I did attend that conference.
24        Q.  ████████████████████████████████████████
      ██  ████████████████████████████████████████
```

ATTORNEYS EYES ONLY

```
1      ███████████     ████████████
█          ████   ████████████
█          ████   ██████████████     presenters of that talk?
4          A.   No.  I did not present any portion of that
5      talk.
6          Q.   Did you attend it?
7          A.   I did attend that talk.
8          Q.   Who was invited to attend?
9          MR. VINE:  Objection.  Do you know who
10     was invited to attend?
11         MS. BINA:  Jonathan, let me ask my
12     questions.
13         MR. VINE:  Okay.  Objection.  Just trying
14     to help you out.
15         MS. BINA:  I'm sure she'll tell me.
16         A.  ████████████████████
█      ████████████████████████
█      ██████████████████████
█      ████████████████████████
█      ████
█          ██████████████████
█      ██████████████████████; but,
23     without a list in front of me, it's difficult to say
24     precisely.
25     BY MS. BINA:
```

Page 136

ATTORNEYS EYES ONLY

1      Q.  Was a list of invitees created?

2      A.  ████████████████████████████████████

████████████████████████████████████████████

████████████████████      ████████████████████

███████████████████████████████████████

6    BY MS. BINA:

7      Q.  Did you invite any Apple personnel?

8      A.  ████████████████████████████████

██████████████████████     I'm not certain if any Apple

10   personnel were invited to or attended the seminar to

11   which you are referring.

12         I do know, however, ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

16     Q.  Which employee was that?

17     A.  I believe it was either Jacques Fortier or

18   Ivan Krstic, but I -- I'm not 100 percent certain.

19     Q.  Why did you provide -- do you know who

20   provided that material?  Was it you personally or

21   someone else at Corellium?

22     A.  It was Mr. Wade.

23     Q.  Do you know why he provided that material to

24   either Mr. Krstic or -- sorry -- who was the other

25   person -- Mr. Fortier?

Page 137

ATTORNEYS EYES ONLY

```
 1        A.  Mr. Fortier.  ██████   ████████████████████
██        ████████████████████████████████████████████████
██        ████████████████████████████████████████████████
██        ████████████████████████████████████████████████
██        ████████████████████████████████████████████████
██        ██████.
 7        Q.  Did they provide any feedback on the
 8   presentation?
 9        A.  To my knowledge, they did not.
10            (Plaintiff's Exhibit 9 was marked for
11        identification.)
12   BY MS. BINA:
13        Q.  Let's look at Exhibit 9, briefly.  Do you
14   want to turn to the second slide in that exhibit and
15   let me know when you have it in front of you?
16        A.  Is this the ████████████████████████████████
17        Q.  Yes.
18        A.  Okay.
19        Q.  ████████████████████████████████████████████
██   ████████████████████████████████████   ██████████████
██   ████████████████████████████████████████████
██   ██████████████████
23        Is that true?
24        A.  ████████████████████████████████████████████
██   ████████████████████████████████████████████████████
```

ATTORNEYS EYES ONLY

1    ███████████████████████████████████

█    ████████████████████████████████████████

█    ██████████████

█        ██    █████████████████████████████████████

█    █████████████████████████████

6            MR. VINE:  Objection.

7        A.  Because this is a use case for our customers.

8    BY MS. BINA:

9        Q.  Is it something that appeals to them?

10       A.  It is something that they require to perform

11   the use case that they have.

12       Q.  █████████████████████████████████

█    ████████████

14       A.  I have heard the term before, yes.

15       Q.  ██████████████████████████████████

█    ████████████████████████████████████████

█    ███████████████████████

█        ██    ████████████████████████████████

█    ███████████████████

20       Q.  That wasn't my question.

21       A. ███████████████████████████████████

█    ██████████████████████████████████████

█    ████████████████████, my knowledge is inherently limited.

24       Q.  Do you have any knowledge one way or the

25   other as to ███████████████████████████████████

                                            Page 139

ATTORNEYS EYES ONLY

```
1                    ████████████████████████████████?

2               MR. VINE:  Objection.

3          A.  I don't have direct knowledge of that.

4     BY MS. BINA:

5          Q.  Do you have indirect knowledge of it?

6               MR. VINE:  Same objection.

7          A.  ████████████████████████████████████

      ████████████████████████████████  ██████████

      ██████████████████████████████████████████

      ██████████████████████████████████████████

      █████████████

12    BY MS. BINA:

13         Q.  What about any other customers?

14              MR. VINE:  Objection.

15         A.  I█████████████████████████████████████

      ████████████████████████████████████████

      ████████████████████████████████████████████

      ██████████████████████████████████

19    BY MS. BINA:

20         Q.  What about the use of them?

21              MR. VINE:  Objection.

22         A.  ██████████████████████████████████████

      ████████████████████████████████████████████████

      ██████████████████

25    BY MS. BINA:
```

Page 140

ATTORNEYS EYES ONLY

```
 1          Q.  Ms. Gorton, have you ever -- scratch that.
 2          ████████████████████████████████████████
    ████████████████████████████████████████████
    ████████████████████████████████████████████████
    ██████████████████████████████████
 6          Did that use case ever materialize?
 7     A.  As I stated before, ████████████████
 8     Q.  Has Corellium ever sold an exploit?
 9          MR. VINE:  Objection.  You mean through
10     something connected to the Corellium Apple
11     product or just in general?
12          MS. BINA:  Corellium, as a business, has
13     it ever sold an exploit?
14          MR. VINE:  I think that's outside the
15     scope of one, 30(b)(6), two, this case.
16          Can you explain to me how it's relevant
17     to any of the causes of action?
18          MS. BINA:  I'm not going to get into a
19     debate with you on the record, Jonathan.  I
20     think it's relevant.
21          Are you instructing her not to answer?
22          MR. VINE:  I'm asking you -- and the
23     Court is going to look into this when we're
24     discussing it -- I'm asking you to explain to
25     me how it's relevant to any claims you have
```

Page 141

ATTORNEYS EYES ONLY

```
 1            or any defenses I have.
 2                 MS. BINA:  And, Jonathan, respectfully,
 3            I'm not going to get into a debate with you
 4            on the record.  If you'd like to go off the
 5            record so I don't have to take up my time
 6            with this witness, we can have a discussion
 7            on it.
 8                 MR. VINE:  All right.  Let's go off the
 9            record.  I want to hear the relevance.
10                 THE VIDEOGRAPHER:  Stand by.  Is that
11            okay to go off the record?
12                 MS. BINA:  That's fine.
13                 THE VIDEOGRAPHER:  This marks the end of
14            media number seven.  Going off the record at
15            3:46 p.m.
16                 (Off record.)
17                 MR. GROSS:  I'm going to step out.  I
18            won't be with you any longer.  Goodbye.
19                 THE VIDEOGRAPHER:  We are back on the
20            record at 3:48 p.m., and this marks the
21            beginning of media number eight in the
22            deposition of Amanda Gorton.
23                 You may proceed, Counsel.
24       BY MS. BINA:
25            Q.  Ms. Gorton, my question was, has Corellium
```

Page 142

ATTORNEYS EYES ONLY



1    ever sold an exploit?

2           MR. VINE:  Objection.

3           A. ███████ ████████████████████████████

     ███████

5    BY MS. BINA:

6           Q. ████████████████████████████

     ██████████████████████████████

     ████ █████ ████████████████████████████

     ██████████

     ████ ███████████████████████████

     ███████████████████

12          MR. VINE:  Objection.

13          A. ██████

14   BY MS. BINA:

15          Q. ██████

16          MR. VINE:  Objection.

17   ████ █████████████████████████████████████

18   BY MS. BINE:

19   ████ ████████████████████████

20          MR. VINE:  Objection.

21          A. ██████████████████  I don't recall offhand.

22   BY MS. BINA:

23          Q. Do you recall how many times that has taken

24   place?

25          MR. VINE:  Objection.

                                          Page 143

ATTORNEYS EYES ONLY



1      A.

2   BY MS. BINA:

3

5         MR. VINE:  Objection.

6      A.

7   BY MS. BINA:

8

12

15

22

Page 144

ATTORNEYS EYES ONLY



1

2

3

4

5

6

7

8

9

10      Q.  I'd like to turn to two more 30(b)(6)

11      designations, topics 22 -- and, actually, I think we

12      already covered 28, so I'll just do -- actually,

13      topics 22 and 28 are somewhat related.  I'll be

14      focusing on 22, all sales of and licensed sale rights

15      or other use rights for the Corellium Apple product,

16      but I may also address contractual limits imposed by

17      Corellium on the use of the product in that

18      conversation.

19           MS. BINA:

                                    I think it's Tab 22.  It will

21      be Exhibit 9.

22           MS. NIGHTINGALE DAWSON:  We're on 10.

23           MS. BINA:  10.  I think you're right.

24           MR. VINE:  We are at 10.

25           MS. BINA:  It's 10, yes.

Page 145

ATTORNEYS EYES ONLY

```
 1              (Plaintiff's Exhibit 10 was marked for
 2         identification.)
 3    BY MS. BINA:
 4         Q.  Let me know when you have it up, Ms. Gorton.
 5         A.  I ███████████████████████████████████████
   ██  ████████████
   ██     ███  █████████████████████████████████████████
   ██  ████████████████████████████████████████████████
   ██     ███  ██████████████████████████████████████.
10         Q.  Sure.
11         A.  In the interest of time, I won't attempt to
12    read the whole document; but, ████████████████████████
   ██  ███████████████████████████████████████████████████.
14         Q.  Okay.  I'd like to turn to paragraph 2 --
15    actually, strike that.
16         ████████████████████████████████████████
17    █████████████████████████████████████████████████████
   ██  █████████  █████████████████████████████████████████
   ██  ███████████████████████████
   ██     █████████████████████████████████████████?
21         A.  Correct.
22         Q.  ██████████████████████████████████████
   ██  ████████████████████████████████████████████████
   ██  ████████████████████████
   ██     ███  ██████████████████████████████████
```

Page 146



1       Q.   I was referring to B, actually.

2       A.   It appears that that is what this subsection

3    indicates.

4       Q. █████████████████████████████

█    ████████████████████████████████

█    ███████████████████████████████████

█    ███████████████████████

8       A.   That is what the document says, yes.

9       Q. ██████████████████████████████

█    ███████████████████████████████

█    ██████████████████████████████

█    ████████████

13      A.   That is what the document says, yes.

14      Q.  I███████████████████████████

█    ██████████████████████

█    ████ ████████████████████

█    ████ ██████████████████████

█    ███████████████████████████████

█    █████████████████

█    ████ ██████████████████

█    ███████████████████████

█    ██████████████████

█    ████ ██████████████████████████

█    ███████████████████████████

█    █████████████████████

                                    ██████ 147

ATTORNEYS EYES ONLY



```
 1
 2
 3
 4
 5
 6
 7
 8            MR. VINE:  Objection.
 9       A.  Correct.
10   BY MS. BINA:
11       Q.  So let's look at page 15 of this document.
12       A.
```

Page 148

ATTORNEYS EYES ONLY



```
 1    ████████████████████████████████████████
 ▮    ██████████████████
 ▮         ▮    ████████████████████████████████
 ▮    ████████████████████
 ▮         ▮    ████████████████████████████████
 ▮    ██████████████
 ▮              ████████████    ██████████████
 ▮         ▮    ██████████████████████████    ███
 ▮    ████████████████████████████████████████████
 ▮    ████████████████████████████████████████
 ▮    ████████████████████████████████
 ▮    ██████████████
 ▮         ▮    ██████████████████████████████
 ▮    ████████████████████
15              MR. VINE:  Objection.
16         A.   ████████████████████████████████
 ▮    ████████████████████    ████████████████████
 ▮    ████████████████████████
19    BY MS. BINA:
20         Q.   Is that the only reason?
21              MR. VINE:  Objection.
22         ▮    ▮    ████████████████████████████
 ▮    ████████████████████████████████████
 ▮    ██████████████████████████████████
 ▮    ██████████████████
```

Page 149

ATTORNEYS EYES ONLY



1      ▪

▪

▪

4         MR. VINE:  Objection.

5      ▪

▪

▪

8      ▪

9         MR. VINE:  Objection; asked and answered.

10     A.

▪

▪

▪

▪

▪

▪

▪

18        MR. VINE:  Objection.  I'm not sure I

19     understand the question.

20        THE WITNESS:  I think I understand the

21     question.

22        MR. VINE:  Okay.  Perfect.

23     ▪

▪

▪

Page 150

ATTORNEYS EYES ONLY



18      MR. VINE:  Objection; mischaracterizes

19   her testimony.

20      A.  I'm uncomfortable with such an

21   oversimplification.

22   BY MS. BINA:

23

5127

ATTORNEYS EYES ONLY

1   █████████████████████████████████

2   ████████

3        MR. VINE:  Objection.  This is another

4   area that I see as completely irrelevant, but

5   move on.

6        You can answer, Amanda, if you can.

7        You're taking advantage of the situation,

8   but do what you need to do.  You're wasting

9   your time.

10        MS. BINA:  Mr. Vine, that is an

11   inappropriate coaching of the witness and

12   argumentative.  I ask that you let me ask my

13   questions and let her answer.

14        MR. VINE:  I didn't coach the witness at

15   all.  All I simply said was, this is an

16   inappropriate question, and you know it, but

17   you can move on.

18        MS. BINA:  I don't think it's

19   inappropriate.

20   BY MS. BINA:

21        Q.  Can you answer the question, please,

22   Ms. Gorton?

23        A.  ████████████████████████████

    ██████████████████████████████████

    ██████████████████████████████████████

                    ████████████

ATTORNEYS EYES ONLY



```
 1    ████████████
 █         ██   ████████████████████
 █    ███████████████████    ███████████████
 █    ██████████████████████
 █    █████████████████████
 █         ████████████████████████
 █    █████████    ███████████████████████
 █    ███████████
 █         ████████████████████████
 █    ███████████████████████
 █    ██████████████
12    A.  No, I don't believe so.
13    Q.  ████████████████████████
 █    █████████████████████████████████
 █         ██   █████████████████
 █         ██   ██████████
17         MR. VINE:  Objection.
18         ██   ███████████████████
19    BY MS. BINA:
20    Q. ██████████████████████
 █    █████████
 █         ██   ██████
 █         ██   ███████████████████
 █    ████████████████████████████████
 █    ████████
```

Page 153

ATTORNEYS EYES ONLY

1 ███     █████      █████████████████

██   ████████████████████████████████████

██   ████████████████████████████████████

██   ██████████████████████

5          Q.  I'm going to get to that shortly.  So why

6     don't --

7               MR. VINE:  No, no, no.  She was in the

8          middle of testifying.

9               You can complete your statement, Amanda.

10              (Inaudible due to multiple speakers.)

11              MR. VINE:  No, she wasn't.

12              MS. BINA:  -- rather than to answer my

13         question.

14              MR. VINE:  Amanda, you may continue.

15         Amanda, you may continue.

16              You can't interrupt the witness.

17              MS. BINA:  Mr. Vine, if you continue to

18         disrupt the deposition, I'm going to have to

19         ask the Court for additional time with this

20         witness.  You're not allowing me to conduct

21         the examination.

22              MR. VINE:  It is disrespectful to the

23         witness to interrupt the witness.

24    BY MS. BINA:

25         Q.  Ms. Gorton, if you'd like to continue

Page 154

ATTORNEYS EYES ONLY

```
1      speaking, you may, but I'm going to put that
2      declaration up and you'll have the opportunity to
3      clarify that later.   I'll leave it to your discretion.
4           A.
```



Page 155

ATTORNEYS EYES ONLY



```
24          MR. VINE:  Objection.
```

Page 156

ATTORNEYS EYES ONLY

█

█

█

█

5            MS. BINA:  Okay. ███████████████

█

█

█                        I'll give you an opportunity to

9      make a clarification.  That will be

10     Exhibit 11.  I think it's -- it won't be

11     Exhibit 11 because I think we made it an

12     exhibit earlier.  I don't remember what

13     exhibit that slide deck was.

14            MS. NIGHTINGALE DAWSON:  I believe it's

15     Exhibit 4.

16            MS. BINA:  All right.

17  BY MS. BINA:

18     Q.  Ms. Gorton, you're nodding.  Let's go ahead

19  and load Exhibit 4.  Let's look at slide 11.  Let me

20  know when you have it.

21            MS. BINA:  Jonathan, did you say

22     something?

23            MR. VINE:  Mine is frozen, but it's fine.

24     I reviewed it.  She can answer the question.

25     I don't know why mine just froze all of a

Page 157

ATTORNEYS EYES ONLY

```
 1          sudden.

 2               MS. BINA:  Okay.  Let us know if you need

 3          to go off the record.

 4     BY MS. BINA:

 5          Q.  This is the slide you were referring to

 6     earlier; right?

 7          A.  That's correct.

 8          Q.
```



158

ATTORNEYS EYES ONLY



Page 159

ATTORNEYS EYES ONLY



```
 1      ▮  ▬▬▬▬▬▬▬
 2   ▮  ▮  ▬▬▬▬▬▬▬▬▬▬▬
 3   ▮  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
 4   ▮  ▬▬▬▬▬▬▬
 5   ▮     ▬▬▬▬▬▬▬▬▬▬
 6   ▮  ▬▬▬▬▬▬▬▬▬▬▬▬
 7   ▮  ▮  ▬▬▬▬▬▬▬▬▬▬▬▬
 8   ▮  ▬▬▬▬▬▬▬▬  ▬▬▬▬
 9   ▮  ▬▬▬▬▬▬▬▬▬▬▬▬
10   ▮  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
11   ▮  ▬▬▬▬▬
```

12      Q.   Were you finished?

13      A.   Sorry.  Yes.

14      ▮  ▬▬▬▬▬▬▬▬▬▬▬▬

15   ▮  ▬▬▬▬▬▬▬▬▬▬

16      A.   I do not believe so.

17      ▮  ▬▬▬▬▬▬▬▬▬▬▬▬

18   ▮  ▬▬▬▬▬▬▬▬▬▬▬

19   ▮  ▮  ▬▬▬▬▬▬▬

20      Q.   Did you at some time?

21           MR. VINE:  Objection.

22      A.   No.

23      ▬▬▬▬▬

24   ▮  ▮  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬

25   ▮  ▬▬▬▬

ATTORNEYS EYES ONLY



ATTORNEYS EYES ONLY

█

█   ██   ████   ███████████████

███████████████████████████████

██████████

5          Q.   Yes.

6          A.   Just generally, not specifically vis-à-vis

7     the use of the Corellium product?

8          Q.   Correct.

9          A.   The nature of their business, as I understand

10    it, is to create forensics tools.

11         Q.   ████████████████████

█   ██   ████

█   ██   ████████████████████████

██████████

█   ██   ████████████████████████

██████████████████████████████

██████████████████████████

█   ██   ████████████████████████

███████████████████████████████  █

███████████████████████████

███████████████████████████

22              Can you tell me about that?

23         A.   ████   ████████████████████

███████████████████████████████

██████████████   █████████████████

                                    Page 162



11      A.   We did.

12      Q.   What caused you not to go through with it?

Page 163

ATTORNEYS EYES ONLY



1

2

3

4

5

6

7

8     Q.  Did they have a trial account during this

9  period of time?

10     A.  I believe they did have a trial account, yes.

11     Q.  Was it for one week or longer?

12     A.  My expectation would be that it was for one

13  week, but I can't confirm.

14

15

16     MR. VINE:  Objection.

17

18

19

20

21

22

23

24

25

Page 164

ATTORNEYS' EYES ONLY

14          MR. VINE:  Objection.

15     A.  ███████████████████████

16  BY MS. BINA:

17     Q.  I'm going to go through a number of companies

18  now, and my questions are essentially what Corellium's

19  relationship is to these entities.  I believe, in many

20  instances, they will have been trial customers, but

21  I'm not sure that that's the case in all instances.

22  They might be suppliers or something else like that.

23          So, for each one, if you can just let me

24  know -- customer, trial customer, supplier, or I don't

25  know, or if it's some other classification that you're

                                        Page 165

ATTORNEYS EYES ONLY

1    aware of?

2            MR. VINE:  Jessica, after this line, can

3        we take a break?

4            MS. BINA:  Sure.

5    BY MS. BINA:



22        A.  Past consideration, effectively dead.

23

24        MR. VINE:  Objection.

25        A.

Page 166

ATTORNEYS EYES ONLY



167

ATTORNEYS EYES ONLY



Page 168

ATTORNEYS EYES ONLY



Page 169

ATTORNEYS EYES ONLY



Page 170

ATTORNEYS EYES ONLY



1 ▮
2 ▮
3 ▮
4 ▮
5 ▮
6 ▮
7 ▮
8 ▮
9 ▮

10          MR. VINE:  Objection.

11          MS. BINA:  I hear you.  What's the

12     question, Jonathan?  Are you there?

13          MR. VINE:  I didn't ask a question.

14          MS. BINA:  Oh, did you say "objection?"

15     I thought you said "Jessica."

16          MR. VINE:  Just "objection."

17 BY MS. BINA:

18     Q.  Are any of those folks likely or anticipated

19     customers?

20          MR. VINE:  Objection.

21 ▮

22 ▮

23 ▮

24          MS. BINA:  Let's off the record then.

25          THE VIDEOGRAPHER:  Going go off the

                                        Page 171

ATTORNEYS EYES ONLY

```
 1              record at 4:47 p.m.
 2                   (Brief recess.)
 3                   THE VIDEOGRAPHER:  We are back on the
 4              record at 5:03 p.m.  This marks the beginning
 5              of media number nine in the deposition of
 6              Amanda Gorton.
 7      BY MS. BINA:
 8              Q.  Ms. Gorton, turning now to topic number
 9      four -- sorry -- number 24 -- Corellium's knowledge of
10      Apple's copyrights at issue in this action.  That's
11      another topic where you've been designated on behalf
12      of Corellium.
13                   Again, without telling me any conversations
14      you had with your attorneys, can you tell me what
15      specifically you did to prepare to answer questions on
16      this topic?
17              A.  Sure.  It was limited preparation because we
18      had no prior knowledge of copyrights.
19              Q.  So what was the limited preparation that you
20      did?
21              A.  I didn't prepare in any way except insofar as
22      to mentally review the circumstances in which
23      copyrights were made available to us.
24                   MS. BINA:  Okay.  Sorry about that noise.
25              Apparently, to close out of my Outlook, I
```

Page 172

ATTORNEYS EYES ONLY

```
 1            can't mute it without muting this call.  Bear
 2            with me one moment.
 3      BY MS. BINA:
 4            Q.  Ms. Gorton, when did you become aware -- let
 5      me back up.  Are you aware that Apple has copyrights
 6      in various versions of iOS?
 7                MR. VINE:  Objection.
 8            A.  I am aware that Apple has registered
 9      copyrights with the Copyright Office for various
10      versions of iOS.
11      BY MS. BINA:
12            Q.  And when did you become aware of that?
13            A.  I became aware of that as a result of this
14      case.  My counsel provided copies of the registration
15      filings.
16            Q.  Prior to receiving those copies, did you have
17      a general understanding that Apple had copyrights to
18      iOS?
19                MR. VINE:  Objection; asked and answered.
20            A.  I wouldn't say that I did.  It wasn't a topic
21      that I had any knowledge of.
22      BY MS. BINA:
23            Q.  So is it your testimony that, prior to this
24      lawsuit, you had no idea whatsoever that Apple's
25      operating system was subject to copyrights?
```

Page 173

ATTORNEYS EYES ONLY

```
 1              MR. VINE:  Objection.
 2        ██  ████████████████████████████████
     ██  █████████████████████████████████████
     ██  ███████████████████████████████
     ██  █████████████████
 6   BY MS. BINA:
 7        Q.  Before launching a business based around the
 8   virtualization of iOS, did you ever do any
 9   investigation to determine whether it was subject to
10   any copyrights?
11              MR. VINE:  Objection.
12        A.  Could you repeat the question?
13              MS. BINA:  Sure.  Could the court
14   reporter read it back?
15              THE REPORTER:  ███████████████
     ██       ██████████████████████████████
     ██       █████████████████████████████
     ██       █████████████████████████████
     ██       ██████████████
     ██            ████████████  █████████████
21   BY MS. BINA:
22        Q.  Is Corellium aware that Apple has a software
23   license agreement for iOS?
24              MR. VINE:  Objection.
25        A.  Yes.
```

Page 174

ATTORNEYS EYES ONLY

```
 1      BY MS. BINA:
 2           Q.  Have you ever reviewed that agreement?
 3                MR. VINE:  Objection.
 4           A.  I believe that I have, yes.
 5           Q.  Corellium does not have any licenses in place
 6      from Apple for the operation of the Corellium Apple
 7      product; does it?
 8                MR. VINE:  Objection.
 9           A.  As far as I'm aware, Corellium does not have
10      any written license agreements with Apple to license
11      the iOS software.
12      BY MS. BINA:
13           Q.  In your view, does Corellium have any
14      unwritten license agreement with Apple?
15                MR. VINE:  Objection.
16           A.  I think that that question, being of such a
17      legal nature, is one that I don't have the expertise
18      to comment upon.
19      BY MS. BINA:
20           Q.  So the answer is, you're not sure whether it
21      does or doesn't?
22                MR. VINE:  Objection, asked and answered.
23           A.  My response was that this seems -- this is a
24      question of a legal nature, which I lack the expertise
25      to remark on.
```

Page 175

ATTORNEYS EYES ONLY

```
1    BY MS. BINA:
2         Q.  I'm not asking you for a legal opinion.  I'm
3    asking for your knowledge as the CEO of the company
4    and as the witness designated to testify on behalf of
5    Corellium's knowledge of Apple's copyrights.
6              I need to know whether Corellium understood
7    it to have a license of any kind with Apple for the
8    use and development of its product.  And the answer
9    from you would be that you didn't have such an
10   understanding, but I need to know what the answer is.
11             MR. VINE:  Amanda, before you answer, let
12        me object.  Number one, she's provided
13        answers about what Corellium's knowledge was
14        about the copyrights.
15             You're now on a licensing issue of
16        software.  She's told you, the way you
17        phrased the question -- just like Ivan
18        answered and other witnesses answered for
19        Apple, even though they were designated as
20        corporate representatives, there was
21        something of a legal question that they
22        didn't feel comfortable answering.  Amanda
23        has stated the same.
24             Amanda, if you can answer it again in any
25        other way, please, feel free to do so.
```

Page 176

ATTORNEYS EYES ONLY

1        A.    ███████████████████████████████

█        ███████████████████████████████████████

█        █████████████████████████████████

4    BY MS. BINA:

5        Q.    Again, I understand you're not a lawyer, so

6    I'm not asking for the legal basis, but what facts

7    underpin that belief?

8             MR. VINE:    Objection.    You can answer.

9        A.    There are a couple of factors that contribute

10   to that belief.    In the first instance, the iOS

11   software files are made available freely online for

12   anyone to download and use.    These files can be opened

13   and explored upon download.    There are no restrictions

14   upon these files when they are downloaded.    No end

15   user license agreement is presented and no copyright

16   notice is presented and no other form of restriction

17   is presented.

18             And, so, in that regard, it indicates that

19   the vendor, i.e., Apple, has willingly and with

20   consent given the downloader the ability to do so and

21   to use the file upon download.

22             ████████████████████████████████████

█        █████████████████████████████████

█        ██████████████████████████████████████

█        ████████████████████████████████████

Page  177

ATTORNEYS EYES ONLY

1   █████████████████████████████████████

     █████████████████████████████████

     ███████████████████████████████████████

     ████████████████

5         Apple was aware of what we were doing at the

6   highest levels, including the SVP of software, Craig

7   Federighi; and, yet, no one at Apple ever indicated to

8   us that they had any issue with what we were doing.

9   BY MS. BINA:

10      Q.  Is that a complete answer?

11      A.  I appreciate the pause, yes.  That's the

12   extent of my answer for now.

13      Q.  Just a couple of clarification questions,

14   starting with the last point.

15        ██████████████████████████████

     ███████████████████████████████████████

     ██████████████████████████████

        ██  ██████████████████████

        ██  ██████████████████████████

     ████████████████████ rather than something someone

21   affirmatively said to you, like -- I don't know --

22   someone at Apple saying, "You have a license to use

23   the product" or something like that?

24        MR. VINE:  Objection.

25   BY MS. BINA:

Page 178

ATTORNEYS EYES ONLY

```
 1            Q.  That was a bit of a confusing question.  I'm
 2       trying to understand whether it's based on the absence
 3       of something saying no or the presence of something
 4       saying yes?
 5                 MR. VINE:  I think what she was saying,
 6            it's based upon their actions.  That's what
 7            she just testified to.
 8                 MS. BINA:  Well, I'm asking her for
 9            clarification, Jonathan.
10                 MR. VINE:  Objection.  Go ahead, Amanda,
11            if you want to repeat it.
12                 MS. BINA:  Please stop directing the
13            witness how to answer and let her answer my
14            question.
15                 MR. VINE:  I'm not directing her.
16            A.  In the course of our discussions with Apple,
17       it wasn't simply that they never said anything to the
18       effect of, "Stop what you're doing" or "This is not
19       something that we condone."
20                 It was, in addition, what I would consider
21       positive actions, which indicated that they not only
22       approved of what we were doing, but, in fact,
23       encouraged it and found it beneficial to the
24       community.
25                 One such example was during a meeting that we
```

Page 179

ATTORNEYS EYES ONLY



12    BY MS. BINA:

13          Q.   Encouraged the development of the technology?

14          A.   And the business.

15          Q.   Did they specifically encourage you to sell

16    the product to anyone?

17          MR. VINE:   Objection.

18          A.

25    BY MS. BINA:

Page 180

ATTORNEYS EYES ONLY

1    Q.   ████████████████████████████

     ███████████████████████████████

     ████████████████████████████████████

     ████████████████████████████████████

     ████████████████████████

6         MR. VINE:  Objection; asked and answered.

7    BY MS. BINA:

8    Q.  You can answer.

9    A.   ██████████████████████████████

     ████████████████████████████████████

     ████████████████████████████████████

     ████████████████████████  ██████████

     ███████████████████████████████████

     ██████████████████████████████

     ██  ███████████████████████████████

     █████████████████████████████

     █████████████████████████

18        MR. VINE:  Objection; mischaracterizing

19   the testimony.

20        You may answer, Amanda.

21   A.  I wouldn't say that they -- that anyone

22   directly said that.

23        MS. BINA:   ████████████████████████

24   ████.  While that's loading, I think --

25   what exhibit will it be, Elana?

                                        Page 181

ATTORNEYS EYES ONLY

```
 1              MR. VINE:  11.
 2              MS. NIGHTINGALE DAWSON:  I believe it's
 3         already there and it's 11.
 4              (Plaintiff's Exhibit 11 was marked for
 5         identification.)
 6              MS. BINA:  Perfect.  While we open
 7         that -- I don't have 11.  Let me reload it.
 8              MR. VINE:  I don't have it uploaded yet.
 9     BY MS. BINA:
10         Q.  I've got it.  But while we're waiting, one
11     more follow-up on the question you asked before.
12     ████████████████████████████████
       ████████     ████████████████████████
       ██████████████████████████████████████
       ████   ████████████     ███████████████
       ███████████████████     ███████████████
       █████████████████████████████████
       ██████████   ██████████████████████
       █████████████████████████████████
       ███████████████████████████████████
       ████████████
22              Furthermore, other open-source projects have
23         demonstrated that it is entirely possible to run
24         components of the iOS operating system, which is
25         fundamentally what Corellium does.  It does not run
```

Page 182

ATTORNEYS EYES ONLY



```
 1   ██████████████████    ████████████████
     ████████
         ██   ████████████████████████████████████
     ████████████████████████████████
     ████████████████████
         ██   ████████████████████████████████
     ████████████████████████████████████
     ████████████████████████████████████
     ████████████████████████████
██       ██   ████████████████████████████████
██   ████████████████████████████████████████?
12           MR. VINE:  Objection.
13       A.  ████████████████████████████████
██   ████████████████████████████████████████
██   ████████████████████████████████████
██   ████████████████████████████████████
██   ██████████████████    ████████████████
██   ████████████████████████████████████████
██   ████████████████████
██       ████████████████████████████████████
██   ██████████████████████████████████████████
██   ████████████████████████████████████
██   ████████████████████████████████████.
24   BY MS. BINA:
25       Q.  ████████████████████████████████
```

Page 183

ATTORNEYS EYES ONLY

 1      ████████████████████████████████████████

 ■      ██████████████████████████████████████████

 ■      ████████████████████

 ■      ██  ████████████████████████████████████████

 ■      ██████████████████

 ■      ██  ████████████████████  ████████████████████

 ■      ██████████████████████████████████████████

 ■      ████████████████████████████

 9              Let's turn to Tab 11 -- Exhibit 11 -- which

10      is an e-mail from Ollie Whitehouse at NCC Group to

11      you.

12              Do you have that in front of you?

13          A.  I do.

14          Q.  And he has a question for you.  ████████████

 ■      ████████████████████████████████████████

 ■      ████████████████████████████████

17              Do you remember him asking this question?

18          A.  I don't remember this e-mail specifically,

19      but I do see it on the page here.

20          ██  ████████████████████████████████████████

 ■      ██████████████████████████████████████████

 ■      ████████████████

 ■      ██  ████

24              MS. BINA: ███████████████████████████████

 ■      ██  ████████████

                                        Page 184

ATTORNEYS EYES ONLY

```
 1              MS. NIGHTINGALE DAWSON:  This is

 2        Exhibit 12, correct?

 3              (Plaintiff's Exhibit 12 was marked for

 4        identification.)

 5   BY MS. BINA:

 6        Q.  ████████████████████████████████

     ████████████████████████████████████

     ████████████████████████

 9              MR. VINE:  Objection.

10        A.  ███████████████████████████████

     ██████████████████████████

12   BY MS. BINA:

13        Q.  Permission.

14        A.  I don't know that I would say that that's the

15   only criteria in all circumstances.

16        Q.  █████   ████████████████   █████

     ██████████████████   ███████████████████

     ██████████   ████████████████████

     █████████████████████████████████████

     ███████████████████

     ████████████████████████████████████

     ████████████████████████████████████████

     ████████████████████████████████████

     ███████████████████████████████████

     ████████████████████████████
```



1         ████████████████████████████

          █████████████████████████████████

          ██████

          ██   ██████████████████████   █████████

          █████████████████████████████

          █████████████████████████████████████

          █████████████████████████████████

          ████████████████████████████████████

          ████████████████████████████████████

          ████████████████████

11            To be clear --

12        Q.  So it's -- sorry.  Go ahead.

13        A.  ███████████████████████████

          ███████████████████████████████████

          ███████████████████████████████

          ████████████████████

17            MS. BINA:  Let's look at Corellium

18        008526, which will be Exhibit 13.

19            (Plaintiff's Exhibit 13 was marked for

20        identification.)

21            MS. NIGHTINGALE DAWSON:  It moved.

22        BY MS. BINA:

23        Q.  ██████████████████████████████

          ████████████████████   ██████████████████

          ██████████████████████████

                                        Page 186

ATTORNEY'S EYES ONLY



9    MR. VINE:  Objection.

10  A. I

22

23    MR. VINE:  Objection; mischaracterizes

24  the evidence in front of you.

25    Go ahead.  You can answer.

Page 187

ATTORNEYS EYES ONLY

```
 1          A.   Sorry.  For clarity, the question was,

 2      "Given" --

 3      BY MS. BINA:

 4          Q.   ██████████████████████████████████████

        ███████████████████████████████████████████████

        ████████████████████████████████████████████

        ████████████████████████████████████████████████

        ███████████████████████████████

 9               MR. VINE:  Objection.

10          A.   ██████████████████████████████████████████

        ████████████████████████████████████████████████

        ██████████████████

                ████████████████████████████████████████

        ███████████████████████████████████████████████████

        █████████████████████████████████  ████████████

        ████████████████████████████████████████████████

        ████████████████████████████████████████

        █████████████

19      BY MS. BINA:

20          Q.   Is there a reason you never asked Apple

21      specifically for a license?

22          A.   ███████████████████████████████████████

        ███████████  ████████████████████████████████

        ███████████████████████████████████████████████████

        █████████████████████  ████████████████████████
```

Page 188

ATTORNEYS EYES ONLY



```
 1

 A.    That's correct.

       MS. BINA:

            Exhibit 14.
```

Page 189



```
 1            (Plaintiff's Exhibit 14 was marked for

 2        identification.)

 3    BY MS. BINA:

 4        Q.  It should be up.  ████████████████████

      ███████████████

      ███████████████████████████████████

      ███████████████████

 8        A.  It could be me or another teammate.

 9        Q.  Okay.  ████████
```

                                            Page 190

ATTORNEYS EYES ONLY



```
 1          ████████████████████████████████████████

 ██         ████████████████████████████████████

 ██         ████████████

 4               MR. VINE:  Objection.

 5          A.  No.

 6     BY MS. BINA:

 7          Q.  No, it's not your understanding?

 8          A.  Correct.

 9          █  ██████████████████████████████████

 ██    ████████████████████████████████████████

 ██         ████████████

12               MR. VINE:  Objection.

13         █  ████████████████████████████████████

 ██    ████████████████████████████████████████

 ██    ██████████████████████████████████████

 ██         ███████████████████████

17     BY MS. BINA:

18         █  ████████████████████████████████████

 ██    ████████████████████████████████████████

 ██         ██████████████████████████████

21               MR. VINE:  Objection.

22         A.  Yes.

23     BY MS. BINA:

24         Q.  I didn't hear your answer, Ms. Gorton.

25         A.  Yes.
```

Page 191

ATTORNEYS EYES ONLY



14          MR. VINE:  Move to strike counsel's

15      comments.

16          Go ahead, Amanda.  Objection.

17      A.  It is evident to us, from the ongoing

18  discussions and behavior, that such terms were

19  unlikely to have ever been a realistic offer.

20  BY MS. BINA:

21      Q.  Okay.  I'm not going to belabor time on this

22  topic, so let's move on to Exhibit 3, which, again, is

23  the fourth amended answers to plaintiff's

24  interrogatories.

25          There's another topic that you're designated

                                        Page 192

ATTORNEYS EYES ONLY

```
1    to testify on, and that's -- actually, two topics, 18

2    and 19, which is disclosures by Corellium of bugs and

3    software flaws found in iOS.

4              I'd like to look at pages 22 to 23 of

5    Exhibit 3.  If you look on page 22, ███████████████

     ████████████████████████████████████████████████████

     ███████████████████████████████████████████

     ██████████████████████████████████████████████████████

     ████████████████████████

     ██████  █  ████████████████████████████████████

     ██████  █  ████████████████████████████████

     ███████████████████████████████████

     ██████  █  █████████████████████████████████

14         Q.  Do you know when, approximately, those sales

15   took place?

16         A.  No, I don't recall.

17         Q.  █████████████████████████████████████

     ████████████████████████████████████████████

     █████████████████████████████████████████████████████

     ███████████████████████████

     ████████████████████████████████████████████████████

     ████████████████████████████████████

     ██████  █  ██████████████

24         Q.  Continuing on in this document, you were also

25   designated to discuss Corellium's finances, so I want
```

Veritext Legal Solutions
866 299-5127

ATTORNEYS EYES ONLY

```
 1      to look at pages 23 to 24 of this document, which we

 2      discussed at some degree earlier going through sales.

 3              Did you personally compile this information?

 4      A.   Are we discussing interrogatory number 8 or

 5      9?

 6      Q.   9 is what I'm discussing right now.

 7      A.   ████████████████████████████████████████

        ████████████████

        ███   ████████████████████████████████████████████████

        ███   ████████████████████████████████████

11      Q.   And then there's cloud sales as well.  That

12      was the same answer, you and Mr. Dyer?

13      A.   Yes.

14      Q.   I'd like to move on to interrogatory number

15      10.  In interrogatory number 10, you provide annual

16      figures for various years of sales of the Corellium

17      Apple product.

18               ██████████████████████████████████████████

19      ████████████████████████████████████████████████████████

        ██████████████████████████████████████████████████████████

        ███████████████████████████████████████████

22      A.   Well, off the top of my head, I don't know

23      that they don't.

24      Q.   ████████████████████████████████████████████

        ███   ████████████████████████████    ████████████████████
```

Page 194

ATTORNEYS EYES ONLY

1   ████████████████████████████████

2        Q.   Have you reviewed the expert report that

3   David Connelly, our expert, filed in this case,

4   cataloging some discrepancies amongst these

5   interrogatory responses?

6             MR. VINE:   Objection.

7        A.   I have skimmed that report, and I think that

8   his observations were from previous iterations of the

9   interrogatory responses, if I'm not mistaken.

10  BY MS. BINA:

11       Q.   So you think this version has fixed those

12  problems?

13       A.   I am not a hundred percent confident that, if

14  you tally up every figure from interrogatory number 9,

15  it will precisely match interrogatory number 10 for a

16  couple of reasons.

17              ████████████████████████████████████████

██   ████████████████████████████████████   ████████████

██   ███████████████████████████████████████████████

██   ███████████████████

██              ███████████████████████████████████

██   █████████████████████████████████████████████████

██   █████████   ████████████████████████████████████

██   ██████████████████████████████████████████████████

██   ████████████████████████████████████████ .

ATTORNEYS EYES ONLY



```
 1                    ████████████████████████

 █        █████████████████████████████████████████████

 █        ███████████████████████        █████████████████████

 █        ██████████████████████████

 5            Q.  Sorry.  Go ahead.  I didn't mean to interrupt

 6        you.  Go ahead.

 7            A. █████████████████████████████████

 █        █████████████████████████████████████████████████████

 █        █████████████████████████████████████████████████

 █        ████████████████████████████████████████████

 █        ██████████████████████████████████████████     ███████████

 █        █████████████████████████████████████████████

 █        ██████████████████████████████

 █                 ██████████████████████████████████████████████████

 █        ██████████████████████████████████████████████

 █        ███████████████████████████████████████████████

 █        ██████████████████████████████████████     ██████████████

 █        ████████████████████████████████████

19            Q.  So does this fourth amended set of answers

20        represent only actual receipts and actual expenses or

21        does it still include estimated or anticipated

22        expenses or receipts?

23            A.  This response only included actual receipts

24        or expenses.

25            Q.  Can we look at -- and I don't know the Bates
```

Page 196

ATTORNEYS EYES ONLY

```
 1    numbers for this -- the Corellium QB sales revenue
 2    report, which I'll mark as Exhibit --
 3              MR. VINE:  15.
 4              MS. BINA:  -- 15. ██████████████████
      ██████████████████████████
 6              (Plaintiff's Exhibit 15 was marked for
 7          identification.)
 8    BY MS. BINA:
 9        Q.  Ms. Gorton, who keeps this in the ordinary
10    course of business at Corellium?
11        A. ████████████████████████████████████████
      ██████████████████████████████████████
      ████████████████████████████████████████████
      ████████████████████      █████████████████████
      ████████████████████
16    BY MS. BINA:
17        Q.  How are expenses and revenues ordinarily
18    booked in your accounting system?
19              THE VIDEOGRAPHER:  Counsel, your
20          microphone is getting more scratchy as we go.
21              MS. BINA:  I haven't moved.  This is fun.
22          Can you hear me okay now?
23              THE VIDEOGRAPHER:  It's still a little
24          scratchy.  We'll just monitor it.
25              MS. BINA:  Let me know if you're having
```

Page 197

ATTORNEYS EYES ONLY

```
 1              trouble.  I'll try to do something.
 2      BY MS. BINA:
 3              Q.  So the question was, how are your expenses
 4      and revenues booked in the ordinary course of
 5      business?
 6              A.  I'm not sure I understand the question.
 7      Could you clarify?
 8              Q.  Sure.  If you book revenue, how is that put
 9      into your accounting system?  So you get a big check
10      from somebody for selling an on-premises version or a
11      wire transfer.  What do you do with it?
12              A.  If I'm understanding the question correctly,
13      our bank account automatically syncs with the --
14              Q.  You cut out there.  With some kind of
15      software?
16              A.  ███████████████████████████████████
17              Q.  What about expenses; how are they accounted
18      for?
19              A.  ███████████████████████
██  ███  █████████████████████████████████████
██  ████████████████████████████████████████████████████████
██  ████████████████████████████████████████████
██  ███  ██████████████████████████████████████████████████████
██  ███  █████████████████████████████████
██  ███  ████████████████████████████████████████████
```

Page 198

ATTORNEYS EYES ONLY



1    ████████████████████████

██    ██    ████████████████████████

██    ████████████████████████████

██    ██████████████

██    ██    ████████████████████████

██    ██████████████████

██    ██    ████████████████████████

██    ██████████████████████████████

██    ██████████████████████████████

██    ██████████████

██    ██    ██████████████████    includes all

12   sales between March 14, 2019 and January 17, 2020.

13        Q.   So you don't know whether it includes -- do

14   you know what date this report was run?

15        A.   I do not.

16        Q.   ████████████████████████

██    ██████████████████████████

██    ██    ████████████████████████

██    ██████████████████    ████████

██    ████████████████████████████

██    ██████████████

██    ██    ████████████████████████

██    ██████████████████████████

██    ██████████████████████████

██    ██████████████████████████

Page 199

ATTORNEYS EYES ONLY



```
 1  ████████████████████████████████████
 ■  ███    ██  ███████████████████████████
 ■  ████████████████████████████████████████
 ■  █████████████████████████████████
 ■  ██  ████████████████████████████████████
 ■  █████████████████████████████████
 ■  ██  ███  ███████████████████████████████
 ■  ███████████████████
 ■  ██  █████████████████████████████
 ■  █████████████████████████████████  █
 ■  ██████████████████████████████
 ■  ██  ██████████████████████████████
```

13    Q.   In interrogatory number 9, when you listed

14  the sale prices for the product, ████████████████

 ■  █████████████████████████████████████████

 ■  ████████████████████████████

17    A.   One moment.  Let me pull up interrogatory 9

18  again.

19    Q.   Sure.  That's Exhibit 3.

20    A.   Thank you.  ██████████████████████████

 ■  ███████████████████████████████████

 ■  █████████████████████████

23    Q.   Right.  Exactly.  Did you make any discount

24  or adjustment to the purchase price?

25    A.   We did not.

Page 200

ATTORNEY'S EYES ONLY

```
 1           Q.  You stated that you skimmed Mr. Connelly's
 2    report.  There are some expenses that he identified in
 3    that report, ███████████████████████████
      ██████████████████████████████████████████
      ███████████████████████████
 6           Is it your understanding -- do you have an
 7    understanding as to whether those are expenses
 8    properly attributed in a copyright case?
 9           A.  No, I don't have any understanding of that.
10       ██ ████████████████████████████████████████
      ████████████
12           MR. VINE:  Objection.
13           A.  Probably not.
14    BY MS. BINA:
15       ██ ████████████████████████████████████
      █████████████████████████████████████████
      ████████████████████████████████
18           MR. VINE:  Objection; mischaracterizes
19           the document.
20           A. ████████████████████████████████████████
      ██████████████████████████████████████
      ██████████████████████████████████████████
      ████████████████
24    BY MS. BINA:
25           Q.  So I understand why there would be new
```

Page 201

1   information added, ██████████████████████

█   ██████████████████████████████████████?

3        MR. VINE:  Objection; asked and answered.

4        ██   ████   ████████████████████████

█   ████████████████████████████████████████

█   ██████████████████████████████████████

█   ████████████████████████████████████████

█   ████████████████████████████████████

█   █████████████

█   ██   ██████████████████████████████████

█   █████████████████████

12       MR. VINE:  Come on.  Objection.  Did you

13  just accuse the witness of changing things

14  improperly?

15       MS. BINA:  No.  I'm trying to understand

16  what she's testified to.  She said that the

17  numbers have changed based on things deemed

18  relevant and irrelevant in litigation.  ████

█   ████████████████████████████████████████

█   ████████████████████████████████████

█   █████████████████████

22       MR. VINE:  Well, to the extent, Amanda,

23  that any of these questions relate to

24  conversations that you had with counsel,

25  don't answer the question.  If you can answer

Page 202

ATTORNEYS EYES ONLY

```
 1          it in a different way --
 2               MS. BINA:  I'm not asking --
 3               MR. VINE:  She may have received
 4          instructions from counsel.
 5               MS. BINA:  I'm not asking about her
 6          communications with counsel.
 7               MR. VINE:  You're asking her why.  And at
 8          the direction of counsel, then I don't want
 9          her to answer the question.  If it wasn't,
10          then she can answer the question.
11     BY MS. BINA:
12          Q.  ████████████████████████████████
    ████████████████████████████████████████████████
    ████████████████████████████████████
15               MR. VINE:  Same objection.
16          A.  Sure.  ███████████████████████████
    ███████████████████████████████████████
    ██████████████    █████████████████████████████
    ████████████████████████████
20               MR. VINE:  I don't want you --
21     BY MS. BINA:
22          Q.  Don't testify about communications with your
23     counsel.  If the only way to answer this question is
24     to tell about a direction you received from counsel,
25     you shouldn't answer it.
```

Page 203

ATTORNEYS EYES ONLY



```
 1        A.  Let me simply say this then.   The differences

 2   are
```

```
13        A.  Exactly right.

14        Q.
```

Page 204

ATTORNEYS EYES ONLY

```
 1            Q.  But what do they relate to?

 2            MR. VINE:  Objection; asked and answered.

 3            MS. BINA:  Respectfully, she hasn't

 4       answered it.  She told me what they don't

 5       relate to.

 6            MR. VINE:  You don't get to choose -- if

 7       you don't like her answer, that's fine, but

 8       she did answer the question.

 9  BY MS. BINA:

10            Q.  You can answer, Ms. Gorton.

11            A.  ████████████████████████████

             ████████████████████

             ██    ████████████████

14            MR. VINE:  Objection; asked and answered.

15  BY MS. BINA:

16            Q.  I didn't hear your answer because your

17       counsel spoke over you.

18            A.  That's correct.

19            Q.  One question I forgot to ask earlier.  I'm

20       hoping the answer is not yes.  Are you under the

21       influence of any medication or other substance that

22       could affect the accuracy or clarity of your testimony

23       today?

24            A.  I am not.

25            MS. BINA:  Good.  We don't have to
```

Page 205

ATTORNEYS EYES ONLY

1        withdraw the last six and a half hours.

2            I think that I am through with what I

3        have at this point.  Over what I'm sure will

4        be the vociferous objection of Mr. Vine,

5        which we will discuss at a later time, I

6        would like to reserve the right to hold this

7        deposition open.  There are a number of

8        documents relating to this witness

9        potentially in her corporate designee

10       categories that have not yet been produced to

11       us and it may be necessary for us to revisit

12       those topics after production.

13           I anticipate that Mr. Vine would oppose

14       any such reopening; although, if you feel

15       otherwise, Mr. Vine, please go ahead and tell

16       me, but I do want to make that statement on

17       the record.

18           MR. VINE:  Gabe and I had a discussion

19       about this issue.  I suggested that we push

20       off both Amanda and Stephen Dyer.  You guys

21       elected for three other witnesses to proceed

22       after March 31st, which is the deadline to

23       produce the documents, and to proceed with

24       Amanda and Stephen.

25           We told you, if you do, that you're not

Page 206

ATTORNEYS EYES ONLY

```
 1              going to get a second bite of the apple.  I'm
 2              just putting that on the record.  We warned
 3              you before taking today's deposition --
 4              you're smirking, but the reality is, that was
 5              the discussion.
 6                   How about this?  We will meet and confer
 7              about it after you get the production; and
 8              then, if there's a discussion that you
 9              believe you need to have with Amanda, we will
10              consider the request.  And if we can come to
11              an agreement, we can let Judge Matthewman
12              address it.
13                   MS. BINA:  Just for clarification, I am
14              aware of your conversation with Mr. Gross.
15              We did decide to defer three depositions
16              because of the overwhelming amount of
17              material that had not been produced.
18              However, given that you have not been willing
19              to consent to any extension of fact discovery
20              in this case, which closes in about three
21              weeks, and given that we have depositions
22              scheduled nearly every day between now and
23              the end of the fact discovery period, we have
24              had to proceed with some depositions.
25                   I'm hopeful that we will not need to
```

Page 207

ATTORNEYS EYES ONLY

```
1        redepose Ms. Gorton on any topics and I
2        appreciate that you will confer in good faith
3        after the production of documents.
4            MR. VINE:  Yeah -- and I just want to
5        correct the record because I don't think you
6        did it intentionally.  I know you don't
7        intentionally misstate.  We do not have
8        depositions nearly every day.  In fact,
9        there's a number of dates that we do not have
10       depositions.
11           But, as I stated, I would suggest that
12       you push off Mr. Dyer's for the same reason.
13       We're willing to make him available from
14       April 1st through April 20th.  And I don't
15       know if you've seen it, but the Court also
16       extended the deadline as it relates to the
17       expert discovery, so that pushes back some of
18       the issues as well.  It's up to you --
19           MS. BINA:  We'll look at that, but I
20       don't want to take up more of Ms. Gorton's
21       time.  Do you have any questions for her?
22           MR. VINE:  I do not.
23           MS. BINA:  Okay.  Ms. Gorton, at some
24       point after this deposition is completed,
25       you'll get a copy of your transcript and
```

Page 208

ATTORNEYS EYES ONLY

1          you'll have the right to review it and make

2          any changes that you deem appropriate.  Of

3          course, those changes can be commented on by

4          people for Apple.

5               Would you like to exercise your right to

6          review and read your transcript and make any

7          necessary edits or would you like to waive

8          that right?

9               MS. BINA:  She's going to read.  I'll

10         answer for her.

11              THE WITNESS:  Okay.

12              THE REPORTER:  Do you want this

13         transcribed?

14              MR. VINE:  Yes.

15              Can we get on the record the amount of

16         time by the videographer, please?

17              THE VIDEOGRAPHER:  Yes.  One second,

18         please.  Seven hours exactly.

19              THE REPORTER:  And I didn't hear,

20         Ms. Bina, if you wanted this transcribed.

21              MS. BINA:  I would like a transcription.

22              MR. VINE:  We would like it.

23              MS. BINA:  I'd like to order a rough as

24         well.

25              MR. VINE:  We'll take a copy of the

Page 209

ATTORNEYS EYES ONLY

```
 1              rough.
 2                   MS. BINA:  That's fine.
 3                   THE VIDEOGRAPHER:  Let me conclude first.
 4              This concludes today's deposition of Amanda
 5              Gorton.  The total number of media used is
 6              nine.  We're going off the record at
 7              6:17 p.m., with 7 hours and 1 minute on the
 8              record.  Thank you so much.
 9                   (The reading and signing of the
10              transcript were not waived, and these
11              proceedings concluded at 6:17 p.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Veritext Legal Solutions
866 299-5127

ATTORNEYS EYES ONLY

```
 1                          ERRATA SHEET

 2       RE:  Apple Inc. v. Corellium, LLC

         DEPO OF:  Amanda Gorton

 3       TAKEN:  March 25, 2020

 4

 5    Under penalties of perjury, I declare that I have read

 6    the foregoing document and that the facts stated in it

 7    are true.

 8

 9

10

11

12    _____

13     DATE                       AMANDA GORTON

14

15

16

17    Subscribed and sworn before me this _____ day of

18    _____, 2020.

19

20    State of Florida    )

21    County of           ) _____

22

23                             NOTARY PUBLIC

24

25
                                         Page 211
```

ATTORNEYS EYES ONLY

```
1                    CERTIFICATE OF OATH

2

3       STATE OF FLORIDA

4       COUNTY OF PALM BEACH

5

6

7               I, Lisa Gerlach, the undersigned Notary

8       Public, in and for the State of Florida, hereby

9       certify that Amanda Gorton personally appeared before

10      me and was duly sworn.

11

12              WITNESS my hand and official seal this

13      29th day of March, 2020.

14

15

16

17               Lisa Gerlach, Court Reporter

18               Commission #GG023652

19               Expires 9/8/2020

20

21

22

23

24

25

                                        Page 212
```

ATTORNEYS EYES ONLY

```
1                      CERTIFICATE OF REPORTER

2

3       STATE OF FLORIDA

4       COUNTY OF PALM BEACH

5

6                 I, Lisa Gerlach, Court Reporter, do hereby

7       certify that I was authorized to and did

8       stenographically report the foregoing deposition; and

9       that the transcript is a true and correct

10      transcription of the testimony given by the witness.

11                I further certify that I am not a relative,

12      employee, attorney or counsel of any of the parties,

13      nor am I a relative or employee of any of the parties'

14      attorney or counsel connected with the action, nor am

15      I financially interested in the action.

16                Dated this 29th day of March, 2020.

17

18

19                Lisa Gerlach, Court Reporter

20

21      The foregoing certification of this transcript does

22      not apply to any reproduction of the same by any means

23      unless under the direct control and/or discretion of

24      the certifying reporter.

25
```

Page 213