DEX  20

```
 1                UNITED STATES DISTRICT COURT

 2                SOUTHERN DISTRICT OF FLORIDA

 3                 CASE NO: 9:19-cv-81160-RS

 4   ----------------------------------------------------------

 5   APPLE INC.,                        )
                                        )
 6                      Plaintiff,      )
                                        )
 7        vs.                           )
                                        )
 8   CORELLIUM, LLC,                    )
                                        )
 9                      Defendant.      )

10   ----------------------------------------------------------

11                       DEPOSITION OF

12                        JASON SHIRK

13                    CONFIDENTIAL PORTION

14                    ATTORNEYS' EYES ONLY

15

16                      March 23, 2020

17                        10:15 a.m.

18

19               1200 Sixth Avenue, Suite 610

20                    Seattle, Washington

21

22

23

24

25   REPORTED BY:  Allison O'Brien, CCR No. 2163
```

Jason Shirk Vol Confidential
March 23, 2020                              2

```
 1                        APPEARANCES

 2

 3     FOR THE PLAINTIFF:
       (Via videoconference)
 4
                  JESSICA STEBBINS BINA
 5                Attorney at Law
                  Latham & Watkins
 6                10250 Constellation Boulevard, Suite 1100
                  Los Angeles, California 90067
 7                424.653.5525
                  jessica.stebbinsbina@lw.com
 8

 9

10     FOR THE DEFENDANT:
       (Via videoconference)
11
                  JUSTIN LEVINE
12                Attorney at Law
                  Cole, Scott & Kissane
13                222 Lakeview Avenue, Suite 120
                  West Palm Beach, Florida 33401
14                561.383.9222
                  justin.levine@csklegal.com
15

16

17     ALSO PRESENT:
       (Via videoconference)
18
                  JESSE KOEHLER
19

20

21

22

23

24

25
```

Jason Shirk Vol Confidential
March 23, 2020                                          3

```
 1                           INDEX

 2

 3    EXAMINATION:                                    PAGE:

 4    By Mr. Levine                                      5

 5

 6

 7                          EXHIBITS

 8

 9    NO:             DESCRIPTION:                    PAGE:

10   ████████████████████████████████████████████████
     ████████████████████████████████████
     ████████████████████████████
         ███████████████████████████████████████████████
         ████████████████████████████████████████
         ████████████████████████████████████████████████
         ████████████████████████████████████████
15
16    Exhibit 5    05/12/17 E-Mail, Shirk, Wade        117
                   RE: Update
17   █████████████████████████████████████████████████
     █████████████████████████████████████
18
      Exhibit 7    07/12/17 E-Mail, Wade, Shirk, RE: One   121
19                 More Step

20    Exhibit 8    10/03/17 E-Mail, Shirk, Wade        123
                   RE: Thanks
21   ██████████████████████████████████████████████████
     ████████████████████████████████████████
     █████████████████████████████████████████████████
23   ████████████████████████████████████████████
24   ███████████████████████████████████████████████████

25
```



Jason Shirk Vol Confidential
March 23, 2020                                4

```
 1                        EXHIBITS

 2

 3   NO:            DESCRIPTION:                    PAGE:

 4

 5

 7

 9

11

13   Exhibit 17   02/10/20 E-Mail, Product Security,   151
                  Chris RE: Bug Report,
14                Follow-up 719139226

15

16

18

20

21

22

     (Original exhibits included with original transcript.)

23

24

25
```

Jason Shirk Vol Confidential
March 23, 2020                                    21

1              (Confidential testimony commences.)



Jason Shirk Vol Confidential
March 23, 2020                                        22



1



3                    (Confidential testimony concludes.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Jason Shirk Vol Confidential
March 23, 2020                                    28

1            (Confidential testimony commences.)





Jason Shirk Vol Confidential
March 23, 2020                    30



13          MS. BINA:  Objection, vague.

14     A.   Sometimes -- yeah.

15     Q.   You can answer.

Jason Shirk Vol Confidential
March 23, 2020                    31



```
 9              THE WITNESS:  I'm pretty sure that that's a

10       confidential piece of information, but since this is

11       all confidential, Jessica, do you agree that I can

12       answer that?

13              MS. BINA:  Yes, you can answer.  We'll

14       designate it attorneys' eyes only.
```

well,

9    strike that.

10              MR. LEVINE:  Let me -- I'm going to call

11       Chris and Amanda back in.  Just one second.

12              (Ms. Gorton entered the room.)

13              (Confidential testimony concludes.)

14

15

16

17

18

19

20

21

22

23

24

25

Jason Shirk Vol Confidential
March 23, 2020                              73

1              (Confidential testimony commences.)

2              MR. LEVINE:  Welcome back, Mr. Shirk.  Just

3       remember that you're still under oath.

4       Q.   (By Mr. Levine) ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

████████████████████████████████████████████████████

████████████████████████

████████████████████████████████████

████████████████████████

████████████████████████████████████████

████████████████████████

████████████████████████████████████████████████

15              THE WITNESS:  I -- I would consider this to

16       be confidential information, so this should be

17       attorneys' eyes only, I'm guessing.

18              MR. LEVINE:  There's no --

19              MS. BINA:  Yeah, and --

20              THE COURT REPORTER:  I'm sorry.  Mr. Levine,

21       I didn't hear what you said before you were

22       interrupted.

23              MR. LEVINE:  I just said that there's nobody

24       connected to this video that cannot hear this

25       information.

Jason Shirk Vol Confidential
March 23, 2020                                    74

```
 1                    MS. BINA:  And I would say the same thing.
 2         So you're fine.
 3         ████████████████████████████████████████████████
           ████████████████████████████████████████████████████
           ████████████████████████████████████████████████
           ████████████████████████████████████████████
 7                    THE WITNESS:  Someone is scratching quite a
 8         bit there.
 9                    MR. LEVINE:  Yeah, I can hear that as well.
10         It just started.
11                    MS. BINA:  Is it still going?  I can't hear
12         it, so I'm guessing it might be me, but I can't hear
13         anything.
14                    MR. LEVINE:  I can hear it.
15                    MS. BINA:  If you want, I can go off the
16         record for a minute and try calling back in.
17                    MR. LEVINE:  It actually just went away when
18         you moved.  Yeah, why don't we go off the record.
19         Jessica, if you would just call back in.
20                    MS. BINA:  Yeah.  I'll just hang up and dial
21         back in in case there's a problem with my line, okay?
22         Hang on.
23                    (Off the record.)
24                    MR. LEVINE:  We can go back on the record?
25                    MS. BINA:  Yeah.
```

Jason Shirk Vol Confidential
March 23, 2020                              75

1          MR. LEVINE:  All right.  So back on.



Jason Shirk Vol Confidential
March 23, 2020                              76



1

8          THE WITNESS:  We seem to have lost audio for

9     Mr. Levine.

10             (Off the record.)

11             MR. LEVINE:  Back on the record, if we went

12     off.

13

Jason Shirk Vol Confidential
March 23, 2020                          77

████████████████████████████████

██████████████████████████████████████

███████████████████████████████████

█████████████████████████████████████

██████████

████████████████████████████████████

█████████████████████████████████

███████████████████████

████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

███████████████

```
13      Q.   What would you be doing when you go to work for
14   Microsoft?
```

████████████████████████████████████

█████████████████████████

```
17      Q.   Will you agree with me now, knowing that Microsoft
18   is a client of Corellium, that Corellium at least can be
19   used for good-faith security research?
20             MS. BINA:   Objection, speculation.
```

███████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████

Jason Shirk Vol Confidential
March 23, 2020                                      78

1      Q.   Does Apple -- if Apple learned that one of its bug

2   bounty members was -- discovered a vulnerability and did not

3   submit that vulnerability to Apple, would Apple take any

4   recourse against that member?

5      A.   No.

6      Q.   Why not?

7   

Jason Shirk Vol Confidential
March 23, 2020                    79



1

2          MS. BINA:  Object, argumentative, calls for

3      expert opinion.

4          You can answer.

5          MR. LEVINE:  I disagree, but go ahead.

6

21          MS. BINA:  Objection, asked and answered.

22          You can answer.

23

Jason Shirk Vol Confidential
March 23, 2020                                      80



13          MS. BINA:  Objection, improper hypothetical.

14          Mr. Shirk, you can answer unless I tell you not

15     to.

16     A.    Okay.

Jason Shirk Vol Confidential
March 23, 2020                          81

11          MS. BINA:  Objection, foundation, improper

12     hypothetical.

13     Q.   Would that entity be considered a -- well, strike

14     that.

15

16

17

18

19

20          THE WITNESS:  I would -- do we have anyone on

21     the call who is not legal at this point?

22          MS. BINA:  We're still under attorneys' eyes

23     only.

24          MR. LEVINE:  I think for the remainder of the

25     deposition we're going to be okay to openly speak.

Jason Shirk Vol Confidential
March 23, 2020                          82

1    ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████

████████████████████████████████████████

████████████████████████████████

12    A.   I don't agree with how he's aligned himself.

13    Q.   If you can just answer my question now, the

14    pending question.  ████████████████████████████████

████████████████████████

16              MS. BINA:  Justin, please let the witness

17    finish his answer before you interrupt him.

18              MR. LEVINE:  I think he --

19              MS. BINA:  Before you even interrupt him.

20              MR. LEVINE:  That's fine.  If he can just

21    answer my question, then he's happy to explain.

22              MS. BINA:  Yeah, Mr. Levine, you're being

23    argumentative.  Let the witness finish his answer.

24              MR. LEVINE:  I disagree.

25    Q.   (By Mr. Levine)  Mr. Shirk, if you could just

Jason Shirk Vol Confidential
March 23, 2020                                   83

1    answer my question, and then you can certainly explain.



Jason Shirk Vol Confidential
March 23, 2020                    84

1

Jason Shirk Vol Confidential
March 23, 2020                              85

1    ███████████████████████████████████)

2         A.   There is confidential Apple information that I've

3    discussed with attorneys that I think would keep me from

4    answering that question.

5              MS. BINA:  Yeah, I'm going to instruct the

6         witness not to reveal any privileged information if he

7         learned it through counsel.  I'm going to instruct the

8         witness not to answer.

9              MR. LEVINE:  That's fine.

10        So, Mr. Shirk, let me be very clear on this

11        question -- or actually, let me be very clear on your

12        answer.  If there is information that you learned from

13        lawyers, then absolutely that is privileged.  However,

14        if it is information that you had as a fact and you

15        merely shared it with an attorney, then I believe that

16        information is simply underlying fact in this case and

17        it should be shared.

18             MS. BINA:  I'm going to need to know more

19        about the nature of the communication.  I'm not going

20        to permit the witness to testify about a potentially

21        privileged conversation.  If at some point we take a

22        break, I'm happy to talk to him and figure out what he

23        can testify to and what's privileged, but I'm not going

24        to let him answer without knowing whether or not this

25        is privileged or not.

Jason Shirk Vol Confidential
March 23, 2020                                          86

```
 1                    MR. LEVINE:  Mr. Shirk --

 2                    MS. BINA:  So I'm -- go ahead.

 3          Q.   (By Mr. Levine)  Mr. Shirk, is this information

 4     that you learned -- that you learned absent talking to an

 5     attorney?

 6          A.   No.

 7          Q.   Okay.  You only learned this through speaking with

 8     a lawyer?

 9          A.   No.  I did not learn this information from an

10     attorney at Apple.

11          Q.   Okay.  Did you learn it from an attorney who is

12     representing yourself or representing Apple?

13          A.   No.

14          Q.   Did you learn it from any attorney?

15          A.   No.

16                    MS. BINA:  Did you learn it in a meeting

17          where attorneys were present?

18                    THE WITNESS:  No.

19                    MS. BINA:  Again, I don't know what the issue

20          is.  I don't know if there's a privilege here or not.

21          And given that the witness has invoked a potential

22          privilege, I need to talk to him before I'm going to

23          let him answer questions on this topic.

24                    MR. LEVINE:  Okay.  Well, why don't we take a

25          minute if you want to go offline.
```

Jason Shirk Vol Confidential
March 23, 2020                              87

```
1                MS. BINA:  Yeah.  It would probably take
2    probably five or ten minutes, just because I'm going to
3    have to get off of here and on to some other --
4                MR. LEVINE:  That's fine.  We'll take --
5    we'll take a five-minute break.
6                MS. BINA:  All right.  Let's take five.
7    Thank you.
8                THE WITNESS:  Thank you.
9                (Off the record.)
10               MR. LEVINE:  We're back, yes.
11               MS. BINA:  Thank you, Justin.  I'm going to
12   let the witness answer the question at a very high
13   level.  I'm going to instruct not to answer at any
14   greater level of detail due to an ongoing government
15   investigation.
16               MR. LEVINE:  Okay.
17               THE WITNESS:  So to --
18               MS. BINA:  Do you need the question read
19   back?
20               THE WITNESS:  Yeah.  Will you rephrase the
21   question?  Can you give me the question again, please?
22               MR. LEVINE:  Ms. Court Reporter, if you can
23   read back the question.
24               THE COURT REPORTER:  Yeah.  ███████████████
     ██████████████████████████████████████████████████
```

Jason Shirk Vol Confidential
March 23, 2020                    88



```
 1
 5          MS. BINA:  Is that something you can answer,
 6      Mr. Shirk, or is that --
 7          THE WITNESS:  No, I cannot answer.
 8          MS. BINA:  Well, maybe again we need to keep
 9      this at a very high level, Justin.  So I'm going to
10      instruct him not to answer.
11
14          MS. BINA:  Objection, same instruction.  Oh,
15      he answered, though, so never mind.
16
23          MS. BINA:  Objection, vague as to
24
```

Jason Shirk Vol Confidential
March 23, 2020                    89

1

Jason Shirk Vol Confidential
March 23, 2020                    90

1

Jason Shirk Vol Confidential
March 23, 2020                    91



[redacted]

Q. [redacted]

[redacted]

Q. Does Apple have a policy -- excuse me. Strike that.

[redacted]

Jason Shirk Vol Confidential
March 23, 2020                    93



11        Q.    What is the research device program -- excuse

12  me -- the Security Research Device Program?

13        A.    That's a program where Apple has developed some

14  special hardware to be given to security researchers to help

15  them discover vulnerabilities in iOS particularly -- these

16  are iPhones -- that they would otherwise potentially need to

17  already have a jailbreak available in order to find.  So

18  what you were alluding to earlier this morning when you

19  discussed needing a vulnerability to do more security

20  research, this would absolve the researcher of the need to

21  hold those vulnerabilities, to be able to use this device to

22  do their research without holding on to those issues.

23        Q.    Is the need for this program because commercial

24  iPhones do not have certain capabilities or capacities to do

25  the work that researchers need to do?

Jason Shirk Vol Confidential
March 23, 2020                                        94

1          A.    The commercial products that are put out focus

2    very heavily on the security and privacy of the people using

3    those devices.  A side effect of the security privacy

4    assurances that Apple gives and the huge amount of effort

5    that we go through on an ongoing basis to provide that is

6    that the research is also more difficult for security

7    researchers to do.

8          Q.    So in short form, would that be a yes?

9                MS. BINA:  Objection.

10               THE WITNESS:  What's that?

11         Q.    (By Mr. Levine)  I said:  In short form, would

12   that be a yes, that effectively the program is necessary --

13   and this is a question -- the program is necessary because

14   the commercial phones clearly do not do something that these

15   other devices do do?  Is that a fair statement?

16         A.    Up until a few months ago, it was challenging to

17   do some of the research.  There's now a jailbreak available

18   called Checkra1n -- or Checkm8.  The vulnerability Checkra1n

19   is the jailbreak that's put on top of it that researchers

20   can use in order to do this.

21         Q.    So what would be -- if -- if the commercial phones

22   can do the same thing as these phones, what's the purpose of

23   the program?

24         A.    The underlying issues that allow the Checkra1n

25   jailbreak to work will probably be fixed over time, but

Jason Shirk Vol Confidential
March 23, 2020                                    95

1    these devices will give a stable ability to do the research.

2         Q.    My question is:  What -- what is the purpose of

3    the program?  Let me -- let me -- let me strike that.

4         Are the phones that are provided under the program the

5    same as the phones that are provided to commercial

6    customers?

7         A.    No.

8         Q.    Why the difference?  Why the need for a different

9    phone?

10        A.    To, from a physical -- on a physical stand --

11   standpoint, only allow the special images being built for

12   the device to run on the approved research devices, because

13   they do bypass or have the ability to bypass significant

14   safety and privacy and security mitigations that have been

15   built into the commercial devices.  And having the software

16   that bypass -- be loadable onto commercial devices would put

17   users at a higher level of risk.

18        Q.    So if a researcher purchased a commercial iPhone

19   and then bypassed these limitations, that bypassing would

20   put users at risk?

21        A.    Could, yeah.

22        Q.    It could?  But those are the same researchers that

23   Apple is bringing into -- bringing into this program, right?

24        A.    Yes.

25        Q.    And so -- so is it Apple's position that anyone

Jason Shirk Vol Confidential
March 23, 2020                                        96

1    who is using a phone for research that's outside of this

2    position -- or excuse me -- outside of this program is doing

3    something negative or that could hurt end users?

4         A.    No.  This is just our position, that it's hard to

5    do, and these devices would give a leg up to known capable

6    security researchers who show a strong penchant for

7    releasing the issues to Apple in order to be able to fix

8    them.  So it's both an interest in helping them do research,

9    but optimizing for an audience that's likely to return the

10   research to the company in order to protect our users as

11   opposed to, we'll say, releasing the detail publicly should

12   they make them go to everyone or selling to someone that's

13   not Apple.

14        Q.    Okay.  So it's a practical matter?

15        A.    That's right.

16        Q.    Is this -- have any of these phones been issued

17   yet?

18        A.    No.

19        Q.    When are they going to be issued?

20        A.    This year, in '20.

21        Q.    Is that for sure?

22        A.    Yes.

23        Q.    Is this program on hold at all?

24        A.    No.  It was announced by Mr. Krstic at the same

25   time as the expanded bounty, and he announced that it would

Jason Shirk Vol Confidential
March 23, 2020                                    97

1    be released in 2020.

2        Q.   Was this program for the new bug bounty program

3    leaked to the press?

4        A.   It appears that that did happen.  Not sure through

5    whom or where.

6        Q.   ████████████████████████████████████████████

     ████████████████████████████████████████████████████████

     ████████████

9        A.   I don't know.  Again, I have no idea who was

10   involved in the leak.

11       Q.   Do you have any reason to believe that you or

12   anyone else at Apple somehow believed that he was?

13       A.   I don't --

14            MS. BINA:  Objection, vague.

15            MR. LEVINE:  I don't think that was a vague

16       question at all.  He answered the question.

17       Q.   (By The Witness)  The answer was no?

18            MS. BINA:  Three levels of -- of somebody who

19       talked to somebody else.  You can --

20            MR. LEVINE:  That's fine.  Thank you.

21            MS. BINA:  You can answer the question.

22       Q.   (By Mr. Levine)  So your answer was no, Mr. Shirk?

23       A.   I have no reason to believe so.

24       ████████████████████████████████████████████████

     ████████████████████████████████████████████████████



Jason Shirk Vol Confidential
March 23, 2020                              99



```
17      Q.   You recognize you're under oath, Mr. Shirk?

18      A.   I do.

19      Q.   Am I correct?

20      Okay.  You understand what oath means?

21           MS. BINA:  Argumentative.

22      A.   I do.

23
```

Jason Shirk Vol Confidential
March 23, 2020                          100



1

3       Q.    Do you have any records -- I'll strike that.

4

11      Q.    What is Xcode?

12      A.    Xcode is the development platform that Apple

13 provides to do -- for its developers to write code for our

14 platforms.

15      Q.    What is TestFlight?

16      A.    I don't know.

17      Q.    What is a simulator?

18      A.    What kind of a simulator?  There could be many.

19      Q.    Does it relate to Xcode?

20      A.    As it relates to Xcode?

21      Q.    As it relates to Xcode, yes.

22      A.    I haven't used the simulator.  I understand that

23 there is a simulation as -- after you built code to see how

24 it would work on a particular device that you built the code

25 for, but again, I haven't used it.  My time at Apple has not

Jason Shirk Vol Confidential
March 23, 2020                              101

1    been as a developer.

2         Q.    How does the simulator in this context generally

3    work, though?

4         A.    Generally speaking?

5         Q.    Generally.

6         A.    There would be an approximation of the operating

7    system built into the compiler, the Xcode compiler.  And

8    once you've built the code, there would be a separate screen

9    that may be something that pops out as a separate area or it

10   may just be an area with the compiler screens themselves

11   that would show you the execution of what you'd just written

12   in a general approximation of what it should look like on

13   the device you are writing it for.

14        Q.    Okay.  So it's not an identical representation?

15        A.    Not always.  I don't know how it could be

16   identical for every device, because there are different

17   screen sizes and things like that.  And that's why I say

18   approximation.  Because if you look at the latest iPhone,

19   iPhone 11, iPhone 11 Pro, iPhone 11 Pro Max, all have

20   different pixel levels and different screen sizes.  And so

21   there's, in all likelihood, options for the various models,

22   but again, I don't know.  I haven't used it.

23        Q.    Do you know what Xcode runs the iOS kernel?

24        A.    I don't know.

25        Q.    Do you know if it runs iOS?

Jason Shirk Vol Confidential
March 23, 2020                                      102

1        A.    Does it run iOS?  Does it run on iOS?

2        Q.    Does it run iOS?

3        A.    I am uncertain.

4        Q.    Does it run on iOS?

5        A.    There is Xcode for iOS for iPad.

6        ██████████████████████████████████████

         ████████████████████████████████████

         █████████████████████████████

9        Q.    Does Apple use a virtualization internally?

10       A.    I don't know.

11       ██████████████████████████████████████████

         ████████████████████████████████████████████

         ████████████████████

14       Q.    Why would you do that?

15       A.    Because, as I noted, my time at Apple is not only

16  focused on development, it's been focused on the bounty

17  programs.  It would have been a pretty steep learning curve

18  for me to get in and start developing vulnerabilities in the

19  iOS space.

20       Q.    Can Apple virtualize Microsoft?

21       A.    I never --

22       Q.    Excuse me.  Excuse me.  Windows.

23       A.    Can Apple or can macOS or can iOS?  I don't

24  understand what you're particularly asking.

25       Q.    Can any group -- or does any group within Apple

Jason Shirk Vol Confidential
March 23, 2020                    103

1    work on virtualizing Windows?

2              MS. BINA:  Objection, foundation.

3        Q.   If you know.

4        A.   I don't know.  I know there's Boot Camp, but I

5    don't think that's virtualized.  I think it's an actual

6    instance running in parallel.  And Fusion, which is the

7    virtualized instance, is actually from VMware as opposed

8    from Apple directly.  So I'm not aware of Apple developing

9    anything like that.

10

Jason Shirk Vol Confidential
March 23, 2020                                    104

1     

                MS. BINA:  Objection, foundation.

19    Q.    If you know.

20



Jason Shirk Vol Confidential
March 23, 2020                    105

1

14

16            MS. BINA:  Objection, foundation.

17       Q.   If you know.

18

Jason Shirk Vol Confidential
March 23, 2020                                    106

███████████████████████████████████

2            MS. BINA:  Counsel, when it's convenient, I

3       could use a break.

4            MR. LEVINE:  Okay.  Give me just a couple

5       more questions.

6            MS. BINA:  Yeah, sure.

7       Q.   (By Mr. Levine)  Have you ever downloaded an IPSW

8    file from Apple servers?

9       A.   Yes.

10      Q.   When did you do that?

11      A.   Regularly as a part of my job to load internal

12   images, because we do what's called dogfooding.  That means

13   that we're using the latest bits before they go out to users

14   to make sure that they're functional before we put them in

15   front of actual users.

16      Q.   Is there any encryption for those files that you

17   have to -- that you have to decrypt or enter a code to get

18   around before you access those files?

19           MS. BINA:  Objection, vague.

20      A.   I don't know, but there's a tool that does all of

21   it for me.

22      Q.   What tool is this?

23      A.   It's an internal tool.

24      Q.   Okay.  So you don't actually download the files

25   yourself?

Jason Shirk Vol Confidential
March 23, 2020                                    107

```
1        A.   I select the files to be downloaded into the tool

2   and then the tool downloads them and then loads them to the

3   front phone.

4        Q.   Okay.  And you can't tell me what the name of the

5   tool is?

6        A.   I don't know if we consider it to be confidential

7   and proprietary information.

8        Q.   I don't know.  That's not going to be any kind of

9   attorney-client privilege or anything.  Your attorney can

10  designate it as attorneys' eyes only, but I think it's valid

11  for you to answer.

12            MS. BINA:  I would -- I would -- I would just

13       confirm with Mr. Koehler.  We do have some trade secret

14       protections in place in the case for internal Apple

15       research.  I don't know whether this would fall into

16       the category that is considered especially sensitive

17       there.

18       So, Mr. Koehler, can you confirm allowing the

19       witness to answer those questions on that ground?

20            MR. LEVINE:  Just merely the name of the

21       tool.

22            MR. KOEHLER:  No, no concerns.

23

24       Q.   (By Mr. Levine)  And when you select the files to

25  go into that tool, what -- can you just describe the
```

1    process?  Not the process of the tool itself, but just your

2    process of selecting the file to go into the tool.

3



17              MR. LEVINE:  Okay.  All right.  Do you want

18    to take a five-minute break?

19              MS. BINA:  Yes.

20              MR. LEVINE:  Okay.  We'll go off the record.

21              (Recess taken.)

22              MR. LEVINE:  Back on the record.

23        Q.   (By Mr. Levine)  Mr. Shirk, does Apple provide

24    tools for enterprises to conduct security research on their

25    own apps, their applications?

Jason Shirk Vol Confidential
March 23, 2020                              109

```
 1        A.   I actually don't know that.

 2        Q.   Okay.  Do you know if Apple provides any

 3   guidelines to enterprises if they do conduct research on

 4   their applications?

 5        A.   Again, I'm not sure.  It hasn't been my focus

 6   while I've been at Apple.

 7             MR. LEVINE:  Just got a concerning e-mail

 8        from Jessica relative to the virus issues going on.

 9        Thank you for the update.

10             MS. BINA:  Sure.  If we're going to discuss

11        that, Justin, let's do it later off the record, please.

12             MR. LEVINE:  I get it.

13        Q.   (By Mr. Levine)  Can you open up Bates

14   No. Corellium 22315.  I'd like to enter that as Defense 2.

15             (Exhibit 2 was marked.)

16             MS. BINA:  Sorry, Justin, I didn't quite

17        catch that Bates number.

18             MR. LEVINE:  Corellium Document 22315.

19             MS. BINA:  Thank you.

20             THE WITNESS:  I've got that open.

21        Q.   (By Mr. Levine)  Feel free to take a look at this,

22   and let me know, when you're done, if you recognize this

23   document.

24        A.   I do recognize it.

25        Q.   Is this one of the e-mails that you reviewed in
```

Jason Shirk Vol Confidential
March 23, 2020                    110

1    preparation for this deposition?

2        A.   Yes.

3



Jason Shirk Vol Confidential
March 23, 2020                                111



```
 5        Q.   Can anybody at Apple submit a recommendation for

 6   admission into the program?

 7             MS. BINA:  Objection, vague as to the current

 8        or old version of the program.  Sorry.  Go ahead.

 9        Q.   Either, Mr. Shirk.

10        A.   So the new program doesn't require any invitation

11   at all.  It's publicly open to everyone.  In the old

12   program, anyone at Apple was certainly going to make the --

13   or able to make the recommendations to me.  And we would

14   have a discussion of the merits to bring the person into the

15   program, and then I would put the name forward.  So it could

16   be said that I was sort of the gatekeeper at this point.

17        Q.   So could anybody from Apple submit a name to be

18   put forward for admission?

19        A.   To me at that point, yes.

20
```

Jason Shirk Vol Confidential
March 23, 2020                                    112

Jason Shirk Vol Confidential
March 23, 2020                              113



21          MR. LEVINE:  If you can open up -- I'd like

22     to enter Defense Exhibit 3.  This is ████████████

23          (Exhibit 3 was marked.)

24     Q.  Let me know when you have it open.

25     A.  I have it.

Jason Shirk Vol Confidential
March 23, 2020                                    114

1    ███████████████████████████████████████████████

█████████████████████████

██████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████

████████████████████████████████████████████████

████████████

███████████████████████████████████

███████████████

11          MR. LEVINE:  Okay.  If you can open ██████

████████████████  I'd like to enter this as Defense

13     Exhibit 3 -- excuse me -- 4.

14          MS. BINA:  ████████ you said?

15          MR. LEVINE:  █████████

16          MS. BINA:  ██████ thank you.

17          (Exhibit 4 was marked.)

18          THE WITNESS:  I'm looking at this.

19     Q.   (By Mr. Levine)  Do you recognize ████████████

20     A.   Yes.

21          ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████

███████████████████

Jason Shirk Vol Confidential
March 23, 2020                    115



          1

          17          MS. BINA:  Yeah, this is -- this is still
          18     AEO.  You can answer.
          19

Jason Shirk Vol Confidential
March 23, 2020                    116

Jason Shirk Vol Confidential
March 23, 2020                              117

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████

█████████████████████████████████████████

███████████████████

██████████████████████

```
 7              MR. LEVINE:  I'd like to enter as Defense

 8       Exhibit 5 Corellium No. 22323.

 9              MS. BINA:  22323?

10              MR. LEVINE:  Correct.

11              (Exhibit 5 was marked.)

12              THE WITNESS:  I have that open.

13              MS. BINA:  Sorry, Justin, my Outlook is

14       crashing.  I should have this in a second.  Bear with

15       me one more second.  Sorry.  You said Corellium 22?

16              MR. LEVINE:  22323.

17              MS. BINA:  Yeah.  Sorry.  Still looking for

18       it.  It's working again.  Is that what it starts with?

19              MR. LEVINE:  It's a Corellium Bates number,

20       and it's 02 --

21              MS. BINA:  Yeah.

22              MR. LEVINE:  022323.

23              MS. BINA:  Got it.  Thanks.  Sorry.  It's

24       okay now.  Thank you.

25       Q.   (By Mr. Levine)  Do you see the e-mail there
```

Jason Shirk Vol Confidential
March 23, 2020                                    118

1    May 12, at 1:44 p.m., about halfway down the first page?

2        A.   Yes.



Jason Shirk Vol Confidential
March 23, 2020                                    119



 6              MR. LEVINE:  I'd like to enter in Defense 6.

 7      That is ██████████████████

 8              MS. BINA:  Okay.

 9              (Exhibit 6 was marked.)

10      Q.   (By Mr. Levine)  Do you have it, Mr. Shirk?

11      A.   I do.

12      Q.   ███████████████████████████████████

Jason Shirk Vol Confidential
March 23, 2020                                    120



22              MS. BINA:  Objection, argumentative.



11              MR. LEVINE:  Let's go to Corellium 22310.

12       This will be Defense 7.

13              MS. BINA:  Okay.

14              (Exhibit 7 was marked.)

15       Q.   (By Mr. Levine)  Do you recall this e-mail,

16  Mr. Shirk?

17       A.   I do.

18       Q.   Look at the e-mail July 11th, at 6:50 p.m.  Do you

19  see that?

20       A.   Yes.

21       Q.   Do you recall this conversation with Mr. Wade?

22       A.   I do.

23       Q.   What was discussed?

24       A.   This was the first of the two conversations that I

25  talked about that happened with -- that happened at Infinite

Jason Shirk Vol Confidential
March 23, 2020                         122

1    Loop in Cupertino.  This particular one, we walked around

2    the area in the center, had a coffee and chatted about many

3    of the things that we've discussed here earlier today.  From

4    the original technology they sold when Citrix -- this was

5    where he talked about having previously come to Apple to try

6    to get licensing, which, again, from his rendition,

7    Mr. Federighi declined.

8        We discussed kind of what he'd done, where he'd come

9    from in the community.  We discussed how I came up in the

10   community and places that I've been, some of the things that

11   I've done in my career.

12       We discussed a little bit about the bugs that we had

13   adjudicated.  Also, we discussed the fact that -- and this

14   was in the other e-mails in the discovery -- the reports

15   that he gave -- the more information that he gave, the more

16   they were likely to qualify for.  So if there was no proof

17   of concept, for example, or if the write-up was maybe, we'll

18   say, difficult to pin the issue down from or didn't really

19   explain where the problems might be, that there could be

20   money kind of left on the table by not providing Apple with

21   additional information there.

22       And obviously, we talked about conferences here.  That

23   was the following e-mail.  Like you see, it's July 12, at

24   11:19 a.m., about, oh, sensors -- I'm sorry -- something

25   about Defcon in here.  There was that thing.  That's right.

1   BH/DC, that stands for Black Hat Defcon.  And we talked

2   about meeting up.

3       It was a good chat.  We both seemed to enjoy it.  And

4   this note kind of solidified that.

5   ███████████████████████████████████████████████████

    █████████████████████████████████████

    ████████████████████

8               MR. LEVINE:  Let me look at Defense

9       Exhibit 8.  Sorry, ███████████████████████████████

    ██████████████████ This is going to be Corellium No. 1331.

11              (Exhibit 8 was marked.)

12      Q.  Let me know if you recognize that document,

13  Mr. Shirk.

14      A.  Yes.

15      Q.  You can flip to page 2.  That's Bates No. 1332.

16  Do you see the e-mail there on August 31st, at 2:12 a.m.?

17      A.  Yeah.

18      ████████████████████████████████████████████

    ██████████████████████████████████████

    ██████████████████████

    ██████████████████████████████████████████

    ██████████████████████████████████████████

    ████████████████████

    █████████████████████████████████████████████████

    █████████████████████████████████████████████ █

Jason Shirk Vol Confidential
March 23, 2020                                         124



```
19        Q.   Do you think Microsoft has a habit of getting into

20   legally unsound enterprises and products?

21             MS. BINA:   Objection, foundation.

22        A.   I am not an expert in that at all.

23        Q.   Are you going to express your concerns about the

24   product to your new employer, Microsoft?

25        A.   About Corellium?
```



Jason Shirk Vol Confidential
March 23, 2020                               126



1            MS. BINA:  Same objection.

2

17

22            MS. BINA:  Objection, calls for a legal

23      conclusion for "contributing to the copyright

24      infringement."

25

Jason Shirk Vol Confidential
March 23, 2020                              127



1

20

24          MR. LEVINE:  Okay.  Thank you.  Can you look

25     at                          .  It's going to be Defense --

Jason Shirk Vol Confidential
March 23, 2020                              128



1     ▮▮▮▮▮▮▮▮▮▮.

2                MS. BINA:  Which number is that?  I mean,

3     which defense number is that?

4                MR. LEVINE:  It's going to be -- it's going

5     to be 9.

6                (Exhibit 9 was marked.)

7     Q.   (By Mr. Levine)  Do you have that document?

8     A.   I do.

9     Q.   Do you recognize this document?

10    A.   I do.

11    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25    Q.   I'm sorry.  Say that again.  You broke up a little

Jason Shirk Vol Confidential
March 23, 2020                129

1    bit.



Jason Shirk Vol Confidential
March 23, 2020                          130



 8                    MR. LEVINE:  I'd like to enter Defense 10.

 9        This is

10                    (Exhibit 10 was marked.)

11        Q.   Do you have that?

12        A.   I do.

13

Jason Shirk Vol Confidential
March 23, 2020                           131

Jason Shirk Vol Confidential
March 23, 2020                                    132



```
 9                MS. BINA:  Justin, I'm going to allow the
10        witness to look into this for you, but obviously, we
11        are in a deposition.  Normally we'd all be in a room
12        together and you couldn't task witnesses to go look for
13        stuff.  The proper way would be getting it through
14        discovery.  So, again, since he volunteered, he can
15        look up this one Radar, but I don't want to have --
16        we're not going to do that for the rest of the
17        deposition.
18                MR. LEVINE:  That's fine.  I didn't plan on
19        doing it.
20                MS. BINA:  I understand.
```

```
25                MR. LEVINE:  Okay.  Let's go to Defense
```

Jason Shirk Vol Confidential
March 23, 2020                                    133



1       Exhibit 11.  It's going to be ████████████████.

2              (Exhibit 11 was marked.)

3              THE WITNESS:  I have it.

4       Q.   (By Mr. Levine)  Do you recognize that ████

████████ there?

6       A.   I do.

7       Q.   ███████████████████████████████████████████

██████████████████████████████████████

███████████████████████

████████████████████████████████████████████

█████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████

████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████

23             MR. LEVINE:  If we look at ███████████████

█████████████.  I'll enter that as Defense Exhibit 12.

25             (Exhibit 12 was marked.)

Jason Shirk Vol Confidential
March 23, 2020                                                    134



1       Q.    Is that what you're talking about?

2       A.    Yes.

Jason Shirk Vol Confidential
March 23, 2020                                    135



18          MR. LEVINE:  Let me look at ████████████.

████████████.  This will be Defense Exhibit 13.

20              (Exhibit 13 was marked.)

21

Jason Shirk Vol Confidential
March 23, 2020                              136



```
 9              MS. BINA:  I'm sorry.  Go ahead.

10              THE COURT REPORTER:  Excuse me.  I'm not

11       understanding what you said here.  I need a question.

12       And if there's an objection, please repeat.

13              MS. BINA:  Go ahead.  I'll tell you after.

14
```

```
24              MS. BINA:  Mr. Levine, sorry.  I don't think

25       that there are any names redacted from this document.
```

Jason Shirk Vol Confidential
March 23, 2020                              137



1              MR. LEVINE:  So what's redacted?  E-mails?

2              MS. BINA:  I believe it's phone numbers,

3         personal phone numbers.

4              MR. LEVINE:  Oh, I see.

5

Jason Shirk Vol Confidential
March 23, 2020                              138



13          MR. LEVINE:  Jessica, your headphone is -- is

14    crackling again.

15          MS. BINA:  I haven't done anything.  How

16    strange.  If I sit still, is it okay?  I'll put it back

17    on speaker if not.

18          MR. LEVINE:  Still getting some.

19          MS. BINA:  All right.  I didn't move.  I'll

20    just put it back on speaker.  Give me a second.  All

21    right.  Back.

22

Jason Shirk Vol Confidential
March 23, 2020                              139



 6              MR. LEVINE:  Let me enter Defense Exhibit 14,

 7        and it is ███████████████.

 8              (Exhibit 14 was marked.)

 9        Q.   Let me know when you have that document out.

10        A.   I got it.

11        Q.   Do you recognize this document?

12        A.   I do.

13        Q.   ████████████████████.

14        A.   Um-hmm.

15        ███████████████████████████████

Jason Shirk Vol Confidential
March 23, 2020                    140

Jason Shirk Vol Confidential
March 23, 2020                           141



```
 8              MS. BINA:  Justin, we've been back on for

 9       about an hour.  I don't know how much you have left,

10       whether we should take another break soon.

11              MR. LEVINE:  All right.  Why don't we take a

12       quick five-minute break.

13              MS. BINA:  Okay.

14              (Recess taken.)

15       Q.   (By Mr. Levine)  If you look down to the line

16   there that starts -- we're still on Exhibit 14,
```

```
19       A.   Yes.

20
```

Jason Shirk Vol Confidential
March 23, 2020                                          142



22          MS. BINA:  Objection, asked and answered.

23          You can answer.

24

Jason Shirk Vol Confidential
March 23, 2020                    143



16          MR. LEVINE:  I'd like to enter Defense

17    Exhibit 15.  It is ▇▇▇▇▇.

18          MS. BINA:  ▇▇▇ you said?

19          MR. LEVINE:  ▇▇▇

20          MS. BINA:  Okay.

21          (Exhibit 15 was marked.)

22          THE WITNESS:  I have it.

23    ▇▇▇▇▇▇▇▇▇▇▇▇▇

   ▇▇▇▇▇▇

   ▇▇▇▇▇▇▇▇▇▇▇▇

Jason Shirk Vol Confidential
March 23, 2020                                    145



21          MS. BINA:  Objection, vague.

22

Jason Shirk Vol Confidential
March 23, 2020                                      146

Jason Shirk Vol Confidential
March 23, 2020                                    147



2          MR. LEVINE:  Let me go to ███████████.

3          MS. BINA:  So that will be Exhibit 16?

4          MR. LEVINE:  Sixteen.

5          (Exhibit 16 was marked.)

6

22    headed to Corellium"?

Jason Shirk Vol Confidential
March 23, 2020                    149

Jason Shirk Vol Confidential
March 23, 2020                                    150

16

Jason Shirk Vol Confidential
March 23, 2020                              151



```
 7              MR. LEVINE:  Let me enter Defense Exhibit 17.

 8         This is Corellium No. 22294.

 9              (Exhibit 17 was marked.)

10    Q.   Do you have that document?

11    A.   I do.

12
```

Jason Shirk Vol Confidential
March 23, 2020                                152



 9       Q.   So what was -- I'm sorry.  Go ahead.

10

19       Q.   What -- if I can flip you back to Exhibit 1.

20   That's Corellium Bates No. 026249.

21       A.   Um-hmm.

22

Jason Shirk Vol Confidential
March 23, 2020                          153

Jason Shirk Vol Confidential
March 23, 2020                    154

Jason Shirk Vol Confidential
March 23, 2020                              155

U.S. LEGAL SUPPORT
www.uslegalsupport.com

Jason Shirk Vol Confidential
March 23, 2020                    157



16              MR. LEVINE:  If we can pull up ███████

17       This is going to be Defense 18, Defense Exhibit 18.

18              (Exhibit 18 was marked.)

19       Q.   Do you recognize this?

20              MS. BINA:  Sorry, what was that?

21       A.   Yes.

22              MS. BINA:  Can you repeat one more time,

23       please?

24              MR. LEVINE:  ███████

25              MS. BINA:  Thank you.

Jason Shirk Vol Confidential
March 23, 2020                          158

```
 1                    MR. LEVINE:  Do you have it?  Jessica, do you

 2        have it?

 3                    MS. BINA:  Hang on a second.  I just got it.

 4        Q.   (By Mr. Levine)  So do you recognize this,

 5   Mr. Shirk?

 6        A.   I do.

 7        ███████████████████████████████████████████████████

     ████████████

     ████████████████████████████████████████████████████████

     ████████████████████████████████████████████████████████

     ██████████████████████████████████████████

12                    MS. BINA:  I will instruct the witness not to

13        reveal any -- if you can answer the question without

14        revealing privileged communication, you can do so.  But

15        if the only way to answer it is to reveal privileged

16        communications, I'm going to instruct you not to

17        answer.

18                    THE WITNESS:  I would have to reveal

19        privileged communications.

20        ███████████████████████████████████████████████████

     ████████████████████████████████████████████████████████

     ██████████████████████████████████████████████

23                    MS. BINA:  I would instruct not to answer.

24        The witness has said that the reason for this ██████

     ██████████████████████ was privileged communication, so I'm going
```

Jason Shirk Vol Confidential
March 23, 2020                                    159

1          instruct not to answer on why he wrote the texts here.

2                    MR. LEVINE:  Okay.  So you're instructing him

3          not to answer that question either?

4                    MS. BINA:  Yes.  I mean, it's the same

5          question.

6                    MR. LEVINE:  Let's pull up ███████████.  This

7          is going to be Defense Exhibit 19.

8                    (Exhibit 19 was marked.)

9          

Jason Shirk Vol Confidential
March 23, 2020                    160

Jason Shirk Vol Confidential
March 23, 2020                    161



```
 6              MR. LEVINE:  Let's look at
 7       Defense Exhibit 20.
 8              (Exhibit 20 was marked.)
 9       Q.   Do you have that?
10       A.   Yes, it's up.
11
```



Jason Shirk Vol Confidential
March 23, 2020                                  163



```
4                  MR. LEVINE:  We can go to Defense Exhibit 21,

5        which is ███████████████

6                  (Exhibit 21 was marked.)

7        Q.   Let me know when you have that up.

8        A.   I have it.
```

Jason Shirk Vol Confidential
March 23, 2020                                    164

14        Q.   Is the Corellium product different from anything

15   you've seen before?

16        A.   I think so.

17        Q.   Do you have a -- what's your highest level of

18   education?

19        A.   I have a bachelor's degree in computer networking

20   with an emphasis in security.

21        Q.   And do you have a master's degree?

22        A.   No.

23             MR. LEVINE:  I think at this time no further

24        questions.  Jessica, do you have any?

25             MS. BINA:  Sorry.  What was that?  Are you

```
 1   asking if I have any redirect?

 2            MR. LEVINE:  Yes, just direct.

 3            MS. BINA:  I am not sure if you're ready to

 4   talk, but I can take two minutes and figure that out.

 5            MR. LEVINE:  Yes.  I think I'm done.

 6            MS. BINA:  Okay.  Let's take two minutes and

 7   go offline.  And I'll be right back.

 8            MR. LEVINE:  Thanks.

 9            (Off the record.)

10            MS. BINA:  I have no redirect -- or direct,

11   so . . .

12            MR. LEVINE:  Okay.

13            MS. BINA:  Thank you, Mr. Shirk.

14            MR. LEVINE:  Mr. Shirk, in this district, you

15   have the opportunity to review your transcript for any

16   non-substantive changes, any typographical errors that

17   the court reporter may have taken down that you wish to

18   correct.  So you have the option to read the transcript

19   or you have the option to waive that right.  The

20   transcript will just come out as it is.  And so we'll

21   give you that option to decide whether to read or

22   waive.

23            THE WITNESS:  I'd like to read, please.  Send

24   that to Ms. Bina and Mr. Koehler.

25            MR. LEVINE:  Okay.  So the -- the transcript
```

Jason Shirk Vol Confidential
March 23, 2020                                166

1   will come to everybody, but then you'll have an option

2   to read and submit what's called an errata sheet to do

3   that, so . . .

4               THE WITNESS:  Okay.

5               MR. LEVINE:  Okay?

6               THE WITNESS:  Sounds good.

7               MR. LEVINE:  That's it.  Ms. Bina, do you

8   have anything else?

9               MS. BINA:  Ready to go off the record,

10  Justin?

11              MR. LEVINE:  I think we are.

12              MS. BINA:  All right.

13              (Confidential testimony concludes.)

14              (Deposition concluded at 4:27 p.m.)

15              (Signature reserved.)

16

17

18

19

20

21

22

23

24

25

                       DEPOSITION ERRATA SHEET


Deposition of:       JASON SHIRK
Date:                March 23, 2020
Case:                APPLE v. CORELLIUM
Cause No.:           9:19-cv-81160-RS
Our Reference No.:   899275


Page No. _____ Line No. _____ Change to: _____

_____

Reason for change: _____

Page No. _____ Line No. _____ Change to: _____

_____

Reason for change: _____

Page No. _____ Line No. _____ Change to: _____

_____

Reason for change: _____

Page No. _____ Line No. _____ Change to: _____

_____

Reason for change: _____

Page No. _____ Line No. _____ Change to: _____

_____

Reason for change: _____


SIGNATURE:_____ DATE:_____

          JASON SHIRK

Jason Shirk Vol Confidential
March 23, 2020                                    168

DECLARATION UNDER PENALTY OF PERJURY

Deposition of:        JASON SHIRK
Date:                 March 23, 2020
Case:                 APPLE v. CORELLIUM
Cause No.:            9:19-cv-81160-RS
Our Reference No.:  899275

        I, JASON SHIRK, declare under penalty of perjury

that I have read the entire transcript of my deposition

taken in the above-captioned matter or the same has been

read to me, and the same is true and accurate, save and

except for changes and/or corrections, if any, as indicated

by me on the DEPOSITION ERRATA SHEET hereof, with the

understanding that I offer these changes as if still under

oath.

        Signed on the ____ day of _____, 20____,

                        _____

                        JASON SHIRK

```
 1   JASON SHIRK; March 23, 2020; No. 899275

 2                       CERTIFICATE

 3   STATE OF WASHINGTON )
                         )    ss.
 4   COUNTY OF KING      )

 5        I, Allison C. O'Brien, the undersigned Washington

 6   Certified Court Reporter, pursuant to RCW 5.28.010

 7   authorized to administer oaths and affirmations in and for

 8   the State of Washington, do hereby certify:

 9        That the foregoing deposition was taken before me at

10   the time and place therein set forth; that the witness was

11   by me first duly sworn to testify the truth, the whole truth

12   and nothing but the truth; that the testimony of the witness

13   and all objections made at the time of the examination were

14   recorded stenographically by me and thereafter transcribed

15   under my direction; that a review of the transcript by the

16   deponent was requested; and that the foregoing transcript is

17   a true record of the testimony given by the witness and of

18   all objections made at the time of the examination, to the

19   best of my ability.

20        I further certify that I am not a relative or employee

21   or attorney or counsel of any of the parties, nor am I

22   financially interested in the outcome of the case.

23        Signed and sealed March 31, 2020.

24   _____
     Allison C. O'Brien
25   Reporting License No. 2163
```

Jason Shirk Vol Confidential
March 23, 2020                              170

```
Date:                   March 31, 2020

To:                     Jessica Stebbins Bina
                        Latham & Watkins
                        10250 Constellation Blvd., Suite 1100
                        Los Angeles, California 90067


Deposition of:          JASON SHIRK
Date:                   March 23, 2020
Case:                   APPLE v. CORELLIUM
Cause No.:              9:19-cv-81160-RS
Our Reference No.:      899275


The above-referenced transcript must be read and the
Deposition Errata Sheet signed within 30 days of this notice
or before the trial date.  If the Deposition Errata Sheet is
not signed within that time period, signature will be deemed
waived for all purposes.

Please contact the witness and arrange a convenient time and
place for reading and signing.

After the Deposition Errata Sheet is signed, please mail the
signed original correction sheet to:


    U.S. Legal Support
    1200 Sixth Avenue, Suite 610
    Seattle, WA 98101


Reporter: Allison O'Brien, CCR
          License No. 2163


cc: Justin Levine
```

Jason Shirk Vol Confidential
March 23, 2020                                    171

```
Date:              March 31, 2020

To:                Justin Levine
                   Cole, Scott & Kissane
                   222 Lakeview Avenue, Suite 120
                   West Palm Beach, Florida 33401

Case:              APPLE v. CORELLIUM
Cause No.:         9:19-cv-81160-RS


YOU ARE HEREBY NOTIFIED that the following original
transcript has been sealed and served upon you for filing:

Deposition of: JASON SHIRK

Taken:             March 23, 2020

Signature:         Waived        __

                   Reserved      X
                   The original signature page and changes, if
                   any, received by this office will be
                   forwarded to all counsel and may be filed
                   separately at the time of trial.

                   Do not open the sealed transcript.
```

cc: Jessica Stebbins Bina