UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:19-cv-81160-RS

APPLE INC.,

    Plaintiff,

v.

CORELLIUM, LLC,
    Defendant.

_____/

**DEFENDANT CORELLIUM, LLC'S AMENDED[1] REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

[1] Pursuant to the Court's Sealed Order [D.E. 804].

**TABLE OF CONTENTS**

I. Introduction .................................................................................................................... 1

II. Arguments and Authorities ........................................................................................... 2

        A.     Apple's Registrations Do not Cover the Entirety of iOS......................................... 2

        B.     The CP Does Not Contain any Copyrighted Apple Code....................................... 3

        C.     Executing iOS for purposes of Researching iOS is fair use ................................... 4

              1. Research is a Fair Use of a Computer Program................................................... 4

              2. Computer Programs Like iOS are Accorded Less Protection ............................ 6

              3. Corellium's Use of Portions of iOS is Necessary For its Users to Conduct Research ……………………………………………………………………..7

        D.     Corellium Does not Harm Apple's Market for iOS and Apple should not be permitted to corner A secondary market................................................................ 7

        E.     Apple is Engaging in Copyright Misuse................................................................. 9

        F.     Apple's Conduct Estops It From Seeking to Enforce Its Copyright Now.............. 9

        G.     Corellium Does not Circumvent Any TCMS Nor Traffic ..................................... 9

III. Conclusion ................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                      Page(s)

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ...................................................................................6

*Alcatel USA, Inc. v. DGI Technologies, Inc.*,
   166 F.3d 772 (5th Cir. 1999) ..................................................................................8, 9

*Bateman v. Mnemonics, Inc.*,
   79 F.3d 1532 (11th Cir. 1996) .............................................................................5, 6, 10

*Broadcase Music, Inc. v. Columbia Broad. Sys., Inc.*,
   441 U.S. 1 (1979).........................................................................................................9

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*,
   902 F.2d 829 (11th Cir. 1990) ....................................................................................4

*Cambridge Univ. Press v. Patton*,
   769 F.3d 1232 (11th Cir. 2014) ..................................................................................5

*Castle Rock Entm't v. Carol Publ'g Grp.*,
   150 F.3d 132 (2nd Cir. 1998).......................................................................................6

*HGI Assocs., Inc. v. Wetmore Printing Co.*,
   427 F.3d 867 (11th Cir. 2005) .....................................................................................9

*Infinity Broad. Corp. v. Kirkwood*,
   150 F.3d 104 (2d Cir. 1998).........................................................................................6

*Kienitz v. Sconnie Nation LLC*,
   766 F.3d 756 (7th Cir. 2014) .......................................................................................6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   387 F.3d 522 (6th Cir. 2004) ................................................................................5, 10

*MDY Ind's, LLC v. Blizzard Entertainment, Inc.*,
   629 F.3d 928 (9th Cir. 2010) .....................................................................................10

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005)...............................................................................................4, 6

*Nordstrom Consulting, Inc. v. M & S Techs., Inc.*,
   2008 WL 623660 (N.D. Ill. Mar. 4, 2008)................................................................10

*Peter Letterese And Assocs., Inc. v. World Inst. Of Scientology Enterprises*,
   533 F.3d 1287 (11th Cir. 2008) ...................................................................................6

*Sony Computer Entertainment, Inc. v. Connectix Corp.*,
    203 F.3d 596 (9th Cir. 2000) ............................................................................................. 7

*Telecom Tech. Servs. Inc. v. Rolm Co.*,
    388 F.3d 820 (11th Cir. 2004) ........................................................................................... 9

**Statutes**

17 U.S.C. §§ 102 ............................................................................................................................ 4

17 U.S.C. § 106 .............................................................................................................................. 4

17 U.S.C. § 107 .................................................................................................................... *passim*

17 U.S.C. § 1201 ............................................................................................................................ 3

**Rules**

Fed. R. Civ. Pro. 56 ....................................................................................................................... 1

Local Rule 56.1 .......................................................................................................................... 1, 2

iii

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, Defendant Corellium, LLC ("Corellium") hereby replies to Apple Inc.'s ("Apple") Opposition to Corellium's Motion for Summary Judgement, ECF No. 516 ("Opposition" or "Opp.") in support of Corellium's Motion for Summary Judgment, ECF No. 456 ("Motion" or "Mot.").

## I. INTRODUCTION

The functional aspects of iOS are not protectable both as a matter of eligibility for copyright protection and as a matter of analyzing fair use. As a result, executing iOS to see what it does and studying its functions, outputs, and security properties does not constitute copyright infringement. Creating a tool that facilitates such research is therefore not copyright infringement. All uses of iOS by Corellium and its customers that Apple alleges in this lawsuit are strictly the execution of iOS to study its functions and outputs and conduct security research—i.e. noninfringing uses. On those facts, no reasonable juror could find that Corellium infringes Apple's copyrights in iOS nor contributorily infringes such rights. Incensed that the law could permit *any* use of iOS that Apple does not expressly authorize, Apple grasps at straws. Corellium has neither infringed Apple's copyrights as a matter of law nor has Corellium circumvented an effective technological control measure ("TCM").

Apple marches forward under the falsities that (i) Corellium copies the entirety of iOS, (ii) Corellium creates a commercial product, and (iii) therefore, Corellium is *ipso facto* infringing. Tellingly, Apple cites no relevant case law (or facts) to support its refrain that Corellium creates merely a replica iPhone. Instead, Apple resorts to completely inapposite TV, radio rebroadcasting, and book related cases where the protections accorded by copyright law are entirely different.

Apple seeks to abuse copyright law to tie all uses of iOS solely to Apple's hardware, to ensure that all U.S. security researchers must provide the results of their work on iOS to Apple for free, and to corner the market on all research tools that can run its software. But the development of new software in secondary and tertiary markets for completely different or complimentary purposes, like diagnostics and testing tools to examine that function of copyrighted software, is not within the exclusive bundle of copyrights.

As to Apple's DMCA claims, as demonstrated in its opposition to Apple's Motion for Partial Summary Judgment ("Pl. SJ Mot.," ECF No. 453)[2], Corellium is entitled to Summary judgment. Apple distributes iOS online, free, and without any TCMs. All of the alleged TCMs are only in Apple's physical devices.

Our homes are saturated with internet-connected audio and video recording devices. The phones in our pockets collect a complete record of every one of our transactions and interactions. Moreover, manufacturers continually and remotely update the software for these devices. Apple admits that it created thousands of versions of iOS since 2007. Mot. at 2, 10. Effective fair use security research, permitted under Section 107, requires the repeated iterative examination of every one of thousands of versions, sub-versions, updates, and security patches. *See* 17 U.S.C. § 107 (specifically enumerating "research"). Before Corellium, there was no product capable of pairing the tools that security researchers need with virtual hardware capable of running iOS. Nor does any other such tool exist today. Corellium permits independent researchers to examine iOS's function—an entirely different purpose than how Apple's customers use an iPhone or iPad.

## II. ARGUMENTS AND AUTHORITIES

### A.   APPLE'S REGISTRATIONS DO NOT COVER THE ENTIRETY OF iOS

Apple inproperly claims that it is entitled to protection for the entirety of iOS. Apple does not dispute that its asserted registrations only cover "new and revised code" nor that each registration disclaims from its own scope all material covered in prior registrations of iOS. Opp. at 11. Apple claims that it does not need to demonstrate exactly what those registrations cover because each version builds on the last and somewhere in that chain are Apple's creative elements. *Id*. But the protectible elements of iOS may have been in versions before iOS 9, which have not been asserted? Because the registration of iOS 9 and all later versions claim "new and revised code" and disclaim all previously versions, a finder of fact would have no way of knowing what portions of the code are covered by the "new and revised code" after iOS 9 and whether those new

---

[2] Apple's liberal use of citations to the Statement of Facts that it filed in conjunction with its own motion for partial summary judgment, see Opp. at 2-7, 10, 13-20, effectively doubles the page limits that Apple is permitted by Local Rule 56.1(b)(2)(D). This flagrant violation prejudices Corellium and all such cites should be disregarded. Subject to this objection, to the extent Apple is permitted to incorporate its Statement of Fact, then to preserve its rights, Corellium hereby incorporates by reference its response ("DSMF Opp.") to Plaintiff's PSOF, ECF No. 513."

portions are eligible for copyright protection. DSMF[3] ¶¶ 20-22. The copyright eligibility analysis necessary for software is thus inexorably obscured. Because Apple has produced no evidence about registrations before iOS 9, Apple will not be able to present to a funder of fact a definitive understanding of the remaining protectible elements in the asserted versions of iOS.

**B.      THE CP DOES NOT CONTAIN ANY COPYRIGHTED APPLE CODE**

The Corellium Product (the "CP") is a suite of security research tools and hardware virtualization that Corellium built from the ground up, which is capable of running Linux, Android, and iOS. DMSF ¶ 30. That product does not contain any copyrighted Apple code nor does it contain Apple's graphical user interface. *Id.* ¶¶ 41-42, 46; DSMF Opp. ¶ 39. Apple does not argue or provide any evidence at all that the CP itself contains any copyrighted Apple code nor that any copyrighted Apple code was referenced when creating the CP.[4] Opp. at 8-9. Nor could it. *See* DSMF ¶¶ 41-42. Apple has not alleged that Corellium ever had access to Apple's copyrighted source code such that a human could read it, understand it, or copy its content.[5] Apple simply ignores the distinction between the CP and iOS. *Id.* ¶ 30. Apple's only infringement claim lies in the iOS object code that can be downloaded for free online in the form of an IPSW file and executed by the CP to conduct testing on iOS. Opp. at 10-11.

Apple improperly requests that the Court enter Summary judgment in its favor on several points, including *prima facie* infringement. Apple pretends as though Corellium's decision not to move for summary judgment on an issue is an admission that it is undisputed and thus requests summary judgment for itself. Corellium points out in its Motion that issues of disputed material fact exist as to those grounds, specifically whether Apple's code is entitled to copyright protection

---

[3] References to "DSMF" refer to Defendant Corellium, LLC's Statement of Material Fact in Support of Its Motion for Summary Judgment and Incorporated Memorandum of Law, ECF No. 457. References to "DSMF Reply" refer to Defendant Corellium, LLC's Reply Statement of Material Facts in Support of Its Motion for Summary Judgment, filed concurrently with this memorandum. References to "DMSF Opp." refer to Defendant Corellium, LLC's Response to Plaintiff Apple Inc.'s Statement of Material Fact in Support of Apple's Motion for Partial Summary Judgment on 17 U.S.C. § 1201 and Response Statement of Additional Material Facts in Opposition Therefore, ECF No. 513.

[4] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3

at all and whether Corellium exercises any of Apple's cognizable copyrights under Section 106 of the copyright act, *inter alia* because the portions of copyrighted iOS code that are asserted in this case are open sourced and are functional rather than creative. Mot. at 1 n.1; Opp. at 8. *See also* 17 U.S.C. § 106. In addition, Corellium disputes that any protectable code is actually run by Corellium or its customers, and that the duration that any alleged copies of those portions are kept is too short to constitute infringement. *Id*. Opp. at 8, 10, 12, 20. Apple is not entitled to request new grounds for a second motion for summary judgment in its opposition by raising additional disputed facts.

Corellium is entitled to summary judgment on Apple's direct infringement claim because its use of iOS constitutes fair use. Mot. at 7, 10-14 (citing *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000); *Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015)). Corellium is also entitled to summary judgment on Apple's contributory infringement claim because a substantial portion of the CP's use is fair use. "The doctrine absolves the equivocal conduct of selling an item with substantial lawful as well as unlawful uses." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932–33 (2005) (internal citations omitted); *See also Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 846 (11th Cir. 1990). This is true regardless of whether Apple would ultimately be able to prove that its copyrighted iOS code is entitled to protection and that these copyrighted elements are copied by Corellium or its customers. *Id*.; 17 U.S.C. §§ 102(b), 106, 107.

Apple claims, in a footnote, that Corellium did not address contributory infringement in moving for summary judgment. Opp. at 8 n.3. This is false. Mot. at 7, 10-14 ("[I]f a significant portion of the product's use is noninfringing, the manufacturers and sellers cannot be held contributorily liable for the product's infringing uses;" "Corellium permits customers to interact with a new expression of iOS, through which Corellium users achieve entirely different purposes than the purposes for which Apple sells its iOS devices;" "Apple's direct and contributory infringement claims fail as a result of the fair use defense.") Having failed to address those portions of Corellium's Motion, Apple concedes the arguments as to contributory infringement.

**C.     EXECUTING iOS FOR PURPOSES OF RESEARCHING iOS IS FAIR USE**

**1.     Research is a Fair Use of a Computer Program**

Corellium created a software tool that interacts with operating systems and permits users to conduct security research on them, which is a fair use. Mot. at 10-12. The purpose of Corellium's product is solely the examination of operating system functions and thus does not infringe any of

those operating systems, including iOS. *See Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1547 n.33 (11th Cir. 1996) ("In no case [] should copyright protection be extended to functional results obtained when program instructions are executed and such results are processes. . . .); *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1262 (11th Cir. 2014) ("even verbatim copying 'may be transformative so long as the copy serves a different function than the original work.'") (internal citation omitted). Likewise, Corellium's internal testing of iOS to ensure that its suite of research tools is compatible with iOS, as well as other operating systems, was fair use as a matter of law. *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 387 F.3d 522, 537 (6th Cir. 2004) ("With respect to computer programs, 'fair use doctrine preserves public access to the ideas and functional elements embedded in copyrighted computer software programs.'") (internal citation omitted).

The CP is transformative because it is a security research platform; it is not a mobile operating system, like iOS. DSMF ¶ 48. The CP fundamentally changed and improved the operating system security research industry in general. *Id*. The CP is its own computer program, separate and apart from iOS, that incudes the ability to conduct research on iOS. *Id*. ¶ 30. But the CP itself was created and is used for a fundamentally different purpose than the purpose for which an Apple customer purchases and uses an iPhone or an iPad. *Id*. ¶¶ 3, 46. Corellium provides a list of some of the independently-created specialized tools, which are useful only for conducting security research into operating systems, and are not found in iOS. Mot. at 10; DSMF ¶ 48. "Research" is a purpose expressly included as a fair use in Section 107. 17 U.S.C. § 107.

Apple cites a litany of inapposite cases. This litigation is about software copyrights, which enjoy less copyright protection and greater freedoms of fair uses than traditional copyrighted works like photographs, music, or literary works. Mot. pp. 12-13. Yet Apple cites to cases that have nothing to do with software copyrights and are therefore inapposite. Opp. at 13-14 (citing *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 563 (1985) (addressing fair use of a stolen copy of the **unpublished** manuscript of the memoirs of president Ford) (emphasis added); *Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 758 (7th Cir. 2014) (addressing fair use of a photograph in a painting and finding fair use); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001) (addressing the claim that downloading an MP3 music file alone is transformative); *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 108 (2d Cir. 1998) (addressing the rebroadcast of entire radio programs over a telephone); *Peter Letterese And Assocs., Inc. v. World Inst. Of Scientology Enterprises*, 533 F.3d 1287, 1310 (11th Cir. 2008) (addressing

5

reprinting sections of a book); *Castle Rock Entm't v. Carol Publ'g Grp.*, 150 F.3d 132, 142, 146 (2nd Cir. 1998) (addressing the reproduction of episodes of the television series, *Seinfeld*).

Apple makes four errors. **First** "commerciality has only limited usefulness to a fair use inquiry; most secondary uses of copyrighted material, including nearly all of the uses listed in the statutory preamble, are commercial." *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 109 (2d Cir. 1998). **Second**, all of the potential uses of the CP are in the realm of operating system or app security research, and it is not possible to use Corellium's product as a replacement for an iPhone or iPad. DSMF ¶¶ 3, 46, 63. Apple vaguely suggests that other uses might exist but does not suggest that someone is using Corellium as a replacement iPhone or iPad. **Third**, Apple has no rights under the Copyright Act to demand that Corellium's customers hand over the fruits of their research to Apple. 17 U.S.C. § 106. **Fourth**, contributory copyright infringement does not attach where substantial fair uses of a product exist. *Grokster, Ltd.*, 545 U.S. 913, 932–33 (2005). There is no requirement that results of fair use research be disclosed to a software vendor, as Apple claims. Even Apple fails to enforce such a requirement of its own bug bounty participants. DSMF Reply ¶ 114. And all of the the alleged illicit marketing that Apple cites suggests only that security researchers could earn money from the results of their research, it never suggests anything illegal or even immoral. DSMF Reply ¶ 111. Finally, Corellium has a strict policy against illegal activity carefully vets its potential customers. DSMF ¶ 62; DSMF Reply ¶¶ 100, 103-04.

### 2. Computer Programs Like iOS are Accorded Less Protection

Computer programs, their function, and the icons and wallpapers that are displayed when those programs are executed are, as a matter of law, accorded less protection than traditional copyrighted works like books and music. Mot. pp. 12-13. *See also Bateman*, 79 F.3d at 1540 n.18 ("[A]ccessing nonprotectable ideas and functional elements, may also yield access to original expression [which] may also be denied protection where its use is found to be 'fair' under 17 U.S.C. § 107."). Apple cites to two inapposite cases addressing books and claims that iOS is highly creative because it is very sophisticated. Opp. at 16. Apple cites itself, rather than evidence. *Id*. Apple's software, and especially the function of iOS, has much thinner protection under the Copyright Act than do books. Apple's fails to rebut Corellium's conclusion that displaying Apple's asserted icons and wallpapers is a necessary function of executing iOS. Mot. pp. 12-13

### 3. Corellium's Use of Portions of iOS is Necessary For its Users to Conduct Research

Intermediate copying of software, even when the entire program is copied, is fair use where that copying is necessary to gain access to the functional elements of that software. Mot. at 13 (citing *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1518 (9th Cir. 1992)). Apple makes iOS available online as one single IPSW file. DSMF ¶ 5. It is not possible to download only a portion of it. Thus, it follows that to make an instance containing the portions of iOS that specific security researchers wish to research, Corellium must make temporary, interim copies of that IPSW file and extract the portions that the researcher needs. *See* DSMF ¶ 53. Such copying is not copyright infringement: "Even if we were inclined to supervise the engineering solutions of software companies in minute detail, and we are not, our application of the copyright law would not turn on such a distinction. . . . In cases in which the solution that required the fewest number of intermediate copies was also the most efficient, an engineer would pursue it, presumably, without our urging.[] This is precisely the kind of 'wasted effort that the proscription against the copyright of ideas and facts . . . [is] designed to prevent.'" *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 605 (2000) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 354 (1991)). Apple fails rebut Corellium's assertion that using substantially all, or even all of iOS, would be both incidental and necessary to conducting security research on iOS. Indeed, Apple admits as much. PSOF Opp. ¶ 88; DSMF Reply ¶ 88.

### D. CORELLIUM DOES NOT HARM APPLE'S MARKET FOR IOS AND APPLE SHOULD NOT BE PERMITTED TO CORNER A SECONDARY MARKET

In its section titled "Corellium Harms Apple's Markets," Apple lays bare its true goal: lock iOS to Apple hardware and corner the market for tools to conduct security research into iOS. Opp, p. 17. Apple cites the following products as ones that Corellium allegedly supplants: 1) an "iOS Simulator;" 2) Apple's non-existent dev-device program; and 3) the use of racks of jailbroken physical phones for security research. *Id*. None of these can be considered competing products that can be harmed by Corellium's alleged infringement of iOS.[6]

---

[6] The existence of secondary and tertiary markets for software that facilitates research into iOS is not a potential market for Apple's original work, iOS. It is a secondary market for tools to test and improve iOS and no exclusive right inures to a copyright holder to enter such a market.

For example, Apple's sole evidence regarding the allegedly competing simulator is that Corellium, in marketing material, allegedly claims that the simulator is a competitor. DSMF Opp. ¶ 72. But that same marketing material makes it abundantly clear that the CP has no competitors. DSMF ¶ 58. And using a simulator, which does not run iOS, to do security testing on iOS is like checking a drawing of your dog for fleas. Next, Apple cites a security research device program, for which no discovery was possible because it does not exist, as a competitive product. Apple's employees do not believe that the security research device program and the CP compete because "they serve different purposes." DSMF ¶ 75. Nor would such a phone have the advanced suite of security research tools like Corellium. Mot. at 10; DSMF ¶¶ 47-48, 58.[7] Finally, Apple's claim that it sells racks of iPhones (or any iPhones) for security research is purposefully dishonest. Apple sells no such iPhones; security researchers need to buy phones, usually used, and utilize "exploits" to make them usable for research. DSMF ¶ 49. Even then, a rack of iPhones has none of the security research tools of Corellium. *Id.* ¶ 48. Apple considers such a use of an iPhone to be a violation of the iOS SLA and the DMCA. Pl. Mot. at 15-18. Apple provides no software or tools whatsoever that would assist a researcher. *See, e.g.*, DSMF ¶ 60.

Apple wishes to lock iOS to Apple's hardware and make independent security researchers agree to Apple's terms and conditions before conducting any research on iOS or any portion thereof. In Apple's own words, "Apple's Software License Agreements unambiguously prohibit the use of iOS except on Apple devices." Pl. Mot. at 16. This is not a permissible exercise of copyright. *See Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 793 (5th Cir. 1999) (software license purporting to limit use of operating system software to the copyright owner's hardware constitutes copyright misuse).

Apple fails to show a *single* instance where a commercial iPhone or iPad customer, looking for a smartphone or tablet, might want the Corellium product instead of Apple's. Nor does Apple provide a shred of evidence at such sales, if they exist, make up more than a *de minimus* portion of its iPhone and iPad sales or that it suffered even a slight change in sales since Corellium began

---

[7] Moreover, even if Apple did have the intention of selling such a device, by Apple's own admission, it would seek to tie those researchers to a contract that forces the researchers to use Apple hardware and to disclose any vulnerabilities that they find to Apple. Opp. at 17. Such restraints on fair use should not be tolerated.

operations. Apple's unsupported claim that it has been harmed by Corellium is pure conjecture[8] and based on products that do not and cannot possibly compete with the CP.

### E. APPLE IS ENGAGING IN COPYRIGHT MISUSE

The Eleventh Circuit has neither recognized nor rejected misuse as a defense to copyright infringement claims. *Telecom Tech. Servs. Inc. v. Rolm Co.*, 388 F.3d 820, 831 (11th Cir. 2004). Apple presents as clear a case as possible for recognizing the doctrine and enforcing it. A copyright owner may not seek monopolies beyond those granted under the copyright statute. *Broadcase Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1 (1979). Apple's assertion of copyright here seeks to lock all uses of iOS to Apple's hardware and corner the secondary market for iOS security research tools. *See supra Alcatel*, 166 F.3d at 793; Apple has strayed far beyond the boundaries permitted for the exclusive exercise of copyright.

### F. APPLE'S CONDUCT ESTOPPS IT FROM SEEKING TO ENFORCE ITS COPYRIGHT NOW

Apple's claim that "mere inaction" does not create estoppel is false. *HGI Assocs., Inc. v. Wetmore Printing Co.,* 427 F.3d 867, 875 (11th Cir. 2005) ("A copyright owner can be estopped not only by words and actions but also by silence and inaction."). Apple permitted, indeed encouraged, the development of the CP and had insight into its inner workings. DSMF ¶¶ 34-36, 72. This litigation makes clear that Apple knows how to clearly assert its copyrights. But by Apple's own admission, for months Apple at best asserted its purported rights through vague statements and questions to which it did not follow up. *See* DSMF Reply ¶ 79; DSMF ¶ 72.

### G. CORELLIUM DOES NOT CIRCUMVENT ANY TCMS NOR TRAFFIC

Apple distributes iOS in IPSW files online for free with nothing stopping the public from downloading a copy of the full IPSW file, most of which is unencrypted (including the kernel). DSMF ¶¶ 5-8, 12-13. As a result, the public has access to iOS object code and the ability to copy, redistribute, modify, perform, and display that IPSW without encountering a single one of Apple's alleged TCMs. *See* Def.'s SJ Opp.[9] at 8-11.

---

[8] Apple's claim that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ is as devoid of logic as it is of evidence.
[9] References to "Def.'s SJ Opp." are to Defendant Corellium, LLC's Memorandum in Opposition to Plaintiff Apple Inc.'s Motion for Partial Summary Judgment, ECF No. 512.

It is irrelevant that, as Apple argues, an ordinary iPhone user does not have the skills necessary to execute the IPSW file. Opp. at 19. No "ordinary user" test exists; Executing software is not an exclusive right of a copyright owner; And every cognizable copyright (copying, redistributing, modifying, performing, and displaying), as well as "access," are each excercisable *before* the need to run iOS. *See Bateman*, 79 F.3d at 1539, n.18. (11th Cir. 1996); *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 387 F.3d 522, 546–47 (6th Cir. 2004). As a case in point, all of the "modifications" and all of the "copies" of iOS that Apple alleges are made in the process of installing iOS on a virtual machine ████████████████████████████████ ████████████████ Def.'s SJ Opp. at 11-12. Moreover, ████████████████ ████████████████████████████████████████. *Id*. at 9.

In addition, fair use can be a defense to a DMCA claim. Def.'s SJ Opp. at 15, 16-17 (acknowledging the circuit split and citing *Chamberlain Grp., Inc. v. Skylink Techs., Inc*., 381 F.3d 1178, 1196, 1193-94, (Fed. Cir. 2004); *MDY Ind's, LLC v. Blizzard Entertainment, Inc*., 629 F.3d 928, 945 (9th Cir. 2010); *Nordstrom Consulting, Inc. v. M & S Techs., Inc*., 2008 WL 623660, at *9 (N.D. Ill. Mar. 4, 2008)). Apple cites exclusively to district court cases from California and fails to address circuit courts of appeal that hold that fair use is a defense to DMCA claims. Corellium is entitled to summary judgment that on Apple's DMCA claims as well.

### III. CONCLUSION

Corellium does not infringe Apple's copyrights directly or contributorily, but even if it did Security Research, indeed any research, into the function of iOS by Corellium's customers is a quintessential fair use and enumerated in Section 107. Furthermore Corellium does not traffic in software in violation of the DMCA because no technological protection measures exist there but, again, even if it did the doctrine of fair use stands mighty against Apple's attempt to take from the public its right to Security Research. Thus, this Court should enter summary judgment for all of the causes of action that Apple has brought against Corellium here and dismiss Apple's case against Corellium with prejudice.

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on this 8th day of March, 2021, the foregoing document was filed electronically with the Clerk of the Court using CM/ECF. It is also certified the foregoing document is being served on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or by some other authorized manner, or a combination thereof, so as to comply with the requirements of Local Rule 5.4 and other applicable rules and procedures.

Dated: March 8, 2021                          Respectfully submitted,

                                        COLE, SCOTT & KISSANE, P.A.
                                        *Counsel for Defendant CORELLIUM, LLC*
                                        Esperante Building
                                        222 Lakeview Avenue, Suite 120
                                        West Palm Beach, Florida 33401
                                        Telephone (561) 612-3459
                                        Facsimile (561) 683-8977
                                        Primary e-mail: justin.levine@csklegal.com
                                        Primary e-mail: lizza.constantine@csklegal.com

By:  *s/ Justin B. Levine*
                                        JONATHAN VINE
                                        Florida Bar. No.: 10966
                                        JUSTIN B. LEVINE
                                        Florida Bar No.: 106463
                                        LIZZA C. CONSTANTINE
                                        Florida Bar No.: 1002945
                                        MICHAEL A. BOEHRINGER
                                        Florida Bar No.: 1018486

                                        *and*

                                        HECHT PARTNERS LLP
                                        *Counsel for Defendant CORELLIUM, LLC*
                                        20 West 23rd St. Fifth Floor
                                        New York, NY 10010
                                        Telephone (212) 851-6821
                                        David Hecht, *Pro hac vice*
                                        E-mail: dhecht@hechtpartnersllp.com
                                        Maxim Price, *Pro hac vice*
                                        E-mail: mprice@hechtpartnersllp.com

                                                Minyao Wang, *Pro hac vice*
                                                E-mail: mwang@hechtpartnersllp.com

## **SERVICE LIST**

Martin B. Goldberg
mgoldberg@lashgoldberg.com
rdiaz@lashgoldberg.com
Emily L. Pincow
epincow@lashgoldberg.com
gizquierdo@lashgoldberg.com
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL 33131

Kathryn Ruemmler (*pro hac vice*)
kathryn.ruemmler@lw.com
Sarang Vijay Damle (*pro hac vice*)
sy.damle@lw.com
Elana Nightingale Dawson (*pro hac vice*)
elana.nightingaledawson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004

Andrew M. Gass (*pro hac vice*)
andrew.gass@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Jessica Stebbins Bina (*pro hac vice*)
jessica.stebbinsbina@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067

*Attorneys for Plaintiff,*
*Apple Inc.*