UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:19-cv-81160-RS

APPLE INC.,

    Plaintiff,

v.

CORELLIUM, LLC,
    Defendant.

_____/

**DEFENDANT CORELLIUM, LLC'S AMENDED[1] REPLY STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

[1] Pursuant to the Court's Sealed Order [D.E. 804].

Defendant Corellium, LLC ("Defendant" or "Corellium"), pursuant to Federal Rule of Civil Procedure 56(c) and S.D. Fla. L.R. 56.1, hereby submits its Reply Statement of Material Facts in Support of Its Motion for Summary Judgment in reply to Plaintiff Apple Inc.'s Response to Defendant Corellium, LLC's Statement of Material Facts in Support of Corellium's Motion for Summary Judgment ("PSOF Opp."), ECF No. 517, and states as follows:

## I. DEFENDANT'S AMENDED REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS[2]

Plaintiff does not dispute the material facts in paragraphs 1-5, 7, 8, 17, 21, 24, 25, 27-29, 31, 38-40, 43-44, 61, 67, 73, 74.

6. Plaintiff does not dispute "that IPSW files are publicly available for free download,"[3] or that those files are freely available from Apple.

9. Plaintiff does not dispute that Corellium does not unencrypt any parts of iOS, or that Corellium "ordinarily" does not use any encrypted parts of iOS. Plaintiff's claim that Corellium "use[s]" "decrypted versions of the IPSW (e.g. iBoot)" is not supported by any facts. Corellium allows *users* to provide their own "unencrypted SEP and iBoot firmwares" that the Corellium product will load. Ex. 25 (Gorton Dep.) at 96:3-19.

10. Plaintiff does not dispute "that iOS includes open source code, including in the kernel." Plaintiff attempts to paint this fact as "not material" because Corellium allegedly "uses entire IPSW files which contain Apple's original content." However, the Corellium product only uses portions of the IPSW files and transforms portions of what is used for its security research purpose. *See* DSMF[4] ¶¶ 45-47. Any storage attendant to downloading and unpacking is "as transient as possible" because the product "dynamically unpacks the IPSW file as it is downloading." *Id.* ¶ 53. Finally, IPSW files are provided by (i.e. downloaded or copied) Corellium's users, not Corellium. *Id.* ¶¶ 54-55.

---

[2] Defendant objects to Plaintiff's attempt to incorporate by reference its own Statement of Facts ("PSOF"), ECF No. 455, and exhibits. Local Rules make clear that the "opponent's Statement of Material Facts" rebutting the movant's statement of material facts is limited to 10-pages and additional facts are limited to 5-pages. S.D. Fla. L.R. 56.1(b)(2)(D). Subject to this objection, and to the extent Apple is permitted to incorporate its Statement of Facts over this objection, to preserve its rights Corellium hereby incorporates by reference its response ("DSMF Opp.") to Plaintiff's PSOF, ECF No. 513.
[3] Unless otherwise indicated, all quoted material is from the corresponding entry in the PSOF Opp.
[4] References to "DSMF" refer to Defendant Corellium, LLC's Statement of Facts in Support of Its Motion for Summary Judgment and Incorporated Memorandum of Law, ECF No. 457.

1

11. Plaintiff does not dispute that the listed examples are "open source code used by Apple." The Krstic deposition testimony lists other examples of open source code in iOS. Ex. 1 (Krstic Dep.) at 58:2-15. This fact is material. *See* Material Fact No. 10, *supra*.

12. Plaintiff does not dispute "that a user can download an IPSW file without being affirmatively presented with the iOS [SLA]," which disposes of Apple's claim that the unpresented iOS SLA, to which the user does not agree to until "the iOS installation process" on an iPhone or other physical iOS device, can "apply to the act of downloading the IPSW file." This fact is material because Apple can present no evidence that IPSW downloaders are subject to an agreement that they did not see, much less agree to. Thus, the terms of the SLA are immaterial as they do not embody Apple's copyrights but rather its own terms.

13. Plaintiff does not dispute this material fact except to claim that IPSW downloaders are subject to the iOS SLA despite not seeing the SLA, much less agreeing to it. This is a legal conclusion, and in any event is false. *See* Material Fact No. 12, *supra*.

14. Plaintiff does not dispute the material fact. Plaintiff's additional commentary is irrelevant.

15. Plaintiff does not dispute the material fact. Plaintiff's additional commentary that Corellium engages in "circumvention" is a legal conclusion and false. *See* Defendant Corellium, LLC's Memorandum in Opposition to Plaintiff Apple Inc.'s Motion for Partial Summary Judgment ("Def.'s SJ Opp."), ECF No. 512 at 8-11.

16. Defendant disputes Apple's claim that the trust cache and the code that presents the SLA to the user are technical control measures ("TCMs"). *Compare* Ex. 9 No. 16 *with* Def.'s SJ Opp. at 10-11. Each of the other TCMs are based in hardware, not software. *See* Ex. 9 (Apple Inc.'s Verified Second Am. Resp. & Objs. to Corellium's Second Set of Interrogs.) No. 16 (explaining that each of the authorization server, secure boot chain, ECID, SEP, and PAC rely on Apple's hardware).

18. Plaintiff does not dispute  In disputing that the secure boot chain is ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiff relies only on self-serving declarations specifically prepared for summary judgment that only address iOS as a whole, and not the kernel specifically. Plaintiff does not dispute that Apple's Head of Security Engineering testified that there is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████

███████████████████████████████

19. Plaintiff does not dispute that anyone "can download IPSW files and look at the unencrypted files' contents." Plaintiff's assertion that "users cannot run, execute, or dynamically interact with those files as iOS unless and until the files are installed on approved Apple devices" is belied by the Corellium product itself. Plaintiff provides no facts to support its false claim that TCMs exist in the IPSW files themselves. *See* Material Fact No. 16, *supra*.

20. Plaintiff does not dispute "that new versions of iOS exclude previously published and registered portions of iOS." Plaintiff concedes that the copyrights that it asserted in this action "do not protect iOS as a whole," DSMF ¶ 20, because "each iOS registration protects everything new in that version." In addition, portions of iOS are open source, including "most but not all of the kernel code." Ex. 3 (Andrews Dep.) at 91:21-92:5. *See also* Ex. 4 (Marineau-Mes Dep.) at 37:16-22 (explaining that "Core OS, certainly the kernel Darwin . . . has its foundation in open source and research projects that date back 30 or 40 years"); Material Fact No. 10, *supra*.

22. Plaintiff does not dispute the material fact. The content of the deposits are "illustrative excerpts of new material" in each copyright registration. PSOF Opp. ¶ 20.

23. Plaintiff does not dispute that "its asserted iOS copyrights do not cover the Boot ROM or third-party open source code." Plaintiff further does not dispute that its *asserted* copyrights do not cover the Low Level Bootloader or kernel cache. The Nieh Declaration *assumes* that "the original and non-open-source components of iOS" are "the subject of Apple's registered copyrights," PEX 91 (Nieh Decl.) ¶ 12, but does not assume or assert that the Low Level Bootloader or kernel cache are the subject of Apple's *asserted* copyrights. The kernel cache is largely based on open source material and not subject to any copyright. *See* Material Fact No. 20, *supra*.

26. Plaintiff does not dispute that it was aware of Virtual in 2014. Plaintiff disputes that the Virtual technology is the same as "this technology" by Corellium but does not dispute that the Virtual technology is "similar to Corellium." Def.'s SJ Opp. at 3.[5]

---

[5] Defendant mistakenly referred to and attached the rough, rather than the final, deposition transcript of Mr. Wade. Apple claims no prejudice from the error and does not object "that the material cited to support or dispute a fact *cannot be presented in a form that would admissible* in evidence." Fed. R. Civ. P. 56(c)(2) (emphasis added).

3

30. Plaintiff does not dispute that Corellium developed its product, "which enables users to load firmware files," and that the product "can be used for security testing, research, and development." Defendant admits that it uses *portions* of IPSW files that it transforms to run a modified version of iOS suitable for security research on Corellium's hardware. *See* PSOF Opp. ¶ 30 ("Corellium modifies IPSW files"); Ex. 6 (Wang Dep.) at 146:18-147:1. Because the Corellium product does not include "important features of iOS," *see* DSMF ¶¶ 3, 46, it does not "display[] a working version of iOS to Corellium's users," PSOF Opp. ¶ 30. Corellium maintains a database of freely available IPSW files solely for internal testing purposes. Material Fact No. 91, *infra*. Corellium does not "provide[] customers thumb drives of IPSW files." *See* Material Fact No. 54, *infra*; DSMF Opp. ¶ 54.

32. Plaintiff does not dispute that its employee was aware that Corellium intended that its customers "'will pay a subscription model to have access to ios running on a hypervisor and SEP running on qemu.'" DSMF ¶ 32 (quoting Ex. 46 (Apl-Corellium_00003979) at 80). Plaintiff's additional commentary about whether Corellium had any customers, whether some employees at Apple now claim that Wade exaggerates, and what Apple then-knew about Corellium's technology is irrelevant to what Apple knew in 2017 about Corellium's intent to commercialize its product.

33. Plaintiff does not dispute the material fact. Plaintiff's additional and unsupported claim that it did not "learn the key technical details as to how Corellium's technology worked" is false. Chris Wade demonstrated the Corellium Product to Apple employees on at least 3 occasions and answered Apple's questions about how Corellium virtualized Apple's hardware to enable users to run a version of iOS for security research on Corellium's hardware. Apple employees understood how Corellium was able to virtualize Apple's hardware. Ex. 48 (Apl-Corellium_00000607) at 07; Ex. 38 (Apl-Corellium_00000744) at 45; Ex. 49 (Apl-Corellium_00000874) at 76, 06; Ex. 50 (Apl-Corellium_00000887) at 88; Ex. 51 (Apl-Corellium_00000882) at 83.

34. Plaintiff does not dispute the material fact. Plaintiff's characterization of Ms. Gorton's deposition testimony "as lacking foundation and asserting legal conclusions" is wrong. *See* Ex. 25 (Gorton Dep.) at 177:5-7 (Plaintiff's examiner clarifying that "I'm not asking for the legal basis, but what facts underpin that belief?").

35. Plaintiff does not dispute that Apple employees provided positive feedback on the Corellium

technology and team. To the extent that Plaintiff disputes with the characterization as "universally positive," Mr. Andrews testified that he "received positive feedback from everyone who gave me feedback," that some of the feedback was "constructive," and that "there was no negative feedback that [he] received." Ex. 3 (Andrews Dep.) at 192:20-193:15.

36. Plaintiff does not appear to dispute that it "encouraged Apple's development." DSMF ¶ 36. *See also* Ex. 7 (First RFAs) No. 2. Plaintiff disputes the implication that Apple encouraged Corellium for any purpose outside of Apple acquiring the company. However, Apple knew about the Corellium product and that Corellium intended to provide a subscription model for its customers. Material Fact Nos. 32-33, *supra*. No one at Apple ever told anyone at Corellium that its product violated Apple's copyrights or the Digital Millennium Copyright Act ("DMCA"). DSMF ¶ 72. There is no evidence in the record that anyone at Apple told anyone at Corellium that it had to shut down any commercialization efforts. *See* DSMF ¶¶ 72-73.

37. Plaintiff does not dispute the material fact. Plaintiff's attempt to limit this fact to mere "brainstorming" is belied by Apple's detailed plans for Corellium. *See, e.g.*, Ex. 34 (Apl-Corellium_00044386) at 86-87 (noting "4 key reasons for wanting to acquire" Corellium and laying out "a set of 30, 60 and 90 day goals" and a "longer term roadmap").

41. Plaintiff disputes that "Corellium did not use any Apple proprietary code in the development of the" Corellium product, DSMF ¶ 41, but provides no evidence to the contrary.[6] Plaintiff's sole evidence is that Mr. Skowronek testified that he utilized Apple's *IPSW files* in the development of the Corellium product.[7] IPSW files are freely available to download and inspect, and Corellium is unable read any copyrighted iOS object code.[8] *See* Material Fact Nos. 6, 9, 12-13, 56; DSMF ¶¶ 6, 9, 12-13, 56.

42. Plaintiff disputes that the Corellium product "itself does not incorporate any Apple code."

---



6

7

8

5

Plaintiff fails explain the basis for disputing this fact and appears to confuse the Corellium product "itself" with the *output* or *development* of the Corellium product. PSOF Opp. ¶ 42 (citing PSOF Opp. ¶ 30, PSUF ¶¶ 4, 36-39, 50-56 (discussing how the Corellium product is used); PSOF Opp. ¶¶ 41, 81 (discussing how the Corellium product was developed)). The cited testimony is clear that the Corellium product itself does not incorporate any Apple code. *See* DSMF ¶ 42.

45. Plaintiff disputes that Corellium "transforms iOS" but admits that Corellium "modifies iOS to run on Corellium's hardware." Corellium's modifications are transformative. *See, e.g.*, DSMF ¶¶ 46-52 (explaining how Corellium transforms iOS to serve its security research purpose). Defendant objects to Plaintiff's legal conclusion that those modifications bypass any of Apple's TCMs. In any event, Plaintiff is wrong. *See* Def.'s SJ Opp. at 8-11.

46. Plaintiff does not dispute that Corellium "does not *currently* virtualize the full functionality of the identified features." This concession rebuts Plaintiff's unsupported claim that the Corellium product presents icons for programs that are non-functional and not virtualized "so that a user can launch them from the home screen of the iOS virtual device." PEX 107 merely shows that icons exist, not their purpose. It also rebuts Plaintiff's claim that the Corellium product "virtualizes almost the full functionality of the user interface of a real iPhone." Plaintiff's speculation as to Corellium's future plans is speculative and irrelevant. In any event, it is incorrect. The cited evidence shows that Corellium might plan to offer the ability to "spoof" the feature (calls, texts, FaceID and TouchID), directly "input" data and images for the feature (i.e. camera, GPS), or "pass-through" information (i.e. gestures) for only some of the listed features. *See* PEX 63 (Correllium-009106) at 2-3; PEX 92 (Nieh Suppl. Rpt.) ¶ 106 (citing the June 2019 version of the same Sales FAQ). None of these constitute "virtualiz[ing] the full functionality of the identified features."

47. Plaintiff does not dispute that the Corellium product "provides its users with a version of iOS which can be used for security research." Plaintiff's additional commentary is irrelevant, and the testimony of Apple's employees demonstrates that Apple understood that Corellium's stated purpose was security research. Ex. 1 (Krstic Dep.) at 100:11-21; Ex. 43 (Betz Dep.) at 23:18-24:3.

48. Plaintiff effectively concedes the material fact.

49. Plaintiff disputes only "the implication that iOS security researchers utilizing retail iPhones

6

must rely on vulnerabilities to conduct their research." *But see* Material Fact No. 58, *infra*. The cited Mr. Shirk testimony makes clear that, in the absence of a jailbroken device, a security researcher normally "need[s] to hold those vulnerabilities." Ex. 44 (Shirk Dep.) at 93:11-94:7.

50. Plaintiff disputes the material fact on the basis that Mr. Wang's testimony lacks foundation and is speculative. But Mr. Wang testified as to his reward-winning experience in the bug finding community and the need to retain vulnerabilities to conduct further research except where, as with the Corellium product, the device "is not jailed in the first place." Ex. 6 (Wang Dep.) at 44:1-47:1. Plaintiff's protest that Corellium does not require security researchers to submit bugs to Apple is both consistent with Apple's practice regarding the Bug Bounty Program, Ex. 44 (Shirk Dep.) at 78:1-24, and irrelevant.

51. Plaintiff only disputes that the features that the Corellium product virtualizes "with as much fidelity as possible . . . are relevant to security research." However, Apple's support for disputing this material fact is both wrong, *see* Material Fact Nos. 48, 63, and addresses only whether security research is the only or sole use of the Corellium product. *See* PSOF Opp. ¶¶ 48 (disputes that the features "only exist for security research"), 63(disputes that the Corellium product is "designed solely" or "only . . . for security research"). Thus, Plaintiff effectively concedes the material fact.

52. Plaintiff only disputes that the kernel patches are "relevant to security research," a claim which fails for the same reasons as in Material Fact No. 51.

53. Plaintiff disputes only that storage associated with downloading and dynamically unpacking the IPSW files is "transient." However, Plaintiff's convoluted and unexplained objection, *see* PSOF Opp. ¶ 53 (citing, without explanation, to 14 unrelated paragraphs, each with their own record citations), actually supports the fact that such storage is "transient." *See, e.g.*, PEX 86 (Nieh Suppl. Rep.) ¶ 13 (cited at PSOF Opp. ¶ 89) (noting that the downloaded copy of the IPSW file remains only through set up and only for "a few minutes").

54. Plaintiff adds that Corellium provides IPSW files used by the Corellium product. Plaintiff is wrong. IPSW files are used by Corellium solely for internal testing. Ex. 32 (Skowronek Dep.) at 218:17-25; Material Fact No. 91, *infra*. Corellium does not provide IPSW files to its customers. DSMF Opp. ¶ 54.

55. Plaintiff does not dispute the material fact "as written." Plaintiff's implication that users

obtain IPSW files through Corellium, *see* PSOF ¶¶ 54, is wrong. *See* DSMF ¶ 54.

56. Plaintiff disputes that Corellium is unable to offer virtualization services for iOS prior to 10.3. Plaintiff has already conceded that the Corellium product "supports virtualization of all iOS operating systems *beginning with iOS 10.3* through the current iOS 13." PSOF ¶ 36 (emphasis added). Notwithstanding this concession, Plaintiff's relies on marketing puffery about "any version of iOS," PEX 103 (Apl-Corellium_00045653), and documents that casually reference "iOS 9" and "iOS 10," *see* PSOF Opp. ¶ 56, neither of which is a valid iOS version, *see* PEX 85 (Peterson Suppl. Decl.) Ex. A. In addition, Plaintiff concedes that there is no evidence that Corellium decrypts any IPSW files, PSOF ¶ 49, Material Fact No. 9, *supra*, and Apple encrypted the iOS kernel prior to version 10.3, *see* Ex. 1 (Krstic Dep.) at 18:20-19:6. Finally, Plaintiff does not dispute that Corellium is unable to work with versions prior to iOS 10.3 due to the presence of 32-bit code.

57. Plaintiff incorrectly disputes that the Corellium product does not support versions of iOS prior to 10.3. *See* Material Fact No. 56, *supra*. The copyrights asserted by Apple in this action explicitly disclaim prior versions and only cover new code. *See* Material Fact No. 20, *supra*.

58. Plaintiff claims that the Corellium product competes with Apple's offerings. Plaintiff's cites do not support that the Corellium product competes with physical devices. For example, Apple's engineers ███████████████████████████████████████ *See* DSMF ¶ 59; Material Fact No. 59, *infra*. ████████████████ has not been marketed to the public, PEX 88 at 1, and is "thus not competitive with the" Corellium product, Ex. 9 (Second Rogs.) No. 18. In any event, it would not compete. *See* Ex. 10 (Federighi Dep.) at 82:19-83:1. Excepting Mr. Firlik, Apple's engineers do not believe that XCode competes with the Corellium product. Ex. 1 (Krstic Dep.) at 113:4-12; Ex. 3 (Andrews Dep.) at 122:2-21. Finally, Plaintiff cannot explain how the Corellium product, which is designed for security research and costs thousands of dollars annually, could possibly compete with Apple's "$99/year" Xcode offering for app development.

59. Plaintiff disputes that Corellium does not compete with physical iPhones, but its own engineers disagree. *See* DSMF ¶ 59. Plaintiff relies on Corellium's marketing material, but that material makes clear that the Corellium product "doesn't have any direct competitors." PSOF ¶ 72; *see also* DSMF Opp. ¶ 72 (explaining what Corellium's marketing materials

8

claim). Plaintiff's claim that the Corellium "replaces some uses of physical iPhones" is directly contradictory to the evidence cited. Ex. 3 (Andrews Dep.) at 55:10-18 (Corellium "wouldn't have obviated the need for those phones in the racks"); Ex. 6 (Wang Dep.) at 117:8-118:9 (noting that the Corellium product can do things that a physical iPhone cannot).

60. Plaintiff does not actually dispute that "[p]roduction iPhones are not suitable for security research." DSMF ¶ 60. Rather, Plaintiff argues "that traditional physical iPhones are required for security research." But witnesses have made clear both that (i) security research needs to be *verified* on a physical device and (ii) excepting verification, production iPhones are not suitable to security research. *See, e.g.*, Ex. 4 (Marineau-Mes Dep.) at 76:10-22, 90:14-91:6; Ex. 6 (Wang Dep.) at 117:18-118:9.

62. Plaintiff does not dispute that Corellium "engages in a vetting process," and only disputes the merits of that process. That process is more involved than mere "Googling names," and Plaintiff does not dispute that Corellium rebuffed several potential customers due to that vetting. *See, e.g.*, Ex. 25 (Gorton Dep.) at 122:12-123:21, 124:3-25. Defendant disputes Plaintiff's assertion that it does not know who its users are. DSMF Opp. ¶¶ 66-68.

63. Plaintiff disputes that Corellium knows its customers use cases and objects to the cited testimony as lacking foundation and hearsay. However, Ms. Gorton's testimony is based on the extensive vetting process for which there is ample foundation. *See* Material Fact No. 62, *supra*. Moreover, it is not hearsay to the extent that it describes Corellium's knowledge of its customers' stated use cases. The "miscellaneous" category is not "vague" because the cited testimony notes that it is (i) rare and (ii) involves "things like continuous integration or the development of tools." Ex. 25 (Gorton Dep.) at 118:4-11. Plaintiff's additional arguments about Corellium's brief are inappropriate. *See* S.D. Fla. L.R. 56.1(b)(2)(C).

64. Plaintiff's claim that the "Corellium product is designed to circumvent the secure boot chain" is an improper legal conclusion. In any event, Plaintiff is wrong. *See* Def.'s SJ Opp. at 8-10.

65. Plaintiff disputes that Corellium's ECID process "prevents its users from tricking or confusing Apple's servers." Apple cites no evidence that the alleged "false ECID" tricks or confuses Apple's *servers*. Thus, Apple is unable to dispute this material fact.

66. Plaintiff only disputes the purpose for which Corellium modifies certain features, arguing that such purpose is unsupported. However, Mr. Skowronek quite plainly states that these features are modified to serve the security research purpose. *See, e.g.*, Ex. 32 (Skowronek

9

Dep.) at 252:9-22 ("security research users are not really concerned about" firmware validation), 258:14-259:1 (modifying the trust cache "is fairly essential to the security research purpose").

68. Plaintiff does not dispute that Chris Wade and Corellium have submitted valuable bugs to Apple.

69. Plaintiff disputes that any Corellium customer has ever submitted bugs to Apple that were found by use of the Corellium product. Mr. Wade's testimony is clear that Corellium's customers have reported to Corellium that they have submitted bugs to Apple, which is not hearsay for at least the purpose of Corellium's belief about the uses of its product.

70. Plaintiff disputes Corellium's *subjective* belief as to the lawfulness of its activities. Plaintiff is incorrect. *See, e.g.*, DSMF ¶ 70; DSMF Opp. ¶ 77.

71. Plaintiff claims that the cited testimony lacks foundation and constitutes a legal opinion. Plaintiff is wrong. *See* Ex. 25 (Gorton Dep.) at 177:5-7 (Plaintiff's examiner clarifying that "I'm not asking for the legal basis, but what facts underpin that belief?"). *See also* Material Fact No. 34, *supra*.

72. Plaintiff disputes that "[n]o one at Apple informed anyone at Corellium that Corellium's products infringed on any of Apple's copyrights or violated the [DMCA]." DSMF ¶ 72. The material fact is correct as written. *Id.*; Material Fact No. 79, *infra*. Plaintiff cites no evidence to the contrary.

75. Plaintiff claims that the Security Research Device Program competes with the Corellium product. This bare claim is contrary to the testimony of Mr. Marineau-Mes, and in any event the program is not public. Ex. 4 (Marineau-Mes Dep.) at 90:14-91:6, 175:7-10; DSMF ¶ 74.

## II. DEFENDANT'S RESPONSE TO PLAINTIFF'S ADDITIONAL FACTS[9]

76. Disputed in part. Undisputed that in 2011 Mr. Wade started an emulation project called iEmu, and that the referenced documents say what they say. Disputed to the extent that becoming "more of a target" implies any knowledge or admission of wrongdoing.

77. Disputed in part. Apple made an offer to purchase Virtual after extensive, bilateral negotiations between Mr. Wade and Apple. Ex. 41 (Smith Dep.) at 32:1-19. Disputed that Mr. Marineau-Mes ▮▮▮▮▮▮▮▮▮▮ Ex. 4 (Marineau-Mes Dep.) at 139:8-24 (quoting Ex. 52 (Apl-Corellium_ 00044287) at 87). The document referencing ▮▮▮▮ is irrelevant here.

78. Disputed. This testimony is inadmissible hearsay submitted for the truth of what was said. FRE 801. ▮▮▮▮▮▮▮▮▮▮ Ex. 24 (Wade Dep.) at 107:13-25, 128:3-15.

79. Disputed. *See, e.g.*, DSMF ¶ 72. Apple was aware of Corellium's intention to sell access to the Corellium product in September 2017. DSMF ¶ 32; Ex. 46 (Apl-Corellium_00003979) at 80. Nothing Plaintiff cites supports the claim that Corellium would need a license to "commercialize iOS." ▮▮▮▮▮▮▮▮▮▮ Ex. 4 (Marineau-Mes Dep.) at 143:9-144:23. The other was merely a question about ▮▮▮▮▮▮▮▮▮▮ Ex. 1 (Krstic Dep.) at 219:4-10; *see also id.* at 67:22-68:20, 165:8-14.

80. Disputed. *See, e.g.*, DSMF ¶¶ 34, 71.

81. STRICKEN BY COURT ORDER.

82. STRICKEN BY COURT ORDER.

83. STRICKEN BY COURT ORDER.

---

[9] To the extent that Corellium indicates that a proffered fact is "Undisputed," Corellium does so solely for the purposes of summary judgment and without waiving any evidentiary objections to the admissibility of the evidence. *See* Fed. R. Civ. P. 56(c)(2) & advisory committee note to 2010 amendment.

84. Undisputed that the document says what it says. Disputed to the extent that Plaintiff implies that "SEP Emulation" began in "Nov-Dec 2018" because the document shows that "SEP Emulation" began at least as early as October 8, 2018. PEX 108 (Correllium-015495) at 95.

85. Disputed in part. Undisputed that the documents say what they say. Disputed the implication that "SEP Emulation" was a "new feature" as of November 2018. *See* Material Fact No. 84, *supra*.

86. Undisputed.

87. Disputed in part. Undisputed that the Corellium product uses *parts* of IPSW files. *E.g.* Ex. 6 (Wang Dep.) at 146:18-147:1; DSMF ¶ 46. Defendant objects to Plaintiff's claim that the Corellium product "extracts, copies, publicly displays, and modifies IPSW files" as a legal conclusion and misleading. *See* DSMF ¶¶ 43, 45-47, 66.

88. Disputed. The testimony of Alexander Stamos on how virtualizing iOS might be accomplished is irrelevant opinion testimony: "Stamos has not performed a technical analysis of the Corellium Apple Product or reviewed any of the factual record in this case." ECF No. 451 at 7; DEX 5 (Stamos Dep.) at 37:15–7, 40:14–41:6, 61:19–62:3. The Corellium product does not require "[f]ull access to iOS" to perform its security research function. *See, e.g.*, DSMF ¶¶ 43, 45-47, 66; Material Fact No. 87, *supra*.

89. Disputed in part. The Corellium product dynamically unpacks the IPSW file such that any storage is as transient as possible. DSMF ¶ 53; Material Fact No. 53, *supra*. *See also* PEX 86 (Nieh Suppl. Rep.) ¶ 13 (noting that the downloaded copy of the IPSW file remains only through set up and only for "a few minutes").

90. Disputed. Disputed that the Corellium product works with any versions of iOS predating iOS 10.3. DSMF ¶ 56; Material Fact No. 56, *supra*. Plaintiff has already conceded that the Corellium product "supports virtualization of all iOS operating systems *beginning with iOS 10.3* through the current iOS 13." PSOF ¶ 36 (emphasis added). In addition, Plaintiff concedes that there is no evidence that Corellium decrypts any IPSW files, PSOF ¶ 49, DSMF ¶ 9, and Apple encrypted the iOS kernel prior to version 10.3, *see* Ex. 1 (Krstic Dep.) at 18:20-19:6. Finally, Plaintiff does not dispute that Corellium is unable to work with versions prior to iOS 10.3 due to the presence of 32-bit code. Disputed the implication that the Corellium product displays anything from iOS versions 9.0 through 13 that falls under a copyright that Apple asserted in this action. *See* DSMF ¶¶ 20-24; Material Fact Nos. 20-24,

*supra*.

91. Undisputed that Corellium uses IPSW files for internal testing purposes.

92. Disputed in part. Irrelevant. The cited PR emails do not establish that the outreach was done solely, or even primarily, "[a]s a public relations strategy."

93. Disputed in part. Corellium "first offered a cloud product," in the form of beta testing accounts, to potential customers in 2018. Ex. 25 (Gorton Dep.) at 52:19-53:9.

94. Disputed in part. Disputed the implication that ▬▬▬ did or does anything with the Corellium product other than initially evaluate the product, sell it to its customers, and use it to troubleshoot for its customers. *See* Ex. 54 (▬▬▬ Dep.) at 85:3-20.

95. Undisputed.

96. Disputed in part. Corellium does not know the precise identity of the customers to which



97. Undisputed. Irrelevant.

98. Undisputed. Irrelevant.

99. Disputed in part. Disputed that "Corellium wanted to 'sell their product to whoever was interested in acquiring it.'" PSOF Opp. ¶ 99 (quoting PEX 95 (▬▬▬ Dep.) at 102:21-103:3. The cited testimony is speculative, lacks foundation, and contains hearsay. FRE 602, 801.

100. Disputed in part. The *initial* vetting process described, which involves more than internet searches and talking to mutual contacts, is that for a "Fortune 50, 100, or Fortune 500 based company[y]" or "a reputable company." Ex. 45 (Dyer Dep.) at 32:2-37:7. Non-enterprise requests are "just ignore[d]" unless Corellium is able to perform "some initial vetting." *Id.* The cited evidence for the proposition that Corellium does not assess background checks or security clearances was specifically limited "to the *initial* vetting process." *Id.* at 43:21-45:16 (emphasis added). In addition to ignoring most non-enterprise requests, Corellium's vetting resulted in nineteen declined enterprise requests. Ex. 53 (Def.'s Fifth Am. Answers to Pls.'s First Set of Interrogs.) No. 15.

101. Undisputed that ▬▬▬

13

███████████████████████████████████████ PEX 44 (Rogs.) No. 9.

102. Disputed in part. Undisputed that Corellium sold its product to ███████████ ██████████████████████████████████████████████████████████ Ex. 25 (Gorton Dep.) at 160:17-22; PEX 44 (Rogs.) No. 9. Plaintiff twists Mr. Stamos's testimony, which clearly referenced certain governments and not companies within those governments. Ex. 11 (Stamos Dep.) at 252:12-253:19 ██████████████████████ █████████████████████████████

103. Disputed in part. The evidence does not establish that ██████████ ever had a trial account. Undisputed that Corellium performed ongoing vetting of ██████████ and declined to sell to it based on the results of that vetting. *See also* Material Fact No. 100, *supra*.

104. Disputed in part. Undisputed that Corellium initially engaged with the ████████ ████████████████████████████████████████ and ultimately declined to sell it the Corellium product. Disputed that Corellium "received payment before refunding them after inquiring further about particularly their ties to the ████████████████████ paid Corellium "before the order form was executed" and during Corellium's ongoing vetting. Ex. 25 (Gorton Dep.) at 163:8-164:7. Again, Plaintiff grossly mischaracterizes Mr. Stamos's testimony regarding certain foreign governments as applying to all companies within those countries. Ex. 11 (Stamos Dep.) at 251:

105. Undisputed. Irrelevant.
106. Undisputed. Irrelevant.
107. Undisputed. Irrelevant.
108. Undisputed. Irrelevant.
109. Disputed in part. Incomplete. ████████████ provides ██████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████████████████ at 64:1-14, 77:1-7.
110. Undisputed. *But see* Material Fact No. 109, *supra*.
111. Disputed. ███████████████████████████████████████████████████ █████████████████ Apple adds its own interpretation. Irrelevant.
112. Disputed. Incomplete. The cited reference refers only to "bugs which would not qualify under the parameters of the Apple Security Bounty program," PEX 44 (Rogs.) No. 7, and not, as Plaintiff claims, "all iOS vulnerabilities." A "[v]ulnerability is a technical term for a

14

bug that has security impact." Ex. 1 (Krstic Dep.) at 102:4-6.

113.  Disputed in part. Nothing cited establishes that money received from ▮▮▮▮ for bugs "helped fund Corellium's development." ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[10]

114.  Undisputed. Irrelevant. Notably, Apple does not require that participants in the Bug Bounty program report all vulnerabilities, much less bugs, to Apple. Ex. 44 (Shirk Dep.) at 78:1-24.

---

[10] Plaintiff cites to pages of the Gorton deposition transcript that simply do not exist. *See* PSOF Opp. ¶ 113 (citing, *inter alia*, Ex. 25 (Gorton Dep.) at 218:17-219:13, 225:25-226:12, 229:13-230:24).

Dated: March 8, 2021

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant CORELLIUM, LLC*
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 612-3459
Facsimile (561) 683-8977
Primary e-mail: justin.levine@csklegal.com
Secondary e-mail: lizza.constantine@csklegal.com

By: <u>s/ Justin B. Levine</u>
JONATHAN VINE
Florida Bar. No.: 10966
JUSTIN B. LEVINE
Florida Bar No.: 106463
LIZZA C. CONSTANTINE
Florida Bar No.: 1002945

and

HECHT PARTNERS LLP
20 West 23rd St. Fifth Floor
New York, NY 10010
Tel: (212) 851-6821
David L. Hecht *pro hac vice*
Email: dhecht@hechtpartners.com
Minyao Wang *pro hac vice*
Email: mwang@hechtpartners.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 8, 2021, a true and correct copy of the foregoing has been transmitted by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.