UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-cv-81160-RS

APPLE INC.,

Plaintiff,

v.

CORELLIUM, LLC,

Defendant.

## PRETRIAL STIPULATION

Plaintiff Apple Inc. and Defendant Corellium, LLC, by and through their undersigned counsel, respectfully submit the following Joint Pretrial Stipulation pursuant to S.D. Fla. Local Rule 16.1(e).  The parties state as follows:

I.      STATEMENT OF THE CASE

A.  Plaintiff's Statement of the Case

**Apple's Claims:**  This case is about a company, Corellium, that built its business based on its ability to break into the software for Apple mobile devices like the iPhone.  Corellium figured out a way to bypass many of the technical security measures in Apple's proprietary operating system, called iOS, so that Corellium and its customers can access and modify iOS in unauthorized virtual iPhones.  Corellium takes iOS, strips it of the technological protections that ordinarily prevent iOS from being copied or used on a non-iOS device, and then sells access to these modified, insecure versions of iOS at astronomically high prices.  This is against the law.  Corellium's conduct violates the anti-trafficking provisions of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(2) and (b)(1), which prohibit the trafficking, *i.e.*, the manufacture, sale, or provision, of tools that circumvent technological measures protecting copyrighted works from unauthorized access, copying, display, and modification.  Apple brings

1

this civil action to address Corellium's anti-trafficking violations, asking the Court to enjoin Corellium's illegal conduct and award Apple damages.

Every version of Apple's proprietary operating system iOS is a copyrighted work. Apple has obtained copyright registrations for every major version of iOS released, which cover the underlying code and other elements for each version, as well as the dynamic visual displays and graphical user interface ("GUI") generated when the iOS operating system runs on an Apple device, with which Apple users interact.

For the convenience of its customers, Apple releases "IPSW" (short for **iP**hone **s**oft**w**are) files containing the iOS software and related installation files tailored to a particular Apple iOS device—*e.g.*, a specific iPhone or iPad model. Absent unauthorized modification, a user can only install and use the copy of iOS contained on an IPSW on the authorized Apple device for which the IPSW is made. Apple has implemented numerous technological measures that, in the ordinary course of operation, control access to and protect Apple's copyrights in iOS by ensuring that others cannot use the raw IPSW files to access, run, display, copy, or modify iOS without Apple's authorization. These measures include, among others:

- The "**authorization server validation check**": During installation, iOS ordinarily "phones home" to an Apple authorization server, which returns data that is required to install and operate iOS.

- The "**secure boot chain**": A series of "signature checks" are performed for iOS to "boot up" and run, which ensure at each step that only code cryptographically signed, or authorized, by Apple is allowed to run. The secure boot chain starts with immutable code fabricated in the hardware of Apple devices, which ordinarily prevents iOS from running on any device other than an authorized Apple device.

- The "**Buddy**" program: Before accessing and using iOS for the first time, the "Buddy" program presents a user with Apple's software license agreement, which the user must accept in order to access and use iOS. The Buddy program ordinarily prevents the iOS home screen from loading for the first time until the user accepts the binding terms of the license agreement, which among other things, prohibits copying or use of iOS beyond the authorized copy on one Apple-branded device and an additional copy for backup purposes only.

- The "**trust cache**": iOS maintains a list of programs that Apple has approved for iOS, which iOS checks before running a given program.  The trust cache ordinarily prevents users from modifying iOS by executing unauthorized code on the iOS platform.

- **Pointer Authentication Codes ("PAC")**: A PAC is a cryptographic signature Apple inserts and stores in various places in iOS code to ensure that the code is executed as intended, without modification or distortion.  When the device processor receives certain instructions, it generates the cryptographic measurement for the next instruction it has been asked to execute.  If the measurement does not match the stored PAC, the processor will halt execution.

Corellium's product avoids, bypasses, removes, deactivates, or impairs Apple's technical measures so that it can install iOS from an IPSW file onto Corellium's product and provide a functioning virtual copy of iOS to users of Corellium's product.  Making and selling a product that circumvents Apple's technical protection measures violates the anti-trafficking provisions of the DMCA.  Specifically, Corellium's product:

- creates a fake signature to imitate the data ordinarily provided by Apple's **authorization server**, enabling the product to bypass the step of contacting the authorization server;

- avoids execution of Apple's **secure boot chain** by replacing the code implementing Apple's boot chain with Corellium's custom code designed to "patch" iOS so it will operate on the Corellium product platform;

- disables the "**Buddy**" program in iOS from running or displaying Apple's software license agreement to users of Corellium's product;

- injects unauthorized programs in the "**trust cache**," enabling its users to create unauthorized modifications of iOS;

- and, for versions of iOS protected by "**PAC**," the product either turns PAC off or replaces PAC with a Corellium-created alternative that skips over Apple's PAC.

By creating a product that permits its customers to circumvent Apple's access and rights controls, Corellium is able to market, sell, and distribute a product that provides unauthorized

access to, and enables unauthorized reproduction, modification, and display of functioning copies of iOS on the Corellium product platform. Using Corellium's product, Corellium's customers and users can access and use an interactive, functioning copy of iOS displayed on a web browser, create "clones" of virtual iOS devices, modify iOS code, and run otherwise unauthorized programs.

Corellium's primary defense is that, because Apple makes IPSW files freely available for use by Apple's authorized users, Apple cannot complain that Corellium takes those files apart, strips out the code that would ordinarily protect Apple users and secure iOS, and sells a clone that runs iOS, but without the protections that ordinarily prevent iOS from being accessed, used, copied, modified, or publicly displayed without authorization. Corellium is wrong. Apple's provision of limited-use, protected IPSW files free of charge to its many authorized users does not give Corellium the right to sell access to unprotected, unauthorized versions of iOS. The relevant controls do not—and are not intended to—prevent someone from obtaining and copying an intact, *protected* IPSW file (*i.e.*, an IPSW file with all the technical protection measures that prevent unauthorized use, modification, reproduction, and display). Rather, Apple's technical measures (1) prevent unauthorized access to and use of the *working, interactive iOS operating system and GUI* protected by copyright, and (2) protect Apple's exclusive rights to reproduce, modify, and publicly display *functioning copies of iOS.*

Corellium also asserts a variety of affirmative defenses, none of which apply. Corellium cannot establish that it qualifies for any of the statutory defenses under the DMCA that it has invoked. And Corellium's estoppel defense fails, as Apple never authorized Corellium's development and sale of its unlawful product, nor can Corellium show any material misrepresentations by Apple or evidence of detrimental reliance. To the contrary, the evidence demonstrates that Corellium knew that Apple had not authorized its product, and chose to proceed with manufacturing, selling, and distributing that product anyway.

Apple seeks an order requiring permanent removal or destruction of all iOS products created and sold by Corellium, a permanent injunction preventing Corellium from creating and distributing its iOS products, and damages as permitted under the DMCA.

**Corellium's Counterclaims:** Corellium asserts two counterclaims, both alleging, under different legal theories, that Apple failed to pay Corellium amounts owed for Corellium's voluntary submission of software "bugs" to Apple in connection with the Apple Security Bounty

("ASB") Program.  ASB is a program under which Apple pays monetary rewards to people who report "bugs" to Apple based on a set of eligibility conditions.  Apple designed the ASB Program to incentivize people to report bugs to Apple so that Apple may address and fix them.  Corellium alleges Apple failed to pay Corellium for bugs Corellium purportedly submitted to Apple and that Apple's failure constituted unjust enrichment (in the form of a quantum meruit claim), and—in the alternative—that it constitutes a breach of contract.

During the time period relevant to the counterclaims, participants in the ASB Program had to agree to Apple's ASB Program Policy, which set forth the parameters, requirements, and conditions for receiving a reward in connection with a bug submission.  Corellium and its co-founder, Christopher Wade—who submitted each of the bugs at issue—expressly agreed to the terms of the ASB Program Policy.  Of the seven alleged submissions identified by Corellium, Apple has since paid rewards on two in accordance with the terms of the ASB Program Policy. The remaining five alleged submissions, in addition to being submitted by Wade in his personal capacity rather than on behalf of Corellium, were ineligible for reward under the express terms of the applicable ASB Program Policy and/or were not submitted in accordance with the Policy terms. Apple did nothing wrong by not paying rewards on submissions that did not meet the requirements to which  Corellium and Mr. Wade knowingly agreed.

Corellium's unjust enrichment counterclaim fails because there is an express agreement between the parties governing Corellium's participation in the ASB Program, precluding the unjust enrichment claim.  Corellium's alternative breach of contract claim fails because Corellium did not perform in accordance with the express terms of the ASB Program Policy for the five unpaid submissions, and because Apple fully complied with the terms of the ASB Program Policy for all adjudications.

### B.  Defendant's Statement of the Case

This case is about Corellium's innovative CORSEC virtualization product, which consists of computer technology that permits its users, including Fortune 500 companies and the United States government, to conduct research on "virtual" mobile devices, that are accessible on a web browser, rather than on actual devices, such as iPhones and Android phones.  Apple recognized early on that Corellium's CORSEC product was valuable, and that its team was brilliant, and therefore sought to purchase Corellium in 2018 for a substantial sum.  After Apple failed to acquire Corellium to exploit CORSEC for itself, it brought this action against Corellium, raising never

mentioned accusations of copyright infringement (which were summarily dismissed) and alleging violations of the Digital Millennium Copyright Act ("DMCA"), law that was enacted to combat software piracy.

Corellium is no pirate, and its product that Apple coveted violates no laws. Corellium is a high-tech start-up company located in Boynton Beach, Florida. It is run by the dynamic husband-and-wife team of Chris Wade, its Chief Technology Officer and Amanda Gorton, its Chief Executive Officer. Its CORSEC product has transformed the security research industry, winning accolades like "Best Product" in Forbes' inaugural Cybersecurity Awards. Chris Wade has been known to Apple for many years and lauded by Apple's Vice President of Core OS Software Engineering to be "as good as [Apple's] best engineers." Apple was also aware of Virtual, developed by, *inter alia*, Mr. Wade and Ms. Gorton in 2014, which allowed users to create virtualized hardware to run iOS, similar to Corellium's CORSEC. Virtual was purchased by Citrix Systems Inc. in 2014.

Corellium's CORSEC product does not include any Apple code nor was any Apple code used in its creation. CORSEC virtualizes Apple hardware in order to run Apple's freely available iOS operating system, which *anyone* can download on the internet in an "IPSW" container, which is essentially a ZIP file. Unlike Apple's phones, CORSEC's virtualized iPhones lack fundamental functionality, including, for example, the ability to make calls, receive text messages, take photos, use iTunes, download apps from the App Store, or navigate with GPS. This is because the virtual iPhones CORSEC generates have a limited purpose: security research.

The IPSW files containing iOS are at the heart of this case. An IPSW file, which contains unencrypted code executed by CORSEC, does not include *any* effective protective measures as required by the law to either (a) control access to its asserted copyrighted works, or (b) protect Apple's rights as a copyright holder. This is because each of the alleged protected measures cannot effectively protect iOS since Apple has chosen to make all of the latest versions of iOS available (via downloadable IPSW files) for copying and distribution without the protection of the alleged protective measures. Notably, iOS version 9.x and below *are* encrypted by Apple and the CORSEC product does not and cannot run those versions of iOS. Apple chose to stop encrypting the IPSW files beginning with version 10.0 of iOS, which has allowed the CORSEC product to freely run the more recent versions of iOS without restriction.

Corellium's CORSEC product does not need to circumvent any protective measures to run the code contained in the IPSW files (of iOS 10.3 and above), *i.e.* to launch iOS on a virtual device. That is because all of the information CORSEC requires is included right in the IPSW file, without any encryption (including the core of the operating system, called the "kernel").  In other words, the iOS code contained in the IPSW is made available by Apple *without protection* and may execute on non-Apple systems, including CORSEC's virtual devices, without any restriction. Anyone with an internet connection can download the IPSW files that Corellium accesses in the same way Corellium does.  Access to Apple's software occurs at the moment an IPSW file is downloaded, and no technological protection measure is encountered or circumvented when doing so.  Further, to the extent any of Apple's rights as a copyright holder are implicated by such IPSW files, Corellium, like any internet user, does not encounter or have to circumvent any technological protection measure to view the contents of the downloaded IPSW file, or duplicate, rename, or otherwise modify items in the downloaded IPSW file.

Each of the alleged technological protective measures raised by Apple are never circumvented by Corellium.  Apple's main smoke and mirrors is that it pretends that "ordinary course of operation" relates to how iOS runs on <u>an iPhone or iPad</u>.  But only the ordinary course of operation of iOS itself, in an IPSW, matters; the ordinary course of operation of iOS on an iPhone or iPad is not at issue.

- iOS does not care what signature it receives or whether it receives a signature at all. It keeps on running.  Only the iPhone or iPad hardware cares if an authorization code is obtained from Apple's "authorization server."

- iOS does not care whether a "secure boot chain" exists.  It keeps on running.  Only the iPhone or iPad hardware stops iOS from running in the event of a secure boot chain error.

- iOS does not care whether the "Buddy" program runs.  It keeps on running anyway. Only iPhone or iPad hardware cares whether the Buddy program runs.

- iOS does not care whether code modifications or apps are authorized by Apple via the "trust cache."  iOS only cares whether the code modifications or apps are authorized by whatever system iOS is currently running on.  Only the iPhone or iPad hardware cares if Apple has approved modifications or apps.

- iOS will accept any PAC code or no PAC code at all, it does not care.  Only specific iPhone and iPad hardware models run PAC.

Even if Apple can prove that Corellium's CORSEC product circumvents technological protective measures, which it does not, CORSEC falls within several exemptions from liability under the law.  First, even if Corellium had developed and employed technological means to circumvent a technological measure, that means was made available to others solely for the purpose of enabling *interoperability* of an independently created computer program with other programs, the **"reverse engineering"** exemption.  Second, Corellium's development, production, distribution, and/or use of any such technological means was done for the sole purpose of **security research**.  Third, under the **"law enforcement"** exemption, Corellium has acted pursuant to a contract with the United States and CORSEC has been used for a lawfully authorized investigative, protective, information security, or intelligence activity.  The Court has already ruled that Corellium has engaged in fair use of Apple's copyrighted material that Apple puts in issue in this case, and found that Corellium  does not violate or otherwise infringe Apple's asserted copyrights.

Finally, by its own conduct in failing to warn Corellium that CORSEC allegedly violated the DMCA and actively encouraging Corellium to continue to develop its product (until it filed this lawsuit), Apple has acquiesced to Corellium's development and sale of CORSEC, and waived any claim that Corellium violates any of Apple's rights or interests, among other defenses. Corellium denies all allegations of wrongdoing.

    i.  Corellium's Counterclaim

Corellium brings two counterclaims in this case:  breach of contract, or in the alternative, restitution/unjust enrichment.  These counterclaims arise from Apple's failure to pay Corellium (or at least to provide sufficient payment) for Corellium's submission of seven bugs to Apple. Corellium argues that it contracted with Apple according to the Program Policy that applies to Apple's Bug Bounty Program.  Corellium submitted the following seven bugs to Apple under Apple's Bug Bounty Program, in expectation of sufficient payment:

1.  Persona race condition – November 13, 2017;

2.  Posix_spawn issue – November 13, 2017

3.  Nfssvc issue – November 13, 2017;

4.  BPF race condition – January 23, 2018;

5.  Backboradd bug – January 23, 2018;

8

6. Kernel execution bug – September 30, 2019; and

7. Memory leak bug – September 30, 2019.

Corellium claims that Apple breached the contract by failing to properly compensate Corellium for these bug submissions.

To the extent Apple contends that the terms of the contract do not require it to compensate Corellium, Corellium contends that Apple's Program Policy is not an express agreement because the terms are illusory. To the extent the Court concludes that no contract existed between the Parties as to Corellium's bug submissions to Apple, Corellium contends that, in reliance on the language regarding compensation in the Program Policy, it submitted bugs to Apple in good faith with the expectation of receiving fair compensation. Apple knowingly accepted the benefit of the bugs submitted by Corellium but refused to pay Corellium for the value of the bugs. Corellium therefore contends that Apple was unjustly enriched. Given Apple's failure to provide recompense for the reasonable value of the bugs Apple has had the benefit of integrating into stronger security protections for their customers, Corellium is entitled to reasonable compensation in the interest of fairness.

## II. BASIS OF FEDERAL JURISDICTION

### A. Parties' Statement Regarding Federal Jurisdiction Over Apple's Claims

Pursuant to 28 U.S.C. § 1338(a), this Court has subject matter jurisdiction over Apple's claims for relief for violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2) and (b)(1).

### B. Corellium's Statement Regarding Federal Jurisdiction Over Corellium's Counterclaims

Jurisdiction is proper on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332 because (1) there is complete diversity of citizenship between Plaintiff and Defendant, and (2) the amount in controversy exceeds $75,000 with respect to Defendant's claim against Plaintiff. Supplemental jurisdiction under 28 U.S.C. § 1367 provides a further jurisdictional basis for Corellium's Counterclaims.

### III.     PLEADINGS RAISING THE ISSUES

#### A. Apple's Claims

Apple's Second Amended Complaint and Demand for Jury Trial and Exhibit A, ECF Nos. 589, 589-1.

Corellium's Answer, Affirmative Defenses, and Counterclaims to Apple's Second Amended Complaint, ECF No. 599.

#### B. Corellium's Claims

Corellium's Answer, Affirmative Defenses, and Counterclaims to Apple's Second Amended Complaint, ECF No. 599.

Apple's Answer to Corellium's Counterclaims, ECF No. 837.

### IV.     UNDISPOSED OF MOTIONS OR MATTERS

The below motions remain pending:[1]

1.      Expedited Motion for Partial Reconsideration of Court's Omnibus Order at ECF 255;[2]

2.      Apple's Motion *in Limine* to Confirm Limitations in Light of Sealed Order at ECF No. 658, ECF No. 806;

3.      Apple's Motion to Enforce the Court's Order at ECF No. 804, ECF No. 826; and

4.      Corellium's Unopposed Motion for Clarification, ECF No. 851.

### V.     STATEMENT OF UNCONTESTED FACTS

1.      Corellium's admissions to Apple's Request for Admission Nos. 48, 49, 58–62, 75, 79, 96–98, 103, 104, 109–112, 117–120, 123, 128–134, 149, 150.

---

[1] Both parties currently have additional pretrial motions that are in different phases of conferral or drafting. Because such motions have not been currently filed, for the purposes of this Stipulation, the parties are not including those Motions in this Stipulation as they may not be considered "pending."

[2] Apple believes this motion is moot and notes that PACER indicates it was terminated, though no formal action appears on the docket regarding the motion.

2.      Apple's admissions to Corellium's Request for Admission Nos. 10–12, 17–18, 24, 29, 34, 39–40, 42, 62–63, 72, 77, 79, 86–87, 90–91, 114, 122, 157–58, 160–61, 163, 170, 182–83, 228–29, 234–35, 251–52, 254, 258, 263–66, 268–69, 274, 277, 279.

3.      Apple Inc. is a California corporation with its principal place of business at One Apple Park Way, Cupertino, California, 95014.

4.      Corellium, LLC is a limited liability company registered in Delaware with its principal place of business at 1301 N Congress Ave., Suite 410, Boynton Beach, Florida, 33426.

5.      Corellium was founded in August 2017 by Amanda Gorton, Christopher Wade, David Wang, and Stan Skowronek.

6.      Chris Wade was working on iOS emulation technology related to a project called iEmu in 2011.

7.      In 2014, Chris Wade, Stan Skowronek, and Amanda Gorton developed Virtual, a virtualization technology company, which was designed to provide technology capable of the virtualization of some components of iOS.

8.      In 2014, Apple became aware that Chris Wade, Stan Skowronek, and Amanda Gorton had developed Virtual's technology.

9.      In 2014, Apple and Virtual engaged in negotiations about Apple potentially acquiring Virtual, including its technology and employees.

10.     Citrix Systems, Inc. acquired Virtual in September 2014.

11.     The Corellium Product encompasses "All products developed, offered for sale, or sold by Corellium that create virtual versions of iOS-operated devices."

12.     During discovery in this Action, the parties have referred to the Corellium Product as the "Corellium Apple Product."

13.     Apple and Corellium engaged in talks regarding the potential acquisition of Corellium by Apple between January and July 2018.

14.     As part of Corellium's negotiations with Apple, Corellium provided certain requested due diligence information regarding its business and technology to Apple.

15. During negotiations, Apple internally discussed several potential uses for Corellium's technology, were Apple to acquire Corellium.

16. Corellium began offering an Android virtualization product on or about March 5, 2019.

17. Corellium first offered for sale a cloud product in January 2019, with its first sale in March 2019.

18. All versions of the Corellium Product are priced according to the number of "cores," or hardware processors, they support. A greater number of cores provides a user with the potential for a greater number of virtual devices. For example, a 24-core server could support four simultaneous, active virtual machines of the iPhone 12, which is a 6-core device, or twelve simultaneous, active virtual machines of the iPhone 6, which is a 2-core device.

19. Apple has never sent Corellium a cease and desist letter relating to any alleged DMCA violations by Corellium.

20. In 2016, when Apple first announced the Apple Security Bounty Program, it offered a reward of up to $200,000 for submitting a critical vulnerability.

21. In 2019, Apple increased that maximum to $1,000,000.

22. Under the original 2016 Apple Security Bounty Program, Apple would pay up to: 1) $200,000 for bugs in secure boot firmware components; 2) $100,000 for extraction of confidential material protected by the Secure Enclave Processor; 3) $50,000 for the execution of arbitrary code with kernel privileges; 4) $50,000 for unauthorized access to iCloud account data on Apple servers; and 5) $25,000 for access from a sandbox process to user data outside of that sandbox.

23. Corellium agreed to the terms of the Apple Enterprise Developer Program.

24. MacOS issues were ineligible for reward under the Apple Security Bounty Program until August 2019.

25. Chris Wade submitted the "persona race condition" bug to Apple on November 13, 2017 from cmw@cmw.me.

26.      Chris Wade submitted the "posix_spawn issue" bug to Apple on November 13, 2017 from cmw@cmw.me.

27.      Chris Wade submitted the "nfssvc issue" bug to Apple on November 13, 2017 from cmw@cmw.me.

## VI.   STATEMENT OF ISSUES OF FACT THAT REMAIN TO BE LITIGATED AT TRIAL

### A.   Apple's Statement of Issues of Fact that Remain to be Litigated

1.      Whether CORSEC iOS,[3] or any part or component thereof: (a) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to Apple's copyrighted iOS computer program; (b) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to Apple's copyrighted iOS computer program; or (c) is marketed by Corellium or another acting in concert with Corellium with Corellium's knowledge for use in circumventing a technological measure that effectively controls access to iOS.

2.      Whether CORSEC iOS, or any part or component thereof: (a) is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of Apple's in its copyrighted iOS computer program or a portion thereof; or (b) has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively protects a right of Apple's in its copyrighted iOS computer program or a portion thereof; or (c) is marketed by Corellium or another acting in concert with Corellium with Corellium's knowledge for use in circumventing protection afforded by a technological measure that effectively protects a right of Apple's in its copyrighted iOS computer program or a portion thereof.

3.      Whether, in the ordinary course of their operation, the technological measures that control access to iOS require the application of information, or a process or treatment, with Apple's authority, to gain access to iOS.

---

[3] Apple refers to Corellium's product as CORSEC iOS, which has also been referred to in this litigation as "the Corellium Product" and "the Corellium Apple Product."

4.      Whether, in the ordinary course of their operation, the technological measures that protect Apple's copyrights in iOS prevent, restrict, or otherwise limit the exercise of one or more of Apple's copyright rights.

5.      Whether the CORSEC iOS product, or any portion thereof, circumvents or bypasses any alleged technological measure that controls access to or protects Apple's copyright rights in one or more versions of iOS.

6.      Whether 17 U.S.C § 1201(f) exempts all of Corellium's conduct from liability under 17 U.S.C. § 1201(a)(2) and (b).

7.      Whether 17 U.S.C. § 1201(j) exempts all of Corellium's conduct from liability under 17 U.S.C. § 1201(a)(2).

8.      Whether Corellium's defenses of Consent/Authorized Use, Estoppel, or Unclean Hands exempt all of Corellium's past conduct from liability under 17 U.S.C. § 1201.

9.      Whether Corellium's defenses of Consent/Authorized Use and Estoppel exempt Corellium's current conduct from liability under 17 U.S.C. § 1201.

10.      Whether any of Corellium's remaining defenses, which Apple asserts are triable to the Court, if triable at all, exempt Corellium's conduct from liability under 17 U.S.C. § 1201.

11.      If Corellium is liable for violating the DMCA, how much statutory damages should Corellium pay, between $200 and $2,500, for each act of circumvention, device, product, component, offer, or performance of service?

12.      If Corellium is liable for violating the DMCA, how much did it profit from its violation of the DMCA?

13.      If the Apple Security Bounty Program Policy is an enforceable contract between the Parties, whether Corellium performed its obligations so as to be entitled to payment.

14.      If the Apple Security Bounty Program Policy is an enforceable contract between the Parties, whether Apple breached its obligations to Corellium.

15.      If Apple breached its obligations to Corellium, whether its breach is excused due to a waiver by Corellium.

16.     If Apple breached its obligations to Corellium, whether Corellium is estopped from obtaining relief for the breach.

17.     If Apple breached its obligations to Corellium, whether Corellium was harmed as a result of Apple's breach and, if so, what its damages are.

18.     If the Apple Security Bounty Program Policy is not an enforceable contract between the Parties, whether Corellium is nonetheless entitled to payment from Apple under the doctrine of quantum meruit/unjust enrichment based on the circumstances of Corellium's submission of bugs to Apple.

19.     If Corellium is entitled to payment under the doctrine of quantum meruit/unjust enrichment, whether Corellium waived its right to seek that payment.

20.     If Corellium is entitled to payment under the doctrine of quantum meruit/unjust enrichment, whether Corellium is estopped from seeking that payment.

21.     If Corellium is entitled to payment from Apple under the doctrine of quantum meruit/unjust enrichment, the amount Corellium is owed.

### B.   Corellium's Statement of Issues of Fact that Remain to be Litigated

1.     Whether the Corellium Product should be called CORSEC at trial?

2.     Whether the measures Apple alleges to be technological protective measures are, in fact, technological protective measures.

3.     Whether such measures are effective to prevent access to the asserted copyrighted works.

4.     Whether such measures are effective to protect one of Apple's six exclusive rights in Apple's copyrighted works.

5.     Whether such measures effectively protect Apple's rights as a copyright holder in the asserted copyrights.

6.     Whether Corellium manufactures, imports, offers to the public, provides, or otherwise traffics in a technology, product, service, device, component, or part thereof that is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title, has only limited commercially

significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under title 17, or is marketed by Corellium or another acting in concert with Corellium with Corellium's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under title 17.

7.    Whether the CORSEC Product descrambles a scrambled work, decrypts an encrypted work, or otherwise to avoids, bypasses, removes, deactivates, or impairs a technological measure, without the authority of the copyright owner.

8.    Whether Corellium manufactures, imports, offers to the public, provides, or otherwise traffics in any technology, product, service, device, component, or part thereof that is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under title 17, has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively protects a right of a copyright owner under title 17, or is marketed by Corellium or another acting in concert with Corellium with Corellium's knowledge for use in circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under title 17.

9.    Whether Corellium decrypts any portion of iOS.

10.    Whether Corellium uses any encrypted portion of iOS.

11.    Whether the ability to make phone calls, send text messages, take photos, and download apps from Apple's App Store are important features of iOS.

12.    Whether Apple holds copyrights in each earlier version of iOS.

13.    Whether Apple holds copyrights in the subject code of iOS.

14.    Whether Apple internally discussed several potential uses for the CORSEC technology, including virtualization, the SWE program, BuddyBuild, app testing, internal developer testing, testing older iOS versions, security testing, and security research.

15.    Whether unencrypted Components of iOS run on Corellium's virtual devices on non-Apple hardware.

16.     Whether iOS includes any hardware or boot ROMs, including the ordinary iPhone boot ROM and the secure ROM (SEP ROM), which are built directly into iPhones and iPads.

17.     Whether Apple's copyrights for each new version of iOS excludes previously published Apple material, including prior versions of iOS.

18.     Whether some parts of the IPSW are unencrypted.

19.     Whether the kernel and root file system components of the IPSW files for iOS versions 10.3 and later are unencrypted.

20.     Whether IPSW files are available for the public to download for free and without encryptions.

21.     Whether IPSW files contain image files such as wallpapers.

22.     Whether Apple was aware of the existence and nature of iEmu in 2011.

23.     Whether employees at Apple discussed with Chris Wade the emulation of iOS by iEmu in 2011.

24.     Whether Apple's employees received demonstrations of the fully developed Virtual Product in 2014.

25.     Whether Corellium demonstrated the Corellium Product to Apple's employees, at least on January 23, 2018, March 1, 2018, and June 2018.

26.     Whether as part of negotiations, Corellium provided Apple's employees with trial account credential to access the Corellium Product.

27.     Whether the functions of the CORSEC Product circumvent or bypass any alleged technological protective measure.

28.     Whether the protective measures asserted by Apple constitute technological protective measures under 17 U.S.C. §1201.

29.     Whether the protective measures asserted by Apple are effective as defined by the DMCA.

30.     Whether the protective measures asserted by Apple prevent access as contemplated by the DMCA.

31.     Whether 17 U.S.C. §1201(e) exempts Corellium from liability under the DMCA.

32.     Whether 17 U.S.C. §1201(f) exempts Corellium from liability under the DMCA.

33.     Whether 17 U.S.C. §1201(j) exempts Corellium from liability under the DMCA.

34.     Whether the defenses of Acquiescence, Authorized Use, Consent, Waiver, Estoppel, Laches, Implied License, and/or Unclean hands exempt Corellium from liability.

35.     Whether the defense of Restraint of Trade exempt Corellium from liability.

36.     Whether Corellium knew or should have known it was violating the DMCA.

37.     Whether Apple is engaging in copyright misuse by asserting claims over works to which a copyright registration or allegation has not been included in this case.

38.     Whether the constitutional right of free speech exempts Corellium from liability.

39.     Whether the Apple Security Bounty Program Policy could be considered a contract.

40.     Whether the Apple Security Bounty Program Policy is illusory and/or unconscionable if deemed a contract?

41.     Whether Chris Wade submitted the "kernel execution bug" on behalf of Corellium to Apple on September 30, 2019 from chris@corellium.com.

42.     Whether Apple notified Chris Wade as an agent of Corellium on February 10, 2020 that the "kernel execution bug" qualified for an award of $45,000.

43.     Whether Chris Wade on behalf of Corellium designated the award for donation to the Electronic Frontier Foundation, and Apple matched the donation for a total of $90,000.

44.     Whether Chris Wade submitted the "memory leak bug" on behalf of Corellium to Apple on September 30, 2019 from chris@corellium.com.

45.     Whether Apple notified Chris Wade as an agent of Corellium in April 2020 that the "memory leak bug" qualified for an award of $20,000.

46.     Whether Chris Wade on behalf of Corellium designated the award for the "memory leak bug" for donation to the Electronic Frontier Foundation, and Apple matched the donation for a total of $40,000.

47.     Whether Chris Wade on behalf of Corellium submitted a write up of "checkm8" vulnerability on September 30, 2019.

48.     What is the benefit received by Apple from each of the seven bugs submitted by Corellium?

49.     Whether Corellium has been properly compensated for all seven bugs submitted in light of the benefit received by Apple?

50.     What amount of restitution is Corellium owed from the seven bugs?

## VII.    STATEMENT OF AGREED-UPON ISSUES OF LAW

1.     Plaintiff's claims in this action are brought under 17 U.S.C. §§ 1201(a)(2) and (b).

2.     This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1338(a).

3.     This Court has personal jurisdiction over Apple Inc. and Corellium, LLC for purposes of this litigation.

4.     Apple's DMCA claims against Corellium are governed by 17 U.S.C. § 1201(a) and (b), including its relevant subparts.

5.     The affirmative defense of "security testing" under 17 U.S.C. § 1201(j)(4) does not apply to claims brought pursuant to 17 U.S.C. § 1201(b)(1).

## VIII.   STATEMENT OF LEGAL ISSUES REMAINING FOR DETERMINATION BY THE COURT[4]

### A.   Apple's Statement of Legal Issues Remaining for Determination by the Court

1.     Whether the claims that have been addressed and disposed of via motion practice are irrelevant to the jury's consideration of the remaining claims and thus shall not be referenced before the jury in argument or testimony;

2.     Whether Apple's proposed jury instructions or Corellium's proposed jury instructions more accurately state the requirements of an anti-trafficking claim brought pursuant to 17 U.S.C. § 1201(a)(2) or (b)(1), in particular:

---

[4] All parties expressly reserve all objections to these issues even being considered by the Court, as well as their substantive positions regarding the issues.

3.      Whether Apple's proposed verdict form or Corellium's proposed verdict form is clearer and more consistent with the law related to both parties' claims.

4.      Whether, pursuant to 17 U.S.C. § 401(c), Apple's certificate of copyright registration made within five years after the first publication of a work are evidence of the copyright's validity and the facts stated in the certificate, and create a rebuttable presumption of validity.

5.      Whether, to establish the affirmative defense of "copyright invalidity" where a copyrighted work is presumed valid due to registration, Corellium must prove by a preponderance of the evidence that each of the works in question in not original to Apple or that each of the works does not possess a minimum degree of creativity.  *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991).

6.      Whether, pursuant to 17 U.S.C. § 1201(j), "security testing" can only be done with the authorization of the owner or operator of such computer, computer system, or computer network.

7.      Whether, a "computer program" as that term is used in the Copyright Act is distinct from a "computer, computer system, or computer network" as that phrase is used in the Copyright Act, including in 17 U.S.C. 1201(j).  If so, whether iOS is a "computer program," not a "computer, computer system, or computer network."

8.      Whether the defense of equitable estoppel is available only "when a copyright owner engages in intentionally misleading representations concerning his abstention from suit, and the alleged [violator] detrimentally relies on the copyright owner's deception," as the U.S. Supreme Court held in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 684 (2014).

9.      Whether an "[i]ndependently created computer program" as that term is used in 17 U.S.C. § 1201(f) means a computer program other than the one protected by the technical measures at issue, and other than the circumvention technology at issue.

10.      Which of Corellium's affirmative defenses are triable to the jury, which are appropriate for an advisory jury finding, and which are triable to the Court?

11.      Whether Corellium's equitable defense of acquiescence, which is a statutory trademark defense, applies to Apple's claims brought under the DMCA.

12.     Whether Corellium's equitable defense of laches is barred as a matter of law by the U.S. Supreme Court's holding in *Petrella v. Metro-Goldwyn Mayer, Inc.*, 572 U.S. 663, 682, 689 (2014), and Eleventh Circuit precedent *Peter Letterese and Assocs., Inc. v. World Inst. of Scientology Enterprises*, 533 F.3d 1287, 1321–22 (11th Cir. 2008).

13.     Whether Corellium's "restraint of trade" defense is a viable affirmative defense under applicable law.

14.     Whether Corellium's equitable defense of "copyright misuse," which several courts have held applies only to infringement claims (if at all), and not to DMCA claims, applies to Apple's remaining claims brought under the DMCA.

15.     Whether Corellium's defense based on the First Amendment to the United States Constitution is viable as a matter of law.

16.     Whether the Court must, under 28 U.S.C. § 2403 and pursuant to Federal Rule of Civil Procedure 5.1(b), certify to the appropriate attorney general that a statute has been questioned.

17.     Whether the Court may enter a final judgment holding the DMCA unconstitutional without allowing the Government 60 days to intervene following filing of a notice of constitutional question pursuant to Federal Rule of Civil Procedure 5.1(a) or a certification by the Court pursuant to Federal Rule of Civil Procedure 5.1(b).

18.     Under Florida's choice-of-law rules, whether California or Florida law governs Corellium's claims for breach of contract and quantum meruit/unjust enrichment.

### C. Corellium's Statement of Legal Issues Remaining for Determination by the Court

1.     Whether this Court has jurisdiction to Defendant's counterclaims in this action brought under 28 U.S.C. § 1332 because (1) there is complete diversity of citizenship between Plaintiff and Defendant, and (2) the amount in controversy exceeds $75,000 with respect to Defendant's claim against Plaintiff.  Supplemental jurisdiction under 28 U.S.C. § 1367 provides a further jurisdictional basis for Corellium's Counterclaims.

2.     Whether 17 U.S.C. §1201(e) exempts Corellium from liability under the DMCA.

3.      Whether 17 U.S.C. §1201(f) exempts Corellium from liability under the DMCA.

4.      Whether 17 U.S.C. §1201(j) exempts Corellium from liability under the DMCA.

5.      Whether the substantive law of Florida applies to Corellium's Counterclaims of breach of contract and unjust enrichment/quantum meruit.

6.      Whether none of the six exclusive rights identified in 17 U.S.C. §106 have been infringed.

7.      Whether Corellium's use of iOS constitutes fair use in relation to DMCA claims.

8.      Whether the copyright registrations at issue in this case comprehensively cover and protect iOS 9.0, iOS 9.1, iOS 10.0, iOS 11.0, iOS 11.0.1, iOS 11.2, iOS 11.2.5, iOS 11.3, iOS 11.4, iOS 12.0, iOS 12.1.1, iOS 12.2.

9.      Whether copyrights not included in Apple's Second Amended Complaint are at issue in this Action.

10.    Whether Corellium's fair use of iOS prevents liability under 17 U.S.C. §1201(b).

11.    Whether Apple's copyright includes subject code.

12.    Whether Acquiescence is an affirmative defense to Apple's DMCA claims.

13.    Whether Authorized Use is an affirmative defense to Apple's DMCA claims.

14.    Whether Consent is an affirmative defense to Apple's DMCA claims.

15.    Whether Waiver is an affirmative defense to Apple's DMCA claims.

16.    Whether Estoppel is an affirmative defense to Apple's DMCA claims.

17.    Whether Laches is an affirmative defense to Apple's DMCA claims.

18.    Whether Implied License is an affirmative defense to Apple's DMCA claims.

19.    Whether Unclean Hands is an affirmative defense to Apple's DMCA claims.

20.    Whether Restraint of Trade is an affirmative defense to Apple's DMCA claims.

21.     Whether No Willful Violation is an affirmative defense to Apple's DMCA claims.

22.     Whether Copyright Misuse is an affirmative defense to Apple's DMCA claims.

23.     Whether 17 U.S.C. § 1201(c)(4)—Free Speech is an affirmative defense to Apple's

DMCA

24.     The extent of access.

## IX.     TRIAL EXHIBITS

Apple's list of trial exhibits and Corellium's objections thereto is attached as Exhibit A.
Corellium's list of trial exhibits and Apple's objections thereto is attached as Exhibit B.

## X.     TRIAL WITNESSES

### A.  Apple's Witness List

| Name | Address | Will Call / May Call |
|---|---|---|
| Ivan Krstić | c/o Martin B. Goldberg<br>Lash & Goldberg LLP<br>100 S.E. 2nd Street, Suite 1200<br>Miami, FL 33131 | Will Call |
| Jon Andrews | c/o Martin B. Goldberg<br>Lash & Goldberg LLP<br>100 S.E. 2nd Street, Suite 1200<br>Miami, FL 33131 | Will Call |
| Sebastien Marineau-Mes | c/o Martin B. Goldberg<br>Lash & Goldberg LLP<br>100 S.E. 2nd Street, Suite 1200<br>Miami, FL 33131 | May Call |
| Akila Srinivasan | c/o Martin B. Goldberg<br>Lash & Goldberg LLP<br>100 S.E. 2nd Street, Suite 1200<br>Miami, FL 33131 | May Call |
| Jason Shirk | c/o Martin B. Goldberg<br>Lash & Goldberg LLP<br>100 S.E. 2nd Street, Suite 1200<br>Miami, FL 33131 | Will Call |
| Lee Peterson | c/o Martin B. Goldberg<br>Lash & Goldberg LLP<br>100 S.E. 2nd Street, Suite 1200<br>Miami, FL 33131 | Will Call |
| Craig Federighi | c/o Martin B. Goldberg<br>Lash & Goldberg LLP | May Call |

| Name | Address | Will Call / May Call |
|---|---|---|
| | 100 S.E. 2nd Street, Suite 1200 Miami, FL 33131 | |
| Chris Wade | Corellium, LLC 1301 N Congress Ave Suite 410 Boynton Beach, FL 33426 | May Call |
| Amanda Gorton | Corellium, LLC 1301 N Congress Ave Suite 410 Boynton Beach, FL 33426 | May Call |
| David Wang | Corellium, LLC 1301 N Congress Ave Suite 410 Boynton Beach, FL 33426 | May Call |
| Stanislaw Skowronek | Corellium, LLC 1301 N Congress Ave Suite 410 Boynton Beach, FL 33426 | May Call |
| Steve Dyer | Corellium, LLC 1301 N Congress Ave Suite 410 Boynton Beach, FL 33426 | May Call |
| Mark Templeton | c/o Corellium, LLC 1301 N Congress Ave Suite 410 Boynton Beach, FL 33426 | May Call |
| Azimuth Security, LLC Corporate Designee (Courtney Smith) | Azimuth Security, LLC c/o L3 Technologies, Inc. 600 3rd Ave, Floor 34 New York, NY 10016 | May Call (by deposition) |
| Jason Nieh (Expert Witness) | c/o Columbia University Department of Computer Science 1214 Amsterdam Ave. MC0401 New York, NY 10027-7003 | Will Call |
| Michael Siegel (Expert Witness) | c/o Analysis Group 111 Huntington Ave., 14th Floor Boston, MA 02199 | Will Call |
| David Connelly (Expert Witness) | c/o Freeman & Mills 350 S. Figueroa Street, Suite 900 Los Angeles, CA 90071 | Will Call |

Apple may and thus reserves the right to call any witness listed on Corellium's witness list as well.

### B. Corellium's Witness List

| Name | Address | Will Call / May Call |
|---|---|---|
| Christopher Wade | c/o Justin Levine<br>Cole, Scott & Kissane, P.A.<br>Esperante Building<br>222 Lakeview Avenue, Suite 120<br>West Palm Beach, FL, 33401 | Will Call |
| Amanda Gorton | c/o Justin Levine<br>Cole, Scott & Kissane, P.A.<br>Esperante Building<br>222 Lakeview Avenue, Suite 120<br>West Palm Beach, FL, 33401 | Will Call |
| Stanislaw Skowronek | c/o Justin Levine<br>Cole, Scott & Kissane, P.A.<br>Esperante Building<br>222 Lakeview Avenue, Suite 120<br>West Palm Beach, FL, 33401 | Will Call |
| Stephen Dyer | c/o Justin Levine<br>Cole, Scott & Kissane, P.A.<br>Esperante Building<br>222 Lakeview Avenue, Suite 120<br>West Palm Beach, FL, 33401 | Will Call |
| Mark Templeton | c/o Justin Levine<br>Cole, Scott & Kissane, P.A.<br>Esperante Building<br>222 Lakeview Avenue, Suite 120<br>West Palm Beach, FL, 33401 | May Call |
| Azimuth | Azimuth Security, LLC<br>c/o L3 Technologies, Inc.<br>600 3rd Ave, Floor 34 | May Call<br>(by deposition) |
| Alex Stamos | c/o Justin Levine<br>Cole, Scott & Kissane, P.A.<br>Esperante Building<br>222 Lakeview Avenue, Suite 120<br>West Palm Beach, FL, 33401 | Will Call |

| James Oliver | c/o Justin Levine<br>Cole, Scott & Kissane, P.A.<br>Esperante Building<br>222 Lakeview Avenue, Suite 120<br>West Palm Beach, FL, 33401 | Will Call |
| Stewart Applerouth | c/o Justin Levine<br>Cole, Scott & Kissane, P.A.<br>Esperante Building<br>222 Lakeview Avenue, Suite 120<br>West Palm Beach, FL, 33401 | Will Call |
| Jon Andrews | Apple Inc.<br>One Apple Park Way<br>Cupertino, CA 95014 | Will Call |
| Ivan Krstic | Apple Inc.<br>One Apple Park Way<br>Cupertino, CA 95014 | Will Call |
| Sebastien Marineau-Mes | Apple Inc.<br>One Apple Park Way<br>Cupertino, CA 95014 | Will Call |
| Chris Betz | Apple Inc.<br>One Apple Park Way<br>Cupertino, CA 95014 | Will Call |
| Craig Federighi | Apple Inc.<br>One Apple Park Way<br>Cupertino, CA 95014 | Will Call |
| Matthew Firlik | Apple Inc.<br>One Apple Park Way<br>Cupertino, CA 95014 | Will Call |
| Steve Smith | Apple Inc.<br>One Apple Park Way<br>Cupertino, CA 95014 | Will Call |
| Lee Peterson | Apple Inc.<br>One Apple Park Way<br>Cupertino, CA 95014 | Will Call |
| Jacques Virdine | Apple Inc.<br>One Apple Park Way<br>Cupertino, CA 95014 | Will Call |
| Jason Shirk | Apple Inc.<br>One Apple Park Way<br>Cupertino, CA 95014 | Will Call |
| Akila Srinivasan | Apple Inc.<br>One Apple Park Way<br>Cupertino, CA 95014 | Will Call |

Corellium may and thus reserves the right to call any witness listed on Apple's witness list as well.

## XI.  ESTIMATED TRIAL TIME

The estimated time required for trial is 10 days.

## XII.  ESTIMATE OF ATTORNEY'S FEES

1.      Apple's Estimate of Allowable Attorneys' Fees - $7,750,000[5]

2.      Corellium's Estimate of Allowable Attorney's Fees - $3,500,000

---

[5] Apple's fees are an estimate and may change as a result of pretrial and trial-related matters.

Dated: April 2, 2021

Michele D. Johnson*
*michele.johnson@lw.com*
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
(714) 540-1235 / (714) 755-8290 Fax

Sarang Vijay Damle*
sy.damle@lw.com
Elana Nightingale Dawson*
elana.nightingaledawson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200 / (202) 637-2201 Fax

Andrew M. Gass*
andrew.gass@lw.com
Joseph R. Wetzel*
*joe.wetzel@lw.com*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 / (415) 395-8095 Fax

Jessica Stebbins Bina*
*jessica.stebbinsbina@lw.com*
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500 / (424) 653-5501 Fax

Gabriel S. Gross*
*gabe.gross@lw.com*
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 463-2628 / (650) 463-2600 Fax

*Admitted pro hac vice*

Respectfully Submitted,

*s/ Martin B. Goldberg*

Martin B. Goldberg
Florida Bar No. 0827029
*mgoldberg@lashgoldberg.com*
*rdiaz@lashgoldberg.com*
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL 33131
(305) 347-4040 / (305) 347-4050 Fax

Emily L. Pincow
Florida Bar No. 1010370
*epincow@lashgoldberg.com*
*gizquierdo@lashgoldberg.com*
LASH & GOLDBERG LLP
Weston Corporate Center I
2500 Weston Road, Suite 220
Weston, FL 33331
(954) 859-5180 / (954) 384-2510 Fax

*Attorneys for Plaintiff* APPLE INC.

/s/ Justin Levine
JONATHAN VINE
Florida Bar No.: 10966
JUSTIN LEVINE
Florida Bar No.:  106463
LIZZA CONSTANTINE
Florida Bar No.: 1002945

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant*
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 383-9222
Facsimile (561) 683-8977
E-mail: jonathan.vine@csklegal.com
E-mail: justin.levine@csklegal.com
E-mail: lizza.constantine@csklegal.com

*and*

HECHT PARTNERS LLP
*Counsel for Defendant*
125 Park Ave. 25th Floor
New York, NY 10017
Telephone (212) 851-6821
David L. Hecht, *Pro hac vice*
E-mail: dhecht@hechtpartners.com
Maxim Price, *Pro hac vice*
E-mail: mprice@hechtpartners.com
Conor B. McDonough, *Pro hac vice*
E-mail: cmcdonough@hechtpartners.com
Minyao Wang, *Pro hac vice*
E-mail: mwang@hechtpartners.com

*Attorneys for Defendant Corellium, LLC*