UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:19-cv-81160-RS

APPLE INC.,

    Plaintiff,
v.

CORELLIUM, LLC,

    Defendant.

_____/

## CORELLIUM, LLC'S MOTION FOR PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW

Defendant, Corellium, LLC ("Corellium"), by and through undersigned counsel, files this Motion for Protective Order seeking protection from Plaintiff Apple Inc.'s ("Apple") unduly burdensome and continuous review of Corellium's On-Premises Version of Corellium's CORSEC Product and Corellium's Source Code, and in support states as follows:

## INTRODUCTION

Even though discovery in this case closed over one year ago, Apple continues to seek the ongoing review of 1) Corellium's source code computer, and 2) Corellium's On-Premises Product. This Motion seeks a Protective Order over Apple's ongoing access to and review of these two items.

Corellium is a start-up business with limited resources. Apple's ongoing review of Corellium's source code computer and On-Premises Product is consuming Corellium's scarce resources, forcing Corellium to be at Apple's beck-and-call, and has become harassing, unduly burdensome and unreasonably cumulative to Apple's previous review. Apple has fully inspected this discovery before and after the discovery deadline. Its expert rendered his opinions nearly a

year ago, submitting three voluminous reports, including a supplemental report. Apple's continuous and repetitive review of Corellium's source code and Corellium's On-Premises Product on the eve of trial should no longer be Corellium's burden to carry or facilitate.

Corellium has shouldered this burden for over a year now at significant expense. Critically, Corellium is forced near daily to take resources away from its small business and its own trial preparation to tend to Apple's ongoing post-discovery demands and review. Specifically, Corellium's resources are being exploited by Apple to facilitate Apple's own post-discovery trial preparation by 1) forcing Corellium to ensure that its On-Premises dedicated server is available for Apple's trial preparation when that server could be applied to other business uses, 2) frequently having to tend to technical trouble-shooting whenever Apple requires it, 3) making Corellium's employees and lawyers available to spend hours multiple times a week monitoring Apple's review of the source code, and 4) ensuring that the source code dedicated computer remains running and available whenever Apple requests. Accordingly, Corellium is being forced to facilitate Apple's ongoing and highly burdensome post-discovery trial preparation and should be protected from having to bear this burden going forward.

## FACTUAL BACKGROUND

### I. Protective Order

On December 13, 2019, the Court entered the Parties' Protective Order Regarding the Disclosure and Use of Discovery Materials, ECF 50 ("Protective Order"). This Protective Order outlined the Parties' initial agreement to confidentiality designations to certain material and information as well as the inspection of source code. In relation to inspection of source code, the Protective Order provides in part:

> a. Any source code that is produced by Apple shall be made available for inspection in electronic format at the Washington, D.C. office of its outside counsel, Latham & Watkins LLP, or any other location reasonably designated by Apple. Any Source Code that is produced by Corellium will be made available for inspection at the West Palm Beach, Florida office of its outside counsel, Cole, Scott & Kissane, P.A., or any other location reasonable designated by Corellium. Source Code will be made available for inspection between the hours of 9 a.m. and 5 p.m. on business days (i.e., weekdays that are not Federal holidays), although the Parties will be reasonable in accommodating reasonable requests to conduct inspections at other time.

Protective Order, ¶ 11. It was the intention of the Parties' Protective Order to ensure that inspection and review of Source Code would be as protected and guarded as possible. Inspection was to be completed in a designated "Source Code Review Room" with "no recordable media or recordable devices" permitted and only provided for note-taking relating to source code. *Id.* Additionally, the Protective Order provided that "no copies of all or any portions of the Source Code may leave the room." *Id.* Lastly, the Protective Order allowed for printing of limiting portions of the Source Code "only when necessary," and those printed portions "shall be collected by the Producing Party" and only those "printed pages shall constitute part of the Source Code produced by the Producing Party in this action." *Id.*

On March 12, 2020, Apple's counsel and expert inspected Corellium's source code at the offices of Corellium's counsel in West Palm Beach, Florida and later, Apple further inspected Corellium's On-Premises version at Corellium's office located in Boynton Beach, Florida.

After that inspection, however, the entire country was forced to adapt to the new COVID-19 travel restrictions. As traveling ultimately ceased, the Parties endeavored to create a plan where both Parties could continue to inspect and review their respective source code remotely prior to the discovery deadline.

In responding to COVID-19, on April 3, 2020, the Parties stipulated to certain ways Corellium could make its source code computer and On-Premises Product remotely available to Apple in light of the new travel restrictions. *See* Stipulation and [Proposed] Order Regarding Corellium's Compliance with Omnibus Order, ECF 290 ("Discovery Stipulation"). Importantly, the Parties acknowledged that "the COVID-19 pandemic has created legal and practical restrictions on the parties', their counsel's, and their experts' ability to travel and work in regular places of business, which have impeded the in-person or on-site review of Corellium's products and source code." *Id.*, at 2.

## II.   Corellium's On-Premises Server and the Source Code Computer

### a.   Source Code Computer

In that regard, Corellium enabled a dedicated source code computer, hosted at Corellium's Boynton Beach, Florida office, whereby Apple could log in remotely to view and study Corellium's source code. *See* Discovery Stipulation, Section II. Corellium also sent Apple three laptop computers that were specifically set up to remotely access the source code computer, and do nothing else. *Id.*, Section II(A); Declaration of Chris Wade ("Wade Decl."), attached hereto as **Exhibit 1**, at ¶15. Corellium was to "make the source code continuously available for Apple's remote review daily from 9:00 a.m. EST to 6:00 p.m. EST from the date of this Order is entered through April 20, 2020, including weekends." *Id.*, Section II(D); Wade Decl. at ¶18, 20 ("Because our source code is vital to our business, we must take extreme caution in protecting it when it is exposed to access over the Internet. As such, every day that Apple requires access to Corellium's source code, I must personally enable their access starting at 9:00 a.m. and disable their access at 6:00 p.m.").

All of these changes were made in an effort for Apple to have the continued opportunity to inspect Corellium's source code for discovery purposes before the end of the discovery deadline, April 20, 2020. Wade Decl. at ¶19 ("I spent approximately five business days setting up the source code machine and the laptops for Apple's review."). Moreover, Apple was also given the opportunity to continue its review of Corellium's source code after discovery cutoff on April 20, 2020. Discovery Stipulation, Section II(E). In order to receive access after April 20, 2020, Apple was to provide "24 hours' advance notice to Corellium" and "Corellium shall enable access at Apple's request." Apple continues to enjoy this privilege today, a year later, at a significant expense to Corellium.

The Discovery Stipulation also provides for Corellium to have visual monitoring of Apple's reviewer of Corellium's source code. Discovery Stipulation, Section II(G). Particularly, "Apple will provide Corellium's counsel with access to live remote video (but not audio) stream of all viewer(s) during their actual remote review of Corellium's source code." *Id*. Where "[t]he camera will be set up to show, to the extent possible, all persons in the room and/or viewing the monitor." *Id*. Lastly, to aid with discovery and trial, Apple was provided with the opportunity to "print source code [by] identifying to Corellium the source code file name and line numbers that it wished to have printed." *Id*.

As it is, Apple now provides 24-hour notice to Corellium of a window of several hours anytime Apple wants to review source code. Either a Corellium employee or attorney must then remain available and logged into Zoom for the window Apple has proposed that it may log on to review the source code so that Corellium can monitor Apple's reviewer. *See*, Wade Decl. ¶24. Also, technical issues frequently arise, either with the source code computer on Corellium's end or the remote log in settings on Apple's end. *See*, Wade Decl., ¶¶10, 21 ("Apple has regularly

experienced issues in accessing the source code server. Whenever Apple encounters issues, I must take time away from my duties as CTO in order to assist them in troubleshooting their issues accessing the source code."). When this happens, Apple asks Corellium to troubleshoot and locate the problem and then also to propose solutions to Apple to fix the problem so that Apple can resume its review—this happens whether the problem is on Corellium's end or Apple's. *Id.*, ¶21 ("I estimate that I have spent at least fifty hours troubleshooting Apple's issues accessing the source code machine."). Frequently, a member of Corellium must drive into the office and/or spend time troubleshooting the issue and then work to get the system back up and running. *See*, Wade Decl., ¶¶ 9, 10.

Corellium remains a small start-up company that has survived defending itself against one of the largest companies in the world, while also trying to remain profitable to keep employed the few individuals who work for it. This has been no small feat. To continue to also be forced to use its scarce resources to facilitate and enable *Apple's* trial preparations, *more than a year* after the close of discovery, is simply inequitable.

        b.  <u>Corellium's On-Premises Server</u>

Corellium sells two versions of its CORSEC Product—1) the Cloud version, whereby users can access the product remotely over the cloud, and 2) the On-Premises version, whereby a dedicated server is installed at the user's physical location (the premises) and the user's access stems directly from that server.

During discovery, the Court ordered Corellium "to provide the on-site [Corellium Apple Product] for *discovery purposes* to Apple so that Apple's expert can view and evaluate it fully outside the presence of Corellium and its counsel." Omnibus Order, ECF 249 ¶ 3.d (emphasis added). The purpose of the Discovery Stipulation was for "Apple [to] receive[] the *equivalent of*

*the discovery* into the on-premises version of the CAP" in light of the restrictions encountered by the COVID-19 pandemic. Discovery Stipulation, at 3 (emphasis added). As such, with the discovery deadline expiring on April 20, 2020, Corellium was to provide "Apple with credentials that enable Apple's expert witness and its counsel to remotely access from their own chosen computers a *dedicated server* onto which Corellium has installed the complete on-premises version of the CAP [(Corellium Apple Product)]," no later than April 3, 2020. *Id.*, at Section I(B) (emphasis added). Moreover, "Corellium [was] to cooperate and ensure that the remote access system [was] functioning properly and that the on-premises version of the CAP is fully operational and working properly" and "shall take reasonable steps to ensure that it remains fully functional for Apple's use and review." *Id.*, Section I(D).

In addition, Corellium was to "maintain and ensure Apple's continuous remote access to the on-premises version of the CAP at least through the filing of Reply briefs in connection with dispositive and Daubert motions," due on June 2, 2020 (43 days after the discovery deadline). *Id.*, Section I(G) Corellium agreed to this timeline in light of the trial date set for October 2020. Additionally, the Discovery Stipulation "ordered" Corellium to "resume[] remote access to the on-premises version of the CAP [] within 48 hours of [Apple's] request." *Id*.

Accordingly, Corellium set up a server at its office and dedicated it for Apple's use as an "On-Premises" product, just as if it was set up at a customer's physical location. *See*, Wade Decl., ¶5-9, 12. ("Three Corellium employees spent approximately two business days setting up this server for Apple."). The On-Premises servers are large, expensive, and limited in quantity. *Id.*, ¶7. Given the limited number of these servers, by having one dedicated to providing Apple with remote access for approximately a year, Corellium is precluded from selling this server to a customer (a

significant loss of income) or otherwise using it for other business purposes. *Id.*, ¶7. Corellium is also bearing the operating costs for running the server and keeping it online. *Id.*, ¶8.

Again, for Corellium to continue to use its scarce resources to facilitate and enable *Apple's* ongoing trial preparations, more than a year after the close of discovery, is highly prejudicial and inequitable.

### III. Access to Corellium's Source Code and On-Premises Version After Discovery Deadline

As it relates to the source code computer, on February 5, 2021, nearly a year after discovery closed, Apple again requested access to Corellium's source code "starting at 9am ET on Monday, February 8." A true and correct copy of Apple's counsel's email to Corellium's counsel dated February 5, 2021, is attached hereto as **Exhibit 2**. Beginning February 8, 2021, Corellium made remote access to Corellium's source code available to Apple. *See* Wade Decl., ¶13. Each time Apple requests access, Corellium has to dedicate a lawyer or employee to monitor the Zoom link for the window Apple has proposed.  Sometimes Apple logs on, sometimes, it does not.  For example, in the most recent week, Apple informed that it "plan[ned] to review Corellium's source code" every weekday, from 9:00am through 6:00pm, Monday—Friday, April 19-23, 2021. *See* **Composite Exhibit 3**.  However, Apple only reviewed collectively for three hours for the entire week. *See*, **Exhibit 4**.  Either a Corellium employee or lawyer had to standby on Zoom to monitor, in case an Apple reviewer logged back into the review session.[1]

Moreover, each time Apple encounters a technical issue, it calls on Corellium to immediately troubleshoot and resolve the issue.  Corellium continues to provide access and

---

[1] Notably, after Corellium requested, Apple has provided one-hour notice of when it would begin its review, however, that is typically between 9:00 and 10:00am.

immediate technical support, but the purpose of the stipulations have long served their purpose and discovery has now been closed for over a year. This ongoing access is a significant burden on Corellium's resources, including human, time, legal, and physical resources. Apple has had sufficient time to review the code, and there is simply no justification for Apple to require Corellium to continue expending valuable and scarce resources facilitating and shouldering Apple's trial preparations as it relates to the source code. This is particularly true given that the Court already has dismissed Apple's claim of copyright infringement in this case, so there is no colorable claim that Apple needs access to any of Corellium's source code for that purpose.

As it relates to the On-Premises Product, Apple retains access to the On-Premises server that has been set up and dedicated just for Apple. Apple has enjoyed this privilege, along with Corellium's immediate troubleshooting services at Apple's every request, since prior to the close of discovery, over a year ago. Despite this, Apple has requested access "through at least the completion of the currently scheduled trial in May 2021." *See*, **Exhibit 5**. Now, the trial date has been continued to July 6, 2021. There is similarly no justification that Corellium continue to shoulder the burden of Apple's trial preparations, especially at such an expense.

## MEMORANDUM OF LAW

### I. Legal Standard

FRCP 26(c) empowers the Court to enter a protective order to prevent discovery that would unduly burden, embarrass or oppress a party by "forbidding the disclosure or discovery" or "forbidding inquiry into certain matters." Fed. R. Civ. P. 26(c)(1). The party seeking a protective order must demonstrate "'good cause' for the protection sought." *Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.*, 593 F.Supp.2d 1273, 1277 (S.D. Fla. 2008). In other words, there must be a "sound basis or legitimate need to take judicial action." *See, e.g.*, *In re Alexander Grant &*

*Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1985).  A district court has "broad discretion when fashioning protective orders." *Id*. at 357.

### II. Apple's Ongoing Review of Corellium's Source Code Is Harassing and Unduly Burdensome

Corellium is seeking a protective order from Apple's continuous and ongoing review of Corellium's source code now that it has been over a year since discovery closed in this case, and the Parties are currently preparing for trial.  Apple has had access to Corellium's protected source code[2] for over 50 days since prior to the April 20, 2020 close of discovery and continues to have access to review that code. Apple already has had over a year to study the source code and prepare for trial.

Under the current Discovery Stipulation, Corellium must have a person available on Zoom at Apple's request to conduct the visual monitoring of Apple's review of Corellium's source code. *See*, Discovery Stipulation, Section II(G).  Additionally, there have been many days where Apple has requested access to source code but did not review the source code for that day or at least for the time window proposed, despite Corellium having to ensure that an employee or attorney remains available or logged into the Zoom just in case an Apple reviewer ultimately logs into the computer.  Other times, Apple will review Corellium's source code for a small number of minutes (*i.e.*, 15 minutes) despite having noticed a large block of hours to be reserved for review. In those instances, a Corellium lawyer or employee must remain logged into Zoom, in case the Apple reviewer decides to come back online later that day.  This pattern of review has burdened Corellium as it has had to allocate its employees or lawyers to monitor Apple's review of

---

[2] *See Drone Techs, Inc. v. Parrot S.A.*, 838 F.3d 1283, 1300 n. 13 (Fed. Cir. 2016) ("it is well recognized among the lower courts that source code requires additional protections to prevent improper disclosure because it is often a company's most sensitive and most valuable property.").

Corellium's source code instead of conducting business or other legal work, including its own trial preparation. Wade Decl., ¶ 23.

Apple's continuous and ongoing review, at this point, is harassing and highly burdensome for Corellium, and is consuming Corellium's resources as the matter approaches trial. Even if harassment is not Apple's intent, such is the prejudicial effect it is having on Corellium. This Court has the authority to protect against discovery that unfairly burdens a party with undue expense, ongoing harassment, and prejudice. "[T]his Court's inherent authority to control discovery extends to prohibiting unduly burdensome or harassing discovery practices." *Peter Letterese and Associates, Inc. v. World Institute of Scientology Enterprises, Inc.*, 2005 WL 8167097, at *2 (S.D. Fla. May 26, 2005). "Therefore, this Court has the authority to preclude [continuous and cumulative] discovery which is not relevant to the issues in this case and which serves only to harass or burden a party." *Id*.

Discovery access to Corellium's source code was never intended to be unlimited or open-ended. Had COVID not occurred, Apple would have had 1) more restrictions, and 2) less time to review Corellium's source code. Consequently, any continuing review of Corellium's source code is simply inequitable, and more importantly, harassing and highly burdening to Corellium. Apple was given access to Corellium's source code as required for discovery, and even after discovery, and Apple has taken advantage of such remote access. Now, more than one year after discovery closed, it is simply inequitable to force Corellium to continue enabling Apple's trial preparations at such a great expense and burden. Accordingly, this Court should vacate the Discovery Stipulation in connection with Apple's access to Corellium's source code and grant Corellium's Protective Order to cease further access by Apple to the Corellium Product source code.

### III. Apple's Continuous and Ongoing Access to Corellium's Server and Source Code is Harassing and Unduly Burdensome to Corellium.

As stated, in light of COVID-19 restrictions, the Parties entered into the Discovery Stipulation to provide Apple's access to review its On-Premises Product remotely instead of providing inspection at Corellium's office in Florida. Discovery Stipulation, Section I. As the name of the stipulation provides, this stipulation was to aid Apple to have access to the On-Premises Product during discovery and for discovery purposes. Discovery Stipulation, at 3. In fact, pursuant to the Discovery Stipulation, Corellium has given Apple access to the On-Premises version long beyond the expiration of discovery. *See Id.*, Section I(G) (Corellium was to "maintain and ensure Apple's continuous remote access to the on-premises version of the CAP at least through the filing of Reply briefs in connection with dispositive and Daubert motions," due on June 2, 2020). In order for Corellium to provide remote access to its On-Premises Product to Apple, Corellium has had to divert use of one of its expensive and limited servers and dedicate it completely for Apple's use. Wade Decl., ¶ 7. Corellium further has to engage in significant troubleshooting issues when Apple experiences technical issues with the On-Premises Products which takes time away from business operations and preparations of its own trial positions. Wade Decl., ¶ 10 ("I estimate that I have spent approximately forty hours troubleshooting issues with this server thus far.").

It is now approaching May 2021, and Apple still exploits its access to the On-Premises Product, at significant expense to Corellium. Due to the pandemic, the trial schedule has been continued six times. ECF No. 898. Now, Apple intends to continuously have access to Corellium's On-Premises Product until trial, which is highly inequitable to Corellium. Such is not a burden that Corellium should be forced to support indefinitely in order to facilitate Apple's trial preparations.

Accordingly, this Court should vacate the Discovery Stipulation in relation to Apple's access to Corellium's On-Premises Product and grant Corellium's Protective Order to cease any further access to its On-Premises Product.

**IV.   Apple Will Incur No Prejudice from the Requested Protective Order.**

Finally, Apple will not be prejudiced from the grant of this Protective Order. Apple has had unfettered access to the Corellium source code through Corellium's server for more than one year. Apple's expert rendered his opinions long ago and extensively cited to Corellium's code in his reports. Further, as noted above, Apple no longer has the same need for access as it did when the parties agreed to the Discovery Stipulation, inasmuch as the Court has granted summary judgment against Apple's claim of copyright infringement. As such, Apple no longer needs access to the source code with respect to any allegations relating to infringement; and any discovery relating to the remaining DMCA claims should long ago have been completed.

Moreover, even after the grant of the requested Protective Order, Apple will still retain access to the On-Cloud version of the product as that is accessible over the internet and does not require a dedicated server. The On-Cloud version, for all intents and purposes of the DMCA claim, it materially the same as the On-Premises version. *See* Wade Decl., at 14.

Thus, Apple will not be unduly prejudiced by the grant of the requested Protective Order, and any theoretical inconvenience to Apple is far outweighed by the actual burden and expense suffered by Corellium.

**V.   Conclusion**

**WHEREFORE**, for the foregoing reasons, Corellium, LLC respectfully requests that the Court issue a protective order vacating the Discovery Stipulation, and ceasing Corellium's obligations to provide ongoing access to Apple for the Source Code Computer and the remote On-

Premises version of the CORSEC Product that was set up to permit remote review because of COVID-19, and granting such other relief as the Court deems just and proper.

## LOCAL RULE 7.1(A)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel verifies that counsel for Defendant conferred via telephone and email with counsel for Plaintiff on April 23, 2021, and April 26, 2021, regarding the relief sought herein. Plaintiff opposes the Motion and the relief requested herein.

Dated: April 27, 2021                                  Respectfully submitted,

 

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant CORELLIUM, LLC*
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 612-3459
Facsimile (561) 683-8977
Primary e-mail: justin.levine@csklegal.com
Secondary e-mail: lizza.constantine@csklegal.com

By:  *s/ Justin B. Levine*
JONATHAN VINE
Florida Bar. No.: 10966
JUSTIN B. LEVINE
Florida Bar No.:  106463
LIZZA C. CONSTANTINE
Florida Bar No.:  1002945

*and*

HECHT PARTNERS LLP
*Counsel for Defendant*
125 Park Ave., 25th Floor
New York, NY 10017
Telephone (212) 851-6821
David Hecht, *Pro hac vice*
E-mail: dhecht@hechtpartnersllp.com

> Maxim Price, *Pro hac vice*
> E-mail: mprice@hechtpartnersllp.com
> Minyao Wang, *Pro hac vice*
> E-mail: mwang@hechtpartnersllp.com

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on April 27, 2021, the foregoing document was filed electronically with the Clerk of the Court using CM/ECF. It is also certified the foregoing document is being served on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or by some other authorized manner, or a combination thereof, so as to comply with the requirements of Local Rule 5.4 and other applicable rules and procedures.

## SERVICE LIST

Martin B. Goldberg
mgoldberg@lashgoldberg.com
rdiaz@lashgoldberg.com
Emily L. Pincow
epincow@lashgoldberg.com
gizquierdo@lashgoldberg.com
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL 33131

Kathryn Ruemmler (*pro hac vice*)
kathryn.ruemmler@lw.com
Sarang Vijay Damle (*pro hac vice*)
sy.damle@lw.com
Elana Nightingale Dawson (*pro hac vice*)
elana.nightingaledawson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004

Andrew M. Gass (*pro hac vice*)
andrew.gass@lw.com
LATHAM & WATKINS LLP

505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Jessica Stebbins Bina (*pro hac vice*)
jessica.stebbinsbina@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067

*Attorneys for Plaintiff,*
*Apple Inc.*