UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-cv-81160

APPLE INC.,

        Plaintiff,

v.

CORELLIUM, LLC,

        Defendant.

**PLAINTIFF APPLE INC.'S OPPOSITION TO
DEFENDANT CORELLIUM, LLC'S MOTION FOR PROTECTIVE ORDER**

Nearly a year after discovery closed, on March 12, 2021, Corellium produced to Apple supplemental source code including a ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Then, on March 26, 2021, Corellium produced ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ code that Corellium asserts relates to a trial "demonstrative." Yet, with trial just two months away, Corellium now seeks to deny Apple the ability to review or respond to either new production. Corellium also seeks to revoke Apple's access to its virtual on-premises product, which Apple agreed to allow Corellium to provide as a compromise, after the Court ordered Corellium to ship the underlying product to Apple. Contrary to Corellium's claims, Apple's access has not been excessive, and the burdens that Corellium now complains of are not "undue." Corellium agreed to assume the responsibilities of maintaining remote access to its product and source code in the parties' Stipulation, which the Court adopted. ECF No. 290 at 2–3. While Apple remains willing to confer with Corellium in good faith on ways to further reduce its burdens, Corellium rushed to file this motion, seeking the draconian and unreasonable remedy of completely cutting off Apple's access to its product two months before trial, and right after Corellium dumped an entire repository of new code on Apple. Corellium's motion should be denied.[1]

I.  **BACKGROUND.**

The Stipulation that Corellium now seeks to modify was the result of extensive litigation—and negotiation—last year, after Corellium repeatedly refused to allow access to its product as needed in discovery. Though Corellium styles its motion as one for a protective order, what Corellium actually asks this Court to do is to reconsider its prior orders and reverse the Court-adopted Stipulation Corellium freely entered into. *See generally* ECF Nos. 249, 290.

***On-Premises Product.*** As the Court will recall, Apple initially reviewed only Corellium's cloud-based CORSEC iOS product. However, in February 2020, Corellium made material

---

[1] In addition to the substantive merits, Corellium's motion should be denied because Corellium failed to confer in good faith with respect to this motion. When Corellium raised burden concerns, Apple told Corellium that it was willing to discuss ways to limit source code access. Rather than propose such means, or confer further, Corellium filed this motion. Court intervention is not only unjustified, it is unnecessary. *See* Local Rule 7.1(a)(3) (failure to confer grounds for denial); *cf.* ECF No. 34 ¶ 1 (emphasizing significance of parties' conferral efforts in resolving disputes).

Apple additionally notes that Corellium's 14-page motion grossly exceeds this Court's 5-page limit. *See* ECF No. 34 (Order Setting Discovery Procedure) ¶ 2. Failure to comply with the Court's discovery procedures constitutes another independent ground for denying this motion. *Id.*

changes to that cloud product, including in how the product accessed Apple's copyrighted works, iOS. *See* ECF No. 212 at 24:1–25:25. As a result of those changes, Apple could no longer access the initial version of Corellium's product—the one in existence at the time this action was filed—without access to Corellium's "on-premises" product, which still operated in the original way. The Court therefore ordered Corellium to give Apple access to Corellium's on-premises product. ECF No. 211 at 2. However, Corellium did not give Apple meaningful access. Rather, Corellium limited Apple's access to only 3.5 hours, and only in the presence of Corellium's counsel. *See* ECF No. 239 (Decl. of Dr. Jason Nieh) ¶¶ 32–34, 51. As a result, Apple's expert was not able to meaningfully analyze Corellium's on-premises product. *Id.* ¶ 51. In a comprehensive, omnibus Order, this Court agreed that the access Corellium provided to its on-premises product "was unnecessarily restricted by Corellium and its counsel." ECF No. 249 at 7. The Court accordingly ordered Corellium to *ship* Apple its own version of the on-premises product "rather than host the [Corellium Apple Product] at Corellium for Apple's expert's inspection." *Id.* at 7–8.

Rather than comply with the Court's Order, Corellium sought further relief, arguing that shipping the on-premises product was unduly burdensome. ECF No. 255 at 6, 10–13; ECF No. 290 at 2–3. In the interest of compromise—and to avoid the need for further Court intervention—Apple agreed to access Corellium's on-premises product remotely in order to "alleviat[e] the alleged burden on Corellium while also ensuring that Apple receives the equivalent of the discovery into the on-premises version of the CAP required by" the Court's Order. ECF No. 290 at 2–3. Pursuant to that Stipulation, once discovery closed, Corellium had an obligation to "resume[] remote access to the on-premises version of the CAP for a reason(s) directly related to this litigation" upon Apple's written request. *Id.* at 5–6. As contemplated by the Stipulation, Apple has since accessed Corellium's product remotely, without need for Corellium's ongoing management. *See* Ex. A (E. Nightingale Dawson Decl.) ¶¶ 3, 8. Corellium is burdened only in the way the Stipulation expressly contemplates: because Corellium chose to make the product available remotely, rather than simply ship the product *to* Apple as ordered, Corellium must ensure the product remains accessible. *See* ECF No. 290 at 5 ("Corellium shall take reasonable steps to ensure that [the remote on-premises product] remains fully functional for Apple's use and review."); *see also* Ex. A ¶ 8.

**Source Code.** Access to Corellium's source code was also heavily litigated between the parties. Corellium initially refused to provide its full code, instead providing incomprehensible

2

excerpts with entire sections removed for "relevance" by Corellium principal Chris Wade. *See* ECF No. 239 ¶¶ 24–27. Only after multiple hearings before the Court, and only after the Court ordered Corellium to provide full access to its hypervisor in its omnibus Order, ECF No. 249 at 4–9, did Corellium finally agree to provide access to its source code. Then, to comply with the Order and in light of the unique circumstances of COVID-19, Corellium stipulated to provide Apple with remote access to its source code. ECF No. 290 at 7–10. Importantly, anticipating that Corellium's code might change over the course of the case, ███████████████████████████████ █, Corellium agreed up front that such access would continue *after* discovery. *See id.* at 8. Specifically, Corellium agreed that, "after April 21, 2020, Corellium shall enable access at Apple's request" as long as Apple "provide[s] 24 hours' advance notice." *Id.*

As noted above, on March 12, 2021—after Apple repeatedly requested Corellium supplement its discovery as required by Rule 26—Corellium produced ████████████ to its source code. Ex. A ¶¶ 4–6.[2] These changes reflected, among other things, ████████ ████████████████████████████████████████████████████████████████████████ ███. Two weeks later, on March 26, 2021, Corellium dumped yet another version of source code onto Apple. This version, which Corellium dubs "████████," contains changes that Corellium says it "intends to use as a demonstrative aid at trial." Ex. B (D. Hecht email) at 2. Although characterized by Corellium as merely a "small update," these changes amount to ██ ████████████████████████████████████████████████. Ex. A ¶ 6. The new source code ████████████████████████████████ has never before disclosed to Apple. *Id.* It is not mentioned in any of Corellium's discovery responses, it is not listed in Corellium's release notes or other produced materials, it has never been discussed in any of Corellium's expert reports, and it does not appear operational in the only live product to which Apple has access. *Id.*

Consistent with the parties' Stipulation, Apple has reviewed this newly produced source code to prepare for trial and motion practice. Ex. A ¶ 7. At Corellium's request, Apple gives not only the required 24 hours' notice, but also a one-hour notice, so that Corellium need not waste resources monitoring when a review is not taking place. *Id.* Contrary to Corellium's claims, Apple's review has not been excessive. Rather, Apple and its experts have reviewed Corellium's source code on only 20 days between the close of discovery last April and the present. *Id.*

---

[2] Seemingly in response to Apple's request for supplementation, Corellium recently demanded, and Apple provided, access to Apple's source code machines. Ex. C (D. Hecht email).

Moreover, Apple has repeatedly told Corellium that it is more than willing to discuss further means by which Apple's review could be limited to reduce any ongoing burden on Corellium. *Id.* ¶ 11. But instead of conferring in good faith, Corellium rushed to file its motion with the Court.

## II. CORELLIUM FAILS TO SHOW CAUSE FOR ITS REQUESTED REMEDY.

Though styled as a motion for a protective order, Corellium's motion is actually a motion for reconsideration of the Court's omnibus Order, ECF No. 249, as well as the parties' prior Stipulation, ECF No. 290. Corellium has not come close to meeting the legal requirements for reconsideration, as it offers no new law or new facts that were not clearly contemplated by the parties last spring, nor has it established "manifest injustice." *State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*, No. 18-cv-23125, 2020 WL 4586399, at *1 (S.D. Fla. Aug. 10, 2020). Nor has Corellium demonstrated the "good cause" required for a protective order. *See Wrangen v. Pa. Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1277 (S.D. Fla. 2008) ("good cause" is "a sound basis or legitimate need to take judicial action") (internal quotation omitted).

To the contrary, Corellium's burdens under the Stipulation are minimal and of Corellium's own making. With respect to the remote on-premises product, Corellium could have avoided all of the burdens it now complains of by simply shipping Apple its own on-premises product, as the Court originally ordered. ECF No. 249 at 7–8. The "hardships" of which Corellium now complains—turning the machine back on after a power failure, adding an occasional new IP address, and setting up the machine once initially and again after a 10-month break, *see* ECF 909-1 ¶¶ 9–10, 12—are minimal, and are no more than the responsibilities Corellium expressly agreed to last spring, when it offered remote access as a means to avoid complying with the Court's Order:

- "Corellium shall take reasonable steps to ensure that it remains fully functional for Apple's use and review";
- Corellium "shall provide reasonable tech support for hardware, connectivity, and other aspects of the on-premises CAP that are within Corellium's (and not Apple's or its representatives') control, to ensure that effective remote access remains available to Apple."

ECF No. 290 at 5.

Similarly, with respect to the remote source code review, Apple's requests for access on 20 days over the past year are not unduly burdensome. Ex. A ¶ 7. Apple did not access the source code *at all* for more than 10 months, and its renewed access was warranted by Corellium's production of ▬▬▬▬▬▬▬▬ code in mid and late March and Apple's need to prepare for

4

trial. *Id.* And while Corellium disingenuously suggests that Apple is harassing Corellium by providing notice for source code review and not showing up, ECF No. 909 at 10–11, Corellium is well-aware that Apple was often prevented from conducting source code review due to connection errors that typically took Corellium days to fix. *See, e.g.*, Ex. D (email exchange between Apple and Corellium counsel).

All of the "burdens" now alleged by Corellium fall within Corellium's contemplated and expressly agreed-upon duties under the Stipulation, and do not come close to establishing "good cause" to modify it, as any alleged burden to Corellium is outweighed by Apple's compelling interest in being able to review Corellium's changes to its code and prepare for trial.

### III.    THE BALANCING OF INTERESTS FAVORS CONTINUING ACCESS.

Indeed, not only has Corellium wholly failed to justify its demanded changes, the balance of the interests here overwhelmingly favors Apple. In addition to the extensive updates Corellium made to its ordinary code, the March 26, 2021 " ▉▉▉▉▉▉ " ▉▉▉▉▉▉▉▉▉▉▉▉▉ that has never been disclosed to Apple, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉, and may require Apple to file its own motion *in limine*. In any event, given the voluminous nature of Corellium's ▉▉▉▉▉▉▉, cutting off all access would severely prejudice Apple's ability to fully and fairly prepare for trial. *See Juniper Networks, Inc. v. Bahattab,* No. 07-cv-1771, 2008 WL 11403235, at *3 (D.D.C. Nov. 12, 2008) (ordering "24-hour access" to source code "until the conclusion of trial" because of "the volume of information to be analyzed").

Apple also needs continuing access to the on-premises product to prepare trial demonstratives that will illustrate the circumvention operations at the heart of Apple's DMCA claims. Corellium has already stipulated, and the Court has already ordered, that access to the on-premises product must be resumed for litigation-related reasons such as this. ECF 290 at 3–7. Access to the cloud product is not enough. Even if the cloud product may *function* "materially the same" as the on-premises version (as Corellium admits), ECF No. 909 at 13, aspects of the real-time circumvention operations ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. That is because the acts of circumvention that Apple alleges in this case ▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Ex. A ¶ 9.

### IV.    CONCLUSION

For the foregoing reasons, the Court should deny Corellium's Motion for Protective Order.

Dated: May 4, 2021

Michele D. Johnson*
*michele.johnson@lw.com*
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
(714) 540-1235 / (714) 755-8290 Fax

Sarang Vijay Damle*
*sy.damle@lw.com*
Elana Nightingale Dawson*
*elana.nightingaledawson@lw.com*
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200 / (202) 637-2201 Fax

Andrew M. Gass*
*andrew.gass@lw.com*
Joseph R. Wetzel*
*joe.wetzel@lw.com*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 / (415) 395-8095 Fax

Jessica Stebbins Bina*
*jessica.stebbinsbina@lw.com*
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500 / (424) 653-5501 Fax

Gabriel S. Gross*
*gabe.gross@lw.com*
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 463-2628 / (650) 463-2600 Fax

**Admitted pro hac vice*

Respectfully Submitted,

*s/ Martin B. Goldberg*

Martin B. Goldberg
Florida Bar No. 0827029
*mgoldberg@lashgoldberg.com*
*rdiaz@lashgoldberg.com*
Emily L. Pincow
Florida Bar. No. 1010370
*epincow@lashgoldberg.com*
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL 33131
(305) 347-4040 / (305) 347-4050 Fax

*Attorneys for Plaintiff* APPLE INC.

6