EXHIBIT  A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO: 9:19-cv-81160-RS**

APPLE INC.,

      Plaintiff,

v.

CORELLIUM, LLC,

      Defendant.

_____/

**CORELLIUM, LLC'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT AND**
**<u>INCORPORATED MEMORANDUM OF LAW</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..............................................................................................ii

SUMMARY OF ARGUMENT ......................................................................................... 1

ARGUMENT AND MEMORANDUM OF LAW ............................................................ 2

I.      Summary Judgment Should Be Granted Upon Apple's Section 1201(b) DMCA Claim Because Apple Has No "Right" to Protect Against Corellium's Fair Use. ....................... 2

      A.      Apple's Copyright Rights are Expressly Limited by Fair Use. ............................ 2

      B.      The Reach of Section 1201(b) is Co-extensive With the Rights of a Copyright Owner, and Therefore is Subject to a Defendant's Fair Use. ................................ 5

II.     This Case Presents A Unique Question That Should Be Decided For Corellium. ............. 7

CONCLUSION............................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*321 Studios v. Metro Goldwyn Mayer Studios, Inc.*,
   307 F. Supp. 2d 1085 (N.D. Cal. 2004) ...........................................................................9

*Bateman v. Mnemonics, Inc.*,
   79 F.3d 1532 (11th Cir. 1996) ........................................................................................4

*Cambridge Univ. Press v. Patton*,
   769 F. 3d 1232 (11th Cir. 2014) .....................................................................................3

*Chamberlain Grp. v. Skylink Tech., Inc.*,
   381 F. 3d 1178 (Fed. Cir. 2004)......................................................................................8

*Darrisaw v. Pennsylvania Higher Educ. Assistance Agency*,
   949 F.3d 1302 (11th Cir. 2020) ......................................................................................9

*Fox Film Corp. v. Doyal*,
   286 U.S. 123 (1932)........................................................................................................3

*Google LLC v. Oracle America, Inc.*,
   593 U.S. ___, 141 S. Ct.  1183 (2021)...........................................................................3

*Kirtsaeng v. John Wiley & Sons*,
   568 U.S. 519 (2013)....................................................................................................3. 10

*Lenz v. Universal Music Corp.*,
   815 F.3d 1145 (9th Cir. 2016) ........................................................................................4

*Lexmark Intern. v. Static Control Components*,
   387 F. 3d 522 (6th Cir. 2004) ...................................................................................10, 11

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
   629 F.3d 928 (9th Cir. 2010) ...................................................................................6, 7, 8

*RealNetworks, Inc. v. DVD Copy Control Ass'n*,
   641 F. Supp. 2d 913  (N.D. Cal. 2009) ...........................................................................9

*Sega Enters. Ltd. v. Accolade, Inc.*,
   977 F. 2d 1510 (9th Cir.1992) ......................................................................................10

*Silvers v. Sony Pictures Entm't, Inc.*,
   402 F. 3d 881 (9th Cir. 2005) .......................................................................................10

*Sony Comput. Entm't, Inc. v. Connectix Corp.*,
   203 F.3d 596 (9th Cir. 2000) ........................................................................................10

*Suntrust Bank v Houghton Mifflin Co.*,
  268 F.3d 1257 (11th Cir. 2001) ......................................................................4

*Troll Co. v. Uneeda Doll Co.*,
  483 F. 3d 150 (2d Cir. 2007)..........................................................................10

*United States v. Elcom Ltd.*,
  203 F. Supp. 2d 1111 (N.D. Cal. 2002) ..........................................................9

*Universal City Studios, Inc. v. Corley*,
  273 F. 3d 429 (2d Cir. 2001).......................................................................8, 9

**Statutes**

U.S. Const. amend. I  ........................................................................................8

U.S. Const. art. I, § 8. ......................................................................................8

17 U.S.C. § 104A ............................................................................................10

17 U.S.C. § 106 ..............................................................................1, 2, 3, 6, 7

17 U.S.C. § 106(1)-(6) .................................................................................3, 5

17 U.S.C. § 106(3) ............................................................................................3

17 U.S.C. § 107 ................................................................................................3

17 U.S.C. § 108 ................................................................................................3

17 U.S.C. § 108(f)(4) ........................................................................................4

17 U.S.C. § 109 ................................................................................................3

17 U.S.C. § 512 ................................................................................................4

17 U.S.C. § 602(a)(1) ........................................................................................3

17 U.S.C. § 1201 ....................................................................................7, 8, 11

17 U.S.C. § 1201(a) ..........................................................................................7

17 U.S.C. § 1201(a)(2) ..................................................................................6, 8

17 U.S.C. § 1201(a)(3) ......................................................................................8

17 U.S.C. § 1201(b) ................................................................................. passim

17 U.S.C. § 1201(b)(1) ..................................................................6, 8, 10, 11

iii

17 U.S.C. § 1201(b)(1)(A)-(C) ...................................................................................1, 2, 5, 10

**Rules**

Federal Rules of Civil Procedure 56 .........................................................................1

S.D. Fla. L.R. 56.1 ....................................................................................................1

**Legislative History**

S. Rep. 105-190 (1998)............................................................................................10

H.R. Rep. 105-551 Pt. 1 (1998) ................................................................................5

H.R. Rep. 105-551, Pt. 2 (1998) ..........................................................................6, 11

**Other Authorities**

Pierre N. Leval, *Toward  a Fair Use Standard*, 103 Harv. L. Rev.  1105 (1990) .......................5

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and S.D. Fla. L.R. 56.1, Defendant Corellium, LLC ("Corellium") hereby moves for Partial Summary Judgment (the "Motion") on Apple's claim against Corellium under Section 1201(b) of the Digital Millennium Copyright Act of 1998 ("DMCA"), 17 U.S.C. § 1201(b).

## SUMMARY OF ARGUMENT

This Motion presents the Court with a single, straightforward question of law:  Where the Court has determined that the use of iOS in the Corellium Product is a fair use, and Apple therefore cannot assert a "right of a copyright owner" in a work against either Corellium or any user of the Corellium, can Apple state a claim against Corellium for a violation of section 1201(b)?

The Court has already held that the use of iOS in connection with the Corellium Product (the allegedly circumventing technology) is a fair use.  *See* Corellium's Statement of Material Fact ("SOMF") at 1.  Apple therefore cannot assert any of its exclusive rights under 17 U.S.C. § 106 against any use of the Corellium Product, whether by Corellium or any of its licensees, because those are all fair uses.  Section 1201(b) applies only where the allegedly-circumvented technological measure "protects a right of a copyright owner under this title in a work or a portion thereof."  17 U.S.C. § 1201(b)(1)(A)-(C).  Where Apple has no "right of a copyright owner" to protect against any use of iOS within the Corellium Product, section 1201(b) by its terms cannot apply. Therefore, as a pure issue of statutory interpretation, Apple cannot assert section 1201(b) against Corellium.

No facts need to be determined by the Court before ruling on this Motion.  The question turns solely on the impact of this Court's holding of fair use by the Corellium Product under the plain language of section 1201(b).  This question has not previously been at issue in any prior case under section 1201(b) – those courts addressing related issues concerning the relationship of section 1201 to fair use generally have done so on very different facts, and have reached opposing

1

or inconclusive decisions.  For the reasons set forth below, this Court should grant partial summary judgment to Corellium against Apple's section 1201(b) claim.

<b>ARGUMENT AND LEGAL MEMORANDUM</b>

**I.      Summary Judgment Should Be Granted Upon Apple's Section 1201(b) DMCA Claim Because Apple Has No "Right" to Protect Against Corellium's Fair Use.**

When granting partial summary judgment to Corellium, the Court found that Corellium develops and distributes software to "provide an environment in which technology security researchers can conduct research" on Apple's iOS.  SOMF at 1.  This Court therefore held that "Corellium's use of iOS constitutes fair use…." *Id.*  The Court found that users engage in the same transformational and fair uses as Corellium:  "[t]he Corellium Product makes available significant information about iOS, permitting users to, *inter alia*: (1) see and halt running processes; (2) modify the kernel; (3) use CoreTrace, a tool to view system calls; (4) use an app browser and a file browser; and (5) take live snapshots. These features are beneficial to security research."  SOMF at 3.  Because Corellium provides its product to its licensees only in a standalone server implementation or via the cloud, all Corellium's licensees can only use the Corellium Product in the same manner – for the same fair uses "in which technology security researchers can conduct research."  SOMF at 1.

A fair use determination extends to all rights under section 106, including the rights to distribute, reproduce, create derivative works, and publicly display.  In light of the Court's fair use holding, Apple has no right to exclude Corellium or its users from making fair use of iOS by preventing Corellium from distributing its Corellium Product software.  As a result, Apple cannot satisfy the requirement in subsections 1201(b)(1)(A)-(C) that the technological measure must "protect[] a right of a copyright owner."  Where Apple can assert no right under copyright law against Corellium or its licensees, Apple cannot assert section 1201(b) either.

**A.      Apple's Copyright Rights are Expressly Limited by Fair Use.**

2

The Copyright Act provides copyright owners a bundle of exclusive rights – *i.e.*, "the right to exclude others from using his property" – to perform or authorize the performance of the specific acts set forth in section 106(1)-(6).  *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932).  *See Cambridge Univ. Press v. Patton*, 769 F. 3d 1232, 1256 (11th Cir. 2014).  However, a copyright owner's statutorily-defined rights are also statutorily limited, including by fair use.  "[A] copyright holder cannot prevent another person from making a 'fair use' of copyrighted material."  *Google LLC v. Oracle America, Inc.*, 593 U.S. ___, ___, 141 S. Ct. 1183, 1196 (2021).  Fair use "can carry out its basic purpose of providing a context-based check that can help to keep a copyright monopoly within its lawful bounds."  *Id*. at 1198 (citations omitted).  Accordingly, "exclusive rights in computer programs are limited like any other works" *Id.* at 1199.

One need look no further than the first words of section 106 – "Subject to sections 107 through 122" – to see how fair use cabins a copyright owner's rights.[1]  Section 107 characterizes fair uses as "[l]imitations" on the copyright owner's rights, and emphasizes that fair use inheres "*[n]otwithstanding* the provisions of section[] 106…."  17 U.S.C. § 107 (emphasis added).  When adopting the separate section 108 limitation to the section 106(3) reproduction right for the benefit of libraries and archives, the Copyright Act goes so far as to define fair use as a substantive *right* belonging to the public and beyond the reach of a copyright owner:  "Nothing in this section in any way affects the *right of fair use* as provided by section 107…."  17 U.S.C. § 108(f)(4) (emphasis added).

---

[1] *See Kirtsaeng v. John Wiley & Sons*, 568 U.S. 519, 523 (2013) (noting that the section 106 rights "are qualified, however, by the application of various limitations set forth in the next several sections of the Act, §§ 107-122"; and holding that the section 602(a)(1) right to prevent unauthorized importation is "subject to" the first sale limitation of section 109).

The Eleventh Circuit has applied fair use as limiting the exclusive rights of an author, and has declared that section 106 grants the copyright owner no right to protect against fair uses of a work:

> Until codification of the fair-use doctrine in the 1976 Act, fair use was a judge-made right developed to preserve the constitutionality of copyright legislation by protecting First Amendment values. Had fair use not been recognized as a right under the 1976 Act, the statutory abandonment of publication as a condition of copyright that had existed for over 200 years would have jeopardized the constitutionality of the new Act because there would be no statutory guarantee that new ideas, or new expressions of old ideas, would be accessible to the public. … Therefore, within the limits of the fair-use test, any use of a copyright is permitted to fulfill one of the important purposes listed in the statute."

*Suntrust Bank v Houghton Mifflin Co.*, 268 F. 3d 1257, 1264 (11th Cir. 2001) (footnote omitted); *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1542 & n.22 (11th Cir. 1996) (Birch, J. stating his personal view that, although fair use may arise procedurally as an affirmative defense, "it is logical to view fair use as a right").  The Ninth Circuit, citing *Bateman*, agreed:  "Given that 17 U.S.C. § 107 expressly authorizes fair use, labeling it as an affirmative defense that excuses conduct is a misnomer."  *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1152-53 (9th Cir. 2016) (holding copyright owners must deliberately and in good faith "consider the existence of fair use" before asserting infringement via a takedown notice under 17 U.S.C. § 512).

Regardless of whether fair use is characterized as a public right or privilege, the text of the Copyright Act and this circuit's case law establish that fair use acts as a substantive limitation on the rights of a copyright owner.  "Like a proprietor of land or an owner of contract rights, the copyright owner may sue to protect what he owns, regardless of his motivation. His rights, however, extend only to the limits of the copyright. As fair use is not an infringement, he has no power over it."  Pierre N. Leval, *Toward a Fair Use Standard*, 103 Harv. L. Rev. 1105, 1128

(1990).  Thus, because section 106 is "subject to" section 107, the Copyright Act grants copyright owners no right to protect against any conduct deemed to be fair use.

    **B.**    **The Reach of Section 1201(b) is Co-extensive With the Rights of a Copyright Owner, and Therefore is Subject to a Defendant's Fair Use.**

Section 1201(b)(1) addresses the distribution of certain technologies or products that circumvent "a technological measure that effectively protects *a right of a copyright owner* under this title in a work or a portion thereof."  (Emphasis added).  *See also* § 1201(b)(1)(A)-(C). "Subsection (b) applies when . . . the copyright owner has put in place technological measures that effectively protect his or her right under Title 17 to control or limit further use of the copyrighted work."  H.R. Rep. No. 105-551 Pt. 1 at 19 (1998).  Thus, where the copyright owner cannot assert any "right" against technologies that make fair use of a work, section 1201(b) cannot apply.

The Corellium Product is an integrated whole, and this Court held that the Corellium Product in its entirety makes fair use of Apple's iOS.  Any alleged circumvention tools are incorporated within and inseparable from the Corellium Product system and are integral to the ability of the Corellium Product to enable such fair uses.  Apple has not alleged, nor could it allege, that Corellium designs, produces, or markets any circumvention tool that can be used outside of the Corellium Product or for any purpose other than to use the Corellium Product.  Those uses constitute fair use of iOS and only fair use of iOS.  Thus, the Court's fair use ruling applies equally to all uses of the Corellium Product, by both Corellium itself and its licensees.

Apple has no right as a copyright owner to "protect" its copyrighted work against the Corellium Product's fair use of iOS by Corellium or its licensees.  Accordingly, because Apple has no section 106 right to protect against fair use of iOS using the Corellium Product, Apple cannot assert a violation of section 1201(b) either.

This application of Section 1201(b) adheres closely to the plain meaning of the statute. First, Congress inserted the requirement that the technological measure must "protect a right of a copyright owner" as a core limitation on the types of distribution of circumvention technologies that would be actionable under section 1201(b).  Had Congress intended otherwise, it could have omitted that limitation, or included the same limitation as under section 1201(a)(2) (addressing access to "a work protected under this title").  This distinction is integral to the statutory scheme. Since copyright owners have no section 106 right to prohibit "access" to a copyrighted work, Congress wrote section 1201(a) to create a new right and to cover protections for the work itself, rather than the rights of a copyright owner.  *See* H.R. Rept. 105-551, Pt. 2 at 25-26 (1998); *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F. 3d 928, 944 (9th Cir. 2010) ("Historically speaking, preventing 'access' to a protected work in itself has not been a right of a copyright owner arising from the Copyright Act").  Therefore, Congress needed to insert into section 1201(a) a regulatory exemption process by which the Librarian of Congress could preserve fair use of copyrighted works.  *See* H.R. Rept. 105-551, Pt. 2, *supra* at 25-26.  No such safety valve was necessary for section 1201(b), which could rely directly on protection of a right of a copyright owner – *but only where such right exists*.

Second, the "right" of a copyright owner "under this title in a work" in section 1201(b) refers to a right provided under section 106.  "Section 1201(b)(1)'s prohibition is thus aimed at circumventions of measures that protect the copyright itself: it entitles copyright owners to protect their existing exclusive rights under the Copyright Act. Those exclusive rights are reproduction, distribution, public performance, public display, and creation of derivative works. 17 U.S.C. § 106."  *MDY v. Blizzard*, 629 F. 3d at 944 (finding no violation of § 1201(b)(1) where users violated

license covenant by continuing to copy code into RAM, but did not infringe).  Those rights are expressly limited by section 106 as "subject to sections 107-122."

Third, the phrase "in a work or a portion thereof" means that the right must relate to a "work," i.e., a right in something that is protectable by copyright.  "We read § 1201(b)(1)'s language — 'right of a copyright owner under this title' — to reinforce copyright owners' traditional exclusive rights under section 106 by granting them an additional cause of action against those who traffic in circumventing devices that facilitate infringement."  *MDY v. Blizzard*, 629 F. 3d at 945.  It does not refer to any new rights provided under the DMCA itself, as that would make the provision entirely circular (with reference to section 1201(b)) or duplicative or superfluous (with reference to section 1201(a)).

## II.     This Case Presents A Unique Question That Should Be Decided For Corellium.

The arguments presented in this Motion are unique to this case and should be considered anew by this Court.  The Court previously addressed a related question concerning the relationship between fair use and the DMCA, and considered opinions from other circuits that reached conflicting conclusions as to the nature of that relationship.  However, no court previously has been presented with the precise factual circumstances or statutory interpretation argument Corellium presents here.  Those cases generally concerned standalone technologies whose sole or central function was circumvention, and where that circumvention clearly could facilitate either fair use or for infringing purposes.  Here, this Court's finding of fair use applies to *all* uses of the Corellium Product by Corellium itself and its licensees.  Moreover, prior cases have considered the relationship of fair use and section 1201 as a matter of constitutional law under the First Amendment, the Fifth Amendment Due Process Clause, or general copyright policy.  None has addressed the question of statutory interpretation presented here.

The leading case suggesting that fair use could limit the scope of section 1201 is *Chamberlain Grp. v. Skylink Tech., Inc.*, 381 F. 3d 1178 (Fed. Cir. 2004). *Chamberlain* involved allegations under section 1201(a)(2) and, as this Court has noted, did not directly reach the overall relationship between fair use and section 1201. SOMF at 6.[2] However, because none of the uses by either the defendant or purchasers of the replacement garage door openers involved copyright infringement, the Federal Circuit held that the policies underlying the Copyright Act required a nexus to infringement for liability to inhere under section 1201(a)(2) for distribution of a technology. That court did not consider section 1201(b) or the textual arguments presented here. Hence, while we submit *Chamberlain* was decided correctly, it is not necessary to follow *Chamberlain* to grant this motion.

*MDY v. Blizzard* also left open whether fair use might serve as an affirmative defense to section 1201. SOMF at 7. However, no fair use defense to section 1201(b)(1) was necessary in that case, because Blizzard failed to establish its prima facie claim of a (b)(1) violation. *MDY v. Blizzard*, 629 F. 3d at 954-55 (finding no infringement by authorized copying into RAM, and no evidence that the technological measure prevented screen shot copying).

The most-cited case against fair use as a defense to section 1201 also did not reach either the statutory argument or the circumstances presented in this case. In *Universal City Studios, Inc. v. Corley*, 273 F. 3d 429 (2d Cir. 2001), the defendants mounted a defense that the DMCA

---

[2] In *Chamberlain*, the developer of a universal garage door opener in competition with Chamberlain's was held not to violate section 1201(a)(2), because subsection (a)(3) required that the circumvention be performed "without the authority of the copyright owner" – and that court interpreted fair use to supply that authority as a matter of law. 381 F. 3d at 1194. That court therefore concluded that violations of section 1201 required a demonstrated nexus between circumvention and infringement: "17 U.S.C. § 1201 prohibits only forms of access that bear a reasonable relationship to the protections that the Copyright Act otherwise affords copyright owners." *Id.; see also,* 381 F. 3d at 1202.

impermissibly restricted constitutional rights under the U.S. Const. amend. I and art. I, § 8 (Copyright Clause). They did not raise the statutory argument Corellium presents here. Nor could they have. The DeCSS code distributed by the *Corley* defendants was a standalone circumvention tool with the sole function of circumvention, and the code clearly could be used for either fair use or infringing purposes. Indeed, the defendants themselves could not even establish that they used the circumvention technology solely to make fair use of the copyrighted materials. *Id.* at 459. Similarly, all other cases asserting fair use to section 1201(b) mounted constitutional rather than statutory arguments, involved standalone technologies whose functions focused on circumvention rather than fair use, and involved technologies that could also be used for infringement.[3] In contrast, in this case the Court has found use of iOS by the Corellium Product is a fair use, and there can be no allegation that any circumvention tool is separable from that product.

These distinctions make the difference. The Court agreed with *Corley* that allowing a fair use defense would effectively render section 1201 meaningless, because "an interpreter must, if possible, give effect to every word and phrase in a statute." SOMF at 8 (quoting *Darrisaw v. Pennsylvania Higher Educ. Assistance Agency*, 949 F. 3d 1302, 1306 (11th Cir. 2020)). But in the context of this case, Corellium relies on the fact that all uses of the Corellium Product are fair uses of iOS, whether by Corellium itself or its licensees. The Corellium Product, the alleged circumvention, and the end users' use for security research are all one and the same fair use.

---

[3] *See RealNetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913, 943-44 (N.D. Cal. 2009) (noting that the technology to circumvent protection for DVD discs cannot distinguish between personal copies and potentially infringing copies); *321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085, 1097-98 (N.D. Cal. 2004) (same, addressing constitutional claims and claim that some users make fair use of copies enabled by circumvention); *United States v. Elcom Ltd.*, 203 F. Supp. 2d 1111, 1125 (N.D. Cal. 2002) (rejecting Due Process void-for-vagueness challenge to criminal prosecution under Section 1201(b) for technology to circumvent protections over e-books, regardless that some copying could be fair use).

Applying section 1201(b) under these circumstances would fail to give effect to section 1201(b)'s textual requirement that the copyright owner must have a "right" to protect.

As the Court found, the Corellium Product provides users with tools "giving great introspection into aspects of iOS and its operation on iOS devices. These tools are useful to security research and testing." SOMF at 4. These and other acts intended to understand the operation and operational flaws of iOS constitute fair use. "With respect to computer programs, 'fair use doctrine preserves public access to the ideas and functional elements embedded in copyrighted computer software programs.'" *Lexmark Intern. v. Static Control Components*, 387 F. 3d 522, 537 (6th Cir. 2004) *(*citing *Sony Comput. Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 603 (9th Cir. 2000)); *see also, Sega Enters. Ltd. v. Accolade, Inc.,* 977 F. 2d 1510, 1527-28 (9th Cir.1992) (finding fair use copying and disassembly "to gain access to the ideas and functional elements embodied in a copyrighted computer program and where there is a legitimate reason for seeking such access"). Thus, Apple cannot establish the predicate "right of a copyright owner" under section 1201(b), or the primarily designed/primary purpose/marketing parameters that further limit subsections 1201(b)(1)(A)-(C).

It would be contrary to the statutory language and purposes of the DMCA to apply section 1201(b) in a circumstance where the copyright owner has no "right" to "protect." Applying section 1201(b) here would be patently absurd, in light of its central purpose to protect a "right of a copyright owner," where the Corellium Product's uses of iOS are all fair uses which Apple has no right to prevent.[4] Moreover, such an application would be contrary to congressional intent, which

---

[4] *See Kirtsaeng v. John Wiley & Sons*, 568 U.S. at 544-545 (rejecting "intolerable consequences" and "absurd result" from literal application of copyright importation statute); *Troll Co. v. Uneeda Doll Co*., 483 F. 3d 150, 160 (2d Cir. 2007) (interpreting ambiguous section of 17 U.S.C. § 104A to avoid absurd results); *Silvers v. Sony Pictures Entm't, Inc*., 402 F. 3d 881, 900 (9th Cir. 2005)

ties the goal of section 1201(b) to the prevention of infringement.  *See* S. Rep. 105-190 at 29-30 (1998) (noting that section 1201(b)(1) "seeks to provide meaningful protection and enforcement of copyright owners' use of technological protection measures to protect their rights under title 17 by prohibiting the act of making or selling the technological means to overcome these protections *and thereby facilitate copyright infringement*"; and that section 1201(b)(1) should also be interpreted to "simultaneously allow the development of technology").[5]  It would be no different in effect than applying section 1201 where the technological measure protected something other than a copyrighted work.  *See, e.g., Lexmark v. Static Control*, 387 F.3d at 549-550 (reversing preliminary injunction under section 1201(a)(2) where technological measure protected non-copyrightable software code).

Thus, because the Corellium Product is capable only of making fair use of iOS, Apple cannot assert any "right of a copyright owner" against Corellium or the Corellium Product users, and section 1201(b) does not apply.

## CONCLUSION

Under a plain language reading of section 1201(b), where Apple cannot assert a "right of a copyright owner" against Corellium, it cannot assert a violation of section 1201(b) either.

---

(rejecting literal reading of copyright assignment statute that produced "absurd or unreasonable results").

[5] Moreover, when adopting section 1201(b), the House Committee on Commerce noted "it is very important to emphasize that Section [1201(b)(1)] is aimed fundamentally at outlawing so-called 'black boxes' that are expressly intended to facilitate circumvention of technological protection measures" – not products such as Corellium's that facilitate fair use.  H.R. Rep. 105-551 Pt. 2 at 39.  Indeed, the House Report continued:  "This provision is not aimed at products that are capable of commercially significant noninfringing uses, such as consumer electronics, telecommunications, and computer products—including videocassette recorders, telecommunications switches, personal computers, and servers—used by businesses and consumers for perfectly legitimate purposes."  *Id.* at 3940.

Therefore, this Court should grant partial summary judgment to Corellium against Apple's claim under section 1201(b).

Date:  May 7, 2021                                        Respectfully submitted,

                                                          */s/ Seth Greenstein*
                                                          CONSTANTINE CANNON LLP
                                                          1001 Pennsylvania Avenue, NW
                                                          Suite 1300N
                                                          Washington, D.C. 20004
                                                          202-204-3500
                                                          Seth D. Greenstein *Pro hac vice*
                                                          sgreenstein@constantinecannon.com

                                                          *and*

                                                          */s/ Justin B. Levine*
                                                          COLE, SCOTT & KISSANE, P.A
                                                          Esperante Building
                                                          222 Lakeview Avenue, Suite 120
                                                          West Palm Beach, Florida 33401
                                                          Telephone (561) 612-3459
                                                          S. Jonathan Vine
                                                          Florida Bar. No.: 10966
                                                          Jonathan.vine@csklegal.com
                                                          Justin B. Levine
                                                          Florida Bar No.:  106463
                                                          Justin.levine@csklegal.com
                                                          Lizza C. Constantine
                                                          Florida Bar No.:  100294
                                                          Lizza.constantine@csklegal.com

                                                          *and*

                                                          */s/ David Hecht*
                                                          HECHT PARTNERS LLP
                                                          125 Park Ave., 25th Floor
                                                          New York, NY 10017
                                                          Telephone (212) 851-6821
                                                          David Hecht, *Pro hac vice*
                                                          dhecht@hechtpartners.com
                                                          Maxim Price, *Pro hac vice*
                                                          mprice@hechtpartners.com
                                                          Conor McDonough, *Pro hac vice*
                                                          cmcdonough@hechtpartners.com

*Attorneys for Defendant, Corellium, LLC*

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on May 7, 2021, the foregoing document was filed electronically with the Clerk of the Court using CM/ECF. It is also certified the foregoing document is being served on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or by some other authorized manner, or a combination thereof, so as to comply with the requirements of Local Rule 5.4 and other applicable rules and procedures.

## SERVICE LIST

Martin B. Goldberg
mgoldberg@lashgoldberg.com
rdiaz@lashgoldberg.com
Emily L. Pincow
epincow@lashgoldberg.com
gizquierdo@lashgoldberg.com
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL 33131

Kathryn Ruemmler (*pro hac vice*)
kathryn.ruemmler@lw.com
Sarang Vijay Damle (*pro hac vice*)
sy.damle@lw.com
Elana Nightingale Dawson (*pro hac vice*)
elana.nightingaledawson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004

Andrew M. Gass (*pro hac vice*)
andrew.gass@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Jessica Stebbins Bina (*pro hac vice*)
jessica.stebbinsbina@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067

*Attorneys for Plaintiff,*
*Apple Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO: 9:19-cv-81160-RS**

APPLE INC.,

     Plaintiff,

v.

CORELLIUM, LLC,

     Defendant.

_____/

**CORELLIUM, LLC'S**
**STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

     Corellium, LLC ("Corellium"), pursuant to Federal Rule of Civil Procedure 56(c) and S.D. Fla. L.R. 56.1, hereby submits its Statement of Material Facts in Support of Its Motion for Partial Summary Judgment, and states as follows:

     1.    The Court held that "[Corellium's] use of iOS in connection with the Corellium Product" constituted fair use as a matter of law.  Order on the Parties' Motion for Summary Judgment, D.E. 784, at 2, 33 (Dec. 29, 2020) ("Order").

     2.    The Court found that "[a]ccording to testimony of developers of the Corellium Product, the product is intended to provide an environment in which technology security researchers can conduct research with features of interest to those researchers." Order at 2.

     3.    The Court held that "[t]he Corellium Product makes available significant information about iOS, permitting users to, *inter alia*: (1) see and halt running processes; (2) modify the kernel; (3) use CoreTrace, a tool to view system calls; (4) use an app browser and a file browser; and (5) take live snapshots. These features are beneficial to security research." Order at 21.

4.      The Court held that the similar to "Google's search and snippet functions" described in *Oracle America, Inc. v. Google LLC*, 886 F. 3d 1179 (Fed. Cir. 2018), "the Corellium Product makes available significant information about iOS. A user can see running processes, halt execution of the virtual device, amend the kernel, look at lists of files, close snapshots, among other things—giving great introspection into aspects of iOS and its operation on iOS devices. These tools are useful to security research and testing." Order at 23

5.      The Court found that Corellium's Product serves the "transformative purpose" of use for security research, and that it serves a "public benefit."  Order at 24-25.

6.      The Court held that the court in *Chamberlain Grp. v. Skylink Tech., Inc.*, 381 F. 3d 1178, 1199, 1202 (Fed. Cir. 2004), suggested "fair use could be a defense to a section 1201 violation" but ultimately failed to reach the relationship between §107 fair use and violations of §1201. Order at 35.

7.      The Court further held that like the court in *Chamberlain*, the Ninth Circuit in *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F. 3d 928, 950 n.12 (9th Cir. 2010), had also "put that decision off for another day."  Order at 35.

8.      The Court reasoned that if fair use was asserted as an affirmative defense to Apple's DMCA claim, it "would effectively render section 1201 meaningless." Order at 36.

9.      Plaintiff has not raised, nor could Plaintiff raise, any allegation that the alleged Circumvention tools within the Corellium Product can be separated from or used outside of the Corellium Product as standalone circumvention tools or otherwise. *See generally*, Second Amended Complaint [D.E. 589].

Date:  May 7, 2021                              Respectfully submitted,

                                                          */s/ Seth Greenstein*
                                                          CONSTANTINE CANNON LLP

1001 Pennsylvania Avenue, NW
Suite 1300N
Washington, D.C. 20004
202-204-3500
Seth D. Greenstein *Pro hac vice*
sgreenstein@constantinecannon.com

*and*

*/s/ Justin B. Levine*
COLE, SCOTT & KISSANE, P.A
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 612-3459
S. Jonathan Vine
Florida Bar. No.: 10966
Jonathan.vine@csklegal.com
Justin B. Levine
Florida Bar No.:  106463
Justin.levine@csklegal.com
Lizza C. Constantine
Florida Bar No.:  100294
Lizza.constantine@csklegal.com

*and*

*/s/ David Hecht*
HECHT PARTNERS LLP
125 Park Ave., 25th Floor
New York, NY 10017
Telephone (212) 851-6821
David Hecht, *Pro hac vice*
dhecht@hechtpartners.com
Maxim Price, *Pro hac vice*
mprice@hechtpartners.com
Conor McDonough, *Pro hac vice*
cmcdonough@hechtpartners.com

*Attorneys for Defendant, Corellium, LLC*