UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:19-cv-81160-RS

APPLE INC.,

    Plaintiff,

v.

CORELLIUM, LLC,

    Defendant.

_____/

**CORELLIUM, LLC'S MOTION FOR PROTECTIVE
ORDER OBJECTING TO GABE ZELDIN**

Defendant Corellium, LLC ("Corellium"), by and through its undersigned counsel, files this Motion for Protective Order seeking to object to Plaintiff Apple, Inc.'s ("Apple") Request to Permit Gabe Zeldin as a Recipient Representative under the Agreed Protective Order Regarding the Disclosure and Use of Discovery Materials [D.E. 50].

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Though discovery in this case closed over a year ago and trial is currently scheduled for July 2021, Apple now seeks to permit an additional representative to review "CONFIDENTIAL" and highly proprietary Corellium discovery materials but fails to demonstrate why such disclosure is "reasonably necessary for this case." *See* Agreed Protective Order Regarding the Disclosure and Use of Discovery Materials ("Protective Order"), D.E. 50, ¶8(b)(ii). This Motion seeks a Protective Order against Apple's disclosure of "CONFIDENTIAL" Corellium Discovery Materials to Gabe Zeldin ("Mr. Zeldin").

A protective order should be granted because the risk of inadvertent (or purposeful) use or disclosure by Mr. Zeldin, who serves as in-house counsel to Apple, of Corellium's confidential and proprietary information, is not justified by any potential benefit Mr. Zeldin can provide in this

case. The possibility of inadvertent (or purposeful) disclosure by Apple's in-house individuals is a serious risk because the record is clear that Apple made significant efforts to acquire the technology at issue in this case. In that regard, providing the information to any more in-house personnel than is absolutely necessary poses a significant risk that such information will be used—either inadvertently or purposefully—in Apple's future endeavors. Indeed, there is no guarantee that Mr. Zeldin, as a human being, will be able to fully compartmentalize the confidential discovery he receives and "only use it for litigation purposes" or otherwise ignore it from inadvertent use, reliance, or application in his future work with Apple.

Notably, Apple has numerous litigation counsel—at least 1 in-house lawyer and at least 13 external lawyers, with likely numerous more associates and other lawyers "behind the scenes." Not only does Apple have numerous litigation counsel advising it in this lawsuit, but several with specialized backgrounds. Just some examples of degrees held by lawyers actively working as counsel for Apple in this case include systems engineering, computer engineering, electrical engineering, and computer science from MIT. Clearly Apple has innumerable attorneys to assist with studying Corellium's confidential materials and advising it on the same. Apple has failed to advance any theory wherein Mr. Myer is not only reasonably necessary but necessary at all.

Further, it bears noting that Apple objected to Chris Wade from reviewing confidential documents in this case. Chris Wade is one of the lead persons of interest in this case and who is actually either a recipient or author of many of the documents that Apple designated as confidential. Despite this, Mr. Wade has been precluded from reviewing confidential information throughout the entirety of this action, including documents that originated from him. Yet, despite this standard, Apple now seeks to add yet *another* individual to study Corellium's confidential information, an in-house litigation attorney no less, when Apple already has over a dozen litigation

2

counsel advising it on this case and when Apple is one of the companies that specifically sought to obtain the proprietary technology that is at issue in this case.

As the Court is aware, Corellium is a start-up technology business that sells a certain virtualization technology. Corellium was founded in 2017 after Apple, in or around 2014, attempted to purchase the predecessor company, Virtual, which developed an earlier version of the technology at issue in this case. In 2018, Apple again sought to acquire the technology through acquisition of Corellium. After the acquisition talks fell through, however, Apple filed this suit against Corellium. The disclosure of confidential and proprietary Corellium materials to Apple, through Apple's in-house counsel, when Apple already has more than a dozen litigation counsel advising it, presents too great of a risk that Mr. Zeldin will purposefully or inadvertently use or apply the information he gains in his future work with Apple—which will be unduly prejudicial against Corellium.

## FACTUAL BACKGROUND

### I.  Protective Order

On December 13, 2019, the Court entered the Parties' Protective Order. D.E. 50. This Protective Order outlined the Parties' initial agreement to confidentiality designations to certain material and information as well as the inspection of source code. In recognition of the Parties' aims, the Protective Order provides in pertinent part:

> (a)  <u>Basic Principles</u>. All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent examination or reissue proceedings, or any business or competitive purposes or function. Protected Material shall not be distributed, disclosed, or made available to anyone except as expressly provided in this Order.

Agreed Order, p. 4. More specifically, as it relates to the production of Discovery Material designated as "CONFIDENTIAL," the Protective Order provides in pertinent part:

(b) unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL" may be disclosed only to the following:

. . . .

(ii) Not more than three (3) representatives of the Receiving Party who are officers or employees of the Receiving Party, who may be, but need not be, in-house counsel for the Receiving Party, as well as their immediate paralegals and staff, to whom disclosure is **reasonably necessary for this case**, provided that: (a) each such person has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; and (b) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

Agreed Order, p. 8 (emphasis added).

Here, Apple has informed Corellium that it seeks to add Mr. Zeldin as a "representative of the Receiving Party." Thereafter, on May 6, 2021, the Parties conferred and Corellium voiced its objection to permitting Mr. Zeldin serve as a representative and yet another individual that is now permitted to see Corellium's proprietary information. Following that conferral, Corellium now files this Motion for Protective Order to preserve its objection to Mr. Zeldin.

Indeed, while the Protective Order permits the parties to have "not more than three (3) representatives of the Receiving Party," there is no mandate requiring the parties to max out this provision to its fullest extent. Rather, the Provision was included in order to permit the parties to allow particular individuals that are "reasonably necessary to this case" be able to review "CONFIDENTIAL" Materials. *Id.* As will be discussed in further detail below, Corellium objects to permitting Mr. Zeldin, as Apple in-house litigation counsel, to review Corellium's confidential discovery material.

## MEMORANDUM OF LAW

I. **Legal Standard**

A court may, for good cause, grant a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by "forbidding the disclosure

4

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

of discovery" or "forbidding inquiry into certain matters." Fed. R. Civ. P. 26(c)(1). The party seeking a protective order must demonstrate "'good cause' for the protection sought." *Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.*, 593 F.Supp.2d 1273, 1277 (S.D. Fla. 2008). In other words, there must be a "sound basis or legitimate need to take judicial action." *See, e.g., In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 29185). A district court has broad discretion when fashioning protective orders." *Id.* at 357.

"Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." *Andrx Pharmaceuticals*, 236 F.R.D. at 586 (quoting *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F.Supp. 20, 22 (D.Del 1988)).

> Typically, protective orders include provisions specifying that designated confidential information may be used only for purposes of the current litigation. Such provisions are generally accepted as an effective way of protecting sensitive information while granting trial counsel limited access to it for purposes of the litigation. Courts have recognized, however, that there may be circumstances in which even the most rigorous efforts of the recipient of such information to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise. As aptly stated by the District of Columbia Circuit, "[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *See FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C.Cir.1980).

*In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).

> For purposes of this section, "good cause" shall include an objectively reasonable concern that the Person will, advertently or inadvertently, use or disclose Discovery Materials in a way or ways that are inconsistent with the provisions contained in this Order.

Agreed Order, ¶12(c). "[P]roper review of protective orders in cases such as this requires the district court to examine factually all the risks and safeguards surrounding inadvertent disclosure

by *any* counsel, whether in-house or retained." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (emphasis in original).

"Inadvertence, like the thief-in-the-night, is no respecter of its victims. Inadvertent or accidental disclosure may or may not be predictable." *Andrx Pharmaceuticals, LLC v. GlaxoSmithKline, PLC*, 236 F.R.D. 583, 585 (S.D. Fla. 2006) (quoting *U.S. Steel Corp. v United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984)). "Thus the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure." *U.S. Steel Corp.*, 730 F.2d at 1468.

Corellium is seeking a protective order from Apple's designation of Mr. Zeldin as a representative of Apple as the "Receiving Party" of Corellium's "CONFIDENTIAL" Discovery Material. Though discovery has long ended, and this case has been reset for trial several times, Apple only now wishes to designate another of Apple's in-house counsel as a representative who may review Corellium's "CONFIDENTIAL" Discovery Material less than two months before trial. However, Apple has not demonstrated, nor has it disclosed after being asked, why Mr. Zeldin is reasonably necessary for this case. *See* D.E. 50, p. 8.

**II.  Disclosure of "CONFIDENTIAL" Materials to Mr. Zeldin Would Be Prejudicial To Corellium**

Courts recognize that in-house counsel "stand in a unique relationship" to their corporate employer as they often provide not only legal advice to the corporation, but "their continuing employment often intimately involves them in the management and operation of the corporation of which they are a part." *F. T. C. v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980).

Here, absent any further indication from Apple about Mr. Zeldin's role as litigation counsel at Apple and how he plans to offer some unique insight that Apple's numerous other litigation

counsel cannot, Apple cannot establish why Mr. Zeldin is reasonably necessary, as required by the Protective Order, to warrant yet another person permitted to review and study Corellium's confidential and proprietary materials. Moreover, just as important, is whether Mr. Zeldin will, in the future, be able to actively compartmentalize the confidential information of a competitor. However, there has been no such showing.

As it appears to Corellium, Apple is attempting to have another of its own in-house employees to review the designated materials without any indication of Mr. Zeldin's expertise, specialized background or other any showing that makes Mr. Zeldin "reasonably necessary to the case." *See* D.E. 50, p. 8. Mr. Zeldin is in-house counsel at Apple, the same company that twice tried to purchase and gain the technology at issue. By permitting Mr. Zeldin to review Corellium's confidential discovery, Corellium fears Mr. Zeldin, as a human being, may naturally not be able to compartmentalize and ignore the information he gains and refrain from using in the future as in-house litigation counsel or even in a separate role at Apple. Without a showing that Mr. Zeldin is reasonably necessary to this case, above and beyond Apple's more than a dozen other litigation lawyers and advisors, Corellium objects to the disclosure of confidential material to Mr. Zeldin.

In this regard, Mr. Zeldin is not "reasonably necessary to the case" as is required. *See* D.E. 50, ¶(8)(b)(ii). Accordingly, Corellium respectfully requests this Court to enter a Protective Order denying Gabe Zeldin from receiving access to Corellium's confidential discovery.

### III. Apple Will Incur No Prejudice As A Result Of Protective Order

"This is no easy balancing act, however, since the factors that make an attorney so valuable to a party's prosecution interests are often the very factors that subject him to the risk of inadvertent use or disclosure of proprietary competitive information acquired during litigation." *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1381 (Fed. Cir. 2010).

7

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

> A determination of the risk of inadvertent disclosure or competitive use does not end the inquiry. Even if a district court is satisfied that such a risk exists, the district court must balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice.

*In re Deutsche Bank Tr. Co. Americas*, 605 F.3d at 1380.

Here, the risk of inadvertent disclosure or the risk of not compartmentalizing the confidential information revealed, is wholly borne by Corellium and depends entirely on Mr. Zeldin's future actions.

Apple has numerous counsel with specialized backgrounds in various areas of technology, intellectual property and copyright. Apple can establish no basis for permitting Mr. Zeldin to receive Corellium's confidential discovery when Apple already has a vast team of attorneys and advisors. The very purpose of the Protective Order is to control and limit the unnecessary spread of confidential information.  There is no reason why Mr. Zeldin should be permitted to review this sensitive material when the prejudice and risk of inadvertent disclosure of Corellium materials is only borne by Corellium, especially when this request was made less than two months before trial. Even if this court grants the protective order requested in this Motion, Apple will still only suffer the most minor of harms, if any. Moreover, with trial less than two months away, Apple cannot possibly claim that Mr. Zeldin is so crucial to its case that he must be permitted to review Corellium's confidential materials.

### IV.     Conclusion

**WHEREFORE,** for the forgoing reasons, Corellium, LLC respectfully requests that the Court issue a protective order denying Mr. Zeldin from being named as receiving party representative; preventing the disclosure of any "CONFIDENTIAL" Corellium Materials to Mr. Zeldin, and any other relief as the Court deems just and proper.

Case No. 9:19-cv-81160

## LOCAL RULE 7.1(A)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel verifies that counsel for Defendant conferred via telephone with counsel for Plaintiff on May 6, 2021, regarding the relief sought herein. Plaintiff opposes the Motion and the relief requested herein.

Dated: May 13, 2021            Respectfully submitted,

        COLE, SCOTT & KISSANE, P.A.
        *Counsel for Defendant CORELLIUM, LLC*
        Esperante Building
        222 Lakeview Avenue, Suite 120
        West Palm Beach, Florida 33401
        Telephone (561) 612-3459
        Facsimile (561) 683-8977
        Primary e-mail: justin.levine@csklegal.com
        Primary e-mail: lizza.constantine@csklegal.com

By:  */s/ Justin Levine*
     JONATHAN VINE
     Florida Bar. No.: 10966
     JUSTIN B. LEVINE
     Florida Bar No.: 106463
     LIZZA C. CONSTANTINE
     Florida Bar No.: 1002945

     *and*

HECHT PARTNERS LLP
*Counsel for defendant*
20 West 23rd St. Fifth Floor
New York, NY 10010
Tel: (212) 851-6821
David L. Hecht *pro hac vice*
Email: dhecht@hechtpartners.com

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on May 13, 2021, the foregoing document was filed electronically with the Clerk of the Court using CM/ECF. It is also certified the foregoing

document is being served on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or by some other authorized manner, or a combination thereof, so as to comply with the requirements of Local Rule 5.4 and other applicable rules and procedures.

## SERVICE LIST

Martin B. Goldberg
mgoldberg@lashgoldberg.com
rdiaz@lashgoldberg.com
Emily L. Pincow
epincow@lashgoldberg.com
gizquierdo@lashgoldberg.com
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL 33131

Sarang Vijay Damle (*pro hac vice*)
sy.damle@lw.com
Elana Nightingale Dawson (*pro hac vice*)
elana.nightingaledawson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004

Andrew M. Gass (*pro hac vice*)
andrew.gass@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Jessica Stebbins Bina (*pro hac vice*)
jessica.stebbinsbina@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067

*Attorneys for Plaintiff,*
*Apple Inc.*