## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-cv-81160-RS

APPLE INC.,

                              Plaintiff,

    v.

CORELLIUM, LLC,

                              Defendant.

**PLAINTIFF APPLE INC.'S AND DEFENDANT CORELLIUM, LLC'S
JOINT NOTICE PURSUANT TO THE COURT'S ORDER AT ECF NO. 939**

Plaintiff Apple Inc. and Defendant Corellium, LLC (collectively, the "Parties"), by and through their undersigned counsel, and as instructed in the Court's Order, ECF No. 939, hereby submit this Joint Notice to inform the Court of the Parties' post-conferral positions.

## I. CORELLIUM'S MOTION FOR PROTECTIVE ORDER, ECF NO. 909

### A. On-Premises Remote Access

#### 1. Apple's Position

As the Court's Order contemplates, counsel for Apple and Corellium conferred regarding remote access to the on-premises product.

Apple's position is that continued access to the product is required before and during trial, though Apple is willing to reduce the burden to Corellium by limiting the time period when that access is available. The reason Apple requires continued access to the on-premises product is that the product is literally the subject of this lawsuit. Apple alleges that both Corellium's on-premises and cloud products violate the DMCA. Apple cannot try the case effectively without the ability to access the on-premises product in real time shortly before and during trial. The on-premises product and the cloud product are not identical, but instead differ in respects material or potentially material to the jury's analysis of Apple's claims and Corellium's defenses. In addition, the on-premises product provides more detailed insight into the operation of Corellium's product than the cloud product. While this is not an exhaustive list, the following functionality and access exists with the on-premises version of Corellium's product but not the cloud version:

- bring-your-own iBoot functionality, where you can boot from an unencrypted iBoot file that the user provides instead of starting straight from the kernel;
- bring-your-own bootROM functionality, where you can boot from an unencrypted bootROM file that the user provides instead of starting straight from the kernel;
- the ability to inspect and save system log statements; and
- the ability to inspect the actual files resident on the server, including temporary files created/deleted during creation of the virtual machines.

Corellium does not dispute the fact that these differences exist. And Corellium is wrong that "[n]one of these differences are material." The iBoot and bootROM functionalities are unique to the on-premises product and Apple's expert identified them as unique acts of circumvention. *See*

1

ECF No. ECF No. 524-4 at pp. 109–113, 261–62.[1] Absent further access, Corellium will have the benefit of accessing this additional functionality before and during trial, while Apple would not.

Corellium does not monitor Apple's access to or use of the on-premises product (unlike the source code machine, discussed below). Accordingly, the only burdens identified by Corellium in connection with Apple's access are (a) that it has to fix connection problems, and (b) that it has to maintain the server for remote access. *See* ECF No. 909 at 6–8. Apple has proposed the following schedule, which provides Apple the access it needs while also limiting the burden on Corellium by limiting the frequency with which Corellium must fix connection problems.

- Access re-enabled 1 month prior to trial and maintained through trial
  - **Until 10 days before trial:** Fix connection problems within 3 business days.
  - **10 calendar days before trial until trial:** Fix connection problems within 24 hours of notice.
  - **During trial:** Fix connection problems within 2 hours on business days; within 6 hours on weekends.

Corellium now proposes to remove Apple's access to the on-premises product on June 11, 2021, without providing any further access unless "an issue arise[s] at trial." This would, effectively, leave Corellium with access to trial evidence while removing that access from Apple, which is fundamentally unfair. The primary concern Corellium identifies is the need to restart the computer that provides Apple access should access unexpectedly fail during trial. Corellium asserts that its two high-level employees who perform such restarts will be attending trial. Corellium, however, offers no reason why another Corellium employee could not perform this basic function. Moreover, this issue arises only if the server unexpectedly shuts off during trial— an unlikely event that can be addressed by the parties flexibly if it occurs. It is not a reason to shut down Apple's access to the product at issue in the case altogether.

Apple's proposed schedule balances the logistical burden on Corellium with Apple's need to access the product at issue during trial. Apple also remains willing to discuss other potential solutions that could ease Corellium's logistical burden, such as setting up the server in a secure room accessible to Apple during trial.

---

[1] While Corellium asserts this functionality is only used by a limited number of customers, Corellium produced no evidence of this alleged fact and cites nothing to support it.

### 2. **Corellium's Position**

<u>Proposal</u>: Corellium proposes keeping access to the On-Premises version of the Product available through June 11, 2021. This is one week past when Apple was provided with a demonstration on the demonstrative aid and two weeks since this Court's May 28, 2021 hearing. Corellium further proposes that should an issue arise at trial, whereby Apple believes that the on-premises version will be needed to be re-enabled based upon unforeseen testimony, Corellium and Apple can agree to work together at that time to coordinate a resolution or to re-enable access to the on-premises version if necessary.

<u>Brief Background:</u> Corellium has provided frequent and consistent troubleshooting and technical support for Apple's review of the On-Premises version as well as a dedicated server to the same. Corellium does not believe, and Apple has not articulated, any material reason for Apple to continue to impose such significant burdens upon Corellium when Apple has enjoyed access for over a year *since the close of discovery*.[2]

Apple seeks to not only continue to have access, but it requests access at trial. Asking Corellium to troubleshoot and keep accessible the On-Premises version during trial is almost logistically impossible. To be clear, the Apple computer that controls the On-Premises server has experienced numerous and frequent freezing episodes, requiring troubleshooting and to be rebooted. Given the frequency that the computer needs to be fixed, it is almost certainly inevitable that it will require the same during trial. However, the two people that address these issues will both be at trial in a different county. Corellium's other employees live out of state.[3] As Apple has had nearly a year and a half to extract any information they need from the On-Premises version, create any videos, exhibits, evidence, etc., it is not Corellium's burden to, in the middle of trial, hinder its own case to ensure Apple's case presentation runs smoothly. Corellium has no intention to use the On-Premises version at trial.

Corellium has explained repeatedly that its Cloud version and On-Premises version are materially the same for purposes of this case. In that regard, Corellium requested Apple to provide what Apple believed to be the material differences, as they might have some impact on this case.

---

[2] Apple was free to request access whenever it pleased, and Corellium would have had to comply with such request.

[3] Stephen Dyer has since moved to California.

Apple provided four "differences," but not as they relate to this case and not how they might be necessary at trial. Of course, there are differences, hence the different versions, but the versions operate functionally the same in connection with the issues in this case. None of the differences are material in relation to Apple's DMCA claim. To be clear, Apple asserts that the "[t]he iBoot and bootROM functionalities are unique to the on-prem product and Apple's expert identified them as unique acts of circumvention." However, both of these features are *options* to Corellium's product, and only used by less than five customers, and thus by definition, cannot be necessary for the function of the product if most customers do not have use this feature.

### B. Source Code Remote Access

#### 1. Apple's Position

As discussed at the May 28, 2021 hearing, Apple no longer needs access to Corellium's original source code, produced as source_code_1. However, issues remain with respect to Corellium's "demonstrative" produced as source_code_3. Pursuant to this Court's order, ECF No. 939, Corellium demonstrated its "demonstrative" to Apple on June 4, 2021, for the first time. Now that Apple has observed the demonstrative, it needs to analyze the related source code—*i.e.*, Corellium's March, 26, 2021 source code, as compared to the March 12, 2021 source code from Corellium's actual product (produced as source_code_2). Apple anticipates that it can complete its review within a limited time period, and proposes 10 business days, with access between 10am and 6pm ET each day, so that it can analyze the source code for Corellium's altered product.

Apple needs the 10 business days requested to analyze both the 138 lines of code that Corellium contends represent its demonstrative,[4] as well as the thousands of lines of code that are different from the code in the source code from Corellium's actual product. *See* C. Wade Decl., ECF No. 936-1 ¶ 6 (acknowledging approximately 7000 lines of new code). While Corellium claimed at the May 28 hearing, and again in this Joint Notice, that these thousands of changes are

---

[4] As explained in Apple's opposition to Corellium's Motion for Protective Order, there are more than 10,000 differences between the March 12, 2021 source code and the March 26, 2021 source code. ECF No. 916 at 6. Apple requested more information about the demonstrative, in particular, from Corellium, but Corellium initially resisted providing it. As a result, Apple still does not know to what 138 lines of code Corellium is referring. As of late afternoon today, June 7, 2021, Corellium has told Apple that this information is now available for Apple to review remotely, but given the source-code review requirements, Apple will not be able to verify whether Corellium has done so until Tuesday, June 8, 2021 at 10am ET.

unrelated to the demonstrative, Apple should be permitted to evaluate for itself whether the claim by Corellium and its counsel is true.

Furthermore, on June 4, 2021, during Corellium's demonstration of its "demonstrative," Corellium told Apple (for the first time) that it may show the jury not only the "demonstrative" but also portions of the March 26, 2021 source code itself (source_code_3). If the Court permits Corellium's "demonstrative," and if Corellium maintains the position that it intends to show the jury the actual code, and not just the working version of the altered product, then Apple would need to be able to access the same code during trial as well, so that it can respond to and rebut Corellium's demonstrative and related source code.

### 2. **Corellium's Position**

Proposal: Corellium proposes that access to the source code computer, including the demonstrative aid, be turned off after June 11, 2021. This date marks one week since Corellium's Chief Technology Officer, Chris Wade, provided to Apple's lawyers and expert a demonstration of the demonstrative aid and answered their questions regarding the same. The demonstrative aid was first produced to Apple on March 26, 2021.

Brief Background: On June 4, 2021, Corellium provided Apple with a presentation of the "patchless" demonstrative aid as it will be presented at trial. During the presentation, Apple had the opportunity to take snapshots of the demonstration and was able to ask questions directly to Mr. Wade. During the presentation, Corellium clicked on every possible application on the virtualized iPhone (e.g., everything from Maps to Settings), allowing Apple to see every possible potential iteration of how the virtualized instance of iOS could be presented to the jury. At the end, Apple's expert stated he had no further questions.

Keeping access to the "source_code_2" and "source_code_3" files, but ceasing access to "source-code_1" fails to alleviate any burden on Corellium. So long as any of the files are active, then Corellium still must attend the Zoom monitoring sessions, which Apple dictates, and be immediately available for troubleshooting, which Apple dictates. As stated at the hearing, "source_code_1" was the original source code deposit. 'Source_code_2" was the original deposit plus the routine version updates that occur with most apps or software systems to fix glitches, etc. And "source_code_3" is the product inclusive of the 138 lines of demonstrative code.

The demonstrative aid was designed to show that iOS can be accessed and run on a "virtual device" without any "patches," which Apple alleges circumvent its alleged technological

5

protection measures ("TPMs"). Corellium has now produced the 138 new lines to Apple, so that they can explore exactly what the differences are. To be clear, the demonstrative aid (the 138 lines) does not remove patches from the Product. Instead, it simply adds a new "feature" to the product that allows one to turn-off patching. The demonstrative aid is still the same product, containing all the same patches and original code—it simply adds a new feature (138 new lines of code) that turns off patching. This feature is something that was added only for the purposes of this trial to assist the jury in understanding what the patches do and that they do not circumvent any alleged TPMs. This demonstrative "feature" could be added to any version of the Corellium Product.

Moreover, Apple is being disingenuous when it conflates the "source_code_3" repository with the "demonstrative source code." These are not equivalent. "Source_code_3" contains the code for the entire product and updates, *as well as* the code for the demonstrative aid. One particular folder, which is clearly labeled and marked as a new router model, contains 7,000 very clearly unrelated lines of code. Corellium has again assisted Apple to extract the 138 lines of demonstrative code and has provided that to Apple in another separate folder. Apple now has the demonstrative aid in both isolated form, complete form, has had a personal walk through of the demonstrative, and had all of its questions answered. Corellium should not continue to bear the burden of helping Apple prove its case.

## II. APPLE'S MOTION FOR LEAVE TO FILE MOTION IN LIMINE TO PRECLUDE CORELLIUM'S "DEMONSTRATIVE" THAT DOES NOT REPRESENT ITS ACTUAL PRODUCT, ECF NOS. 931, 933

### A. Apple's Position

Apple continues to maintain that Corellium's "demonstrative," which Corellium calls the "'patchless' demonstrative aid," ECF No. 936 at 2–3, 5; ECF No. 936-1 ¶¶ 3, 7–8, is likely to mislead the jury, and accordingly maintains its position with respect to its request for leave to file a motion *in limine*. Corellium's demonstration made clear both that its "demonstrative" product is *not* "exactly the product with the patches turned off," as Corellium represented at the hearing, 5/28/21 Hr'g Tr. 49:21–22, and that it is misleading. For instance, Apple has reason to believe that Corellium's demonstrative cannot run all versions of iOS at issue in this case—a critical point for Apple's circumvention claims. In addition, Corellium admits that the source code for its actual product, produced on March 12, 2021, is *not* the same as the source code for its demonstrative. C. Wade Decl., ECF No. 936-1 ¶ 6. In fact, Corellium has admitted that thousands of lines in the demonstrative source code are different from the source code in Corellium's actual product. *Id.*;

6

*see also* ECF No. 933-3 ¶ 4. This, too, is misleading. In addition, a new basis for Apple's *in limine* motion has arisen, as Corellium informed Apple that it intends for Mr. Wade, a fact witness who disclaimed detailed knowledge of Corellium's code at deposition, to testify about this highly technical, hypothetical product. This is the realm of expert, not fact, testimony. Regardless of the propriety of the demonstrative, Corellium does not have an appropriate witness to testify about it.

In light of the foregoing, Apple respectfully requests permission to submit a five-page motion *in limine* addressing what Apple now knows and expects to learn from its analysis of the March 26, 2021 source code, along with a further supporting declaration from Dr. Nieh.

### B. Corellium's Position

Apple also injects a new alleged "reason" to seek its *motion in limine*, that Mr. Wade as a "fact witness who disclaimed detailed knowledge of Corellium's source code" should not be allowed to testify about the "patchless" demonstrative aid because it is a "highly technical, hypothetical product." *First*, Apple continuous to be disingenuous by claiming that the "patchless" demonstrative aid does not represent the actual product. As stated, the demonstrative *is* the actual product but with a new feature added to turn off patching. It is not "patchless" as Apple claims. The new demonstrative feature may be added to any product version. *Second*, David Wang, former co-founder of Corellium and creator of the middleware portion of the Corellium Product, has resigned his position in Corellium. Mr. Wang's departure from Corellium has forced Mr. Wade to step into Mr. Wang's role and become familiar with Corellium's source code. Notably, Mr. Wang's departure was due, almost exclusively, to the extreme burden, anxiety and stress that litigating against Apple has imposed upon Corellium and its founders. Accordingly, because of these changes in circumstances, Mr. Wade has stepped into Mr. Wang's role and is the proper witness to testify about the demonstrative aid.

Dated: June 7, 2021

Michele D. Johnson*
*michele.johnson@lw.com*
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
(714) 540-1235 / (714) 755-8290 Fax

Sarang Vijay Damle*
*sy.damle@lw.com*
Elana Nightingale Dawson*
*elana.nightingaledawson@lw.com*
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200 / (202) 637-2201 Fax

Andrew M. Gass*
*andrew.gass@lw.com*
Joseph R. Wetzel
*joe.wetzel@lw.corm*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 / (415) 395-8095 Fax

Jessica Stebbins Bina*
*jessica.stebbinsbina@lw.com*
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500 / (424) 653-5501 Fax

Gabriel S. Gross*
*gabe.gross@lw.com*
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 463-2628 / (650) 463-2600 Fax

*Admitted pro hac vice

Respectfully Submitted,

*s/ Martin B. Goldberg*

Martin B. Goldberg
Florida Bar No. 0827029
*mgoldberg@lashgoldberg.com*
*rdiaz@lashgoldberg.com*
Emily L. Pincow
Florida Bar. No. 1010370
*epincow@lashgoldberg.com*
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL 33131
(305) 347-4040 / (305) 347-4050 Fax

*Attorneys for Plaintiff* APPLE INC.

        COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant CORELLIUM, LLC*
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 612-3459
Facsimile (561) 683-8977
Primary e-mail: justin.levine@csklegal.com
Secondary e-mail: lizza.constantine@csklegal.com

By:  *s/ Justin B. Levine*
    JONATHAN VINE
    Florida Bar. No.: 10966
    JUSTIN B. LEVINE
    Florida Bar No.:  106463
    LIZZA C. CONSTANTINE
    Florida Bar No.:  1002945

    *and*

HECHT PARTNERS LLP
*Counsel for defendant*
20 West 23rd St. Fifth Floor
New York, NY 10010
Tel: (212) 851-6821
David L. Hecht *pro hac vice*
Email: dhecht@hechtpartners.com
Maxim Price *pro hac vice*
Email: mprice@hechtpartners.com

9