**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:19-cv-81160**

APPLE INC.,

       Plaintiff,

v.

CORELLIUM, LLC,

       Defendant.

**PLAINTIFF APPLE INC.'S OPPOSITION TO**
**DEFENDANT CORELLIUM, LLC'S MOTION TO STRIKE JUNE 4, 2021**
**<u>SUPPLEMENTAL EXPERT REPORTS</u>**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..........................................................................................................1

II. FACTUAL BACKGROUND..........................................................................................2

III. APPLE'S SUPPLEMENTATION WAS APPROPRIATE AND THE REPORTS SHOULD NOT BE STRICKEN. ...................................................................................4

    A. Apple's Supplementation Was Timely. ...............................................................5

    B. Apple's Supplemental Expert Reports Complied With Rule 26(e). ....................6

        1. Damages Expert David Connelly...............................................................7

        2. Industry Expert Dr. Michael Siegel ............................................................8

        3. Technical Expert Dr. Jason Nieh ..............................................................10

    C. Corellium Relies On Inapposite Authorities That Do Not Apply To Supplementation. .................................................................................................12

    D. In The Alternative, Any Excluded Evidence Must Be Excluded For Both Sides. ....................................................................................................................13

IV. CONCLUSION..............................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Adams v. Respiratory Therapeutics, Inc. v. Perrigo Co.*,
   No. 07-cv-993, 2011 WL 13248500 (W.D. Mich. Sept. 1, 2011) ..............................................6

*All-Tag Corp. v. Checkpoint Sys., Inc.*,
   No. 17-cv-81261, 2019 WL 5073499 (S.D. Fla. Oct. 9, 2019) ................................................12

*In re BankAtlantic BanCorp, Inc.*,
   No. 07-cv-61542, 2010 WL 3294342 (S.D. Fla. Aug. 20, 2010) ..........................................1, 5

*Brincku v. Nat'l Gypsum Co.*,
   No. 11-cv-338, 2012 WL 1712620 (M.D. Fla. May 15, 2012) ...............................................13

*Buonamano v. United States*,
   No. 13-cv-80221, 2014 WL 12580527 (S.D. Fla. Aug. 5, 2014) ............................................13

*Cochran v. The Brinkmann Corp.*,
   381 F. App'x 968 (11th Cir. 2010) ..........................................................................................12

*Colman v. Home Depot USA Inc.*,
   705 F. App'x 949 (11th Cir. 2017) ...........................................................................................6

*Companhia Energetica Potiguar v. Caterpillar Inc.*,
   No. 14-cv-24277, 2016 WL 3102225 (S.D. Fla. June 2, 2016) ..............................................13

*Cooley v. Great S. Wood Preserving*,
   138 F. App'x 149 (11th Cir. 2005) ..........................................................................................12

*Corwin v. Walt Disney Co.*,
   475 F.3d 1239 (11th Cir. 2007) ...............................................................................................12

*Davis v. United States*,
   No. 08-cv-184, 2012 WL 424887 (E.D. Ky. Feb. 9, 2012) ................................................7, 13

*Everlight Electronics Co. v. Nichia Corp.*,
   No. 12-cv-11758, 2015 WL 412184 (E.D. Mich. Jan 30, 2015) ..............................................8

*Fair Isaac Corp. v. Federal Ins. Co.*,
   337 F.R.D. 413 (D. Minn. 2021) .........................................................................................8, 14

*Friebel v. Paradise Shores of Bay Cty., LLC*,
   No. 10-cv-120, 2011 WL 2420230 (N.D. Fla. June 13, 2011) ...............................................13

*Goodbys Creek, LLC v. Arch Ins. Co.*,
  No. 07-cv-947, 2009 WL 1139575 (M.D. Fla. Apr. 27, 2009) ............................................... 13

*Guevara v. NCL (Bahamas) Ltd.*,
  920 F.3d 710 (11th Cir. 2019) ............................................................................................. 12

*Hewitt v. Liberty Mut. Grp., Inc.*,
  268 F.R.D. 681 (M.D. Fla. 2010) ......................................................................................... 13

*Kendall Lakes Towers Condo Ass'n v. Pac. Ins. Co.*,
  No. 10-cv-24310, 2011 WL 6372198 (S.D. Fla. Dec. 20, 2011) ......................................... 13

*Martin v. Omni Hotels Mgmt. Corp.*,
  No. 15-cv-1364, 2017 WL 2928154 (M.D. Fla. Apr. 19, 2017) ........................................... 13

*Noffsinger v. Valspar Corp.*,
  No. 09-cv-916, 2012 WL 5948929 (N.D. Ill. Nov. 27, 2012) ...................................... 1, 6, 7, 13

*O'Brien v. NCL (Bahamas) Ltd.*,
  No. 16-cv-23284, 2017 WL 6949261 (S.D. Fla. Oct. 13, 2017) .......................................... 12

*OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*,
  549 F.3d 1344 (11th Cir. 2008) ..................................................................................... 12, 13

*Porter v. Hamilton Beach/Proctor-Silex, Inc.*,
  No. 01-cv-2970, 2003 WL 21946595 (W.D. Tenn. Jul. 28, 2003) ............................ 5, 6, 7, 13

*Potish v. R.J. Reynolds Tobacco Co.*,
  No. 15-cv-81171, 2017 WL 5952892 (S.D. Fla. Nov. 30, 2017) ......................................... 12

*Reese v. Herbert*,
  527 F.3d 1253 (11th Cir. 2008) ........................................................................................... 12

*S.O.S. Resource Servs., Inc. v. Bowers*,
  No. 14-cv-22789, 2015 WL 6735540 (S.D. Fla. Nov. 4, 2015) ........................................... 13

*Semtech Corp. v. Royal Ins. Co. of Am.*,
  No. 03-cv-2460, 2005 WL 6192906 (C.D. Cal. Sept. 8, 2005) ........................................... 13

*Southpoint Condominium Ass'n v. Lexington Ins. Co.*,
  No. 19-cv-61365, 2020 WL 1515769 (S.D. Fla. Mar. 30, 2020) ......................................... 12

*Tech Data Corp. v. Au Optronics Corp.*,
  No. 11-cv-2454, 2015 WL 12843886 (M.D. Fla. Oct. 22, 2015) ......................................... 13

*Union Ins. Co. v. Delta Casket Co.*,
  No. 06-cv-2090, 2009 WL 6366865 (W.D. Tenn. Nov. 30, 2009) ......................................... 6

*United States v. Louisiana*,
  No. 11-cv-470, 2015 WL 5595630 (M.D. La. Sept. 21, 2015)...........................................7, 12

*United States v. Marder*,
  318 F.R.D. 186 (S.D. Fla. 2016) ...............................................................................................13

*United States v. Rapanos*,
  376 F.3d 629 (6th Cir. 2004) ....................................................................................................13

## STATUTES

17 U.S.C. § 1201(a)(1)–(2)..............................................................................................................9

17 U.S.C. § 1201(f).........................................................................................................................3

17 U.S.C. § 1201(j).........................................................................................................................2

17 U.S.C. § 1203(c)(1)(A), and (2).................................................................................................7

## RULES

Fed. R. Civ. P. 12(f).....................................................................................................................1, 2

Fed. R. Civ. P. 26(a) ..................................................................................................................5, 12

Fed. R. Civ. P. 26(a)(3)...........................................................................................................4, 5, 6

Fed. R. Civ. P. 26(a)(3)(B) .............................................................................................................5

Fed. R. Civ. P. 26(e) ............................................................................................................. *passim*

Fed. R. Civ. P. 26(e)(2).............................................................................................................. 4, 5

Fed. R. Civ. P. 37(c) ......................................................................................................................12

Fed. R. Civ. P. 37(c)(1).............................................................................................................12, 13

I.        **INTRODUCTION**

By supplementing its own production with unquestionably relevant documents and information in this case over the last six months (and long after the April 20, 2020 cut-off for the close of discovery), Corellium itself created the need for expert witnesses to address newly produced evidence now. That evidence relates to Corellium's constantly changing iOS-virtualization product and business model which, as Apple has long alleged, violate the anti-trafficking provisions of the DMCA. A natural consequence of Corellium continuing to provide discovery about how it has been developing, updating, and changing its illegal software product is that Apple's expert witnesses have needed to review this new evidence and update their opinion, on liability and damages issues, accordingly.

Apple's supplemental expert reports, timely served on June 4, 2021, address *only* the supplemental discovery produced by Corellium over the preceding six months. These reports do not add new opinions or change the experts' prior opinions. Rather, the reports simply update the experts' prior opinions to address Corellium's supplemental discovery. Such supplementation is not only appropriate, but required by Rule 26(e), and is a direct result of Corellium supplementing its own fact discovery. *See, e.g.*, *In re BankAtlantic BanCorp, Inc.*, No. 07-cv-61542, 2010 WL 3294342, at *5 (S.D. Fla. Aug. 20, 2010) (The "duty to supplement continues after the close of discovery."); *Noffsinger v. Valspar Corp.*, No. 09-cv-916, 2012 WL 5948929, at *4 (N.D. Ill. Nov. 27, 2012) ("Where a party has disclosed new information, the opposing party's experts may supplement their reports."). The Court should neither strike the reports[1] nor preclude the experts from addressing Corellium's supplemental evidence at trial.

Moreover, in what has become a disturbing pattern, Corellium's motion ignores important context for its own conduct in discovery. Corellium neglects to tell the Court, for example, that it refused in April to confirm that it had completed all supplemental discovery. Corellium also fails to acknowledge that it advised Apple in April that its intention was for all experts to simply address

---

[1] Corellium does not identify a procedural basis for a motion to strike, as Apple's supplemental reports have not been (and will not be) submitted for adjudication. Expert reports are not "pleadings" under Rule 12(f), nor have the reports been submitted as evidence; the experts themselves will testify. The Court could deny the motion on this basis alone; however, since Corellium otherwise asks for the Court to exclude the supplementation of the opinions in the reports at trial, Apple responds to the remainder of this motion as though it is a motion *in limine* to exclude the pertinent testimony.

the new evidence on the witness stand at trial—not to exclude such testimony—and that only after Apple confirmed its intention to submit supplemental expert reports as the Federal Rules require did Corellium demand exclusion. Finally, Corellium also fails to acknowledge its current position—as articulated in the parties' extensive meeting-and-conferring—that ***its own*** fact witnesses should be free to testify regarding the supplemental evidence, but ***Apple's experts*** should be precluded from discussing the same evidence. Such an approach is, of course, fundamentally unfair.

The best, and fairest, approach is to permit both sides to rely upon the supplemental evidence Corellium produced in spring 2021, including Apple's expert witnesses who have timely disclosed their reliance on the evidence in supplemental expert reports. But if Apple is precluded from relying on the evidence, Corellium must likewise be barred.

## II. FACTUAL BACKGROUND

In this action, Apple seeks injunctive relief and damages stemming from Corellium's unlawful trafficking in a tool of circumvention in violation of the Digital Millennium Copyright Act, 17 U.S.C. §1201. Discovery in this case closed April 20, 2020, with trial originally set for October 13, 2020. *See* ECF Nos. 32, 66. As a result of the COVID-19 pandemic, trial has been continued several times and is now set for trial on July 19, 2021. ECF Nos. 618, 661, 744, 801, 898, 961. Corellium has continued to sell its illegal product through this entire period.

Since the close of fact discovery, Corellium added as many as ▮ new customers and ▮ individual trial accounts,[2] and Corellium has earned ▮ in additional revenues from the sale of its allegedly illegal product. *See* Nightingale Dawson Decl., Ex. A ¶¶ 12–14; *see also* Ex. 4 to Ex. A. Corellium also began supporting multiple new versions of Apple's copyrighted operating system, iOS, and dramatically expanded its marketing to individual, non-corporate customers. *See* Ex. A ¶ 12. In addition, Corellium modified its procedures ▮ ▮. *See id.* ¶ 15. These updates made by Corellium squarely impact several aspects of Apple's case, including the viability of Corellium's defenses (*e.g.*, that its product is used solely for security testing, pursuant to 17 U.S.C. § 1201(j), or that it is used solely for "reverse

---

[2] This figure comes from a ▮ who stated that Corellium had issued ▮." Ex. 1 to Ex. A; *see also* Ex. A ¶ 13. When pressed to provide further information about these trial accounts, counsel for Corellium stated both ▮ ▮ *See* Ex. 5 to Ex. A; *see also* Ex. A ¶ 13.

2

engineering" pursuant to 17 U.S.C. § 1201(f)), and the amount of actual damages (based on Corellium's profits from its sales of CORSEC iOS), and statutory damages (based on Corellium's trafficking in tools of circumvention) that Corellium should pay if the jury agrees with Apple that Corellium violated the DMCA.

In response to Apple's repeated requests that Corellium honor its obligation to supplement discovery regarding its product, sales, and marketing information, Corellium made four separate supplemental productions on December 10, 2020, March 5, 2021, March 15, 2021, and April 2, 2021, totaling almost 2000 documents. Ex. A ¶ 8. It also supplemented its interrogatory responses on December 10, 2021 and March 5, 2021. *Id.* ¶ 9. Corellium produced updated source code for its iOS-virtualizing product on March 12, 2021. *Id.* And Corellium also produced source code related to a new technical "demonstrative" aid on March 26, 2021, and provided declarations related to that new source code on May 26 and June 11, 2021. *See* Ex. A ¶ 10; ECF Nos. 951-1, 936-1.

The Court had previously recognized that it might be necessary for the parties to "exchange supplemental expert reports after the expert discovery deadline," and ordered the parties to "confer and agree on the appropriate dates by which they will do so." ECF No. 159.³ Accordingly, Apple promptly sought to confer with Corellium regarding the supplemental evidence provided by Corellium and attempted to negotiate a mutually agreed timetable for supplemental reports. Ex. A ¶ 17. On April 9, 2021, counsel for Apple asked Corellium to agree that no further supplemental document productions would be forthcoming so that the parties could discuss a timetable for supplementing expert reports. *See Id.* ¶ 18. Counsel for Corellium refused to do so; instead, counsel stated that damages and possibly other (unidentified) materials would continue to be updated if relevant before trial. *Id.* ¶ 19.

On April 26, 2021, counsel for Apple again requested that Corellium confer specifically about the timetable for supplemental expert reports. Counsel for Apple explained that it would be necessary to make narrow, targeted supplementation to the reports to address the supplemental evidence. *Id.* ¶ 20. Counsel for Corellium, however, stated that Corellium preferred for experts

---

³ While Corellium cites ECF No. 252, an Order by which the Court modified the rebuttal expert deadline and the close of expert discovery, ECF No. 252 did not rescind the Court's prior order, ECF No. 159, acknowledging that expert supplementation may need to take place after the close of expert discovery.

to just "make their opinions current at trial" rather than serve supplemental reports. *Id.* ¶ 21. But as Apple's counsel explained, the Rules require supplementation in order to avoid unfair surprise. *Id.* On April 30, 2021, counsel for Corellium confirmed that it opposed any supplemental reports (despite its stated intention to have the experts simply discuss the new evidence at trial, without having first disclosed their opinions in supplemented reports). *See id.* ¶ 22.

For its part, Apple proceeded to timely supplement its own expert reports, complying with Rule 26(e)(2) and its attendant direction that "[a]ny additions or changes to th[e] information [included in the report and to information given during the expert's deposition] must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). On June 4, 2021, Apple served three supplemental reports, one from each of its experts—Mr. David Connelly, Dr. Michael Siegel, and Dr. Jason Nieh. Ex. A ¶ 23; *see also* Ex. B, C, & D. As discussed below, and contrary to Corellium's claims, **none** of these supplemental reports offer any new opinions or modify the experts' prior opinions. Rather, each merely brings current the expert's opinions in light of the supplemental discovery produced by Corellium between December 2020 and May 2021.

Even after Apple served the supplemental reports, counsel for Corellium and counsel for Apple continued to confer regarding the reports. Ex. A ¶ 24. Corellium's position is that Corellium's fact witnesses should be permitted to testify fully regarding all supplemental evidence submitted by Corellium between December 2020 and May 2021, but that Apple's expert witnesses should not be permitted to discuss the same evidence in Apple's case in chief.[4] Ex. A ¶ 25. Apple explained that its supplementation was timely and appropriate; and further that it would be fundamentally unfair to allow *Corellium* to rely on supplemental discovery it produced after the close of discovery, while barring *Apple* from relying on the same discovery. *Id.*

## III. APPLE'S SUPPLEMENTATION WAS APPROPRIATE AND THE REPORTS SHOULD NOT BE STRICKEN.

As required under Rule 26(e), Apple's experts supplemented their opinions and reports

---

[4] Confusingly, Corellium's counsel has suggested in meet and confers that Apple's experts *might* be permitted to discuss supplemental evidence in rebuttal to Corellium's introducing the evidence through fact witnesses, *see* Ex. A ¶ 26; however, Corellium's motion seeks to preclude Apple's experts from discussing the evidence entirely, *see* ECF No. 963 at 18. In any event, Corellium has offered no authority (or rationale) for its contention that Corellium's witnesses are free to discuss updates to Corellium's product and changes to its business operations, but Apple witnesses are not.

4

based on information newly produced by Corellium in spring 2021. All parties are under an ongoing obligation to supplement discovery, including expert disclosures under Rule 26(a) and information included in expert reports. *See* Fed. R. Civ. P. 26(e) (calling for supplementation when an opinion is rendered "incomplete"). The "duty to supplement continues after the close of discovery." *In re BankAtlantic* BanCorp, 2010 WL 3294342, at *5. Supplemental reports that bring current an expert's existing opinions based on new information produced by the opposing party, like those at issue here, are both appropriate and required by the Federal Rules. In supplementing its reports, Apple acted properly, and its reports should not be stricken, nor its experts' testimony excluded.

### A. Apple's Supplementation Was Timely.

Apple's supplementation of its expert reports was timely. Under Rule 26(e)(2), "[a]ny additions or changes to th[e] information [included in the report and to information given during the expert's deposition] must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2); *see also* Fed. R. Civ. P. 26(a)(3)(B) (stating "[u]nless the court orders otherwise, these disclosures must be made at least 30 days before trial"). Apple served the supplemental expert reports on June 4, 2021, which was then 30 days before trial.[5] Accordingly, by the plain text of the Rules, Apple's supplemental expert reports were timely disclosed. *See, e.g.*, *Porter v. Hamilton Beach/Proctor-Silex, Inc.*, No. 01-cv-2970, 2003 WL 21946595, at *5 (W.D. Tenn. Jul. 28, 2003) (holding that Rule 26(e) controls where scheduling order is silent on supplementation of timely-served initial reports)

Notwithstanding this black-letter law, Corellium asserts that Apple was somehow obligated to submit supplemental reports covering this new information by April 20, 2020. *See* ECF No. 963 at 9–10.[6] But that makes no sense. Apple's experts did not have access to the relevant information until Corellium produced it in the spring of 2021, which occurred nearly a year after that date. Further, contrary to Corellium's claims, the Court never issued an order replacing the deadline for supplementation of expert reports provided by Rule 26(e)(2)—which,

---

[5] At the time Apple served the reports, trial was set for July 6. *See* ECF No. 898.

[6] In passing, Corellium also suggests that an expert report not at issue in its motion, a prior supplemental report of Dr. Nieh, submitted May 1, 2020, was untimely. ECF No. 963 at 3. But this is patently false. Corellium expressly agreed that the due date for prior supplemental reports by Dr. Nieh and Dr. Olivier (one of Corellium's experts) should be set on May 1, 2020. *See* ECF No. 505-1 at 5–6.

pursuant to Rule 26(a)(3), is thirty days prior to trial.[7] To the contrary, as explained above, the Court expressly recognized that the parties would likely need to exchange supplemental reports "after the expert discovery deadline," and required the parties to meet and confer regarding mutually agreeable supplementation. ECF No. 159. As detailed above, Apple attempted to mutually agree on a supplementation schedule with Corellium, and only served its supplemental reports after Corellium refused to agree to a reasonable supplementation schedule.

### B. Apple's Supplemental Expert Reports Complied With Rule 26(e).

Apple's supplemental reports likewise complied in all other respects with Rule 26(e). Apple's experts did not provide new opinions or address materials produced during earlier phases of discovery, but, rather, merely incorporated the substantial supplemental discovery produced by Corellium after the expert reports were due. That is one of the precise purposes of Rule 26(e). *See Adams v. Respiratory Therapeutics, Inc. v. Perrigo Co.*, No. 07-cv-993, 2011 WL 13248500, at *2–3 (W.D. Mich. Sept. 1, 2011) ("Because [the expert] merely augments his prior opinions with new information obtained after he issued his initial report, supplementation is proper under Rule 26(e)."); *see also Union Ins. Co. v. Delta Casket Co.*, No. 06-cv-2090, 2009 WL 6366865, at *3 (W.D. Tenn. Nov. 30, 2009) (Supplementation found proper where "[r]eport does not offer new opinions. The five opinions deal instead with the same topics and reach the same conclusions as the first report."); *Porter*, 2003 WL 21946595, at *5 ("the instant case does not deal with an additional or new rebuttal expert, but instead deals with the initial expert's supplementation of his own conclusions" and supplementation under Rule 26(e) is proper); *cf. Colman v. Home Depot USA Inc.*, 705 F. App'x 949, 951–52 (11th Cir. 2017) (trial court properly admitted testimony based on supplemental reports where supplemental reports "did not disclose new opinions, but stated that [the] opinion[s] remained unchanged from [the expert's] timely disclosed report" and the information relied on was "already in [the opposing party's] possession").

Indeed, courts have repeatedly held that, "[w]here a party has disclosed new information, the opposing party's experts may supplement their reports." *See, e.g., Noffsinger*, 2012 WL

---

[7] The Court did set separate deadlines for the individual disclosures required by Rule 26(a)(3); it set April 6, 2020, for the exchange of witness lists, *see* ECF No. 66; August 17, 2020, for the submission of deposition designations, *see id.*; and April 2, 2021, for the submission of the parties' joint stipulation, which included the parties' trial exhibit lists, *see* ECF No. 801. However, its orders did not reference Rule 26(a)(3), nor did it ever set a single deadline for all disclosures required by Rule 26(a)(3).

5948929, at *4. For example, in *Noffsinger*, after expert reports had already been completed, the plaintiff disclosed that he had been using e-cigarettes. *Id.* at *1. The court held that supplementation by the defendant's expert was appropriate, observing that, "[t]o forbid supplementation would produce an unwanted result: parties would be encouraged to hide potentially damaging facts until after the first expert reports are submitted." *Id.* at *4; *see also Davis v. United States*, No. 08-cv-184, 2012 WL 424887, at *10 (E.D. Ky. Feb. 9, 2012) (permitting supplemental report and testimony regarding information disclosed by other party pursuant to Rule 26(e)); *Porter*, 2003 WL 21946595, at *6 ("Rule 26(e) does not prohibit an expert from supplementing his disclosures based on information thereafter received from the opposing party.").

This is especially true in an injunctive relief case, where the defendant's ongoing sale of the allegedly illegal product is a critical fact in addressing the irreparable harm and need for injunctive relief. *See, e.g., United States v. Louisiana*, No. 11-cv-470, 2015 WL 5595630, at *2 (M.D. La. Sept. 21, 2015) (where a party seeks prospective, rather than just retrospective, relief and a complaint alleges "continuous violations," supplementation with documents created after suit is appropriate). In addition to being relevant to a calculation of damages, Corellium's aggressive, ongoing expansion and marketing of its product is relevant to Corellium's continued violation of the DMCA and Apple's request for an injunction barring that conduct.

As discussed in greater detail below, each of the reports at issue merely brings the expert's previously disclosed opinions current based on information produced by Corellium between December 2020 and May 2021, and is thus appropriate under Rule 26(e).

### 1. Damages Expert David Connelly

Mr. Connelly's primary opinions relate to the calculation of Apple's (1) actual damages in the form of Corellium's profits from its violation of the DMCA, *see* 17 U.S.C. § 1203(c)(1)(A), and (2) statutory damages based on Corellium's "act of circumvention, device, product, component, offer, or performance of service," *see id.* § 1203(c)(3)(A). In his prior reports, Mr. Connelly calculated Corellium's profits through April 2020, and projected future profits through the then-anticipated trial date, then October 2020. *See* ECF No. 526-1 at 7–8; ECF No. 526-2 at 3–4; ECF No. 526-3 at 3. As Corellium appears to concede, Mr. Connelly's challenged supplemental report offers no new opinions, but merely updates Mr. Connelly's prior damages calculations with Corellium's updated sales and financial data, and updates the projected profits

7

through the current trial date of July 2021. *See* Third Supplemental Report of David B. Connelly, Ex. B at 2–3; *see also id.* at 1–2 ("This Third Supplemental Report serves to supplement my Second Supplemental Report for my observations and conclusions drawn from examining and considering Corellium's recently produced amended interrogatory responses, 'Profit & Loss Detail' reports, and revenue and expense transaction documents.").

This sort of supplementation is routine: the law is well-established that damages and sales figures can be supplemented even up to the eve of trial. *See, e.g.*, *Fair Isaac Corp. v. Federal Ins. Co.*, 337 F.R.D. 413, 419 (D. Minn. 2021) ("Some information by its very nature cannot be produced during the discovery period. For example, in patent and trademark infringement litigation it is well understood that information regarding sales of allegedly infringing products may necessarily require supplementation up to the eve of trial."); *Everlight Electronics Co. v. Nichia Corp.*, No. 12-cv-11758, 2015 WL 412184, at *2 (E.D. Mich. Jan 30, 2015) (ordering production of updated sales information for infringing product, explaining that "the extent of [defendant's] purported infringement is an important factor for the jury's consideration in fashioning a damages award rendering [defendant's] failure to provide complete sales information prejudicial to [plaintiff]").

Corellium's sole argument for exclusion—that it has not been able to depose Mr. Connelly regarding his incorporation of Corellium's updated sales data—falls flat. Not only is Corellium's position contrary to its position throughout the meet-and-confer process, during which it acknowledged that supplementation of damages is routine and appropriate, Corellium has already deposed Mr. Connelly regarding his methodology, which is unchanged in his supplemental report. Corellium can readily cross-examine Mr. Connelly on his updated calculations, as the only new information in them is information in **Corellium's** control that **Corellium** produced to Apple. Excluding Mr. Connelly's opinions and calculations on Corellium's additional sales, on the other hand, would greatly prejudice Apple as it would reduce Apple's recovery based on nothing more than the mere happenstance of a pandemic-related trial continuance.

### 2. Industry Expert Dr. Michael Siegel

Dr. Siegel's opinions in this matter relate to the purpose of Corellium's product, and in particular whether Corellium has undertaken efforts to ensure that its product's use is limited to good faith security research, or whether, alternatively, the product is marketed and used indiscriminately, including for socially undesirable purposes. *See* ECF No. 525-1 ¶¶ 58–76. Since

8

his initial report in this case, Dr. Siegel has offered his opinion on Corellium's customers and their adherence, or lack thereof, to industry practice and custom. *See* ECF No. 525-2 ¶¶ 27–35.

As Corellium acknowledges, it produced substantial new information regarding its customers in spring 2021. ECF No. 963 at 15. Dr. Siegel's supplemental report, designed to bring his initial report current, offers no new opinions or conclusions; instead, it merely updates his prior conclusions with respect to Corellium's expansion of its product to individual customers and its purported ██████████████. *See* Third Supplemental Report of Michael D. Siegel, PH.D., Ex. C ¶¶ 17, 27; *see also* ECF No. 525-3 ¶¶ 20–25. This is wholly proper—after all, it was Corellium (not Apple) that decided to expand its offering to ████████ individual customers with trial approaching, and who provided new discovery about those facts after Dr. Siegel had provided his original report. Similarly, Corellium's spring 2021 productions included information about ██████████████ Corellium allegedly began implementing in 2021. *See* Ex. C ¶¶ 17-23.[8] Ultimately, however, Dr. Siegel's opinion on the sufficiency of Corellium's ████ ██████ remains unchanged. *See id.* ¶ 18 ("I still believe that Corellium's vetting process is superficial.").

There is no merit to any of the myriad arguments Corellium makes against Dr. Siegel's supplemental report. *See* ECF No. 963 at 14–16. First, Dr. Siegel is not merely a "rebuttal" expert: Dr. Siegel submitted his initial report on March 3, 2020—the same scheduled date all expert witnesses, including Corellium's security expert, Alexander Stamos, provided their opening reports. *See* Siegel Opening Report, ECF No. 525-1 ¶¶ 25–40, 58–76 (discussing vulnerabilities and exploits in software, CORSEC iOS, and Corellium's business practices); Stamos Opening Report, ECF No. 451-6 at 18. Dr. Siegel's opinions concern the topic of security research, of course, but also encompass the entirety of Corellium's business, including its trafficking and marketing of the CORSEC iOS product. *See* 17 U.S.C. § 1201(a)(1)–(2); ECF No. 525-1 ¶¶ 59, 76; Ex. C ¶ 34.

Second, Apple did not unreasonably delay in serving Dr. Siegel's supplemental report on June 4, 2021. As outlined above, Apple repeatedly sought, throughout spring 2021, both to confirm that Corellium had completed its supplemental productions and to establish a mutually agreeable deadline for supplemental reports. During these discussions, counsel for Corellium

---

[8] This information was disclosed via a Corellium production on March 15, 2021.

represented that the experts could make their opinions current at trial.  Ex. A ¶ 21.  Given this, and Corellium's history of last-minute productions and refusal to confirm that supplementation had been completed, Apple and Dr. Siegel had no way of knowing, until the Rule 26(e) deadline actually arrived, that Corellium was actually done producing new evidence.

Finally, Corellium's evidentiary arguments with respect to two new CORSEC iOS features cited by Dr. Siegel do not establish "new opinions" or otherwise demonstrate that the report was not properly a Rule 26(e) supplementation.  *See* ECF No. 963 at 15.  Rather, Dr. Siegel uses both features to support his preexisting opinion that CORSEC iOS "is not used solely for good-faith security research." Ex. C ¶¶ 32–34.  Corellium argues that the first feature, Corellium's new "App Streaming" offering—an application and game development feature—is irrelevant because it is not presently offered for iOS, but only for Android, and that the second feature, Corellium's forthcoming "App Testing" product, "was discussed at Amanda Gorton's deposition" in 2020. ECF No. 963 at 15.  With respect to the first point, Corellium attacks merely Dr. Siegel's characterization of an indisputably new fact that can be readily subjected to cross-examination.  And with respect to the second, Corellium misstates the evidence entirely.  Ms. Gorton testified at her deposition that "app testing" "████████████████████████████████████████" *See* ECF No. 817-7 at 119:15–21 (emphasis added).  One year later, however, "App Testing" is prominently featured by Corellium as a feature that it intends to offer imminently. Ex. C ¶ 32.  It is appropriate and fair for Dr. Siegel to update his prior opinions (which relied in part on Ms. Gorton's testimony) to account for this newly produced evidence.

### 3. Technical Expert Dr. Jason Nieh

Dr. Nieh is Apple's technical expert witness.  His opinions focus on Corellium's CORSEC iOS virtualization product and exactly how it circumvents the technical protection measures Apple puts in place to prevent unauthorized and unsafe access to iOS.  Like the supplemental reports from Mr. Connelly and Dr. Siegel, Dr. Nieh's second supplemental report brings current his previously disclosed opinions as to the new functionalities that Corellium has introduced in its CORSEC iOS product since discovery closed.

Although Corellium seeks to strike the entirety of Dr. Nieh's second supplemental report, Corellium identifies only two aspects of Dr. Nieh's second supplemental report that it considers problematic:  (1) information about a third-party app called FRIDA, which Corellium contends Dr. Nieh should have addressed in his original reports; and (2) information regarding Corellium's

support for certain versions of iOS, which Corellium says constitutes a new opinion. ECF No. 963 at 4, 13. Neither assertion holds water. With respect to FRIDA, Corellium misleadingly argues that "FRIDA has been available for four years or more." In fact, however, Corellium only began supporting FRIDA for iOS devices in *February 2021*. Ex. A ¶ 16. Not only was the feature not added until well after the close of discovery, the source code that Dr. Nieh analyzed in supplementing his opinion was not produced by Corellium until March 12, 2021. *See* Second Supplemental Expert Report of Dr. Jason Nieh, Ex. D ¶ 9. In his second supplemental report, Dr. Nieh explained the significance of that new addition to CORSEC iOS: "Frida allows users to add their own scripts into third-party apps (e.g., Twitter, Facebook, LinkedIn, etc.) installed on iOS in order to 'spy on crypto APIs or trace private application code.'" *Id.* ¶ 66. That means that, "by integrating with Frida, Corellium now enables users of CORSEC iOS to hack into encrypted code made by third-parties." *Id.* This new evidence supports Dr. Nieh's prior opinion that Corellium's product allows CORSEC iOS users to access functionality relating to iOS that is normally inaccessible to iOS users. *See* ECF No. 524-4 ¶ 311 (explaining ways in which Corellium advertises that its product enables accessibility to features inaccessible on Apple devices).

Similarly, Dr. Nieh addressed Corellium's virtualization of certain newer versions of Apple's iOS operating system. This brought his opinion current as to the full scope of iOS versions now covered by CORSEC iOS, including those added by Corellium after the close of discovery, and confirmed that CORSEC iOS circumvents security measures that protect each of those new iOS versions in the same manner it circumvents security measures that protect the prior versions:

- "The Supplemental Information I have considered reinforces, and does not alter, my original opinion that CORSEC iOS copies, modifies, displays and distributes certain copyrighted versions of iOS as described in detail in the report." Ex. D ¶ 14.

- "[T]he Supplemental Information I have considered reinforces, and does not alter, my original opinion that CORSEC iOS bypasses, omits, disables, or deactivates certain technical features that Apple has built into iOS that ordinarily serve to ensure that users can only access, run, copy, modify, and display the iOS software on Apple hardware." *Id.* ¶ 16.

Corellium also asserts that, as to a handful of specific versions of iOS (12.3, 12.4, 13.0, 13.2, 13.4, 13.6, and 14.0), Dr. Nieh provided new opinions on the creativity of source code deposits and whether Apple's security measures were circumvented. ECF No. 963 at 13. This is wrong; Apple has alleged throughout that Corellium engaged in circumvention of security measures in *all* individual versions of iOS. *See* ECF No. 589 ¶ 72 (DMCA claim refers to "all of

11

[Apple's] computer programs, including each individual version of iOS"); ECF No. 56 ¶ 72 (same). Dr. Nieh's previous reports have also included his opinion on Apple's security measures with respect to all versions of iOS. *See* ECF No. 524-4 ¶ 302 ("This summary description applies generally to the way CAP creates, loads, and operates virtual machines *for all versions of iOS*." (emphasis added)); *see also id.* ¶ 307 (referring to pointer authentication codes "implemented in certain versions of iOS 12.0 *and later*"). And Dr. Nieh has consistently offered his opinion on the creativity of iOS versions Corellium uses. *See* ECF No. 524-1 ¶¶ 88–154; *id.* ¶ 90 ("Balancing all of the requirements of an [operating system requires] . . . creativity, judgment, and artistry to create an excellent product and user experience."); ECF No. 524-3 ("iOS contains original, creative content developed and protected by Apple"). Dr. Nieh's second supplemental report addresses three new versions of iOS that Corellium began virtualizing after the close of discovery, iOS 13.4, 13.6, and 14.0, and confirms that Corellium's circumvention of intervening versions of iOS (12.3 through 13.2) were indistinguishable from Corellium's circumvention of any other version of iOS.[9] Ex. D ¶¶ 8–9. The supplementation injects no new issues in the case, but merely confirms that Corellium circumvents versions of iOS released during the pendency of this litigation in the same way it circumvents versions released prior to its filing. This is entirely proper. *See, e.g.*, *Louisiana*, 2015 WL 5595630, at *2.

### C. Corellium Relies On Inapposite Authorities That Do Not Apply To Supplementation.

Because the supplementation was disclosed and timely under Rule 26(e), Corellium's reliance on Rule 37(c), which applies only when a party fails to comply with Rule 26(a) or (e), *see* Fed. R. Civ. P. 37(c)(1), is misplaced, and Corellium's cited cases are simply inapposite.[10]

---

[9] Of note, Corellium did not add functionality to support iOS 13.4, 13.6, or 14.0 until after the close of discovery.

[10] This includes all of Corellium's cited cases, **none** of which precluded experts from issuing supplemental reports responding to information newly produced by an opposing party. *See Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718–19 (11th Cir. 2019); *Reese v. Herbert*, 527 F.3d 1253, 1265–66 (11th Cir. 2008); *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1360–61 (11th Cir. 2008); *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1252 (11th Cir. 2007); *Cochran v. The Brinkmann Corp.*, 381 F. App'x 968, 969 (11th Cir. 2010); *Cooley v. Great S. Wood Preserving*, 138 F. App'x 149, 161–62 (11th Cir. 2005); *Southpoint Condominium Ass'n v. Lexington Ins. Co.*, No. 19-cv-61365, 2020 WL 1515769, at *1–2 (S.D. Fla. Mar. 30, 2020); *All-Tag Corp. v. Checkpoint Sys., Inc.*, No. 17-cv-81261, 2019 WL 5073499, at *5 (S.D. Fla. Oct. 9, 2019); *Potish v. R.J. Reynolds Tobacco Co.*, No. 15-cv-81171, 2017 WL 5952892, at *2, *4 (S.D. Fla. Nov. 30, 2017); *O'Brien v. NCL (Bahamas) Ltd.*, No. 16-cv-23284, 2017 WL 6949261, at *3,

Even were the Court were to conclude otherwise, disclosure of the modestly updated opinions contained in the reports is both substantially justified and harmless to Corellium, and thus exclusion is not required. *See* Fed. R. Civ. P. 37(c)(1); Fed. R. Civ. P. 37(c)(1) advisory committee note to 2000 amendment; *cf. OFS Fitel*, 549 F.3d at 1363–65. Apple's supplementation is justified because the reports incorporate new information disclosed by Corellium for the first time in 2021, and the supplementation is harmless because the new information was produced by Corellium and within Corellium's control. *See United States v. Rapanos*, 376 F.3d 629, 645 (6th Cir. 2004), *vacated on other grounds*, 547 U.S. 715 (2006) (no prejudice where "Defendants were aware of the data used in the supplemental reports"); *see also Semtech Corp. v. Royal Ins. Co. of Am.*, No. 03-cv-2460, 2005 WL 6192906, at *2–3 (C.D. Cal. Sept. 8, 2005) (no surprise or prejudice where opinions in supplemental report were based on raw data in other side's possession).

### D. In The Alternative, Any Excluded Evidence Must Be Excluded For Both Sides.

Apple believes the best outcome, consistent with the Rules, is to permit both parties to address supplemental evidence that does not inject new issues into the case, but merely brings current prior areas of dispute. *See, e.g., Noffsinger*, 2012 WL 5948929, at *4; *Davis*, 2012 WL 424887, at *10; *Porter*, 2003 WL 21946595, at *6. That approach allows for a full airing of the issues and resolution of those issues in one proceeding and is well-supported by the law. Corellium may have fact witnesses competent to testify on these facts; Apple has expert witnesses who have considered these facts, timely disclosed their opinions on them, and who are prepared to address them at trial. Evidence regarding revenue generated by Corellium and continued sales should be permitted for purposes of damages. *See, e.g., Fair Isaac Corp. v. Federal Ins. Co.*, 337

---

*6 (S.D. Fla. Oct. 13, 2017); *Martin v. Omni Hotels Mgmt. Corp.*, No. 15-cv-1364, 2017 WL 2928154, at *3 (M.D. Fla. Apr. 19, 2017); *United States v. Marder*, 318 F.R.D. 186, 191 (S.D. Fla. 2016); *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-cv-24277, 2016 WL 3102225, at *4, *7 (S.D. Fla. June 2, 2016); *S.O.S. Resource Servs., Inc. v. Bowers*, No. 14-cv-22789, 2015 WL 6735540, at *3 (S.D. Fla. Nov. 4, 2015); *Tech Data Corp. v. Au Optronics Corp.*, No. 11-cv-2454, 2015 WL 12843886, at *9 (M.D. Fla. Oct. 22, 2015); *Buonamano v. United States*, No. 13-cv-80221, 2014 WL 12580527, at *1–2 (S.D. Fla. Aug. 5, 2014); *Brincku v. Nat'l Gypsum Co.*, No. 11-cv-338, 2012 WL 1712620, at *2 (M.D. Fla. May 15, 2012); *Kendall Lakes Towers Condo Ass'n v. Pac. Ins. Co.*, No. 10-cv-24310, 2011 WL 6372198, at *5 (S.D. Fla. Dec. 20, 2011); *Friebel v. Paradise Shores of Bay Cty., LLC*, No. 10-cv-120, 2011 WL 2420230, at *6 (N.D. Fla. June 13, 2011); *Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 683–84 (M.D. Fla. 2010); *Goodbys Creek, LLC v. Arch Ins. Co.*, No. 07-cv-947, 2009 WL 1139575, at *5 (M.D. Fla. Apr. 27, 2009).

F.R.D. at 419. And evidence regarding Corellium's new customers and continued incorporation of new versions of iOS into its product—even during the pendency of this action—is relevant to the issue of Corellium's continued violation of the DMCA and Apple's request for injunctive relief seeking to bar that conduct.

If the Court disagrees, however, and excludes any of the challenged testimony at trial, the Court must bar *both* sides from relying on any excluded evidence (other than for purposes of impeachment). Corellium's requested relief, in which only Corellium is permitted to address the supplemental discovery but Apple is not, is fundamentally unfair and inconsistent with the Federal Rules of Civil Procedure. If Apple is precluded from addressing the new information produced by Corellium, the only equitable solution is for Corellium to be barred from relying on it too.

### IV.     CONCLUSION

Apple respectfully requests that the Court deny Corellium's motion.

| | |
|---|---|
| Dated: July 7, 2021 | Respectfully Submitted, |
| Michele D. Johnson* | *s/ Martin B. Goldberg* |
| *michele.johnson@lw.com* | |
| LATHAM & WATKINS LLP | Martin B. Goldberg |
| 650 Town Center Drive, 20th Floor | Florida Bar No. 0827029 |
| Costa Mesa, CA 92626 | *mgoldberg@lashgoldberg.com* |
| (714) 540-1235 / (714) 755-8290 Fax | *rdiaz@lashgoldberg.com* |
| | Emily L. Pincow |
| Sarang Vijay Damle* | Florida Bar. No. 1010370 |
| *sy.damle@lw.com* | *epincow@lashgoldberg.com* |
| Elana Nightingale Dawson* | LASH & GOLDBERG LLP |
| *elana.nightingaledawson@lw.com* | 100 Southeast Second Street |
| LATHAM & WATKINS LLP | Miami, FL 33131 |
| 555 Eleventh Street NW, Suite 1000 | (305) 347-4040 / (305) 347-4050 Fax |
| Washington, DC 20004 | |
| (202) 637-2200 / (202) 637-2201 Fax | |

Andrew M. Gass*
*andrew.gass@lw.com*
Joseph R. Wetzel*
*joe.wetzel@lw.com*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
(415) 391-0600 / (415) 395-8095 Fax

Jessica Stebbins Bina*
*jessica.stebbinsbina@lw.com*
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
(424) 653-5500 / (424) 653-5501 Fax

Gabriel S. Gross*
*gabe.gross@lw.com*
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 463-2628 / (650) 463-2600 Fax

\**Admitted pro hac vice*

*Attorneys for Plaintiff* APPLE INC.

15