UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-cv-81160-RS

APPLE INC.,

                Plaintiff,

v.

CORELLIUM, INC.

                Defendant.

**DEFENDANT CORELLIUM'S SUPPLEMENTAL TRIAL BRIEF ON
THE BINDING EFFECTS OF THE ELEVENTH CIRCUIT OPINION**

The Eleventh Circuit affirmed this Court's grant of summary judgment to Corellium Inc. ("Corellium"), holding that Corellium's CORSEC software makes noninfringing fair use of Apple Inc. 's iOS operating system for iPhones (Count One). *Apple Inc. v. Corellium, Inc.*, No. 21-12835, 2023 WL 3295671 (11th Cir. May 8, 2023) ("Eleventh Cir. Op.").[1] Under the mandate rule, the Eleventh Circuit's findings of fact and conclusions of law, including that the CORSEC software uses iOS to enable fair uses by researchers and that Corellium's creation and use of CORSEC is noninfringing, are binding on the trial of Counts Two and Three as the law of the case.[2]

As set forth below, the findings of fact and conclusions of fair use issued by the Eleventh Circuit and this Court apply equally to Corellium's use of any Apple-copyrighted icon compilations and wallpapers (the "GUI elements"), and to its customers' use of iOS and the GUI elements. Applying the Eleventh Circuit's opinion to the remaining counts, Corellium's use of the GUI elements is fair use and not infringement; CORSEC users' fair use security research, testing, and development does not infringe Apple copyrights; and Corellium cannot be liable for contributory infringement where its customers' fair use conduct does not infringe.

Apple's Proposed Findings of Fact and Conclusions of Law (D.E. 1122) foreshadow that Apple will ask this Court to ignore and revisit the law of the case established by this Court and the Court of Appeals. Corellium therefore explains in detail below how the mandate rule already has determined and confined any issues remaining to be addressed on Counts Two and Three.

**I.    CORSEC's Use of iOS for Security Research, Testing, and Development is Fair Use.**

The Eleventh Circuit held all four fair use factors favored Corellium's right to make fair use of iOS. As set forth below, the Court of Appeals based its holding on the nature, purposes, and uses of CORSEC itself, not just Corellium's conduct of creating and distributing CORSEC. These holdings focused on the use of CORSEC by "researchers," not just Corellium, and so apply equally to Corellium's customers. Accordingly, these fair use holdings preclude findings of direct infringement by CORSEC users and contributory infringement by Corellium.

---

[1] This Court entered summary judgment on fair use without making findings whether conduct by Corellium would otherwise infringe. Accordingly, there is no law of the case holding that any conduct by Corellium (or Corellium users) would constitute direct infringement even in the absence of fair use.

[2] *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 881 F.3d 835, 843 (11th Cir. 2018) (mandate rule); *Newman v. Ormond*, 456 Fed.Appx. 866 (11th Cir. 2012) (law of the case doctrine).

1

### 1. The purpose and character of CORSEC is transformative (Factor One).

Throughout its opinion, the Eleventh Circuit supported its conclusion that CORSEC is a transformative software product whose purpose is to enable fair use: security research, testing, and development. It called CORSEC "a creative and innovative tool that furthered the very creative progress that copyright seeks to achieve." Eleventh Cir. Op. 7. "Corellium's virtualization software is transformative—it furthers scientific progress by allowing security research into important operating systems." *Id.* *1. "Corellium's software is a transformative product that furthers copyright's aims in advancing science through research." *Id.* *13. The court described key features of CORSEC not available in iOS that "enable security researchers to gain deeper insights into these operating systems," and "make security research far more efficient." *Id.* **1-3, 6, 8. Thus, the court found, "[t]here's no dispute that CORSEC 'helps security researchers do their work in a way that physical iPhones just can't.'" *Id.* **2, 6. Indeed, the court noted, even "Apple has recognized that CORSEC 'can be used for security research, testing, and development.'" *Id.* *2.

Thus, for factor one, the court's binding conclusion (and Apple's concession) that the CORSEC software has transformative uses applies to Corellium *and* its customers.

### 2. The nature of iOS is primarily functional (Factor Two).

The Eleventh Circuit's conclusion on factor two that, despite the originality of the iOS code, "iOS is primarily functional, so it falls outside the core of copyright's protection" does not depend on the identity of the user, so also applies to CORSEC users. *Id.* *13. The same is true for Apple's icons and wallpapers. Whatever creativity may inhere in the GUI elements, just as functional elements predominated in the iOS code, the functional uses of Apple's icons and wallpapers as a GUI—the interface to launch iOS apps—also predominate here.

### 3. CORSEC's use of the entirety of iOS is reasonable and necessary (Factor Three).

The Court of Appeals next found, and Apple conceded, that it was reasonable and necessary to access and use the entirety of iOS to perform security research:

> Corellium's use of iOS … was necessary to achieving that purpose. Apple has said so itself: 'Full access to iOS is needed for Corellium's virtualization because if you're going to run a virtualization environment, realistically you cannot do so without the entire operating system available.' Apple is right. Security research requires the use of the entire work because flaws may be found anywhere in the code; anything less would risk vulnerabilities going undetected.

*Id.* *10. Because viruses, malware, and other "flaws" can be hidden in image files such as icons

and wallpapers, it likewise is reasonable and necessary for security researchers to access and study the iOS GUI elements. Thus, the court's finding on factor three applies to research on the GUI elements and other image files using CORSEC, by Corellium *and* its customers. "Corellium can't know which parts of iOS *any given customer* will be interested in studying or where *a customer's initial research* might lead. So Corellium must make iOS broadly available *so that researchers* can target the portions of iOS relevant to *their* work." *Id.* *11 (emphasis added).

    **4.  CORSEC does not adversely affect the potential market for iOS (Factor Four).**

The court's finding on factor four – that CORSEC "does not substantially harm the market for iOS or iOS derivatives"—applies equally to the icon compilations and wallpaper. *Id.* *1. Just as "CORSEC does not supersede iOS running on iPhones," CORSEC does not supersede the GUI that allows iPhone users to access iOS functionality. *Id.* *7. Moreover, there can be no market harm because there is no separate market for the GUI or GUI elements apart from iPhones themselves. *Id.* *13.

Summing up all four factors, Corellium makes fair use of all of iOS in selling CORSEC and CORSEC has substantial non-infringing uses for all of iOS, including the GUI elements.

**II.    These Fair Use Findings Decide Issues for Trial on Counts Two and Three.**

Under the mandate rule, the Court of Appeals' fair use findings and conclusions by the Court of Appeals regarding use of CORSEC are the binding law of the case, and severely limit the scope of conduct that this Court may consider when evaluating Counts Two and Three.

    **1.  Fair use of iOS includes fair use of the GUI elements.** Apple is bound by its admissions, under penalty of perjury, that iOS includes the copyrighted GUI elements.[3] Therefore, the Eleventh Circuit's fair use holding as to iOS mandates that use of the GUI elements for security research, testing, and development, by Corellium or its customers, also is fair use.

    **2.  Apple, not Corellium, distributes the GUI elements.** Apple includes in IPSW files all its copyrighted works, including the iOS code and GUI elements, and distributes them to the public for free and without restriction. "CORSEC … starts with Apple's *publicly available* IPSW file"; "*Apple* then makes that IPSW file available to the public for free." *Id.* *1-2 (emphasis added). Therefore, Corellium cannot be liable for Apple's distribution of the GUI elements.

---

[3] DE 784 at 3, *citing* DE 470-4 ¶ 6, Declaration of Jonathan Andrews, Vice President of Software Engineering at Apple, Inc., in Support of Apple's Motion for Partial Summary Judgment (May 11, 2020); *see* Andrews Deposition under Fed. R. Civ. P. 30(b)(6), Tr. 88:23-89:1, Tr. 94:24-25.

3

### 3. Downloading and using iOS and the GUI elements for CORSEC is fair use.

The Court of Appeals held it is fair use for CORSEC to reproduce and load the iOS files in IPSW, and for Corellium customers to use CORSEC, for security research, testing, and development. "*CORSEC customers* can obtain the IPSW file by manually downloading it or through a Corellium program that automatically downloads the IPSW file from Apple's servers"; and, [o]nce *a user selects the IPSW file it wants to use*, CORSEC 'dynamically unpacks' the file as it is downloading. In doing so, CORSEC 'modifies various components' to make iOS 'run reliably on Corellium's non-Apple platform.'" *Id*. *2 (emphasis added). Accordingly, CORSEC users (and Corellium) do not infringe by downloading, reproducing, or using Apple's copyrighted works from IPSW to use CORSEC. Without direct infringement by CORSEC users, Corellium cannot be liable for contributory infringement.[4]

### 4. Corellium's distribution and licensing of CORSEC cannot by itself be contributory infringement.

Because CORSEC is capable of substantial noninfringing fair uses, mere distribution and sale of CORSEC cannot establish the knowledge element of contributory infringement; nor can marketing, providing user support, maintenance, or other conduct ordinarily incidental to marketing and licensing of CORSEC. *Grokster,* 545 U.S. at 936-37.

> [D]espite [Sony's] knowledge … that its [VCR] could be used to infringe, *mere knowledge of infringing potential or of actual infringing uses would not be enough* here to subject a distributor to liability. Nor would ordinary acts incident to product distribution, such as offering customers technical support or product updates, support liability in themselves.

*Id*. (citation omitted) (emphasis added); *see Sony Corp. of Am.* v. *Universal City Studios, Inc.,* 464 U. S. 417, 442 (1984) (same).

For these same reasons**,** Corellium cannot be liable merely for licensing CORSEC, or for promoting or instructing Corellium's customers on fair uses of CORSEC. Apple's claim is therefore limited to proof by a preponderance of the evidence that Corellium engaged in "purposeful culpable conduct" intended to induce CORSEC users to commit infringement, rather than conduct that has been or can be deemed fair use. *Id.* 545 U.S. at 919, 937.

---

[4] *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 940-941 (2005) (contributory infringement requires proof of direct infringement); *Peter Letterese & Assocs., Inc. v. World Inst. Of Scientology Enter.,* 533 F.3d 1287, 1298 n.11 (11th Cir. 2008) (same).

**5.     Apple cannot prove constructive knowledge through "willful blindness."** To establish contributory infringement, Apple must prove Corellium had knowledge of specific users' infringement.[5] This Court found that Corellium "has a vetting process in place (even if not perfect) and, in the past, has exercised its discretion to withhold the Corellium Product from those it suspects may use the product for nefarious purposes." DE 784 p. 32 (footnote omitted); *id.* pp. 9-10. Apple therefore cannot prove a "willful blindness" theory of constructive knowledge, and so cannot prove contributory infringement. *See Global-Tech*, 563 U.S. at 769-770 (elements of "willful blindness").

## CONCLUSION

Given the determinative and limiting effects of the Eleventh Circuit's holdings and findings of fact on Counts Two and Three, only three narrow issues may remain for trial:

(A) Whether Apple can prove by a preponderance of the evidence that individual CORSEC users engaged in direct infringement, rather than conduct that the Court of Appeals has deemed fair use.  Apple failed to demonstrate any direct user infringement on summary judgment, and likewise cannot prove infringement here as the predicate for contributory liability.

(B) Whether Apple can prove by a preponderance of the evidence that Corellium had actual knowledge of direct infringement by specific CORSEC users, and actively induced that infringement by "purposeful culpable conduct." Apple failed to demonstrate such evidence on summary judgment, and cannot do so here.

(C) If Apple proves by a preponderance of the evidence the predicate acts of direct infringement, whether CORSEC makes fair use of the copyrighted GUI elements by using them for the same functional purposes for which Apple designed and provided them, and for research. The Court of Appeals held that use of the functional aspects of iOS, or performing security research on iOS functions, constituted fair use.  This Court also should hold that Corellium and its customers who use the GUI elements as a functional interface, and for security research, testing, and development, engage in fair use.

---

[5] *See Global-Tech Appliances, Inc. v. SEB SA*, 563 U.S. 754, 766 (2011) ("induced infringement [under the Patent Act] requires knowledge that the induced acts constitute patent infringement"); *Sony*, 464 U.S. 439 n.19 ("Sony certainly does not 'intentionally induc[e]' its customers to make infringing uses of respondents' copyrights, nor does it supply its products to identified individuals known by it to be engaging in continuing infringement of respondents' copyrights.").

Dated:  November 20, 2023                    Respectfully submitted,

                COLE, SCOTT & KISSANE, P.A.
                Esperante Building
                222 Lakeview Avenue, Suite 120
                West Palm Beach, Florida 33401
                Telephone (561) 612-3459
                Facsimile (561) 683-8977
                Primary e-mail: justin.levine@csklegal.com
                Primary e-mail: lizza.constantine@csklegal.com
                Secondary e-mail: treana.thompson@csklegal.com

By:  *s/ Justin Levine*
      JUSTIN B. LEVINE
      Florida Bar No.:  106463
      LIZZA C. CONSTANTINE
      Florida Bar No.:  1002945
      TRE'ANA L. THOMPSON
      Florida Bar No.: 1031361

      and

HECHT PARTNERS LLP
125 Park Avenue, 25th Floor
New York, NY 10017
Telephone (212) 851-6821
David L. Hecht, *Pro hac vice*
E-mail: dhecht@hechtpartners.com
Maxim Price, *Pro hac vice*
E-mail: mprice@hechtpartners.com
Kathryn Lee Boyd, *Pro hac vice*
E-mail: lboyd@hechtpartners.com

      and

CONSTANTINE CANNON LLP
1001 Pennsylvania Ave, NW, Suite 1300
Washington, DC 20004
Tel: (202) 204-3514
Seth D. Greenstein, *Pro hac vice*
Email: sgreenstein@constantinecannon.com

*Attorneys for Defendant Corellium, Inc.*

6

## CERTIFICATE OF SERVICE

      IT IS HEREBY CERTIFIED that on November 20, 2023, the foregoing document was filed electronically with the Clerk of the Court using CM/ECF. It is also certified the foregoing document is being served on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or by some other authorized manner, or a combination thereof, so as to comply with the requirements of Local Rule 5.4 and other applicable rules and procedures.

      By: *s/ Justin Levine*
      JUSTIN B. LEVINE
      Florida Bar No.: 106463

## SERVICE LIST

Martin B. Goldberg
mgoldberg@lashgoldberg.com
rdiaz@lashgoldberg.com
gizquierdo@lashgoldberg.com
LASH & GOLDBERG LLP
100 Southeast Second Street
Miami, FL 33131

Emily L. Pincow
Florida Bar No. 1010370
*epincow@lashgoldberg.com*
*gizquierdo@lashgoldberg.com*
LASH & GOLDBERG LLP
Weston Corporate Center I
2500 Weston Road, Suite 220
Weston, FL 33331
(954) 859-5180 / (954) 384-2510 Fax

Sarang Vijay Damle (*pro hac vice*)
sy.damle@lw.com
Elana Nightingale Dawson (*pro hac vice*)
elana.nightingaledawson@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004

Andrew M. Gass (*pro hac vice*)
andrew.gass@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

Jessica Stebbins Bina (*pro hac vice*)
jessica.stebbinsbina@lw.com
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067

Michele D. Johnson (*pro hac vice*)
*michele.johnson@lw.com*
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
(714) 540-1235 / (714) 755-8290 Fax

Gabriel S. Gross (*pro hac vice*)
*gabe.gross@lw.com*
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 463-2628 / (650) 463-2600 Fax

*Attorneys for Plaintiff,*
*Apple Inc.*